Matthew M. Lavin, Esq. (*pro hac vice forthcoming*)
Wendy A. Mitchell, Esq. (CA SBN 158553)
NAPOLI SHKOLNIK, PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH, and CJ on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, and VIANT, INC., a Nevada corporation,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED FOR ALL ISSUES SO TRIABLE** |

1

## Table of Contents

**Table of Contents**                                                    i
**Introductory Statement**                                               3
**Factual Background**                                                    5

   *Usual, Customary, and Reasonable Rate*                 5
   *Intensive Outpatient Treatment Programs*               5
   *Illegal Health Claim Re-Pricing*                       7
   *The Alliance of United and Viant*                      8

**Jurisdiction and Venue**                                              14
**The Parties**                                                         15

   *Plaintiffs*                                           15
   *Defendants*                                           15
   *Other Interested Parties*                              16

**General Allegations**                                                 17

   *The Defendants' Roles and Responsibilities with Respect to Claims*   17
   *UCR Reimbursement of IOP Claims*                       19
   *United and Viant's Re-Pricing Scheme*                  20
   *United and Viant's False Representations of UCR Reimbursement*   23
   *The Viant Grift*                                       24
   *The Harm Caused to the Plaintiffs and Class*          26
   *Plaintiffs' Allegations*                               27

      LD                                    27
      DB                                    29
      BW                                    30
      RH                                    32
      CJ                                    34

**Class Action Allegations**                                           35

   *The Plaintiff Class*                                   35
   *Rule 23(a)*                                            36

      Numerosity                            36
      Commonality                           36
      Typicality                            38
      Adequacy                              38

   ***Rule 23(b)***                                        39

**Causes of Action**                                                   40

   *I.    Violations of RICO: 18 U.S.C. § 1962(c)*
   *On Behalf of Plaintiffs and the Class Against United and Viant*   40

   *II.   Claim for Underpaid Benefits Under Group Plans Governed by ERISA*
   *On Behalf of Plaintiffs and the Class Against United*   46

i

***III.   Breach of Plan Provisions in Violation of ERISA § 502(A)(1)(B)***
*On Behalf of Plaintiffs and the Class Against United*    47

***IV.   Failure to Provide and Accurate EOC and SPD and Request for Declaratory and Injunctive Relief***
*On Behalf of Plaintiffs and the Class Against United*    48

***V.   Violation of Fiduciary Duties of Loyalty and Due Care and Request for Declaratory and Injunctive Relief***
*On Behalf of Plaintiffs and the Class Against United*    48

***VI.   Violation of Fiduciary Duties of Full and Fair Review and Request for Declaratory and Injunctive Relief***
*On Behalf of Plaintiffs and the Class Against United*    50

***VII.   Claim for Equitable Relief to Enjoin Acts and/or Practices***
*On Behalf of All Plaintiffs and the Class Against United and Viant*    51

***VIII.   Claim for Other Appropriate Equitable Relief***
*On Behalf of All Plaintiffs and the Class Against United and Viant*    52

**Jury Trial Demand**    53

## CLASS ACTION COMPLAINT

Plaintiffs LD, DB, BW, RH, and CJ are behavioral health patients who bring this action on behalf of themselves and all other similarly situated individuals against defendants United Behavioral Health, Inc., ("United") and Viant, Inc., ("Viant") and allege the following:

## INTRODUCTORY STATEMENT

1.      Plaintiffs LD, DB, BW, RH and CJ, (collectively "Plaintiffs") file this class action on behalf of themselves and all those similarly situated (the "Plaintiff Class") whose claims for benefits have been systematically underpaid by United and Viant and who owe money or have paid out-of-pocket all or a portion of the difference between what their insurance *should* have covered and what it actually paid.

2.      Plaintiffs sought treatment for behavioral health disorders, including for mental health and substance use disorders, from licensed, accredited, treatment providers. Plaintiffs were all members of active health insurance policies offering out of network benefits that United either sold and underwrote or administered on behalf of employers. United charges higher premiums for these plans that give members the freedom to choose their own healthcare providers outside of United's "network." For each of the Plaintiffs, United broke this promise, punishing them for seeing out-of-network providers and saddling their insureds with enormous balance bills all while reaping large profits from these supposedly premier, gold-plated insurance plans.

3.      United and Viant colluded to illegally withhold and systematically underpay out-of-network benefits. They accomplished this by using a dishonest and self-serving reimbursement scheme. Specifically, United, without any Plaintiffs' knowledge or authority, contracted with Viant to "negotiate" the amounts that United would ultimately pay for Plaintiffs' out-of-network claims. United contracted with Viant to create an illegal enterprise to underpay out-of-network benefits, shield United from the providers and insureds they cheated, and create impenetrable administrative barriers to circumvent rights protected by federal laws.

4.      United and Viant's scheme forced Plaintiffs and the Class to pay or owe, from their own pockets, the difference between the amount United should have paid and the amount

3

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

that United did pay for services. This difference often ran into the tens, and sometimes hundreds, of thousands of dollars per patient and is on top of the insurance premiums already paid for their healthcare plans. Every excess dollar paid by a patient is a dollar that United unjustly retained and used to pay a kick-back to Viant. Consequently, United and Viant unjustly retain tens of millions, or more, of dollars taken from patients who expected United to "make honest commitments and consistently honor those commitments… [d]eliver on [their] promises... [to] have the courage to acknowledge mistakes and do whatever is needed to address them.[1]"

5.      Plaintiffs bring this suit against United to recover the money they unjustly owe or overpaid for care that United should have reimbursed. This suit is also brought against Viant for the role it played as United's agent and claim profiteer in this sordid enterprise.

6.      Every claim at issue in this litigation is for intensive outpatient behavioral health services, including mental health and/or substance use disorder services that United was required to pay at usual, customary, or reasonable rates. Every Plaintiff was insured under a United health insurance policy. Every policy provided coverage for out-of-network benefits for mental health and substance use disorder treatment at usual, customary, or reasonable rates.

7.      While United issued, underwrote and/or administered every health insurance plan at issue in the present litigation, Viant determined the reimbursement rate for every underpaid claim in the present litigation.

8.      This occurred because, after receiving treatment, Plaintiffs' claims were submitted to United for payment according to the out-of-network rate. In the plan documents, this rate is referred to as the "Usual, Customary and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual and Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual Fee," the "Competitive Fee," or some other similar phrase (hereafter the "UCR"). Generally, United describes UCR rates as "based on what other health care professionals in the relevant geographic areas or regions charge for their services.[2]"

---

[1] https://www.unitedhealthgroup.com/about/mission-values.html (last visited March 12, 2020)
[2] https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits (last visited March 9, 2020)

## FACTUAL BACKGROUND

### *Usual, Customary, and Reasonable Rate*

9.     UCR rates are a fixture of the managed care payment system in the United States. When doctors, hospitals or other healthcare providers are out of network and do not have contracts with health insurance companies, the insurers must decide how much to pay. Generally, private insurers claim to reimburse out-of-network providers at UCR rates.

10.     The United States' Centers for Medicare Services (CMS), defines UCR as: "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service."[3]

11.     Insurance policies do not always cover services for out-of-network, non-contracting providers. Premiums for insurance plans that do provide out-of-network coverage, called Preferred Provider Organization (PPO) plans, are substantially more expensive than Health Maintenance Organization (HMO") or Point of Service (POS) plans that only reimburse in-network or contracting providers.

12.     Consumers choose to pay higher premiums for PPO plans because they value the freedom to choose their providers.

13.     Most commercial insurance companies claim their PPO policies will pay out of network providers UCR rates for covered services.

14.     Patients depend on insurers' good faith calculation of UCR rates, because patients are responsible for the difference between what their healthcare provider charges and what their insurance company pays for services. Where, as here, UCR calculation methodology leads to unreasonably low reimbursements to providers, patients bear the expense of insurers' bad faith calculations.

### *Intensive Outpatient Treatment Programs*

15.     Intensive outpatient programs ("IOPs") are an important tool in traditional behavioral health treatment. IOP is a non-residential, semi-structured level of care that is

---

[3] Healthcare.gov "Usual Customary or Reasonable" https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (accessed March 20, 2020)

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

typically rendered pursuant to a schedule that allows patients to reintegrate into society by returning to work, school, and other functions of daily life.  Often, IOP programs are designed to be a support system for patients reintegrating into society from higher more structured levels of care, such as residential inpatient treatment and partial hospitalization.

16.     Prior to 2019, United defined IOP as "a structured IOP program that maintains hours of service generally 9-19 hours per week […] in an outpatient setting […] to provide education, treatment, and the opportunity to practice new skills outside the program […] focused on addressing the member's condition to the point that the member can be safely, efficiently and effectively transitioned to a lower level of care."[4] According to the guidelines "An Intensive Outpatient Program can be used to treat substance-related disorders or can specialize in the treatment of co-occurring mental health and substance-related disorders." *Id*.

17.     Starting in January 2019, United transitioned to the American Society of Addiction Medicine's ("ASAM") level of care guidelines to define its IOP criteria for substance abuse.[5] ASAM classifies IOP as ASAM Level of Care 2.1. Services may be delivered in any appropriate setting that meets state licensure or certification requirements. According to ASAM, IOP care is rendered by a team of appropriately credentialed addiction treatment professionals including counselors, psychologists, social workers, addiction-credentialed physicians, and program staff, many of whom have cross-training to aid in interpreting mental disorders and deliver intensive outpatient services. Services are typically offered for at least 9 hours per week. The goal of IOP treatment is to provide a support system including medical, psychological, psychiatric, laboratory, and toxicology. Elements of IOP treatment include counseling, educational groups, occupational and recreational therapy, psychotherapy, Medication Assisted Treatment ("MAT"), motivational interviewing, enhancement and engagement strategies, family

---

[4] Optum, United Behavioral Health "Level of Care Guidelines," Doc. No. BH803LOCG052018, pp. 9-10, 19. Effective 05/28/2018

[5] United Healthcare, "Behavioral Health Level of Care Guidelines," https://www.uhcprovider.com/en/health-plans-by-state/tennessee-health-plans/tn-comm-plan-home/tn-cp-behavioral-health.html (last accessed March 20, 2020)

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

therapy, or other skilled treatment services.[6]

*Illegal Health Claim Re-Pricing*

18.     As alleged here, however, United does not even use its own purported methodology to calculate reimbursement rates. Instead of paying UCR, United contracted with Viant to "negotiate" reimbursement rates with providers. For years, United and Viant have systematically failed to properly price the claims according to UCR and have systematically concealed this failure through misrepresentations about pricing and payment methods to their members.

