HEATHER L. RICHARDSON, SBN 246517
    hrichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
    lblas@gibsondunn.com
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

GEOFFREY SIGLER (*pro hac vice pending*)
    gsigler@gibsondunn.com
JOSHUA LIPTON (*pro hac vice pending*)
    jlipton@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.995.8500
Facsimile:   202.467.0539

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, and VIANT, INC., a Nevada Corporation,<br><br>Defendants. | Case No.  4:20-cv-02254-YGR<br>Related Case No. 4:20-cv-02249-YGR<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:    Tuesday, August 11, 2020<br>Time:    2:00 p.m.<br>Judge:   Hon. Yvonne Gonzalez Rogers<br>Crtrm:  Courtroom 1, Fourth Floor<br><br>Complaint Filed:  April 2, 2020 |

Gibson, Dunn & Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, August 11, 2020 at 2:00 p.m., or as soon thereafter as the matter can be heard, in Courtroom 1, Fourth Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant United Behavioral Health ("UBH") moves the Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiffs' claims for violation of RICO (18 U.S.C. § 1962(c)), underpaid benefits under group plans governed by ERISA; breach of plan provisions in violation of ERISA § 502(a)(1)(B); failure to provide an accurate plan disclosure and request for declaratory and injunctive relief; violation of fiduciary duties of loyalty and due care and request for declaratory and injunctive relief; violation of fiduciary duties of full and fair review and request for declaratory and injunctive relief; claim for equitable relief to enjoin acts and/or practices; and claim for other appropriate equitable relief.

UBH's motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Han Nguyen, and the accompanying Request for Judicial Notice and exhibits thereto, all of which are filed and served herewith, as well as the records, pleadings, and papers on file in this action, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

Dated: June 11, 2020                    Respectfully submitted,

/s/ *Heather Richardson*
Heather Richardson

Attorney for Defendant
UNITED BEHAVIORAL HEALTH

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ..................................... 3

III.    BACKGROUND ................................................................................................... 4

IV.     STANDARD OF REVIEW .................................................................................... 6

V.      ARGUMENTS ...................................................................................................... 6

        A.      Plaintiffs Fail To State A Claim Under RICO (Count I). ............................. 6

                1.      Plaintiffs Do Not Allege A RICO Enterprise. .............................. 7

                2.      UBH Did Not Conduct The Affairs Of A RICO Enterprise. ......... 8

                3.      Plaintiffs' Allegations Fail To Satisfy Rule 9(b). ......................... 10

                4.      Plaintiffs Lack RICO Standing. ................................................... 13

        B.      Plaintiffs' Claims "Under The Terms Of" Their ERISA Plans Should Be
                Dismissed Because They Fail To Allege A Breach Of Any Plan Terms (Counts
                II and III). ............................................................................................... 15

        C.      Plaintiffs' ERISA Disclosure Claim (Count IV) Should Be Dismissed Because
                UBH Is Not A Proper Defendant And Plaintiffs Fail To Allege A Disclosure
                Violation. ................................................................................................ 18

        D.      Plaintiffs' Claims Under ERISA Section 502(a)(3) Should Be Dismissed
                Because They Merely Recast Plaintiffs' Claims For Legal Relief (Counts V–
                VIII). ...................................................................................................... 21

VI.     CONCLUSION ..................................................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aetna UCR Litig.*,
2015 WL 3970168 (D.N.J. June 30, 2015) .............................................................3, 9, 10, 20, 22, 23

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ...........................................................................................6

*Almont Ambulatory Surg. Ctr., LLC v. United Health Grp.*,
2016 WL 6601662 (C.D. Cal. Feb. 3, 2016)..................................................................................23

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010)......................................................................................................11

*Ames v. Am. Nat'l Can Co.*,
170 F.3d 751 (7th Cir. 1999).........................................................................................................21

*Armijo v. ILWU-PMA Welfare Plan*,
2015 WL 13629562 (C.D. Cal. Aug. 21, 2015) ................................................................18, 22, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................................6

*B.R. v. Beacon Health Options*,
2017 WL 2351973 (N.D. Cal. May 31, 2017) .................................................................................5

*Banks v. ACS Educ.*,
638 F. App'x 587 (9th Cir. 2016) ..................................................................................................10

*Bay City Surgery Ctr. v. ILWU-PMA Welfare Plan Bd. of Trustees*,
2016 WL 11185297 (C.D. Cal. Mar. 25, 2016)..............................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................................6

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .......................................................................................................................13

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
2019 WL 6329645 (C.D. Cal. Sept. 24, 2019)...............................................................................18

*Bush v. Liberty Life Assurance Co. of Boston*,
130 F. Supp. 3d 1320 (N.D. Cal. 2015) ...........................................................................20, 21, 23

*Cansino v. Bank of Am.*,
224 Cal. App. 4th 1462 (2014).......................................................................................................12

Gibson, Dunn &
Crutcher LLP

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
    2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) ................................................................. 18

*Cedric Kushner Promotions Ltd. v. King*,
    533 U.S. 158 (2001) .............................................................................................................. 8

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .............................................................................................................. 24

*Clay v. AT&T Umbrella Benefit Plan No. 3*,
    2019 WL 5682825 (E.D. Cal. Nov. 1, 2019) .................................................................... 20

*Cox ex rel. Cox v. Reliance Standard Life Ins. Co.*,
    2013 WL 2156546 (E.D. Cal. May 17, 2013) .................................................................. 18

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty.*,
    2018 WL 2357698 (N.D. Cal. May 24, 2018) .................................................................. 19

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty.*,
    2019 WL 2644234 (N.D. Cal. June 27, 2019) .................................................................. 24

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) .................................................................................. 21, 23, 24

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
    2013 WL 12114069 (C.D. Cal. Mar. 12, 2013) ................................................................. 9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ............................................................................................... 6

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ........................................................................................... 10

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
    2011 WL 2748724 (N.D. Cal. July 13, 2011) .................................................................. 18

*Franco v. Conn. Gen. Life Ins. Co.*,
    2014 WL 2861428 (D.N.J. June 24, 2014) ......................................................................... 3

*Franco v. Conn. Gen. Life Ins. Co.*,
    818 F. Supp. 2d 792 (D.N.J. 2011) ..................................................................... 3, 20, 23

*Franco v. Connecticut General Life Ins. Co.*,
    289 F.R.D. 121 (D.N.J. 2013) .......................................................................................... 17

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ............................................................................................. 24

*Gardner v. Starkist Co.*,
    418 F. Supp. 3d 443 (N.D. Cal. 2019) ............................................................................... 7

iv

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Gibson, Dunn &
Crutcher LLP

*Gilbert v. MoneyMutual, LLC*,
    2018 WL 8186605 (N.D. Cal. Oct. 30, 2018) .................................................................................7

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) ......................................................................................12

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*,
    2020 WL 2537317 (9th Cir. May 19, 2020) .........................................................................15, 18

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) .......................................................................................................10

*Gomez v. Guthy-Renker, LLC*,
    2015 WL 4270042 (C.D. Cal. July 13, 2015) ..............................................................................7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) .....................................................................................................................23

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ...................................................................................................................13, 14

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992) .................................................................................................................7, 13

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) .........................................................................................................7

*In re Int'l Rectifier Corp. Sec. Litig.*,
    2008 WL 4555794 (C.D. Cal. May 23, 2008) ............................................................................12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................................................6

*Lewis v. Rodan & Fields, LLC*,
    2019 WL 978768 (N.D. Cal. Feb. 28, 2019) ................................................................................7

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ..........................................................................................6

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) .....................................................................................................................23

*Miron v. Herbalife Intl, Inc.*,
    11 F. App'x 927 (9th Cir. 2001) .................................................................................................15

*United States ex rel. Modglin v. DJO Global Inc.*,
    114 F. Supp. 3d 993 (C.D. Cal. 2015) ........................................................................................12

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
    136 S. Ct. 651 (2016) .............................................................................................................21, 24

Gibson, Dunn &
Crutcher LLP

v

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

*Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC,*
    2013 WL 12129953 (C.D. Cal. Nov. 18, 2013) ...................................................................11

*Nordstrom, Inc. v. Chubb & Son, Inc.,*
    54 F.3d 1424 (9th Cir. 1995) ..............................................................................................12

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007) .................................................................................................7

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998) .................................................................................................5

*Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 42 (1987) ..............................................................................................................15

*Reiten v. Blue Cross of Cal.,*
    2020 WL 1032371 (C.D. Cal. Jan. 23, 2020) .....................................................................18

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) ..............................................................................................................9

*River City Markets, Inc. v. Fleming Foods W., Inc.,*
    960 F.2d 1458 (9th Cir. 1992) ...............................................................................................8

*Segal Co. (Eastern States), Inc. v. Amazon.com,*
    280 F. Supp. 2d 1229 (W.D. Wash. 2003) .........................................................................12

