Matthew M. Lavin, Esq. (*pro hac vice*)
Wendy A. Mitchell, Esq. (CA SBN 158553)
**NAPOLI SHKOLNIK PLLC**
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

David M. Lilienstein, Esq. (CA SBN 218923)
Katie J. Spielman, Esq. (CA SBN 252209)
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| LD, DB, BW, RH and CJ on behalf of themselves and all others similarly situated,<br><br>        Plaintiff,<br>   vs.<br><br>UNITED BEHAVIORAL HEALTH, INC. a California corporation, and VIANT, INC., a Nevada corporation,<br><br>       Defendants. | Case No.: 4:20-CV-02254-YGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO VIANT INC.'S MOTION TO DISMISS**<br><br>Complaint Filed: April 2, 2020<br>Trial Date:     None Set<br><br>Hearing Date:   August 11, 2020<br>Hearing Time:   2:00 p.m.<br>Courtroom:     1 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES ..................................................................................................... ii

I.       Introduction................................................................................................................... 1

II.      Reimbursement Methodology........................................................................................ 1

III.     The RICO § 1962(c) Claim Should Not Be Dismissed. ................................................ 5

    A.     Plaintiffs Have Plausibly Alleged an Association-In-Fact Enterprise ..................... 6

    B.     Plaintiffs Have Plausibly Alleged Predicate RICO Acts by United & Viant........... 8

        1.     *"Federal Health Offenses" as a Specified Unlawful Activity for the Laundering of
               Monetary Instruments Is a Predicate RICO Act under 18 U.S.C. § 1961.* ......... 8

        2.     *Plaintiffs Have Sufficiently Alleged RICO Predicate Acts of Mail and Wire Fraud* .......... 9

    C.     Plaintiffs Have Plausibly Pled Proximate Cause.................................................... 10

IV.      Plaintiffs' ERISA Claims Are Properly Pleaded Against Viant .................................. 11

    A.     Viant is an ERISA Fiduciary Because it Exercises Discretionary Authority and Control
           Over Disposition of Plan Assets ............................................................................ 11

        1.     *ERISA Fiduciary Status is a Fact-Intensive Inquiry* .................................... 16

        2.     *Viant's Authorities do not support dismissal of Plaintiff's ERISA claims* ....... 17

    B.     Plaintiffs Have Alleged that Viant Knowingly Participated in a Prohibited ERISA
           Transaction............................................................................................................ 19

    C.     Plaintiff Pleads Appropriate Equitable Relief ........................................................ 20

V.       CONCLUSION............................................................................................................ 24

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018) ........................................................................................ 11

4

*Am. Chem. Soc'y v. Commax Techs., Inc.*,
5      2007 WL 963968 (N.D. Cal. Mar. 30, 2007)................................................................. 7

6 *Arizona State Carpenters Pension Trust Fund v. Citibank*,
25 F.3d 715 (9th Cir. 1997) .......................................................................................... 17

7

*Bias v. Wells Fargo & Co.*,
8      942 F.Supp.2d 915 (N.D. Cal. Apr 25, 2013)................................................................. 6

9 *Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ....................................................................................................... 9

10

*Cigna Corp. v. Amara*,
11      563 U.S. 421 (2011)................................................................................................. 20, 21

12 *Cirino v. Bank of Am., N.A.*,
2014 WL 9894432 (C.D. Cal. Oct. 1, 2014) .................................................................. 7

13 *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*,
809 F.2d 617 (9th Cir. 1987) ........................................................................................ 16

14

15 *Crutcher v. Multiplan, Inc.*, 2016 WL 6832644 (W.D. Mo. Nov. 18, 2016) ...................................... 5

16 *Del Castillo v. Community Child Care Council of Santa Clara Country, Inc.*,
2019 WL 2644234 (N.D.cal. 2019) .............................................................................. 21

17 *Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ........................................................................................ 21

18

19 *Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)........................................................................................... 11

20 *Downey Surgical Clinic, Inc. v. Ingenix*, Inc.,
2013 WL 12114069 (C.D. Cal. Mar. 12, 2013) ............................................................. 7

21

22 *Egelhoff v. Egelhoff ex rel. Breiner*,
532 U.S. 141 (2001) ...................................................................................................... 14

23 *Escalante v. California Physicians Service*,
309 F.R.D. 612 (C.D.Cal. 2015)................................................................................... 22

24

25 *Fremont Emergency Services (Mandavia), Ltd. v. United HealthCare Insurance, Co., et al.*,
Case No. A-19-79278-B (Clark County, NV, June 24, 2020) ........................................ 5

26 *Friedman v. 24 Hour Fitness USA, Inc.*,
580 F. Supp. 2d 985 (C.D. Cal. 2008) ........................................................................... 6

27

28 *Gomez v. Guthy-Renker, LLC*,
2015 WL 4270042 (C.D. Cal. July 13, 2015)................................................................. 5

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000) ................................................................................................. 19

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir. 1996) ................................................................................ 11

*In re AEP ERISA Litig.*,
   327 F. Supp. 2d 812 (S.D. Ohio 2004) ................................................................... 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................. 5, 6

*In re CMS Energy Litig.*,
   312 F. Supp. 2d 898 (E.D. Mich. 2004) ................................................................ 16

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
   305 F. Supp. 2d 658 (E.D. Tex. 2004 ) .................................................................. 16

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   284 F. Supp. 2d 511 (S.D. Tex. 2003) ................................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) .......................................................... 7

*In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*,
   2018 WL 4945541 (C.D. Cal. June 18, 2018) .......................................................... 5

*John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank*,
   510 U.S. 86 (1993) ................................................................................................. 16

*Josef K. v. California Physicians' Service*,
   2019 WL 2342245 (N.D. Cal. 2019) ..................................................................... 12

*Kramer v. Smith Barney*,
   80 F.3d 1080 (5th Cir. 1996) .................................................................................. 16

*Kyle Rys., Inc. v. Pacific Admin. Serv., Inc.*,
   990 F.2d 513, 516 (9th Cir. 1993) .......................................................................... 11

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir.1984) ................................................................................... 19

*Maez v. Mountain States Telephone and Telegraph, Inc.*,
   54 F.3d 1488 (10th Cir. 1995) ................................................................................ 16

*Mertens v. Hewitt Assoc.*,
   508 U.S. 248 (1993) ............................................................................................... 17

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ............................................................................................... 11

*Metropolitan Life Ins. Co. v. Parker*,
   436 F.3d 1109 (9th Cir. 2006) ................................................................................ 14

*Monterey Peninsula Horticulture, Inc. v. Employee Benefit Mgmt. Servs. Inc.*,
   2020 WL 2747846 (N.D. Cal. May 27, 2020) ........................................................ 13

*In re Elec. Data Sys. Corp. ERISA Litig.*,
  305 F. Supp. 2d 658 (E.D. Tex. 2004) ............................................................................. 16

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir.1993) ................................................................................................ 9

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ........................................................................................... 4

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*,
  943 F.3d 1243 (9th Cir. 2019) .................................................................................... 9, 10

*Patelco Credit Union v. Sahni*,
  262 F.3d 897 (9th Cir.2001) ........................................................................................... 19

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ....................................................................................................... 11

*Reich v. Lancaster*,
  55 F.3d 1034 (5th Cir. 1995) .......................................................................................... 16

*Schmuck v. United States*,
  489 U.S. 705 (1989) ......................................................................................................... 9

*Sebastian Int'l, Inc. v. Russolillo*,
  128 F. Supp. 2d 630 (C.D. Cal. 2001) ............................................................................. 9

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ........................................................ 4

