IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**LD, ET AL.,**

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH, ET AL.,**

Defendants.

CASE NO. 4:20-cv-02254 YGR

**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. Nos. 33, 34

Plaintiffs[1] bring this putative class action against defendants United Behavioral Health ("United") and Viant, Inc. for claims arising out of United's alleged failure to reimburse non-party Summit Estate at the Usual, Customary, and Reasonable Rate ("UCR") for Intensive Outpatient Program ("IOP") services that it provided to plaintiffs. Plaintiffs allege that defendants' conduct caused them injury, because it forced them to pay out-of-pocket any amounts that United failed to reimburse Summit Estate. In the complaint, plaintiffs assert, on their own behalf and on behalf of a proposed class of similarly-situated United members, claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Now pending are two motions to dismiss all claims in the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) all of the claims in the complaint are inadequately pleaded; and (2) plaintiffs lack RICO standing.

Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **GRANTS** the motions to dismiss **WITH LEAVE TO AMEND**.

---

[1] Plaintiffs are LD, DB, BW, RH, and CJ. Plaintiffs have used pseudonyms to protect the confidentiality of their identity pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

## I. BACKGROUND

Plaintiffs allege as follows. Plaintiffs are members of active health insurance policies administered by United. Compl. ¶ 2, Docket No. 1. Every such policy "provided coverage for out-of-network benefits for mental health and substance use disorder treatment at usual, customary, or reasonable rates." *Id.* ¶ 6. United describes UCR rates on its website as being "based on what other health care professionals in the relevant geographic areas or regions charge for their services." *Id.* ¶ 8.

Before obtaining IOP services from Summit Estate, an out-of-network provider, plaintiffs signed a contract with Summit Estate that makes them "responsible for amounts not paid by United." *Id.* ¶ 27. Summit Estate contacted United to verify out-of-network benefits and United represented that the IOP services in question would be paid "at UCR rates" and that the claims for such services "were not subject to third-party repricing by Viant." *Id.* ¶ 26. Based on the "plain language" of the plans, "it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate."[2] *Id.* ¶¶ 174, 187, 200, 212, 224. United "through plan documents, marketing materials, EOBs, and other materials" represented to plaintiffs that their plans would pay for out-of-network IOP services "at the UCR amount according to an objective, empirical methodology." *Id.* ¶ 104.

After receiving the IOP services, claims were submitted to United for payment according to the "out-of-network rate." *Id.* ¶ 8. Instead of "paying UCR," United engaged defendant Viant to "negotiate" reimbursements. *Id.* ¶ 18. Viant has "financial incentives" to negotiate low reimbursements. *Id.* ¶¶ 40, 46. Viant's negotiations resulted in offers to reimburse for IOP services at an amount below the UCR, and United paid the plaintiffs' claims at the reduced Viant amount. *Id.* ¶¶ 36-38. Neither United nor Viant disclosed to plaintiffs the methodology they used for calculating the reimbursement rates for IOP services. *Id.* ¶¶ 44, 127.

---

[2] In their opposition, plaintiffs contradict the allegations in the complaint by asserting that "Plaintiffs BW, CJ, DB, LD and RH do not allege that United is required to pay 100% of their providers' charges." Opp'n at 1, Docket No. 46.

No plaintiff has an agreement with Viant that permits Viant to negotiate with providers on his or her behalf. *Id.* ¶ 34. Yet, Viant represented "through written and oral correspondence" that it had authority to negotiate with providers on the patients' behalf. *Id.* ¶ 51.

"Every claim at issue in this litigation has been underpaid by United and overpaid or currently owed by the Plaintiffs and the Class." *Id.* ¶ 79. "United's underpayment of the claims at issue here resulted in unduly large balance bills to Plaintiffs." *Id.* ¶ 99.

The Explanation of Benefits ("EOB") sent to plaintiffs do not state that Viant's repricing is permitted under the plaintiffs' plans and that the repriced amount negotiated by Viant is consistent with plan terms. *Id.* ¶ 53. The EOBs also do not state that the repriced amount is an "adverse benefit determination" that plaintiffs have the right to appeal. *Id.* Accordingly, plaintiffs did not have the opportunity to appeal the "underpayment[s]." *Id.* ¶ 56.

