**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
MOE KESHAVARZI, SBN 223759
  E-Mail: mkeshavarzi@sheppardmullin.com
DAVID DWORSKY, SBN 272167
  E-Mail: ddworsky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

ERROL J. KING, JR.
**PHELPS DUNBAR LLP**
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197
Errol.King@phelps.com

*Attorneys for Defendant MultiPlan, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH, and CJ on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, and MULTIPLAN, INC., a New York Corporation,<br><br>        Defendants. | Case No. 4:20-cv-02254-YGR<br>Related Case No. 4:20-cv-02249-YGR<br><br>**MULTIPLAN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 9(b) and 12(b)(6)]**<br><br>Date:          Tuesday, December 22, 2020<br>Time:          2:00 p.m.<br>Judge:         Hon. Yvonne Gonzales Rogers<br>Courtroom:      Courtroom 1, Fourth Floor<br><br>First Amended Complaint Filed:<br>September 25, 2020 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 22, 2020, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Yvonne Gonzales Rogers in Courtroom 1 on the Fourth Floor of the Oakland Federal District Courthouse, located at 1301 Clay Street, Oakland, California 94612, Defendant MultiPlan, Inc. ("MultiPlan") will and hereby does move the Court for an Order, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiffs, LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated ("Plaintiffs"), on the following grounds:

1. Plaintiffs' first cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I), and Plaintiffs' second cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count II), fail to state a claim against MultiPlan upon which relief can be granted.

2. Plaintiffs' remaining causes of action for equitable relief to enjoin acts and/or practices pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3)(A) (Count VII) and for other appropriate equitable relief pursuant to common law (Count VIII) also fail to state a claim against MultiPlan upon which relief can be granted.

Pursuant to L.R. 7-2(b)(3), MultiPlan requests that the Court dismiss the FAC in its entirety with prejudice. This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached, all pleadings on file with this Court, and on such oral arguments as may be presented at the hearing on this matter.

1   DATED:  October 30, 2020

2                                                        By:      /s/ Moe Keshavarzi
                                                                 Moe Keshavarzi
3                                                                David Dworsky
                                                                 Sheppard Mullin
4                                                                333 South Hope Street, 43rd Floor
                                                                 Los Angeles, CA  90071
5                                                                Telephone: (213) 620-1780
                                                                 Fax:  (213) 620-1398
6
                                                                 and
7
                                                                 Errol J. King, Jr.
8                                                                Phelps Dunbar LLP
                                                                 II City Plaza
9                                                                400 Convention Street, Suite 1100
                                                                 Baton Rouge, Louisiana 70802
10                                                               Telephone:  (225) 376-0207
                                                                 Fax:  (225) 381-9197
11                                                               Attorneys for Defendant, MultiPlan, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

INTRODUCTION ....................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 3

ARGUMENT .............................................................................................................................. 4

    I.     Plaintiffs Once Again Fail To Satisfy The Heightened Pleading
          Standard Of Rule 9(b) .......................................................................................... 4

    II.    Plaintiffs Still Fail To Meet The Plausibility Standard Of *Twombly/Iqbal* ............. 7

    III.   Plaintiffs Again Fail To Make Out Their Civil RICO Claims ................................. 8

         A.    Plaintiffs Fail To Adequately Plead A "Pattern of Racketeering
             Activity" ..................................................................................................... 9

         B.    Plaintiffs Fail To Adequately Plead An "Association-In-Fact"
             Enterprise ................................................................................................. 11

         C.    Plaintiffs Fail To Adequately Plead RICO Standing And Proximate
             Causation ................................................................................................. 13

    IV.   Plaintiffs Also Fail To State A Claim For Equitable Relief................................... 15

         A.    MultiPlan Is Not An ERISA Fiduciary, And Plaintiffs Do Not Plead
             Sufficient Facts To Establish A Breach Of Fiduciary Duties Or
             Knowing Participation In Such A Breach ................................................. 15

         B.    Plaintiffs Do Not Plead Appropriate Equitable Relief .............................. 19

CONCLUSION ......................................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anza v. Ideal Steal Supply Corp.*,
    547 U.S. 451 (2006) ......................................................................................... 14

*Ashcroft v. Iqbal*,
    566 U.S. 662 (2009) ......................................................................................3, 7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................3, 7, 8

*Berman v. Microchip Tech. Inc.*,
    2018 WL 732667 (N.D. Cal. Feb. 6, 2018) .................................................17, 20

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................................................ 12

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ..................................................................... 5, 10

*Brown v. Cal. Law Enf't Ass'n*,
    81 F. Supp. 3d 930 (N.D. Cal. 2015) ............................................................16, 17

*Bush v. Liberty Life Assurance Co. of Bos.*,
    130 F. Supp. 3d 1320 (N.D. Cal. 2015) .......................................................... 18

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .......................................................................................... 20

*In re Computer Scis. Corp. ERISA Litig.*,
    635 F. Supp. 2d 1128 (C.D. Cal. 2009) .......................................................... 17

*In re Crazy Eddie Secs. Litig.*,
    714 F. Supp. 1285 (E.D.N.Y.1989) ................................................................ 10

*Cty. Of Monterey v. Blue Cross of Cal.*,
    2019 U.S. Dist. LEXIS 120209 (N.D. Cal. July 18, 2019) ............................ 17

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*,
    2019 WL 6841222 (N.D. Cal. Dec. 16, 2019)................................................ 18

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) .......................................................................... 20

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) .......................................................................... 13

*Dooley v. Crab Boat Owners Ass'n*,
   2004 WL 902361 (N.D. Cal. Apr. 26, 2004)...........................................................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ..................................................................... 7, 11

*Ellis v. J.P. Morgan Chase & Co.*,
   2015 WL 78190 (N.D. Cal. Jan. 6, 2015), *aff'd,* 752 Fed. App'x 380 (9th Cir.
   2018) ...................................................................................................... 12

*Gilbert v. Bank of America*,
   2014 WL 12644028 (N.D. Cal. Sept. 23, 2014) ................................................ 13

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) ...................................................................... 7

*Gomez v. Guthy–Renker, LLC*,
   2015 WL 427004 (C.D. Cal. July 13, 2015) ..................................................... 13

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)..................................................................................... 21

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000)..................................................................................... 18

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010).......................................................................................... 15

*Herzfeld v. Teva Pharm. USA, Inc. Omnibus Welfare Plan*,
   2020 WL 1864851 (C.D. Cal. Apr. 14, 2020)...............................................16, 17

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)..................................................................................... 14

*Hopkins v. Am. Home Mortgage Servicing, Inc.*,
   2014 WL 580769 (N.D. Cal. Feb. 13, 2014)...................................................... 12

*Huu Nguyen v. Nissan N. Am., Inc.*,
   2017 WL 1330602 (N.D. Cal. Apr. 11, 2017)..................................................... 21

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ...............................................11, 13

*Kanawi v. Bechtel Corp.*,
   590 F. Supp. 2d 1213 (N.D. Cal. 2008) ........................................................... 15

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ........................................................................ 10

*Lesnik v. Eisenmann SE*,
  374 F. Supp. 3d 923 (N.D. Cal. 2019) ................................................................. 4, 9

