1    HEATHER L. RICHARDSON, SBN 246517
        hrichardson@gibsondunn.com
2    LAUREN M. BLAS, SBN 296823
        lblas@gibsondunn.com
3    Gibson, Dunn & Crutcher LLP
     333 South Grand Avenue
4    Los Angeles, CA 90071-3197
     Telephone: 213.229.7000
5    Facsimile:  213.229.7520

6    GEOFFREY SIGLER (*admitted pro hac vice*)
        gsigler@gibsondunn.com
7    JOSHUA LIPTON (*admitted pro hac vice*)
        jlipton@gibsondunn.com
8    Gibson, Dunn & Crutcher LLP
     1050 Connecticut Avenue, N.W.
9    Washington, DC 20036-5306
     Telephone: 202.995.8500
10   Facsimile:   202.467.0539

11   Attorneys for Defendant
     UNITED BEHAVIORAL HEALTH

12

13                    UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                         OAKLAND DIVISION

16

17   LD, DB, BW, RH, and CJ, on behalf of        Case No. 4:20-cv-02254-YGR
     themselves and all others similarly situated,   Related Case No. 4:20-cv-02249-YGR

18                  Plaintiffs,                   **DEFENDANT UNITED BEHAVIORAL
                                                 HEALTH'S NOTICE OF MOTION AND
19          v.                                   MOTION TO DISMISS PLAINTIFFS'
                                                 FIRST AMENDED COMPLAINT;
20   UNITED BEHAVIORAL HEALTH, a                 MEMORANDUM OF POINTS AND
     California Corporation, and MULTIPLAN,      AUTHORITIES**
21   INC., a New York Corporation,
                                                 Date:    Tuesday, December 22, 2020
22                  Defendants.                  Time:    2:00 p.m.
                                                 Judge:   Hon. Yvonne Gonzalez Rogers
23                                               Crtrm:   Courtroom 1, Fourth Floor

24

25                                               Complaint Filed:  April 2, 2020

26

27

28

Gibson, Dunn &
Crutcher LLP

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, December 22, 2020 at 2:00 p.m., or as soon thereafter as the matter can be heard, in Courtroom 1, Fourth Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant United Behavioral Health ("UBH") moves the Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiffs' claims for violation of RICO and conspiracy to violate RICO (18 U.S.C. § 1962(c) and (d)), underpaid benefits under group plans governed by ERISA; breach of plan provisions in violation of ERISA § 502(a)(1)(B); violation of fiduciary duties of loyalty and due care and request for declaratory and injunctive relief; violation of fiduciary duties of full and fair review and request for declaratory and injunctive relief; claim for equitable relief to enjoin acts and/or practices; and claim for other appropriate equitable relief.

UBH's motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Ngoc Han S. Nguyen, and the accompanying Request for Judicial Notice and exhibits thereto, all of which are filed and served herewith, as well as the records, pleadings, and papers on file in this action, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

Dated: October 30, 2020

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ *Geoffrey Sigler*
Geoffrey Sigler

Attorney for Defendant
UNITED BEHAVIORAL HEALTH

i

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ...................................... 2

III.    BACKGROUND ...................................................................................................... 2

IV.    STANDARD OF REVIEW ...................................................................................... 4

V.     ARGUMENTS .......................................................................................................... 5

     A.     Plaintiffs Again Fail To State A Claim Under RICO (Counts I & II) .......... 5

          1.     Plaintiffs Have Still Failed To Allege A RICO Enterprise .............................. 5

          3.     Plaintiffs' Allegations Still Fail To Satisfy Rule 9(b)...................................... 8

          4.     Plaintiffs Lack RICO Standing ...................................................................... 12

     B.     Plaintiffs' Claims "Under The Terms Of" Their ERISA Plans Should Be Dismissed For Failure To State A Claim (Counts III and IV) ................... 13

     C.     Plaintiffs' Claims Under Section 502(a)(3) Should Also Be Dismissed (Counts V–VIII)................................................................................................ 15

VI.    CONCLUSION ...................................................................................................... 18

Gibson, Dunn &
Crutcher LLP

1
2
3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aetna UCR Litig.,*
   2015 WL 3970168 (D.N.J. June 30, 2015) ..................................................................8

*Ahern v. Apple Inc.,*
   411 F. Supp. 3d 541 (N.D. Cal. 2019) .....................................................................5

*Am. Dental Ass'n v. Cigna Corp.,*
   605 F.3d 1283 (11th Cir. 2010)...............................................................................10

*In re Apple Inc. Device Performance Litig.,*
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..................................................................13

*Armijo v. ILWU-PMA Welfare Plan,*
   2015 WL 13629562 (C.D. Cal. Aug. 21, 2015)......................................................17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................4

*B.R. v. Beacon Health Options,*
   2017 WL 2351973 (N.D. Cal. May 31, 2017) ..........................................................3

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990)......................................................................................4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)....................................................................................................4

*Bridge v. Phoenix Bond & Indem. Co.,*
   553 U.S. 639 (2008)..................................................................................................12

*Cansino v. Bank of Am.,*
   224 Cal. App. 4th 1462 (2014)................................................................................11

*Cedric Kushner Promotions Ltd. v. King,*
   533 U.S. 158 (2001) ...................................................................................................6

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ...................................................................................................16

*Depot, Inc. v. Caring for Montanans, Inc.,*
   915 F.3d 643 (9th Cir. 2019)....................................................................................16

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.,*
   2013 WL 12114069 (C.D. Cal. Mar. 12, 2013) ........................................................8

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)..................................................................................4

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004)................................................................................8

*Gardner v. Starkist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ...................................................................5

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*,
   805 F. App'x 530 (9th Cir. 2020) .........................................................................15

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015) ........................................................5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) .............................................................................................16

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) .............................................................................................12

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000)..................................................................................5

*Ihde v. United of Omaha Life Ins. Co.*,
   2017 WL 5444551 (D. Colo. Nov. 14, 2017) .......................................................17

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ......................................................12

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)................................................................................4

*Lewis v. Rodan & Fields, LLC*,
   2019 WL 978768 (N.D. Cal. Feb. 28, 2019)..........................................................5

