1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

**LD, ET AL.,**

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH, ET AL.,**

Defendants.

CASE NO.  4:20-cv-02254 YGR

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. Nos. 65, 66

Plaintiffs[1] bring this putative class action against defendants United Behavioral Health ("United") and MultiPlan, Inc. ("MultiPlan") for claims arising out of United's alleged failure to reimburse their claims for Intensive Outpatient Program ("IOP") services at the Usual, Customary, and Reasonable Rate ("UCR") that non-party Summit Estate, Inc. provided to plaintiffs.  Plaintiffs allege that defendants' conduct caused them injury, because it forced them to pay any amounts that United failed to reimburse for the IOP services.  The Court dismissed a prior iteration of the complaint in its entirety, with leave to amend.  Plaintiffs filed a First Amended Complaint ("FAC"), in which they assert, on their own behalf and on behalf of a proposed class of similarly-situated subscribers of insurance policies administered by United, claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Now pending are two motions to dismiss all claims in the FAC under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) all of the claims in the FAC continue to be inadequately pleaded; and (2) plaintiffs lack RICO standing.

---

[1] Plaintiffs are LD, DB, BW, RH, and CJ.  FAC ¶ 1.  Plaintiffs have used pseudonyms to protect the confidentiality of their identity pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  FAC ¶¶ 33-37.

Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **GRANTS** MultiPlan's motion to dismiss **WITH LEAVE TO AMEND** with respect to the claim under RICO Section 1962(c) asserted against it.  The Court **GRANTS** United's motion to dismiss plaintiffs' claim for violations of 29 U.S.C. § 1133 **WITH PREJUDICE**.  The Court otherwise **DENIES** defendants' motions to dismiss.[2]

## I.   BACKGROUND

### A.   Initial Complaint

In the initial complaint, plaintiffs alleged as follows:

Plaintiffs are members of active health insurance policies administered by United.  Compl. ¶ 2, Docket No. 1.  Every such policy "provided coverage for out-of-network benefits for mental health and substance use disorder treatment at usual, customary, or reasonable rates."  *Id.* ¶ 6.  United describes UCR rates on its website as being "based on what other health care professionals in the relevant geographic areas or regions charge for their services."  *Id.* ¶ 8.

Before obtaining IOP services from Summit Estate, an out-of-network provider, plaintiffs signed a contract with Summit Estate that makes them "responsible for amounts not paid by United."  *Id.* ¶ 27.  Summit Estate contacted United to verify out-of-network benefits and United represented during these calls ("VOB calls") that the IOP services in question would be paid "at UCR rates" and that the claims for such services "were not subject to third-party repricing by Viant."  *Id.* ¶ 26.  Based on the "plain language" of the plans, "it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate."  *Id.* ¶¶ 174, 187, 200, 212, 224.  United "through plan documents, marketing materials, EOBs, and other materials" represented to plaintiffs that their plans would pay for out-of-network IOP services "at the UCR amount according to an objective, empirical methodology."  *Id.* ¶ 104.

After receiving the IOP services, claims were submitted to United for payment according to the "out-of-network rate."  *Id.* ¶ 8.  Instead of "paying UCR," United engaged defendant Viant

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.  Accordingly, the Court VACATES the hearing set for December 22, 2020.

United States District Court
Northern District of California

United States District Court
Northern District of California

to "negotiate" reimbursements. *Id.* ¶ 18. Viant has "financial incentives" to negotiate low reimbursements. *Id.* ¶¶ 40, 46. Viant's negotiations resulted in offers to Summit Estate to reimburse for IOP services at an amount below the UCR, and United paid the plaintiffs' claims at the reduced Viant amount. *Id.* ¶¶ 36-38. Neither United nor Viant disclosed to plaintiffs the methodology they used for calculating the reimbursement rates for IOP services. *Id.* ¶¶ 44, 127.

No plaintiff has an agreement with Viant that permits Viant to negotiate with providers on his or her behalf. *Id.* ¶ 34. Yet, Viant represented "through written and oral correspondence" that it had authority to negotiate with providers on the patients' behalf. *Id.* ¶ 51.

"Every claim at issue in this litigation has been underpaid by United and overpaid or currently owed by the Plaintiffs and the Class." *Id.* ¶ 79. "United's underpayment of the claims at issue here resulted in unduly large balance bills to Plaintiffs." *Id.* ¶ 99.

The Explanation of Benefits ("EOB") letters sent to plaintiffs do not state that Viant's repricing is permitted under the plaintiffs' plans and that the repriced amount negotiated by Viant is consistent with plan terms. *Id.* ¶ 53. The EOBs also do not state that the repriced amount is an "adverse benefit determination" that plaintiffs have the right to appeal. *Id.* Accordingly, plaintiffs did not have the opportunity to appeal the "underpayment[s]." *Id.* ¶ 56.

Plaintiffs allege that United and other insurers were required as part of the settlement of an unrelated litigation ("*Ingenix* litigation") to underwrite the creation of a database called the "FAIR health" database, which contains rates for the reimbursement for IOP treatment. *Id.* ¶ 20. Nonetheless, United and the other insurers were *not* required by the *Ingenix* litigation settlement to use the FAIR health database. *Id.*

Plaintiffs bring the action on their own behalf and on behalf of a proposed class of members "of a health benefit plan either administered or insured by United" whose claims for out-of-network IOP services "were underpaid or repriced by United and Viant," *id.* ¶ 233: a claim against (1) both defendants under RICO, 18 U.S.C. § 1962(c); (2) United for underpaid benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); (3) United for breach of plan provisions under ERISA, 29 U.S.C. § 1132(a)(1)(B); (4) United for ERISA disclosure violations under 29 U.S.C. § 1132(c)(1); (5) United for breach of fiduciary duties under 29 U.S.C. § 1109 and 29 U.S.C. §

1   1132(a)(3); (6) United for violations of ERISA's full and fair review statute, 29 U.S.C. § 1133;

2   and (7) two claims against both defendants for equitable relief under 29 U.S.C. § 1132(a)(3).

3          On August 26, 2020, the Court granted defendants' motions to dismiss all claims in the

4   initial complaint, and it did so with leave to amend.  Docket No. 55.

