Matthew M. Lavin, Esq. (*pro hac vice*)
Aaron R. Modiano, Esq. (*pro hac vice*)
**NAPOLI SHKOLNIK PLLC**
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

David M. Lilienstein, Esq. (CA SBN 218923)
Katie J. Spielman, Esq. (CA SBN 252209)
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH and CJ on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs,*<br><br>  vs.<br><br>UNITED BEHAVIORAL HEALTH, INC. a California corporation, and MULTIPLAN, INC., a Nevada corporation,<br><br>   *Defendants.* | Case No.: 4:20-CV-02254-YGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO MULTIPLAN INC.'S MOTION TO DISMISS**<br><br>Complaint Filed: April 2, 2020<br>Trial Date:   None Set<br><br>Hearing Date: March 16, 2021<br>Hearing Time: 2:00 p.m.<br>Courtroom:  1 (Fourth Floor) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 1

INTRODUCTION & RELEVANT FACTS ................................................................................. 1

PLAINTIFF'S POINTS AND AUTHORITIES .......................................................................... 2

I.      Plaintiffs' Have Properly Alleged a RICO Claim Under § 1962(c) Against MultiPlan ............ 2

    A.      Plaintiffs Have Properly Alleged the Existence of a RICO Enterprise .................................. 2

    B.      Plaintiffs Have Properly Alleged That MultiPlan Directed the Affairs of the Enterprise ..... 3

    C.      Plaintiffs Have Sufficiently Alleged MultiPlan Participated in a Pattern of Racketeering
            Activity ...................................................................................................................... 3

        1.      Plaintiffs Have Alleged Racketeering Activity with Sufficient Particularity ................... 5

        2.      Plaintiffs Plausibly Allege Causation ...................................................................... 5

    D.      As Already Held by the Court, Plaintiffs' RICO 1962(d) and Other Claims Against
            MultiPlan Are Properly Alleged ................................................................................. 12

II.     Conclusion .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ............................................................................................ 5, 6, 7

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ..................................................................................... 11

*Friedman v. 24 Hour Fitness USA, Inc.*,
  580 F. Supp. 2d 985 (C.D. Cal. 2008) ........................................................................ 11

*Gonzales v. Lloyds TSB Bank, PLC*,
  532 F. Supp. 2d 1200 (C.D. Cal. 2006) ........................................................................ 9

*Hammerschmidt v. United States*,
  265 U.S. 182 (1924) ................................................................................................... 4

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).............. 1

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ................................................................................................... 5

*Horman v. United States*,
  116 F. 350 (6th Cir. 1902) ......................................................................................... 4

*In re Managed Care Litigation*,
  298 F. Supp. 2d 1259 (S.D. Fla. 2003) ........................................................................ 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)............................................................. 10

*Kelly v. United States*,
  140 S. Ct. 1565, 206 L. Ed. 2d 882 (2020) .................................................................. 3

*Kowalski v. Anova Food, LLC*,
  958 F. Supp. 2d 1147 (D. Haw. 2013) .......................................................................... 2

*Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc.*,
  425 F. Supp. 2d 352 (W.D.N.Y. 2006) ......................................................................... 1

*McNally v. United States*,
  483 U.S. 350 (1987)................................................................................................... 3

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .......................................................................................... 4

*Nye & Nissen*,
  336 U.S. 613 (1949) ................................................................................................. 10

*Paroline v. United States*,
  572 U.S. 434 (2014) ................................................................................................... 5

*Pasquantino v. United States*,
  544 U.S. 349 (2005) ............................................................................................... 3, 4

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979).................................................................................................. 3

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)............................................................................................... 10

*Rosemond v. United States*,
   572 U.S. 65 (2014)................................................................................................. 10

*Strobel v. Morgan Stanley Dean Witter*,
   2007 WL 1053454 (S.D. Cal. Apr. 10, 2007)......................................................... 2

*United States v. Feldman*,
   853 F.2d 648 (9th Cir. 1988) ............................................................................... 11

*United States v. Peoni*,
   100 F.2d 401 (2d Cir. 1938)................................................................................. 10

*United States v. Simon*,
   2016 WL 3597579 (N.D. Ind. July 5, 2016) .......................................................... 3

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
   714 F.3d 414 (6th Cir. 2013) ................................................................................. 6

