1
2
3              IN THE UNITED STATES DISTRICT COURT

4            FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6    **LD, ET AL.,**                                    CASE NO.  4:20-cv-02254 YGR

7                        Plaintiffs,                    **ORDER DENYING MOTION TO DISMISS**

8              v.                                       Re: Dkt. No. 75

9

10   **UNITED BEHAVIORAL HEALTH, ET AL.,**

11                       Defendants.

12        Plaintiffs[1] bring this putative class action against defendants United Behavioral Health

13   ("United") and MultiPlan, Inc. ("MultiPlan") for claims arising out of United's alleged failure to

14   reimburse their claims for Intensive Outpatient Program ("IOP") services at the Usual, Customary,

15   and Reasonable Rate ("UCR") that non-party Summit Estate, Inc. provided to plaintiffs.  Plaintiffs

16   allege that defendants' conduct caused them injury, because it forced them to pay any amounts

17   that United failed to reimburse for the IOP services.  After the Court granted in part and denied in

18   part defendants' motions to dismiss the First Amended Complaint ("FAC"), with leave to amend,

19   plaintiffs filed a Second Amended Complaint ("SAC"), in which they assert, on their own behalf

20   and on behalf of a proposed class of similarly-situated subscribers of insurance policies

21   administered by United, claims under the Employee Retirement Income Security Act of 1974

22   ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  United filed

23   an answer to the SAC.  Now pending is MultiPlan's motion to dismiss the claim under RICO

24   Section 1962(c) that plaintiffs assert against it in the SAC on the ground that it continues to be

25   inadequately pleaded.

26

27        [1] Plaintiffs are LD, DB, BW, RH, and CJ.  Plaintiffs have used pseudonyms to protect the
     confidentiality of their identity pursuant to the Health Insurance Portability and Accountability
28   Act of 1996 ("HIPAA").

United States District Court
Northern District of California

United States District Court
Northern District of California

Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **DENIES** MultiPlan's motion to dismiss.[2]

I. **BACKGROUND**

A. **Initial Complaint**

In the initial complaint, plaintiffs alleged as follows:

Plaintiffs are members of active health insurance policies administered by United. Compl. ¶ 2, Docket No. 1. Every such policy "provided coverage for out-of-network benefits for mental health and substance use disorder treatment at usual, customary, or reasonable rates." *Id.* ¶ 6. United describes UCR rates on its website as being "based on what other health care professionals in the relevant geographic areas or regions charge for their services." *Id.* ¶ 8.

Before obtaining IOP services from Summit Estate, an out-of-network provider, plaintiffs signed a contract with Summit Estate that makes them "responsible for amounts not paid by United." *Id.* ¶ 27. Summit Estate contacted United to verify out-of-network benefits and United represented during these calls ("VOB calls") that the IOP services in question would be paid "at UCR rates." *Id.* ¶ 26. Based on the "plain language" of the plans, "it was understood by all parties that 100% of UCR was equivalent to 100% of the billed charges of Summit Estate." *Id.* ¶¶ 174, 187, 200, 212, 224. United "through plan documents, marketing materials, EOBs, and other materials" represented to plaintiffs that their plans would pay for out-of-network IOP services "at the UCR amount according to an objective, empirical methodology." *Id.* ¶ 104.

After receiving the IOP services, claims were submitted to United for payment according to the "out-of-network rate." *Id.* ¶ 8. Instead of "paying UCR," United engaged Viant, a non-party and MultiPlan's subsidiary, to "negotiate" reimbursements. *Id.* ¶ 18. Viant has "financial incentives" to negotiate low reimbursements. *Id.* ¶¶ 40, 46. Viant's negotiations resulted in offers to Summit Estate to reimburse for IOP services at an amount below the UCR, and United paid the plaintiffs' claims at the reduced Viant amount. *Id.* ¶¶ 36-38. Neither United nor Viant disclosed

---

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court VACATES the hearing set for March 16, 2021.

United States District Court
Northern District of California

1  to plaintiffs the methodology they used for calculating the reimbursement rates for IOP services.
2  *Id.* ¶¶ 44, 127.

3      "Every claim at issue in this litigation has been underpaid by United and overpaid or
4  currently owed by the Plaintiffs and the Class."  *Id.* ¶ 79.  "United's underpayment of the claims at
5  issue here resulted in unduly large balance bills to Plaintiffs."  *Id.* ¶ 99.

