# EXHIBIT B

Matthew M. Lavin, Esq. (*pro hac vice*)
Aaron R. Modiano, Esq. (*pro hac vice*)
**NAPOLI SHKOLNIK PLLC**
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

David M. Lilienstein, Esq. (CA SBN 218923)
Katie J. Spielman, Esq. (CA SBN 252209)
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LD, DB, BW, RH and CJ on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, INC. a California corporation, and MULTIPLAN, INC., a Nevada corporation,<br><br>*Defendants*. | Case No. 4:20-cv-02254-YGR<br>Related Case: 4:20-cv-02249-YGR<br><br>PLAINTIFF BW'S RESPONSE TO DEFENDANT UNITED BEHAVIORAL HEALTH'S FIRST SET OF INTERROGATORIES |

RESPONDING PARTY:    Plaintiff BW

PROPOUNDING PARTY:    Defendant UNITED BEHAVIORAL HEALTH

SET NUMBER:    ONE

**TO DEFENDANT UNITED BEHAVIORAL HEALTH AND ITS ATTORNEY OF RECORD:**

Plaintiff BW responds as follows:

<u>**INTRODUCTORY COMMENTS**</u>

Respondent's answers are given without prejudice to producing at the time of trial subsequently discovered information or information omitted by said responses due to good faith oversight.

In setting forth these responses, Plaintiff does not waive the attorney/client, work product, or other privilege or immunity from disclosure which might attach to information called for in, or responsive to, any request. In responding to any and all portions of any request, Plaintiff does not concede the relevance or materiality of the request or the subject matter to which the request refers.

These responses are submitted by Plaintiff subject to, and without in any way waiving or intending to waive, but on the contrary, intending to reserve and reserving:

1       All questions as to competency, materiality, privilege and admissibility as evidence for any purpose of any of the documents referred to or responses given, or the subject matter thereof, and any subsequent proceeding in, or trial of, this action or any other proceedings;

2       The right to object to other discovery procedures involving or relating to the subject matter of the requests herein responded to, including any request for production of documents specifically identified herein; and

3       The right at any time to revise, correct, add to, or clarify any of the responses set forth herein, or documents produced or referred to herein.

<u>**GENERAL OBJECTIONS**</u>

1       Plaintiff DB ("Plaintiff") submits his responses subject to all objections ordinarily available if such statements are offered in court. All such objections are hereby expressly reserved and may be interposed at the time of trial or at any other time. No response to any Request is intended to be, nor shall any response be construed as, a waiver by Plaintiff of all or any part of any objection to any Request.

2       Plaintiff's research, discovery, and preparation for trial in this matter are presently ongoing and are not yet complete. This response reflects only the information which is presently

known to Plaintiff based upon his knowledge to date. Plaintiff anticipates that his continuing discovery and investigation may reveal information not presently known to Plaintiff, or information whose significance is not presently known to him, upon which Plaintiff may rely at trial. Accordingly, Plaintiff's responses to these Interrogatories is made without prejudice to Plaintiff's right to produce additional information at a later date and to introduce such information at the time of trial.

3    Plaintiff objects to each Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine and/or any other privilege or immunity. The inadvertent production of such information shall neither constitute waiver of any privilege nor a waiver of any rights. Plaintiff may have to object to the use of any of the information in any subsequent pretrial proceedings or at trial.

4    Plaintiff objects to each Interrogatory to the extent that it is overbroad and that it seeks the production of information which is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

5    Plaintiff objects to each Interrogatory to the extent that it is vague and ambiguous and/or creates confusion given the issues involved in this litigation.

6    Plaintiff objects to each Interrogatory to the extent that it is burdensome and oppressive and that compliance with specific requests would be unreasonably difficult and/or expensive.

7    Plaintiff objects to the entire set of Interrogatories to the extent that it seeks information equally available to the propounding party.

8    Subject to these general objections and the specific objections below, Plaintiff will provide responses indicated below in accordance with its obligations under the Federal Code of Civil Procedure.

## RESPONSE TO SPECIAL INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each claim for benefits at issue in the Complaint, including any claims by you or any putative class member.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff objects to this Interrogatory on the grounds that it seeks information that is protected by the attorney-client privilege. Plaintiff further objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds that his claims include but are not limited to:

Pursuant to Fed. R. Civ. P. 33(d) Plaintiff has elected to produce records as to his claims for benefits at issue in the Complaint:

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 2:**

For each claim for benefits identified in response to Interrogatory No. 1, state any amounts and/or expenses that you paid out-of-pocket, including the amounts alleged in paragraphs 29, 329, 331–32, 507, and 525 of the Complaint.

**ANSWER:**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Plaintiff asserts the following as set forth in the Second Amended Complaint:

324. The Plan sets forth an annual out-of-pocket maximum of $4000 for each person or $8000 for a family, and provides that "[a]fter the maximum has been reached, the plan pays 100 percent of eligible costs."

325. BW had already reached his annual out-of-pocket maximum by the time he began IOP treatment at Summit Estate in July of 2019.

326. Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card. During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR. During this call, United's representative stated that UCR would be paid based on the 80th percentile of charges for similar services in the geographic area.

329. Based upon United's many assurances regarding the expected rate of reimbursement and authorizations, and with an understanding of the plain terms of the employer benefit plan, BW decided to attend treatment at Summit Estate and paid, in full and up front, all out of pocket cost sharing expenses, such as the deductible and co-insurance, in order to take full advantage of the

maximum benefit available: 100% of UCR. But United did not pay the rate set forth in the Plan and that had been confirmed on the verification call.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 3:**

For each claim for benefits identified in response to Interrogatory No. 1, state the amount of benefits or other monetary amount that you contend should have been paid by Defendants and/or your benefit plan and the basis for your contention, including any "UCR" sources or methodologies that you contend should have been used. *See*, *e.g.*, Compl. ¶¶ 331–332, 334.

**ANSWER**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Plaintiff has set forth applicable language from his insurance policy in the Second Amended Complaint at ¶¶ 319, 322-324.

Further, as stated in the Second Amended Complaint at ¶¶ 326-328:

"326. Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card. During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR. During this call, United's representative stated

that UCR would be paid based on the 80th percentile of charges for similar services in the geographic area.

327. Summit Estate's full billed charges for IOP services is $2,156 per diem.

328. The Fair Health 80th percentile of charges for similar services in the geographic area for IOP services in Summit Estate's zip code is $2,576 per diem."

Plaintiff realleges and reasserts the damages asserted in the Complaint as if fully set forth herein.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 4:**

For each claim for benefits identified in response to Interrogatory No. 1, identify any assignments of benefits, direct payment authorizations, powers of attorney, authorized representative forms, or other similar assignments or authorizations to any third party (including the provider and/or facility that rendered the service).

**ANSWER**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d) Plaintiff has elected to produce records:

PLD0001160 – PLD0001177 Kipu Systems record

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 5:**

For each claim for benefits identified in response to Interrogatory No. 1, identify each document you contend is part of the administrative record.

**ANSWER**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Plaintiff's claims were underpaid as set forth in the Complaint. The 'Administrative Record' to the extent that the Administrative Record consists of material available to Defendants at the time they approved Plaintiff's claims, is already in their possession. As the Complaint disputes the rate of payment under ERISA, not the right to payment which has already been established and is not in dispute, as well as Federal RICO claims, this interrogatory exceeds the scope of permissible discovery.

Further, Plaintiff objects to this Request as "ERISA defines the administrative record as all material that (i) the insurer relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, regardless of whether the insurer relied upon the material in making the benefit determination; (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA in making the benefit determination; and (iv) in the case of a group health plan like the one at issue here, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, regardless of whether the insurer relied upon the advice or statement in making the benefit determination. 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8) and (b)(5); *see also Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009)." *Andrew C. v. Oracle Am. Inc. Flexible Benefit Plan*, No. 17-CV-02072-YGR, 2019 WL 1931974, at *3 (N.D. Cal. May 1, 2019)

Subject to the foregoing and without waiving same, pursuant to Fed. R. Civ. P. 33(d) Plaintiff elects to produce the following records:

PLD0000001 August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002 August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003 August 23, 2019 Letter from "Patient Advocacy Department"

| | |
|---|---|
| PLD0000004 | August 23, 2019 Letter from "Patient Advocacy Department" |
| PLD0000005 – PLD0000357 | 2018 Apple SPD |
| PLD0000358 – PLD0000708 | 2019 Apple SPD |
| PLD0000709 – PLD0000722 | Kipu Record |
| PLD0000723 – PLD0000725 | Kipu Record |
| PLD0000726 – PLD0000731 | Provider Remittance Advice dated 04/28/2020 |
| PLD0000732 – PLD0000741 | Provider Remittance Advice dated 02/28/2020 |
| PLD0000742 – PLD0000759 | Provider Remittance Advice dated 02/14/2020 |
| PLD0000760 – PLD0000773 | Provider Remittance Advice dated 02/07/2020 |
| PLD0000774 – PLD0000781 | Provider Remittance Advice dated 01/31/2020 |
| PLD0000782 – PLD0000795 | Provider Remittance Advice dated 01/17/2020 |
| PLD0000796 – PLD0000807 | Provider Remittance Advice dated 01/10/2020 |
| PLD0000808 – PLD0000815 | Provider Remittance Advice dated 01/03/2020 |
| PLD0000816 – PLD0000833 | Provider Remittance Advice dated 12/27/2019 |
| PLD0000834 – PLD0000845 | Provider Remittance Advice dated 12/06/2019 |
| PLD0000846 – PLD0000869 | Provider Remittance Advice dated 11/29/2019 |
| PLD0000870 – PLD0000885 | Provider Remittance Advice dated 11/15/2019 |
| PLD0000886 – PLD0000913 | Provider Remittance Advice dated 11/08/2019 |
| PLD0000914 – PLD0000933 | Provider Remittance Advice dated 11/01/2019 |
| PLD0000934 – PLD0000963 | Provider Remittance Advice dated 10/11/2019 |
| PLD0000964 – PLD0000985 | Provider Remittance Advice dated 09/27/2019 |
| PLD0000986 – PLD0001001 | Provider Remittance Advice dated 09/13/2019 |
| PLD0001002 – PLD0001017 | Provider Remittance Advice dated 09/06/2019 |
| PLD0001018 – PLD0001061 | Provider Remittance Advice dated 08/30/2019 |
| PLD0001018 – PLD0001061 | Provider Remittance Advice dated 08/30/2019 |
| PLD0001062 – PLD0001064 | Electronic PRA dated 05/01/2020 |
| PLD0001065 – PLD0001066 | Electronic PRA dated 03/04/2020 |
| PLD0001067 – PLD0001070 | Electronic PRA dated 02/02/2020 |

| | |
|---|---|
| PLD0001071 – PLD0001073 | Electronic PRA dated 02/02/2020 |
| PLD0001074 – PLD0001076 | Electronic PRA dated 01/23/2020 |
| PLD0001077 – PLD0001079 | Electronic PRA dated 01/15/2020 |
| PLD0001080 – PLD0001082 | Electronic PRA dated 01/08/2020 |
| PLD0001083 – PLD0001087 | Electronic PRA dated 01/02/2020 |
| PLD0001088 – PLD0001090 | Electronic PRA dated 12/11/2019 |
| PLD0001091 – PLD0001095 | Electronic PRA dated 12/04/2019 |
| PLD0001096 – PLD0001099 | Electronic PRA dated 11/20/2019 |
| PLD0001100 – PLD0001105 | Electronic PRA dated 11/14/2019 |
| PLD0001106 – PLD0001111 | Electronic PRA dated 11/06/2019 |
| PLD0001112 – PLD0001119 | Electronic PRA dated 10/17/2019 |
| PLD0001120 – PLD0001124 | Electronic PRA dated 10/02/2019 |
| PLD0001125 – PLD0001128 | Electronic PRA dated 09/18/2019 |
| PLD0001129 – PLD0001131 | Electronic PRA dated 09/11/2019 |
| PLD0001132 – PLD0001141 | Electronic PRA dated 09/05/2019 |
| PLD0001156 – PLD0001159 | PAD Letters |

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 6:**

For each claim for benefits identified in response to Interrogatory No. 1, identify each plan term that you contend was breached.

**ANSWER**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Plaintiff reasserts ¶¶319-324 from the Second Amended Complaint:

319. BW's Apple United PPO Plan in effect at the time of his treatment provides that when Covered Health Services other than pharmaceutical products are provided by an out-of-network provider, Eligible Expenses are determined based on "available data resources of competitive fees in that geographic area." The specific Plan provision describing the reimbursement methodology for out-of-network services states the following:

> When Covered Health Services are provided by an out-of-network provider, Eligible Expenses are determined, based on:
>
> • Negotiated Rates agreed to by the out-of-network provider and either UHC or one of UHC's vendors, affiliates or subcontractors, at UHC's discretion.
>
> • If rates have not been negotiated, then one of the following applies:
>
> o For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.
>
> o When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market.
>
> o When a rate is not published by CMS for the service, UnitedHealthcare uses a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale. The relative value scale is usually based on the difficulty, time, work, risk and resources of the service. If the relative value scale currently in use becomes no longer available, UnitedHealthcare will use a comparable scale(s).

320. Summit Estate does not have a negotiated rate with UHC or any of its vendors, affiliates, or subcontractors.

321. IOP services are not Pharmaceutical Products. The Plan describes pharmaceutical products as growth hormone therapy and prescription drugs that can be obtained only with a prescription written by a qualified physician.

322. The Plan provides that "When you receive care through an out-of-network provider, the plan pays 70 percent of Eligible Expenses after the out-of-network deductible is met." The Plan further provides that "[i]f you do not have access to UHC preferred network providers in your residential area, contact UHC Member Services at 866-348-1286. UHC can help you find network providers or make arrangements to have your out-of-network claim paid at the network level of benefits."

323. The Plan provides that "[i]f you choose a UHC network provider, the plan pays 90 percent of your costs for most other services, after a $300 per person (or a maximum of $900 per family) deductible."

324. The Plan sets forth an annual out-of-pocket maximum of $4000 for each person or $8000 for a family, and provides that "[a]fter the maximum has been reached, the plan pays 100 percent of eligible costs."

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 7:**

For each claim for benefits identified in response to Interrogatory No. 1, identify the standard of review that you contend applies and the basis for your contention, including any plan term.

**ANSWER**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

The Court has ordered the Parties to submit briefing to the Court as to the applicable standard of review in the present matter and expects that the Court will determine the standard of review that applies. It is Plaintiff's position that the *de novo* standard of review applies and the basis for such position is set forth in Plaintiff's briefing on the issue.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 8:**

For each claim for benefits identified in response to Interrogatory No. 1, identify each communication by either defendant and state whether you contend the statement was fraudulent, deceptive, or involved mail or wire fraud.

**ANSWER**

Plaintiff objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff elects to produce the following records:

PLD0000001  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000004  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0001156 – PLD0001159 PAD Letters

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

Plaintiff reasserts the following from the Second Amended Complaint:

326. Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card. During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR. During this call, United's representative stated that UCR would be paid based on the 80th percentile of charges for similar services in the geographic area.

416. Defendants committed wire or mail fraud each and every time a faulty or inadequate payment was mailed or transmitted to Plaintiffs or their agents.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 9:**

Describe in detail each alleged breach of fiduciary duty, including any witnesses, documents, or other facts or evidence that you contend support each element of a breach of fiduciary duty.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff objects to this Interrogatory on the grounds that it calls for a legal conclusion.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Plaintiff reasserts the following paragraphs as set forth in the Second Amended Complaint:

490. United breached its fiduciary duties to Plaintiffs and the Class by failing to pay proper out-of-network benefits without justification. United therefore owes, and should be ordered to pay, the benefits that were illegally underpaid based on the policies detailed herein.

502.  United acted as a "fiduciary" to Plaintiffs and the Class as such term is understood under 29 U.S.C. § 1002(21)(A).

503. As an ERISA fiduciary, United owed, and owes, its Members in ERISA plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of a like enterprise.

504. Further, ERISA fiduciaries must act in accordance with the documents and instruments governing the group plan. 29 U.S.C. § 1104(a)(l)(B) and (D).

505. In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, United violated its fiduciary duty of care.

506. As an ERISA fiduciary, United owed and owes its Members a duty of loyalty, defined as an obligation to make decisions in the interest of its Members, and to avoid self-dealing or financial arrangements that benefit it at the expense of its Members under 29 U.S.C. § 1106. United cannot, for example, make benefit determinations for the purpose of saving money at the expense of its Members.

507. United violated its fiduciary duties of loyalty and due care by, *inter alia*, making out-of-network benefit reductions and adverse benefit determinations that were not authorized by the plan documents and were also misrepresented on EOBs sent to the Plaintiffs and the Class, causing Plaintiffs and the Class to incur, and pay out of pocket for treatment services that should have been paid by United.

508. In certain self-insured plans, which are sometimes designated ASO, United makes the final decision on benefit appeals and/or has been given authority, responsibility and discretion with regard to benefits.

509. Where United acts as a fiduciary or performs discretionary benefit determinations or otherwise exercises discretion, or determines final benefit appeals, United is liable for underpaid

benefits to Plaintiffs and the Class in both fully insured health plans, where benefits are paid from United's assets, and in employer-funded ERISA health plans.

510. United breached its fiduciary duties by sending non-compliant EOBs and other communications to Plaintiffs and the Class.

511. In addition, United violated (and continues to violate) its fiduciary duty of loyalty by failing to inform Plaintiffs and the Class of material information, including but not limited to flaws in the data and methodology used to determine UCR reimbursement, namely, the UCR reimbursement does not actually reflect a true and accurate UCR.

512. In fact, by using the U.S. mails and interstate wire facilities, United made representations about UCR and payments for IOP services that it knew were untrue. United knew that both it and Viant made arbitrary and capricious decisions as to "UCR" that did not reflect a true and accurate UCR with United providing financial incentives to MultiPlan that allowed United to pay less than the UCR in violation of the plan terms.

513. In relying on improper pricing methods, which were non-compliant with its contractual obligations and invalid to make UCR determinations, and in applying, inter alia, a third party repricing agent, MultiPlan's Viant, that was not authorized and nowhere disclosed to Plaintiffs and the Class in their plan documents, United violated its fiduciary obligations to Plaintiffs and the Class.

514. Plaintiffs and the Class are entitled to assert a claim for relief for United's violation of its fiduciary duties under 29 U.S.C. § l132(a)(3), including injunctive and declaratory relief, and its removal as a breaching fiduciary.

Plaintiff has also produced records pursuant to Fed. R. Civ. P. 33(d):

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

18

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

PLD0000001   August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002   August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003   August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000004   August 23, 2019 Letter from "Patient Advocacy Department"

PLD0001156 – PLD0001159 PAD Letters

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 10:**

Describe in detail each alleged violation of RICO, including any witnesses, documents, or other facts or evidence that you contend support each element of a RICO violation.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Plaintiff reasserts ¶¶ 71, 111-112, 117, 119, 122-123, 150, 162-163, 167, 175, 177, 181, 192-196, 198-200, 213-214, 419-421. of the Second Amended Complaint:

71. Both United and MultiPlan had management and control over how Viant's methodology was employed to underpay the claims as set forth in more detail in the following sections.

111. Defendants, United and MultiPlan, have associated to form an ongoing informal organization, with the common purpose of engaging in a course of conduct, including the development and implementation of a scheme to fraudulently underpay out-of-network IOP services.

112. Defendants joined together to create and exploit a false and fraudulently manipulated database as an excuse for under-reimbursing Plaintiffs for services provided, to the Defendants' financial benefit.

117. Both Defendants worked together to develop the false and fraudulent UCR rates that were applied to out-of-network IOP claims.

119. United determined the fraudulent rates for under-payment that would be presented as UCR, showing its management over the enterprise, and MultiPlan developed the methodology employed through Viant to achieve United's low rates, without regard to actual usual and customary rates.

122. United's issuing of the actual under-payment for the Plaintiffs' and other IOP claims shows its management over the scheme.

123. United and MultiPlan's PAD letters sent to Plaintiffs with both of their names in the letterhead, containing multiple, demonstrably false representations, show their joint management of the scheme.

150. United and Viant's employees responsible for Outpatient Review (OPR) had FAIR Health data loaded onto their virtual "Toolbox" in their in-house claims routing system known colloquially at Multiplan and Viant as "FRED", and they could have properly applied FAIR Health benchmark pricing at any time, but they consciously chose not to do so. Instead, they employed a fraudulent, underpayment scheme that damaged providers and Plaintiffs in their persons and property.

162. MultiPlan offers a host of mechanisms for "cost control." It has an internal engine, known within the company as FRED. FRED takes inputs from the claims United forwards to it, and routes them to the chosen repricing tool. Publicly, Viant summarizes its methodology as follows: a tool to evaluate "outpatient claims for opportunities to reduce the charges to levels that are usually charged by the provider and customarily charged by similar providers in the area for equivalent services" based on "on payer-established parameters."

163. In reality, however, Viant's calculations and methodology are not completely or even partially transparent: *i.e.* they are deliberately opaque. Viant uses a complex methodology

implemented by a proprietary software engine designed to cull the lowest possible number from a flawed, proprietary database of healthcare claims data that is wholly unrepresentative of amounts actually charged by or paid to similar medical providers in Plaintiffs' surrounding area.

167.  Viant's methodology thus operates by culling data from a "Outpatient Standard Analytical File" ("SAF"). An SAF is composed of data that are collected from Medicare Part B providers for services rendered to Medicare beneficiaries by the Department of Health and Human Services (DHHs) / Centers for Medicaid and Medicaid Services (CMS).

175.  Instead of using FAIR Health that does contain actual data for HCPCS H0015, the Viant methodology "crosswalks" the healthcare claims. "Crosswalking" is technical jargon for the process of using rates for one service to come up with or fill-in rates for another service.

177.  The Viant methodology's crosswalking, reflects a subjective decision that is directed by United and implemented by MultiPlan. The crosswalking is not subject to independent review, scrutiny, or oversight.

181.  The direction given by United and implementation undertaken by MultiPlan shows that both United and MultiPlan exercised management and direction over the RICO enterprise.

192. United knew that it was required to pay Plaintiffs' out-of-network IOP claims based on rates equivalent to amounts charged for similar services by similar providers in patients' treating providers' geographic areas.

193.  However, instead of using the FAIR Health Database or its own internal data, United used MultiPlan to produce rates. The lower the rate that MultiPlan produced, the more money MultiPlan was paid.

194.  MultiPlan offered a menu of pricing tools that it knew would be used to produce fraudulently depressed payment rates for the UCR for IOP services.

195. For all of the claims at issue here, United and MultiPlan agreed to use the Viant methodology instead of one of MultiPlan's other, legitimate services.

196. United deliberately avoided using MultiPlan's legitimate services because those services priced claims at rates higher than what United wanted pay. United opted to use Viant's methodology

because it knew, based on meetings between United and MultiPlan, that the payment rates Viant's methodology would produce would be artificially low.

198. The pricing process starts with United forwarding a claim to MultiPlan. At its sole discretion, United chooses which claims to price internally, which claims to send for one of MultiPlan's other, legitimate, pricing services, and which claims to price through Viant.

199. United sends claim information to MultiPlan via a software "electronic data interchange" program ( "EDI"). The EDI process allowed United to communicate several critical inputs to MultiPlan:

- Claims Information (Policy Type, Charge Amount, CPT/HCPCS Codes)
- Designated Repricing Tool (Data iSight, Negotiations, Viant, Rental Networks, or some combination of those tools)
- The Benchmark "target price" for the claim (i.e. the benchmark price that determined MultiPlan's compensation); or
- The percentile (usually 60% or 40%) of the manipulated, "crosswalked" SAF database to use to set a benchmark rate (explained below).

200. Once MultiPlan received information from UHC, it started the repricing process by sending UHC's inputs through its "Claims Savings Engine" known internally as FRED which routed the claim to Viant.

213. In addition to the corrupted Viant methodology, United sent Viant a "target rate" for each claim. The "target rate" is United's arbitrarily selected rate for IOP treatment. United sent MultiPlan the target rate for each claim at issue in this litigation. The target rate thus became the benchmark amount to be paid for the IOP claim.

214. Within MultiPlan this was known as a "meet or beat" price. In all cases, United had complete control over the Target Price and MultiPlan had complete control over its use in the Viant methodology. The following flow chart summarizes the process Defendants use to illegally price the claims: [Diagram in Second Amended Complaint].

419. The PAD letters are part of the overall scheme to defraud; they reflect that Defendants worked together, further the illegal objective of the Enterprise, and thus constitute predicate acts of racketeering activity by both Defendants.

420. The underpayments made to Plaintiffs, although issued by United, also constitute predicate acts by both Defendants as they worked together as part of the scheme to defraud, to create, misrepresent, and pay a fraudulent UCR, to knowingly and intentionally not pay the amounts they were legally required to pay.

421. To keep this fraud hidden, the patients are discouraged from contacting their employers who issued the plan, their providers or even United and are instead redirected to the enterprise and directed to let the enterprise handle the matter. This is the "liability shield" in action that Viant promised to its Enterprise co-conspirator United.

Plaintiff has also produced records pursuant to Fed. R. Civ. P. 33(d) with correspondence reflecting Defendant's violation of RICO:

PLD0000001  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000004  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0001156 – PLD0001159 PAD Letters

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 11:**

List all sources of mental health and/or substance abuse coverage for you or any putative class member and the dates of enrollment in that coverage.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff objects to this Interrogatory on the grounds that it seeks information that is protected by BW's right to privacy and that is not directly related to a disputed issue in the lawsuit. Plaintiff further objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d) Plaintiff has elected to produce records as to his employer sponsored health benefits plan:

PLD0000005 – PLD0000357 2018 Apple SPD

PLD0000358 – PLD0000708 2019 Apple SPD

PLD0001824 – PLD0002176 2018 Apple Full Time Employees Benefits Book

PLD0002189 – PLD0002538 2019 Apple Full Time Employees Benefits Book

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 12:**

Identify all claims for benefits and/or treatments you received for mental health and/or substance abuse disorders, including but not limited to any residential treatment, intensive outpatient programs, or other treatment of any type, regardless of whether you contend the treatments were

1  properly reimbursed. (Any claims for benefits and/or treatments already identified in response to

2  Interrogatory No. 1, above, need not be listed again here.)

3  **ANSWER:**

4          Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and

5  unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already

6  known to and in the possession of the propounding party. Plaintiff objects to this Interrogatory on

7  the grounds that it seeks information that is protected by BW's right to privacy and that is not

8  directly related to a disputed issue in the lawsuit. Plaintiff further objects that the Interrogatory seeks

9  information from third parties and information not within Plaintiff's possession, custody, control, or

10  personal knowledge.

11          Subject to the foregoing and without waiving same, Plaintiff responds as follows:

12          Plaintiff has elected to produce the following documents pursuant to Fed. R. Civ. P. 33(d):

13          PLD0001160 – PLD0001177 Kipu Systems record

14          PLD0001178 – PLD0001192 Kipu Systems record

15          Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and

16  relevant information becomes available and known to him.

17  **INTERROGATORY NO. 13:**

18          For each treatment identified in response to Interrogatory Nos. 1 and 12, identify each

19  communication with a provider and/or facility (including any employee or representative of the

20  provider and/or facility) about benefits, coverage, payment, reimbursement, a payment plan or

21  schedule, discounts, demands for payment, collections, waivers, write-offs, "UCR," or any other

22  financial arrangements related to the treatment.

23  **ANSWER**

24          Plaintiff objects that the Interrogatory calls for information already known to and in the

25  possession of the propounding party. Plaintiff further objects that the Interrogatory seeks

26  information from third parties and information not within Plaintiff's possession, custody, control, or

27  personal knowledge.

28          Subject to the foregoing and without waiving same, Plaintiff responds as follows:

27

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff elects to produce the following records:

PLD0000001  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000004  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0001156 – PLD0001159 PAD Letters

Plaintiff reasserts ¶326 from the Second Amended Complaint:

326. Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card. During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR. During this call, United's representative stated that UCR would be paid based on the 80th percentile of charges for similar services in the geographic area.

Plaintiff reasserts ¶416 from the Second Amended Complaint:

416. Defendants committed wire or mail fraud each and every time a faulty or inadequate payment was mailed or transmitted to Plaintiffs or their agents.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 14:**

Identify each communication that you contend was fraudulent or deceptive in this action.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party. Plaintiff further objects that the

28

Interrogatory seeks information from third parties and information not within Plaintiff's possession, custody, control, or personal knowledge. Plaintiff further objects that this Interrogatory is duplicative of Defendant's previous Interrogatories.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff elects to produce the following records:

PLD0000001  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000004  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0001156 – PLD0001159 PAD Letters

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

Plaintiff reasserts ¶326 from the Second Amended Complaint:

326. Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card. During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these

were fully satisfied, United would pay 100% of UCR. During this call, United's representative stated

that UCR would be paid based on the 80th percentile of charges for similar services in the

geographic area.

Plaintiff reasserts ¶416 from the Second Amended Complaint:

416. Defendants committed wire or mail fraud each and every time a faulty or inadequate

payment was mailed or transmitted to Plaintiffs or their agents.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and

relevant information becomes available and known to him.

**INTERROGATORY NO. 15:**

Identify each communication about your claims and allegations in this case, including any

communications with any Defendant, any health benefits plan or administrator, your employer, any

co-worker, any provider and/or facility (including any employee or representative of the provider

and/or facility), any other putative class member, or any governmental entity.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and

unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already

known to and in the possession of the propounding party. Plaintiff objects to this Interrogatory on

the grounds that it seeks information that is protected by the attorney-client privilege. Plaintiff

objects to this Interrogatory on the grounds that it seeks information that is protected by BW's right

to privacy and that is not directly related to a disputed issue in the lawsuit. Plaintiff further objects to

this interrogatory as not reasonably calculated to lead to the discovery of admissible

evidence. Plaintiff further objects that the Interrogatory seeks information from third parties and

information not within Plaintiff's possession, custody, control, or personal knowledge.

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Subject to the foregoing and without waiving same, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff elects to produce the following records:

PLD0000001  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000002  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000003  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0000004  August 23, 2019 Letter from "Patient Advocacy Department"

PLD0001156 – PLD0001159 PAD Letters

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

Plaintiff reasserts ¶326 from the Second Amended Complaint:

326. Prior to admitting to treatment, to ascertain the precise financial responsibility BW would bear and decide whether treatment was financially feasible under the terms of the benefits plan, Summit Estate called United on at the number listed on the back of BW's insurance card. During this call, United's representative verified that BW had active benefits for out of network behavioral health treatment, and represented that the plan would pay 70% of UCR until BW's out of pocket cost sharing responsibilities ("out of pocket maximum"), such as deductibles and co-insurance, were met. United specified these out of pocket amounts and further stated that once these were fully satisfied, United would pay 100% of UCR. During this call, United's representative stated that UCR would be paid based on the 80th percentile of charges for similar services in the geographic area.

Plaintiff reasserts ¶416 from the Second Amended Complaint:

416. Defendants committed wire or mail fraud each and every time a faulty or inadequate payment was mailed or transmitted to Plaintiffs or their agents.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 16:**

Describe in detail all monetary relief that you seek in the Complaint regarding your individual claims and/or claims of putative class members, including any calculations, estimates, formulas, categories, or other methods you contend should be used to determine such relief.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party.

Subject to the foregoing and without waiving same, Plaintiff responds as follows: Plaintiff seeks the relief requested in the Complaint. Additionally, Plaintiff has elected to produce the following records in response to this Interrogatory pursuant to Fed. R. Civ. P. 33(d):

PLD0000726 – PLD0000731 Provider Remittance Advice dated 04/28/2020

PLD0000732 – PLD0000741 Provider Remittance Advice dated 02/28/2020

PLD0000742 – PLD0000759 Provider Remittance Advice dated 02/14/2020

PLD0000760 – PLD0000773 Provider Remittance Advice dated 02/07/2020

PLD0000774 – PLD0000781 Provider Remittance Advice dated 01/31/2020

PLD0000782 – PLD0000795 Provider Remittance Advice dated 01/17/2020

PLD0000796 – PLD0000807 Provider Remittance Advice dated 01/10/2020

PLD0000808 – PLD0000815 Provider Remittance Advice dated 01/03/2020

PLD0000816 – PLD0000833 Provider Remittance Advice dated 12/27/2019

PLD0000834 – PLD0000845 Provider Remittance Advice dated 12/06/2019

PLD0000846 – PLD0000869 Provider Remittance Advice dated 11/29/2019

PLD0000870 – PLD0000885 Provider Remittance Advice dated 11/15/2019

PLD0000886 – PLD0000913 Provider Remittance Advice dated 11/08/2019

PLD0000914 – PLD0000933 Provider Remittance Advice dated 11/01/2019

PLD0000934 – PLD0000963 Provider Remittance Advice dated 10/11/2019

PLD0000964 – PLD0000985 Provider Remittance Advice dated 09/27/2019

PLD0000986 – PLD0001001 Provider Remittance Advice dated 09/13/2019

PLD0001002 – PLD0001017 Provider Remittance Advice dated 09/06/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001018 – PLD0001061 Provider Remittance Advice dated 08/30/2019

PLD0001062 – PLD0001064 Electronic PRA dated 05/01/2020

PLD0001065 – PLD0001066 Electronic PRA dated 03/04/2020

PLD0001067 – PLD0001070 Electronic PRA dated 02/02/2020

PLD0001071 – PLD0001073 Electronic PRA dated 02/02/2020

PLD0001074 – PLD0001076 Electronic PRA dated 01/23/2020

PLD0001077 – PLD0001079 Electronic PRA dated 01/15/2020

PLD0001080 – PLD0001082 Electronic PRA dated 01/08/2020

PLD0001083 – PLD0001087 Electronic PRA dated 01/02/2020

PLD0001088 – PLD0001090 Electronic PRA dated 12/11/2019

PLD0001091 – PLD0001095 Electronic PRA dated 12/04/2019

PLD0001096 – PLD0001099 Electronic PRA dated 11/20/2019

PLD0001100 – PLD0001105 Electronic PRA dated 11/14/2019

PLD0001106 – PLD0001111 Electronic PRA dated 11/06/2019

PLD0001112 – PLD0001119 Electronic PRA dated 10/17/2019

PLD0001120 – PLD0001124 Electronic PRA dated 10/02/2019

PLD0001125 – PLD0001128 Electronic PRA dated 09/18/2019

PLD0001129 – PLD0001131 Electronic PRA dated 09/11/2019

PLD0001132 – PLD0001141 Electronic PRA dated 09/05/2019

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

**INTERROGATORY NO. 17:**

Describe in detail all non-monetary relief that you seek in the Complaint, regarding your

individual claims and/or claims of putative class members, including the specific terms of any injunctions, declarations, or other non-monetary relief that you seek.

**ANSWER:**

Plaintiff objects that the Interrogatory is overbroad, compound, overbroad as to time, and unduly burdensome. Plaintiff further objects that the Interrogatory calls for information already known to and in the possession of the propounding party.

Subject to the foregoing and without waiving same, Plaintiff responds as follows: Plaintiff reasserts the following as asserted in the Second Amended Complaint:

- Injunctive and equitable relief enjoining Defendants from the conduct alleged herein and/or other appropriate equitable relief;

- Declaring that United's payments were improper underpayments,

- Declaring that United's payment methodologies were and are improper;

- Declaring that MultiPlan's benefit determination and negotiation methodologies are improper;

- Declaring that United and MultiPlan have engaged in an illegal, prohibited, RICO enterprise;

- Ordering United to reprocess all underpaid claims using an appropriate methodology;

- Ordering United and MultiPlan to provide transparency as to the methodology applied in reprocessing claims and that the methodology be approved by the Court;

- [A]warding a surcharge, disgorging Defendants unjust enrichments from their wrongful conduct.

Discovery is ongoing, and Plaintiff reserves the right to supplement his response as new and relevant information becomes available and known to him.

Verification to follow.

Dated: September 7, 2021                    Respectfully submitted,
                                            **NAPOLI SHKOLNIK PLLC**

                                            By: */s/ Matthew M. Lavin*
                                            Matthew M. Lavin, Esq. (*pro hac vice*)
                                            Aaron R. Modiano, Esq. (*pro hac vice*)

                                            *Attorneys for Plaintiffs and the Putative Class*