**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **L.D., ET AL.,**<br><br>          Plaintiffs,<br><br>     vs.<br><br>**UNITED BEHAVIORAL HEALTH, ET AL.,**<br><br>          Defendants. | Case No. 4:20-cv-2254-YGR<br><br>**ORDER RE: STANDARD OF REVIEW**<br><br>Re: Dkt. No. 98 |

Plaintiffs are participants in employer-sponsored benefits plans (the "Plans"), which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 28 U.S.C. § 1001, *et seq.*[1] Defendants are UnitedHealthcare Insurance Company, United Behavioral Health (collectively with United Healthcare Insurance Company, "United"), and MultiPlan, Inc.

Plaintiffs allege that United administered the Plans' healthcare benefits. (TAC ¶¶ 250, 281, 323, 353, 383.)[2] MultiPlan is a cost-management company that allegedly helps insurers reduce the amounts they pay providers by "repricing" claims based on comparable claims for similar providers in the same geographical area. (*Id.* ¶¶ 11, 218.) Each plaintiff sought treatment at Summit Health, Inc., an out-of-network behavioral health provider, claims for which United allegedly underpaid. (*Id.* ¶¶ 266, 309, 339, 369, 397.) Based on allegations that United worked with MultiPlan (through its subsidiary Viant) to establish fraudulent rates to yield the lower, repriced claims, plaintiffs assert

---

[1] Plaintiffs L.D., D.B., B.W., and R.H. were employed by Apple, Inc., whereas plaintiff C.J. was employed by Tesla., Inc. (Third Amended Complaint ("TAC"), Dkt. No. 91, ¶¶ 249, 280, 322, 352, 382.)

[2] The Plan documents specifically refer to "UnitedHealthcare" or "UHC." (Declaration of Geoffrey Sigler, Ex. C, Dkt. No. 106-4 (2019 Tesla Summary of Plan Description); Ex. M, Dkt. No. 106-14 (2018 Apple Summary of Plan Description); Ex. N, Dkt. No. 106-15 (2019 Apple Summary of Plan Description).) The parties do not dispute that these are the relevant Plans.

causes of action for, *inter alia*, violations of ERISA and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.[3]

Now pending before the Court is plaintiffs' motion for summary judgment as to the appropriate standard of review for the denial-of-benefits causes of action under 29 U.S.C. § 1132(a)(1)(B). (Dkt. No. 98.) The filings reveal that the record has not been fully developed as to whether (i) "UnitedHealthcare" as used in the Plan documents is represented by a named defendant and (ii) MultiPlan, in fact, made the benefits determinations at issue.[4] Accordingly, given the lack

---

[3] Specifically, plaintiffs assert causes of action on behalf of themselves and others similarly situated for violation of the RICO Act (count 1); RICO conspiracy (count 2); underpaid benefits in violation of ERISA Section 502(a)(1)(B) (count 3); breach of plan provisions in violation of ERISA Section 502(a)(1)(B) (count 4); breach of fiduciary duties in violation of ERISA Section 502(a)(3) (count 5); equitable relief under ERISA Section 502(a)(3)(A) (count 6); and other appropriate equitable relief (count 7). (TAC ¶¶ 465–546.) No class has yet been certified. Thus, the Court's ruling here pertains to the named plaintiffs only.

[4] In addition to briefing the standard of review for the benefits determinations in this case, plaintiffs request that the Court "confirm that the reasonably prudent person standard applies" to the breach-of-fiduciary-duty causes of action, in other words, the proper standard of care for ERISA fiduciaries. (Mtn. at 1.) The Supreme Court itself has stated that "[a]n ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (quoting 29 U.S.C. § 1104(a)(1)); *see also Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014) ("Section 1104(a)(1)(B) 'imposes a prudent person' standard by which to measure fiduciaries investment decisions and disposition of assets.") (citation omitted).

However, the Supreme Court also cautioned against allowing plaintiffs to repackage a simple denial-of-benefits claim as a breach-of-fiduciary-duty claim through artful pleading. *See Varity Corp. v. Howe*, 516 U.S. 489, 514–15 (1996). Recognizing the potential advantages that plaintiffs gain from bringing a breach-of-fiduciary-duty cause of action, the court stressed that "characterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when reviewing the administrator's decision to deny benefits." *Id.* at 514. Thus, to the extent that the breach-of-fiduciary duty causes of action are *not duplicative* of the denial-of-benefits causes of action, the prudent person standard applies in light of trust law principles. *See Tibble*, 575 U.S. at 528–29 ("In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts.") (remanding with instructions for the Ninth Circuit to "recogniz[e] the importance of analogous trust law").

Finally, the Court acknowledges the United defendants' note that "[p]laintiffs do not seek a determination of the standard of review for their RICO claims, but . . . [United's] benefits determinations should be subject to the same abuse-of-discretion standard, regardless of the specific

of a complete record, the Court deems it necessary to **DEFER** ruling on standard of review and the motion for summary judgment is **DENIED WITHOUT PREJUDICE**. The parties shall raise any disputes on the scope of discovery to Chief Magistrate Judge Spero in the first instance.

**I. FRAMEWORK FOR DECIDING STANDARD OF REVIEW FOR BENEFITS DETERMINATIONS**

The default standard of review in denial-of-benefits cases is de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan administrator or fiduciary retains discretionary authority to interpret the plan and determine benefits, then an abuse of discretion standard applies. *Id.*; *see also Harlick v. Blue Shield of California*, 686 F.3d 699, 707 (9th Cir. 2011) ("The standard of review depends on whether the plan explicitly grants the administrator discretion to interpret the plan's terms."). The plan must unambiguously provide discretion to the fiduciary to shift the standard of review from de novo to abuse of discretion. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 964 (9th Cir. 2006) ("[F]or a Plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the Plan must unambiguously provide discretion to the administrator.").

ERISA allows fiduciaries to delegate responsibilities through procedures in the plan. 29 U.S.C. § 1105(c)(1). When an entity other than the plan administrator makes a benefit determination under an ERISA plan, the standard of review depends "on whether the . . . Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there [is] evidence establishing delegation . . . ." *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1171 (9th Cir. 2007). "When an unauthorized body that does not have discretion to determine benefits eligibility renders such a decision . . . deferential review is not warranted." *Id.* at 1170 (quoting *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098 (9th Cir. 2003)).

---

legal theory or cause of action." (United Opp. at 2 n.1.) Plaintiffs respond that the ERISA standard of review has no bearing on the evidentiary standard applicable to the RICO causes of action. (Reply at 14.) As neither side actually requests a determination on the standard of proof for RICO violations, the Court will not now do so.

3

## II. ANALYSIS

Plaintiffs raise three arguments in support of de novo review of the benefits determinations at issue. First, plaintiffs argue that MultiPlan calculated benefits through its repricing service for United and therefore adjudicated the claims despite not being authorized to do so by the Plans. Second, plaintiffs contend that the Plans do not clearly and unambiguously delegate discretion to United. Third, plaintiffs press that United's conflict of interest in the repricing of the claims at issue warrants de novo review "or at the very least [ ] a deferential review [should] be tempered by heightened skepticism." (Mtn. at 16.)

Defendants, of course, argue that abuse of discretion is the proper standard of review. United responds that it, not MultiPlan, made the relevant benefits determinations; that the Plans clearly and unambiguously delegated discretion to United; that no conflict of interest exists; and that even if a conflict of interest did exist, it is one factor to be weighed under abuse of discretion review. MultiPlan also responds, strenuously denying that it determines how much is paid on claims or that it decides appeals of such determinations or that the compensation it receives from United creates a conflict of interest.

The Court evaluates plaintiffs' arguments in turn. First, considering whether the Plans clearly and unambiguously delegated discretion authority, the Court begins with the Plan documents themselves.[5] Those of Apple state that "[t]he Benefits Administrative Committee is the plan administrator with authority to control and manage the plans' operations." UBH000305; UBH000903. However, more specifically:

---

[5] A summary of plan description ("SPD") exists for each of the Plans at issue. Although the SPDs explicitly refer to the existence of official Plan documents, both sides cite to the former without submitting a set of the latter. Because neither side contends that the SPDs conflict with the official Plan documents, the Court considers the SPDs as Plan documents. *See Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017) ("[A]n SPD may constitute a formal plan document, consistent with [*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)], so long as the SPD neither adds to nor contradicts the terms of existing Plan documents."); *see also Langlois v. Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182, 1185 (N.D. Cal. 2011) ("However, the Court does not read *Amara* to preclude any reliance on the SPD in determining whether the plan administrator has discretion to deny benefits.") (citing *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002)).

4

> The Benefits Administrative Committee (or its authorized delegate) is the plan administrator for each plan [and] has the sole and absolute discretionary authority to construe and interpret the plan, supply omissions, correct any defect, and determine all questions regarding the eligibility for as well as the amount of benefits. In this regard, the plan administrator's decisions shall be conclusive and binding on all persons.

UBH000306; UBH000904. The Ninth Circuit has held that similar language granting the authority to interpret plan terms, resolve questions arising under the plan, and decide claims for benefits sufficient to confer discretion on the administrator. *See*, *e.g.*, *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001) (finding discretion where the plan gave the administrator "'the full, final, conclusive and binding power to construe and interpret the policy under the plan . . . [and] to make claims determinations'"). Therefore, the Court finds that the Apple Plan documents unambiguously confer discretionary authority to the Benefits Administrative Committee **or its authorized delegate** to determine "all questions regarding . . . the amount of benefits."

> As to the Committee's authorized delegate, the Apple Plan documents provides:
>
> A claim is a request for a plan benefit by a participant or beneficiary. The party responsible for processing the claim depends on the benefit option and the nature of the claim. With regard to self-funded plans and Flexible Spending Accounts, *the plan administrator has delegated authority to review claims and appeals to the plans' claims administrators*:
>
> Medical Claims Administrator:
>
> UnitedHealthcare
> Appeals and Grievances
> P.O. Box 740800
> Atlanta, GA 30374-0800

UBH000307; UBH000905 (emphasis supplied).[6] The Apple Plans at issue are self-funded. (Mtn. at 3.) Thus, the Court finds that the Committee delegated its discretionary authority regarding medical

---

[6] Moreover, Apple's 2019 SPD states: "UnitedHealthcare (UHC) administers the Apple Saver PPO Plan and determines what is a Covered Health Service and how Eligible Expenses will be covered." UBH000634. This further supports a finding that "UnitedHealthcare" retains discretion

5

claims to "UnitedHealthcare." Plaintiffs' argument that this delegation of discretionary authority is "limited" to "review [of] claims and appeals," implying that such review does not encompass questions regarding the amount of benefits, does not persuade.[7]

Likewise, the Tesla Plan documents name Tesla as the plan administrator and "UnitedHealthcare" as the plan's claims administrator. UBH000578 ("Tesla is the Plan Sponsor and Plan Administrator of the Tesla Health and Welfare Plan and has the discretionary authority to interpret the Plan."); *id.* ("UnitedHealthcare is the Plan's Claims Administrator. The role of the Claims Administrator is to handle the day-to-day administration of the Plan's coverage as directed by the Plan Administrator, through an administrative agreement with the Company."). Moreover, the Telsa Plan documents provide:

> Tesla and UnitedHealthcare have the sole and exclusive discretion to:
>
> - Interpret Benefits under the Plan.
> - Interpret the other terms, conditions, limitations and exclusions of the Plan, including this SPD and any Summary of Material Modifications and/or Amendments.
> - *Make factual determinations related to the Plan and its Benefits*. Tesla and UnitedHealthcare may delegate this discretionary authority to other persons or entities that provide services in regard to the administration of the Plan.

---

in determining how much is paid on a claim. The Court does not consider the absence of similar language in the 2018 SPD as evidence that it lacked the same the year prior.

[7] Plaintiffs also contend that the inclusion of specific language granting Sedgwick discretion for determining eligibility for short-term disability ("STD") benefits "demonstrates that the plan authors were capable of including such language and chose not to grant the same discretionary authority to the United Defendants." (Mtn. at 2.) Specifically, the Apple Plan documents state:

> Under the Apple STD Plan, Sedgwick is the claim fiduciary or 'claims administrator' for STD benefits and has been delegated the discretionary authority to determine if you are eligible for disability benefits based on objective medical evidence. All decisions made by Sedgwick as claims administrator shall be final and binding on all participants and beneficiaries to the full extent permitted by law.

UBH000142; UBH000743. However, the Court finds that this language as to Sedgwick, the named administrator for STD claims, does not meaningfully differ from the language delegating to "UnitedHealthcare," the named administrator for medical claims, the "authority to review claims and appeals." The Court declines to read the quoted language as somehow excluding the authority to make determinations as to the amount of benefits.

6

UBH000527 (emphasis supplied); *see also id.* ("UnitedHealthcare develops its reimbursement policy guidelines, in its sole discretion . . . ."). Thus, the Court finds that the Tesla Plan documents unambiguously confers discretionary authority to "UnitedHealthcare" to make benefits determinations, which includes the amount of benefits.

With all this said, it is not clear from the record whether the entity "UnitedHealthcare" named in the Plans is one and the same with defendant UnitedHealthcare Insurance Company.[8] The Court therefore declines to assume as much without a more complete record.

Second, and more fundamentally, whether MultiPlan was the true, but unauthorized, benefits decisionmaker, as plaintiffs contend, is a factual issue that cannot be resolved based on the current record. The Court notes that plaintiffs cite administrative services agreements between United and the sponsors, but the cited provisions do not indicate that a third party would assume United's role in determining the amount of benefits. UHC000007628; UHC000007632–33; UHC000007995.[9] Plaintiffs also cite a network access agreement between United and MultiPlan, specifically, language therein describing MultiPlan's repricing service. UHC000008191. However, the contract also states that use of MultiPlan's repricing rates "shall be at the discretion of United." *Id.* Plaintiffs further point to a letter issued to them by Viant's Patient Advocacy Department as evidence that MultiPlan, not United, made the benefits determinations in this case. However, the letter itself states: "We are writing to let you know that an out-of-network provider has charged you more than the allowable out-of-network reimbursement amount, *which UnitedHealthcare determined* based upon your health benefit plan for services you recently received." PLD0000001 (emphasis supplied). By contrast, United submitted a compilation of explanations of benefits and appeals letters sent to plaintiffs

---

[8] Indeed, although the Tesla SPD repeatedly refers to "UnitedHealthcare," plaintiff notes that the claims administrator contact information in the Tesla Plan documents list United Healthcare Services, Inc., not UnitedHealthcare Insurance Company. UBH000579.

[9] The Court acknowledges United's note regarding the document submitted as its administrative services agreement with Tesla. (United Opp. at 7 n.4.)

7

indicating that United, not MultiPlan, adjudicated their claims. (Sigler Declaration, Exs. D–L, Dkt. Nos. 105-12, 105-14, 105-16, 105-18, 105-20, 105-22, 105-24, 105-26, 105-28.)[10]

Notwithstanding, plaintiffs submit the declaration testimony of Creyna Franco, Summit Estate's Senior Auditor, who avers, among other things: "When I contacted United regarding these claims and asked them to reconsider the Viant pricing, I was told that the decision made by Viant was final and would not be reconsidered or reprocessed by United." (Declaration of Creyna Franco, Dkt. No. 108-3, ¶ 17.) Ms. Franco also stated that "for many claims at issue," United would direct her calls to Viant. (*Id.* ¶¶ 12–13.) Defendants object to Ms. Franco's declaration testimony on the grounds that it was belatedly submitted on reply without any explanation, that Ms. Franco was never identified as a third-party witness, that her descriptions of what she "was told" constitutes inadmissible hearsay, and that her testimony describes phone calls that were part of a separate, irrelevant process by which Viant negotiates fees with providers. (Dkt. No. 109.) The Court **DEFERS** ruling on defendants' objections as it is unclear from the record whether the representations made to Ms. Franco are party admissions or whether the substance of these conversations are, in fact, irrelevant.[11] Thus, the issue of whether MultiPlan made the challenged benefits decisions without authorization (such that de novo review may be warranted) cannot be determined at this juncture. *See, e.g.*, *Trout v. Time Inc. Severance Plan for Regular Employees (Amended and Restated Effective September 1, 2017), Time Inc., Meredith Corp.*, No. 19-CV-660 (DMG), 2019 WL 6879752, at *5–7 (C.D. Cal. Sept. 6, 2019) ("Because the Court cannot determine the identity of the Plan Administrator at the time of Plaintiff's severance claim and appeal, genuine disputes of material fact preclude the Court's determination of the proper standard of review.").

---

[10] United also submits the declaration testimony of Marjorie Wilde, MultiPlan's Senior Counsel, who avers that "MultiPlan and Viant receive claims information from their clients and make pricing recommendations." (Declaration of Marjorie Wilde, Dkt. No. 104-1, ¶ 10.) Further, Ms. Wilde states that "MultiPlan and Viant do not determine the reimbursement of any claims of any providers, nor do they process reimbursements to any providers. The determination and processing of reimbursements is done by the clients of MultiPlan and Viant," such as United. (*Id.* ¶ 11.)

[11] Accordingly, plaintiffs' motion for leave to file a response to the objection is hereby **GRANTED**. (Dkt. No. 113.)

Finally, plaintiffs contend that defendants are incentivized to underpay the claims at issue, creating a "financial conflict of interest" that triggers de novo review. While the existence of a conflict of interest does not alter the standard of review, *see Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012), the Court would still consider such a conflict even if reviewing the decision for an abuse of discretion. *See Glenn*, 554 U.S. at 115; *Stephan*, 697 F.3d at 929 ("While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion.").

### III. CONCLUSION

The Court cannot decide the appropriate standard of review for the denial-of-benefits causes of action until a more complete record has been developed. If defendants can establish that UnitedHealthcare Insurance Company represents the entity "UnitedHealthcare" referenced in the Plan documents and that such entity "made the ultimate coverage decision, with possible help from" MultiPlan, "a deferential standard might be appropriate. [However, i]f [MultiPlan] made the decision, the standard of review might be *do novo*. [MultiPlan] could be considered the agent of [UnitedHealthcare], and there is a question of whether the delegee of fiduciary responsibility can sub-delegate to another, even to an agent, without contractual authorization and still be entitled to deference." *Ryan E. v. Entertainment Industry Flex Plan*, 820 F. App'x 508, 510 (9th Cir. 2020) (remanding with instruction to district court "to clarify the record" with respect to these issues).[12] Accordingly, plaintiffs' motion for summary judgment on the applicable standard of review is **DENIED**.

//
//
//
//

---

[12] Finding good cause, the Court **GRANTS** the motions to seal with two exceptions quoted above: (1) the language from the network access agreement and (2) the language from Viant's patient advocacy department. (Dkt. Nos. 97, 100, 105, 107.) While both sides reference the existence of the administrative services agreements and network services agreement, the contents thereof shall remain under seal.

9

The parties are ordered to meet and confer and submit a joint statement to the Court by **January 25, 2022** regarding the next steps to be taken in light of this Order.

This Order terminates Docket Numbers 97, 98, 100, 105, 107, and 113.

**IT IS SO ORDERED.**

Dated: **January 12, 2022**

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE