January 21, 2022

Chief Magistrate Judge Joseph C. Spero
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

      RE:    Joint Letter Brief Seeking Discovery Relief in the Matter of *LD et al. v. United Behavioral Health, et al.* Case No. 4:20-cv-02254-YGR-JCS

Chief Magistrate Judge Spero:

      Pursuant to your Civil Standing Orders, the parties are seeking the Court's assistance in the resolution of the discovery disputes set forth below. Lead counsel for the parties have met and conferred multiple times in an effort to resolve these matters and have been unable to do so. The most recent meeting occurred via Zoom on January 18, 2022.

      *Plaintiffs' Statement:*

      Plaintiffs request the Court for an order:
1. Compelling United Behavioral Health and United Healthcare Insurance Company to produce documents responsive to Plaintiffs' discovery demands.
2. Setting a recurring bi-weekly discovery case management conference beginning Friday, January 28, 2022, at 2pm PST.

      This litigation is a putative ERISA and civil RICO class action brought by members of self-funded plans.  It addresses the fraudulent scheme and illegal enterprise among United Behavioral Health, United Healthcare Insurance Company, and MultiPlan and their application of the 'Viant' pricing tool and accompanying 'Patient Advocacy' services which were used to systematically underprice and underpay certain out-of-network behavioral health services. This conduct not only reaped enormous profits for United and MultiPlan in the form of hidden fees charged to ERISA plan employer sponsors, it subjected members nationwide to illegal and substantial financial liability for the balances of underpaid claims.

      **To date, United Behavioral Health and United Healthcare Insurance Company have produced little meaningful discovery.** Plaintiffs served their First Request to Produce to United on July 14, 2021. Plaintiffs' requests sought material related to the functioning of the RICO enterprise alleged in the complaint and the actions of United and MultiPlan as fiduciaries and administrators of ERISA plans. Specifically, Plaintiffs' requests were targeted to the "savings" programs of United and MultiPlan utilized in the pricing and underpayment for out-of-network, mental health and substance use disorder claims. These requests sought the material identified by Plaintiffs in the April 19, 2021 Joint Case Management Statement filed by the parties [Dkt. 83]. Plaintiffs' second request to produce, served on United on August 27, 2021, had one request that sought a claims report to enable Plaintiffs to prepare for the court ordered mediation, five requests that requested material supporting specific answers that United gave to the complaint, and forty-six requests that asked for material supporting the forty-six affirmative defenses asserted by United, one request per affirmative defense. Plaintiffs' third request to produce to United focused on United's 'Facility R&C' program based upon representations made by United's counsel to Plaintiffs that 'Facility R&C' was the terminology used by United for their program that utilized MultiPlan's Viant outpatient facility pricing program. The remainder of Plaintiffs' third request was directed specifically to United Healthcare Insurance Company that was not a party to the case at the time the

second request was served and sought the exact same material from United Healthcare that was sought from United Behavioral Health as United Behavioral Health adopted the answers and affirmative defenses of United Healthcare.

Plaintiffs are entitled to discovery on these issues and United has failed to do so. Plaintiffs ask the Court to hold United accountable to producing the discovery to which Plaintiffs are entitled in this matter. United's "more than 16,000" pages of documents has not included any material about the adoption and implementation of Viant, the marketing of Viant, the co-scheming of United and MultiPlan or, indeed, anything responsive to Plaintiffs' discovery pertaining to Plaintiffs' RICO allegations. Many of the pages produced by United are multiple productions of the same documents necessitated by United's repeatedly producing documents that were redacted without legal justification. The joint letter brief to the Court of September 30, 2021 [Dkt. 94] sets out those issues in more detail. The Court was set to hear those issues on October 15, 2021; however, Plaintiffs agreed to cancel the hearing when, on October 13, 2021, United agreed to produce the unredacted documents it should have produced originally. United's assertions regarding its "voluminous claim data" are similarly disingenuous. The data fields produced by United fall far short of what Plaintiffs requested in discovery. Further, United cannot confirm the integrity of the data it *has* produced despite Plaintiffs requesting this on multiple occasions with no substantive response beyond United's statement in correspondence from January 3, 2022, that they "are continuing to follow-up on the issues raised during the December 3, 2021 meet and confer". United has not addressed the specific data integrity issues raised by Plaintiffs pertaining to the claims reports, including issues relating to the claim remark code, duplication of claim data, or the sizable disconnect between the claims present in MultiPlan's report but not United's. The second claims production discussed by United provided little additional information as to the claims and did not address the aforementioned data integrity issues.

Plaintiffs seek to end the delay tactics and bad faith discovery responses that have characterized United's responses to date and ask for the Court's intervention to prevent such actions from becoming the *status quo*. Plaintiffs are seeking to hold Defendants accountable to their basic discovery obligations under the Rules of Civil Procedure. United's October 1, 2021 correspondence to Plaintiffs stated that they would begin searching ESI "soon". Over several months of correspondence and meet and confers, Plaintiffs have repeatedly asked United to provide some quantification or substantive response beyond the bald assertions of counsel regarding the ESI search term suggestions made by Plaintiffs. No substantative, quantitative responses were ever received. If Plaintiffs' proposed ESI search terms resulted in too many hits and a high percentage of irrelevant documents when applied, it was incumbent on United to *actually* conduct a search or appropriate sampling to show that to be the case. *See Finisar Corp. v. Nistica, Inc.*, 2014 WL 12887160, at *3 (N.D. Cal. Dec. 12, 2014). Mere blanket statements without anything more are insufficient (*id.*) *and* the process should be an iterative one to arrive at the appropriate discovery procedure. *See Hardin v. Mendocino Coast Dist. Hosp.*, 2019 WL 4256383, at *2 (N.D. Cal. Sept. 9, 2019). United never provided any indication that a sampling was ever conducted utilizing the search terms proposed by Plaintiffs or incorporated the scope of discovery proposed by Plaintiffs.

When United committed to produce a meaningful first production on January 14, 2022, this agreement was the product of substantial discussions between lead counsel for the parties and more than aspirational as implied by United. It appears that United did not even *begin* to search ESI until sometime after December 20, 2021. In agreeing to a joint stipulation for the most recent extension of deadlines, [Dkt. 112, submitted November 14, 2021], Plaintiffs joined based upon Defendants' counsels' assurances at a November 9, 2021, meet and confer that the first phase of the document production would occur by January 14, 2021. The first indication from United that this deadline would not be met came January 11, 2021 It is now, "a few days".

After multiple meet and confers and substantial correspondence between the parties relating to United search of ESI, it was apparent to Plaintiffs that fundamental issues pertaining to the scope

of discovery needed to be resolved before further discussions on specific search terms could be useful. Thus, in response to United's correspondence of December 20, 2021, instead of providing detailed responses to United's proposed search terms as Plaintiffs had done multiple times previously, Plaintiffs January 3, 2022 correspondence stated, "it is evident from your letter that the appropriate scope of discovery remains an area of significant disagreement between the Plaintiffs and United". Defendants seek to limit Plaintiffs' discovery to *their* definition of "claims", completely ignoring putative class definition set forth in Plaintiffs' Complaint and the allegations relating to the alleged RICO violations and conspiracy to violate RICO. *See, for example,* Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, 2018 WL 2441518, at *5-6 (N.D. Cal. May 31, 2018) ("Defendants' narrow framing ignores the fact that the alleged RICO conspiracy and enterprise are distinct from the predicate acts, and that the goals of the RICO enterprise are not limited to the predicate acts...Given the broad scope of discovery permitted by the Federal Rules, and in light of the elements that Plaintiffs must prove to establish their RICO claims, Defendants' position that discovery must be narrowly circumscribed is untenable").

Plaintiffs' January 3, 2022 response to United reiterated why United's limitation was inappropriate, stating, "[t]he stark difference in the reimbursement amounts of higher levels of care, including residential treatment and partial hospitalization, that were reimbursed as promised during verification calls, and consistent with plan terms, and the Viant OPR "UCR" reimbursements for IOP treatment fall [and] are relevant and within the scope of discovery as set out in Rule 26(b). Further, the reimbursement of higher levels of care are relevant to United's numerous affirmative defenses under the same standard", the same position repeatedly asserted by Plaintiffs over the course of several months of discussions pertaining to United's discovery responses.

As Plaintiffs served their First Request to Produce to United Behavioral Health on July 14, 2021 and now, six months later, United states it will make its first substantive response, in "a few days".. Defendants' delay tactics have already needlessly prolonged the litigation, wasting the resources of both the parties and the judicial system. United's pattern of obstruction continues with United's 'objections' to Plaintiffs' necessary third party subpoenas that are to be issued shortly. United has not asserted any of the actual legal grounds that would give it a basis to object to Plaintiffs' subpoenas.

With the tight discovery deadlines fast approaching, and many further discovery disputes looming, Plaintiffs seek to end the continued pattern of delay by United. Despite numerous meet and confers and correspondence, Defendants have yet to provide sufficient information to allow meaningful collaboration on ESI collection.

None of this has occurred. Plaintiffs are frustrated with Defendants' endless delay tactics. In order to move this matter forward in an efficient manner, Plaintiffs ask that the Court schedule biweekly case management conferences beginning immediately to evaluate the progress of discovery and promptly address issues that arise between the parties.

### Defendants' Position

Plaintiffs' accusations of "delay tactics and bad faith discovery responses" are unsupported and completely false, as described below. Although littered with inflammatory rhetoric, Plaintiffs' submission identifies no specific dispute requiring a Court ruling to resolve, and this submission does not provide enough space—nor would it be productive—for Defendants to correct each and every misstatement by Plaintiffs about past interactions that are irrelevant to any actual dispute being presented to this Court. With several months to go in fact discovery, there are of course some open discovery issues (including deficiencies with *Plaintiffs'* discovery responses) that the parties are still working through. But they are the types of issues that generally arise in large-scale litigation, and that the parties are required (by this Court's Local Rules and practice guidelines) to work together to resolve before bringing them to the Court. Plaintiffs' submission shows why bi-weekly status

conferences would be counterproductive, because Plaintiffs' goal apparently is to engage in performative finger-pointing, rather than actually working with the United Defendants to move the discovery process forward.

Plaintiffs first argue that an order compelling production is needed because the United Defendants missed—by just a few days—a *voluntary* target to make an *interim* ESI production this past Friday. As Plaintiffs acknowledge, Defendants agreed to this target back in November for planning purposes only, with the express reservation that it could be modified without Court approval.[1] The parties also agreed that ESI productions would be made on a rolling basis *starting* in January and continuing through March. Nothing about this miniscule delay of a single production—from last week to this week—poses any prejudice to Plaintiffs or disruption to the case schedule. The Court-ordered deadline to complete discovery is three months from now (April 18, 2022), there are no scheduled depositions, and Plaintiffs' own productions remain incomplete. Moreover, because the United Defendants plan to make their production later today, any "dispute" (if it can be called that) will be moot by the time this Court could order any relief. But even if this Court were to consider this submission, this Court need not order a production that the United Defendants have already agreed to make.

Plaintiffs also ask this Court for bi-weekly status conferences, without identifying any other specific "disputes" warranting this Court's involvement. Plaintiffs instead cast generalized aspersions (which are false) and suggest future disputes are "looming." Under the Local Rules and this Court's practice guidelines, Plaintiffs are required to work in good faith to resolve any issues with Defendants, and only then present a specific dispute to the Court. Asking for bi-weekly status conferences so that Plaintiffs can look for disputes on an ongoing basis—and then try to spring them in the conferences before they are ripe—is neither consistent with the Local Rules nor an efficient use of the Court's time. If any conferences or hearings are needed to address particular disputes, the Court can set them upon receiving the dispute.

Plaintiffs argue that regular conferences are needed because Defendants have engaged in "delay tactics," referring misleadingly to the fact that Plaintiffs served initial document requests in the Summer of 2021. But Plaintiffs' initial 137 requests were just the beginning of multiple rounds of confusing, overly broad, and inconsistent document requests by Plaintiffs. Defendants raised these issues immediately and began working with Plaintiffs to resolve them in the Summer of 2021. Progress was slow going at first, primarily because Plaintiffs refused to clarify several critical issues about the scope of their case—and because Plaintiffs kept changing their requests.[2] Just as the parties were starting to get a handle on the initial set, Plaintiffs served 52 additional requests on August 27, 2021. And then, just a few weeks later, on September 20, 2021, Plaintiffs served 93 additional requests (some of which conflicted with previous requests and discussions). As of early October, therefore, Defendants were faced with **several hundred** conflicting, constantly evolving requests from

---

[1] Defendants originally told Plaintiffs that February 4 would be a more realistic target than January 14. At Plaintiffs' behest, Defendants agreed to target January 14 for an initial production with the explicit reservation that this target could change.

[2] For example, Plaintiffs initially refused to clarify whether (a) non-IOP services and claims (*e.g.*, residential treatment, PHP, other therapy services) or (b) claims involving payment methodologies other than Viant's Facility R&C module were included in the putative class. Eventually, after multiple meet and confers over the course of several months, Plaintiffs clarified that the putative class includes only IOP claims to treat substance abuse paid using Viant's Facility R&C module—not other types or levels of care.

Plaintiffs. To move the discovery process forward in the Fall of 2021, the parties proceeded on several paths simultaneously: (1) all parties agreed to prioritize a claim data production, which Defendants produced in November 2021 after multiple conferences regarding the parameters[3]; (2) Defendants made several substantial productions that did not require search terms in August, September, and October 2021 (totaling around 16,000 pages); and (3) in parallel the parties met and conferred extensively—described in greater detail below—to resolve the above issues with Plaintiffs' requests so that Defendants could have workable parameters for ESI processing, review, and production.

The United Defendants repeatedly have taken the initiative, so that there could be rolling productions to Plaintiffs beginning this month (the first of which will be today)—*as the parties agreed back in November*. On October 1 (just over a week after receiving Plaintiffs' third set of requests) the United Defendants sent Plaintiffs 37 proposed search terms using the key terms and concepts in Plaintiffs' requests. Plaintiffs responded by proposing 150 alternate search terms, many of which were unworkable on their face. The United Defendants sent a proposed compromise list on November 15, containing 78 search terms and inviting input. The next day, Plaintiffs told United Defendants to move ahead with running the November 15 compromise list (78 searches). The day after that, Plaintiffs requested a comparison of the October 13 and November 15 search term lists. On November 23, 2021, United Defendants provided Plaintiffs with the requested comparison and again invited feedback. On December 6, 2021, Plaintiffs responded by referring back to their original list of 150 terms, without addressing any of the issues raised by Defendants. In an effort to get the ESI review process off the ground before the holidays, on December 20, 2021 the United Defendants told Plaintiffs they would run most of Plaintiffs' 150 terms and provided detailed explanations of why a small subset was not being run. Plaintiffs never have identified—in their letter to this Court or in any meet and confers—any specific requests for information or disputes with this approach (and Defendants remain willing to discuss these issues).[4] Meanwhile, the United Defendants have been investing hundreds of hours processing and reviewing ESI so that it can be produced to Plaintiffs as requested.

Plaintiffs' requests should be denied, and instead they should be directed to "cooperat[e]" with Defendants in accordance with the Local Rules (*e.g.*, L.R. 37-1(a)), this Court's Notice re Discovery Procedures (Dkt. 96), and the Northern District of California's ESI Guidelines (*e.g.* Guideline 1.02).

[SIGNATURE PAGE FOLLOWS]

---

[3] Plaintiffs' vague suggestion that there are problems with "data fields" or "integrity of the data" is false. Defendants already supplemented the "data fields" and addressed Plaintiffs' misguided "integrity" questions back on December 3. Since those discussions, Plaintiffs have not raised any new issues or questions (indeed, Plaintiffs did not bring up any data issues on the January 18 meet and confer required by rule to precede this filing). Defendants are not aware of any disputes and remain willing to help address any questions raised by Plaintiffs.

[4] Plaintiffs' letter to this Court suggests that there may be a future dispute about discovery into how Defendants reimburse non-IOP services (*e.g.*, residential treatment, PHP) that are not within the scope of the putative class, as a point of comparison to how class claims were reimbursed. But on January 18, Defendants reminded Plaintiffs how these requests are being addressed, and Plaintiffs did not have any issues with the proposal.

Dated January 21, 2022

    Respectfully submitted,

    ARNALL GOLDEN GREGORY, LLP

    */s/ Matthew M. Lavin*
    Matthew M. Lavin
    Aaron R. Modiano
    Counsel for Plaintiffs and the Putative Class

    DL LAW GROUP

    */s/ David M. Lilienstein*
    David M. Lilienstein
    Katie J. Spielman
    Counsel for Plaintiffs and the Putative Class

    GIBSON DUNN & CRUTCHER, LLP

    */s/ Geoffrey Sigler*
    Geoffrey Sigler
    Nicole Matthews
    Counsel for the United Defendants