March 28, 2022

Chief Magistrate Judge Joseph C. Spero
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

>    RE:   Joint Letter Brief Seeking Discovery Relief in the matter of *LD et al. v. United Behavioral Health Company et al.*: Case No. 4:20-cv-02254-YGR-JCS

Chief Magistrate Judge Spero:

Pursuant to your Civil Standing Orders, the parties are seeking the Court's assistance in the resolution of the discovery dispute set forth below. Lead counsel for the parties have met and conferred in an effort to resolve these matters and have been unable to do so.

*Plaintiffs' Statement*

This letter follows a previous Joint Letter Brief filed with the Court on January 21, 2022 (dkt. 117). The same issues are still present and more pressing given the tight discovery deadlines. Plaintiffs ask that the Court hold regular conferences with the parties to address discovery matters as Defendants' productions are on a nebulous rolling basis and are lacking any privilege or redaction logs. In issuing and signing these subpoenas, under Fed. R. Civ. P. 26(g)(1), United's counsel, among other things, has certified that the subpoenas do not serve an improper purpose and that the subpoenas are not unreasonable, unduly burdensome, or expensive. That is not the case, United's subpoenas fail to comply with Rule 26 requirements, and these failures merit sanctions.

1. *Improper Nonparty Subpoenas*

United recently served twenty-five sweeping document subpoenas on non-party treatment centers who treated members of the putative class. United's subpoenas are an attempt to bully these small providers, who do not keep large law firms on retainer. The subpoenas (1) are overly broad and unduly burdensome, (2) seek documents related to payers other than United, (3) ask for obviously privileged and confidential material, and (4) were issued in bad faith to harass and intimidate. They also request material protected under 42 C.F.R. Part 2 that addresses confidentiality of substance use disorder patient records.

Plaintiffs received the proposed subpoenas on February 28, 2022, and then promptly sent objections to United. The parties subsequently met and conferred on March 7, 2022, with United promising to make changes. United then, without showing those changes to Plaintiffs, summarily issued its subpoenas with negligible changes on March 9, 2022. The experience of Plaintiff's counsel is that the particular non-parties subpoenaed by United are small businesses, unaccustomed to being served with subpoenas by lawyers for major healthcare payers in class action litigation. United's actions prompted Plaintiffs to send correspondence to the treatment centers, notifying them of Plaintiffs' previously raised objections. United claims that this correspondence was somehow improper. This assertion is unsupported by applicable law (*see, for example, Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 6888492 (C.D. Cal. July 28, 2017)) and mischaracterizes Plaintiffs' letter, which in no way suggested that the providers should refuse to respond.

For context, in February 2022, after two months of meet and confers with United, Plaintiffs served select large plan sponsors of the putative class with non-party subpoenas. United promptly sent objections to those non-party plan sponsors without notifying Plaintiffs. Plaintiffs learned this only after plan sponsors began forwarding to Plaintiffs copies of the exact same objection letter United had sent to

1

Plaintiffs during the meet & confer process. It even still had United's counsel's logo on it. Moreover, United, despite three requests from Plaintiffs and its own explicit promise to do so, has not included Plaintiffs on any meet and confers with any subpoenaed treatment centers or shared any information as to their communications with them, unlike Plaintiffs, who included United on every meet and confer it had with subpoenaed plan sponsors.

United's subpoenas constitute an impermissible 'fishing expedition'. Plaintiffs ask the Court for a protective order as to the subpoenas issued by United pursuant to Rule 26(c).[1] As the litigation is presently in the class certification stage, Rule 23 sets out the current discovery needs of the case. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). United's requests to providers (1) are not relevant to Rule 23 issues for class certification, (2) are overly broad, (3) are not limited to the claims of putative class members, and (4) seek material regarding other payers.[2] The requests are not relevant to the allegations in the complaint; seek commercially sensitive information as to the providers; seek material already in United's or MultiPlan's possession, such as communications with United and Multiplan; and, in request 15, seek, without qualification, material likely protected as attorney-client communications and work product. United directed this request for privileged information to some treatment centers despite full knowledge that Plaintiffs' counsel has represented them in other matters.

United has not attempted to search its records or systems for any of the requested material or directed any discovery requests to MultiPlan for any of the requested material. United also mischaracterizes both the operative complaint and the Court's holding in the related, dismissed, provider case.[3] United attempts to turn this argument on its head in arguing that only patients who have *paid* balance bills have suffered an injury-in-fact. This is not the case and does not justify United's subpoena requests.

2.   *Improper Redactions*

United's most recent production has numerous redactions, including at least one omission of email attachments, justified as "non-responsive highly sensitive business information." Prior to this production, Plaintiffs had been assured by United that documents would be produced in their unredacted forms other than as to attorney-client and work-product privileges. United has offered no legal justification for these redactions or stated that the confidentiality order in place was somehow deficient, only that their client requested the redactions. This same argument has been rejected by numerous courts. *See, for example*, *Holman v. Experian Info. Sols., Inc.*, 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012). United's vague assertions and improper declaration of Rebecca Paradise do not provide the required legal justifications. This declaration violates the spirit and intent of the joint letter requirement, raises issues that have nothing to do with the present discovery dispute, and is little more than fear mongering without substance.

---

[1] *See, for example, Pizana v. SanMedica Int'l, LLC*, 2021 WL 325718, at *3 (E.D. Cal. Feb. 1, 2021); *Exxon Shipping Co. v. U.S. Dept. of Interior, et al.*, 34 F.3d 774, 779 (9th Cir. 1994); *Duong v. Groundhog Enterprises, Inc.*, 2020 WL 2041939, at *7 (C.D. Cal. Feb. 28, 2020) (collecting cases). Further, "the Ninth Circuit has a long-standing policy of affording extra protection to non-parties subject to discovery requests." *Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 11632962, at *2 (C.D. Cal. May 4, 2017) (collecting cases).

[2] MultiPlan's Answer admitted that "the source data for Viant's Facility Outpatient U&C Review Service is the submitted outpatient facility claims collected by CMS. Specifically, Viant uses CMS' Standard Analytical Outpatient File ('CMS SAOF'). . . . The data includes *actual charges* that providers submit to CMS." (dkt. 82 ¶205). United has not requested this information from MultiPlan and, instead, seeks irrelevant information as to other healthcare payers from providers.

[3] *See Pac. Recovery Sols. v. United Behav. Health*, 508 F. Supp. 3d 606 (N.D. Cal. 2020). There, the Court cited to *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 902 (C.D. Cal. 2012) noting the risk of duplicative recovery for under-reimbursement of claims and treating the direct harm from under-reimbursement as being more directly visited upon patients. In another decision in the same matter, the court recognized the existence or likely future existence of balance bills confers an injury upon the patient. *See In re Wellpoint, Inc., Out of Network "UCR" Rates Litig.*, 2016 WL 6645789, at *3 (C.D. Cal. July 19, 2016).

United makes vague, sweeping statements about potential harm from competitors, providers, and co-Defendant MultiPlan receiving this information. Plaintiffs are none of these three entities. There is a comprehensive protective order in place, and the scope of discovery includes programs not strictly limited to "Facility R&C" especially as 'facility' claims for intensive outpatient treatment are now also being priced through MultiPlan's Data iSight and United's Naviguard programs. Other United pricing programs are directly relevant to the claims of Plaintiffs and the putative class as they show that United attempted to shift claims to other programs after thousands of complaints about Viant.

The numerous protected health information redactions made by United are also inappropriate, particularly in the context of a putative class action. *See Kress v. Price Waterhouse Coopers*, 2011 WL 3501003, at *3 (E.D. Cal. Aug. 9, 2011)*; Putnam v. Eli Lilly & Co.*, 508 F.Supp.2d 812, 814 (C.D. Cal. 2007). The personal health information redacted by United is discoverable when, as here, a sufficient protective order is in place which specifically addresses HIPAA and other privacy concerns. *See Hutton v. City of Martinez*, 219 F.R.D. 164, 167 (N.D. Cal. 2003).

3.   *Illegibility of Documents Produced*

Much of United's document production thus far is illegible. The parties agreed to produce ESI that includes searchable OCR or extracted text files. Before any material was produced by Defendants, the parties discussed that discovery would include documents, such as PowerPoints, that would be text searchable. However, what has been produced is poor quality, as is their accompanying 'searchable' text. Plaintiffs raised the image quality issue to United in correspondence dated February 16, 2022 and included examples; however, the most recent, March 3, 2022, production from United continues to be plagued with poor image reproductions and error-filled accompanying text files. Plaintiffs raised these issues, again, at the most recent meet and confer, despite United's claim to the contrary. This material was produced to Plaintiffs as Attorney's Eyes Only, and Plaintiffs can provide examples to the Court under seal if necessary.

4.   *Additional Discovery Issues*

United has stated to Plaintiffs that it has been using TAR in its production of documents; however, United has not provided any substantive information as to its use of TAR to date. The TAR process should be "iterative and requires the parties to work together to get documents produced." *Hardin v. Mendocino Coast Dist. Hosp.*, 2019 WL 4256383, at *2 (N.D. Cal. Sept. 9, 2019). Courts typically "have required the producing party to provide the requesting party with full disclosure about the technology used, the process, and the methodology, including the documents used to 'train' the computer." *Youngevity Int'l, Corp. v. Smith*, 2019 WL 1542300, at *12 (S.D. Cal. Apr. 9, 2019). This has not occurred. Based upon the productions and actions to date, Plaintiffs have significant concerns as to how United's TAR has proceeded. Additionally, United incorrectly states that Plaintiffs failed to respond to United's proposed TAR and ESI protocols. The parties met and conferred on the most recent TAR and ESI proposals on February 14, 2022, where Plaintiffs expressed their concerns and issues with United's proposal.  United's counsel stated that they would discuss Plaintiffs' concerns with their clients and respond; no such response has been received.

United Defendants' Statement

1. *Treatment Center Subpoenas*

United's subpoenas to providers are narrowly tailored to address several highly-relevant issues that the providers are uniquely situated to address.  This a putative class action brought by Plaintiffs (five plan members) about out-of-network reimbursement rates for a behavioral health service, intensive outpatient (or "IOP"), under employer-sponsored health plans administered by UnitedHealthcare. Subpoenas to IOP providers (which treated numerous putative class members) are necessary to address several critical issues relevant to these claims and United's defenses: (1) Plaintiffs allege that putative

class members were injured because they needed to pay balance bills out of pocket *to these providers*,[4] so United (which is not a party to these payments by members to their providers) needs discovery to explore the extent to which balance bills were issued and paid; (2) Plaintiffs' RICO theory is that United committed wire fraud by misleading *their providers* on phone calls about reimbursement, so United needs to probe these allegations (TAC ¶¶ 261, 302, 334, 364, 392 (Dkt. 91)); and (3) many of the health plans at issue (including Plaintiffs' plans) require reimbursement based on the "competitive fee" for IOP services, and only *the providers* can explain what they generally accept as full payment for these services (as opposed to billed charges, which in many cases are just a sticker price). Finally, Plaintiffs' counsel repeatedly has said that Plaintiffs are relying on information they received *from providers* based on Plaintiffs' counsel's relationships with these providers from other matters, yet they refuse to produce any of this information to United.

United's subpoenas do not "bully," "harass" or "intimidate" the providers, as Plaintiffs assert. Because IOP providers are critical sources of relevant information (as Plaintiffs concede by relying on it themselves), United served narrowly-tailored subpoenas on twenty-five providers—many of whom *Plaintiffs suggested* during the meet and confer process. *See* Ex. 1 (exemplar). If any of the providers object to the subpoenas, United will of course work with them to resolve any issues. Additionally, even though not required to do so, United shared its subpoenas with Plaintiffs more than a week before serving them and modified them in response to issues raised by Plaintiffs. United also agreed to take reasonable efforts to include Plaintiffs' counsel in meet and confers with the providers. Despite Plaintiffs' claims to the contrary, no meet and confers have taken place—to date United has only discussed with some providers extensions to respond to the subpoena or to give them claim data (already provided to Plaintiffs) to assist in the providers' targeted searches. Meanwhile, Plaintiffs' counsel has attempted to sew confusion and to obstruct United's discovery by sending a fifteen-page letter to the providers (without any notice to United) suggesting they refuse to respond.[5]

Plaintiffs lack standing to object or obstruct United's subpoenas: none of the twenty-five providers treated Plaintiffs, so they have no "personal interest" in the subpoenas. *See Strike 3 Holdings, LLC v. Doe*, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019); *Jiae Lee v. Dong Yeoun Lee*, 2020 WL 7890868, at *8 (C.D. Cal. Oct. 1, 2020).[6] Plaintiffs' counsel cannot simultaneously represent Plaintiffs and IOP providers (or suggest to the providers that they are representing the providers' interests, as they did in the fifteen-page letter), particularly given the "conflict of interest" concerns previously raised by the Court with Plaintiffs' counsel (*supra* at n. 4).

It also makes no sense for Plaintiffs to suggest United should serve subpoenas on hundreds of putative class members (rather than the providers whom Plaintiffs' counsel *cannot* represent) instead. Serving subpoenas on absent class members is an inadequate substitute, because they would not have many of the documents sought by United (*e.g.*, categories 2 and 3 above), and any documents they have (*e.g.*, balance bills) would be far more limited. Indeed, Plaintiffs directed United to *their own provider's*

---

[4] At the first hearing in this case (*see* Dkt. 60), Judge Gonzalez Rogers raised concerns about a "conflict of interest," because Plaintiffs' counsel originally brought parallel class actions by both providers and members. *See* Dkt. 60 at 4:24-5:2. In response and in subsequent pleadings, Plaintiffs told the Court they were limiting members' claims and alleged damages to paid balance bills (whereas unpaid balance bills belonged to providers). *See, e.g.*, *id.* (counsel's explanation at the hearing); TAC ¶¶ 28, 267, 310, 340, 370, 398 (Dkt. 91) (allegations that plan members' claims are about paid balance bills).

[5] Plaintiffs refer to subpoenas they served on another group of third parties, plan sponsors. That Plaintiffs have been free to pursue third party discovery, without obstruction from United, underscores that United should be able to do the same.

[6] Plaintiffs' cases—in which the objecting party had a specific right or interest in the third party's information—are distinguishable. *See e.g.*, *Pizana v. SanMedica Int'l, LLC*, 2021 WL 325718, at *4 (E.D. Cal. Feb. 1, 2021) (allowing party to seek a protective order for subpoena categories that sought information about the party from a third party).

*documents* (which are being produced without objection in response to a subpoena served months ago) as the best source of information on balance bills and payments. To defend against class certification, United is entitled to seek this information from other providers in other markets, so that the record is not limited to one provider in one market.

Plaintiffs also argue that the subpoenas seek privileged information, but the subpoenas state that privileged information can be logged (and United does not seek its production). *See e.g.*, *Coalview Centralia, LLC v. Transalta Centralia Mining LLC*, 2019 WL 2563851, at *3 (W.D. Wash. Mar. 21, 2019) (denying motion to quash because serving party agreed privileged documents could be logged). The parties can also ensure this is understood in meet and confers, and any inadvertent productions would be returned without waiver under the protective order. *See* Dkt. 25.

*2. United's Limited Redactions Are Appropriate And Necessary.*

Plaintiffs object to United's "numerous" redactions of irrelevant highly sensitive business information, but these redacted portions are limited, irrelevant, and if disclosed would cause United significant competitive harm. As explained in the supporting declaration of United's VP of Out-of-Network Programs, Rebecca Paradise (which United will file as a supplement because Plaintiffs are refusing to file it as an exhibit to this joint letter), United has multiple out-of-network programs, strategies, and reimbursement methodologies, as well as innovations and pilots in development. Only *one* of United's existing programs ("Facility R&C") is at issue in this case, but many of the documents swept in by Plaintiffs' broad requests and search terms discuss multiple programs—*e.g.*, Powerpoint decks to senior management with a slide on each distinct program and related innovations. United is not redacting all information about other programs, so Plaintiffs still will be receiving substantial information about each of them in discovery. But because of the extreme sensitivity of a small minority of these documents—*e.g.*, discussing innovations, future plans, confidential business strategies, and internal analysis—United needs to redact this information. And because this information is completely irrelevant to the claims in this case, there is no prejudice to Plaintiffs.

The protective order in the case allows an "Attorneys' Eyes Only" designation as the highest level of protection, but even this designation permits several categories of people—including experts and witnesses (including MultiPlan employees involved in servicing United's competitors)—to review certain documents. *See* Dkt. 25 at pp. 10-11. As a result, United's internal discussions of its other programs and strategies require further protection. Other courts have approved redactions in similar circumstances. *See In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1460143, at *2-3 (S.D. Fla. Mar. 1, 2016) (permitting redactions about other makes and models not involving the at-issue airbags because information was commercially sensitive, irrelevant, and could cause harm even if produced under protective order); *Spano v. Boeing Co.*, 2008 WL 1774460, at *2-3 (S.D. Ill. Apr. 16, 2008) (permitting redactions about other benefit plans not at issue as additional protection on top of protective order); *Holley v. Gilead Scis., Inc.*, 2020 WL 2097602, at *3 (N.D. Cal. May 1, 2020) (permitting redactions of irrelevant, commercially sensitive information as additional protection on top of protective order); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) (similar).[7]

---

[7] Plaintiffs' cases involved situations in which the defendant failed to explain the harm that would flow from disclosure subject to a protective order, and thus are distinguishable from the situation here. *See Holman v. Experian Info. Sols., Inc.*, 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (extremely limited reasoning); *Live Nation Merch., Inc. v. Miller*, 2014 WL 1877912 (N.D. Cal. May 9, 2014) (alleged harm was to third parties who did not themselves object and redactions involved the settlement agreement at the center of the case).

Finally, United's redaction of plan members' identities is proper and does not prejudice Plaintiffs. *See, e.g.,* 42 C.F.R. § 164.502(b) (permitting production of "minimum necessary" protected health information). Because Plaintiffs seek broad discovery about an out-of-network program that is not limited to the IOP services at issue, some of the redacted documents discuss members (and their medical treatments) who are not putative class members. Nor is there any need to identify putative class members now because there is no certified class. Plaintiffs identify no reason they need patients' identities and given the sensitivity of this information their request should be rejected.[8]

*3 & 4. "Illegibility" and Additional Discovery Issues*

The remaining issues in Plaintiffs' letter should be rejected as premature, because (a) Plaintiffs sprang them in this letter without first discussing them at any Zoom meet and confer as required by this Court's standing order and (b) there is no live dispute. On the supposed legibility issues, United has shared its vendor's technical specifications, offered to reproduce the specific documents Plaintiffs say they cannot read, and more generally offered to work with Plaintiffs to address any technical/legibility issues. Plaintiffs have refused to engage cooperatively on this issue, instead attempting to use it as a basis to ask for needless bi-weekly status conferences. Plaintiffs also purport to raise a concern about Technology Assisted Review ("TAR"), but United has not excluded any documents from production based on TAR and Plaintiffs still have not responded to United's March 18 compromise proposal addressing both TAR *and* search terms (which Plaintiffs raised as another half-baked issue in their last letter to the Court). These issues—and the issues in Plaintiffs' previous January 21 letter—do not warrant this Court's involvement and Plaintiffs should be directed to work with United to solve them.

Dated: March 28, 2022,

Respectfully submitted,

ARNALL GOLDEN GREGORY, LLP

*/s/ Matthew M. Lavin*
Matthew M. Lavin
Aaron R. Modiano
Counsel for Plaintiffs and the Putative Class

DL LAW GROUP

*/s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Counsel for Plaintiffs and the Putative Class

GIBSON DUNN & CRUTCHER, LLP

*/s/ Geoffrey Sigler*
Geoffrey Sigler
Nicole Matthews
Counsel for the United Defendants

---

[8] Plaintiffs' cases are distinguishable, because they generally involve employment litigation, not requests for patient names and PHI. See, e.g., *Kress v. Price Waterhouse Coopers*, 2011 WL 3501003, at *3 (E.D. Cal. Aug. 9, 2011); *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007). *Hutton v. City of Martinez*, 219 F.R.D. 164, 167 (N.D. Cal. 2003) is also inapposite, as it concerned *a party's* medical records that were directly relevant to the case.