Chief Magistrate Judge Joseph C. Spero
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

> RE: Joint Letter Brief Seeking Discovery Relief in the matter of *LD et al. v. United Behavioral Health Company et al.*: Case No. 4:20-cv-02254-YGR-JCS

Chief Magistrate Judge Spero:

The parties seek the Court's assistance to resolve the discovery dispute set forth below. Lead counsel for the parties met and conferred to resolve these matters but were unable to do so.

*Plaintiffs' Statement*

Plaintiffs ask the Court to conduct an *in camera* review of the documents that the United Defendants requested be clawed back on the basis of privilege in correspondence to Plaintiffs on April 7, 2022 as well as those documents identified by United in their 'Production 12' privilege log. United's assertions of privilege are no more than pretext to shield damaging documents from production. This court's standing order (§ E. 15) requires that privilege logs "must be sufficiently detailed and informative to justify the privilege" and for communications that "(b) the steps taken to insure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication." United's privilege logs fail to meet these requirements.

The privilege asserted most frequently by United is attorney-client. It is entirely inappropriate to use pretextual claims of attorney-client privilege to shield business discussions from discovery. Also, given that attorney-client "privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose ... the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (citation omitted). The Ninth Circuit has recently clarified that the "primary purpose" test applies to determination of attorney-client privilege on dual purpose documents, holding "the attorney-client privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021) (citation omitted). "Under the 'primary purpose' test, courts look at whether the primary purpose of the communication is to give or receive legal advice, **as opposed to business** or tax advice." *Id.* At 1091 (emphasis added).

Likewise, documents that merely keep counsel informed, but do not seek legal advice, are not privileged. *See, United States v. Philip Morris USA, Inc.*, 2004 WL 5355972, at *5 (D.D.C. Feb. 23, 2004). Merely including an attorney on a distribution list is insufficient for attorney client privilege to apply. *See United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 188 (D.D.C. 2014). An attorney recipient, alone, cannot create a privilege. *See Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005). The presumption of privilege that applies to communications with outside counsel does not apply to communications with in-house counsel. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). To establish privilege on communications with in-house counsel, a party "must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice". *Id.*

Plaintiffs had reviewed the documents produced by United before receiving United's claw back letter and those documents do not have the giving or receiving of legal advice as their primary purpose; instead, they are primarily for the purpose of giving or receiving business advice. At the Parties' meet and confer, United asserted that the primary purpose test was inapplicable as all documents for which the attorney-client privilege was asserted were for the sole purpose of providing legal advice. This is simply not the case and United attempts to hide this with their deficient privilege log.

Further negating United's claim of privilege is that this litigation includes ERISA claims and, thus, the fiduciary exception to attorney-client privilege applies. In the ERISA context, the fiduciary exception provides an ERISA fiduciary, which includes insurance companies acting as plan fiduciaries, may not assert the attorney-client privilege against plan beneficiaries on matters of plan administration. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 932-33 (9th Cir. 2012). This derives from common law trust principles where "a trustee who obtains legal advice related to the execution of fiduciary obligations is precluded from asserting the attorney-client privilege against beneficiaries of the trust." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 167 (2011). The payment of benefits due by a plan administrator is such a fiduciary obligation. *See, for example, Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 309 (3d Cir. 2008). Similarly, adverse benefit determinations, defined in 29 C.F.R. § 2560.503-1, include the underpayment of claims, are fiduciary decisions and subject to fiduciary duties. *See, for example, Med. Benefits Adm'rs of MD, Inc. v. Sierra R. Co.*, 2007 WL 2914824, at *5 (E.D. Cal. Oct. 5, 2007). Fiduciary duties and obligations continue even if there may be plan terms to the contrary. *See, for example, Doe v. United Behav. Health*, 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021). Despite this, United asserts that the process of underpaying claims does not implicate plan administration or their fiduciary duties. This is simply incorrect and does not seek to expand the fiduciary exception; instead, it falls squarely within it and its purpose.

In the context of an ERISA putative class action, this Court previously stated, "[a]s virtually any policy or guideline may, at some point, be the subject of litigation, merely invoking that possibility is not sufficient to avoid the exception. Rather, either the context (e.g. actual or imminent litigation on the subject of the communication) or the contents of the communications themselves must reflect that they are defensive in nature and relate to advice sought and obtained to determine how far the trustees are 'in peril.'" *Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2016 WL 258604, at *7 (N.D. Cal. Jan. 21, 2016). At the heart of this litigation is just such a matter, the collusion of United and Multiplan to use Viant OPR to perpetuate a fraud against Plaintiffs and putative class members while claiming to have paid their mental health / substance use disorder claims according to plan terms that require payment based upon the usual and customary rates of similar providers in the same geographic area.

Additionally, for those documents that United claims refer to "company wide" programs, those "company wide" programs are subject to Plaintiffs' RICO claims. In such instances, the crime fraud exception will also apply as "[u]nder the crime-fraud exception, communications are not privileged when the client 'consults an attorney for advice that will serve him in the commission of a fraud' or crime." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016). The crime fraud exception applies to documents that support civil RICO claims. *See, for example, Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020 WL 8816475, at *3 (C.D. Cal. May 15, 2020) (holding documents intertwined with RICO scheme discoverable). To warrant *in camera* review of documents under the crime fraud exception, there need only be "a minimal showing that the crime-fraud exception could apply." *In re Grand Jury Investigation*, 974 F.2d

2

1068, 1071 (9th Cir. 1992). Plaintiffs' RICO claim asserts that United and MultiPlan engaged in a scheme to generate fraudulently low reimbursement rates and underpay mental health / substance abuse claims. United's privilege log refers to out of network programs, MultiPlan, and how to 'respond' to inquiries and disputes involving both. This is sufficient to show that the crime fraud exception may apply and warrants *in camera* review of the documents.

Work product privilege is also unavailable to justify withholding these documents as none were prepared specifically for litigation. *See*, *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C. 1987) (holding that work-product protection does not shield from discovery documents that were "prepared in the regular course of compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation"). The fiduciary exception also applies to the work-product privilege. *See, for example*, *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011). This includes documents prepared in response to requests for information from government entities. *See, for example, Durand v. Hanover Ins. Grp., Inc.*, 244 F. Supp. 3d 594, 611 (W.D. Ky. 2016). Further, United bears the burden in showing that the fiduciary exception does not apply. *See Durand* at 613 (collecting cases), this burden is far from met. Plaintiffs ask the Court to conduct an *in camera* review of the documents withheld or redacted to date as, based upon United's privilege assertion here, Plaintiffs have reason to believe that withheld documents are likely not subject to either work-product or attorney client privilege and, to the extent such privileges would otherwise apply, the documents should be produced pursuant to the fiduciary exception.

*Additional matters.* Additionally, Plaintiffs seek to enlarge the number of depositions to 15. In the Advisory Committee Note to the 1993 Amendment to Federal Rule of Civil Procedure 30, it states, "[l]eave to take additional depositions should be granted when consistent with the principles of Rule 26(b)(2)." Here, Plaintiffs have asserted a complex, nationwide scheme to defraud and additional depositions are appropriate and should be permitted. Plaintiffs have also sought the production of verification of benefits call recordings for the Plaintiffs and a small, targeted selection of other claims. Plaintiffs have met and conferred at length with United to obtain these recordings and invested significant time and resources to assist United in producing these records to which Plaintiffs are entitled and that United acknowledges it has. However, such records have not been produced and United has indicated to Plaintiffs that such records will not be forthcoming. Plaintiffs ask the Court to compel the production of these 25 call recordings that have been requested. Additionally, Plaintiffs ask the court to compel third party Apple to comply with the subpoena that was served on them May 6, 2022 which Apple has not moved to quash (subpoena and proof of service attached as Exhibit "A") and appear for deposition or submit to a written deposition on the subjects identified in the subpoena. Apple's plan includes at least 118 putative class members and several named Plaintiffs.

### *United Defendants' Statement*

The United Defendants' logs reflect detailed claims of privilege and work product supporting narrowly-tailored redactions of substantive legal advice by in-house counsel on just a few dozen of the 35,000+ documents the United Defendants produced to date. The United Defendants respectfully request the opportunity to file a full-length brief addressing these issues, give their complexity and the importance of protecting these privileges.

***Privilege Log Requirements.*** The United Defendants' privilege logs comply with Section E.15 of this Court's Standing Order, FRCP 26(b)(5), and applicable case law. *See* Exs. 1 and 2 (privilege logs); Ex. 3 (additional document-by-document analysis). The logs list each document's bates range, privilege type, privilege claim, a detailed description, and its custodian, date, author,

and all known recipients, as well as the lawyer and the "client" (reflected in the bates prefix, as UHC ). The privilege logs fulfill all applicable requirements.

**The Primary Purpose Doctrine.** The communications redacted by the United Defendants involve substantive legal advice by in-house lawyers to business clients on legal matters. Exs. 1, 2. For example, UHC's in-house lawyers provided advice to UHC's out-of-network programs group (non-lawyer business clients) about the extent to which plan language should be revised to support a new program offering—core privileged legal analysis and advice. Because the sole purpose was *legal*, the "primary-purpose" test is inapplicable. *See, e.g.*, Bradley Decl. ¶¶ 4, 5, 7, 8. Even if the communications were "dual-purpose," the primary purpose was legal and the privilege should be maintained. Plaintiffs' suggestion that any legal advice *about* United's business is inherently dual-purpose misstates the law. Privilege protects "an attorney [who] gives a client *legal advice on a business decision*." *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *1 (N.D. Cal. July 16, 2021) (emphasis in original). None of Plaintiffs' authorities suggest legal advice by in-house lawyers to business clients is not privileged; indeed, Plaintiffs' cases involved tax shelter advice (*In re Grand Jury*) and the incidental inclusion of in-house counsel on business communications (*e.g.*, *Philip Morris*, *Barko*, *Mineba*)—a far cry from the communications here.

**Fiduciary Exception.** Plaintiffs bear the burden of establishing the fiduciary exception. *See United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999). For the exception to apply, the legal advice needs to have been provided *in the course of a fiduciary function* performed for the benefit of the party challenging the privilege. Courts recognize that large, diversified companies like the United Defendants wear "two hats" when it comes to fiduciary duties under ERISA: some functions, like adverse benefit determinations, can be governed by ERISA's fiduciary duties (which generally require the fiduciary to act in the exclusive interest of a particular ERISA plan and its members), and others are not—such as when the company engages a vendor for company-wide programs and projects not for any particular plan or its members. *Pegram v. Herdrich*, 530 U.S. 211, 224–25 (2000) (managed care companies wear "two hats" and sometimes do not act as fiduciaries); *see also DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010) (managed care company did not perform a fiduciary function when it negotiated hospital reimbursement rates on a company-wide basis, across many different plans, rather than a particular plan and members); *Peters v. Aetna*, 2018 WL 3616923, at *8–10 (W.D.N.C. July 27, 2018) (fiduciary exception did not apply to privileged advice by in-house counsel to claims administrator in establishing and managing utilization management programs across many plans). As these cases recognize, the rationale for the exception—that the plan member is the true client, and that the member is owed certain duties and disclosures under ERISA (*see Mett*, 178 F.3d 1063)—do not apply when the privileged communication lacks a specific nexus to the challenger's plan or claim.

None of the privileged communications here involve ERISA benefits decisions or other fiduciary functions. None discusses Plaintiffs' benefits claims or plans, let alone UHC's exercise of a fiduciary function under these plans.[1] Most of the communications concern irrelevant programs, methodologies, and disputes that do not involve Plaintiffs or their plans (but were swept into the productions because of Plaintiffs' broad discovery requests). Plaintiffs' suggestion that the fiduciary exception applies to any privileged communication that could *impact* plan administration cannot be squared with the facts or case law. *See Mett*, 178 F.3d at 1064–65 (rejecting "expansive view" of fiduciary exception that would apply to any legal advice that

---

1 Under Plaintiffs' plans, UHC agreed to serve as a fiduciary for the limited purpose of deciding specific benefits appeals under these plans. Otherwise the plans' benefits committees (not UHC) retained overall responsibility over plan design and administration. *See* Dkt. 98-5 at 5 (§ 2.1), 13 (§ 12.3); Dkt. 105-8 at 5 (§ 2.1), 20 (§ A5).

"relate[s] to" ERISA "plan administration"; that would "swallow the entirety of the attorney-client privilege for ERISA trustees").

Plaintiffs' cases are also distinguishable, because they generally involve advice of counsel during an ERISA benefits decision on the plaintiff's claim—a core fiduciary function. *See Stephan v. Unum Life Ins. Co.*, 697 F.3d 917, 932–33 (9th Cir. 2012) (applying fiduciary exception to legal memo sent to claims analyst in the course of making coverage decision); p. 2, *supra* (citing cases). In *Wit v. United Behavioral Health*, the communications involved legal advice on guidelines given to medical directors about *how to make benefits determinations*—a nexus to benefits decision-making (a fiduciary function) that does not exist here. *See* 2016 WL 258604, at *8–14 (N.D. Cal. Jan. 21, 2016). Plaintiffs' cases also show that there are limits to the fiduciary exception even when applied to ERISA benefits decisions—*i.e.*, when a dispute arises and the fiduciary faces the risk of personal liability and seeks counsel. *Mett*, 178 F.3d at 1064 (no fiduciary exception for advice sought by trustees about pension funding practices once "trouble was in the air"); *see also* Ex. 3. These cases also confirm the privilege should be protected—even *if* the communications involved a fiduciary function (which they do not here). *See* Bradley Decl. ¶ 6.[2]

***Crime-Fraud***. Plaintiffs alternatively suggest that by asserting a RICO claim they can vitiate the privilege under the crime-fraud exception. But to invoke this exception, Plaintiffs must have a "factual basis adequate to support a good faith belief by a reasonable person" "that in camera review of the material may reveal evidence to establish the claim that the crime-fraud exception applies." *U.S. v. Zolin*, 491 U.S. 554, 572 (1989). That "factual basis" must be based on "non-privileged *evidence*." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (emphasis added). In the case cited by Plaintiffs, the proponents of in camera review submitted documents and testimony laying out the allegedly fraudulent scheme, and the privileged communications were shown by a preponderance of the evidence to be "in furtherance of"—and indeed, central to—the scheme: use of a corporate shell by lawyers to file sham class-action lawsuits. *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020 WL 8816475, at *3 (C.D. Cal. May 15, 2020). Plaintiffs make no similar showing here.

Plaintiffs' assertion that the United Defendants are using privilege as a "shield" from producing "damaging documents" is unsupported misdirection. It is critical for the United Defendants—and UHC's out-of-network programs group in particular—to have protected, unfettered legal advice from their trusted in-house counsel, as this area is extremely complex, highly regulated, and frequently targeted by litigation.

***Additional Matters***. Plaintiffs also purport to raise two other unripe disputes. First, the United Defendants will agree to an increase in the deposition limit if (a) the third party plan sponsors Plaintiffs seek to depose agree, and (b) the increase is reciprocal. Three plan sponsors have agreed to be deposed on specific terms (so there is no dispute), one has not stated a position, and the last (Apple) sent Plaintiffs a detailed objection letter several weeks ago to which Plaintiffs never responded. Apple's objections included, among others, improper service of the subpoena which rendered the subpoena invalid. Plaintiffs should not be allowed to use this joint letter to bypass Apple's objections or the meet and confer process. Second, there is no dispute as to the call recordings, as the United Defendants agreed to run additional reasonable searches.

---

[2] Privilege log entry nos. 2 to 5 concern ongoing and/or anticipated litigation; nos. 6, 7, 21 and 22 concern live disputes with providers and plan sponsors; no. 20 concerns efforts to guard against company liability on an issue unrelated to benefits decisions; and nos. 1 and 8 to 18 concern inquiries and complaints by state insurance agencies. These documents are protected by the attorney-client privilege and also are protected attorney work product. *See ACLU v. U.S. Dept. of Justice*, 880 F.3d 473, 484 (9th Cir. 2018).

Dated: June 21, 2022                    Respectfully submitted,

ARNALL GOLDEN GREGORY, LLP

/s/ Matthew M. Lavin
Matthew M. Lavin
Aaron R. Modiano
*Counsel for Plaintiffs and the Putative Class*

DL LAW GROUP

/s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman
*Counsel for Plaintiffs and the Putative Class*

GIBSON DUNN & CRUTCHER, LLP

/s/ Geoffrey Sigler
Geoffrey Sigler
Nicole Matthews
*Counsel for the United Defendants*