MATTHEW M. LAVIN (PRO HAC VICE)
matt.lavin@agg.com
AARON R. MODIANO (PRO HAC VICE)
aaron.modiano@agg.com
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone:     (202) 677-4030
Facsimile:     (202) 677-4031

DAVID M. LILIENSTEIN, SBN 218923
david@dllawgroup.com
KATIE J. SPIELMAN, SBN 252209
katie@dllawgroup.com
DL LAW GROUP
345 Franklin St.
San Francisco, CA 94102
Telephone:     (415) 678-5050
Facsimile:     (415) 358-8484

Attorneys for Plaintiffs LD, DB, BW, RH AND CJ on behalf of
themselves and all others similarly situated.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH AND CJ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, and MULTIPLAN, INC., a New York Corporation<br><br>Defendants. | Case No. 4:20-cv-02254-YGR-JCS<br><br>**PLAINTIFFS' MOTION TO COMPEL**<br><br>Date:          2022-07-29<br><br>Time:          9:30 AM |

# Table of Contents

I. INTRODUCTION ........................................................................................................... 1

II. POINTS & AUTHORITIES ......................................................................................... 1

      A.     United's Privilege Logs Fail to Meet Requirements ....................................... 1

      B.     United's Assertions of Attorney Client Privilege Are Not Supported ............................................................................................................... 3

      C.     United's Assertions of Privilege Fail Under the Primary Purpose Doctrine ............................................................................................................ 4

      D.     The Fiduciary Exception Applies to United's Privilege Claims....................... 5

      E.     The Work Product Doctrine Does Not Apply to United's Documents ............................................................................................................ 7

      F.     The Crime Fraud Exception Applies to Many of United's Documents ............................................................................................................ 8

III. CONCLUSION ........................................................................................................... 8

            Plaintiffs' Motion to Compel

# I.  INTRODUCTION

United's assertions of privilege are no more than pretext to shield damaging documents from production. For the reasons set forth below, Plaintiffs request that the Court find United has waived its assertions of privilege, or, in the alternative, conduct an *in camera* review of the documents. *In camera* review of a random sample of documents is an appropriate method of considering the assertion of privilege that has been approved by the Ninth Circuit. *See Doyle v. F.B.I.*, 722 F.2d 554 (9th Cir.1983).

# II. POINTS & AUTHORITIES

## A.  United's Privilege Logs Fail to Meet Requirements

This court's standing order (§ E. 15) stated privilege logs "must be sufficiently detailed and informative to justify the privilege" and for claiming privilege over communications that "(b) the steps taken to insure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication." In order to for a privilege log to satisfy its burden as to the applicability of attorney-client or work product privilege, the privilege log must identify "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Robinson v. Chefs' Warehouse*, 2017 WL 2895915, at *3 (N.D. Cal. July 7, 2017). United's privilege logs fail to meet these requirements. These requirements are particularly relevant in evaluating claims of privilege that involve in-house counsel, as is the case in United's privilege logs, because "the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).

For example, United's privilege log entries 1636-1640, redacted documents produced with an AEO-confidential designation, identify 'United Defendants' in-house counsel' as the attorneys, and identify only Sarah Peterson and Chris Wagner (neither of whom are attorneys or within United's legal department) as recipients. As these documents are identified as presentations and draft presentations, it is highly unlikely that other individuals did not receive,

transmit, or view these documents, and the presentations, based upon the unredacted portions, relate to company-wide business matters, not legal ones. Such failings occur throughout United's privilege logs. In consideration of the privileges being asserted by United it is also appropriate for the Court to consider the timing of the production of the privilege logs. Plaintiffs issued their first requests for production on July 14, 2021. United's first substantial privilege log was not produced until June 23, 2022 with less than a month remaining in the class fact discovery period. *See, for example, Burch v. Regents of the University of California*, 2005 WL 6377313, at *1–2 (E.D. Cal. Aug.30, 2005) *citing Burlington N. v. United States Dist. Court For the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). (holding that privilege objections raised in a privilege log will only be sufficient if the log is "submitted in a timely manner" and with "supporting affidavits or other competent evidence to prove the applicability of asserted privileges," and concluding that absent "mitigating circumstances," a privilege log submitted "approximately six months after [p]laintiffs served their first set of document requests" was insufficient to preserve the privilege).

United's failure to provide more than conclusory assertions without supporting facts regarding how United preserved the confidentiality of documents over which it is claiming privilege is insufficient to maintain confidentiality. *See, e.g., In re. Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.1992). Vague and conclusory assertions are insufficient to establish that the information is privileged. *See Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) (holding that a "vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be privileged.").

Further, the descriptions given by United are insufficiently detailed and specific to evaluate United's claims of privilege. *See, e.g., Buyer's Direct Inc. v. Belk, Inc.*, 2012 WL 1416639, at *4 (C.D. Cal. Apr. 24, 2012) ("boilerplate language describing the subject of the communications provides insufficient detail to allow the Court to evaluate whether the documents qualify as privileged"). United has also failed to identify attachments to many emails that have been withheld or show, individually why such attachments are privileged must show

each attachment individually satisfies the criteria for privilege (*e.g.* privilege claims 1462 and 1467). *See Kellman v. Whole Foods Mkt. California, Inc.*, 2021 WL 4476779, at *2 (N.D. Cal. Sept. 30, 2021) (requiring party claiming privilege to show why each attachment to email satisfied the privilege criteria).

For these reasons, United's privilege log is insufficient to support its claims of privilege.

**B.  United's Assertions of Attorney Client Privilege Are Not Supported**

The Ninth Circuit has stated that the attorney-client privilege has the following elements: "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Because the privilege withholds relevant information from the fact-finder, the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 840 F.2d 1424, 1428 (9th Cir. 1988). Because the attorney-client "privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose ... the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (internal citation omitted). In order to provide that attorney-client should apply to communications of in-house counsel, "must make a clear showing that the speaker made the communication for the purpose of obtaining or providing legal advice" *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) (internal quotations removed for clarity). No such clear showing has been made by United.

The privilege asserted most frequently by United in its privilege logs is attorney-client. United attempts to use pretextual claims of attorney-client privilege to shield business discussions from discovery. For example, claim 1592, asserts only attorney client privilege; however, the document was withheld with the description "Presentation requesting and/or seeking legal advice from United Defendants' in-house counsel (Payman Pezhman) regarding

strategic legal planning." Based upon the many other presentations that have been produced by United, even those with unsupported redactions, it appears highly improbable that the *entire* presentation was prepared by Lisa LaMaster, an United employee who is not a lawyer or within United's legal department, for the purpose of seeking or giving legal advice.

The declaration of Jolene Bradley, Associate Director of Out-of-Network Programs, submitted by United to accompany the letter brief provided to the Court (Dkt. 138) itself shows that United is misrepresenting the attorney client privilege. Ms. Bradley's declaration states (¶3) "Among other things, I work with certain of these attorneys to provide input in connection with changes to company-wide policies and procedures relating to out-of-network programs.  I am also sometimes asked to provide information to in-house counsel about how a claim is evaluated using an out of network program in connection with a pending claim or dispute." Such communications would likely contain facts, the "information" referred to, and the attorney client "privilege protects only communications, and not underlying facts." *Dolby Lab'ys Licensing Corp. v. Adobe Inc*., 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019). The policies and procedures referred to are likewise probably not protected by the attorney client privilege. *See, for example, Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464 (S.D. Cal. May 12, 2021).

Therefore, United's numerous assertions of attorney client privilege are suspect and do not appear to apply based upon what United has represented in its privilege logs.

**C.  United's Assertions of Privilege Fail Under the Primary Purpose Doctrine**

Although United has asserted the primary purpose test does not apply to documents it has withheld, the documents over which United claims attorney-client privilege appear to be created for the primary purpose of business decisions and are not protected by the attorney-client privilege for that reason as well.

The Ninth Circuit has recently clarified that the "primary purpose" test applies to determination of attorney-client privilege on dual purpose documents, holding "the attorney-client privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021) (citation omitted). "Under the 'primary purpose' test, courts look at whether the primary

1    purpose of the communication is to give or receive legal advice, as opposed to business or tax

2    advice." *Id*. At 1091 (emphasis added). Likewise, documents that merely keep counsel informed,

3    but do not seek legal advice, are not privileged. *See United States v. Philip Morris USA, Inc.*,

4    2004 WL 5355972, at *5 (D.D.C. Feb. 23, 2004). Merely including an attorney on a distribution

5    list is insufficient for attorney client privilege to apply. *See United States ex rel. Barko v.*

6    *Halliburton Co.*, 74 F. Supp. 3d 183, 188 (D.D.C. 2014). An attorney recipient, alone, cannot

7    create a privilege. *See Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005). The presumption

8    of privilege that applies to communications with outside counsel does not apply to

9    communications with in-house counsel. *See United States v. ChevronTexaco Corp.*, 241 F. Supp.

10   2d 1065, 1076 (N.D. Cal. 2002). To establish privilege on communications with in-house

11   counsel, a party "must make a 'clear showing' that the 'speaker' made the communications for

12   the purpose of obtaining or providing legal advice". *Id.*

13          Plaintiffs had reviewed the documents produced by United before receiving United's

14   claw back letter discussed in the joint letter to the court and those documents do not have the

15   giving or receiving of legal advice as their primary purpose; instead, they are primarily for the

16   purpose of giving or receiving business advice. Although at the Parties' meet and confer on April

17   26, 2022, United asserted that the primary purpose test was inapplicable as all documents for

18   which the attorney-client privilege was asserted were for the sole purpose of providing legal

19   advice. This is simply not the case and United attempts to hide this with their deficient privilege

20   logs. As described above, the two lengthy privilege logs, received June 23 and June 30, 2022,

21   contain the same deficiencies and misapply the assertion of attorney-client privilege.

22   **D.  The Fiduciary Exception Applies to United's Privilege Claims**

23          Further negating United's claim of privilege is that this litigation includes ERISA claims

24   and, thus, the fiduciary exception to attorney-client privilege applies. In the ERISA context, the

25   fiduciary exception provides an ERISA fiduciary, which includes insurance companies acting as

26   plan fiduciaries, may not assert the attorney-client privilege against plan beneficiaries on matters

27   of plan administration. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 932-33 (9th Cir.

28   2012). This derives from common law trust principles where "a trustee who obtains legal advice

1  related to the execution of fiduciary obligations is precluded from asserting the attorney-client

2  privilege against beneficiaries of the trust." *United States v. Jicarilla Apache Nation*, 564 U.S.

3  162, 167 (2011). The payment of benefits due by a plan administrator is such a fiduciary

4  obligation. See, for example, *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 309 (3d

5  Cir. 2008).

6        Despite this, United has asserted and represented to Plaintiffs that none of the documents

7  for which they claimed privilege concerned plan administration. This is simply not the case as

8  many of the documents do concern plan administration. . Ms. Bradley's declaration states (¶3) "I

9  am also sometimes asked to provide information to in-house counsel about how a claim is

10  evaluated using an out of network program in connection with a pending claim or dispute." This

11  statement creates a strong suggestion that many of the documents for which privilege is claimed

12  do concern claims administration and that the fiduciary exception would therefore apply. The

13  implementation of decisions concerning plan design can be subject to ERISA fiduciary duty and,

14  thus, concern plan administration. *See Waller v. Blue Cross of California*, 32 F.3d 1337, 1342

15  (9th Cir. 1994). The implementation and decisions concerning United's "Facility R&C" program

16  and the use of Viant OPR falls into this category.

17        In the context of an ERISA putative class action, this Court previously stated, "[a]s

18  virtually any policy or guideline may, at some point, be the subject of litigation, merely invoking

19  that possibility is not sufficient to avoid the exception. Rather, either the context (e.g. actual or

20  imminent litigation on the subject of the communication) or the contents of the communications

21  themselves must reflect that they are defensive in nature and relate to advice sought and obtained

22  to determine how far the trustees are 'in peril.'" *Wit v. United Behav. Health*, No. 14-CV-02346-

23  JCS, 2016 WL 258604, at *7 (N.D. Cal. Jan. 21, 2016). At the heart of this litigation is just such

24  a matter, the collusion of United and Multiplan to use Viant OPR to perpetuate a fraud against

25  Plaintiffs and putative class members while claiming to have paid their mental health / substance

26  use disorder claims according to plan terms that require payment based upon the usual and

27  customary rates of similar providers in the same geographic area.

28

Further, applying the fiduciary exception, this Court previously stated, "the mere fact that failure to adhere to the law may result in future litigation is not sufficient to avoid the fiduciary exception." *Wit v. United Behav. Health*, 2016 WL 258604, at *12 (N.D. Cal. Jan. 21, 2016). Also, as the Court held "a generic discussion of how guidelines should be applied when an administrative appeal is being considered may fall under the fiduciary exception even if denial of an appeal may ultimately lead to litigation" *id*. at *13 fn8, the same applies to the use and application of the Viant OPR program in this case.

As such, many of United's assertions of attorney-client privilege appear to be subject to the fiduciary exception and privilege should apply.

**E.  The Work Product Doctrine Does Not Apply to United's Documents**

For those withheld documents and redactions for which United asserts the work product doctrine, it is unavailable to justify withholding these documents as none were prepared specifically for litigation. See, *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C. 1987) (holding that work-product protection does not shield from discovery documentst that were "prepared in the regular course of compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation"). The fiduciary exception also applies to the work-product privilege. See, for example, *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011). This includes documents prepared in response to requests for information from government entities. *See, for example, Durand v. Hanover Ins. Grp., Inc.*, 244 F. Supp. 3d 594, 611 (W.D. Ky. 2016). Further, United bears the burden in showing that the fiduciary exception does not apply. *See Durand* at 613 (collecting cases), this burden is far from met.

The work product doctrine is meant "to guard against the divulging of attorney's strategies and legal impressions, *it does not protect facts concerning the creation of work product or facts contained within the work product*." *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (emphasis in original). United's assertions of work product do not identify specific litigation or even imminent litigation. Instead, it is attempting to use this

1    doctrine to shield run-of-the-mill business documents that are unfavorable to it from being

2    produced.

3    **F.  The Crime Fraud Exception Applies to Many of United's Documents**

4    For those documents that United claims refer to "company wide" programs, referred to

5    by Jolene Bradley in her declaration cited above, those "company wide" programs are subject to

6    Plaintiffs' RICO claims. In such instances, the crime fraud exception will also apply as "[u]nder

7    the crime-fraud exception, communications are not privileged when the client 'consults an

8    attorney for advice that will serve him in the commission of a fraud' or crime." *In re Grand Jury*

9    *Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016). The crime fraud exception applies to

10   documents that support civil RICO claims. *See, for example, Nat.-Immunogenics Corp. v.*

11   *Newport Trial Grp.*, 2020 WL 8816475, at *3 (C.D. Cal. May 15, 2020) (holding documents

12   intertwined with RICO scheme discoverable). As such, many of the documents withheld and/or

13   redacted are relevant to the RICO scheme and Plaintiff has made a sufficient showing to warrant

14   the Court conducting an *in camera* review.

15   To warrant *in camera* review of documents under the crime fraud exception, there need

16   only be "a minimal showing that the crime-fraud exception could apply." *In re Grand Jury*

17   *Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Plaintiffs' RICO claim asserts that United

18   and MultiPlan engaged in a scheme to generate fraudulently low reimbursement rates and

19   underpay mental health / substance abuse claims. United's privilege log refers to out of network

20   programs, MultiPlan, and how to 'respond' to inquiries and disputes involving both. This is

21   sufficient to show that the crime fraud exception may apply and warrants *in camera* review of

22   the documents.

23   **III. CONCLUSION**

24   Therefore, for the reasons set forth above, Plaintiffs ask the Court to find that United's

25   conduct has waived its assertions of privilege or, in the alternative, to conduct an in camera

26   review of the documents withheld or redacted

27

28

1   Dated: July 8, 2022                         ARNALL GOLDEN GREGORY LLP

2                                               */s/ Matthew M. Lavin*

3                                     By:       MATTHEW M. LAVIN
                                                AARON R. MODIANO
4
                                                Attorneys for Plaintiffs LD, DB, BW, RH
5                                               AND CJ on behalf of themselves and all
                                                others similarly situated.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:20-cv-02254-YGR-JCS                                    Plaintiffs' Motion to Compel