HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
NICOLE R. MATTHEWS, SBN 328977
  nmatthews@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

GEOFFREY SIGLER (*pro hac vice*)
  gsigler@gibsondunn.com
MATTHEW GUICE AIKEN (*pro hac vice*)
  maiken@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: 202.99.8500
Facsimile:  202.467.0539

Attorneys for Defendants UNITED
BEHAVIORAL HEALTH and UNITED
HEALTHCARE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LD, DB, BW, RH and CJ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, and MULTIPLAN, INC., a New York corporation,<br><br>Defendants. | CASE NO. 4:20-cv-02254-YGR-JCS<br><br>**DEFENDANTS UNITED HEALTHCARE INSURANCE COMPANY AND UNITED BEHAVIORAL HEALTH'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Date: July 29, 2022<br>Time: 9:30 a.m.<br>Hon. Joseph C. Spero<br>Crtrm: San Francisco Courthouse, Courtroom F – 15th Floor<br><br>Complaint filed: April 2, 2020<br>Third Amended Complaint filed: Sept. 10, 2021 |

1

**TABLE OF CONTENTS**

2

Page

3   I.   INTRODUCTION ........................................................................................................ 1

4   II.   LEGAL STANDARD ................................................................................................ 1

5   III.   ARGUMENT ............................................................................................................. 2

6        A.   The United Defendants' Privilege Log Complies With This Court's
             Requirements ................................................................................................... 2

7        B.   The Attorney-Client Communications Involve Legal Advice, Not "Business
8             Communications" ............................................................................................. 5

9             1.   The United Defendants' Privilege Claims Are Properly Supported ................. 5

10            2.   The Primary Purpose Doctrine Does Not Vitiate The United
                   Defendants' Privilege ........................................................................... 7

11
12       C.   The Fiduciary Exception Does Not Apply To The United Defendants'
             Privilege Claims ............................................................................................... 9

13            1.   The Privileged Communications Do Not Involve Fiduciary Functions ........... 9

14            2.   The Fiduciary Exception Does Not Apply To Defensive Documents ........... 13

15       D.   The Work Product Doctrine Also Applies ................................................... 15

16       E.   The Crime-Fraud Exception Does Not Apply ............................................ 16

17       F.   Plaintiffs Identify No Need For *In Camera* Review .................................. 17

18   IV.   CONCLUSION ........................................................................................................ 20

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. C.L. Union of N. California v. Dep't of Just.* ("*Am. C.L. I*"),
 70 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................16

*Am. C.L. Union of N. California v. United States Dep't of Just.* ("*Am. C.L. II*"),
 880 F.3d 473 (9th Cir. 2018)........................................................................16

*Am. Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.*,
 973 F. Supp. 60 (D. Mass. 1997) ................................................................11

*Am. Psychiatric Ass'n v. Anthem Health Plans*,
 50 F. Supp. 3d 157 (D. Conn. 2014) ...........................................................11

*Baird v. BlackRock Inst. Trust Co., N.A.*,
 2019 WL 4620407 (N.D. Cal. Sept. 24, 2019) ...........................................13

*Buyer's Direct Inc. v. Belk, Inc.*,
 2012 WL 12136182 (C.D. Cal. Mar. 9, 2012) ..............................................4

*Coalition for a Sustainable Delta v. Koch*,
 2009 WL 3378974 (E.D. Cal. Oct. 15, 2009) ................................................5

*Collins v. Teamsters Benefit Tr.*,
 2013 WL 12343709 (N.D. Cal. Dec. 27, 2013) .......................................9, 10

*Darcangelo v. Verizon Commc'ns, Inc.*,
 292 F.3d 181 (4th Cir. 2002).....................................................................9, 10

*Del Prete v. Magellan Behav. Health, Inc.*,
 112 F. Supp. 3d 942 (N.D. Cal. 2015) .....................................................9, 10

*DeLuca v. Blue Cross Blue Shield of Mich.*,
 628 F.3d 743 (6th Cir. 2010)........................................................................11

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,
 402 F. Supp. 3d 855 (N.D. Cal. 2019) ......................................................3, 4

*Dole v. Milonas*,
 889 F.2d 885 (9th Cir. 1999).........................................................................2

*Doyle v. FBI*,
 722 F.2d 554 (9th Cir. 1983).......................................................................18

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fischel v. Equitable Life Assur.*,
191 F.R.D. 606 (N.D. Cal. 2000) ................................................................................. 1, 2, 13

*Matter of Fischel*,
557 F.2d 209 (9th Cir. 1977) ............................................................................................ 2, 6

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2022) ............................................................................................... 7

*In re Grand Jury Investigation*,
810 F.3d 1110 (9th Cir. 2016) ............................................................................................. 17

*In re Grand Jury Investigation*,
974 F.2d 1068 (9th Cir. 1992) .......................................................... 2, 3, 4, 6, 17, 18, 19

*In re Grand Jury Proceedings*,
87 F.3d 377 (9th Cir. 1996) ................................................................................................ 17

*Hahnemann Univ. Hosp. v. All Shore, Inc.*,
514 F.3d 300 (3d Cir. 2008) ............................................................................................... 13

*Hall v. Marriott Int'l, Inc.*,
2021 WL 1906464 (S.D. Cal. May 12, 2021) ....................................................................... 7

*Hudson v. Gen. Dynamics*,
73 F. Supp. 2d 201 (D. Conn. 1999) .................................................................................. 14

*Hynix Semiconductor Inc. v. Rambus Inc.*,
2008 WL 350641 (N.D. Cal. Feb. 2, 2008) ......................................................................... 3

*Jumping Turtle Bar and Grill v. City of San Marcos*,
2010 WL 4687805 (S.D. Cal. Nov. 10, 2010) ..................................................................... 5

*Kennis v. Metropolitan West Asset Mgmt., LLC*,
2018 WL 5274586 (C.D. Cal. May 17, 2018) ..................................................................... 9

*Klein v. Meta Platforms, Inc.*,
2022 WL 767096 (N.D. Cal. Mar. 11, 2022) ....................................................................... 6

*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015) ......................................................................................... 5

*Moeckel v. Caremark, Inc.*,
622 F. Supp. 2d 663 (M.D. Tenn. 2007) ............................................................................. 11

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
   2020 WL 8816475 (C.D. Cal. May 15, 2020) ...............................................................17

4

5

*NLRB v. Interbake Foods*,
   637 F.3d 492 (4th Cir. 2011) ......................................................................................18

6

*In re Outlaw Lab'ys, LP Litigation*,
   2020 WL 5500220 (S.D. Cal. Sept. 11, 2020) ...............................................................19

7

8

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ............................................................................................10, 11

9

10

*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015) ..................................................................................9, 10

11

*Perez v. DirecTV Group Holdings, LLC*,
   2020 WL 10818049 (C.D. Cal. July 23, 2020) ..............................................................19

12

13

*Peters v. Aetna*,
   2018 WL 3616923 (W.D.N.C. July 27, 2018) ..........................................................12, 15

14

*Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.*,
   213 F. App'x 473 (6th Cir. 2007) ................................................................................11

15

16

*Republic of Ecuador v. Mackay*,
   742 F.3d 860 (9th Cir. 2014) ......................................................................................15

17

18

*Ronches v. Dickerson Emp. Benefits*,
   2009 WL 10669571 (C.D. Cal. Oct. 30, 2009) ..............................................................11

19

*Schaeffer v. Gregory Village Partners, L.P.*,
   78 F. Supp. 3d 1198 (N.D. Cal. 2015) .........................................................................16

20

21

*Sender v. Franklin Resources, Inc.*,
   2016 WL 641633 (N.D. Cal. Feb. 18, 2016) .................................................................11

22

23

*Skyline Wesleyan Church v. Cal. Dept. of Managed Health Care*,
   322 F.R.D. 571 (S.D. Cal. 2017) .................................................................................16

24

*Solis v. Principal Fin. Grp.*,
   2011 WL 13290335 (S.D. Iowa Sept. 6, 2011) ..............................................................15

25

26

*Staley v. Gilead Scis., Inc.*,
   2021 WL 4318403 (N.D. Cal. July 16, 2021) ..................................................................8

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Stephan v. Unum Life Ins.*
    697 F.3d 917 (9th Cir. 2012)...................................................................................12

*United States v. Chen*,
    99 F.3d 1495 (9th Cir. 1996)..............................................................................8, 17

*United States v. ChevronTexaco Corp.*
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) ...................................................................3

*United States v. Hodge & Zweig*,
    548 F.2d 1347 (9th Cir. 1977)................................................................................16

*United States v. Jicarilla Apache Nation*,
    564 U.S. 162 (2011)................................................................................................14

*United States v. Mett*,
    178 F.3d 1058 (9th Cir. 1999)..................................................1, 2, 8, 9, 12, 13, 14

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020)..................................................................................7

*United States v. Zolin* ("*Zolin II*"),
    491 U.S. 554 (1989)......................................................................................2, 17, 18

*United States v. Zolin* ("*Zolin I*"),
    809 F.2d 1411 (9th Cir. 1987)..........................................................................16, 17

*In re UnitedHealth Group PBM Litig.*,
    2017 WL 6512222 (D. Minn. Dec. 19, 2017)........................................................11

*Waller v. Blue Cross of California*,
    32 F.3d 1337 (9th Cir. 1994)..................................................................................13

*Wit v. United Behavioral Health*,
    2016 WL 258604 (N.D. Cal. Jan. 21, 2016 ).....................................................13, 14

**RULES**

Fed. R. Civ. P. 26(b)(3)(A) ...........................................................................................15

Fed. R. Civ. P. 26(b)(5)....................................................................................................2

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

Plaintiffs' challenges to the United Defendants' privilege logs should be rejected.  Plaintiffs' motion simply rehashes their joint letter submission, sprinkling in perfunctory citations to a handful specific documents (which they raised for the first time in the filing the motion Friday night).  On this flimsy basis, Plaintiffs purport to attack the entirety of the United Defendants' privilege logs, in effect arguing that the United Defendants are not entitled to receive any privileged legal advice in running the out-of-network programs at issue in this case.  But as the record reflects, these programs involve important business interests and services to the United Defendants' customers, and they are impacted by a complex patchwork of federal, state, and private contractual legal requirements on which the United Defendants need to be able to seek privileged advice from counsel.  The privilege logs comply with all of this Court's requirements and show that the privileged communications warrant protection, and Plaintiffs provide nothing to the contrary other than conclusory broadside attacks. Plaintiffs' motion should be denied.

## II.   LEGAL STANDARD

The attorney-client privilege is the oldest and "perhaps, most sacred of all legally recognized privileges."  *See United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999).  Its purpose is to permit attorneys to provide sound legal advice and effective advocacy by encouraging "full and frank communications between attorneys and their clients."  *Id.*; *see also Fischel v. Equitable Life Assur.*, 191 F.R.D. 606, 609 (N.D. Cal. 2000) (in the ERISA context, "a well-defined attorney-client privilege encourages a trustee to seek advice about its potential liability, and therefore advances important policy interests").  To claim privilege, the asserting party must show the following elements: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 n.2 (9th Cir. 1992) (quoting *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)). "[H]ard cases should be resolved in favor of the privilege, not in favor of disclosure."  *Mett*, 178 F.3d at 1065.

Plaintiffs, as the party challenging privilege, bear the burden of proving any exceptions to the privilege, including the fiduciary and crime-fraud exceptions. *Fischel*, 191 F.R.D. at 607. Plaintiffs also bear the burden of establishing a need for *in camera review* of privileged materials and must "show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury*, 974 F.2d at 1075. Only "[i]f the party makes such a showing" does the district court have "discretion" to conduct an *in camera* review. *Id.* at 1072. Even then, a court's discretion to conduct an *in camera* review is guided by "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that" the challenged information is not privileged. *United States v. Zolin* ("*Zolin II*"), 491 U.S. 554, 572 (1989). The United Defendants' privilege logs support their privilege claims, and Plaintiffs fail to meet any of their burdens to override these privileges.

### III. ARGUMENT

### A.   The United Defendants' Privilege Log Complies With This Court's Requirements

The United Defendants' privilege logs comply with Section E.15 of this Court's Standing Order, Fed. R. Civ. P. 26(b)(5), and applicable case law. The logs list each document's bates range, privilege type, privilege claim, a detailed description, and its custodian, date, author, and all known recipients, as well as the lawyer and the "client" (reflected in the bates prefix, as UBH or UHC ). *See In re Grand Jury*, 974 F.2d at 1071; *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1999) (a privilege log established the applicability of the attorney-client privilege because it "identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated"). Further, the United Defendants carefully reviewed the documents and productions to ensure no unauthorized persons had received the communications, and included an

2

Gibson, Dunn &
Crutcher LLP

affirmation in each transmittal email that to the best of their knowledge, no unauthorized persons had received the communications.

Based on these logs, the United Defendants "ha[ve] met [their] burden in demonstrating" that the associated communications were confidential and that the attorney-client privilege applies. *In re Grand Jury*, 974 F.2d at 1071. *In re Grand Jury*, which Plaintiffs cite to challenge the adequacy of the United Defendants' privilege claims (Mot. at 2), required no more than the defendant's privilege log and its "affidavits regarding [the] confidential nature" of the documents therein listed (which the United Defendants satisfied through the affirmations in transmittal emails to Plaintiffs' counsel). 974 F.2d at 1071.

Plaintiffs suggest that *United States v. ChevronTexaco Corp.* casts doubt on privileged communications with in-house counsel (Mot. at 1), but that case confirmed that "communications between corporate personnel and their in-house counsel made for the purpose of securing legal advice are protected by the [attorney-client] privilege." 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). Of course, one cannot simply "*assume* that *every* communication involving in-house counsel . . . was made primarily for the purpose of securing legal advice." *Id.* (emphases added). That is why United Defendants produced numerous documents involving in-house counsel, and withheld or redacted only those documents involving attorney-client communications "made for the purpose of securing legal advice." *Id.*

Contrary to Plaintiffs' assertion, the United Defendants have not relied on "vague declarations" to support their privilege claims: they contain detailed information to support each log entry and (whenever available) the identity of the lawyer. Plaintiffs' case is inapposite, because it involved a communication that "appears not to be 'legal advice,' but instead a discussion of a business plan and strategy" that "does not reveal any confidential communications" between an employee and legal counsel. *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008) (quoted in *Dolby Lab'ys. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019)). Unlike the defendant in *Hynix*, the United Defendants' privilege claims—as reflected on their detailed privilege logs—concern documents that reflect legal advice and

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

1    "confidential communications between attorneys and clients."  *Dolby Lab'ys.*, 402 F. Supp. 3d at

2    866.

3            Further, the "boilerplate language" at issue in *Buyer's Direct Inc. v. Belk, Inc.*, 2012 WL

4    1416639, at *4 (C.D. Cal. Apr. 24, 2012), bears no resemblance to the United Defendants'

5    customized, document-specific privilege log entries.  In that case, the log included only "a boilerplate

6    recitation along the following lines: Protected from disclosure by the attorney-client/work product

7    privilege."  "Joint Stipulation to Motion to Compel," *Buyer's Direct Inc. v. Belk, Inc.*, 2012 WL

8    12136182 (C.D. Cal. Mar. 9, 2012), ECF No. 3.  By contrast, the United Defendants' privilege log

9    identifies each document's bates range, privilege type, privilege claim, a detailed description, and its

10   custodian, date, author, and all known recipients, as well as the lawyer and the "client" (reflected in

11   the bates prefix as UBH or UHC ), in full compliance with this Court's requirements.  *See In re*

12   *Grand Jury*, 974 F.2d at 1071.

13           The United Defendants' privilege logs were also timely.  Plaintiffs attempt to suggest

14   otherwise by pointing to their initial request for documents in July 2021, but this is misdirection.

15   Plaintiffs served multiple rounds of confusing and conflicting sets of requests—*beginning* in July

16   2021, but continuing with more requests on August 27, 2021, September 20, 2021, January 27, 2022,

17   March 22, 2022, May 4, 2022, and May 31, 2022—totaling several hundred requests that needed to

18   be reconciled and clarified.  To resolve these issues, the United Defendants engaged in a lengthy set

19   of negotiations and disclosures regarding search terms, ESI protocols, and other parameters—and

20   began rolling productions beginning in late January 2022, completed production of custodial ESI in

21   June 2022, and have continued to produce a few remaining non-custodial categories on a rolling basis

22   through the present.  The privilege logs were produced on a rolling basis too, trailing shortly after the

23   custodial ESI productions to which they related, beginning in April 2022 and continuing into June

24   2022 when the United Defendants also completed custodial ESI productions (which totaled 35,871

25   documents and 188,689 pages).  The United Defendants' rolling document productions and privilege

26

27

28

4

logs—all of which were completed well in advance of depositions and the close of fact discovery—have been reasonable in light of the complexity and context of this case.[1]

## B.    The Attorney-Client Communications Involve Legal Advice, Not "Business Communications"

Plaintiffs make two arguments challenging the adequacy of the United Defendants' claims of attorney-client privilege.  *First*, Plaintiffs make a generic argument that the United Defendants' privilege claims are pretextual and should be viewed with suspicion.  *See* Mot. at 3–4.  *Second*, Plaintiffs invoke the primary purpose doctrine and contend that the advice was primarily business, not legal.  *See id.* at 4–5.  Both arguments fail.

### 1.    The United Defendants' Privilege Claims Are Properly Supported

Plaintiffs ask this Court to disregard the United Defendants' claims of privilege based on nothing more than pure conjecture and speculation—including conclusory assertions that the United Defendants' privilege claims are "suspect" because they involve in-house counsel, and that these privileged communications supposedly "obstruct the truth-finding process."  Mot. at 3–4.  None of Plaintiffs' authorities suggest legal advice by in-house lawyers cannot be privileged; to the contrary, Plaintiffs' cases generally involved the incidental inclusion of in-house counsel on business communications (*e.g.*, *Dolby*, *Oracle*, *Fischer*, and *Parneros*)—a far cry from the privileged communications here.  The United Defendants did not take this approach here; rather they produced (without redaction) plenty of documents involving counsel when they were included for reasons other

---

[1]  Courts generally hold that production of the privilege log while a production is ongoing or a reasonable period of time after a production has been concluded is reasonable, particularly in large cases involving complex or voluminous discovery.  *See*, *e.g.*, *Coalition for a Sustainable Delta v. Koch*, 2009 WL 3378974, at *11–14 (E.D. Cal. Oct. 15, 2009) (holding that a party producing a privilege log two months after production of documents and seven months after the initial RFPs were propounded was nonetheless reasonable in the context of the case); *Jumping Turtle Bar and Grill v. City of San Marcos*, 2010 WL 4687805, at *2 (S.D. Cal. Nov. 10, 2010) (holding that "under the circumstances of this case, the production of a privilege log one and one half months late was not unreasonable"); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) (allowing defendant to assert privilege over certain documents responsive to plaintiff's discovery requests for over a year but had yet to produce a privilege log describing the documents withheld "given the scope of discovery" and ordering defendant to produce a privilege log).

5

Gibson, Dunn &
Crutcher LLP

than providing legal advice (*see, e.g.*, UHC000016791; UHC000017317; UHC000021933; UHC000028702).

Plaintiffs point to a single privilege log entry (No. 1592) as supposed evidence that the United Defendants' privilege claims are unsupported.  Mot. at 3–4.  But the entry identifies the author (Lisa LaMaster), in-house counsel (Payman Pezhman), and the privilege basis ("Presentation requesting and/or seeking legal advice from the United Defendants' in-house counsel (Peyman Pezhman) regarding strategic legal planning").  Ms. LaMaster, a former member of the out-of-network programs group that helped run the program at issue in this case (among other things), is entitled to seek legal advice from in-house counsel, and to have those communications be protected by privilege.  *See In re Grand Jury*, 974 F.2d at 1070–71 & n.2 (a document is "permanently protected from disclosure" when it contains the "essential elements of attorney-client privilege adopted by [the Ninth Circuit]"—*i.e.*, it is a "communication[] relating to" a request, "made in confidence," for "legal advice" "from a professional legal adviser in [his/her] capacity" as such (quoting *Matter of Fischel*, 557 F.2d at 211)).[2]

Plaintiffs attempt to take out of context a particular phrase in the Declaration of Jolene Bradley, a current member of the out-of-network programs group, Dkt. 138 ("Bradley Declaration"), arguing that the sharing of "information" with in-house counsel means the discussions are not privileged.  But as Ms. Bradley explained, she is "sometimes asked to provide information to in-house counsel about how a claim is evaluated using an out of network program *in connection with a pending claim or dispute*."  Dkt. 138, ¶ 3 (emphasis added).  Courts routinely conclude that communications that include factual information are nonetheless privileged when they "as a whole concern the giving and receiving of legal advice."  *Klein v. Meta Platforms, Inc.*, 2022 WL 767096, at *3 (N.D. Cal. Mar. 11, 2022).

There is also no basis for Plaintiffs' assertion that "[t]he policies and procedures referred to" in the Bradley Declaration are "probably not protected by the attorney client privilege."  Plaintiffs'

---

[2]  As noted above, Plaintiffs challenged privilege log entries for a handful of specific documents for the first time in their motion filed Friday night.  The United Defendants will meet and confer with Plaintiffs and try to resolve any disputes about these entries/documents in advance of the July 29 hearing.

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

Gibson, Dunn & Crutcher LLP

sole citation for this argument, *Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464 (S.D. Cal. May 12, 2021), is inapposite.  *Hall* involved a putative class action accusing Marriott of "false and deceptive advertising in the way [Marriott] represents the prices for [its] hotel rooms, services, and amenities."  *Id.* at *1.  The court's omnibus order compelled discovery on "55 separate discovery requests," some of which sought policies and procedures, but merely addressing a boilerplate privilege objection in written responses by saying that if there are any privileged documents the defendants should produce a log.  The court's unelaborated holding that "policies and procedures" were within the scope of discovery, without addressing any privilege log or particular claims of privilege, sheds no light on the issue presented here: the United Defendants have produced nonprivileged "policies and procedures," and the only issue is whether privileged communications *about* those policies should be protected.  There is no privilege exception for legal advice about policies and procedures (a context in which the need for advice is particularly important), so these privileged communications are protected.

### 2.     The Primary Purpose Doctrine Does Not Vitiate The United Defendants' Privilege

The primary purpose doctrine—which applies to "dual-purpose communications" made "for the purpose of seeking both legal and non-legal advice"—is not implicated here, as the communications at issue were made for the sole purpose of seeking or providing legal advice.  *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1118–19 (9th Cir. 2020) (declining to decide whether the "primary purpose" test or "because of" test should apply where district court found documents were not "dual purpose"); *In re Grand Jury*, 23 F.4th 1088, 1090, 1092–94 (9th Cir. 2022) ("[T]he primary-purpose test governs in assessing attorney-client privilege for *dual-purpose* communications." (emphasis added)).

Even under a primary purpose analysis, moreover, the withheld and redacted communications involve substantive legal advice by in-house lawyers on legal matters, so they are privileged.  For example, many of the withheld or redacted documents reflect legal advice that UHC's in-house lawyers provided to UHC's out-of-network programs group (non-lawyer business clients) about the extent to which plan language should be revised to support a new program offering.  *See, e.g.*, entry nos. 2540, 2576, 2646, 2726, & 2746.  Others reflect legal advice from in-house counsel concerning

7

Gibson, Dunn &
Crutcher LLP

litigation and claims disputes (*see, e.g.*, entry nos. 1316, 1460, 1510 & 1677); the legal viability of programmatic changes across the company (*see, e.g.*, entry nos. 363, 1516, & 1535); strategic legal planning (*see, e.g.*, entry nos.  1542, 1545, 1551 & 1573); or draft language for plan documents, communications with members or plan sponsors, contracts, or agreements (*see, e.g.*, entry nos. 1314, 2049, 2659, 2646, 2576, 2726, & 2746).

That these privileged communications *concern* the United Defendants' "business" does not mean they are not privileged, because it is well-established that businesses are entitled to legal advice.  *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").  Whether the subject matter is a business or something else, there is a "rebuttable presumption" that a lawyer is hired "to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *Id.*  Where "attorneys [are] employed for their legal knowledge, to bring their clients into compliance with the law in the least burdensome way possible," "[t]heir communications with their clients [are] therefore within the scope of the attorney-client privilege." *Id.* at 1502.

Recent decisions in this District confirm this approach.  In *Staley v. Gilead Sciences, Inc.*, the plaintiffs challenged a claim of attorney-client privilege as to certain portions of memoranda prepared for corporate decisionmakers and "internal presentations addressing various business matters."  2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021).  The plaintiffs argued that because the redacted documents "were created to help [the defendant] evaluate whether certain agreements . . . made *business* sense," "the primary purpose of the redacted communications was business advice." *Id.* (emphasis in original).  The court disagreed, holding that "the attorney-client privilege can still obtain *even where a business decision is implicated.*" *Id.* (emphasis added).  "Specifically," the court explained, "if an attorney gives a client *legal advice on a business decision*, that communication is protected by the privilege (assuming, *e.g.*, that the communication was made in confidence and in his or her capacity as an attorney)." *Id.*  (emphasis in original); *see also id.* at *2–3 (listing cases upholding the application of attorney-client privilege to "legal advice on a business decision").

Gibson, Dunn &
Crutcher LLP

**C.     The Fiduciary Exception Does Not Apply To The United Defendants' Privilege Claims**

Plaintiffs also seek to pierce the United Defendants' privileges based on a broad, unprecedented misapplication of the "fiduciary exception."  Mot. at 5–7.  Contrary to Plaintiffs' assertion, it is Plaintiffs' burden to establish that the fiduciary exception applies, and they fail to do so here.  *See Mett*, 178 F.3d at 1064; *see also Kennis v. Metropolitan West Asset Mgmt., LLC*, 2018 WL 5274586, at *4 (C.D. Cal. May 17, 2018) ("Plaintiff bears the burden of whether the fiduciary exception applies to a specific communication.").

**1.      The Privileged Communications Do Not Involve Fiduciary Functions**

Plaintiffs ignore the "fiduciary" part of the fiduciary exception.  The "fiduciary exception" applies only when a fiduciary receives legal advice *while performing a fiduciary function* for the ERISA plan member challenging the privilege.  This context is a necessary prerequisite for the fiduciary exception to apply, because "an entity may be a fiduciary under ERISA for some purposes and not for others."  *Del Prete v. Magellan Behav. Health, Inc.*, 112 F. Supp. 3d 942, 946 (N.D. Cal. 2015).[3]  And it is only when acting as a fiduciary that someone is required to act in the interest of an ERISA plan and its beneficiaries—and thus the plan members can be considered the true "clients" for legal advice sought by the fiduciary.  *See Mett*, 178 F.3d at 1063–65 (summarizing rationales for the fiduciary exception).

Even though Plaintiffs bear the burden of showing the fiduciary exception applies, they make no effort to connect ***any*** attorney-client communications by the United Defendants to ***any*** fiduciary function for any ERISA plan—let alone any fiduciary functions for Plaintiffs' own plans (self-funded employee benefits plans for Apple and Tesla).  Indeed, most of the documents highlighted in Plaintiffs' motion to compel bear no connection (even indirectly) to their claims, their plans, or their lawsuit.  Instead, they instead concern irrelevant programs and services not even at issue in this case.  *See* entry nos. 1636 to 1640 (discussed Mot. at 1) (redaction of just a few sentences of legal advice on

---

[3]  *See also, e.g.*, *Collins v. Teamsters Benefit Tr.*, 2013 WL 12343709, at *10 n.12 (N.D. Cal. Dec. 27, 2013) (similar); *see also Darcangelo v. Verizon Commc'ns, Inc*., 292 F.3d 181, 192 (4th Cir. 2002) (same); *Pender v. Bank of Am. Corp*., 788 F.3d 354, 362 (4th Cir. 2015) ("Unlike traditional trustees who are bound by the duty of loyalty to trust beneficiaries, ERISA fiduciaries may wear two hats.").

Gibson, Dunn &
Crutcher LLP

1    a presentation deck regarding "Outlier Cost Management," a completely different program that did

2    not apply to Plaintiffs' claims and is not at issue in this case).

3         Moreover, even for privileged communications that may be relevant to Plaintiffs' lawsuit, the

4    key point is that they did not involve any fiduciary functions, so Plaintiffs cannot be viewed as the

5    "true clients" and the fiduciary exception does not apply.  As numerous courts have recognized, third-

6    party service providers, like the United Defendants here, often wear "two hats"—sometimes they act

7    as fiduciaries for ERISA plans, sometimes they do not.  *Pegram v. Herdrich*, 530 U.S. 211, 224–25

8    (2000) (managed care companies wear "two hats" and sometimes do not act as fiduciaries); *Del*

9    *Prete*, 112 F. Supp. 3d at 946 ("[A]n entity may be a fiduciary under ERISA for some purposes and

10   not for others.").[4]

11        Plaintiffs make no showing that the United Defendants were wearing a fiduciary "hat" at the

12   time of any privileged communications.  And the documents and privilege log entries (such as the

13   presentation deck regarding "OCM" discussed above) show that they were instead acting in their own

14   business interests to develop service and programs for a broad, varied customer base.  As numerous

15   courts have recognized, plan service providers (like the United Defendants) invest substantial

16   resources developing programs and services—such as the out-of-network programs discussed in

17   many of the privileged communications—that they can sell to health plan customers.  The United

18   Defendants compete for business through these program offerings, so they have their own,

19   independent interests in developing and maintaining high-quality programs to be used for a wide

20   range of current and potential customers.  And in this highly regulated, complex industry, the United

21   Defendants also have a perfectly legitimate need to seek legal advice in the course of developing and

22   maintaining these programs.  This is what the privilege logs reflect.  *See, e.g.*, entry nos. 513 & 1459

23   (legal advice regarding "out-of-network programs"); entry nos. 1542, 1545, 1551 & 1573 (legal

24   advice regarding "strategic legal planning"); entry nos. 363, 1516, & 1535 (legal advice regarding

25   "system or program transitions"); entry nos. 1644 & 2729 (legal advice regarding "contract

26

27   _____

      [4] *See also*, *e.g.*, *Darcangelo*, 292 F.3d at 192 (same); *Collins*, 2013 WL 12343709, at *10 n.12
28   (similar); *see also Pender*, 788 F.3d at 362 ("Unlike traditional trustees who are bound by the
      duty of loyalty to trust beneficiaries, ERISA fiduciaries may wear two hats.").

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

negotiations"); entry nos. 1314, 2049, 2659, 2646, 2576, 2726, & 2746 (legal advice regarding "draft language for plan documents, communications with members or plan sponsors, contracts, or agreements").

In these situations, the United Defendants are acting in their own business interests, not as ERISA fiduciaries acting in the interest of a particular plan or group of beneficiaries.  After all, these programs and services are merely options for plan sponsors (and future potential customers) to select, with each plan's unique interests and memberships in mind—and any particular program or service may benefit some and not others.

For these reasons, courts have recognized that service providers are ***not*** acting as fiduciaries when developing and maintaining broadly available programs and services, even when the programs may impact reimbursements under ERISA plans.  *See, e.g.*, *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 744–47 (6th Cir. 2010) (holding that Blue Cross "was not acting as a fiduciary when negotiating system-wide" hospital reimbursement rates and contracts for multiple ERISA plans); *see also Pegram*, 530 U.S. at 223 (recognizing that an HMO "is not an ERISA fiduciary merely because it administers or exercises discretionary authority over its own HMO business," as opposed to a particular ERISA "plan").[5]

The fiduciary exception therefore does not apply to legal advice in the course of developing and maintaining such programs.  *See*, *e.g.*, *Sender v. Franklin Resources, Inc.*, 2016 WL 641633, at *3–4 (N.D. Cal. Feb. 18, 2016) (fiduciary exception does not apply to communications that "do not involve plan administration"); *Ronches v. Dickerson Emp. Benefits*, 2009 WL 10669571, at *11 (C.D.

---

[5] *See also In re UnitedHealth Group PBM Litig.*, 2017 WL 6512222, at *9–10 (D. Minn. Dec. 19, 2017) ("[N]egotiating prices with providers is . . . not a fiduciary function, but rather the administration of a network administrator's business."); *Am. Psychiatric Ass'n v. Anthem Health Plans*, 50 F. Supp. 3d 157, 169 (D. Conn. 2014) (similar), *aff'd*, 821 F.3d 352 (2d Cir. 2016); *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 677 (M.D. Tenn. 2007) ("Caremark's contracting with retail pharmacies in its proprietary network" is "part of Caremark's administration of its own business" and "not fiduciary in nature"); *Am. Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.*, 973 F. Supp. 60, 67–68 (D. Mass. 1997) (finding that carrier's contracting with and organizing of retail pharmacy networks is part of carrier's administration of its own business, not the administration of ERISA plans to which it provides services); *Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.*, 213 F. App'x 473, 479 (6th Cir. 2007) (service provider "was acting in a business capacity, rather than as an ERISA fiduciary").

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

Cal. Oct. 30, 2009) (fiduciary exception does not apply where the communications relate to non-fiduciary "settlor" functions); *Peters v. Aetna*, 2018 WL 3616923, at *8–9 (W.D.N.C. July 27, 2018) (fiduciary exception did not apply to privileged legal advice "concern[ing] Aetna's negotiations with Optum to establish and maintain a provider network that benefited a broad range of health-care consumers," or to "system-wide communications" that "d[id] not relate to any particular benefits claim").

Plaintiffs argue that privileged advice about "[t]he implementation and decisions concerning United's 'Facility R&C' program and the use of Viant OPR" (the out-of-network programs at issue) should be subject to the fiduciary exception, because these programs can *impact* "plan administration." Mot. at 5–6. And they again twist the words of the Bradley Declaration, in which Ms. Bradley (a member of the out-of-network programs group) describes her work to maintain these programs. But the Ninth Circuit has rejected an "expansive view" of fiduciary exception that would apply to any legal advice that "relate[s] to" ERISA "plan administration," because such an interpretation would "swallow the entirety of the attorney-client privilege for ERISA trustees." *Mett*, 178 F.3d at 1064–65.[6] Nor can Plaintiffs' position be reconciled with the above cases, all of which involved programs and services impacting plan administration, but still rejected application of the fiduciary exception.

Plaintiffs' cases are easily distinguishable, because they all involved legal advice received in the course of core fiduciary functions for the plaintiff's ERISA plan. In *Stephan v. Unum Life Insurance* (Mot. at 5–6), for example, the defendant (an insurer) received legal advice in the course of denying the plaintiff's benefits claim—*i.e.*, an in-house lawyer provided advice on "how the insurance policy under which [the plaintiff] was covered ought to be interpreted," including "whether

---

[6] In *Mett*, the Ninth Circuit framed the fiduciary exception as applying to communications about "plan administration," because the pension plan trustees invoking the privilege in that case had overall responsibility for plan administration—so their fiduciary responsibilities were co-extensive with "plan administration." Here, the United Defendants' fiduciary functions are narrower: Plaintiffs' employers are the plan administrators that retain overall control over plan administration, and they have only delegated to the United Defendants the more limited role of "Claim Fiduciary" to make the final decision on appeals from benefits denials. *See* Dkt. 98-5 at 5 (§ 2.1), 13 (§ 12.3); Dkt. 105-8 at 5 (§ 2.1), 20 (§ A5). None of the privileged communications at issue involved this "Claim Fiduciary" function—or any other aspect of plan administration.

12

Gibson, Dunn & Crutcher LLP

[the plaintiff's] bonus ought to be considered monthly earnings within the meaning of the Plan." 697 F.3d 917, 932 (9th Cir. 2012). In *Waller v. Blue Cross of California*, the defendant "acted in a fiduciary capacity when choosing annuity providers to satisfy plan liabilities" for the plaintiff's plan—"the quintessential exercise of 'discretionary control'"—so legal advice about selection of annuity providers was subject to the fiduciary exception. 32 F.3d 1337, 1342 (9th Cir. 1994). Likewise, in *Wit v. United Behavioral Health*, the communications involved legal advice on guidelines given to medical directors about *how to make benefits determinations*—a nexus to decision-making on the plaintiffs' benefits claims (a fiduciary function) that does not exist here on any of the withheld or privileged documents. 2016 WL 258604, at *8–14 (N.D. Cal. Jan. 21, 2016 ).[7] Because here Plaintiffs fail to connect any privileged communications to any fiduciary function, let alone any involving Plaintiffs' claims or plans (such that they could be viewed as the "true clients" for the legal advice), the fiduciary exception does not apply.

### 2. The Fiduciary Exception Does Not Apply To Defensive Documents

Even if some of the privileged communications involved fiduciary functions, many of the communications are still protected for an additional reason: they are defensive in nature, involving actual and potential litigation (or government or regulatory scrutiny) faced by the United Defendants, and thus fall outside the fiduciary exception because they implicate the United Defendants' own interest in defending against legal liability. As the Ninth Circuit ruled in *Mett*, the fiduciary exception does not apply "as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability," including "to defend herself against the plan beneficiaries." *Mett*, 178 F.3d at 1064, 1066; *see also Fischel*, 191 F.R.D. at 609 ("[W]hile generally, the fiduciary exception applies to matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains to protect itself from liability."). Likewise, in *Baird v. BlackRock Institutional Trust Co., N.A.*, the court found that "discussions with in-house counsel about a 401(k)

---

[7] *See also* Mot. at 6 (citing *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 309 (3d Cir. 2008) (ruling that defendant (Allshore, Inc.) acted as a fiduciary in connection with denial of benefits to the plaintiff because Allshore "exercised all discretionary authority and control over the administration of the Allshore Plan as well as the management and disposition of plan assets")).

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

1   lawsuit . . . concern[ed] civil liability, and would not fall within the fiduciary exception."  2019 WL

2   4620407, at *2 (N.D. Cal. Sept. 24, 2019).

3        Plaintiffs argue that the United Defendants need to connect each privileged communication to

4   a specific litigation matter to invoke this rule, but they are wrong.  In *Mett*, the Ninth Circuit rejected

5   the fiduciary exception once "trouble was in the air" even though "no legal action was then pending

6   against the defendants in connection with the pension plans."  *Mett*, 178 F.3d at 1064.  This Court

7   also recognized, in *Wit*, that the "context . . . or contents of the communications" merely need to

8   reflect that "they are defensive in nature and relate to advice sought and obtained to determine how

9   far the trustees are 'in peril'"—but did not rule that counsel needed to have in mind a specific

10  litigation matter.  2016 WL 258604, at *7.  Other courts agree.  *See, e.g.*, *Hudson v. Gen. Dynamics*,

11  73 F. Supp. 2d 201, 203 (D. Conn. 1999) (fiduciary exception did not apply because "defendant had

12  *good reason* to seek legal advice about its responsibilities and potential liability" (emphasis added)).[8]

13       Numerous privilege log entries reflect legal advice and attorney work product regarding

14  actual or potential litigation, and thus are protected.  For example, entry nos. 1316, 1460, 1510 and

15  1677 concern discussions with the United Defendants' in-house and outside counsel regarding

16  potential exposure to liability in "litigation or claims disputes," including communications regarding

17  legal strategy for active litigation with members, providers, or other entities.  Other entries—such as

18  nos. 2145, 2381 to 2382, 2384 to 2387, and 2395 to 2400—concern legal advice regarding an inquiry

19  by the Department of Labor relating to mental health parity issues, and thus implicate the United

20  Defendants' personal interests in having legal advice.  And entry nos. 1605, 1608 to 1609, and 1627

21  to 1628 concern legal advice regarding a Department of Labor audit.  All of these privileged

22  communications are "to protect [the United Defendants] from liability," and thus do not implicate the

---

[8]   *United States v. Jicarilla Apache Nation*, which Plaintiffs cite (Mot. at 5–6), reinforces this point.
There, the U.S. Supreme Court noted that, at common law, the fiduciary exception applied "when
a trustee obtained legal advice to guide the administration of the trust, *and not for the trustee's
own defense in litigation*."  564 U.S. 162, 170 (2011) (emphasis added).  The Court
acknowledged that "[w]hen 'multiple interests' are involved in a trust relationship, the
equivalence between the interests of the beneficiary and the trustee breaks down."  *Id.* at 182.
Accordingly, the court *declined* to apply the fiduciary exception to privileged advice received by
the Government in the context of its trust relationship with Native American tribes, citing the
Government's "competing legal concerns."  *Id.* at 181–82.

Gibson, Dunn &
Crutcher LLP

1  fiduciary exception.  *Peters*, 2018 WL 3616923, at *11 (rejecting fiduciary exception in connection

2  with legal input on response to letter from state department of insurance); *Solis v. Principal Fin.*

3  *Grp.*, 2011 WL 13290335 at *7–8 (S.D. Iowa Sept. 6, 2011) (fiduciary exception inapplicable to

4  documents that discussed a company's personal liability in connection with "a government

5  investigation of adherence to fiduciary duties").

6  **D.    The Work Product Doctrine Also Applies**

7         As with their other arguments regarding the United Defendants' privilege claims, Plaintiffs

8  ask this Court to compel a broad category of documents (*i.e.*, all of the documents over which the

9  United Defendants assert the work product protection) without any specific justification.  Mot. at 7.

10  Plaintiffs make another version of the same misguided argument discussed above: that the United

11  Defendants may not avail themselves of the work product protection because (1) "none [of the

12  documents] were prepared specifically for litigation" and (2) the United Defendants "do not identify

13  specific litigation."  *Id*. at 7.  Plaintiffs are wrong again.

14         To invoke the work product protection, a party must show that the documents were prepared

15  "in anticipation of litigation or for trial" by a "party or its representative (including the . . . party's

16  attorney[)]" and reflect that person's "mental impressions, conclusions, opinions, or legal theories."

17  *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014) (citing Fed. R. Civ. P.

18  26(b)(3)(A)).  Of course, "anticipation of litigation" can mean a specific case is not yet pending—and

19  sometimes no case ever materializes.  The United Defendants' assertions of work product satisfy both

20  required prongs.  *First*, the documents withheld by the United Defendants on the basis of the work

21  product doctrine contain "mental impressions, conclusions, opinions, or legal theories of a party's

22  attorney."  *Id.*  For example, entry nos. 65, 1316, and 2812 all contain emails written by attorneys that

23  reflect their mental impressions related to ongoing or anticipated litigation.

24         *Second*, these documents were prepared "in anticipation of litigation or for trial" as required

25  by Federal Rule of Civil Procedure 26(b)(3)(A).  *Mackay*, 742 F.3d at 866.  Plaintiffs' claim that

26  "none" of these documents "were prepared specifically for litigation" (Mot. at 7) is entirely

27  unsupported and inaccurate.  *See, e.g.*, entry nos. 977, 1930, 1933, 1944, 1947, 2063, 2064, 2065,

28  2074, 2076 (discussing active litigation).

Work product protection likewise applies even when the United Defendants did not "identify specific litigation or even imminent litigation" (Mot. at 7), so long as they had a good faith basis to anticipate litigation. It is well established in the Ninth Circuit that attorney work product need not be "prepared in anticipation of *specific* litigation to be privileged." *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.* ("*Am. C.L. II*"), 880 F.3d 473, 486–87 (9th Cir. 2018) (emphasis added) (finding documents prepared to help attorneys respond to "potentially recurring legal issues" to be protected attorney work product despite the absence of any "specific litigation"); *Am. C.L. Union of N. Cal. v. Dep't of Just.* ("*Am. C.L. I*"), 70 F. Supp. 3d 1018, 1029–30 (N.D. Cal. 2014), *aff'd in part, rev'd in part sub nom. Am. C.L. II*, 880 F.3d 473 (9th Cir. 2018) ("The phrase 'in anticipation of litigation' extends beyond an attorney's preparation for a case in existing litigation, and includes 'documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.'"). "Potential" or "anticipated litigation" also meets the standard for the work product protection. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 322 F.R.D. 571, 588 (S.D. Cal. 2017) (protecting documents under the attorney work product privilege where party "anticipated litigation" and "undertook . . . discussions for potential litigation"); *Schaeffer v. Gregory Village Partners, L.P.*, 78 F. Supp. 3d 1198, 1206 (N.D. Cal. 2015) (documents were protected work product because they "reveal[ed] [attorney's] mental impressions regarding . . . potential litigation").

The United Defendants operate in a complex, highly regulated industry. Litigation is a frequent and expected occurrence, even if the specific case or opponent is not yet known—and may never materialize. Any documents prepared for litigation, whether in response to ongoing litigation or in anticipation of prospective litigation, qualify for work product protection and were properly withheld.

**E.     The Crime-Fraud Exception Does Not Apply**

There is also no basis for Plaintiffs' argument that the crime-fraud exception applies to "many of United's documents." Mot. at 8. To invoke the crime-fraud exception, Plaintiffs are required to make a prima facie showing that the challenged communications "were in furtherance of an intended or present illegality." *United States v. Zolin* ("*Zolin I*"), 809 F.2d 1411, 1418 (9th Cir. 1987); *see also United States v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977) ("To invoke the [crime-

16

1    fraud] exception successfully, the party seeking disclosure . . . must make out a prima facie case that

2    the attorney was retained in order to promote intended or continuing criminal or fraudulent

3    activity.").  Plaintiffs identify no "intended or present illegality" other than to vaguely refer to their

4    RICO allegations in general, but such a showing is not enough.   *Zolin I*, 809 F.2d at 1418; *see* Mot.

5    at 8.

6           According to Plaintiffs, any documents pertaining to any of the United Defendants'

7    "'company wide' programs" cannot be privileged because "those 'company wide' programs" are

8    subject to Plaintiffs' RICO claims" and "[t]he crime fraud exception applies to documents that

9    support civil RICO claims."  Mot. at 8 (citing *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020

10   WL 8816475, at *3 (C.D. Cal. May 15, 2020)).  But courts (including the Ninth Circuit) routinely

11   reject the crime-fraud exception in cases involving civil RICO allegations, because more is required.

12   *See Chen*, 99 F.3d at 1503 (noting that "mere allegations or suspicion" are "insufficient" to establish

13   crime-fraud exception); *see also In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996)

14   (ruling that "it isn't enough for the [party seeking disclosure] merely to allege . . . a sneaking

15   suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the

16   attorney").

17          Plaintiffs' own cases confirm they have not met their burden.  In *Natural-Immunogenics*

18   *Corp. v. Newport Trial Group*, 2020 WL 8816475, at *3, the party seeking disclosure submitted

19   documents and testimony laying out the allegedly fraudulent scheme, and the privileged

20   communications were shown by a preponderance of the evidence to be "in furtherance of"—and

21   indeed, central to—the scheme.  Likewise, in *In re Grand Jury Investigation*, 810 F.3d 1110, 1113

22   (9th Cir. 2016), "the government relied on independent, non-privileged evidence to establish

23   reasonable cause that the attorneys were enlisted to make false statements to the FDA."  Plaintiffs

24   have made no similar showings here, and thus fail to establish that the challenged communications

25   were "in furtherance of an intended or present illegality."  *Zolin I*, 809 F.2d at 1418.

26   **F.     Plaintiffs Identify No Need For *In Camera* Review**

27          To warrant *in camera* review, it is not enough to flag a few issues and broadly gesture to the

28   opposing party's privilege claims.  The "standard established [by the U.S. Supreme Court] in [*United*

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS

*States v.*] *Zolin*[, 491 U.S. 554 (1989)] for crime-fraud *in camera* review applies equally well" for requests for "*in camera* review to contest assertions of the [attorney-client] privilege."  *In re Grand Jury*, 974 F.2d at 1074.  That standard requires the party seeking review to advance "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence" that the materials are not privileged.  *Zolin II*, 491 U.S. at 572; *see also NLRB v. Interbake Foods*, 637 F.3d 492, 502 (4th Cir. 2011) (quoting *In re Grand Jury*, 974 F.2d at 1074). Yet Plaintiffs request that the Court conduct an *in camera* review without citing any specific facts or evidence.  Mot. at 1, 8.  At this stage in the discovery process, Plaintiffs have had several depositions, as well as access to numerous non-privileged and partially redacted documents (many of which they have had for multiple months), yet they offer no evidence or other factual support for their privilege challenges.

Plaintiffs' request that the court "conduct an *in camera* review of . . . a random sample of documents" should be rejected because it is just a speculative roll of the dice.  Mot. at 1.  Plaintiffs rely on an inapposite case about *ex parte* submissions related to a FOIA application, not a civil dispute over privilege.  Mot. at 1 (citing *Doyle v. FBI*, 722 F.2d 554, 555 (9th Cir. 1983)).  In the FOIA case, the Ninth Circuit *rejected* an argument that the district court should have conducted *in camera* review of a random sample of documents.  *Doyle*, 722 F.2d. at 556 (upholding district court's decision to grant judgment sustaining withholding of documents by the FBI without viewing any of the documents *in camera*).  Plaintiffs' citation to *Doyle v. FBI* disregards Plaintiffs' burden to advance "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence" that is not privileged.  *In re Grand Jury*, 974 F.2d at 1075.

Plaintiffs' argument for *in camera* review under the crime-fraud exception is similarly deficient.  Plaintiffs do not meet the "threshold showing to obtain *in camera* review," which "may be met by using any relevant evidence" that is not privileged.  *Zolin II*, 491 U.S. at 575.  Plaintiffs again mischaracterize the Bradley Declaration, suggesting that her reference to "'company wide' programs" supports the crime-fraud exception, because Plaintiffs challenge (without evidence) part of one of these programs through their RICO claim.  Mot. at 8.  But a company-wide program is not, in

Gibson, Dunn &
Crutcher LLP

and of itself, evidence of a crime or fraud, and Plaintiffs offer no other facts—apart from one conclusory statement—to support their argument that the crime-fraud exception applies here.

The broad scope of discovery in this case—juxtaposed against the complete absence of supporting evidence for Plaintiffs' challenges—weighs heavily against *in camera* review.  When considering whether to conduct an *in camera* review, courts are to "make the decision . . . 'in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the crime-fraud exception.'"  *Outlaw Lab'ys,* 2020 WL 5500220, at *3 (citing *In re Grand Jury*, 974 F.2d at 1072–73).  Here, Plaintiffs do not detail which documents or how many the Court should review in relation to the crime-fraud exception (or for any other reason), nor do they articulate why any particular document is subject to the crime-fraud exception.  *Id*. at *5 (explaining that arguing the crime-fraud exception applied to four specific documents was not the same as arguing it applied to entire categories of documents).

Courts have rejected similar requests for *in camera* review.  In *In re Outlaw Laboratories, LP Litigation*, 2020 WL 5500220, at *5 (S.D. Cal. Sept. 11, 2020), the court rejected a party's conclusory statement that "the evidence that has been adduced to date is sufficient to support a good faith belief that documents . . . might reveal evidence further establishing the availability of the crime-fraud exception" as insufficient to justify *in camera* review.  *Id*. at *6.  Similarly, in *Perez v. DirecTV Group Holdings, LLC*, 2020 WL 10818049, at *3 (C.D. Cal. July 23, 2020) ("*Perez II*"), a plaintiff brought a putative class action against a cable TV provider involving civil RICO claims related to an alleged scheme to defraud customers.  *See* First Am. Class Action Compl. and Jury Demand, *Perez v. DirecTV Grp. Holdings, LLC*, 2017 WL 10110885, at *1 (C.D. Cal. Sept. 1, 2017), ECF No. 69.  After a period of discovery, the plaintiff moved to compel *in camera* review, arguing that it was needed to determine whether the crime-fraud exception should apply by "point[ing] to allegations in the [complaint] that Defendants engaged in a fraudulent scheme and that the communications at issue may be evidence of that fraud."  *Perez*, 2020 WL 10818049, at *3.  The court denied the motion: "Plaintiff's mere incantation of her core allegations [in her civil RICO

Gibson, Dunn &
Crutcher LLP

complaint] does not establish a factual basis supporting a good faith belief that further [crime-fraud] review is warranted." *Id.* The same is true here.

### IV.  CONCLUSION

For all of the foregoing reasons, the United Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

DATED: July 12, 2022

GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Geoffrey Sigler*
　　　　　　　Geoffrey Sigler

Attorneys for Defendants UNITED BEHAVIORAL HEALTH and UNITED HEALTHCARE INSURANCE COMPANY

Gibson, Dunn & Crutcher LLP

UNITED DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:20-CV-02254-YGR-JCS