MATTHEW M. LAVIN (*pro hac vice*)
Matt.lavin@agg.com
AARON R. MODIANO (*pro hac vice*)
Aaron.modiano@agg.com
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: (202) 677-4030
Facsimile: (202) 677-4031

DAVID LILIENSTEIN, SBN 218923
david@dllawgroup.com
KATIE SPIELMAN, SBN  252209
katie@dllawgroup.com
DL LAW GROUP
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 678-5050
Fax: (415) 358-8484

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH and CJ on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation, UNITED BEHAVIORAL HEALTH, INC. a California corporation, and MULTIPLAN, INC., a New York corporation,,<br><br>*Defendants.* | Case No.: 4:20-CV-02254-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**<br><br>Date: July 29, 2022<br>Time: 9:30 AM<br>Hon. Joseph C. Spero<br>Crtrm: San Francisco Courthouse, Courtroom F – 15th Floor |

## I. INTRODUCTION

Plaintiffs hereby submit their Reply regarding their motion to compel (the "Motion") the production of allegedly privileged documents described in United's deficient privilege logs. Despite United's attempts to reverse engineer valid claims of privilege for the withheld materials, United's response to Plaintiffs' Motion offers further support for *in camera* review of a random sample of documents, as previously approved by the Ninth Circuit. *See Doyle v. F.B.I.*, 722 F.2d 554 (9th Cir. 1983).

### A. United Should Not Be Allowed To Hide Behind Faulty Claims of Privilege

As described in Plaintiffs' Motion, central to this discovery dispute is United's Privilege Log for Claw Back Production, which created as part of United's production of allegedly privileged documents that resulted in claw back attempt on or about April 7, 2022. The parties initially met and conferred on the issue on April 26, 2022, during which time United asserted that the primary purpose test was inapplicable as all documents for which the attorney-client privilege was asserted were for the sole purpose of providing legal advice. Both parties knew that this was not the case, as Plaintiffs had reviewed the documented produced by United prior to receipt of United's claw back letter. Even so, United furnished a claw back privilege log filled with vague assertions of privilege that effectively denied the Plaintiffs a meaningful opportunity to evaluate United's claims. Plaintiffs immediately raised issue with United, but after two subsequent revisions of this log, Plaintiffs' concerns remain, namely United's proclivity toward pretextual claims of attorney-client privilege and work product protection, both which United inappropriately uses to shield business decisions from discovery. Further, in this matter, United Healthcare's sole 30(b)(6) designee, repeatedly testified in her July 13/14 deposition that she relied upon the advice and review of United's in-house counsel on issues of plan terms, administrative services agreements, and other matters and had no knowledge or opinion on certain of these issues. It is well established that claims of privilege cannot be used as both a sword and a shield. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) (holding that the defendant implicitly waived the attorney-client privilege because it relied on an advice-of-counsel defense).

Central to this dispute is United's performance of its fiduciary obligations as an ERISA plan administrator, including the payment of benefits due to members covered under such plan. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 932-33 (9th Cir. 2012). The problem for United is that its fiduciary duties to plan members became inextricably intertwined with its self-interest in generating increased profits, such that United's plan administration functions became inseparably intertwined with its desire to advance its business interests. As discussed in the Motion, the implementation and decisions concerning United's "Facility R&C" program and its use of Viant OPR demonstrate United's unwavering commitment to its own business interests in the face of its ERISA duties. The declaration of Jolene Bradley, United's Associate Director of Out-of-Network programs, provides additional clarity on this issue, as she discussed being "asked to provide information to in-house counsel about how a claim is evaluated using an out of network program in connection with a pending claim or dispute." (Dft. 138, ¶ 3.) United contends that Plaintiffs misapply the fiduciary exception in "unprecedented" fashion, arguing that Plaintiffs "ignore the 'fiduciary' part of the fiduciary exception" that "applies only when a fiduciary received legal advice while performing a fiduciary function for the ERISA plan member challenging the privilege." (Resp. to Mot. at 9.) However, this strongly-worded defense is belied by the fact that insurance companies, including United, are regularly considered to function as ERISA plan fiduciaries. *See Stephan*, 697 F.3d at 932-33.

Undeterred, United argues in the alternative that it sometimes wears "two hats," which is another way of saying that is can be both a profit-driven business and ERISA plan administrator at various times. (Resp. to Mot. at 10.) Despite this admission that the fiduciary exception *might* apply, United conveniently claims that the exception applies to *none* of the documents subject to this dispute. Even if there are times in which United is wearing its business interest "hat," the example passage from Ms. Bradley's declaration discussed above is problematic for United. (Dft. 138, ¶ 3.) The evaluation of a plan member's "pending claim" using United's out of network program directly relates to United's fiduciary function as plan administration, and as such, United is not to assert the attorney-client privilege against plan members, including Plaintiffs. *See Stephan*, 697 F.3d at 932; *A.F. v. Providence Health Plan*, 173 F.Supp.3d 1061, 1079 (D. Or. 2016) (holding that the fiduciary exception to attorney-client privilege applied to insurer's communications regarding company-wide decisions regarding

coverage); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (stating that in the ERISA context, "one is a fiduciary to the extent he exercises any discretionary authority or control").

On several occasions United cited to the "highly regulated, complex" insurance industry as justification for its flimsy assertions of privilege. Firstly, it is well-established that the implementation of company-wide decisions concerning plan design are subject to the ERISA fiduciary duty. *See Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994); *Providence Health Plan*, 172 F.Supp.3d at 1079.

### B. *In Camera* Review is Justified

United devotes the majority of its response attempting to invalidate or eliminate the various exceptions to its assertions of attorney-client privilege, but this analysis is a classic case of putting the proverbial cart before the horse. Arguments over the applicability of these exceptions can and should be resolved by *in camera* review of a random sample of these documents. *See Doyle v. F.B.I.*, 722 F.2d 554 (9th Cir. 1983).

Despite United's suggestions to the contrary, Plaintiffs have met their burden to establish the need for *in camera* review of the allegedly privileged materials, as the Motion already demonstrated a factual basis in support of Plaintiffs' reasonable, good faith belief that the materials in question are not actually privileged or are subject to one of the multiple exceptions to the privilege, including the crime-fraud and fiduciary exception. *See In re Grand Jury*, 974 F.2d 1068, 1075 (9th Cir. 1992). While *in camera* review is not automatically granted to every requesting party, the evidentiary burden placed upon the movant to demonstrate the need for such review "is relatively minimal." *In re Grand Jury*, 974 F.2d at 1072.

Far from the fishing expedition described by United, Plaintiffs' suspicions concerning United's assertions of privilege are supported by information gleaned from United's own filings and documentation, including the declaration Jolene Bradley. (Dkt. 138.) Ms. Bradley's discussion of regular interactions with United's counsel concerning "company-wide policies and procedures relating to out-of-network programs" directly relate to Plaintiffs' RICO claims, as such claims assert that United and its co-defendant, MultiPlan, engaged in a "company-wide" scheme to fraudulently prepare

artificially low reimbursement rates for mental health and/or substance abuse claims. Variations on this theme are easily found throughout United's privilege logs, which still demonstrate obvious deficiencies after two attempts at revisions following the start of this discovery dispute. (*See* Entries 21-22, United Defendants' Second Amended Privilege Log - Clawback Reproduction VOL009 and VOL011; "Email chain seeking advice and information from in-house counsel…on how to respond to inquiry from plan relating to MultiPlan…") Accordingly, Plaintiffs have met the first prong of the *in camera* inquiry annunciated in *U.S. v. Zolin*, 491 U.S. 554, 572 (1989) (holding that "[f]irst, the court must 'require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."). The decision whether to engage in *in camera* review now rests in the sound discretion of this Court. *Id*. at 572.

       United's attempts to diminish Plaintiffs' successful demonstration by artificially expanding the requirements for *in camera* review. Firstly, United concedes that the standards for *in camera* review concerning the crime-fraud exception apply equally well for requests for in camera review to test the validity of the privilege or protection being asserted. (Resp. to Mot. at 17-18.) While United is free to dispute the applicability of the crime-fraud exception to this case, and it does so at length in its response to the Motion, such defense does not alter or heighten the evidentiary showing required for *in camera* review. Rather, the threshold for *in camera* review is "set sufficiently low to discourage abuse of privilege and to ensure that mere assertions of attorney-client privilege will not become sacrosanct." *In re Outlaw Labs*., 2020 WL 5500220, at *5 (citing *In re Grand Jury*, 974 F.2d at 1072). Moreover, contrary to United's admonition, the number of depositions and relative "broad scope of discovery in this case" are irrelevant to the question of whether *in camera* review of the documents in question is justified. As discussed above, Plaintiffs have already made the requisite, "minimal" showing to demonstrate the need for *in camera* inspection of United's materials, and United's attempts to diminish this showing are nothing more than a last-ditch effort to avoid disclosure of damaging materials to Plaintiffs.

       Even if Plaintiffs' are not ultimately entitled to disclosure of the allegedly privileged materials being withheld by United, this Court's *in camera* review of the materials in question will likely resolve

this discovery dispute without tarnishing any valid claims of privilege, to the extent that such claims exist. *See Zolin*, 491 U.S. at 568 (noting that *in camera* inspection can be an effective means to ensure that the attorney-client privilege is not abused, as "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege."). When considered in this light, United's aggressive defense against *in camera* review of *any kind* is especially curious, given that the only entity completely unaware of the content of the documents is the Court.

Having made the requisite, "minimal" showing to demonstrate the need for *in camera* inspection of United's materials, the matter now rests in the Court's discretion. This decision should be made in light of the facts and circumstances of this dispute, including the volume of materials subject to review, the relative importance to the case of the alleged privilege information, and the likelihood that such evidence will establish an exception to the privilege in question. *See, e.g., Zolin*, 491 U.S. at 572; *In re Grand Jury*, 974 F.2d at 1073. Plaintiffs' merely request a random sample of documents for review, so the total universe of documents subject to *in camera* inspection will be low. Moreover, Plaintiffs are confident that the materials in question are central to this dispute. Due to United's inadvertent production and subsequent claw back attempt, both parties are already keenly aware of the content of *some* of the documents in question. In this context, United's desperate attempt to shield its over-inclusive assertions of privilege from scrutiny of any kind is telling and consistent with Plaintiffs' understanding that the documents in question are of critical importance to this dispute. Plaintiffs are confident that review of these materials will establish the existence of both the crime-fraud and fiduciary exceptions to the asserted privilege or protection.

WHEREFORE, for the reasons set forth above, Plaintiffs ask the Court to find that United's conduct has waived its assertions of privilege or, in the alternative, to conduct an *in camera* review of the documents withheld or redacted.

[Signature pages follows]

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | Dated: July 15, 2022 |

| ARNALL GOLDEN GREGORY LLP | DL LAW GROUP |
|---|---|
| /s/ *Matthew M. Lavin* | /s/ *David Lilienstein* |
| MATTHEW M. LAVIN | DAVID LILIENSTEIN |
| AARON R. MODIANO | KATIE SPIELMAN |

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that a true and correct copy of the above and foregoing document has been served on July 15, 2022, to all counsel of record who are registered CM/ECF users via the Courts CM/ECF system. Any counsel record who are not registered through the courts CM/ECF system will be served by mail or other means permitted by court rules.

**ARNALL GOLDEN GREGORY LLP**

*/s/ Matthew Lavin*
MATTHEW M. LAVIN

**DL LAW GROUP**

*/s/ David Lilienstein*
David Lilienstein

*Attorneys for Plaintiffs and the Putative Class*