Page 1
July 31, 2022

Chief Magistrate Judge Joseph C. Spero
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

> RE: Joint Letter Brief Seeking Discovery Relief in matter of *LD et al. v. United Behavioral Health Company et al.*: Case No. 4:20-cv-02254-YGR-JCS

Chief Magistrate Judge Spero:

Pursuant to your Civil Standing Orders, the parties are seeking the Court's assistance in resolution of the discovery dispute set forth below. Lead counsel for the parties met and conferred on July 28 and July 29, 2022 in an effort to resolve these matters and have been unable to do so.

*Plaintiffs' Statement*

*Specific Issues as to United Defendants*: In the final two weeks of the class discovery period, and after the deposition of United's sole Rule 30(b)(6) designee, United produced 10,504 documents (over 209,000 distinct images) with 91 documents (9,621 images) produced on the discovery deadline, a further 358 documents (21,676 images) produced *after* the discovery deadline, and 70 further documents produced on July 29, 2022. Despite these late document dumps, United continues to refuse Plaintiffs' repeated requests to produce specifically identified documents, central to the matter, many of which were requested beginning in July 2021.

Plaintiffs' First Set of Requests for Production to United ("First RFP") requested itemized reports of fees collected by United from all plan sponsors pursuant to the Shared Savings and Reasonable and Customary programs (see, for example, Plaintiffs' First RFP No. 4 and 17). United's own Rule 30(b)(6) designee testified that these reports show fees generated by United from these programs, including the program at the heart of this dispute: the R&C Program. These reports, including identification of plan sponsors by name, are essential to calculation of damages, and despite being first requested by Plaintiffs in July 2021,[1] these materials remain outstanding. Likewise, Plaintiffs have repeatedly demanded copies of all invoices sent by United to Apple, Tesla, Oracle, Union Pacific, JP Morgan, and Raytheon (*see, e.g.*, Plaintiffs' First RFP Nos. 79, 81). United has produced *some* responsive documents over the past few weeks; however, no supplemental responses were served along with the documents. United should be compelled to provide a complete response and documents responsive to all of Plaintiffs' requests. To that end, United has not produced <u>complete</u>, certified administrative records despite having an independent duty to do so. *Cf. Fowler v. Aetna Life Ins. Co.*, 615 F. Supp. 2d 1130, 1136 (N.D. Cal. 2009). Plaintiffs have continually requested copies of the full administrative records, including any explanations of benefits ("EOBs"), verification of benefits ("VOB") call recordings, and summary fee sheets prepared or maintained by United for the sample class[2]. (*see* Plaintiffs' Sixth RFP, May 4, 2022.)

United has continued to produce thousands of pages of documents after the close of discovery, which has prejudiced Plaintiffs by depriving them of the opportunity to use these materials during depositions. Plaintiffs should be given an opportunity to review these untimely productions and to recall those individuals who were previously deposed for additional examination. Further, these productions are filled with self-serving language from cherry-picked plan documents provided without

---

[1] Subsequently, Plaintiffs have repeatedly renewed this request, including during the Rule 30(b)(6) deposition of United and immediately afterward by email to counsel on July 14, 2022.

[2] United's frequent references to 'agreements' limiting Plaintiffs' requests are misleading and incorrect as shown by Plaintiffs' repeated objections in response to such steps taken by United in the attached correspondence.

context[3] and irrelevant information related to claims appeals and higher levels of care than the claims at issue (*i.e.*, the intensive outpatient program). This effort to bury Plaintiffs in self-serving, irrelevant documentation, while neglecting to produce the requested materials, is nothing more than bad faith discovery practice.

Despite multiple attempts to meet and confer on these issues, the aforementioned materials remain outstanding. Plaintiffs request the Court for an order compelling United to produce materials fully responsive to Plaintiffs' discovery requests, including ibaag[4] screenshots for the 25 sample patients at the time(s) of their claims, complete fee reports that identify by program and plan sponsor the fees United took for those programs, supplemental responses that comply with the federal rules, and certified, full, and complete administrative records of the 25 sample patients. Plaintiffs' also request that the court order United to permit an additional 30(b)(6) corporate deposition of United with a witness that is fully prepared to answer and address the noticed deposition topics[5].

*Specific Issues as to Multiplan*: Multiplan has similarly engaged in unnecessary discovery delay tactics. In the face of multiple requests from Plaintiffs, Multiplan previously refused to produce a privilege log for documents withheld from its prior document productions, the first of which productions occurred in April 2022, and has produced one after the document discovery period has closed, on July 22, 2022, thereby rendering such log useless for its intended purpose. This dilatory tactic is highly prejudicial to Plaintiffs, who are now unable to test any assertions of privilege through discovery. Further, the privilege log appears haphazardly done. In one, glaring, example, MultiPlan's PRIV-00055, MultiPlan asserts attorney-client and work product privilege over a document prepared by 'AModiano,' Plaintiffs' counsel. As discussed below, Plaintiffs contend that Multiplan has waived its right to assert any privilege for documents withheld from its prior productions. In particular, the underlying data in the Standard Analytical File ("SAF") that MultiPlan relies on to defend the Viant OPR methodology for the claims at issue, should be ordered produced. This does not require the production of the entire SAF file but does include the underlying data used to price the claims at issue (e.g. hcpcs code H0015 / revenue code 906)[6].

This Court's Standing Order requires that "[p]rivilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege." Standing Order, ¶ 15. Rule 34's 30-day time limit for responding to document requests serves as a "default guideline" for service of a privilege log that satisfies the requirements of Rule 26. *See Sherman v. Regents of Univ. of California*, 20-CV-06441-VKD, 2022 WL 875652, at *2 (N.D. Cal. Mar. 24, 2022). The cases cited by MultiPlan in opposition are readily distinguishable and do not involve the production of a privilege log a year after discovery was issued, and after document production had closed. Finally, Plaintiffs' request the Court to conduct an *in camera* review of documents clawed back by Multiplan during the deposition of

---

[3] To the extent that United argues that these plans were randomly selected for production, Plaintiffs have received only an inadequate explanation from United regarding the selection methodology and materials produced.

[4] Ibaag is an internal computer screen readout that United representatives rely on when responding to verification of benefit inquiries from health care providers. It provides United's representatives with information regarding the rate at which out of network benefits will be reimbursed under a given plan, which they then relay to providers. These 25 include the five named Plaintiffs and are not 25 additional patients as incorrectly stated by Defendants.

[5] United's sole 30(b)(6) designee was Rebecca Paradise. Plaintiffs also deposed Ms. Paradise in her individual capacity. Plaintiffs also deposed three MultiPlan witnesses in both their individual capacities and as corporate designees for MultiPlan. The statement that Plaintiffs had 'nearly a week' of 30(b)(6) depositions is inaccurate and misleading.

[6] This is far from the '500 million' lines of data referred to by MultiPlan. MultiPlan's 30(b)(6) witness Sean Crandell testified as to the actual claim data being many orders of magnitude less, Plaintiffs would be happy to provide relevant excerpts of the deposition under seal owing to the confidentiality designation of the deposition. Further, given MultiPlan's frequent and public assertions of the Viant methodology being 'defensible', seeking the limited, underlying data used to price the claims at issue is relevant and reasonable.

Mr. Sean Crandell on July 14, 2022. As was the case with United's documents subject to *in camera* review (*see* Dkt. No. 156), counsel for Plaintiffs already reviewed the documents in advance of Multiplan's claw back attempt and even intended to use several such documents as exhibits during the deposition of Mr. Crandell. Accordingly, Plaintiffs disagree with Multiplan's alleged basis for this claw back and seek the Court's intervention to resolve this dispute.

*Improper Objections:* In their responses to Plaintiffs' discovery requests, both the United defendants and MultiPlan have responded with numerous, improper objection that should be overruled and/or struck. For document requests, Plaintiffs are "entitled to individualized, complete responses to each of the requests…accompanied by production of each of the documents responsive to the request" *Tuggle v. City of Tulare*, 2021 WL 765273, at *5 (E.D. Cal. Feb. 26, 2021) (internal citations omitted). Defendants have not done so (United's responses attached as composite exhibit "A" and MultiPlan's responses attached as composite exhibit "B"). Defendants have also asserted flawed general objections in all of their responses that should be struck. *See, e.g., M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) (collecting cases). Instead of objecting with specificity, Defendants have provided a litany of boilerplate objections that are disfavored and regularly overruled. *See, for example, Dep't of Toxic Substances Control v. Rossi*, 2022 WL 19355, at *2 (N.D. Cal. Jan. 3, 2022) (collecting cases). Defendants' objections to relevancy do not align with Rule 26. *See, for example, Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 296 (S.D. Cal. 2015). Likewise, objections of undue burden "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents," and it is not enough to argue that such production will be time consuming or expensive if the material is necessary to the discovery of admissible evidence. *Id.* at 301. Defendants' objections of 'equal availability' should also be overruled as courts "have unambiguously stated that this exact objection is insufficient to resist a discovery request." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (collecting cases).

Finally, any complaints Defendants may raise regarding the timeliness of Plaintiff's request to compel production of these outstanding discovery materials must be dismissed as L.R. 37-3 states: "'discovery cut-off' is the date by which all responses to written discovery are due <u>and by which all depositions must be concluded</u>." (underlining added). The last deposition in this matter occurred on July 28, 2022 and Defendants have requested that it be continued in the following week. Further, the equities of the matter also warrant dismissal of such objections and constitute "good cause shown" under the rule in light of Defendants' own malfeasance in withholding such materials and producing tens of thousands of pages of documents at and after the eleventh hour, as recently as July 29, 2022. MultiPlan's own privilege log was not timely produced and not received until July 22, 2002. The class, fact discovery deadline was extended by stipulation until July 29, 2022 to allow for completion of depositions. (Dkt. 143). As the attached correspondence from Plaintiffs to Defendants (composite exhibit "C"), this is not a last minute attempt to reopen discovery; instead, Plaintiffs have repeatedly raised these issues with Defendants and sought to resolve them, in good faith, without court intervention and now ask the court to do so.

### *Defendants' Statements*

<u>Plaintiffs' Requests Are Untimely</u>.  All of Plaintiffs' disputes should be rejected under this Court's scheduling orders and Local Rule 37-3, which expressly states that "no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off."  This Court's April 21 scheduling order clearly set the fact discovery cut-off as July 15 (Dkt. 130), so the deadline to file these disputes (at the very latest) was July 22.  This Court also made clear in the April 21 scheduling order that any further extensions would require "extraordinary and compelling reasons" (*id*.), yet

Plaintiffs make no attempt to satisfy this high standard even though their letter is clearly an attempt to re-open discovery—and thus a retroactive request for extension of the cut-off. Plaintiffs' reference to the few depositions conducted after the cut-off does not hold water: the parties' June 28 joint stipulation and the Court's July 8 order did not alter the July 15 cut-off and only allowed a few depositions to occur after the cut-off. (*See* Joint Stipulation and Order to Permit Pertain Depositions Following Close of Discovery, Dkt. 143.) Nor did Plaintiffs raise any disputes with Defendants' document productions at that point. Plaintiffs' clear goal in belatedly raising these disputes is to re-open discovery, and they provide no basis to do so—let alone extraordinary and compelling reasons as required by this Court.

Indeed, if Plaintiffs were truly concerned about any of these issues, they could have and should have been raised ***months ago***. Plaintiffs have been on notice—through detailed discovery letters and countless phone calls—about what Defendants would be producing and when.[7] And Defendants' productions are more than sufficient to satisfy Plaintiffs' requests. Accordingly, even if Plaintiffs had raised these disputes before the discovery cut-off (or Local Rule 37-3's seven-day deadline for motions to compel), there would have been no basis—and raising them two weeks ***after*** the cut-off (after a year's worth of discovery) is improper and unfair.

Facility R&C Fee Reports (United Defendants). From July to November 2021, Plaintiffs served multiple rounds of broad, conflicting, and confusing document requests, including documents regarding Facility R&C program fees. After multiple meet-and-confers, on December 20, 2021, United Defendants sent Plaintiffs a letter detailing the sources, search terms, and categories of fee-related documents that would be searched for and produced.[8] United Defendants invested countless hours completing these ESI productions (which also covered many other categories) over the course of early 2022, completing them by July 1, so that Plaintiffs could ask about these documents at depositions (which they did). Plaintiffs provide no explanation of why they believe they are entitled to even more "fee" information beyond the many fee summaries, analyses, and other documents Plaintiffs already received—and if they wanted a particular format or type of report they needed to make this clear in 2021 (or at least early 2022) and not after the fact discovery cut-off. It was Plaintiffs' choice to insist on voluminous productions through broad requests and search terms, and it would be unfair to allow them to pivot away from this approach after the productions have been completed.

Customer-Specific Fee Reports (United Defendants). In early 2022, Plaintiffs issued subpoenas to twenty-five customers of UHC (plan sponsors) seeking various categories of information, including fees paid by these customers for Facility R&C, and later in 2022 served requests on United Defendants for similar information. After multiple meet-and-confers among United Defendants, Plaintiffs' counsel, and the customers, UHC agreed to satisfy these requests by producing specific categories of documents for a smaller sample of six customers hand-picked by Plaintiffs' counsel. *See* Ex. C. UHC did this just over a month later, producing customer-specific fee summaries and other documents on July 1, prior to depositions. It is unclear why Plaintiffs now seek additional documents covering the same topics—*i.e.*, "invoices" (which would be duplicative and more burdensome than the already-produced fee summaries) and fee reports for additional customers beyond the six previously hand-picked by Plaintiffs. In any event, the time to raise these issues was back in May or June, not now.

---

[7] See Exhibit A (December 20, 2021 letter from United Defendants memorializing search and production parameters for Plaintiffs' 2021 requests); Exhibit B (June 1, 2022 letter from United Defendants memorializing search and production parameters for Plaintiffs' 2022 requests); Exhibit C (May 27, 2022 letter from United Defendants memorializing additional search and production parameters for Plaintiffs' 2022 requests and subpoenas directed to particular customers).

[8] See Exhibit A (December 20, 2021 letter); see also Exhibit B (June 1, 2022 letter regarding Plaintiffs' 2022 requests for overlapping information).

Administrative Records (United Defendants). Administrative records for the five named plaintiffs were substantially complete in October 2021, with a minor supplemental production on June 3, 2022. In May 2022, Plaintiffs requested administrative records for an additional twenty-five putative class members (Plaintiffs' sixth round of requests), and United Defendants completed these productions just over a month later (most were produced on July 8). It is unclear what Plaintiffs are asking the Court to compel, and any required "certifications" (which Plaintiffs just raised last week) can be worked out among the parties.

IBAAG (United Defendants). United Defendants produced multiple IBAAG documents in their ESI productions, as agreed in the December 20, 2021 letter setting out these parameters, and Plaintiffs were able to ask about these documents at depositions. Additionally, although IBAAG was not part of the agreed-upon categories for Plaintiffs' hand-picked sample of six customers in May 2022 (*see* Ex. C), United Defendants produced IBAAG for the sample on July 1 (Apple and Tesla) and July 15 (four remaining customers). Plaintiffs fail to explain why they need more IBAAG than what was already produced, or why they did not make this request before now.

Supplemental 30(b)(6) Depositions. Plaintiffs spent two days (July 13-14) with UHC's Rule 30(b)(6) witness, another day (July 20) with UBH's 30(b)(6) witness, and had multiple days of MultiPlan 30(b)(6) depositions—so all told they have taken almost a week's worth of 30(b)(6) depositions. They have also deposed multiple witnesses from each company in their individual capacities. Each of the witnesses was fully prepared, and Plaintiffs' counsel had more than enough time to explore all noticed topics. Plaintiffs refer vaguely to "document dumps" as a purported basis for more deposition time, but this is highly misleading: (1) by design (and with complete transparency to Plaintiffs) the July productions primarily involved sample administrative records, plan documents, and other categories not needed for depositions, and (2) Plaintiffs fail to explain what additional deposition testimony they need—or why they did not request it earlier.

MultiPlan Privilege Log. There was no "dilatory tactic" employed on MultiPlan's privilege log, which was produced shortly after the ESI productions to which it related, consistent with the governing case law.[9] Nor was the privilege log "haphazardly done." The example to which Plaintiffs point, a reference to "AModiano," is the *single* instance of such a listing, and it results from the attachment of a pleading in a related case in which such Plaintiffs' counsel was also involved. Forwarding that pleading in a privileged communication cloaks that particular copy in privilege. With respect to the three documents clawed back at the July 14 Crandall deposition, MultiPlan fully complied with the rules by serving formal notice and including these documents on the privilege log. Plaintiffs provide no basis for *in camera* review of these documents. MultiPlan will review the Court's forthcoming order regarding the United Defendants' documents and make any necessary adjustments to the MultiPlan log.

---

[9] Courts in this circuit have frequently held that production of privilege logs outside the 30-day "default" period do not result in waiver, particularly in complex cases such as this. *See, e.g., Khasin v. Hershey Co.*, 2014 WL 690278, at *6 (N.D. Cal. Feb. 21, 2014) (finding no waiver where privilege log was produced seven months after initial document production and mitigating factors were present); *Jumping Turtle Bar & Grill v. City of San Marcos*, 2010 WL 4687805, at *3 (S.D. Cal. Nov. 10, 2010) (no waiver where the log was produced one-and-one half months late and included "a brief description of the documents, the author, the date of the document, at least one recipient, and the privilege(s) claimed for each document"); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) ("District courts applying Burlington Northern often decline to find waiver of privilege where a party first raises insufficient boilerplate privilege objections in its RFP responses then raises the objections in an untimely yet detailed privilege log."). Plaintiffs' cases (*Burlington Northern* and *Sherman*) are not to the contrary, and merely discuss the "default rule" of thirty days while also acknowledging the many circumstances that can support more time, including magnitude of the production—a circumstance that plainly applies here.

SAF Files (MultiPlan).  Plaintiffs request production of "the underlying data in the Standard Analytical File ('SAF') that MultiPlan relies on to defend the Viant OPR methodology." As MultiPlan repeatedly has pointed out, the SAF is publicly available from the federal government, specifically CMS.  The SAF consists of **500 million** records.  Requiring its production is disproportionate, in that to gather, format, and produce the data as it exists today, let alone how it appeared when the claims at issue were repriced by Viant, would take weeks, involve the diversion of a number of MultiPlan employees from their regular job responsibilities, and would be prohibitively expensive.  Moreover, it is not clear that MultiPlan is contractually authorized to share the information sought.  And even if these hurdles could be overcome, it is unlikely that the purpose for which Plaintiffs are seeking the data—to attempt to replicate Viant repricing—is even possible given the proprietary processes that such repricing involves.  Finally, Plaintiffs' suggestion that they do not require production of the "entire SAF file" is not consistent with the position they took during the recent deposition of a MultiPlan employee when this issue was resurrected.

Discovery Objections (all Defendants).  Plaintiffs' several hundred document requests, which they served from July 2021 to May 2022, *were* objectionable in numerous respects, and Defendants dutifully responded to each request with detailed objections in compliance with Rule 34.  But also importantly for present purposes, Defendants engaged in numerous meet-and-confers and sent multiple detailed letters to Plaintiffs spelling out exactly how and when Defendants would satisfy Plaintiffs' requests, which they did.  It is unclear what Plaintiffs hope to accomplish by challenging written objections at this point, but it is clearly water under the bridge given the history of this case.  If Plaintiffs had concerns about Defendants' written objections to their discovery, the time to raise that challenge with the Court was many months ago when the objections were served—not two weeks after the discovery cut-off.

Accordingly, Plaintiffs' various requests should be rejected as untimely and unfounded attempts to reopen discovery in areas that have already been fully covered through other documents and depositions.

Dated: July 31, 2022

Respectfully Submitted,

| ARNALL GOLDEN GREGORY, LLP | GIBSON DUNN & CRUTCHER, LLP |
|---|---|
| */s/ Matthew M. Lavin* <br> Matthew M. Lavin <br> Aaron R. Modiano <br> *Counsel for Plaintiffs and Putative Class* | /s/ Geoffrey Sigler <br> Geoffrey Sigler <br> Nicole Matthews <br> *Counsel for United Defendants* |
| DL LAW GROUP | PHELPS DUNBAR, LLP |
| /s/ David M. Lilienstein <br> David M. Lilienstein <br> Katie J. Spielman <br> *Counsel for Plaintiffs and Putative Class* | /s/ Errol King <br> Errol King <br> Craig Caesar <br> Counsel for Defendant MultiPlan |