

DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Email: aaron.modiano@agg.com

January 3, 2022

**VIA EMAIL**

Geoffrey Sigler, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC   20036

      Re:     LD *et al.* v. United *et al.* Case No. 20-cv-02254-YGR

Dear Geoff:

We are writing in response to your letter of December 20, 2021. Instead of commenting on the specific search strings that you indicated United intends to use in its search of ESI, we think it is important to resolve, if possible, two significant areas of disagreement between us.

First, as a follow-up to our letter of December 3, 2021, please confirm that no subpoena will be required for the requested deposition of Mr. John Haben. Also, please let us know if United will accept service of Plaintiffs' subpoena for the deposition of Ms. Sarah Peterson.

Second, it is evident from your letter that the appropriate scope of discovery remains an area of significant disagreement between the Plaintiffs and United. Plaintiffs' Second Amended Complaint [ECF 74], answered by the United defendants on February 26, 2021 [ECF 79], refers throughout to the disparate reimbursement of IOP treatment with Viant OPR and the reimbursements for higher levels of care such as detoxification, residential inpatient treatment, and partial hospitalization program treatment. These references are found, for example, at the following paragraphs:

- ¶¶ 91-93
- ¶¶ 270-271
- ¶¶ 307-308
- ¶¶ 337-338
- ¶¶ 365-366
- ¶ 379
- ¶¶ 392-393

The stark difference in the reimbursement amounts of higher levels of care, including residential treatment and partial hospitalization, that were reimbursed as promised during verification calls,



and consistent with plan terms, and the Viant OPR "UCR" reimbursements for IOP treatment fall are relevant and within the scope of discovery as set out in Rule 26(b). Further, the reimbursement of higher levels of care are relevant to United's numerous affirmative defenses under the same standard.

We are concerned that United's offer in your December 20, 2021 letter to implement TAR in conjunction with the search terms attached thereto is a tactic to further delay and stall document production. Plaintiffs suggested the possibility of using TAR to speed the discovery process on October 12, 2021 and only received United's response to this suggestion more than two months later. Further, Section III of United's proposed TAR protocol states, "[a] producing Party using TAR may use search terms, subject to the meet and confer process discussed in II.C and D above, to cull the universe of documents into the set of documents that shall be subject to the TAR process (the "TAR Review Set")." First, as the meet and confer process discussed in the proposed protocol differs from that required by Chief Magistrate Spero for discovery disputes, it is unclear that the proposed process would be approved and ordered. Second, as Plaintiffs have made clear during the many discussions as to discovery and ESI in particular, Plaintiffs have not agreed to United's proposed search terms and have never received anything other than opinion of counsel in response to their suggestions. United has never communicated any concrete results or information supporting the objections raised to Plaintiffs' requests. As such, United's current proposal is more likely to delay the production of documents than it is likely to expedite it.

With that in mind, Plaintiffs are amenable to the use of a TAR 2.0 protocol by United; however, in order to avoid further delay and to resolve the issues surrounding United's numerous objections to Plaintiffs' discovery requests that were served last Summer, Plaintiffs propose an expedited hearing in front of Magistrate Spero as to appropriate search terms, if any, custodians, and data sources as well as United's objections in order to meaningfully move the discovery process forward. As stated by one court, "there are also non-search term ways to do ESI production, such as Technology Assisted Review (or "TAR," formerly known as predictive coding). TAR is also iterative and requires the parties to work together to get documents produced." *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019 WL 4256383, at *2 (N.D. Cal. Sept. 9, 2019). And by another, "[t]echnology-assisted review of ESI does require an "unprecedented degree of transparency and cooperation among counsel" in the review and production of ESI responsive to discovery requests. *Progressive Cas. Ins. Co.*, 2014 WL 3563467, at *10. In this regard, courts typically "have required the producing party to provide the requesting party with full disclosure about the technology used, the process, and the methodology, including the documents used to 'train' the computer." *Id." Youngevity Int'l, Corp. v. Smith*, No. 16CV00704BTMJLB, 2019 WL 1542300, at *12 (S.D. Cal. Apr. 9, 2019), *report and recommendation adopted sub nom. Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2019 WL 11274846 (S.D. Cal. May 28, 2019). Given the actions taken by United in delaying and inappropriately redacting the ASAs produced prior to the standard of review briefing, and the limited, restricted claim data produced by United prior to mediation, Plaintiffs have significant concerns that United will engage, in good faith, in the transparency required in employing TAR.



Geoffrey Sigler
January 3, 2022
Page 3

The 'Document Categories' identified in your letter do not lessen these concerns or provide any movement to resolution of the dispute between the parties as to the appropriate scope of discovery. As your letter stated you were preparing proposals to address document requests that fall into categories other than the initial seven you identified to discuss on our next call, we look forward to hearing your proposals when we speak on January 4, 2022. However, we expect Court intervention will be necessary as United continues to take an inappropriately restrictive and narrow view as to the appropriate scope of discovery, especially with regard to Plaintiffs' RICO claims. This narrow view includes the time period suggested by United. As recognized by the Supreme Court *Rotella v. Wood*, 528 U.S. 549, 555 (2000), it is possible that proof of RICO predicate acts may be offered for acts occurring ten years before the alleged injury and fourteen years prior to the commencement of litigation. United has not provided any justification as to why that would not be the case here.

We look forward to discussing these matters with you tomorrow.


Sincerely,

ARNALL GOLDEN GREGORY LLP

*/s/ Aaron R. Modiano*
Aaron R. Modiano

cc: all counsel of record

**Arnall**
**Golden**
**Gregory** LLP

Matthew M Lavin
*Partner*

DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Phone: 202.677.3040
Fax: 202.677.3041
Email: Matt.Lavin@AGG.com

January 12, 2022

**VIA EMAIL**

Geoffrey Sigler, Esq.
Gibson Dunn & Crutcher, LLP
1050 Connecticut Ave., NW
Washington, DC  20036

>          Re:     *LD et al. v. United et al.* Case No. 4:20-cv-02254-YGR (ND Cal.)

Dear Geoff,

As we have discussed on multiple occasions, including our most recent meet and confer, Plaintiffs will be issuing subpoenas to certain plan sponsors of the putative class members as a necessary step of class discovery. Below is the current list of plans that Plaintiffs will be issuing subpoenas to over the next week. Plaintiffs, of course, reserve the right to issue subpoenas to additional plan sponsors in the future as well as any other necessary and appropriate discovery. In addition to document subpoenas, plaintiffs will also seek to take the depositions of certain of the plan sponsors listed below.

I note that Plaintiffs first requested that United produce information identifying the relevant plan sponsors in July 2021. United, however, withheld this information from Plaintiffs until January 4, 2022. Because of United's extreme delay in producing the information to Plaintiffs, United's refusal to include search terms relating to plan sponsors, United's refusal to incorporate marketing materials in its documents search, United's failure to include any plan representatives as document custodians in its documents search, the looming discovery cut-off dates, and the distressing fact that United still has not made any substantive document production in this matter to date, time is of the essence in conducting necessary discovery on third parties, including those below:

- AMERICAN AIRLINES
- AMERICAN EXPRESS COMPANY
- APPLE INC.
- CISCO SYSTEMS, INC.
- COCA-COLA
- DELOITTE LLP
- DELTA AIR LINES, INC
- DISCOVERY, INC.



- GENERAL DYNAMICS
- GEORGIA-PACIFIC LLC
- GOLDMAN SACHS & CO. LLC
- JPMORGAN CHASE & CO.
- L'OREAL USA
- MASTERCARD
- MORGAN STANLEY
- NESTLE USA, INC.
- ORACLE, INC.
- PAYPAL, INC.
- RAYTHEON COMPANY
- SALESFORCE.COM, INC.
- TARGET CORPORATION
- TESLA
- UNION PACIFIC CORPORATION
- VIACOM INCORPORATED
- VIACOMCBS CORPORATION
- VMWARE, INC.

The subpoenas will request the same information we have already discussed, at length, on multiple calls. Those topics include but are not limited to the following:

- Any and all internal documents, correspondence, or records, from January 1, 2015 until present, in Your possession reflecting discussions, whether internal or external, regarding United's Facility R&C savings program. This request includes, but is not limited to, discussions regarding the fees charged to You by United for the Facility R&C program.

- Any and all correspondence and documents relating to or discussing the adoption/selection of United's Facility R&C savings program by You for your employee healthcare plan(s) from January 1, 2015 to present.

- Documents identifying the individual(s) at Your company responsible for negotiating and/or approving changes to your Administrative Services Agreement with United, from January 1, 2015 until present.

- Any and all marketing materials, correspondence, presentations, or other materials between You and United regarding United's Facility R&C or similar program for your employee healthcare plan(s) from January 1, 2015 to present.

- The Administrative Services Agreements and any amendments thereto relating to Your employee healthcare plan(s) administered by United from January 1, 2015 to present, including drafts.



January 12, 2022
Page 3

- Any and all documents, internal or external, showing your decision to include United's Facility R&C or similar program in your employee healthcare plan(s) from January 1, 2015 to present.

- Any and all invoices, bills, and related documents received from or sent to United that reflect the fees paid to United for Facility R&C or similar programs in Your healthcare plan(s) from January 1, 2015 to present.

- Any and all marketing or 'pitch' materials, such as brochures, PowerPoint presentations, or other materials You have received from United from January 1, 2015 to present relating to United 'Savings Programs' for out-of-network provider services. Such services include, but are not limited to, United's Facility R&C program, Viant OPR, MultiPlan repricing, United's Shared Savings Program, and United's Enhanced Shared Savings Program, and any internal and/or external correspondence or other communications relating thereto.

- Any and all spreadsheets, claims reports, or similar documents provided to You by United from January 1, 2015 to present that contain and/or refer to United's Facility R&C program, Viant OPR, MultiPlan, or similar, as well as any internal correspondence relating thereto.

- Any and all internal correspondence, from January 1, 2015 to present, with or concerning participants or beneficiaries in Your employee healthcare plan(s) regarding claims for out of network treatment for mental health services and/or the Facility R&C or similar United programs. This request includes internal communications to, from or concerning Your employees or their dependents whose out-of-network behavioral or substance abuse healthcare claims may have been paid or priced by the Facility R&C program.

- Any and all documents related to out -of-network 'savings', 'discounts', 'discount amounts', and 'discount type' allegedly obtained by United for members of your employee healthcare plan(s) for out-of-network, mental health services from January 1, 2015 to present.

- Any and all internal correspondence between You and members of Your employee healthcare plan regarding "balance bills" from healthcare providers or similar for out-of-network mental health claims from January 1, 2015 to present.

- Any and all internal and external correspondence relating to changes in Your employee healthcare plan(s) from January 1, 2015 to present. If You are no longer a customer of United, or if United is no longer the Administrator for Your healthcare plan(s), please produce any and all internal and external correspondence relating to the termination of United as administrator.

Given the extremely tight timelines for discovery in this matter, we will be issuing subpoenas early next week. If there are any concerns that you have regarding any personal rights



January 12, 2022
Page 4

or privileges as to United and the material requested above, we are happy to discuss them. *See, for example,* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008 & Supp. Apr. 2020) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."); *see also, Handloser v. HCL Am., Inc.,* No. 19-CV-01242-LHK-VKD, 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) ("An adverse party may not simply object to a subpoena served by its opponent on a non-party.")

These subpoenas are tailored such that they will not impose an undue or disproportional burden on the third parties being subpoenaed as set forth in Fed. R. Civ. P. 45(d)(1). Also, the material sought from the third parties is well within the scope of discovery set out in Rule 45.

Sincerely,

ARNALL GOLDEN GREGORY LLP

*/s/ Matthew M. Lavin*
Matthew M. Lavin

MML:arm

CC: All Counsel of Record

**Atlanta • Washington, D.C.**



DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Direct Phone: 202.677.4959
Email: matt.lavin@agg.com

February 3, 2022

**VIA EMAIL**

Geoffrey Sigler, Esq.
Gibson Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

> Re:    *LD et al. v. United Behavioral Health et al.*, Case No. 4:20-cv-02254-YGR

Dear Geoff:

I am writing in response to your letter of February 1, 2022, regarding the third party subpoenas issued by Plaintiffs. I take issue with all of the points raised in your letter and will address all of them in turn.

At the outset, please provide with specificity any privileges as to the United defendants, not those that may be asserted by the third parties receiving the subpoenas that you are asserting. Your letter raises vague concerns and does not distinguish between those privileges that may be asserted by the third parties that received the subpoenas and United. The circumstances under which a party may move to quash a subpoena directed to a third party are extremely limited. The law is clear on this point. *See, for example*, 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (3d ed.2013) "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought"; *see also Jiae Lee v. Dong Yeoun Lee*, 2020 WL 7890868, at *5 (C.D. Cal. Oct. 1, 2020) (collecting cases); *Crispin v. Christian Audigier, Inc.*, 2010 WL 2293238, at *5 (C.D.Cal. May 26, 2010) (quoting Wright & Miller and providing additional citations).

The narrow exceptions that may exist is when there is a personal right or privilege with regard to the documents sought (*see Jiae Lee* at *5). United has not raised any such personal right or privilege. If you are asserting that one exists, please provide specificity as to the personal rights or privilege being claimed. Your most recent letter has not identified any.

The vague assertions made by United appear to relate to information considered confidential by United. "Defendants have made no showing that their confidential proprietary commercial information is at risk. However, "only privilege, not confidentiality, is a valid

**Arnall
Golden
Gregory** LLP

Geoffrey Sigler, Esq.
February 3, 2022
Page 2

objection under Fed. R. Civ. P. 26(b)." *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283 (C.D. Cal. 1996); *Nguyen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir. 1975). Any confidentiality concerns are addressed with the protective order already in place, a copy of which was served alongside the subpoenas. *See, Wells Fargo & Co. v. ABD Ins.*, 2012 WL 6115612, at *3 (N.D. Cal. Dec. 10, 2012) (holding that the stipulated protective order adequately protected the parties' interests in confidentiality); *Jiae Lee v. Dong Yeoun Lee*, 2020 WL 7890868, at *9 (C.D. Cal. Oct. 1, 2020) (protective order protected Defendant's interest in keeping the information confidential). As the "confidential and proprietary information" United asserts in the ASAs it ultimately produced is subject to the protective order in place, so, too, would material produced by third-parties. If there are specific confidentiality concerns that you have, please, make those concerns specific and clear and we will happily review and discuss those concerns.

Next, your assertion that the subpoenas are 'void' as Plaintiffs did not send Defendants each, individual subpoenas prior to their being sent to the third parties is unpersuasive and not supported by the predominant case law. *See, for example, Miller v. Ghirardelli Choc. Co.*, 2013 WL 6774072, at *5 (N.D. Cal. Dec. 20, 2013) (declining to quash subpoena in the absence of prejudice); *Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, at *2 (N.D. Cal. May 8, 2013) (declining to quash subpoenas where notice was not given until 3 days after service because defendant suffered no prejudice because it independently learned of the subpoenas soon after they were issued). United has now received each, individual subpoena, the time for responding to the subpoenas has not yet passed, and defendants have not suffered any prejudice whatsoever. Plaintiffs have made Defendants aware of their intent to issue third party subpoenas to individual plans since at least November, 2021. In Plaintiffs' December 3, 2021 letter to United, the areas that would be requested in the third party subpoenas were outlined. The third-party subpoenas were discussed on multiple meet-and-confers between the parties and In Plaintiffs' January 12, 2022 letter to Defendants, plans to be subpoenaed and  documents to be requested were specified. The parties met and conferred on those topics before the subpoenas issued. If you believe any prejudice has attached, please specify what that prejudice is, as your last letter did not assert that United has suffered any prejudice.

Plaintiffs have explained multiple times during our meet and confers the relevance and need of the documents we are seeking through the third-party subpoenas that have been issued. The documents Plaintiffs seek from plan sponsors are well within the scope of discovery in this case. The plans, and the plan sponsors, are either victims of the Defendants' scheme or unnamed co-conspirators. This point has been discussed at several meet and confers, including the most recent meet and confer discussing the third-party subpoenas. The material sought is directly relevant to both Plaintiffs' ERISA claims under § 502(a)(3) and Plaintiffs' RICO claims. Plaintiffs' are entitled to conduct discovery as to these claims within the broad scope permitted under the federal rules of civil procedure.

As discussed during multiple meet and confers and correspondence regarding the appropriate scope of discovery in this matter, Plaintiffs' disagree with United's position that discovery is strictly limited to the Facility R&C program and is even further limited to specific



Geoffrey Sigler, Esq.
February 3, 2022
Page 3

IOP services within the Facility R&C program. Plaintiffs also disagree with United's position that discovery as to matters prior to April 2, 2016 exceeds the scope of permissible discovery.

Further, to the extent that United is in possession of any of the material sought by Plaintiffs in the subpoenas, United's discovery responses, ESI terms, and selected custodians exclude such material and United has made clear it has no intention of producing such material. Plaintiffs' first document request to United, served July 2021, requested documents as to ASO plans that contained United's 'cost containment' programs (requests 54-61, 66-68), the marketing of such programs (requests 104-107), and the fees charged by United (requests 129, 145-147). Plaintiffs' third document request, served September 2021, sought invoices and payment records from United for Facility R&C fees (requests 9, 10, 12, 13), correspondence exchanged with plans relating to Facility R&C (requests 11, 14), and marketing of Facility R&C (request 28). United has excluded from its ESI search, both as to search terms and custodians, searches that would be responsive to these requests. Based on United's actions taken towards these requests, any overlapping material requested in the subpoenas is hardly 'available' from United. Further, the subpoenas also seek material that was not prepared by United and is not within United's custody, care, or control.

Please let us know if United intends to move to quash the subpoenas that Plaintiffs have issued so that we proceed to a meet-and-confer and promptly bring this matter to Magistrate Spero's attention if the issues between us cannot be resolved.

Sincerely,

ARNALL GOLDEN GREGORY LLP

*/s/ Matthew. M. Lavin*
Matthew M. Lavin



DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Direct Phone: 202.677.4048
Email: Aaron.Modiano@AGG.com

July 7, 2022

**VIA EMAIL**

Geoffrey Sigler, Esq.
Gibson Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

  Re: LD et al. v. United Behavioral Health et al., Case No.: 4:20-cv-02254-YGR-JCS

Dear Geoff:

  This letter is in response to your July 6, 2022 letter regarding the 30(b)(6) depositions of United Behavioral Health and United Healthcare Insurance Company (collectively "United"):

  First, the "objections and clarifications" of United's March 23, 2022 letter have been the subject of multiple meet and confers between the parties, both before and after that date, and the 30(b)(6) notice was also amended after that letter was sent. Further, you have not brought your "objections" to the attention of the Court utilizing the discovery dispute process. Plaintiffs have responded to United's attempts to inappropriately narrow the scope of discovery. Your proceeding to provide 30(b)(6) witnesses "subject to" the "objections and clarifications" that Plaintiffs have consistently disputed and that you have never sought a ruling from the Court upon is not in accord with the rules governing the discovery process and depositions. In essence, United is proceeding as if there has been a Court order approving its position without ever having actually sought such an order. Plaintiffs reject United's attempts to do so, disagree with the "objections and clarifications", are proceeding with the 30(b)(6) depositions as noticed, and reserve all rights thereto, including seeking to redepose United's witnesses that are unable to address the noticed deposition topics, including Topic 1 that you specifically mention. Next, as to your statement that 30(b)(6) depositions are not "memory tests", Plaintiffs are proceeding with the expectation that United's 30(b)(6) witnesses will be prepared and knowledgeable as to the topics for which they are designated to testify.

  Second, Plaintiffs are reserving all rights as to any and all of the noticed topics that Ms. Paradise, United's sole designee, is not adequately prepared and knowledgeable on. Given Ms. Paradise's deposition testimony in other matters, it seems unlikely that she will be prepared and knowledgeable as to all of the deposition topics in Plaintiffs' 30(b)(6) notice. Specifically, Ms.



Geoffrey Sigler, Esq.
July 7, 2022
Page 2

Paradise has previously provided testimony that causes Plaintiffs concern that she will be able to be adequately prepared and knowledgeable, as required when testifying as a 30(b)(6) designee, as to the topics regarding Administrative Services Agreements, plan documents, plan language, MHPAEA parity compliance, underwriting, marketing of United's out-of-network programs, and United's Answers and Affirmative Defenses. This is not an exhaustive list; rather, it is an example of our concerns as to Ms. Paradise's ability to be adequately prepared and knowledgeable as the sole designee regarding all of the noticed topics.

Third, as discovery is nearing a close, please provide the designee(s) that United will be producing for United Behavioral Health. Further, as UBH and UHC are distinct entities, as you have stated and we have discussed, Plaintiffs' 30(b)(6) notice should not be understood or interpreted as an "either / or" with regard to topics. To the extent that each entity has knowledge regarding the noticed topics, Plaintiffs expect that United will provide designee(s) as to those topics to testify in a prepared and knowledgeable manner. Further, Plaintiffs do not waive any rights as to the length of the depositions and, if the depositions cannot be completed within seven hours each, Plaintiffs reserve all rights to continue the depositions until completed.

Fourth, given the above, Plaintiffs are not certain what is intended by your request to "allocate time between the two designees". It seems unlikely that UHC'sp 30(b)(6) deposition will be completed in less than the seven hours provided by the rules. Your request that her deposition run from 9am central time to 4pm, followed by the UBH designee from 4:30pm to 6:30pm central, is well below the record time permitted for depositions and Plaintiffs reserve all rights relating thereto. Also, Ms. Paradise's 30(b)(1) deposition is in her individual capacity and separate and apart from the 30(b)(6) deposition. We do not agree that two hours, 9am central to 11am central, is likely sufficient for her 30(b)(1) deposition. We are happy to meet and confer to discuss this further; however, we do not anticipate that the depositions will conclude in less time than permitted by the rules.

Kind regards,

Sincerely,

ARNALL GOLDEN GREGORY LLP

*/s/ Aaron R. Modiano*
Aaron R. Modiano

ARM:

Cc: all counsel of record

**Subject:** Re: [EXTERNAL] RE: LD/UBH - Letter to Plaintiffs' Counsel
**From:** "Lavin, Matt" <Matt.Lavin@AGG.com>
**Date:** 7/15/22, 13:34
**To:** "Sigler, Geoffrey" <GSigler@gibsondunn.com>
**CC:** "Aiken, Matthew Guice" <MAiken@gibsondunn.com>

Geoff, I just want to be crystal clear for the record, are you saying United refuses to produce the 1) Shared Savings Reports for all months of the class period 2) copies of United's invoices for the 6 identified ASO clients and 3) summary sheet of fees for all sample patient sponsors?

We understand United wishes us to produce back to United any copies of its very own invoices to plan sponsors in our possession and we will.  It was our belief they were already provided to you in our previous production of plan sponsor docs but we are checking.


-Matt


On Jul 15, 2022, at 11:33 AM, Sigler, Geoffrey <GSigler@gibsondunn.com> wrote:

- hide quoted text -

Counsel – We've previously described to you in detailed written letters what the United Defendants would be producing in response to your several hundred document requests, including our search parameters, and that's what we've done.  Our productions over the past few months include information on fees, savings, etc., and we've produced to you the specific fee summaries and documents we agreed to provide for the six specific plans in your email below.  I also understand that MultiPlan has produced substantial information on fees and will be making a supplemental production today.  We are happy to discuss any of this if you have questions, but firing off "demands" in a 12:30 am email on the discovery deadline isn't the most constructive way to engage on these issues.  I also note that you still haven't answered the questions we've posed to you repeatedly (including in the email below) about the categories of information that Plaintiffs agreed to produce months ago but we still do not have.


Geoff

**Geoffrey M. Sigler**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3752 • Fax +1 202.530.9635
GSigler@gibsondunn.com • www.gibsondunn.com
_____

**From:** Lavin, Matt <Matt.Lavin@AGG.com>
**Sent:** Friday, July 15, 2022 12:31 AM
**To:** Aiken, Matthew Guice <MAiken@gibsondunn.com>; Aaron.Modiano@AGG.com; Cascario, Natalie L. <Natalie.Cascario@AGG.com>; Chris Schnieders <CSchnieders@NapoliLaw.com>; Wemhoff, Nicole E. <Nicole.Wemhoff@AGG.com>; Tom.Kelly@AGG.com; katie@dllawgroup.com; david@dllawgroup.com; Errol.King@phelps.com; Craig.Caesar@phelps.com; Taylor.Crousillac@phelps.com; Katie.Mannino@phelps.com
**Cc:** Sigler, Geoffrey <GSigler@gibsondunn.com>; Richardson, Heather L. <HRichardson@gibsondunn.com>; Blas, Lauren M. <LBlas@gibsondunn.com>; Matthews, Nicole <NMatthews@gibsondunn.com>; Spoto, Meredith K. <MSpoto@gibsondunn.com>
**Subject:** RE: LD/UBH - Letter to Plaintiffs' Counsel

[WARNING: External Email]

Be advised Plaintiffs demand, again, that United produce the Shared Savings monthly reports for the entire class period, as discussed during Becky Paradise's first deposition on Wednesday.  These reports are outstanding almost a year, having first been demanded in July of 2021.  They have been demanded and discussed many times since.  Plaintiffs also demand production of the promised itemized report of Shared Savings fees collected from plan sponsors for the sample patients, as well as all invoices sent by United during the class period to Apple, Tesla, Oracle, Union Pacific, JP Morgan, and Raytheon during the class period, as met and conferred on many times.  In fact, United's agreement to produce the latter materials was an essential component of an earlier compromise over a discovery dispute between the parties.

Plaintiffs reserve all rights.

**Matt Lavin**
**Partner**

image001.jpg

Arnall Golden Gregory LLP
1775 Pennsylvania Ave NW, Suite 1000
Washington, DC 20006
p: 202.677.4959
Matt.Lavin@agg.com | bio | linkedin | vcard | website

---

**From:** Aiken, Matthew Guice <MAiken@gibsondunn.com>
**Sent:** Thursday, July 14, 2022 9:23 PM
**To:** * * * LD Outside Counsel - (External) <LD-outside-counsel-External@gibsondunn.com>
**Cc:** Sigler, Geoffrey <GSigler@gibsondunn.com>; Richardson, Heather L. <HRichardson@gibsondunn.com>; Blas, Lauren M. <LBlas@gibsondunn.com>; Matthews, Nicole <NMatthews@gibsondunn.com>; Spoto, Meredith K. <MSpoto@gibsondunn.com>
**Subject:** [EXTERNAL] RE: LD/UBH - Letter to Plaintiffs' Counsel

Counsel,

I am writing to follow-up on the attached July 6, 2022 letter and numerous previous communications, including Geoff Sigler's discussion with Matt Lavin at today's 30(b)(6)/30(b)(1) deposition, regarding documents in Plaintiffs' possession that have not yet been produced.  We reserve all rights.

Best,
Matthew

**Matthew Guice Aiken**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3688 • Fax +1 202.831.6089
MAiken@gibsondunn.com • www.gibsondunn.com

---

**From:** Aiken, Matthew Guice <MAiken@gibsondunn.com>
**Sent:** Wednesday, July 6, 2022 9:05 AM
**To:** * * * LD Outside Counsel - (External) <LD-outside-counsel-External@gibsondunn.com>
**Cc:** Sigler, Geoffrey <GSigler@gibsondunn.com>; Richardson, Heather L. <HRichardson@gibsondunn.com>; Blas, Lauren M. <LBlas@gibsondunn.com>; Matthews, Nicole <NMatthews@gibsondunn.com>; Spoto, Meredith K. <MSpoto@gibsondunn.com>
**Subject:** LD/UBH - Letter to Plaintiffs' Counsel

Counsel,

Please see attached correspondence regarding outstanding discovery issues.

Best,
Matthew

**Matthew Guice Aiken**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3688 • Fax +1 202.831.6089
MAiken@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others

or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**Subject:** RE: LD v United Multiplan - Documents Requested for Prodcution
**From:** "Lavin, Matt" <Matt.Lavin@AGG.com>
**Date:** 7/15/22, 00:37
**To:** Craig Caesar <Craig.Caesar@phelps.com>

Craig and Errol, I note that you have not responded to my email of today or last week concerning documents.  Further, Plaintiffs reiterate their demand for the production of Multiplan's privilege log, which was promised months ago.  That log must necessarily include the documents Multiplan is attempting to claw back from today's deposition of Sean Crandell.

Plaintiffs have been prejudiced by Multiplan's refusal to produce its privilege log and reserve all rights.

**Matt Lavin**
**Partner**



Arnall Golden Gregory LLP
1775 Pennsylvania Ave NW, Suite 1000
Washington, DC 20006
p: 202.677.4959
Matt.Lavin@agg.com | bio | linkedin | vcard | website

---

**From:** Lavin, Matt
**Sent:** Thursday, July 14, 2022 7:52 AM
**To:** Craig Caesar <Craig.Caesar@phelps.com>; Errol King <Errol.King@phelps.com>; Taylor J. Crousillac <Taylor.Crousillac@phelps.com>; Modiano, Aaron R. <Aaron.Modiano@AGG.com>; Cascario, Natalie L. <natalie.cascario@agg.com>; Kelly, Tom E. <Tom.Kelly@AGG.com>; Wemhoff, Nicole E. <Nicole.Wemhoff@agg.com>; Geoffrey Sigler <GSigler@gibsondunn.com>; Lauren M. Blas <LBlas@gibsondunn.com>; Matthew Guice Aiken <MAiken@gibsondunn.com>; Nicole Matthews <NMatthews@gibsondunn.com>; Katie Spielman <katie@dllawgroup.com>; David Lilienstein <david@dllawgroup.com>; Katie Mannino <Katie.Mannino@phelps.com>
**Subject:** LD v United Multiplan - Documents Requested for Prodcution

Good morning, Craig.  Following up on Ms. Kienzle's deposition, I am renewing my request for the following and the items discussed in the thread below.  All of these documents are encompassed in previous written RFPs as well:

Please produce:

United Revenue Reports by month for the putative class period, as referred to Ms. Kienzle
United Savings Reports by Month, as referred to by Ms. Kienzle for the putative class period

It is our understanding these are in excel or similar format.

And from my earlier email of last week, please produce:

-Viant and total fee/revenue reports

-Monthly appeal updates (as testified to by Mr. Edwards)
-Quarterly reports for ALL quarters

-40th percentile projections for UB outpatient reductions

-Scheduled meetings agenda (governance, operations and weekly check ins)

-the source data (APC database, SAF, any modifiers, etc) for Viant which we would like access to perform a focused search.  I note your written objection was not that it's burdensome, but rather that it's equally available. Which it is not.

-All emails referencing H0015 or APC or behavioral health or crosswalking, etc, as discussed on the record at the deposition.

-the identities by plan name of the opt out plans for reduction to 40th % who were still being priced at 60th % -recordings of all Viant calls regrading the named plaintiffs.

**Matt Lavin**
**Partner**

Arnall Golden Gregory LLP
1775 Pennsylvania Ave NW, Suite 1000
Washington, DC 20006
p: 202.677.4959
Matt.Lavin@agg.com | bio | linkedin | vcard | website

-----Original Message-----
From: Lavin, Matt
Sent: Friday, July 8, 2022 9:06 AM
To: Craig Caesar <Craig.Caesar@phelps.com>; Errol King <Errol.King@phelps.com>; Taylor J. Crousillac <Taylor.Crousillac@phelps.com>; Modiano, Aaron R. <Aaron.Modiano@AGG.com>; Cascario, Natalie L. <Natalie.Cascario@AGG.com>; Kelly, Tom E. <Tom.Kelly@AGG.com>; Wemhoff, Nicole E. <Nicole.Wemhoff@AGG.com>; Geoffrey Sigler <GSigler@gibsondunn.com>; Lauren M. Blas <LBlas@gibsondunn.com>; Matthew Guice Aiken <MAiken@gibsondunn.com>; Nicole Matthews <NMatthews@gibsondunn.com>; Katie Spielman <katie@dllawgroup.com>; David Lilienstein <david@dllawgroup.com>; Katie Mannino <Katie.Mannino@phelps.com>
Subject: LD v United Multiplan

Good morning Craig, just a reminder about the multiple document and material requests yesterday. All of which were encompassed in previously served RFPs.  These are crucial materials needed for the corporate and individual depositions of Multiplan.  We are trying to a kid motions to compel and calling back witnesses.

Also, your privilege log has not been produced.

I'm on a flight but if memory serves some of the key items were:

-Viant and total fee/revenue reports

-Monthly appeal updates (as testified to by Mr. Edwards)
-Quarterly reports for ALL quarters

-40th percentile projections for UB outpatient reductions

-Scheduled meetings agenda (governance, operations and weekly check ins)

-the source data (APC database, SAF, any modifiers, etc) for Viant which we would like access to perform a focused search.  I note your written objection was not that it's burdensome, but rather that it's equally available. Which it is not.

-All emails referencing H0015 or APC or behavioral health or crosswalking, etc, as discussed on the record at the deposition.

-the identities by plan name of the opt out plans for reduction to 40th % who were still being priced at 60th % -recordings of all Viant calls regrading the named plaintiffs.

-Matt

**Arnall
Golden
Gregory** LLP

Matthew M Lavin
*Partner*

DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Phone: 202.677.3040
Fax: 202.677.3041
Email: Matt.Lavin@AGG.com

October 13, 2021

**VIA EMAIL**

Geoffrey Sigler
Gibson Dunn & Crutcher, LLP
1050 Connecticut Ave., NW
Washington, DC  20036a

Re:     United Defendants' Proposed Custodians and Search Terms Relating to Plaintiffs'
        Requests for Production

Dear Geoff,

Following your correspondence of October 1 and the meet and confer held telephonically
by the parties on October 8, I would like to address the following matters:

*First,* as I stated during our meet and confer last Friday, in order to expedite discovery and
mindful of the upcoming mediation, the Plaintiffs are amenable to narrowing the scope of
documents in production for the purposes of mediation and class discovery. Plaintiffs are not
agreeing with the objections that United has raised in response to Plaintiffs' discovery requests
and are reserving all rights to pursue all material that is properly within the scope of discovery in
this matter. As we have discussed previously, this includes material going back January 1, 2015,
as stated in Plaintiffs' operative complaint and, potentially, for a period of ten years prior to the
filing of the original complaint as to Plaintiffs' RICO claims against both United and MultiPlan.

*Second*, as to the custodians identified by United, while we believe that these custodians
have relevant information and are the custodians of relevant, responsive material, additional
custodians may be appropriate and revealed during the course of discovery. United is in the best
position to know that appropriate custodians for the material sought by Plaintiffs as it, not
Plaintiffs, is the one actually in possession of the material being sought. Plaintiffs do not agree and
preserve all rights to seek material from additional custodians going forward. Additionally, at this
time, we believe that it is appropriate to include Sarah Peterson (essential), Sachin Shah and Daniel
Schumacher as custodians.

*Third*, as to the documents being searched, your correspondence and during our meet and
confer, indicated that the personal e-mails and hard drives of the custodians as well as the "PIG"
drive would be searched for documents. We have no assurance this will be exhaustive.  I would
ask you to please discuss with your clients regarding any other locations and services where
responsive material may be stored. For instance, if United were to use SharePoint, ShareFile,



October 12, 2021
Page 2

Microsoft Teams, intranet based applications, cloud based applications or platforms (*e.g.* EnterpriseNow, TeamTrack), or other collaborative software or platforms for the management of projects, review of claims, and communications regarding them, those platforms should be included in the data sources being reviewed. As to the search terms proposed by United, Plaintiffs' proposed revisions are attached as Exhibit A to this letter.

*Fourth*, as to the specifics of the search, can you please confirm that <u>all</u> material within the documents searched (*e.g.* pdf's, power point presentations, *etc.*) will undergo OCR and be searched appropriately? This would include documents that have embedded other files and file types within them (*e.g.* a power point presentation that includes chart or diagram imported as an image).

*Fifth*, in light of the compressed schedule and in order to reduce the burden on United, the Plaintiffs are happy to discuss the use of technology assisted review protocols ("TAR") by United for the purposes of responding to Plaintiffs' discovery requests.

*Sixth*, your letter does not appear to address the second and third requests for production that Plaintiffs issued to United. Can you please clarify whether the search terms you proposed were intended to address Plaintiffs' second and third requests for production and, if not, how and when United intends to respond to Plaintiffs' second and third requests?

We are happy to discuss this further and are available to meet and confer regarding any of the above matters.  Plaintiffs reserve all rights.

Best Regards,

ARNALL GOLDEN GREGORY LLP

Matt Lavin

MML:arm

CC: All Counsel of Record



October 12, 2021
Page 3

**Schedule A**

**Proposed Search Terms**

1. "Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or "UCR" or "UNC" or "U&C" or "Fac R&C"or "R&C"or "FRC"

2. ("MultiPlan" or "Multi Plan" or "MP" or "MPI" or "Viant") and ("meeting")

3. ("Bernard Siskin" or "Siskin")

4. ("change" or "reduce" or "reduction") n/3 ("percentile" or "pricing")

5. ("reimbursement" or "Viant" or "OPR" or "fac*" or "reasonable" or "customary" or "R&C") n/5 ("Benchmark")

6. ("MultiPlan" or "Multi Plan" or "MP*" or "Viant") and n/5 ("meeting" or "report" or "annual" or "quart*" or "q1" or "q2" or "q3" or "q4" or "monthly")

7. ("Fac*" or "OFR" or "outpatient" or "intensive"  or "Viant" or "OPR") and ("Savings" or "IOI")

8. (("Fac*" or "Reasonable" or Customary" or "OFR" or "outpatient"or "Viant" or "OPR") n/5 ("IOP" or "outpatient")

9. ("Fac*" or "Reasonable" or Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR") n/5 ("Summary Plan Description" or "SPD" or "Certificate of Coverage" or "COC" or "benefit plan language")

10. "Edwards, Mark" and "OPR"

11. "medwards@multiplan.com" and ("fac" or "facility" or "OPR" or "UB")

12. Mark.edwards and ("fac" or "facility" or "OPR" or "UB")

13. "Kienzle, Jacqueline" and "OPR"

14. "Jacqueline.kienzle@multiplan.com" and ("fac" or "facility" or "OPR" or "UB")

15. "Johnson, Emma" and ("facility" or "fac" or "OPR" or "UB")

16. "White, Dale" and ("fac" or "facility" or "OPR" or "UB")

**Arnall
Golden
Gregory** LLP

17.     "dale.white@multiplan.com" and "fac" and "r&c"

18.     "fac" and "r&c" and "percentile"

19.     "outpatient module"

20.     "OPR Percentile Reduction"

21.     "Facility Reduction"

22.     "Facility claims price"

23.     "competitive position"

24.     "ASO Facility R&C"

25.     "Facility R&C"

26.     "HCE" and "R&C"

27.     "40th percentile"

28.     "OPR Percentile Reduction"

29.     "Fac40*"

30.     "60th percentile"

31.     ("fac" or "facility") and "R&C" and "IOI"

32.     "facility r&c eligible"

33.     "%" and CMS and ("outpatient" or "R&C")

34.     ("DiS" or Data iSight") n/5 "facility"

35.     "OCM ASO"

36.     "quarterly update"

37.     "Multiplan Update for UnitedHealthcare"

38.     ASO and ("facility" or "OPR" or "UB")

**Arnall
Golden
Gregory** LLP

39.   "Meeting" and "agenda" and ("OPR" or "facility")

40.   "IOP" or "intensive outpatient"

41.   "PAD" or "Patient Advoc*"or "member advocacy"

42.   (Apple or Tesla) and ("Benefit Plan Language" or "EOB")

43.   (Apple or Tesla) and "SPD"

44.   "MultiPlan Patient Advocacy"

45.   "Patient Advocacy Process"

46.   "Appealed Savings"

47.   "Target Pricing" or "target price"

48.   "MultiPlan Client Portal" or "Pricing Statements")

49.   "Fac*" and ("Repricing Webservice")

50.   ("Apple" or "Tesla") and "fac*"

51.   ("accepted" or "acceptance") and ("rate" or "price")

52.   ("appeal" or "appealed") and ("rate" or "price")

53.    "Summit Estate"

54.   ("FairHealth" or "FH") and "Fac*"

55.   "MultiPlan" or "Multi Plan" or "MP" or "Viant") and ("White" or "Tabak" or "Edwards"
      or "Mohler" or "Ginther" or "Johnson" or "McEttrick" or "Crandell" or "Fuchson" or
      "Kienzle" or "Ralston" or "Dugan")

56.   ("MultiPlan" or "Multi Plan" or "MP" or "Viant") and ("Paradise" or "Lopez" or
      "Peterson" or "Bradley" or "Valentine" or "Rickmyer" or "LaMaster" or "Buccini" or
      "Larson" or "Haben" or "Boettner" or "Vandenberg" or "Olsen" or "Booker" or
      "Rosenthal" or "Shah")

57.   "UB" and ("Viant" or "OPR")

58.   "Facility" and ("Viant" or "OPR")

**Arnall
Golden
Gregory** LLP

59.  "UB" and ("Data iSight" or "DiS" or "Dataisight")

60.  "Facility" and ("Data iSight" or "DiS" or "Dataisight")

61.  "H0015"

62.  "S9480"

63.  ("Rev*" or "RC") and ("*905" or "*906")

64.  "ASAM" and ("behav*" or "mental" or facility)

65.  "598-6888"

66.  "Apple"

67.  "Tesla"

68.  "Apple" and "savings"

69.  "Tesla" and "savings"

70.  "Apple" and "facility"

71.  "Tesla" and "facility"

72.  "ibaag" and "Apple"

73.  "ibaag" and "Tesla"

74.  ("discount" or "negot*") n/5 ("multiplan" or "viant")

75.  "H0015" and "UO"

76.  "H0015" and "CY"

77.  "CY" and "PAD"

78.  "UO" and "PAD"

79.  "UB" and "CY"

80.  "UB" and "UO"



81.   "PAD Update"

82.   "Multiplan" and "quick reference"

83.   "Multiplan" and "methodology overview"

84.   "Multiplan" and "Benefit Plan Language" and "EOB Requirements"

85.   "standard" n/5 "analytic*" n/5 "file"

86.   "SAF" and "Viant"

87.   "Viant" and "Methodology"

88.   "facility edit"

89.   "client portal" and "multiplan"

90.   ("fac*" or "outpatient" or "OP*") and ("FAIRHealth" or "FAIR health" or "FH" or "FAIR" or "R&C")

91.   ("H0015" or "S9480") and "provider remittance"

92.   "fac*" n/5 ("plan language" or "SPD" or "COC" or coverage or certificate or "summary plan" or "plan")

93.   ("fac*" or "outpatient" or "OPR") and "savings"

94.   "OPR"

95.   "OPR" n/2 "percent*"

96.   ("whitepaper" or "white paper") and ("MultiPlan" or "Multi Plan" or "MPI" or "MP")

97.   H0015" and ("iSight" or "DIS" or "Viant" or "MultiPlan")

98.   ("Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or UCR or UNC or U&C) and ("acceptance" or "provider")

99.   ("Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or UCR or UNC or U&C) and "IOI

**Arnall**
**Golden**
**Gregory** LLP

100. "vend* solution*" and ("IOI" or "internal operating income")

101. ("Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or UCR or UNC or U&C) and "appeal"

102. ("Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or UCR or UNC or U&C) and ("allowed amount")

103. ("Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or UCR or UNC or U&C) and "perc*"

104. ("Remark" or "Code") and ("CY" or "UO")

105. "outlier cost" and "facility"

106. facility and "behavioral health"

107. ("behavioral" or "facility") and ("bench*" or BMP or "target")

108. ("behavioral" and (("balance" or "surprise") n/3 "bill")

109. ("Viant" or "MultiPlan") and "CMS"

110. ("behavioral" or "facility") and "RVU"

111. ("facility" or "Viant" or "OPR") and "override"

112. "CMS threshold" and "UB"

113. "Viant closure report" or "Viant closures report"

114. ("outlier cost management" or "OCR") and (UCR or "R&C" or "U&C" or ("usual" n/2 "customary") or ("reasonable" n/2 "customary") or "UNC")

115. "Facility R&C Compare"

116. "Facility R&C" n/5 ("percent*")

117. "Facility" n/3 ("shared savings" or "SSP" or "R&C")

118. "Facility" and ("Third Party Payer")

119. "Pricing Methodology" and ("R&C" or "SSP" or "shared savings")



120.    "non-preferred" and ("R&C" or "SSP" or "shared savings")

121.    ("non-par*") and ("R&C" or "SSP" or "shared savings")

122.    ("Package E" or "Package F") and ("R&C" or "SSP" or "shared savings")

123.    ("adoption rate") and ("R&C" or "SSP" or "shared savings")

124.    "affordability" and ("R&C" or "SSP" or "shared savings")

125.    ("stand on data" or "SOD" or "stand on decision") and ("R&C" or "SSP" or "shared savings")

126.    ("stand on data" or "SOD" or "stand on decision") and "Viant"

127.    "Viant" and "discount utilized"

128.    "balance bill*" and ("R&C" or "SSP" or "shared savings")

129.    "OON" and "ORS" and "374"

130.    ("Provider" n/3 "Dispute*") and ("R&C" or "SSP" or "shared savings")

131.    "Negotiation*" and ("R&C" or "SSP" or "shared savings")

132.    "Viant" and "educate" and "provider"

133.    "non-network" and ("R&C" or "SSP" or "shared savings")

134.    "financial report" and ("R&C" or "SSP" or "shared savings")

135.    ("Talking Points" or "Handout" or "Pitch") and ("R&C" or "SSP" or "shared savings")

136.    "Connect to Market" and ("R&C" or "SSP" or "shared savings")

137.    "Facility Reasonable" and "Report*"

138.    "Benefit Detail Report" and ("R&C" or "SSP" or "shared savings")

139.    "vended solution" and ("R&C" or "SSP" or "shared savings")

140.    "priced by Viant"

141.    "member advocacy" and ("R&C" or "SSP" or "shared savings")



October 12, 2021
Page 10

142.  "Fair Health" and ("R&C" or "SSP" or "shared savings")

143.  "source of truth" and ("R&C" or "SSP" or "shared savings")

144.  "Viant" and ("standard operating procedure" or "SOP")

145.  "FINUC" and ("reasonable" n/3 "customary")

146.  ("stop loss" or "indemnity") and ("reasonable" n/3 "customary")

147.  "RCI" and "UNET"

148.  ("Geozip" or "geographical") and "R&C"

149.  ("PHCS" or "HIAA") and "R&C database"

150.  "CASH" and "R&C"

**Arnall
Golden
Gregory LLP**

Matthew M Lavin
*Partner*

DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Phone: 202.677.3040
Fax: 202.677.3041
Email: Matt.Lavin@AGG.com

November 18, 2021

**VIA EMAIL**

Geoffrey Sigler
Gibson Dunn & Crutcher, LLP
1050 Connecticut Ave., NW
Washington, DC 20036

> Re:   United Defendants' Proposed Custodians and Search Terms Relating to Plaintiffs' Requests for Production

Dear Geoff,

Following your firm's correspondence of November 15 and our meet and confer of November 16, 2021, I would like to address and make clear Plaintiffs' position as to the matters you raised therein:

As I stated during our meet and confer and have stated many times during our discussions regarding United's discovery obligations, it is United, not Plaintiffs, that has the best knowledge of its own systems, both current and legacy. While Plaintiffs want to assist however possible in streamlining the discovery process, ultimately, it is United, not Plaintiffs, that is in the superior position of determining how to respond fully to Plaintiffs' discovery requests. We do not agree that your most recent proposed list of search terms will satisfy United's obligations to fully respond to our various discovery requests, and we reserve all rights, waiving nothing.

Since there has been disagreement over the appropriate custodians, can you please clarify United's current position as to the appropriate document custodians? Plaintiffs had proposed custodians in addition to those initially proposed by United, and it remains unclear exactly where we stand on this. Also, as John Haben has recently retired from United, can you please confirm that he and his replacement are both included as custodians? Please also identify the name of his replacement and the name of the individual to whom Rebecca Paradise now reports.

Further, I am disturbed by the implication from your last letter that United has not begun to search any of its data stores for responsive documents. Our first request was served on United back in July, 2021, and it would be in extreme bad faith if there have been no attempts to locate responsive documents to date. However, I fear this to be the case as United has not made even a partial production of documents other than what was included in its initial disclosures and those documents that had relevancy to the briefing as to the appropriate, ERISA standard of review. As



Page 2

we had discussed and agreed previously that discovery would occur in a phased manner, I had anticipated that *something* relevant to the substantive discovery requests propounded by Plaintiffs would have been produced. It has not been, and United still cannot commit to a certain date for the claims reports that should have been produced months ago.

Your November 15, 2021, letter states, "[w]e anticipate that these terms will return a substantial number of hits and are making this proposal in an attempt to reach a compromise so that we can move forward expeditiously." I understand this to mean that no searches have been done so far and that you do not know what search terms will have 'hits' and have not reviewed even a sampling of 'hits' for relevancy. If this is incorrect, please let me know. Next, I also take this to mean that you have not evaluated <u>any</u> of the 150 search strings proposed by Plaintiffs in our October 12, 2021, letter to you. Without having actually undertaken any searching of data, it is impossible to know how many 'hits' the search strings will have and to what extent those strings return relevant documents. We are happy to continue to discuss appropriate search terms; however, to have a meaningful exchange, we need to have a discussion based upon data and not your speculations. Without any data, it is impossible to know whether the terms we proposed in October are sufficient, whether the terms your November 15 letter proposed are sufficient, or if additional searches are needed. Plaintiffs will not blindly agree that your speculations on search terms will appropriately respond to our discovery requests. Plaintiffs are also unclear which terms on our non-exhaustive list of suggested terms you have discarded and which you have included.

Finally, can you please provide additional clarity into the data locations / stores that will be searched for responsive documents? You had originally indicated that only the "PIG" drive at United would be searched for ESI, and it is my understanding that there are additional systems within United, including production systems, that would have relevant and responsive documents.

We are happy to discuss this further and are available to meet and confer regarding any of the above matters.

Best Regards,

ARNALL GOLDEN GREGORY LLP

Matt Lavin

CC: All Counsel of Record



DC Office
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Direct Phone: 202.677.4048
Email: aaron.modiano@agg.com

November 29, 2021

**VIA ELECTRONIC MAIL**

Craig Caesar, Esq.
Phelps Dunbar, LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534
craig.caesar@phelps.com

        Re:    *LD et al. v. United et al.*, Claims Reports and Discovery Matters

Dear Craig,

In follow-up to our discussion regarding the custodians that MultiPlan will be searching for purposes of identifying documents responsive to Plaintiffs' discovery requests, the custodians that had been initially suggested by Plaintiffs relevant to class discovery are:

- Dale White
- Jaqueline Kienzle
- Mark Edwards
- Emma Johnson
- Michael McEttrick
- Sean Crandell
- Susan Mohler

Two additional custodians that we believe should also be included, because of their particular roles with Viant during the disputed period, are:

- JR Moss
- Karen Beckstead

Based on our discussion of November 18, 2021, I understood that MultiPlan has not yet begun its ESI search. This, and the fact that MultiPlan will have a much smaller set of documents when compared to United, indicates that these additional custodians should not significantly increase the burden on MultiPlan in its document production.



November 29, 2021
Page 2

Our suggestions as to custodians are just that, suggestions, as MultiPlan is the entity that is actually in possession of the requested material and our input is meant to assist in the process. By suggesting the above custodians, we do not agree that they are all of the necessary and appropriate custodians to appropriately respond to Plaintiffs' discovery. To that end, we continue to reserve all rights with regard to discovery.

We have also conducted an initial review of the claims data produced to us by MultiPlan on November 19, 2021 and would request clarification on several points with regard to it. At the outset, a data or field glossary would be helpful as to both the field headings and values. For instance, for the fields 'ADMISSIONDATE' and 'DISCHARGEDATE', are these values that correspond to dates of service in the EDI sent by United to MultiPlan, or are they system generated or calculated, or are they something else entirely? Also, some fields are completely blank, *e.g.* 'PATIENT_ID' while other fields, *e.g.* 'UNC' and 'PCTILE' have some instances with data and others without. Further information as to why this would be the case would be appreciated.

Further, our discovery request for claims data included requests for the Fair Health 70th and 80th percentile of charge data as well as the underlying data used by MultiPlan to price the claims. Please let us know when this will be forthcoming as well as when we can expect additional document productions.

Should you wish to discuss this matter further, we are available to do so.

Sincerely,

ARNALL GOLDEN GREGORY LLP

*/s/ Aaron R. Modiano*
Aaron R. Modiano
*Of Counsel*

CC: all counsel of record