# EXHIBIT A

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Geoffrey Sigler
Direct: +1 202.887.3752
Fax: +1 202.530.9635
GSigler@gibsondunn.com

December 20, 2021


VIA ELECTRONIC MAIL

Matthew M. Lavin
Arnall Golden Gregory LLP
1775 Pennsylvania Ave NW, Suite 1000
Washington, DC 20006

David M. Lilienstein
DL Law Group
345 Franklin Street
San Francisco, CA 94102

Re:   Document Categories and Search Terms Relating to Plaintiffs' Requests for
      Production

Dear Counsel:

I write on behalf of United Behavioral Health ("UBH") and UnitedHealthcare Insurance Company ("UHC") (collectively, the "United Defendants") to address several topics related to our responses to Plaintiffs' discovery requests, including your December 6, 2021 letter. After you have reviewed, please promptly let us know if you would like to discuss any of the matters in this letter.

As you know from our recent discussions, based on Plaintiffs' requests, our responses, and our discussions about discovery with you over the past several months, we have begun collecting and reviewing documents for responsiveness. We are currently applying the parameters set out below, and we intend to continue applying these parameters absent agreed-upon modifications. As always, we are willing to discuss any of these matters with you, but at this point we feel comfortable with the parameters that we have developed, you have stated multiple times that it is up to Defendants to conduct their own searches, and we also feel compelled to move forward in light of the schedule in the case.

**Document Sources / Search Terms**

Attachment A lists the search terms we are applying to emails and other documents collected from the custodians listed in our October 1, 2021 letter, the PIG drive, as well as a SharePoint we have identified as containing responsive documents. We are investigating

Matthew M. Lavin
David M. Lilienstein
December 20, 2021
Page 2

whether there are other potential sources that may need to be searched with search terms as well, and reserve the right to add custodians or sources, but our current view is that these are the sources most likely to contain responsive documents requiring application of search terms. We also understand that you have proposed a few other potential custodians; we are reviewing these proposed additions and plan to discuss them with you soon.  There are also some other requests, discussed below, for which we anticipate using targeted searches rather than search terms (*e.g*., requests for claim data).  In the meantime, however, we are moving ahead with the search terms and review described in this letter to keep the process moving forward.

You will see on Attachment A that we have made several modifications to our previous search term list, to address points you raised in your December 6 letter.  Attachment A includes our responses to each of the points raised in the December 6 letter.  For example, there are a number of search strings that are not targeted to return responsive documents because they consist of general and commonly used terms (such as "accepted," "price," "rate," "%," "fair," "U&C," and "R&C") without any proximity instruction tying the search to Facility R&C—the specific program at issue in this case.  There are also a number of search strings that contain terms such as "Fac*" and "OP*" which are not targeted to return responsive documents because they will produce a number of irrelevant hits such as all words beginning with fact, face, or open.  Further, there are a number of search strings that seek information about programs not at issue in this matter (Data iSight and SSP).

To address questions raised in your December 6 letter, our search function does not use the "N" operator, and the "W" operator is not term sequential.  The search function contains a separate operator for sequential term searches.  The search function when using quotation marks is also not case sensitive and, accordingly, a search for "Benchmark" will also return results for "benchmark" and "benchmarks."  As noted above, we have agreed to many of Plaintiffs' proposed search terms including the wildcard operator "*" subject to the objections in the previous paragraph.

**TAR**

In an attempt to make the review more efficient, we have considered your suggestion of TAR and we are open to using TAR in conjunction with these search terms.  Attached as Attachment B is a TAR proposal for your consideration, which is similar to the proposal you agreed to in your case against CIGNA.  We would like to implement this TAR process soon, so please let us know as soon as possible whether you agree.

Matthew M. Lavin
David M. Lilienstein
December 20, 2021
Page 3

**Document Categories**

As we have previously discussed, Plaintiffs' document requests present a number of objections and practical challenges. For example, Plaintiffs served more than two hundred requests, many of which are overlapping. Additionally, many of the requests, as framed, are not focused on Facility R&C, even though this program (and in particular reimbursement of IOP services) is the focus of Plaintiffs' claims in this case. In the interest of moving the document review forward, and making the review more manageable for the reviewers (*i.e.*, so that they are not trying to compare a particular document for responsiveness to 200+ separate, overlapping requests), we have distilled Plaintiffs' requests into the following categories that will be the focus of our review and production.

The following seven document categories are the focus of the searches and reviews of documents in the sources and search terms discussed above.

1. **Documents Showing The Design, Implementation, and Changes to MultiPlan/Viant's Facility R&C Methodology/Database.** *See* Plaintiffs' First Set of Requests for Production ("Plaintiffs' First Set of RFPs") Nos. 8 to 13, 15 to 16, 19, 34, 35 to 39, 49, 56 to 63, 65, 74, & 103 to 126; Plaintiffs' Third Set of Requests for Production ("Plaintiffs' Third Set of RFPs") Nos. 1 to 4, 17, 24, 27 to 29, 31 to 33, 36, & 40 to 41.

2. **Documents Showing The Design, Implementation, and Changes to MultiPlan/Viant's Fee Negotiation Services for Facility R&C Claims**. *See* Plaintiffs' First Set of RFPs Nos. 8 to 11, 15 to 16, 19, 26, 35 to 39, 43, 49, 69 to 71, & 103 to 126; Plaintiffs' Third Set of RFPs Nos. 1 to 4, 17, 21 to 22, 24, 27 to 29, 31 to 33, 36, & 40 to 41.

3. **Documents Showing Design, Implementation, and Changes to United's Facility R&C Program, Including Any Default Rates and Percentiles**. *See* Plaintiffs' First Set of RFPs Nos. 8 to 11, 14 to 16, 19 to 21, 23 to 25, 32 to 33, 35 to 39, 49, 51 to 52, 64, 73, & 103 to 126; Plaintiffs' Third Set of RFPs Nos. 1 to 4, 17, 24 to 25, 27 to 29, 31 to 33, 36, & 40 to 41.

4. **Documents Comparing Viant/Facility R&C Methodology and/or Rates to Other Reimbursement Methodologies**. *See* Plaintiffs' First Set of RFPs Nos. 8 to 11, 15 to 16, 19, 35 to 39, 49, 52, 75, & 103 to 126; Plaintiffs' Third Set of RFPs Nos. 1 to 5, 17, 23 to 24, 26 to 27 to 29, 31 to 33, 36, & 40 to 41.

Matthew M. Lavin
David M. Lilienstein
December 20, 2021
Page 4

5. **Documents Reporting Or Analyzing Savings or Fees Paid to UHC or MultiPlan/Viant, or Income to UHC or MultiPlan/Viant From the Viant/Facility R&C Program**. *See* Plaintiffs' First Set of RFPs Nos. 6 to 11, 15 to 16, 19, 22, 35 to 42, 49 to 50, 69, & 103 to 126; Plaintiffs' Third Set of RFPs Nos. 1 to 4, 8, 17 to 18, 24, 27 to 30, 31 to 41.

6. **Documents Showing Communications With Providers and Members About Facility R&C**. *See* Plaintiffs' First Set of RFPs Nos. 8 to 11, 15 to 16, 19, 26 to 27, 29 to 31, 35 to 39, 43 to 45, 49, 54 to 55, 66 to 68, 70 to 71, 76, 89, 97, & 103 to 130; Plaintiffs' Third Set of RFPs Nos. 1 to 4, 17, 19 to 22, 24, 27 to 29, 31 to 33, 36, & 40 to 41.

7. **Documents Showing Communications With Health Plans and Plan Sponsors About Facility R&C**. *See* Plaintiffs' First Set of RFPs Nos. 8 to 11, 15 to 16, 19, 35 to 39, 46 to 49, 53, 55, 84 to 86, 87 to 88, & 103 to 126; Plaintiffs Third Set of RFPs Nos. 1 to 4, 6 to 7, 15 to 17, 24, 27 to 29, 31 to 33, 36, & 40 to 41.

We recognize that Plaintiffs also seek several additional categories, and that they likely may require additional, targeted searches. We are preparing proposals to address requests so that we can discuss them on our next call.

1. **Claim Data Reports**. *See* Plaintiffs' First Set of RFPs Nos. 1 to 2, 6 to 7, 28; Plaintiffs' Second Set of RFPs No. 1; Plaintiffs' Third Set of RFPs No. 42. As you know, we have already produced a responsive claims report. Following an agreement to be negotiated among the parties, United anticipates that it will pull documents for a sample of members listed in the previously-produced claims report.

2. **Named Plaintiff Documents.** *See* Plaintiffs' First Set of RFPs Nos. 83, 91 to 96, 98 to 102, & 136. We have already produced substantially all of the administrative records for Plaintiffs, and we intend to make a supplemental production as well. We are willing to discuss any specific needs for additional documents regarding Plaintiffs.

3. **Affirmative Defenses.** *See* Plaintiffs' Second Set of RFPs Nos. 2 to 52; Plaintiffs' Third Set of RFPs Nos. 43 to 93. We intend to rely on the claims data, sample files, and documents produced by any party or third party in this case. We also reserve the right to supplement with additional at any point as is appropriate.

4. **Plan-Specific Documents.** *See* Plaintiffs' First Set of RFPs Nos. 78 to 82; Plaintiffs' Third Set of RFPs Nos. 9 to 14. As you know, we have already produced plan documents and ASA agreements for Apple and Tesla specifically. Our search and production in response to Category No. 7, above, should also be helpful in response to

Matthew M. Lavin
David M. Lilienstein
December 20, 2021
Page 5

these requests.  We are willing to discuss any specific needs for additional documents regarding Apple, Tesla, or other plan sponsors.

5. **Related Litigation**.  *See* Plaintiffs' First Set of RFPs Nos. 77 & 90.  These requests raise issues of privilege, as framed, but we are considering what information may be reasonably produced in satisfaction of these requests.

As you know, the United Defendants have already made productions responsive to Request Nos. 3, 95, 96, 98, 99, 100 and 102 of Plaintiffs' First Set of Requests for Production.

Several of Plaintiffs' requests are not included in the above lists.  As stated in United Behavioral Health's objections to Plaintiffs' First Set of Requests for Production, the following requests seek information that appears to be outside the scope of this action: Request Nos. 4 to 5, 17, 18, 72, 131 & 132 in Plaintiffs' First Set of Requests for Production.  Additionally, we have already had extensive discussions about the discovery process, and would be happy to continue these discussions, but we do not view the collection and discovery process as being a proper, efficient focus of document requests (Plaintiffs' First Set of RFPs  Nos. 133 to 135).

**<u>Time Period</u>**

We are currently focusing our review on the time period April 2, 2016 through the filing of the original complaint (April 2, 2020), though we understand that you may want to discuss expanding this period back to January 1, 2015, at least for certain categories, and we can discuss this issue on our next call.

*      *      *

Please let us know if you would like to discuss and we will make ourselves available for another meet and confer.  Our review is ongoing, and will be ongoing over the holidays, so we should confer soon if you have any significant questions or concerns.  Thank you for your prompt attention to these matters.

Sincerely,

/s/ Geoffrey Sigler

cc: All counsel of record

# Attachment A

**United Response to Plaintiffs' Search Terms Objections**

1. We will incorporate the "UCR," "UNC," or "U&C" into the following general search string:

   ("Facility R&C" or "Facility Reasonable & Customary" or "OFR" or "outpatient facility reimbursement" or "Viant" or "OPR" or "Fac R&C" or "FRC" or ("Facility" w/3 ("UCR" or "UNC" or "U&C")))

2. United's search string requires only that meeting appear within five words of the "MultiPlan" string.  There is no limitation of the general search string.  Moreover, Plaintiffs' proposed search string contains no requirement that Facility R&C (or other related terms) be referenced in any document.

3. United will adopt Plaintiffs' proposed search string.

4. United will adopt Plaintiffs' proposed search string.

5. United will adopt Plaintiffs' proposed search string.

6. United's search string requires only that meeting appear within five words of the "MultiPlan" string.  There is no limitation of the general search string.  Moreover, Plaintiffs' proposed search string contains no requirement that Facility R&C be referenced in any document.

7. Plaintiffs' proposed search string contains the "Fac*" term that can produce a number of irrelevant hits such as words beginning with fact or face.  Further, the proposed search string contains a number of general and commonly used terms ("outpatient" and "intensive") with no proximity instruction and is not tailored to produce relevant documents.

8. Plaintiffs' proposed search string contains the "Fac*" term that can produce a number of irrelevant hits such as words beginning with fact or face.  Further, the proposed search string contains a number of general and commonly used terms ("outpatient" and "intensive") is not tailored to produce relevant documents.  United's proposed search string contains the same proximity instruction and contains many of the same search terms (OFR, Viant, OPR) as well as the general search string.

9. United will adopt Plaintiffs' proposed search string.

10. United will adopt Plaintiffs' proposed search string.

11. United will adopt Plaintiffs' proposed search string.

12. United will adopt Plaintiffs' proposed search string.

13. United will adopt Plaintiffs' proposed search string.

14. United will adopt Plaintiffs' proposed search string.

15. United will adopt Plaintiffs' proposed search string.

16. United will adopt Plaintiffs' proposed search string.

17. United will adopt Plaintiffs' proposed search string.

18. United will adopt Plaintiffs' proposed search string.

19. United will adopt Plaintiffs' proposed search string.

20. Capitalization does not matter in these strings.  For example, using "benchmark" will search for "Benchmark" or "benchmark."

21. Capitalization does not matter in these strings.  For example, using "benchmark" will search for "Benchmark" or "benchmark."

22. Capitalization does not matter in these strings.  For example, using "benchmark" will search for "Benchmark" or "benchmark."

23. United will adopt Plaintiffs' proposed search string.

24. United will adopt Plaintiffs' proposed search string.

25. United will adopt Plaintiffs' proposed search string.

26. United will adopt Plaintiffs' proposed search string.

27. United will adopt Plaintiffs' proposed search string.

28. The parties' terms are the same.

29. United will adopt Plaintiffs' proposed search string.

30. United will adopt Plaintiffs' proposed search string.

31. The proposed search string seeks information regarding Data iSight, a program not at issue in this matter.

32. United will adopt Plaintiffs' proposed search string.

33. Plaintiffs' proposed search string contains a number of general and commonly used terms ("%," "CMS," "outpatient," and "R&C") with no proximity instruction and is not tailored to produce relevant documents.

34. The proposed search string seeks information regarding Data iSight, a program not at issue in this matter.

35. United will adopt Plaintiffs' proposed search string.

36. United will adopt Plaintiffs' proposed search string.

37. United will adopt Plaintiffs' proposed search string.

38. Plaintiffs' proposed search string contains the term "UB" which will produce a number of irrelevant hits (words containing "ub" such as public, subject, rubric) and the term "facility" a general and commonly used term.

39. United will adopt Plaintiffs' proposed search string.

40. United will adopt Plaintiffs' proposed search string.

41. Plaintiffs' proposed search string contains no requirement that Facility R&C (or other related terms) be referenced in any document.

42. United will adopt Plaintiffs' proposed search string.

43. United will adopt Plaintiffs' proposed search string.

44. United will adopt Plaintiffs' proposed search string.

45. United will adopt Plaintiffs' proposed search string.

46. United will adopt Plaintiffs' proposed search string.

47. United will adopt Plaintiffs' proposed search string.

48. United will adopt Plaintiffs' proposed search string.

49. United will adopt Plaintiffs' proposed search string.

50. United will adopt Plaintiffs' proposed search string.

51. Plaintiffs' proposed search string contains a number of general and commonly used terms ("accepted," "acceptance," "rate," and "price") with no proximity instruction and is not tailored to produce relevant documents.

52. Plaintiffs' proposed search string contains a number of general and commonly used terms ("appeal," "appealed," "rate," and "price") with no proximity instruction and is not tailored to produce relevant documents.

53. The parties' terms are the same.

54. Plaintiffs' proposed search string contains the "Fac*" term that can produce a number of irrelevant hits such as words beginning with fact or face and no proximity instruction..

55. Plaintiffs' proposed search string is overbroad and not tailored to produce relevant documents.  United's proposed search string includes the general search string and a

proximity instruction designed to capture email communications for each of Plaintiffs' referenced individuals.

56. Plaintiffs' proposed search string is overbroad and not tailored to produce relevant documents.  United's proposed search string includes the general search string and a proximity instruction designed to capture email communications for each of Plaintiffs' referenced individuals.

57. United will adopt Plaintiffs' proposed search string.

58. United will adopt Plaintiffs' proposed search string.

59. The proposed search string seeks information regarding Data iSight, a program not at issue in this matter.

60. Plaintiffs' proposed search string contains a general and commonly used term ("facility") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding Data iSight, a program not at issue in this matter.

61. United will adopt Plaintiffs' proposed search string.

62. United will adopt Plaintiffs' proposed search string.

63. Plaintiffs' proposed search string contains the "Rev*" term that can produce a number of irrelevant hits on words such as review or reversal.  Further, the proposed search string contains numbers with no proximity instruction that is tailored to identify documents discussing Revenue Codes 905 and 906.

64. United will adopt Plaintiffs' proposed search string.

65. United will adopt Plaintiffs' proposed search string.

66. United will adopt Plaintiffs' proposed search string.

67. United will adopt Plaintiffs' proposed search string.

68. United will adopt Plaintiffs' proposed search string.

69. United will adopt Plaintiffs' proposed search string.

70. United will adopt Plaintiffs' proposed search string.

71. United will adopt Plaintiffs' proposed search string.

72. United will adopt Plaintiffs' proposed search string.

73. United will adopt Plaintiffs' proposed search string.

74. United will adopt Plaintiffs' proposed search string.

75. Plaintiffs' have indicated that they are comfortable with United's proposed string.

76. Plaintiffs' have indicated that they are comfortable with United's proposed string.

77. United will adopt Plaintiffs' proposed search string.

78. United will adopt Plaintiffs' proposed search string.

79. United will adopt Plaintiffs' proposed search string.

80. United will adopt Plaintiffs' proposed search string.

81. United will adopt Plaintiffs' proposed search string.

82. United will adopt Plaintiffs' proposed search string.

83. United will adopt Plaintiffs' proposed search string.

84. United will adopt Plaintiffs' proposed search string.

85. United will adopt Plaintiffs' proposed search string.

86. United will adopt Plaintiffs' proposed search string.

87. United will adopt Plaintiffs' proposed search string.

88. United will adopt Plaintiffs' proposed search string.

89. United will adopt Plaintiffs' proposed search string.

90. Plaintiffs' proposed search string contains the terms "Fac*" and "OP*" that can produce a number of irrelevant hits such as words beginning with fact, face, or open.  Further, the proposed search string contains a number of general and commonly used terms ("outpatient," "intensive," "fair," and "R&C") with no proximity instruction and is not tailored to produce relevant documents.

91. United will adopt Plaintiffs' proposed search string.

92. United will adopt Plaintiffs' proposed search string.

93. Plaintiffs' proposed search string contains the terms "Fac*" and "OP*" that can produce a number of irrelevant hits such as words beginning with fact, face, or open.  Further, the proposed search string contains a number of general and commonly used terms ("outpatient" and "savings") with no proximity instruction and is not tailored to produce relevant documents.

94. United will adopt Plaintiffs' proposed search string.

95. United will adopt Plaintiffs' proposed search string.

96. United will adopt Plaintiffs' proposed search string.

97. United will adopt Plaintiffs' proposed search string.

98. The proposed search string contains a number of general and commonly used terms ("acceptance" and "provider") with no proximity instruction and is not tailored to produce relevant documents.

99. United will adopt Plaintiffs' proposed search string.

100. United will adopt Plaintiffs' proposed search string.

101. United will adopt Plaintiffs' proposed search string.

102. United will adopt Plaintiffs' proposed search string.

103. United will adopt Plaintiffs' proposed search string.

104. United will adopt Plaintiffs' proposed search string.

105. United will adopt Plaintiffs' proposed search string.

106. United will adopt Plaintiffs' proposed search string.

107. The proposed search string contains a number of general and commonly used terms ("facility", "bench*", and "target") with no proximity instruction and is not tailored to produce relevant documents.  Moreover, Plaintiffs' proposed search string contains no requirement that Facility R&C (or other related terms) be referenced in any document.

108. United will adopt Plaintiffs' proposed search string.

109. United will adopt Plaintiffs' proposed search string.

110. United will adopt Plaintiffs' proposed search string.

111. United will adopt Plaintiffs' proposed search string.

112. United will adopt Plaintiffs' proposed search string.

113. United will adopt Plaintiffs' proposed search string.

114. United will adopt Plaintiffs' proposed search string.

115. United will adopt Plaintiffs' proposed search string.

116. United will adopt Plaintiffs' proposed search string.

117.   Plaintiffs' proposed search string contains general and commonly used terms ("facility" and "R&C")  and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

118.   United will adopt Plaintiffs' proposed search string.

119.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

120.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

121.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

122.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

123.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

124.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C" and "affordability")  with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

125.   The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

126.   United will adopt Plaintiffs' proposed search string.

127.   United will adopt Plaintiffs' proposed search string.

128.   Plaintiffs' proposed search string contains a general and commonly used term ("R&C") with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

129.    United will adopt Plaintiffs' proposed search string.

130.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

131.    Plaintiffs' proposed search string contain general and commonly used terms ("R&C" and "negotiation")  with no proximity instruction and is not tailored to produce relevant documents.  Further, the proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

132.    United will adopt Plaintiffs' proposed search string.

133.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

134.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

135.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

136.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

137.    United will adopt Plaintiffs' proposed search string.

138.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

139.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

140.    United will adopt Plaintiffs' proposed search string.

141.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

142.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

143.    The proposed search string seeks information regarding SSP and shared savings, programs not at issue in this matter.

144.    United will adopt Plaintiffs' proposed search string.

145.    United will adopt Plaintiffs' proposed search string.

146.    United will adopt Plaintiffs' proposed search string.

147.   United will adopt Plaintiffs' proposed search string.

148.   Plaintiffs' proposed search string contains general and commonly used terms ("R&C" and "geographical")  with no proximity instruction and is not tailored to produce relevant documents.

149.   United will adopt Plaintiffs' proposed search string.

150.   Plaintiffs' proposed search string contains general and commonly used terms ("R&C" and "CASH")  with no proximity instruction and is not tailored to produce relevant documents.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated, | Case Number: 4:20-cv-02254-YGR |
| Plaintiffs, | |
| vs. | **[PROPOSED] STIPULATED ORDER RE: USE OF TECHNOLOGY ASSISTED REVIEW** |
| UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, UNITED BEHAVIORAL HEALTH, a California Corporation, and MULTIPLAN, INC., a New York Corporation, | Hon. Yvonne Gonzalez Rogers |
| Defendants. | |

Plaintiffs LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants UnitedHealthcare Insurance Company, United Behavioral Health, and MultiPlan (collectively "Defendants") referred to individually as a "Party" or collectively as the "Parties," stipulate and agree as follows:

## I.    GENERAL TERMS

A.    <u>Application</u>.  The procedures set forth in this Stipulation shall govern the use of Technology Assisted Review ("TAR") in this Action, as defined in F(5) below.

B.    <u>Scope of Discovery</u>.  This Stipulation does not affect the proper subject matter of discovery in this Action.  Nor does this Stipulation imply that Documents produced under its terms are relevant or admissible in this Action or in any other litigation.

C.    <u>Privileges</u>.  Nothing in this Stipulation shall be interpreted to require the disclosure of Documents that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

D.     Modification and Amendment.  This Stipulation may be modified or amended by written agreement of the Parties submitted to and ordered by the Court.  The Parties agree to make reasonable modifications as necessary to facilitate the producing Party's efficient review and production of Documents and ESI.

E.     Reservation of Rights.  The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the Northern District of California, and applicable Judicial Practice Standards.

F.     Definitions.

1.     "Document" or "Electronically stored information" or "ESI" as used herein, is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).

2.     "Metadata" is defined as (i) information embedded in, or associated with, a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

3.     "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.

4.     "Recall" refers to the percentage of relevant documents captured by the review method.

5.     "Statistically Valid Sample" means a random sample of sufficient size and composition to permit statistical extrapolation with a margin of error of 5% at the 95% confidence level.

6.     "Technology Assisted Review" or "TAR" means generally the process whereby software scores and ranks (or presents) documents based on their likely responsiveness, and human reviewers review for responsiveness the documents prioritized (or presented) by the process.  As used herein, TAR refers to TAR 2.0 protocols.

2

7.      "TAR Software" means the software a Party elects to use to perform the TAR.

8.      "Continuous Active Learning" or "CAL" shall refer to TAR 2.0 protocols that enable a system to continuously analyze the machine learning results as manual reviewers review documents for their responsiveness.  CAL is a form of TAR that continuously improves through re-ranking the entire data set as it receives new batches of data.

## II.      SEARCH OF ESI AND TECHNOLOGY ASSISTED REVIEW

A.      The parties recognize that any search methodology they use, including manual human review, will miss some responsive documents.  The parties further recognize that although precision, efficiency, and effectiveness of the search methodologies are important, perfection is neither required nor possible.

B.      As part of this reasonable inquiry, the producing Parties may use keyword searching and/or TAR (in conjunction with the use of keyword searching) to help them to identify responsive ESI.

C.      If any Party chooses to use keyword searching to identify potentially responsive ESI, that Party shall offer to meet and confer regarding the same and agree to exchange (1) names of all custodians; (2) date range restrictions; and (3) keyword search terms to be used.  If the parties disagree on the custodians, date range restrictions and/or keyword search terms, and are unable to resolve any disputes, any Party may file an appropriate motion for determination by the Court.  During the pendency of any such motion, the producing party's production obligation (to the extent it is dependent on the resolution of these issues) will be stayed.

D.      If any party chooses to use a TAR protocol in conjunction with search terms, that Party shall offer to meet and confer regarding search terms to be used and the sources of ESI to be searched.  Should the Parties be unable to resolve their disputes on any issues stemming from the use of search terms, either party may submit those issues to the Court for resolution.

E.     <u>Producing Party Initial TAR Disclosures</u>.  Prior to the commencement of any production using TAR, the producing Party shall disclose to the requesting Party in writing its intention to use TAR and disclose the name of the TAR Software and vendor.

F.     <u>Requesting Party Response</u>.  Within ten (10) days of receiving any TAR disclosure, the requesting Party may raise with the producing Party any concerns with the proposed TAR process.  If the parties are unable to agree after meeting and conferring, either party may submit the disputed issue(s) to the Court for resolution.

G.     <u>Cooperation</u>.  The Parties agree to meet and confer in good faith over any disputes that might arise with respect to the use of TAR.  Should the Parties be unable to resolve their disputes on any issues stemming from the use of TAR, the producing Party may proceed to employ its proposal after conferring, or either party may submit those issues to the Court for resolution.

III.   **TAR PROTOCOL**

A.     Identifying the TAR Review Set.

1.     <u>Search Terms</u>.  A producing Party using TAR may use search terms, subject to the meet and confer process discussed in II.C and D above, to cull the universe of documents into the set of documents that shall be subject to the TAR process (the "TAR Review Set").  The Parties agree to meet and confer and attempt to reach an agreement on search terms that the producing Party will to use to create the TAR Review Set.  If the parties are unable to agree after meeting and conferring, either party may submit the disputed issue(s) to the Court for resolution.

2.     <u>Documents and Data Not Subject to TAR</u>.  Certain files and/or documents may be excluded from the TAR process because they would be poor candidates to train the system, e.g., documents with too much or too little text, documents with poor quality text, photographs, etc.  The producing Party may review certain sources of data for responsiveness outside of the TAR process.  The producing Party will identify data sources or types of

documents that will not be reviewed using TAR. Excluded system-generated files do not need to be reviewed, but any such files that are found to be responsive shall be produced.

   3.   Disclosure of TAR Process. A producing Party shall disclose in writing the vendor and TAR Software they are utilizing.

   4.   Global Deduplication Across Custodians/Data Sources. Consistent with the Parties' Stipulated Order re: Discovery of Electronically Stored Information (Dkt. ___), the parties agree that global de-duplication will be applied across all custodians and data sources that comprise the TAR Review Set. The parties will maintain metadata for any such duplicate documents sufficient to identify all custodians who possessed the de-duplicated documents in their files. The parties may also utilize email threading.

   B.   Disclosure of Documents in Review Set.

   TAR Review Set Disclosure. Prior to beginning the application of CAL to the TAR Review Set or reviewing any Samples, the producing Party will disclose to the requesting Party the number of documents in the TAR Review Set.

   C.   Continuous Active Learning.

   1.   Training Iterations. The producing Party will apply CAL to the TAR Review Set. Human reviewers will then review the documents prioritized by the CAL scoring process, beginning with documents identified as most likely to be responsive. As the review progresses, the system will be iteratively retrained with the additional confirmed responsive and non-responsive documents. During each iteration, CAL scores will be recalculated using the additional reviewed documents, and any resulting additional documents recommended will be added to the review queue. For clarity, only documents selected by CAL will be coded responsive and non responsive by reviewers, such that not every reviewed document will be submitted for CAL.

   2.   When to Validate. Once a producing Party reasonably believes that it has produced or identified for production a reasonable and proportional number of anticipated

responsive non-privileged documents, it shall stop the review and conduct validation according to the protocol described in Section III.D.

    D.    Validation Protocol.

        1.    The review process should incorporate quality-control and quality- assurance procedures to ensure a reasonable production consistent with the requirements of Federal Rule of Civil Procedure 26(b) and (g).  This Validation Protocol assumes that the completeness or adequacy of the TAR Review Set has already been established.  A measured Recall estimate under this Validation Protocol of 70% shall be presumptively reasonable, but if after completion of its review a party reasonably believes that it cannot obtain this level of Recall despite reasonable and proportional efforts, the Parties agree to meet and confer regarding additional measures and/or alternate steps.

        2.    <u>Validation Sample</u>.  SMEs review a Statistically Valid Sample of documents (the "Validation Sample") drawn from all documents in the TAR Review Set that were not reviewed by a human (the "Null Set").  The Validation Sample shall be used to assess the adequacy of the TAR process.  All responsive documents identified during the review shall be either produced or, if privileged, included in the producing Party's privilege log.

        3.    <u>Blind Review</u>.  During the course of the review of the Validation Sample, the SMEs shall not be provided with any information concerning the TAR software's determination of score.  The intent of this requirement is to ensure that the review of the Validation Sample is blind; it does not preclude a Party from selecting as SMEs those who may have had prior involvement in the original review process.

        4.    <u>Validation Disclosure</u>.  Within ten business days of completing a review of a Validation Sample, the producing Party will disclose to the requesting Party:

            a.    The number of documents in the Validation Sample;

            b.    The estimated Recall based on the Validation Sample review; and

            c.    The number of documents in the TAR Review Set coded responsive by human reviewers, including documents that are withheld for privilege.

d.    Depending upon the specific TAR vendor and technology being employed, the parties may find it necessary to modify the validation protocol.  As such, the parties shall meet and confer as to the appropriate validation protocol prior to commencing the TAR process.  If the parties are unable to agree after meeting and conferring, either party may submit the disputed issue(s) to the Court for resolution.

5.    <u>Confidence Interval</u>.  Once the requesting Party has received and has had an opportunity to review the information disclosed pursuant to Sections III.B.1, III.C.2, and III.D.4, the producing Party shall calculate exact confidence intervals (using a binomial calculator[1]) of

a.    the number of responsive documents estimated to be in the Null Set based on the review of the Validation Sample ("Validation Interval").

> **Example**:  If the Null Set contains 1.9 million documents, the Validation Sample shall contain 1,536 documents (using 95% confidence with 2.5% margin of error).  If 24 of the 1,536 documents are coded relevant, this implies that the Null Set contains 29,688 (the "point estimate") documents.  Using 24 as the numerator and 1,536 as the denominator in a binomial calculator computes an exact confidence interval of 0.0100 to 0.0232.  Multiplying each of these numbers by 1.9 million provides for a **Validation Interval** of 19,000 (lower limit) and 44,080 (upper limit).  In other words, there is 95 confidence level that that the Null Set contains between 19,000 and 44,080 responsive documents.

6.    <u>Presumption of reasonableness</u>.  If the number of documents coded responsive by human reviewers achieves at least 70% Recall there shall be a rebuttable presumption that the producing Party's inquiry and production were reasonable.

7.    <u>Rebutting the presumption of reasonableness</u>.  The presumption of reasonableness described in the preceding section may be rebutted if the totality of evidence implies that the producing Party's inquiry and production were not reasonable.  If the presumption of reasonableness is rebutted, the Parties agree to meet and confer in good faith to determine whether other evidence reasonably indicates that the producing Party's inquiry and production were reasonable.  Such evidence may include the quantity and nature of the responsive documents identified through sampling and the estimated number of responsive

---

[1] For example:  http://statpages.info/confint.html

documents based on the Validation Interval.  If the presumption of reasonableness is rebutted and, after considering the evidence, the Parties have not agreed that the producing Party's inquiry and production were reasonable, the review should resume and quality assurance process shall continue, and the Validation process shall be repeated as warranted unless a producing Party reasonably believes that it cannot obtain a measured Recall estimate of 70% despite reasonable and proportional efforts, in which case the Parties agree to meet and confer regarding additional measures and/or alternate steps.  If the Parties are unable to agree on whether the review is substantially complete, or whether the Validation process must be repeated, the Court shall render a decision.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____

Matthew Lavin

Counsel for Plaintiffs

Dated: _____

Geoffrey Sigler
Counsel for Defendants UnitedHealthcare Insurance
Company and United Behavioral Health