Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Magistrate Judge

```
LD, BD, BW, RH, and CJ,        )
                               )
          Plaintiffs,          )
                               )
  VS.                          )   NO. C 20-02254-YGR (JCS)
                               )
UNITED BEHAVIORAL HEALTH, a    )
California corporation, et al.,)
                               )
          Defendants.          )
_____)
```

San Francisco, California
Friday, July 29, 2022

<u>**TRANSCRIPT OF REMOTE PROCEEDINGS**</u>

**<u>APPEARANCES</u>**: (Appearances via Zoom videoconference.)

For Plaintiffs:
>                ARNALL GOLDEN GREGORY, LLP
>                1775 Pennsylvania Avenue, NW
>                Suite 1000
>                Washington, D.C. 20006
>           **BY:  AARON R. MODIANO, ATTORNEY AT LAW**
>
>                DL LAW GROUP
>                345 Franklin Street
>                San Francisco, California 94102
>           **BY:  KATIE J. SPIELMAN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant United Behavioral Health:
                         GIBSON, DUNN & CRUTCHER LLP
3                        1050 Connecticut Avenue, NW
                         Washington, D.C. 20036
4                  BY:   **GEOFFREY M. SIGLER, ATTORNEY AT LAW**

5    For Defendant MultiPlan, Inc.:
                         PHELPS DUNBAR LLP
6                        400 Convention Street - Suite 1100
                         Baton Rouge, Louisiana 70802
7                  BY:   **CRAIG L. CAESAR, ATTORNEY AT LAW**
                         **KATHERINE C. MANNINO, ATTORNEY AT LAW**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

| | |
|---|---|
| 1 | **Friday - July 29, 2022**                **10:18 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  The next matter we're calling is |
| 5 | 20-CV-2254, LD, et al. versus United Behavioral Health, et al. |
| 6 | Counsel, could you please raise your hands. |
| 7 | (Pause in proceedings.) |
| 8 | **THE COURT:**  Appearances please, starting with |
| 9 | plaintiff. |
| 10 | **MR. MODIANO:**  Good morning, Your Honor.  Aaron Modiano |
| 11 | with Arnall Golden Gregory on behalf of the plaintiffs; and I'm |
| 12 | joined by my cocounsel Katie Spielman, with DL Law Group. |
| 13 | **THE COURT:**  Good morning. |
| 14 | **MR. SIGLER:**  Good morning, Your Honor.  Geoff Sigler |
| 15 | for the United defendants. |
| 16 | **THE COURT:**  Welcome. |
| 17 | You're on mute, Mr. Caesar. |
| 18 | **MR. CAESAR:**  This is Craig Caesar of Phelps Dunbar |
| 19 | representing MutliPlan. |
| 20 | **THE COURT:**  Welcome. |
| 21 | **MS. MANNINO:**  Katie Mannino also of Phelps Dunbar, |
| 22 | also representing MutliPlan. |
| 23 | **THE COURT:**  Okay.  So thank you. |
| 24 | And you can tell how I do this these things from watching |
| 25 | the Apple one before this.  And we're -- you're not quite to |

**PROCEEDINGS**

1    the stage that they're at.  But what I thought I'd do is I'd go

2    through and tell you my thoughts.  I'll probably put them in a

3    writing -- order sometime next week or maybe a little

4    thereafter.  And then send you back to do more work, which will

5    include, in this case, re-reviewing the log; coming up with a

6    new and more detailed log; coming up with more detailed

7    affidavits of the lawyers involved; and then doing a meet and

8    confer; and then a further briefing if we're not resolved on

9    based on those changes.

10       I'm not -- certainly not going to review 3,000 privileged

11   documents or listed documents.

12       One question, the combined -- Docket 146-1 looks like it's

13   the -- it's a combined privilege log of all the claims of

14   privilege that are at issue in this motion, the third section

15   of which is the 3,153 documents from the June 23 and July 1

16   privilege log.

17       Am I right that this is the docket number that I should be

18   focusing on that has all of the assertions of privilege in it?

19       I mean, I know it came in pieces over time, but this looks

20   like it was put together as a combined document with all the

21   pieces of the privilege log, and I wondered if people could

22   take a look at that and let me know if I'm correct.

23       **MR. SIGLER:**  Your Honor, this is counsel for United

24   defendants.

25       I don't know offhand, but I will ask my team to check and

**PROCEEDINGS**

1   get you an answer, hopefully, while we're still on this --

2          **THE COURT:**  Okay.

3          **MR. SIGLER:**  -- Zoom.

4          **THE COURT:**  All right.  And, Mr. Modiano, if you

5   wanted, somebody from your shop could look at that too.

6          **MR. MODIANO:**  Absolutely, Your Honor.

7          **THE COURT:**  Okay.  So in no particular order, the

8   primary purpose test, the only example -- there's -- I have two

9   things to say about this.

10         I'm skeptical a little bit about this exception, but -- in

11  this case, but I don't know that I have enough information.

12  The only example that is challenged by the plaintiffs is

13  Document 1592, which the log says is a presentation seeking

14  legal advice about strategic legal planning.

15         That's clearly a not-adequate privilege log.  You know,

16  the descriptions of the document and other documents like this

17  as "for strategic legal planning" is also completely

18  meaningless -- meaningless term.  You know, that could mean,

19  you know:  When are we going to hire the next general counsel?

20         I have no idea what that means.  It doesn't show it's for

21  legal advice.  It doesn't show the context.  It doesn't show

22  what kind of legal advice it's for; all of which, as we know,

23  is critical to both determining whether the attorney/client

24  privilege -- determining whether the fiduciary exception

25  applies.

**PROCEEDINGS**

1    So the examples -- the documents that say "strategic legal

2    planning" that's way inadequate.  You need a much more detailed

3    privilege log that says more than that.

4    The declaration from Bradley -- who is not a lawyer, who's

5    one of people who runs these out-of-network programs -- says

6    that, you know, that she -- I think it's a she; is that

7    right? --  gets requests from in-house counsel for input on

8    changes to any company-wide policies related to out-of-network

9    programs.  You know, that is not an adequate showing to show

10   that these were sought for legal advice.  It's certainly not an

11   adequate showing because we have the fiduciary exception to

12   deal with.

13   So the fact that in-house counsel sought something, as you

14   all know, is not enough to show that it was sought for legal

15   advice or legal advice on a particular thing.

16   There's no affidavit of any attorney.  You need much more

17   detailed privilege log on all of these kinds of documents.  And

18   you need declarations from the lawyers who sought the input,

19   why they sought the input; that it was for a legal purpose; and

20   some general description of what that legal purpose is and --

21   so that I can judge whether or not it actually is a legal

22   purpose; and so I can judge whether the fiduciary exception

23   applies.  So we're needing a better privilege log and

24   declarations from lawyers.

25   The fiduciary exception.  The fiduciary exception, as you

1   know, it's -- I've been through this before and my strong view

2   is that the burden of proving that the fiduciary exception

3   doesn't apply, that is to say that there is an attorney/client

4   relationship here which justifies protection is on United.

5   There is no question in my mind that that's the case.

6        The underpinning of the doctrine is that the beneficiaries

7   are the clients; that there is no separate relationship between

8   United and its in-house counsel.  That is a separate

9   attorney/client relationship from the one that benefits the

10  beneficiaries, where the beneficiaries are the clients.

11       So the burden is on United.  And to avoid the application

12  of this doctrine -- and we can talk about -- I will talk about

13  what this means in detail -- United has to prove that the -- if

14  it's otherwise attorney/client legal advice, what would be

15  covered is that -- if it's within the fiduciary exception, they

16  have to show a couple of things.

17       They can show that it's defensive -- and we'll talk about

18  what that means.  I have a very narrow view of what that means.

19  It means truly defensive.  It involves a plan that is

20  completely unrelated to any of the plans in this case, and also

21  didn't involve any reimbursement, procedure, or calculation

22  that is -- that is applicable to the plans in this case, even

23  if it's raised or discussed in connection with another plan.

24       What I mean by that is this:  Assuming for the moment that

25  it's covered by the fiduciary exception in general because it's

**PROCEEDINGS**

1    attorney/client on administration, if you're talking about how

2    to -- you know, a technique for determining the amount of

3    reimbursement for out-of-network, and that technique is

4    applicable to -- and you're talking about it in connection with

5    Plan A -- and, by the way, Plan A is not Tesla, nor -- is it

6    Apple is the other plaintiff in this case? -- it's not Tesla or

7    Apple, but Plan A has the exact same term and whatever -- so

8    that -- as are the plans at issue in this case.

9         So the method of calculation would be relevant to the

10   method of calculation in this case because it's the same plan

11   term, even though the discussion happens to be with respect to

12   a different plan, you know, that -- that is -- I'm not -- if

13   you -- you know, I'm not going to say that it has to be -- the

14   plaintiff has to be people who are members of the particular

15   plan that happens to be discussed at that time.  If it's a

16   method of general applicability that applies to this plan, to

17   the plan that is at issue in this case.

18        I haven't -- as you can tell from the way I'm struggling

19   with the words, I haven't figured out exactly how to say it in

20   a narrow sense.  And, hopefully, by the time I get this order

21   out I will have a little more artful way of saying it.  But the

22   idea is if you're discussing, you know, how and whether -- how

23   to calculate out-of-network reimbursement, and it's something

24   related to the kind of out-of-network reimbursement in this

25   case, either because it's one of the exact same calculation

1   method or challenges to it or whether it's accurate or --
2   et cetera, et cetera, and you happen to bring it up in
3   connection with Plan A, but it's also applicable to Plan B, the
4   beneficiaries of Plan B can also assert that the fiduciary
5   exception applies.
6        So you've got defensive.  And it can involve the plan and
7   a calculation or some issue that is completely unrelated to the
8   plan in this case.  If it's general applicability or it's
9   something that would be applicable to this plan, then I don't
10  think that you can assert that.
11       Or -- and the last is, of course, if it's involved in the
12  duties of a settlor, that is to say -- and I view that as
13  pretty narrow -- drafting plan terms would be the classic
14  example, that's not -- then you're in a different capacity.
15  It's not as an administrator.
16       On the other hand, if you're creating mechanisms such as
17  those at issue in this case and evaluating them in order to
18  calculate benefits under existing plan terms, or plan terms
19  that were ultimately implemented in this case, that's
20  administration and you can't withhold that.
21       So, of course, the plaintiff doesn't have any access to
22  this type of information to decide where it fits in any of
23  these categories.  So the fundamental thing is that you need to
24  have a log that gives all of this information that shows how
25  you justify because the burden is on United, how it fits into

1   one of these buckets.  And you need declarations establishing

2   it for the particular documents, from the lawyers about this.

3        So in terms of defense, which is what I started off with,

4   you know, I -- you know, in the -- as you could tell from the

5   way I came about it -- what -- the trustees really need to be

6   in peril.  It can't be some kind of down-the-road peril either.

7   It can't be:  Well, of course, we're -- we are giving this

8   advice because, you know, this has implications.

9        One of the -- any piece of legal advice that falls within

10  the fiduciary exception, taken to its extreme, can have

11  implications for whether or not the trustees might be liable

12  down the road in a lawsuit.  That's not enough.  It's got to be

13  specifically that this advice was given in order to defend the

14  trustees; the trustees are in peril; the trustees -- this

15  advice was given to defend the trustees with respect to a

16  peril.

17       So that applies to, you know, regardless of who's seeking

18  information.  If the Government seeks information from the

19  trust or challenges their use of a particular thing, that

20  doesn't mean the trustees are in peril.  That means that

21  the Government thinks that the trust, there may be something

22  that's done wrong; that the sort of indirect, maybe down the

23  road the trustees might have a problem is not enough to invoke

24  defense.

25       You know, I mean, any time you advise on a reimbursement

 1   or reimbursement methodology or government inquiry or anything

 2   else that is a long-run of theoretical claim against the

 3   trustee, that's not enough.  The context of the advice must

 4   show that the advice was given for defensive purposes because

 5   of -- because of peril to the trustee, not just some

 6   possibility of peril to the trustee.

 7        There's some examples -- for example, in the Bradley

 8   declaration -- which clearly don't meet the test.  Paragraph 4,

 9   inquiry from a plan sponsor about reimbursement, that's --

10   forget it; that's not defensive.  Paragraph 6, inquiry from a

11   plan sponsor relating to concerns and issues; that's not

12   defensive.  That doesn't relate to imminent or likely

13   litigation against the trustees where they're in peril.

14        So, you know, claim disputes advice is presumptively not

15   defensive, that is -- there're claim disputes all the time.

16   That's not defensive.

17        And, you know -- now, if the claim disputes happens after

18   final denial of the claim administratively, that's a different

19   chapter.  You know, then there's no administrative role.  The

20   next step is the lawsuit.  And then I would say that's

21   different.

22        But, you know, in the log or in the declaration, all of

23   this information, you need to show specifically under this

24   standard and I'll lay it out a little better.

25        Can you-all still hear me?

1          **MR. SIGLER:**  Yes.

2          **THE COURT:**  My computer is warning me you might not be

3    able to.

4        You need to lay this all out in a privilege log and

5    declarations for each document.

6        To put a little bit more of a -- on the, you know, what is

7    administration, you know, almost everything that we're talking

8    about here is administration.  There's a -- one where I'll -- I

9    found one reference in the things that I reviewed that might

10   not be administration.  But I'll talk about that.

11       But, you know, the implementation of existing plan terms

12   rather than the development of new plans, for example, 13622

13   and 13642 -- 13642 relate to an inquiry from a plan sponsor for

14   reimbursement for a member for out-of-network; that's

15   administration.

16       Any documents about how United determines reimbursement

17   amounts for out-of-network service providers is -- is

18   administration, and is subject to the fiduciary exception,

19   unless it's defensive.  And defensive in that context has to be

20   way down the road.  It couldn't be during the administrative

21   process, unless it was specifically called out that:  We're

22   going to protect the trustees because they're going to get sued

23   on this and, thereafter, they should do X.

24       But you're still a fiduciary during the administrative

25   process, so therefore the advice regarding the disputes are

 1   administration of benefits.  It's not -- it's the privilege

 2   exception applies.

 3        So I've reviewed 13597, which is a clawback document.

 4   Actually, we'll get to that in that second.

 5        Crime fraud, there's no -- plaintiffs' showing is woefully

 6   inadequate on objecting to crime fraud exception.

 7        On clawbacks, I've got 13597.  So I've reviewed a number

 8   of clawbacks and I'm going to go through them and tell you my

 9   views on them so that they'll inform you in taking the next

10   step with respect to the clawbacks.  I did not review all of

11   them.

12        13597 is a clawback document which appears to be about how

13   to deal with confidential MutliPlan documents.  That, I think,

14   is about plan administration; you know, what documents can and

15   cannot be shown to members or sponsors.  And so I think it is

16   subject to the fiduciary exception.  There is no actual or

17   imminent litigation, you know -- so, in general, and in fact

18   the discussion is about being able to show the documents the --

19   that had the Viant review recommendation.

20        And so -- and I don't see it -- I didn't -- it wasn't

21   obvious, at least from the face of the document, that this had

22   to do with the litigation that was happening.  This had to do

23   with the general discussion of how we're going to disclose

24   these documents.  And I think that's about administration.

25        So that's my view of on that.

1     Just to go back through -- go through the remainder of the

2   clawback documents that I've actually looked at, and I've got,

3   you know, half a dozen or so here that I looked at.

4     I looked at 10918, which is a document about answering

5   regulators' questions about how they determined the allowable

6   amount for certain out-of-network services.  That sounds like

7   it falls within the fiduciary exception.

8     13633, discussion about how to handle a claim for

9   reimbursement.  You know, it sounds like the claim has not

10  finally been denied.  We're not out of the discussion into the

11  lawsuit phase, so that fiduciary exception would apply.  Except

12  there's a reference -- and this is the one exception I found in

13  these documents as to something that was fiduciary exception --

14  fiduciary exception would not apply to.

15    On page 6, there is a document referencing a correction to

16  a summary plan description.  I think that is a discussion

17  related not to administration, but to the obligations as -- of

18  the settlor to change the fundamental documents in the plan.

19  So I'm not -- so that would be redacted out.  But -- and I also

20  note that on this document there are names and Social Security

21  numbers of plan members.  Those can be redacted.

22    13642 is, I think, is the same -- same basic idea as

23  13633.  It gets really about how to handle a claim for

24  reimbursement that hasn't been finally denied so the fiduciary

25  exception would apply.

1    13785 there's no reference in the documents to a

2  litigation or some issue that may be in litigation.  If this is

3  just a legal issue about plan member reimbursement, or about a

4  particular plan member reimbursement that's still in the

5  administrative process, the fiduciary exception would apply.

6  If this is one where -- and you may, for others, need to go

7  back and get particular declarations clarifying this issue.

8    13 -- no, no, no.

9    14211, the privilege log describes this as an e-mail chain

10  requesting information at the behest of in-house counsel for

11  the purpose of providing legal advice in connection with a

12  pending dispute with the provider.

13    I looked at the document and it -- there's a question

14  about whether the provider is part of a network, and in-house

15  counsel are trying to figure that out.  And it looks like this

16  is a case where the provider is trying to get reimbursement for

17  treatment of a plan member, and that this is not in a

18  litigation stage, so the fiduciary exception looks like it,

19  from the description, from the actual document, it would apply.

20  It doesn't look like there's litigation contemplated or

21  imminent.  This is still in the discussion and administrative

22  phase.

23    You know, there's also information analysis about the

24  provider, I think, in a chart on the first page.  And I think

25  it's actually in another page 2.  You know, that looks like

1   administrative information but is -- and it doesn't -- it

2   wouldn't fall within the exception -- the fiduciary

3   exception -- the fiduciary exception of actual imminent

4   litigation, or imminent.

5        The -- in general, what you can tell from this -- and I

6   think the defensive exception doesn't apply to any dispute that

7   might end up in litigation, but only where litigation is

8   imminent or there.  And this one and in -- with respect to the

9   others that you're asserting defense for, you're going to need

10  to have a declaration from counsel that has enough specifics to

11  make a finding that this is not just purely business

12  information, it's not administration, it is a defensive tack --

13  posture.

14       14446.  The only legal advice is there's one line about

15  legal advice from Tully Abdo, otherwise -- and so that could be

16  redacted.  Otherwise, this doesn't seem like a legal issue.

17       So those are the ones I've gone through.

18       And I'm happy to take any comments or -- you have, any

19  questions you have on those or on anything else in this, and to

20  talk about next steps.

21       So let's start with the plaintiff.

22            MR. MODIANO:  Thank you very much, Your Honor.

23       I think my question -- I really just have one question and

24  it's administrative, because I think Your Honor has been very

25  clear, and it does get to the next steps.

**PROCEEDINGS**

1          As of right now, the fact discovery, the class fact

2     discovery has closed and the depositions were extended, until

3     yesterday.  So -- and we have plaintiffs' class briefing due on

4     August 18, so I can imagine Your Honor understands I've got a

5     little bit of agita about being able to still have documents

6     that -- basically, I would like Your Honor's guidance on

7     balancing all of these things; because obviously our preference

8     would be to have everything resolved before class briefing so

9     that we can have --

10          **THE COURT:**  You're not -- not possible.  Too late.

11          **MR. MODIANO:**  I know.

12          **THE COURT:**  You're just going to go through the class

13     briefing.  You're going to brief that.  You're going to do all

14     this and, maybe down the road, you'll have these documents for

15     some other purpose.  That's my view on this.

16          This got started when it got started.  It went through

17     whatever process it went through.  We are where we are.  I'm

18     not -- there's no chance that it's going to be ready for class

19     briefing, which starts in about two seconds.

20          **MR. MODIANO:**  So any request to extend class briefing

21     would be made to Judge Gonzalez Rogers?

22          **THE COURT:**  Yes.  And I would strongly advise you not

23     to.

24          **MR. MODIANO:**  Okay.

25          **THE COURT:**  But that's up to you.  That's up to you.

**PROCEEDINGS**

1    You know, my view is:  You started this process however

2    you started it, and that's fine; and took whatever time it

3    took; and we needed full briefing on it because we needed full

4    briefing on it.  The briefing on it is inadequate, so we're

5    going to need more steps on it.  And so in order to do that,

6    we're going to have to go through the next steps.

7        I'm not going to slow down the case for that.

8        And if -- you know, if I was advising Judge

9    Gonzalez Rogers, which I'm not, I'd say:  You know, it's not

10   clear to me that any of this makes a hill-of-beans-worth of

11   difference, now that I've actually read everything, read all

12   the number of things, and that you ought to go ahead with your

13   class cert briefing.

14       This is not the kind of -- you know, class cert briefing

15   is different from merits briefing.  For one thing, this may be

16   more important for merits briefing down the road, and that I

17   would keep the trains running.  And you'll have this

18   information later.

19       But, you know, it's up to you what you want to ask

20   Judge Gonzalez Rogers for.  It's obviously up to Judge

21   Gonzalez Rogers how she wants to administer the case.  I know

22   she likes to keep things going at an appropriately brisk pace,

23   so.~.~.~

24            **MR. MODIANO:**  Understood.  And thank you, Your Honor.

25            **THE COURT:**  Okay.  Defense?

1          **MR. SIGLER:**  Your Honor, thank you for the guidance.

2      I guess also a procedural question, but maybe also

3   substantive.  When Your Honor issues the anticipated ruling, do

4   you anticipate staking out the legal framework that you've just

5   described in terms of the fiduciary exception?  I would assume

6   you probably will.

7          **THE COURT:**  Yes.

8          **MR. SIGLER:**  Okay.  So my only question on that, Your

9   Honor, would be to, you know, some of the cases that I will

10  mention got some play in the briefing, but I just ask

11  Your Honor's consideration of two or three cases that bear on

12  this question of the fiduciary exception in defining these

13  categories that Your Honor has sketched out.

14      And we won't surprise Your Honor.  I think we would take

15  maybe a broader view of the fiduciary exception than what you

16  sketched out.  But I'm not going to advocate across the board.

17  I just ask, in the third category, the duty of the settlor,

18  that Your Honor consider the *Pegram* case from the Supreme Court

19  which bears on this question and addresses the fact that there

20  can be close cousins of the settlor function that have to do

21  with establishing programs and structures that are adopted by

22  plans.

23      So this would not be the drafting of plan terms, but it

24  would be the development of programs that are then incorporated

25  into a plan later.  And I think some of the documents that

1    we're dealing with here have to do with that sort of cousin of

2    the settlor function.

3        So if Your Honor would consider that case and consider

4    that cousin and potentially at least leave the door open for

5    some advocacy on that point with further factual development, I

6    would appreciate it.

7        **THE COURT:**  Okay.  Yeah.  I don't -- I don't know

8    enough about the documents because I don't know enough about --

9    because there is not enough description of the documents to

10   know whether -- you know, where in the chronology this fits;

11   whether or not the documents that have to do with the programs

12   that have to do with out-of-network reimbursement, those

13   documents predate the plan descriptions or postdate the plan

14   descriptions or are active part of administration or a part of

15   the process of developing a new plan term.

16       Okay.  But that's -- those are different things.  And I

17   think -- you know, we'll lay out what the rules are in general,

18   the legal rules.  But it's going to be up to you to come up

19   with the affidavits, et cetera, that show if it's appropriate

20   for some of the documents, that they were part of the settlor

21   function rather than part of the function of the administrator.

22       You know, my main concern here was that you all have all

23   that information.  The plaintiffs do not.  So it's up to

24   your -- so your burden to prove it doesn't fall within the

25   fiduciary exception.  So you'll need to come forward with that

1    information in the -- in a way that, you know, so that

2    the Court and counsel for plaintiff can review it.

3        I don't disagree with, you know, that -- it's -- I'm not

4    taking a position on it one way or another on whether or not

5    once you come up with that it -- but we'll look at the *Pegram*

6    case and make sure we take it into account.

7        **MR. SIGLER:**  Thank you, Your Honor.

8        And we will absolutely address Your Honor's concerns about

9    the level of detail in the showing.

10        It's my hope that we can reach some common ground with the

11    plaintiffs on at least some of the entries so that we're not

12    having to do affidavits on all of the documents.  But we'll see

13    where that leads us, Your Honor.

14        **THE COURT:**  Yeah.  I would think you could.  I mean,

15    3,000 of these are brand-new.  I mean, there hasn't been much

16    discussion about those.  There should be detailed discussions

17    about those rather than to this just because they thought the

18    guidance that you get out of this hearing would have

19    implication for those -- and I'm sure it does.  But, you know,

20    the process with respect to winnowing that down to some number

21    that you might actually want to litigate about hasn't really

22    begun yet, because those are -- that's a brand new addition, or

23    it just started.  So that's fine.

24        Any further comments?

25        **MR. SIGLER:**  Your Honor, just a housekeeping item.

1          Yes, Docket Number 146-1 contains all of privilege logs;

2     that's correct.

3          The only exception is, we just clawed back a document that

4     we just discovered, a single document, within the last few

5     days.  So that's -- there's a separate log with one document on

6     it that you haven't seen; but otherwise, that docket entry

7     reflects the logs.

8          **THE COURT:**  Okay.  All right.

9          Well, obviously, I don't know about that recent one.

10    You-all, once we have this guidance, you-all with meet and

11    confer on this as well, and then we'll see where we are when we

12    get through this end of this next process.

13         All right.  Well, I hope in the next week or two,

14    you know, this is not a small, this is not a two-page order on

15    a simple matter.  Obviously, you can see I've got another one

16    hanging fire that is a little further down the road than yours,

17    but we're going to try to get these both out in the next week,

18    week-plus, so that you can move on to the next step.

19         **MR. MODIANO:**  May I ask one more question, Your Honor?

20         **THE COURT:**  Of course.

21         **MR. MODIANO:**  MultiPlan's privilege log was produced

22    to us after this briefing happened so -- I don't want to take

23    up more of this Court's time than is necessary and rebrief the

24    exact same issues before this Court.  It was actually produced

25    after July 15.

1      So if Your Honor would be willing to offer guidance as to

2 how to best proceed with that as well to best -- to most

3 efficiently use the Court -- not take up any more time of the

4 Court than we need to.

5      **THE COURT:**  I'm not sure what you mean.  I've got -- I

6 don't know what the issues are raised by the MultiPlan

7 privilege log.  I don't know issues that -- what issues you

8 would raise with it.  Obviously, my -- it's a slightly

9 different kettle of fish -- but not much -- from the ones that

10 we're ruling on now.  So you'll have some guidance on this

11 about my views.  I assume you'll go through the normal meet and

12 confer process and go into great detail.

13      But, you know, I don't like -- I don't like overly broad

14 assertions of the privilege that just sweep in anything any

15 time a lawyer was referenced.

16      I also don't like the overly broad motions to compel which

17 say: I want all 3,000 of these documents.

18      Because that's not useful either.  Because you don't

19 actually need all 3,000.  I want you to be targeted about what

20 you're looking for.

21      So I expect you both to be very cooperative and go through

22 the meet and confer process on the new privilege log, and come

23 up with what you come up with.

24      **MR. MODIANO:**  Thank you, Your Honor.

25      **THE COURT:**  You'll have an order from us that will

 1   help, hopefully, on the guidance.

 2        Yes, Mr. Caesar.

 3        **MR. CAESAR:**  But there's an issue.  There is no motion

 4   to compel with respect to our privilege log.  And as far as I

 5   understand the local rules, the period for filing the same has

 6   ended, because that is seven days after the discovery cutoff,

 7   which was the 15th.

 8        **MR. MODIANO:**  I would actually disagree with the

 9   reading of local rules.

10        **THE COURT:**  Well, fine.  You guys can chat.  That's

11   not before me.  I'm not dealing with it.  I'm dealing with the

12   motion that's in front of me.  The rest has my orders and my

13   rules, and it's got the local rules, and you can figure it out.

14        You know, it's -- so, you can figure out.

15        Okay.  Anything else?

16        **MR. CAESAR:**  No.  Thank you.

17        **MR. SIGLER:**  No, Your Honor.

18        **MR. MODIANO:**  Nothing from plaintiffs.  Thank you.

19        **THE COURT:**  Okay.  Thank you all.

20        **MR. MODIANO:**  Thank you, Your Honor.

21        **THE CLERK:**  Court stands in recess.

22             (Proceedings adjourned at 10:58 a.m.)

23                      ---o0o---

24

25

## **CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:    Sunday, August 7, 2022

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court