1   MATTHEW M. LAVIN
      matt.lavin@agg.com
2   AARON R. MODIANO
      aaron.modiano@agg.com
3   ARNALL GOLDEN GREGORY LLP
    1775 Pennsylvania Ave. NW, Suite 1000
4   Washington, DC 20006
    Telephone:    202.677.4030
5   Facsimile:    202.677.4031

6   DAVID M. LILIENSTEIN, SBN 218923
      david@dllawgroup.com
7   KATIE J. SPIELMAN, SBN 252209
      katie@dllawgroup.com
8   DL LAW GROUP
    345 Franklin Street
9   San Francisco, CA 94102
    Telephone:    415. 678.5050
10  Facsimile:    415.358.8484

11  *Attorneys for Plaintiffs LD, et al. and the Putative Class.*

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                  **OAKLAND DIVISION**

15  LD, et al.,                          Case No. 4:20-cv-02254-YGR-JCS

16              Plaintiffs,              Hon. Yvonne Gonzalez Rogers

17      v.                              **PLAINTIFFS' NOTICE OF MOTION,**
                                        **MOTION, AND MEMORANDUM OF**
18  United Behavioral Health, Inc., et al.,   **POINTS AND AUTHORITIES IN**
                                        **SUPPORT OF MOTION FOR CLASS**
19              Defendants.              **CERTIFICATION**

20                                       Date:      2022-12-06

21                                       Time:      2:00 p.m.

22                                       Location:  Oakland Courthouse
                                                    Courtroom 1 – 4th Floor
23                                                  1301 Clay Street
                                                    Oakland, CA  94612
24

25

26

27

28

# TABLE OF CONTENTS

Table of Contents ................................................................................................i

Table of Authorities ...........................................................................................ii

NOTICE OF MOTION & MOTION.................................................................1

STATEMENT OF ISSUES TO BE DECIDED .................................................1

Memorandum of Points & Authorities ...........................................................1

I. RULE 23 STANDARD..................................................................................1

II. INTRODUCTION ........................................................................................2

       Proposed Class Definition ...................................................................2

III. SUMMARY OF PERTINENT FACTS.......................................................3

IV. PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 23
      REQUIREMENTS.....................................................................................9

     A.     The Facts in this Case Satisfy the Requirements of Rule 23(a)......................9

          1.     The Classes Are Sufficiently Numerous................................................9

          2.     Commonality Is Satisfied..................................................................10

          3.     Plaintiffs' Claims Satisfy the Typicality Requirement.....................12

          4.     Plaintiffs' and their Counsel Satisfy the Adequacy
               Requirements of Rule 23(a)...............................................................14

          5.     The Proposed Classes Are Ascertainable ..........................................15

     B.     The Requirements of Rule 23(b) Are Satisfied .............................................15

          1.     The RICO Claims Are Appropriate for Class Certification
               under Rule 23(b)(2) & (b)(3)............................................................16

          2.     The ERISA Claims Are Appropriate for Class
               Certification Under Rule 23(b)(1), (b)(2) & (b)(3)...........................20

V. CONCLUSION.............................................................................................25

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alday v. Raytheon Co.*, 619 F.Supp.2d 726 (D.Ariz. 2008).............................................. 19

4

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................... 1

5

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ..................................... 2

6

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................ 10

7

*Arnold v. United Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) .................................... 20

8

*Baird v. Blackrock Institutional Tr. Co., N.A.*, 2020 WL 7389772 (N.D. Cal. Feb. 11, 2020) .... 18

9

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488 (N.D. Cal.
    2010), *modified sub nom. Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273
    F.R.D. 562 (N.D. Cal. 2011).......................................................................... 18

10

11

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015) ............................................... 16

12

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).......................................................... 1

13

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)................................................. 15

14

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................................... 13

15

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir.1990)...... 9

16

*Castillo v. Bank of Am., NA*, 980 F.3d 723 (9th Cir. 2020) ................................................. 9

17

*Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) ..................... 2

18

*Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014)...................................................... 16

19

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................... 14, 22

20

*Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486 (N.D. Cal. 2017) .......................... 19

21

*Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571 (9th Cir.2010).......................................... 9, 11, 14

22

23

*Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011), *aff'd in part,
    vacated in part, remanded*, 647 F. App'x 76 (3d Cir. 2016)....................................... 15

24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 21

25

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)................................................ 11

26

27

*Hart v. Colvin*, 310 F.R.D. 427 (N.D. Cal. 2015)............................................................ 13, 20

28

*Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 148 (C.D. Cal. 2021)...................................... 10

*In re Heritage Bond Litig.*, 2004 WL 1638201 (C.D. Cal. July 12, 2004) ..................................... 1

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) ........................... 9

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ................................................... 11, 12, 15

*Kazda v. Aetna Life Ins. Co.*, 2022 WL 1225032, at *6 (N.D. Cal. Apr. 26, 2022) .................... 19

*Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191 (S.D. Ohio 2002) ......................... 19

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) .......................................... 15

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152
    (9th Cir. 2001).......................................................................................................................... 13

*Lynch v. Rank*, 604 F. Supp. 30 (N.D. Cal.), <u>aff'd</u>, 747 F.2d 528 (9th Cir. 1984), *opinion
    amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) ................................................................. 13

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004), *amended in part*, 2012 WL
    3070863 (N.D. Cal. July 26, 2012) ......................................................................................... 20

*Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948 (9th Cir. 2016), *as amended on denial of
    reh'g and reh'g en banc* (Aug. 18, 2016) .............................................................................. 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ................. 10, 16, 17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). 2,
    15, 19

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982)................................................. 9

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943
    F.3d 1243 (9th Cir. 2019) ....................................................................................................... 15

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......................................................................... 19

*Peters v. Aetna Inc.*, 2 F.4th 199, 243 (4th Cir. 2021), *cert. denied sub nom. OptumHealth Care
    Sols. v. Peters*, 142 S. Ct. 1227 (2022) ................................................................................. 10

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir.2010) ..................................................................... 9

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)................................................................... 11

*Schuman v. Microchip Tech. Inc.*, 2020 WL 887944 (N.D. Cal. Feb. 24, 2020) ................. 10, 18

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005), *modified*, 2007 WL
    46785 (N.D. Cal. Jan. 5, 2007) .............................................................................................. 11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................ 2

*Tawfilis v. Allergan, Inc.*, 2017 WL 3084275 (C.D. Cal. June 26, 2017) ..................... 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................... 9, 14, 21

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................................ 13

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) ........................... 9

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir.2010) ................... 9, 21

**Statutes**

18 U.S.C. § 1962(c) ............................................................................................. 3

18 U.S.C. § 1962(d) ............................................................................................. 3

18 U.S.C. §§ 1341 & 1343 ................................................................................... 3

29 U.S.C. § 1132(a)(1)(B) ........................................................................... 3, 10, 18

29 U.S.C. § 1132(a)(3) ................................................................................. 3, 10, 18

ERISA § 502(a)(1)(B) ................................................................................... 3, 10, 18

ERISA § 502(a)(3) ......................................................................................... 3, 10, 18

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 1, 2

Fed. R. Civ. P. 23(a) ........................................................................................... 8, 9

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 12

Fed. R. Civ. P. 23(b) .................................................................................... passim

**NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 6, 2022, at 2 p.m. in Courtroom 1 – 4th Floor before the Honorable Yvonne Gonzalez Rogers, Plaintiffs LD, DB, BW, RH, and CJ ("Plaintiffs") in the above-captioned actions will and hereby do move for class certification pursuant to Federal Rule of Civil Procedure 23.

The relief Plaintiffs request in this motion is an order: (1) certifying the proposed Class defined below; (2) appointing Plaintiffs representatives of the Class; and (3) appointing Plaintiffs' counsel, Arnall Golden Gregory, LLP, as class counsel for the Class, as well as any other relief that this Court deems appropriate and proper. This motion is brought pursuant to Federal Rule of Civil Procedure 23, and is supported by this Notice of Motion, Motion, and accompanying Memorandum of Points and Authorities, the Declaration of Aaron R. Modiano and all exhibits thereto, all pleadings on file in this lawsuit, and such other support as Plaintiffs may present to this Court.

**STATEMENT OF ISSUES TO BE DECIDED**

The issues for this Court to decide are: (1) whether the Court should certify the proposed Class under Fed. R. Civ. P. 23(b)(1)(A), 23(b)(2), and/or 23(b)(3), for class action of the proposed Class; (2) whether the Court should appoint the Plaintiffs as Class representatives for the Class; and (3) whether the Court should appoint Arnall Golden Gregory, LLP as Class Counsel for the Class.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    RULE 23 STANDARD**

Federal Rule of Civil Procedure 23 sets forth the standards for class certification. To qualify for class certification, a class must meet the requirements of Rule 23(a) and one of three alternatives of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). At this stage of litigation, extensive evidence is not required. *See In re Heritage Bond Litig.*, 2004 WL 1638201, at *2 (C.D. Cal. July 12, 2004). Instead, Plaintiffs must enable the Court to make a "reasonable judgment" (*see Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)) and the Court

1

1  need not weigh competing evidence in determining class certification. *See Chun-Hoon v. McKee*

2  *Foods Corp.*, 2006 WL 3093764, at *4 (N.D. Cal. Oct. 31, 2006) (*citing Staton v. Boeing Co.*,

3  327 F.3d 938, 954 (9th Cir. 2003)). The Supreme Court has held, "Rule 23 grants courts no

4  license to engage in free-ranging merits inquiries at the certification stage. Merits questions may

5  be considered to the extent—but only to the extent—that they are relevant to determining

6  whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut*

7  *Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). In evaluating whether Rule 23's prerequisites

8  are met, the Ninth Circuit has recently clarified that a preponderance of the evidence standard

9  applies. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665

10  (9th Cir. 2022).

11  **II.    INTRODUCTION**

12      Plaintiffs and the putative class were directly injured by United and MultiPlan's unlawful

13  scheme to underpay valid, medically necessary claims through the fraudulent and deceptive use

14  of the Viant OPR methodology. Plaintiffs and the putative class members' reimbursement claims

15  for out-of-network, intensive outpatient therapy ("IOP") for substance use disorders were

16  submitted to United with HCPCS H0015 and/or revenue code 0906.[1] Within this overall group,

17  Plaintiffs have asserted claims under ERISA and RICO that are appropriate for class

18  certification. Plaintiffs propose the following class definition:

19          **Proposed Class Definition**

20      *Any member of a health benefit plan administered or issued by United and governed by*
        *ERISA, where the member's plan utilized United's 'Reasonable and Customary' program*
21      *for out-of-network benefits and whose claim(s) for intensive outpatient services billed with*
        *HCPCS H0015 and/or revenue code 0906 were priced by MultiPlan's Viant methodology,*
22      *during the class period January 1, 2015 to the present.*

23

24

25
_____

26  [1] MultiPlan's ███████████████████████████████████████████████████

27  ████████████████████████████████████████████████ MPI-0009021, attached as Exhibit

28  "A."

Plaintiffs' Notice of Motion, Motion, and Memorandum
of Points and Authorities for Class Certification

1  The claims at issue in this litigation are those whose pricing either have been or will be

2  processed with the Viant OPR methodology. As such, these are valid, payable claims that have

3  not been denied on the basis of medical necessity or otherwise. These claims are processed

4  through the Viant OPR methodology as having HCPCS code H0015. (*See* Exhibit "A.") For

5  these claims, the Viant OPR methodology is fraudulently presented to providers, plan sponsors,

6  and patients as "allow[ing] a direct comparison between the facility's billed charge and the

7  facility charges for the same service within the geographic area." (*See* MPI-0006015, attached as

8  Exhibit "B.") Perpetuating and disseminating this untrue statement, and representations that

9  flowed from it, to patients and providers for IOP services is at the heart of this litigation.

10 **III.    SUMMARY OF PERTINENT FACTS**

11      Plaintiffs seek equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (TAC

12 ¶¶511-524 (Count V), ¶¶525-531 (Count VI)), allege improper denial of benefits under ERISA §

13 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (TAC ¶¶491-502 (Count III), ¶¶503-510 (Count IV)),

14 and remedies for Civil RICO, 18 U.S.C. §§ 1341 & 1343, violations under 18 U.S.C. § 1962(c)

15 (TAC ¶¶465-484 (Count I)) and 18 U.S.C. § 1962(d) (TAC ¶¶485-490 (Count II)) against United

16 and MultiPlan for their systematic, fraudulent use of Viant OPR as co-schemers, resulting in

17 systematic, nationwide underpayments of out-of-network behavioral health claims for intensive

18 outpatient therapy ("IOP"). The Plaintiffs and the putative Class all participate in ERISA

19 governed health plans administered by United with out-of-network benefits whose behavioral

20 health claims for intensive outpatient therapy were priced using Multiplan's pricing tool, the

21 Viant Outpatient Review ("Viant OPR") methodology.

22      For all claims at issue, the patients' providers verified insurance benefits, as the patients'

23 authorized representatives, prior to providing treatment during a 'verification of benefits'

24 ("VOB") call with United's agents. United's agents verified benefits only after receiving

25 authorization from the plan member their providers were authorized to do so. (*See* Deposition

26 Transcript of Denise Strait ("Strait Depo"), at 50:22-51:10, 68:6-10 (Strait Depo. excerpts

27 attached as Exhibit "C")); (Transcribed VOB call excerpts attached as Exhibit "D"). During the

28

VOB calls, United's agents followed the same procedures and script[2] for United's 'Reasonable and Customary' program, relying on information from United's Internal Benefits at a Glance ("IBAAG") system (*see* (30(b)(6) Deposition Transcript of Rebecca Paradise ("Paradise 30(b)(6) Depo.") at 244 (Paradise 30(b)(6) (Depo. excerpts attached as Exhibit "F"); Strait Depo at 36:1-6; IBAAG excerpts, attached as Exhibit "G"). United's agents relied upon the IBAAG system information that was pulled up for each claim when they stated during the VOB process that claims for mental health / substance use disorder (MH/SUD) treatment would be reimbursed according to a specified percentile of the usual and customary rates of similar providers providing the same service in the same geographic area. (*See* Exhibit "D", compilation of VOB call recording excerpts). United's agents also stated, using the same IBAAG information, what percentage of that usual and rate would be reimbursed once the out-of-pocket maximum was reached. None of the IBAAG information referenced by United's agents identified that Facility R&C would be determined under a different methodology or would use a different percentile than Professional R&C. (*See* Exhibit "G", composite of IBAAG information produced by United). To the contrary ███████████████████████████████████████████████████ ████████████████████████████ (September 10, 2018 e-mail from Radames Lopez to Cara Rinehart, UHC000131784, attached as Exhibit "H"). Because out-of-network providers have no access to the actual ERISA plans, United knew and intended that providers rely on the information provided to them during VOB calls and, in turn, knew their members relied upon what was told to the providers during the VOB calls when deciding whether to proceed with treatment (Franco Depo. at 46:17-47:18 (excerpts attached as Exhibit "I"); Strait Depo. at 91:10-13,[3] 186).

For the entire class, each and every healthcare benefits plan provided for the reimbursement out-of-network claims according to United's 'Reasonable and Customary'

---

[2] United's out-of-network, standard operating procedures produced at UHC000197899-UHC000197958, attached as Exhibit "E."

[3] "███████████████████████████████████████████████████ ███████████████████████."

program (*see* Paradise Depo., at 27:1-4; Lopez Depo., at 23:16-20, 32:2-6-33:19, 37:19-23 (depo excerpts attached as Exhibit "J"); Bradley Depo., at 43:24-44:9, 48:15-49:1, 59:12-25 (depo excerpts attached as Exhibit "K")). The plan language provided to the Plaintiffs and the putative Class members indicated that the services would be paid at 'usual and customary' rates based upon the charges of similar providers providing the same services in the same geographic area. (*See* Exhibit "L", composite exhibit of summary plan description excerpts produced by United). Usual and customary, and its congeners, are regularly used and commonly understood terms within the industry. They are generally understood to mean a rate similar to the publicly available rate published by FAIR Health that represents the 80th percentile of similar rates charged by similar providers in the same geographic area. (*See* Franco Depo. at 123:8-124:3). FAIR Health is "an independent nonprofit that collects data for and manages the nation's largest database of privately billed health insurance claims. . . . FAIR Health was established to bring transparency to healthcare costs and health insurance information."[4] Under HCPCS code H0015, FAIR Health provides publicly accessible, local, rates for IOP treatment. All of the claims at issue in this litigation are facility claims processed by Viant OPR with H0015. (*See* Exhibit A; Crandell Depo. at 114:14-117:15 (Crandell Depo excerpts, attached as Exhibit "M")).[5]

Instead of processing and reimbursing the IOP claims at issue, United and MultiPlan, together, used the Viant OPR methodology to derive a fraudulent, deceptive rate that was a small fraction of the quoted rate, well below any plausible understanding of the usual and customary rate that was then repeatedly represented to both patients and providers as a usual and customary rate paid according to patient's plan's terms.[6] The language contained in the patient's summary

---

[4] About us: Fair health, About Us | FAIR Health, https://www.fairhealth.org/about-us (last visited Aug 16, 2022).

[5] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ UHC000091544, March 4, 2020 E-mail from Gregory Tunnell, attached as Exhibit "O."

[6] *See* Composite EOBs as Exhibit "P"; Composite PRAs as Exhibit "Q"; Composite EOMs as Exhibit "R"; VOB recordings transcript, Exhibit "D".

1    plan description is the language referred to by United as 'plan terms.' (*See* Paradise 30(b)(6)

2    Depo. at  170:19-176:3; Exhibit 27 to Paradise 30(b)(6) Depo. at UHC000007628 (attached as

3    Exhibit "N") █████████████████████████████████████████████

4    ████████████████████████████). This language was most often drafted by

5    United and, in every case, was approved by United so that the reasonable and customary

6    program could be applied in the same, systematic way by United's automated claim processing

7    systems. (*See* Paradise Depo., at 46:5-18, 47:23-25, 48; Lopez Depo., at 56:9-57:24). This

8    program was identified as the 'Reasonable and Customary Program" by Rebecca Paradise and

9    was set up within United and MultiPlan's claim systems to apply the Viant OPR methodology

10   consistently and uniformly, regardless of the wording contained within the plan documents. (*See*

11   Paradise Depo. at 265:3-19; Lopez Depo., at 74:14-23 and 212:14-16). This program provided

12   automated claim processing and pricing by United and MultiPlan using Viant OPR.[7]

13       After the claims were processed and priced, the members received Explanations of

14   Benefits ("EOBs") from United that stated their claims were priced using Viant and directing

15   them to contact Viant at a dedicated phone number with any questions as to the reimbursement

16   methodology and accompanying 'CY' remark code. (*See* EOB composite Exhibit "P"). Providers

17   received Provider Remittance Advices ("PRAs") with the same information and direction to

18   contact Viant and the same 'CY' remark code. (*See* PRA composite Exhibit "Q"). The 'CY'

19   remark code was used by the systems at United and MultiPlan to identify that the claim was

20   priced by Viant and to determine the explanation language on the EOB and PRA. (*See* Kienzle

21   Depo., at 327:1-5; Paradise 30(b)(6) Depo., at 275:9-276:10).

22       Patients and providers also received a Patient Advocacy Department ("PAD") letter with

23   both United and Viant on the letterhead, generated and sent by MultiPlan (*see* Paradise 30(b)(6)

24   Depo., at 68:21-72:24; Kienzle Depo., at 136:2-7, excerpts attached as Exhibit "S") directing

25   _____

26   [7] *See, for example,* June 26, 2019 email from Mark Edwards at MultiPlan ███████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████ at UHC000091861, attached as Exhibit "U."

Plaintiffs' Notice of Motion, Motion, and Memorandum
of Points and Authorities for Class Certification

1    patients and providers to contact Viant at a dedicated number regarding the reimbursement

2    amount and stating that the reimbursed amounts represented the usual and customary amounts

3    charged by similar providers for the same services in the same geographic area. If patients or

4    providers contacted United upon learning that their claim was priced by Viant, they were also

5    directed by United's agents to contact Viant. (*See* Declaration of Creyna Franco In Support of

6    Plaintiffs' Reply In Opposition to Defendants' Response to Plaintiffs' Motion for a De Novo

7    Standard of Review, at ¶13; Franco Depo., at 159:21-160-8 ("Q. And who tells you to contact

8    Viant? A. United Healthcare -- or United Behavioral Health in this case."); *see* Paradise 30(b)(6)

9    Depo., at 69:2-5, 313:7-25; Kienzle Depo., at 115:3-22; Bradley Depo., at 167:5-168:15, 175:9-

10   176:2; Lopez Depo., at 91-100; Mohler Depo. Transcript, at p. 76:11-77:11). When contacted by

11   providers, Viant would often send the provider, and only the provider —not the patient, an

12   Explanation of Methodology ("EOM") that again represented the reimbursement amount as

13   representing the usual and customary charges of similar providers for the same service in the

14   same geographic area. (*See* EOM composite Exhibit "V").

15          None of this was true for the IOP claims at issue. From the beginning of the class period

16   until late 2018, the Viant OPR methodology took the H0015 claims from the CMS standard

17   analytical file ("SAF"), ████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████ (*See* Crandell Depo., at 114:6-122:20). The

20   SAF file contains Medicare data for Medicare enrollee claims, and consists of a population that

21   is age 65 and older, for claims reimbursed by CMS. IOP treatment, billed as H0015 on a UB-04

22   form, is not covered by Medicare. (*See* Crandell Depo. 94:20-95:24). Despite this, and without

23   any knowledge of the contents or specifics of the H0015 claims contained within the SAF

24   (Crandell Depo., at 127, 136), Viant OPR was used to price tens of thousands of H0015 claims.

25

26   ────────────────────────

27   [8] *See* MPI-0012799, September 21, 2018 e-mail from Karen Beckstead to Tom Ralston, both MultiPlan employees,
     ████████████████████████████████████████████████████ attached as Exhibit "W".

28

Plaintiffs' Notice of Motion, Motion, and Memorandum
of Points and Authorities for Class Certification

The H0015 claims priced by Viant OPR from late 2018 on are equally deceptive. Those claims rely upon ████████████████████████████████████████[9] and using that data directly to determine the price for H0015 claims. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ (*See* report of Robert L. Ohsfeldt, PhD., at pg. 5, 18, attached as Exhibit "X"). Dr. Ohsfeldt analyzed the claim data produced to Plaintiffs and opined, ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (¶10.4).

    Dr. Ohsfeldt analyzed Viant OPR's use of SAF data for H0015 (¶¶ 6.5-6.7) and ████ ███ ((¶¶ 6.8-6.12) and found both lacking and not appropriate to generate a local UCR for H0015 claims. He also opined that Viant OPR lacked external validity, stating "████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████" (¶ 7.2); however, his analysis revealed ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████" (¶ 7.3) and "████

████████████████████████████████████████████████" (¶ 7.4). During this timeframe with their demonstrably fraudulent methodology, United and MultiPlan, together, used their enterprise to wrongfully obtain and assess fees on hundreds of millions of dollars "savings" with the "savings" amount then becoming the financial responsibility of the patient owed to the provider.

---

[9] From the end of 2018 onwards ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ MPI0012800.

[10] Exhibit 14 to Kienzle Depo., at MPI0006013; Crandell Depo., at 125:1-128:4.

1   (*See* Kienzle Depo., at 41:17-42:25; Franco Depo., at 77:11-16; Exhibit 15 to Strait Depo.; Strait

2   Depo., at 146:18-149:11; Crandell Depo., at 90:1-91:9). Consistent with Dr. Ohsfeldt's findings

3   and opinions, Plaintiffs' expert Mark A. Hall opined "If, as alleged, the Defendants used an

4   inappropriate data source and methodology for determining payment amounts, this defect likely

5   affected insurance claims for all (or almost all) out-of-network care for intensive out-patient

6   (IOP) treatment that the Defendants processed." (¶1, Report of Mark A. Hall, attached as Exhibit

7   "Y").

8          For the entire Facility R&C program, United took in hundreds of millions of dollars of

9   "savings" annually.[11] This scheme has been continuous since at least 2015, continues in

10  operation to this day, and will continue into the future[12] without court intervention. For all of the

11  reasons set forth below, it is appropriate for the Court to certify Plaintiffs' ERISA and RICO

12  claims for class treatment.

13  **IV.    PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 23 REQUIREMENTS**

14       **A. The Facts in this Case Satisfy the Requirements of Rule 23(a)**

15          Rule 23(a) "requires a party seeking class certification to satisfy four requirements:

16  numerosity, commonality, typicality, and adequacy of representation." *Wang v. Chinese Daily*

17  *News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

18  338, 347 (2011)). As shown below, each of these requirements is satisfied.

19          **1.    The Classes Are Sufficiently Numerous**

20          The numerosity requirement is met if the Court should determine that the proposed Class

21  "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l).

22

23  _____

    [11] ████████████████████████ *See* UHC000108866, produced as a native, Excel spreadsheet "Copy of 20200326 - United ASO

24  ████████████ (UHN  UHN NL) OPR Percentile Reduction Detail.xlsx"

25  [12] *See* Lopez Depo. Transcript, at p. 225 ("██████████████████████████████████████████

26  ████████████████████████████████████████"); Paradise 30(b)(6) Depo., at. 121-
    122). However, the credibility of United's witness is somewhat strained as the answer appears less than fully truthful

27  when Lea Miro, Director of Underwriting ASO New Business wrote in an e-mail dated November 19, 2020, "████

    ████████████████" UHC000178695).

28

Case No. 4:20-cv-02254-YGR-JCS                    Plaintiffs' Notice of Motion, Motion, and Memorandum
                                                  of Points and Authorities for Class Certification

1   Numerosity may be satisfied in classes "with fewer than 100 members, and as few as 39." *In re*

2   *Syncor*, 227 F.R.D. at 343 (*citing Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & n.10

3   (9th Cir. 1982)). Even when "the exact size of the class is unknown but general knowledge and

4   common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-*

5   *Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Here, the claims reports produced

6   by the Defendants each contain more than ███████████████ of claim data. (Ohsfeldt

7   report ¶¶ 3.1-3.2). As Plaintiffs' expert Alexandra Lahav opined, "[t]here is little need to discuss

8   the numerosity requirement in a case like this.  As the Newberg and Rubenstein Treatise

9   recognizes, classes over 40 individuals are routinely certified.  1 Newberg and Rubenstein on

10  Class Actions § 3:12 (6th ed.) ('a class of 40 or more members raises a presumption of

11  impracticability of joinder').  My understanding is that the class here exceeds ████████

12  plaintiffs who would be impracticable to join individually." (¶34 of Report of Alexandra Lahav,

13  attached as Exhibit "Z"). Accordingly, Plaintiffs submit that the purported Class satisfies the

14  numerosity requirement of Rule 23(a)(l).

15      **2.      Commonality Is Satisfied**

16      Under Rule 23(a)'s commonality requirement, there must be "common *questions* of law

17  and fact". *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir.2010) (*en banc*) (emphasis

18  in original). However, "answering those questions," on the other hand, "is the purpose of the

19  merits inquiry, which can be addressed at trial and at summary judgment." *Id.* There is no

20  requirement that members of the proposed class "share every fact in common or completely

21  identical legal issues". *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). No more than a

22  single common question is required for the commonality requirement of Rule 23(a)(2) to be

23  satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Wang v. Chinese Daily*

24  *News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). Commonality demands only that "class members'

25  'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous

26  and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

27  F.3d 1168, 1172 (9th Cir.2010) (*quoting Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

28  917 F.2d 1171, 1175 (9th Cir.1990)). Rule 23(a)'s "commonality inquiry does not require

-10-

Case No. 4:20-cv-02254-YGR-JCS                    Plaintiffs' Notice of Motion, Motion, and Memorandum
                                                  of Points and Authorities for Class Certification

1  plaintiffs to demonstrate the 'predominance' of common issues over individualized ones, nor the

2  'cohesion' of the class." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020).

3  Commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that

4  affects all of the putative class members". *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

5  2001). Plaintiffs' proposed class satisfies this requirement as, overall, Plaintiffs' lawsuit

6  challenges the system-wide use of Viant OPR for IOP claims.

7      For Plaintiffs' RICO claims, the common questions of whether Defendants entered into

8  the conspiracy alleged in the Complaint and whether their actions violate the RICO statute (TAC

9  ¶¶ 465-490) meet the commonality requirement. *See, for example, Negrete v. Allianz Life Ins.*

10  *Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). Similarly, Plaintiffs ERISA claims for

11  equitable and injunctive relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and improper

12  denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) are appropriate for

13  class treatment. *See, e.g., Schuman v. Microchip Tech. Inc.*, 2020 WL 887944, at *4 (N.D. Cal.

14  Feb. 24, 2020).

15      Plaintiffs' claims for equitable and injunctive relief under ERISA § 502(a)(3) all turn on

16  common questions of law and fact regarding United and MultiPlan's fiduciary obligations to act

17  in the best interests of plan members by processing claims at a fair and accurate 'usual and

18  customary' rate, to communicate the means by which such rate was calculated, and whether

19  United and MultiPlan did so in a fraudulent manner. (TAC ¶¶ 525-531). In situations such as

20  this, "varying EOBs, plans, and damages[, w]hile these distinctions among proposed class

21  members may affect the dollar amount or scope of the available remedies, they do not reflexively

22  defeat class certification when the underlying harm derives from the same common contention . .

23  . we fail to see how surcharge, disgorgement, or declaratory and injunctive relief would

24  necessarily be foreclosed here in a class context." *Peters v. Aetna Inc.*, 2 F.4th 199, 243 (4th Cir.

25  2021), *cert. denied sub nom. OptumHealth Care Sols. v. Peters*, 142 S. Ct. 1227 (2022).

26      Plaintiffs' claim for improper denial of benefits under ERISA § 502(a)(1)(B) similarly

27  has common questions of law and fact. Class certification is appropriate when an ERISA §

28  502(a)(1)(B) claim "has the capacity "to generate common *answers* apt to drive the resolution of

the litigation" *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 148 (C.D. Cal. 2021) (emphasis in original, citation omitted). Plaintiffs' ERISA § 502(a)(1)(B) claim involves the common question as to whether the pricing of Plaintiffs' and the putative Class' claims priced through Viant OPR produced a valid, 'usual and customary' rate. (TAC at ¶¶ 491-510).

Professor Lahav opined on commonality stating, "[t]he commonality requirement is also easily met here for both ERISA and RICO claims. Fed. R. Civ. P. 23(a)(2). Commonality requires that the plaintiff demonstrate that a 'common contention' that is 'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' <u>Wal-Mart Stores, Inc. v. Dukes,</u> 564 U.S. 338, 350 (2011). The core common contention here is that the Viant OPR pricing methodology did not yield usual, customary, and reasonable rates but rather underpriced claims. This is a factual contention that is the same for each and every class member and is central to the validity of their claims." (¶35). Accordingly, the commonality requirement is met for all of Plaintiffs' claims.

### 3.    Plaintiffs' Claims Satisfy the Typicality Requirement

"[T]ypicality and commonality are similar and tend to merge . . . .Commonality examines the relationship of facts and legal issues to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* "Differences in the amount of harm sustained 'do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong.'" *Tawfilis v. Allergan, Inc.*, 2017 WL 3084275, at *9 (C.D. Cal. June 26, 2017) (citation omitted). Under the typicality requirement, a court examines "the defendants' conduct and plaintiff's legal theory", not the injury caused to the plaintiff, and does not require that "all class members suffer the same

1    injury as the named class representative." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391,

2    396 (N.D. Cal. 2005), *modified*, 2007 WL 46785 (N.D. Cal. Jan. 5, 2007) *quoting Rosario v.*

3    *Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

4           The named Plaintiffs and putative Class members have all suffered a RICO injury that

5    resulted from the activity and operation of the RICO enterprise; it is irrelevant if the injuries

6    were the result of different predicate acts, as the injuries are all the result of the same scheme.

7    *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) ("[T]ypicality [is] satisfied

8    where plaintiff's 'injuries stem from the same scheme, although the specific predicate act that

9    caused her injury may differ from the acts that caused injury to other class members. . . .

10   [Plaintiff's] allegation of harm based on some of the activities comprising the RICO violation is

11   sufficient.'"). Each named Plaintiff and putative Class member has financial responsibility for

12   the difference between their provider's billed charges and the Viant OPR determined

13   reimbursement amount. The Viant OPR amount is below the 'usual and customary' amount that

14   should have been reimbursed. Thus, whether patients were harmed paying this amount out-of-

15   pocket (as the Class Representatives and many members of the putative Class did) or incurred

16   injury in the form of owing the balance amount (as all Class Representatives members of the

17   putative Class did), or even simply endured the time and stress of attempting to have their claim

18   properly reimbursed, they suffered a concrete RICO injury. *Id.* at 1108 ("It is true that

19   Campbell's account was not actually debited because it was closed, while members of the class

20   did have funds debited from their bank accounts without authorization. Instead, Campbell alleges

21   damages in the form of time taken off from work and payment to an assistant to research her

22   financial records upon receiving the Notice of Debt.")

23          Plaintiffs' ERISA claims likewise meet the typicality requirement. Plaintiffs' claims were

24   all processed and priced through Viant OPR, each having a remark code of "CY" (*see*

25   Declaration of Creyna Franco In Support of Plaintiffs' Reply in Opposition to Defendants'

26   Response to Plaintiffs' Motion for a De Novo Standard of Review, at ¶ 7; Franco Depo., at

27   127:22-129:14) On this aspect, Professor Lahav opined, "[t]he named plaintiffs here are typical

28   of the class as a whole because they all submitted claims for reimbursement for out-of-network

1    intensive behavioral therapy from United and their claims for treatment were underpriced. . . .

2    Here the sample evidence shows ████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████, providers reasonably relied on this information

6    (as evidenced by that same testimony), and the class members claims were all processed using

7    uniform methodology contained in a single database – the Viant OPR" (¶36).  Accordingly, the

8    typicality requirement is met.

9        **4.    Plaintiffs and their Counsel Satisfy the Adequacy Requirements of Rule 23(a)**

10       Adequacy of representation has two requirements: (1) the representative must have

11   interests common with the unnamed members of the class, and (2) it must be shown that the

12   representatives-through qualified counsel-will vigorously prosecute the interests of the class.

13   Fed. R. Civ. P. 23(a)(3).

14       **a)    Plaintiffs Are Adequate Class Representatives**

15       Class members are adequate class representatives when (1) they have a sufficient interest

16   in the outcome of the case to ensure vigorous advocacy, and (2) there is no reason to believe that

17   a conflict exists between the class representatives and the other putative class members. The

18   underlying merits of any particular class representative's claim have no bearing on their ability to

19   act as class representatives. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). In the

20   Ninth Circuit, "the adequacy-of-representation requirement is satisfied as long as one of the class

21   representatives is an adequate class representative." *Loc. Joint Exec. Bd. of Culinary/Bartender

22   Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, fn.2 1162 (9th Cir. 2001). Plaintiffs have all

23   participated in the discovery process by producing documents, responding to Defendants'

24   interrogatories, and sitting for depositions. They have actively participated in the prosecution of

25   this matter so far and will continue to do so. Looking at this requirement, Professor Lahav opined

26   "the implicit requirements of Rule 23(a), particularly of an objectively identifiable class, are met

27   here, as well as the explicit requirements of Rule 23(a)(1)-(4).  Once the threshold requirements

28

-14-

1  are met, the class must also be appropriate for certification under one of the categories of Rule

2  23(b)." (¶40). Accordingly, the named Plaintiffs are adequate class representatives.

3          **b)**     **Plaintiffs' Attorneys Are Experienced and Qualified Class Counsel**

4          Plaintiffs' attorneys have successfully prosecuted nationwide actions against insurance

5  companies for ERISA and RICO violations.[13] There is no conflict with Plaintiffs' counsel's prior

6  representation of healthcare providers in the previously dismissed *PRS v. United* matter, and the

7  court specifically avoided any potential conflict in dismissing that matter. Further,"[m]ere

8  speculation as to conflicts that may develop at the remedy stage is insufficient to support denial

9  of initial class certification." *Hart v. Colvin*, 310 F.R.D. 427, 436 (N.D. Cal. 2015). Accordingly,

10  Plaintiffs' attorneys are experienced and qualified to serve as class counsel.

11       **5.**     **The Proposed Class Is Ascertainable**

12          The proposed Class is ascertainable and defined by objective criteria. The exact number

13  of persons in the proposed Class does not need to be determined for a class to be certified. *See*

14  *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal.), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion*

15  *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) (collecting cases). Further, as the Ninth Circuit

16  stated, "the language of Rule 23 neither provides nor implies that demonstrating an

17  administratively feasible way to identify class members is a prerequisite to class certification."

18  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). The proposed Class is

19  defined by objective criteria as set forth *supra* and is ascertainable.

20  **B.  The Requirements of Rule 23(b) Are Satisfied**

21          To be certified as a class, one of the three requirements under Rule 23(b) must be met.

22  "Rule 23(b)(1) allows a class to be maintained where 'prosecuting separate actions by or against

23  individual class members would create a risk of' either '(A) inconsistent or varying

24  adjudications', or '(B) adjudications . . . that, as a practical matter, would be dispositive of the

25  interests of the other members not parties to the individual adjudications or would substantially

26  impair or impede their ability to protect their interests.'" *Wal-Mart Stores, Inc. v. Dukes*, 564

27  _____

28  [13] *See* Exhibit AA

-15-

U.S. 338, 346 n. 2 (2011). Rule 23(b)(2) allows a class to be maintained "when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Wal-Mart Stores, Inc* 564 U.S. at 345–46. "Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc.* 564 U.S. at 346 n. 2. The predominance requirement is unique to (b)(3) and not required of (b)(1) or (b)(2). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

### 1. The RICO Claims Are Appropriate for Class Certification under Rule 23(b)(2) & (b)(3)

#### a) Certification Under Rule 23(b)(2)

As the Supreme Court stated, "relief to each member of the class," does not require that the relief to each member of the class be identical, only that it be beneficial. *Dukes*, 131 S.Ct. at 2557–58. Here, the injunctive relief sought under RICO (TAC at ¶¶ 465-490) will benefit *all* members of the putative Class. Professor Lahav opined that the issues that support both ERISA and RICO class certification are similar under Rule 23(b)(2), opining "[t]he RICO injunction is appropriately certified under 23(b)(2) for similar reasons.  The injunction sought would arise out of defendants' uniform (and collusive) conduct towards all class members – in particular [using] Viant OPR rather than using a method that would yield usual and customary rates – and a single injunction ordering defendant to use usual and customary rate methodology and to cease their activities in violation of the RICO statute would be the remedy." (¶48). Class certification is therefore appropriate under Rule 23(b)(2) as to Plaintiffs' RICO claims.

#### b) Certification Under Rule 23(b)(3)

Plaintiffs' RICO claims meet the "common question" requirements for class certification under Rule 23(b)(3). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs

1   would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th

2   651, 666–67 (9th Cir. 2022) (emphasis in original). "[A] district court cannot decline

3   certification merely because it considers plaintiffs' evidence relating to the common question to

4   be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue."

5   *Olean*, 31 F.4th at 667. The Ninth Circuit continued, "we have held that a district court is not

6   precluded from certifying a class even if plaintiffs may have to prove individualized damages at

7   trial." *Olean*, 31 F.4th at 668–69. For purposes of Rule (23)(b)(3), Plaintiffs need only propose a

8   valid method for calculating class-wide damages, not perform an actual calculation of damages.

9   *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013).

10          Citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) and *Painters & Allied*

11   *Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243 (9th Cir.

12   2019), this Court found that Plaintiffs sufficiently alleged that they were harmed as a natural and

13   foreseeable consequence of United and MultiPlan's alleged RICO enterprise and that Plaintiffs

14   did not need to allege first-party reliance on the Defendants' misrepresentations or omissions.

15   (*See* Dkt. 73, pg. 18-19; Dkt. 80, pg. 8). There is no requirement that plaintiffs or class members

16   actually pay a balance bill, as "financial obligation is sufficient to establish injury-in-fact."

17   *Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 815 (D.N.J. 2011), *aff'd in part,*

18   *vacated in part, remanded*, 647 F. App'x 76 (3d Cir. 2016). The RICO claims have patients

19   incurring financial obligations that they would not have otherwise incurred if their claims had

20   been paid according to a genuine UCR methodology. It is irrelevant if the injuries were the result

21   of different predicate acts, as the injuries are all the result of the same scheme. *See Just Film, Inc.*

22   *v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017).

23          On this issue, Professor Lahav opined "[t]he plaintiffs can prove reliance and proximate

24   cause by inference because the fact that that each provider called United to determine out-of-

25   network coverage, received erroneous information, and went ahead with the service raises a

26   permissible inference that the provider relied on that misrepresentation, and that the patient in

27   turn relied on it as well . . .  RICO damages are not individualized because the disgorgement will

28

1   be calculated based on the fees that United obtained.  As United has a record of these fees the

2   calculation is a matter of mathematics." (¶60).

3          **c)**       **RICO Reliance Can Be Determined on a Class-Wide Basis**

4         Plaintiffs have presented evidence such that a finder of fact could find reliance and, as

5   stated by a sister court, "[b]ecause plaintiffs' evidence may enable them to establish reliance and

6   thus causation in this case, the Court finds that common issues regarding [Defendant's] alleged

7   overarching fraudulent scheme predominate over questions affecting only individual members of

8   the nationwide class." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal.

9   2006). Plaintiffs' allegations of third-party reliance by Plaintiffs' providers on what United told

10  the providers told within VOB calls, the PAD letters, and other communications using the mail

11  and wires, were sufficient (*see* Dkt. 80 pg. 11). These representations are based on common

12  policies and procedures of the Defendants (*see* Paradise 30(b)(6) Depo., at 64:2-65:4, 72;

13  Kienzle Depo., at 115:3-22, 273; Strait Depo., at p. 131:4-134:2; Edwards Depo., at 118:9-21;

14  Exhibit 10 to Edwards Depo.; Exhibit 7 to Paradise 30(b)(6) Depo.; Exhibit 8 to Paradise

15  30(b)(6) Depo.; Exhibit 9 to Paradise 30(b)(6)) and are appropriate for class certification.

16        Every provider, when calling to verify a member's benefits, asked United's agent for the

17  same information: the rate at which out-of-network substance abuse behavioral health claims

18  would be paid. United's agents followed the same script and procedure each time and informed

19  the provider that claims would be paid based upon the 'usual and customary' rates. United knew

20  that facility providers would call to verify benefits, be told the 'usual and customary' rate from

21  IBAAG, and the providers relied on this information, as did the patients, in deciding to proceed

22  with treatment.[14] The patients and providers then proceeded with treatment, causing the patients

23  

24  [14] *See* August 14, 2018 email from Jolene Bradley to Radames Lopez ████████████████████

25  ████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████ " (UHC000030972); June 5, 2019
    email from Jolene Bradley to Deann Wolfe, "███████████████████████████████████████████

27  ████████████████████ " (UHC000079147); September 11, 2018 email from Cara Rinhart to Radames
    Lopez, "███████████████████████████████████████████████████████████████████████ "

28

1   to incur liability for the cost of the services provided to them. It was only after treatment was

2   provided, after the patients' claims were processed using the fraudulent Viant OPR methodology,

3   that the patients and their providers felt the sting of the Defendants' 'bait-and-switch' when the

4   patients were left with overly large personal liability for the balance of what should have been

5   paid at 'usual and customary' rates. Where, as here, the same fraudulent scheme affects every

6   member of the class, a RICO class action is appropriate. *See, Bias v. Wells Fargo & Co.*, 312

7   F.R.D. 528, 537 (N.D. Cal. 2015); *Cohen v. Trump*, 303 F.R.D. 376 (S.D. Cal. 2014).

8          Further, consistent with and reinforcing the Defendants' scheme to defraud and

9   supporting the providers' reliance upon statements made to them during the VOB calls, providers

10   were required to call Viant if they disputed the reimbursement amount, then received a common,

11   scripted, 'education' on Viant's methodology, and were provided intentionally misleading and

12   incorrect EOMs to bolster the Defendants' fraudulent scheme.[15] This is an ongoing, repeated

13   process in furtherance of the RICO enterprise.

14          d)      **The Determination of a RICO Enterprise Is Appropriate for Class**

15                  **Certification.**

16          The determination of a RICO enterprise is appropriate for class certification. The

17   Defendants collaborated to develop and use a database and pricing tool to underpay claims

18   through the use of Viant OPR. The RICO enterprise exists for the purpose of keeping the fees

19   that the Defendants 'earned' through the use of the fraudulent database and Viant OPR

20   methodology. (*See* Kienzle Depo., at 95:1-7, 196:22-197:25; Paradise 30(b)(6) Depo., at 106:17-

21   107:25, 129:5-8; Crandell Depo., at 66:4-68:16; Edwards Depo., at 57:6-59:21). This Court has

22   already found Plaintiffs' allegations of a RICO enterprise sufficient at the pleading stage. (Dkt.

23

24   _____

25   (UHC0000131783).

26   [15] Jolene Bradley in her November 11, 2019 email to Rebecca Paradise, both at United, stated, " ████████

27   ████████████████████████████████████████████

28   ██████████████" (UHC000008889, Exhibit "AB").

80, Pg. 8; Dkt. 73, Pg. 19-20). There are no issues associated with the determination that Defendants conducted an enterprise that are individual and not amenable to class treatment.

### e) Superiority

Under Rule 23(b)(3), the superiority requirement for class action is met where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006). The superiority requirements are clearly met here. First, most individuals are unlikely to independently bring suit for their claims. For many, the recovery would be too small to independently pursue and the putative class consists of patients that sought treatment for substance use disorders, a population with a chronic disease that is not necessarily well suited to pursue their rights through complicated litigation. Further, if every class member brought a claim, courts nationwide would be congested and overburdened with having to determine whether Viant OPR generated a 'usual and customary' rate and whether such actions formed part of a RICO enterprise.

### 2. The ERISA Claims Are Appropriate for Class Certification Under Rule 23(b)(1), (b)(2) & (b)(3)

Plaintiffs' claims for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and improper denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) are appropriate for class resolution. *See, Schuman v. Microchip Tech. Inc.*, 2020 WL 887944, at *4 (N.D. Cal. Feb. 24, 2020).

### a) Plaintiffs' ERISA Claims Are Appropriate Under Rule 23(b)(1)

Certification of an ERISA class action under Rule 23(b)(1) is "particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries." *Baird v. Blackrock Institutional Tr. Co., N.A.*, 2020 WL 7389772, at *14 (N.D. Cal. Feb. 11, 2020) (collecting cases, internal citations and quotations omitted). In particular, the Ninth Circuit has held that certification under Rule 23(b)(1)(B) is appropriate for an ERISA class that is based on oral representations that were made "where the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 964-5 (9th Cir. 2016), *as*

*amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016). Because the primary relief sought by Plaintiffs under ERISA is a reprocessing of claims under an appropriate reasonable and customary standard, certification under Rule 23(b)(1)(A) and (B) is appropriate. Under Rule 23(b)(1)(A), there is the risk that different adjudicative bodies could apply different applications or approaches to the usual and customary determinations. *Cf. Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010), *modified sub nom. Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011). Rule 23(a)(1)(B) is also met because "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner" *Alday v. Raytheon Co.*, 619 F.Supp.2d 726, 736 (D.Ariz.2008), thus applying the determination of usual and customary for one member to all other plan members. *See also*, *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 198 (S.D. Ohio 2002) ("[O]ne court could determine that defendant's practice violated ERISA, while another court could conclude that it did not.").

As discussed *supra*, the practices that Plaintiffs contend constitute violations of ERISA under §§ 502(a)(3) and 502(a)(1)(B) (TAC at ¶¶ 503-531) involve determinations that would necessarily involve determinations for other plan members, making certification under Rule 23(b)(1) appropriate. On this issue, Professor Lahav opined "Because all plan beneficiaries should be treated the same, and because all allege that the Viant OPR methodology was fraudulent, a new methodology cannot be applied to only one plan member without running the risk of inconsistent adjudications establishing incompatible standards of conduct for the defendant. Certifying a 23(b)(1)(A) class is appropriate here for plaintiff's ERISA claims seeking reprocessing and an injunction for future processing methodologies." (¶43).

### b) The ERISA Classes Are Appropriate for Class Certification Under Rule 23(b)(2): Injunctive Relief

Class certification is appropriate under Rule 23(b)(2) when the opposing party has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). The requirement of class-wide conduct on the part of the defendant is

-21-

Case No. 4:20-cv-02254-YGR-JCS                              Plaintiffs' Notice of Motion, Motion, and Memorandum
                                                            of Points and Authorities for Class Certification

"unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

As sister courts have held, "[a] reprocessing injunction—requiring the defendants to reprocess denied claims— [is] an appropriate basis for class certification under Rule 23(b)(2)." *Kazda v. Aetna Life Ins. Co.*, 2022 WL 1225032, at *6 (N.D. Cal. Apr. 26, 2022) (*citing Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 508-9 (N.D. Cal. 2017)). Further, "the Supreme Court has long recognized that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022) (collecting cases). The Ninth Circuit has clearly stated, "[w]e therefore overrule the statement in *Mazza* that 'no class may be certified that contains members lacking Article III standing,' 666 F.3d at 594, which does not apply when a court is certifying a class seeking injunctive or other equitable relief." *Id.*

In this case, Plaintiffs and the Class members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of United and MultiPlan: their uniform practice of improperly pricing IOP claims using Viant OPR and fraudulently representing that this is a 'usual and customary' amount based on the amounts charged by similar providers for the same service in the same geographic area. (*See* Paradise 30(b)(6) Depo., at 28:16-10, 216:1-217:7; Kienzle Depo., at 22:1, 34:1-20, 102:15-103:15; Strait Depo., at 136:3-137:22, 159-186). All class members were, and will be, affected by Defendants' policies and practices in the same way: their IOP claims had the reimbursement amount determined by the Viant OPR methodology. There can be no doubt, therefore, that this action "necessarily involve[s] acts that are generally applicable to the class." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612 (N.D. Cal. 2004), *amended in part*, 2012 WL 3070863 (N.D. Cal. July 26, 2012); *see also Arnold v. United Theatre Circuit, Inc.*, 158 F.R.D. 439, 452 (N.D. Cal. 1994) (where class members challenged defendant's failure to change certain architectural features found at its theatres, and the challenged design features affected all class members in the same way, the court determined that such a scenario "is a paradigm of the type of action for which the (b)(2) form was created").

1    Here, "the alleged wrong . . . is one of process, not outcome." *Hart v. Colvin*, 310 F.R.D.

2    427, 435 (N.D. Cal. 2015). As such, the Court is not required to make any individual

3    determinations, including as to the ultimate outcome of reprocessing under individual plans, and

4    it is irrelevant whether the reprocessing of the claims ultimately changes the reimbursement

5    outcome. *Id.* Further, United Healthcare's sole 30(b)(6) deponent, Ms. Rebecca Paradise,

6    testified that all of the plans that utilized Viant OPR had plan language that permitted them to do

7    so in accord with a specific out-of-network 'Reasonable and Customary' package that was

8    selected. (*See* Paradise 30(b)(6) Depo. Transcript, at 265). Every claim at issue in this matter was

9    processed using Viant OPR. On this matter, Professor Lahav opined, "[i]n this case, as in other

10   ERISA cases involving reprocessing, the court would not need to conduct an individualized

11   assessment.  That assessment would be a product of the reprocessing injunction, which would

12   require the defendant to reprocess each claim under a valid methodology and whatever the result

13   of that methodology is would be the plaintiff's recovery." (¶47). Class certification under Rule

14   23(b)(2) is therefore appropriate.

15       **c)**    **The ERISA Classes Are Appropriate for Class Certification Under**

16   **Rule 23(b)(3): Predominance & Superiority**

17       Under Rule 23(b)(3), "a class may be maintained where 'questions of law or fact

18   common to class members predominate over any questions affecting only individual members,'

19   and a class action would be 'superior to other available methods for fairly and efficiently

20   adjudicating the controversy.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346 n. 2 (2011).

21       **(1)**    **Predominance**

22       "When common questions present a significant aspect of the case and they can be

23   resolved for all members of the class in a single adjudication, there is clear justification for

24   handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler*

25   *Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted). All class members seek

26   the same relief, and their entitlement to such relief does not depend on individualized issues as

27   set out *supra*. On this issue of predominance, Professor Lahav opined, "[t]he only individual

28   issue here is what amount each plaintiff will get in reprocessing their claim.  The process of

reprocessing, including the databased used, will be uniform because ERISA requires that all plan members be treated the same. . . . Accordingly, determining how much plaintiffs were undercompensated is a matter of calculation, not fact finding.  Differences among plaintiff recoveries, as long as they do not require individualized hearings, are not a reason to deny class certification. . . . [T]the type of damages calculation that will be needed if plaintiffs prevail is United's bread and butter. It is the kind of calculation of benefits that they are set up to do and will not require individualized hearings." (¶54) Therefore, the proposed Class therefore satisfies the predominance requirement of Rule 23(b)(3).

### (2)   Superiority

The putative Class satisfies the superiority requirement because a "class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (quotations omitted). Here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Id*. at 1175. The factors that determine whether class treatment is superior to other methods of adjudication include (a) the interest of class members in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each of these factors supports class certification. As set forth *supra*, there are overriding common issues in this case that allow for a finding of liability against the Defendants under Plaintiffs' ERISA claims and for the application of a common remedy. As Professor Lahav opined on this issue "this is a very manageable case to try.  The main areas of contention involve defendants' conduct, including questions such as what goes into the Viant OPR methodology?  How does this diverge from UCR? What were the representations that United told its agents to make to providers and is the Viant OPR methodology consistent with those representations?  If 1,000 lawsuits were tried individually, each of those suits would be duplicative: it would involve introducing the same experts and the same evidence about defendants' policies, including IBAAG, and the same written communications with policy

holders and providers.  It will be efficient and fair to try these issues in a single forum, to avoid

duplicating judicial effort, inconsistent outcomes." (¶57). Certification of the class, therefore,

would best serve the interest of both the individual class members and judicial economy.

(3)    <strong>Plaintiffs' Damages Model Satisfies the <em>Comcast</em> Standard</strong>

Under a damages model for class certification pursuant to Rule 23(b), "[c]alculations

need not be exact, but at the class-certification stage (as at trial), any model supporting a

plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*,

569 U.S. 27, 35 (2013) (internal citations omitted). The model proposed by Plaintiffs meets this

standard and is consistent with their liability case. *See* Report of Mark A. Hall ¶5.

**V.    CONCLUSION**

For all of the reasons stated above, Plaintiffs respectfully ask the Court to certify the

proposed Class, appoint Arnall Golden Gregory LLP and attorneys Matthew M. Lavin and

Aaron R. Modiano as Class Counsel, along with co-counsel DL Law Group and attorneys David

M. Lilienstein and Katie J. Spielman, as well as any other such relief that the Court deems just

and proper.

Dated: August 17, 2022

ARNALL GOLDEN GREGORY LLP

*/S/ MATTHEW M. LAVIN*

By:    MATTHEW M. LAVIN
       AARON R. MODIANO
       *Attorneys for Plaintiffs LD, et al. and the*
       *Putative Class.*