MATTHEW M. LAVIN (*pro hac vice*)
Matt.lavin@agg.com
AARON R. MODIANO (*pro hac vice*)
Aaron.modiano@agg.com
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: (202) 677-4030
Facsimile: (202) 677-4031

DAVID LILIENSTEIN, SBN 218923
david@dllawgroup.com
KATIE SPIELMAN, SBN  252209
katie@dllawgroup.com
DL LAW GROUP
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 678-5050
Fax: (415) 358-8484

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH and CJ on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation, UNITED BEHAVIORAL HEALTH, INC. a California corporation, and MULTIPLAN, INC., a New York corporation,,<br><br>*Defendants.* | Case No.: 4:20-CV-02254-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37** |

## I.    INTRODUCTION

Plaintiffs hereby submit their Reply in support of their Motion to Compel and for Sanctions pursuant to Fed. R. Civ. P. 37 (the "Motion") (Dkt. 165), specifically related to MultiPlan's July 22, 2022 privilege log. As discussed in more detail below, MultiPlan's untimely and defective privilege log should result in a waiver of all privileges asserted. Alternatively, Plaintiffs renew their request for an *in camera* review of a random sample of documents to test MultiPlan's privilege assertions, as previously approved by the Ninth Circuit. *See Doyle v. F.B.I.*, 722 F.2d 554 (9th Cir. 1983).

### A.  MultiPlan Misstates the Relevant Legal Standard

In its Response in Opposition to the Motion (the "Response"), MultiPlan contends that Plaintiffs could not have been prejudiced by the untimely production of its privilege log simply because their privilege log was provided to Plaintiffs "within thirty days of the completion of discovery and the last of the depositions." (Resp. to Mot. at 3.) However, this facile argument is nothing more than an attempt to distort the relevant standard and is wholly unsupported by case law or other authorities. Plaintiffs' Motion accurately recited the Ninth Circuit's standard for waiver of privilege following the untimely service of a privilege log, which is a combination of this Court's Standing Order, Rule 34 of the Federal Rules of Civil Procedure, and the four factor test as discussed in *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). (Mot. at 7-11.)

Even if only a "default guideline," Rule 34's 30-day time limit for the service of a privilege log facilitates a contemporaneous assessment of the log's contents and, if necessary, allows the recipient challenge any assertions of privilege or protection in a timely manner. By delaying service of its privilege log for all documents produced in class, fact discovery until after the period's close, MultiPlan knew that such action would deprive Plaintiffs of the opportunity to test any assertions of privilege *during the discovery period*. This is critical because this Court previously, and very clearly, warned the parties that "[n]o further extensions [of the class, fact discovery period] [would] be granted absent extraordinary and compelling reasons." (Dkt. 130.) Thus, MultiPlan knew that its untimely privilege log would jeopardize Plaintiffs' ability to challenge its contents and assertions of privilege, and yet it still waited until after the close of class, fact discovery, and seven distinct document productions, to finally produce its 41-page privilege log.

- 1 -

Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel and for Sanctions Pursuant to Fed. R. Civ. P. 37
Case No.: LD v. UBH  4:20-CV-02254-YGR

1    MultiPlan's first substantive document production was made in March 2022, many months after

2    Plaintiffs' initial requests, and included redactions and documents withheld for privilege. Yet, despite

3    having withheld material on the basis of privilege from the outset, MultiPlan did not provide any

4    justification or other explanation for their claims until July 22, 2022, after the class discovery period

5    had closed.

6    MultiPlan argues in the alternative that even if Plaintiffs were prejudiced by its untimely

7    privilege log, such harm was the fault of Plaintiffs because they "had more than sufficient time to bring

8    this issue to a head before now[.]" (Resp. Mot. at 3.)  However, this quasi-laches argument yet again

9    misrepresents the relevant standard.  As discussed in Plaintiffs' Motion (*see* Mot. at 8-11), the Ninth

10   Circuit applies the four (4) *Burlington* factors "in the context of a holistic, reasonable analysis" to

11   determine whether the circumstances surrounding the untimely service of a privilege log justifies

12   waiver of the asserted privileges.  *See Burlington Northern*, 408 F.3d at 1149. Here, all four (4)

13   *Burlington* factors favor waiver. (*See* Mot. at 8-11.)

14   **B.  The Fiduciary Exception is Applicable to MultiPlan's Assertions of Privilege**

15   MultiPlan's Response argues that ERISA's fiduciary exception should not apply to its assertions

16   of privilege; however, these contentions are unavailing. (*See* Resp. Mot. 8.)  Multiplan's Response

17   focuses on *Waller v. Blue Cross of California* (32 F.3d 1337, 1342 (9th Cir. 1994)), including the

18   argument that *Waller* does address "pricing methodologies."   However, MultiPlan stops short of

19   insisting that "pricing methodologies," for which Multiplan is responsible under its arrangement with

20   United, are not a fiduciary function under ERISA. MultiPlan's demonstration of restraint is for good

21   reason because the Ninth Circuit previously held that the repricing of claims is indeed a function of

22   plan administration.  *See California Spine & Neurosurgey Inst. v. Nat'l Ass'n of Letter Carriers Health*

23   *Benefit Plan*, 548 F. Supp. 3d 934, 939 (N.D. Cal. 2021) ("Cigna also performs administrative services

24   such as repricing claims according to Cigna's agreements with these providers.").  Of course, the

25   fiduciary exception is trigged when an entity like MultiPlan attempts to assert the attorney-client

26   privilege against plan beneficiaries on matters of plan administration. *See Stephan v. Unum Life Ins.*

27   *Co. of Am.*, 697 F.3d 917, 932-33 (9th Cir. 2012).  This is exactly the case here, and the fiduciary

28   exception should apply to MultiPlan's assertions of privilege, to the extent they have not been waived.

- 2 -

Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel and for Sanctions Pursuant to Fed. R. Civ. P. 37
Case No.: LD v. UBH  4:20-CV-02254-YGR

Furthermore, MultiPlan itself has been construed to function as a "plan administrator" in the past. *See Goel v. Coal. Am. Holding Co., Inc.*, No. CV 11-02349 GAF (EX), 2012 WL 12884631, at *1 (C.D. Cal. May 2, 2012); *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, No. CIV A. 05-102, 2006 WL 1997424, at *1 (E.D. Pa. July 13, 2006).

Furthermore, this Court's ruling on Defendant's Motion to Dismiss is consistent with Plaintiffs' position that the fiduciary exception applies to MultiPlan. (*See* Dkt. 73.) In its Order, the Court already determined that Plaintiffs could seek relief against MultiPlan under Section 1132(a)(3) for breach of fiduciary duty to the named Plaintiffs and putative class. (*Id.* at 14.) This is consistent with other cases that have found MultiPlan to be acting as a fiduciary under analogous circumstances. *See, e.g., In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, 2021 WL 8532067, at *5 (C.D. Cal. Apr. 14, 2021); *TML Recovery, LLC v. Cigna Corp.*, 2021 WL 3730168, at *4 (C.D. Cal. July 26, 2021); *ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, 2015 WL 9300519, at *6 (N.D. Cal. Dec. 22, 2015). Accordingly, MultiPlan's suggestion that its assertions of privilege are not subject to the ERISA fiduciary exception should be dismissed out of hand.

Here, MultiPlan acted in concert with United to provide numerous administrative services under the relevant plans, including repricing services, assisting United with plan administration disputes (Resp. Mot. at 9) and offering a 'patient advocacy department' intended to prevent plan members from disputing the drastic repricing of IOP services rendered by out-of-network providers. MultiPlan's direct administrative role in this scheme is underscored by, among other things, the appearance of Viant's logo on official plan correspondence sent to plan members. This Court has addressed the fiduciary exception in its prior ruling with regard to the United Defendants (Dkt. 162, pg. 21 *et seq.*) and the same analysis and application applies to MultiPlan. For these reasons, MultiPlan's plan administration duties trigger the fiduciary exception, which applies to the overwhelming majority of MultiPlan's assertions of privilege found in its 41-page privilege log. (*See* Mot. at 15-16.)

### C. MultiPlan's Defective Assertions of Privilege

MultiPlan also contends that its privilege log "lays out in great detail the claims of privilege and work product being asserted," but closer review of the log itself calls this assessment into question. (*See* Resp. Mot. at 3.)  As detailed in Plaintiffs' Motion, MultiPlan's privilege log is largely filled with

boilerplate, vague assertions of privilege, and many of the entries fail the primary purpose test or are otherwise subject to the fiduciary exception. (*Id.* at 11-17.)  Even MultiPlan appears to acknowledge the deficient nature of its log by arguing that it should not be "punished for falling short of the standard of conduct application here" because it allegedly "did everything it could to make sure that its privilege/work produce claims were appropriated limited and accurately displayed" despite "other pieces of litigation involving MultiPlan throughout the country[.]"  (Resp. Mot. at 6.)  If anything, these other legal matters demonstrate that MultiPlan is indeed a "sophisticated corporate litigant" that is well-aware of its discovery obligations, including the timely preparation of a privilege log that "enables [Plaintiffs] and the court to evaluate whether the withheld documents [are] privileged."  *See Burlington Northern*, 408 F.3d at 1149.  The total volume of litigation involving MultiPlan does not excuse its defective privilege log in this matter.

Additionally, MultiPlan tacitly acknowledges the deficiencies of its log through the Declaration of Marjorie G. Wilde (the "Wilde Declaration"), which functions as a supplement to some, *but not all*, of MultiPlan's lacking assertions of privilege. (*See generally* Resp. Mot, Ex. A.)  While the Wilde Declaration provides additional detail for some of the log entries, many of these explanations are unconvincing.  For example, some of MultiPlan's suspect assertions of privilege involve inquiries from "governmental or regulatory bodies." (Resp. Mot., Ex. A at ¶ 35.)  However, these claims of privilege are quickly undermined by the fiduciary exception.  *See, e.g., Durand v. Hanover Ins. Grp., Inc.*, 244 F.Supp. 3d 594, 611 (W.D. Ky. 2016).  Furthermore, as discussed in Plaintiffs' Motion, Multiplan bears the burden in showing that the fiduciary exception *does not* apply. *See Durand* at 613 (collecting cases).  Multiplan's Response and the corresponding Wilde Declaration include no such analysis; thus, MultiPlan has failed to meet its burden.

Finally, in addition to Ms. Wilde's role as Senior Counsel for MultiPlan, her responsibilities also include a host of operational duties, which make her a "dual-purpose" witness. As part of the aforementioned "other pieces of litigation involving MultiPlan throughout the country," the undersigned is aware of Ms. Wilde's "dual purpose" functions because of its prior contacts Ms. Wilde and MultiPlan in unrelated litigation. (Resp. Mot. at 6.)  For this reason, Plaintiffs are especially leery of many log entries involving Ms. Wilde, as it would appear that Ms. Wilde was often included on

- 4 -

email chains in an attempt to cloak the entire communication in the attorney-client privilege. Of course, such practice flies in the face of the primary purpose doctrine, and those documents should not be considered privileged. *See United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 182, 188 (D.D.C. 2014) (merely including an attorney on a distribution list is insufficient for attorney client privilege to apply). In light of these questions, Plaintiffs urge the Court to engage in an *in camera* review of these documents to assess whether the documents involving Ms. Wilde are actually subject to the privilege, or if her involvement was merely a pretext to shield the entire communication from discovery.

### D. There Is No Applicable 'Confidential Government Privilege'

MultiPlan in its Response and in the Wilde declaration claims attorney client privilege and work product immunity for material related to a 'confidential government investigation' (Resp. Mot. at 7-10, Wilde Dec. *passim*). But the fact that materials may be related to a government investigation does not cloak them with privilege. To the contrary, the production of material in responding to a government investigation waives privilege as to those materials. *See Aronson v. McKesson HBOC, Inc.*, 2005 WL 934331, at *8 (N.D. Cal. Mar. 31, 2005); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 1566, 2016 WL 2593916, at *6 (D. Nev. May 5, 2016), *objections overruled*, 2016 WL 3965185 (D. Nev. July 22, 2016); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 646 (C.D. Cal. 2005).

The out-of-circuit cases cited by MultiPlan are not controlling, applicable, or persuasive. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 118 (D.D.C. 2010) declined to compel production of material that was specifically prepared for an upcoming adversarial hearing. MultiPlan has not shown that any of the withheld material was prepared under such circumstances. *In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 16 (D.D.C. 2008), *aff'd on other grounds*, 329 F. App'x 283 (D.C. Cir. 2009) involved a party seeking to obtain work papers prepared by the Department of Education and conduct a privilege analysis in the context of government investigations. MultiPlan is not a government entity and *Apollo* does not apply. *Galvin v. Hoblock*, 2003 WL 22208370, at *3 (S.D.N.Y. Sept. 24, 2003) also involves seeking to compel documents from a government agency and is inapplicable here. *Abdallah v. Coca-Cola Co.*, 2000 WL 33249254, at *5 (N.D. Ga. Jan. 25, 2000), an unpublished decision from a Northern District of Georgia court, stretches 'anticipation of litigation'

beyond how it has been applied by courts in this circuit as it applies the 'because of' test (*Id.* At 4) rather than the 'primary purpose' test used in the Ninth Circuit (*see In Re Grand Jury*. 23 F.4th 1088, 1092 (9th Cir. 2021). Further, as stated by a sister court, a party "cannot prevent disclosure of an administrative investigation by having its litigation counsel (or an agent of its litigation counsel) conduct that investigation." *Griffith v. Davis*, 161 F.R.D. 687, 697 (C.D. Cal. 1995).

As such, claims of privilege by MultiPlan on the basis of 'confidential government privilege' should be rejected.

### E. *In Camera* Review is Justified

Arguments over the applicability of these exceptions can and should be resolved by *in camera* review of a random sample of these documents. *See Doyle v. F.B.I.*, 722 F.2d 554 (9th Cir. 1983). Plaintiffs have met their burden to establish the need for *in camera* review of the allegedly privileged materials, as the Motion already demonstrated a factual basis in support of Plaintiffs' reasonable, good faith belief that the materials in question are not actually privileged or are subject to one of the multiple exceptions to the privilege, including the fiduciary exception. *See In re Grand Jury*, 974 F.2d 1068, 1075 (9th Cir. 1992). While *in camera* review is not automatically granted to every requesting party, the evidentiary burden placed upon the movant to demonstrate the need for such review "is relatively minimal." *In re Grand Jury*, 974 F.2d at 1072. Moreover, even MultiPlan's Response contemplates *in camera* review to resolve the present dispute. (*See* Resp. Mot. at 6) ("[T]he Court can make the requisite determinations as to whether what MultiPlan has provided is sufficient, whether more is needed, or whether in camera review will be required.")

The Wilde Declaration offers further support for *in camera* review. In addition to Ms. Wilde's role as Senior Counsel for MultiPlan, her responsibilities also include a host of operational duties, thereby rendering her a "dual-purpose" witness. As set forth, *supra*, the undersigned is aware of Ms. Wilde's "dual purpose" functions because of its prior contacts Ms. Wilde and MultiPlan in unrelated litigation. In light of concerns raised by Multiplan's privilege log suggesting that Ms. Wilde was often included on e-mail chains for the sole purpose of cloaking the communication in privilege, Plaintiffs urge the Court to engage in an *in camera* review of these documents to assess whether the documents

- 6 -

Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel and for Sanctions Pursuant to Fed. R. Civ. P. 37
Case No.: LD v. UBH  4:20-CV-02254-YGR

involving Ms. Wilde are actually subject to the privilege, or if her involvement was merely a pretext to shield the entire communication from discovery.

## II.    CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully ask this Court to to find that MultiPlan's conduct has waived its assertions of privilege or, in the alternative, to conduct an in camera review of the documents listed in MultiPlan's privilege log.

Respectfully submitted,

Dated: September 2, 2022

ARNALL GOLDEN GREGORY LLP        DL LAW GROUP
/s/ *Matthew M. Lavin*                              /s/ *David M. Lilienstein*
MATTHEW M. LAVIN                          DAVID M. LILIENSTEIN
AARON R. MODIANO                          KATIE J. SPIELMAN

*Attorneys for Plaintiffs and the Putative Class*

1

## <u>CERTIFICATE OF SERVICE</u>

2      The undersigned hereby certify that a true and correct copy of the above and foregoing

3  document has been served on September 2, 2022, to all counsel of record who are registered CM/ECF

4  users via the Courts CM/ECF system. Any counsel record who are not registered through the courts

5  CM/ECF system will be served by mail or other means permitted by court rules.

6

7

8

9                                          **ARNALL GOLDEN GREGORY LLP**

10                                         */s/ Matthew Lavin*
                                           MATTHEW M. LAVIN

11

12

13                                         **DL LAW GROUP**

14                                         */s/ David Lilienstein*
                                           David Lilienstein

15

16                                         *Attorneys for Plaintiffs and the Putative Class*

17

18

19

20

21

22

23

24

25

26

27

28