UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LD, et al.,

               Plaintiffs,

     v.

UNITED BEHAVIORAL HEALTH, et al.,

               Defendants.

Case No.  20-cv-02254-YGR   (JCS)

**ORDER GRANTING PLAINTIFFS'
MOTION FOR SANCTIONS AGAINST
UNITED DEFENDANTS PURSUANT
TO FED.R.CIV.P. 37**

Re: Dkt. No. 165

## I.     INTRODUCTION

      This Order addresses only Plaintiffs' request for sanctions against the United Defendants in their Motion to Compel and for Sanctions Pursuant to Fed.R.Civ.P. 37 ("Motion").   The remaining issues raised in the Motion, seeking relief with respect to Defendant MultiPlan, will be addressed in a separate Order. The Court held a hearing on September 20, 2022 addressing Plaintiffs' request, which is GRANTED.

## II.     BACKGROUND

      In the Motion, Plaintiffs ask the Court to prohibit United from using 21,812 documents, 104 audio records and an Excel spreadsheet listing 2,021 new class member claims, on the basis that these materials were produced after the July 15, 2022 fact discovery cut-off in attempt to sandbag Plaintiffs just before the deadline for filing their class certification motion and deprive them of the opportunity to address the late-produced materials in depositions. United counters that it produced these materials after the deadline merely to supplement its previous productions and therefore was substantially justified in producing these materials when it did, and that Plaintiffs were not prejudiced by the late production.

      The broad context of Plaintiffs' dispute with United is Plaintiffs' attempts to obtain

United States District Court
Northern District of California

discovery, including verification of benefits ("VOB") call recordings, for a sample of class members selected by Plaintiffs – initially 87 individuals but eventually negotiated down to 25 individuals – and United's decision to create its own sample of class members, purportedly because United realized at some point that Plaintiffs' sample was not randomly selected.

The parties paint widely different pictures of the events that preceded United's late productions.   Because the imposition of sanctions depends, in part, on whether United's conduct was justified and whether it acted in good faith, which are fact-intensive inquiries, the Court provides below a timeline of the parties' communications and discovery conduct related to the two samples (hereinafter, "Plaintiffs' Sample" and "United's Sample"). The Court notes that the record does not contain every relevant document and communication exchanged during discovery and therefore, it has relied to some extent on the second-hand accounts in the parties' briefs and communications, at least as to the underlying facts that appear to be undisputed.  Where there appear to be disputes about what actually occurred, the Court has attempted to flag those disputes.

**November 19, 2021:**  According to United, on this date it made its first production of claims data, which included documents responsive to certain requests in Plaintiffs' First, Second and Third Sets of requests for documents.  Blas Decl. ¶ 10 & Ex. 1 [Dkt. 174-1, 174-2] (November 19, 2021 letter from United re production). In a letter that accompanied the production, United's counsel indicated that United was unsure if Plaintiffs' claims included claims that had been subject to fee negotiation, stating, "For purposes of this production, we are also including claim lines subject to Viant fee negotiation, even though Plaintiffs have not clearly indicated whether these claim lines and amounts are at issue in the case, because we understand from your request that you want these claim lines to be produced."  *Id.*

**January 3, 2022**:  According to United, on this date, "after meeting and conferring with Plaintiffs, United Defendants made a supplemental production to include additional data fields that were not in their initial production." Blas Decl. ¶ 10 [Dkt. 174-1].

**January 27, 2022:**  According to United, on this date, Plaintiffs served requests for production of call recordings for 87 sample patients.  United Opp. at 4 [Dkt. 174].  This was followed by a series of meet and confer efforts addressing, *inter alia*, the number of patients in

United States District Court
Northern District of California

1   Plaintiffs' Sample.

2          **February 14, 2022:**  According to United, on this date it told Plaintiffs in a meet and

3   confer that it would be extremely difficult to locate the VOB audio recordings.  [Dkt. 159-5] (June

4   1, 2022 meet and confer letter from United's counsel to Plaintiffs' counsel).

5          **February 28, 2022:**  United's counsel sent Plaintiffs' counsel an email again telling

6   Plaintiffs that it would be extremely difficult to locate the audio recordings Plaintiffs had

7   requested. Reply, Ex. E [Dkt. 175-5] (email from United's counsel to Plaintiffs' counsel). In the

8   same email, United told Plaintiffs it needed specific information to track down the audio

9   recordings, stating:  "As previously discussed (and as our client confirmed following our Feb 14

10  meet and confer), we need the date/time and incoming phone number (and the customer service

11  agent's name and customer service agent's MS ID should be provided as well, if available) to

12  search for any call recordings that may exist. As we also discussed, it is burdensome and time-

13  consuming to search for these records, so please get us this specific information as soon as

14  possible—regarding 25 specific phone calls that we can prioritize in our searches—so that we can

15  investigate what is available and could potentially be produced." *Id.*

16         **March 25, 2022:** According to United, it again told Plaintiffs in a meet and confer that it

17  would be very difficult to locate the audio recordings for Plaintiffs' Sample.  [Dkt 159-5] (June 1,

18  2022 meet and confer letter from United's counsel to Plaintiffs' counsel).

19         **April 20, 2022:**  Plaintiffs agreed to reduce their sample in connection with their audio

20  recording request to 25 patients and provided United with a chart identifying the 25 sample

21  members.  United Opp. at 4 [Dkt. 174].[1] Also on this date, Plaintiffs' counsel sent United an email

22  with an attachment containing information to help locate the audio recordings, apparently in

23  response to United's previous requests, including in the February 28, 2022 email discussed above.

24  Blas Dec., Ex. 2 [Dkt. 174-3] (April 20, 2022 email from Plaintiffs' counsel to United's counsel).

25  Plaintiffs' counsel said in the email that "[t]he information that is there has not been easy to obtain

26  and we wanted to provide you with what we do have to move this process forward."  *Id.*

27  _____

28  [1]Although Plaintiffs' chart is not in the record, there appears to be no dispute that Plaintiffs'
    counsel provided this chart to United on this date.

United States District Court
Northern District of California

1  Plaintiffs' counsel also suggested in the email that United might not need all of the information it

2  had requested to locate the recordings, stating: "In other litigation involving United, we have

3  found that it was not necessary to have the time of the call as long as we had the date. Even if that

4  were to pull some recordings for those other than the identified patients, the number would still be

5  limited and manageable and, most likely, would be of another putative class member in any

6  event." *Id.*

7       **April 26, 2022:** Plaintiffs' counsel sent United's counsel another email, again attempting

8  to comply with United's request for specific information to help locate the audio recordings.  Blas

9  Decl., Ex. 3 [Dkt. 174-4] (April 26, 2022 email from Plaintiffs' counsel to United's counsel).  In

10  this email, Plaintiffs' counsel stated, "As we discussed earlier, getting the information that we sent

11  was difficult. Please let us know if this is problematic and we are happy to work with you to figure

12  something out."  *Id.*

13       **May 4, 2022:**  Plaintiffs served their Sixth Request for Production ("RFP") on United,

14  seeking complete administrative record, including claims and plan information, for each of the 25

15  sample class members selected by Plaintiffs. [Dkt. 165-3] (Sixth RFP).

16       **June 1, 2022:**  United's counsel sent Plaintiffs' counsel a meet and confer letter stating

17  that it would produce the administrative records for Plaintiffs' Sample and further stating, "We

18  will also be producing administrative records for a random sample of plan members, in addition to

19  those selected by Plaintiffs' counsel." [Dkt. 159-5].  This appears to be the first communication in

20  the record in which United referenced its intent to create its own sample.

21       **June 16, 2022**:  According to United, on this date, "Plaintiffs shared additional phone

22  numbers to assist in the United Defendants' search" for call records.  Blas Decl. ¶ 12 [Dkt. 174-1].

23       **July 1, 2022**: According to United, it "began producing call recordings for Plaintiffs'

24  sample on July 1, 2022." Blas Decl. ¶ 12 [Dkt. 174-1].  It further represents that it began

25  producing administrative records for these patients on this date.  *Id.*  ¶¶ 13, 15 (On this date there

26  was a "[p]roduction of call recordings requested by Plaintiffs and ASAs and SPDs for patients in

27  Plaintiffs' sample.").

28       **July 8, 2022**:  According to United, it made a supplemental claims data production.  Blas

4

Decl. ¶¶ 10, 15 [Dkt. 174-1]  (On this date United made a "[s]upplemental production of claims data from the UNET platform that added claims through December 2021 and added additional fields to supplement the January 3, 2022 production and administrative records for patients in Plaintiffs' sample.").  It also produced more audio recordings on this date, producing "call recordings procured through third-party subpoenas on providers." *Id.* ¶ 12.  Also on this date, the Court granted the parties' request for an extension to July 29, 2022 of the deadline to complete depositions of five specific witnesses identified in the parties' stipulation.  Dkt. 143.

**July 9, 2022**:   United's counsel told Plaintiffs' counsel in an email:

> We have already produced all call recordings we have found. The recordings related to named plaintiffs were produced on June 3 as part of our Volume 016 production. The recordings we discussed during our prior meet and confer were produced on July 1 as part of our Volume 019 production. We produced the recordings we received from providers yesterday, before your email, as part of our production of documents produced by the third-party providers. We also conducted a search based on the parameters discussed during our previous call, as you outlined below, but did not find any additional recordings.

Motion, Ex. D [Dkt. 165-4].

**July 15, 2022:** Fact discovery cut-off.   [Dkt. 130]. According to United, it made another production of claims data on this date and production of UNET[2] claims data was complete as of this date.  Blas Decl. ¶¶ 10, 15 [Dkt. 174-1] (stating that on this date, United made a "[p]roduction of archived claims data from the UNET platform and administrative records for patients in United Defendants' sample."). Also on this date, United's counsel sent a letter to Plaintiffs' counsel stating, "[w]e anticipate producing a small supplemental production of claims data in the next week or two." Blas Decl., Ex. 6 [Dkt. 174-6].

**July 18, 2022**:  According to United, it made a "[p]roduction of additional ASAs and SPDs for plan sponsors from patients in Plaintiffs' sample and United Defendants' sample."  Blas Decl. ¶ 15 [Dkt. 174-1].

**July 20, 2022**: According to Plaintiff, United produced 9,621 pages of documents on this

---

[2] According to United, "UNET is the primary platform United Defendants use to maintain claims data for programs that use Viant/Facility R&C." Blas Decl. ¶ 10 [Dkt. 174-1].

United States District Court
Northern District of California

1   date.  Motion at 2.

2        **July 21, 2022:** According to United, it made a "[s]mall production of administrative

3   records for patients in Plaintiffs' sample that were inadvertently excluded from prior productions."

4   Dkt. 174-1; Blas Decl. ¶ 15. According to Plaintiffs, United produced 1,377 pages of documents

5   on this date.  Motion at 2 [Dkt. 165].

6        **July 22, 2022**: According to United, it made a "[s]mall production of additional ASAs and

7   SPDs for plan sponsors from patients in Plaintiffs' sample and United Defendants' sample."  Blas

8   Decl. ¶ 15 [Dkt. 174-1]. According to Plaintiffs, United's production contained 10,814 pages of

9   documents.  Motion at 2. On this date, United identified for the first time the claims it said it had

10  randomly selected for its sample using RAT-STATS.  Reply, Ex. B [Dkt. 175-2] (July 22, 2022

11  email from United's counsel to Plaintiffs' counsel).

12       **July 29, 2022:**  According to United, it completed production of audio recordings on this

13  date.  Blas Decl. ¶¶ 12 [Dkt. 174-1];  *see also* Reply at 3 [Dkt. 175] (stating that United produced

14  104 recordings on this date, having previously produced 115 recordings, thereby nearly doubling

15  the number of audio recordings it had produced). The letter sent to Plaintiffs' counsel by United's

16  counsel on the same date stated that the audio recordings produced on that date were "responsive

17  to Plaintiffs' Requests for Production" and "consist[ed] of call recordings for members identified

18  in the claims sample[.]"  Motion Decl. Ex. A [Dkt. 165-1].  However, according to Plaintiffs, the

19  majority of the audio recordings produced on July 29 were from United's Sample rather than

20  Plaintiffs' Sample.  Reply at 4 [Dkt. 175] ("most of the recordings included in United's untimely

21  productions did not actually contain the VOB recordings requested by Plaintiffs, but instead were

22  related to other, unrelated claims for out-of-network programs that are not the subject of the

23  present litigation.").  The Blas Declaration submitted with United's Opposition brief appears to

24  concede that Plaintiffs are correct, describing the audio recordings produced on July 29 as "call

25  recordings for patients in Plaintiffs' sample *and United Defendants' sample*."  Blas Decl. ¶ 15

26  [Dkt 174-1] (emphasis added).

27       United also says it completed the production of the administrative records for "sample

28  patients" by this date:  "Nearly all of the SPDs relating to patients in the sample were produced

before July 15, and approximately 98% of all administrative documents for sample patients were produced before July 21, 2022. United Defendants completed production of administrative documents by July 29, 2022." *Id.* ¶ 13.

**August 9, 2022:** United produced Oxford claims data on this date, contained in an Excel spreadsheet with data for 2,021 newly disclosed claims. Blas Decl. ¶ 10 [Dkt. 174-1]; Motion at 2 [Dkt. 165]. According to Blas, "Unlike UNET, the Oxford platform generally does not contain claims priced using Viant/Facility R&C. And to the extent the Oxford platform has such claims, it uses different coding than the coding used in UNET to identify those claims. Approximately 98% of all claims data was produced before July 15, 2022, as the Oxford claims data constituted less than 2% of the overall claims data population." Blas Decl. ¶ 10 [Dkt. 174-1]. According to Plaintiffs, United did not say what requests for production these documents were in response to. Reply at 3 [Dkt. 175].

**August 17, 2022**: Deadline for Plaintiffs to file their class certification motion.

**October 12, 2022**: Deadline for United to file its opposition to Plaintiffs' class certification motion. [Dkt. 191].

## III.    WHETHER RULE 37 SANCTIONS SHOULD BE IMPOSED AS TO UNITED

### A.    Legal Standards Under Rule 37

Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). This rule "gives teeth" to the requirements of Rule 26(a) and (e), governing required disclosures and a party's obligation to supplement their disclosures in a timely manner, and courts have imposed preclusion sanctions under this rule based on unjustified late production of discovery materials "even absent a showing in the record of bad faith or willfulness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *see also Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1044 (S.D. Cal. 2019), aff'd, 814 F. App'x 194 (9th Cir. 2020) (imposing preclusion sanction as to document that was produced at a deposition that occurred 20 days after the discovery cut-off where the late

production was not substantially justified or harmless).  Indeed, "[c]ourts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded."  *Yeti*, 259 F.3d at 1107 (citation omitted).

Under Rule 37, "[t]he party requesting sanctions bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements established in Rule 26." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241–42 (D. Nev. 2017).  The burden then shifts to the party opposing preclusion sanctions to show that the noncompliance was substantially justified or harmless.  *See Yeti*, 259 F.3d at 1107.

## B.   Discussion

There is no dispute that the materials Plaintiffs ask the Court to exclude were produced after the July 15, 2022 discovery deadline. Therefore, the main questions before the Court are: 1) has United shown that its late production was substantially justified or harmless; and 2) if United has not met that burden, should all the late-produced materials be excluded or is some less drastic sanction appropriate.  For the reasons set forth below, the Court concludes the late production was neither substantially justified nor harmless.  It further concludes that exclusion of all of these materials, for all purposes, is appropriate.

### 1.   Whether Late Production was Substantially Justified

United contends its late production was substantially justified because it was merely satisfying its ongoing obligation under Rule 26(e) of the Federal Rules of Civil Procedure to supplement is earlier responses to Plaintiffs' requests for production. United Opp. at 6-9 [Dkt. 174] (citing *Woods v. Google, Inc.*, 2014 WL 1321007, at * 4 (N.D. Cal. Mar. 28, 2014)).  It further asserts that sanctions are not warranted because any "small delays" were "anticipated due to factors beyond United Defendants' control" and were "previewed to Plaintiffs."  *Id.* at 1 (citing *Potlatch Corp. v. United States*, 679 F.2d 153 (9th Cir. 1982)).

The duty to supplement is set forth in Rule 26(e)(1), which provides as follows:

> (1) *In general.* A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:

United States District Court
Northern District of California

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed.R.Civ. P. 26(e)(1).  "'[I]nformation is "incomplete or incorrect" in "some material respect" if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation.'" *L.A. Terminals, Inc. v. United Nat'l Ins. Co*., 340 F.R.D. 390, 396 (C.D. Cal. 2022) (quoting *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004)). Further, there is no doubt that the duty to supplement under Rule 26(e) extends beyond the discovery cutoff date. *See, e.g., Woods v. Google, Inc*., No. C11-01263-EJD (HRL), 2014 WL 1321007, at *4 (N.D. Cal. Mar. 28, 2014).

"However, it is axiomatic that the duty to supplement is triggered only if the materials requested would have been responsive to a discovery request in the first instance." *L.A. Terminals*, 340 F.R.D. at 396 (citing *Apple Inc. v. Wi-LAN Inc*., 2019 WL 4253833, at *5 (S.D. Cal. July 22, 2019)). "Rule 26(e) does not impose a duty to supplement discovery responses where the discovery sought is not responsive to timely propounded discovery requests."  *Id.* As a corollary to this rule, there is no duty to supplement as to materials that were not described with "reasonable particularity" as required under Rule 34(b)(1) of the Federal Rules of Civil Procedure, that is, with sufficient information to put the party receiving the request of what is being requested. *Id.*  at 395-396.

United asserts the late-produced materials were intended to supplement its productions in response to Plaintiffs' interrogatories and requests for production but has not specifically identified the interrogatories and requests for production that each of the late productions was responsive to.  This makes it difficult for the Court to determine whether a duty to supplement even exists as to these materials.  Plaintiffs do not appear to dispute that the claims data and material related to their own sample are the subject of requests for production, but they challenge United's assertion that the materials related to United's Sample were produced to meet its duty to supplement the record.  United argues that it had a duty to supplement as to its own sample

because "Plaintiffs' document requests included dozens of requests—such as RFP Nos. 2 to 52 in their Second Set of Requests for Production, and Nos. 43 to 93 in their Third Set of Requests for Production—that asked for all documents supporting various of United Defendants' contentions in their Answer and all documents supporting United Defendants' affirmative defenses." United Opp. at 7 [Dkt. 174]. According to United, "[t]hose requests would encompass documents relating to United Defendants' set of sample patients." *Id.* While United does not point to specific contentions in the Answer that the late produced materials support, neither do Plaintiffs meaningfully respond to United's assertion in this regard. The Court assumes that the materials produced by United after the close of discovery were called for under one of Plaintiffs' previous requests.

Even assuming that all of the late-produced materials are responsive to one or more of Plaintiffs' requests for production, thus triggering a duty to supplement as to those materials, however, United must also show that its supplementation was "timely" under Rule 26(e)(1)(A). United relies on *Woods v. Google, Inc.*, to suggest that the timing of its productions was justified, but that case merely held that the duty to supplement as to "newly developed information" continues after the discovery cut-off. 2014 WL 1321007, at * 4 (N.D. Cal. Mar. 28, 2014). The court in that case did *not* hold that any supplementation that occurs after the discovery cut-off is timely or even address the question of timeliness. "Although Rule 26(e) requires parties to supplement their disclosures 'in a timely manner,' that phrase 'is not defined by the Rule, and depends on the facts and circumstances of the case.'" *Markson v. CRST Int'l, Inc.,* No. 517CV1261SBSPX, 2021 WL 5969519, at *1 (C.D. Cal. Nov. 23, 2021) (quoting *Crescenta Valley Water Dist. v. Exxon Mobil Corp*., 2013 WL 12095206, at *1 (C.D. Cal. June 24, 2013) (citation omitted)).

Here, the Court finds that the circumstances most relevant to the question of timeliness are: 1) when the relevant request for production was made; 2) when United was or should have been aware of the information that is the subject of the supplementation; and 3) whether the supplementation was delayed due to factors beyond its control. *See id*. (finding disclosure of additional witnesses after close of discovery was untimely and rejecting defendant's assertion that

United States District Court
Northern District of California

timing was justified because the defendant determined the need for these witnesses based on information it learned in depositions and a mediation towards the end of the discovery period, reasoning that "defendant fails to articulate what information it uncovered that led it to consider new arguments, nor does it provide any reason to believe its belated reconsideration of its defense arguments could not have occurred earlier."); *Potlatch Corp. v. United States*, 679 F.2d 153, 156 (9th Cir. 1982) (holding that expert report produced by the government defendant seven weeks after the deadline set by the district court should not have been excluded under Rule 37 because the reasons for the delay were beyond the control of the government, arising out of "the interrelationship between the IRS and the Department of Justice, and the need for the United States Attorney in San Francisco to deal with the Department in Washington" and the district court overestimated the prejudice of allowing the expert to offer the opinions expressed in the report at trial.). The Court addresses each of these factors as it relates to the three types of materials that are at issue here: 1) claims data; 2) materials related to Plaintiffs' Sample; and 3) materials related to United's Sample.

                    a.   Claims Data

As confirmed by the parties at the hearing, the only late-produced claims data is the Excel spreadsheet listing 2,021 newly disclosed claims, which was produced on August 9, 2022, more than three weeks after the discovery cut-off. United did not identify the specific request for production this late-produced claims data was purportedly intended to supplement and therefore, the Court cannot determine the exact date of the relevant request(s). Given that United's first production of claims data occurred on November 19, 2021, Blas Decl. ¶ 10 [Dkt. 174-1], and United has not pointed to any recent requests for claims date, the Court concludes that the requests United contends gave rise to a duty to supplement were made at least a year ago. United explains that the data in the Excel spreadsheet it produced on August 9 came from the Oxford platform rather than the UNET, where claims data produced previously was stored. *Id.* It is silent, however, as to when it became aware of this information (or became aware it was responsive to one of Plaintiffs' requests for production). United also does not offer any evidence that the information produced on August 9 was produced after the discovery cut-off as a result of any

11

circumstances outside of its control that delayed its production. It states in a footnote that "the supplemental Oxford production took longer than anticipated in [its] July 15 letter" [stating it would be produced in "the next week or two"] due to "the different codes the Oxford platform uses to identify Viant/Facility R&C claims[,]" United Opp. at 9 n. 4 [Dkt. 174], but the only evidence on this question in the record is Blas's statement in her declaration that the Oxford platform uses different codes than the UNET platform.  Blas Decl. ¶ 10 [Dkt. 174-1].  Blas does not, however, state that this difference resulted in delays and United does not explain why the use of different codes delayed production or could not have been anticipated.[3]

Because United has not demonstrated that its August 9, 2022 supplementation of the record was timely under Rule 26, the Court finds that United has failed to demonstrate that late production of this claims data was substantially justified under Rule 37.

### b.   Materials Related to Plaintiffs' Sample

It is not clear exactly which of the late-produced materials are related to Plaintiffs' Sample, but it appears to be undisputed that some of them are, and that they include plan documents, administrative records, and audio recordings produced between July 18 and July 29, 2022, as set forth in the timeline, above.  The Court addresses the audio recordings and the administrative records separately as the circumstances surrounding the production of these two categories are slightly different.

### i.   Audio Recordings

The audio recordings related to Plaintiffs' Sample were originally requested by Plaintiffs on January 27, 2022.  *See* United Opp. at 4 [Dkt. 174]; Plaintiffs' Reply at 4 [Dkt. 175].[4] It was not until April 20, 2022, however, that the parties agreed on a sample size of 25 and Plaintiffs provided a chart identifying the individual sample members.  Thus, the question of timeliness as to these audio recordings turns on whether United provided them in a timely manner after that date.

---

[3] At oral argument, United's counsel explained that this particular claims data was a "minor part of the case," essentially conceding that the late production resulted, at least in part, from the fact that production of this information was not considered a high priority.
[4] The January 27, 2022 request for production of the audio recordings of the initial sample of 87 patients was not supplied by the parties and is not in the record.

United States District Court
Northern District of California

United contends that it did, and that to the extent that there were delays in producing the recordings it was because of the difficulty of tracking them down and Plaintiffs' failure to provide useful information to help United find the recordings, which was outside of United's control. *See* United Opp. at 8-9 (citing Blas Decl. ¶ 12 [Dkt. 174-1] (asserting that United "did not have information to begin searching for the call recordings until late April 2022 and did not have the materials [it] needed to locate many of them until after the administrative record productions were complete, because the information Plaintiffs provided to search for those recordings was not sufficient."). The record tells a very different story.

As discussed above, on February 28, 2022, United demanded that Plaintiffs provide specific and detailed information about the audio recordings to help locate them. The communications in the record reflect that Plaintiffs' counsel attempted in good faith to comply with these demands, sending information to United's counsel on April 20 and 26, 2022, even while suggesting that United might not need all of the information it requested to find the recordings, and emphasizing the difficulty they had had collecting the information. According to United's counsel, Plaintiffs' efforts continued as late as June 16, 2022, when Plaintiffs' counsel sent additional information to United to help them find the recordings. United now contends it failed to initially locate the audio recordings because the information supplied by Plaintiffs was "not sufficient" but does not explain why it sent Plaintiffs on what apparently was a wild goose chase that went on for at least two months. As Plaintiffs point out, United appears to have been able to track down the audio recordings for its own sample patients in a matter of a few weeks (and without any information from Plaintiffs to assist them).

Even more striking, United vaguely suggests that it could not have reviewed the administrative records of the 25 sample members that apparently contained the information needed to find the audio recordings until after it produced those records but offers no explanation of why it could not have reviewed those records promptly once the sample members were identified, in late April, and found the recordings before the discovery cut-off. Further, while United repeatedly emphasized to Plaintiffs' counsel the difficulty of locating the audio recordings, it has not offered any evidence in connection with the instant motion to support this representation; nor has it

United States District Court
Northern District of California

1  pointed to specific facts showing this was true.  Given that the administrative records United used

2  to locate the audio recordings were in its possession all along, the Court concludes that its failure

3  to locate the late produced audio recordings for these individuals was not due to circumstances

4  outside of United's control but instead, to United's own lack of diligence. Therefore, the Court

5  concludes that these materials were not timely produced and that the delay was not substantially

6  justified.

ii.   Plan documents and administrative records

8      The plan documents and administrative records related to Plaintiffs' Sample appear to have

9  been requested on May 4, 2022, two weeks after Plaintiffs identified the individuals in the sample,

10  in Plaintiffs' Sixth Request for Production.  Thus, United had approximately ten weeks to collect

11  the requested documents before the discovery cut-off.  Yet the record reflects that United

12  produced an indeterminate number of such documents (it is impossible to determine how many on

13  the current record but it could be in hundreds or the thousands) between July 18 and July 22, that

14  is, a few days to a week late.  There is no suggestion that the late production was the result of any

15  new information obtained by United that justified the delay; nor does United point to any

16  circumstances beyond its control that caused the delay.  Indeed, United offers no explanation

17  whatsoever for its failure to produce these documents by the July 15, 2022 deadline.  Therefore,

18  the Court concludes that to the extent that United produced these materials to supplement its prior

19  disclosures under Rule 26(e), the supplementation was untimely and the late production was not

20  substantially justified under Rule 37.

c.   Materials Related to Defendants' Sample

22      In support of United's assertion that its production of materials related to its own sample

23  was intended to satisfy its duty to supplement under Rule 26(e) it points to requests for production

24  in Plaintiffs' Second and Third Requests for Production, which were apparently propounded

25  sometime before November of 2021.  According to United, however, it only decided to create its

26  own sample when it realized Plaintiffs' sample was not random – something it could not have

27  known before April 20, 2022.  But United does not offer any explanation for why it could not have

28  produced materials related to its own sample in the ten (plus) weeks that remained before the

14

discovery cut-off, much less identify circumstances beyond its control for its failure to meet the deadline.  Therefore, the Court finds that the production of these material after the discovery cut-off was untimely and not substantially justified under Rule 37.

. . .

In sum, the Court concludes that United has not established that the late productions that are the subject of Plaintiffs' request for preclusion sanctions were substantially justified.

### 2.  Whether Late Production Was Harmless

Plaintiffs contend United's late productions were not harmless because they have been "deprived of the ability to ask any of United's witnesses about these untimely productions, have insufficient time to fully review these productions prior to the class certification deadlines, and have not had the ability to otherwise challenge these productions."  Motion at 3 [Dkt. 165].  The Court agrees.

As a general rule, "[d]isruption to the schedule of the court and other parties . . . is not harmless."  *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005).  Further, because ""substantial document production after the close of discovery frequently requires the adjustment of the pretrial and trial schedule to allow the receiving party an opportunity to address the late production[,]" it is "unfair to allow the party which has failed to make discovery to shift to the innocent party the burden to file a motion to adjust the schedule" in the absence of "an approved stipulation."  *Techsavies, LLC v. WDFA Mktg. Inc.*, No. C10-1213 BZ, 2011 WL 723983, at *3 (N.D. Cal. Feb. 23, 2011).  The prejudice is heightened here by the fact that the district court had previously informed the parties that "[n]o further extensions [would] be granted absent extraordinary and compelling reasons."  *See* Dkt. 130.

Under such circumstances, Plaintiffs might reasonably conclude that a request for an extension of deadlines in the case would not be well-received by the district judge, limiting any possible relief to an order precluding the documents and – to the extent that obtaining such an order was far from guaranteed – placing Plaintiffs in the position of having to review in a week or two a large quantity of new materials and address them (without the benefit of being able to ask United's witnesses about them) in their class certification motion.  This task was made even more

United States District Court
Northern District of California

1   burdensome by the way the material was produced, mixing materials relevant to Plaintiffs' Sample

2   with materials related to United's Sample and even mischaracterizing the contents of some of the

3   late productions in the letters that accompanied them.  *See, e.g.*, Blas Decl., Ex. 6 (July 29, 2022

4   stating that production was of "call recordings for members identified in the claims sample[,]"

5   implying they were audio recordings related to Plaintiffs' Sample even though the audio

6   recordings were largely related to United's Sample).

7          United is dismissive of Plaintiffs' assertions of prejudice, observing that Plaintiffs have not

8   pointed to specific challenges they would have made or questions they would have asked in

9   depositions had the materials been produced before the discovery cut-off.  United Opp. at 1 [Dkt.

10  174].  To provide such specific examples, however, Plaintiffs would have had to have conducted a

11  thorough review of the new materials *before* the deadline set by the undersigned to file their

12  motion to compel, which was set on an accelerated schedule due to the imminent class

13  certification motion deadlines (and which was due just a week before Plaintiffs' class certification

14  motion).  The point is, Plaintiffs have not had sufficient time to thoroughly review the new

15  materials, which are voluminous, and it is *United's* burden to show its late productions were

16  harmless, not Plaintiffs'.

17         Nor does United meet its burden of showing the late production was harmless based on

18  vague statements by United's counsel that the production contained "a number" of documents that

19  were similar to ones that were timely produced and were addressed in depositions of United

20  witnesses.  United Opposition at 9-10 [Dkt. 174]; Blas Decl. ¶¶ 12-14 [Dkt. 174-1].  It appears to

21  be undisputed that many of the documents (perhaps thousands) were *not* similar to previously

22  produced documents.  Furthermore, to the extent that United did not identify the patients in its

23  own Sample until July 22, 2022, a week after fact discovery closed, it is disingenuous for United

24  to suggest that Plaintiffs had a reasonable opportunity to depose its witnesses as to the late-

25  produced documents and audio-recordings related to that sample.

26         United also says Plaintiffs were not harmed by their late production because Plaintiffs can

27  explore the new claims data during expert discovery.  United Opp. at 10 [Dkt. 174].  But as

28  Plaintiffs point out, the opportunity to "explore" this information during expert discovery "does

not mitigate the prejudice to Plaintiffs in connection with the class cert[ification] motion Plaintiffs already had to file" as "Plaintiffs expect Defendants to rely on their own sample to oppose class certification and United has affirmed its intent to do so in its brief, stating that the late produced documents must not be excluded because 'those documents are necessary to the Court's consideration of class certification.'" Reply at 5 [Dkt. 175] (quoting United Opp. at 11 [Dkt. 174]).

In sum, the Court concludes United's late productions have resulted in significant prejudice to Plaintiffs and therefore are not "harmless" under Rule 37(c).

### 3.   Whether Preclusion or a Less Drastic Sanction is Warranted

a.   Legal Standard

Even where a party cannot show that its failure to meet its Rule 26 obligations was not substantially justified or harmless, it is not a foregone conclusion that preclusion sanctions will be imposed under Rule 37. *Silvagni*, 320 F.R.D. at 242 (citing *Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011) ("Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless.")). Rather, in determining whether to impose preclusion sanctions, district courts may consider the following factors identified by the Ninth Circuit: "(1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions." *Jackson*, 278 F.R.D. at 594 (citing *Wendt v. Host International, Inc.,* 125 F.3d 806, 814 (9th Cir.1997)). In addition, "[a]lthough a finding of willfulness or bad faith is not required in order to impose the evidence preclusion sanction, willfulness or bad faith is clearly a factor in deciding the appropriate level of sanction." *Id.*

As discussed above, the district court judge has made clear that maintaining the schedule in this case and avoiding further delays is a matter of high priority. Thus, the first two factors support the imposition of preclusion sanctions. Likewise, the prejudice to Plaintiffs arising from the late production is substantial, as discussed above, and therefore that factor also supports preclusion. For the reasons discussed below, the Court also finds that United acted in bad faith

1   and that less drastic sanctions will not effectively address the harm to Plaintiffs under the

2   circumstances of this case.  Therefore, the public policy favoring disposition of cases on the merits

3   is significantly outweighed by the other factors and preclusion of the late-produced materials is

4   warranted.

5                              i.   Lack of Good Faith

6           For the reasons set forth below, the Court finds that United's conduct with respect to the

7   late productions was intentional and that in some respects, it was not in good faith.

8           First, the Court is not persuaded by United's assertion that it acted in good faith because it

9   was "in communication with Plaintiffs about the status of these supplemental productions and

10  previewed for Plaintiffs on multiple occasions that some small delays were anticipated due to

11  factors beyond United Defendants' control."  United Opp. at 1 [Dkt. 174].   United's unilateral

12  pronouncements that it would be producing additional materials after the discovery cut-off did not

13  describe any circumstances beyond its control and, as discussed above, United has not

14  demonstrated that its late productions were, in fact, the result of circumstances beyond its control.

15  Furthermore, United mischaracterized some of the late productions, minimizing the volume of

16  new materials it would be producing and underestimating the time it would take to produce them.

17  For example, in its July 15, 2022 letter to Plaintiffs' counsel, United's attorneys informed

18  Plaintiffs that United intended to make a "small supplemental production of claims data in the next

19  week or two."  Blas Decl., Ex. 5 [Dkt. 174-6].  Instead, it disclosed over 2,000 new claims over

20  three weeks later, on August 9, just one week before Plaintiffs' class certification motion was due.

21  Far from illustrating United's lack of bad faith, these "previews" of productions that would occur

22  after the discovery cut-off illustrate United's failure to discuss with Plaintiffs' counsel whether the

23  late productions were permissible or seek agreement to them from Plaintiffs' counsel.

24          Another example of United's lack of good faith is the timing of its disclosure of its sample:

25  although United was aware from late January 2022 that Plaintiffs would be relying on a patient

26  sample to support its positions, United did not inform Plaintiffs of its intent to create its own

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

sample until June 1, 2022,[5] and did not disclose the actual sample members until a week after fact discovery closed.  United explains this delay on the basis that it only decided it needed to create a sample of its own when it learned that Plaintiffs' sample was not a truly random sample, on April 20, 2022. *See* United Opp. at 3 [Dkt. 174] ("The reason United Defendants decided to generate their own sample was simple: Plaintiffs' sample was not 'random,' but instead consisted of patients largely selected from providers previously represented by Plaintiffs' lead counsel in this matter, in many cases against entities related to United Defendants.").  But there are no communications in the record suggesting United ever raised this issue with Plaintiffs, even though the negotiations about Plaintiffs' sample began well before April 20.  Thus, it is difficult to understand why United was surprised by Plaintiffs' choice of sample patients and couldn't have anticipated long before April 20 that it would want to rely on its own sample to advance its positions.  Even taking at face value, however, United's assertion that it couldn't have known until April 20 that it would need to generate its own random sample, United offers no explanation for the fact that it did not disclose the specific patients in its sample or complete its production of documents related to its sample before the July 15 discovery cut-off.  The Court concludes United's timing as to these disclosures reflects bad faith.[6]

ii.   Availability of less drastic sanctions

Under Rule 37, as an alternative (or in addition) to the imposition of preclusion sanctions, the district court "(A) may order payment of the reasonable expenses, including attorney's fees,

---

[5] United states in its Opposition brief, filed on August 18, that "Plaintiffs were on notice of United Defendants' intent to generate their own sample months ago and cannot be heard to complain now." Dkt. 174, Opp. at 2.  The only evidence the Court has found to support this representation is a statement in a June 1, 2022 letter from United's counsel to Plaintiffs' counsel that it would "also be producing administrative records for a random sample of plan members, in addition to those selected by Plaintiffs' counsel." Dkt. 159-5.  While technically, just over two months can be characterized as "months[,]" the reality is that this disclosure was made just six weeks before the fact discovery cut-off.  More importantly, United did not actually disclose the specific patients in its sample until a week *after* that deadline.

[6] Plaintiffs contend the inclusion in United's late productions of materials that relate to negotiated claims, which they assert are irrelevant to Plaintiffs' claims, is a further indication of bad faith.  The Court finds, however, that the record is insufficiently developed to draw any firm conclusions as to when it was – or should have been – clear to United that such claims were outside the scope of Plaintiffs' case.  Therefore, on the current record the Court does not find that United acted in bad faith in this respect.

caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(c)(1).  Here, the Court finds that sanctions less drastic than preclusion do not offer a meaningful remedy in the face of United's failure to comply with its Rule 26 obligations and the Court's deadlines.

United contends the Court should deny Plaintiffs' request for Rule 37 preclusion sanctions as premature because "[t]here is thus ample time to cure any prejudice to Plaintiffs, to the extent the Court finds that any such prejudice exists" during expert discovery.  United Opp. at 13 [Dkt. 174].  Given that United has made clear it intends to rely on the material it produced after the discovery cut-off in its opposition to class certification (which is due on September 28), the remedy United proposes is clearly inadequate.  Further, neither side has pointed to any other remedy short of preclusion that will address the harm caused by United's late production.  Nor is it apparent to the Court that there is an appropriate remedy that is less drastic than preclusion.

While a targeted set of sanctions that falls short of precluding all the late-produced materials might be crafted based on more complete information about the contents and significance of the materials United produced after the discovery cut-off, such sanctions would require, at a minimum, that Plaintiffs be permitted time to conduct a thorough review of the materials; it might also require that Plaintiffs be permitted to conduct additional depositions aimed at the new materials and even to amend its class certification motion.  Clearly, accommodating these changes would derail the schedule the Court has set in this case.  It would also reward United for its gamesmanship.  For these reasons, the Court concludes that less drastic remedies than preclusion would not be appropriate.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' request that United be precluded under Rule 37 from relying on the materials it produced after the July 15, 2022

20

1   discovery cut-off, which are precluded from use in this case for all purposes.[7]

2       **IT IS SO ORDERED.**

3

4   Dated: September 21, 2022

5

6   _____

7   JOSEPH C. SPERO
    Chief Magistrate Judge

_____

[7] If, however, the district judge at a later stage of this case orders that non-expert discovery be reopened, the parties should meet and confer on the question of whether modification of the preclusion sanctions imposed herein is appropriate.  If the parties agree that some or all of the evidence that the Court has precluded should be allowed due to the reopening of discovery, they should submit a stipulation to that effect.  If they cannot agree on this question, either party may bring a motion for reconsideration before the undersigned.