1<br>
2<br>
3<br>
4<br>
5<br>
6<br>
7<br>
8<br>
9<br>
10<br>
11<br>
12<br>
13<br>
14<br>
15<br>
16<br>
17<br>
18<br>
19<br>
20<br>
21<br>
22<br>
23<br>
24<br>
25<br>
26<br>
27<br>
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LD, et al.,

        Plaintiffs,

    v.

UNITED BEHAVIORAL HEALTH, et al.,

        Defendants.

Case No.  20-cv-02254-YGR   (JCS)

**ORDER RE MOTION TO COMPEL (MULTIPLAN)**

Re: Dkt. No. 165

## I.  INTRODUCTION

In its September 21, 2022 Order [dkt. 192], the Court ruled on Plaintiffs' request for preclusion sanctions against the United Defendants in their Motion to Compel and for Sanctions Pursuant to Fed.R.Civ.P. 37 ("Motion").  In this Order, the Court addresses the remaining issues raised in the Motion, which relate to the adequacy and timeliness of Defendant MultiPlan's privilege log, which was produced to Plaintiffs on July 22, 2022.   The Court held a hearing on September 30, 2022 to address these issues.  Its rulings and guidance are set forth below.

## II.  BACKGROUND

The discovery disputes addressed in this Order were first raised in the parties' July 31, 2022 joint discovery letter [dkt. 159], which also addressed discovery disputes with the United Defendants.   In its August 4, 2022 Order [dkt. 161], the Court found that a number of the issues raised in the letter were untimely and that Plaintiffs had not shown good cause for the delay. This included Plaintiffs' challenge to a clawback demand by MultiPlan at a July 14, 2022 deposition.[1]

---

[1] Based on its consideration of the papers filed in connection with the instant Motion, the Court RECONSIDERS its prior holding as to the timeliness of Plaintiffs' challenge to MultiPlan's clawback demand at the Crandell deposition on July 14, 2022.  The record reflects that MultiPlan did not provide a separate clawback privilege log at the time of its demand but instead listed these

United States District Court
Northern District of California

1    On the other hand, the Court found that there was good cause for the delay as to, *inter alia*,

2    Plaintiffs' challenge to the adequacy of MultiPlan's privilege log.  The Court therefore ordered

3    full briefing on that dispute, ordering Plaintiffs to file a motion to compel by August 11, 2022.

4        In the meantime, on August 5, 2022, the Court issued an order containing rulings and

5    guidance in connections with a similar challenge to privilege logs produced by the United

6    Defendants, which was first raised in a joint discovery letter filed on July 1, 2022 and was the

7    subject of Plaintiffs' July 8, 2022 motion to compel [dkt. 144].  Plaintiffs and United have been

8    meeting and conferring in connection with their privilege dispute since the issuance of the August

9    5, 2022 Order in an effort to narrow or resolve their privilege disputes.

10       In the Motion, Plaintiffs assert the late production of MultiPlan's privilege log – a week

11   after the July 15, 2022 discovery cut-off and many months after MultiPlan's first production of

12   documents, in March 2022 – should be found to have resulted in waiver of any privilege or work

13   product protections claimed by MultiPlan under the test set forth in *Burlington N. & Santa Fe Ry.*

14   *Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Motion at 7-11.

15   Plaintiffs argue, in the alternative, that MultiPlan's privilege log does not contain sufficient

16   information from which to establish that the withheld documents are privileged and in some cases,

17   suggests MultiPlan has improperly withheld documents that are primarily for a business purpose

18   or are subject to the fiduciary exception to attorney-client privilege.[2]  *Id.*  at 11-16.  Plaintiffs

19   further contend that MultiPlan's assertions of protection under the work product doctrine also fail

20   as MultiPlan has not provided facts showing that these documents were prepared specifically in

21   anticipation of litigation.  *Id.* at 16-17.

22       In its Opposition, MultiPlan rejects Plaintiffs' assertion that it has waived privilege and

23   work product protection under *Burlington* due to its delay in producing its privilege log.

24

25   ────────────────

26   documents for the first time on the privilege log that was provided to Plaintiffs on July 22, 2022.
     Therefore, the Court's finding that there was good cause to consider the arguments related to the
     late privilege log generally also applies to the clawback documents.  The Court's rulings and
27   guidance herein thus does not exclude those documents.
     [2] The Court addressed the primary purpose doctrine and the fiduciary exception to attorney client
28   privilege at length in its August 5, 2022 Order addressing the adequacy of United's privilege logs
     at pp. 19-31.

United States District Court
Northern District of California

1    MultiPlan Opposition at 3-7.  It further contends it has adequately supported its claims of privilege

2    and work product protection, both in its privilege log and based on a declaration by Marjorie

3    Wilde, Senior Counsel for MultiPlan, filed in support of MultiPlan's Opposition.  *Id.* at 7-10.

4    MultiPlan argues that the primary purpose doctrine does not apply to the documents it has

5    withheld and that as to the documents withheld as work product, "it is apparent from the

6    documents themselves (as well as from the Declaration of Ms. Wilde), that they were created for

7    or in anticipation of litigation." *Id.*  at 7.  Furthermore, MultiPlan asserts, work product protection

8    applies to anticipated litigation regardless of "whether the litigation is judicial or administrative in

9    nature." *Id.* As to the fiduciary exception, MultiPlan argues that it is not applicable because the

10   Second Amended Complaint does not contain specific allegations indicating that MultiPlan is an

11   ERISA fiduciary. *Id.* at 8.

12   **III.     ANALYSIS**

13        **A.     Legal Standards**

14        A party asserting privilege must "describe the nature of the documents . . . in a manner

15   that, without revealing information itself privileged or protected, will enable other parties to assess

16   the claim." Fed. R. Civ. P. 26(b); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*

17   *for Dist. of Mont*., 408 F.3d 1142, 1148 (9th Cir. 2005) (a party claiming privilege must "provide

18   sufficient information to enable other parties to evaluate the applicability of the claimed privilege

19   or protection"). Typically, this is done using a privilege log that identifies "(a) the attorney and

20   client involved, (b) the nature of the document, (c) all persons or entities shown on the document

21   to have received or sent the document, (d) all persons or entities known to have been furnished the

22   document or informed of its substance, and (e) the date the document was generated, prepared, or

23   dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). However, a party

24   may also substantiate a claim of privilege by other means, including declarations that "establish

25   the purpose of the communication or the specific role of the sender and each individual recipient."

26   *Apple Inc. v. Samsung Elecs. Co*., 306 F.R.D. 234, 237 (N.D. Cal. 2015).

27        Under Rule 34 of the Federal Rules of Civil Procedure, a party has 30 days from service to

28   respond to a request for production of documents, Fed. R. Civ. P 34(b)(2)(A), and the Ninth

United States District Court
Northern District of California

1   Circuit has held that the 30-day time limit for responding to document requests serves as a

2   "default guideline" for service of a privilege log or other disclosure that satisfies the requirements

3   of Rule 26(b)(5)(A).  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408

4   F.3d 1142, 1149 (9th Cir. 2005).  In *Burlington*, the court explained that the 30-day guideline does

5   not establish a "a per se waiver rule that deems a privilege waived if a privilege log is not

6   produced within Rule 34's 30-day time limit."  *Id.*  Instead, district courts are to "make a case-by-

7   case determination," considering the following factors:  1) "the degree to which the objection or

8   assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each

9   of the withheld documents is privileged (where providing particulars typically contained in a

10  privilege log is presumptively sufficient and boilerplate objections are presumptively

11  insufficient);" 2) "the timeliness of the objection and accompanying information about the

12  withheld documents (where service within 30 days, as a default guideline, is sufficient);" 3) "the

13  magnitude of the document production;" and 4) "other particular circumstances of the litigation

14  that make responding to discovery unusually easy . . . or unusually hard."  *Id.*

15      The *Burlington* court instructed that these factors "should be applied in the context of a

16  holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well

17  as tactical manipulation of the rules and the discovery process."  *Id.*  The court cautioned that

18  "[t]hey should not be applied as a mechanistic determination of whether the information is

19  provided in a particular format."  *Id.*  The court further held that "application of these factors shall

20  be subject to any applicable local rules, agreements or stipulations among the litigants, and

21  discovery or protective orders."  *Id.*

22      **B.    Whether MultiPlan Waived Privilege and Work Product Protection As a Result
            of Delay in Producing a Privilege Log**

23

24      Based on its consideration of the factors listed above, the Court finds that, while a close

25  call, MultiPlan has not waived its claims of privilege and work product protection due to its late

26  production of its privilege log.

27      With respect to the first *Burlington* factor, the privilege log produced by MultiPlan does

28  not provide a sufficient basis for determining whether the documents listed in it were properly

4

United States District Court
Northern District of California

withheld.  Instead, many of the entries are too vague to determine whether the corresponding document is privileged and some of the descriptions even point to the opposite conclusion, suggesting that the withheld documents are primarily for a business purpose or fall within the fiduciary exception (discussed further below). Similarly, the privilege log does not provide sufficient information to determine whether documents withheld on the basis of anticipated litigation involved litigation that was sufficiently imminent to justify withholding the documents. And while the Wilde Declaration offered in support of MultiPlan's Opposition brief offers additional details, many of these questions and problems persist even with the additional information supplied in the Wilde Declaration.

The second *Burlington* factor also points in favor of a finding of waiver, though the delay in this case is less extreme than in some cases in which courts have declined to find waiver.  *See, e.g., McKeen-Chaplin v. Provident Savings Bank, FSB*, No. 2:12–cv–03035 GEB AC, 2015 WL 502697, at *11 (E.D. Cal. Feb. 5, 2015) (finding a seven-month delay in producing a privilege log "not so unreasonable that waiver of . . . attorney–client privilege is justified");  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) (delay in producing privilege log of over a year did not result in waiver).  MultiPlan produced its privilege log on July 22, 2022, which is a week after the fact discovery cut-off and more than 30 days after all of the productions listed in the Motion but one.  *See* Motion at 10 (reflecting that between March 11, 2022 and June 2, 2022 MultiPlan produced six batches of documents, totaling 3,150 documents, with a final batch of 124 documents produced on July 15, 2022).[3] The Wilde Declaration, supplying more detailed information about some of the withheld documents, was not filed until August 25, 2022 – more than a month after the privilege log was produced and more than five months after MultiPlan's first production of documents.

MultiPlan challenges Plaintiffs' assertion that the privilege log was four months late, asserting that "[i]t is certainly not the case that all or even many of the privilege and/or work

---

[3] The productions are as follows: 1) March 11, 2022 – 241 documents; 2) March 25, 2022 – 143 documents; 3)  April 12, 2022 – 643 documents; 4) April 29, 2022 – 837 documents; 5)  June 1, 2022 – 1,059 documents; 6) June 2, 2022 – 227 documents; 7) July 15, 2022 – 124 documents. Motion at 10.

United States District Court
Northern District of California

1  product immunity claims made by MultiPlan occurred in connection with its first production in

2  March of this year, or even in connection with subsequent productions. Instead, the process was a

3  cumulative one." MultiPlan Opp. at 3. Yet there is no evidence in the record that allows the

4  Court to determine which production any particular document was withheld from and it is not

5  clear that such a determination would even be possible at this point. Rather, counsel's explanation

6  of MultiPlan's process indicates that the documents that *might* be privileged or work product were

7  pulled from the documents MultiPlan reviewed on a rolling basis and they simply accumulated

8  until MultiPlan's attorneys made a final determination, in late June, of the documents it would

9  withhold. At that point, according to counsel, MultiPlan determined that additional review was

10  appropriate in light of the issues raised in connection with United's privilege log, resulting in

11  further delay of approximately a month.

12      In determining whether a finding of waiver is appropriate, the Court also considers the fact

13  that the privilege log was not produced until after the fact discovery cut-off. Where a party

14  produces its privilege log outside of the 30-day default period *and* after the discovery cut-off, this

15  fact has been found to support a finding that privilege was waived. For example, in *Oculu, LLC v.*

16  *Oculus VR, Inc.*, the court held that the second *Burlington* factor favored waiver (and ultimately

17  found that privilege was waived) where the plaintiff did not produce its privilege log until two

18  weeks after the discovery cut-off and where plaintiff's counsel had informed the defendant during

19  discovery that he had "confirm[ed] that there are no privileged communications that are

20  responsive to any document requests." No. SACV140196DOCJPRX, 2015 WL 12720305, at *12

21  (C.D. Cal. May 8, 2015), report and recommendation adopted, No. SACV140196DOCJPRX, 2015

22  WL 12731919 (C.D. Cal. May 27, 2015 ). In reaching this conclusion, the court observed that the

23  plaintiff's "late disclosure of the privilege log prejudice[d] [the] [d]efendant because it [was] now

24  precluded from testing the assertion of privilege through discovery." *Id.* (citing *Bullion Monarch*

25  *Mining, Inc. v. Newmont USA Ltd*., 271 F.R.D. 643, 649 (D. Nev. 2010) (holding that second

26  *Burlington* factor weighed in favor of waiver when privilege log was produced seven months after

27  close of discovery where summary judgment briefing was already underway)). The same is true

28  here, though in this case there is no evidence the MultiPlan misled Plaintiffs as to whether it

6

United States District Court
Northern District of California

1  intended to withhold any documents and it appears to be undisputed that Plaintiffs understood that

2  MultiPlan *would* be producing a privilege log.

3        In *Sherman v. Regents of Univ. of California,* also cited by Plaintiffs, the court found that

4  privilege was waived where the defendant first asserted privilege in a log that contained

5  boilerplate objections and was produced seven days after the close of discovery. No. 20-CV-

6  06441-VKD, 2022 WL 875652, at *3 (N.D. Cal. Mar. 24, 2022).  In that case, the court found that

7  there were no mitigating circumstances for the delay, finding no evidence to support the

8  withholding party's assertion that it had worked "diligently" to produce its log in a timely manner.

9  *Id.* at *4.  The court also noted that at the initial case management conference it had directed the

10  parties to its standing order, which specifically cautioned that "the parties should agree on interim

11  and final dates for the exchange of privilege logs that permit any disputes about claims of privilege

12  or work product protection to be addressed in advance of the discovery cut-off."  *Id.*  Here, the

13  Court's standing order spells out that privilege logs must be produced "promptly" and that

14  "[f]ailure to furnish [the information required to support a claim of privilege] at the time of the

15  assertion will be deemed a waiver of the privilege[,]" though it does not  specifically instruct the

16  parties to agree on a date for production of the privilege log that is before the discovery cut-off.

17  Standing Order, § 15.E.

18        MultiPlan's delay is somewhat mitigated by the fact that the production was on a rolling

19  basis and MultiPlan provided the log to Plaintiffs only a week after its final production.   In

20  *Khasin v. Hershey Co*., the court found that the late production of the privilege log was mitigated

21  by the fact that the defendant's "document production was ongoing, and the log was produced

22  within five weeks of its final production." 512CV01862EJDPSG, 2014 WL 690278, at *5 (N.D.

23  Cal. Feb. 21, 2014).  The court relied, in part, on the failure of the receiving party to alert the

24  producing party that it objected to the provision of the privilege log at the end of its production,

25  noting that "[i]n previous cases where privilege has been waived due to untimeliness, the receiving

26  party had generally asked for a log and been ignored or suffered delays after that request." *Id*.

27  Here, Plaintiffs' counsel informed the Court at oral argument that counsel did, in fact, make

28  repeated requests for MultiPlan's privilege log.  These requests are not in the record, however.

United States District Court
Northern District of California

Next, the Court addresses the third *Burlington* factor, the magnitude of the document production. As a preliminary matter, the Court notes that there is some inconsistency in the case law as to whether this factor looks to the magnitude of production in the entire case as compared to the magnitude of the documents that have been withheld or instead, compares the magnitude of the *withholding party's* production in the case to the magnitude of the documents it has withheld. In *Goro*, which involved multiple defendants, the court stated that "most courts analyze this factor in terms of the magnitude of the document production in the entire case compared to the magnitude of the specific documents subject to the waiver analysis." 2019 WL 6252499, at *14 (citing *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035 GEB AC, 2015 WL 502697, at *11 (E.D. Cal. Feb. 5, 2015); *Jumping Turtle Bar & Grill v. City of San Marcos*, No. 10-CV-270-IEG BGS, 2010 WL 4687805, at *4 (S.D. Cal. Nov. 10, 2010)). In that case, the court found this factor was neutral because only 250 pages had been withheld while the overall production in the case (based on how many discovery disputes had been brought to the court's attention) was "substantial." *Id.*

On the other hand, while the courts in both *McKeen-Chaplin* and *Jumping Turtle* referred generally to the magnitude of production in the case in describing this *Burlington* factor, both went on to specifically compare the number of documents withheld to the number of documents that *that* party had produced in the case. In particular, in *McKeen Chaplin*, the court found this factor did not support waiver because the defendant had produced "over 12,000 pages of documents" and only listed three documents on its privilege log. 2015 WL 502697, at *11. In *Jumping Turtle*, the court found this factor did not support waiver where the defendant had produced over 10,000 pages of documents and withheld only 500 pages of documents. 2010 WL 4687805, at *4.

The undersigned finds the approach taken in *McKeen-Chaplin* and *Jumping Turtle* to be more consistent with the reasoning of *Burlington* than the approach taken in *Goro*. In particular, in *Burlington*, the third factor appears to have been based on the recognition that "in discovery-intensive litigation, compiling a privilege log within 30 days may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith." 408 F.3d

8

United States District Court
Northern District of California

1    at 1149 n. 3.   To the extent that this factor is intended to gauge the difficulty of producing a

2    privilege log within 30 days based on counsel's overall discovery obligations, it would make little

3    sense to compare the magnitude of one party's withholding with the magnitude of production by

4    multiple defendants who are represented by different counsel, as it the case here. It would make

5    even less sense to compare the magnitude of one party's withholding to the production of *all* of

6    the parties in the case, which would shed even less light on the question of whether the 30-day

7    default guideline is achievable in light of the overall discovery obligations faced by counsel.

8    Therefore, the Court concludes that the relevant comparison is the number of documents on the

9    privilege log – which neither side has counted but appears to be around 600 documents – and the

10   number of documents MultiPlan has produced in this case (according to Plaintiffs, 3,274).   In

11   comparison to the cases discussed above, the Court finds that the overall number of documents

12   MultiPlan has produced is relatively small, while the number of documents on its privilege log is

13   significant.   Therefore, the Court concludes that this factor is neutral.

14          Finally, the Court is not aware of any circumstances that make responding to discovery

15   particularly easy or difficult and therefore, this factor is neutral.

16          Considering all of the factors discussed above, the Court finds that while MultiPlan has not

17   offered a particularly convincing explanation for its delay in producing its privilege log, a finding

18   of waiver would be too drastic a sanction under the circumstances.   Therefore, the Court rejects

19   Plaintiffs' invitation to find that MultiPlan has waived its assertions of privilege and work product

20   protection as to all of the documents listed on its privilege log.

21          **C.    Whether Privilege Log is Sufficient**

22          Plaintiffs contend MultiPlan's privilege log falls short for a multitude of reasons, including

23   vague and generic assertions of privilege, Motion at 9 (citing PRIV-000007 to PRIV-000013;

24   PRIV-000441 to PRIV-000452; PRIV000055);  failure to list any senders or recipients who were

25   attorneys as to some communications for which attorney-client privilege is claimed, *id.* at 12

26   (citing PRIV-000413, PRIV-000414);  failure to include facts establishing that confidentiality was

27   preserved as to some communications, *id.*; failure to explain why attachments to attorney-client

28   communications are privileged, *id.* (citing PRIV-000430 to PRIV-000439);  and the "use [of]

9

patently pretextual claims of attorney-client privilege to shield business discussions from discovery." *Id.* (citing PRIV-000016). Plaintiffs contend the documents clawed back at the July 14, 2022 deposition of Sean Crandell, which they reviewed in advance of that deposition, fall into the last category. *Id.* at 14 ("These documents did not have the giving or receiving of legal advice as their primary purpose; instead, there were primarily for the purpose of giving or receiving *business* advice.").

Plaintiffs also reject MultiPlan's representations (repeated in MultiPlan's Opposition brief) that "none of the document for which it claims privilege concerned plan administration." *Id.* at 15 (citing PRIV-000003 to PRIV-000006, PRIV-000014 to PRIV-000017). They point to the numerous references in the privilege log to "pricing methodology" as an indication that many of the withheld documents *do* involve plan administration and as such, implicate the fiduciary exception to attorney-client privilege. *Id.* (citing *Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994)). They argue that "[t]he implementation and decisions concerning MultiPlan's involvement in United's 'R&C' program and the use of Viant OPR are assuredly issues related to plan administration." *Id.* Plaintiffs further assert that to the extent that MultiPlan relies on a threat of litigation as to these documents, its reliance is misplaced because it has not identified any specific litigation or shown that it is imminent. *Id.* at 16 (citing *Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2016 WL 258604, at *7 (N.D. Cal. Jan. 21, 2016)).

Finally, Plaintiffs contend MultiPlan has not established that work product protection applies to the withheld documents because the fiduciary exception applies under that doctrine as well, including documents prepared in response to requests for information from government entities, and MultiPlan has not demonstrated that any of the documents withheld as work product were created for specific litigation that was imminent or pending. *Id.* at 16-17.

As discussed above, MultiPlan asserts it has provided sufficient information to support its privilege claims and denies that it has claimed attorney-client privilege as to business communications, denies that it is has withheld any documents that fall within the fiduciary exception (because it is not a fiduciary) and claims that as to the documents it has withheld as work product, it is apparent from the documents themselves they were prepared in anticipation of

litigation. But neither the privilege log nor the Wilde Declaration is sufficient to show that MultiPlan is correct on any of these points.

### 1. Sufficiency of Descriptions

In addressing the sufficiency of the information MultiPlan has provided to support its claims of privilege, the Court considers only the specific examples highlighted in the briefs. These examples largely support Plaintiffs' assertions.

**PRIV-000007 to PRIV-000013**: Plaintiffs point to these documents as examples of what they contend are vague and generic descriptions in MultiPlan's privilege log. All of them were withheld on the basis of attorney-client privilege and have the same description: "Email chain requesting information and reflecting counsel's impressions regarding pricing methodology data." Motion, Ex. F (MultiPlan Privilege Log). The explanation of these documents in the Wilde Declaration highlights just how uninformative the vague privilege log description is:

> PRIV-000007 to PRIV-000013 are email chains concerning information sought by a regulatory agency. At the beginning of this email chain, I exchanged correspondence with a governmental agency representative concerning information requested by the governmental agency. Outside counsel for MultiPlan, Melissa Grim, also exchanged correspondence with the governmental agency representative concerning information sought and MultiPlan's responses to same. I transmitted one of the governmental agency's requests to MultiPlan employee Sean Crandell with my impressions and instructions. I later transmitted the email chain to MultiPlan employee Mike Schill with my analysis and inquiries concerning the information sought by the governmental agency. Mike Schill and I exchanged emails with additional analysis and impressions. I further noted that we should walk through our analysis and impressions with outside counsel Melissa Grim.

Wilde Decl. ¶ 38. This more detailed explanation (unlike the privilege log description) provides sufficient information to allow Plaintiffs to evaluate MultiPlan's privilege claim. As discussed further below, however, it also suggests that these documents may have been improperly withheld as there is no privilege that offers broad protection from disclosure for communications related to a government investigation.

**PRIV-000441 to PRIV-000452**: The privilege log describes PRIV-000441 as "[c]ommunication reflecting impressions and strategy of MutliPlan legal department concerning legal matter"; it describes PRIV-00042 to PRIV-000452 as attachments "utilized in connection

11

with communication reflecting impressions and strategy of MultiPlan legal department concerning legal matter[.]"  Motion, Ex. F.  This kind of boilerplate assertion of privilege falls far short of what is required to claim attorney-client privilege.  MultiPlan states in its Opposition brief that PRIV-00441 to PRIV-000452 are an "e-mail chain, which includes in-house counsel, involv[ing] the distribution of information, including a communication from Ms. Wilde reflecting her analysis of the issues, for a discussion of claims made against United by one of its customers, involving Viant pricing methodology" and the "attachments include information required to assess the concerns and to assist United—with which MultiPlan would share a common interest in defending its methodology and recommended pricing."  MultiPlan Opp. at 9.  The Wilde Declaration is less detailed, describing PRIV-000440 to PRIV-000468 as "a conference invitation from Veriozka Terry, a MultiPlan paralegal, to me and others, including Ray Walker, outside counsel for United, with attachments for use during the conference concerning a matter in litigation." Wilde Decl. ¶ 26.  Neither the declaration not the description in the Opposition brief provides sufficient information to establish that disclosure of the attachments to PRIV-000441 (PRIV-000442 to PRIV-000452) would reveal privileged attorney-client communications.

**PRIV-000055**:  This document is described in the privilege log as an attachment "transmitted for use in connection with conference concerning legal matter" and was withheld on the basis of attorney-client privilege and work product.  Motion, Ex. F.  Wilde states in her declaration that "PRIV-000054 to PRIV-000055 are an email and attachment sent from me to Sean Crandell wherein I provide advice and guidance in advance of Mr. Crandell's interview with a governmental agency.  I also provided my analysis and impressions of a recent filing in a litigated matter involving MultiPlan."  Wilde Decl. ¶ 41.  MultiPlan concedes that this document, which it clawed back at the Crandell deposition, "is a pleading prepared by Plaintiffs' counsel in this case."  MultiPlan Opp. at 9.  It contends, however, that because the attachment was "part of an e-mail chain relating to the above-referenced confidential government investigation[,]" there was "nothing particularly egregious about withholding and logging that attachment as privileged, since it was forwarded as part of in-house and outside counsel's legal advice to MultiPlan personnel, along with counsel's mental impressions—which is the very essence of work product."  MultiPlan

United States District Court
Northern District of California

1   Opp. at 9.  MultiPlan's explanations raise questions, however, as to whether the fiduciary

2   exception may apply and if it improperly relied on a government investigation that does not satisfy

3   the litigation exception.

4           **PRIV-000413 to PRIV-000414**: In the privilege log, MultiPlan claims attorney-client

5   privilege as to these documents, describing PRIV-000413 as a "[c]ommunication reflecting the

6   provision of information to counsel to assist with rendition of legal advice" and PRIV-000414 as

7   "Attachment utilized in connection with the provision of information to counsel to assist with

8   rendition of legal advice."   Motion, Ex. F.  The privilege log further reflects that PRIV-000413 is

9   a communication between non-attorneys, while the author of the attachment is in-house counsel

10  Marjorie Wilde.  These boilerplate descriptions are insufficient.  Although a slightly more detailed

11  description is offered in the Wilde Declaration, the description there also falls short.  Wilde states:

12          PRIV-000075 to PRIV-000076, PRIV-000229 to PRIV-000238,
            PRIV-000413 to PRIV-000414, PRIV-000542 to PRIV-000549, and
13          PRIV-000555 are emails chain and attachments between MultiPlan
            employees  concerning  materials  utilized  to  support  pricing
14          methodology in connection with litigation. It reflects my legal
            analysis and advice on disclosure of same.
15

16  Wilde Decl. ¶ 58. This description does not establish that the "litigation" referenced by Wilde was

17  actually pending or imminent and, to the extent it was not, that the fiduciary exception does not

18  apply to these documents.

19          **PRIV-000430 to PRIV-000439**: These documents are described in the privilege log as

20  attachments to PRIV-000427, authored by Marjorie Wilde and described as "Communication

21  reflecting impressions of MultiPlan legal department and transmitting draft document for

22  use in legal matter."  Motion, Ex. F. Plaintiffs contend MultiPlan's privilege log fails to establish

23  that the attachments individually satisfy the criteria for the privilege being asserted.  Motion at 12.

24  The Court agrees.

25          **2.  Primary Purpose Requirement**

26          As a preliminary matter, the Court notes that many (if not most) of the documents on

27  MultiPlan's privilege log involve assertions of attorney-client privilege based on the involvement

28  of Marjorie Wilde in the communication.  According to Ms. Wilde, in her role as MultiPlan's

United States District Court
Northern District of California

senior in-house counsel, she "interact[s] with the various business personnel employed by MultiPlan and its subsidiaries . . . in connection with [her] legal responsibilities, and [she is] familiar with the business records and general business practices of MultiPlan and its affiliated entities, including Viant."  Wilde Decl. ¶ 4.  "In the corporate context, courts have recognized that in-house counsel is often involved in the day-to-day operation of the company" *L.D. v. United Behav. Health*, No. 20-CV-02254 YGR (JCS), 2022 WL 3139520, at *13 (N.D. Cal. Aug. 5, 2022) (citing *United States v. Chevron Corp.*, No. C-94-1885 SBA, 1996 WL 264769, at *4 (N.D. Cal. Mar. 13, 1996), amended, No. C 94-1885 SBA, 1996 WL 444597 (N.D. Cal. May 30, 1996)). "Because communications with in-house counsel relating only to the business operations of the company are not protected by attorney-client privilege, a client seeking to protect communications between a corporate client and in-house counsel must 'make a clear showing that in-house counsel's advice was given in a professional legal capacity.'"  *Id.* (quoting *United States v. Chevron Corp.*, No. C-94-1885 SBA, 1996 WL 264769, at *4).   As to many entries in MultiPlan's privilege log, that burden has not been met.

The parties' discussion of the primary purpose test focuses primarily on the documents MultiPlan clawed back at the Crandell deposition.  According to Plaintiffs, they had an opportunity to review these documents and they were not primarily aimed at giving or receiving legal advice but instead, had the primary purpose of providing business advice. Motion at 14. Wilde addresses some of the clawed back documents in her declaration.  In particular, she describes MPI-0002019 to MPI 0002020 as "an email chain with attachment in which Karen Beckstead communicates with Mike Schill and Sean Crandell regarding pricing methodology issues, and these emails were exchanged for the purpose of gathering information for counsel in connection with a regulatory matter." Wilde Decl. ¶ 77.  Wilde states that MPI-0002008 to MPI-0002012 and MPI-0002013 to MPI-0002015 "are email chains with attachments between Mike Schill and Sean Crandell concerning pricing methodology issues."  *Id.* ¶ 78.  She states further, "The emails were exchanged for the purpose of gathering information for counsel in connection with a regulatory matter."  These descriptions raise more questions than they answer as to whether these documents were properly withheld.

14

As to MPI-0002019 to MPI 0002020, the email chain was apparently between non-attorneys who were gathering information at the behest of counsel, but there is nothing in Wilde's declaration that disclosure of these communications will reveal any legal advice. *See City of Roseville Employees' Ret. Sys. v. Apple Inc.*, No. 19CV02033YGRJCS, 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3, 2022), motion for relief from judgment denied sub nom. *In re Apple Inc. Sec. Litig.*, No. 4:19-CV-2033-YGR, 2022 WL 4351392 (N.D. Cal. Sept. 12, 2022).  Further, the description of the subject matter of the communication (pricing methodology) raises the possibility that any legal advice that might be disclosed falls under the fiduciary exception.  And to the extent that the information was collected in connection with a regulatory matter, the communications may be primarily for a business purpose rather than a legal purpose. *See id.* at *9-11 (reviewing case authority and concluding that communications related to regulatory compliance may be for primarily legal or primarily business purposes depending on the specific facts of the case).   Similarly, Wilde's description of MPI-0002008 to MPI-0002012 and MPI-0002013 to MPI-0002015 fails to establish that *any* legal advice will be disclosed by their production (as neither Schill nor Crandall is an attorney).  And like the other clawback documents, the subject of the documents (pricing methodology) suggests these documents may fall under the fiduciary exception.

### 3. Fiduciary Exception

The undersigned discussed the fiduciary exception, as well as the defensive exception to the fiduciary exception, in some detail in its August 5, 2022 Order addressing the sufficiency of the United Defendants' privilege log. *See L.D. v. United Behav. Health,* No. 20-CV-02254 YGR (JCS), 2022 WL 3139520, at *16 (N.D. Cal. Aug. 5, 2022).  The principles set forth there apply to MultiPlan as well, including the Court's conclusion that in an ERISA case, the burden is on the plan administrator to show that it is entitled to claim attorney-client privilege because it was not acting as a fiduciary. *Id.* at *17.  Although MultiPlan apparently takes the position that it is not a fiduciary and therefore is not subject to the fiduciary exception, the district court appears to have reached the opposite conclusion, at least as a matter of pleading.  In particular, it held in its Order Granting in Part and Denying in Part Motions to Dismiss with Leave to Amend (dkt. 73) that

1   "[P]laintiffs have alleged sufficient facts to raise the inference that MultiPlan knowingly

2   participated in United's alleged breach of its fiduciary duties" and therefore may "seek equitable

3   relief against MultiPlan under Section 1132(a)(3)." Dkt. 73 at p. 14.

4        Further, to the extent that the Court found that the allegations were sufficient to support an

5   inference that MultiPlan participated in a breach of fiduciary duty "by collaborating with United to

6   develop and operate a database and pricing tool that generated the lowest possible reimbursement

7   rates notwithstanding the requirements of the plans, which required the consideration of the

8   customary rates of similar IOP-services providers in the geographic region[,]" *id*., the Court in this

9   case has already recognized that MultiPlan's pricing of plan members' claims for reimbursement

10  may implicate  fiduciary duties owed to plan members by MultiPlan.  Therefore, as a general

11  matter, MultiPlan's categorical assertion that it is not a fiduciary and the many documents listed in

12  MultiPlan's privilege log related to "pricing methodology" suggest a strong likelihood that

13  MultiPlan has improperly withheld documents that fall within the fiduciary exception to attorney-

14  client privilege. The specific examples cited by Plaintiffs (PRIV-000003 to PRIV-000006 and

15  PRIV-000014 to PRIV-000017) also support this conclusion as all of them are described as

16  relating to "pricing methodology."

17             **4.  Work Product and Defensive Exception**

18       As the Court observed in its August 5 Order, "[t]he fiduciary exception gives way when

19  the context or content of the communication indicates that it was made in connection with actual

20  or imminent litigation. On the other hand, the mere possibility that litigation may occur is usually

21  not sufficient to qualify a communication as defensive." *L.D. v. United Behav. Health*, No. 20-

22  CV-02254 YGR (JCS), 2022 WL 3139520, at *18 (N.D. Cal. Aug. 5, 2022).  Thus, "where the

23  administrative appeal process is not yet final, courts have found that the plan administrator

24  remains in the role of the plan fiduciary, seeking to fully evaluate the plan beneficiary's claim."

25  *Id.* (citing *Sizemore v. Pacific Gas & Elec. Retirement Plan*, 952 F. Supp. 2d 894, 901 (N.D. Cal.

26  2013)); *see also Mollica v. Cnty. of Sacramento*, No. 2:19-CV-02017-KJM-DB, 2022 WL 317004,

27  at *5 (E.D. Cal. Feb. 2, 2022) (holding that documents are work product if they are created "in

28  anticipation of litigation" and not if they are "created in the ordinary course of business" and that

United States District Court
Northern District of California

documents created by County in the course of internal affairs investigation of citizen complaint therefore was not work product).

Here, the privilege log is replete with references to litigation but consistently vague as to the specific litigation that is the basis for MultiTrade's assertions of work product protection. The same is true of the Wilde Declaration. Consequently, as to many of the withheld documents it is not clear whether litigation is pending, imminent or merely a possibility, making it impossible to determine whether documents are work product or fall outside the scope of the fiduciary exception, to the extent that exception to attorney-client privilege applies.

### 5. "Confidential" Governmental Investigation

In MultiPlan's Opposition brief and the supporting Wilde Declaration, MultiPlan claimed, for the first time, that it was entitled to withhold a number of documents on the basis that they relate to a "confidential governmental investigation."  *See* MultiPlan Opp. at 7-10 (citing as examples PRIV-0000003 to PRIV-0000006, PRIV-0000014 to PIV-0000017, PRIV-0000055, MPI-0002008 to 2009, MPI-002013 to 002015, and MPI-002019 to 002020); Wilde Decl. ¶¶ 38-50. MultiPlan overstates the degree of protection that is afforded communications related to governmental investigations, however, and does not provide sufficient information to establish that the protection that the law *does* afford to such materials applies to the documents MultiPlan has withheld in this case.

As MultiPlan recognizes in its Opposition, "materials prepared in anticipation of an administrative hearing are protected by the work product doctrine where there was a significant adversarial aspect to the hearing."  MultiPlan Opp. at 7 (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 118 (D.D.C. 2010)).  In *In re Rail Freight Fuel Surcharge Antitrust Litig.*, the D.C. Circuit provided a nuanced discussion of the applicability of work product doctrine and attorney-client privilege to documents that had been prepared for an ex parte proceeding before the federal Surface Transportation Board:

> The question of whether the ex parte hearing by the STB qualifies as litigation, so as to protect the work-product is complex. Plaintiffs claim that the fundamental question is whether the STB hearing provided the opportunity for cross-examination; without that, the proceedings do not qualify as litigation and the privilege does not

United States District Court
Northern District of California

apply.

Rule 26(b)(3) of the Federal Rules of Civil Procedure protects from production written materials that lawyers prepare "in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3). According to that Rule, "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" may not be discovered. Fed.R.Civ.P. 26(b)(3)(A). The purpose of the privilege is to protect the adversary process by ensuring that lawyers work with a "degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Neither Rule 26(b)(3) nor *Hickman* provide a clear delineation of what is to be considered "litigation." In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation. *See, e.g., Amobi v. District of Columbia Dep't of Corrs.*, 262 F.R.D. 45, 52 (D.D.C.2009) (finding that because arbitration was adversarial in nature it can be characterized as litigation). "The proceeding for which documents are prepared need not actually take place in a court of record, as long as the proceeding is adversarial in nature." Edna Selan Epstein, The Attorney–Client Privilege and the Work–Product Doctrine 827 (5th ed.2007). The challenge in determining whether the STB proceedings are to be considered litigation is the unfortunate description of the proceedings as ex parte. Courts have found patent application proceedings, which are primarily ex parte in nature, do not constitute litigation because they are not adversarial in nature. *See, e.g., McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 260 (N.D.Ill.2000) (citing *Oak Indus. v. Zenith Electronics Corp.*, 687 F.Supp. 369, 374 (N.D.Ill.1988); *Avery Dennison Corp. v. UCB Films PLC*, No. 95–CV–6351, 1998 WL 703647, at *6 (N.D.Ill. Sept. 30, 1998)). A closer look at the STB proceedings, however, reveals that there is a significant adversarial aspect to the proceedings. Even a simple review of the STB docket for the proceedings shows that there was a back and forth among the carriers and shippers, with some of the railways even providing written responses to filings made by shippers. *See, e.g.*, Union Pacific Reply to Arkansas Electric Cooperative Corporation, Opp. at Ex 6.

268 F.R.D. at 117. In contrast to the facts of *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MultiPlan has provided no details indicating that the governmental investigation cited as grounds for withholding documents involved an adversarial proceeding akin to litigation.

Nor is the Court persuaded by the broad holding of *Abdallah v. Coca-Cola Co.*, cited by MultiPlan, in which the court held that for the purposes of work product protection, "[a] document may be considered to have been prepared in anticipation of litigation even if the litigation that caused its preparation was an investigation by a government agency, and not a traditional civil suit." No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *5 (N.D. Ga. Jan. 25, 2000) (citing 6 Moore's Federal Practice § 26.7[3][d] at 26-218 (3d ed.1999)). The court in that case reasoned

that "[l]itigation may generally be expected from agency investigations" and therefore "[a]n investigation by an agency represents more than a remote possibility of future litigation, and provides reasonable grounds for anticipating litigation." *Id.*

The broad conclusion that any government investigation gives rise to work product protection is problematic for two reasons. First, it dispenses with the requirement that courts consider the specific facts and circumstances of the case to determine whether a document was prepared "in anticipation of litigation." *See Garcia v. City of El Centro*, 214 F.R.D. 587, 592–93 (S.D. Cal. 2003) (citing *Simon v. G.D. Searle & Co*., 816 F.2d 397, 401 (8th Cir.1987) for the proposition that "the determination of whether documents are prepared in anticipation of litigation is a factual determination"); and citing *Mission National Insurance Co. v. Lilly*, 112 F.R.D. 160, 165 (D.Minn.1986) for the conclusion that "the most sound manner to determine if documents are subject to the work product rule is requiring a case-by-case analysis, considering the unique factual basis of the given problem"). As *In re Rail Freight Fuel Surcharge Antitrust Litig.* illustrates, such an inquiry examines the specific type of investigation with reference to the proceedings that may ensue under the specific facts of the case.

The second problem (which flows from the first) is that work product protection applies only to documents that were prepared with the *primary purpose* of aiding in possible future litigation. *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (citations omitted). "That is, work product protection applies only to material '*that would not have been generated but for the pendency or imminence of litigation*.'" *Id.* (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D.Cal.1987) (emphasis added in *Griffith*)). Without consideration of the type of governmental investigation at issue or the type of proceeding that might follow, a court cannot make this determination. Therefore, the Court finds that MultiPlan's vague references to a "confidential governmental investigation" is not sufficient to establish that the documents it has withheld on this basis are protected under the work product doctrine.

Furthermore, as Plaintiffs point out, the disclosure of documents in a governmental investigation, even if produced subject to a promise of confidentiality, generally gives rise to waiver of work product protection and attorney-client privilege. *See Church & Dwight Co. v.*

*Mayer Lab'ys, Inc.*, No. C11-3288 EMC JSC, 2011 WL 5827222, at *3 (N.D. Cal. Nov. 18, 2011)(holding that plaintiff "waived any attorney work product protection for correspondence, email and 'white papers' it voluntarily submitted to the FTC, an adversary" and observing that "all of the Circuits to have addressed the issue have held that waiver applies to voluntary production to the government as well as to private parties, even when the documents are produced in conjunction with a confidentiality agreement."). Here, MultiPlan has not provided sufficient information to establish that it has not already waived privilege and work product protection as to documents listed on its privilege log by providing them to a government agency in the course of an investigation.

Finally, as noted above, to the extent that information was collected in connection with a regulatory matter, the communications may be primarily for a business purpose rather than a legal purpose, depending on the specific circumstances under which the information was collected. *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, No. 19CV02033YGRJCS, 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3, 2022), motion for relief from judgment denied sub nom. *In re Apple Inc. Sec. Litig.*, No. 4:19-CV-2033-YGR, 2022 WL 4351392 (N.D. Cal. Sept. 12, 2022). The Wilde Declaration describes numerous documents that were withheld in connection with requests for information by a regulatory agency.  *See, e.g.,* Wilde Decl. ¶¶ 38, 39.[4]  It is not clear if

---

[4] Paragraph 38 states as follows:

> PRIV-000007 to PRIV-000013 are email chains concerning information sought by a regulatory agency. At the beginning of this email chain, I exchanged correspondence with a governmental agency representative concerning information requested by the governmental agency. Outside counsel for MultiPlan, Melissa Grim, also exchanged correspondence with the governmental agency representative concerning information sought and MultiPlan's responses to same. I transmitted one of the governmental agency's requests to MultiPlan employee Sean Crandell with my impressions and instructions. I later transmitted the email chain to MultiPlan employee Mike Schill with my analysis and inquiries concerning the information sought by the governmental agency. Mike Schill and I exchanged emails with additional analysis and impressions. I further noted that we should walk through our analysis and impressions with outside counsel Melissa Grim.

Wilde Decl. ¶ 38.  Paragraph 39 states:
> PRIV-000019 to PRIV-000020, PRIV-000024 to PRIV-000026, and PRIV-000030 are email chains concerning information sought by a regulatory agency. Both myself and outside counsel Melissa Grim exchanged correspondence with the government agency representative regarding information sought. The latter part of the email chain concerns the

these requests even rise to the level of "investigations"; nor is it apparent that the provision of this information, even if attorneys were involved, required any legal expertise or involved anything more than a business activity.

For all of these reasons, the Court finds there is a significant likelihood that MultiPlan has improperly withheld documents on the basis that they were related to regulatory matters and/or governmental investigations.

### 6.  In Camera Review

Given the problems identified above as to both MultiPlan's privilege log and the reasons offered in its Opposition papers for withholding documents listed on its log – and the fact that as to many of the doctrines discussed above it is sometimes difficult to determine where the line should be drawn between protected material and material that is subject to disclosure – the Court finds that *in camera* review of a sampling of withheld documents is appropriate.

### IV.  CONCLUSION

The Motion is GRANTED in part to the extent that the Court finds that MultiPlan has not sufficiently justified its assertions of privilege and work product protection as to the documents listed on its privilege log.  MultiPlan is ordered to produce to Plaintiffs a revised privilege log that takes into account the guidance in this Order no later than **October 14, 2022**.  The parties will then meet and confer to determine whether the scope of their discovery dispute can be narrowed and report to the Court on the results of their efforts no later than **October 24, 2022**.  In addition, to the extent the parties are unable to resolve all of their disputes related to MultiPlan's privilege log, Plaintiffs by the same date shall identify to the Court fifty documents withheld by MultiPlan on the basis of privilege and/or work product for potential *in camera* review, along with a brief explanation of the basis for their selection.  The Court may review all of these documents or may

scheduling of a call to address information sought.
Wilde Decl. ¶ 39.

United States District Court
Northern District of California

instead review a subset of the documents identified by Plaintiffs.  No later than **October 28, 2022,** MultiPlan shall electronically lodge the documents selected by Plaintiffs by sending a secure link to jcspo@cand.uscourts.gov.  Counsel may contact Ms. Karen Hom, Courtroom Deputy, at Karen_Hom@cand.uscourts.gov or (415) 522-2035 with any questions relating to lodging the documents with the Court.

**IT IS SO ORDERED.**

Dated:  October 3, 2022

JOSEPH C. SPERO
Chief Magistrate Judge