MATTHEW M. LAVIN (*pro hac vice*)
matt.lavin@agg.com
AARON R. MODIANO (*pro hac vice*)
aaron.modiano@agg.com
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
Facsimile: 202.677.4031

DAVID M. LILIENSTEIN, SBN 218923
david@dllawgroup.com
KATIE J. SPIELMAN, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| LD et al., | Case No. 4:20-cv-02254-YGR |
| Plaintiffs, | Hon. Yvonne Gonzalez Rogers |
| v. | **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| United Behavioral Health et al. | |
| Defendants. | |

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................I

TABLE OF AUTHORITIES ....................................................................................................II

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 2

      A.     Plaintiffs Have Satisfied the Requirements of Rule 23(a) ............................... 2

            1.     Rule 23(a)'s Requirements Are Met for All of Plaintiffs'
                 Claims ........................................................................................ 2

      B.     Plaintiffs Have Satisfied the Requirements of Rule 23(b) ........................... 14

            1.     The Requirements of Rule 23(b)(1) Are Met ............................. 14

            2.     The Requirements of Rule 23(b)(2) Are Met ............................. 17

            3.     The Requirements of Rule 23(b)(3) Are Met ............................. 18

III. CONCLUSION ............................................................................................................... 21

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474 (D. Or. 2013)...........................2

4

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014)...........................................................2

5

*Alvidres v. Countrywide Fin. Corp.*, 2008 WL 1766927 (C.D. Cal. Apr. 16, 2008) ...................16

6

*Baird v. Blackrock Institutional Tr. Co.*, 2020 WL 7389772 (N.D. Cal. Feb. 11, 2020)..............15

7

*Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288 (N.D. Cal. 2020) ............................................5

8

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488  (N.D. Cal. 2010), modified sub nom. *Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011) .................................................................................................10

9

10

11

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007)..................................................8

12

*Beserra v. Albertsons Companies, Inc.*, 2020 WL 13348402 (C.D. Cal. Aug. 19, 2020)..............3

13

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435 (9th Cir. 2020) ................................................................................................................10

14

15

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015)....................................................20

16

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir.1999) ...................................................................20

17

*Buus v. WAMU Pension Plan*, 251 F.R.D. 578 (W.D. Wash. 2008)..............................4, 9, 15, 17

18

*Byrd v. Aaron's Inc.*, 784 F.3d 153 (3d Cir. 2015) ...................................................................19

19

*Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224 (9th Cir. 2020) ..................................................11

20

*Caufield v. Colgate-Palmolive Co.*, 2017 WL 3206339 (S.D.N.Y. July 27, 2017) ......................4

21

*citing In re U.S. Foodservice Pricing Litig.*, 729 F.3d 108 (2d Cir.2013) ..................................20

22

*Cohen v. Trump*, 303 F.R.D. 376 (S.D. Cal. 2014) ....................................................................3

23

*Collier v. Lincoln Life Assurance Co. of Bos.*, 2022 WL 17087828 (9th Cir. Nov. 21, 2022) .....10

24

*Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012 (N.D. Cal. 2018).......................................4

25

*Corcoran v. CVS Health*, 2017 WL 1065135 (N.D. Cal. Mar. 21, 2017) .....................................7

26

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) .............................................................3

27

*DeBoer v. Mellon Mortg.* Co., 64 F.3d 1171 (8th Cir.1995).........................................................6

28

*Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486 (N.D. Cal. 2017) .................8, 10, 17

*Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478 (9th Cir. 1995) .....................11

*Doe v. Guardian Life Ins. Co. of America*, 145 F.R.D. 466 (N.D. Ill. 1992) ................................5

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2015 WL 12645755 (C.D. Cal. Nov. 10, 2015)...19

*Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007)...............................................................4

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)................................................5

*Farar v. Bayer AG*, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017)...............................................19

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462 (S.D.N.Y. 2020) ..........................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011  (9th Cir. 1998) *overruled on other grounds* by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)....................................................................18

*Harlick v. Blue Shield of Cal.*, 686 F.3d 699 (9th Cir. 2012)........................................................10

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) ........................................15

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99 (2013) ................................................11

*Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D.Iowa, 2013) ..................................................18

*In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172 (S.D.N.Y. 2006)............................15

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015), aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .....................................................................9

*In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ............................................................12

*In re Managed Care Litigation*, 298 F.Supp.2d 1259 (S.D.Fla.,2003) ........................................18

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) .....................................13

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2011).............................19

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 2014 WL 6888549 (C.D. Cal. Sept. 3, 2014)..................................................................................................................................................6

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017).............................................................20

*La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) .........................................16

*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013).........................13

*Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279 (D.N.J. 2013).......................................................6

-iii-

*Mason v. Ashbritt, Inc.*, 2020 WL 789570 (N.D. Cal. Feb. 17, 2020) ............................................8

*Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223 (D. Conn. 2018) .........................................................14

*Moore v. Apple Inc.*, 309 F.R.D. 532 (N.D. Cal. 2015) ..................................................................8

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) .........................................................12

*Motorola Credit Corp. v. Uzan*, 202 F.Supp.2d 239 (S.D.N.Y., 2002) .........................................18

*Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016)..............................................................................14

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) ......................................................19

*Munro v. University of Southern California*, 2019 WL 7842551 (C.D. Cal. 2019).......................15

*Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003) ...............................................................................................................18

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ..............................12

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590 (C.D. Cal. 2012) ..............................13

*Plascencia v. Lending 1st Mortg.*, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) .......................13

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir.2004) ........................................................13

*Religious Technology Center v. Wollersheim*, 796 F.2d 1076 (C.A.9 (Cal.),1986).....................18

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)......................................................................11

*Sargent v. S. California Edison 401(k) Sav. Plan*, 2020 WL 6060411 (S.D. Cal. Oct. 14, 2020)..3

*Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663 (C.D.Cal. Oct. 19, 2011) ............14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........................14

*Sidibe v. Sutter Health*, 333 F.R.D. 463 (N.D. Cal. 2019) ..............................................................9

*Smith v. United HealthCare Servs., Inc.*, 2002 WL 192565 (D. Minn. Feb. 5, 2002) ...................6

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282 (9th Cir. 2014)......................................................................................................................................10

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...................................................................8

*Stromberg v. Qualcomm Inc.*, 14 F.4th 1059 (9th Cir. 2021).......................................................17

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ....................................................................8

-iv-

*Trujillo v. UnitedHealth Grp., Inc.*, 2019 WL 493821 (C.D. Cal. Feb. 4, 2019) ..........................16

*US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) ....................................................................6

*Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008)....................11

*Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015)...................................13

*Willis v. City of Seattle*, 943 F.3d 882 (9th Cir. 2019) .................................................................12

*Wit v. United Behav. Health*, 2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) .................................18

*Wit v. United Behav. Health*, 317 F.R.D. 106 (N.D. Cal. 2016) ............................................6, 7, 8

*Wit v. UnitedHealthcare Inc. Co.*, No. 3:14-cv-2346, ECF No. 491 (N.D. Cal. Nov. 3, 2020)....18

*Z.D. v. Group Health Cooperative*, 2012 WL 5033422 (W.D.Wash. Oct. 17, 2012)....................2

*Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232 (11th Cir. 2010)..................................................11

**Statutes**

29 U.S.C. § 1113 ..............................................................................................................................4

**Rules**

Fed. R. Civ. P. 23(a) .........................................................................................................................2

Fed. R. Civ. P. 23(a)(2) .....................................................................................................................2

Fed. R. Civ. P. 23(b) .......................................................................................................................14

Fed. R. Civ. P. 23(b)(1) .......................................................................................................2, 15, 16

Fed. R. Civ. P. 23(b)(1)(A).............................................................................................................14

Fed. R. Civ. P. 23(b)(2) ...............................................................................................................2, 17

Fed. R. Civ. P. 23(b)(3) .............................................................................................................18, 19

**Treatises**

2 Newberg and Rubenstein on Class Actions § 4:8 (6th ed.) .........................................................14

2 Newberg on Class Actions § 4:57 (5th ed.)..................................................................................14

Reply in Support of Plaintiffs' Motion for Class
Certification

I.      INTRODUCTION

This matter involves claims that patients have from seeking authorized, medically necessary, mental health / substance use disorder treatment at over 1,500 different providers throughout the nation who provided life-saving intensive outpatient treatment. Plaintiffs seek to have ERISA and RICO classes certified by the Court for these claims. Defendants' response opposing Plaintiffs' motion opposes the motion that they wish Plaintiffs had written instead of the motion that Plaintiffs submitted to the Court. Defendants conflate issues of class certification and merit, misapply the requirements of Rule 23, misstate Plaintiffs' positions, and misstate the relief sought by Plaintiffs. Plaintiffs have set forth the pertinent procedural and legal background in their motion and memorandum seeking class certification [dkt. 168] and do not repeat them here. Plaintiffs' reply to Defendants' opposition [dkt. 205] to Plaintiffs' class certification request will address the many misstatements of law and fact contained therein. Specifically, given Plaintiffs' proposed class definition, for this litigation it is irrelevant whether the Plaintiffs or putative class members' healthcare benefit plans are 'fully insured' or 'self-insured' is irrelevant to the present litigation. There is no meaningful difference in plan language for the plans with claims at issue, those with United's Reasonable & Customary program and this program was administered in a uniform manner utilizing the Viant OPR methodology. Defendants would not be able to operate on the scale at which they do if they did not employ such automated claims' systems.

Defendants attempt to misdirect the Court as to the actual legal theories advanced by Plaintiffs, as to the alleged 'individual' issues that do not actually affect the legal issues, and to push the Court to delve far into inquiry on the merits of Plaintiffs' claims beyond what is necessary for the determination of class certification issues. Plaintiffs also present two rebuttal declarations, from Prof. Mark Hall [Exhibit "1"] and Thomas P. Ralston [Exhibit "2"], to rebut and impeach the assertions and opinions by Defendants in their papers and the declaration of Defendants' sole expert, Prof. Daniel Kessler. The opinions given by Prof. Kessler are unreliable, not supported by record evidence, and misapplies fundamental econometric and healthcare principles, and demonstrates a complete unfamiliarity with the actual processing of

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1  commercial healthcare claims.

2  **II.   ARGUMENT**

3      As set forth below, Plaintiffs have satisfied the requirements of Rule 23(a) for all of

4  Plaintiffs' claims, the requirements of Rule 23(b)(1)-(3) for Plaintiffs' ERISA claims, and the

5  Requirements of Rule 23(b)(1) & (2) for Plaintiffs' RICO claims against the Defendants.

6  **A.  Plaintiffs Have Satisfied the Requirements of Rule 23(a)**

7      Plaintiffs have satisfied the requirements of Rule 23(a) for all of their claims. Defendants

8  challenge commonality, typicality, and adequacy, and do not dispute numerosity (Opp. p. 12).

9  Defendants' opposition to each of these requirements fail for the reasons set forth below.

10  Defendants' arguments regarding the remedy of reprocessing (Opp. p. 16) are addressed in the

11  section concerning the remedies available under Rule 23(b)(1) & (2).

12      **1.    Rule 23(a)'s Requirements Are Met for All of Plaintiffs' Claims**

13      Contrary to Defendants' assertions, Plaintiffs have satisfied Rule 23(a)'s requirements for

14  all of Plaintiffs' claims.

15      ***Commonality***: As to Rule 23(a)'s commonality requirements, Plaintiffs have identified

16  numerous common questions that are susceptible to common answers; even though, "[f]or

17  purposes of commonality requirement for class certification, even a single common question will

18  do." Fed. R. Civ. P. 23(a)(2). Courts in this and other circuits have held that Rule 23(a)

19  "[c]ommonality is satisfied if the lawsuit challenges a system-wide practice or policy that affects

20  all of the putative class members." *In re Louisiana-Pac. Corp.*, 2003 WL 23537936, at *3 (D.

21  Or. Jan. 24, 2003)[1]. Defendants' application of this requirement to argue against class

22  certification is contrary to established case law and substantial record evidence[2]. Plaintiffs have

23

24  ───────────────

[1] *See, e.g., A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 481 (D. Or. 2013) (Regardless of
25  whether defendant could raise policy exclusion or any other defense against certain individual members but not
others, all class members have in common the issue of whether defendant's policy exclusion violates
26  state or federal law.); *Z.D. v. Group Health Cooperative*, 2012 WL 5033422, at *4 (W.D.Wash. Oct. 17, 2012)
(holding that the issue of whether Defendant's policy of limiting coverage "on the basis of beneficiaries' ages
amounted to a breach of their fiduciary duties" was a common issue).

27  [2] The court's application of Rule 23(a)'s commonality requirement in *Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D.
28  Cal. 2014) is instructive on this point. In *Allen*, plaintiffs challenged 12 different products, each bearing allegedly
misleading claims and the defendant argued no commonality because there were "twelve different products at

Reply in Support of Plaintiffs' Motion for Class
Certification

1    submitted record evidence and expert opinions as to the system-wide practices and policies in

2    United's Reasonable and Customary program[3] and the Defendants use of the Viant OPR

3    methodology. Defendants assert that commonality is defeated as to Plaintiffs' claims because of

4    various individual considerations[4]. Ralston's declaration soundly rebuts this argument as he

5    states that ███████████████████████████████████████████████████████████

6    ████████████████████████████████ and ██████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████.

9          Also, Defendants statement that "plan sponsors generally control their own plan design

10   and plan language" (Opp. p. 13) intentionally obfuscates the realities of plan administration

11   generally and the administration of the 'Reasonable & Customary Program' in particular. The

12   Reasonable & Customary Program has two components, Facility & Professional, and the

13   program requires █████████████████████████[5]. The evidence shows that not only did

---

15   issue," each with various alleged misrepresentations, and as a result "different proof will be required to challenge the
     efficacy of each." *See id.* at 667. The Court rejected defendant's argument since plaintiffs' legal theory was that all
16   the products violated the applicable law the same reason. *See id.* at 667-68

17   [3] *See* Lopez Dep. pg. 81:11 – 90:19; 161:20 – 167:19; Ralston Dec. ¶¶8-9, 11, 19, 25; Paradise Dep. vol 1 33:2-13,
     178:11-183:14, vol. 2 101:1-106:4; Apple ASA & Amendments (attached as Exhibit "30" to Modiano Dec.)
18   UHC000007759, UHC000007901, UHC000007936; Tesla ASA (attached as Exhibit "31" to Modiano Dec.)
     UHC000008331; General Dynamics ASA (attached as Exhibit "32" to Modiano Dec.) UHC000227958,
19   UHC000227986, UHC000228008, UHC0002278120; Cisco Systems ASA (attached as Exhibit "33" to Modiano
     Dec.) UHC000209227; Raytheon ASA (attached as Exhibit "34" to Modiano Dec.) UHC000258842,
20   UHC000258858, UHC000258860; Nestle ASA (attached as Exhibit "35" to Modiano Dec.) N-USA-000000021, N-
     USA-000000035, N-USA-000000037; McMaster-Carr ASA (attached as Exhibit "37" to Modiano Dec.)
     UHC000329653, UHC000329666; *see also* Exhibits 12-29 attached to Modiano Dec., the claims sample SPDs.

21   [4] Defendants argue in passing for a statute of limitations defense to Plaintiffs' class definition (Opp. p. 12). This is a
22   meritless argument. It is black letter law that "'the commencement of a class action suspends the applicable statute
     of limitations as to all asserted members of the class who would have been parties had the suit been permitted to
23   continue as a class action.'" *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–354 (1983) (quoting *American
     Pipe & Constr. Co.*, 414 U.S. 538, 554 (1974)). Under ERISA the statute of limitations, 29 U.S.C. § 1113, states, "in
24   the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery
     of such breach or violation." As such, Plaintiffs' limitation period runs from the date of discovery. 29 U.S.C. § 1113
25   is a controlling statute that supersedes a plan's contractual limitations periods for ERISA breach of fiduciary duty
     claims. *See Beserra v. Albertsons Companies, Inc.*, 2020 WL 13348402, at *5 (C.D. Cal. Aug. 19, 2020); *Sargent v.
26   S. California Edison 401(k) Sav. Plan*, 2020 WL 6060411, at *8 (S.D. Cal. Oct. 14, 2020). Plaintiffs' RICO claim
     involves the same course of conduct and representations, and, in such situations, a statute of limitations defense does
     not defeat the predominance of common questions. *See, e.g., Cohen v. Trump*, 303 F.R.D. 376, 388 (S.D. Cal. 2014).

27   [5] *See* deposition of Rebecca Paradise (attached as Exhibit "3" to Declaration of Aaron Modiano, "Modiano Dec.")
28   Vol. 1, pg. 162: 4-19, pg. 163, 6-10, 12-20, 23-25; deposition of Sarah Peterson (Modiano Dec., Exhibit "4") pg. 90:
     16-20, pg. 126: 2-7, pg. 176: 13-16; deposition of Radames Lopez (Modiano Dec., Exhibit "5") pg. 36:2-7, pg. 37:

Reply in Support of Plaintiffs' Motion for Class
                                                                    Certification

1   United p████████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████████

3   ███████████████████████████████████6. Further, the Reasonable and Customary program

4   ████████████████████████████████████████████████████████████7. It is the use of

5   Viant OPR methodology and the fraud surrounding its use with the Reasonable and Customary

6   Program that Plaintiffs are challenging at the programmatic level. ██████████████████

7   ████████████████████████████████████████████████████8.

**Typicality**: Rule 23(a) typicality focuses on the connections between the facts and issues

among the class and its representatives. *See Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 585

(W.D. Wash. 2008) *citing Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1184 n. 12 (9th Cir. 2007).

As this Court has stated, "for purposes of typicality, it is enough to find that plaintiffs' theory of

their injury is the same theory of injury for the entire class" *Congdon v. Uber Techs., Inc.*, 291 F.

Supp. 3d 1012, 1027 (N.D. Cal. 2018). Plaintiffs have asserted the same theory of injury for the

entire class and have shown that ████████████████████████████████████████

████████████████████████████.

**Adequacy**: Defendants' challenges to Plaintiffs adequacy as class representatives grossly

misinterprets the applicable law and record evidence. *See e.g.*, *Caufield v. Colgate-Palmolive*

*Co.*, 2017 WL 3206339, at *5 (S.D.N.Y. July 27, 2017) (finding that class representative showed

a general understanding of the case and that her desire to be "a watchdog for [the proposed class]

to make sure that we all get our calculations corrected" and "to make sure [her counsel] [i]s

handling everything correctly" was sufficient to meet the adequacy requirement). The arguments

raised by Defendants contesting Plaintiffs' adequacy to serve as class representatives based

---

9-11; Deposition of Jolene Bradley (Modiano Dec., Exhibit "6") pg. 135: 12-23.

6 *See* Paradise Dep. Vol. 1, pg. 172:19 – 180:21; Vol 2, pg. 229:17 – 232:2; Lopez. Dep. pg. 76:1 – 85:15; Exhibit "39" attached to Modiano Dec. with ██████████████████████████(UHC000018534_0001-10); Exhibit "40," ████████████████████████████████(UHC000048508-48508_0002); Exhibit "41" attached to Modiano Dec. ████████████████████████ ████████████████████ (UHC000106755-62).

7 *See* Lopez Dep. pg. 149:21 – 151:4; Paradise Dep. Vol. 1 pg. 73:12-78:25, pg. 160:20 – 163:28

8 *See* Hall Supp. ¶5; Lopez dep. pg 103:18 – 110:17; Ralston dec. ¶¶11, 25)

1  solely on their treating provider contain numerous misleading, untrue, and irrelevant allegations

2  (Opp. p. 9-11) have nothing to do with the Plaintiffs' ability to serve as class representatives.

3  Defendants suggest that Summit's ▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. p. 9), themselves relevant to

4  issues of class certification, had some nefarious purpose[9]. This is irrelevant and untrue; instead,

5  it was well known to Defendants that Intensive Outpatient ("IOP") treatment providers ▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮ (see Ralston dec. ¶12). Further contrary to Defendants assertions, ▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (see Ralston dec. ¶¶7, 14)

11  and Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  (Ralston dec. ¶¶9, 11, 13, 28, 30). Further, the specter of 'conflicts' challenging adequacy raised

13  by Defendants is not supported by the record and clearly refuted in Plaintiffs' deposition

14  testimony[10].

15        **a)**      **Plaintiffs' ERISA Claims Satisfy Rule 23(a) Requirements**

16        Defendants' first argument, that Plaintiffs' ERISA claims cannot be certified for the class

17  because of variations in plan terms (Def. Opp. p. 13) is incorrect for several reasons. First, many

18  courts have concluded that putative classes of individuals covered by different plans can satisfy

19  the Rule 23 commonality requirement if each plaintiff challenges general practices that affect all

20  of the relevant plans. *See e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.

21  1998); *accord*, *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 303 (N.D. Cal. 2020); *Doe v.*

22  *Guardian Life Ins. Co. of America*, 145 F.R.D. 466, 473 (N.D. Ill. 1992) The case law

23  

24  [9] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  [10] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    Defendants cite on this point is readily distinguished. *US Airways, Inc. v. McCutchen*, 569

2    U.S. 88 (2013) cited by Defendants involved a benefit plan seeking to enforce an SPD term to

3    impose an equitable lien based on common law principles of equity. Plaintiffs do not put forward

4    such an argument. Next, *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279 (D.N.J. 2013) does not

5    address ERISA § 502(a)(1)(B) and (a)(3) separately and only addresses class certification under

6    Rule 23(b)(3). In *Lipstein*, the court merged its commonality and predominance analysis in a way

7    that is inapposite to Plaintiffs' claims here. *In re WellPoint, Inc. Out-of-Network UCR Rates

8    Litig.*, 2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) involved "the claims of millions of

9    subscribers and providers, which arise out of tens of thousands of WellPoint insurance

10    contracts." Plaintiffs' class is tailored to challenging Defendants' Reasonable and Customary

11    program and the Viant OPR methodology[11] used to fraudulently determine reimbursement rates

12    for Plaintiffs' and class members IOP / H0015 claims. Plaintiffs have shown through record

13    evidence and the reports of its experts that commonality under Rule 23(a) exists for the claims

14    Plaintiffs are seeking to have certified as a class.

15        Overstating the effect of small differences in benefit plans is a common tactic used by

16    Defendants in attempting to avoid class certification; as stated by another district court,

17    "[a]lthough UHC accentuates the existence of thousands of different employer-sponsored health

18    care benefits plans in 29 states, minor variations in the phrasing of the relevant plan language do

19    not make the claims atypical with respect to the claims alleged in the Complaint." *Smith v.

20    United HealthCare Servs., Inc.*, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002) *citing DeBoer

21    v. Mellon Mortg*. Co., 64 F.3d 1171, 1174–75 (8th Cir.1995). The court in *Wit v. United Behav.

22    Health*, 317 F.R.D. 106 (N.D. Cal. 2016), addressing a similar argument, and much of the same

23    case law, held "[t]he court in *In re Wellpoint* did not, however, suggest that the mere fact that

24    class members were insured under different plans precluded commonality. To the contrary, it

25    recognized that it is possible to satisfy the commonality requirement when there are multiple

26

27

28    [11] See Ralston dec. ¶¶11, 13, 19, 29; Hall Supp. ¶2; Deposition of Daniel Kessler (Modiano dec., Exhibit "7"), pg. 185:1-11; 225:19-228:12.

Reply in Support of Plaintiffs' Motion for Class
Certification

ERISA plans, for example, where the 'ERISA plans at issue had terms that were common across the proposed class.'" *Id.* at 129. The Viant OPR methodology ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆[12] and its fraudulent application to IOP / H0015 claims is at the heart of Plaintiffs' case (*see* Ralston Dec. ¶¶9-21).

Likewise, *Corcoran v. CVS Health*, 2017 WL 1065135, at *5 (N.D. Cal. Mar. 21, 2017) is readily distinguished from the facts of this case for many of the same reasons set out above. Also, in *Corcoran*, this Court found that, even more important than the differing contracts was that "several executives from the largest PBMs in the industry have submitted declarations expressing their understanding that the HSP prices at issue in this litigation were not considered U&C prices." *Id.* at *6. Defendants ignore this key part of the holding. Here, Multiplan never received the plan language for the claims relevant to Plaintiffs' claims and did not price the claims according to that language[13]. Defendants' argument that "Plaintiffs offer no… alternative database or methodology that would or could have been applied on a classwide" (Opp. p. 15) and therefore precludes certification and Rule 23(a)'s commonality requirements is incorrect. Ralston dec. at ¶ 24. Further, Defendants have not provided any rebuttal to Plaintiffs' experts opinions regarding the Viant OPR methodology while Plaintiffs have presented substantial record evidence and expert opinions challenging Viant OPR.

Defendants argue that "each Plaintiff needs to show that the rate reimbursed on *his* claim was unreasonable under the terms of *his* plan based on the information available to United at the time it made the benefits determination" (Opp. p. 16) is incorrect and misleading[14]. Defendants cite to *Wit* 317 F.R.D. at 127 on this point, however, the Court actually stated "Plaintiffs seek only an order that UBH develop guidelines that are consistent with generally accepted standards and reprocess claims for coverage that were denied under the allegedly faulty guidelines."

---

[12] *See* Ralston dec. ¶¶11, 13, 19, 29; Deposition of Sean Crandell (attached as Exhibit "11" to Modiano dec.) 85:3-114:18.

[13] *See* Kienzle dep. pg. 27:7-13; Praxmarer dep. 62:19; Deposition of Mark Edwards (Modiano dec. Exhibit "43") pg. 65:16-20; Peterson dep. pg. 152: 22-25, 153:1-4; Mohler dep. pg. 143:2-6. *See* 30(b)(6) Deposition of Becky Paradise Vol. 1 pg. 162: 4-19 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

[14] *See* Hall Supp. ¶¶1-2; Ralston dec. ¶¶11, 13, 19, 29

1   Plaintiffs seek an order that the Reasonable & Customary program and claims whose

2   reimbursement amount was determined through the Viant OPR methodology that adopts a

3   transparent and accurate reimbursement methodology. [Dkt. 91]; [Dkt. 168].

4          Defendants' arguments regarding Article III standing requirements are incorrect

5   applications of the law. On the issue of standing, the Ninth Circuit has held in a class action, "we

6   consider only whether at least one named plaintiff satisfies the standing requirements." *Bates v.*

7   *United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Likewise, *Stearns v. Ticketmaster*

8   *Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v.*

9   *Behrend*, 569 U.S. 27 (2013), held, "our law keys on the representative party, not all of the class

10  members, and has done so for many years [when determining standing]." Defendants' citation to

11  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) includes the statement that "[w]e do

12  not here address the distinct question whether every class member must demonstrate standing

13  *before* a court certifies a class." (italics in original). That is precisely what Defendants ask the

14  Court to do and is contrary to Ninth Circuit precedent. As stated by a sister court, "only the

15  named plaintiff must meet Article III's standing requirements, and that non-injured class

16  members can be excluded through the normal operation of Rule 23." *Mason v. Ashbritt, Inc.*,

17  2020 WL 789570, at *7 (N.D. Cal. Feb. 17, 2020); s*ee also*, *Moore v. Apple Inc.*, 309 F.R.D.

18  532, 541–42 (N.D. Cal. 2015) ("the problem of uninjured absent class members is a problem of

19  Rule 23, not of Article III." *quoting* Newberg on Class Actions § 2.3).

20         Defendants' argument that determinations of the relevant standard of review preclude

21  class certification has likewise been rejected by other courts addressing Defendants' arguments

22  here (Opp. at 31). *See Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 503 (N.D.

23  Cal. 2017) ("However, as compared with the overarching question of the propriety of the

24  Guidelines, the prospect that the Court may need to apply two different standards of review is of

25  minor importance."); *Wit v. United Behav. Health*, 317 F.R.D. 106, 129 (N.D. Cal. 2016).

26  Addressing the standard of review and Rule 23(a) commonality, the *Des Roches* court held, "as

27  compared with the overarching question of the propriety of the Guidelines, the prospect that the

28  Court may need to apply two different standards of review is of minor importance." *Id.* 320

F.R.D. at 503. Defendants' argument that "[m]any putative members therefore lack standing based on providers' billing practices" (Opp. p. 19) is likewise an incorrect statement of law and fact. Plaintiffs have established Article III standing and there is substantial record evidence that many providers *do* balance bill their patients[15].

Defendants further assertions regarding the "balance billing issues" that Defendants allege "also impact classwide merits issues" (Opp. p. 19) ask the Court to apply an 'ascertainability' as-to-injury requirement that is not present in Rule 23[16]. Defendants' speculation that "increased reimbursement rates to providers would mean higher coinsurance, deductible payments, and premiums" is unsupported, incorrect[17], and does not preclude class certification. The Ninth Circuit specifically holds that "[m]ere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification." *Buus* 251 F.R.D. at 585–86. The ███████████ argued for by Defendants and Prof. Kessler is soundly rebutted by Prof. Hall[18]; however, the actual evaluation of ███████████ is an issue to be determined at the merits stage and not during class certification. *See Sidibe v. Sutter Health*, 333 F.R.D. 463, 489 (N.D. Cal. 2019) (rejecting defendant's argument that some class members benefitted from the alleged conduct benefitted therefrom and that it was inappropriate for the court to engage in a merits inquiry into the competing 'but-for' worlds offered by competing experts at the class certification stage.)

Next, Defendants' arguments regarding the 'anti-assignment' provisions of plans having

---

[15] See Exhibit 10, ███████████, Exhibit 8, ███████████, Exhibit 9, ███████████, Ralston Dec. ¶12.

[16] The U.S. Supreme Court upheld the district court's decision in *In Re ConAgra Foods, Inc.* that the 'ascertainability' requirement applies to the court's ability to ascertain the class, not to determine that every class member has actually been injured. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 971 (C.D. Cal. 2015), aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and aff'd sub nom. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)

[17] *See* ███████████████████████████████████████

[18] *See* Hall Supp. ¶4 ████████████████████████████
████████████████████████████

to be analyzed individually and defeating commonality (Opp. p. 20) are wholly without merit. It is black letter law in the Ninth Circuit that "when making a claim determination under ERISA, "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 440 (9th Cir. 2020) *quoting Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014); *see also, Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) ("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged"); *Collier v. Lincoln Life Assurance Co. of Bos.*, 2022 WL 17087828, at *2 (9th Cir. Nov. 21, 2022) ("The district court erred because it relied on new rationales to affirm the denial of benefits… not assert[ed] during the administrative process.") As every claim of Plaintiffs' and the putative class was authorized and/or approved with no assertions of anti-assignment provisions in remark code CY, the EOBs, the PRAs, the EOMs, the PAD letters, or any other claim material[19], Defendants may not now assert that Plaintiffs or putative class members may lack standing based on anti-assignment provisions.

Defendants' arguments as to administrative appeal requirements suffer the same legal and factual infirmities as Defendants' previous arguments. As the *Des Roches* court held, "in an ERISA class action the exhaustion requirement is met "so long as the named plaintiff" has exhausted administrative remedies." *Id.* 320 F.R.D at 500; *see also, Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010), modified sub nom. *Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011) ("in ERISA suits, absent class members are not required to have exhausted their claims through a plan's internal review procedures so long as the named plaintiff has done so.") Plaintiffs have done so. Defendants even state, "three of the named Plaintiffs exhausted their required formal

---

[19] *See* Motion for Class Certification [dkt-171] Composite EOBs Exhibit "P" [dkt-171-17]; Composite PRAs as Exhibit "Q" [dkt-171-18]; Composite EOMs as Exhibit R [dkt-171-19]

1   administrative appeals" (Opp. p. 21), but offer no explanation why this does not satisfy the

2   ERISA class action requirements described in binding Ninth Circuit precedent above[20].

3        Defendants have not provided any contrary authority addressing the exhaustion defense

4   as it relates to commonality. *See e.g.*, *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 149

5   (C.D. Cal. 2021). Defendants also neglect to note that the Ninth Circuit does not impose an

6   exhaustion requirement for ERISA § 502(a)(3) claims. *See Monper v. Boeing Co.*, 2014 WL

7   12102180, at *5 (W.D. Wash. May 28, 2014) citing *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d

8   1412, 1416 n.1 (9th Cir. 1991) ( "[t]he exhaustion requirement ... does not apply to plaintiffs'

9   fiduciary breach claim because this claim alleges a violation of the statute, ERISA, rather than

10  the Plan.") Further, for Plaintiffs' ERISA claims, Defendants attempt to avoid acknowledging

11  that to the extent "balance billing" has any relevance (it does not), it would only apply to

12  Plaintiffs' ERISA § 502(a)(1)(B) claim and certification of that claim under Rule 23(b)(3). As

13  class certification under Rule 23(b)(1) & (2) as well as ERISA § 502(a)(3) is equitable and

14  provides for equitable remedies, they are not claims for monetary damages. *See e.g.*, *Zinser v.*

15  *Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.), opinion amended on denial of reh'g, 2

16  73 F.3d 1266 (9th Cir. 2001).

17       **b)    Plaintiffs' RICO Claims Satisfy Rule 23(a)'s Requirements**

18       Despite Defendants' assertions to the contrary (Opp. p. 22), Plaintiffs have supported

19  their RICO claims against Defendants with record evidence satisfying Rule 23(a).

20       ***Commonality***: The Ninth Circuit construes the commonality requirement of Rule

21  23(a)(2) permissively. *See e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

22  Common legal and factual questions include whether a defendant entered into an alleged

23  conspiracy and whether the alleged conspiracy violated the RICO statute. *See Negrete v. Allianz*

24  *Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). Among others, these same legal

25

26  [20] None of the cases cited by Defendants, *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224 (9th Cir. 2020), *Vaught v.*

27  *Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008), *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478 (9th Cir. 1995), *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99 (2013), and *Zurich*

28  *Am. Ins. Co. v. O'Hara*, 604 F.3d 1232 (11th Cir. 2010), are class actions or address Ninth Circuit authority pertaining to ERISA class actions.

Reply in Support of Plaintiffs' Motion for Class Certification

1    and factual questions are present. In addition to many of the same legal and factual questions as

2    Plaintiffs' ERISA claims, Thomas Ralston's declaration (Exhibit "2") ███████████████

3    ████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████ Also, *Willis*

5    *v. City of Seattle*, 943 F.3d 882 (9th Cir. 2019) is readily distinguishable as it does not involve

6    RICO and the court states that the underlying policies and regulations are not being challenged

7    (*id.* at 886); precisely what Plaintiffs are alleging here as to Defendants' RICO enterprise and its

8    activities. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002), is rejected by the Ninth

9    Circuit that explicitly declined to follow it in *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th

10   Cir. 2006)[21]. Plaintiffs have provided substantial record evidence showing th Ninth Circuit's

11   'common course of conduct' standard is met. Defendants' induced patients to enter into

12   treatment and induce the providers to accept the patients for treatment while obfuscating, through

13   a common pattern and practices, the fraudulent methodology that would be employed in

14   determining reimbursement rates for IOP treatment[22]. Defendants' statement that because "there

15   is no evidence of any pre-treatment communications, including VOB calls, involving MultiPlan,

16   such that Plaintiffs cannot establish the elements of reliance or proximate causation with respect

17   to MultiPlan" is unsupported by record evidence, case law, and is an assertion already rejected

18   by this Court in its prior ruling on MultiPlan's motion to dismiss.

19          Thomas Ralston's declaration (*see ¶¶* 8-11, 14-15, 25-27) ███████████████

20   ████████████████████████████████████. Defendants

21   misapprehend the 'reliance' that is required in a civil RICO claim (Opp. p. 25). For example, in

22   *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 596 (C.D. Cal. 2012), affirming

---

[21] The Ninth Circuit distinguished its approach for holding a defendant liable for class-wide fraud and follows "an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'" *Id.* at 990. In this circuit, class treatment has been permitted where "a standardized sales pitch is employed" and has rejected "rejected a "talismanic rule that a class action may not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical," observing that such a strict standard overlooks the design and intent of Rule 23." *Id.*

[22] Plaintiff D.B. ████████████████████████████████████████████████
    ████████████ Exhibit "38", p. 280:16-18.

1  certification of a civil RICO class "where proof of reliance is 'a milepost on the road to

2  causation'" citing *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir.2004). The Court

3  affirmed the use of a "common sense" under the circumstances in *Negrete*, 287 F.R.D at 613.

4  The same "common sense" approach is well-suited to the facts of this case[23].  10.

5          Having thus established a class-wide presumption of reliance, the "presumption cannot be

6  rebutted by showing that <u>individual absent class members</u> did not rely upon the fraudulent

7  omissions. The presumption [can] be rebutted on a class-wide basis only if there is evidence that

8  can be properly generalized to the class as a whole." *Plascencia v. Lending 1st Mortg.*, 2011 WL

9  5914278, at *2 (N.D. Cal. Nov. 28, 2011) (underlining added). Defendants have presented no

10 such evidence and therefore does not rebut the class-wide presumption of reliance at this stage of

11 the litigation. Defendants misstate both what constitutes an injury for purposes of civil RICO and

12 what is required for class certification. First, it is well established that a debt constitutes an

13 economic injury for many purposes. *See e.g. Lane v. Wells Fargo Bank, N.A.*, 2013 WL

14 3187410, at *11 (N.D. Cal. June 21, 2013) ("debt is an economic injury"); *Vega v. Ocwen Fin.*

15 *Corp.*, 2015 WL 1383241, at *8 (C.D. Cal. Mar. 24, 2015). Plaintiffs' RICO damages are not

16 limited to out-of-pocket expenses incurred by Plaintiffs in response to issued balance bills as

17 argued by Defendants (Opp. p. 26). It is well established that "damages as compensation under

18 RICO § 1964(c) for injury to property must, under the familiar rule of law, place [the injured

19 parties] in the same position they would have been in but for the illegal conduct." *In re U.S.*

20 *Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013). In *In re U.S. Foodservice*, the

21 court found RICO damages on the fact of that case were "the amount of overcharge—the amount

22 customers paid [Defendant] as a result of its deception." *Id.* at 123. RICO damages can be

23 measured in a similar manner in this litigation as the amount that Defendants under-reimbursed

24

25 ----

   23 *See* Deposition Transcript of Denise Strait, Exhibit "42" to Modiano Dec., pg. 150:18-158:13, discussing the
26 Reasonable & Customary Program and Viant, pg. 159:7-186:21, recordings of United Behavioral Health call center
   agents providing benefits information, VOB calls, to providers for members with the Reasonable & Customary
27 Program and stating that the member's representative "may expect to be paid what they heard on that call." (pg.
   186:20-21); 193:16-204:6, VOB recording and testimony thereon relating to the Reasonable & Customary Program
28 and "usual and customary" amount (203:17-18). *See also* Appendix to Hall Supp. providing numerous examples of
   usual and customary and its congeners and generally accepted and understood meaning within healthcare.

1   as the result of the Enterprise's fraudulent use of Viant OPR. *See* Exhibit 11. Further, the actual

2   determination of damages for Plaintiffs' civil RICO claims is not of a nature that would preclude

3   class certification. *See e.g.*, *Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663, *11–

4   12 (C.D.Cal. Oct. 19, 2011) (noting that defendant's "speculation that some class members'

5   claims may be barred on the basis of actual knowledge is not sufficient to defeat certification"); 2

6   Newberg on Class Actions § 4:57 (5th ed.) ("damage calculations, affirmative defenses, and

7   counterclaims—rarely defeat class certification.").

8   **B. Plaintiffs Have Satisfied the Requirements of Rule 23(b)**

9        Defendants are incorrect in stating that Plaintiffs are seeking individual relief, precluding

10  certification under Rule 23(b). Also, Defendants' argument as to the Rules Enabling Act and due

11  process concerns (Opp. p. 20) are similarly without merit and have been addressed by the

12  Supreme Court that held, "[a] class action, no less than traditional joinder (of which it is a

13  species), merely enables a federal court to adjudicate claims of multiple parties at once, instead

14  of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact

15  and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,

16  559 U.S. 393, 408 (2010).

17      **1.     The Requirements of Rule 23(b)(1) Are Met**

18       Defendants misapprehend the requirements and application Rule 23(b)(1). Plaintiffs are

19  not arguing for a particular 'rate' as alleged by Defendants[24]. (Opp.  p. 31). Courts in the Ninth

20  and other Circuits have all certified 23(b)(1)(A) & (B) classes in ERISA cases. *See, e.g.*, *Moyle*

21  *v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016), *as amended on denial of reh'g*

22  *and reh'g en banc* (Aug. 18, 2016) (affirming certification of Rule 23(b)(1)(A) class in ERISA

23  action because "[p]rosecuting separate actions in this case would have the result of subjecting

24  [defendant] to incompatible standards of conduct"); *Buus* 251 F.R.D at 588 ("Adjudication of

25

26  [24] Even if Plaintiffs were making such an argument, it would not preclude class certification under Rule 23(b)(1)(A)
    as "inconsistent outcomes in money damage suits will not alone create inconsistent standards, though money

27  damages are not absolutely prohibited in 23(b)(1)(A) class actions" (2 Newberg and Rubenstein on Class Actions §
    4:8 (6th ed.)) and "there is nothing in the language or history of Rule 23(b)(1)(A) that prohibits money damages." *Id.*

28  § 4:14.

Reply in Support of Plaintiffs' Motion for Class
                                              Certification

1   Plaintiffs' claims by different courts carries a substantial risk of varying orders—a risk that is

2   particularly problematic in cases, such as this one, where Plaintiffs request injunctive relief"); *In*

3   *re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) ("The language of

4   subdivision (b)(1)(A), addressing the risk of "inconsistent adjudications," speaks directly to

5   ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary

6   responsibility"); *Munro v. University of Southern California*, 2019 WL 7842551, *9-10 (C.D.

7   Cal. 2019) ("Courts in the Ninth Circuit also routinely certify ERISA class actions under Rule

8   23(b)(1)(B)…the prudent and coherent administration of the Plans is too important to permit tens

9   or hundreds of separate adjudications to impose varying standards on Defendants…[a]s such,

10  this class is properly certified under Rule 23(a), as well as Rule 23(b)(1)(A) or in the alternative,

11  23(b)(1)(B)"); *Baird v. Blackrock Institutional Tr. Co.*, 2020 WL 7389772, at *14 (N.D. Cal.

12  Feb. 11, 2020) ("Certification under Rule 23(b)(1)(B) is equally appropriate. If the violations

13  alleged by Plaintiffs are proved, they affect every Plan participant, and Defendants would be

14  required to take remedial actions for all participants and their beneficiaries. This fits squarely

15  within the classic example of a Rule 23(b)(1)(B) action as it charges a breach of trust by an

16  indenture trustee or other fiduciary similarly affecting the members of a large class of

17  beneficiaries." (citations and quotations edited for clarity)).

18        Defendants intentionally misconstrued the position set forth in Plaintiffs' motion and

19  expert opinion of Professor Lahav supporting class certification pursuant to Rule 23(b)(1) as well

20  as the relief sought by Plaintiffs under Rule 23(b)(1). As in *Hecht v. United Collection Bureau,*

21  *Inc.*, 691 F.3d 218, 222 (2d Cir. 2012), "Defendants misconstrue the requested relief when they

22  argue that Plaintiffs seek only monetary benefits…Here, however, the monetary benefits to the

23  proposed class are merely incidental to the adjudication of the alleged errors. The Complaint

24  seeks judgment against Defendants on all claims and an order "requiring the benefit amounts due

25  or past due under the terms of the Plan in accordance with the requirements of ERISA, and,

26  where applicable, for the Plan to pay the difference" to the affected class members." Plaintiffs

27  are challenging Defendants method of calculating reimbursement and the incidental effect of

28  likely having to pay additional reimbursement amounts when using an appropriate, objective,

1    methodology is consistent with the many cases where courts have certified classes under Rule

2    23(b)(1).

3            The cases cited by Defendants do not rebut these points; instead, they are inapposite and

4    readily distinguished. In *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir.

5    1973), cited by Defendants, the court declined to certify a class under Rule 23(b)(1)(A) because

6    "[Plaintiffs'] success by its terms does not fix the rights and duties owed by the defendants to

7    others." That is not the situation in the present litigation. Instead, the present litigation is more

8    analogous to *Alvidres v. Countrywide Fin. Corp.*, 2008 WL 1766927, at *3 (C.D. Cal. Apr. 16,

9    2008) where the court certified a Rule 23(b)(1)(A) class as "there are over 40,000 potential

10   Plaintiffs who could individually file suit for damages arising from the same conduct. This

11   would create a risk of "inconsistent and varying" adjudications, resulting in "incompatible

12   standards of conduct" for Defendants." Defendants' statement that "there is no risk that deviating

13   adjudications as to members of *different* plans would impose on United inconsistent obligations"

14   (Opp. p. 31) is incorrect based on the facts of this case and applicable law. In *Haley v. Tchrs. Ins.

15   & Annuity Ass'n of Am.*, 337 F.R.D. 462, 474 (S.D.N.Y. 2020), cited by Defendants, the court

16   certified a Rule 23(b)(3) class but not a Rule 23(b)(1)(A) class because "[plaintiff] has not shown

17   how determinations that TIAA's collateralized loan program violated ERISA for one plan in the

18   proposed class and did not do so for another plan would be 'incompatible.' " *Id.* Plaintiffs have

19   done so here (*See* Hall Supp).

20           United has one program, the Reasonable and Customary program, and its obligations under

21   this program do not vary from in a significant or meaningful way between plans with that

22   program. Here, Defendants' conduct has violated the terms of every plan with the Reasonable

23   and Customary program. As stated by a sister court in *Trujillo v. UnitedHealth Grp., Inc.*, 2019

24   WL 493821, at *8 (C.D. Cal. Feb. 4, 2019), "[t]he Court concludes that the requirements of Rule

25   23b(1)(A) are met here… if this Court were to find that the terms of United plans and ERISA

26   claim processing and notice rules required United to act in a certain fashion, and another court

27   found that those same terms and rules required United to act in a different fashion, United would

28   face an 'incompatible standard of conduct.' " As the such class should be certified pursuant to

1    Rule 23(b)(1)(A) or (B), in the alternative.

2        **2.        The Requirements of Rule 23(b)(2) Are Met**

3        "Rule 23(b)(2) requirements are unquestionably satisfied when members of a putative

4    class seek uniform injunctive or declaratory relief from policies or practices that are generally

5    applicable to the class as a whole." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir.

6    2021). The relief sought by Plaintiffs is applicable to class as a whole for both Plaintiffs' ERISA

7    and RICO claims. As to ERISA claims, the reprocessing of all the claims at issues using an

8    objective reimbursement methodology and requiring such a methodology for those plans that

9    continue to participate in the Reasonable and Customary program, is equitable relief that is

10   appropriate under Rule 23(b)(2). *See Buus* 251 F.R.D. at 588 ("Plaintiffs also seek equitable

11   relief in the form of a recalculation of the accrued benefits of class members based upon the old,

12   pre cash balance formula for calculating benefits… This relief applies to each subclass as a

13   whole. Rule 23(b)(2) is satisfied.").

14       The arguments put forward by Defendants arguing that 'reprocessing' is unavailable to a

15   Rule 23(b)(2) class (Opp. p. 32) have been considered, and rejected, by numerous courts. *See,*

16   *e.g. Des Roches* 320 F.R.D. at 508 ("several other courts have certified Rule 23(b)(2) classes

17   seeking [reprocessing]… Even outside the ERISA context, "reprocessing" injunctions are

18   routinely found to be sufficient for class certification under Rule 23(b)(2)"). *Des Roches* rejected

19   the argument that Defendants' make that "reprocessing is not '*final* injunctive relief'" (Opp. p.

20   32) and held "Plaintiffs' requested reprocessing injunction meets the requirements of Rule

21   23(b)(2). Such an injunction would apply to the class as a whole and would not require the Court

22   to engage in individual determinations of class members' claims." *Id.* at 510. *See also, Kazda v.*

23   *Aetna Life Ins. Co.*, 2022 WL 1225032, at *6 (N.D. Cal. Apr. 26, 2022); *Jones v. United*

24   *Behavioral Health*, 2021 WL 1318679, at *8 (N.D.Cal., 2021) Further, a prospective injunction

25   is appropriate because the Reasonable & Customary Program with Viant OPR continues to be

26   used by the Defendants in the same fraudulent manner and as a part of the same scheme that

27   gave rise to the present litigation. *Accord*, *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 344

28   (S.D.Iowa, 2013); *In re Managed Care Litigation*, 298 F.Supp.2d 1259, 1283 (S.D.Fla.,2003);

Reply in Support of Plaintiffs' Motion for Class
                                                                Certification

1   *Motorola Credit Corp. v. Uzan*, 202 F.Supp.2d 239, 244 (S.D.N.Y., 2002)[25].

2           Defendants' attempt to distinguish Plaintiffs' cases in support of reprocessing and

3   prospective injunctive relief are unpersuasive, especially in attempting to argue that *Kazda* and

4   *Des Roches* cannot be relied upon because of an out-of-context reference to the Remedies Order

5   in *Wit v. UnitedHealthcare Inc. Co.*, No. 3:14-cv-2346, ECF No. 491, at 44 (N.D. Cal. Nov. 3,

6   2020). In that same order, the Court awarded relief under all three parts of Rule 23(b), including

7   injunctive relief governing the criteria required to apply to coverage determinations. *Id.* at 78.

8   The Court's award of reprocessing under Rule 23(b)(3), as discussed in the Court's published

9   order issued the same day, makes clear that decision was based upon the specific facts and

10   interrelationships among the remedies being awarded (*see Wit v. United Behav. Health*, 2020

11   WL 6462401, at *10 (N.D. Cal. Nov. 3, 2020)), not that reprocessing is unavailable or

12   inappropriate under Rule 23(b)(2). Defendants repeatedly ignore that Plaintiffs are challenging

13   the Viant OPR methodology, not the individual payment rates as alleged by Defendants (Opp. p.

14   33).

15           **3.**      **The Requirements of Rule 23(b)(3) Are Met**

16           Defendants' arguments against certification pursuant to Rule 23(b) have little factual

17   merit and less legal support. The requirements of Rule 23(b)(3) are met where common

18   questions of law or fact occupy a significant aspect of the case and can be resolved for all

19   members in a single adjudication. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

20   1998) *overruled on other grounds* by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

21           ***Superiority:*** Plaintiffs have provided an objective class definition appropriate for Rule

22   23(b)(3) certification. However, the Subclass definitions are objective, which is all that matters.

23   See *Farar v. Bayer AG*, 2017 WL 5952876, at *13-14 (N.D. Cal. Nov. 15, 2017) (Orrick, J.)

24

25

---

26   [25] *But see Religious Technology Center v. Wollersheim*, 796 F.2d 1076 (C.A.9 (Cal.),1986) (finding injunctive
relief unavailable to civil RICO plaintiffs). Plaintiffs urge the Court to reject *Wollersheim* and instead follow *Nat'l*

27   *Org. For Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 154 L. Ed.
2d 991 (2003) for the same reasons outlined in the cases cited *supra*. Although Defendants do not cite to *Wolfsheim*

28   in their papers, Plaintiffs are mindful of their obligations of candor to the tribunal and Rule 11 and urge the Court to
adopt the far sounder reasoning of *Scheidler*.

1   ("plaintiffs' class definitions provide objective criteria that allow class members to determine

2   whether they are included in the proposed class" (citations omitted)). Likewise, *Briseno*, the

3   Ninth Circuit squarely rejected the claim that, for certification, a plaintiff must show an

4   "administratively feasible" way to identify class members. 844 F.3d at 1133. In doing so, the

5   court noted that "[o]ne rationale… has given for imposing an administrative feasibility

6   requirement is the need to mitigate the administrative burdens of trying a Rule 23(b)(3) class

7   action." *Id*. at 1127. This justification is "not through the text of Rule 23 but rather as a necessary

8   to ensure that the 'class will function as a class.'" *Id*. (quoting *Byrd v. Aaron's Inc.*, 784 F.3d

9   153, 162 (3d Cir. 2015)). However, because "Rule 23's enumerated criteria already address the

10   interests that motivated the Third Circuit," our Court of Appeals held that "an independent

11   administrative feasibility requirement is unnecessary." *Id*. Not only is such a requirement

12   unnecessary, however, it also "conflicts with the well-settled presumption that courts should not

13   refuse to certify a class merely on the basis of manageability concerns." *Id*. at 1128 (*quoting*

14   *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)); *accord In re Visa*

15   *Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2011).

16               **a)**      **ERISA**

17         In an earlier case before a sister court challenging United's out-of-network

18   reimbursement methodology utilizing Ingenix, the Court certified a Rule 23(b)(3) class stating,

19   "the predominance requirement is met because the compensation and reimbursement policies

20   implemented by Defendants uniformly applied to the class members. For example, Plaintiffs all

21   contend that the use of HINRM was misleading and did not result in reasonable payments to the

22   class members….Class members' claims raise the same issues, and will 'prevail or fail in

23   unison'… satisfying the requirement of Rule 23(b)(3)." *Downey Surgical Clinic, Inc. v. Ingenix,*

24   *Inc.*, 2015 WL 12645755, at *4 (C.D. Cal. Nov. 10, 2015). Although Defendants have discussed

25   damages models throughout their opposition, it is only under "Rule 23(b)(3)'s predominance

26   requirement, [that] Plaintiffs "must be able to show that their damages stemmed from the

27   defendant's actions that created the legal liability." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528,

28   542 (N.D. Cal. 2015). The predominance requirement is not present in Rule 23(b)(1) or (2).

-19-

1   Should the Court find a Rule 23(b)(3) class appropriate for Plaintiffs' ERISA claims, Professor

2   Ohsfeldt's report lays out a reasonable methodology for determining a reasonable pricing amount

3   that can then be applied systematically to determine damages.

4               **b)      RICO**

5          Defendants' argument that individualized issues of reliance and proof preclude

6   Plaintiffs'' RICO claim from being certified as a class under Rule 23(b)(3) (Opp. p. 35) are

7   similar to those that have been considered and rejected by this Court in *Bias v. Wells Fargo &*

8   *Co.*, 312 F.R.D. 528, 541 (N.D. Cal. 2015). Plaintiffs have shown that essentially the same script

9   was read containing the same omission of Viant for Plaintiffs' claims and those of the putative

10  class (*See* Strait dep. pg. 59:23-69:20; Lopez dep. 292:22-295:16). This is similar to what this

11  Court found sufficient in *Bias* where it stated, "[u]nder Plaintiffs' theory, Wells Fargo

12  fraudulently deceived every class member by not disclosing the mark-up, and Wells Fargo has

13  not shown that this failure to disclose varied among class members." *Id*. at 541. On the issue of

14  individualized reliance on a misrepresentation, this Court stated, "[w]here, as here, the case

15  primarily involves a failure to disclose (an omission), a presumption of reliance may be

16  invoked." *Id.* at 541 *citing Binder v. Gillespie*, 184 F.3d 1059, 1063–64 (9th Cir.1999). This

17  Court continued, "[a]ccordingly, Plaintiffs may be able to invoke a presumption of reliance,

18  which would adjudicate the issue of reliance without individualized inquiry." *Id.* Just as this

19  Court observed, "other courts have recognized that 'payment...may constitute circumstantial

20  proof of reliance upon a financial representation' " *Id.* citing *In re U.S. Foodservice Pricing*

21  *Litig.*, 729 F.3d 108, 119–20 (2d Cir.2013), so too can receipt and acceptance of payment.

22  Defendants perpetrated similar omissions in their communications over the wires and through

23  mail.

24         The presence of individualized damages is not sufficient to defeat Rule 23(b)(3)

25  certification, it is a showing of damages from a course of conduct that are required, not that all

26  damages from the conduct are the same. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th

27  Cir. 2017). The class notice that would issue under Rule 23 for class members' RICO claims can

28  be tailored to require information required for an individual's RICO damages determination.

**III.     CONCLUSION**

Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class certification.


Respectfully Submitted,


Dated: November, 23 2022     Arnall Golden Gregory LLP


*/s/ Matthew M. Lavin*
MATTHEW M. LAVIN
AARON R. MODIANO


DL LAW GROUP

*/s/ David M. Lilienstein*
DAVID M. LILIENSTEIN
KATIE J. SPIELMAN
*Attorneys for Plaintiffs.*

-21-