1
2
3
4                    UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7    LD, et al.,                              Case No.  20-cv-02254-YGR   (JCS)
                    Plaintiffs,
8
9        v.                                   **SECOND ORDER RE MOTION TO
                                              COMPEL (MULTIPLAN)**
10   UNITED BEHAVIORAL HEALTH, et al.,
                                              **ORDER RE ADMINISTRATIVE
11                  Defendants.               MOTION TO FILE UNDER SEAL**
12                                            Re: Dkt. Nos. 165, 244
13
14   **I.       INTRODUCTION**
15          This Order addresses Plaintiffs' challenges to the adequacy of MultiPlan's privilege log
16   and whether MultiPlan has improperly withheld documents on the basis of privilege or under the
17   work product doctrine.  Plaintiffs first raised these issues in a July 31, 2022 joint discovery letter
18   (dkt. 159) and then in a motion to compel (dkt. 165), filed in response to the Court's request for
19   full briefing on the dispute.  On October 3, 2022, the undersigned issued an order with rulings and
20   guidance related to Plaintiffs' disputes with MultiPlan.  Among other things, it rejected
21   MultiPlan's blanket assertion that it was not a fiduciary and therefore, that the fiduciary exception
22   to attorney-client privilege did not apply to any of the documents it withheld on the basis of
23   attorney-client privilege.  It further found that MultiPlan's privilege log did not provide sufficient
24   information to allow Plaintiffs (or the Court) to determine whether the withheld documents were,
25   in fact, privileged or work product. The Court also found that MultiPlan's reliance on vague
26   references to a governmental investigation to justify withholding documents was not sufficient to
27   establish that those documents were properly withheld.
28          The Court ordered MultiPlan to produce to Plaintiffs a revised privilege log that

United States District Court
Northern District of California

"[took] into account the guidance in [its October 3, 2022 Order]" and gave the parties an opportunity to meet and confer to determine whether any discovery disputes remained. Recognizing, however, that "as to many of the doctrines discussed [in the October 3, 2022 Order] it is sometimes difficult to determine where the line should be drawn between protected material and material that is subject to disclosure[,]" the Court agreed to review, *in camera*, a sample of withheld documents in order to provide further guidance to the parties if necessary.

It was the expectation of the undersigned that MultiPlan would revise its privilege log to take into account the Court's rulings and make a good-faith effort to narrow its disputes to those that involved issues where it was genuinely difficult to determine where to draw the line consistent with the Court's prior rulings.  Further, given that the Court had made clear that MultiPlan's privilege log contained insufficient information to support its claims of privilege and work product protection, the undersigned expected that as to the documents MultiPlan continued to claim were subject to withholding, it would supply supporting declarations containing sufficient details to support their claims. That is not what occurred.

Instead, MultiPlan – without first asking the Court to reconsider the rulings in its October 3, 2022 Order or appealing those rulings to the district judge – "informed Plaintiffs of a recent decision from the Central District of California, which supports the conclusion that MultiPlan is not an ERISA fiduciary and thus is not subject to the fiduciary exception to attorney-client privilege." MultiPlan Notice of Supplemental Authority and Written Report Pursuant to October 3, 2022 Order Re Motion To Compel (dkt. 239) ("MultiPlan Supplemental Brief") at 4. MultiPlan "also informed Plaintiffs of the U.S. Supreme Court's recent grant of certiorari in a Ninth Circuit case relied upon by this Court in applying the primary purpose test to determine whether MultiPlan's assertions of privilege were sufficient with respect to communications involving MultiPlan's in-house counsel." *Id.*  In short, MultiPlan simply ignored the rulings and guidance in the October 3, 2022 Order on these issues, insisting that it was not bound by those rulings and filing an unsolicited supplemental brief to that effect on October 28, 2022.  In the meantime, the parties' briefing related to class certification continued, with a hearing on that motion set for January 11, 2023.

2

1        On November 1, 2022, Plaintiffs brought a motion to strike MultiPlan's Supplemental

2    Brief on the basis that it was an improper sur-reply, an improper motion for reconsideration,

3    improper filing of supplemental material, and an improper objection after the fourteen days

4    permitted by Fed. R. Civ. P. 72.  Although the undersigned agrees that MultiPlan's Supplemental

5    Brief was improper, it declined to strike it because of the potentially high stakes involved in

6    connection with the parties' discovery dispute.  Under such circumstances, resolution of the

7    dispute on the merits is desirable when that is possible.  Therefore, the Court denied the motion to

8    strike and requested that Plaintiffs respond to MultiPlan's arguments on the merits. Plaintiffs filed

9    their response on November 9, 2022.

10        In this Order, the Court addresses MultiPlan's arguments challenging the rulings in the

11   October 3, 2022 Order, which it finds to have no merit.  Next, it revisits the question of whether

12   MultiPlan has waived the protections claimed in its privilege log as grounds for withholding the

13   documents listed therein in light of its failure to comply with the Court's October 3, 2022 Order

14   and the Court's *in camera* review of the fifty sample documents selected by Plaintiffs and lodged

15   by MultiPlan.  For the reasons set forth below, the Court finds that MultiPlan has waived all

16   privilege and work product protection as to the documents listed on its Revised Privilege Log.

17   Finally, the Court addresses an ancillary dispute concerning whether MultiPlan's revised privilege

18   log should be filed under seal.  As discussed below, the Court finds MultiPlan has not met its

19   burden as to that request.

20   **II.    MULTIPLAN'S CHALLENGES TO RULINGS IN THE OCTOBER 3, 2022
             ORDER**

21

22        **A.    Order in *In re: Out of Network Substance Use Disorder Claims against
                  UnitedHealthcare*, Case No. 8:19-cv-02075-JVS(DFMx)**

23        In its October 3, 2022 Order, the Court rejected MultiPlan's argument that it was not a

24   fiduciary and therefore not subject to the fiduciary exception, reasoning that the district judge in

25   this case found plausible Plaintiffs' allegations that "MultiPlan participated in a breach of

26   fiduciary duty 'by collaborating with United to develop and operate a database and pricing tool

27   that generated the lowest possible reimbursement rates notwithstanding the requirements of the

28   plans, which required the consideration of the customary rates of similar IOP-services providers in

United States District Court
Northern District of California

3

the geographic region[.]'" October 3, 2022 Order at 16 (quoting dkt. 73 at p. 14). Now, MultiPlan argues that it cannot be compelled to produce documents under the fiduciary exception because the Court has not yet made a "***definitive determination that MultiPlan and/or Viant were engaged in any fiduciary function and that MultiPlan and/or Viant otherwise qualify as an ERISA fiduciary.***" Supplemental Brief at 6 (italics and bold in MultiPlan's brief). Furthermore, MultiPlan asserts, another district judge found on summary judgment that MultiPlan was *not* a fiduciary and therefore the undersigned erred in finding that the fiduciary exception may apply to MultiPlan here. *Id.* (citing *In re: Out of Network Substance Use Disorder Claims Against UnitedHealthCare*, Case No. 8:19-cv-02075 JVS(DFMx) (C.D. Cal. Oct. 14, 2022) ("*In re: OON SUD Claims*")). The Court finds MultiPlan's reliance on *In re: OON SUD Claims* unpersuasive.

In *In re: OON SUD Claims*, a number of health care providers ("Providers") sued various United entities, as well as MultiPlan and Viant, alleging that reimbursement rates negotiated by MultiPlan and Viant and paid by United were lower than the rates that should have been paid under the patients' health care plans. Case No. 8:19-cv-02075 JVS(DFMx) (C.D. Cal. Oct. 14, 2022) at 2-6. The Providers asserted, *inter alia*, a claim for plan benefits under ERISA, 29 U.S.C. § 1132(a)(1), against MultiPlan and Viant. *Id.* at 6. These defendants were not themselves ERISA plans, but the Ninth Circuit has held that a claim for benefits under Section 1132(a)(1) may also be asserted against a plan fiduciary, *see Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc*., 770 F.3d 1282, 1297 (9th Cir. 2014), and thus, the question on summary judgment in *In re: OON SUD Claims* was whether MultiPlan and Viant were fiduciaries.

Judge Selna found in *In re: OON SUD Claims* that MultiPlan and Viant were not fiduciaries, looking to the definition of an ERISA fiduciary set forth in 29 U.S.C. § 1002(21)(A). *Id.* at 8.[1] His conclusion was based on a series of what he found to be undisputed facts, including

[1] Section 1002(21)(A) provides:

Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan,

United States District Court
Northern District of California

the fact that "[w]hile MultiPlan generated price recommendations, it lacked the authority to bind United to that recommendation." *Id.* at 9. He further found that the undisputed facts established that MultiPlan's determination of suggested reimbursement rates – whether through negotiations with providers or use of its own software – was "purely ministerial" and therefore did not make it a fiduciary. *Id.* In support of this conclusion, Judge Selna relied on the following language in Department of Labor, Interpretive Bulletin 75-829 C.F.R. § 2509.75-8:

> [A] person who performs purely ministerial functions such as [calculation of benefits] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

*Id.*

In *In re: OON SUD Claims*, Judge Selna acknowledged that third-party administrators that "process[ ] claims and negotiat[e] fees 'according to their own preferred framework without regard to the limitations of the plan'" are plan fiduciaries. *Id.* (quoting *ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*, 2015 WL 9300519, at *6 (N.D. Cal. Dec. 22, 2015)). Indeed, this was essentially what the Providers alleged in the operative complaint. *See* Case No. 8:19-cv-02075 JVS(DFMx), dkt. 80 (Third Amended Complaint) ¶¶ 206-208. He found, however, that the Providers had not "come forward with sufficient evidence" on this question to survive summary judgment. *In re: OON SUD Claims,* Case No. 8:19-cv-02075 JVS(DFMx) (C.D. Cal. Oct. 14, 2022) at 10.

Notably, the Providers specifically argued in opposing summary judgment that there were disputed facts on this question, "emphasiz[ing] that MultiPlan operated its own pricing database, outside of the framework established by the Plans." *Id.* at 9 (citing Providers' Opposition at 6);

---

or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C.A. § 1002(21)(A).

1    *see also* Case No. 8:19-cv-02075 JVS(DFMx), dkt. 222 (Plaintiffs' Response and Objections to

2    Viant Inc. and MultiPlan Inc.'s Statement of Uncontroverted Facts in Support of Motion for

3    Summary Judgment) ¶ 27 (characterizing as disputed the statement that "MultiPlan and Viant do

4    not determine the reimbursement amounts for any claims of any providers, nor do they process

5    reimbursements to any providers, and they never have."). Judge Selna, however, found that while

6    the Providers "disputed certain facts[,]" the "vast majority" of facts in the case were actually

7    undisputed because Plaintiffs had "cited to hundreds of pages of exhibits with no specific citations

8    or highlighted text within the exhibits[,]" in violation of Federal Rule of Civil Procedure

9    56(c)(1)(A), and that Plaintiffs "present[ed] an entirely unmanageable objection." *In re: OON*

10   *SUD Claims,* Case No. 8:19-cv-02075 JVS(DFMx) (C.D. Cal. Oct. 14, 2022) at 2 n. 2.

11          There is no doubt that the question decided by Judge Selna on summary judgment in *In re:*

12   *OON SUD Claims* overlaps with issues raised in this case to the extent that Plaintiffs here allege

13   that MultiPlan is a fiduciary with respect to its repricing of claims. *See, e.g.,* Third Amended

14   Complaint ¶ 527 ("Plaintiffs and the Class have been harmed, and are likely to be harmed in the

15   future, by United and MultiPlan's breaches of fiduciary duties described in the allegations above

16   and in Counts III through VI above."). MultiPlan has not, however, offered any justification for

17   treating the summary judgment ruling in *In re: OON SUD Claims* as binding on Plaintiffs in *this*

18   *case* – where the district court has not yet reached the summary judgment stage of the case or

19   decided the hotly contested question of whether MultiPlan reprices claims using its own

20   methodology that is outside of the framework of Plaintiffs' health benefit plans.

21          Furthermore, treating that decision as binding in connection with the discovery dispute

22   here would be particularly inappropriate because Judge Selna did not conclude, as a matter of law,

23   that MultiPlan and Viant could *never* be found to be fiduciaries based on the facts alleged in *In re:*

24   *OON SUD Claims*.  To the contrary, like many other district judges in the Ninth Circuit (including

25   the district judge in this case), he recognized that with proper evidentiary support, they could.  *See*

26   *RJ v. Cigna Behav. Health, Inc*., No. 5:20-CV-02255-EJD, 2021 WL 1110261, at *7 (N.D. Cal.

27   Mar. 23, 2021) (finding that the plaintiffs had sufficiently alleged that Viant was a fiduciary based

28   on its repricing of claims as that conduct could reflect that it exercised authority and control over

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   plan assets under 29 U.S.C. § 1002(21)); *Monterey Peninsula Horticulture, Inc. v. Emp. Benefit*

2   *Mgmt. Servs., Inc.*, No. 20-CV-01660-NC, 2020 WL 2747846, at *3 (N.D. Cal. May 27, 2020)

3   (holding that the plaintiff's allegations "suggest[ed] that [defendant third-party administrator] had

4   practical control over Plan assets and 'any' control over disposition of plan money is enough to

5   impose a fiduciary duty.").  Given that the district judge in this case has found plausible Plaintiffs'

6   allegations that MultiPlan acted as a fiduciary in connection with its repricing of claims for

7   United, the undersigned declines to adopt the conclusion of a different judge on a different record

8   to reach the opposite conclusion.

9          Nor has MultiPlan cited authority to support its assertion that no discovery should be

10  compelled under the fiduciary exception until a final determination has been made that it is a

11  fiduciary.  *See* Supplemental Brief at 8 (requesting that if the Court rejects MultiPlan's argument

12  based on *In re: OON SUD Claims* it "decline to issue any order requiring MultiPlan to deprivilege

13  and/or produce documents based on application of the fiduciary exception until evidence has been

14  presented and a factual determination has been made regarding whether MultiPlan qualifies as an

15  ERISA fiduciary for purposes of this case.").  This is one of the major merits issues in the case and

16  thus it would be inappropriate for the undersigned to consider evidence and decide this question

17  on a discovery referral.  Nor would it be fair to deprive Plaintiffs of discovery to which they are

18  entitled from plan fiduciaries, given that the district judge has allowed their claims against

19  MultiPlan based on its fiduciary duties to go forward.  Therefore, the Court concludes, as it did in

20  its October 3, 2022 Order, that for the purposes of resolving the discovery dispute presently before

21  the Court, MultiPlan should be considered a plan fiduciary as to conduct that relates to the

22  fiduciary duties owed to plan participants, namely, the repricing of plan members' claims.[2]

23         **B.    Supreme Court's Grant of *Certiorari* in *In re Grand Jury***

24          MultiPlan also asserts that to the extent the undersigned relied on *In re Grand Jury*, 23

25  F.4th 1088 (9th Cir. 2021) in its October 3, 2022 Order and the Supreme Court subsequently

---

27  [2] The Court notes that to the extent that MultiPlan is concerned about protecting from public
    disclosure highly sensitive communications, this Order does not preclude it from designating the
28  materials as confidential under the protective order or seeking to file materials under seal, where
    appropriate.

United States District Court
Northern District of California

1  granted *certiorari* in that case, this Court should "decline to decide whether MultiPlan has

2  adequately supported its claims of privilege under the primary purpose test with respect to

3  communications involving MultiPlan's in-house counsel pending further guidance from the

4  Supreme Court."  Supplemental Brief at 9.  As *In re Grand Jury* continues to be binding in this

5  Circuit, the Court decline's MultiPlan's request.  *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th

6  Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned

7  colleagues on his own court of appeals who have ruled on a controlling legal issue, or with

8  Supreme Court Justices writing for a majority of the Court . . . Binding authority must be followed

9  unless and until overruled by a body competent to do so.").

10  ### III.     WAIVER REVISITED

11  ####     A.    Legal Standards[3]

12      A party asserting privilege must "describe the nature of the documents . . . in a manner

13  that, without revealing information itself privileged or protected, will enable other parties to assess

14  the claim." Fed. R. Civ. P. 26(b); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*

15  *for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005) (a party claiming privilege must "provide

16  sufficient information to enable other parties to evaluate the applicability of the claimed privilege

17  or protection"). Typically, this is done using a privilege log that identifies "(a) the attorney and

18  client involved, (b) the nature of the document, (c) all persons or entities shown on the document

19  to have received or sent the document, (d) all persons or entities known to have been furnished the

20  document or informed of its substance, and (e) the date the document was generated, prepared, or

21  dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). However, a party

22  may also substantiate a claim of privilege by other means, including declarations that "establish

23  the purpose of the communication or the specific role of the sender and each individual recipient."

24  *Apple Inc. v. Samsung Elecs. Co*., 306 F.R.D. 234, 237 (N.D. Cal. 2015).

25      Under Rule 34 of the Federal Rules of Civil Procedure, a party has 30 days from service to

26  respond to a request for production of documents, Fed. R. Civ. P 34(b)(2)(A), and the Ninth

27

28  [3] This section is taken verbatim from the Court's October 3, 2022 Order.  It is repeated here for the convenience of the reader.

Circuit has held that the 30-day time limit for responding to document requests serves as a "default guideline" for service of a privilege log or other disclosure that satisfies the requirements of Rule 26(b)(5)(A). *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). In *Burlington*, the court explained that the 30-day guideline does not establish a "a per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Id.* Instead, district courts are to "make a case-by-case determination," considering the following factors: 1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient);" 2) "the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient);" 3) "the magnitude of the document production;" and 4) "other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Id.*

The *Burlington* court instructed that these factors "should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.* The court cautioned that "[t]hey should not be applied as a mechanistic determination of whether the information is provided in a particular format." *Id.* The court further held that "application of these factors shall be subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders." *Id.*

## B.  Discussion

In the Court's October 3, 2022 Order, it found that the first two *Burlington* factors favored waiver while the second two factors were neutral, concluding that a finding of blanket waiver of privilege and work product protection based on MultiPlan's failure to produce an adequate privilege log was too drastic a sanction. However, since that time the circumstances have decidedly changed such that the *Burlington* factors now strongly support finding such a waiver.

As discussed above, on October 3, 2022 the Court ruled on a number of disputed legal

United States District Court
Northern District of California

questions and specifically identified insufficiencies in MultiPlan's privilege log and the supporting record as to its claims of privilege and work product protection.   Although MultiPlan subsequently appears to have produced some documents that were originally listed on its privilege log[4], its overall response has been largely to ignore the Court's guidance.  This is apparent from a series of actions taken by MultiPlan:  (1) the improper brief filed by MultiPlan challenging the validity of the Court's rulings (MultiPlan did not appeal this Court's order, did not move for reconsideration, and, after argument and ruling, used a filing bringing a non-binding ruling to the court's attention as a device to re argue the points that it had already lost and had not challenged by appeal or otherwise); (2)  the failure to produce any additional declarations providing information that the Court specifically flagged in the October 3, 2022 Order as missing and which continues to be necessary if MultiPlan is to carry its burden as to many of the documents MultiPlan still insists were properly withheld;  and (3) the Court's findings in connection with its *in camera* review of a sample of the withheld documents, discussed further below.  The Court also finds that the most recent revised privilege log, provided to Plaintiffs on October 28, 2022, *see* Dkt. 241-1 ("Revised Privilege Log"), continues to provide vague and insufficient descriptions of the documents MultiPlan maintains are privileged or work product.

MultiPlan's conduct has significantly increased the prejudice to Plaintiffs associated with its failure to produce an adequate privilege log as the length of the delay has almost doubled since Plaintiffs initially sought judicial intervention on this issue. Moreover, in light of MultiPlan's response to the October 3, 2022 Order, the undersigned is not confident that giving MultiPlan a further opportunity to revise its privilege log will result in prompt resolution of the parties' disputes as to the remaining withheld documents. The window for providing meaningful relief for Plaintiffs is fast closing:  Briefing on Plaintiffs' class certification motion is now complete, the motion hearing is around the corner, and the district judge has made clear that avoiding further delay in this case is of paramount importance. *See* dkt. 130.  Finally, the Court finds that

---

[4] The Court uses the word "appears" because MultiPlan does not assert in its Supplemental Brief that it has produced ANY of the documents previously withheld. However, the Revised Privilege Log is somewhat shorter than the original privilege log that the Court reviewed.

MultiPlan, by refusing to abide by the Court's order or follow the procedures set forth under the Local Rules for challenging the Court's rulings (*ie.*, by appealing the October 3, 2022 Order to the district judge or bringing a motion for reconsideration), has engaged in the sort of "tactical manipulation of the rules and the discovery process" that warrants a finding of waiver under *Burlington*.  *See* 408 F.3d at 1149.  Thus, the Court finds based on its consideration of the *Burlington* factors that MultiPlan has waived all of the protections asserted in the Revised Privilege Log and that the documents listed on it must be produced to Plaintiffs.

Below, the Court summarizes its findings based on *in camera* review of the sample documents.  The purpose of the discussion is not to definitively resolve every possible dispute about each of the documents with respect to whether it was properly withheld, or to provide a line-by-line analysis of the material that should (or should not) have been redacted.  As the undersigned acknowledged in its October 3, 2022 Order, it is not always easy to determine exactly where to draw those lines and as to the sample documents, there are certainly communications that present close calls on these questions.  Rather, the purpose of the Court's review is to show that despite these occasional close calls, the sample documents contain a significant amount of material that MultiPlan has withheld in contravention of the rulings in the October 3, 2022 Order, which supports the Court's conclusion that a finding of waiver is appropriate under *Burlington*.

## IV.    LODGED DOCUMENTS

### A.    Introduction

Having concluded that MultiPlan's reasons for ignoring the Court's October 3, 2022 Order have no merit, the Court summarizes some of the key take-aways from that order:

- Where the purpose of a communication is only to offer business advice or, in the case of dual purpose communications, the primary purpose of the communication is to give or receive business advice rather than legal advice, the communication may not be withheld on the grounds of attorney-client privilege, even if the communication involves an attorney; in the case of a communication that includes corporate in-house counsel, the proponent of the privilege must make a "clear showing" that the primary purpose of the withheld communication is legal rather

than business.

- MultiPlan may not claim attorney-client privilege or withhold as work product documents and communications relating to its conduct as a fiduciary, including its repricing of plan member claims, unless the document is related to specific litigation that is actual or imminent.

- There is no broad protection for documents related to governmental investigations but certain governmental proceedings are sufficiently adversarial to qualify as "litigation" for the purposes of work product protection.

**B.   Document Review**

Pursuant to the Court's October 3, 2022 Order, Plaintiffs selected fifty documents from the Revised Privilege for *in camera* review.  Plaintiffs have provided a brief explanation for their selection, grouping some of the documents together.  Dkt. 240.  The Court addresses the documents using the same groupings that Plaintiffs have used.

**1.   PRIV-000003, PRIV-000007, PRIV-000010, PRIV-000012, PRIV-000020, PRIV-000026**

All of these documents, which were withheld on the basis of attorney-client privilege and work product, are described in MultiPlan's Revised Privilege Log as email chains related to requests for "information" by a United States Department of Labor ("DOL") investigator and include communications to and from in-house counsel Marjorie Wilde and MultiPlan outside counsel Melissa Grim, as well as other MultiPlan employees.  Plaintiffs asked the Court to review these documents because they contend the description in the Revised Privilege is insufficient to establish that: 1) the primary purpose of the documents is to give or receive legal advice;  2) the fiduciary exception to attorney-client privilege does not apply; and 3) the communications related to specific litigation that was actual or imminent such that the documents are work product.  The Court agrees.  Moreover, having reviewed these documents, the Court finds that they fall under the fiduciary exception and that MultiPlan has not met its burden of showing that they related to actual or imminent litigation.

First, the subject matter of all of these communications is MultiPlan's pricing methodology

United States District Court
Northern District of California

and data relating to MultiPlan's application of that methodology to reprice claims.  As the Court discussed in its previous order, MultiPlan's pricing of plan members' claims for reimbursement implicates the fiduciary duties owed to plan members by MultiPlan.  Therefore, to the extent that these communications include legal advice or requests for legal advice, they fall within the scope of the fiduciary exception to attorney-client privilege. Thus, these communications may be withheld only if they are defensive in nature.  *See United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999) ("On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.").

In *Wit v. United Behavioral Health,* the undersigned reviewed the case authority addressing the scope of the fiduciary exception in the context of ERISA class actions and concluded as follows:

> [I]n the class action context, as in cases involving individual claimants, an approach that focuses too heavily on litigation exposure without requiring a showing that [advice] was actually sought for defensive purposes undermines the principles that the fiduciary exception is designed to protect. In particular, the fiduciary exception recognizes that beneficiaries are entitled to information about how their benefits are administered and that when counsel is advising an ERISA trustee about plan administration, this advice is generally for the benefit of the plan members. As virtually any policy or guideline may, at some point, be the subject of litigation, merely invoking that possibility is not sufficient to avoid the exception. Rather, either the context (*e.g.* actual or imminent litigation on the subject of the communication) or the contents of the communications themselves must reflect that they are defensive in nature and relate to advice sought and obtained to determine how far the trustees are "in peril."

No. 14-CV-02346-JCS, 2016 WL 258604, at *7 (N.D. Cal. Jan. 21, 2016)(quoting *Mett*, 178 F.3d at 1064).

Here, neither the content of the documents nor the context indicates that these documents were defensive in nature.  The only evidence MultiPlan has offered about the context is contained in the Wilde Declaration, which describes the documents as relating to "requests for information"

from a regulatory agency.  *See* 179-1 (Wilde Decl.) ¶¶ 36, 38, 39.  Wilde never refers to the requests as an "investigation", however, or suggests that the requests were made as part of – or in anticipation of – an enforcement action.   Nor does MultiPlan claim in its privilege log that these communications were defensive. Further, although it is apparent from the content of the communications that they involved efforts to respond to questions posed by a DOL investigator, there is no threat (or even mention) of any actual or anticipated enforcement action in these documents.

It is true that in one of the email chains, the DOL investigator states that DOL has "investigative authority under ERISA Section 504 to determine whether any person has violated Title I of ERISA or any related regulations" and that "[t]his includes both direct and indirect service providers to ERISA plans."  PRIV00026. There is no statement by the investigator or anyone else involved in these communications, however, that MultiPlan had been accused by DOL of any particular violation.   The fact that DOL asked MultiPlan for information and had enforcement authority under ERISA at best raises the *possibility* of an enforcement action.  It does not establish that such an action is imminent. This is not sufficient to show that these communications are defensive for the purposes of avoiding the fiduciary exception to attorney-client privilege.  For the same reason, the Court finds that these communications do not constitute work product.

MultiPlan's failure to provide a detailed explanation of the basis for its withholding of communications related to the DOL investigation is particularly striking in light of the fact that in its October 3, 2022 Order, the Court expressly rejected MultiPlan's broad reliance on the existence of a "confidential governmental investigation" to justify withholding documents.  In that order, the Court explained that MultiPlan "overstate[d] the degree of protection that is afforded communications related to governmental investigations . . . and [did] not provide sufficient information to establish that the protection that the law does afford to such materials applies to the documents MultiPlan has withheld in this case."  Dkt. 201 at 17.  Further, the Court specifically noted that "MultiPlan has provided no details indicating that the governmental investigation cited as grounds for withholding documents involved an adversarial proceeding akin to litigation."

1   2016 WL 258604, at *7.  Despite this admonition, MultiPlan provided no further evidence or

2   details aimed at establishing that the withheld documents related to an adversarial proceeding akin

3   to litigation.

4         Finally, the Court finds that MultiPlan has not established that these communications were

5   primarily for a legal purpose.  As the Court explained in its October 3, 2022 Order,

6   communications related to regulatory compliance may or may not be for a legal purpose, and

7   MultiPlan's description of the DOL requests for information and related communications was

8   insufficient to show that communications were primarily for a legal purpose:

> 9   [T]o the extent that information was collected in connection with a
> 10  regulatory matter, the communications may be primarily for a
>     business purpose rather than a legal purpose, depending on the
>     specific circumstances under which the information was collected.
> 11  *City of Roseville Employees' Ret. Sys. v. Apple Inc*., No.
>     19CV02033YGRJCS, 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3,
> 12  2022), motion for relief from judgment denied sub nom. *In re Apple
>     Inc. Sec. Litig*., No. 4:19-CV-2033-YGR, 2022 WL 4351392 (N.D.
> 13  Cal. Sept. 12, 2022). The Wilde Declaration describes numerous
>     documents that were withheld in connection with requests for
> 14  information by a regulatory agency. *See, e.g*., Wilde Decl. ¶¶ 38, 39.
>     It is not clear if these requests even rise to the level of
> 15  "investigations"; nor is it apparent that the provision of this
>     information, even if attorneys were involved, required any legal
> 16  expertise or involved anything more than a business activity.

17  October 3, 2022 Order at 20-21.  Despite this clear guidance, MultiPlan offered no further

18  information or evidence to show that these communications involved the provision of advice that

19  was based on *legal* expertise.  Nor is it apparent from the content of the documents that the

20  communications involved anything more than verifying the factual accuracy of statements

21  describing MultiPlan's repricing methodology to respond to DOL's questions.

22        Accordingly, the Court finds that these documents were improperly withheld.

23      **2.  PRIV-000023**

24        MultiPlan has claimed attorney-client privilege and work product protection as to this

25  document, which is described in the Revised Privilege Log as a "[s]preadsheet of sample claims

26  data and pricing calculations in order to respond to specific questions from U.S. Department of

27  Labor as part of investigation."  According to the Revised Privilege Log, it was an attachment

28  whose author was in-house counsel Marjorie Wilde.  In the declaration supplied by Wilde in

United States District Court
Northern District of California

15

1     opposition to Plaintiffs' motion to compel, Wilde described PRIV-00023, along with a handful of

2     other withheld documents, as "an email chain that originated with a conference invitation from me

3     to MultiPlan outside counsel (Melissa Grim, Errol King, and Craig Caesar), as well as other

4     MultiPlan employees, to discuss inquiries received from a regulatory agency. Information

5     concerning the subject of the regulatory agency inquiries was transmitted for use in advance of the

6     conference call. Then additional information concerning the inquiries was transmitted using this

7     email chain, including in response to a request made by me for specific data with my strategy for

8     use of same." Dkt. 179-1 (Wilde Decl.) ¶ 44.

9         Plaintiffs assert the reasons given by MultiPlan in the Revised Privilege Log for

10    withholding this document are insufficient because the description of the document "does not

11    appear to involve the giving or receiving of legal advice" and also suggests that it relates to out-of-

12    network reimbursement methodology, which would fall under the fiduciary exception under the

13    Court's October 3, 2022 Order.  Dkt. 240 at p. 3. The Court agrees that the descriptions of this

14    document in the Revised Privilege Log and in the Wilde Declaration are not sufficient to establish

15    that the document was properly withheld.  Furthermore, its review of the document leads the Court

16    to conclude that it was not.

17        To the extent the spreadsheet lists sample claims identified in response to DOL's questions

18    about how its repricing methodology works, it falls within the fiduciary exception for the same

19    reasons the documents discussed above do.  Further, MultiPlan has failed to offer information or

20    evidence establishing that this document is defensive or work product just as it has failed to make

21    such a showing as to the documents discussed above. Moreover, it has not offered evidence or

22    specific facts that the primary purpose of the communications was to seek or offer legal rather than

23    business advice.  Therefore, MultiPlan has not established that it was entitled to withhold this

24    document.

25        ### 3.  PRIV-000042

26        This document is described in the Revised Privilege Log as an "[e]mail chain between Ms.

27    Wilde and other employees including her impressions and analysis of issues concerning expert's

28    opinions on MultiPlan's pricing methodology and related issues presented in Brand Tarzana

United States District Court
Northern District of California

1   litigation involving United." MultiPlan lists on its Revised Privilege Log "attorney-client

2   privilege; common interest" as the basis for withholding the document. Plaintiffs challenge

3   MultiPlan's withholding of this document, asserting that the description of the document in the

4   Revised Privilege Log does not contain sufficient information to support its reliance on the

5   common interest doctrine and further asserting that it "appears unlikely" the document is

6   privileged in light of the reference to "expert's opinions", which are "not generally protected by

7   attorney client or common interest privileges." Dkt. 240 at p. 3.

8       The Court agrees that the description in the Revised Privilege is insufficient. The vague

9   reference in the description of the email chain to "other employees" leaves one to wonder who

10  these employees might be and even, whether they are MultiPlan employees. The revised Privilege

11  Log columns for individuals cc'ed and bcc'ed is blank (even though review of the document

12  reveals that numerous individuals were copied at various points in the email chain), and although

13  the communication is described as a "chain" the log appears to provide only a single sender and

14  recipient (even though review of the document reveals that it includes emails from other senders to

15  other recipients, some of whom are not named in the log).

16      Further, the Revised Privilege Log contains a vague reference to "common interest" and to

17  "Brand Tarzana litigation involving United" but does not provide any information about that

18  litigation or the basis for its claim of common interest. "Generally, joint defense or common

19  interest parties are parties within the same litigation." *In re Premera Blue Cross Customer Data

20  Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1247 (D. Or. 2017) (citing cases). While courts have

21  found that there are certain exceptions to that requirement, the common interest doctrine does *not*

22  apply simply because different parties "allegedly engaged in similar fraudulent schemes, or have

23  been accused of similar forms of misconduct generally." *Id.* Rather, the entities claiming a

24  common interest must face liability based on the same nucleus of operative facts. *Id.*; *see also

25  Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (the common interest

26  exception requires "a common legal, as opposed to commercial, interest."). Here, MultiPlan has

27  not even attempted to show that this requirement is met. Nor is it clear which part of the email

28  chain it contends is subject to the common interest doctrine.

Based on the Court's review of the document itself, the Court finds that at least portions of it involve requests for legal advice from a MultiPlan employee to in-house counsel and the provision of such advice.  However, at least some of the discussion in the email chain directly relates to the validity of MultiPlan's pricing methodology and likely falls under the fiduciary exception.  Further, it is not clear whether the email chain was circulated to non-MultiPlan employees (which would result in loss of any attorney-client privilege that might otherwise apply) because MultiPlan has not provided any information about some of the individuals who were copied and it is not apparent from the face of the document that they are MultiPlan employees.  And, as noted above, the description in the Revised Privilege Log does not clearly state that the "other employees" were MultiPlan employees.

### 4.  PRIV-000046, PRIV-000344, PRIV-000577, PRIV-000578, PRIV-000582, PRIV-000590

These documents were withheld on the basis of attorney-client privilege and work product, and are generally described in the Revised Privilege Log as email chains relating to the DOL requests for information, involving in-house counsel Marjorie Wilde and other MultiPlan employees; two also include outside counsel Melissa Grim.  Plaintiffs contend the description in the Revised Privilege Log is insufficient as to both attorney-client privilege and work product because: 1) "at least some of the material in the document relates to the Department of Labor and . . . as stated in the Court's prior order, "there is no privilege that offers broad protection from disclosure for communications related to a government investigation[;]" 2) the description does not show that the communication satisfies the "primary purpose" requirement; 3) the description is insufficient to overcome the fiduciary exception under the Court's October 3, 2022 ruling;  and 4) MultiPlan has not identified any specific litigation that was imminent or pending to justify withholding the document as defensive or work product.  Dkt. 240 at pp. 3-4.

The Court finds that the description in the Revised Privilege Log is inadequate.  Having reviewed these documents, the Court further finds that except for a few redactions,[5] these

---

[5] In PRIV-000046, there are references to current litigation that would, in the absence of waiver, be protected by attorney-client privilege.  In particular, material that likely meets the requirements for

United States District Court
Northern District of California

documents should have been produced for the same reasons MultiPlan should have produced PRIV-000003, PRIV-000007, PRIV-000010, PRIV-000012, PRIV-000020,  PRIV-000023, and PRIV-000026.

### 5.  PRIV-000049, PRIV-000501, PRIV-000506, PRIV-000509, PRIV-000516

In the Revised Privilege Log, MultiPlan claimed these documents were withheld based on "Attorney-Client Privilege; Common Interest; Work Product."  Plaintiffs contend MultiPlan did not provide sufficient information to establish that these documents are protected in their entirety by attorney-client privilege, that they do not fall under the fiduciary exception and that the common interest doctrine applies.  Dkt. 240 at p. 4. The Court finds that the description in the Revised Privilege Log is insufficient and that all of these documents except for one should have been produced.

All of these documents, except PRIV-00049 (discussed below), contain communications relating to threatened litigation by a provider, "Footprints."  They are addressed in paragraphs 31 of the Wilde Declaration, where she states:

> 31. . . . PRIV-000044, PRIV-000301 to PRIV-000303, PRIV-000304 to PRIV-000306, PRIV-000307 to PRIV-000309, PRIV-000477 to PRIV-000478, PRIV-000479 to PRIV-000480, PRIV-000481, PRIV-000483 to PRIV-000486, PRIV-000487, PRIV-000489, PRIV-000491 to PRIV-000494, PRIV-000496, PRIV-000498 to PRIV-000499, PRIV-000500 to PRIV-000501, PRIV-000502 to PRIV-000504, PRIV-000505 to PRIV-000512, PRIV-000513 to PRIV-000515, PRIV-000516, PRIV-000517 to PRIV-000519, and PRIV-000520 are a series of e-mail chains and related attachments, many of which overlap, and some of which are duplicates which took place from December 2017 through May 2018 and involved responding to the threat of litigation by a behavioral healthcare provider in connection with the reimbursement of claims paid by MultiPlan's client, United, and involving Viant OPR pricing. I was directly involved in the handling of this matter for MultiPlan, since United

attorney-client privilege includes:   1) the entirety of paragraph 7 on the second page of the document; 2) the language beginning "as well as" and ending at "Thanks" in paragraph 3 on the third page of the document; and 3) the sentence beginning with the word "Last" on the fifth page of the document. The Court notes that to the extent these documents reference white papers that MultiPlan produced to DOL, *see, e.g.*, PRIV-000578 ("We have attached the OPR and IPR white papers and since this is what the DOL has in front of them, you may want to do a quick review of them prior to the call to refresh yourself."), any privilege MultiPlan may be claiming as to such documents has been waived.  *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (rejecting application of selective waiver doctrine where privileged documents have been voluntarily disclosed to the government).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9

had sought assistance from MultiPlan concerning the underlying facts and legal issues that were presented by the provider's counsel in his demand letter. MultiPlan itself was in a position of common legal interest with United, and the possibility of litigation against MultiPlan was certainly present in my mind. In order to render the legal advice and assistance called for, I consulted with MultiPlan employees Tom Ralston, Michael McEttrick, Sean Crandell, Karen Beckstead, and JR Moss, whose job responsibilities related to the pricing methodology issues involved; Jacqueline Kienzle and Emma Johnson, who were the MultiPlan employees with direct responsibility for MultiPlan's relationship with United; and Jeff Doctoroff and Scott Mays, my colleagues in the MultiPlan Legal Department. In addition, within the e-mail chains there are some communications with United personnel, as they provided information relevant to my assessment of the legal issues and litigation risks involved. The confidential communications constituting the e-mail chains withheld reflect the sharing of information from client to attorney and the rendition of legal advice from attorney to client, as well as attorney work product.

10    Wilde Decl. ¶¶ 30-31.

11          The Court finds based on its *in camera* review that these communications constitute legal

12    advice or requests for legal advice and would be protected by attorney-client privilege were it not

13    for the fact that they relate to MultiPlan's repricing of claims, thus implicating MultiPlan's

14    fiduciary duty to plan members.  The remaining question is whether these documents are

15    defensive and therefore may be withheld on that basis even if the fiduciary exception applies.

16    MultiPlan asserts that they are, stating in the Revised Privilege Log that there was a "threat of

17    litigation" by the health care provider who was challenging the repricing of claims.

18          The Court's review of the documents supports MultiPlan's assertion that the provider had,

19    in fact, threatened litigation.  This does not end the inquiry, however, as there is no evidence that

20    the appeal by the provider had reached a final decision and the Court's review of the documents

21    indicate that it had not.  Rather, the MultiPlan employee who described the situation in one of the

22    withheld emails, Jacqueline Kienzle, states: "They have reached out to Viant and are appealing

23    claims and threatening litigation."  PRIV-00501. As the undersigned explained in its previous

24    orders in this case, "where the administrative appeal process is not yet final, courts have found that

25    the plan administrator remains in the role of the plan fiduciary, seeking to fully evaluate the plan

26    beneficiary's claim." *LD v. United Behav. Health*, No. 20CV02254YGRJCS, 2022 WL 4878726,

27    at *9 (N.D. Cal. Oct. 3, 2022) (citing *L.D. v. United Behav. Health*, No. 20-CV-02254 YGR

28    (JCS), 2022 WL 3139520, at *18 (N.D. Cal. Aug. 5, 2022) (citing *Sizemore v. Pacific Gas & Elec.*

*Retirement Plan*, 952 F. Supp. 2d 894, 901 (N.D. Cal. 2013)).  As these communications relate to an appeal that was not yet final, the Court concludes that they do not fall within the scope of the defensive exception to the fiduciary exception to attorney-client privilege and for the same reason, cannot be withheld as work product.

PRIV-00049 is described in the Revised Privilege Log as an "[e]mail chain between MultiPlan employees and the MultiPlan legal department concerning pricing methodology issues." Revised Privilege Log at p. 9.  MultiPlan further states in its privilege log that it "includes reference by counsel to behavioral health class action suits as well as other potential litigation." *Id.*  MultiPlan has withheld this document based on attorney-client privilege, work product and common interest.  In the Wilde Declaration, this document is described as an email chain "between MultiPlan employees and the MultiPlan legal department concerning pricing methodology" that "was intended to assist counsel in analyzing issues and developing strategy in legal matters."  Wilde Decl. ¶ 69.

The Court has reviewed the document and finds that the legal matter that is the subject of the communications relates to pending litigation, including class actions in which Viant was a defendant.  It appears that the communications arose out of a request for legal advice from another company that feared being subjected to a similar lawsuit rather than an individual or organization that shared a common interest with MultiPlan in connection with the assertion of attorney-client privilege.  Nevertheless, the communications include requests for information from MultiPlan employees by in-house counsel related to pending litigation involving MultiPlan and thus, the Court finds that to the extent these communications involved MultiPlan's fiduciary duty related to repricing of claims, the defensive privilege would have applied and the document would have been properly withheld but for MultiPlan's waiver.

### 6.  PRIV-000173, PRIV-000179, PRIV-000183, PRIV-000357, PRIV-000469, PRIV-000470, PRIV-000533, PRIV-000535, PRIV-000537

The Revised Privilege Log reflects that MultiPlan has withheld these documents on the basis of attorney-client privilege. Plaintiffs contend the descriptions of these documents, which are described as relating to pricing methodology, suggest they may fall under the fiduciary exception

United States District Court
Northern District of California

and that the privilege log does not provide sufficient information to show that they do not, or that

the communications were primarily for a legal purpose.  Dkt. 240 at p. 4.  The Court agrees that

the information provided by MultiPlan about these documents does not provide a sufficient basis

to determine whether they were properly withheld and further finds that they were not.

Wilde describes PRIV-000173, PRIV-000179 and PRIV-000183 as follows:

> PRIV-000173 to PRIV-000174, PRIV-000177 to PRIV-000179, and PRIV-000182 to PRIV-000187 are email chains and attachments concerning pricing methodology and potential changes to same. It reflects the MultiPlan legal department's review of the proposed changes, including my analysis and impression of proposed changes, as well as the impressions and advice of MultiPlan's General Counsel, Jeff Doctoroff.

*Id.* ¶ 68; *see also* Revised Privilege Log at pp. 16, 17 (providing similar descriptions).

As to PRIV-00357, PIV-00469 and PRIV-00470, Wilde states:

> PRIV-000357 to PRIV-000358 and PRIV-000469 to PRIV-000470 are email chains with attachments concerning documents utilized to support pricing recommendations and the protocols for disclosure of same. MultiPlan employee (now former) Emma Johnson sent me the email chain and requested my advice. I responded with my advice on providing supporting information. These particular items also relate to anticipated litigation involving healthcare providers whose patient are among the putative class here.

Wilde Decl. ¶ 13;  *see also*  Revised Privilege Log at pp. 25, 27 (providing similar descriptions).

Wilde describes PRIV-000533, PRIV-000535, and PRIV-000537 as follows:

> PRIV-000531 to PRIV-000538 is an email chain and attachments between MultiPlan employees concerning draft language regarding pricing methodology. It reflects a request for and the provision of legal advice from MultiPlan counsel Anthony Cardamone.

*Id.* ¶ 76;  *see also* Revised Privilege Log at p. 32 (providing similar descriptions).

As the descriptions provided by MultiPlan reflect, and the Court's *in camera* review

confirms, the subject matter of all of these communications falls squarely within the fiduciary

exception to attorney-client privilege.  In particular, they address MultiPlan's pricing

methodologies and related issues of: 1)  how and when MultiPlan shares information about these

methodologies with clients; and 2) the language it uses to describe its methodologies in its own

documents. (Notably, as to the last issue, which is the subject of PRIV-000533, PRIV-000535, and

United States District Court
Northern District of California

PRIV-000537, there is nothing in the record or the documents themselves that indicates these communications involved the language of any health benefit plan).

Further, the only suggestion that any of these documents are outside of the scope of the fiduciary exception because they are defensive is the statement in the Wilde Declaration that PRIV-00357, PIV-00469 and PRIV-00470 "relate to anticipated litigation involving healthcare providers whose patient are among the putative class here."  Wilde Decl. ¶ 13.  This vague description is not sufficient to establish that the communications related to specific litigation against MultiPlan that was actual or imminent.  Nor is this apparent from the documents themselves.  Therefore, the Court finds that these documents are not protected by attorney-client privilege.

### 7.  PRIV-000180, PRIV-000355

These documents were withheld on the basis of attorney-client privilege and as work product. They are described in the Revised Privilege Log as follows:

> Email chain reflecting correspondence from Marjorie Wilde to Jacqueline Kienzle (copied to the MultiPlan legal team) concerning legal matters involving United.

Revised Privilege Log at pp. 16, 25.  Plaintiffs point out – correctly – that this is the sort of vague description the Court found in its October 3, 2022 Order was insufficient to support a claim of attorney-client privilege.  *See* dkt. 240 at p. 5; dkt. 201 at 12.   In particular, the description contains no information from which it can be determined whether the communications fall under the fiduciary exception to attorney-client privilege.   Furthermore, MultiPlan's description fails to make clear whether the "legal matters" at issue are litigated matters or instead, claims by plan members that are still in the administrative appeals process where no final determination has yet been made.

The Wilde Declaration suggests that the term "legal matters" refers to *litigated* matters, describing these documents as follows:

> PRIV-000180 to PRIV-000181 and PRIV-000355 to PRIV-000356 are email chains with attachments reflecting correspondence from me to Jacqueline Kienzle (copied to the MultiPlan legal team) concerning legal matters involving a MultiPlan client. The attachment contains a list of litigated matters with legal impressions and analysis of the

matters.

Wilde Decl. ¶ 19. Yet the Revised Privilege Log descriptions of the attachments (PRIV-000181 and PRIV-000356, which were not selected for *in camera review*) makes clear that these listed "legal matters" include "*pending claims* and litigated matters that involve United." Revised Privilege Log at pp. 17, 25 (emphasis added).

The cover emails that Plaintiffs selected for *in camera* review would, arguably, be protected in their entirety but for MultiPlan's waiver, because the discussion of litigated matters and pending claims in those documents cannot easily be segregated by redaction. On the other hand, MultiPlan's descriptions of the attachments are insufficient to establish that those documents were properly withheld in their entirety. In particular, MultiPlan has not offered information showing that all of the "pending claims" listed in those documents involved final determinations, which is the point where a fiduciary's duties with respect to plan administration ends. To the extent the "pending claims" include claims that were still being appealed, communications about them fall under the fiduciary exception and therefore are not protected from disclosure.

### 8.   PRIV-000239, PRIV-000250, PRIV-000288, PRIV-000530

Except for PRIV-000250, these documents are described in the Revised Privilege Log as email chains that began with communications between MultiPlan and United concerning draft language for use in United communications to its clients. *See* Revised Privilege Log at pp. 18, 20, 31; Wilde Decl. ¶¶ 67, 70. PRIV-000250 is described as an email chain between United and MultiPlan "containing [a] request by [a] MultiPlan employee for legal advice from MultiPlan counsel Marjorie Wilde regarding information requested concerning [a] client's legal matter." Revised Privilege Log at p. 18. Plaintiffs contend the description in the Revised Privilege Log lacks the detail required to support an assertion of attorney client privilege and is insufficient as to the common interest assertion of privilege. Dkt 240 at 5.  The Court agrees.

All of these documents are email chains, yet the descriptions of them in the Revised Privilege Log contain only partial information about them. This is suggested by the descriptions themselves and confirmed by the Court's review of the documents. For example, PRIV-000239 is an email chain that begins with an email dated January 28, 2019 and ends with an email sent on

1   May 10, 2019.  Numerous MultiPlan employees, and apparently some United employees as well,

2   were senders or recipients or copied on some of these emails, yet MultiPlan does not identify them

3   in its Revised Privilege Log, misleadingly describing the document as a communication dated

4   May 10, 2019 with a single sender and recipient and no one copied.  While it is true that there is a

5   vague statement in the description section of the entry that the chain "began between MultiPlan

6   and United" and that "Draft language was circulated to the MultiPlan legal department for

7   advice[,]" this does not remedy the lack of detail provided as to the senders and recipients of the

8   emails in the chain and the individuals who were copied on those emails.  The descriptions in the

9   Revised Privilege Log of the other documents in this group suffer from similar shortcomings.

10        Further, MultiPlan has offered no information establishing that the common interest

11   doctrine applies here. As discussed above, entities claiming a common interest must face liability

12   based on the same nucleus of operative facts.  MultiPlan has made no effort to establish that this

13   requirement is met as to these documents.  Even as to PRIV-000250, which purportedly relates to

14   a request for advice about a "client's legal matter," review of the document reveals that that "legal

15   matter" was not against MultiPlan; nor did MultiPlan face liability based on the same nucleus of

16   facts.  Therefore, MultiPlan failed to meet its burden as to its failure to produce these documents.

17        **9.  PRIV-000287**

18        This document was withheld on the basis of attorney-client privilege and common interest.

19   It is described in the Revised Privilege Log as follows:

20        Email chain that originated with correspondence from United to
         MultiPlan concerning a draft response to a state agency. The
21        MultiPlan Legal Department was asked to review the response and
         provide input. MultiPlan attorneys Christopher Conway and Jeff
22        Doctoroff provided their insight and legal advice on the response.

23   Revised Privilege Log at p. 20;  *see also* Wilde Decl. ¶ 50 (containing similar description).  Based

24   on the Court's review of this document, the Court finds that MultiPlan's description of this

25   document is accurate but that it has not established that the document was properly withheld.  In

26   particular, the communications involve an explicit request from United for legal advice from

27   MultiPlan's counsel.  Yet MultiPlan has not offered any facts suggesting that the common interest

28   doctrine applies to this communication.  Furthermore, the content of this email chain directly

United States District Court
Northern District of California

25

relates to plan administration as the main subject of the discussion in the emails is about

MultiPlan's pricing methodology.  Therefore, to the extent these communications might otherwise

be protected from disclosure under the attorney-client privilege, the privilege does not apply

because they fall within the scope of the fiduciary exception.

### 10. PRIV-000298

MultiPlan withheld this document on the basis of attorney-client privilege and describes it

in its Revised Privilege Log as:

> Email chain wherein MultiPlan employee (now former) Emma
> Johnson exchanged correspondence with MultiPlan employees,
> including with members of the MultiPlan Legal Department,
> concerning the potential existence of legal obligations and
> compliance with same.

Revised Privilege Log at p. 21.  The Wilde Declaration describes it as follows:

> PRIV-000298 is an email chain wherein MultiPlan employee (now
> former) Emma Johnson exchanged correspondence with MultiPlan
> employees, including with members of the MultiPlan Legal
> Department, concerning the potential existence of legal obligations
> and compliance with same. Specifically, she sought advice on
> whether MultiPlan had a certain legal obligation and how to
> communicate with a client regarding that issue.

Wilde Decl. ¶ 75.

Based on the Court's review of this document, it finds that this email chain is primarily for

the purpose of seeking and providing legal advice on a subject that does not appear to involve plan

administration such that the fiduciary exception would apply and therefore, this document would,

in the absence of waiver, be protected by attorney-client privilege.

### 11. PRIV-000311, PRIV-000363, PRIV-000593, PRIV-000607, PRIV-000610

These documents were withheld on the basis of attorney-client privilege. Plaintiffs

identified these documents for review on the basis that the privilege log descriptions contain

insufficient details about their content to show that their primary purpose was to give or receive

legal advice or to determine whether the legal advice involved fiduciary duties or settlor functions.

The Court agrees that MultiPlan has not provided sufficient information to support its claim of

attorney-client privilege and further concludes on the basis of its *in camera* review that some of

these documents, or portions of them, are not protected by attorney-client privilege.

1    PRIV-000311 is described in the Revised Privilege Log as follows: "Email chain between

2    MultiPlan counsel Marjorie Wilde and other MultiPlan employees, including General Counsel Jeff

3    Doctoroff, concerning a client's draft plan language. The correspondence contains the analysis

4    and advice of legal counsel on the proposed language." Revised Privilege Log at p. 22; *see also*

5    Wilde Decl. ¶ 71 (same).  Based on review of the document, the Court finds that the

6    communications contained therein are primarily for a legal purpose.  Further, to the extent they

7    relate to drafting of plan language, they involve settlor functions rather than MultiPlan's fiduciary

8    duties to plan members.  Therefore, this document would be protected by attorney-client privilege

9    in the absence of waiver.

10    On the other hand, only a small part of PRIV-000363 appears to be privileged.  This

11    document is described in the Revised Privilege Log as "[c]ommunication reflecting instruction of

12    legal counsel concerning distribution of white papers."  Revised Privilege Log at p. 25.    Based on

13    the Court's review, the instructions of counsel are contained in the three sentences at the bottom of

14    the first page, beginning with "Per legal" and ending with "missed."  This legal advice does not

15    directly implicate MultiPlan's fiduciary obligations and therefore is likely privileged.  However,

16    the remainder of the document does not reveal any legal advice and therefore is not protected by

17    attorney-client privilege.

18    Similarly, only some portions of PRIV-000593 fall within attorney-client privilege. This

19    document is described in the Revised Privilege Log as follows: "Conference invitation from Ms.

20    Wilde to other employees that contain Ms. Wilde's legal analysis and impressions of certain

21    documents under revision."  Revised Privilege Log at p. 35;  *see also* Wilde Decl. ¶ 52

22    (containing similar description).  Based on the Court's review of this document, it concludes that

23    portions of it (*e.g.*, agenda items 1, 2 and 4) relate primarily to business concerns and therefore are

24    not protected by attorney-client privilege. Further, while the remainder of the letter contains

25    primarily legal advice, at least some portions of it fall within the fiduciary exception because they

26    directly address pricing methodology.

27    PRIV-000607 is described in the Revised Privilege Log as "E-mail from MultiPlan

28    employee to Ms. Wilde seeking her analysis and legal impressions on certain drafts of letters to

providers." Revised Privilege Log at p. 35. This document is a request for legal advice from in-house counsel relating to *how* MultiPlan's methodology is described in letters to providers. It does not directly address MultiPlan's methodology and therefore does not fall within the fiduciary exception. Therefore, the Court finds that this document would be protected from disclosure by attorney-client privilege absent waiver.

PRIV-000610 is described in the Revised Privilege Log as "E-mail chain between Ms. Wilde and multiple Multiplan employees reflecting Ms. Wilde's impressions and legal advice on distribution of certain documents to clients and impressions or needs for updating additional documents." Revised Privilege Log at p. 35; *see also* Wilde Decl. ¶ 51. Like many of the descriptions in the Revised Privilege Log, the description of this document is incomplete, listing the date of the communication as August 21, 2016 even though the chain includes an earlier email, and omitting the names of many of the individuals who were senders or recipients or who were copied on the emails. Further, while these communications are primarily for a legal purpose, they appear to fall within the fiduciary exception to attorney-client privilege because they directly address MultiPlan's pricing methodology.

### 12. PRIV-000317, PRIV-000337, PRIV-000340

MultiPlan withheld these documents on the basis of attorney-client privilege and work product. Plaintiffs question whether these documents are protected in their entirety, pointing to the references in the privilege log descriptions to the DOL investigation and the Court's previous holding that "there is no privilege that offers broad protection from disclosure for communications related to a government investigation" Dkt. 240 at p. 6 (citing Dkt. 201 at p. 11). Plaintiffs also point to references in the privilege log to "Viant services," suggesting these communications relate to pricing methodologies. Finally, they contend MultiPlan has not provided sufficient information to establish that these documents contain communications that are primarily aimed at seeking or providing legal advice. *Id.* The Court agrees that the descriptions in the Revised Privilege Log fail to provide sufficient information to establish that these documents would, in the absence of waiver, be protected attorney-client privilege and as work product. It further finds based on its review of these documents that they are not protected from disclosure on either ground.

PRIV-000317 is described in the Revised Privilege log as "Email from MultiPlan counsel Marjorie Wilde to Jacqueline Kienzle reflecting request for information regarding client elections for Viant services for use in connection with U.S. Department of Labor investigation." Revised Privilege Log at p. 23.  Wilde states in her declaration: "PRIV-000317 to PRIV-000340 is an email chain between myself and Jacqueline Kienzle wherein I sought information concerning pricing information. It reflects my analysis of certain issues concerning inquiries from a governmental agency. Some iterations of the thread contain additional correspondence between MultiPlan employees to collect information sought."  Wilde Decl. ¶ 46.  As discussed above, the mere fact that this communication related to a request for information from a governmental agency is not sufficient to show that the communications were defensive or constituted work product. The remaining question is whether it is protected by attorney-client privilege.  The Court concludes it is not.

It is apparent from review of PRIV-000317 that the primary purpose of the communication was to confirm the accuracy of a representation MultiPlan intended to make to the DOL about the services it offered its clients.  There is no evidence that suggests that this request for information involved the use of Wilde's legal expertise.  Rather, this appears to fall into the category of regulatory compliance activities that serve primarily a business function.  In the alternative, to the extent this communication is primarily for a legal purpose, it relates to the MultiPlan pricing services used by United, which falls within the fiduciary exception.  Therefore, the Court finds this document is not protected from disclosure by attorney-client privilege or as work product.

PRIV-000337 is described in the Revised Privilege Log as: "Email from MultiPlan counsel Marjorie Wilde to Jacqueline Kienzle reflecting request for information regarding client elections for Viant services for use in connection with U.S. Department of Labor investigation; additional correspondence between MultiPlan employees to collect information sought." Revised Privilege Log at p. 23.  This document consists of the email contained in PRIV-000317 and a response from Kienzle providing the requested information.  As discussed above, the email in PRIV-000317 is neither work product nor protected by attorney client privilege and thus, it is not protected in

United States District Court
Northern District of California

1   PRIV-000337.  For the same reasons, the Court finds that the information provided in response to

2   Wilde's request in PRIV-000337 is not protected on either basis.

3       PRIV-000340 is described in the Revised Privilege Log as: "Email chain between

4   MultiPlan counsel Marjorie Wilde and Jacqueline Kienzle reflecting request for and provision of

5   information regarding client elections for Viant services for use in connection with U.S.

6   Department of Labor investigation."  Revised Privilege Log at p. 24. The Court finds that this

7   document is not work product and is not protected by attorney client privilege for the same

8   reasons it concludes those protections do not apply to PRIV-000317 and PRIV-000337.

9       **13. PRIV-000347**

10      This document is described in the Revised Privilege Log as follows:

11          Email chain that originated with United's legal department
            concerning draft language for communication to United's clients
12          concerning pricing. The email was sent to MultiPlan employee
            Jacqueline Kienzle from Rebecca Paradise of United with a request
13          to review the proposed language. Jacqueline sent the request to
            MultiPlan employees, including General Counsel Jeff Doctoroff, for
14          input. Additional correspondence in the chain reflects inquiries of
            MultiPlan counsel, and a response from MultiPlan's healthcare
15          economics team to counsel's inquiry.

16  Revised Privilege Log at p. 24; *see also* Wilde Decl. ¶ 67 (same). MultiPlan withheld the

17  document on the basis of attorney-client privilege and common interest. Plaintiffs contend the

18  description is insufficient to determine whether the document was properly withheld, noting that

19  to the extent MultiPlan describes it as a communication about draft language "concerning pricing,"

20  it may fall under the fiduciary exception.  Dkt. 240 at p. 7. Plaintiffs further question whether the

21  primary purpose of the document is legal.

22      The Court agrees that the description in the Revised Privilege Log does not provide

23  sufficient information to establish that this document falls within attorney-client privilege or

24  constitutes protected work product.  The Court also finds that MultiPlan has not met its burden as

25  to its reliance on the common interest doctrine for the same reasons it reaches that conclusion as to

26  the documents discussed above.  Furthermore, even if MultiPlan had established that the common

27  interest doctrine applied, the assertion of attorney-client privilege would be improper, at least as to

28  some portions of the email chain, because while the general topic was how to communicate with

1   United's clients about MultiPlan's pricing, much of the material in the email chain directly

2   addresses MultiPlan's pricing methodology.

3   **14. PRIV-000525**

4       This document is described in the Revised Privilege Log as "Email chain between

5   MultiPlan counsel Marjorie Wilde and other MultiPlan employees, including General Counsel Jeff

6   Doctoroff, concerning a client's draft plan language. The correspondence contains the analysis

7   and advice of legal counsel on the proposed language." Revised Privilege Log at p.31; *see also*

8   Wilde Decl. ¶ 71 (containing similar description). MultiPlan withheld this document on the basis

9   of attorney-client privilege. Plaintiffs question whether this document was properly withheld,

10  asserting that the description is not sufficient to establish that the primary purpose of the

11  communication was legal and that the fiduciary exception does not apply. Dkt. 240 at pp. 7-8.

12      The Court agrees that the description of this document in the Revised Privilege Log is

13  insufficient. Like the descriptions of many other email chains listed in the Revised Privilege Log,

14  this one provides detailed information only about the date, sender, recipient and individuals copied

15  as to the *last* email in the email chain. However, the Court concludes based on its review of the

16  document that it contains legal advice and/or requests for legal advice from MultiPlan's in-house

17  counsel by MultiPlan employees. Further, to the extent the subject matter of the communications

18  relates to plan language, these communications implicate settlor rather than fiduciary obligations.

19  Therefore, the fiduciary exception does not apply and this document would, in the absence of

20  waiver, be protected by attorney-client privilege.

21  **15. PRIV-000550, PRIV-000559, PRIV-000563, PRIV-000564**

22      MultiPlan claims these documents are protected by attorney-client privilege. According to

23  the descriptions in the Revised Privilege Log, all of them are email chains between MultiPlan

24  Senior Counsel Marjorie Wilde and MultiPlan employees. Revised Privilege Log at pp. 32-33.

25  One (PRIV-000550) also includes MultiPlan General Counsel Jeff Doctoroff. Plaintiffs assert that

26  Multiplan's descriptions of these documents are not sufficient to establish that it was proper to

27  withhold them in their entirety rather than redacting any privileged portions. Dkt. 240 at p. 8.

28  They also point to the fact that because the communications are with in-house counsel, MultiPlan

United States District Court
Northern District of California

must make a clear showing that the primary purpose of the documents was legal rather than business, which Plaintiffs contend MultiPlan has not done. *Id.* Finally, they observe that to the extent the descriptions refer to pricing methodology, it appears that at least portions of these documents relate to plan administration and therefore fall under the fiduciary exception to attorney-client privilege.

The Court has reviewed these documents and concludes that significant portions of all of them primarily address business concerns rather than legal issues and therefore are not protected by attorney-client privilege. As to the legal advice contained in these communications, it mainly concerns MultiPlan's pricing methodology and therefore falls under the fiduciary exception. Therefore, these documents were not properly withheld in their entirety.

### C. Conclusion

Based on its review of the Revised Privilege Log and its *in camera* review of the sample documents, the undersigned concludes MultiPlan's Revised Privilege Log is inadequate and that the vast majority of the sample documents reviewed by the Court were improperly withheld or should have been produced in redacted form.

### V. MOTION TO SEAL

In dkt. 244 ("Motion to Seal"), MultiPlan asks the Court to seal the Revised Privilege Log, which Plaintiffs filed in the public record as an attachment to their October 28, 2022 filing. According to MultiPlan, Plaintiffs should not have filed the document in the public record because it contains highly sensitive information that has been designated by MultiPlan as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the parties' Stipulated Protective Order [Dkt. 25]. The Motion to Seal is DENIED.

First, it is undisputed that MultiPlan did not designate any portion of the Revised Privilege Log as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" before producing it to Plaintiffs, as is required under Section 5.2 of the Protective Order. Second, MultiPlan's allegations in the Motion to Seal and supporting declarations that disclosure would lead to irreparable harm are broad and unsubstantiated. In any event, in light of the conclusion of the undersigned that MultiPlan has waived attorney-client privilege and work product protection as to the underlying documents listed

United States District Court
Northern District of California

on the Revised Privilege Log, MultiPlan cannot show that failure to seal the Revised Privilege Log will lead to irreparable harm.

## VI.    CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' motion to compel (dkt. 165) as to MultiPlan on the basis that MultiPlan has waived attorney-client privilege and work product protection as to all of the documents listed on its Revised Privilege Log, which shall be produced to Plaintiffs by **December 16, 2022.**  The Motion to Seal (dkt. 244) is DENIED.

**IT IS SO ORDERED.**

Dated: December 2, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California