MATTHEW M. LAVIN (*PRO HAC VICE)*
  matt.lavin@agg.com
AARON R. MODIANO (*PRO HAC VICE*)
  aaron.modiano@agg.com
ARNALL GOLDEN GREGORY, LLP
2100 Pennsylvania Ave. NW, Suite 350S
Washington, DC 20037
Telephone:    202.677.4030
Facsimile:     202.677.4031

DAVID M. LILIENSTEIN, SBN 218923
  david@dllawgroup.com
KATIE J. SPIELMAN, SBN 252209
  katie@dllawgroup.com
DL LAW GROUP
345 Franklin Street
San Francisco, CA 94102
Telephone:    415. 678.5050
Facsimile:     415.358.8484

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LD *et al.*,<br><br>        Plaintiffs,<br><br>  v.<br><br>United Behavioral Health *et al.*,<br><br>        Defendants. | Case No. 4:20-cv-02254-YGR-JCS<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE:** ***WIT V. UNITED BEHAV. HEALTH*, NO. 20-17363, 2023 WL 411441 (9TH CIR. JAN. 26, 2023** |

Case 4:20-cv-02254-YGR   Document 292   Filed 02/06/23   Page 2 of 8

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**

Plaintiffs respectfully submit the following supplemental briefing concerning the recent Ninth Circuit panel's decision, *Wit v. United Behav. Health,* No. 20-17363, 2023 WL 411441 (9th Cir. Jan. 26, 2023). This decision is inapposite to this case for three reasons.

First, the remedy plaintiffs seek in this class action is full payment of benefits according to plan terms at the appropriate percentile of the usual, customary, and reasonable rate ("UCR").[1] Plaintiffs here, unlike those in *Wit,* do not seek individualized reprocessing of thousands of different claims, all of which were denied based on United's determination that the treatment sought was not medically necessary. It was this reprocessing remedy with which the Ninth Circuit took issue. Here, the class is limited to individuals whose claims for IOP treatment were approved and authorized by United. None of these claims were paid at UCR. They were all priced and paid according to the Viant methodology, which is indisputably not UCR. None of the claims were paid according to plan terms. The remedy plaintiffs seek here is not to send each claim back to United for reprocessing from scratch to determine whether the claim was or was not medically necessary and whether or not the claim was eligible for coverage under the plan, based on years-old clinical information that may or may not be available as was the case in *Wit*. Rather, the remedy Plaintiffs in this action seek is the full payment of the benefits due on their *already approved and authorized* claims according to a determination that can be made by applying a consistent formula across all putative class members' claims.

Second, ERISA's exhaustion requirements do not apply to Plaintiffs' or the class members' claims here because their claims were not denied; they were approved and authorized but grossly underpaid. The Ninth Circuit in *Wit* held that the district court erred in excusing absent class members from exhausting the administrative remedies required by their plans. But the administrative appeal process typically guaranteed and required by ERISA was not available to the Plaintiffs here. Because Plaintiffs' claims here were not denied, there was no means for them to appeal. Each of the named Plaintiffs or their representatives here testified that when they attempted to contact United to challenge the allowed amounts listed on their explanations of benefits and get help with the massive balance bills they were facing, they were routed directly to Viant. They were prevented from even initiating an

---

[1] This matter, <u>based on reports produced by Defendants</u>, involves at least 18,530 unique patients (putative class members) with 144,099 unique claims and total underpayments of at least $323,930,417 below the charged amounts.

administrative appeal from an adverse benefit determination, both because their claims were never denied and because part of defendants' scheme was to deflect all "noise" around the Facility Reasonable & Customary program by routing complaints to Viant. Record evidence also makes clear that Viant's system was completely incapable of deriving a UCR amount even if they had been appealable.

Third, for purposes of ERISA, United's underpayment should be reviewed under a *de novo* standard, not for abuse of discretion, because – unlike coverage denials at issue in *Wit* – because the plans did not confer discretionary authority to Defendants to underprice intensive outpatient ("IOP") claims for plans with United's Reasonable & Customary Program through Viant OPR.

*1. Wit is Inapposite Because The Remedy Plaintiffs Seek is Recalculation of Covered     Claims at the UCR Rate Required by their Plans.*

Unlike *Wit*, Plaintiffs do not seek to certify a class of individuals whose claims were denied based on improper level of care guidelines that were more restrictive than generally accepted standards of medical care. *Id.* at *11. Likewise, plaintiffs do not seek to have each of these individuals' claims sent back to the drawing board and reprocessed by the Defendants for a new determination regarding whether coverage exists and whether to approve or deny the claim. Instead, Plaintiffs are seeking payment of full benefits due according to plan terms for approved healthcare claims for which coverage has already been determined. This remedy is not novel and does not require remand or reprocessing.  It requires a mathematical, systematic <u>recalculation</u> of underpaid claims at the appropriate UCR percentile to comport with plaintiffs' plan benefits.

Plaintiffs contend (and will prove at trial) that <u>every</u> intensive outpatient ("IOP") claim for plans with United's Reasonable & Customary program was wrongfully underpaid because <u>none</u> of the claims were priced using a valid UCR methodology. Defendants do not meaningfully dispute this, Both United and Viant admit that Viant repriced all claims in the Reasonable and Customary program. For every plan with the United's Reasonable & Customary program, United acted together with MultiPlan to price claims through Viant OPR and that such prices were applied consistently and systematically to the Plaintiffs and the putative class members' claims.  There is no dispute that all

-2-

claims at issue in this lawsuit are covered claims [2]. Accordingly, this case does not present the individualized inquiries at issue in *Wit* and *Wit* is simply inapposite to the facts of this case. *Wit* was a case alleging wrongful denial of benefits for an undefined portion of an entire class.

Plaintiffs challenge the fraudulent methodology Defendants <u>uniformly</u> applied to each and every plaintiff's covered claim. Plaintiffs assert two claims under ERISA § 502(a)(1)(B), one for "underpaid benefits," and another for breach of the "plan provisions." Both claims are predicated on the theory that "United underpaid plaintiffs' claims for out-of-network IOP services in contravention of the terms of plaintiffs' plans. <u>Plaintiffs seek underpaid benefits as relief for both claims</u>." *LD* 508 F. Supp. 3d at 593 (underlining added).

Plaintiffs' claims under ERISA § 502(a)(3) for breach of fiduciary duties and equitable relief, as the Court held, properly alleged that "United breached its fiduciary duties in the pursuit of its own financial self-interest in violation of 29 U.S.C. § 1104(a)(1)(B) and (D)" and that these allegations were "sufficient for the Court to find that the basis of plaintiffs' breach of fiduciary claim and requests for equitable relief are equitable in nature." *Id.* at 596. Under ERISA § 502(a)(3), Plaintiffs essentially seek an accounting, long recognized in equity, and recognized equitable remedies. *See, e.g.*, Christopher C. Langdell, *A Brief Survey of Equity Jurisdiction* (vol. 4), 2 Harv. L. Rev. 241, 250-60 (1889) (discussing the equitable remedy of an accounting). As the Court previously held in this case, "equitable remedies such as surcharge, disgorgement, or accounting for profits 'may be available if the defendant owed a fiduciary duty to the plaintiff and breached that duty.'" *LD v. United Behav. Health*, 508 F. Supp. 3d 583, 596 (N.D. Cal. 2020).

Plaintiffs have presented the Court with record evidence supporting these allegations in their prior motions for a *de novo* standard of review and motion for class certification. The relief sought by Plaintiffs is appropriate under both ERISA § 502(a)(1)(B) and (a)(3). This Court has upheld such breach of fiduciary duty claims. *See LD* 508 F. Supp. 3d at 596. *Wit* "left intact" the class certification decision with regard to violations of fiduciary duty. *Id.* at *8 fn 4. It therefore has no bearing on the certification of a class for Defendants' violations of their fiduciary duties under ERISA. Like the

---

[2] Because United already determined that class members have covered claims, United waived any rights it might had had to challenge coverage. *See Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 440 (9th Cir. 2020).

equitable remedy of an accounting, plaintiffs seek to have their claims properly calculated using an easily ascertainable UCR methodology to which their plans entitle them and that was quoted during the Verification of Benefits (VOB) calls.

**2*. ERISA's Exhaustion Requirements Do Not Apply Because Plaintiffs Could Not Actually Appeal their Underpayment of Benefits***

Unlike the plaintiffs and putative class members in *Wit*, administrative appeal of the Defendants' benefit underpayments was not available to the Plaintiffs here.  Each of the class members in *Wit* received adverse benefit determinations from United, denying their claims for mental health treatment on the basis that such treatment was not medically necessary based on United's level of care guidelines.  The *Wit* class members thus had the option, or the possibility, to administratively appeal that adverse benefit determination.  Indeed, in that case most class members' ERISA plans likely required exhaustion of administrative appeals before filing suit.  The district court in *Wit* excused those absent class members who had not completed administrative appeals from doing so when it certified the class.  The Ninth Circuit held that this was error, where class members could have – and some did – appealed.   Here, in contrast, it was impossible for Plaintiffs to appeal.  Indeed, this was an intentional feature of Defendants' scheme.

The Ninth Circuit panel in *Wit* recognized three possible exceptions from ERISA's exhaustion requirement, "futility, inadequate remedy, and unreasonable claims procedures" *Wit* at *11. Each of the three exceptions applies in this matter while none applied in *Wit*. Futility applies because no process existed that provided for payment of claims at the required UCR rate. Plaintiffs' and class members had no remedy to appeal the underpayment of their claims. The claims procedures were designed to fraudulently mislead patients and their providers by misleading them about how claims had been priced and directing them to contact Viant concerning their claims, a requirement that appears nowhere in any of the patients' plans, and with no reasonable – or any – means of appealing the underpayments.

In *Wit* it was "uncontested that some beneficiaries successfully appealed the denial of their benefit claims, so these exceptions are not satisfied." *Id.* at *11. That is not the case here. For every claim at issue, Viant did not and *could not* generate a UCR price because of the underlying data it used, and thus neither Plaintiffs nor any class member had the ability to appeal their claim and have it

-4-

paid according to plan benefits, *i.e.* UCR. Unlike in *Wit*, the exhaustion exception principles do apply in this case. Plaintiffs have presented record evidence of all three. Further, the burden is on the Defendants to prove the affirmative defense of exhaustion. *See Hasten v. Prudential Ins. Co. of Am.*, 470 F. Supp. 3d 1076, 1079 (N.D. Cal. 2020).

### 3. The Appropriate Standard of Review is De Novo.

In *Wit* the parties stipulated to an abuse of discretion standard, and therefore the Ninth Circuit held that an abuse of discretion standard was appropriate. *Id.* at *5. The appropriate standard in this case, by contrast, is *de novo*. This is because the plans did not confer discretionary authority to Multiplan or United to underprice intensive outpatient ("IOP") claims for plans with United's Reasonable & Customary Program through Viant OPR. The *Wit* court referred to the disputed guidelines as "interpretive tools" that plans had the discretionary authority to implement and utilize for claim coverage decisions. *Id.* at *10. By contrast, claims for violations of ERISA's substantive, statutory guarantees are matters for the *Court* to decide, and decisions of fiduciaries and administrative exhaustion requirements do not affect these rights. *See Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 565 (6th Cir. 2017) (collecting cases). Additionally, Defendants have not produced any evidence of a clear and conspicuous discretionary grant, or delegation of discretion, to Multiplan or its subsidiary Viant, which (despite Defendants' protestations to the contrary), had the final and only say on how much would be paid, or underpaid, on a given claim.

Moreover, even if the abuse of discretion standard were to apply (which it does not)[3] it would be met here because there is no reasonable basis justifying Viant OPR's artificially low pricing of IOP claims. The Viant OPR (under)pricing methodology for IOP claims satisfies the Ninth Circuit's 'arbitrary and capricious' test. *See, e.g., Alford v. DCH Found. Grp. Long-Term Life Ins. Co. of Am.*, 144 F. Supp. 2d 1183, 1212 (C.D. Cal. 2001).

Finally, *Wit* did not contain any RICO claims or address any RICO issues and, as such, has no bearing on this Court's analysis of Plaintiffs' RICO claims and their suitability for class certification.

---

[3] The three ways in which a Plan administrator's conduct may be an abuse of discretion are: (1) to construe provisions of a plan in a way that clearly conflicts with the plain language of the Plan; (2) to interpret a provision in a way that renders nugatory other provisions of the Plan; and (3) to give an interpretation that lacks any rational nexus to the primary purpose of the Plan. *See Cnty. of Monterey v. Blue Cross of California*, 2020 WL 709308, at *10 (N.D. Cal. Feb. 12, 2020).

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: February 6, 2023 | ARNALL GOLDEN GREGORY, LLP |
| 3 | | */s/ Matthew M. Lavin* |
| 4 | | MATTHEW M. LAVIN |
| 5 | | AARON R. MODIANO |
| 6 | | |
| 7 | | DL LAW GROUP |
| 8 | | */s/ David M. Lilienstein* |
| | | DAVID M. LILIENSTEIN |
| 9 | | KATIE J. SPIELMAN |
| | | *Attorneys for Plaintiffs.* |