United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LD, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED BEHAVIORAL HEALTH, ET AL.,**<br><br>Defendants. | Case No.  20-cv-02254-YGR<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' *DAUBERT* MOTION; DENYING PLAINTIFFS' *DAUBERT* MOTION; DENYING DEFENDANTS' MOTIONS FOR RELIEF; AND GRANTING-IN-PART MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 168, 170, 214, 215, 251, 261, 268, 270, and 294 |

Pending before the Court are (i) plaintiffs' Motion for Class Certification (Dkt. No. 168), along with one corresponding *Daubert*[1] motion each from plaintiffs and defendants (Dkt. Nos. 214 and 261), (ii) motions for relief from non-dispositive orders (Dkt. Nos. 268 and 270), and (iii) administrative motions to seal (Dkt. Nos. 170, 215, 251, and 294[2]).

## I.    BACKGROUND

Plaintiffs bring this putative class "action on behalf of themselves and all others similarly situated[.]"  (Dkt. No. 91, Third Amended Complaint ("TAC") ¶ 453.)  Plaintiffs allege that the "class includes hundreds of thousands and possibly, millions, of mental health and substance use disorder treatment patients[.]" (*Id*. ¶ 456.)  Named plaintiffs LD, DB, BW, RH, and CJ were all full-time employees at Apple or Tesla who participated in benefits plans offered through their employer.  (*Id*. ¶¶ 249, 280, 322, 352, 382.)  Each plaintiff's health plan offered out-of-network benefits, including for intensive outpatient program ("IOP") treatment, and each plaintiff was diagnosed with Alcohol Use Disorder, for which they sought treatment at Summit Estate, Inc. in Santa Clara County, California.  (*Id*.  ¶¶ 251, 252, 282, 283, 324, 325, 354, 355, 384.)  Defendants

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] While styled as an administrative motion to seal, at Docket Number 294, plaintiffs also filed a motion seeking leave to file additional supplemental briefing beyond what the Court requested at the hearing on January 27, 2023.  *See* Dkt. No. 294-4.  The Court **DENIES** this request.

United States District Court
Northern District of California

1  are UnitedHealthcare Insurance Company and United Behavioral Health (collectively ("United"))

2  and MultiPlan, Inc.  (*See* TAC ¶ 4.)

3      Plaintiffs allege that, after receiving services, they submitted claims that were not denied

4  but were underpaid because United was required to cover at least a portion of the cost of the

5  treatment based on the usual, customary, and reasonable ("UCR") rate, which, plaintiffs contend,

6  United failed to do.  (*Id.* ¶¶ 55, 61.)  According to plaintiffs, there is more than one way to arrive

7  at UCR rates, and one such way is by basing rates on the FAIR Health Database, the advent of

8  which was brought about by a 2009 settlement agreement aiming to establish a benchmark for

9  establishing UCR.  (*Id.* ¶¶ 102, 151.)  In the TAC, plaintiffs allege that Viant, (no longer a party to

10  this litigation), rips data from service providers to Medicare Part B beneficiaries, which data does

11  not include charge information pertinent to IOP providers as is relevant here.  (*Id.* ¶¶ 169, 208.)

12  Consequently, according to plaintiffs, the software engineers responsible for developing Viant's

13  proprietary repricing tool fabricated appropriate reimbursement rates.  (*Id.* ¶ 209.)

14      Plaintiffs have filed this suit seeking damages and injunctive relief in response to these

15  alleged underpayments, and now seek to certify the following class under Federal Rule of Civil

16  Procedure 23:

> Any member of a health benefit plan administered or issued by United
> and governed by ERISA, where the member's plan utilized United's
> 'Reasonable and Customary' program for out-of-network benefits
> and whose claim(s) for intensive outpatient services billed with
> HCPCS H0015 and/or revenue code 0906 were priced by MultiPlan's
> Viant methodology, during the class period January 1, 2015 to the
> present.

(Dkt. No. 171, Motion to Certify Class ("Mtn.") at 2.)  Plaintiffs bring the following claims: (I)

violation of RICO, 18 U.S.C. § 1962(c); (II) violation of RICO conspiracy, 18 U.S.C. § 1962(d);

(III) claim for underpaid benefits under group plans governed by ERISA § 502(A)(1)(B); (IV)

breach of plan provisions in violation of ERISA § 502(A)(1)(B); (V) violation of fiduciary duties

of loyalty and due care; (VI) claim for equitable relief to enjoin acts or practices; and (VII) claim

for equitable relief as appropriate.

United States District Court
Northern District of California

**II.    LEGAL STANDARD**

**A.    *Daubert* Motions**

Federal Rule of Evidence 702 permits opinion testimony by an expert as long as the witness is qualified and based upon that qualification, the witness's opinion is relevant and reliable.  An expert witness may be qualified by "knowledge, skill, experience, training, or education" as to the subject matter of the opinion. Fed. R. Evid. 702.  The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702. *Id.*, Advisory Committee Notes (2000 amendments).  At the class certification stage, "the relevant inquiry is a tailored *Daubert* analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Rai v. Santa Clara Valley Transportation Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015) (internal citations and quotations omitted).  For scientific opinions, they must be based on scientifically valid principles. *Daubert,* 509 U.S. at 589.  Experts assist the factfinder in their own evaluation of the evidence by providing the factfinder with opinions based upon verifiable, scientific, or other objective analysis.  *Id.* at 589–90.

**B.    Class Certification**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal citations and quotations omitted). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  The rigorous analysis that a court must conduct requires "judging the persuasiveness of the evidence presented" for and against certification and "resolv[ing] any factual disputes necessary to determine whether" the requirements of Rule 23 have been satisfied. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982–83 (9th Cir. 2011).  A "district court must consider the merits if they overlap with the Rule 23(a) requirements."  *Id.* (citations omitted).

The party moving for certification first must show that the four requirements of Rule 23(a) are met.  Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder

United States District Court
Northern District of California

1    of all members is impracticable; (2) common questions of law or fact as to the class exist; (3) the

2    claims or defenses of the representative parties are typical of those of the class; and (4) the

3    representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P.

4    23(a).

5         The moving party must then show that the class can be certified based on at least one of

6    the grounds in Rule 23(b). *See* Fed. R. Civ. P. 23(b).  Relevant here, certification under Rule

7    23(b)(3) is appropriate where "the questions of law or fact common to class members predominate

8    over any questions affecting only individual members" and "a class action is superior to other

9    available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

10   23(b)(3).[3]

11   **III.    DISCUSSION**

12        **A.    Motions to Exclude**

13        In light of the import of meeting the requirements of Rule 23 with evidentiary proof, the

14   Court begins by examining the parties' motions to exclude.  Two motions to exclude are pending:

15   (1) defendants' Motion to Exclude Expert Opinion and Declaration of Alexandra Lahav (Dkt. No.

16   214) and (2) plaintiffs' Motion for Exclusion of the Expert Opinion of Daniel Kessler (Dkt. No.

17   261).

18             **1.    Professor Lahav**

19        The Court first considers defendants' motion to exclude the opinions and testimony of

20   Professor Lahav.  (*See* Dkt. No. 214, Motion to Exclude the Expert Opinion and Declaration of

21   Professor Alexandra D. Lahav.)  Professor Lahav's opinions are excluded because they invade on

22   the province of the Court.

23   _____

24        [3] Alternatively, Rule 23(b)(2) permits certification of a class when "the party opposing the
     class has acted or refused to act on grounds that apply generally to the class, so that final
     injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."
25   Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(1) provides two avenues for class certification: under Rule
     23(b)(1)(A), if prosecuting separate actions would risk "inconsistent or varying adjudications with
26   respect to individual class members that would establish incompatible standards of conduct[,]"
     then certification is appropriate.  Under Rule 23(b)(1)(B), class certification is proper when
27   prosecuting separate actions would risk effecting adjudications for individual class members that
     "would be dispositive of the interests of the other members not parties to the individual
28   adjudications or would substantially impair or impede their ability to protect their interests[.]"

United States District Court
Northern District of California

1    Experts may not opine on "matters of law for the court." *Berman v. Freedom Fin.*

2  *Network, LLC*, 400 F. Supp. 3d 964, 971 (N.D. Cal. 2019) (internal citations omitted); *see also In*

3  *re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (considering it

4  "axiomatic" that courts do not consider experts' legal opinions or conclusions) (internal citations

5  and quotations omitted).

6    Professor Lahav's declaration begins by setting forth her qualifications (section I),

7  provides an overview of the lawsuit (section II), then proceeds to analyze the class certification

8  issues present here (section III). In short, it is a legal brief. While Professor Lahav may be a

9  distinguished law professor, the Court rejects plaintiffs' thinly disguised attempt to submit what is

10  essentially an amicus brief as an expert report.

11    The executive summary of Professor Lahav's opinions is "that an ERISA 23(b)(1)(B)

12  and/or 23(b)(2) class should be certified as well as a RICO 23(b)(2) and 23(b)(3) class based on

13  the facts" before the Court. (*See* Dkt. No. 170-26 ("Lahav Decl."), ¶ 2.) Professor Lahav

14  continues by opining that "class certification is appropriate in this case because it is consistent

15  with Federal Rule of Civil Procedure 23 and governing precedent[.]" *Id*. ¶ 24.

16    Such opinions, which are unambiguously legal opinions, are outside of the province of

17  expert testimony permitted by Federal Rule of Evidence 702. Therefore, defendants' motion to

18  exclude the testimony and opinions of Professor Lahav is **GRANTED**.

19    **2.    Professor Kessler**

20    Plaintiffs seek to exclude the opinions and testimony of defendants' expert Professor

21  Daniel Kessler on the ground that his opinions disregard orders issued by United States Magistrate

22  Judge Spero because it includes information gathered from the late production of documents,

23  which were excluded. (*See* Dkt. No. 261, Motion to Exclude United Defendants' Expert.)

24  Specifically, plaintiffs take issue with paragraphs 16, 46, and 54 of the Kessler Report, which rely

25  on what defendants describe as a random sample of putative class members' plans. (See *id*. at 4.)

26    Professor Kessler offers four main opinions. He opines: first, the "but-for" world set forth

27  by plaintiffs, if set forth at all, is vague, ill-defined, and does not establish that plaintiffs suffered

28  harm in comparison to a world without the wrongdoing they allege befell them. Second, plaintiffs

1    expert wrongly opines that it is possible to determine whether United correctly reimbursed

2    plaintiffs without individualized analysis.  Third, the same is true regarding the question of

3    whether United agents made misrepresentations to plaintiffs about reimbursement.  Fourth, the

4    fundamental question of determining whether plaintiffs were even injured requires individualized

5    analysis as well.  (*See* Dkt. No. 223-1, Class Certification and Rebuttal Expert Report of Daniel P.

6    Kessler ¶¶ 9-13.)

7         At the hearing, defendants stated that they need not rely on their own sample of plans to

8    defeat class certification.  (*See* Dkt. No. 288-2, Hr'g Transcript at 93:15-17 ("all of [Kessler's]

9    opinions are supported by [plaintiffs'] sample too, and [Kessler] invokes both").)  The Court

10   agrees, as discussed further below.  Because the Court does not rely on any of the testimony or

11   opinions plaintiffs seek to exclude in setting forth this Order, the Court **DENIES** plaintiffs' motion

12   to exclude the testimony and opinions of Professor Kessler as moot.

13        **B.    Motion for Class Certification**

14        The Court begins with a Rule 23(b) analysis as it is dispositive.

15        The requirements of Rule 23(b) must be met with "evidentiary proof[.]"  *Comcast*, 569

16   U.S. at 33.  Plaintiffs' allegation that its damages model meets this standard under *Comcast* cannot

17   be true because plaintiffs' own experts admit that they have no current damages model.  *See* Dkt.

18   No. 219-9, Ex. 184 to Sigler Decl. at 184:21-185:9; *id.*, Ex. 187 to Sigler Decl. at 245:18-22.

19        Moreover, in light of the Ninth Circuit's decision in *Wit v. United Behavioral Health*, the

20   main relief that plaintiffs seek—reprocessing—is unavailable to them.[4]  Plaintiffs explicitly pursue

21   as the primary source of relief, the reprocessing of their claims.  *See* TAC § VIII.12 (seeking an

22   order requiring "United to reprocess all underpaid claims using an appropriate methodology");

23   Mtn. at 21 ("Because the primary relief sought by Plaintiffs under ERISA is a reprocessing of

24   claims under an appropriate reasonable and customary standard, certification under Rule

25   23(b)(1)(A) and (B) is appropriate"); *id.* ("Certifying a 23(b)(1)(A) class is appropriate here for

26

27        [4] *See Wit v. United Behav. Health*, 58 F.4th 1080, 1094 (9th Cir. 2023).  At the hearing, the
     Court directed the parties to file supplemental briefing on how this decision impacts this case.  *See*
28   Dkt. No. 289, Defendants' Supplemental Brief Regarding *Wit v. United Behavioral Health*; Dkt.
     No. 292, Plaintiffs' Supplemental Brief re: *Wit v. United Behav. Health*.

United States District Court
Northern District of California

1    plaintiffs' ERISA claims seeking reprocessing[]"; *id.* at 22 (arguing that courts have held that a

2    reprocessing injunction is appropriate in cases such as this one); *id.* at 23 (arguing that

3    individualized analysis is not required for reprocessing); *id.* at 23, 24 (citing Professor Lahav for

4    support that reprocessing would not entail analysis of individualized issues); Dkt. No. 260-2

5    ("Reply") at 17 (arguing that reprocessing is appropriate "equitable relief[]"); Reply at 18 (relying

6    on *Wit v. United Behav. Health*, 2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) for support of

7    certification under Rule 23(b)(3)).

8    　　　No other injunctive relief is available to plaintiffs because they do not and, ostensibly,

9    cannot, allege a threat of imminent harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102

10   (1983) (foreclosing the possibility of injunctive relief without a showing of a "real and immediate"

11   threat of harm) (internal citations and quotations omitted).  All named plaintiffs were or are

12   employed by Apple or Tesla.  United no longer administers Tesla's plan (*see* Dkt. No. 207,

13   Schneewind Decl. ¶ 4(j)), and Apple no longer uses Viant OPR for out-of-network reimbursement

14   claims (*see* Dkt. No. 219-11, Ex. 209 to Sigler Decl. at 26:12-20).  Equally importantly, no

15   plaintiff alleges that they are in, seeking, or plan to seek IOP treatment in the future.  Even if they

16   did, the *Wit* panel accepted defendants' line of reasoning here, that providing the main form of

17   relief plaintiffs seek would violate the Rules Enabling Act. *See Wit*, 58 F.4ᵗʰ 1080 at 1098

18   ("because Plaintiffs expressly declined to make any showing, or seek a determination of, their

19   entitlement to benefits, permitting Plaintiffs to proceed with their denial of benefits claim under

20   the guise of a 'reprocessing' remedy on a class-wide basis violated the Rules Enabling Act"); *see*

21   *also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Article III does not give federal

22   courts the power to order relief to any uninjured plaintiff, class or not") (internal citations and

23   quotations omitted).  Plaintiffs' attempts to distinguish this case on the ground that the battle

24   concerns underpayment rather than denial of benefits do not persuade.

25   　　　The only class that survived the Ninth Circuit's recent *Wit* decision was the breach of

26   fiduciary duty claims.  Plaintiffs here also bring fiduciary duty claims.  The Court acknowledges

27   that plaintiffs may seek declaratory relief without injunctive relief.  However, the Advisory

28   Committee notes to Rule 23 itself note that declaratory relief should "afford[] injunctive relief or

United States District Court
Northern District of California

7

1    serve[] as a basis for later injunctive relief." No such possibility is present here. Because

2    reprocessing is unavailable, a declaration that plaintiffs' rights were violated would provide them

3    with no remedy. Further, because plaintiffs are unable to assert imminent harm for manifold

4    reasons, any such declaration could not be the foundation for future relief.

5    Federal Rule of Civil Procedure 23(b)(2) provides for certification when "injunctive relief

6    or *corresponding declaratory relief* is appropriate[.]" "Declaratory relief" is not a stand-alone

7    remedy. The declaration that plaintiffs seek mirrors that rejected by the Ninth Circuit's reasoning

8    in *Wit,* namely that what plaintiffs truly seek here is a pathway to remuneration. Instrumentalizing

9    equitable remedies for that purpose is improper.

10    The relief that plaintiffs seek under RICO is foreclosed for the same reasons. Plaintiffs

11    seek certification of their RICO claims only under Rules 23(b)(2) and 23(b)(3). Again, injunctive

12    relief is unavailable to plaintiffs because none even alleges a future possibility, much less

13    probability, of imminent harm, and the absence of a damages model that would permit the Court

14    to provide a uniform remedy to all plaintiffs precludes certification under Rule 23(b)(3).

15    **C.      Defendants' Objections to Evidence Submitted with Plaintiffs' Reply**

16    Defendants objected to certain evidence submitted in connection with plaintiffs' reply in

17    support of class certification. *See* Dkt. No. 264.

18    Defendants argue that the Declaration of Thomas P. Ralston (Dkt. No. 250-3) should be

19    excluded for two reasons: (i) plaintiffs never disclosed him as a witness under Federal Rule of

20    Civil Procedure 26 and (ii) Ralston provides improper rebuttal evidence because he does not rebut

21    or reply to evidence set forth by defendants. Defendants also object to the inclusion of an

22    additional expert report from Professor Hall (Dkt. No. 250-2) filed concurrently with plaintiffs'

23    reply brief, on the ground that defendants should at least be permitted to depose Professor Hall

24    again and provide additional briefing with regard to his new opinions.

25    The Court does not rely on any of this newly filed material in this Order. Accordingly,

26    defendants' requests are **DENIED** without prejudice.

27    **D.      Motions for Relief from Non-dispositive Orders**

28    Defendants MultiPlan and United challenge an order from Magistrate Judge Spero

United States District Court
Northern District of California

United States District Court
Northern District of California

1    requiring only MultiPlan to produce certain documents.  (*See* Dkt. Nos. 268, 270.)  Plaintiffs set

2    forth the correct standard for review of these orders.  Under Federal Rule of Civil Procedure 72(a),

3    this Court may "set aside any part of the order that is clearly erroneous or contrary to law."  The

4    Court finds that the parts of the order to which defendants object are neither clearly erroneous not

5    contrary to law.

### 1.    MultiPlan

7    Defendant MultiPlan makes two main arguments.  First, MutliPlan argues that the

8    fiduciary exception cannot apply to the documents which MultiPlan seeks to protect under

9    attorney-client privilege because the Court has not definitively found MultiPlan to be a fiduciary.

10    MultiPlan provides no support for this argument, and the Court is not persuaded.  Second,

11    MultiPlan argues that a merits determination from another court necessitates a finding that

12    MultiPlan is not a fiduciary.  MultiPlan does not even attempt to persuade the Court that a finding

13    by a sister court should be binding on this court.  Finally, without expressly doing so, MultiPlan

14    essentially argues that the Court should expand the primary purpose doctrine beyond protection

15    for documents the primary purpose of which is to provide legal advice.[5]  As Magistrate Judge

16    Spero correctly (and presciently) noted, with regard to the primary purpose doctrine, *In re Grand*

17    *Jury*, 23 F.4th 1088 (9th Cir. 2021) "continues to be binding in this Circuit[.]"  Dkt. No. 266,

18    Second Order Re Motion to Compel (MultiPlan) at 8.

### 2.    United

20    Notwithstanding that United is not a party to the challenged order here, the Court considers

21    and is unpersuaded by its arguments.  First, the Court will not relitigate the findings of the August

22    order against United, to which United had ample time to object.  United chose not to do so, and it

23    may not do so now merely because Magistrate Judge Spero relied on those findings in his

24    December order.

---

26    [5] On January 23, 2023, the Supreme Court declined to resolve this circuit split.  *In re Grand Jury*,
27    23 F.4th 1088 (9th Cir. 2021), *cert. granted sub nom. In re Jury*, 214 L. Ed. 2d 16, 143 S. Ct. 80
(2022), and *cert. dismissed as improvidently granted*, 214 L. Ed. 2d 329, 143 S. Ct. 543 (2023)

United States District Court
Northern District of California

1    Again, to the extent that United challenges the findings in Magistrate Judge Spero's

2    argument, the Court declines to consider those arguments.  Furthermore, the Ninth Circuit's

3    holding in *U.S. v. Mett* squarely and specifically places the burden of proving the applicability of

4    the fiduciary exception on the government, so it seems entirely reasonable to distinguish that case

5    on the ground that it was a criminal case.  178 F.3d 1058, 1064 (9th Cir. 1999) (holding that the

6    burden of showing the fiduciary exception to attorney-client privilege applies is on the

7    government).  Standards are different in criminal cases.  Moreover, the Court finds no error here

8    even if the disputed order did flip the burden.  The outcome would have been the same because the

9    proffered evidence, (the privilege logs themselves), show that the documents in play here relate to

10   repricing methodology.  This is exactly the kind of issue that would implicate any fiduciary duties

11   the Court has already decided United *may* owe to plaintiffs.  Relatedly, United's ensuing

12   argument, that the disputed order treated this Court's deferral of a ruling on the appropriate

13   standard of review as dispositive with respect to the existence of fiduciary duties is incorrect.  At

14   least for purposes of pleading, this Court has found enough to support an inference that at least

15   one defendant may owe fiduciary duties to plaintiffs.  *See* Dkt. No. 80, Order Denying Motion to

16   Dismiss.

17       **E.    Motions to Seal**

18   A motion to seal documents that are part of the judicial record is governed by the

19   "compelling reasons" standard.  *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir.

20   2010) (internal citations and quotations omitted).  A "party seeking to seal judicial records must

21   show that 'compelling reasons supported by specific factual findings . . . outweigh the general

22   history of access and the public policies favoring disclosure.'" *Id*. (quoting *Kamakana v. City and

23   Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006)).  The trial court must weigh relevant

24   factors including the "public interest in understanding the judicial process and whether disclosure

25   of the material could result in improper use of the material for scandalous or libelous purposes or

26   infringement upon trade secrets." *Id*. at 679 n. 6 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430,

27   1434 (9th Cir.1995)).  While the decision to grant or deny a motion to seal is within the trial

28   court's discretion, the trial court must articulate its reasoning in deciding a motion to seal. *Id*. at

10

United States District Court
Northern District of California

679.  Given the importance of the competing interests at stake, any sealing order must be narrowly

tailored.  Civ. L.R. 79-5 (a).

Having considered the parties' motions, as well as the supporting documents filed

therewith, the Court rules as follows:

| Motions | Ruling |
|---|---|
| Dkt. No. 170 | The Court finds good cause to allow plaintiffs to file the requested documents under seal.  The requests are narrowly tailored and relate to sensitive information.  Accordingly, defendants' motion is **GRANTED**. |
| Dkt. No. 215 | The Court finds good cause to allow defendants to file only the following documents under seal: Exs. 101, 103, 105, 106, 107, 109, 111, and 122 to the Sigler Declaration; Exs. 16, 23, 27, 30, 33, 36, and 37 to the Compendium Exhibits; and the requested portions of the Oppo. to Pls.' Mot. for Class Certification.  Accordingly, defendants' motion is **GRANTED-IN-PART** and **DENIED-IN-PART** without prejudice.  The Court finds the granted requests narrowly tailored and without a less restrictive alternative available.  With respect to all other documents sought to be sealed, defendants shall file the documents publicly or a renewed motion to seal within seven days. |
| Dkt. No. 251 | Plaintiffs failed to file a proposed order along with their motion to seal, as required by Local Rule 79-5(c)(3).  Accordingly, the motion is **DENIED** without prejudice.  Plaintiffs shall file the documents publicly or a renewed motion to seal within seven days. |
| Dkt. No. 294 | Plaintiffs' motion to seal is **GRANTED**.  Plaintiffs' motion for leave to supplement the record with unsolicited briefing is **DENIED**. |

//

//

//

//

//

//

//

//

//

//

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby **DENIES** plaintiffs' motion to certify the class. The Court **GRANTS** defendants' motion to exclude the testimony and opinions of Professor Lahav and **DENIES** plaintiffs' motion to exclude the testimony and opinions of Professor Kessler. The parties shall meet and confer regarding a scheduling for the remainder of the action and file a statement as appropriate no later than **APRIL 28, 2023**.

This Order terminates Docket Numbers 168, 170, 214, 215, 251, 261, 268, 270, and 294.

**IT IS SO ORDERED.**

Dated: 3/31/2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

12