19.     Essentially, United is attempting to recreate the Ingenix grift that resulted in the largest settlements the healthcare industry had ever seen. In that scam, insurers like United contracted with Ingenix, using their systems and databases, to determine reimbursement rates that were found to be well below UCR and used deeply flawed methodologies. Andrew Cuomo, then New York's attorney general and now its governor, said of the Ingenix databases, "[t]he lack of accuracy, transparency, and independence surrounding United's process for setting a 'reasonable and customary rate' is astounding… the inherent problems with the data it is using clearly demonstrate a broken reimbursement system designed to rip off patients and steer them towards in-network-doctors that cost the insurer less money."[7]

20.     The Ingenix litigation resulted in a $350 million-dollar class settlement agreement for underpaid claims. It also required insurers to finance an objective database of reimbursements upon which patients and insurers nationally could rely on. The settlement required the insurance companies to underwrite the new database, the "Fair Health" database, with $95 million dollars, it did not require them to use it. Instead of using the FAIR health database for the IOP treatment services at issue here, United replaced Ingenix with Viant.

21.     This drive is a direct result of United's "cost containment" policies that have been

---

[6] Medicaid Innovation Accelerator Program, "Overview of Substance Use Disorder (SUD) Care Clinical Guidelines: A Resource for States Developing SUD Delivery System Reforms," pp 7, 8, April 2017

[7] New York State Office of the Attorney General, *Cuomo Announces Industry-wide Investigation in Health Insurers; Fraudulent Reimbursement Scheme*, February 13, 2008: https://ag.ny.gov/press-release/2008/cuomo-announces-industry-wide-investigation-health-insurers-fraudulent (last visited March 6, 2020)

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

in place since at least 2005. In or around 2005, Payment Accuracy Solutions, a division of Ingenix, itself a division of UnitedHealthcare, secretly began targeting healthcare providers solely because they were out of network and had charges deemed to be too high by United.

22.     After the Ingenix litigation, United could no longer cheat out of network providers out of payments for claims as it had been doing and found a way to achieve indirectly what it could no longer do directly. It found Viant, a third party repricer.

*The Alliance of United and Viant*

23.     United is required to price and pay claims for mental health and addiction treatment services in parity with medical services under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA or "Parity Act"). The Final Rules adopted for the Parity Act state "[t]he Departments did not intend that plans and issuers could exclude intermediate levels of care covered under the plan from MHPAEA's parity requirements…Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications." 78 FR 68240 (November 13, 2013). IOP services are referred to as "intermediate services" in the Rule. *Id*. The MHPAEA's implementing regulations, conspicuously, do not permit plans to classify treatment settings strictly as hospital or non-hospital, recognizing the existence of intermediate levels of care such as IOP.

24.     The Plaintiffs are members of, subscribers to, or participants in a variety of types of United healthcare plans. Some are funded by their employer and others are fully insured by United. As most individuals receive their health insurance through their employer, most of these plans are governed by Employee Retirement Income Security Act of 1974 ("ERISA"). Under ERISA governed plans, United, as the plan administrator, has a fiduciary duty to ensure that out-of-network claims are properly priced and paid according to UCR as required by the plan documents. For non-ERISA plans, United is bound by the duty of good faith and fair dealing as well as additional state law requirements to ensure that out-of-network claims are properly priced and paid according to UCR as required by the plan documents. These obligations are essentially

the same between ERISA and non-ERISA plans in this context.

25.     United, in collusion with Viant, has violated these duties and responsibilities through the intentional, systematic underpricing of claims and the subsequent collusion to cover-up of the evidence of their collusion.

26.     The Plaintiffs and their healthcare providers were deceived from the moment they sought treatment. For every claim at issue in this litigation, prior to accepting a patient for treatment, the Plaintiffs provided their insurance information, including their insurance card, to their chosen provider. The provider then contacted United at the number on the back of the health insurance cards, verified the out-of-network benefits, asked and were told that these benefits were paid at UCR rates, asked and were told by United that no prior authorization was required prior to rendering IOP services, and asked and were told that these claims were not subject to third-party repricing by Viant.

27.     Prior to being admitted for treatment, the Plaintiffs signed paperwork that creates a contract between themselves and the provider to receive IOP services. This contract in every case obligates the patient to be responsible for amounts not paid by United.

28.     For the Plaintiffs and class members in this litigation, they all paid amounts to their providers as 'balance bills' that were properly United's responsibility. All these claims are payment disputes; none of these claims are coverage disputes.

29.     The IOP providers and Plaintiffs contracted for the Plaintiffs to receive treatment based on United's representation to the Plaintiffs and providers that it would reimburse at actual UCR rates. As out-of-network facilities, the providers have no access to the actual health insurance plans, have no pre-existing contractual relationship with United, and patients coming for IOP treatment do not arrive with their insurance policies and Summary Plan Documents (SPDs) in hand.

30.     The Plaintiffs may have chosen out-of-network facilities for any number of reasons. Their reasons for selecting one particular facility are irrelevant, as, in each case the Plaintiffs reasonably believed that they possessed a health insurance policy that permitted them to see out-of-network healthcare providers and that their United healthcare policies would pay

the healthcare provider that they chose according to UCR, as provided in the policy.

31.     Every Plaintiffs' policy provided out-of-network coverage for mental health and substance use disorder treatment with benefits to be paid according to UCR rates.

32.     United is the largest health insurer in the country, and each year processes hundreds of thousands, or more, of claims submitted by patients. United employs Viant to "reprice" claims from patients who elect their right to see providers who are "out-of-network."

33.     While not every claim submitted by a patient is repriced by Viant, there is a disturbing increase in United's use of Viant to reprice IOP claims using Viant across the country at rates that are a fraction of those that United had previously been paying for out-of-network IOP services.

34.     Every claim at issue here was sent by United to Viant for Viant, a third party, to reprice at a substantially lower rate than United had been paying. No Plaintiff has an agreement of any sort with Viant that permits Viant to negotiate with their providers on their behalf. This is especially true as Viant's "negotiations" for every claim at issue resulted in the payment by the insured of excessive balance bills.

35.     None of the Plaintiffs were told by United and/or their plan's sponsors that their claims could be subject to third-party pricing by Viant. No plan document states that out-of-network claims will be paid at UCR *unless*, United, at its own discretion, chooses to use Viant for the purpose of actually reimbursing claims at well-below UCR.

36.     The IOP pricing and payment rates that Viant "offers" to providers on behalf of Plaintiffs is no more than a con. United directs the pricing that Viant "offers" as a "negotiation" for payment and states to both patients and providers that the offered amount is based on UCR rates. In reality, United has hidden "cost containment" policies that underlie its contracts with Viant and actually provide financial incentives for Viant to breach the terms of United's insurance contracts with its members.

37.     The rates that Viant offers in its "negotiations" for IOP treatment are determined with no relationship to the UCR outlined in Plaintiffs' United policies. For instance, there is no reimbursement variation based on provider location. During the "negotiation," Viant claims that

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

the rate it offers is based on the UCR for the provider's geographic location; however, it beggars belief that the UCR for Silicon Valley, CA is the same as it is in, for example, Altoona, PA or Paris, TX.

38.     While purporting to consider geographic area, Viant is, in fact, "negotiating" at the essentially the same flat, low rate across the entire country. Despite having access to a wealth of charge data for hundreds of thousands, or more, of claims, United and Viant do not price and pay IOP claims according to legitimate UCR calculation methodologies. Instead, United has made the financial decision that claims are to be paid at levels designed to drive out-of-network providers out of business. United does this because out-of-network providers cost United more. Even though this is ostensibly reflected in the higher premiums attached to these plans, United still chooses to place its profits over its members who are forced to pay twice for their treatment.

39.     Plaintiffs first pay for their treatment in the form of insurance premiums and then pay again to cover the cost of excessive balance bills sent to them as the result of Viant's "negotiation" and United's underpayment.

40.     Viant is employed by United, not the Plaintiffs, the Class, or any individual provider receiving IOP services. They receive financial incentives that are essentially kick-backs for every dollar they "save" United from paying on IOP claims.

41.     United does not transmit plan terms or language to Viant when it has Viant reprice out-of-network claims. United's contract with Viant is independent of individual members' plans and blind and ignorant as to any individual plan or plan terms.

42.     Viant has no defense or excuse for claiming to "negotiate" on behalf of the Plaintiffs and the Class when it has no knowledge of actual plan terms. United, the drafter of the plans, chooses not to send the plan terms to Viant.

43.     United never told the Plaintiffs or their providers that their claims were subject to third party repricing until after they entered into a binding contract with the IOP providers and received treatment. United and Viant's actions created overly large balance bills for Plaintiffs, often amounting to tens of thousands of dollars, or more, for each patient.

44.     Viant is the face of these "negotiations" and the tool for United's underpayment.

When patients or providers contact Viant seeking UCR, Viant claims it has offered UCR. It has not offered UCR, it has offered an amount it represents as UCR that is actually the product of a secret, proprietary, database and/or pricing method. Viant refuses to provide patients, providers, or even plan sponsors any transparency into the methodology used to arrive at their UCR. This refusal is because the rates are not based on UCR.

45.     Upon information and belief, Viant receives a base rate and maximum rate from United for IOP treatment. This base rate is well below UCR and is applied, with minimal variation, nationwide. The maximum rate is the small amount that United permits Viant to 'negotiate' up to.

46.     Upon information and belief, Viant earns its profits from United by paying no more than the initial rate or as little as possible over it because if Viant were 'settle' at the 'up to' amount, it would earn nothing for that claim. United then uses Viant's 'negotiated' rate to underpay for treatment, and Viant gets its cut of the graft.

47.     United and Viant both know that they are not offering and/or paying the UCR rates as required under the terms of patients' insurance policies. United and Viant are aware that the costs of underpayment are borne by the very patients from whom United collects inflated premiums.

48.     While the exact number of patients who have relapsed and providers who have been forced out of business as a result of these practices is unknown, a substantial number of lives and livelihoods have been lost in furtherance of corporate profits and executive bonuses.

49.     United and Viant have both made false representations regarding UCR and payment of claims through the United States mail and wire services to the Plaintiffs, the Class, and the providers. United and Viant have fraudulently represented that they accurately and appropriately offered and paid the UCR rates as the actual amount owed by them for the Plaintiffs' IOP services.

50.     Only after IOP services have been provided does United, through Viant and arising out of separate contract between United and Viant, reprice the claims, in violation of the terms of the Plaintiffs' insurance policies. For ERISA plans, this violation is clearly a breach of

United's fiduciary duty to administer plans solely in the interest of the plan and its beneficiaries. For non-ERISA plans, the violation is the same under the applicable state statute.

51.     Viant, through written and oral correspondence, represents to IOP providers that it has authority to negotiate on behalf of the patients. When Viant does this, it has no knowledge of the patients' plan terms or language and has no knowledge of the agreement between the provider and the patient.

52.     Despite having no access to plan terms, Viant represents to providers that it has authority to negotiate with them based on plan terms. Further, the providers have no way to contest Viant's assertions with United as United no longer handles or processes the claim once it has sent the claim to Viant.

53.     As to those patients with ERISA plans, United violates its obligations and fiduciary duties under ERISA as it does not advise the patients, its members, that payments are actually underpayments. As underpayments, their decision constitutes an adverse benefit determination. Instead, on the Explanation of Benefits (EOBs) notices, required by ERISA, sent to the patients and providers, only a remark code indicates Viant's involvement. Nowhere does the EOB state that Viant's repricing is permitted under the policy and that the repriced amount is consistent with plan terms. Nowhere does the EOB state that it is an adverse benefit determination that the patient has the right to appeal.

54.     Each of the Plaintiffs, under ERISA, has the right to appeal an adverse benefit determination; however, United and Viant conspire to prevent the underpayment from appearing as an adverse benefit determination and prevent Plaintiffs from appealing the determination. Under ERISA and the CFR implementing ERISA, an "adverse benefit determination" is defined as:

> Any of the following: A denial, **reduction**, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, **reduction**, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, **reduction**, or termination of, or a failure to provide or make payment (in whole or in part) **for, a benefit resulting from the application of any utilization review**, as well as a failure to cover an item or service for which benefits are otherwise provided

because it is determined to be experimental or investigational or not medically necessary or appropriate;

29 C.F.R. § 2560.503-1 (emphasis added)

55.     United paid reduced benefits and did not issue Plaintiffs adverse benefit determinations in an EOBs as required.

56.     As such, United never provided the Plaintiffs or their representatives the opportunity to appeal the underpayment, circumventing the very purpose of ERISA, and incurring huge liabilities for Plaintiffs who reasonably believed they had meaningful out-of-network coverage.

57.     Viant claims to use a proprietary database and/or pricing method to price claims.

58.     Viant does neither. It receives rates from United, and then applies them to claims for IOP treatment services indiscriminately and lies to patients and providers when questioned.

59.     United and Viant know that they are not paying UCR as required and that they are causing the patients, their own members, extreme financial hardship at the hardest times of their lives, all in a Randian quest to make money.

60.     While the exact number of patients who relapsed and patients forced out of business is unknown, the number is substantial and represents a substantial number of lives lost and destroyed in furtherance of corporate profits and executive bonuses.

**JURISDICTION AND VENUE**

61.     Plaintiffs are residents of this federal judicial district, and the amount in controversy exceeds $5,000,000. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) as the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action where at least one member of a class of plaintiffs is a citizen of a State different from any defendant.

62.     The claims asserted involve matters of interstate and national interest, and the claims at issue arise under Federal Law.

63.     This court has personal jurisdiction over Defendants because United and/or its subsidiaries maintain offices and transact business across the State of California, including at

corporate offices within this jurisdiction. United transacts business in California in such volume that it is at home in this jurisdiction, and subject to the personal jurisdiction of this court.

64.     This court has personal jurisdiction over Viant because Viant and/or its subsidiaries transact business so frequently and with such regularity in Northern California that they avail themselves to the protections of California's laws, are at home in this jurisdiction, and subject to the personal jurisdiction of this court.

65.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), and 18 U.S.C. § 1965, because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and because one or more of the Defendants conducts a substantial amount of business in this Judicial District.

## THE PARTIES

### *Plaintiffs*

66.     Plaintiff, LD is a pseudonym for an adult behavioral health patient whose identity and health information are protected in this filing pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), *codified at* 42 U.S.C. §§ 1320(d)(6), *et seq*. At all relevant times, LD was and is a resident of this federal judicial district.

67.     DB is a pseudonym for an adult behavioral health patient whose identity and health information are protected in this filing pursuant to HIPAA.

68.     BW is a pseudonym for an adult behavioral health patient whose identity and health information are protected in this filing pursuant to HIPAA.

69.     RH is a pseudonym for an adult behavioral health patient whose identity and health information is protected in this filing pursuant to HIPAA.

70.     CJ is a pseudonym for an adult behavioral health patient whose identity and health information are protected in this filing pursuant to HIPAA.

### *Defendants*

71.     Defendant United is a California corporation, with its principal place of business at 425 Market Street, 14th Floor, San Francisco, CA  94105. UNITED is a "provider of mental

health[8]" and manages behavioral health services for UnitedHealth Group. It is responsible for authorizing treatment and the payment of claims related to behavioral services covered under health plans sponsored or administered by UnitedHealth Group Incorporated or its many wholly owned and controlled subsidiaries, including United Healthcare. None of the subsidiary companies are independent, rather they all act in concert to maximize profits for the shareholders of UnitedHealth Group.

72.     Defendant Viant is a Nevada corporation with its principle place of business located at 535 East Diehl Road Suite 100 Naperville, IL 60563.

73.     Defendant Viant is a wholly owned subsidiary of Viant Holdings, Inc. Viant Holdings, Inc. is a wholly owned subsidiary of Multiplan, Inc. Multiplan Inc., is a New York Corporation with its principle place of business located at 115 5th Avenue, New York, NY 10003.

*Other Interested Parties*

74.     Apple, Inc. ("Apple") is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014, in Santa Clara County. Apple has over 47,000 employees in the United States.

75.     Apple sponsors an employer funded health plan for its employees.  The Apple plan is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Health benefits under the Apple plan are administered by United.

76.     Tesla, Inc. ("Tesla") is a Delaware corporation with its principal place of business at 3500 Deer Creek Road, Palo Alto, California 94304, in Santa Clara County. Tesla has more than 48,000 employees in the United States.

77.     Tesla sponsors an employer funded health plan for its employees.  The Tesla plan is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Health benefits under the Tesla plan are administered by Cigna

---

[8] 2018 Statement of Information of United Behavioral Health, Document G063267, Filed September 26, 2018.

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

## GENERAL ALLEGATIONS

*The Defendants' Roles and Responsibilities with Respect to Claims*

78.     United is one of the nation's largest health insurers. As a health insurer, United, is responsible for administering and issuing payments for healthcare services provided to their members.

79.     Every claim at issue in this litigation has been underpaid by United and overpaid or currently owed by the Plaintiffs and the Class.

80.     None of the claims have been denied. As none of the claims have been denied, the issue presented here is one of payment and not one of coverage.

81.     Every plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR rate. The UCR for IOP services should reflect the prevailing charge amongst similar providers in a similar geographic area.

82.     Every plan at issue in this litigation that requires the UCR rate to reflect the prevailing charge among similar providers in a similar geographic area.

83.     United has contracted with Viant without receiving the approval or consent of any patient or provider. United contracts with Viant solely to lower the amount that United pays for out-of-network IOP claims.

84.     No policy holder is a party to this agreement or privy to its terms.

85.     No provider is a party to this agreement or privy to its terms.

86.     No plan sponsor is a party to this agreement or privy to its terms.

87.     Individuals and families who do not receive employer-sponsored health insurance often purchase health insurance policies directly from United or through the marketplace. For these plans, United has sole responsibility and discretion to administer and pay claims.

88.     Some people receive their health benefits through government-sponsored plans, welfare trusts and other sources. United contracts to provide claims pricing and administrative services for those plans.

89.     People who receive their health insurance through a private employer-sponsored benefit plan are typically participants or beneficiaries of plans governed by ERISA. These

ERISA plans are either fully insured or self-funded by the plan sponsor.

90.     When the ERISA plan is insured by United, United not only is responsible for administering a claim brought under the plan, but also is financially responsible for the payment of the claim. United is the Plan Administrator, and an ERISA fiduciary, for such ERISA plans.

91.     For non-ERISA, non-Government plans, United provides plan members with plan documents, it interprets and applies the plan terms, it makes coverage and benefits decisions, and it handles appeals of coverage and benefits decisions.

92.     For self-funded ERISA plans, the plan sponsor / employer will typically enter into an "administrative service agreement" ("ASA") with United to perform administrative responsibilities, such as providing plan members with plan documents, interpreting and applying plan terms, making coverage and benefits decisions, handling appeals of coverage and benefits decisions, and providing for payment in the form of medical reimbursements.

93.     The administrative services agreements either explicitly or constructively appoint United as an ERISA fiduciary, and delegate to United authority and responsibility to administer claims and make final benefits decisions, based on claim procedures and standards that United develops. United collects administrative services fees from the ERISA plans.

94.     Under the administrative services agreements, the ERISA plans remain responsible for funding the expense of medical care plan beneficiaries receive. United was responsible for pricing and processing claims on plan sponsors' behalf, pursuant to the ASA.

95.     For ERISA Plans that are self-funded, but do not specifically designate a Plan Administrator, United functions as the de facto Plan Administrator. United functions as a Plan Administrator insofar as it exercises a delegated authority to provide plan documents to participants, receive benefit claims, evaluate and process those claims, review the terms of the plan, make initial benefit determinations, make and administer benefit payments, handle appeals of benefit determinations, and serve as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations. In carrying out these Plan Administrator functions, United possesses requisite authority to be deemed a plan fiduciary.

96.     United contracted with Viant without receiving the approval or consent of any

plan sponsor. United did not disclose the presence of Viant to any plan sponsor or Patient. United has never made the terms of its agreement with Viant known to any plan sponsor or plan member. United did not disclose the contract with Viant in any plan documents or other material provided to plan sponsors or patients.

*UCR Reimbursement of IOP Claims*

97.     All Plaintiffs have United health insurance plans that have underpaid the IOP claims at issue here. All of the plans provide coverage for services rendered by out-of-network mental health and substance use disorder treatment. All plans relevant covered the treatment provided to Plaintiffs. The issue in this litigation is the underpayment of benefits and not coverage of claims for benefits.

98.     Plans which offer coverage for out-of-network services, including the IOP services at issue here, are marketed to prospective members and plan groups as benefiting them with the freedom and flexibility to choose the health care provider of their choice, including out-of-network providers. These plans charge a higher premium or contribution in exchange for this purported freedom of choice.

99.     United's underpayment of the claims at issue here resulted in unduly large balance bills to Plaintiffs. Plaintiffs then paid, out of their own pockets, the amount that they were balance billed by the providers for IOP treatment.

100.     United has received out-of-network IOP claims for many years, providing a wealth of data more than sufficient to make a reasonably informed determination of UCR rates.

101.     United purports to use standardized, empirically determined, pricing methodologies to arrive at UCR amounts. Yet, United ignores this data and uses Viant to set arbitrary, capricious and unreasonably low reimbursement rates. This practice is even more baffling given the legacy of the Ingenix litigation. United employs Viant to deceive patients and providers and to avoid providing full plan benefits.

102.     For every claim at issue in this litigation, United represented to the Plaintiffs that the claims would be paid at the UCR. This representation was a lie.

103.     Health plans, such as Preferred Provider Organizations ("PPOs"), which offer

coverage for out-of-network services, including IOP services, are marketed to prospective plan beneficiaries as benefiting individuals with the freedom and flexibility to choose the health care provider of their choice, including out-of-network providers. PPO plans charge members a higher premium or contribution in exchange for this purported freedom to seek treatment at a provider of the insured's choice.

104.    United, through plan documents, marketing materials, EOBs, and other materials, represented to Plaintiffs that their plans would and did pay out-of-network IOP services at the UCR amount according to an objective, empirical methodology.

105.    UCR reimbursement has become so well-established that some states, including California, require certain health plans to reimburse out-of-network services at rates using criteria that parallel the industry-standard for determining UCR. See, e.g., 28 C.C.R. § 1300.71(a)(3)(B) (referring to prevailing provider rates **charged** in the general geographic area in which the services were rendered); Fla. Stat. Ann. § 641.513(5) (referring to "usual and customary provider **charges**" for similar services in the community where the services were provided). Because the industry standard traditionally has been for reimbursement according to the UCR, out-of-network providers and their patients reasonably expect claims to be reimbursed based on UCR.

*United and Viant's Re-Pricing Scheme*

106.    United has contracted with Viant to systematically underpay IOP claims at rates well below the UCR.

107.    United and Viant systematically concealed and continue to conceal their underpayment scheme, including through material misrepresentations, omissions, and misleading statements about pricing and payment methods.

108.    Despite both United's and Viant's access to a wealth of provider charge data, United and Viant arrive at reimbursement rates based solely on arbitrary, profit-oriented rate setting practices.

109.    Upon information and belief, United provides Viant with a benchmark maximum reimbursement rate. Each day, Viant representatives are tasked with sealing a negotiation for the

lowest possible percentage of that rate. The lowest rate achieved is then shared amongst all Viant representatives, to act as the replacement benchmark. Viant's compensation is a function of how little they agree to pay as a percentage of United's provided ceiling rate.

110.    This arbitrary, competitive underpricing bears no resemblance to the methods of claims pricing that United claims to use. Instead, United and Viant's scheme deprives plan participants of meaningful insurance coverage for the IOP services received, in direct contravention of the terms of their insurance plans.

111.    It is arbitrary, capricious, and improper for United and Viant to use any method for establishing reimbursement rates other than the UCR methodologies specified in Plaintiffs' plans.

112.    United has a fiduciary duty to observe the pricing policies laid out in Plaintiffs' insurance contract to pay Plaintiffs' claims at a legitimate UCR rate.

113.    Despite this duty, for every claim at issue, when United receives the claim requesting payment, United sends the claim to Viant via an Electronic Data Interchange ("EDI") instead of issuing payment as is its duty under the terms of the policy.

114.    The EDI provides an automated transfer of data in a specific format between United and Viant that United sends to Viant for third party repricing and negotiations.

115.    Upon information and belief, Viant receives no individual plan terms or language in the EDI process or at any other time from United.

116.    Upon information and belief, United sends a repriced rate in the EDI that represents the maximum that Viant is authorized to negotiate up to in the repricing and negotiation process.

117.    The rate is not revealed or told by United to patients, providers, or plan sponsors.

118.    Upon information and belief, after receiving the EDI, Viant sends a proposed payment for claims it receives to the provider who rendered the services that are the subject of the claim.

119.    This is the start of Viant's "negotiation" with providers.

120.    Viant, in its correspondence, reports that the payment offer is based on UCR rates,

plan terms, or other independent bases. This representation, as Viant and United well know, is false.

121.   Upon information and belief, the payment offer, as derived from Viant's "facility review program" is actually the lowest payment amount that a Viant representative convinced a provider to accept the previous day.

122.   Upon information and belief, when Viant makes this "offer" to a provider, they also send a "patient advocacy letter" ("PAD" letter) to the patients and the providers claiming to represent the patient in a negotiation to reduce the billed amount.

123.   This PAD letter is not treated by either United or Viant as an EOB and does not comply with the requirements of an EOB under ERISA and its implementing legislation.  Nor is it an "adverse determination" letter as that term is defined under ERISA.

124.   When providers or patients attempt to contact United to dispute or challenge unreasonable reimbursement rates, United refuses to further handle or process the claim. Neither Viant nor United treats disputes of low payment as "appeals" of an adverse benefit determination, despite the express definition of adverse benefit determination in the regulations implementing ERISA.

125.   Upon information and belief, Viant's contract with United provides a small amount that Viant is permitted to offer over and above the initial underpayment (the "up to"); however, Viant's compensation is directly tied to the amount below this authorized amount that they are able to compel provider to accept in satisfaction of services the patients received.

126.   Upon information and belief, Viant receives no compensation from United for negotiations that settle at the "up to" amount.

127.   Neither Viant nor United will affirmatively disclose how the rate that they offer to pay is determined, claiming various privileges that are to be found nowhere in any policy language. Viant although in contractual privity with United, can point to no plan language, that permits it to "negotiate" on behalf of the patients and to effectively change plan terms with the patients written consent.

128.   Viant cannot do so because it does not receive any plan language or plan terms

from United and never obtains authority from the patients to represent them.

129.    It is clear that neither United's or Viant's methods are based on a review of the prevailing or competitive charges for similar healthcare services by similar types of providers within the same geographical area at the time.

130.    It is arbitrary, capricious, improper, and a breach of plan terms for United to pay reimbursement rates other than a true UCR arrived at under a fair methodology.

*United and Viant's False Representations of UCR Reimbursement*

131.    Plaintiffs and the Class have obtained out-of-network IOP treatment for which they, their agents, or their representatives filed medical reimbursement claims under their United health insurance plans. Each of the class members is insured under an arrangement that covers out-of-network benefits at the UCR rate specified in the policy.

132.    The harms being inflicted on Plaintiffs by United and Viant are typical of those being suffered by members of the Class.

133.    Patients expect their health plans to accurately and appropriately reimburse them for their services based on UCR rates. Essentially, they expect their health insurance policy to actually provide health insurance.

134.    Plaintiffs were not appropriately reimbursed for the claims at issue.

135.    At all relevant times, Plaintiffs, their agents, and/or representative submitted the appropriate claim forms for payment to United. The claim forms include information such as the type of service, the coding for the service, and other information by which the claim can be processed and paid. The claim form also includes providers' billed charges. These bills are submitted on industry standard forms, commonly known as Uniform Billing ("UB") forms.

136.    For alcohol and other substance abuse IOP program services, the HCPCS 2016 code used is H0015: "Alcohol and/or drug services; intensive outpatient (treatment program that operates at least 3 hours/day and at least 3 days/week and is based on an individualized treatment plan), including assessment, counseling; crisis intervention, and activity therapies or education." One unit of service equals three hours of therapy in a single day, and appropriate clinical documentation is usually required. The four-digit revenue code 0906 for intensive outpatient

services, chemical dependency is used for billing purposes.

137.    For mental health IOPs, the HCPCS 20416 code for mental health IOP sessions is S9480: "Intensive outpatient psychiatric services, per diem." For this service, a billing code of 0905 for intensive outpatient psychiatric services is used.

138.    For each claim at issue here, providers submitted compliant, clean claims in keeping with industry practices for the services provided.

139.    After processing Plaintiffs' claims, United should have issued payment and sent an EOB directly to the Plaintiffs and their treating providers.

140.    United does not follow this well-established industry procedure in processing the claims at issue; instead, having entered a "cost containment" contract with Viant, unknown to the Plaintiffs, providers, or plan sponsors. United did not issue payment upon receiving the claims at issue despite acknowledging that these were all covered claims; instead, United sent the claims to Viant knowing and intending that they would underpay the claims at rates well below the UCR rate.

*The Viant Grift*

141.    Despite never being told of the existence of Viant and never having given Viant permission to negotiate on their behalf and in disregard the actual terms of their insurance policy, the Plaintiffs received overly large balance bills and paid providers the shortfall caused by United's underpayments.

142.    The Plaintiffs only become aware of Viant's involvement in their claims after IOP services had been provided and they became personally obligated to the providers for payment.

143.    The Plaintiffs then received the aforementioned PAD letter from Viant informing them that Viant would be negotiating reimbursement rates on their behalf. Nowhere in the letter did it state that Viant was authorized on the Plaintiffs' behalf or state that Plaintiffs could 'opt-out' of this negotiation and have their claims processed by United for payment.

144.    The PAD letter does not meet the legal content and disclosure requirements of an EOB under an ERISA plan, and does not disclose that Viant is not given the specific terms and

language as to each patients' plan.

145.    Despite being asked thousands of times, or more, by patients, providers and others, no Viant representative has ever been able to point to any policy language that allows Viant to negotiate on behalf of patients.

146.    Viant has not obtained power of attorney or other authority from any Plaintiff that would allow them to act as the Plaintiff's agent in billing and payment negotiations with these out-of-network providers.

147.    Viant's contract is with United. Their contract provides monetary incentives for Viant to reduce the amount United pays on out-of-network claims. These incentives in no way consider the balance bills that the Plaintiffs subsequently faced and paid and are without reference to the actual terms of the actual health insurance plans, plans that United drafted.

148.    Although the communications from Viant contain language that superficially appears beneficial to the Plaintiffs, stating that where their treating providers accepted the "negotiated" payment amount, they have agreed not to balance bill them; this language is both disingenuous and is in no way permitted under the plan terms.

149.    First, the providers do not accept Viant's unreasonably low payment offers, and do not agree to waive patient responsibility. Second, this letter shows that Viant alters the terms of the insurance policy, without actual knowledge of the terms of the insurance policy or consent to alter them. Third, Viant, without authority, interferes with the contractual agreements between patients and their treating providers.

150.    Any instances where a provider does accept this underpayment would be outside of the present litigation as accepting the underpayment requires the provider to agree not to balance bill the patient.

151.    Every IOP provider relevant to this litigation is a non-participating, out-of-network provider with United. Every IOP provider entered into a written financial responsibility contract prior to admission whereby each Plaintiff agreed to be liable for the difference between the amount the treating provider billed, and the amount United reimbursed. Viant has and had no right or authority to intervene as a third-party to this contract.

152.    Further, when the Plaintiffs did eventually receive an EOB from United, the EOB did not show that it was actually an adverse benefit determination. The only indication of the underpayment on the EOB is in the remark code section that mentions, but does not explain, that Viant was used to reprice the claim.

153.    Refusing to accept Viant's 'negotiation' Providers have no alternative but to balance bill the patients for the amounts that they are owed as the result of the massive underpayment. Should providers fail to balance bill, United would like claim that they were no longer responsible for payment of the claims as the provider waived the bill.

154.    Even though the providers do not accept the low "negotiated" amounts, this is still the amount paid by United. Viant still receives payment when the amount paid by United is below the "up to" amount given by United.

*The Harm Caused to the Plaintiffs and Class*

155.    All the claims at issue here were wrongly and illegally underpaid, causing Plaintiffs to be liable for an unreasonable share of the cost of their medical treatment.

156.    For each of the claims at issue here, Plaintiffs insurance contracts state that they will reimburse at the UCR rate. It is an abuse of its discretion and fiduciary duties for United and/or Viant to calculate out-of-network benefits using any method that does not calculate UCR rates based on fair, neutral, and specified criteria, like those given in Plaintiffs' plans' reimbursement policies.

157.    United and Viant are required to use fair and transparent procedures in pricing and paying out-of-network IOP claims. As described supra, they do not.

158.    As a result, United has systematically underpaid the Plaintiffs' and Class' claims the beginning of the claims period for the present litigation.

159.    UCR calculations are supposed to be based on the neutral, objective, and transparent methodology as set forth in United's own explanation of its reimbursement policies.

160.    United and Viant did not base pricing and payments based on comparable providers' IOP charges, or upon any other objective, neutral or reasonable calculation rate.

161.    United contracted with Viant to proffer a justification for systematic

underpayment. As a result, the United and Viant drastically underpriced and underpaid the claims to the detriment of the Plaintiffs, United's insureds.

162.    For the claims at issue here, United intentionally led Plaintiffs and the Class to believe that benefits reimbursement was determined based on a UCR rate.

163.    Furthermore, the communications from United and Viant representing that benefits were paid pursuant to the definition of UCR in the plan terms are clear lies.

164.    At no point have United or Viant disclosed their pricing methodologies and they continue to refuse to do so as doing so would expose the rates for the sham they are.

165.    As a result of United's and Viant's affirmative misrepresentations, and their concealment of the true manner in which they reimbursed out-of-network IOP claims, Plaintiffs were induced by United and Viant to incur significant expenses in the forms of excessive balance bills resulting from United's underpayment.

166.    Plaintiffs reasonably expected that their health insurance, which gave them the freedom to choose out-of-network providers, would properly calculate and pay out-of-network benefits according to the UCR rate, as set forth in their plan terms.

167.    By causing the Plaintiffs to incur and pay excessively large balance bills, United's and Viant's illegal and improper actions breached their fiduciary duties and cause real harm to the Plaintiffs.

*Plaintiffs' Allegations*

168.    The following are additional allegations relating to the manner in which United improperly engaged with Viant for improper pricing and payment of services provided to Plaintiffs:

<u>LD</u>

169.    At all relevant times, LD was a full-time employee of Apple and a participant in an employer funded benefits plan offered by Apple and subject to ERISA.

170.    At all relevant times, health benefits for LD's Apple benefits plan were administered by United.

171.    At all relevant times, LD was actively enrolled in a United PPO plan which

offered out of network benefits for behavioral health services, including IOP treatment.

172.    In 2018, LD was diagnosed with ICD-10 Code F.10.20, or "Alcohol Use Disorder."  Soon thereafter, LD sought treatment at Summit Estate, Inc. ("Summit Estate"), a duly licensed and accredited out of network behavioral health provider located in Los Gatos, CA, in Santa Clara County.

173.    Prior to admitting to treatment, to ascertain the precise financial responsibility LD would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of LD's insurance card.  During this call, United's representative verified that LD had active benefits for out of network behavioral health treatment, and represented that the plan would pay 90% of UCR rates until LD's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met.  United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR rates.

174.    At all relevant times, based upon Summit Estate's prior dealings with United and upon the representations made on the phone call and on the plain language of LD's employer benefit plan, it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate.

175.    Based upon these assurances, and with an understanding of the plain terms of the employer benefit plan, LD decided to attend treatment at Summit Estate and paid, in full and up front, all out of pocket cost sharing expenses, such as the deductible and co-insurance, in order to take full advantage of the maximum benefit available: 100% of UCR rates.

176.    Between 7/29/2019 and 12/31/2019, across two treatment episodes, LD received 30 days of IOP behavioral health treatment services at Summit Estate.

177.    After LD received treatment, Summit Estate submitted timely invoices to United seeking payment pursuant to the terms stated on the verification call LD's employee benefit plan. Suddenly and without warning, United caused those claims to be sent to its agent, Viant, for repricing.  As a result of Viant's repricing, United allowed only $8,733.60 of $ $64,687.50 billed to United for LD's IOP services, or 13.5% of the billed charges. The allowed amount includes

DB's out of pocket payments, in addition to United's payments.

178.    Because of United and Viant, LD has been denied the full benefits available under the Apple benefit plan and is now responsible for a balance bill owed to Summit Estate of **$55,953.90**.

179.    LD, and Summit estate on behalf of LD have made numerous, more than two, efforts to appeal and negotiate the underpaid amounts, exhausting all administrative remedies available.

180.    LD has been forced to enter into and make payments on a payment plan with Summit Estate for amounts that should have been covered by United.

181.    LD would not have sought treatment for behavioral health if LD had known that the benefits would be repriced by Viant.

<u>DB</u>

182.    At all relevant times, DB was a full-time employee of Apple and a participant in an employer funded benefits plan offered by Apple which is subject to ERISA.

183.    At all relevant times, health benefits for the Apple plan were administered by United.

184.    At all relevant times, DB was actively enrolled in a United PPO plan which offered out of network benefits for behavioral health services, including IOP treatment.

185.    In 2018, DB was diagnosed with ICD-10 Code F.10.20, or "Alcohol Use Disorder."  Soon thereafter, DB sought treatment at Summit Estate in Los Gatos, CA, in Santa Clara County.

186.    Prior to admitting to treatment, to ascertain the precise financial responsibility DB would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of DB's insurance card. During this call, United's representative verified that DB had active benefits for out of network behavioral health treatment, and represented that the plan would pay 90% of UCR once DB's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met.  United specified these out of pocket amounts and further stated that

once these were fully satisfied, United would pay 100% of UCR rates.

187.   At all relevant times, based upon Summit Estate's prior dealings with United and upon the representations made on the phone call and on the plain language of DB's employer benefit plan, it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate.

188.   Based upon these assurances, and with an understanding of the plain terms of the employer benefit plan, DB decided to attend treatment at Summit Estate and paid, in full and up front, all out of pocket cost sharing expenses, such as the deductible and co-insurance, in order to take full advantage of the maximum benefit available: 100% of UCR rates.

189.   Between 11/26/2018 and 4/11/2019, across two treatment episodes, DB received 51 days of IOP behavioral health treatment services at Summit Estate.

190.   After DB received treatment, Summit Estate submitted timely invoices to United seeking payment pursuant to the terms stated on the verification call DB's employee benefit plan. Without warning, United caused those claims to be sent to its agent, Viant, for repricing.  As a result of Viant's repricing, United allowed only $ 9,375.00 of the $112,316.28 billed to United for IOP services, or 16.7% of the billed charges. The allowed amount includes DB's out of pocket costs.

191.   Because of United and Viant, DB has been denied the full benefits available under the Apple benefit plan and is now responsible for a balance bill owed to Summit Estate of **$93,566.28**.

192.   DB, and Summit estate on behalf of DB have both made numerous, more than two, efforts to appeal and negotiate the underpaid amounts, exhausting all administrative remedies available.

193.   DB has been forced to enter into and make payments on a payment plan with Summit Estate for amounts that should have been covered by United.

194.   DB would not have sought treatment for behavioral health if DB had known that the benefits would be repriced by Viant.

<u>BW</u>

195.    At all relevant times, BW was a full-time employee of Apple and a participant in an employer funded benefits plan offered by Apple which is subject to ERISA.

196.    At all relevant times, health benefits for the Apple plan were administered by United.

197.    At all relevant times, BW was actively enrolled in a United PPO plan which offered out of network benefits for behavioral health services, including IOP treatment.

198.    In 2018, BW was diagnosed with ICD-10 Code F.10.20, or "Alcohol Use Disorder."  Soon thereafter, BW sought treatment at Summit Estate, Inc. located in Los Gatos, CA, in Santa Clara County.

199.    Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card.  During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR rates until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met.  United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR rates.

200.    At all relevant times, based upon Summit Estate's prior dealings with United and upon the representations made on the phone call and on the plain language of BW's employer benefit plan, it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate.

201.    Based upon these assurances, and with an understanding of the plain terms of the employer benefit plan, BW decided to attend treatment at Summit Estate and paid, in full and up front, all out of pocket cost sharing expenses, such as the deductible and co-insurance, in order to take full advantage of the maximum benefit available: 100% of UCR rates.

202.    Between 7/29/2019 and 12/31/2019, across two treatment episodes, BW received 26 days of IOP behavioral health treatment services at Summit Estate.

203.    After BW received treatment, Summit Estate submitted timely invoices to United

seeking payment pursuant to the terms stated on the verification call BW's employee benefit plan. Without warning, United caused those claims to be sent to its agent, Viant, for repricing. As a result of Viant's repricing, United allowed only $8,046.39 of the $56,062.50 billed to United for IOP services, or 14% of billed charges. The allowed amount includes DB's out of pocket contributions, in addition to the money United paid.

204.   Because of United and Viant, BW has been denied the full benefits available under the Apple benefit plan and is now responsible for a balance bill owed to Summit Estate of **$48,016.11**. BW, and Summit estate on behalf of BW have both made numerous, far more than two, efforts to appeal and negotiate the underpaid amounts, exhausting all administrative remedies available.

205.   BW has been forced to enter into and make payments on a payment plan with Summit Estate for amounts that should have been covered by United.

206.   BW would not have sought treatment for behavioral health if BW had known that the benefits would be repriced by Viant.

<u>RH</u>

207.   At all relevant times, RH was a full-time employee of Apple, and a participant in an employer funded benefits plan offered by Apple which is subject to ERISA.

208.   At all relevant times, health benefits for the Apple plan were administered by United.

209.   At all relevant times, RH was actively enrolled in a United PPO plan which offered out of network benefits for behavioral health services, including IOP treatment.

210.   In 2018, RH was diagnosed with ICD-10 Code F.10.20, or "Alcohol Use Disorder." Soon thereafter, RH sought treatment at Summit Estate, Inc. located in Los Gatos, CA, in Santa Clara County.

211.   Prior to admitting to treatment, to ascertain the precise financial responsibility RH would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of RH's insurance card. During this call, United's representative verified that RH had active benefits for out of

network behavioral health treatment, and represented that the plan would pay 70% of UCR until RH's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met.  United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR rates.

212.    At all relevant times, based upon Summit Estate's prior dealings with United and upon the representations made on the phone call and on the plain language of RH's employer benefit plan, it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate.

213.    Based upon these assurances, and with an understanding of the plain terms of the employer benefit plan, RH decided to attend treatment at Summit Estate and paid, in full and up front, all out of pocket cost sharing expenses, such as the deductible and co-insurance, in order to take full advantage of the maximum benefit available: 100% of UCR rates.

214.    Between 07/01/2019 and 10/01/2019, RH received 26 days of IOP behavioral health treatment services at Summit Estate.

215.    After RH received treatment, Summit Estate submitted timely invoices to United seeking payment pursuant to the terms stated on the verification call RH's employee benefit plan. Without warning, United caused those claims to be sent to its agent, Viant, for repricing.  As a result of Viant's repricing, United allowed only $7,569.12 of the $56,062.50 billed to United for IOP services, or 13.5% of billed charges. The allowed amount includes DB's out of pocket payments, in addition to amounts United paid.

216.    Because of United and Viant, RH has been denied the full benefits available under the Apple benefit plan and is now responsible for a balance bill owed to Summit Estate of **$48,493.38**.

217.    RH, and Summit estate on behalf of RH have both made numerous, far more than two, efforts to appeal and negotiate the underpaid amounts, exhausting all administrative remedies available.

218.    RH has been forced to enter into and make payments on a payment plan with Summit Estate for amounts that should have been covered by United.

219.    RH would not have sought treatment for behavioral health if RH had known that the benefits would be repriced by Viant.

CJ

220.    At all relevant times, CJ was a full-time employee of Tesla, and a participant in an employer funded benefits plan offered by Tesla which is subject to ERISA.

221.    At all relevant times, health benefits for the Tesla plan were administered by United HealthCare ("United").

222.    At all relevant times, CJ was actively enrolled in a United PPO plan which offered out of network benefits for behavioral health services, including IOP treatment. In 2018 CJ was diagnosed with ICD-10 Code F.10.20, or "Alcohol Use Disorder." Soon thereafter, CJ sought treatment at Summit Estate, Inc. ("Summit Estate"), a duly licensed and accredited out of network behavioral health provider located in Los Gatos, CA, in Santa Clara County.

223.    Prior to admitting to treatment, to ascertain the precise financial responsibility CJ would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of CJ's insurance card. During this call, United's representative verified that CJ had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR rates until CJ's out of pocket cost sharing responsibilities such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR rates.

224.    At all relevant times, based upon Summit Estate's prior dealings with United and upon the representations made on the phone call and on the plain language of CJ's employer benefit plan, it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate.

225.    Based upon these assurances, and with an understanding of the plain terms of the employer benefit plan, CJ decided to attend treatment at Summit Estate and paid, in full and up front, all out of pocket cost sharing expenses, such as the deductible and co-insurance, in order to take full advantage of the maximum benefit available: 100% of UCR rates.

226.    Between 04/08/2019 and 05/02/2019, CJ received 12 days of IOP behavioral health treatment services at Summit Estate.

227.    After CJ received treatment, Summit Estate submitted timely invoices to United seeking payment pursuant to the terms stated on the verification call CJ's employee benefit plan. Suddenly and without warning, United caused those claims to be sent to its agent, Viant, for repricing.   As a result of Viant's repricing, United allowed only $3,419.49 of the $25,875.00 billed to United for IOP services, or 13.2% of the billed charges. The allowed amount includes CJ's out of pocket costs in addition to amounts paid by United.

228.    Because of United and Viant, CJ has been denied the full benefits available under the Tesla benefit plan and is now responsible for a balance bill owed to Summit Estate of **$22,455.51**.

229.    CJ, and Summit estate on behalf of CJ have both made numerous, far more than two, efforts to appeal and negotiate the underpaid amounts, exhausting all administrative remedies available.

230.    CJ has been forced to enter into and make payments on a payment plan with Summit Estate for amounts that should have been covered by United.

231.    LD would not have sought treatment for behavioral health if CJ had known that the benefits would be repriced by Viant.

### CLASS ACTION ALLEGATIONS

*The Plaintiff Class*

232.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure. The requirements of subparts 23(a) and (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure are satisfied in this case.

233.    Plaintiffs bring this class action on behalf of the Plaintiff Class, defined as:

Any member of a health benefit plan either administered or insured by United whose claims for out-of-network behavioral health treatment, including mental health and/or substance use disorder, were underpaid or repriced by United and Viant.

*Rule 23(a)*

<u>Numerosity</u>

234.    This putative plaintiff class includes hundreds of thousands and possibly, millions, of mental health and substance use disorder treatment patients throughout the United States and is therefore so large as to make joinder of all members impracticable within the meaning of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

<u>Commonality</u>

235.    Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, there are questions of law or fact common to all class members, including, but not limited to, the following:

a. Whether the Defendants have underpaid the Plaintiff Class for out-of-network mental health and substance use disorder services based upon improper methodologies for pricing UCR rates;

b. Whether the Defendants have breached their fiduciary duties to the Plaintiff class;

c. Whether Defendants made false representations to the Plaintiff Class as to how claims for out-of-network mental health and substance use disorder services would be paid;

d. Whether the Defendants falsely representing the method that was used to pay the claims for out-of-network mental health and substance use disorder services at the time such claims were paid;

e. Whether the Defendants falsely represented the method that was used to pay the claims for out-of-network mental health and substance use disorder at the time such claims were appealed;

f. Whether the Defendants falsely represented that the Plaintiff class owed providers amounts which should have been paid by the Defendants, and are not the financial liability of the Plaintiff class;

g. Whether the improper methodologies and systematic misrepresentations

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

employed by the Defendants made it futile to appeal the claims;

h. Whether Defendants underpayment constituted as adverse benefit determination;

i. Whether interest should be added to the payment of unpaid benefits;

j. Whether Defendants' conduct in California violates California Business and Professions Code § 17200 *et seq.*;

k. Whether Defendants conduct violates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA);

l. Whether United's conduct violated their fiduciary duties and/or duty of faith and fair dealing to the Patient Class in employing Viant to 'negotiate' claims;

m. Whether Viant falsely represented to the Patient Class that they represented them.

n. Whether Viant caused the Patient Class to receive inappropriate 'balance' bills for IOP mental health and substance use disorder services;

o. Whether Viant was the 'agent' of any member of the Patient Class who received IOP mental health and substance use disorder services from providers;

p. What process and data Viant used in payment determinations;

q. Whether Viant made fraudulent to representations to the Patient Class regarding their IOP mental health and substance use disorder claims;

r. Whether United was obligated to pay the claims at the UCR under the terms of the insurance policies;

s. Whether United revealed the involvement or probable involvement of Viant in claims handling, processing, and/or payment determinations prior to the Patient Class receiving IOP treatment;

t. Whether Viant received any appeals from the Patient Class or anyone acting on their behalf following benefit determinations;

u. Defendants' processes for handling appeals following benefit determinations;

v. What level of treatment was provided to the Patient Class;

w. What payments were made for the Patient Class' claims;

x.  Whether Viant's methodology adequately and/or accurately applies the relevant UCR in determining benefit amounts;

y.  Whether Viant's pricing data accurately reflect the relevant UCR in the relevant geographical area;

z.  Whether Viant's repricing actions constitute inappropriate kickbacks

aa. Whether pricing practices comported with the terms of the Patient Class' health benefits and insurance plans;

bb. Whether Viant was given the members' health benefits and insurance plans.

cc. Whether Viant utilized the members' health benefit and insurance plans in determining payment amounts;

dd. Whether United delayed processing appeals;

ee. Whether Viant's prospective involvement was disclosed in member's benefit plans;

ff. Whether United breached its fiduciary duty in contracting with Viant for claims pricing;

<u>Typicality</u>

236.    The claims of Plaintiffs are typical of the claims of the defined plaintiff class, within the meaning of Rule 23(a)(3) of the Federal Rules of Civil Procedure, and are based on and arise out of the same uniform and standard illegal practices of the Defendants, as alleged herein by the Plaintiffs. The proposed class representatives state claims for which relief can be granted that are typical of the claims of absent class members. If litigated individually, the claims of each class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

<u>Adequacy</u>

237.    Plaintiffs are committed to pursuing this action and are prepared to serve the proposed class in a representative capacity with all of the obligations and duties material thereto. They will fairly and adequately represent the interests of the members of the proposed class within the meaning of Rule 23(a)(4) of the Federal Rules of Civil Procedure, and will not have

any interests adverse to, or that directly and irrevocably conflict with, the interests of the other class members.

238.     Plaintiffs have retained competent counsel, extremely experienced in class action litigation, which will adequately prosecute this action, and will assert, protect and otherwise well represent the named Class representatives and absent class members.

### Rule 23(b)

239.     The prosecution of separate actions by individual class members would create a risk of adjudication with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to this action, or could substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

240.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible rights within the Plaintiff Class. Fed. R. Civ. P. 23(b)(1)(A).

241.     The Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seek equitable remedies with respect to the class as a whole, within the meaning of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

242.     The common questions of law and fact enumerated above predominate over individual questions, and a class action is a superior method for the fair and efficient adjudication of this controversy, within the meaning of Rule 23(b)(3) of the Federal Rules of Civil Procedure. Common or general proof will be used for each member of the class to establish each element of their claims, as identified above. Additionally, proceeding as a class action is superior to other available methods of adjudication. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## CAUSES OF ACTION

I.       **Violations of RICO: 18 U.S.C. § 1962(c)**
        *On Behalf of Plaintiffs and the Class Against United and Viant*

243.    Plaintiffs and the Class hereby repeat and reassert the General and Class allegations as if fully set forth herein.

244.    The object of civil Racketeer Influenced and Corrupt Organizations Act (RICO) is not merely to compensate victims but to turn them into prosecutors, that is, private attorneys general, dedicated to eliminating racketeering activity. 18 U.S.C.A. § 1961 et seq.

245.    Plaintiffs and the Class' RICO claim is not precluded by the McCarran–Ferguson Act, § 2(b), 15 U.S.C. § 1012(b) as "RICO is not a law that 'specifically relates to the business of insurance'" and where, as here, the claims at issue do not "invalidate, impair, or supersede" any relevant state laws regulating insurance. Humana Inc. v. Forsyth, 525 U.S. 299, 307 (1999). Defendants can comply with both RICO and relevant state laws governing insurance and Plaintiffs' RICO claim is not precluded.

246.    The elements of a RICO claim under 18 U.S.C. § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996).

247.    United and Viant acted as an "enterprise" under 18 U.S.C. § 1961(4), have engaged in acts of racketeering activity, namely violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), committing "Federal Health offenses" per 18 U.S.C. § 24 that include violations of 18 U.S.C. § 1027, 18 U.S.C. § 1343, and 18 U.S.C. § 1345.

248.    United indisputably provides a "health care benefit program[9]" to its members, which includes Plaintiffs and the Class.

249.    A "Federal health offense" is defined as "a violation, or a criminal conspiracy to

---

[9] "'health care benefit program' means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C.A. § 24(b).

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

violate… [18 U.S.C. §] 1027[10], section 501 of the Employee Retirement Income Security Act of 1974" section 501 of the Employee Retirement Income Security Act of 1974" 18 U.S.C. § 24.

250.    United and Viant's actions, as alleged supra, are criminal acts under 18 U.S.C. § 1027 that states, "[w]hoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published,… of any employee welfare benefit plan… makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title…shall be fined under this title, or imprisoned not more than five years, or both."

251.    United, under ERISA, is required to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." (29 U.S.C. § 1133). Under ERISA, a notification of any adverse benefit determination must communicate, "in a manner calculated to be understood by the claimant ... [t]he specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503–1(g)(1)–(g)(1)(i). The notification must also make "[r]eference to the specific plan provisions on which the determination is based," 29 C.F.R. § 2560.503–1(g)(1)(ii), and it must describe "the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." 29 C.F.R. § 2560.503–1(g)(1)(iv).

252.    The Plaintiffs and the Class received EOB's from United that did not meet these requirements. The EOB's did not state that they were adverse benefit determinations, did not indicate in the remark code that the adverse benefit determination was the result of Viant's repricing, and did not provide any process by which the adverse benefit determinations could be appealed.

253.    Similarly, the PAD letter described supra that Viant sent are not EOB letters that comply with ERISA's requirements and are misleading as Viant is neither given nor reviews

---

[10] § 1027. False statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974

plan terms and is not a party to the insurance contract between United and their insureds.

254.    United and Viant's actions, as alleged supra, are criminal acts under 18 U.S.C. § 1035 that makes it a crime "in any matter involving a health care benefit program" to "knowingly and willfully" make "any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services." Id.

255.    United and Viant's actions, as alleged supra, are criminal acts under 18 U.S.C. § 1343 that makes it a crime for:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 1343

256.    At the time United made representations to the Plaintiffs and the Class in the EOB letters that benefits were available and paid based on the UCR rate, United already had in place a contract with Viant to reprice and underpay the claims when they were submitted.

257.    At all relevant times, United knew that the claims at issue here would be underpaid well below the UCR rate.

258.    United thus obtained the value of the Plaintiffs and Class' overpayments for United's underpayment of services and retained those benefits illegally.

259.    Viant, based on its contract with United, is paid based on the amount below the "target" that it "saves" United for each claim. Viant makes false representations to the Plaintiffs, the Class, and providers as to their authority to negotiate, and the source of their "offered" payment amounts. United then pays Viant the money paid to it by the Plaintiffs and Class, plan members, money that should be used for their treatment and care, and gives it to Viant.

260.    Viant's false representations are made by wire and US mail to the Plaintiffs, the Class, and to the providers.

261.    Thus, United and Viant are engaged in an illegal "kick-back" scheme where United and Viant take funds given to them by plan members and retain them illegally for their own benefit, forcing Plaintiffs and the Class to pay twice for the same services. The more effective the fraud, the larger the kick-back.

262.    This sort of behavior is of the exact nature and character that RICO was designed to prosecute.

263.    Plaintiffs have RICO standing to bring these claims.

264.    To allege civil RICO standing under 18 U.S.C. § 1964(c), a "plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation." Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).

265.    The harm suffered by Plaintiffs is their payment of excessive balance bills. Plaintiffs paid large sums of money that were properly United's responsibility.

266.    This harm is "by reason of" the RICO violation. Without the RICO activity engaged in by United and Viant, these harms would not have arisen as the providers would have received proper payment at the UCR for IOP services.

267.    It is the enterprise between United and Viant and the RICO violations described above that caused Plaintiffs' harm.

268.    United and Viant are "persons" within the meaning of RICO under 18 U.S.C. §§ 1961(3) and 1964(c).

269.    United and Viant carried out their underpayment scheme through their joint participation and conduct in an association-in-fact "enterprise," within the meaning of 18 U.S.C. § 1961(4). The Enterprise is comprised of United and Viant.

270.    United through the Enterprise described above and in conspiracy with Viant undertook a fraudulent scheme to underpay for IOP services.

271.    At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of RICO, 18 U.S.C. § 1962(c).

272.    The United-Viant Enterprise was at all relevant times a continuing unit involving

43

*LD, et al. v. United, et al.* – CLASS ACTION COMPLAINT

United and Viant functioning with a common purpose of underpaying for IOP services and increasing the profits the Enterprise participants and their Co-Conspirators.

273.    United and Viant remained members of the Enterprise undertaking countless and nearly constant acts of mail and wire fraud for their common purpose described above.

274.    Their fraudulent and deceptive acts further constitute criminal activity as described supra.

275.    The Enterprise was used to create a mechanism or vehicle by which United could reduce payments through the use of a deceptive, flawed process that could not be challenged effectively, including by appeal.

276.    Through their roles in the Enterprise and the scheme, Viant benefited directly, earning increased fees for every dollar they 'saved' United. Every dollar 'saved' is a dollar that should have been paid by United and instead was paid by the Plaintiffs.

277.    United participated in the conduct of the Enterprise in order to shift the costs of IOP treatment from United to Plaintiffs and the Class, United's own insureds.

278.    Using U.S. mail and interstate wire facilities, United and Viant both provided false and misleading information to Plaintiffs, the Class, and the providers, to convert those withheld funds to the Enterprise for its own direct and indirect financial gain and to discourage the use out-of-network healthcare providers.

279.    Through its wrongful conduct as alleged herein, United, in violation of 18 U.S.C. § 1962(c), conducted and participated in the conduct of the Enterprise's affairs, directly and indirectly, through a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

280.    These acts of racketeering activity have continued through the present.

281.    United and Viant acting through their officers, agents, employees and affiliates, have committed numerous predicate acts of "racketeering activity," as defined in 18 U.S.C. § 1961(5), and continue to commit such predicate acts, in furtherance of the underpayment scheme.

282.    These acts include (a) mail fraud, in violation of 18 U.S.C. § 1341, and (b) wire fraud, in violation of 18 U.S.C. § 1343. Each use of the mail or wire in furtherance of the fraudulent scheme described above is a predicate act of mail and wire fraud. These predicate acts

have been described in detail supra.

283.    In furtherance of its underpayment scheme, United, in violation of 18 U.S.C. §§ 1341, 1343, 1961 and 1962, repeatedly and regularly used the U.S. mail and interstate wire facilities to further all aspects of the intentional underpayment scheme. Each use of the mail or wire in furtherance of the scheme was a violation of the above statutes.

284.    Each such use of the U.S. mail and interstate wire facilities in furtherance of the scheme alleged in this Complaint constitutes a separate and distinct predicate act of "racketeering activity" and, collectively, constituted a "pattern of racketeering activity."

285.    The above-described pattern of racketeering activity is related because it involves the same fraudulent scheme, common persons, common out-of-network claim practices, common results impacting upon common victims, and is continuous because it occurred over several years, and constitutes the usual practice of United and the Enterprise, such that it amounts to and poses a threat of continued racketeering activity.

286.    United's and Viant's scheme to defraud is open-ended and on-going.

287.    The direct and intended victims of the pattern of racketeering activity described previously herein are the Plaintiffs and Class, whom United has forced to overpay for covered IOP services.

288.    As a result of United's fraudulent scheme, Plaintiffs and the Class were injured in their business or property by reason of United's RICO violations because they were forced to overpay for covered IOP services.

289.    United and Viant have further deprived them of the knowledge necessary to discover or challenge the underpayments.

290.    Plaintiffs and the Class' injuries were proximately caused by United's and Viant's violations of 18 U.S.C. § 1962(c) because these injuries were the foreseeable, direct, intended and natural consequence of the aforementioned RICO violations (and commission of underlying predicate acts) and, but for the RICO violations (and commission of underlying predicate acts), they would not have suffered these injuries.

291.    Pursuant to Section 1964(c) of RICO, 18 U.S.C. § 1964(c), Plaintiffs and the

Class are entitled to recover threefold their damages, costs and attorneys' fees from United and Viant and other appropriate relief.

## II.   Claim for Underpaid Benefits Under Group Plans Governed by ERISA
*On Behalf of Plaintiffs and the Class Against United*

292.    The General and Class Allegations are hereby repeated as if fully set forth herein.

293.    United violated its legal obligations under ERISA-governed plans and federal common law each time it made the benefit reductions that resulted in the underpayment of the claims at issue.

294.    These underpayments are adverse benefit determinations and are violations of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

295.    In certain employer-funded plans, which are sometimes designated Administrative Services Only or "ASO," United makes the final decision on benefit appeals and/or has been given authority, responsibility and discretion (hereinafter "discretion") with regard to the payment of benefits.

296.    Where United acts as a fiduciary or performs discretionary benefit determinations or otherwise exercises discretion, or determines final benefit appeals, United is liable for underpaid benefits to Plaintiffs and members of the class in both fully insured health plans, where benefits are paid from United's assets, and in employer-funded ASO ERISA health plans.

297.    United further violated its obligations under ERISA when it failed to comply with applicable state laws that require United to pay provider charges using the appropriate methodologies.

298.    United's omissions and lack of disclosure to the Plaintiffs and the Class, its members, violated its legal obligations.

299.    United violated obligations each time it engaged in conduct that discouraged or penalized its members' use of out-of-network providers, such as by making illegal benefit reductions and adverse benefit determinations.

300.    United, as the party which exercised all discretionary authority and control over the administration of the plan of each Plaintiff and Class member including the management and

disposition of benefits under the terms of the plan, owed a fiduciary duty to Plaintiffs and the Class.

301.    United breached its fiduciary duties to Plaintiffs and the Class by failing to pay proper out-of-network benefits without justification. United therefore owes, and should be ordered to pay, the benefits that were illegally underpaid based on the policies detailed herein.

302.    Plaintiffs, on their own behalf and on behalf of the members of the Class seek underpaid benefits, recalculated deductible and coinsurance amounts and interest back to the date their claims were originally submitted to United.

303.    Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against United.

**III.    Breach of Plan Provisions in Violation of ERISA § 502(A)(1)(B)**
*On Behalf of Plaintiffs and the Class Against United*

304.    The General and Class Allegations are hereby repeated as if fully set forth herein.

305.    United breached its plan provisions for benefits by underpaying UCR and other out-of-network reimbursement amounts covered by ERISA healthcare plans to providers in violation of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

306.    United's breaches included, among other things, the misuse of the Viant to improperly calculate UCR and reduce other benefits paid to providers for out-of-network IOP services.

307.    Under the terms of its health plans, United administers benefits and is a fiduciary.

308.    In certain employer-funded plans which are sometimes designated ASO, United makes the final decision on benefit appeals and/or has been given authority, responsibility and discretion (hereinafter "discretion") with regard to the payment of benefits.

309.    Where United acts as a fiduciary or performs discretionary benefit determinations or otherwise exercises discretion, or determines final benefit appeals, United is liable for underpaid benefits in both fully insured health plans, where benefits are paid from United's assets, and in employer funded ASO ERISA health plans.

310.    United is liable to the Plaintiffs and the Class as they have overpaid in the amount

that United was obligated to pay to providers.

311.    Pursuant to 29 U.S.C. § 1132(a)(l)(B), Plaintiffs and the Class are entitled to recovery for underpaid benefits and declaratory relief relating to United's violation of the terms of its health care plans.

### IV.    Failure to Provide and Accurate EOC and SPD and Request for Declaratory and Injunctive Relief
*On Behalf of Plaintiffs and the Class Against United*

312.    The General and Class Allegations are hereby repeated as if fully set forth herein.

313.    United's disclosure obligations under ERISA include furnishing accurate materials summarizing its group health plans, known as SPD materials, under 29 U.S.C. § 1022 and supplying accurate EOBs, SPDs and other required information is actionable under 29 U.S.C. § 1132(c).

314.    United's failure to disclose material information about its out-of-network benefit reductions, and illegal adverse benefit determinations, creating material changes to the Plaintiffs and Class' benefit policy without disclosure violated ERISA, federal regulations and federal common law.

315.    Plaintiffs and the Class have been proximately harmed by United's failure to comply with 29 U.S.C. § 1022 and 29 U.S.C. § 1024(b)(4), federal regulations, and federal common law, and are entitled to appropriate relief under ERISA, including injunctive and declaratory relief to remedy United's continuing violation of these provisions.

### V.    Violation of Fiduciary Duties of Loyalty and Due Care and Request for Declaratory and Injunctive Relief
*On Behalf of Plaintiffs and the Class Against United*

316.    The General and Class Allegations are hereby repeated as if fully set forth herein.

317.    United acted as a "fiduciary" to Plaintiffs and the Class as such term is understood under 29 U.S.C. § 1002(21)(A).

318.    As an ERISA fiduciary, United owed, and owes, its Members in ERISA plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of a like enterprise.

319.     Further, ERISA fiduciaries must act in accordance with the documents and instruments governing the group plan. 29 U.S.C. § 1104(a)(l)(B) and (D).

320.     In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, United violated its fiduciary duty of care.

321.     As an ERISA fiduciary, United owed and owes its Members a duty of loyalty, defined as an obligation to make decisions in the interest of its Members, and to avoid self-dealing or financial arrangements that benefit it at the expense of its Members under 29 U.S.C. § 1106. United cannot, for example, make benefit determinations for the purpose of saving money at the expense of its Members.

322.     United violated its fiduciary duties of loyalty and due care by, inter alia, making out-of-network benefit reductions and adverse benefit determinations that were not authorized by the plan documents and were also misrepresented on EOBs sent to the Plaintiffs and the Class, causing Plaintiffs and the Class to incur, and pay, substantial balance bills at the benefit to United's bottom line.

323.     In certain self-insured plans, which are sometimes designated ASO, United makes the final decision on benefit appeals and/or has been given authority, responsibility and discretion with regard to benefits.

324.     Where United acts as a fiduciary or performs discretionary benefit determinations or otherwise exercises discretion, or determines final benefit appeals, United is liable for underpaid benefits to Plaintiffs and the Class in both fully insured health plans, where benefits are paid from United's assets, and in employer-funded ERISA health plans.

325.     United breached its fiduciary duties by sending noncompliant EOBs and other communications to Plaintiffs and the Class.

326.     In addition, United violated (and continues to violate) its fiduciary duty of loyalty by failing to inform Plaintiffs and the Class of material information, including but not limited to flaws in the data and methodology used to determine UCR reimbursement, namely, the UCR reimbursement does not actually reflect a true and accurate UCR

327.     In fact, by using the U.S. mails and interstate wire facilities, United made

representations about UCR and payments for IOP services that it knew were untrue. United knew that both it and Viant made arbitrary and capricious decisions as to "UCR" that did not reflect a true and accurate UCR with United providing financial incentives to Viant that allowed United to pay less than the UCR in violation of the plan terms.

328.   In relying on improper pricing methods, which were noncompliant with its contractual obligations and invalid to make UCR determinations, and in applying, inter alia, a third party repricing agent, Viant, that was not authorized and nowhere disclosed to Plaintiffs and the Class in their plan documents, United violated its fiduciary obligations to Plaintiffs and the Class.

329.   Plaintiffs and the Class are entitled to assert a claim for relief for United's violation of its fiduciary duties under 29 U.S.C. § 1132(a)(3), including injunctive and declaratory relief, and its removal as a breaching fiduciary.

**VI.   Violation of Fiduciary Duties of Full and Fair Review and Request for Declaratory and Injunctive Relief**
*On Behalf of Plaintiffs and the Class Against United*

330.   The General and Class Allegations are hereby repeated as if fully set forth herein.

331.   United functioned and continues to function as the "plan administrator," within the meaning of such term under ERISA, for Plaintiffs and the Class.

332.   Plaintiffs and the Class were entitled to receive a "full and fair review" of all claims denied by United and entitled to assert a claim under 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements.

333.   Although United was obligated to do so, it failed to provide a "full and fair review" of underpaid claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for Plaintiffs and the Class by making out-of-network benefit reductions and adverse benefit determinations that are inconsistent with or unauthorized by the terms of the plans, failing to disclose the method United used to arrive at these inappropriate reductions and adverse benefit determinations, and failure to disclose the presence of and financial incentives given to Viant.

334.   ERISA and its implementing regulations set forth minimum standards for claim procedures, appeals, notice to members and the like. In engaging in the conduct described herein,

United failed to comply with ERISA, its regulations and federal common law that require a "full and fair review, failed to provide reasonable claims procedures, and failed to make necessary disclosures to its members.

335.    Plaintiffs and the Class were denied the opportunity to properly appeal United's adverse benefit determinations as United concealed from Plaintiffs and the Class, as alleged supra and through the alleged conspiracy with Viant, the requirement to exhaust internal appeals under ERISA should, therefore, be deemed to be futile and/or waived for all Plaintiffs and the Class.

336.    Plaintiffs and the Class have been harmed by United's failure to provide a "full and fair review" of appeals under 29 U.S.C. § 1133, and by United's failure to disclose relevant information in violation of ERISA and the federal common law. Plaintiffs and the Class are also entitled to a declaration by this Court that United's actions as alleged herein are in violation of its duties and obligations of ERISA and are entitled to injunctive and declaratory relief.

### VII.    Claim for Equitable Relief to Enjoin Acts and/or Practices
*On Behalf of All Plaintiffs and the Class Against United and Viant*

337.    The General and Class Allegations are hereby repeated as if fully set forth herein.

338.    Plaintiffs brings this count of their own behalf, and on behalf of the putative class, pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought to remedy Counts III through VI are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

339.    Plaintiffs and the Class have been harmed, and are likely to be harmed in the future, by United and Viant's breaches of fiduciary duties described in the Allegations and in Counts III through VI above.

340.    Additionally, incorporated into United and Viant's fiduciary duties, is the duty to act at all times in good faith and to deal fairly with Plaintiffs and the Class.

341.    United's duties include, but are not limited to, the duty to act fairly, reasonably and promptly in dealing with their insureds, their agents, and/or representatives for adjusting claims, investigating claims handling and properly paying all claims that United is obligated to

pay.

342.    Viant's duties include, but are not limited to, the fiduciary duties assumed by acting as United's agent, the duty to act fairly, reasonably and promptly in dealing with their United's insureds, their agents, and/or representatives, for adjusting claims, investigating claims handling, and properly and promptly returning the claims to United for payment.

343.    In order to remedy these harms, Plaintiffs and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

### VIII.   Claim for Other Appropriate Equitable Relief
*On Behalf of All Plaintiffs and the Class Against United and Viant*

344.    The General and Class Allegations are hereby repeated as if fully set forth herein.

345.    Plaintiffs brings this count of their own behalf and on behalf of the putative class, pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent the Court finds that the equitable relief sought to remedy Counts III through VI are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

346.    The hundreds of thousands, or more, of underpaid claims for out-of-network IOP treatment provided to United's and Empire's insureds are benefits that were conferred upon United.

347.    The Plaintiffs and the Class have paid and owe excessive balance bills as the result of United's underpayment. The difference between the appropriate payment based on the UCR rate and the amount that United actually paid is a clear benefit that Plaintiffs and the Class have conferred upon United because they paid monies out of their own pocket that United was obligated to pay.

348.    United retained this benefit failing to reimburse the over-payments made by Plaintiffs and the Class.

349.    Plaintiffs and the Class are owed payments from United as Plaintiffs and the Class were forced to pay their providers for United's shortfall.

350.    United has improperly retained the monies it should have paid for the claims at issue in this cause of action.

351.    It is inequitable to permit United to retain these benefits.

352.     As described in detail supra, the Plaintiffs and the Class relied upon United's assertion in the plan documents and reiterated during lengthy and comprehensive verification of benefits calls that out-of-network claims, when covered, would be paid at the UCR rate.

353.     Coverage is not in dispute or at issue for these claims.

354.     The payment rate of a claim is very material to a patient making decisions about where to seek treatment.

355.     As to reasonable reliance, it is reasonable for United's insureds to rely upon the representations United makes in plan documents and that its agents make during the lengthy verification of benefits calls.

356.     It is also reasonable for United's insureds to rely upon the EOBs and other written correspondence that they received from and on behalf of United.

357.     Detrimental reliance is clear, the Plaintiffs and the Class relied upon United's representations that reimbursement would be made at the UCR rate. United's failure to reimburse at the UCR rate cause Plaintiffs and the Class to spend their own money to make up for United's underpayments.

358.     Plaintiffs and the Class have been harmed, and are likely to be harmed in the future, by Defendants' actions and are entitled to appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).

### JURY TRIAL DEMAND

Plaintiffs, on their own behalf and on behalf of the Class, demand a jury trial for all claims so triable.

**WHEREFORE**, Plaintiffs, on their own behalf and on behalf of the Class, pray for judgment against the Defendants as follows:

1.     Certifying the Class and their claims, as set forth in this Complaint, for class treatment;

2.     Appointing the Plaintiffs as Class Representatives for the Class;

3.     Designating the law firm of Napoli Shkolnik, PLLC, as counsel for the Class;

4.     For general, special, restitutionary and compensatory damages in an amount

according to proof.

5.     For treble damages for those claims arising under the Federal RICO Act;

6.     For prejudgment interest on amounts benefits wrongfully withheld.

7.     Injunctive and equitable relief enjoining Defendants from the conduct alleged herein and/or other appropriate equitable relief;

8.     Declaring that United's payments were improper underpayments,

9.     Declaring that United's payment methodologies were and are improper;

10.    Declaring that Viant's benefit determination and negotiation methodologies are improper;

11.    Declaring that United and Viant have engaged in an illegal, prohibited, RICO enterprise;

12.    Ordering United to reprocess all underpaid claims using an appropriate methodology;

13.    Ordering United and Viant to provide transparency as to the methodology applied in reprocessing claims and that the methodology be approved by the Court;

14.    For attorney's fees and costs pursuant to statute;

15.    and such other and further relief as the Court may deem appropriate, including but not limited to awarding a surcharge, disgorging Defendants unjust enrichments from their wrongful conduct.

**[SIGNATURE PAGE FOLLOWS]**

Dated: April 2, 2020

**NAPOLI SHKOLNIK, PLLC**


By:  /s/ Wendy A. Mitchell
Wendy A. Mitchell, Esq. (CA SBN 158553)
Matthew M. Lavin, Esq. (*pro hac vice forthcoming*)

*Attorneys for Plaintiffs and the Putative Class*