*Semegen v. Weidner,*
    780 F.2d 727 (9th Cir. 1985) ..............................................................................................13

*Sgro v. Danone Waters of N. Am., Inc.,*
    532 F.3d 940 (9th Cir. 2008) ..............................................................................................19

*Simi Surg. Ctr., Inc. v. Conn. Gen. Life Ins. Co.,*
    2018 WL 6332285 (C.D. Cal. Jan. 4, 2018) .......................................................................18

*Steelman v. Prudential Ins. Co. of Am.,*
    2007 WL 1080656 (E.D. Cal. Apr. 4, 2007) .......................................................................18

*Stitt v. Citibank, N.A.,*
    2015 WL 75237 (N.D. Cal. Jan. 6, 2015) .........................................................................7, 8

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ..............................................................................................10

*Tagoia v. Wells Fargo Bank,*
    2018 WL 3377967 (N.D. Cal. July 11, 2018) ......................................................................5

*Thole v. U.S. Bank N.A.,*
    —U.S.—, 2020 WL 2814294 (U.S. June 1, 2020) ............................................................24

Gibson, Dunn &
Crutcher LLP

*Townsend v. Chase Bank USA N.A.*,
    2009 WL 426393 (C.D. Cal. Feb. 15, 2009)........................................................................11

*Tucker v. Post Consumer Brands, LLC*,
    2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ......................................................................6

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)...........................................................................................................21

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
    546 F.3d 620 (9th Cir. 2008)...............................................................................................19

*Wagh v. Metris Direct, Inc.*,
    348 F.3d 1102 (9th Cir. 2003)...............................................................................................7

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008)...............................................................................................9

*Weiss v. CIGNA Healthcare, Inc.*,
    972 F. Supp. 748 (S.D.N.Y. 1997).......................................................................................23

*In re WellPoint, Inc., Out of Network "UCR" Rates Litig.*,
    2016 WL 6645789 (C.D. Cal. July 9, 2016) ........................................................................3

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    2013 WL 12130034 (C.D. Cal. July 19, 2013) ...........................................................3, 20, 23

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011)...............................................................3, 9, 10

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012)...............................................................3, 13, 20

*Zisk v. Gannett Co. Income Protection Plan*,
    73 F. Supp. 3d 1115 (N.D. Cal. 2014) ...............................................................................23

**Statutes**

18 U.S.C. § 24 ...............................................................................................................................10

18 U.S.C. § 1027 ...........................................................................................................................10

18 U.S.C. § 1345 ...........................................................................................................................10

18 U.S.C. § 1961(1) .......................................................................................................................10

18 U.S.C. § 1962(c) ......................................................................................................................6, 8

29 U.S.C. § 1002(16)(A)...............................................................................................................19

29 U.S.C. § 1024(b)(4)..................................................................................................................21

Gibson, Dunn &
Crutcher LLP

29 U.S.C. § 1104(a) ...................................................................................................................22

29 U.S.C. § 1132(a)(3) ...............................................................................................................23

29 U.S.C. § 1132(c)(1) ...............................................................................................................19

29 U.S.C. § 1133 .........................................................................................................................22

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................2, 3, 6, 10, 11, 12

**Regulations**

29 C.F.R. § 2560.503-1 ...............................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

viii

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3  Plaintiffs, five members of employer-sponsored health plans, claim that they were under-

4  reimbursed by their health plans for services they received at Summit Estate, an out-of-network

5  substance abuse center.  But Plaintiffs did not sue their health plans.  Instead, they brought suit against

6  United Behavioral Health ("UBH"), which administers behavioral health benefits for their health plans,

7  and Viant, a "repricing" vendor involved in setting reimbursement rates.  Plaintiffs' claims rest on their

8  allegations—unsupported by the terms of their health plans—that these plans were required to

9  reimburse Summit Estate at the "UCR" (or "usual, customary, and reasonable") rate for the relevant

10  services, which, in Plaintiffs' view, means "100%" of Summit Estate's "billed charges."  According to

11  Plaintiffs, UBH and Viant violated the terms of their health plans by not paying 100% of Summit

12  Estate's billed charges, resulting in Plaintiffs paying the difference.

13  While the central premise of Plaintiffs' Complaint is that their "plan documents" required

14  payment of UCR at 100% of billed charges for out-of-network services (*i.e.*, services by providers who

15  do not have a network contract with the plan or claims administrator), Plaintiffs never identify specific

16  plan provisions to support this claim.  The summary plan descriptions—which have been concurrently

17  filed with the Declaration of Ngoc Han S. Nguyen as exhibits—show that Plaintiffs' assertion is false.

18  For the vast majority of the services at issue (all services by four Plaintiffs and most services by the

19  fifth), the plans state that covered out-of-network services are reimbursed not based on a UCR defined

20  as 100% of "billed charges," but based on a calculation of "Eligible Expenses," which are determined

21  based on (1) "negotiated rates" agreed to by the out-of-network provider and UnitedHealthcare or its

22  vendor, or (2) "available data resources of competitive fees in that geographic area."  For a subset of

23  services that one Plaintiff received in 2018, the relevant plan provided reimbursement based on UCR,

24  but the plan's definition of UCR differs from Plaintiffs' allegations in the Complaint.  Moreover, *all* of

25  the summary plan descriptions state clearly that they do ***not*** cover "100%" of a provider's "billed

26  charges," and that plan members who go out-of-network will be responsible for paying any balance

27  bills.  Plaintiffs completely ignore these plan terms, and fail to plead any facts showing that these terms

28  were violated.  This fundamental pleading failure dooms the entire Complaint.

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Plaintiffs also plead no facts to support converting this reimbursement dispute into a RICO violation. Plaintiffs allege nothing more than a commercial contract between UBH and Viant, through which Viant would engage in rate negotiations and "repricing" of out-of-network benefits claims. That Viant's services helped with "cost containment"—a core function of plan administration—does not make this alleged vendor relationship a racketeering enterprise. Dkt. 1, Complaint ("Compl.") ¶ 21. Indeed, Plaintiffs' summary plan descriptions contemplate that a "vendor" could engage in rate negotiations with out-of-network providers. Additionally, the alleged RICO predicate acts of mail and wire fraud—based on purported "misrepresentations" in Explanations of Benefits ("EOBs")—fail to satisfy Federal Rule of Civil Procedure 9(b). Plaintiffs fail to identify which EOBs were supposedly fraudulent, or why, and the concurrently filed examples accurately report the relevant benefit calculations and flatly refute Plaintiffs' assertions. Plaintiffs also fail to satisfy RICO's standing requirements, because their alleged injuries involve vague allegations of payments that their provider alleges, in a related case pending in this Court, they never made.

Plaintiffs' claims under ERISA—the comprehensive federal statutory scheme governing their health plans—should be dismissed as well. Plaintiffs' lead ERISA theory is a claim for benefits under "the terms of" their plans (in Counts II and III). Plaintiffs' failure to address the actual terms of their plans compels dismissal under Rule 12(b)(6).

Plaintiffs also attempt to assert other claims using a grab bag of other ERISA provisions, but none of these alternative theories is supported by the facts they allege. Under numerous controlling authorities, only the designated "plan administrator" for an ERISA plan may be sued under the disclosure statutes invoked by Plaintiffs in Count IV, namely, Sections 502(c), 102, and 104. Plaintiffs' summary plan descriptions show that the plans' sponsors—not Defendants—are the plan administrators. Furthermore, even if these disclosure statutes were applicable to Defendants, Plaintiffs fail to allege any violation, because none of these statutes requires disclosure of UCR rates, methodologies, or data.

Plaintiffs' claims seeking injunctions and other "equitable" relief under ERISA Section 502(a)(3), in Counts V–VIII, also fail. These claims are based on the same unsupported assertions about UCR as Plaintiffs' other claims, so they should be dismissed for the same reasons. Additionally,

Gibson, Dunn &
Crutcher LLP

2

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Plaintiffs plead no facts to support a distinct claim for "equitable" relief under Section 502(a)(3), and they lack standing under Article III to seek injunctive or other prospective relief.

Lacking sufficient factual allegations to support these causes of action, Plaintiffs attempt to bolster their Complaint by referring to the "Ingenix" database—a completely separate UCR database that was challenged in litigation years ago and is no longer in use. Compl. ¶ 19 (alleging that "United is attempting to recreate the Ingenix grift"). But the Ingenix cases provide no support to Plaintiffs' thinly pled Complaint, and many of the *legal* rulings in those cases further support the conclusion that Plaintiffs' claims here are not viable and should be dismissed with prejudice.[1]

## II.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

1.   Whether Plaintiffs' RICO claims are subject to dismissal because they have failed to: (a) plead that Defendants formed a RICO enterprise; (b) plead that UBH "conducted" the affairs of the purported enterprise; (c) allege predicate acts of fraud with the specificity required by Rule 9(b); or (d) allege that any predicate act caused injury to their business or property;

2.   Whether Plaintiffs' claim for benefits under "the terms of" their ERISA plans should be dismissed for failure to plead facts addressing the actual "terms of" these plans;

3.   Whether Plaintiffs' disclosure claim under ERISA should be dismissed because (a) UBH is not a proper defendant, and (b) Plaintiffs allege no violation of ERISA's requirements; and

4.   Whether Plaintiffs' various claims for "equitable" relief under Section 502(a)(3) should be dismissed because Plaintiffs fail to plead any facts to support a distinct basis to seek equitable relief under this provision.

---

[1]  Most of the claims asserted in the Ingenix cases were dismissed on the pleadings. *See, e.g., In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint I*"), 865 F. Supp. 2d 1002 (C.D. Cal. 2011); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.* ("*WellPoint II*"), 903 F. Supp. 2d 880 (C.D. Cal. 2012); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.* ("*WellPoint III*"), 2013 WL 12130034 (C.D. Cal. July 19, 2013); *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011), *aff'd in part, rev'd in part*, 647 F. App'x 76 (3d Cir. 2016); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *24 (D.N.J. June 30, 2015). And when the surviving claims were subjected to evidentiary scrutiny, they collapsed as well. *Franco v. Conn. Gen. Life Ins. Co.*, 2014 WL 2861428 (D.N.J. June 24, 2014); *In re WellPoint, Inc., Out of Network "UCR" Rates Litig.* ("*WellPoint IV*"), 2016 WL 6645789 (C.D. Cal. July 9, 2016).

Gibson, Dunn &
Crutcher LLP

1    **III.    BACKGROUND**[2]

2            Plaintiffs claim that they were under-reimbursed for intensive outpatient programs ("IOPs"),

3    which they received at Summit Estate, an out-of-network substance abuse center.  Compl. ¶¶ 2, 172,

4    186, 198, 210, 222. According to Plaintiffs, their health plans required reimbursement at the "UCR"

5    (or "usual, customary, and reasonable") rate for the relevant services.  *Id.* ¶ 6.  Plaintiffs concede UCR

6    can have different definitions and meanings (*id.* ¶¶ 8, 10, 81), yet nonetheless contend that for the

7    claims at issue, UCR should have meant the services would be reimbursed at "100%" of Summit

8    Estate's "billed charges," so that Plaintiffs did not have to pay any balance bills—which turned out to

9    be tens of thousands of dollars because of Summit Estate's inflated billed amounts for its services.  *See,*

10   *e.g.*, *id.* ¶ 174.

11           In fact, as discussed in greater detail below, Plaintiffs' summary plan descriptions refute these

12   assertions about what their plans supposedly required.  None of the plans contain the UCR terms that

13   Plaintiffs allege, and all of them make clear that coverage does not exist for 100% of billed charges.

14   *See* Declaration of Han Nguyen ("Nguyen Decl."), Ex. 1 at 36, 44, 335 (describing coverage of UCR

15   for out-of-network services); Ex. 2 at 31–32, 39 (describing coverage of "Eligible Expenses" for out-

16   of-network services); Ex. 3 at 8 (same); *see also* Ex. 1 at 26 (further explaining that "you pay the

17   difference" if provider bills more than UCR); Ex. 2 at 40 (similar); Ex. 3 at 8 (explaining member's

18   liability for balance bills for out-of-network services, warning members that "[t]he amount in excess

19   of the Eligible Expense could be significant," and telling members they "may want to ask the non-

20   Network provider about their billed charges before you receive care").

21           These exhibits also show that Plaintiffs' plans are self-funded—meaning that "savings" from

22   reduced costs of out-of-network coverage flow to the employer plan sponsors.  *See* Ex. 1 at 21, 315;

23   Ex. 2 at 303, 313; Ex. 3 at 217.  As is also discussed in greater detail below, Plaintiffs' EOBs also

24   refute their allegations that these communications by "United" supposedly were "fraudulent."  *See* Exs.

25

26

27

28   ────────────────────

     [2]  For purposes of this Motion only, UBH assumes the factual allegations in Plaintiffs' Complaint are
     true, except where contradicted by documents embraced by the pleadings.

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

4–8.  This Court is permitted to consider these exhibits in connection with this Motion to Dismiss, because Plaintiffs' plan terms and EOBs are referred to and relied on in the Complaint.[3]

Plaintiffs' allegations overlap substantially—and in some cases conflict directly—with the related case brought by their provider, Summit Estate, and three other substance abuse centers in *Pacific Recovery v. United Behavioral Health* ("*Pacific Recovery*"), No. 4:20-cv-02249-YGR (N.D. Cal.).  In that case, Summit Estate seeks the same alleged damages as Plaintiffs do here: the difference between "100%" of Summit Estate's "billed charges" and what it was reimbursed based on "Viant's pricing."  In going after the same damages, Plaintiffs and their provider, Summit Estate, make conflicting allegations on fundamental issues: Plaintiffs here allege they were injured by being "forced to enter into and make payments" to Summit Estate for balance bills (*see, e.g.*, Compl. ¶ 218),[4] whereas in *Pacific Recovery*, Summit Estate alleges that "few, if any, of the balance bills are ever paid by patients," and Summit Estate "has not been paid the remaining 89% of the billed amounts owed to them" beyond the "11% of billed charges" they received as reimbursement based on "Viant's pricing" (*Pacific Recovery*, Dkt. 1, Complaint ("*Pacific Recovery* Compl.") ¶ 212).[5]  In other words, in related cases filed on the same day, by the same counsel, Plaintiffs here allege they paid their balance bills from Summit Estate and Summit Estate alleges they did not.  Both allegations cannot be true: either the bills were paid or they were not.

Plaintiffs bring eight causes of action: (1) RICO (18 U.S.C. § 1962(c)); (2) a claim for underpaid benefits under ERISA Section 502(a)(1)(B); (3) a claim for breach of plan provisions under ERISA Section 502(a)(1)(B); (4) an ERISA disclosure violation claim; (5) a claim for breach of fiduciary duties of loyalty and care; (6) a claim for violation of ERISA's full and fair review statute; (7) a claim

---

[3]  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998); *B.R. v. Beacon Health Options*, 2017 WL 2351973, at *3 (N.D. Cal. May 31, 2017) ("Because Plaintiffs' claim is predicated entirely on the terms and benefits of the SAG [ERISA] Plan, the Court may consider" that plan's "terms and benefits").

[4]  *See also* Compl. ¶¶ 4, 14, 28, 47, 99, 180, 193, 230, 265, 288, 322 (allegations that Plaintiffs and other patients paid balance bills from their providers).

[5]  *Tagoia v. Wells Fargo Bank*, 2018 WL 3377967, at *4 (N.D. Cal. July 11, 2018) ("The Court . . . need not accept as true allegations contradicted by judicially noticeable facts" and on a motion to dismiss under Rule 12(b)(6) may "look beyond the plaintiff's complaint to matters of public record") (citations omitted).

Gibson, Dunn &
Crutcher LLP

for an injunction under Section 502(a)(3)(A); and (8) a claim for "other appropriate equitable relief" under Section 502(a)(3)(B).  In *Pacific Recovery*, the providers also seek damages and other relief based on the same alleged underpayments, but they do so under the Sherman Act, RICO, and state law.

## IV.    STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) "is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *2 (N.D. Cal. Apr. 21, 2020) (internal quotation omitted).  Determining whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility (*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007))), requires a "context-specific" determination that a court must make by "draw[ing] on its judicial experience and common sense" (*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Additionally, claims grounded in fraud are subject to the heightened-pleading requirements of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation and quotation marks omitted).  To satisfy this standard, a plaintiff must "allege 'the particular circumstances surrounding [the] representations' at issue" (*Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (citation omitted)), including what was omitted, how it should have been revealed, as well as details concerning the representations that were made that plaintiff relied on (*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

## V.    ARGUMENTS

### A.    Plaintiffs Fail To State A Claim Under RICO (Count I).

Plaintiffs' attempt to manufacture a RICO violation from a reimbursement dispute fails on multiple grounds: (1) they merely describe an ordinary commercial agreement to control medical costs, not a RICO enterprise with an illegal "common purpose"; (2) they fail to allege that Defendants conducted the affairs of any RICO enterprise, as opposed to their own affairs; (3) they fail to allege predicate acts of mail or wire fraud with particularity, as required under Rule 9(b); and (4) they fail to allege that any predicate act injured their business or property, as required for RICO standing.  *See* 18

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

U.S.C. § 1962(c); *id.* § 664; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).[6]  And because Plaintiffs cannot plead a substantive claim under RICO, their conspiracy claim fails as well.  *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  This case falls squarely within the Ninth Circuit's directive to "flush out frivolous RICO allegations at an early stage of the litigation" (*Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108–09 (9th Cir. 2003), *overruled on other grounds by Odom*, 486 F.3d at 551), and Plaintiffs' RICO claims should therefore be dismissed.

### 1.    Plaintiffs Do Not Allege A RICO Enterprise.

To plead an association-in-fact enterprise, Plaintiffs need to establish: "(1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit."  *Stitt*, 2015 WL 75237, at *3 (citing *Odom*, 486 F.3d at 553).  In evaluating these elements, it is well-established that allegations concerning "routine commercial dealing," without more, do not establish that a "common purpose" exists for purposes of RICO.  *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (summarizing cases); *Lewis v. Rodan & Fields*, *LLC*, 2019 WL 978768, at *4 (N.D. Cal. Feb. 28, 2019) (dismissing claims where supposed enterprise was not "anything other than an ordinary business relationship").

Yet, an ordinary business relationship is all Plaintiffs have alleged here.  The purported "common purpose" of UBH and Viant is to "underpay[] for IOP services and increas[e] the profits of the Enterprise participants and their Co-Conspirators" (Compl. ¶ 272), but this is merely a hyperbolic description of an ordinary commercial contract that, for the reasons explained above, benefits UBH *and* its health plan clients (including Plaintiffs' self-funded plan sponsors, which bore the costs of coverage) by helping to control medical costs.  Nor do Plaintiffs allege "that the enterprise members actually knew of the alleged fraudulent common purpose"—*i.e.*, that UBH and Viant knowingly formed an enterprise to fraudulently underpay claims below UCR.  *Stitt*, 2015 WL 75237, at *5; *see also Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *13 (N.D. Cal. Oct. 30, 2018) (where

---

[6]  To state a claim, plaintiffs must allege: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Stitt v. Citibank, N.A*., 2015 WL 75237, at *3 (N.D. Cal. Jan. 6, 2015) (Gonzalez Rogers, J.), *aff'd*, 748 F. App'x 99 (9th Cir. 2018) (citing *Odom v. Microsoft Corp*., 486 F.3d 541, 547 (9th Cir. 2007) (en banc)).

Gibson, Dunn &
Crutcher LLP

fraudulent RICO scheme is alleged, plaintiffs "are required to show each of the [enterprise defendants] knew" the scheme was "illegal"). That there are "monetary incentives for Viant to reduce the amount United pays on out-of-network claims" is unremarkable, given that the purpose of Viant's services is to control medial costs. Compl. ¶ 147. The most one can infer from these allegations is that UBH supposedly has a "service contract[]" with Viant to reduce medical costs (*id.*), which "does not render plausible [P]laintiffs' claim that the members of the . . . Enterprise associated for [an] alleged, and fraudulent, common purpose." *Stitt*, 2015 WL 75237, at *5.

### 2. UBH Did Not Conduct The Affairs Of A RICO Enterprise.

Plaintiffs also fail to plead any facts suggesting UBH conducted the affairs of a RICO enterprise, as opposed to acting in its own, legitimate economic interest (and in service of its customers) by seeking to reduce medical costs. Section 1962(c) liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Stitt*, 2015 WL 75237, at *3 (quoting *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 163 (2001)). "Virtually every business contract can be called an 'association in fact,'" but "[t]o constitute a proscribed RICO enterprise[,] the associates must participate, directly or indirectly 'in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462–63 (9th Cir. 1992) (quoting 18 U.S.C. § 1962(c)).

Plaintiffs attempt to recast Defendants' alleged relationship as a RICO enterprise by claiming that they implemented their cost containment efforts through "fraudulent and deceptive acts." Compl. ¶ 274. But Plaintiffs do not identify these supposed acts and fail to allege any facts showing that UBH directed any "fraudulent" acts by Viant, or vice versa: each company issued its own, separate communications consistent with their own, separate business operations. *See, e.g.*, *id.* ¶¶ 252, 256 (allegations of verification-of-benefits calls and EOBs issued by UBH, without any alleged involvement by Viant); *id.* ¶ 253 (allegations of "misleading" communications by Viant, without any alleged involvement by UBH). Plaintiffs' allegations underscore the independence of Defendants' operations, insofar as they claim that UBH did not transmit the plan terms or language to Viant. *Id.* ¶ 41. Indeed, Plaintiffs' Complaint is devoid of any allegations that UBH in particular played any role in establishing, influencing, or otherwise directing Viant's proprietary database that it used to price its

Gibson, Dunn & Crutcher LLP

8

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

claims (*see id.* ¶ 44), even though UBH is a distinct corporate entity that plays a distinct, narrow role under the relevant health plans.

Liability under RICO extends only to those who "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This means "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their own affairs." *Id.* at 185. "[D]irecting" requires more than "simply being involved" or "performing services for the enterprise." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Relevant considerations include whether the defendant "occup[ies] a position in the 'chain of command'. . . through which the affairs of the enterprise are conducted," whether it "knowingly implement[ed] [the] decisions of upper management," and whether its "participation was 'vital' to the mission's success." *Id.* at 1249; *see also Reves*, 507 U.S. at 185 (holding RICO liability requires a "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their own affairs").

Here, Plaintiffs do not allege facts showing that UBH "directed" or "knowingly implemented" the decisions of "upper management" with respect to any fraudulent conduct or RICO enterprise. Plaintiffs allege that "United participated in the conduct of the Enterprise in order to shift the costs of IOP treatment from United to Plaintiffs and the class, United's own insureds" (Compl. ¶ 277), but (1) Plaintiffs fail to show how the payments at issue shifted any costs away "from United" given that Plaintiffs' plans are self-funded, and (2) in any event, any cost-containment goals merely align with UBH's legitimate business interests and those of its customers (such as Plaintiffs' self-funded health plans).

Likewise, any steps UBH supposedly took to facilitate Viant's rate negotiations or calculations, such as by paying Viant for its services (Compl. ¶ 147), does not show that UBH did anything beyond "carrying out the functions it was contractually required to perform" (*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *13 (C.D. Cal. Mar. 12, 2013); *see also WellPoint I*, 865 F. Supp. 2d 1002, 1034–35 (C.D. Cal. 2011) ("the existence of a business relationship between WellPoint, Ingenix, and the Insurance Defendants without more does not show that WellPoint conducted the enterprise"); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 (D.N.J. June 30, 2015) ("commercial interactions" between the defendants "insufficient to compel liability" under RICO)). "What is

missing" (as in the Ingenix litigation on which Plaintiffs purport to rely) "is some—any—indication that [UBH] guided the alleged scheme to *defraud insureds*."   *In re Aetna UCR Litig.*, 2015 WL 3970168, at *30.

### 3.   Plaintiffs' Allegations Fail To Satisfy Rule 9(b).

"Although RICO itself is not subject to [ ] Rule 9(b)'s heightened pleading standards, predicate acts alleging fraud must be pleaded with particularity."  *WellPoint I*, 865 F. Supp. 2d at 1036; *see Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).  To satisfy Rule 9(b), Plaintiffs' Complaint must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  They must also plead sufficient facts showing why the challenged statement was false or misleading.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds).  Plaintiffs' RICO claims here sound in fraud, because they allege predicate acts of mail and wire fraud.[7]  Plaintiffs thus must plead with particularity the who, what, when, where, how and why of this alleged mail and wire fraud.  But Plaintiffs fall short on all counts, and do not plead any alleged predicate acts of mail and wire fraud with the particularity required by Rule 9(b).

***What?***  Plaintiffs do not identify any acts of mail or wire fraud with particularity.  Unlike the plaintiffs in *Pacific Recovery*, who claim to have been misled by verification-of-benefits phone calls with "United," Plaintiffs here allege that UBH "made representations to the Plaintiffs and the Class in the EOB letters that benefits were available and paid based on the UCR rate."  Compl. ¶ 256.  But Plaintiffs fail to allege "what" these EOBs actually said that they believe was false or misleading.

Plaintiffs' allegations are not only vague; they also mischaracterize the EOBs.  Contrary to Plaintiffs' allegations (Compl. ¶ 252), their EOBs accurately report the amount covered by the plan, explain that payment reduction is based on a calculation of "Eligible Expense" under the plan, and also report Plaintiffs' responsibility for non-covered amounts billed by Summit Estate above the Eligible

---

[7]  Plaintiffs refer in their RICO count to three other federal statutes, 18 U.S.C. § 24, 18 U.S.C. § 1027, and 18 U.S.C. § 1345.  But these statutes cannot support RICO predicate acts, because they are not included in 18 U.S.C. § 1961(1).  *See Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016) (dismissing RICO claim because alleged violations of federal statutes were not within the enumerated predicate acts that may amount to a "pattern of racketeering activity").  Plaintiffs also fail to plead violations of these laws.

Gibson, Dunn & Crutcher LLP

Expense.  *See* Exs. 4–8.  The EOBs also provided Viant's phone number to call in the event that Plaintiffs received a balance bill, as well as an administrative appeal process that Plaintiffs could pursue through UnitedHealthCare Services, Inc. in the event that any dispute about billing arose.  *See id.* Setting aside Plaintiffs' false allegations and looking at the actual EOBs, as this Court is permitted to do, it is even less clear "what" these EOBs said that Plaintiffs contend was false or misleading.  Nor is there anything in Plaintiffs' EOBs that could possibly give rise to an understanding "by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate" (Compl. ¶¶ 174, 187, 200, 213, 225); rather, Plaintiffs' EOBs clearly show that the "Eligible Expense" was substantially less than Summit Estate's billed charges.  Plaintiffs may disagree with the benefits calculation on the EOBs, but accurately reporting a disputed calculation, without more, does not amount to fraud.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) (affirming dismissal where alleged RICO fraud involved EOBs accurately reporting reductions that plaintiffs disagreed with).

In other parts of the Complaint, Plaintiffs refer vaguely to phone calls between United's "agents" and Summit Estate that they contend were misleading.  Compl. ¶¶ 355–56.  Plaintiffs do not appear to be relying on these allegations in their RICO count, but in any event, they would not support a claim for mail or wire fraud.  Plaintiffs do not allege they were even aware of these phone calls by Summit Estate, so Plaintiffs cannot claim to have been defrauded by them, either directly or indirectly. Also, for reasons addressed more fully in the *Pacific Recovery* motion to dismiss, these allegations lack sufficient detail under Rule 9(b).  *See Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*, 2013 WL 12129953, at *9 (C.D. Cal. Nov. 18, 2013) (dismissing misrepresentation claim under Rule 9(b) because the complaint "[did] not identify any specific statements made by the Manager defendants, except in the most general sense"); *Townsend v. Chase Bank USA N.A.*, 2009 WL 426393, at *5 (C.D. Cal. Feb. 15, 2009) (RICO claim insufficiently pled where plaintiffs "fail[ed] to mention any specific statements, charges, or penalties").

***Who?***  Plaintiffs are equally vague about who made any alleged misrepresentations, claiming only that they were misled by "United."  Compl. ¶¶ 252, 259.  The EOBs, however, were not sent by UBH: they were sent by United HealthCare Services, Inc.  Exs. 4–8.  And whether Plaintiffs rely on the EOBs, their providers' phone calls, or other communications, merely alleging fraudulent

Gibson, Dunn & Crutcher LLP

communications by "United" is insufficient: "[w]here fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim." *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015); *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) ("[T]he complaint's reference to certain 'representatives' of defendant is too vague to sufficiently identify the alleged perpetrators").

These deficiencies are particularly significant because Plaintiffs must plead fraudulent intent—not just by UBH, but by the individuals involved in the communications at issue. *See, e.g.*, *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (holding that "there is no case law supporting an independent 'collective scienter' theory"); *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) ("[n]or is the knowledge element of fraud satisfied by the complaint's conclusory statement that defendants 'knew that the . . . [r]epresentation[] [was] either false or at least highly speculative' because the allegation does not identify how" that knowledge was supposedly obtained). "For scienter to be attributed to [a corporation], Plaintiffs must sufficiently plead that at least one of [the corporation's] officers had the requisite scienter at the time they made the allegedly misleading statements." *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008). Plaintiffs' vague "collective scienter" allegations about what "United" supposedly said and intended—along with their failure to allege anything at all about the role of UBH, the actual defendant in this case—do not meet that standard.

***When/Where?*** Plaintiffs are also required to allege when and where any misrepresentations occurred. Although UBH has been able to locate some of the EOBs for the services at issue, as described above, it is unclear what misrepresentations Plaintiffs are alleging or how Plaintiffs could have been misled by them. And Plaintiffs allege no details whatsoever about the alleged phone calls between UBH and their providers. Plaintiffs likewise do not identify ***even one specific example*** of a communication that they claim was fraudulent, and the broad time periods of treatment alleged in the Complaint are not sufficient to comply with Rule 9(b). *E.g.*, Compl. ¶ 176 (30 days across two treatment episodes); ¶ 189 (51 days across two treatment episodes); ¶ 202 (26 days of treatment across two treatment episodes); ¶ 214 (26 days of treatment); ¶ 226 (12 days of treatment); *see Glen Holly*

Gibson, Dunn & Crutcher LLP

*Entm't, Inc. v. Tektronix, Inc*., 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A]llegations such as '[d]uring the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b).") (citation omitted).

**How/Why?**  Without more specificity about the alleged misrepresentations, Plaintiffs also fail to plead how and why they were misled.  Plaintiffs do not allege any facts regarding whether, when, or how they (or anyone) were misled by EOBs.  Compl. ¶¶ 251–53.  For example, Plaintiffs do not allege—and cannot allege—that they decided to receive treatment from Summit Estate in reliance on information given about their benefits in the EOBs, because they did not receive the EOBs until ***after*** they had already received the treatment.  *See* Exs. 4–8.  Indeed, Plaintiffs do not allege that they even read the EOBs at any point in time, or if they did, what the EOBs caused them to believe or do.  And for the reasons explained above, it would be implausible for Plaintiffs to contend they were defrauded by the EOBs, given that they accurately reflect all of the relevant benefit calculations under the terms of Plaintiffs' plans.  To the extent Plaintiffs are relying on their providers' verification-of-benefits phone calls, these allegations fail for reasons explained above and in the *Pacific Recovery* motion to dismiss.  Because Plaintiffs' allegations are not "specific enough to give [UBH] notice of the particular misconduct which is alleged to constitute the fraud charged," they fail as a matter of law.  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

### 4.    Plaintiffs Lack RICO Standing.

To establish RICO standing, a plaintiff needs to plead an injury to business or property and a sufficient causal nexus between that injury and the alleged RICO predicate offenses—here, the alleged mail and wire fraud.  "To establish that an injury came about 'by reason of' a RICO violation, a plaintiff must show that a predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) (quoting *Holmes*, 503 U.S. at 268).  To satisfy this requirement, a plaintiff who alleges mail (or wire) fraud must "show[] that *someone* relied on the defendant's misrepresentations" in order to establish RICO but-for causation.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008); *see also WellPoint II*, 903 F. Supp. 2d at 914–16 (dismissing RICO claims because plaintiffs failed to allege reliance on alleged mail or wire fraud related to UCR payments).

Gibson, Dunn & Crutcher LLP

13

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Plaintiffs assert in conclusory fashion that they were harmed "by reason of" RICO violations "because they were forced to overpay for covered IOP services." Compl. ¶ 288. But as the above cases show, it is not enough simply to assert Plaintiffs overpaid for services: they are required to plead a causal link between an injury to business or property and UBH's alleged predicate acts of racketeering—*i.e.*, the EOBs that they contend were predicate acts of mail or wire fraud. Plaintiffs do not allege—and cannot allege—that they or anyone else took any steps *in reliance on* the EOBs, which were truthful, accurate communications that Plaintiffs did not receive until after they participated in the services at issue. Plaintiffs may disagree with the benefits calculations in their EOBs, but this alone fails to establish fraud, reliance, or causation under RICO.

Additionally, although Plaintiffs do not appear to be relying on their providers' phone calls in their RICO count, to the extent they are, these allegations also fail to support RICO standing. Notwithstanding Plaintiffs' vague assertions in other parts of the Complaint (Compl. ¶ 175), they do not plead any facts to support a causal link between these phone calls and any injury *to Plaintiffs—i.e.*, Plaintiffs do not allege that they participated in these calls, that their providers relayed the substance of these calls to Plaintiffs, or that these calls impacted Plaintiffs in any way. Furthermore, even if Plaintiffs could allege some indirect connection to these calls, it would be far "too remote" and "indirect" to satisfy RICO's proximate causation requirement. *Hemi Grp.*, 559 U.S. at 9.

Finally, Plaintiffs also lack RICO standing because they fail to allege a specific injury to business or property resulting from the alleged mail and wire fraud. Plaintiffs allege that they were "forced to enter into and make payments" for the unreimbursed amounts at issue (Compl. ¶ 218), but these allegations cannot be reconciled with allegations by Summit Estate in the related case, *Pacific Recovery*. There, Summit Estate seeks the same damages as Plaintiffs here, based on allegations that "[f]ew, if any, of the balance bills are ever paid by patients," and Summit Estate "has not been paid the remaining 89% of the billed amounts owed to them" beyond the "11% of billed charges" they received based on "Viant's pricing." *Pacific Recovery* Compl. ¶ 212. Given these inconsistent allegations and the lack of specificity in Plaintiffs' Complaint, their RICO claims should be dismissed.

### B. Plaintiffs' Claims "Under The Terms Of" Their ERISA Plans Should Be Dismissed Because They Fail To Allege A Breach Of Any Plan Terms (Counts II and III).

In the remainder of the Complaint, Plaintiffs assert a panoply of claims under ERISA, the comprehensive federal statutory scheme governing their health plans. ERISA's civil enforcement provision, Section 502(a), provides the "exclusive remedies" for Plaintiffs to seek relief for violations of their plans or ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 42 (1987).

Plaintiffs' lead ERISA theory is that they were underpaid under the terms of their plans—*i.e.*, a claim for benefits under ERISA Section 502(a)(1)(B).[8] But Plaintiffs fail to state a claim because nowhere in Counts II and III (or anywhere else in the Complaint) do Plaintiffs identify an actual plan term that they contend was breached. This striking omission is akin to bringing a breach-of-contract case without addressing the language of the contract. *See Miron v. Herbalife Intl, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (affirming dismissal of contract claim where plaintiff failed to plead contract term or breach); *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 2020 WL 2537317, at *1 (9th Cir. May 19, 2020) (affirming dismissal of ERISA benefits claims where plaintiff relied on "generalized allegations" about plan breaches but failed to identify "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay").

Instead, the Complaint is littered with conclusory—and inaccurate—assertions about what Plaintiffs' plans supposedly say. Plaintiffs allege, dozens of times, that their "plan documents" required reimbursement based on "UCR," a reimbursement standard that Plaintiffs allege can have different meanings based on various irrelevant web sites and unsupported assertions about "the managed care system in the United States." *See*, *e.g.*, Compl. ¶ 8 (alleging that "[i]n the plan documents," the out-of-network "rate is referred to as the 'Usual, Customary and Reasonable' rate. . . .").[9] After setting out

---

[8] Section 502(a)(1)(B) states that "a participant or beneficiary" may file suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[9] *See also id.* ¶ 6 (alleging "[e]very claim at issue in this litigation" was for services "that United was required to pay at usual, customary, or reasonable rates" and "[e]very policy provided coverage . . . at usual, customary, or reasonable rates"), ¶ 9 ("UCR rates are a fixture of the managed care payment system in the United States" and "[g]enerally, private insurers claim to reimburse out-of-network providers at UCR rates"), ¶ 10 (quoting CMS web site for definition of UCR), ¶ 13 ("Most commercial insurance companies claim their PPO policies will pay out of network providers UCR rates for covered services"), ¶ 24 (alleging that "United, as the plan administrator, has a fiduciary duty to ensure that out-of-network claims are properly priced and paid according to UCR as required by the plan documents"),

15

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Gibson, Dunn &
Crutcher LLP

these various potential definitions of "UCR," Plaintiffs make the additional, inexplicable leap—purportedly based on "the plain language of" each Plaintiff's "employer benefit plan"—that "it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate." *Id.* ¶ 187. Plaintiffs affirmatively rely on their plan documents not just to claim they were under-reimbursed, but also to support their objections to Viant's rate negotiations and calculations. *Id.* ¶¶ 50, 83, 96, 101, 110, 113, 306, 328, 333.

Plaintiffs' assertions about their plan terms are not just vague; they are flat-out wrong, as demonstrated by their summary plan descriptions. For most of the services at issue—all services by four Plaintiffs and most services by the fifth (DB) in 2019—the applicable plans do not require reimbursement of the relevant services based on UCR defined as 100% of "billed charges"; rather, they

---

¶31 ("Every Plaintiffs' policy provided out-of-network coverage for mental health and substance abuse disorder treatment with benefits to be paid according to UCR rates."), ¶ 81 ("Every plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR rate. The UCR for IOP services should reflect the prevailing charge amongst similar providers in a similar geographic area."), ¶ 82 ("Every plan at issue in this litigation that [sic] requires the UCR rate to reflect the prevailing charge among similar providers in a similar geographical area."), ¶ 102 ("For every claim at issue in this litigation, United represented to the Plaintiffs that the claims would be paid at the UCR. This representation was a lie."), ¶ 104 ("United, through plan documents, marketing materials, EOBs, and other materials, represented to Plaintiffs that their plans would and did pay out-of-network IOP services at the UCR amount according to an objective, empirical methodology."), ¶ 105 (citing statutes that do not apply to services at issue as basis for allegation that UCR is "industry-standard" and therefore "providers and their patients reasonably expect claims to be reimbursed based on UCR"), ¶ 111 ("It is arbitrary, capricious, and improper for United and Viant to use any method for establishing reimbursement rates other than the UCR methodologies specified in Plaintiffs' plans."), ¶ 112 ("United has a fiduciary duty to observe the pricing policies laid out in Plaintiffs' insurance contract to pay Plaintiffs' claims at a legitimate UCR rate."), ¶ 130 ("It is arbitrary, capricious, improper, and a breach of plan terms for United to pay reimbursement rates other than a true UCR arrived at under a fair methodology."), ¶ 131 ("Each of the class members is insured under an arrangement that covers out-of-network benefits at the UCR rate specified in the policy."), ¶ 133 ("Patients expect their health plans to accurately and appropriately reimburse them for the services based on UCR rates."), ¶ 156 ("For each of the claims at issue here, Plaintiffs insurance contracts state that they will reimburse at the UCR rate" and it is "an abuse of discretion and fiduciary duties for United and/or Viant to calculate out-of-network benefits using any method that does not calculate UCR rates based on fair, neutral, and specified criteria, like those given in Plaintiffs' plans' reimbursement policies."), ¶¶ 159–60 (similar), ¶ 162 (alleging that UBH "intentionally led Plaintiffs and the Class to believe that benefits reimbursement was determined based on a UCR rate."), ¶ 166 (similar), ¶¶ 174–75 (allegation by LD that "it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate" and that plaintiff sought services "with an understanding of the plain terms of the employer benefit plan" providing a benefit of "100% of UCR rates"), ¶¶ 187–88 (same by DB), ¶¶ 200–01 (same by BW), ¶ 212 (same by RH), ¶¶ 224–25 (same by CJ), ¶ 352 (allegation that "the Plaintiffs and the Class relied upon United's assertion in the plan documents and reiterated during lengthy and comprehensive verification of benefits calls that out-of-network claims, when covered, would be paid at the UCR rate."), ¶ 355 (alleging it is reasonable to rely on "representations United makes in plan documents").

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Gibson, Dunn &
Crutcher LLP

state that covered services by "Out-of-Network provider[s]" will be reimbursed based on a calculation

of "Eligible Expenses," which "are determined, based on":

· Negotiated rates agreed to by the non-Network provider and either
UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or
subcontractors, at UnitedHealthcare's discretion.

· If rates have not been negotiated, then one of the following amounts:

§ For Covered Health Services other than Pharmaceutical Products,
Eligible Expenses are determined based on available data resources
of competitive fees in that geographic area.

§ [*Bullet regarding Pharmaceutical Products excluded*.]

§ When a rate is not published by CMS for the service,
UnitedHealthcare uses a gap methodology established by
OptumInsight and/or a third party vendor that uses a relative value
scale. The relative value scale is usually based on the difficulty,
time, work, risk and resources of the service. If the relative value
scale currently in use becomes no longer available,
UnitedHealthcare will use a comparable scale(s).

Ex. 2 at 31–32, 39; Ex. 3 at 12–13.  For the subset of services received by Plaintiff DB in 2018, the

summary plan description provided coverage at the "Usual, Customary, and Reasonable (UCR)" rate,

but based on a different UCR definition than Plaintiffs allege in the Complaint: "The average fee

charged by a majority of health care providers in a given geographic area within the United States for

a particular service."  Ex. 1 at 335.

All of Plaintiffs' summary plan descriptions refute their assertion (purportedly based on "the

plain language of" their plans (*see, e.g.*, Compl. ¶ 212)) that Summit Estate was required to be paid at

100% of its billed charges with no balance bills.  The Apple summary plan description states: "For out-

of-network providers (other than emergency health services or services arranged by UHC) you will be

responsible for any amount billed that is greater than the amount UHC determines to be an Eligible

Expense."  Ex. 2 at 40; *see also* Ex. 1 at 26.  And the Tesla summary plan description also makes this

clear, while going on to warn plan members that an out-of-network provider's billed charge "in excess

of the Eligible Expense could be significant."  Ex. 3 at 8; *see also Franco v. Connecticut General Life

Ins. Co.*, 289 F.R.D. 121, 138 (D.N.J. 2013) (rejecting attempt to recover "billed charges" based on

"UCR" coverage, because "billed charges" are distinct and can "far exceed" the covered amount).

Gibson, Dunn &
Crutcher LLP

17
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Whatever arguments Plaintiffs may come up with now to try to explain away these provisions cannot save the Complaint from dismissal for failure to state a claim.  Plaintiffs' failure to engage in any way with "the terms of" their plans dooms their claims under "the terms of" their plans.  *See Glendale Outpatient Surgery Ctr.*, 2020 WL 2537317, at *1 (affirming dismissal of ERISA benefits claims where plaintiff relied on "generalized allegations" about plan breaches but failed to identify "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay"); *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) ("To state a claim under [Section 502(a)(1)(B)], a plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle [him] to benefits.").[10]  Plaintiffs may object to Viant's negotiations or the rates paid for certain services, but to state a claim under Section 502(a)(1)(B), they need to do more than simply assert—without any supporting facts—that they were underpaid and that their plan terms were violated.

### C.  Plaintiffs' ERISA Disclosure Claim (Count IV) Should Be Dismissed Because UBH Is Not A Proper Defendant And Plaintiffs Fail To Allege A Disclosure Violation.

In Count IV, Plaintiffs assert claims under ERISA's disclosure provisions: Sections 102, 104, and 502(c).  These claims should be dismissed for two reasons.  First, UBH is not a proper defendant for these claims because it is not the "Plan Administrator" with statutory disclosure responsibilities for Plaintiffs' plans.  Under ERISA, the plan administrator is defined as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not

---

[10]  *See also Cox ex rel. Cox v. Reliance Standard Life Ins. Co.*, 2013 WL 2156546, at *8 (E.D. Cal. May 17, 2013) ("A plaintiff who brings a claim for benefits under ERISA must identify specific plan terms that confers the benefit in question.") (quoting *Steelman v. Prudential Ins. Co. of Am.*, 2007 WL 1080656, *7 (E.D. Cal. Apr. 4, 2007)); *Reiten v. Blue Cross of Cal.*, 2020 WL 1032371, at *2 (C.D. Cal. Jan. 23, 2020) (dismissing because "Plaintiff has failed to identify a specific plan term that confers the benefit in question with respect to each of the identified ERISA patients."); *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 2019 WL 6329645, at *2 (C.D. Cal. Sept. 24, 2019) (dismissing for failure to "identify any plan language or plan terms in Cigna's benefits plans" that created the alleged "entitlement to benefits"); *Simi Surg. Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, 2018 WL 6332285, at *3 (C.D. Cal. Jan. 4, 2018) (dismissing for failure to identify "the plan terms that allegedly entitle [plaintiff] to benefits"); *Armijo v. ILWU-PMA Welfare Plan*, 2015 WL 13629562, at *5 (C.D. Cal. Aug. 21, 2015) (same); *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *3 (C.D. Cal. Nov. 27, 2017) (same).

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Gibson, Dunn &
Crutcher LLP

designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."  29 U.S.C. § 1002(16)(A).

Here, applying ERISA's statutory definition is straightforward, because both summary plan descriptions designate the self-funded plan sponsor—not UBH or Viant—as the plan administrator. The Apple summary plan description designates Apple's "Benefits Administration Committee" as the "plan administrator."  Ex. 2 at 300–01; *see also* Ex. 1 at 302–03.  It also states that Apple and its Benefits Administration Committee, not UBH, are responsible for providing "all plan documents" and other disclosures to plans members.  Ex. 2 at 302, 322–23; Ex. 1 at 304, 324–25.  Likewise, the Tesla plan designates "Tesla" as the "Plan Administrator" and makes clear that Tesla—again, not UBH or Viant—is responsible for ERISA disclosures.  Ex. 3 at 189.  Both summary plan descriptions identify UnitedHealthcare (a distinct corporate affiliate of Defendant UBH) as serving a distinct role as the "Claims Administrator" for these plans.  Ex. 1 at 304; Ex. 2 at 4, 313; Ex. 3 at 173.  The Apple plan identifies UBH as a distinct entity with responsibility for administering "mental health and chemical dependency coverage."  Ex. 1 at 46; Ex. 2 at 46.  Plaintiffs' summary plan descriptions thus make clear that UBH is not the plan administrator with ERISA disclosure responsibilities for either plan.

Under the ERISA statutes that Plaintiffs invoke in Count IV, Section 502(c)(1), 29 U.S.C. § 1132(c)(1), only the designated "plan administrator" for an ERISA plan may be held liable for failing to comply with disclosure obligations set forth in Sections 102 and 104.[11]  Numerous courts have dismissed ERISA disclosure claims when, as here, the defendant is not the designated plan administrator.  *See*, *e.g.*, *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008) (Section 502(c) claim fails as a matter of law when not asserted against the plan administrator); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008) (same); *Del Castillo v.*

---

[11]  Section 502(c)(1) provides: "Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

Gibson, Dunn & Crutcher LLP

*Cmty. Child Care Council of Santa Clara Cty.*, 2018 WL 2357698, at *13 (N.D. Cal. May 24, 2018) (rejecting "*de facto* administrator" allegation and dismissing claims under Section 102/104 because only the designated plan administrator is a proper defendant); *Bush v. Liberty Life Assurance Co. of Boston*, 130 F. Supp. 3d 1320, 1327–28 (N.D. Cal. 2015) (dismissing claims against insurer under Section 102/104, because insurer was not the plan administrator and therefore not a proper defendant). As these cases also show, Plaintiffs' conclusory assertions in the Complaint that "United is the Plan Administrator" carry zero weight when, as here, their plans specifically designate someone else. Compl. ¶¶ 90, 95, 331.

Second, even if UBH were a proper defendant, Plaintiffs fail to allege any violations of ERISA's disclosure requirements. In the previous "Ingenix" litigation that Plaintiffs hold out as relevant here (Compl. ¶ 19), multiple courts dismissed claims that an alleged failure to disclose UCR rates, data, or methodologies violates any of ERISA's disclosure requirements. *See WellPoint II*, 903 F. Supp. 2d at 921–22; *WellPoint III*, 2013 WL 12130034, at *35–37; *Franco*, 818 F. Supp. 2d at 821–22; *In re Aetna UCR Litig.*, 2015 WL 3970168, at *13–14. Plaintiffs' claims are no stronger here: Count IV consists merely of four paragraphs including an incorporation by reference (Compl. ¶ 312) and conclusory assertions (*id.* ¶¶ 313–15).

As these other courts recognized, ERISA does not require UCR disclosures. Section 102, which deals with Summary Plan Descriptions, requires administrators to provide plan participants and beneficiaries with "information described in [§ 102(b)]," which lists thirteen specific information requirements, none of which involves information concerning UCR rates, methodologies, or calculations. *Franco*, 818 F. Supp. 2d at 821; *see also WellPoint III*, 2013 WL 12130034, at *33; *In re Aetna UCR Litig.*, 2015 WL 3970168, at *13–14.

The other provision on which Plaintiffs rely, Section 104, requires certain information to be provided to plan members "upon written request." Plaintiffs do not allege any "written requests," so this alone requires dismissal. *See Clay v. AT&T Umbrella Benefit Plan No. 3*, 2019 WL 5682825, at *5 (E.D. Cal. Nov. 1, 2019) (no disclosure claim absent showing that "Plaintiff ever requested" the information required to be furnished by statute). Even upon request, this statute also does not require disclosure of UCR rates, methodologies, or data: "The administrator shall, upon written request of any

Gibson, Dunn & Crutcher LLP

20

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  The phrase "instruments under which the plan is established or operated," as applied in this provision, covers only certain legal documents governing a plan.  *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 758 (7th Cir. 1999) ("[T]he use of the term 'instruments' implies that the statute reaches only formal legal documents governing a plan.").  Count IV should be dismissed.

### D. Plaintiffs' Claims Under ERISA Section 502(a)(3) Should Be Dismissed Because They Merely Recast Plaintiffs' Claims For Legal Relief (Counts V–VIII).

In Counts V–VIII, Plaintiffs bring a series of claims under ERISA Section 502(a)(3), through which they purport to seek injunctions, declarations, and other "equitable" relief.  Plaintiffs' allegations, however, show that these counts are rooted in all of the same allegations and contentions as Plaintiffs' claim for benefits under ERISA Section 502(a)(1)(B).  *See, e.g.*, Compl. ¶¶ 322, 333, 347.  Accordingly, Counts V–VIII fail for the same reasons as Plaintiffs' other ERISA claims.

These claims also fail for an additional reason:  Plaintiffs cannot satisfy the distinct requirements to seek an injunction or "appropriate equitable relief" under Section 502(a)(3).  "To qualify as 'equitable relief,' both '(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought' must be equitable rather than legal."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019) (citing *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016)).  Additionally, claims that fit within other parts of Section 502(a) cannot simply be repackaged to support a separate claim under Section 502(a)(3), because the latter provision exists only as a "safety net offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Bush*, 77 F. Supp. 3d at 908 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).

Plaintiffs' claims under Section 502(a)(3) wilt under the inquiry required by these controlling authorities.  For starters, the basis for these claims is legal, not equitable, as demonstrated by the fact that Counts V–VIII merely incorporate and repeat all of the same allegations from Plaintiffs' legal claims in Counts II–IV—that UBH failed to pay UCR (which Plaintiffs contend means "billed charges") in accordance with plan terms, that Viant's negotiations were not authorized by the relevant

Gibson, Dunn & Crutcher LLP

1    plans, and that there were various unspecified disclosure violations arising from these actions. *See*

2    Compl. ¶¶ 322, 326–28, 333, 352, 355. These are the same allegations that Plaintiffs make through

3    their claim for benefits—*i.e.*, money damages—under Section 502(a)(1)(B). *See id*. ¶¶ 293–301. That

4    Plaintiffs fail to state a *viable* claim for benefits under Section 502(a)(1)(B) does not mean they can

5    sue for equitable relief under Section 502(a)(3), because under *Depot*, the "basis for the plaintiff's

6    claim" is still legal, not equitable. *See* 915 F.3d at 660.

7         Plaintiffs' thinly-veiled attempts to repackage their benefits claims by citing additional statutory

8    provisions in Counts V–VIII should be rejected. For example, Plaintiffs assert in Count V that UBH

9    failed to provide a "full and fair review" of Plaintiffs' claims as required by ERISA Section 503, 29

10   U.S.C. § 1133, but they identify no specific violations of this statute or its implementing regulations

11   (29 C.F.R. § 2560.503-1). *See* Compl. ¶¶ 334–35; *see also In re Aetna UCR Litig*., 2015 WL 3970168,

12   *13–14 (dismissing Section 503 claims for failing to allege specific violation); *Bay City Surgery Ctr.*

13   *v. ILWU-PMA Welfare Plan Bd. of Trustees*, 2016 WL 11185297, at *7 (C.D. Cal. Mar. 25, 2016)

14   (dismissing full and fair review claim because dispute was really about award of benefits under Section

15   502(a)(1)(B)). Further, Plaintiffs' allegations about their EOBs are not only vague; they are also false,

16   as demonstrated by the attached exhibits. *See* Exs. 4–8 (EOBs clearly report payment reductions based

17   on "Eligible Expense," administrative appeals process, etc.).

18        Likewise, Plaintiffs' invocation of ERISA's statutory fiduciary duties, 29 U.S.C. § 1104(a),

19   fails to support a distinct claim for equitable relief. In alleging a breach of fiduciary duty by UBH,

20   Plaintiffs rely on all of the same purported failures to pay UCR that they allege in their claim for

21   benefits under Section 502(a)(1)(B). Indeed, Plaintiffs expressly claim that UBH's fiduciary breaches

22   are based on its alleged failure to "act in accordance with the documents and instruments governing

23   the group plan" (Compl. ¶ 319; *see also id.* ¶¶ 320, 322, 328, 333)—*i.e.*, the exact same theory asserted

24   under Section 502(a)(1)(B) in Counts II and III (*see*, *e.g.*, *id*. ¶ 301). Courts have repeatedly rejected

25   such attempts to recast benefits claims as fiduciary-breach claims. *Armijo*, 2015 WL 13629562, at

26   *12–14 (dismissing Section 502(a)(3) claim because alleged fiduciary breaches were duplicative of

27   claims for benefits under Section 502(a)(1)(B)); *In re Aetna UCR Litig*., 2015 WL 3970168, at *13–14

28   (dismissing fiduciary breach claims under Section 502(a)(3) for failing to allege a violation distinct

Gibson, Dunn &
Crutcher LLP

22

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

from claims challenging UCR reductions under Section 502(a)(1)(B)); *Franco*, 818 F. Supp. 2d at 822 (same).[12]

Plaintiffs' vague allegations of misrepresentations and nondisclosures fall flat here too, as they do in Count IV, discussed above.  *See WellPoint III*, 2013 WL 12130034, at *35–37; *Franco*, 818 F. Supp. 2d. at 822; *In re Aetna UCR Litig.*, 2015 WL 3970168, at *13–14; *see also Weiss v. CIGNA Healthcare, Inc*., 972 F. Supp. 748, 754 (S.D.N.Y. 1997) ("The general fiduciary obligations set forth [in § 404] do not refer to the disclosure of information to Plan participants, and it would be 'inappropriate to infer an unlimited disclosure obligation on the basis of general provisions that say nothing' about such duties.").

Plaintiffs' Section 502(a)(3) claims also fail under the second *Depot* prong, because "the nature of the underlying remedies sought" in Counts V–VIII is legal, not equitable.  *Depot*, 915 F.3d at 660. Plaintiffs sprinkle vague references to "injunctive and/or declaratory relief" into these counts, but their allegations also show that any injunctions or other orders they seek would merely serve to advance their ultimate claim for monetary relief—namely, to rectify the alleged "underpayment[s]" of UCR that allegedly forced them to make payments to Summit Estate that they should not have paid.  Compl. ¶¶ 346–47, 357–58.[13]  As the Supreme Court and Ninth Circuit have recognized, "[a]lmost invariably suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages'"—the "classic form of legal relief."  *Depot*, 915 F.3d at 661 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)); *see also Mertens v. Hewitt Assocs*., 508 U.S. 248, 255 (1993) ("other appropriate equitable relief" language in § 1132(a)(3) precludes an award of compensatory damages).[14]

---

[12]  *Cf. Zisk v. Gannett Co. Income Protection Plan*, 73 F. Supp. 3d 1115, 1119 (N.D. Cal. 2014) (allowing fiduciary breach claims to proceed because they were supported by a distinct theory and were asserted against a distinct defendant); *Bush*, 77 F. Supp. 3d at 908 (allowing fiduciary breach claims to proceed based on a distinct theory and remedies).

[13]  *See also* Compl. ¶¶ 4, 14, 79, 99, 106, 134, 155–67 (allegations of Plaintiffs' alleged monetary harm from underpayments), ¶¶ 177–79 (same for plaintiff LD), ¶¶ 203–205 (same for plaintiff BW), ¶¶ 215–18 (same for plaintiff RH), ¶¶ 227–30 (same for plaintiff CJ); ¶ 233 (defining alleged class in reference to persons whose claims "were underpaid or repriced by United and Viant").

[14]  *See also Almont Ambulatory Surg. Ctr., LLC v. United Health Grp*., 2016 WL 6601662, at *11–12 (C.D. Cal. Feb. 3, 2016) (dismissing claims for equitable relief because "to the extent Plaintiffs seek to

Gibson, Dunn &
Crutcher LLP

23

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Further, because the only concrete injury Plaintiffs allege (at best) involves past "underpayments" for services they received in 2018 and 2019, Plaintiffs do not even have Article III standing to seek injunctive or other prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) ("Abstract injury is not enough . . . and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (citations omitted)); *Thole v. U.S. Bank N.A.*, —U.S.—, 2020 WL 2814294 (U.S. June 1, 2020) (holding that Article III's requirements apply with full force to claims for statutory violations under Section 502(a)(3)).

Finally, Plaintiffs do not even attempt to satisfy the stringent pleading requirements for any of the limited categories of monetary relief that could qualify as equitable under Section 502(a)(3). Plaintiffs do not allege traceable funds as needed to support a claim for equitable restitution. *See Montanile*, 136 S. Ct. at 657; *Depot*, 915 F.3d at 662–63. Nor do they plead any facts to support a claim for surcharge under the "very particular set of circumstances" allowing such a claim. *Armijo*, 2015 WL 13629562, at *13. None of Plaintiffs' claims can be squeezed into these narrow categories. Accordingly, Counts V–VIII should be dismissed for failure to state a claim because Plaintiffs fail to plead any facts supporting a distinct claim for equitable relief under Section 502(a)(3). *See Del Castillo v. Cmty. Child Care Council of Santa Clara Cty.*, 2019 WL 2644234, at *8 (N.D. Cal. June 27, 2019) (dismissing claims under Section 502(a)(3) because "though Plaintiffs seem to request equitable relief, the substance of their requests for restitution of commissions, fees, and premium payments appears to be requests for legal relief, which do not qualify under Section 502(a)(3)").

## VI.   CONCLUSION

For the reasons set forth more fully above, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

---

recover benefits under the plans through injunctions, the requested relief is obviously duplicative of [the ERISA benefits claim]," and stating that because "the injunctions Plaintiffs request may be awarded under ERISA § 502(a)(1)(B) . . . if Plaintiffs wish [to] enjoin Defendants from denying their claims, they must do so through the operation of § 502(a)(1)(B)"); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) ("plaintiffs may not disguise an attempt to obtain monetary relief as a traditional equitable remedy").

Gibson, Dunn & Crutcher LLP

Dated: June 11, 2020                           Respectfully submitted,

                                               /s/ *Heather Richardson*
                                                Heather Richardson

                                               Attorney for Defendant
                                               UNITED BEHAVIORAL HEALTH

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Gibson, Dunn &
Crutcher LLP