*Smith v. Local 819 IBT Pension Trust*,
  291 F.3d 236 (2d Cir. 2002) ........................................................................................... 16

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*,
  661 F. Supp. 2d 1076 (D. Ariz. 2009) ............................................................................ 19

*Thole v. U.S. Bank, N.A.*,
  140 Sup. Ct. 1615 (2020) ............................................................................................... 22

*United States v. Blinder*,
  10 F.3d 1468 (9th Cir. 1993) ..................................................................................... 5, 20

*United States v. Feldman*,
  853 F.2d 648 (9th Cir. 1988) ........................................................................................... 7

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ................................................................................................. 11, 20

*Wit v. United Behavioral Health*,
  2019 WL 2644234 (N.D. Cal 2019) ............................................................................... 22

*Wit v. United Behavioral Health*,
  317 F.R.D. 136 (N.D.Cal. 2016) .................................................................................... 22

*Yagman v. Allianz Ins.*,
  2015 WL 5553462 (C.D. Cal. July 9, 2015) ................................................................... 6

**Statutes**

18 U.S.C. § 1956 ................................................................................................................ 8

18 U.S.C. § 1961 ................................................................................................................ 8

18 U.S.C. § 24 .................................................................................................................... 8

29 U.S.C. § 1002(14) ....................................................................................................... 18

29 U.S.C. § 1002(21)(A) ................................................................................................. 11

29 U.S.C. § 1002(21)(A) ................................................................................................. 11

29 U.S.C. § 1102(a)(1)(A) ............................................................................................... 14

29 U.S.C. § 1102(a)(2) .................................................................................................... 11

29 U.S.C. § 1104(a)(1)(D) .............................................................................................. 14

29 U.S.C. § 1106 ........................................................................................................ 18, 20

29 U.S.C. § 1109(a) ......................................................................................................... 19

29 U.S.C. §1132(a)(1)(B) ................................................................................................ 22

ERISA § 402(a)(1)(A) ...................................................................................................... 14

ERISA § 404(a)(1)(A) ...................................................................................................... 11

ERISA § 404(a)(1)(D) ...................................................................................................... 14

ERISA §502(a)(3) ............................................................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 16

Fed. R. Civ. P. 8(a) .......................................................................................................... 16

Fed. R. Civ. P. 9(b) ............................................................................................................ 9

LD, et al. v. UNITED and VIANT - PLAINTIFFS' OPPOSITION TO VIANT MOTION TO DISMISS
4:20-CV-02254-YGR

## I.      INTRODUCTION

Viant, Inc. ("Viant") mischaracterizes Plaintiffs' allegations as it wants them to be, not as they are. The rates of payment for the underlying healthcare claims at issue in this case were **never** agreed to or negotiated by Plaintiffs or their healthcare providers. For every claim at issue, Plaintiffs' providers submitted the appropriate claim forms for payment to United on industry standard forms, commonly known as Uniform Billing ("UB") forms" under the Healthcare Common Procedure Coding System ("HCPCS") billing code H0015, which a universally recognized service code for substance abuse intensive outpatient treatment ("IOP").  [ECF 1 ¶¶ 138-139]. Every underpaid claim in this litigation has the HCPCS code H0015.

## II.     REIMBURSEMENT METHODOLOGY

The FAIR Health database "provide(s) reliable information about healthcare costs because each year health insurers around the country send [it] over a billion healthcare bills, which are added to FAIR Health's database of more than 31 billion claims."[1] No providers submit pricing information, only insurers. FAIR Health states that it then uses "information from those claims to estimate what providers charge, and what insurers pay, for providing healthcare to patients."[2] New York, Connecticut and many other states use the FAIR Health database as a guidepost for healthcare consumer protection.

The FAIR Health Database was created as a part of United's 2009 settlement of the *Ingenix* litigation brought by New York's Attorney General and others. Investigations into Ingenix revealed that it intentionally skewed data to underpay out-of-network healthcare claims by billions of dollars over the life of the scheme. In 2009 United Healthcare and its affiliates paid 350 million dollars to settle cases arising from the same conduct.[3]

---

[1] FAIR Health Consumer, "About FAIR Health," accessed at
https://www.fairhealthconsumer.org/#about, last accessed June 19, 2020

[2] *Id*.

[3] *TheAmerican Medical Association, et al. v. United Healthcare Corp., et al*., Civil Action No. 00-2800 (S.D.N.Y.).

The goal of the FAIR Health Database is to prevent third party benefits administrators such as Viant from using manipulated methodologies to calculate reimbursements based on the usual, customary and reasonable ("UCR" or its synonyms discussed in the *Ingenix* settlement) rate. As the Complaint alleges, Viant contracts with United for the sole purpose of skewing pricing methodology to unlawfully underpay claims, for financial gain.

Further, Plaintiffs allege that the Mental Health Parity and Addiction Equity Act (MHPAEA) requires mental health to benefits to be in parity with medical and surgical benefits. As United clearly states that they rely on FAIR Health for medical and surgical payments, and have done so since 2011[4], parity requires that mental health and substance abuse treatment benefits be determined using the same methodology as medical and surgical benefits. As set forth in the above chart, Defendants have obviously failed to do this.  The underpayments at issue herein violate the MHPAEA.

The following graph shows the FAIR Health benchmark amounts for Intensive Outpatient Treatment ("IOP") compared to amounts Viant caused United to pay. IOP is universally billed under HCPCS code H0015. For every single Plaintiff who's claims are at issue in this case, the UCR, Prevailing Charge, or otherwise described amount is equal to 100% of the providers' billed charges, because the billed charges are ***less*** than the FAIR Health benchmark amounts. Viant's methodology pays billed charges when less than its artificially low amounts. Despite Viant's protestations to the contrary, the UCR rate Viant was charged with distorting in reality equals 100% of billed charges ***for these Plaintiffs*** only because their billed charges are ***below FAIR Health Benchmarks***. The chart clearly shows, and as alleged in Plaintiffs' Complaint, Defendants' methodology resulted in Plaintiffs' claims being reimbursed at rates ranging from 11% to 25% of the FAIR Health

---

[4] United's own website states to the public that "Health care benefit plans managed by UnitedHealth Group affiliates began to use FAIR Health's Benchmarking Databases to determine payment for out-of-network professional services within 60 days of first receiving the applicable FAIR Health Benchmark Database Modules at various times in 2011." *Legal – Payment of out-of-network benefits*, https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits (last accessed June 29, 2020).

1  reimbursement amount.[5] The flawed and illegal methodology employed by Defendants that produced

2  these results is what this case is about.



The data contained in this graph has only recently become available to the general public, but

Viant has had access to it for years.  Evidence in this case will show that Viant employees responsible

for Outpatient Repricing (OPR) had FAIR Health data at their fingertips through an in-house claims

system at Viant known as "Toolbox," and could have properly applied FAIR Health to its pricing at

any time but chose not to do so. Instead, Viant used random, made-up benchmarks to artificially

_____

* FAIR Health 80th Percentile payment data for code H0015 and each Plaintiff's zip-code was
accessed at https://www.fairhealthconsumer.org/medical/zip (last accessed June 18th, 2020).

[5] The same unlawful conduct is at issue in both the instant action and in the related action, *Pacific
Recovery Solution et al. v. United Behavioral Health and Viant*, Case No. 4:20-cv-02254-YGR.  In
this, the patient case (because the Plaintiffs are the actual patients who received intensive outpatient
substance abuse treatment), United and Viant's claim underpayments left Plaintiffs with outstanding
health care bills that they paid out of pocket.  In contrast, in the *Pacific Recovery*, or provider action,
the provider-Plaintiffs did not get paid by their patients, and were out-of-pocket the difference between
their billables and United and Viant's underpayments.

reprice claims so that United and Viant could make as much of a margin as possible at the expense of beneficiaries of plans Viant administered.

A further wrinkle on this scheme is that United and Viant automatically charge self-funded employer plans the full amount of an out of network providers' billed charges, but do not actually pay these amounts.  United and Viant make money on these claims by pocketing the difference, or the "margin," between what they charged the employer's self-funded plan (100% of billed charges) and the amount they were able to "save" by underpaying the claim (the Viant payment).  In this way United and Viant conspire to illegally siphon hundreds of millions of dollars a year by defrauding employer plans, providers and patients alike, all of whom are kept in the dark about this scheme. This is how United and Viant make their ill-gained profits from out of network care.  This case is about the damage Viant does to healthcare patients such as the Plaintiffs, who are left with healthcare bills they cannot afford to pay.

As stated in the Plaintiffs' Complaint, each of the Plaintiffs in this case had met their deductible and co-insurance responsibilities in full by the time they began receiving IOP services from their providers. This means that each of the plaintiffs was entitled to reimbursement at 100% of the fair allowable amount: 100% of their providers' billed charges. Instead, each of the Plaintiffs has had to pay or make arrangements to pay tens of thousands of dollars in balance bills as thee direct result of Viant's conduct alleged in the Complaint. As the Complaint makes abundantly clear, this case is about ensuring Plaintiffs and all those similarly situated have equitable access to life saving mental health care without incurring crippling debt.

Viant lurks in the shadows of benefits administration, functioning as both a tool to underpay claims for United's benefit, and a buffer against United's liability for underpaying claims. As the complaint shows, however, Viant has broad discretionary control over the dispensation of plan benefits. Viant is the agent of underpayment, and serves as a scapegoat when Plaintiffs call United to complain. As is to be expected, Viant's Motion to Dismiss seeks to allow it to escape back into the shadows of benefits administration, behind ERISA based subterfuge, without facing consequences for its deliberate, fraudulent and damaging role in underpaying claims. Viant should not escape liability for its role as United's agent in duplicating the Ingenix grift.

III.     THE RICO § 1962(C) CLAIM SHOULD NOT BE DISMISSED.

Plaintiffs' RICO § 1962(c) Claim (Count VII) should not be dismissed. RICO claims are to "be liberally construed to effectuate its remedial purposes" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) *quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985). Also, "[RICO] has become a tool for everyday fraud cases brought against respected and legitimate enterprises." *Sedima* at 499. Further, each inappropriate application of the non-UCR methodology and the actions by Defendants that flowed from such application are more than sufficient to show that Viant committed "two predicate acts" despite their claims to the contrary. [ECF 38 Pg. 14].

Further, Plaintiffs have asserted far more than a mere "commercial relationship" between Viant and United. Viant is far more than a mere conduit and the contract between Viant and United is far from 'routine.' United and Viant shared a common purpose to illegally and deceptively underpay HCPCS H0015 claims for their mutual profit. United and Viant do not have an arms'-length commercial relationship.

Several Courts have found RICO violations plausible against an insurer and its third-party payor when hidden, illegal methodologies were used in determining claim reimbursements. *See, for example, Crutcher v. Multiplan, Inc.*, 2016 WL 6832644 (W.D. Mo. Nov. 18, 2016); *Fremont Emergency Services (Mandavia), Ltd. v. United HealthCare Insurance, Co., et al.*, Case No. A-19-79278-B (Clark County, NV, June 24, 2020).

Plaintiffs' allegations resemble those in *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) than the cases cited by Viant including *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042 (C.D. Cal. July 13, 2015). First, *Gomez* cites *Odom* approvingly and distinguishes its facts where a payment processor, a mere conduit for the transactions, was not part of a RICO enterprise. Further, another California District Court has criticized *Gomez* for the very proposition Viant relies on. *See In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*, 2018 WL 4945541, at *4 (C.D. Cal. June 18, 2018) ("Taken at face value, this *[Gomez]* is an interesting conclusion, considering RICO's broad "enterprise" definition. Indeed, it would be strange to prevent RICO from reaching any case where two parties have a contractual relationship—a conclusion Wells Fargo seems to encourage the Court to adopt.")

1    Plaintiffs have alleged "a common purpose to deceive" which is sufficient for a RICO

2    enterprise. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,

3    295 F. Supp. 3d 927, 981 (N.D. Cal. 2018) (distinguishes its facts from *Gomez*, "[t]hese allegations

4    and others in the FAC go beyond connecting Defendants to each other by way of normal commercial

5    dealings. Rather, like the allegations regarding Microsoft and Best Buy in *Odom*, Plaintiffs'

6    allegations support that Defendants shared a common purpose to deceive.

7    Further, corporations may constitute an entire RICO enterprise. *See United States v. Blinder*,

8    10 F.3d 1468, 1473 (9th Cir. 1993) ("If a corporation can form part of an "associated in fact"

9    enterprise, *a fortiori*, a group of corporations should be able to constitute the entire enterprise.") Also,

10   United and Viant, both corporations named as RICO defendants, each represent a legal entity and,

11   alone, may be charged as the RICO enterprise. *See In re Wells Fargo Ins. Mktg. & Sales Practices*

12   *Litig.*, 2018 WL 4945541, at *4 (C.D. Cal. June 18, 2018).

13   **A.  Plaintiffs Have Plausibly Alleged an Association-In-Fact Enterprise**

14   Viant's interpretation of Plaintiffs' Complaint is flawed and misrepresents the allegations

15   actually raised in the Complaint. United and Viant shared a common purpose to deceive even though

16   such purpose is not even required to create an association-in-fact enterprise. United and Viant acted

17   in concert to develop policies, practices, and procedures governing the processing and payment of

18   claims *independent of any actual plan terms*. This enterprise had the purpose of deceiving plan

19   sponsors, insureds, beneficiaries, and healthcare providers to their detriment and the financial benefit

20   of Defendants. The service agreement that United has with Viant will be sought in discovery and,

21   upon information and belief, this agreement masks the true policies, practices, and procedures.

22   Defendants have created an enterprise that determines Outpatient Repricing (OPR) tied to a

23   target price that is not made known to plan sponsors, insureds, beneficiaries, and healthcare providers

24   and then pays claims at or below the target price. The target price is an arbitrarily low amount

25   determined by the Defendants and is not based on FAIR health data even though Defendants have

26   had access to the FAIR health database since its inception. This is the enterprise that presents itself

27   as UCR while it is anything but. Both Defendants profit from this enterprise that exists independent

28   from any plan terms.

As in *Odom*, the enterprise between United and Viant has a common purpose to deceive. This is above and beyond the normal commercial relationships. This common purpose to deceive is alleged in Plaintiffs' Complaint and creates a RICO enterprise and Plaintiffs' allegations clearly show that Viant did more "than carry out the terms of its service contract with United." [ECF 39 Pg. 17]. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., 295 F. Supp. 3d 927 (N.D. Cal. 2018). Further, at least one California District Court has found that an association-in-fact enterprise can exist without all members sharing the same fraudulent purpose. *See Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008). *Friedman* is cited approvingly in *Yagman v. Allianz Ins.*, 2015 WL 5553462, at *2 (C.D. Cal. July 9, 2015) for the proposition that a RICO enterprise may be premised on contractual relationships for financial services. *See also, Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 942 (N.D. Cal. Apr 25, 2013) (finding that plaintiff sufficiently alleged a RICO enterprise consisting of a bank and third-party vendors and brokers who provided default-related services "at the core of the scheme"); *Downey Surgical Clinic, Inc. v. Ingenix*, Inc., 2013 WL 12114069, at *12 (C.D. Cal. Mar. 12, 2013) ("By sharing the information with each other, Plaintiffs have sufficiently alleged a "hub-and-spoke" type enterprise because they have alleged agreement among the Plan Defendants.")

United and Viant share the necessary common purpose through their enterprise that is every bit as dishonest as the defeat device in the Volkswagen diesel litigation where the court found the partnership between Volkswagen and Bosch in implementing the defeat device sufficient. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4890594, at *17 (N.D. Cal. Oct. 30, 2017) ("allegations are sufficient to satisfy the four elements of their § 1962(c) RICO claim. They have plausibly alleged that Bosch partnered with Volkswagen to implement the defeat device in the affected vehicles, and by doing so participated in the conduct of a years-long enterprise to defraud U.S. regulators and consumers.")

United and Viant are witting co-conspirators even though "RICO does not require intentional or "purposeful" behavior by corporations charged as members of an association-in-fact….[n]or does RICO require that the association-in-fact be a conspiracy; there must be an enterprise regardless of whether there is any conspiracy to engage in the predicate acts of racketeering." *United States v.*

1  *Feldman*, 853 F.2d 648, 657 (9th Cir. 1988). Further, no unlawful "common purpose" is required for

2  a RICO enterprise in the Ninth Circuit even though Plaintiffs believe that they have alleged as such.

3  *See Cirino v. Bank of Am., N.A.*, 2014 WL 9894432, at *10 (C.D. Cal. Oct. 1, 2014).

4      Rather, "a corporation may fulfill the requirement if it: (1) made the RICO activities possible

5  and profitable by providing a legal shield for the illegal activity, and (2) also functioned to achieve

6  objectives that were not illegal." *Am. Chem. Soc'y v. Commax Techs., Inc.*, 2007 WL 963968, at *4

7  (N.D. Cal. Mar. 30, 2007). United and Viant made the RICO activities alleged possible; it is irrelevant

8  whether there were other objectives that were not illegal.

9      As set forth in the Complaint, United and Viant have anything but a vanilla commercial

10  contract for services and Viant's claims to the contrary do not make it so, especially on the pleadings

11  at this early stage of litigation.

12  **B.  Plaintiffs Have Plausibly Alleged Predicate RICO Acts by United & Viant.**

13      1.    *"Federal Health Offenses" as a Specified Unlawful Activity for the <u>Laundering of</u>*

14      *<u>Monetary Instruments</u> Is a Predicate RICO Act under 18 U.S.C. § 1961.*

15      The Federal Health Offenses asserted by Plaintiffs constitute unlawful activity that can form

16  the basis of a RICO claim as they are included in the specified unlawful activities defined in Code

17  section relating to the laundering of monetary instruments. A claim for the laundering of monetary

18  instruments is a specified predicate act under RICO. Under 18 U.S.C. § 1961 "(1) "racketeering

19  activity" means...(B) any act which is indictable under any of the following provisions of title 18,

20  United States Code...section 1956 (relating to the laundering of monetary instruments)" and pursuant

21  to 18 U.S.C. § 1956(c)(7), "any act or activity constituting an offense involving a Federal health care

22  offense" is included in the definition of "specified unlawful activity." 18 U.S.C. § 1956(c)(7)(F).

23  Federal health care offenses are defined at 18 U.S.C. § 24. Plaintiffs have alleged Defendants'

24  violation of Federal health care offenses in their Complaint. *See* [ECF 6 ¶¶ 355-359].

25      18 U.S.C. § 1956 states, "[w]hoever, knowing that the property involved in a financial

26  transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct

27  such a financial transaction which in fact involves the proceeds of specified unlawful activity -- (A)(i)

28  with the intent to promote the carrying on of specified unlawful activity...a financial transaction shall

1   be considered to be one involving the proceeds of specified unlawful activity." Based on the

2   allegations in the Complaint, Defendants have conducted numerous such financial transactions as

3   their proceeds derive from specified unlawful activity, the aforementioned Federal health care

4   offenses.

5       2.   *Plaintiffs Have Sufficiently Alleged RICO Predicate Acts of Mail and Wire Fraud*

6       Plaintiffs have sufficiently alleged and pled RICO predicate acts of mail and wire fraud. In

7   pleading these acts, "[t]he only aspects…that require particularized allegations are the factual

8   circumstances of the fraud itself... Rule 9(b) "requires the identification of the circumstances

9   constituting fraud s*o that the defendant can prepare an adequate answer from the allegations*."

10  *Odom v. Microsoft Corp*., 486 F.3d 541, 554 (9th Cir. 2007) (emphasis added, citation omitted).

11      It is not Defendants fraudulent calls and letters that are the scheme, it is the creation and use

12  of Outpatient Repricing (OPR) tied to a target price that is not made known to plan sponsors, insureds,

13  beneficiaries, and healthcare providers and then paying claims at or below the target price while

14  representing to the world that the UCR methodology was used. The wire and mail communications

15  are incidental to this scheme. Further, upon information and belief, the wire and mail communications

16  did cross state lines. Indeed, given the diversity between the parties, it is impossible for the

17  communications not to have crossed state lines.

18      Here Defendants' mailings and wire communications are only "incident to an essential part

19  of the scheme," they only need to be in furtherance of a scheme to defraud, and do not themselves

20  need to be fraudulent or untrue. *See Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 635 (C.D.

21  Cal. 2001) *citing Schmuck v. United States*, 489 U.S. 705 (1989).

22      Plaintiffs' Complaint expressly alleges that the communications by mail and wire were in

23  furtherance of the underlying scheme. Plaintiffs are not required to describe every single piece of

24  mail and wire communication in detail; instead, they are required to be specific enough to "to give

25  defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that

26  they can defend against the charge and not just deny that they have done anything wrong."

27  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993) (internal quotation marks and citation omitted).

28  Defendants in this action cannot credibly state they do not understand the allegations at issue herein.

1   However, should the Court find Plaintiffs' allegations insufficient, the Plaintiffs would

2   request leave to conduct limited discovery as to Viant and United as the scheme alleged is similar to

3   one of insider trading with specific details only being in Defendants' possession. In such cases, in the

4   Ninth Circuit in *Neubronner* recognizes that limited discovery is appropriate. *Id.* at 671 ("But surely

5   we can not expect a private plaintiff in an insider trading case to plead with the specificity Rule 9(b)

6   requires without allowing some limited opportunity for discovery.")

7   **C.  Plaintiffs Have Plausibly Pled Proximate Cause**

8   The Ninth Circuit takes an expansive view of proximate cause under RICO, stating

9   "proximate cause [under RICO] is "a flexible concept that does not lend itself to a black-letter rule

10  that will dictate the result in every case."" *Painters & Allied Trades Dist. Council 82 Health Care*

11  *Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1250 (9th Cir. 2019) *quoting Bridge v. Phoenix*

12  *Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).

13  As outlined in the Complaint and *supra*, Plaintiffs have strong reason to believe that they were

14  harmed as a direct result of Defendants scheme to utilize a non-UCR methodology and sham

15  negotiations to massively underpay Plaintiffs' IOP claims at the expense of Plaintiffs and, though

16  outside the scope of this particular case, the enterprise also profited at the expense of patients and

17  plan sponsors.

18  Plaintiffs and the putative class were not privy to the inner workings of the scheme. Instead,

19  they only knew of the representations that United made to the world as to the UCR methodology and

20  and Viant's statements in written and wire communications that they adhered to and implemented

21  that methodology. Only by reprocessing every IOP claim under a fair, transparent methodology can

22  Plaintiffs and the putative class be made whole and have the scheme ended. Injunctive relief is also

23  appropriate to prevent this scheme from continuing to harm Plaintiffs and the putative class.

24  Further, even though direct reliance is not a required RICO element (*see Painters* at 1259),

25  Plaintiffs and the putative class clearly relied on Defendants to employ the stated methodology and

26  issue payments according to that methodology.

27  ///

28  ///

- 10 -

IV.   **PLAINTIFFS' ERISA CLAIMS ARE PROPERLY PLEADED AGAINST VIANT**

Viant contends that Plaintiffs have failed to state a claim for breach of fiduciary duty under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), (Counts VII and VIII). It asserts that it did not act as an ERISA fiduciary when it repriced Plaintiffs' claims, or alternatively that Plaintiffs have not adequately pled Viant's fiduciary status. Viant then acknowledges its potential liability as a nonfiduciary for knowingly participating in a prohibited ERSIA transaction, but asserts that its repricing scheme was a perfectly acceptable method of reigning in health care costs. Finally, Viant contends that none of the many forms of equitable relief requested by Plaintiff are appropriate under ERISA. These attempts to escape liability all fail, either based on Plaintiffs' complaint as currently pled, or based on additional allegations discussed herein that could be included in an amended complaint.

**A. Viant is an ERISA Fiduciary Because it Exercises Discretionary Authority and Control Over Disposition of Plan Assets**

"Under ERISA, there are two categories of fiduciaries—named (or statutory) and functional." *Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018). Named fiduciaries are those who are named in the plan instrument or who are identified by the employer and/or employee organization as a fiduciary. 29 U.S.C. § 1102(a)(2). Plaintiffs do not allege that Viant is a named fiduciary.

ERISA defines a "functional" fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan or has any discretionary authority or discretionary responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
> 29 U.S.C. § 1002(21)(A).

Under ERISA's functional definition, anyone "who exercises discretionary control or authority over the plan's management, administration, or assets . . . is an ERISA 'fiduciary.' " *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citations omitted). A fiduciary is "anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan." *Kyle Rys., Inc. v. Pacific Admin. Serv., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993); *see*

- 11 -

*also*, 29 U.S.C. § 1002(21)(A). Determining eligibility and calculating benefits are acts of plan administration. *See Varity Corp. v. Howe*, 516 U.S. 489, 511-512 (1996).

Fiduciary duties under ERISA are "the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) *citing Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (Friendly, J.). Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits. . . ." ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). In carrying out their duties, fiduciaries must act with " 'an eye single' toward beneficiaries' interests." *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) (citation omitted). A fiduciary is also required to discharge his duties "in accordance with the documents and instruments governing the plan." *Id.*

Here Plaintiffs allege that Viant has significant authority and control over plan assets, and that in its exercise of control over the plan assets it violated the terms of the plan by paying far less than the UCR for out-of-network intensive outpatient behavioral health treatment. Although the Plan states that out-of-network health care claims will be paid at the UCR determined using data regarding competitive prices for a service in a given geographic area, in the case of Plaintiffs and the class, responsibility and control over the actual payment of health care claims was assumed by Viant. [ECF 1, Compl. ¶¶ 3, 7, 18, 34.] Further, "Viant determined the reimbursement rate for every underpaid claim in the present litigation." [ECF 1, ¶ 7.] Rather than simply distributing payment to the Plan participants and beneficiaries' providers according to FAIR Health data regarding UCR for the provider's zip code, Viant was responsible for negotiating payment to the providers at pennies on the dollar of the UCR rate. [ECF 1, ¶¶ 18, 177, 190, 203, 215, 227.]

Indeed, Viant is incentivized to negotiate the lowest possible rate through a compensation mechanism that allowed it to keep the difference between the target rate given to it by United, and the negotiated rate it was ultimately able to pay to the provider. [ECF 1, ¶¶ 4, 36, 45-46.] In fact, the negotiation was nonexistent. It was a sham. Neither Plaintiffs nor their provider participated in any way in determining how much Viant paid on a given claim. Even worse, plan participants such as Plaintiffs and other putative class members bore the financial burden for the difference between the UCR rate that should have been paid to the providers, and the amount "negotiated" by Viant. [ECF

1   1, ¶¶ 4, 14, 27-28.] Here, as alleged, Viant's gross underpayment resulted in Plaintiffs owing the
2   difference between what was billed and what was paid to their provider.

3          Had Viant simply calculated the benefit amount according to the UCR FAIR health data and
4   the percentile selected by the plan sponsor[6] and distributed that amount to Plaintiff's providers, it
5   very well might have been performing a "merely ministerial" duty that does not rise to the level of
6   exercising discretionary control and placing it in the status of a fiduciary. *See Josef K. v. California
7   Physicians' Service*, 2019 WL 2342245 at *7 (N.D. Cal. 2019) (" 'Congress commodiously imposed
8   fiduciary standards on persons whose actions affect the amount of benefits retirement plan
9   participants will receive'. . . . Thus, although fiduciary status does not attach to a party who 'merely
10  perform[s] ministerial duties or processes claims,' a party may qualify as a fiduciary 'if it has the
11  authority to grant, deny, or review denied claims.'" (internal citations omitted).  But this is not what
12  Viant did. Instead, Viant used its own internal and proprietary algorithm in order to negotiate and re-
13  price OON claims, allowing it to retain the delta as its own profits.  Viant's algorithm has nothing to
14  do with the UCR rate methodology described in the Plans using databases of what other health care
15  providers in the relevant geographic areas charge for their services. Viant made the final decision. It
16  had total discretion to determine how much to pay for a given claim, especially since it could pocket
17  the difference between its payout and reasonable OON reimbursement rates.

18         Viant does not dispute any of the allegations regarding its role in re-pricing out of network
19  behavioral health claims for the Plan. To the contrary, it boasts of "the realities of what was occurring
20  – namely, that United, with Viant's assistance when called upon, was seeking to control costs for the
21  health benefit plans with which United contracted." Dkt. 33, at 16:19-21. Viant admits its role in
22  helping United "to reign in the costs associated with out-of-network providers," and that Viant's

---

[6] See https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits, describing the
process by which United and its affiliates use FAIR Health database percentile charts to calculate
UCR:  "Affiliates of United Health Group frequently use the 80th percentile of the FAIR Health
Benchmark Databases to calculate how much to pay for out-of-network services of health care
professionals, but plan designers and administrator of particular health care benefit plans may choose
difference percentiles for use with applicable health care benefit plans."

1    "involvement in that process" includes repricing and negotiation of health care claims. Dkt. 33 at

2    16:26-27; 17:5-6.

3         As a result, Viant concedes it controlled the disposition of plan assets—how much was paid

4    out on a given claim. This conduct is at the heart of a definition of an ERISA functional fiduciary.

5    *See Monterey Peninsula Horticulture, Inc. v. Employee Benefit Mgmt. Servs., Inc.*, 2020 WL 2747846

6    (N.D. Cal. May 27, 2020) (denying a motion to dismiss a third party benefit administrator on the

7    basis that it exercised discretionary authority and was therefore a functional fiduciary).

8         Accordingly, Plaintiffs seek equitable relief enjoining Viant from repricing health care claims

9    in violation of the plain language of their ERISA Plans, and further enjoining Viant from underpaying

10   Plan participants' health care providers, leaving the participants with the financial burden of the

11   difference between the repriced rate and the UCR rate guaranteed by the Plan.

12        An employer establishing a welfare benefit plan may choose the amount and level of benefits

13   to be provided. This includes the types of compensation that are considered in calculating such

14   benefits. However, once an employer has established an employee benefit plan under ERISA, plan

15   fiduciaries are under an obligation to provide benefits according to the terms of the plan. ERISA §§

16   402(a)(1)(A), 404(a)(1)(D), 29 U.S.C. §§ 1102(a)(1)(A), 1104(a)(1)(D). *See also Egelhoff v. Egelhoff*

17   *ex rel. Breiner*, 532 U.S. 141, 147 (2001); *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113

18   (9th Cir. 2006).

19        Furthermore, nothing in ERISA permits a plan to avoid providing the benefit levels it has

20   chosen to establish by contracting with a third party to re-negotiate the rates outlined in the Plan after

21   the benefits have vested and/or been used by the Plan's beneficiaries. If so, then any third-party would

22   be empowered to re-write the terms of a given plan, with impunity, and regardless of the burden this

23   places on plan participants. This is why, when discretionary functions are handled by a party that is

24   not a "named" fiduciary, ERISA still holds that party accountable to the duties of loyalty and

25   prudence as a functional fiduciary.

26        That is precisely what is at issue here. Under the terms of the Plans, United was required to

27   pay for out of network treatment for mental health and substance use disorders at the Usual Customary

28   and Reasonable (UCR) rate. [ECF 1. ¶¶ 6, 8, 82, 104, 105.] While Plaintiffs object to the purported

"excerpts" of Plan documents attached to United's request for judicial notice, even United's own evidence verifies that OON benefits are paid based on competitive (i.e. UCR) rates in the geographic area. The 2018 Apple Benefits Book, Exh. 1 to Nguyen Decl. in support of United's Mot. to Dismiss (Dkt. 35-2), at p. 26 states:

> Whenever you use out-of-network providers, the percentage of benefits paid will be based on UCR rates.

The 2018 Apple Plan further advises participants and beneficiaries that they can easily find out if their provider is charging more than UCR by obtaining the Current Procedural Terminology (CPT) code for the treatment they seek, the provider's anticipated fees for the treatment, and the provider's zip code, and then inputting that information at www.fairhealth.org. *Id*.

The 2019 Apple Plan attached to the Nguyen declaration filed concurrently with United's motion, also describes benefit levels for out of network care based on UCR.[7] Specifically, the 2019 Apple Plan states that when rates have not been negotiated with the OON provider, eligible expenses are determined "based on available data resources of competitive fees in that geographic area." Exh. 2, Nguyen Decl. at p. 31. In other words, the usual customary and reasonable rate for the service. This is precisely what Plaintiff's alleged in their complaint: "'United describes UCR rates as "based on what other health care professionals in the relevant geographic areas or regions charge for their services.'" [ECF 1, Compl. ¶ 8]. This language is drawn directly from United's website, referenced in Plaintiffs' complaint, https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits, where United explains that benefits for out of network claims will be paid based on:

> the lower of either:
>
> – the out-of-network provider's actual charge billed to the member, or
>
> – 'the reasonable and customary amount,' 'the usual, customary and reasonable amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services.

---

[7] As noted in Plaintiffs' concurrently filed Objection to Request for Judicial Notice, there are inconsistencies between the excerpts of the purported 2019 Apple plan document filed with United's Nguyen Declaration and purported copy of Plaintiffs' 2019 Apple plan. However, the operative language regarding reimbursement of out of network expenses according to data resources of competitive fees in the geographic area is the same.

The same United website explains that United obtains data about prevailing rates in a geographic region from FAIR Health, and that United's use of FAIR Health resulted from "a January 2009 settlement agreement between UnitedHealth Group Incorporated and the NYAG" which "[closed] Ingenix's PHCS and MDR Databases . . . following the establishment of the new database to be owned and operated by FAIR Health."  Id.  As Plaintiffs has alleged, and will prove, Plaintiffs' provider's normal charge is equal to or below the 80th percentile of charges for other IOP providers in the same geographic area. And yet, here Viant paid only 13.2%-16.7% of Plaintiffs' provider's normal charge.  Compl. ¶¶ 177, 190, 203, 215, 227. This extreme discount violates the plain language of the Plaintiffs' plans. If accurate, then Viant's claim that it is not an ERISA fiduciary would result in the ERISA violation set forth in Section 404, as well as set forth in *Egelhoff*, *supra*.

     *1.     ERISA Fiduciary Status is a Fact-Intensive Inquiry*

While Viant may dispute that it breached ERISA's fiduciary standards at trial or on summary judgment, because fiduciary status and breaches are fact-intensive inquiries under ERISA, they are not appropriately resolved in a motion to dismiss under Rule 12(b)(6). *See In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 827 (S.D. Ohio 2004); *In re CMS Energy Litig.*, 312 F. Supp. 2d 898, 907-09 (E.D. Mich. 2004).

It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings. The issue of fiduciary status is a mixed question of law and fact. *See Kramer v. Smith Barney*, 80 F.3d 1080, 1084 n.2 (5th Cir. 1996); *Reich v. Lancaster*, 55 F.3d 1034, 1044 (5th Cir. 1995). Moreover, "fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 544 (S.D. Tex. 2003). Thus, under Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status. Although Plaintiff's factual pleadings make it unnecessary to determine the minimum allegations of fiduciary status necessary to survive a 12(b)(6) motion to dismiss, the Court notes that other jurisdictions have established low pleading thresholds by holding that the allegation that defendants "exercised discretionary authority or control with respect to the management of [the plan]" is sufficient to survive

1    a 12(b)(6) motion. *See Smith v. Local 819 IBT Pension Trust*, 291 F.3d 236, 241 (2d Cir. 2002); *Maez*

2    *v. Mountain States Telephone and Telegraph, Inc.*, 54 F.3d 1488 (10th Cir. 1995); *In re Elec. Data*

3    *Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004 ).

4         Denying Viant's motion to dismiss is also the proper result in light of ERISA's broad, liberal

5    construction of what constitutes a fiduciary. ERISA § 3(21), 29 U.S.C. § 1002(21), requires a broad

6    definition of fiduciary. *See Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d

7    617, 625 (9th Cir. 1987). Fiduciary status under ERISA is to be construed liberally, consistent with

8    ERISA's policies and objectives. *See John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank*, 510

9    U.S. 86, 96 (1993). ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional

10   terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A), thus expanding the

11   universe of persons subject to fiduciary duties - and to damages - under § 409(a)." *Mertens v. Hewitt*

12   *Assoc.*, 508 U.S. 248, 262 (1993) (emphasis omitted); *Arizona State Carpenters Pension Trust Fund*

13   *v. Citibank*, 25 F.3d 715, 720 (9th Cir. 1997).

14        One example of the information that is relevant to analyzing Viant's role in the claims process

15   is the contract between Viant and United.  Plaintiffs do not have a copy of this document, and neither

16   United nor Viant have produced this document. Given both United and Viant's failure to inform

17   Plaintiffs that Viant is the entity determining how much is paid on a given claim, the contractual

18   relationship between United and Viant is directly at issue. Similarly at issue is the algorithm Viant

19   uses to determine the amount of claims. As set forth in the chart above, Viant decided to pay

20   Plaintiffs' provider a mere fraction of billed charges. The manner in which Viant determined this

21   percentage, and United's involvement, further implicate Viant's status as a functional fiduciary and

22   is a subject to be explored during discovery.

23        2.   *Viant's Authorities do not support dismissal of Plaintiff's ERISA claims*

24        Viant argues that its role in repricing and renegotiating OON reimbursement rates at levels

25   significantly less than the Plan guarantees do not constitute fiduciary functions. The cases on which

26   it relies do not support this position. For example, Viant cites *Kanawi v. Bechtel Corp.*, 590 F. Supp.

27   2d 1213 (N.D. Cal. 2008) for the proposition that a non-fiduciary "does not subject itself to liability

28   simply by participating in a breach of trust by fiduciaries" [Dkt. 33 at 13:9-10]. *Kanawi*, however,

1    involved a decision on summary judgment. What's more, the court in *Kanawi* specifically found that

2    each of the defendants named in the breach of fiduciary duty claims regarding mismanagement of the

3    401(k) plan was in fact, a fiduciary. This included the employer/Plan sponsor, the committee

4    comprised of the employer's officers and employees appointed to administer the plan, and the

5    investment advisory and management company that was contracted to manage the investment of plan

6    assets. *See Id.* at 1224-1225.

7          The court in *Kanawi* also emphasized that the question of "[w]hether a party is a fiduciary

8    under ERISA is not an inquiry into the powers formally assigned to a particular party, but rather a

9    more pragmatic inquiry into the powers actually exercised by that party and the amount of discretion

10   involved in the exercise of such powers." *Id.* at 1224. Even though the investment management

11   company was not designated the named fiduciary with authority to management the plan, the court

12   held that because the named fiduciary "exercised that authority [over management of the Plan and its

13   assets] in concert with" the investment advisory and management company, the management

14   company could not "hide behind the Committee's oversight to shield itself from possible liability for

15   its own actions in relation to the Plan's management." *Id.*

16         *Brown v. Cal. Law Enf't Ass'n*, 81 F.Supp.930 (N.D. Cal 2015), on which Viant relies, is also

17   inapposite. *Brown* involved a medically-retired police officer who brought ERISA breach of fiduciary

18   duty claims against his LTD plan, the plan sponsor, and the plan administrator. The plaintiff alleged

19   that the defendants breached their fiduciary duties by failing to inform him of the need to continue

20   paying premiums on the LTD policy after his medical retirement. The defendants then filed a third-

21   party complaint against the plaintiff's employee organization, the Oakland Police Officers'

22   Association, seeking indemnity based on allegations that the OPOA provided the plaintiff with wrong

23   information about whether he needed to pay the premiums after his retirement. It was this third-party

24   complaint that the court dismissed in *Brown* because the third-party complaint did not allege that the

25   employee organization had any responsibility, control or authority over the plan or its assets. *Id.* at

26   934-5.  Indeed, the plaintiff had not even named the employee organization in his complaint.

27   ///

28   ///

**B.  Plaintiffs Have Alleged that Viant Knowingly Participated in a Prohibited ERISA Transaction**

While the facts as alleged establish that Viant exercised significant control and authority over Plan assets and the administration of the Plans, making it a functional fiduciary, even if Viant were not a fiduciary, it is still subject to liability under section 1132(a)(3) for its role in a prohibited transaction.

ERISA prohibits virtually all transactions between a plan and a "party in interest." 29 U.S.C. § 1106.  A "party in interest" includes "(A) any fiduciary . . . counsel, or employee of [a] benefit plan" as well as "(B) a person providing services to [a] plan" along with employers or employee organizations whose employees are covered by the plan. 29 U.S.C. § 1002(14).

Section 1106(b) establishes that various transactions involving self-dealing are prohibited. It prohibits fiduciaries from dealing with plan assets in their own interest or for their own account. It "creates a *per se* ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction," and "establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans." *Patelco Credit Union v. Sahni,* 262 F.3d 897, 911 (9th Cir.2001) (internal citation omitted). A fiduciary that engages in self-dealing is obligated to disgorge all benefits it obtains from such conduct. 29 U.S.C. §§ 1109(a), 1132(a)(3).

Furthermore, "ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss." *Leigh v. Engle,* 727 F.2d 113, 122 (7th Cir.1984). "The nature of the breach of fiduciary duty alleged [under ERISA § 406(b) ] is not the loss of plan assets but instead the risking of the trust's assets at least in part to aid the defendants...." *Id.* (emphasis omitted). Liability under section 1132(a)(3) for violations of section 1106 extends to non-fiduciaries, to prevent a non-fiduciary from benefitting from a fiduciary's breach. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238 (2000).

Viant's contention that Plaintiffs have not adequately alleged that it "knowingly participated" with United in the scheme to  reprice out of network claims at well below the UCR rate provided for in the Plans is without merit.  Plaintiffs alleges that Viant claims the rate it offers during its

- 19 -

1    negotiations with providers is based on the UCR.  Compl. ¶ 37.  In reality, however, Viant does not

2    negotiate and pay claims according to UCR methodologies, but rather prices claims at the same flat,

3    low rate across the entire country.  Id. ¶ 38. As alleged, "United and Viant both know that they are

4    not offering and/or paying the UCR rates as required under the terms of the patients' insurance

5    policies." *Id*. ¶ 47. Both parties are further "aware that the costs of underpayment are borne by SJ

6    and the class from whom United collects inflated premiums." *Id.*  At best for Viant, these alleged

7    deficiencies could be cured by amending Plaintiff's operative complaint.

8         *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d

9    1076, 1094 (D. Ariz. 2009), is instructive. There plaintiffs claimed that defendants delegated the

10   calculation of provider compensation rates to a third-party for the improper purpose of underpaying

11   the providers and generating revenue for defendants. According to Plaintiffs, the delegation

12   constituted a "transaction involving the plan on behalf of a party ... whose interests are adverse to the

13   interests of the plan or the interests of its participants or beneficiaries" and thus was a prohibited

14   transaction under 29 U.S.C. § 1106(b)(2). The court rejected the defendants' attempts to narrowly

15   define what constitutes a prohibited transaction under ERISA. The court noted that at the heart is

16   ERISA §406 (§1106)'s "remedial design and Congress' intent for ERISA to afford robust protection

17   to plan participants and beneficiaries [requiring that] §1106 must be read broadly." *Spinedex* at 1095.

18   The plaintiff's allegations included that the defendants "loaned, transferred, or retained [Plan] assets

19   in contravention of §1106." *Id.* (see citations). Here, Plaintiff has alleged that United and Viant,

20   acting in concert, obtained the value of Plaintiff and the class' overpayments for claims that Viant re-

21   priced at pennies on the dollar. Compl. ¶¶ 4-5, 48, 54, 208.

22        **C.  Plaintiff Pleads Appropriate Equitable Relief**

23        Viant argues that Plaintiff has not pled facts to show that equitable relief is available under

24   section (a)(3). This argument is unavailing. As many courts have recognized, section (a)(3) provides

25   a catchall remedial section, "providing 'appropriate equitable relief' for 'any' statutory violation."

26   *Varity* at 512.  This "'catchall' provision[] act[s] as a safety net, offering appropriate equitable relief

27   for injuries cause by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v.*

28   *Howe*, 516 U.S. 489, 512 (1996).

1    Viant's primary basis for challenging the equitable relief Plaintiffs seek is its contention that
2    the relief the relief they seek is legal rather than equitable in nature.  ERISA is meant to protect plan
3    participants.  It empowers participants, beneficiaries, or fiduciaries of a Plan to bring an action to
4    enjoin any practice that violates ERISA or the terms of the plan, or to obtain other appropriate
5    equitable relief to redress violations of ERISA or the Plan, or to enforce any provisions of the Plan.
6    29 U.S.C. § 1132(a)(3). Here, Plaintiff seeks such injunctive and other appropriate equitable relief
7    pursuant to ERISA (including surcharge, disgorgement of ill-gotten profits, and reprocessing of
8    claims in accordance with the terms of the Plan).

9    In *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), the Supreme Court held that the "appropriate
10   equitable relief" available under § 502(a)(3) refers to "those categories of relief that, traditionally
11   speaking (i.e., prior to the merger of law and equity) 'were *typically* available in equity.'" *Amara* at
12   439.  The Court held that "affirmative and negative injunctions obviously fall within [the category of
13   equitable relief.]"  *Id.* at 440.  Additionally, the Court held that certain forms of relief under equity,
14   while they may result in the payment of moneys rightly owed to trust beneficiaries, nevertheless
15   "resemble[] forms of traditional equitable relief" and are available to ERISA plan participants and
16   beneficiaries under 502(a)(3).  *Id.*  This includes surcharge, which the Court noted "prior to the merger
17   of law and equity this kind of monetary remedy against a trustee . . . was 'exclusively equitable.'"
18   *Id.* at 442.

19   *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019), on which Viant relies
20   heavily, does not change the result or holding of *Amara* or *Moyle*, nor does it strip Plaintiffs of the
21   right to pursue equitable relief against Viant for its fiduciary breaches. *Depot* involved a suit brought
22   by multiple employers against Blue Shield for charging excessive monthly premiums. The plaintiffs
23   alleged that Blue Shield secretly added premium surcharges to cover kickbacks to the local chamber
24   of commerce, at whose recommendation the employers purchased the policies at issue. The
25   employers brought causes of action under both ERISA and state law to recover the excess premium
26   charges.

27   The Ninth Circuit held that premium rate-setting does not involve fiduciary conduct by the
28   insurer, does not constitute ERISA plan management, and does not involve control over plan assets.

1   It further held that Blue Shield's conduct did not constitute a "prohibited transaction" under ERISA,

2   on the basis that the two types of relief sought, restitution of premiums and disgorgement were, under

3   the facts alleged in that case, legal, not equitable in nature.

4        Plaintiffs here, on the other hand, seek expressly equitable relief under their (a)(3) counts. For

5   example, Plaintiffs seek multiple forms of declaratory relief, including a declaration that "Viant's

6   benefit determination and negotiation methodologies were improper."  [ECF 1, Prayer For Relief ¶

7   10]. Plaintiffs also seek an order that United and Viant reprocess all underpaid claims and provide

8   transparency as to the methodology used to do so. [*Id*., Prayer For Relief ¶ 12-13] None of these

9   forms of relief are analogous to the relief sought in *Depot*.

10       *Del Castillo v. Community Child Care Council of Santa Clara Country, Inc.*, 2019 WL

11  2644234 (N.D.cal. 2019) also does not support Defendant's position.  The idea that Plaintiff's section

12  (a)(3) cause of action is nothing more than a disguised request for the legal remedy of monetary

13  damages is itself nothing more than a disguised attempt to rewrite Plaintiff's complaint.

14       Central to Plaintiffs' request for relief is the reprocessing of claims. This is inherently

15  equitable in nature. *Wit v. United Behavioral Health*, 317 F.R.D. 136 (N.D.Cal. 2016), another action

16  involving a certified ERISA class, is instructive.  There, the denied in part and granted in part, with

17  leave to amend, a motion to dismiss.  It noted that certain forms of relief available under ERISA §

18  502(a)(3), such as restitution or disgorgement, can be both legal and equitable in nature. *Wit v. United*

19  *Behavioral Health*, 2019 WL 2644234 at * 7.  It noted that "restitution in equity [is] ordinarily in the

20  form of a constructive trust or an equitable lien, where the money or property . . . can be traced to

21  particular funds or property in the defendant's possession."  *Id.* (internal quotations and citations

22  omitted).  These are equitable, not legal remedies.

23       Elsewhere, courts have concluded that "while ultimately money may be obtained, the <u>relief</u>

24  <u>sought</u>  . . . is non-monetary."  *Meidi v. Aetna, Inc. 63 Empl. Ben. Cas.* 1124 at *21. (emphasis in

25  original).  The discussion in *Meidi* canvasses cases nationwide, all agreeing that claims "reprocessing

26  is not monetary relief." *Id.*

27       This issue looks far beyond a motion to dismiss.  *Meidi* involved the granting of class

28  certification.  So did a more recent case in this jurisdiction, *Escalante v. California Physicians*

- 22 -

*Service*, 309 F.R.D. 612 (C.D.Cal. 2015).  The plaintiff filed an ERISA class action.  The complaint asserted two claims, one under 29 U.S.C. §1132(a)(1)(B) and one under § 1132 (a)(3). See *Escalante* at p. 616. The prayer for relief included requests for disgorgement of profits, and "re-review of all improperly denied claims." *Id.* The court granted class certification.

In light of *Escalante* and the many cases nationwide, all class actions, all involving causes of action under section 502(a)(1)(B) and (a)(3), and all including requests for reprocessing of claims, the clear weight of the authorities compel denial of Defendant's motion to dismiss Plaintiffs' ERISA causes of action.

Finally, Viant makes a passing allegation that Plaintiffs lack standing to pursue injunctive or prospective relief against it, citing *Thole v. U.S. Bank, N.A.*, 140 Sup. Ct. 1615 (2020).  *Thole* involved defined-benefit pension benefits that the plaintiffs were entitled to and were in fact receiving. The plaintiffs alleged that the pension assets were poorly invested, resulting is a substantial loss to the plan as a whole. The court found no Article III standing on the basis that the plaintiffs were still receiving their pensions, would continue to receive their benefits, and that the benefits would remain unchanged regardless of any alleged fund mismanagement.

Here the situation is entirely different. Defendants' intentional, and substantial claims underpayment left Plaintiffs and putative class members either thousands of dollars out-of-pocket, or with thousands of dollars of unpaid bills. This is precisely the type of "concrete, particularized, and actual or imminent" injury in fact  that was lacking in *Thole*. 140 S.Ct. at p. 1618.

Plaintiffs also note that while the equitable forms of relief they seek are statutory available under ERISA, they are also equally available at common law. To the extent there are members of the putative class who, unlike Plaintiffs, have United insurance policies that are not governed by ERISA (*e.g.* government and public employee benefit plans, church-issued employee benefit plans, and individual policies obtained through the insurance marketplace), those policyholders also have rights at equity to enforce the terms of their policies and redress the improper underpayment of claims by United and Viant. Plaintiff's seventh and eighth causes of action, seeking equitable and injunctive relief, thus do not rely solely on ERISA, but also the common law equitable remedies that would

1   inure to non-ERISA class members. Should the Court find that additional clarity is necessary, Plaintiff

2   respectfully requests leave to amend her complaint.

3   **V.       CONCLUSION**

4          By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be

5   denied. If the court is inclined to sustain any part of the motion, Plaintiffs respectfully request leave

6   to cure any deficiencies and amend the pleading.

7   Dated: July 2, 2020                                                **NAPOLI SHKOLNIK PLLC**

8                                                                       /s/ Matthew M. Lavin
                                                                       Matthew M. Lavin
9                                                                      Wendy A. Mitchell

10                                                                     **DL LAW GROUP**
11                                                                      /s/ David M. Lilienstein
                                                                       David M. Lilienstein
12                                                                     Katie J. Spielman

13                                                                     *Attorneys for Plaintiffs*
14                                                                     *And the Putative Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LD, et al. v. UNITED and VIANT - PLAINTIFFS' OPPOSITION TO VIANT MOTION TO DISMISS
4:20-CV-02254-YGR