Plaintiffs allege that United and other insurers were required as part of the settlement of an unrelated litigation ("*Ingenix* litigation") to underwrite the creation of a database called the "FAIR health" database, which contains rates for the reimbursement for IOP treatment. *Id.* ¶ 20. Plaintiffs allege that United and the other insurers were *not* required by the *Ingenix* litigation settlement to use the FAIR health database.[3] *Id.*

Plaintiffs assert the following on their own behalf and on behalf of a proposed class of members "of a health benefit plan either administered or insured by United" whose claims for out-of-network IOP services "were underpaid or repriced by United and Viant," *id.* ¶ 233: a claim against (1) both defendants under RICO, 18 U.S.C. § 1962(c); (2) United for underpaid benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); (3) United for breach of plan provisions under ERISA, 29 U.S.C. § 1132(a)(1)(B); (4) United for ERISA disclosure violations under 29 U.S.C. § 1132(c)(1); (5) United for breach of fiduciary duties under 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(3); (6) United for violations of ERISA's full and fair review statute, 29 U.S.C. § 1133; and (7) two claims against both defendants for equitable relief under 29 U.S.C. § 1132(a)(3).

---

[3] Plaintiffs argue in their opposition that United is required by "the language of its plans" to use the FAIR health database to reimburse the out-of-network IOP services at issue. Opp'n at 2, Docket No. 46. Plaintiffs do not allege this theory in the complaint. As noted above, plaintiffs allege in the complaint that United is *not* required to use the FAIR Health database.

3

1   **II.    LEGAL STANDARD**

2   To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual
3   matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*,
4   556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual
5   content that allows the court to draw the reasonable inference that the defendant is liable for the
6   misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a
7   complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the
8   line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and
9   citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court
10  must "accept all factual allegations in the complaint as true and construe the pleadings in the light
11  most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "[A]
12  court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in
13  opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d
14  1194, 1197 n.1 (9th Cir. 1998). A court should grant leave to amend unless "the pleading could
15  not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal.*
16  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

17  **III.   DISCUSSION**

18  As noted, defendants move to dismiss all claims in the complaint under Federal Rule of
19  Civil Procedure 12(b)(6) on the grounds that: (1) all of the claims in the complaint are
20  inadequately pleaded; and (2) plaintiffs lack RICO standing.

21  The Court addresses these arguments in turn.

22  **A.    ERISA**

23  **1.    Breach of Plan Terms**

24  Under Section 502(a)(1)(B) of ERISA, an ERISA plan "participant or beneficiary" may
25  bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights
26  under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."
27  29 U.S.C. § 1132(a)(1)(B). To state a claim under Section 502(a)(1)(B), "a plaintiff must allege
28  facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle

1  it to benefits." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d

2  1110, 1155 (C.D. Cal. 2015) (citation and internal quotation marks omitted).

3      Plaintiffs assert two claims under Section 502(a)(1)(B) against United, one for "underpaid

4  benefits," and another for breach of the "plan provisions." Compl. ¶¶ 292-311. Both claims are

5  predicated on the theory that United underpaid plaintiffs' claims for out-of-network IOP services

6  in contravention of the provisions of plaintiffs' plans. *Id.* ¶¶ 301, 305. Plaintiffs seek "underpaid

7  benefits" as relief for both claims. *Id.* ¶¶ 302, 311.

8      United moves to dismiss these claims on the grounds that plaintiffs have failed to identify

9  the plan provisions that require it to reimburse for the IOP services at issue at the UCR rate.[4]

10     In their opposition, plaintiffs do not distinguish the authorities that United cites for the

11 proposition that they are required to identify the relevant plan provisions to state a claim under

12 Section 502(a)(1)(B).

13     The Court concludes that United's motion is well-taken given the allegations in the

14 complaint. Plaintiffs' claims are predicated on allegations that United under-reimbursed Summit

15 Estate for IOP services it provided to plaintiffs. Plaintiffs aver that, pursuant to the "plain

16 language" of their healthcare plans, United was required, but failed, to reimburse Summit Estate

17 based on UCR, with UCR being "equivalent to 100% of the billed charges of Summit Estate."

18 Compl. ¶¶ 174, 187, 200, 212, 224. Plaintiffs, however, do not identify the terms of their plans

19 that require United to reimburse Summit Estate for IOP services based on UCR or at 100% of

20 Summit Estate's billed charges. In the absence of allegations that identify the plan terms at issue,

21 plaintiffs fail to raise the reasonable inference that United breached the terms of their plans. *See*

22 *Almont Ambulatory*, 99 F. Supp. 3d at 1155 (dismissing claim under Section 502(a)(1)(B) on the

23 ground that plaintiffs failed to identify the terms of the plan that provided coverage and

---

[4] Defendants also argue that plaintiffs' claims are subject to dismissal because the terms of plaintiffs' plans did not require United to reimburse Summit Estate for 100% of Summit Estate's billed charges. Defendants request judicial notice of excerpts of summary plan documents. Docket No. 35. Plaintiffs oppose the request, arguing that the excerpts omit information that is material to their claims. Docket No. 47. The Court will deny defendants' request for judicial notice as to the plan excerpts because defendants have not shown that they contain all relevant plan terms, and because the present motions can be resolved without consulting such excerpts.

1  reimbursement rates for the medical services at issue); *Health Glendale Outpatient Surgery Ctr. v.*

2  *United Healthcare Servs.*, No. 19-55412, 805 Fed. App'x 530, 2020 WL 2537317, at *1 (9th Cir.

3  May 19, 2020) (affirming dismissal of claim under Section 502(a)(1)(B) where plaintiff relied on

4  "generalized allegations" about plan breaches but failed to identify "any plan terms that specify

5  benefits that the defendants were obligated to pay but failed to pay").

6  Accordingly, plaintiffs' claims under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), are

7  subject to dismissal.

### 2. Failure to Make Required Disclosures

Under ERISA Section 502(c)(1), a participant or beneficiary can hold a plan administrator liable for (1) failing to comply with certain disclosure and notice obligations; or (2) failing or refusing to comply with a request for information by the participant or beneficiary. 29 U.S.C. § 1132(c)(1). A claim for failure to make required disclosures can be brought only against a "plan administrator." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) (holding that "only the plan administrator can be held liable for failing to comply with the reporting and disclosure requirements") (citation and internal quotation marks omitted).

Plaintiffs assert a claim against United under 29 U.S.C. § 1132(c). Compl. ¶¶ 312-15. This claim is premised on allegations that United failed to "disclose material information about its out-of-network benefit reductions, and illegal adverse benefit determinations," made "material changes to the Plaintiffs and Class' benefit policy without disclosure," and failed to provide accurate EOBs and Summary Plan Documents (SPDs). *Id.* ¶ 314.

United moves to dismiss this claim on the grounds that it is not the plan administrator and therefore cannot be sued under 29 U.S.C. § 1132(c)(1), and that, and even if it could be sued under that statute, plaintiffs' claim would nevertheless fail because they have not alleged any violations of ERISA's disclosure requirements.

ERISA defines a plan administrator as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not

1  designated and a plan sponsor cannot be identified, such other person as the Secretary may by

2  regulation prescribe." 29 U.S.C. § 1002(16)(A).

3        Here, plaintiffs have alleged no factual matter to raise the inference that United was

4  designated under any plan documents as the plan administrator, or that United can otherwise be

5  deemed as the plan administrator under 29 U.S.C. § 1002(16)(A). In their opposition, plaintiffs

6  state, without authority, that United is the "proper defendant" for this claim because "United

7  agreed to provide administrative functions for the plan, including provision of appropriate plan

8  documents to plan participants and beneficiaries upon request." Opp'n at 22, Docket No. 46.

9  Nothing in Section 1002(16)(A) suggests that an entity can become a plan administrator for the

10  purposes of a claim under 29 U.S.C. § 1132(c)(1) by "agreeing" to provide administrative

11  functions for the plan. To the contrary, courts routinely dismiss with prejudice claims under 29

12  U.S.C. § 1132(c)(1) asserted against entities that allegedly served as "de facto" administrators by

13  virtue of having assumed administrative responsibilities. *See, e.g.*, *In re WellPoint, Inc. Out-of-*

14  *Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1045 (C.D. Cal. 2011) ("[C]ourts in this circuit

15  have consistently concluded that liability cannot attach to a third party insurer that assumes

16  administrative responsibilities under the de facto administrator theory.") (collecting cases).

17  Accordingly, this claim is subject to dismissal on the basis that plaintiffs have not alleged facts to

18  show that United can be sued under 29 U.S.C. § 1132(c)(1).

19        Even if United were the plan administrator for the purposes of 29 U.S.C. § 1132(c)(1),

20  however, the claim would still be subject to dismissal because plaintiffs' allegations do not give

21  rise to the reasonable inference that United failed to comply with ERISA's disclosure

22  requirements. In the complaint, plaintiffs cite to 29 U.S.C. sections 1024(4) and 1022 as the

23  disclosure provisions that United allegedly violated. Such provisions provide that a plan

24  administrator is required to disclose, upon request, the summary plan description and other plan

25  documents. *See* 29 U.S.C. § 1024(4) (providing that an administrator shall, upon written request

26  of any participant or beneficiary, furnish a copy of the latest updated summary, plan description,

27  and the latest annual report, any terminal report, the bargaining agreement, trust agreement,

28  contract, or other instruments under which the plan is established or operated"); 29 U.S.C. § 1022

("A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title."). The complaint is devoid of allegations that plaintiffs made a request to United for any plan documents covered by these provisions. Accordingly, plaintiffs do not raise the reasonable inference that United violated these provisions. *See Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008) (holding that "a defendant can't be liable [under 29 U.S.C. § 1132(c)(1)]" for failing to disclose information upon request of the participant or beneficiary "unless it received a request").

To the extent that plaintiffs' 29 U.S.C. § 1132(c)(1) claim is predicated on the theory that United's plan documents and other communications, such as EOBs, were not accurate, that claim fails because plaintiffs have not shown that a claim disputing the accuracy of such materials can be brought under 29 U.S.C. § 1132(c)(1).

Finally, to the extent that plaintiffs seek to assert a 29 U.S.C. § 1132(c)(1) claim based on the theory that United was required, but failed, to disclose the methodology it used to calculate UCR in the context of the reimbursements it provided to Summit Estate, the claim is subject to dismissal because plaintiffs have not identified any provision of ERISA that requires disclosure of such information.

Accordingly, plaintiffs' claim under 29 U.S.C. § 1132(c)(1) is subject to dismissal.

### 3. Breach of Fiduciary Duties

A fiduciary can be held liable for breaches any of the "responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA]." 29 U.S.C. § 1109(a). Under 29 U.S.C. § 1104(a)(l)(D), a fiduciary is required to discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan. A plaintiff suing for violations of 29 U.S.C. § 1109(a) can seek relief as to an individual participant (as opposed to plan-wide relief) if it brings the claim under 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 509-12 (1996).

Plaintiffs seek individual relief under 29 U.S.C. § 1132(a)(3) based on allegations that United violated 29 U.S.C. §§ 1109 and 1104(a) by failing to reimburse Summit Estate for 100% of its billed charges for each plaintiff, which plaintiffs allege amounts to out-of-network benefit

reductions and adverse benefit determinations that were not authorized by the plan documents. Compl. ¶ 322. Plaintiffs also appear to allege that the EOBs they received regarding the reimbursements at issue were inaccurate on the basis that the reimbursements were not authorized by the plan documents. *Id.*

Defendants move to dismiss this claim on the ground that plaintiffs have failed to allege that United's actions were contrary to the plan documents.

Plaintiffs' claim for breach of fiduciary duties is predicated on alleged actions by United "that were not authorized by the plan documents." Compl. ¶ 322. For the reasons discussed above, plaintiffs have failed to allege any breaches of the plan terms or the "plan documents" in connection with United's reimbursements for the IOP services at issue.

Accordingly, this claim is subject to dismissal.

### 4. Full and Fair Review

Under 29 U.S.C. § 1133, a benefit plan must provide notice and an opportunity to appeal when a participant's "claim for benefits under the plan has been denied." 29 U.S.C. § 1133. Under 29 C.F.R. § 2560.503-1(h), a plan is required to establish a procedure for providing a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan. An adverse determination includes, in relevant part, a "denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit[.]" 29 C.F.R. § 2560.503-1(m)(4)(i). Under 29 C.F.R. § 2560.503-1(g), the plan administrator is required to provide a claimant with written or electronic notification of any adverse benefit determination.

Plaintiffs assert a claim against United for violations of 29 U.S.C. § 1133. It is predicated on allegations that United denied them the opportunity to appeal the "underpaid claims" at issue, which plaintiffs allege are adverse benefit determinations. Compl. ¶¶ 332-35. Plaintiffs further aver that the EOBs they received from United did not state that the "underpaid claims" were "an adverse benefit determination that the patient has the right to appeal." *Id.* ¶ 53.

United moves to dismiss this claim on the ground that it fails because the EOBs in question, which United attached to its request for judicial notice, state the amounts that United

9

1  paid to Summit Estate and any remaining balance that plaintiffs were required to pay, as well as
2  the process for appealing such determinations. *See* Req. for Judicial Notice, Nguyen Decl., Ex. 4-
3  8, Docket No. 35-2.

4  The Court will consider the EOBs under the incorporation-by-reference doctrine, which
5  permits courts "to consider documents in situations where the complaint necessarily relies upon a
6  document or the contents of the document are alleged in a complaint, the document's authenticity
7  is not in question and there are no disputed issues as to the document's relevance." *Coto*
8  *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, plaintiffs do not dispute the
9  authenticity of the EOBs that United attached to its request for judicial notice, dispute that the
10 EOBs in question are the ones to which they refer in the complaint, or argue that the EOBs are not
11 relevant to their claims. *See* Objections to RJN at 4, Docket No. 47. Plaintiffs' only argument
12 against the Court's consideration of the EOBs is that, "[w]hile the EOB's [sic] are an evidentiary
13 piece of the puzzle in this case, they are not a necessary or determinative factor in this motion or at
14 this stage of the litigation." *Id.* The Court finds this argument to be unpersuasive.

15 Contrary to plaintiffs' contention, the EOBs are a "determinative factor" to the resolution
16 of the present motions, because the EOBs appear to directly contradict plaintiffs' allegations that
17 such documents failed to inform them of the reimbursement determinations at issue or of their
18 right to appeal such determinations. *See* Nguyen Decl., Ex. 4-8, Docket No. 35-2. The EOBs
19 clearly state the amounts that United would reimburse and any remaining amounts that the
20 plaintiffs would owe to Summit Estate, and that plaintiffs could appeal such reimbursement
21 determinations. *Id.* The Court is not required to accept as true allegations that are contradicted by
22 exhibits incorporated into the complaint by reference, as the EOBs are here. *Agua Caliente Band*
23 *of Cahuilla Indians v. Riverside Cty.*, 181 F. Supp. 3d 725, 732 (C.D. Cal. 2016) ("A court must
24 construe the factual allegations in the pleadings in the light most favorable to the non-moving
25 party, but it need not accept as true conclusory allegations that are contradicted by matters
26 properly subject to judicial notice or by exhibits incorporated into the complaint by reference.").
27 Accordingly, plaintiffs' claim for violations of 29 U.S.C. § 1133 is subject to dismissal to the
28

extent that it is predicated on allegations that the EOBs that plaintiffs received failed to inform them of the reimbursements at issue or of their right to appeal.

Plaintiffs' claim for violations of 29 U.S.C. § 1133 is also subject to dismissal to the extent that it is based on the theory that the EOBs were required, but failed, to state the words "adverse benefit determination," as plaintiffs have cited no authority to support that proposition.

### 5. Catch-all Equitable Relief

Under ERISA's catch-all provision, 29 U.S.C. § 1132(a)(3), a participant, beneficiary, or fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

Plaintiffs assert two catch-all claims for equitable relief under 29 U.S.C. § 1132(a)(3) against both defendants, which they plead "in the alternative" to the legal remedies they seek in connection with their other ERISA claims. Compl. ¶¶ 337-58. Specifically, plaintiffs seek an injunction requiring defendants to pay them the amounts that United allegedly "should have paid for the claims at issue in this action," which United allegedly "improperly retained." *Id.* ¶ 350. Plaintiffs also seek disgorgement of illicit profits and the "reprocessing" of the claims at issue using "an appropriate methodology." *Id.* at page 54. Plaintiffs allege that they seek relief under 29 U.S.C. § 1132(a)(3) "only to the extent that the Court finds that the injunctive relief sought to remedy Counts III through VI are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B)." *Id.* ¶¶ 338, 345. "Counts III through VI" refer to plaintiffs' claims under 29 U.S.C. § 1132(a)(1)(B) for breach of the plan terms; under 29 U.S.C. § 1132(c)(1) for failure to make required disclosures; and under 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(3) for breach of fiduciary duties.

Defendants move to dismiss these claims on the ground that they are subject to dismissal for the same reasons that the other ERISA claims should be dismissed, as they are based on the same allegations and theories and seek the same relief. Defendants further argue that the nature of the relief that plaintiffs seek through these claims is legal rather than equitable.

11

1    The Court agrees with Defendants.  Section 1132(a)(3) can be invoked to enjoin ERISA

2    violations or to redress such violations, or to enforce an ERISA provision or the terms of the plan.

3    29 U.S.C. § 1132(a)(3).  Here, as discussed above, plaintiffs have not stated a claim for any

4    ERISA violation, nor have they raised the reasonable inference that defendants' conduct requires

5    enforcement of an ERISA provision or the terms of any plan.  Plaintiffs' claims under Section

6    1132(a)(3), therefore, are subject to dismissal on this basis.

7    To the extent that plaintiffs seek to re-assert claims under 29 U.S.C. § 1132(a)(3) in the

8    alternative in an amended complaint, any such claims must be supported by allegations that raise

9    the reasonable inference (1) that defendants have violated ERISA or that defendants' conduct

10   requires the enforcement of an ERISA provision or the terms of a plan, and (2) that the remedies

11   sought are equitable, not legal.  "To qualify as equitable relief, both (1) the basis for the plaintiff's

12   claim and (2) the nature of the underlying remedies sought must be equitable rather than legal."

13   *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir.), *cert. denied*, 140 S. Ct.

14   223 (2019) (citation and internal quotation marks omitted).  Here, the complaint is devoid of

15   allegations that raise the inference that the basis for the remedies that plaintiffs seek under Section

16   1132(a)(3) is equitable; plaintiffs' Section 1132(a)(3) claims are predicated on the same theories

17   as their other ERISA claims, which are legal.  Further, the complaint lacks allegations showing

18   that the nature of the remedies sought is equitable, as opposed to legal.

19   In their opposition, plaintiffs argue that they seek disgorgement of amounts by which

20   defendants were unjustly enriched, a surcharge, and an order requiring defendants to "reprocess"

21   the claims for IOP services at issue, which they contend are equitable remedies.  Opp'n at 15,

22   Docket No. 46.  Regardless of how plaintiffs label their requested remedies, the Court cannot

23   reasonably infer that such remedies are permissible under Section 1132(a)(3) in the absence of

24   allegations raising the inference that the basis and nature of such remedies is equitable.  *See Depot*,

25   915 F.3d at 661-65 (holding that a court must "look to the substance of the remedy sought rather

26   than the label placed on that remedy" when determining whether the plaintiff seeks "appropriate

27   equitable relief" under 29 U.S.C. § 1132(a)(3) and affirming dismissal at the pleading stage of

28

12

claims for "disgorgement" and "restitution" because such claims were legal, not equitable, "notwithstanding the[ir] labels").

Accordingly, plaintiffs' claims under 1132(a)(3) are subject to dismissal.

**B.     RICO**

Section 1962(c) of RICO provides, "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Here, plaintiffs allege that defendants violated RICO Section 1962(c). This claim is premised on the following allegations: United and Viant are engaged in an illegal "kick-back" scheme through which United and Viant conspired to take and retain for their own benefit funds given to them by plan members. Compl. ¶¶ 243-91. United sent plaintiffs EOBs that falsely represented that "benefits were available and paid based on the UCR rate," *id.* ¶ 256, "did not state that they were adverse benefit determinations" as a result of Viant's repricing, and did not provide "any process by which the adverse benefit determinations could be appealed," *id.* ¶ 252. Viant falsely represented in its patient advocacy ("PAD") letters to plaintiffs and providers that it had authority to negotiate on patients' behalf. *Id.* ¶¶ 253, 259. Consequently, plaintiffs were injured by this alleged scheme because of "their payment of excessive balance bills" for IOP services. *Id.* ¶¶ 265, 288. Moreover, the predicate offenses for their RICO claim are wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as well as "Federal Health offenses" in violation of 18 U.S.C. § 24 and ERISA, 18 U.S.C. § 1027. *Id.* ¶ 247.

Defendants move to dismiss this claim on the grounds that plaintiffs' allegations are insufficient to state a claim under Section 1962(c) and that plaintiffs lack RICO standing.

**1.     Elements of RICO Section 1962(c) Claim**

To state a claim under Section 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies

13

to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (internal citation omitted).

Here, plaintiffs' RICO claim under Section 1962(c) is subject to dismissal for failure to allege facts to satisfy the following elements.

### a. Enterprise

"An enterprise that is not a legal entity is commonly known as an 'association-in-fact' enterprise." *Id.* at 940 (citation omitted). To plead an association-in-fact enterprise, a plaintiff must allege: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that the associates function as a continuing unit. *Odom*, 486 F.3d at 553 (citation omitted).

Here, plaintiffs have not averred factual matter suggesting that defendants acted with a common purpose of engaging in a course of conduct. The allegations in the complaint describe a contractual relationship between defendants that required Viant to negotiate reimbursements on behalf of United. Plaintiffs allege no facts to raise the inference that defendants' activities pursuant to this contractual relationship were contrary to United's obligations under the ERISA plans it administered or to the terms of such plans. Courts routinely hold that the "common purpose" requirement is not met where, as here, the allegations in the complaint are consistent only with the execution of a routine contract or commercial dealing. *See, e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough."); *Gomez v. Guthy–Renker, LLC*, No. 14-cv-01425-JGB, 2015 WL 4270042, at *11 (C.D. Cal. Jul. 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client.").

### b. Conduct

To satisfy the "conduct" element of a Section 1962(c) claim, a plaintiff must allege facts that the defendant had "some part in directing [the enterprise's] affairs." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (citation and internal quotation marks omitted). Simply being "a part" of the enterprise or "performing services" for the enterprise does not rise to the level of direction required. *Id.*

14

1    Here, plaintiffs have not alleged facts to raise the inference that either United or Viant directed the affairs of the alleged scheme for RICO purposes.  Allegations showing that a defendant conducted its own affairs is insufficient to raise the inference that the defendant conducted the affairs of an enterprise.  *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 939 (N.D. Cal. 2013) (Gonzalez Rogers, J.) (holding that RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs") (emphasis in the original).  As discussed above, the allegations in the complaint are consistent only with defendants conducting their own affairs pursuant to the contract that required Viant to negotiate reimbursements on behalf of United, which plaintiffs do not allege was contrary to the ERISA plans that United administered.  In the absence of allegations that raise the inference that either defendant performed actions to further a scheme rather than their own individual affairs pursuant to the contract just described, the conduct element is not satisfied.

### c. Pattern of Racketeering Activity

A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after [1970] and the last of which occurred within ten years after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  Racketeering activity is also referred to as the "predicate acts."  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  Offenses that can constitute predicate acts for a RICO violation are listed in 18 U.S.C. § 1961(1).

As noted, plaintiffs allege that their RICO claims are predicated on wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as well as "Federal Health offenses" in violation of 18 U.S.C. § 24 and ERISA, 18 U.S.C. § 1027.  Compl. ¶¶ 354-59.

The alleged "Federal Health offenses" cannot serve as predicates for a RICO claim because they are not listed in 18 U.S.C. § 1961(1).  Plaintiffs argue that these offenses can give rise to a RICO claim to the extent that they relate to the laundering of monetary instruments in violation of 18 U.S.C. § 1956.  Opp'n at 8-9, Docket No. 46.  While money laundering is listed in Section 1961(1) and can, therefore, serve as a RICO predicate offense, the complaint is devoid of allegations that defendants engaged in money-laundering activities.  Accordingly, in the absence

of allegations in the complaint that tie the "Federal Health offenses" in question to an offense that can serve as a predicate for a RICO claim, plaintiffs' RICO claim is subject to dismissal to the extent that it is based on "Federal Health offenses."

Wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, can serve as predicate offenses. Plaintiffs, however, have failed to allege facts to raise the reasonable inference that defendants committed at least two instances of either offense.

Wire fraud and mail fraud share the same elements: (1) that the defendant formed a scheme to defraud; (2) used the United States wires [for wire fraud] or United States mail [for mail fraud] in furtherance of the scheme; and (3) did so with a specific intent to deceive or defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citations omitted). Alleged violations of RICO predicated on fraudulent communications, as the ones here, are subject to Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 1401.

Plaintiffs have not averred the specific facts required to raise the reasonable inference that defendants committed at least two instances of mail fraud or wire fraud. The allegations in the complaint do not identify the time, place, and specific content of the fraudulent communications at issue, or identify the person or persons involved in such communications. Plaintiffs also do not aver factual matter to raise the inference that such communications were sent over the United States wires or United States mail across state lines.

Plaintiffs' allegations with respect to the EOBs, which do not satisfy the requirements of Rule 9(b), are insufficient to raise the inference that the statements therein were fraudulent. Plaintiffs allege that United "made representations to the Plaintiffs and the Class in the EOB letters that benefits were available and paid based on the UCR rate." Compl. ¶ 256. However, plaintiffs do not identify when United allegedly sent them these letters or what the letters stated. Further, the EOB letters filed by United, which the Court has decided to consider for the purpose of resolving the present motions, do not state that any amounts paid for IOP services were "based on the UCR rate." *See* Nguyen Decl., Ex. 4-8, Docket No. 35-2. Plaintiffs also allege that the

16

1  EOBs did not provide "any process by which the adverse benefit determinations could be
2  appealed." Compl. ¶ 252. As discussed above, the EOBs that United filed do describe a process
3  for appealing United's reimbursement determinations. Finally, plaintiffs allege that the EOBs did
4  not state that they were "adverse benefit determinations" as a result of Viant's repricing. *Id.* ¶
5  252. Plaintiffs, however, have cited no authority showing that United was required to include in
6  the EOBs the words "adverse benefit determination" or to otherwise mention Viant's involvement
7  in the reimbursement negotiations.

8        Plaintiffs' allegations with respect to the verification calls that Summit Estate made to
9  United also do not satisfy Rule 9(b). Plaintiffs allege that Summit Estate contacted United to
10 verify out-of-network benefits and that United represented that the IOP benefits in question would
11 be paid "at UCR rates" and that the claims at issue "were not subject to third-party repricing by
12 Viant." *Id.* ¶ 26. Plaintiffs, however, do not identify any specifics. As discussed above, plaintiffs
13 have not identified any plan provisions showing that United was required to reimburse for IOP
14 services at the UCR, or that it was prohibited from contracting with Viant to negotiate
15 reimbursements. Thus, these allegations are insufficient to raise the inference that United's
16 statements during these calls were fraudulent.

17       Plaintiffs' allegations with respect to Viant's correspondence also do not satisfy Rule 9(b).
18 Plaintiffs allege that Viant represented "in its correspondence" that its reimbursement amounts are
19 "based on UCR rates, plan terms, or other independent bases." *Id.* ¶ 120. Again, plaintiffs do not
20 identify specifics. Plaintiffs aver that Viant falsely represented in its PAD letters to plaintiffs and
21 providers that it had authority to negotiate on patients' behalf. *Id.* ¶¶ 253, 259. Without more
22 detail, these allegations are insufficient to raise the inference that Viant's PAD letters were
23 fraudulent.

24       Accordingly, plaintiffs have not plausibly alleged that defendants engaged in acts of mail
25 fraud or wire fraud that constitute a pattern of racketeering activity.

26       In light of the foregoing, plaintiffs' RICO claim under Section 1962(c) is subject to
27 dismissal.
28 //

### 2. Conspiracy under Section 1962(d)

Section 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." A defendant cannot be liable for a RICO conspiracy under Section 1962(d) if the defendant is not liable under the substantive RICO provisions, namely Sections 1962(a), (b), or (c). *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

In the complaint, plaintiffs allege that defendants' purported scheme in violation of RICO was a "conspiracy." *See, e.g.*, Compl. ¶ 270. To the extent that plaintiffs sought to assert a claim against defendants under Section 1962(d) based on these allegations, such a claim is subject to dismissal because plaintiffs have failed to plead a substantive RICO violation under Section 1962(c), as discussed above. *See Howard*, 208 F.3d at 751.

### 3. Standing

To establish RICO standing, a plaintiff must plead an injury to business or property that was proximately caused by the alleged RICO predicate offense. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) ("To establish that an injury came about by reason of a RICO violation, a plaintiff must show that a predicate offense not only was a but for cause of his injury, but was the proximate cause as well.") (citation and internal quotation marks omitted). Where the predicate offense is mail or wire fraud, the plaintiff must allege facts to show that "someone relied on the defendant's misrepresentations" in order to establish proximate cause. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). This is because, "logically, a plaintiff cannot even establish but-for causation if no one relied on the defendant's alleged misrepresentation." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1259 (9th Cir. 2019) (citing *Bridge*, 553 U.S. at 658-59).

Here, plaintiffs allege that they "relied upon United's assertion in the plan documents . . . that out-of-network claims, when covered, would be paid at the UCR rate." Compl. ¶ 352. As discussed above, plaintiffs have not identified the provisions in the "plan documents" that state that the IOP services at issue would be paid "at the UCR rate." Without such identification or

explicit allegations of reliance, inference of the same is not possible. Accordingly, the complaint does not raise the reasonable inference that the element of reliance is met so as to find that plaintiffs' injuries were proximately caused by the alleged mail fraud and wire fraud. *Cf. Painters*, 943 F.3d at 1260 (holding that "it is sufficient to satisfy RICO's proximate cause requirement that [the plaintiff] alleged that prescribing physicians (also third parties, but not intervening causes) relied on Defendants' misrepresentations and omissions.").

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011). The Court, however, need not grant leave to amend where amendment would be futile. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

Because it is not clear that amendment of the complaint would be futile, the Court will grant plaintiffs leave to amend the complaint to attempt to allege a cognizable theory for each of the claims discussed herein.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motions to dismiss **WITH LEAVE TO AMEND**. Plaintiffs may file an amended complaint within thirty (30) days of the date this order is filed. Defendants may file a response to the amended complaint within thirty (30) days of the date it is filed.

This order terminates Docket Numbers 33 and 34.

**IT IS SO ORDERED.**

Dated: August 26, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**