*McBean v. United of Omaha Life Ins. Co.*,
  2019 WL 1508456 (S.D. Cal. Apr. 5, 2019) ........................................................ 17

*Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*,
  2010 WL 11508022 (C.D. Cal. Feb. 26, 2010) .................................................... 10

*Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.*,
  661 F.2d 776 (9th Cir.1981) ................................................................................. 10

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .................................................................................. 9

*Richardson v. Dallas R. Hall & Associates*,
  1996 WL 308261 (N.D. Cal. May 23, 1996) ................................................... 10, 11

*Saniefar v. Moore*,
  2017 WL 5972747 (E.D. Cal. Dec. 1, 2017) ........................................................ 11

*Schuman v. Microchip Tech. Inc.*,
  302 F. Supp. 3d 1101 (N.D. Cal. 2018) .......................................................... 16, 21

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) .................................................................................. 4

*Sereboff v. Mid Atlantic Med. Servs., Inc.*,
  547 U.S. 356 (2006) .............................................................................................. 21

*Skinner v. Northrop Grumman Ret. Plan B*,
  673 F.3d 1162 (9th Cir. 2012) .............................................................................. 21

*Smith v. Ayres*,
  845 F.2d 1360 (5th Cir. 1988) .............................................................................. 10

*Stitt v. Citibank, N.A.*,
  2015 WL 75237 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir.
  2018) ................................................................................................................ 12, 13

*Sugarman v. Muddy Waters Capital LLC*,
  2020 WL 633596 (N.D. Cal. Feb. 3, 2020) .......................................................... 10

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................................................. 4

*Synopsis, Inc. v. Ubiquiti Networks, Inc.*,
  313 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................. 9

-iv-

*Thole v. U.S. Bank N.A.*,
 —U.S.—, 2020 WL 2814294 (U.S. June 1, 2020) ................................................. 20

*Tucker v. Post Consumer Brands, LLC*,
 2020 WL 1929368 (N.D. Cal. April 21, 2020) .......................................................... 7

*United States v. Garrido*,
 713 F.3d 985 (9th Cir. 2013) ................................................................................... 10

*United States v. Miller*,
 953 F.3d 1095 (9th Cir. 2020) ................................................................................. 10

*United States v. Woody's Trucking, LLC*,
 2018 WL 443454 (D. Mont. Jan. 16, 2018) ............................................................ 10

*Urenia v. Pub. Storage*,
 2014 WL 5781250 (C.D. Cal. Nov. 6, 2014) ........................................................... 10

*US Airways, Inc. v. McCutcheon*,
 133 S.Ct. 1537 (2013) ............................................................................................. 21

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ........................................................................ 4, 5, 11

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*,
 2013 WL 12130034 ( C.D. Cal. July 19, 2013) ...................................................... 14

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*,
 903 F. Supp. 2d 880 (C.D. Cal. 2012) ...................................................................... 9

*Wit v. United Behavioral Health*,
 2017 WL 3478775 (N.D. Cal. Aug. 14, 2017) ........................................................ 21

*Woodell v. Expedia Inc.*,
 2019 WL 3287896 (W.D. Wash. July 22, 2019) ..................................................... 12

**Statutes**

18 U.S.C. § 1341 ............................................................................................................. 9

18 U.S.C. § 1343 ............................................................................................................. 9

18 U.S.C. § 1961(1) ........................................................................................................ 9

18 U.S.C. § 1962(c), (d) ............................................................................... 8, 9, 12, 22

29 U.S.C. § 1002(21)(A) .............................................................................................. 16

29 U.S.C. § 1132(a)(1)(B) ............................................................................................ 19

29 U.S.C. § 1132(a)(3) .................................................................................................. 16

**Other Authorities**

29 C.F.R. § 2509.75-8, D-2 .................................................................................................. 16

Fed. R. Civ. P. 8(a) ....................................................................................................... 3, 7

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................. *passim*

Local Rule 7-4 .................................................................................................................. 3

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>[1]

Defendant MultiPlan, Inc. ("MultiPlan") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiffs, LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated ("Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

## <u>INTRODUCTION</u>

This is Plaintiffs' second attempt to plead causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Employee Retirement Income Security Act of 1974 ("ERISA") relating to the alleged underpayment of health benefit claims submitted by non-party, out-of-network substance abuse centers, including Summit Estate, Inc. ("Summit Estate"), for Intensive Outpatient Program ("IOP") treatment services provided to patients with health insurance policies "administered or issued" by United Behavioral Health, Inc. ("United"). But despite nearly 80 pages and more than 500 paragraphs of allegations, the FAC is completely bereft of any of the details this Court found missing from Plaintiffs' initial Class Action Complaint ("Initial Complaint") in its August 26, 2020 Order Granting Motions to Dismiss with Leave to Amend ("Dismissal Order") [Rec. Doc. No. 55].

The central premise of Plaintiffs' allegations has not substantively changed. Plaintiffs continue to allege that their benefit plan documents required United to reimburse claims for out-of-network IOP services at the usual, customary and reasonable rate ("UCR"), and that United coordinated and conspired with MultiPlan[2] to systematically undervalue and fraudulently underpay such claims on behalf of its patient-insureds. Plaintiffs also allege that, because of Defendants' conduct, they were balanced-billed and forced to pay out-of-pocket any amounts that United failed to reimburse Plaintiffs' providers under the policies. And rather than cure the defects in their Initial

---

[1] Unless otherwise indicated, all emphasis is added and all internal quotation marks and citations are omitted.

[2] United Behavioral Health, Inc. and MultiPlan, Inc. are hereinafter collectively referred to as "Defendants."

Complaint, Plaintiffs simply substitute MultiPlan as a defendant in place of its affiliate, Viant, Inc. ("Viant");[3] add some new general allegations regarding the FAIR Health Database, Viant's purported repricing methodology, and MultiPlan's alleged business dealings with United; convert their claim for "other appropriate equitable relief" to one under "common law," rather than ERISA Section 502(a)(3); and otherwise repeat and rely on the same generic, catchall allegations that fail to state a plausible claim upon which relief may be granted.

Indeed, much of what Plaintiffs have added in the FAC was seemingly designed to fabricate a façade of allegedly carefully planned and orchestrated actions, based on discussions and other dealings between MultiPlan and its co-Defendant, United, and among United and its competitors, to defraud Plaintiffs and to line their pockets, all to the detriment of providers and their patients. As before, however, this newly alleged, vast conspiracy fails to present a plausible theory of wrongdoing, particularly when held up against the legitimate cost-containment efforts of Defendants that are reflected in their entirely above-board business dealings. Yet, to hear Plaintiffs tell it, everything that MultiPlan and Viant do is designed with one purpose — to establish and justify unreasonably low and inaccurate pricing information that can be passed on to United and other insurers for their use in underpaying the claims of patients, such as Plaintiffs, with MultiPlan and Viant, among others, reaping the financial rewards. And, of course, all of this allegedly has been done in secret, through clandestine meetings and employing "whitepapers" with stratagems to be employed by the evil-minded participants.

Such fanciful speculation as to Defendants' motives and outright mischaracterization of MultiPlan's and Viant's systems and data analyses, as well as United's use of the same, does nothing to alter the fact that Plaintiffs have no legally cognizable claims against Defendants. Accordingly, because the FAC contains the same substantive pleading defects as Plaintiffs' Initial Complaint, this

---

[3] Despite the continued focus on alleged actions of Viant in connection with the underlying patient claims, Plaintiffs' substitution of MultiPlan for Viant appears to reflect Plaintiffs' belief that, because of the contractual relationship between United and MultiPlan, as well as interaction of certain MultiPlan representatives with United personnel, MultiPlan is now the proper party to be sued. MultiPlan reserves the right to address this issue in subsequent motion practice. Regardless, MultiPlan, on its own and on behalf of Viant, denies any alleged wrongdoing and asserts that Plaintiffs have failed to make out any claims against either entity.

1  Court should grant MultiPlan's Motion and dismiss Plaintiffs' FAC in its entirety,[4] and with

2  prejudice,[5] pursuant to Rule 12(b)(6).

3  ## STATEMENT OF ISSUES TO BE DECIDED

4  Pursuant to Local Rule 7-4, MultiPlan identifies the following issues that are before the

5  Court for decision in connection with this Motion to Dismiss Plaintiffs' FAC:

6  1.   Whether Plaintiffs have failed to plead fraud "with particularity" as required by Fed.
     R. Civ. P. 9(b), thereby requiring the dismissal of all of their claims against
7       MultiPlan, which sound and are grounded in fraud;

8  2.   Whether Plaintiffs have failed to meet the "plausibility" standard of Fed. R. Civ. P.
     8(a), as articulated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*,
9       550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), thereby requiring
     the dismissal of all of their claims against MultiPlan under Fed. R. Civ. P. 12(b)(6);
10

11 3.   Subsumed within the foregoing, whether Plaintiffs' RICO claims (Counts I and II)
     are subject to dismissal because Plaintiffs have failed to adequately plead: (a) a
12      "pattern of racketeering activity;" (b) that Defendants formed an "association-in-
     fact" RICO enterprise; (c) that MultiPlan "conducted" the affairs of the purported
     enterprise; or (d) that any predicate act caused injury to Plaintiffs' business or
13      property;

14 4.   Whether Plaintiffs' claim for "equitable relief to enjoin acts and/or practices" under
     ERISA Section 502(a)(3) (Count VII) is subject to dismissal because: (a) MultiPlan
15      is not an ERISA fiduciary; (b) Plaintiffs allege no breach of fiduciary duties or
     knowing participation in a breach of fiduciary duties by MultiPlan; or (c) Plaintiffs
16      fail to plead facts to support a distinct basis to seek equitable relief under Section
     502(a)(3);
17

18 5.   And finally, whether Plaintiffs' claim for "other appropriate equitable relief"
     pursuant to "common law" (Count VIII) is subject to dismissal because Plaintiffs do
19      not plead sufficient facts to satisfy the stringent pleading requirements (a) Plaintiffs
     do not identify any particular assets or funds that can reasonably be traced to
     MultiPlan; and (b) Plaintiffs do not plead sufficient facts to establish that MultiPlan
20      was unjustly enriched by Plaintiffs.

21     The answer to each of these questions remains a simple and straightforward "*yes*." Despite

22 their attempts in the FAC to change or augment the conclusory allegations of their Initial Complaint,

23 Plaintiffs still do not set forth a plausible case against MultiPlan or its co-Defendant, United. In

24 particular, the FAC, like Plaintiffs' Initial Complaint, fails to specify the who, what, when, where,

25

26 ---

   [4] In the event the Court does not dismiss all of Plaintiffs' claims, MultiPlan reserves all of its rights
27 to oppose class certification.
   [5] MultiPlan also refers to, and by such reference, adopts and incorporates as if fully set forth herein,
28 the arguments and authorities raised by co-Defendant United in its separate Motion to Dismiss
   Plaintiffs' FAC, filed this date.

or how of any alleged misrepresentations and fraudulent statements on the part of MultiPlan that supposedly led to Plaintiffs' injuries, which is an essential element of their fraud-based claims and an absolute requirement of Rule 9(b). The FAC also fails to show how Defendants' legitimate business dealings — which, by Plaintiffs' own admission, resulted in the payment of every claim submitted — are "racketeering" pursuant to RICO, or otherwise entitle Plaintiffs to damages or equitable relief as against MultiPlan, a non-fiduciary under ERISA. Therefore, as was the case with the Initial Complaint, the FAC should be dismissed in its entirety, and with prejudice for failure to state a plausible claim upon which relief can be granted.

## ARGUMENT

### I.   Plaintiffs Once Again Fail To Satisfy The Heightened Pleading Standard Of Rule 9(b).

It remains the case with respect to the FAC that, in any instance in which fraud is directly or indirectly pled (*i.e.*, Plaintiffs' civil RICO claims in Counts I and II and Plaintiffs' claims for equitable relief in Counts VII and VIII), Plaintiffs fail to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations of the FAC must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, Plaintiffs must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs must also plead facts explaining why a statement was false when it was made. *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 937–38 (N.D. Cal. 2019).

In the Ninth Circuit, Rule 9(b) applies where a complaint "sounds" or is "grounded" in fraud. *Vess*, 317 F.3d at 1103. This is true where a complaint alleges fraud as an essential element of the claim for relief or where fraud is not a necessary element but the plaintiff alleges what amounts to fraudulent conduct. *Id.* at 1103–04. While the standard is somewhat difficult to apply, the rationale behind it rests on the preference for substance over form: where a complaint alleges conduct which

in effect amounts to fraud, defendants are entitled for policy reasons to the enhanced reliability and notice that accompany more detailed pleadings. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). And, as the Court noted in at page 13 of its Dismissal Order, "Rule 9(b)'s requirement that '[i]n all averments or fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims," citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).

The Ninth Circuit has also recognized that, when a complaint "is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint." *Vess*, 317 F.3d at 1107. "[S]uch dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* Thus, a motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

The FAC alleges fraud, using that word or comparable ones, at numerous points. [*See, e.g.*, FAC, ¶¶ 17–19, 26, 28–30, 70, 73, 75, 89, 109–09, 111–12, 115–23, 126–37, 147, 150–57, 159, 161, 175–76, 181, 190–92, 198, 205, 208, 212–213, 223–25, 237, 263–68, 301–05, 331–35, 359–63, 386–90, 404–11, 413–17, 424–26, 429–30, 437(c)–(g), (m), & (p), 453, 455, 461, 519, and 524]. The FAC also employs other pejorative terms, such as "scheme," "lies," "secrets," "manipulations," "misrepresentations," "artificial," and "fig leaf," that expressly or impliedly paint MultiPlan and its co-defendant United as fraudsters. [*See, e.g.*, *id.* ¶¶ 13, 17–21, 96, 122–23, 133, 135, 152–56, 159, 179–80, 185, 191–92, 198, 206–08, 214–16, 220, 222, 224–27, 230, 232, 241, 264–65, 302, 332, 360, 387, 410, 424].[6] Yet, when all of the allegations in the FAC are examined, one thing is apparent: they are devoid of  specific factual details that meet the particularity requirements of Rule 9(b). The

---

[6] The FAC also makes clear that Plaintiffs' ERISA and RICO claims rely upon the exact same set of facts and allegedly fraudulent conduct. [*See id.* ¶ 32]. Thus, it is indisputable that all of Plaintiffs' claims against MultiPlan, as asserted in Counts I, II, VII, and VIII of the FAC, "sound" or are "grounded" in fraud.

1    law is clear that conclusory allegations such as those made by Plaintiffs throughout the FAC are

2    nothing more than makeweight to be ignored by the Court.

3        Moreover, while Plaintiffs tried to present "representative" claims involving each of the

4    Plaintiffs and an "exemplar" Patient Advocacy Department ("PAD") letter, presumably attempting

5    to create the appearance of specificity, [*see* FAC, ¶¶ 242–411], they failed to do so, and also failed

6    to show where or how MultiPlan was involved at all. In particular, Plaintiffs still have not set forth

7    any "specifics" regarding the "time, place, and specific content of the fraudulent communications

8    at issue, or identif[ied] the person or persons involved in such communications," nor do they "aver

9    factual matter to raise the inference that such communications were sent over the United States wires

10   or United States mail across state lines." [*See* Dismissal Order, at pp. 16–17]. They also fail to plead

11   any facts "to raise the inference that Viant's PAD letters were fraudulent," [*id.* at 17], much less any

12   facts explaining how those PAD letters actually misled Plaintiffs or how MultiPlan or Viant used

13   those letters to defraud and injure Plaintiffs.

14       Additionally, and perhaps more importantly, nowhere in the FAC do Plaintiffs identify any

15   misrepresentations or omissions whatsoever on the part of MultiPlan that could plausibly have

16   misled them into believing that they would receive a particular rate for their services. None of the

17   snippets from the plan documents or correspondence that Plaintiffs selectively quote, nor any of the

18   exemplary claims that Plaintiffs cherry-pick and attempt to describe in the FAC, contain any promise

19   or representation on the part of MultiPlan regarding any particular reimbursement rate.

20       Finally, while the FAC does purport to mention certain representations that United allegedly

21   made in various plan documents and explanations of benefits ("EOBs") that it provided to Plaintiffs

22   and in certain verification calls with Plaintiffs' providers, it fails to attribute those plan documents,

23   EOBs, verification calls, or any of the asserted misrepresentations contained therein to MultiPlan.

24   Instead, the FAC simply lumps MultiPlan together with United using vague and conclusory

25   allegations, including that "United and MultiPlan coordinate[d] their efforts" and "worked together

26   to develop the false and fraudulent UCR rates that were applied to out-of-network IOP claims." [*See*

27   FAC ¶¶ 117, 134]. As a result, all of Plaintiffs' claims against MultiPlan in the FAC are subject to

28   dismissal for failure to allege those claims "with specificity" as required by Rule 9(b).

## II.   Plaintiffs Still Fail To Meet The Plausibility Standard Of *Twombly/Iqbal*.

Cutting across all of the allegations in the FAC is another fundamental flaw: Plaintiffs have failed to present a plausible claim as required by *Twombly/Iqbal* alleging that MultiPlan (or United) has done anything improper or illegal in engaging in above-board, contractual dealings to control excessive health care costs.  Fed. R. Civ. P. 8(a) requires such a showing, and in its absence, the FAC is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  *See Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (dismissal may be based on either " the lack of a cognizable legal theory or the absence of sufficient facts alleged under  a cognizable legal theory"); *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *2 (N.D. Cal. April 21, 2020) (Gonzales-Rogers, J.) (same).

The analysis required under *Twombly* and *Iqbal* is straightforward. "Factual allegations must be enough to raise a right to relief above the speculative level [. . .] on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has "facial plausibility when the plaintiff pleads factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. While not akin to a "probability requirement," the plausibility standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claim.  *Twombly*, 550 U.S. at 556. However, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.  *See also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).  To this end, the Supreme Court made clear in *Twombly* that a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not sufficient to defeat a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555. Nor is a complaint sufficient if it tenders only "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Importantly, in *Iqbal*, the Supreme Court went on to explain the "working principles" underlying its decision in *Twombly*, and instructed that courts considering motions to dismiss should

adopt a "two-pronged approach" in applying those principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 566 U.S. at 679.  The Supreme Court also held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint, "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.  *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567).

Applying these working principles to the FAC in this matter leads to the inevitable conclusion that Plaintiffs still have not made out a plausible case against MultiPlan.  First, shorn of all of the "legal conclusions" — which, in reality, make up the bulk of Plaintiffs' allegations — the FAC strives mightily to cast MultiPlan and United as focused on nothing but fraud and deception aimed at depriving Plaintiffs of payments for services rendered at UCR rates in order to line their pockets with ill-gotten gains. However, when one considers the "obvious alternative explanation" of managed care programs designed and implemented to hold down excessive health care costs for the benefit of plan sponsors, plan participants, and society as a whole, then MultiPlan's and United's conduct appears in a whole new light — a much more plausible one than Plaintiffs' tale of intentional and negligent misrepresentations, conspiracy, racketeering, and breach of fiduciary duties. Second, other than conclusory and unsupported characterizations (which, again, the Court must disregard), nothing in Plaintiffs' recitation of purported meetings between MultiPlan and United, or the purported exchange of information in whitepapers, PAD letters, and other supposed communications, presents a plausible case of wrongdoing on the part of MultiPlan. Therefore, under *Twombly/Iqbal*, any claims based upon such allegations should be dismissed.

### III.    Plaintiffs Again Fail To Make Out Their Civil RICO Claims.

This Court rejected Plaintiff's civil RICO claims in the Initial Complaint on several grounds. [*See* Dismissal Order, at pp. 13–19]. Now, in Count I of the FAC, Plaintiffs attempt to rectify these deficiencies and overcome dismissal by putting forth a new set of allegations claiming violations of 18 U.S.C. § 1962(c). Plaintiffs also attempt, in Count II of the FAC, to allege a separate, express cause of action for a RICO conspiracy violative of 18 U.S.C.§1962(d). However, as this Court has

-8-

already noted, no RICO conspiracy claim can stand without an underlying substantive RICO claim. [*see id.* at 18], and to successfully state a substantive RICO claim under § 1962(c), a plaintiff "must plausibly allege that the defendant participated, directly or indirectly, in (1) the conduct (2) of an enterprise that affects interstate commerce, (3) through a pattern (4) of racketeering activity." *Lesnik*, 374 F. Supp. 3d at 958. *See also Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). For the following reasons, Plaintiffs once again fail to allege sufficient facts to establish a § 1962(c) violation, thereby requiring the dismissal, with prejudice, of their civil RICO claims in Counts I and II of the FAC.

### A.   Plaintiffs Fail To Adequately Plead A "Pattern Of Racketeering Activity."

"Racketeering activity" is defined under the RICO statute to mean "any act of threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, [drugs]." 18 U.S.C. § 1961(1).  The definition also goes on to include certain state law crimes and any act indictable under certain federal statutes and federal offenses." *Id.* To plead a pattern under RICO, "at least two predicate acts of racketeering activity need to be alleged." *Synopsis, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018). Additionally, "where RICO is asserted against multiple defendants," as in the instant case, "a plaintiff must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (emphasis in original); *accord, Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, *5 (N.D. Cal. Apr. 26, 2004).

In the FAC, Plaintiffs make another attempt to allege mail fraud (18 U.S.C. § 1343) and wire fraud (18 U.S.C. § 1341) as the predicate acts to support their RICO claim. [*See* FAC, ¶¶ 18, 29, 115, 121, 455, 461]. But rather than cure the substantial pleading defects identified on pages 16 and 17 of the Court's Dismissal Order, Plaintiffs continue to rely upon conclusory assertions that mimic the language of the RICO statute, which are not enough "to raise the reasonable inference that [D]efendants committed at least two instances of mail fraud or wire fraud" to support a pattern of racketeering activity. [*See* Dismissal Order, pp. 16–17].

Both mail fraud and wire fraud have four essential elements, which must be pled in conformity with Rule 9(b): "(1) a scheme to defraud, (2) the statements made and facts omitted as

part of the scheme were material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a specific intent to deceive or defraud." *United States v. Woody's Trucking, LLC*, 2018 WL 443454, * (D. Mont. Jan. 16, 2018) (citing *United States v. Woods*, 335 F.3d 993, 997–99 (9th Cir. 2003)). *See also Sugarman v. Muddy Waters Capital LLC*, 2020 WL 633596, *4 (N.D. Cal. Feb. 3, 2020). As to the fourth element, the Ninth Circuit recently clarified that, to be guilty of mail or wire fraud, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020) (emphasis in original). Additionally, the mail and wire fraud statues both include an "interstate nexus" requirement; in the case of mail fraud, this element is satisfied by the use of the United States postal service. *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988). "A claim for wire fraud, however, requires that wire communication cross state lines." *Richardson v. Dallas R. Hall & Associates*, 1996 WL 308261, *2 (N.D. Cal. May 23, 1996). *See also United States v. Garrido*, 713 F.3d 985, 998 (9th Cir. 2013).

Here, Plaintiffs have once against failed to plausibly allege mail or wire fraud by MultiPlan, let alone with the particularity that Rule 9(b) requires. The conclusory allegations of mail and wire fraud in the FAC fail at the outset because, as discussed above, Plaintiffs do not plead the "who, what, when, where, or how" of any fraud, by either Defendant. *See, e.g.*, *Urenia v. Pub. Storage*, 2014 WL 5781250, *6 (C.D. Cal. Nov. 6, 2014); *Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*, 2010 WL 11508022, at *11 (C.D. Cal. Feb. 26, 2010). *See also Bly-Magee*, 236 F.3d 1014 at 1018; *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (Rule 9(b) requires a RICO plaintiff requires a RICO plaintiff "to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.").[7]

---

[7] "In the context of civil RICO where the predicate acts are based on mail and wire fraud, the policies underlying Rule 9(b) are 'especially important in RICO cases because of the harm to a person's reputation that allegations of "racketeering" may do.' *In re Crazy Eddie Secs. Litig.*, 714 F. Supp. 1285, 1292–93 (E.D.N.Y.1989). The allegations of fraud must include the time, place, and specific content of the false representation. *See Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981). Courts have also phrased the heightened pleading standard as requiring 'the who, what, when, where, and how of the misconduct

The FAC's allegations of mail and wire fraud are also insufficient because they do not plead that any wire communications crossed state lines — a necessary element to sustain a claim of wire fraud. The FAC alleges only that (1) some communications to further the alleged scheme were transmitted by wire, and that (2) "activities that span multiple states and affect interstate commerce" occurred.  [*See* FAC, ¶¶ 18, 29, 31, 66, 75, 77, 115, 121, 179, 182–85, 398, 450, 455, 461]. There is no specific allegation describing any particular communication sent by "wire" (fax, phone, or otherwise) that crossed a state line, which is fatal to Plaintiffs' claims. *See Saniefar v. Moore*, 2017 WL 5972747, *10 (E.D. Cal. Dec. 1, 2017) (claim dismissed where no allegation of interstate communication); *Richardson*, 1996 WL 308261, *2. Also absent from the FAC are any factual allegations demonstrating a specific intent to deceive or defraud on the part of MultiPlan. And because Plaintiffs have similarly failed to alleged facts sufficient to show "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," fraudulent intent cannot be inferred. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014).

Therefore, as Plaintiffs still fail to establish that MultiPlan engaged in any "pattern of racketeering activity," their RICO claims in Counts I and II of the FAC must be dismissed.

### B.   Plaintiffs Fail To Adequately Plead An "Association-In-Fact" Enterprise.

In addition to the foregoing, at pages 14 and 15 of its Dismissal Order, this Court considered, and squarely rejected, Plaintiffs' initial attempt to plead the existence of an "association-in-fact" enterprise, allegedly consisting of United and Viant, acting in concert with a common purpose and each directing some part of the affairs of the alleged scheme for RICO purposes. [*See* Dismissal Order, pp. 14–15]. Plaintiffs seek to remedy that failure in the FAC by substituting MultiPlan for Viant as a participant in the alleged RICO enterprise. [*See* FAC, ¶¶ 110–137]. But despite the benefit and guidance of this Court's Dismissal Order and Defendants' prior motions to dismiss, Plaintiffs' new allegations in the FAC still come up short, as they do not address or rectify the fundamental flaws previously identified by this Court — namely, that: (1) "the 'common purpose' requirement

charged.' *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir.2003)."  *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *4 (S.D. Cal. May 22, 2009).

is not met where, as here, the allegations in the complaint are consistent only with the execution of a routine contract or commercial dealing;" (2) "[s]imply being 'a part' of the enterprise or 'performing services' for the enterprise does not rise to the level of the direction required;" and (3) "[i]n the absence of allegations that raise the inference that either defendant performed actions to further a scheme rather than their own individual affairs pursuant to the contract just described, the conduct element is not satisfied." [*See* Dismissal Order, pp. 14–15].

To sustain a RICO claim where an "association-in-fact" enterprise is concerned, Plaintiff must allege three separate elements: "(i) a common purpose of engaging in a course of conduct; (ii) evidence of an ongoing organization, formal or informal; and (iii) evidence that the various associates function as a continuing unit." *Hopkins v. Am. Home Mortgage Servicing, Inc.*, 2014 WL 580769, *4 (N.D. Cal. Feb. 13, 2014). The U.S. Supreme Court has also recognized "the basic principle" that § 1962(c) "imposes a distinctiveness requirement—that is, one must allege two distinct entities: a 'person' and an 'enterprise' that is not simply the same 'person' referred to by a different name." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 939 (N.D. Cal. 2013). In other words, liability under RICO "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Id.* (emphasis in original). "Where the alleged association-in-fact is formed through routine contracts for services, the 'common purpose' element is unmet because the entities are pursuing their own individual economic interests, rather than a shared purpose." *Woodell v. Expedia Inc.*, 2019 WL 3287896, *8 (W.D. Wash. July 22, 2019).[8]

Here, all of MultiPlan's actions are attributable to its performance under the Network Access Agreement with United. Plaintiffs allege a litany of actions involving meetings, shared approaches to dealings with providers, analyses of claims to develop pricing parameters, and the like, but they still fail to show that these are anything more than the conduct of a business relationship whose ultimate goal is cost-containment designed to benefit patients, employers, and society as a whole.

---

[8] *See Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir. 2018); *see also Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at *4–6 (N.D. Cal. Jan. 6, 2015)*, aff'd,* 752 Fed. App'x 380, 382 (9th Cir. 2018).

Regardless of their alleged payment expectations, Plaintiffs have not shown that MultiPlan and United set out to, or did in fact, engage in a pattern of racketeering that defrauded them by means of a RICO enterprise, rather than engage in normal business activity.[9]  Failing to identify any specific factual allegations in support of the common purpose of allegedly underpaying IOP services to increase the profits of the enterprise warrants dismissal of Plaintiffs' RICO claim. *See In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *6 (S.D. Cal. May 22, 2009).

Moreover, and "[d]espite the wide variety of approaches adopted by courts in interpreting the requirements of RICO, there has been a remarkable uniformity in their conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez v. Guthy–Renker, LLC*, 2015 WL 427004, *11 (C.D. Cal. July 13, 2015) (listing cases). In the end, the FAC fails to allege that MultiPlan did anything more than carry out the terms of its contract with United. On this showing, Plaintiffs' enterprise allegations fail as a matter of law and warrant dismissal of Plaintiffs' civil RICO claims. *See, e.g.*, *Stitt*, 2015 WL 75237, at *5.

### C.     Plaintiffs Fail To Adequately Plead RICO Standing And Proximate Causation.

Finally, this Court has already dismissed Plaintiffs' RICO claims for lack of standing and proximate cause, [*see* Dismissal Order, pp. 18–19], and Plaintiffs' amendments do nothing to save them. It is well-settled that, in order to state a claim under RICO, Plaintiffs "must allege they suffered injury to their 'business or property' as a proximate result of the alleged racketeering activity." *Gilbert v. Bank of America*, 2014 WL 12644028, *4 (N.D. Cal. Sept. 23, 2014). That is because "[w]ithout a harm to a specific business or property interest — a categorical inquiry typically determined by reference to state law — there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). Additionally, Plaintiffs must show that a RICO predicate offense "not only was a "but for" cause of [their] injury,

---

[9] Plaintiffs allege that "[t]he relationships between United MultiPlan are not merely standard commercial contracts; instead, United and MultiPlan exploit their contractual arrangements to provide false legitimacy and cover to their racketeering activity."  [FAC, ¶ 30].  Such conclusory pleading avails Plaintiffs nothing in advancing their RICO claim.  It remains implausible.

1    but was the proximate cause as well." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).

2    "When a Court evaluates a RICO claim for proximate causation, the central question it must ask is

3    whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steal Supply*

4    *Corp.*, 547 U.S. 451, 461 (2006).  Accordingly, "[i]f Plaintiffs are unable to show that anyone relied

5    on Defendants' allegedly wrongful conduct, they cannot show that they were injured by reason of a

6    RICO predicate offense," and their RICO claims must be dismissed.  *See In re Wellpoint, Inc. Out-*

7    *of-Network "UCR" Rates Litig.*, 2013 WL 12130034, *17 ( C.D. Cal. July 19, 2013) (dismissing

8    civil RICO claim premised on mail fraud brought by health care subscribers and providers alleging

9    underpayment of UCR rates).

10           In the FAC, Plaintiffs provide only conclusory allegations as to the existence of proximate

11   cause, claiming that "Plaintiffs' and other IOP patients have been directly and proximately injured

12   by Defendants' fraudulent conduct" because they were forced to pay "the under-reimbursed amount

13   out of their own pockets to [their] treatment providers," and that "Plaintiffs' injuries are not just the

14   foreseeable and natural consequence of Defendants' scheme, they are the objective of the scheme."

15   [*See* FAC, ¶¶ 412–17; *see also* ¶¶ 7, 29, 54, 73, 83, 89, 126, 180, 237, 242, 261, 269, 299, 306, 328,

16   336, 357, 364, 384, 391, 456, 462]. But as the above cases show, it is not enough for Plaintiffs to

17   simply assert that they overpaid for services; instead, they are required to plead a causal link between

18   an alleged injury to business or property and MultiPlan's alleged predicate acts of racketeering —

19   *i.e.*, the PAD letters — which they have totally failed to do.

20           Notwithstanding vague assertions in other parts of the FAC that they "relied upon […]

21   representations made by Defendants," [*see* FAC ¶ 519], Plaintiffs do not — and cannot — allege

22   that they or anyone else took any steps *in reliance on* the so-called PAD letters, which were truthful,

23   accurate communications that Plaintiffs did not receive until after they sought treatment and

24   received the services at issue. Plaintiffs also do not allege any facts to suggest that MultiPlan was in

25   any way responsible for the plan documents issued to Plaintiffs or that MultiPlan was part of the

26   process by which Plaintiffs' providers sought authorization or verification of coverage before

27   Plaintiffs were admitted to treatment; therefore, nothing that was communicated to Plaintiffs by

28   MultiPlan was material to Plaintiffs' decision-making at the beginning of the treatment process. In

addition, given the number of steps involved in the process, it is apparent that any actions by MultiPlan could not have been the "but for *and* proximate cause" of Plaintiffs' alleged injuries. The connection is far "too remote" and "indirect" to sustain RICO's proximate cause and standing requirements. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).

For all of the preceding reasons, and for the additional reasons set forth in United's Motion to Dismiss Plaintiffs' FAC filed contemporaneously herewith, Plaintiffs' RICO claims in Counts I and II of the FAC fail as a matter of law and must be dismissed pursuant to Rule 12(b)(6).

## IV.   Plaintiffs Also Fail To State A Claim For Equitable Relief.

### A.   MultiPlan Is Not An ERISA Fiduciary, And Plaintiffs Do Not Plead Sufficient Facts To Establish A Breach Of Fiduciary Duties Or Knowing Participation In Such A Breach.

In Count VII of the FAC, Plaintiffs assert a claim for equitable relief based on ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Specifically, Plaintiffs seek an injunction pursuant to § 1132(a)(3)(A) to address Defendants' purported "breaches of fiduciary duties," including, with respect to MultiPlan, "the fiduciary duties [allegedly] assumed by acting as United's agent," as well as "the duty to act at all times in good faith" and "to act fairly, reasonably and promptly in dealing with […] United's insureds, their agents, and/or representatives, for adjusting claims, investigating claims handling, and properly and promptly returning the claims to United for payment." [*See* FAC, ¶¶ 504–10]. However, these allegations cannot serve as the basis for a claim against MultiPlan under § 1132(a)(3)(A) for the following reasons.

***First***, Plaintiffs still do not plead sufficient facts to establish MultiPlan's status as an ERISA fiduciary. It is well-settled that an action for breach of fiduciary duties under ERISA "may be brought only against persons definable as fiduciaries under ERISA. A non-fiduciary does not subject itself to liability simply by participating in a breach of trust by fiduciaries." *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1223 (N.D. Cal. 2008). Thus, "[t]o establish an action for equitable relief for

breach of fiduciary duties under 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must 'violate ERISA-imposed fiduciary obligations.'" *Herzfeld v. Teva Pharm. USA, Inc. Omnibus Welfare Plan*, 2020 WL 1864851, at *3 (C.D. Cal. Apr. 14, 2020). *See also Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1114 (N.D. Cal. 2018).

ERISA defines fiduciaries as those who either hold positions of fiduciary responsibility or exercise their fiduciary authority over the plan:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Department of Labor's guidelines for interpreting ERISA's definition of fiduciary as set forth in § 1002(21)(A) further clarify that persons who have no power to make decisions as to plan policy interpretations, practices or procedures but who perform specific administrative functions within a framework of policies, interpretations, rules, practices and procedures made by others are not deemed fiduciaries of the plan. 29 C.F.R. § 2509.75-8, D-2. It is therefore clear that, "[w]ithout any responsibility or authority over a plan's management and administration, one cannot be a fiduciary" under ERISA. *Brown v. Cal. Law Enf't Ass'n*, 81 F. Supp. 3d 930, 934 (N.D. Cal. 2015).

In the instant case, Plaintiffs do not allege or even suggest that any of the plan documents identify MultiPlan as a named fiduciary — nor can they, as MultiPlan is not an insurance company, and it does not market, sell, sponsor, insure, issue, or administer health benefit plans or programs or otherwise verify coverage or adjudicate benefits under any health benefit plans or programs. Plaintiffs also do not allege any facts to support a finding that MultiPlan or its affiliate, Viant, were exercising discretionary authority or control as to management of any plans or disposition of plan assets, or that they were rendering investment advice for any plans, or that they had discretionary authority or responsibility in the administration of any plans. *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Instead, Plaintiffs simply allege that MultiPlan "assumed" fiduciary duties "by acting

as United's agent." [*See* FAC, ¶ 509]. This conclusory assertion, without more, is not sufficient to subject MultiPlan to status as a fiduciary under ERISA. *See*, *e.g.*, *Cty. Of Monterey v. Blue Cross of Cal.*, 2019 U.S. Dist. LEXIS 120209 at *15 (N.D. Cal. July 18, 2019); *Brown*, 81 F. Supp. 3d at 935. Plaintiffs' remaining allegations, which purport to explain MultiPlan's and Viant's methodology, as well as their roles and responsibilities with respect to the claims at issue and dealings with United, [*see* FAC, ¶¶ 153–411], are equally unavailing, as none of these alleged facts points to MultiPlan (or Viant) having any responsibility, authority, or control whatsoever with respect to the management, assets, or administration of any health benefit plan. Absent such allegations, Plaintiffs cannot establish that MultiPlan is an ERISA fiduciary.

*Second*, even if Plaintiffs could plead sufficient facts to establish MultiPlan's status as an ERISA fiduciary, Plaintiffs must still plead that MultiPlan was acting in its fiduciary capacity and that it violated ERISA-imposed fiduciary obligations, which they have also failed to do. *See Herzfeld*, 2020 WL 1864851 at *3. It is well-settled that "ERISA fiduciaries breach their duties if they mislead plan participants or misrepresent the terms of administration of a plan." *Berman v. Microchip Tech. Inc.*, 2018 WL 732667, at *9 (N.D. Cal. Feb. 6, 2018) (citing *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017)). But to prevail on a claim for breach of fiduciary duty based on misrepresentations, a plaintiff must plead and prove: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1140 (C.D. Cal. 2009). Additionally, as to the element of detrimental reliance, the plaintiff must show that "the misrepresentation influenced the plaintiff's conduct, which caused prejudice." *McBean v. United of Omaha Life Ins. Co.*, 2019 WL 1508456, at *9 (S.D. Cal. Apr. 5, 2019).

Here, Plaintiffs allege that "[p]ublicly, Viant summarizes its methodology as [...] a tool to evaluate 'outpatient claims for opportunities to reduce the charges to levels that are usually charged by the provider and customarily charged by similar providers in the area for equivalent services' based on 'payer-established parameters,'" but that "[i]n reality, [...] Viant's calculations and methodology are not completely or even partially transparent: *i.e.* they are deliberately opaque," and

1    that "MultiPlan does not disclose or even admit to the data 'proxies' it uses in Viant's methodology."

2    [*See* FAC, ¶¶ 158–59, 175]. Plaintiffs further allege that "they were lied to by the Defendants who

3    told" Plaintiffs, in the PAD letters, "that the rates being paid were consistent with an objective

4    calculation of usual, customary, and reasonable rates;" "that it was their providers who were

5    charging substantially more than other, similar providers in the same geographic area;" and "that

6    the patients could owe their providers the difference."  [*Id.* ¶¶ 180, 185; *see also* ¶¶ 396–411, 424].

7    Plaintiffs also make vague references throughout the FAC to false statements and misrepresentations

8    on the part of MultiPlan and/or its co-Defendant, United. [*See id.* ¶¶ 264–65, 302, 332, 360, 387,

9    410, 424, 437]. Yet, Plaintiffs do not provide any details whatsoever regarding the content of any

10   purported misrepresentations, much less any details regarding the when, where, or how of any such

11   misrepresentations. In fact, in many instances, it is not even clear which of the purported

12   misrepresentations were allegedly made by MultiPlan (or Viant) and which were made by United.

13   Plaintiffs simply assert that there were representations made, and that they were not true because

14   United and MultiPlan ultimately did not to live up to them. Again, nothing is alleged that even

15   comes close to approaching the requirements of Rule 9(b). Perhaps more importantly, there are

16   absolutely no allegations anywhere in the Complaint to establish the materiality of MultiPlan's

17   alleged misrepresentations. Nor are there any allegations to establish that such misrepresentations

18   were relied upon by Plaintiffs (or anyone else) or that they influenced Plaintiffs' conduct in any

19   way, much less that Plaintiffs were harmed as a result of any purported misrepresentations on the

20   part of MultiPlan.

21        ***Third***, Plaintiffs allege absolutely no facts to establish that MultiPlan (or Viant) knowingly

22   participated in United's alleged breaches of fiduciary duties — *i.e.*, that they had "actual or

23   constructive knowledge of the circumstances that rendered the transaction unlawful." *See Harris Tr.*

24   *& Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246, 251 (2000). *See also Del Castillo*

25   *v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16,

26   2019); *Bush v. Liberty Life Assurance Co. of Bos.*, 130 F. Supp. 3d 1320, 1331 (N.D. Cal. 2015)

27   ("[A] non-fiduciary may be liable for knowingly participating in the administrator's breach of

28   [fiduciary] duty."). And, although Plaintiffs have diligently scrubbed from the FAC any reference

-18-

to their allegations in the Initial Complaint that MultiPlan (or Viant) does not receive, have access to, or knowledge of any plan terms or plan language, that highly relevant fact still persists. Therefore, artful pleading aside, Plaintiffs still "have not stated a claim for any ERISA violation, nor have they raised the reasonable inference that [D]efendants' conduct requires enforcement of an ERISA provision or the terms of any plan," and their claim for equitable relief under ERISA Section 502(a)(3) is "subject to dismissal on this basis." [*See* Dismissal Order, p. 12].

### B.   Plaintiffs Do Not Plead Appropriate Equitable Relief.

In addition to the foregoing, this Court dismissed Plaintiffs' catch-all claims for equitable relief in Counts VII and VIII of the Initial Complaint on the basis that the "complaint lack[ed] allegations showing that the nature of the remedies sought [was] equitable, as opposed to legal." [*See* Dismissal Order, pp. 8–13]. Plaintiffs purport to rectify this deficiency by converting their claim for "other appropriate equitable relief" in Count VIII to one under "common law," and by otherwise repeating and relying upon the *exact same* allegations and requests for relief as set forth in their Initial Complaint.

However, several of Plaintiffs' requests for relief are duplicative of relief available under other provisions of ERISA or common law theories and are subject to dismissal on this basis. In particular, Plaintiffs' requests for declaratory relief are barred because such relief is nothing more than a request for the Court to enforce the terms of ERISA plans — relief for which ERISA provides a remedy under § 502(a)(1)(B).[10] *See* 29 U.S.C. § 1132(a)(1)(B). The same is true with respect to Plaintiffs' requests that the Court enjoin Defendants "from the conduct alleged" and order that all claims be reprocessed "using an appropriate methodology." Likewise, Plaintiffs' request that the Court require Defendants "to provide transparency as to the methodology applied in reprocessing claims" and approve such methodology is no more than a request for the Court to clarify Plaintiffs' rights to future benefits under the terms of ERISA plans — a remedy that is also available under §

---

[10] Plaintiffs also seek a declaration "that United and Viant have engaged in an illegal, prohibited, RICO enterprise." However, this request fails as a matter of law because it is duplicative of Plaintiffs' RICO claim, which is insufficiently pled and subject to dismissal for the reasons discussed above.

Case No. 4:20-cv-02254-YGR

502(a)(1)(B). *See id. See also Berman*, 2018 WL 732667 at *11. That Plaintiffs cannot state a viable claim under § 502(a)(1)(B) does not mean that Plaintiffs can sue for equitable relief under § 502(a)(3), because the "basis for [their] claim[s]" is still legal, not equitable. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019).

Plaintiffs' claims for injunctive relief are also subject to dismissal because Plaintiffs have not pled sufficient facts to establish that they are entitled to an injunction against MultiPlan. In this Circuit, "[f]or a plaintiff to establish that it is entitled to an injunction, it "must satisfy a four-factor test," and show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*See Berman*, 2018 WL 732667 at *12 (quoting *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 827 (9th Cir. 2017)). Here, Plaintiffs do not plead the unavailability of legal remedies or that a permanent injunction would serve the public interest. Nor are there any facts establishing that a remedy in equity is warranted as against MultiPlan. Absent such facts, Plaintiffs fail to state a claim for injunctive relief against MultiPlan. Further, because the only concrete injury Plaintiffs allege involves past "underpayments" for services they received in 2018 and 2019, Plaintiffs do not even have Article III standing to seek injunctive or other prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) ("Abstract injury is not enough […] and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"); *Thole v. U.S. Bank N.A.*, —U.S.—, 2020 WL 2814294 (U.S. June 1, 2020) (holding that Article III's requirements apply with full force to claims for statutory violations under § 502(a)(3)).

Finally, while Plaintiffs attempt to characterize their remaining requests for relief as equitable by labeling them as "restitution," "surcharge," and "disgorgement," the relief that Plaintiffs actually seek is nothing more than money damages to compensate for the _exact same_ alleged harm that forms the basis of Plaintiffs' previous causes of action. [*See* FAC, ¶ 32 ("Plaintiffs' ERISA claims rely upon the same facts as Plaintiffs' federal RICO claims."); *see also* ¶¶ 504–05, 511]. District courts in this Circuit have routinely granted motions to dismiss equitable relief claims

under similar circumstances. *See Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (citing cases).

Equally significant, Plaintiffs do not even attempt to satisfy the stringent pleading requirements for any of the limited categories of monetary relief that could qualify as equitable. As the U.S. Supreme Court has squarely recognized, a claim for equitable restitution requires a plaintiff to identify "money or property […] as belonging in good conscience to the plaintiff" that "could clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *see also Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 323–64 (2006); *US Airways, Inc. v. McCutcheon*, 133 S.Ct. 1537, 1545 (2013). "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213–14.

Additionally, under the "unjust enrichment" theory of surcharge, a fiduciary "who gains a benefit by breaching his or her duty must return that benefit to the beneficiary." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012); *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1114–20 (N.D. Cal. 2018). Where a plaintiff seeks "surcharge as a restitutionary remedy based on disgorgement," as in the present case, the court must look "to the principles of restitution in evaluating whether" the plaintiff is entitled to such a remedy. *See Wit v. United Behavioral Health*, 2017 WL 3478775, at *15 (N.D. Cal. Aug. 14, 2017).

Even when the allegations of the FAC are viewed in the light most favorable to Plaintiffs, it is clear that, despite their characterizations, Plaintiffs' requests for "restitutionary damages" and a "surcharge, disgorging Defendants['] unjust enrichments" are nothing more than duplicative claims for legal relief poorly disguised as claims in equity. For starters, Plaintiffs do not identify any particular assets or funds that can reasonably be traced to MultiPlan (or Viant). Nor do they allege any facts to suggest that MultiPlan has improperly retained any monies supposedly owed to, or received any benefit directly from, Plaintiffs. Indeed, nothing in the FAC states or even suggests that MultiPlan was unjustly enriched or that MultiPlan received anything other than compensation from United pursuant to their contractual agreement. Plaintiffs therefore fail to satisfy the stringent

1   pleading requirements for any of the limited categories of monetary relief that could qualify as

2   equitable under § 502(a)(3) or common law.

3        Accordingly, as the allegations raised in Counts VII and VIII of the FAC are virtually

4   identical to the previously dismissed claims in the Initial Complaint, this Court should once again

5   dismiss those claims, in their entirety and with prejudice, pursuant to Rule 12(b)(6).

6   <u>**CONCLUSION**</u>

7        For the foregoing reasons, Defendant MultiPlan, Inc. respectfully requests that this Court

8   grant its Motion and dismiss all of the claims and causes of action asserted by Plaintiffs against

9   MultiPlan in the First Amended Class Action Complaint, namely Counts I and II for violation of

10  RICO, § 1962(c) and for conspiracy to violate RICO, § 1962(d); Count VII for equitable relief to

11  enjoin acts and/or practices under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3); and Count VIII for

12  other appropriate equitable relief pursuant to common law.

13  DATED: October 30, 2020

14                                 By:*/s/ Moe Keshavarzi*

15                                   Moe Keshavarzi
                                 David E. Dworsky
                                 Sheppard Mullin

16                                   333 South Hope Street, 43rd Floor
                                 Los Angeles, CA 90071

17                                   Telephone: (213) 620-1780
                                 Fax: (213) 620-1398

18   

19                                   and

20                                   Errol J. King, Jr.
                                 Phelps Dunbar LLP

21                                   II City Plaza
                                 400 Convention Street, Suite 1100

22                                   Baton Rouge, Louisiana 70802
                                 Telephone: (225) 376-0207

23                                   Fax: (225) 381-9197

24                                   Attorneys for Defendant, MultiPlan, Inc.

25

26

27

28