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ...................................................................5

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .............................................................................................16

*United States ex rel. Modglin v. DJO Global Inc.*,
   114 F. Supp. 3d 993 (C.D. Cal. 2015)..................................................................11

*Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*,
   2013 WL 12129953 (C.D. Cal. Nov. 18, 2013).....................................................9

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
   54 F.3d 1424 (9th Cir. 1995)................................................................................11

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Gibson, Dunn &
Crutcher LLP

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)..................................................................................5

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998)..................................................................................3

*Rattagan v. Uber Techs., Inc.*,
  2020 WL 4818612 (N.D. Cal. Aug. 19, 2020)......................................................13

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990)................................................................................13

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)................................................................................................7

*River City Mkts., Inc. v. Fleming Foods W., Inc.*,
  960 F.2d 1458 (9th Cir. 1992)................................................................................6

*Segal Co. (E. States), Inc. v. Amazon.com*,
  280 F. Supp. 2d 1229 (W.D. Wash. 2003)............................................................11

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985)................................................................................12

*Stitt v. Citibank, N.A.*,
  2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ..........................................................5, 6

*Thole v. U.S. Bank N.A.*,
  —U.S.—, 2020 WL 2814294 (U.S. June 1, 2020) ...........................................16

*Townsend v. Chase Bank USA N.A.*,
  2009 WL 426393 (C.D. Cal. Feb. 15, 2009)..........................................................9

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020)..............................................................................11

*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008)................................................................................7

*In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011)..................................................................8

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012)..................................................................13

**Statutes**

18 U.S.C. § 664 ...........................................................................................................12

Gibson, Dunn &
Crutcher LLP

v

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

18 U.S.C. § 1962(c) ....................................................................................................4, 6, 12

18 U.S.C. § 1962(d) ..............................................................................................................4

29 U.S.C. § 1133 ................................................................................................................17

Gibson, Dunn &
Crutcher LLP

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3           Plaintiffs' original complaint was dismissed in its entirety for failure to state a claim.  Dkt. 55

4    ("Order").  Plaintiffs' Amended Complaint includes only superficial changes that fail to remedy the

5    fundamental flaws that required dismissal previously and it should therefore be dismissed for the same

6    reasons.

7           Plaintiffs now identify excerpts of their ERISA plans governing reimbursement of their claims,

8    but they fail to plead any facts showing that these terms were actually violated, dooming the entire

9    Amended Complaint.  Plaintiffs contend that their claims should have been reimbursed at 100% of

10   whatever amount Summit Estate (an out of network provider) chose to bill—*i.e.*, its full billed charges,

11   totaling thousands of dollars each day they received a few hours of therapy.  Unsurprisingly, not one

12   of their health benefit plans supports this theory, and multiple provisions in the various plans refute it.

13          Also as before, Plaintiffs' RICO claims fail for a series of reasons—*e.g.*, failure to allege the

14   existence of a RICO enterprise, failure to allege that UBH directed the purported enterprise, and failure

15   to allege predicate acts with particularity under Rule 9(b).  Plaintiffs have added a few new allegations

16   about Patient Advocacy ("PAD") letters they purportedly received about MultiPlan/Viant's repricing

17   of claims, but they do not identify any fraudulent statements in these letters, and these letters postdated

18   the treatments in question, so Plaintiffs could not have relied on them in deciding to seek the services

19   at issue.  This remains, at bottom, a reimbursement dispute under Plaintiffs' health plans, and no matter

20   how much hyperbole Plaintiffs inject, their allegations do not add up to a RICO conspiracy.

21          Plaintiffs' claims for benefits under ERISA Section 502(a)(1)(B) also fail because, as described

22   above, they do not allege any violations of the plan terms they now identify in the Amended Complaint

23   (governing reimbursement of "UCR" and "Eligible Expenses").  And even if they had properly pled

24   claims for benefits under ERISA Section 502(a)(1)(B), Plaintiffs' alternative claims—seeking

25   injunctions and other "equitable" relief under ERISA Section 502(a)(3)—still fail because it is well

26   established that Plaintiffs cannot simply recast their legal claims for benefits (*i.e.*, damages) to seek

27   "equitable" relief under Section 502(a)(3).  Plaintiffs also lack standing under Article III to seek

28   injunctive or other prospective relief.

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Given Plaintiffs' inability to state a claim following this Court's direct guidance in its previous ruling, further amendment would be futile, and the Amended Complaint should be dismissed with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

1.    Whether Plaintiffs' RICO claims are subject to dismissal because they have failed to: (a) plead that Defendants formed a RICO enterprise; (b) plead that UBH "conducted" the affairs of the purported enterprise; (c) allege predicate acts of fraud with the specificity required by Rule 9(b); or (d) allege that any predicate act caused injury to their business or property;

2.    Whether Plaintiffs' claim for benefits under "the terms of" their ERISA plans should be dismissed for failure to plead facts showing violations of the "terms of" these plans; and

3.    Whether Plaintiffs' various claims for "equitable" relief under Section 502(a)(3) should be dismissed because Plaintiffs fail to plead any facts to support a distinct basis to seek equitable relief under this provision.

## III.    BACKGROUND

This Court correctly summarized Plaintiffs' claims in its previous dismissal ruling (*see* Order at 1–3), so UBH will not repeat that summary here.  Although Plaintiffs have revised their allegations somewhat in the Amended Complaint, their claims are still fundamentally the same: Plaintiffs contend UBH has under-reimbursed intensive outpatient ("IOP") services (involving several hours of therapy per day, multiple days a week) that they received at Summit Estate.  According to Plaintiffs, "[e]very claim at issue in this litigation was required to be paid at a percentage of UCR" (FAC ¶ 14), but instead UBH hired a vendor, MultiPlan, to reprice claims at a "fraudulent UCR rate."  *Id*. ¶ 70.  Plaintiffs contend that their claims should have been reimbursed at 100% of Summit Estate's billed charges—or $2,156.25 per day per Plaintiff for a few hours of therapy.  *Id*. ¶ 262.  Plaintiffs allege that UBH instead reimbursed these out-of-network claims at $291.12 per day, calculated using MultiPlan's database of provider charges.  *Id*. ¶ 263.

To support their claims, Plaintiffs now direct the Court to select excerpts of their plans.  But as Plaintiffs' allegations show, and as confirmed by their respective plan's summary plan descriptions, none of their plans requires payment of 100% of billed charges, the vast majority do not require "UCR,"

and most have differing plan provisions governing out-of-network reimbursements.  *See* Declaration of Ngoc Han S. Nguyen ("Nguyen Decl."), Ex. 1 at 36, 44, 335; Ex. 2 at 31–32, 39 (describing coverage of "Eligible Expenses" for out-of-network services); Ex. 3 at 8 (same); *see also* Ex. 1 at 26 (further explaining that "you pay the difference" if provider bills more than UCR); Ex. 2 at 40 (similar); Ex. 3 at 8 (explaining member's liability for balance bills for out-of-network services, warning members that "[t]he amount in excess of the Eligible Expense could be significant," and telling members they "may want to ask the non-Network provider about their billed charges before you receive care").  UBH submitted the relevant excerpts of these summary plan descriptions with its previous motion to dismiss, and the Court decided not to rely on them in part because Plaintiffs opposed such reliance.  *See* Order at 5 n.4.  This time around, Plaintiffs have specifically quoted the excerpts in their Amended Complaint (*see*, *e.g.*, FAC ¶ 248), UBH produced complete copies to Plaintiffs' counsel more than two weeks before this filing (*see* Dkt. 58, stipulated extension to allow exchange of information in advance of filing), and Plaintiffs have not identified any objections to these documents.  Accordingly, the complete summary plan descriptions are properly before this Court in connection with the motion to dismiss the Amended Complaint.[1]  But even if they were not considered, dismissal is proper based on the face of Plaintiffs' Amended Complaint and the quoted excerpts for the reasons set out below.  Plaintiffs also continue to rely on EOBs they received from "United," which supposedly were "fraudulent."  Several of these EOBs—which were also submitted with UBH's previous motion to dismiss and considered by the Court in its ruling—are submitted concurrently and may be considered, again.  *See* Exs. 4–8.

There also continues to be substantial overlap between Plaintiffs' case and the related case brought by Summit Estate and other IOP providers.  Plaintiffs allege they have waived any conflict between themselves and their provider, Summit Estate (FAC ¶ 9), which is asserting similar claims in the related case, *Pacific Recovery v. United Behavioral Health* ("*Pacific Recovery*"), No. 4:20-cv-02249-YGR (N.D. Cal.), but their allegations continue to overlap substantially—and in some cases conflict directly—with Summit Estate's allegations.  Both sets of plaintiffs continue to seek the same

---

[1]  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998); *B.R. v. Beacon Health Options*, 2017 WL 2351973, at *3 (N.D. Cal. May 31, 2017) ("Because Plaintiffs' claim is predicated entirely on the terms and benefits of the SAG [ERISA] Plan, the Court may consider" that plan's "terms and benefits").

Gibson, Dunn &
Crutcher LLP

3

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

damages on the same claims, and in each case, the plaintiffs allege that they were "directly injured" by the challenged conduct.  FAC ¶ 412; *see also Pacific Recovery* FAC ¶ 15.  This conflict is exemplified by the fact that Summit Estate expressly identifies and seeks to recover reimbursements for patient "CS" in the *Pacific Recovery* litigation—but "CS" is actually named Plaintiff "BW" in this lawsuit, and BW is seeking to recover these very same reimbursement amounts.  *Pacific Recovery* ¶¶ 350–57; FAC ¶ 328.

The causes of action in the Amended Complaint are essentially the same as they were in the original complaint, except that Plaintiffs have dropped their disclosure claim under various provisions of ERISA.  Plaintiffs now bring eight causes of action: (1) violation of RICO (18 U.S.C. § 1962(c)); (2) conspiracy to violate RICO (18 U.S.C. § 1962(d)); (3) a claim for underpaid benefits under ERISA Section 502(a)(1)(B); (4) a claim for breach of plan provisions under ERISA Section 502(a)(1)(B); (5) a claim for breach of fiduciary duties of loyalty and care; (6) a claim for violation of ERISA's full and fair review statute; (7) a claim for an injunction under Section 502(a)(3)(A); and (8) a claim for "other appropriate equitable relief" under Section 502(a)(3)(B).

## IV.    STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Determining whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility requires a "context-specific" determination that a court must make by "draw[ing] on its judicial experience and common sense." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Additionally, claims grounded in fraud are subject to the heightened-pleading requirements of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation and quotation marks omitted).  To satisfy this standard, a plaintiff must "allege 'the particular circumstances surrounding [the] representations' at issue," *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (citation omitted), including what was omitted and how it should have been revealed, as well as details

1    concerning the representations that were made that the plaintiff relied on.  *Marolda v. Symantec Corp.*,

2    672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

3    **V.**    **ARGUMENTS**

4        **A.**    **Plaintiffs Again Fail To State A Claim Under RICO (Counts I & II)**

5        This Court previously dismissed Plaintiffs' RICO claims on the ground that they failed to allege

6    the existence of an enterprise (as opposed to a lawful contractual relationship), failed to sufficiently

7    allege that UBH directed the enterprise (as opposed to participating in its own affairs), failed to provide

8    sufficiently particularized allegations under Rule 9(b), and failed to adequately allege standing.  Order

9    at 14–17.  Because Plaintiffs have not cured any of these defects, their claims should be dismissed—

10    with prejudice—for the same reasons.[2]

11        **1.**    **Plaintiffs Have Still Failed To Allege A RICO Enterprise**

12        In granting UBH's first motion to dismiss, the Court ruled that the allegations in the original

13    complaint merely "describe[d] a contractual relationship between defendants that required Viant to

14    negotiate reimbursements on behalf of United," and failed to allege any facts "to raise the inference

15    that defendants' activities pursuant to this contractual relationship were contrary to United's obligations

16    under the ERISA plans it administered or to the terms of any such plans."  Order at 14.  In reaching

17    this conclusion, the Court's ruling was consistent with a long line of authorities requiring Plaintiffs to

18    plead: "(1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either

19    formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing

20    unit."  *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *3 (N.D. Cal. Jan. 6, 2015) (citing *Odom v. Microsoft*

21    *Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)).  Additionally, it is well established that allegations

22    concerning "routine commercial dealing," without more, do not establish that a "common purpose"

23    exists under RICO.  *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Gomez v.*

24    *Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (summarizing cases); *Lewis v.*

25    *Rodan & Fields*, *LLC*, 2019 WL 978768, at *4 (N.D. Cal. Feb. 28, 2019) (dismissing claim where

26    supposed enterprise was not "anything other than an ordinary business relationship").

27

28    [2] Because Plaintiffs cannot plead a substantive claim under RICO, their RICO conspiracy claim fails
        as well.  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Gibson, Dunn & Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Plaintiffs' additions to the Amended Complaint are long on rhetoric and short on facts to support the existence of a RICO enterprise. They allege, for example, that UBH and MultiPlan "joined together to create and exploit a false and fraudulently manipulated database as an excuse for under-reimbursing Plaintiffs" and "worked together to develop the false and fraudulent UCR rates that were applied to out of network IOP claims." FAC ¶¶ 112, 117. But Plaintiffs' revised wording does not overcome the fact that their theory is the same as what they pled in their original complaint—*i.e.*, that UBH and Viant (a MultiPlan affiliate) had a "common purpose" to "underpay[] for IOP services and increas[e] the profits [of] the Enterprise participants and their Co-Conspirators." Dkt. 1 ¶ 272. Plaintiffs' new allegations merely append sinister-sounding descriptors to a vendor arrangement that benefits UBH, its health plan clients, and their members by helping to control medical costs—exactly what managed care companies are supposed to do. FAC ¶ 157. That there are "incentives" for MultiPlan to reduce the amount UBH pays on out-of-network claims (e.g., *id.* ¶¶ 240, 494, 500), is unremarkable too, given that MultiPlan's is a "cost management" company. FAC ¶ 12. As before, the most one can infer from these allegations is that a contract exists to reduce medical costs (*id.* ¶ 113), which "does not render plausible [P]laintiffs' claim that the members of the . . . Enterprise associated for [an] alleged, and fraudulent, common purpose." *Stitt*, 2015 WL 75237, at *5.

## 2. UBH Did Not Direct A RICO Enterprise

Plaintiffs also fail to plead any facts suggesting UBH conducted the affairs of a RICO enterprise, as opposed to conducting its own affairs, in service of its customers, by seeking to reduce medical costs. Section 1962(c) liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Stitt*, 2015 WL 75237, at *3 (quoting *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 163 (2001) (emphasis in original). "Virtually every business contract can be called an 'association in fact,'" but "[t]o constitute a proscribed RICO enterprise[,] the associates must participate, directly or indirectly 'in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *River City Mkts., Inc. v. Fleming Foods W., Inc*., 960 F.2d 1458, 1462–63 (9th Cir. 1992) (quoting 18 U.S.C. § 1962(c)).

This Court previously concluded that Plaintiffs' allegations were "consistent only with defendants conducting their own affairs pursuant to the contract that required Viant to negotiate

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

reimbursements on behalf of United, which Plaintiffs do not allege was contrary to the ERISA plans that United administered." Order at 15.  The same is true in the Amended Complaint.  Plaintiffs contend that "management" was evidence insofar as "United" made verification-of-benefits calls to providers and issued underpayments, but those steps were merely consistent with UBH's role as a claims administrator for these plans—which is its independent business function.  FAC ¶¶ 119, 122.  The Court rejected similar allegations as insufficient in the original complaint.  *See* Dkt. 1 ¶¶ 252, 253, 256 (similar allegations about VOB calls and EOBs issued by UBH without any alleged involvement by Viant).  Plaintiffs' only new allegation on this front is that the advocacy letters patients received had "both [United and Viant] in the letterhead."  FAC ¶¶ 120–121, 123.

Plaintiffs also allege that "United determined the fraudulent rates for underpayment that would be presented as UCR," which they claim shows "management over the enterprise."  FAC ¶ 119.  But UBH's selection of methodologies and rates from a menu of options by a vendor, MultiPlan, fails to show any RICO enterprise—or that United had "some part in directing [the enterprise's] affairs," as opposed to UBH's own, independent business affairs.  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  "[D]irecting" requires more than "simply being involved" or "performing services for the enterprise."  *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).  Relevant considerations include whether the defendant "occup[ies] a position in the 'chain of command'. . . through which the affairs of the enterprise are conducted," whether it "knowingly implement[ed] [the] decisions of upper management," and whether its "participation was 'vital' to the mission's success."  *Id.* at 1249; *see also Reves*, 507 U.S. at 185 (holding RICO liability requires a "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their own affairs").

Here, Plaintiffs do not allege facts showing UBH "directed" or "knowingly implemented" the decisions of "upper management" with respect to the rates at which providers were reimbursed or with respect to the issuance of the PAD letters.  Plaintiffs conspicuously avoid saying that UBH set or dictated any aspect of MultiPlan's available products or services—undoubtedly because they cannot. The most one can infer from Plaintiffs' vague allegations is that UBH was somehow involved because it used those products and services.  And Plaintiffs' only allegation with respect to the letters is that "[United and Viant's] names [appeared] in the letterhead."  FAC ¶ 123.  But involvement alone is

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

insufficient to show management over an enterprise, and moreover, is entirely consistent with UBH "carrying out the functions it was contractually required to perform," namely, to help its clients contain medical costs.  *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *13 (C.D. Cal. Mar. 12, 2013); *see also In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint I*"), 865 F. Supp. 2d 1002, 1034–35 (C.D. Cal. 2011) ("[T]he existence of a business relationship between WellPoint, Ingenix, and the Insurance Defendants without more does not show that WellPoint conducted the enterprise."); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 (D.N.J. June 30, 2015) ("commercial interactions" between the defendants "insufficient to compel liability" under RICO). "What is missing" (as in the Ingenix litigation on which Plaintiffs purport to rely) "is some—any— indication that [UBH] guided the alleged scheme *to defraud insureds*."  *In re Aetna UCR Litig.*, 2015 WL 3970168, at *30.

### 3.    Plaintiffs' Allegations Still Fail To Satisfy Rule 9(b)

Because Plaintiffs' RICO claims depend on predicate acts of mail and wire fraud, Plaintiffs must plead with particularity the who, what, when, where, how, and why of this alleged mail and wire fraud.  *WellPoint I*, 865 F. Supp. 2d at 1036; *see Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065– 66 (9th Cir. 2004).  This Court previously found that "Plaintiffs have not averred the specific facts required to raise the reasonable inference that defendants committed at least two instances of mail fraud or wire fraud," because they "do not identify the time, place, and specific content of the fraudulent communications at issue, or identify the person or persons involved in such communications," nor do they "aver factual matter to raise the inference that such communications were sent over the United States wires or United States mail across state lines."  Order at 16.

Plaintiffs have added virtually no new facts or details in response to this Court's order.  Indeed, the only noteworthy change is that the Amended Complaint adds an example of a "PAD" letter, but these allegations do not show any fraudulent statements by UBH (or anyone else).  Plaintiffs' allegations still lack the necessary specificity under Rule 9(b).

Plaintiffs again claim to have been misled by three categories of communications: (1) verification-of-benefits phone calls between Summit Estate and "United"; (2) EOBs issued to Plaintiffs that allegedly were "materially false, misleading, and intended to deceive the Provider and the Patient

Gibson, Dunn & Crutcher LLP

8

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

1   from the true nature of the methodologies used and to prevent either the Provider or the Patient from

2   disputing the matter with United"; and (3) PAD letters from MultiPlan and "UnitedHealthcare"

3   suggesting that Viant, MultiPlan's affiliate, "had authority to negotiate on patients' behalf."  FAC ¶¶

4   296, 302, 332, 360, 387, 396, 399, 400.  But their allegations about these communications fail to support

5   any claim of mail or wire fraud, and they remain bereft of the necessary details to satisfy Rule 9(b).[3]

6          First, with respect to the verification-of-benefits calls, this Court previously found that those

7   calls failed to form a predicate for the mail/wire fraud claims because Plaintiffs failed to provide

8   specifics.  Order at 17.  For reasons explained more fully in the separate motion to dismiss in the *Pacific*

9   *Recovery* case, the few details provided about these calls in *that* case fail to support a fraud theory; nor

10  do they satisfy Rule 9(b).  Plaintiffs in this case do not even allege any of the dates, names, or other

11  details that are alleged in *Pacific Recovery*.  Moreover, Plaintiffs in this case do not allege that they

12  had any awareness of these calls, so they could not have been defrauded by them.  *See Nat'l Standard*

13  *Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*, 2013 WL 12129953, at *9 (C.D. Cal. Nov. 18,

14  2013) (dismissing misrepresentation claim under Rule 9(b) because the complaint "[did] not identify

15  any specific statements made by the Manager defendants, except in the most general sense"); *Townsend*

16  *v. Chase Bank USA N.A.*, 2009 WL 426393, at *5 (C.D. Cal. Feb. 15, 2009) (RICO claim insufficiently

17  pled where plaintiffs "fail[ed] to mention any specific statements, charges, or penalties").

18         Second, as for the EOBs, the Court previously held that a series of key factual details were

19  missing; additionally, Plaintiffs failed to identify any fraudulent statements in the EOBs, which "do not

20  state that any amounts paid for IOP services were 'based on the UCR rate . . .'"  Order at 16–17.  The

21  few new allegations in the Amended Complaint fail to cure these failings.  Plaintiffs now refer to a

22  "CY" remark code (which signals that the "claim has been reduced by the amount [of] the eligible

23  expense amount") in some of the EOBs (FAC ¶¶ 264, 301), but UBH previously put these EOBs with

24  the same remark code before the Court, and the Court found these communications insufficient.  None

25  of Plaintiffs' allegations change the fact that the EOBs "[did] not state that any amounts paid for IOP

26  _____

27   [3]  Plaintiffs do not allege that they were defrauded by their summary plan descriptions, as suggested
     in the original complaint.  In any event, even if Plaintiffs were trying to claim this, they fail to allege
28   that they read and relied on any part of their summary plan descriptions (which they only refer to
     now, in the Amended Complaint, after all of the services were provided and after the case filed).

Gibson, Dunn &
Crutcher LLP

1   services were 'based on the UCR rate.'"  Order at 16.  Further, Plaintiffs still fail to cite any "authority

2   showing that United was required to include in the EOBs the words 'adverse benefit determination' or

3   to otherwise mention Viant's involvement in the reimbursement negotiations."  *Id.* at 17.  And finally,

4   Plaintiffs did not receive these EOBs until *after* the services at issue, so they could not have relied on

5   any representations in the EOBs in deciding to receive the services.  Plaintiffs may disagree with the

6   benefits calculation on the EOBs, but as before, accurately reporting a disputed calculation, without

7   more, does not amount to fraud.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir.

8   2010) (affirming dismissal where alleged RICO fraud involved EOBs accurately reporting reductions

9   that plaintiffs disagreed with).

10       Third, with respect to the PAD letters, Plaintiffs fail to allege whether anyone actually saw or

11   relied on these letters, or what the letters said that supposedly was fraudulent.  The example in the

12   Amended Complaint truthfully says that an "out of network provider has charged more than the

13   allowable out-of-network reimbursement amount, which UnitedHealthcare determined based upon

14   your health benefit plan for services you recently received," and explains "[t]his means you might need

15   to pay the difference between the charged and allowed amounts."  FAC ¶ 396.  The letter then explains

16   that "UnitedHealthcare contracts with Viant to provide you with valuable patient advocacy support in

17   situations like this" and offers a phone number to call if the member, for example, has a higher out-of-

18   pocket obligation for out-of-network claims and wants to try to bring the cost down further.  *Id.*; *see*

19   *also, e.g.*, *id.* ¶ 253.[4]  These letters do not promise that any benefit would be paid at 100% of billed

20   charges or "UCR"; nor do they "clearly show" in any respect "that payment was not made based on

21   competitive fees in the same geographic area" as Plaintiffs assert.  And finally, like the EOBs, Plaintiffs

22   did not receive these PAD letters until after the services at issue, so they could not have relied on them

23   in deciding to seek these services.

24       Further, with respect to all categories of communications, Plaintiffs' allegations about who

25   made any alleged misrepresentations continue to be incurably vague, claiming only that they were

26   misled  and  harmed  by  "United."   *E.g.*,  FAC  ¶¶  429–32.   But  merely  asserting  fraudulent

27

28   _____

     [4]  This statement also shows, contrary to Plaintiffs' theory, that "UnitedHealthcare"—not UBH—
     contracts with Viant.  FAC ¶ 396.

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

communications by "United" is insufficient: "Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim." *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015); *Segal Co. (E. States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) ("[T]he complaint's reference to certain 'representatives' of defendant is too vague to sufficiently identify the alleged perpetrators."). Plaintiffs still fail to identify who at "United" made any alleged fraudulent communications, with the required specificity.

Moreover, Plaintiffs' allegations are utterly lacking in trying to show that anyone at "United" intended to defraud them. *See United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020) ("[A] defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original). Plaintiffs provide no facts linking back their allegations about UBH's purported role in the fraud with anyone who communicated with Plaintiffs, and have not created any sort of inference, much less a plausible one, that the calls, EOBs, and PAD letters were somehow part of a master plan orchestrated to defraud Plaintiffs. These shortcomings are particularly problematic given Plaintiffs' allegations conflating UBH with UnitedHealthcare. *See supra* note 4. Plaintiffs likewise fail to allege any fraudulent intent with respect to Plaintiffs' summary plan descriptions, for which Plaintiffs' employers—not UBH—were responsible. Dkt. 34 at 11–12. And without such specific allegations showing fraudulent intent, their fraud claims fail. *See, e.g.*, *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (holding that "there is no case law supporting an independent 'collective scienter' theory"); *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) ("Nor is the knowledge element of fraud satisfied by the complaint's conclusory statement that defendants 'knew that the . . . [r]epresentation[] [was] either false or at least highly speculative' because the allegation does not identify how" that knowledge was supposedly obtained). "For scienter to be attributed to [a corporation], Plaintiffs must sufficiently plead that at least one of [the corporation's] officers had the requisite scienter at the time they made the allegedly misleading statements." *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008). Plaintiffs' vague "collective scienter" allegations about what "United"

Gibson, Dunn & Crutcher LLP

11

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

1  supposedly said and intended—along with their failure to allege anything at all about the role of UBH,

2  the actual defendant in this case—still do not meet that standard.

3      Finally, even *if* Plaintiffs could identify representations that they would be reimbursed at a

4  percentage of "UCR," this vague description still would be insufficient.   As Plaintiffs readily

5  acknowledge in the Amended Complaint, there are a variety of definitions, methodologies, and rates

6  that can be used to pay "UCR."  *See, e.g.*, FAC ¶¶ 55, 86, 92, 100, 144, 149.  Nowhere in the Amended

7  Complaint do Plaintiffs allege that they or anyone else relied on any promise from UBH to pay 100%

8  of billed charges, to use a particular UCR rate or methodology, or to use any particular data source

9  (such as FAIRHealth) for the services at issue.  Without a specific representation that turned out to be

10  false or fraudulent, Plaintiffs' claims of a scheme to commit mail or wire fraud fail.  In sum, because

11  Plaintiffs' allegations are still not "specific enough to give [UBH] notice of the particular misconduct

12  which is alleged to constitute the fraud charged," they again fail as a matter of law and should be

13  dismissed with prejudice.  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

14              **4.      Plaintiffs Lack RICO Standing**

15      This Court previously found that Plaintiffs failed to satisfy RICO's standing requirements,

16  because they did not allege reliance on any fraudulent representations—and therefore failed to show

17  they suffered an injury to business or property "by reason of" mail or wire fraud.  Order at 18–19; *see*

18  *also* 18 U.S.C. § 1962(c); *id.* § 664; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).

19      In the Amended Complaint, Plaintiffs' allegations with respect to standing remain conclusory.

20  They assert that they were harmed "by reason of" RICO violations because "Defendants have

21  underpaid [their] . . . claims" (FAC ¶ 414), but it is not enough simply to assert that claims were

22  underpaid.  To establish the requisite causal link between an injury to business or property and UBH's

23  alleged predicate acts of racketeering, Plaintiffs needed to allege facts showing that they (or someone)

24  relied on specific acts of mail or wire fraud.  Order at 18–19; *see also Bridge v. Phoenix Bond & Indem.*

25  *Co.*, 553 U.S. 639, 658 (2008); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint*

26  *II*"), 903 F. Supp. 2d 880, 914–16 (C.D. Cal. 2012) (dismissing RICO claims because plaintiffs failed

27  to allege reliance on alleged mail or wire fraud related to UCR payments).  Plaintiffs failed to do so.

28

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

Plaintiffs still do not allege—and cannot allege—that they or anyone else took any steps *in reliance on* any of the communications discussed above, all of which were truthful, accurate communications that Plaintiffs did not receive until after they received the services at issue. Plaintiffs may disagree with the benefits calculations in their EOBs, but this, without more, fails to establish fraud, reliance, or causation under RICO.

Finally, Plaintiffs also lack RICO standing because they fail to allege a specific injury to business or property resulting from the alleged mail and wire fraud. Plaintiffs allege that they were "forced to enter into and make payments" for the unreimbursed amounts at issue (FAC ¶¶ 272, 309, 338, 367, 394), but these allegations cannot be reconciled with allegations by Summit Estate in the related case, *Pacific Recovery*, that it has not been paid for any of the services at issue. *See Pacific Recovery* FAC ¶ 349; *see also Pacific Recovery* Dkt. 1 ¶ 212 (allegations that Summit Estate "has not been paid the remaining 89% of the billed amounts owed to them" beyond the "11% of billed charges" they received based on "Viant's pricing").[5] Given these inconsistent allegations and the lack of specificity in Plaintiffs' Amended Complaint here, their RICO claims should again be dismissed.

**B.      Plaintiffs' Claims "Under The Terms Of" Their ERISA Plans Should Be Dismissed For Failure To State A Claim (Counts III and IV)**

This Court previously dismissed Plaintiffs' ERISA benefits claims because they failed to identify plan terms requiring payment of "UCR," and thus failed to state a claim for breach of plan terms based on alleged failure to pay "UCR." Order at 5. In the Amended Complaint, Plaintiffs now quote a few excerpts of their summary plan descriptions—a subset of the excerpts they previously objected to when UBH submitted them with its previous motion to dismiss. *See, e.g.*, FAC ¶ 248. But

---

[5] Summit Estate deleted this allegation from its Amended Complaint, but merely deleting previous allegations does not eliminate the problem, because Plaintiffs in this case are required to plead affirmative facts to support their standing—and they have not done so. Additionally, this Court may still consider the allegations in Summit Estate's original complaint, because an "amended complaint may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (citation omitted); *see also, e.g.*, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1180 (N.D. Cal. 2019) (plaintiff will "be held to the concessions in their [complaint]"); *Rattagan v. Uber Techs., Inc.*, 2020 WL 4818612, at *3 (N.D. Cal. Aug. 19, 2020) (entering sanctions against plaintiff for filing an "inaccurate and misleading" amended complaint in which plaintiff "deleted" the key allegation that had caused dismissal of the original complaint, and "worded the FAC so as to imply" the opposite premise).

Gibson, Dunn & Crutcher LLP

1    Plaintiffs merely pay lip service to the terms of their plans, and they still fail to plead any facts showing

2    a *violation* of these provisions.  Without any factual allegations showing a breach of plan terms, Counts

3    III and IV should be dismissed.

4          Throughout the Amended Complaint, Plaintiffs continue to assert incorrectly (as they did in the

5    original complaint) that UBH was required to pay "UCR" (or "usual, customary, and reasonable" rates)

6    for out-of-network IOP services (FAC ¶ 59), but instead reimbursed at less than 100% of their

7    provider's billed charges (*id.* ¶ 262).  But none of the health plans Plaintiffs quote in the Amended

8    Complaint say that services will be reimbursed at 100% of billed charges; to the contrary, they make

9    clear that is *not* the case.  Indeed, the health plans covering most of the services at issue do not even

10   include a promise to pay "UCR."  Instead, they provide coverage of "Eligible Expenses," which are

11   determined "based on available data resources of competitive fees in that geographic area."  *Id.* ¶ 248.

12   Only one of the plans, covering a small part of the services at issue for one of the five Plaintiffs, includes

13   a "UCR" standard—and this plan also makes clear that "UCR" is not equal to billed charges.  *Id.* ¶ 279.

14   And all of the plans state—in various provisions Plaintiffs attempt to ignore—that they do not cover a

15   provider's billed charges, and therefore members may need to pay balance bills.  *See supra* at 2–3

16   (summarizing provisions).

17         This disconnect dooms Counts III and IV, because the Amended Complaint is devoid of any

18   allegations showing why the rates paid by UBH failed to satisfy these plan terms—as opposed to the

19   many other "UCR" standards and methodologies discussed in the Amended Complaint, none of which

20   were promised in the actual plan terms.  Nowhere do Plaintiffs allege any facts showing that Viant's

21   database could not be used to calculate "Eligible Expenses" under the terms of these health benefits

22   plans—*i.e.*, that Viant's database was not an "available data resource[] of competitive fees" in the

23   relevant geographic area.  To the contrary, Plaintiffs allege that Viant's database was based on a

24   massive data file issued by the Centers for Medicare and Medicaid Services, which included a wide

25   spectrum of provider charges from a wide range of geographic areas.  FAC ¶¶ 201–208.  Additionally,

26   Plaintiffs do not even attempt to allege any facts about what "competitive fees" are for IOP services,

27   or how Summit Estate's billed charges—totaling more than $2,000 for each day that it provided

28   therapy—compare to "competitive fees" for these services.  In short, Plaintiffs do the bare minimum

Gibson, Dunn &
Crutcher LLP

14

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

by quoting a few excerpts of their summary plan descriptions, but then ignore their actual plan terms throughout the rest of their Amended Complaint.

For similar reasons, Plaintiffs' allegations about FAIRHealth fall flat. Plaintiffs go to great lengths to claim that the rates paid by UBH were less than the eightieth percentile of charges in FAIRHealth's database (FAC ¶ 262), but Plaintiffs acknowledge (as they must) that UBH was not required to use FAIRHealth to pay any of the claims at issue in the Amended Complaint. *Id.* ¶¶ 58, 110, 150, 152. Moreover, Plaintiffs do not allege (and cannot allege) that the eightieth percentile of providers' billed charges reported by FAIRHealth—*i.e.*, the top 20% of *billed* charges for services (as opposed to amounts actually paid)—has anything to do with what "competitive fees" are for the relevant services.

To state a claim under Section 502(a)(1)(B), it is not enough for Plaintiffs merely to identify plan terms; they need to allege facts showing a *violation* of those plan terms, and that there are "benefits due" under "the terms of" an ERISA plan. *See, e.g.*, *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 F. App'x 530, 530 (9th Cir. 2020) (affirming dismissal of Section 502(a)(1)(B) claim where plaintiff brought "generalized allegations" about plan breaches but did not identify "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay"). Because Plaintiffs fail to satisfy this threshold, their claim for benefits under Section 502(a)(1)(B) should again be dismissed.

**C.   Plaintiffs' Claims Under Section 502(a)(3) Should Also Be Dismissed (Counts V–VIII)**

This Court previously dismissed Plaintiffs' claims for "equitable" relief under Section 502(a)(3) for two reasons: first, because the alleged breach of fiduciary duties underlying these claims failed for the same reason already discussed above (*i.e.*, failure to identify plan terms that were violated) (Order at 8–9), and second, because Plaintiffs failed to plead any facts to support a distinct claim for equitable relief (*id.* at 12–13). In dismissing these counts, this Court explicitly directed Plaintiffs to address these flaws if they were going "to re-assert claims under 29 U.S.C. § 1132(a)(3) in the alternative in an amended complaint." *Id.* at 12.

Gibson, Dunn & Crutcher LLP

15

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

The Amended Complaint includes multiple counts under Section 502(a)(3), but it fails to cure these pleading failures. First, as described above, Plaintiffs still fail to allege facts showing a violation of any plan terms—including the provisions they now quote in the Amended Complaint. For the same reasons that Plaintiffs' claims for benefits fail, their fiduciary-breach claims do, too.

Second, Plaintiffs still fail to distinguish their claims under Section 502(a)(3) from their claims for benefits under Section 502(a)(1)(B). All of Plaintiffs' claims are legal, not equitable, in nature: Plaintiffs contend the claims at issue were underpaid, and they seek to recover monetary damages (*i.e.*, increased UCR payments) to remedy these alleged underpayments. *See, e.g.*, FAC ¶¶ 6–8. This is just as true in the Amended Complaint, and Plaintiffs' claims under Section 502(a)(3) (Counts V–VIII) are no different. These counts are generally devoid of any factual allegations, and they instead rely on generic incorporations-by-reference—*i.e.*, referring back to all of the same allegations through which Plaintiffs seek legal relief. And the few allegations Plaintiffs include in their equitable-relief counts show that they are based on the same core theory. In Count V, for example, Plaintiffs allege that "the UCR reimbursement does not actually reflect a true and accurate UCR." *Id*. ¶ 493. Plaintiffs advance essentially the same theory challenging UBH's "UCR" reimbursements in Counts VI (*see id*. ¶ 500), VII (*see id*. ¶ 508), and VIII (*see id*. ¶ 514). Under this Court's previous decision and the Ninth Circuit's controlling decision in *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019), Plaintiffs' Section 502(a)(3) claims should be dismissed.

Likewise, Plaintiffs' vague assertion that they seek "injunctive" relief in Counts V–VIII does not hold water, because it is well established that an injunction to pay damages is a claim for legal relief. "Almost invariably suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages'"—the "classic form of *legal* relief." *Depot*, 915 F.3d at 661 (quoting *Great-West*, 534 U.S. at 210); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("other appropriate equitable relief" language in § 1132(a)(3) precludes an award of compensatory damages).

Here, Plaintiffs do not even have Article III standing to seek an injunction, because all of their claims concern past services and reimbursements from 2018 and 2019, and they do not allege any facts to support a "real and immediate" threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95,

Gibson, Dunn & Crutcher LLP

16

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254

1   101–102 (1983) ("Abstract injury is not enough . . . and the injury or threat of injury must be both 'real

2   and immediate,' not 'conjectural' or 'hypothetical.'" (citations omitted)); *Thole v. U.S. Bank N.A.*, —

3   U.S.—, 2020 WL 2814294 (U.S. June 1, 2020) (holding that Article III's requirements apply with full

4   force to claims for statutory violations under Section 502(a)(3)).

5         Similarly, Plaintiffs' vague assertion in Count VIII that they "are entitled to appropriate

6   equitable relief" (FAC ¶ 525), without explaining what this "appropriate equitable relief" would be and

7   why, fails to support a claim under Section 502(a)(3).  For reasons that were addressed more fully in

8   the previous motion-to-dismiss briefing, and that Plaintiffs failed to rebut (or address in any way in the

9   Amended Complaint), they cannot state a claim for restitution, disgorgement, or surcharge.  Dkt. 34 at

10  18-24; *see also Armijo v. ILWU-PMA Welfare Plan*, 2015 WL 13629562, at *13 (C.D. Cal. Aug. 21,

11  2015); *Ihde v. United of Omaha Life Ins. Co.*, 2017 WL 5444551, at *8 (D. Colo. Nov. 14, 2017).  To

12  the extent Plaintiffs are attempting to seek any of these forms of relief here, through their generic

13  reference to "appropriate equitable relief," these claims fail for the same reasons.

14        Finally, in an apparent attempt to bolster a claim under Section 502(a)(3), Plaintiffs assert a

15  violation of a separate ERISA statutory provision, Section 503, 29 U.S.C. § 1133, which requires "full

16  and fair" review of coverage denials.  But this Court already rejected this claim (*see* Order at 9–11),

17  and there is nothing in the Amended Complaint that warrants changing this conclusion.  Plaintiffs

18  continue to make vague assertions about lack of required disclosures, and they also allege again that

19  they "were denied the opportunity to properly appeal."  FAC ¶¶ 500, 502.  But as this Court previously

20  found, "[t]he EOBs clearly state the amounts that United would reimburse and any remaining amounts

21  that plaintiffs would owe to Summit Estate, and that plaintiffs could appeal such reimbursement

22  determinations."  Order at 10; *see also* Dkt. 35-2, Exs. 4–8 (EOBs attached as exhibits to previous

23  motion to dismiss).  And Plaintiffs have added no new allegations to support any claim for a violation

24  of Section 503, or any other ERISA disclosure provision.[6]  For the same reasons, therefore, this claim

25  still fails.

26

27

28

---

[6]  Plaintiffs no longer are asserting, and therefore have abandoned, their other ERISA disclosure claim
from the original complaint under Section 502(c)(1) and various other ERISA disclosure
provisions, which this Court previously dismissed.  *See* Order at 6–8.

Gibson, Dunn &
Crutcher LLP

1

## VI.    CONCLUSION

2          For the reasons set forth more fully above, Plaintiffs' Amended Complaint should be dismissed

3 in its entirety.   Because further leave to amend would be futile, UBH respectfully requests that the

4 Court dismiss the case with prejudice.

5

6    Dated: October 30, 2020                          Respectfully submitted,

7                                                      GIBSON, DUNN & CRUTCHER LLP

8
                                                       /s/ *Geoffrey Sigler*
9                                                      Geoffrey Sigler

10                                                     Attorney for Defendant
                                                       UNITED BEHAVIORAL HEALTH
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02254