5          **B.      FAC**

6          The FAC differs from the initial complaint in the following ways: (1) plaintiffs modified

7   some of their allegations, as described in more detail below; (2) plaintiffs substituted MultiPlan for

8   Viant as a defendant; (3) plaintiffs added a claim for conspiracy in violation of RICO, 18 U.S.C. §

9   1962(d), against both defendants; (4) plaintiffs removed "Federal Health offenses" as the predicate

10  offenses for their RICO claims; and (5) plaintiffs abandoned their claim under ERISA Section

11  502(c)(1), 29 U.S.C. § 1132(c)(1), for failure to comply with ERISA's disclosure and notice

12  obligations.  FAC, Docket No. 57.

13         First, the FAC describes the terms of the plans that defendants allegedly breached when

14  they allegedly under-reimbursed the claims for IOP services at issue.  The plan terms allegedly

15  require United to reimburse claims "based on available data resources of competitive fees in that

16  geographic area" or "based on UCR rates" in the case of named plaintiff DB.  *Id.* ¶¶ 248-279.

17  These plan terms allegedly required United to rely on actual customary rates of similar IOP-

18  services providers in the relevant geographic region.  *Id.*

19         Second, the FAC better explains defendants' alleged scheme to under-reimburse the claims

20  for IOP services at issue.  That is, prior to obtaining the IOP services at issue, plaintiffs' provider,

21  Summit Estate, called United to verify that they had plan coverage; during these calls, United's

22  representatives fraudulently represented to Summit Estate that United would pay for the out-of-

23  network IOP services at issue at 100% of the UCR rate after plaintiffs had satisfied their

24  deductibles and co-pays.  *See id.* ¶¶ 255, 291, 322, 351, 378.  During these calls, the United

25  representatives also stated that "UCR would be paid based on the 80th percentile of charges for

26  similar services in the geographic area."  *Id.*   Plaintiffs allege that these statements were

27

28

United States District Court
Northern District of California

fraudulent because United did not, in fact, reimburse the IOP-services claims at issue based on the UCR. *Id.*

Next, plaintiffs modified their allegations with respect to the process that United allegedly used to calculate the reimbursements for the claims for IOP services at issue, namely, United and MultiPlan collaborated and conspired to calculate the reimbursements based on Viant's pricing tool ("Viant Outpatient Review," "Viant OPR," or "FRED"), which employs "a flawed, proprietary database of healthcare claims data that is wholly unrepresentative of amounts actually charged by or paid to similar medical providers in Plaintiffs' surrounding area." *Id.* ¶¶ 159-60, 198. As a result, Viant's database generates "fraudulently low payment amounts" relative to the reimbursement amounts that would have been generated if United and MultiPlan instead had relied on the actual customary rates of IOP-services providers in the relevant geographic area, as the plans require. *Id.* ¶¶ 176-79. "The profit or 'margin' from this underpayment was shared by United and MultiPlan." *Id.* ¶ 270.

Once Viant's database and pricing tool generated a rate with respect to a particular claim for IOP services, MultiPlan "returned the rate information to United . . . and United or its subsidiary then issued under-payment to the Plaintiffs' providers for their claims at the rate 'derived' from the Viant methodology." *Id.* ¶ 211. The rates generated through Viant's database and pricing tool were fraudulent because MultiPlan represented them as being consistent with the rates of similar IOP providers in the relevant geographic area. *Id.* ¶ 207. United also represented these rates as "comparable to, and based on, what similar providers in in the same geographic area charged or accepted for the same or similar services." *Id.* ¶ 212. Defendants intended the Viant database and pricing tool to "provide the appearance of legitimacy and offer cover for the fraudulent underpayment of IOP claims."[3] *Id.* ¶ 213.

After United under-reimbursed plaintiffs' claims, plaintiffs allegedly received EOBs from United which they claim are misleading because the EOBs did not explain that United's

---

[3] By contrast, in the initial complaint, plaintiffs alleged that United had engaged Viant to negotiate reimbursements with Summit Estate; that Viant's negotiations with Summit Estate resulted in offers to reimburse the claims for IOP services at an amount below the UCR; and that United paid plaintiffs' claims for IOP services at the reduced Viant amount.

United States District Court
Northern District of California

reimbursements had been based on a methodology inconsistent with the plans' requirements. *Id.* ¶¶ 263, 64. Further, United omitted information from these communications about the methodology it used to prevent plaintiffs from discovering that United had not complied with the plans' terms when reimbursing the claims, and to prevent plaintiffs from disputing the reimbursements. *Id.* ¶ 264.

Plaintiffs also now allege that United and Viant (MultiPlan's "wholly owned subsidiary") sent them Patient Advocacy Department ("PAD") letters that plaintiffs allege are misleading because they do not explain that United's reimbursements for the IOP claims at issue were not performed in accordance with the plans' terms. *Id.* ¶¶ 396-411.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). A court should grant leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III.   DISCUSSION

As noted, defendants move to dismiss all claims in the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) all of the claims in the complaint continue to be

United States District Court
Northern District of California

United States District Court
Northern District of California

1    inadequately pleaded; and (2) plaintiffs lack RICO standing. The Court addresses these arguments

2    in turn.

3

4        **A.     ERISA**

5            **1.     Breach of Plan Terms (Count III and Count IV)**

6            Under Section 502(a)(1)(B), an ERISA plan participant or beneficiary may bring an action

7    "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

8    the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §

9    1132(a)(1)(B).  To state a claim under Section 502(a)(1)(B), "a plaintiff must allege facts that

10   establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to

11   benefits."  *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110,

12   1155 (C.D. Cal. 2015) (citation and internal quotation marks omitted).

13           Plaintiffs assert two claims under Section 502(a)(1)(B) against United, one for "underpaid

14   benefits," and another for breach of the "plan provisions."  FAC ¶¶ 463-82.  Both claims are

15   predicated on the theory that United underpaid plaintiffs' claims for out-of-network IOP services

16   in contravention of the terms of plaintiffs' plans.  Plaintiffs seek underpaid benefits as relief for

17   both claims.

18           The Court dismissed these claims in its order of August 26, 2020, on the ground that

19   plaintiffs had failed to identify the terms of the plans that United allegedly breached.  Order at 4-6,

20   Docket No. 55.  In the FAC, plaintiffs allege that the plan provisions that United allegedly

21   breached with respect to all but one of the named plaintiffs are the following:

22           "When Covered Health Services are provided by an out-of-network provider, Eligible

23   Expenses are determined, based on . . . Negotiated Rates agreed to by the out-of-network provider

24   and either UHC or one of UHC's vendors, affiliates or subcontractors, at UHC's discretion."  FAC

25   ¶ 248.  "If rates have not been negotiated, then . . . [f]or Covered Health Services other than

26   Pharmaceutical Products, Eligible Expenses are determined *based on available data resources of*

27   *competitive fees in that geographic area*."  *Id.* (emphasis supplied)  The plan terms further

28   provide, "When you receive care through an out-of-network provider, the plan pays 70 percent of

7

1    Eligible Expenses after the out-of-network deductible is met." *Id.* ¶ 251.  After the annual out-of-

2    pocket maximum is met, "the plan pays 100 percent of eligible costs." *Id.* ¶ 253.

3            Plaintiff DB had two plans.  The first of his plans is consistent with the plan terms

4    described above.  His second plan from 2018 provides, "Whenever you use out-of-network

5    providers, the percentage of benefits paid will *be based on UCR rates*.  For example, if a provider

6    bills you more than what UnitedHealthcare (UHC) or MetLife determines is usual, customary, and

7    reasonable, you pay the difference." *Id.* ¶ 279 (emphasis added).  "UCR stands for the usual,

8    customary, and reasonable rates for health care services provided in your geographic region.

9    Apple's health plan administrators review and establish these 'going rates.'" *Id.*

10           United moves to dismiss these claims on the ground that plaintiffs have failed to plead a

11   violation of the plan terms alleged in the FAC.[4]  The Court disagrees.  Plaintiffs allege that,

12   pursuant to their plans, United was required to reimburse the claims for out-of-network IOP

13   services at issue "based on available data resources of competitive fees in that geographic area" or

14   "based on UCR rates" in the case of named plaintiff DB.  *Id.*  Instead of reimbursing the claims

15   according to the plans, United allegedly reimbursed them based on rates generated through Viant's

16   pricing tool, which employs "a flawed, proprietary database of healthcare claims data that is

17   wholly unrepresentative of amounts actually charged by or paid to similar medical providers in

18   Plaintiffs' surrounding area." *Id.* ¶¶ 159-60, 198.

19           Plaintiffs aver sufficient factual matter in the FAC to raise the inference that Viant's

20   database and pricing tool did not generate rates that are consistent with the plans' requirements.

21   Viant's database and pricing tool allegedly relied on data collected from Medicare Part B

22   providers and services, which plaintiffs allege are not representative of the IOP services market for

23

24           [4] Defendants also argue that these claims are subject to dismissal because plaintiffs have
     failed to identify adequately the plan terms that United allegedly breached.  Reply at 9, Docket
25   No. 72.  Defendants argue that the Court cannot consider the plan terms alleged in the FAC
     because they are derived from summary plan documents, and because plaintiffs stated in their
26   opposition that summary plan documents do not actually reflect plan terms.  The Court is not
     persuaded by this argument.  Plaintiffs do not allege in the FAC that the terms they describe in that
27   pleading are derived from summary plan documents instead of the plans themselves.  Further, for
     the purpose of resolving the present motions, the Court must accept nonconclusory allegations,
28   including the plan terms alleged in the FAC, as true.

patients who have commercial insurance instead of Medicare. *Id.* ¶ 164-66. Viant's database and pricing tool also relied on nationwide data that does not reflect the nuances of each geographic location. *Id.* ¶ 165. Further, Viant's database and pricing tool did not rely on actual rates for IOP services such as the ones at issue here because Medicare does not cover such services. Instead, Viant's database and pricing tool "crosswalk," or estimate, the rates for IOP services based on the rates of other services that are not sufficiently similar to IOP services. *Id.* ¶ 171-72. As a result of these deficiencies, Viant's database and pricing tool generate "fraudulently low payment amounts" relative to the reimbursement amounts that would have been generated if United and MultiPlan had relied upon actual customary fees of similar IOP-services providers in the relevant geographic area, as the plans require. *Id.* ¶¶ 176-79.

These allegations raise the inference that benefits are due to plaintiffs under the terms of their plans. The allegations allow the Court to infer that United employed a methodology that resulted in reimbursement amounts that were lower than they would have been had United calculated the reimbursement amounts "based on available data resources of competitive fees in that geographic area," or "based on UCR" rates in the case of named plaintiff DB, as required by the plans.[5] *Id.* Plaintiffs' allegations, therefore, are sufficient to state a claim under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for underpaid benefits and for breach of the plan terms.

United has not shown that a different conclusion is warranted at this juncture. The relied-upon authorities are distinguishable. In those cases, and unlike here, the plaintiff did not identify the plan terms that the defendant allegedly breached and, for that reason, the court could not infer that the defendant had breached any plan terms. *See Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 F. App'x 530, 530 (9th Cir. 2020) (unpublished) (affirming dismissal of Section 502(a)(1)(B) claim where plaintiff brought "generalized allegations" about plan breaches but did not identify "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay"); *Almont Ambulatory Surgery Ctr. v. UnitedHealth Grp.*, 99 F. Supp. 3d 1110, 1158-59 (C.D. Cal. 2015) (dismissing claim under Section 502(a)(1)(B) because plaintiffs did not

---

[5] Plaintiffs allege that their use of the term "UCR" in the complaint encompasses both of these definitions. FAC ¶ 55.

allege facts showing that "the specific services . . . provided to the patients at issue were covered under the terms of the relevant plans or describe the plan terms that would support such coverage").

Accordingly, the Court **DENIES** United's motion to dismiss these claims.

### 2. Breach of Fiduciary Duties and Requests for Equitable Relief (Count V, Count VII, Count VII)

Under 29 U.S.C. § 1132(a)(3), a participant, beneficiary, or fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

A fiduciary can be held liable for breaches of any of the "responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA]." 29 U.S.C. § 1109(a). Under 29 U.S.C. § 1104(a)(l)(B) and (D), respectively, a fiduciary is required to discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries (1) with the care, skill, prudence, and diligence under the circumstances then prevailing, and (2) in accordance with the documents and instruments governing the plan. A plaintiff suing for violations of 29 U.S.C. § 1104(a) can seek relief that applies only to an individual participant, as opposed to plan-wide relief, if it brings the claim under 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 509-12 (1996).

Plaintiffs bring a claim for breach of fiduciary duties against United and seek various forms of equitable relief against both defendants under 29 U.S.C. § 1132(a)(3). These claims are based on allegations that United violated 29 U.S.C. § 1104(a)(l)(B) and (D) by (1) under-reimbursing the claims for IOP services at issue in violation of the plan terms and by doing so for its own financial benefit and at plaintiffs' expense; and (2) failing to inform plaintiffs in the EOBs that it sent them that it had used a methodology for reimbursing claims that was not consistent with the plan terms. FAC ¶¶ 483-96.

Defendants seek dismissal on the grounds that plaintiffs (1) failed to allege facts showing that United violated any plan terms; (2) lack Article III standing to seek an injunction; and (3) have failed to allege facts showing that the relief they seek under 29 U.S.C. § 1132(a)(3) is legal,

United States District Court
Northern District of California

United States District Court
Northern District of California

and not equitable, in nature, even if Article III standing exists. MultiPlan also argues that these claims fail insofar as they are asserted against it because the FAC lacks allegations showing that MultiPlan is a fiduciary within the meaning of 29 U.S.C. § 1104(a).[6]

Defendants' first argument relating to the "plan terms" allegations fails for the same reasons discussed in the preceding section of this order. Plaintiffs' allegations raise the inference that United violated the terms of plaintiffs' plans.

Next, with respect to Article III standing, to have such standing for "injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way." *Id.* (internal citations and quotation marks omitted). Defendants contend that plaintiffs lack standing "because all of their claims concern past services and reimbursements from 2018 and 2019, and they do not allege any facts to support a 'real and immediate' threat of future injury." Opp'n 16-17, Docket No. 66.

Here, plaintiffs allege that "Plaintiffs and the Class have been harmed, and are likely to be harmed in the future, by Defendants' actions and are entitled to appropriate equitable relief." FAC ¶ 525; *see also* FAC ¶ 20 ("Without Court intervention, [defendants'] scheme will continue and continue to cause damage."). These allegations, which are not subject to the pleading standards of *Iqbal* and *Twombly*, are sufficient for the Court to infer at this juncture that plaintiffs have standing to seek injunctive relief given that the nature of the harm is ongoing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067-68 (9th Cir. 2011) (holding that *Twombly* and *Iqbal* do not apply when determining whether a plaintiff has Article III standing, as "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim[.]").

_____

[6] United does not dispute that plaintiffs have adequately alleged that it is a fiduciary within the meaning of 29 U.S.C. § 1104(a).

Finally, as to the nature of the relief sought, "[t]o qualify as equitable relief, both (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought must be equitable rather than legal." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019) (citation and internal quotation marks omitted).

Here, plaintiffs allege that United, with the ultimate goal of furthering its own financial self-interest, breached its fiduciary duties by covertly using the Viant database and pricing tool to under-reimburse claims for the IOP services at issue and by not disclosing to plaintiffs in EOBs that it had done so. FAC ¶¶ 483-96. Plaintiffs seek an injunction removing United as fiduciary, *id.* ¶ 496; requiring United to reprocess the claims for IOP benefits at issue using the correct methodology, *id.* at 78 ¶ 12; and surcharge and disgorgement of any profits gained through the alleged under-reimbursement of claims, *id.* at 79 ¶ 15.[7] These allegations, which raise the inference that United breached its fiduciary duties in the pursuit of its own financial self-interest in violation of 29 U.S.C. § 1104(a)(l)(B) and (D), are sufficient for the Court to find that the basis of plaintiffs' breach of fiduciary claim and requests for equitable relief are equitable in nature. Indeed, "equitable remedies such as surcharge, disgorgement, or accounting for profits 'may be available if the defendant owed a fiduciary duty to the plaintiff and breached that duty.'" *See Amy F. v. California Physicians' Serv.*, No. 19-CV-6078 YGR, 2020 WL 2850282, at *3 (N.D. Cal. June 2, 2020) (quoting *Depot*, 915 F.3d at 664 & n.15); *see also Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1008-09 (8th Cir. 2004) ("Under traditional rules of equity, a defendant who owes a fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching that duty, even if the defendant's breach was simply a failure to perform its obligations under a contract."); *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011) (surcharge "is an equitable remedy 'in the form of monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment"); *cf. Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255

---

[7] Plaintiffs argue in their briefs that they also seek reformation of the plan terms. Opp'n at 21, Docket No. 69. Because plaintiffs do not request reformation of the plan terms in the FAC, the Court does not consider reformation of the plan terms in resolving United's motion to dismiss.

1    (1993) (holding that a request for money damages brought by a plaintiff against a *nonfiduciary*

2    was legal, not equitable, in nature).

3           Defendants argue that a claim for equitable relief cannot be predicated on the "very same

4    injury (the alleged underpayment of benefits)" as a claim under 29 U.S.C. § 1132(a)(1)(B).  This

5    argument is unavailing.  A plaintiff can pursue remedies under both Sections 1132(a)(1)(B) and

6    1132(a)(3) in the alternative based on the same allegations.  See *Amara*, 563 U.S. at 439-41.  In a

7    case involving an alleged "material lack of disclosure" by a fiduciary, the Ninth Circuit reaffirmed

8    this principle by holding that "allowing plaintiffs to seek relief under both Sections 1132(a)(1)(B)

9    and 1132(a)(3) is consistent with ERISA's intended purpose of protecting participants' and

10   beneficiaries' interests."  *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016),

11   *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016).

12          Defendants do not address *Amara* in their briefs, and their attempt to distinguish *Moyle*

13   on the basis that plaintiffs "identify no misleading communications" does not persuade.  As noted,

14   plaintiffs have alleged that the EOBs they received were misleading because they did not disclose

15   that United had used a methodology for reimbursing the claims that was inconsistent with the

16   plans' terms.  Defendants' reliance on *Ihde v. United of Omaha Life Ins. Co.*, No. 17-CV-00847-

17   RM-NYW, 2017 WL 5444551, at *8 (D. Colo. Nov. 14, 2017) is distinguishable.  In *Ihdhe*, the

18   court held that the plaintiff could not plead a claim for equitable relief under Section 1132(a)(3) as

19   an alternative to a claim under Section 1132(a)(1)(B) because the complaint there, unlike the FAC

20   here, "contain[ed] no allegation" that would support a claim for breach of fiduciary other than the

21   denial of benefits itself, such a "material lack of disclosure" by the fiduciary.  *Id.*  Further, the

22   plaintiff in *Ihde*, unlike plaintiffs here, did not request in the complaint an equitable remedy, such

23   as a surcharge.  *Id.* Thus, under both *Amara* and *Moyle*, plaintiffs here can seek relief under both

24   Sections 1132(a)(1)(B) and 1132(a)(3) in the alternative.

25          Defendants' last argument on this issue seeks dismissal on the grounds that plaintiffs have

26   alleged no facts to raise the inference that MultiPlan is a fiduciary.  The Supreme Court has held

27   that a participant, beneficiary, or fiduciary can bring a civil action under 29 U.S.C. § 1132(a)(3)

28   against a defendant based on the defendant's "knowing participation in" a breach of fiduciary

13

responsibilities, even if the defendant was not a fiduciary itself or was not otherwise "expressly subject to a duty under one of ERISA's substantive provisions." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247-48 (2000) (rejecting the argument that 29 U.S.C. § 1132(a)(3) "authorizes suits only against defendants upon whom a duty is imposed by ERISA's substantive provisions"); *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011) (noting that, in *Harris*, the Supreme "Court rejected the suggestion that there was a limitation contained within § 1132(a)(3) itself on who could be a proper defendant in a lawsuit under that subsection"). MultiPlan's reliance on several non-binding authorities[8] for the proposition that a *non*-fiduciary "does not subject itself to liability simply by participating in a breach of trust by fiduciaries" is misplaced. Those authorities directly contradict the Supreme Court's holding in *Harris* that a participant, beneficiary, or fiduciary can bring a civil action under 29 U.S.C. § 1132(a)(3) against a non-fiduciary based on the non-fiduciary's "knowing participation in" a breach of fiduciary responsibilities. *See Harris*, 530 U.S. at 247-48.

Here, plaintiffs have alleged sufficient facts to raise the inference that MultiPlan knowingly participated in United's alleged breach of its fiduciary duties (1) by collaborating with United to develop and operate a database and pricing tool that generated the lowest possible reimbursement rates notwithstanding the requirements of the plans, which required the consideration of the customary rates of similar IOP-services providers in the geographic region; and (2) by sending PAD letters to plaintiffs that did not disclose that the methodology used to reimburse the IOP services claims at issue was not consistent with plan requirements. *See, e.g.*, FAC ¶¶ 176-213, 75-83, 223, 224. These allegations are sufficient to enable plaintiffs to seek equitable relief against MultiPlan under Section 1132(a)(3).

Accordingly, the Court **DENIES** defendants' motions to dismiss plaintiffs' claim for breach of fiduciary duties against United and requests for equitable relief against both defendants.

---

[8] The non-binding authorities on which MultiPlan relies, *see* Mot. at 15-17, Docket No. 65, do not take into account the holding in *Harris* and rely instead on other authorities that do not consider claims under § 1132(a)(3) in the context of non-fiduciaries.

### 3.      Full and Fair Review (Count VI)

Under 29 U.S.C. § 1133, a benefit plan must provide notice and an opportunity to appeal when a participant's "claim for benefits under the plan has been denied."  29 U.S.C. § 1133. Under 29 C.F.R. § 2560.503-1(h), a plan is required to establish a procedure for providing a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan.  An adverse determination includes, in relevant part, a "denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit[.]"  29 C.F.R. § 2560.503-1(m)(4)(i).  Under 29 C.F.R. § 2560.503-1(g), the plan administrator is required to provide a claimant with written or electronic notification of any adverse benefit determination.

Plaintiffs assert a claim against United for violations of 29 U.S.C. § 1133.  In the initial complaint, this claim was predicated on allegations that United denied plaintiffs the opportunity to appeal the "underpaid claims" at issue, which plaintiffs alleged were adverse benefit determinations.  Compl. ¶¶ 332-35.  Plaintiffs also alleged that the EOBs they received from United did not state that the "underpaid claims" were "an adverse benefit determination that the patient has the right to appeal."  *Id.* ¶ 53.

In its order of August 26, 2020, the Court considered the EOBs at issue under the incorporation-by-reference doctrine and dismissed plaintiffs' Section 1133 claim with leave to amend on the following grounds:

> [T]he EOBs appear to directly contradict plaintiffs' allegations that such documents failed to inform them of the reimbursement determinations at issue or of their right to appeal such determinations.  *See* Nguyen Decl., Ex. 4-8, Docket No. 35-2.  The EOBs clearly state the amounts that United would reimburse and any remaining amounts that the plaintiffs would owe to Summit Estate, and that plaintiffs could appeal such reimbursement determinations.  *Id.*  The Court is not required to accept as true allegations that are contradicted by exhibits incorporated into the complaint by reference, as the EOBs are here.  *Agua Caliente Band of Cahuilla Indians v. Riverside Cty.*, 181 F. Supp. 3d 725, 732 (C.D. Cal. 2016) ("A court must construe the factual allegations in the pleadings in the light most favorable to the non-moving party, but it need not accept as true conclusory allegations that are contradicted by matters properly subject to judicial notice or by exhibits incorporated into the complaint by reference.").  Accordingly, plaintiffs' claim for violations of 29 U.S.C. § 1133 is

> subject to dismissal to the extent that it is predicated on allegations that the EOBs that plaintiffs received failed to inform them of the reimbursements at issue or of their right to appeal.
>
> Plaintiffs' claim for violations of 29 U.S.C. § 1133 is also subject to dismissal to the extent that it is based on the theory that the EOBs were required, but failed, to state the words "adverse benefit determination," as plaintiffs have cited no authority to support that proposition.

Order at 10-11, Docket No. 55.

In the FAC, plaintiffs deleted the references to the EOBs with respect to their Section 1133 claim and now allege, conclusorily, that United violated Section 1133 because it "failed to provide reasonable claims procedures, and failed to make necessary disclosures to its members." FAC ¶ 501. Plaintiffs do not aver any factual matter describing how United allegedly violated Section 1133 consistent with these conclusory allegations.

United moves to dismiss this claim on the ground that the Court previously dismissed this claim on the basis that the EOBs that the Court previously considered provided plaintiffs with notice of the amounts that United would reimburse, the amounts plaintiffs would owe to Summit Estate, and plaintiffs' right to appeal United's determinations. United further argues that plaintiffs have not added any new factual matter to the FAC that would warrant a different result.

The Court agrees. The FAC is devoid of factual matter from which the Court could reasonably infer that United failed to provide plaintiffs with the procedures, disclosures, or appellate procedures required under ERISA. In their opposition, plaintiffs do not address United's motion to dismiss this claim, implicitly conceding that it is subject to dismissal.

Accordingly, the Court **GRANTS** United's motion to dismiss plaintiffs' claim under Section 1133, **WITH PREJUDICE**.

**B.     RICO (Count I and Count II)**

Defendants move to dismiss plaintiffs' RICO claims on the grounds that plaintiffs lack RICO standing and their allegations fail to satisfy any of the elements for a violation of RICO under Section 1962(c). Defendants also argue that, because plaintiffs' Section 1962(c) claim fails, then so does their claim for RICO conspiracy under Section 1962(d). Section 1962(c) of RICO provides, "It shall be unlawful for any person employed by or associated with any enterprise . . . to

16

1   conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

2   pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Section

3   1962(d) of RICO provides, "It shall be unlawful for any person to conspire to violate any of the

4   provisions of subsection (a), (b), or (c) of this section."

5       Plaintiffs allege that defendants violated RICO Sections 1962(c) and 1962(d) by

6   committing the predicate offenses of wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341

7   and 1343.  These claims are premised on the following allegations:

8       United and MultiPlan conspired to develop and use a database and pricing tool that would

9   generate the lowest possible reimbursement rates for the out-of-network IOP services at issue,

10  which employed data that did not represent the customary rates of similar IOP providers in the

11  geographic area as required by plaintiffs' plans.  *See* FAC ¶¶ 110-421.  Defendants engaged in this

12  scheme for the purpose of keeping the difference between the artificially low amounts that United

13  reimbursed for the IOP claims at issue and the amount at which the claims should have been

14  reimbursed if the plan requirements had actually been followed by defendants in reimbursing the

15  claims.  *Id.*  Defendants allegedly sent various forms of communication to plaintiffs as part of the

16  scheme, such as VOB calls, EOBs, and PAD letters, which were misleading because they did not

17  disclose that defendants had not or would not use a methodology for reimbursing the claims for

18  IOP services at issue that was consistent with the plan requirements.  *Id.*  Plaintiffs were injured by

19  this alleged scheme because they were forced to pay the difference between the billed amount for

20  the IOP services and the artificially low amounts that United reimbursed.  *Id.*  Plaintiffs further

21  allege that the billed amounts for the IOP services they received were *lower* than the customary

22  rates of similar IOP providers in the geographic region; because their plans required

23  reimbursement of out-of-network IOP services based on the customary rates of similar IOP

24  providers in the geographic region, their plans should have covered most, if not all, of the billed

25  amounts.  *Id.*

26          **1.      Standing**

27      "To allege civil RICO standing under 18 U.S.C. § 1964(c), a plaintiff must show: (1) that

28  his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by

reason of' the RICO violation." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019), *cert. denied*, 207 L. Ed. 2d 171 (June 8, 2020) (citation and internal quotation marks omitted).  A plaintiff's injury is "by reason of" the RICO violation where it "is the direct result" or "a foreseeable and natural consequence of" the alleged scheme. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).  To determine whether an injury is too remote to allow recovery under RICO, courts apply the "following three-factor 'remoteness' test: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999) (citation and internal quotation marks omitted).

The Court concludes that the factors for RICO standing are satisfied here.  First, a direct relation exists between the alleged RICO scheme and plaintiffs' alleged harm.  The alleged RICO scheme involved false representations that United would pay for the IOP services at issue consistent with the plans' terms based on the UCR rate, and under-reimbursing the claims for IOP services to keep the difference between the UCR rate and the under-reimbursed amount.  Plaintiffs' injury, which is in the form of plaintiffs' payment of the amounts that United did not reimburse but should have reimbursed, directly flows from this alleged scheme.  Second, other typical factors also weigh in favor of this finding, such as, there is no risk of multiple recoveries because there are no other victims who were more directly injured than plaintiffs who are in a position to sue defendants.

That plaintiffs do not allege first-party reliance does not alter this conclusion.  "[T]he Supreme Court has explained that if there is a direct relationship between a defendant's wrongful conduct and a plaintiff's alleged injury, a RICO plaintiff who did not directly rely on the defendant's omission or misrepresentation can still satisfy the requirement of proximate causation of damages," because "a person may be injured 'by reason of' another person's fraud even if the

18

injured party did not rely on any misrepresentation." *Painters*, 943 F.3d at 1259 (quoting *Bridge*, 553 U.S. at 648-49). "All that is required of [a plaintiff] at th[e pleading] stage is to allege that someone in the chain of causation relied on Defendants' alleged misrepresentations[.]" *Id.* at 1260.

Plaintiffs have plausibly alleged that someone in the chain of causation relied on United's alleged misrepresentations. Plaintiffs allege that, "when Plaintiffs' providers contacted United to verify out-of-network rates during the pre-admission VOB calls, United routinely represented that rates were available at a UCR rate and never stated that the claims would be subject to repricing by MultiPlan through Viant." FAC ¶¶ 430-31. Plaintiffs further allege that, based on these alleged representations by United to their providers, they expected that their claims for IOP services would be reimbursed based on the UCR rate pursuant to their plans. *Id.* These allegations are sufficient to satisfy RICO's proximate cause requirement. *See Painters*, 943 F.3d at 1260 (holding that "it is sufficient to satisfy RICO's proximate cause requirement that Painters Fund alleged that prescribing physicians (also third parties, but not intervening causes) relied on Defendants' misrepresentations and omissions").

Accordingly, the Court concludes that plaintiffs have RICO standing.

### 2.    Elements of RICO Section 1962(c) Claim

To state a claim under Section 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).

### a.    Enterprise

"An enterprise that is not a legal entity is commonly known as an 'association-in-fact' enterprise." *Id.* at 940 (citation omitted). To plead an association-in-fact enterprise, a plaintiff must allege: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that the associates function as a continuing unit. *Odom*, 486 F.3d at 553 (citation omitted).

In its order of August 26, 2020, the Court held that plaintiffs had not averred factual matter suggesting that defendants engaged in an association-in-fact enterprise, because plaintiffs had not

United States District Court
Northern District of California

1  alleged facts to raise the inference that defendants' activities pursuant to their contractual

2  relationship were contrary to United's obligations under ERISA or to the terms of plaintiffs' plans.

3  Order at 14, Docket No. 55.  The Court further held that plaintiffs' allegations were consistent

4  only with the execution of a routine contract or commercial dealing.  *Id.*

5           In their FAC, plaintiffs allege new facts that raise the inference that defendants engaged in

6  in an association-in-fact enterprise.  Plaintiffs aver that defendants collaborated and conspired to

7  develop and use a database and pricing tool that would generate the lowest possible

8  reimbursement rates for the out-of-network IOP services at issue, which employed data that did

9  not represent the customary rates of similar IOP providers in the geographic area as required by

10 plaintiffs' plans.  The enterprise's affairs existed for the common purpose of keeping the

11 difference between the artificially low amounts that United reimbursed for the IOP claims and the

12 amount at which the claims should have been reimbursed if the plan requirements had actually

13 been followed by defendants.  These allegations are sufficient to satisfy the enterprise element for

14 a Section 1962(c) claim.  *See In re Aetna UCR Litig.*, No. CIV. 07-3541, 2015 WL 3970168, at

15 *27 (D.N.J. June 30, 2015) (concluding that "plaintiffs' allegations [were] sufficient to state a

16 RICO enterprise" because plaintiffs alleged that defendants collaborated "(1) to create a

17 mechanism through which Aetna, UHG and the Insurer Conspirators could under-reimburse

18 subscribers . . . or Nonpar services through use of flawed and invalid data . . . and (2) to increase

19 insurer profits by deceptively underpaying ONET benefits to their policy holders").

20          Defendants' argument that this was merely a routine contractual relationship with a goal of

21 cost-containment is premature.  The Court does not rule on the merits but on the plausibility of the

22 allegations.  Here, the FAC raises a plausible inference that the contractual relationship between

23 defendants was used as a cover for their scheme to profit from the fraud at plaintiffs' expense.

24 *See, e.g.*, FAC ¶ 21 (alleging that the Viant database and pricing tool was intended to "provide the

25 appearance of legitimacy and offer cover for the fraudulent underpayment of IOP claims").  This

26 distinguishes the allegations here from the allegations in the cases upon which defendants rely.[9]

27

28          [9] These authorities include *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal.
   2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough.");

1    That a legitimate contractual relationship between the defendants exists does not undermine

2    plaintiffs' plausible allegations that defendants also engaged in an enterprise to defraud them and

3    used the contractual relationship as a cover.  *See Painters*, 943 F.3d at 1248 ("Although the RICO

4    statute was originally enacted to combat organized crime, 'it has become a tool for everyday fraud

5    cases brought against respected and legitimate enterprises.'") (citation omitted).

6        Accordingly, the Court concludes that plaintiffs have plausibly alleged that defendants

7    were engaged in an enterprise.

8                                  **b.    Conduct**

9        To satisfy the "conduct" element of a Section 1962(c) claim, a plaintiff must allege facts

10   that the defendant had "some part in directing [the enterprise's] affairs."  *Walter v. Drayson*, 538

11   F.3d 1244, 1249 (9th Cir. 2008) (citation and internal quotation marks omitted).  Simply being "a

12   part" of the enterprise or "performing services" for the enterprise does not rise to the level of

13   direction required to satisfy this element.  *Id.*  "An enterprise is 'operated' not just by upper

14   management but also by lower rung participants in the enterprise who are under the direction of

15   upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated

16   with' the enterprise who exert control over it as, for example, by bribery."  *Reves v. Ernst &*

17   *Young*, 507 U.S. 170, 184 (1993).  Relevant considerations to whether this element is met include

18   whether the defendant "occup[ies] a position in the chain of command . . . through which the

19   affairs of the enterprise are conducted," whether it "knowingly implement[ed] [the] decisions of

20   upper management," and whether its "participation was vital to the mission's success."  *Walter*,

21   538 F.3d at 1249 (citations and internal quotation marks omitted).

22       The FAC raises the inference that United and MultiPlan each had some part in directing

23   the alleged enterprise's affairs.  Plaintiffs aver that United and MultiPlan collaborated to develop

24   and use on an ongoing basis the Viant database and pricing tool to under-reimburse the IOP claims

25   at issue, and that they did so for the purpose of advancing the enterprise's goal of defrauding

26

27   _____

28   and *Gomez v. Guthy–Renker, LLC*, No. 14-cv-01425-JGB, 2015 WL 4270042, at *11 (C.D. Cal.
     Jul. 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine
     contract between a service provider and its client.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1   plaintiffs and profiting from the under-reimbursement of the IOP claims.  Plaintiffs also aver that

2   "United determined the fraudulent rates for underpayment that would be [falsely] presented as

3   UCR," FAC ¶ 119, raising the inference that, in addition to having a role in the operation of the

4   alleged enterprise, United also had a role in its management.  Further, and again, the fact that

5   defendants had a contractual relationship is not determinative to the contrary.

6         Accordingly, the Court concludes that the conduct element is met.

7                    **c.      Pattern of Racketeering Activity**

8         A "pattern of racketeering activity requires at least two acts of racketeering activity, one of

9   which occurred after [1970] and the last of which occurred within ten years after the commission

10   of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  Racketeering activity is also referred

11   to as the "predicate acts." *Living Designs, Inc. v. E.I. Dupont de Nemours and Co*., 431 F.3d 353,

12   361 (9th Cir. 2005).  Offenses that can constitute predicate acts for a RICO violation are listed in

13   18 U.S.C. § 1961(1).

14         As noted, plaintiffs allege that their RICO claims are predicated on wire fraud and mail

15   fraud in violation of 18 U.S.C. §§ 1341 and 1343.  Wire fraud and mail fraud share the same

16   elements: (1) that the defendant formed a scheme to defraud; (2) used the United States wires [for

17   wire fraud] or United States mail [for mail fraud] in furtherance of the scheme; and (3) did so with

18   a specific intent to deceive or defraud.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806

19   F.2d 1393, 1400 (9th Cir. 1986) (citations omitted).  A RICO plaintiff alleging mail or wire fraud

20   must aver facts to show that "someone relied on the defendant's misrepresentations."  *See Bridge*

21   *v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).  Further, "Rule 9(b)'s requirement that

22   '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

23   stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356

24   F.3d 1058, 1065-66 (9th Cir. 2004) (internal citation omitted).

25         In its order of August 26, 2020, the Court concluded that plaintiffs had not averred facts to

26   raise the reasonable inference that defendants committed at least two instances of mail fraud or

27   wire fraud, because the allegations in the initial complaint did not identify the time, place, or the

28   specific content of defendants' fraudulent communications, or identify the person or persons

                                        22

involved in such communications.  Order at 15-17, Docket No. 55.  The Court also noted that plaintiffs had not alleged factual matter to raise the inference that any communications were sent over the United States wires or United States mail across state lines.  *Id.*

In the FAC, plaintiffs have alleged some additional facts with respect to the communications by defendants that were allegedly fraudulent or misleading.  FAC ¶¶ 242-411.  However, an analysis of all the communications alleged reveals that only the VOB calls between plaintiffs' provider, Summit Estate, and United took place *before* plaintiffs received the IOP services at issue.  *See* FAC ¶¶ 255, 291, 322, 351, 378.  Accordingly, only these communications could satisfy the reliance requirement for a RICO claim predicated on mail or wire fraud.[10]  *See Bridge*, 553 U.S. at 658 (holding that RICO plaintiff alleging mail or wire fraud must aver facts to show that "someone relied on the defendant's misrepresentations").

Plaintiffs allege that, during the VOB calls between their provider, Summit Estate, and United, United's representatives fraudulently represented to Summit Estate that it would pay for the out-of-network IOP services at issue at 100% of the UCR rate after the plaintiffs had satisfied their deductibles and co-pays.  *See* FAC ¶ 255, 291, 322, 351, 378.  During these calls, the United representatives also stated that "UCR would be paid based on the 80th percentile of charges for similar services in the geographic area." *Id.*  Plaintiffs allege that these statements were fraudulent because United did not, in fact, reimburse the IOP-services claims based on the UCR; instead, United used the Viant database and pricing tool, which, as discussed above, calculated reimbursements based on a methodology that does not reflect the customary rates of similar IOP providers in the geographic area, which plaintiffs allege is inconsistent with UCR.

Although plaintiffs have not averred any other details of these VOB calls, such as the names of the persons who participated in such calls or the dates of the calls, the Court finds that plaintiffs have alleged sufficient factual matter as to the circumstances constituting fraud so that United "can prepare an adequate answer from the allegations." *Schreiber Distrib. Co. v. Serv-Well*

---

[10] Plaintiffs also aver that defendants sent them other communications that were misleading, such as EOBs and PAD letters, but defendants allegedly sent these communications after the IOP services had already been provided to plaintiffs.  For that reason, the Court cannot infer that plaintiffs relied on these communications in deciding to receive the IOP services at issue.

1   *Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citation and internal quotation marks

2   omitted). Accordingly, plaintiffs have satisfied the element of pattern of racketeering with respect

3   to United.

4     With respect to MultiPlan, plaintiffs have not averred facts raising the reasonable inference

5   that MultiPlan engaged in at least two acts of mail fraud or wire fraud upon which plaintiffs relied

6   that constitute a pattern of racketeering activity.

7     The Court, therefore, **DENIES** United's motion to dismiss the RICO claim under Section

8   1962(c) asserted against it, and the Court **GRANTS** MultiPlan's motion to dismiss the RICO claim

9   under Section 1962(c) asserted against it, with **LEAVE TO AMEND**.

10      **3.   Conspiracy under Section 1962(d)**

11     Section 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of

12   the provisions of subsection (a), (b), or (c) of this section." A defendant cannot be liable for a

13   RICO conspiracy under Section 1962(d) if the defendant is not liable under the substantive RICO

14   provisions, namely Sections 1962(a), (b), or (c). *See Howard v. Am. Online Inc.*, 208 F.3d 741,

15   751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do

16   not adequately plead a substantive violation of RICO.").

17     "A conspirator must intend to further an endeavor which, if completed, would satisfy all of

18   the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or

19   facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). A defendant

20   must also have been "aware of the essential nature and scope of the enterprise and intended to

21   participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.1993) (internal quotation marks

22   omitted). To establish a violation of section 1962(d), plaintiffs must allege either an agreement

23   that is a substantive violation of RICO or that the defendants agreed to commit, or participated in,

24   a violation of two predicate offenses. *See id.*

25     Defendants move to dismiss plaintiffs' claims for RICO conspiracy in violation of Section

26   1962(d) on the ground that plaintiffs have failed to plead a substantive RICO violation under

27   Section 1962(c).

28

United States District Court
Northern District of California

As discussed above, plaintiffs have pleaded a violation under Section 1962(c) with respect to United.  Plaintiffs also have alleged sufficient factual matter to raise the inference that both defendants conspired with the intent to further and participate in the alleged scheme that satisfies the elements of a substantive violation of RICO under Section 1962(c), as discussed in more detail above.  The Court, therefore, **DENIES** defendants' motion to dismiss plaintiffs' RICO claims under Section 1962(d).

### C.     Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011).  The Court, however, need not grant leave to amend where amendment would be futile. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

Because it is not clear that amendment of the FAC would be futile to allege the details required by Rule 9(b) with respect to the fraudulent communications that form the basis of plaintiffs' RICO claim under Section 1962(c) with respect to MultiPlan, the Court will grant plaintiffs leave to amend the complaint to do so.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** MultiPlan's motion to dismiss **WITH LEAVE TO AMEND** with respect to the claim under RICO Section 1962(c) asserted against it.  The Court **GRANTS** United's motion to dismiss plaintiffs' claim for violations of 29 U.S.C. § 1133 **WITH PREJUDICE**.  The Court otherwise **DENIES** defendants' motions to dismiss.  Given the upcoming holidays, plaintiffs may file an amended complaint within twenty-eight (28) days of the date this order is filed.  Defendants may file a response to the amended complaint within twenty-one (21) days of the date it is filed.

This order terminates Docket Numbers 65 and 66.

**IT IS SO ORDERED.**

Dated: December 18, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**