*Woodard v. Labrada*,
   2016 WL 3436434 (C.D. Cal. May 12, 2016) ........................................................ 9

**Statutes**

18 U.S.C. § 1962(c) ................................................................................................. 1, 6

18 U.S.C. § 1964(c) ................................................................................................. 5, 6

**Rules**

Fed. R. Civ. P. 10(c) ................................................................................................... 1

Fed. R. Civ. P. 60 ....................................................................................................... 1

Fed. R. Civ. P. 9(b) ..................................................................................................... 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

The issue to be decided by the Court is whether Plaintiffs have plausibly alleged causation under RICO § 1962(c) against Defendant, MultiPlan, addressing the issues as set out by the Court in its previous order on Defendants' motions to dismiss Plaintiffs' First Amended Complaint [Dkt. 73].

Plaintiffs' RICO § 1962(d) claim and other causes of action asserted against MultiPlan have already been found to be sufficiently alleged by this Court in its prior order on Defendants' motions to dismiss Plaintiffs' First Amended Complaint [Dkt 73].

**INTRODUCTION & RELEVANT FACTS**

The Plaintiffs received authorized behavioral health treatment from a properly licensed and accredited provider for treating mental health and/or substance use disorders. Plaintiffs were covered under health insurance either administered or issued by Defendant, United. Defendant MultiPlan, Inc. is a 'repricing' company that, together with United, formed an illegal enterprise that systematically underpaid for the treatment Plaintiffs received. United and MultiPlan jointly controlled the conspiracy to underpay these healthcare claims and shared in the profits arising therefrom. Plaintiffs have been directly injured by the conduct of the two Defendants who worked in concert.   Plaintiffs are responsible for and have had to pay surprise balance bills as a result of this fraudulent scheme.

Multiplan mischaracterizes Plaintiffs' Second Amended Complaint that addresses the issues set out by the Court in its Order granting in part and denying in part Defendants' motions to dismiss Plaintiffs' First Amended Complaint [Dkt. 73]. MultiPlan effectively ignores that this Court's Order granted MultiPlan's motion *only* with respect to Plaintiffs' RICO § 1962(c) claim and gave Plaintiffs leave to amend. Plaintiffs have done so, addressing the issues raised by the Court in their Second Amended Complaint [Dkt. 74].

MultiPlan's request that this Court permit them to adopt and incorporate the arguments raised in all four of their and United's prior motions to dismiss (Mot. Pg. 4 Fn 2 & Mot. Pg 12) is without basis and should be rejected. While Fed. R. Civ. P. 10(c) permits a statement in a pleading to be incorporated by reference, there is no such provision for adopting earlier, ruled upon, motions to dismiss directed at previous Complaints. Plaintiffs' Second Amended Complaint ("SAC") [Dkt. 74] does not incorporate the prior complaints. It has been held impermissible under Rule 10(c) for an

amended pleading to incorporate, wholesale, a previous pleading. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 447 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). Further, "Rule 10(c)… provides no authority for one party to adopt by reference the arguments advanced by another party in a motion in which the first party seeks to join." *Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 363 (W.D.N.Y. 2006). The Court has already considered and ruled upon the motions that MultiPlan now seeks to incorporate. MultiPlan is actually asking the Court for relief from its previous Order that is governed by Fed. R. Civ. P. 60. However, reconsideration under Rule 60 of this Court's earlier non-final orders "may only be brought upon the following grounds: (1) discovery of new material facts not previously available, (2) intervening change in law, (3) manifest error of law or fact. When alleging a manifest error of law, a defendant must show that the Court "committed clear error or that the initial decision was manifestly unjust.". **A defendant fails to meet his burden to establish a manifest error of law by merely repeating the same arguments already raised**." *Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1154 (D. Haw. 2013) (internal citations omitted, emphasis added); *see also*, *Strobel v. Morgan Stanley Dean Witter*, 2007 WL 1053454, at *3 (S.D. Cal. Apr. 10, 2007) ("The Court cannot emphasize strongly enough that the Rules allowing for motions for reconsideration are not intended to provide litigants with a second bite at the apple.").

For the reasons set forth below, Plaintiffs have appropriately alleged a RICO claim against MultiPlan under § 1962(c) and MultiPlan's motion should be denied.

## PLAINTIFF'S POINTS AND AUTHORITIES

## I.    PLAINTIFFS' HAVE PROPERLY ALLEGED A RICO CLAIM UNDER § 1962(C) AGAINST MULTIPLAN.

### A.  Plaintiffs Have Properly Alleged the Existence of a RICO Enterprise

This Court's prior Order [Dkt. 73] held that Plaintiffs had properly alleged that the Defendants formed a RICO enterprise, holding:

> In their FAC, plaintiffs allege new facts that raise the inference that defendants engaged in an association-in-fact enterprise. Plaintiffs aver that defendants collaborated and conspired to develop and use a database and pricing tool that would generate the lowest possible reimbursement rates for the out-of-network IOP services at issue, which

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

employed data that did not represent the customary rates of similar IOP providers in the geographic area as required by plaintiffs' plans. The enterprise's affairs existed for the common purpose of keeping the difference between the artificially low amounts that United reimbursed for the IOP claims and the amount at which the claims should have been reimbursed if the plan requirements had actually been followed by defendants. **These allegations are sufficient to satisfy the enterprise element for a Section 1962(c) claim**.
(Dkt. 73, Pg. 20, Ln 5-14) (emphasis added)

As such, Plaintiffs did not have any need to amend the allegations as to the existence of a RICO enterprise in the SAC.

### B. Plaintiffs Have Properly Alleged That MultiPlan Directed the Affairs of the Enterprise

This Court's prior Order [Dkt. 73] held that Plaintiffs had properly alleged that the Defendants formed a RICO enterprise, holding:

**The FAC raises the inference that United and MultiPlan each had some part in directing the alleged enterprise's affairs.** Plaintiffs aver that United and MultiPlan collaborated to develop and use on an ongoing basis the Viant database and pricing tool to under-reimburse the IOP claims at issue, and that they did so for the purpose of advancing the enterprise's goal of defrauding plaintiffs and profiting from the under-reimbursement of the IOP claims.
(Dkt. 73, Pg. 20-21, Ln 22-1) (emphasis added)

As such, Plaintiffs did not have any need to amend the allegations as to MultiPlan's direction of the enterprise's affairs.

### C. Plaintiffs Have Sufficiently Alleged MultiPlan Participated in a Pattern of Racketeering Activity

It is well established that "RICO is widely regarded as a broad statute; indeed, RICOs text itself 'provides that its terms are to be "liberally construed to effectuate its remedial purposes."'" *Boyle v. United States*, 556 U.S. 938, 944 (2009).[1] The enterprise between United and MultiPlan is the vehicle for the illegal, racketeering activity of mail and wire fraud and the conspiracy to commit

---

[1] *See also, Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985) ("RICO is to be read broadly.").

mail and wire fraud. The Defendants share a common purpose in performing these activities, to gain financial benefits as the direct result of the fraudulent scheme.

The mail and wire fraud statutes protect property rights. *Kelly v. United States*, 140 S. Ct. 1565, 206 L. Ed. 2d 882 (2020); *McNally v. United States*, 483 U.S. 350, 356 (1987). Plaintiffs' right to be paid for the services they provided represent property in their hands. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("Money, of course, is a form of property"); *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005) (entitlement to collect money is property). The right to be paid in full is a property right which may be infringed by a mail or wire fraud violation. "[A] defendant who uses fraud to avoid paying the full amount due for a good or service deprives the victim of property within the meaning of the mail fraud statute." *United States v. Simon*, 2016 WL 3597579, * 11 (N.D. Ind. July 5, 2016).[2]

Here, Plaintiffs' property is the object of the Defendant's scheme to defraud. *See Pasquantino*, 544 U.S. at 355. United and MultiPlan, have associated to form an ongoing informal organization, with the common purpose of engaging in a course of conduct, including the development and implementation of a scheme to fraudulently underpay out-of-network IOP services.

A scheme to defraud is broader than the common law conception of fraud *Hammerschmidt v. United States,* 265 U.S. 182, 188 (1924). Intent to defraud is present where there is a wrongful purpose of injuring one in his property rights. *Hammerschmidt,* 265 U.S. at 188. The development and implementation of a scheme to fraudulently underpay out-of-network IOP services is certainly overreaching and a course of action intended to cheat Plaintiffs out of money using false pretenses. It has long been the law that "[i]f the scheme or artifice in its necessary consequence is one which is calculated to injure another, to deprive him of his property wrongfully, then it is to defraud within the meaning of the statute." *Horman v. United States,* 116 F. 350, 352-53 (6th Cir. 1902).

---

[2] *Accord, In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1279-80 (S.D. Fla. 2003) ("Plaintiffs, however, argue that services indeed can be considered property, and allegations that they performed the services and were defrauded out of rightful monetary payments easily falls under the rubric of a property interest. The Court agrees. The allegations in part concern a scheme using claims processing mechanisms to deny, diminish, and delay payments for services that have been performed.  Therefore, the providers are being deprived of a property right—in this case money rightfully theirs—in perhaps the most legally primitive sense.").

1         *1.   Plaintiffs Have Alleged Racketeering Activity with Sufficient Particularity*

2         Rule 9(b) does not require a plaintiff to be omniscient or to provide every conceivable detail.

3   Rather, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud

4   so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6

5   F.3d 666, 671–72 (9th Cir. 1993) (internal quotations and citations omitted). Plaintiffs have met that

6   standard.

7         Plaintiffs have identified their Providers, the services they received, fraudulent

8   communications over the mail and wires, the individuals Plaintiffs' Providers spoke with, and

9   examples of the written and electronic correspondence between the Plaintiffs, Providers, and

10  Defendants for every Plaintiff. Specific and detailed allegations for Plaintiff LD are alleged at SAC

11  ¶¶ 247-277, for DB at SAC. ¶¶ 278-314, for BW at SAC ¶¶ 315-343, for RH at SAC ¶¶ 344-372, for

12  CJ at SAC ¶¶ 373-399, and goes into detail as to the 'Patient Advocacy Department' ("PAD") letters

13  at SAC ¶¶ 400-421.

14        *2.   Plaintiffs Plausibly Allege Causation*

15        RICO creates a civil cause of action on behalf of "[a]ny person injured in his business or

16  property by reason of a violation of section 1962 of this chapter. . . ." 18 U.S.C. § 1964(c). In a RICO

17  case based upon acts of mail or wire fraud, "[t]he gravamen of the offense is the scheme to defraud,

18  and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element.'"

19  *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 647 (2008) (quoting *Schmuck v. United States,*

20  489 U.S. 705, 712 (1989)). This is true even if the mailing itself contains no false information,

21  *Schmuck,* 489 U.S. at 715, because "the indictable act under § 1341 is not the fraudulent

22  misrepresentation, but rather the use of the mails with the purpose of executing or attempting to

23  execute a scheme to defraud." *Bridge,* 553 U.S. at 652.

24        A plaintiff seeking to recover damages in a civil RICO action must establish that the

25  defendant's violation was a proximate cause of the plaintiff's injury. *Holmes v. Sec. Inv. Prot. Corp.,*

26  503 U.S. 258, 268 (1992). Fundamentally, RICO proximate causation is "a flexible concept that does

27  not lend itself to 'a black-letter rule that will dictate the result in every case.'" *Bridge,* 553 U.S. at

28  654 (quoting *Holmes,* 503 U.S. at 272 n. 20), and 659 (refusing to "ignore *Holmes'* instruction that

1    proximate cause is generally not amenable to bright-line rules"); *Paroline v. United States*, 572 U.S.

2    434, 444 (2014) (quoting *Bridge's* description of proximate cause as "a flexible concept").[3]

3          "When a court evaluates a RICO claim for proximate causation, the central question it must

4    ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply*

5    *Corp.*, 547 U.S. 451, 461 (2006); *Bridge,* 553 U.S. at 654 (recognizing *Holmes'* "particular emphasis

6    on the 'demand for some direct relation between the injury asserted and the injurious conduct

7    alleged'"). This emphasis on directness reflects "[t]he general tendency of the law, in regard to

8    damages at least, is not to go beyond the first step," and addresses considerations of judicial

9    administrability and convenience.  *Holmes*, 503 U.S. at 271-72 (citation omitted).

10          MultiPlan's challenge to proximate causation rest on the assumption that reliance is required

11    in all mail and wire fraud cases. That assumption is incorrect. *Bridge* held that reliance is (1) not an

12    element of mail fraud itself, 553 U.S. at 648-50, (2) not an element of 18 U.S.C. § 1962(c), *id.*, (3)

13    and is not required by 18 U.S.C. § 1964(c). *Id.* at 654-58. Simply put, if a plaintiff's injuries are

14    directly caused by the violative, its conduct cannot be barred from recovery by a reliance requirement

15    that is not to be found in the mail or wire fraud statutes or in RICO itself.

16          *Bridge* unequivocally holds that directness does not contain within it a requirement of

17    reliance: "the mere fact that the predicate acts underlying a particular RICO violation happen to be

18    fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as

19    an element of a civil RICO claim." 553 U.S. at 653, quoting *Anza*, 547 U.S. at 476 (Thomas, J.

20    concurring in part and dissenting in part). Removing any doubt, *Bridge* specifies that "One can

21    conduct the affairs of a qualifying enterprise through a pattern of . . . [racketeering activity indictable

22    as mail fraud] *without anyone relying on a fraudulent misrepresentation*."  *Bridge*, 553 U.S. at 649

23    (emphasis added). In other words, while reliance may serve as a proxy for legal and factual causation,

24    it is not a condition of their existence. 553 U.S. at 649 ("one can conduct the affairs of a qualifying

25    enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation.").

26

27    _____

      [3] The application of the direct injury requirement in RICO is *sui generis*. *Holmes,* 503 U.S. at 272 n.
28    20 (Consequently, "use of the term 'direct' should merely be understood as a reference to the
      proximate-cause enquiry that is informed by the concerns set out in the text. We do not necessarily
      use it in the same sense as courts before us have and intimate no opinion on results they reached.")

1   Consequently, "[f]or RICO purposes, reliance and proximate cause remain distinct—if frequently
2   overlapping—concepts.  While reliance is 'often used to prove . . . the element of causation,' that
3   does not mean it is the only way to do so." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d
4   414, 420 (6th Cir. 2013) (internal quotations omitted).  Or, as *Bridge* put it, "the fact that proof of
5   reliance is often used to *prove* an element of the plaintiff's cause of action, such as the element of
6   causation, does not transform reliance itself into an element of the cause of action." 553 U.S. at 659
7   (citation omitted). The unavoidable conclusion is that reliance does not matter if facts plausibly
8   showing direct injury are alleged.

9         Thus, *it does not matter* if "those PAD letters actually misled or were otherwise relied upon
10  by Plaintiffs" (Mot. Pg. 9 Ln 8-9) or that if, as MultiPlan claims, "nowhere in the SAC do Plaintiffs
11  identify any misrepresentations or omissions whatsoever *on the part of MultiPlan* that could plausibly
12  have misled them into believing that they would receive a particular rate for their services (Mot. Pg.
13  9 Ln 10-12) (*italics in original*). MultiPlan asks the Court to accept as necessary a reliance
14  requirement *by the plaintiffs* that the Supreme Court has soundly rejected in *Bridge.*

15        *Bridge* held that reliance is (1) not an element of mail fraud itself, 553 U.S. at 648-50, (2) not
16  an element of 18 U.S.C. § 1962(c), *id.*, and (3) is not required by 18 U.S.C. § 1964(c). *Id.* at 654-58.[4]
17  Simply put, if a plaintiff's injuries are directly caused by the violative, its conduct cannot be barred
18  from recovery by a reliance requirement that is not to be found in the mail or wire fraud statutes or
19  in RICO itself.

20        *Bridge* unequivocally holds that directness does not contain within it a requirement of
21  reliance: "the mere fact that the predicate acts underlying a particular RICO violation happen to be
22  fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as
23  an element of a civil RICO claim."  553 U.S. at 653, quoting *Anza*, 547 U.S. at 476 (Thomas, J.
24  concurring in part and dissenting in part). Removing any doubt, *Bridge* specifies that "One can
25  conduct the affairs of a qualifying enterprise through a pattern of . . . [racketeering activity indictable

26

27  [4] *See also, St. Germain v. Howard,* 556 F.3d 261, 263 (5th Cir. 2009)("The Supreme Court recently
    held that no reliance requirement exists for civil causes of action under RICO for victims of mail
28  fraud.")(citing *Bridge*).

1   as mail fraud] **without anyone relying on a fraudulent misrepresentation.**" *Bridge*, 553 U.S. at

2   649 (emphasis added).[5] In other words, while reliance *may* serve as a proxy for legal and factual

3   causation, <u>it is not a condition of their existence</u>. 553 U.S. at 649 ("one can conduct the affairs of a

4   qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent

5   misrepresentation."). Consequently, "[f]or RICO purposes, reliance and proximate cause remain

6   distinct—if frequently overlapping—concepts. While reliance is 'often used to prove . . . the element

7   of causation,' that does not mean it is the only way to do so." *Wallace v. Midwest Fin. & Mortg.*

8   *Servs., Inc.*, 714 F.3d 414, 420 (6th Cir. 2013) (internal quotations omitted). Or, as *Bridge* put it, "the

9   fact that proof of reliance is often used to *prove* an element of the plaintiff's cause of action, such as

10  the element of causation, does not transform reliance itself into an element of the cause of action."

11  553 U.S. at 659 (citation omitted). The unavoidable conclusion is that <u>reliance does not matter if facts</u>

12  <u>plausibly showing direct injury are alleged</u>. *Montoya v. PNC Bank, N.A.,* 94 F. Supp. 3d 1293, 1308

13  (S.D.Fla. 2015); *see also Wallace*, 714 F.3d at 420 ("A plaintiff need only show use of the mail in

14  furtherance of a scheme to defraud and an injury proximately caused by that scheme.").

15       As in *Bridge*, Plaintiffs' injuries are "a foreseeable and natural consequence" of defendants'

16  scheme. 553 U.S. at 658. And, as in *Bridge*, there are no independent factors that could account for

17  plaintiffs' injury and no risk of duplicative recoveries by plaintiffs removed at different levels of

18  injury from the violation. Because none of the harm for which Plaintiffs seek to recover was first

19  visited upon a third person,[6] their claims do not require the court to go beyond the first step in regard

20

21

22  [5] *See also, id.* at 655-56 ("Reliance is not a general limitation on civil recovery in tort; it 'is a special-
    ized condition that happens to have grown up with common law fraud' . . . and 'simply has no place
23  in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from
    common-law fraud and that does not require proof of reliance.'"); *Allstate Ins. Co. v. Plambeck*, 802
24  F.3d 665, 676 (5th Cir. 2015) ("As recognized in *Bridge*, 553 U.S. at 653, 128 S.Ct. 2131, mail fraud
    and its place in RICO['s] framework are different from a case alleging common-law fraud, and one
25  of the differences is the lack of a reliance requirement.")

26  [6] This is in direct contrast to *Holmes*, where the injury to the SIPC was purely contingent on an injury
    first suffered by others.  503 U.S. at 270-274.  In other words, this is not a case involving plaintiffs
27  who complain "of harm flowing merely from the misfortunes visited upon a third person by the de-
    fendant's acts . . . ."  *Holmes,* 503 U.S. at 268-269.
28

1  to damages. Similarly, there are no more immediate victims who are better situated or motivated to

2  sue than Plaintiffs. Because Plaintiffs are entitled to claim reimbursement for their care, no one else

3  has a better incentive to vindicate the law as a private attorney general.[7] *Bridge*, 553 U.S. at 658.[8]

4      MultiPlan's actions in its participation in the sending of 'Patient Advocacy Department'

5  (PAD) letters and in the payment amount constitute necessary predicate acts of racketeering as they

6  are interstate acts of mail and wire fraud.

7      MultiPlan has also committed the required predicate acts of racketeering as Plaintiffs have

8  sufficiently alleged that MultiPlan has aided and abetted the mail and wire fraud committed by

9  Defendant United. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

10  2017 WL 4890594, at *12 (N.D. Cal. Oct. 30, 2017) (The civil RICO statute, then, incorporates the

11  crimes of mail and wire fraud in their entirety. It therefore cannot be that *Stapleton's* interpretation

12  of mail and wire fraud applies in the criminal context, but not in the civil RICO context.); *In re*

13  *Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 141 (D. Conn. 2014) ("aiding and abetting mail or wire

14  fraud is by definition a racketeering activity under RICO"); *Fireman's Fund Ins. Co. v. Plaza*

15  *Oldsmobile Ltd.*, 600 F. Supp. 1452, 1457 (E.D.N.Y. 1985) ("aiding and abetting mail fraud would,

16  pursuant to 18 U.S.C. § 2, be indictable under 18 U.S.C. § 1341, and hence would be a predicate act

17  under § 1961(1)(B)").

18      Plaintiffs do not seek to hold MultiPlan civilly liable for aiding and abetting United's RICO

19  violations; instead, as set out in *In re Volkswagen* cited above, Plaintiffs assert that MultiPlan's aiding

20  and abetting constitutes RICO predicate acts by MultiPlan, as required by the Court in its Order

21  dismissing the 18 U.S.C. 1962(c) cause of action against MultiPlan [Dkt. 73]. Thus, when MultiPlan

22

___

23  [7] While the state might be able to sue in its capacity as sovereign, it is not injured in any other sense.

24  Because Defendants do not owe it reimbursement, the state cannot seek to recover the damages sought by Plaintiffs.

25

26  [8] This is in direct distinction to *Anza*, in which the plaintiff claimed it had been injured by the defendant's underpayment *of someone else*, specifically the defendants' failure to pay sales tax to the State

27  of New York.  547 U.S. at 454.  Here, Plaintiffs are injured by Defendants' direct failure to reimburse them for the services they provided to the United Defendants' insureds.  No third party's conduct is

28  at issue.

1   states, "liability may only be imposed on a person who "aids and abets" if…" (Mot. Pg. 10, Ln 13),

2   it is clear that they are trying to mislead the Court as Plaintiffs do not ask the Court to find liability

3   for aiding and abetting; instead, MultiPlan's aiding and abetting constitute RICO a predicate act.

4       The cases cited by MultiPlan are not on point for this very reason. In *Woodard v. Labrada*,

5   2016 WL 3436434 (C.D. Cal. May 12, 2016), the court declined to find sufficient allegations in the

6   complaint to support aiding and abetting *liability.* In *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp.

7   2d 1200 (C.D. Cal. 2006), the "[the d]efendant [did] not argue that Plaintiffs have failed to allege

8   substantial assistance, and the Court [did] not address that element" and held "that Defendant's

9   provision of banking services is not enough **on its own** to constitute a violation of section 1962(c)"

10  (emphasis added). That is not the case here as the Court has already found that an enterprise exists

11  and the MultiPlan has participated in the management of its affairs.

12      MultiPlan misrepresents the holding of *In re Volkswagen "Clean Diesel" Mktg., Sales

13  Practices, & Prod. Liab. Litig.*, 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) to the Court. In

14  *Volkwagen* the court held, "The civil RICO statute, then, incorporates the crimes of mail and wire

15  fraud in their entirety. It therefore cannot be that *Stapleton*'s interpretation of mail and wire fraud

16  applies in the criminal context, but not in the civil RICO context." *Id.* at *12. The opinion expressly

17  holds that aiding and abetting mail and wire fraud constitutes a RICO predicate act, one of the three

18  required elements for asserting a RICO claim. That is what Plaintiffs are asserting here, MultiPlan's

19  acts of aiding and abetting meet one of the three elements of a RICO claim. The Court has already

20  ruled that the other two elements are met. *Volkwagen* does hold that aiding and abetting mail and wire

21  fraud is not sufficient for **all** three RICO elements; however, that is not what Plaintiffs have alleged

22  in the SAC.

23      Aiding and abetting is extremely broad as it "comprehends all assistance rendered by words,

24  acts, encouragement, support, or presence." *Reves v. Ernst & Young*, 507 U.S. 170 (1993). Criminal

25  aiding and abetting liability under 18 U.S.C. § 2 requires proof that the defendant "in some sort

26  associate himself with the venture, that he participate in it as in something that he wishes to bring

27  about, that he seek by his action to make it succeed." *Nye & Nissen*, 336 U.S. 613, 619 (1949) *quoting*

28  L. Hand, J., *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938).

1    MultiPlan incorrectly asks the Court to look only to whether MultiPlan "substantially assisted

2    in, encouraged, or otherwise intended to aid in the commission of such VOB calls or the purported

3    misrepresentations made therein" (Mot. Pg. 10, Ln 25-26). The Supreme Court has stated that "for

4    purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing

5    its extent and character intends that scheme's commission." *Rosemond v. United States*, 572 U.S. 65,

6    77 (2014). Providing examples, the Court stated, "[w]e have previously found that intent requirement

7    satisfied when a person actively participates in a criminal venture with full knowledge of the

8    circumstances **1249 constituting the charged offense. In Pereira, the mail fraud case discussed

9    above, we found the requisite intent for aiding and abetting because the defendant took part in a fraud

10   "know[ing]" that his confederate would take care of the mailing." *Id*. Here, Plaintiffs allegations make

11   clear that MultiPlan has directed the enterprise, knew its extent and character, and intended to carry

12   it out. It is irrelevant that MultiPlan did not take the VOB call, they knew that United would take the

13   call, they knew that United would lie, the PAD letters reinforced the lie, and this was all done to profit

14   at the expense of Plaintiffs. This is more than sufficient for aiding and abetting.

15   Plaintiffs have provided a detailed description of the underlying scheme, the participation of

16   both Defendants, and the connection of the use of mail and wire communications. The Court has

17   already found that Plaintiffs have sufficiently alleged MultiPlan's participation in the enterprise, and

18   it is the enterprise that committed the racketeering activities. Thus, by aiding and abetting the

19   enterprise, done by participating in its management, MultiPlan has aided and abetted its commission

20   of mail and wire fraud. As such, sufficient predicate acts are pled as to MultiPlan.

21   In another attempt to mislead the Court, MultiPlan cites to *Eclectic Properties E., LLC v.*

22   *Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) asking the Court to create the requirement of

23   "fraudulent intent" be present in all members of the enterprise (Mot. Pg. 11 Ln. 22-26). This is not

24   the state of the law in the Ninth Circuit. *See United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988);

25   *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 993 (C.D. Cal. 2008) ("To require a

26   common fraudulent purpose would essentially require each member of the enterprise to possess a

27   fraudulent intent. *Feldman* teaches that such intent is not required for each member.")

28

The allegations against MultiPlan more than satisfy this definition and, therefore, Plaintiffs have sufficiently alleged the required predicate acts of racketeering as to MultiPlan.

The Court has already found that the other 18 U.S.C. 1962(c) requirements as to MultiPlan have been satisfied. MultiPlan's aiding and abetting of the mail and wire fraud committed by United constitute predicate acts of MultiPlan that the Court found missing in Plaintiffs' First Amended Complaint.

**D.  As Already Held by the Court, Plaintiffs' RICO 1962(d) and Other Claims Against MultiPlan Are Properly Alleged**

The Court has already considered and ruled upon the motions that MultiPlan now seeks to incorporate and asks the Court to reconsider (Mot. Pg. 18, Ln 16-25). As stated earlier, MultiPlan is actually asking the Court for relief from its previous Order that is governed by Fed. R. Civ. P. 60. However, reconsideration under Rule 60 of this Court's earlier non-final orders "may only be brought upon the following grounds: (1) discovery of new material facts not previously available, (2) intervening change in law, (3) manifest error of law or fact. When alleging a manifest error of law, a defendant must show that the Court "committed clear error or that the initial decision was manifestly unjust.". **A defendant fails to meet his burden to establish a manifest error of law by merely repeating the same arguments already raised**." *Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1154 (D. Haw. 2013) (internal citations omitted, emphasis added); *see also*, *Strobel v. Morgan Stanley Dean Witter*, 2007 WL 1053454, at *3 (S.D. Cal. Apr. 10, 2007) ("The Court cannot emphasize strongly enough that the Rules allowing for motions for reconsideration are not intended to provide litigants with a second bite at the apple.") To the extent that the Court permits MultiPlan to adopt and incorporate past motions, Plaintiffs would adopt and incorporate their responses and this Court's Order [Dkt. 73] that found Plaintiffs' claims in the SAC, except as to RICO 1962(c) that is the subject of this Response, properly alleged.

**II.  Conclusion**

By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be denied. If the court is inclined to sustain any part of the motion, Plaintiffs respectfully request leave to cure any deficiencies and amend the pleading.

1    Respectfully Submitted,

2

3    Dated: February 19, 2021                    **NAPOLI SHKOLNIK PLLC**

4                                                   /s/ Matthew M. Lavin
                                                  Matthew M. Lavin
5                                                 Aaron R. Modiano

6                                                 **DL LAW GROUP**
7                                                   /s/ David M. Lilienstein
                                                  David M. Lilienstein
8                                                 Katie J. Spielman

9
                                                  *Attorneys for Plaintiffs*
10                                                *And the Putative Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LD, *et al.* v. UNITED, *et al.* - PLAINTIFFS' OPPOSITION TO MULTIPLAN'S MOTION TO DISMISS SAC
4:20-CV-02254-YGR