6      The Explanation of Benefits ("EOB") letters that United sent to plaintiffs do not state that
7  Viant's repricing is permitted under the plaintiffs' plans and that the repriced amount negotiated
8  by Viant is inconsistent with plan terms.  *Id.* ¶ 53.

9      Plaintiffs brought the action on their own behalf and on behalf of a proposed class of
10 members "of a health benefit plan either administered or insured by United" whose claims for out-
11 of-network IOP services "were underpaid or repriced by United and Viant," *id.* ¶ 233: a claim
12 against (1) United and Viant under RICO, 18 U.S.C. § 1962(c); (2) United for underpaid benefits
13 under ERISA, 29 U.S.C. § 1132(a)(1)(B); (3) United for breach of plan provisions under ERISA,
14 29 U.S.C. § 1132(a)(1)(B); (4) United for ERISA disclosure violations under 29 U.S.C. §
15 1132(c)(1); (5) United for breach of fiduciary duties under 29 U.S.C. § 1109 and 29 U.S.C. §
16 1132(a)(3); (6) United for violations of ERISA's full and fair review statute, 29 U.S.C. § 1133;
17 and (7) two claims against United and Viant for equitable relief under 29 U.S.C. § 1132(a)(3).

18     On August 26, 2020, the Court granted defendants' motions to dismiss all claims in the
19 initial complaint, and it did so with leave to amend.  Docket No. 55.

20     **B.    First Amended Complaint**

21     The FAC differs from the initial complaint in the following ways: (1) plaintiffs substituted
22 MultiPlan for Viant as a defendant; (2) plaintiffs added a claim for conspiracy in violation of
23 RICO, 18 U.S.C. § 1962(d), against both defendants; (3) plaintiffs removed "Federal Health
24 offenses" as the predicate offenses for their RICO claims; (4) plaintiffs abandoned their claim
25 under ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1), for failure to comply with ERISA's
26 disclosure and notice obligations; and (5) plaintiffs modified some of their allegations, as
27 described in more detail below.  FAC, Docket No. 57.

28

United States District Court
Northern District of California

First, the FAC describes the terms of the plans that defendants allegedly breached when they allegedly under-reimbursed the claims for IOP services at issue. The plan terms allegedly require United to reimburse claims "based on available data resources of competitive fees in that geographic area" or "based on UCR rates" in the case of named plaintiff DB. *Id.* ¶¶ 248-279. These plan terms allegedly required United to rely on actual customary rates of similar IOP-services providers in the relevant geographic region. *Id.*

Second, the FAC better explains defendants' alleged scheme to under-reimburse the claims for IOP services at issue. That is, prior to obtaining the IOP services at issue, plaintiffs' provider, Summit Estate, called United to verify that they had plan coverage; during these calls, United's representatives fraudulently represented to Summit Estate that United would pay for the out-of-network IOP services at issue at 100% of the UCR rate after plaintiffs had satisfied their deductibles and co-pays. *See id.* ¶¶ 255, 291, 322, 351, 378. During these calls, the United representatives also stated that "UCR would be paid based on the 80th percentile of charges for similar services in the geographic area." *Id.* Plaintiffs allege that these statements were fraudulent because United did not, in fact, reimburse the IOP-services claims at issue based on the UCR. *Id.*

Next, plaintiffs modified their allegations with respect to the process that United allegedly used to calculate the reimbursements for the claims for IOP services at issue, namely, United and MultiPlan collaborated and conspired to calculate the reimbursements based on Viant's pricing tool ("Viant Outpatient Review," "Viant OPR," or "FRED"), which employs "a flawed, proprietary database of healthcare claims data that is wholly unrepresentative of amounts actually charged by or paid to similar medical providers in Plaintiffs' surrounding area." *Id.* ¶¶ 159-60, 198. As a result, Viant's database generates "fraudulently low payment amounts" relative to the reimbursement amounts that would have been generated if United and MultiPlan instead had relied on the actual customary rates of IOP-services providers in the relevant geographic area, as the plans require. *Id.* ¶¶ 176-79. "The profit or 'margin' from this underpayment was shared by United and MultiPlan." *Id.* ¶ 270.

Once Viant's database and pricing tool generated a rate with respect to a particular claim for IOP services, MultiPlan "returned the rate information to United . . . and United or its subsidiary then issued under-payment to the Plaintiffs' providers for their claims at the rate 'derived' from the Viant methodology." *Id.* ¶ 211. The rates generated through Viant's database and pricing tool were fraudulent because MultiPlan represented them as being consistent with the rates of similar IOP providers in the relevant geographic area. *Id.* ¶ 207. United also represented these rates as "comparable to, and based on, what similar providers in the same geographic area charged or accepted for the same or similar services." *Id.* ¶ 212. Defendants intended the Viant database and pricing tool to "provide the appearance of legitimacy and offer cover for the fraudulent underpayment of IOP claims."[3] *Id.* ¶ 213.

After United under-reimbursed plaintiffs' claims, plaintiffs allegedly received EOBs from United which they claim are misleading because the EOBs did not explain that United's reimbursements had been based on a methodology inconsistent with the plans' requirements. *Id.* ¶¶ 263-64. Further, United omitted information from these communications about the methodology it used to prevent plaintiffs from discovering that United had not complied with the plans' terms when reimbursing the claims, and to prevent plaintiffs from disputing the reimbursements. *Id.* ¶ 264.

Plaintiffs also allege that United and Viant (MultiPlan's "wholly owned subsidiary") sent them Patient Advocacy Department ("PAD") letters that plaintiffs allege are misleading because they do not explain that United's reimbursements for the IOP claims at issue were not performed in accordance with the plans' terms. *Id.* ¶¶ 396-411.

On December 18, 2020, the Court granted in part and denied in part United's and MultiPlan's motions to dismiss the FAC. Docket No. 73. Specifically, the Court granted United's motion to dismiss plaintiffs' claim for violations of 29 U.S.C. § 1133 with prejudice; it granted

---

[3] By contrast, in the initial complaint, plaintiffs alleged that United had engaged Viant to negotiate reimbursements with Summit Estate; that Viant's negotiations with Summit Estate resulted in offers to reimburse the claims for IOP services at an amount below the UCR; and that United paid plaintiffs' claims for IOP services at the reduced Viant amount.

1  with leave to amend MultiPlan's motion to dismiss plaintiffs' claim against it under RICO Section

2  1962(c); and it otherwise denied the motions to dismiss.  *Id.*

3         **C.**      **Second Amended Complaint**

4         On January 15, 2021, plaintiffs filed the SAC.  Docket No. 74.  The SAC differs from the

5  FAC in the following ways: plaintiffs (1) removed the claim against United under 29 U.S.C. §

6  1133; and (2) modified their allegations with respect to their RICO claim under Section 1962(c)

7  against MultiPlan, as will be discussed in more detail below.

8  **II.**    **LEGAL STANDARD**

9         To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

10  matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal*,

11  556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual

12  content that allows the court to draw the reasonable inference that the defendant is liable for the

13  misconduct alleged."  *Id.*  While this standard is not a probability requirement, "[w]here a

14  complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

15  line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks and

16  citation omitted).  In determining whether a plaintiff has met this plausibility standard, the Court

17  must "accept all factual allegations in the complaint as true and construe the pleadings in the light

18  most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  "[A]

19  court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

20  opposition to a defendant's motion to dismiss."  *Schneider v. California Dep't of Corr.*, 151 F.3d

21  1194, 1197 n.1 (9th Cir. 1998).  A court should grant leave to amend unless "the pleading could

22  not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

23  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

24  **III.**    **DISCUSSION**

25         As noted, MultiPlan moves to dismiss the claim under RICO Section 1962(c) that plaintiffs

26  assert against it on the ground that it continues to be inadequately pleaded.[4]

27

28         [4] MultiPlan argues, in passing, that all other claims that plaintiffs assert against it, namely
claims for RICO conspiracy under Section 1962(d), and various claims under ERISA, are also

United States District Court
Northern District of California

To state a claim under RICO Section 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).  Further, "[t]o allege civil RICO standing under 18 U.S.C. § 1964(c), a plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019), *cert. denied*, 207 L. Ed. 2d 171 (June 8, 2020) (citation and internal quotation marks omitted).

In the prior iteration of the complaint, plaintiffs alleged that MultiPlan violated RICO Section 1962(c) by committing the predicate offenses of wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343.  Plaintiffs alleged the following facts in support of this claim:

United and MultiPlan conspired to develop and use a database and pricing tool that would generate the lowest possible reimbursement rates for the out-of-network IOP services at issue, which employed data that did not represent the customary rates of similar IOP providers in the geographic area as required by plaintiffs' plans.  *See* FAC ¶¶ 110-421.  Defendants engaged in this scheme for the purpose of keeping the difference between the artificially low amounts that United reimbursed for the IOP claims at issue and the amount at which the claims should have been reimbursed if the plan requirements had actually been followed by defendants in reimbursing the claims.  *Id.*  United allegedly sent various forms of communication to plaintiffs over interstate mail and wires as part of the scheme, such as VOB calls, EOBs, and PAD letters, which were misleading because they did not disclose that defendants had not or would not use a methodology for reimbursing the claims for IOP services at issue that was consistent with the plan requirements.  *Id.*  Plaintiffs were injured by this alleged scheme because they were forced to pay the difference

---

subject to dismissal under Rule 12(b)(6) for the same reasons it articulated in its prior motions to dismiss.  *See* Docket No. 75 at 3 & n.3 (incorporating by reference the arguments MultiPlan made in its prior motions to dismiss).  The Court previously considered the arguments that MultiPlan made in its prior motions to dismiss and concluded that the claims in question are not subject to dismissal under Rule 12(b)(6).  The Court will not revisit its prior rulings with respect to these claims, as MultiPlan has not satisfied the requirements for moving for reconsideration of a prior court order.  *See* Civil L.R. 7-9 (describing requirements for a motion for leave to file a motion for reconsideration).

1    between the billed amount for the IOP services and the artificially low amounts that United

2    reimbursed.  *Id.*  The billed amounts for the IOP services that plaintiffs received were *lower* than

3    the customary rates of similar IOP providers in the geographic region; because their plans required

4    reimbursement of out-of-network IOP services based on the customary rates of similar IOP

5    providers in the geographic region, their plans should have covered most, if not all, of the billed

6    amounts.  *Id.*

7            In its order of December 18, 2020, the Court evaluated the sufficiency of these allegations

8    with respect to MultiPlan and concluded that plaintiffs had alleged sufficient facts (1) to raise the

9    inference that they have RICO standing (i.e., plaintiffs sufficiently alleged that they suffered a

10   cognizable injury and that such injury was proximately caused by defendants' alleged scheme),[5]

11   and (2) to satisfy all elements of a Section 1962(c) claim *except for* the elements requiring a

12   pattern of racketeering activity involving mail or wire fraud.[6]  Docket No. 73 at 16-24.

13   Specifically, the Court held that plaintiffs had not alleged facts to raise the inference that

14   MultiPlan had engaged in at least two acts of mail fraud or wire fraud.  *Id.*  The Court further

15   noted that, while plaintiffs had sufficiently alleged that United made fraudulent misrepresentations

16   during VOB calls upon which plaintiffs' provider relied[7], plaintiffs had not shown that such

17

18           [5] Because of this ruling in its order of December 18, 2020, the Court does not revisit this
     issue in determining the present motion to dismiss notwithstanding MultiPlan's argument that
19   plaintiffs have not alleged facts to satisfy the proximate cause requirement for stating a RICO
     claim against it.
20

21           [6] Because the Court concluded in its order of December 18, 2020, that plaintiffs'
     allegations are sufficient to satisfy the other elements of a RICO claim under Section 1962(c),
22   namely (1) that defendants participated in an enterprise; (2) that defendants engaged in conduct
     that amounted to directing the enterprise's affairs; and (3) that plaintiffs have RICO standing,
23   Docket No. 73 at 16-24, the Court need not revisit those elements for the purpose of resolving the
     present motion.  Plaintiffs did not modify their allegations with respect to these elements since the
24   Court's order of December 18, 2020.

25           [7] In its order of December 18, 2020, the Court held that plaintiffs had sufficiently alleged
     the requisite third-party reliance on United's alleged misrepresentations to satisfy the requirement
26   of proximate cause to state a claim under RICO.  Docket No. 73 at 18-19.  Accordingly, the Court
     need not revisit this issue in determining the present motion to dismiss notwithstanding
27   MultiPlan's argument that plaintiffs have not alleged facts to satisfy the proximate cause
     requirement for stating a RICO claim by showing reliance on alleged misrepresentations.  As will
28   be discussed below, MultiPlan can be held liable for United's alleged misrepresentations upon
     which plaintiffs' provider relied.

1    misrepresentations or any other representations by United, such as PAD letters that United

2    allegedly sent to plaintiffs after they had already obtained the IOP services at issue, could serve as

3    the racketeering activity necessary to state a claim against MultiPlan under Section 1962(c).  The

4    Court, therefore, dismissed the Section 1962(c) claim against MultiPlan, and it did so with leave to

5    amend the complaint to attempt to satisfy the elements requiring a pattern of racketeering activity

6    involving mail or wire fraud.

7         Accordingly, the elements requiring a pattern of racketeering activity involving mail or

8    wire fraud are the only elements at issue in the present motion.  They are governed by the

9    following standards.

10        A "pattern of racketeering activity requires at least two acts of racketeering activity, one of

11   which occurred after [1970] and the last of which occurred within ten years after the commission

12   of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  Racketeering activity is also referred

13   to as the "predicate acts."  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co*., 431 F.3d 353,

14   361 (9th Cir. 2005).  Offenses that can constitute predicate acts for a RICO violation are listed in

15   18 U.S.C. § 1961(1) and include wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and

16   1343.  Wire fraud and mail fraud share the same elements: (1) that the defendant formed a scheme

17   to defraud; (2) used the United States wires [for wire fraud] or United States mail [for mail fraud]

18   in furtherance of the scheme; and (3) did so with a specific intent to deceive or defraud.  *Schreiber*

19   *Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1400 (9th Cir. 1986) (citations omitted).

20        In the SAC, Plaintiffs allege that MultiPlan is liable, by virtue of being United's co-

21   schemer, for the fraudulent communications that United sent to plaintiffs by interstate mail and

22   wires as part of defendants' alleged scheme.  SAC ¶¶ 110-431.  Plaintiffs argue that these

23   allegations satisfy the missing elements of pattern of racketeering activity involving mail or wire

24   fraud.

25        The Ninth Circuit has recognized that a pattern of racketeering activity involving mail or

26   wire fraud can be established under a "co-schemer" theory of liability where a RICO Section

27   1962(c) claim is predicated on a mail or wire fraud scheme that involves two or more participants.

28   Because the element of "scheme to defraud" required to state a claim for wire fraud or mail fraud

*United States District Court*
*Northern District of California*

9

is treated similarly to a conspiracy, "[a] knowing participant in a scheme to defraud is vicariously liable for substantive acts of mail fraud or wire fraud committed by co-schemers." *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002):

> Mail and wire fraud share as a common first element the existence of a scheme to defraud, which, when more than one person is involved, is analogous to a conspiracy. . . . Because an essential element of these offenses is a fraudulent scheme, mail and wire fraud are treated like conspiracy in several respects. Similar evidentiary rules apply. Just as acts and statements of co-conspirators are admissible against other conspirators, so too are the statements and acts of co-participants in a scheme to defraud admissible against other participants. We also apply similar principles of vicarious liability. Like co-conspirators, "knowing participants in the scheme are legally liable" for their co-schemers' use of the mails or wires.

*Id.* (quoting *United States v. Lothian*, 976 F.2d 1257, 1262-63 (9th Cir. 1992)). Based on these principles, "a defendant may be held liable for mail or wire fraud if (1) the defendant was a knowing participant in a scheme to defraud; (2) the defendant had the intent to defraud; and (3) a co-schemer committed acts of mail or wire fraud during the defendant's participation in the scheme, and those acts were within the scope of the scheme." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *12 (N.D. Cal. Oct. 30, 2017) (citing *Stapleton* 293 F.3d at 1117-18). So long as these requirements are met, a defendant need not make any fraudulent representations itself in order to be liable for the mail fraud or wire fraud committed by its co-schemer. *Id.*

Here, plaintiffs have alleged sufficient facts to raise the inference that MultiPlan engaged in a pattern of racketeering activity involving mail and wire fraud by virtue of being United's "co-schemer." Plaintiffs allege factual matter showing that MultiPlan knowingly participated in and directed[8] defendants' alleged scheme with the intent to defraud and under-reimburse plaintiffs.

---

[8] MultiPlan argues that plaintiffs' allegations suggest that MultiPlan merely aided and abetted the scheme, which they argue is insufficient involvement in the scheme to state a claim against it under Section 1962(c). The Court disagrees. As noted above, the Court held in its order of December 18, 2020, that plaintiffs have sufficiently alleged that MultiPlan "had some part in *directing*" the alleged scheme, which satisfies the "conduct" element required for a RICO Section 1962(c) claim. Docket No. 73 at 21 (emphasis added). Accordingly, MultiPlan's level of involvement in the alleged scheme is sufficient for plaintiffs to state a claim against it under Section 1962(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

*See, e.g.*, SAC ¶¶ 154-58; 415-20; 466-72; 110-431. Plaintiffs further aver that, in furtherance of this scheme, and while MultiPlan was a part of the scheme, United made fraudulent misrepresentations to plaintiffs' provider during VOB calls[9] and sent to plaintiffs other communications via interstate mail or wires, including PAD letters. *Id.* These allegations are sufficient at this juncture for the Court to infer that MultiPlan can be liable for the fraudulent misrepresentations and mail and wire communications that United sent to plaintiffs in furtherance of the alleged scheme under the co-schemer theory of liability. These averments, therefore, satisfy the missing elements of pattern of racketeering activity involving mail or wire fraud, and when considered in conjunction with the rest of the allegations supporting the remaining elements for a claim under Section 1962(c), which the Court analyzed in its order of December 18, 2020, they are sufficient to state a claim against MultiPlan under Section 1962(c).

MultiPlan argues that plaintiffs' allegations that it participated in the alleged scheme are conclusory and insufficient to state a claim under Section 1962(c). The Court disagrees. MultiPlan fails to take into account the new allegations that plaintiffs added to the SAC *in combination* with the other allegations that are not new and that the Court analyzed in its order of December 18, 2020. When construing *all* of plaintiffs' allegations in the light most favorable to plaintiffs, as the Court must at this juncture, the averments contain sufficient factual matter to satisfy *Iqbqal's* pleading requirements as to the claim at issue.

MultiPlan next contends that plaintiffs' Section 1962(c) claim is subject to dismissal because they have not alleged that MultiPlan made any misrepresentations that could have led plaintiffs to believe that they would receive a specific amount in reimbursement for their IOP claims. This argument does not persuade. As discussed above, under the co-schemer theory of liability, MultiPlan need not have made any misrepresentations itself for it to be liable for mail or wire fraud where, as here, plaintiffs have alleged sufficient factual matter to raise the inference

---

[9] In its order of December 18, 2020, the Court considered the sufficiency of plaintiffs' allegations regarding United's fraudulent misrepresentations and concluded that they are sufficiently specific to meet the requirements of Rule 9(b). *See* Docket No. 73 at 23-24. Because MultiPlan can be held liable for United's alleged fraudulent misrepresentations under the co-schemer theory of liability, MultiPlan's argument that plaintiffs' allegations regarding fraud are insufficient to meet Rule 9(b)'s requirements fails.

that MultiPlan knowingly and intentionally participated in the scheme to defraud and under-reimburse plaintiffs, pursuant to, and in the scope of which, United allegedly made fraudulent misrepresentations upon which plaintiffs' provider relied. *See In re Volkswagen*, 2017 WL 4890594, at *12 (holding that "each member of the scheme does not need to make a separate misrepresentation").

MultiPlan next contends that it cannot be liable under Section 1962(c) based on the "co-schemer" theory of liability because its involvement in the alleged scheme to defraud plaintiffs began only after United allegedly had already made fraudulent misrepresentations to plaintiffs' provider during VOB calls. This argument is unconvincing, as it ignores that plaintiffs plausibly allege that the scope of the alleged scheme encompassed the VOB calls in question, and that Multiplan participated in and directed the scheme as a whole, not just certain portions of it. That Viant (MultiPlan's subsidiary) allegedly began to handle claims for IOP services only after United had already made alleged misrepresentations during VOB calls does not alter the fact that plaintiffs plausibly allege that MultiPlan knowingly participated and directed the scheme which, again, encompassed the VOB calls in question as well as other conduct in furtherance of the scheme that took place before and after Viant began to handle IOP claims.

In light of the foregoing, the Court **DENIES** MultiPlan's motion to dismiss the RICO Section 1962(c) claim that plaintiffs assert against it.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** MultiPlan's motion to dismiss. MultiPlan shall file an answer to the SAC within fourteen days of the date this order is filed.

This order terminates Docket Number 75.

**IT IS SO ORDERED.**

Dated: March 11,  2021

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE