# EXHIBIT 5
# Filed Redacted/Under Seal

Page 1

1           UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3

   _____

4                                 )

   LD, DB, BW, RH and CJ, on      )

5  behalf of themselves and all   )

   others similarly situated,     )

6                                 )

            Plaintiffs,           )

7                                 )

      vs.                         )   Case No. 4:20-cv-02254-YGR

8                                 )

   UNITED HEALTHCARE COMPANY, a   )

9  Connecticut corporation,       )

   UNITED BEHAVIORAL HEALTH, a    )

10 California corporation, and    )

   MULTIPLAN, INC., a New         )

11 York corporation,              )

                                  )

12          Defendants.           )

   _____)

13

14

15    ** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **

16          ** PURSUANT TO PROTECTIVE ORDER **

17        REMOTE VIDEOTAPED DEPOSITION OF THE

18          30(b)(6) WITNESS ON BEHALF OF

19                MULTIPLAN, INC.

20              KATHY PRAXMARER

21            Tuesday, July 26, 2022

22                 Volume I

23 Reported by:

   NADIA NEWHART

24 CSR No. 8714

   Job No. 5339556

25

   PAGES 1 - 198

Page 2

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3

   _____

4                                  )

   LD, DB, BW, RH and CJ, on       )

5  behalf of themselves and all    )

   others similarly situated,      )

6                                  )

           Plaintiffs,             )

7                                  )

       vs.                         )   Case No. 4:20-cv-02254-YGR

8                                  )

   UNITED HEALTHCARE COMPANY, a    )

9  Connecticut corporation,        )

   UNITED BEHAVIORAL HEALTH, a     )

10 California corporation, and     )

   MULTIPLAN, INC., a New          )

11 York corporation,               )

                                   )

12         Defendants.             )

   _____ )

13

14

15         Remote videotaped deposition of

16 KATHY PRAXMARER, Volume I, taken on behalf of

17 Plaintiffs, with all participants appearing remotely

18 via videoconference and the witness testifying

19 from Naperville, Illinois, beginning at 9:02 a.m.

20 and ending at 2:17 p.m. on Tuesday, July 26, 2022,

21 before NADIA NEWHART, Certified Shorthand

22 Reporter No. 8714.

23

24

25

Page 3

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4         ARNALL GOLDEN GREGORY, LLP

 5         BY:  MATTHEW M. LAVIN, ESQ.

 6         BY:  NICOLE E. WEMHOFF, ESQ.

 7         BY:  AARON R. MODIANO, ESQ.

 8         1775 Pennsylvania Avenue, NW, Suite 1000

 9         Washington, D.C. 20006

10         202-677-4030

11         matt.lavin@agg.com

12         nicole.wemhoff@agg.com

13         aaron.modiano@agg.com

14         (Remote appearance.)

15              - and -

16         ARNALL GOLDEN GREGORY. LLP

17         BY:  THOMAS E. KELLY, ESQ.

18         BY:  NATALIE L. CASCARIO, ESQ.

19         171 17th Street, NW, Suite 2100

20         Atlanta, Georgia 30363

21         404-873-8500

22         tom.kelly@agg.com

23         natalie.cascario@agg.com

24         (Remote appearance.)

25
```

```
                                          Page 4
 1   APPEARANCES (Continued):

 2

 3   For Defendant MultiPlan and the Witness:

 4        PHELPS DUNBAR, LLP

 5        BY:  ERROL J. KING, JR., ESQ.

 6        400 Convention Street, Suite 1100

 7        Baton Rouge, Louisiana 70802-5618

 8        225-346-0285

 9        errol.king@phelps.com

10        (Remote appearance.)

11

12   For Defendant United HealthCare Company:

13        GIBSON, DUNN & CRUTCHER, LLP

14        BY:  GEOFFREY SIGLER, ESQ.

15        BY:  MATTHEW GUICE AIKEN, ESQ.

16        1050 Connecticut Avenue, N.W.

17        Washington, D.C. 20036-5306

18        202-955-8500

19        gsigler@gibsondunn.com

20        maiken@gibsondunn.com

21        (Remote appearance.)

22

23

24

25
```

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

                                                      Page 5

1    APPEARANCES (Continued):

2

3    For Defendant United HealthCare Company:

4          GIBSON, DUNN & CRUTCHER, LLP

5          BY:  NICOLE R. MATTHEWS, ESQ.

6          333 South Grand Avenue

7          Los Angeles, California 90071-3197

8          213-229-7000

9          nmatthews@gibsondunn.com

10         (Remote appearance.)

11

12   Also Present:

13         JAKE FRANKS, technical support concierge

14         ANTHONY GULINO, Videographer

15         (Remote appearance.)

16

17

18

19

20

21

22

23

24

25

Page 6

1                          INDEX

2    WITNESS                                   EXAMINATION

3    KATHY PRAXMARER

4    Volume I

5                   BY MR. LAVIN                    12

6                   BY MR. SIGLER                  188

7                   BY MR. LAVIN                   190

8

9

10                        EXHIBITS

11   NUMBER              DESCRIPTION             PAGE

12   Exhibit 1    Notice of Taking Deposition      34

13                Pursuant to Fed. R. Civ. P.

14                30(b)(6) of Corporate

15                Representative for MultiPlan,

16                Inc.:  Kathy Praxmarer; 7 pages

17

18   Exhibit 2    Letter dated 6/28/22; 2 pages     37

19

20   Exhibit 3    Plaintiffs' Third Amended Class   37

21                Action Complaint; 85 pages

22

23   Exhibit 4    MultiPlan's Answer to Plaintiffs' 57

24                Second Amended Class Acton

25                Complaint; 51 pages

Page 7

1    INDEX (Continued):

2                       EXHIBITS

3    NUMBER               DESCRIPTION                PAGE

4    Exhibit 5    MultiPlan's Objections and         60

5                 Answers to Plaintiffs' Special

6                 Interrogatories to Defendant

7                 MultiPlan, Inc.; 15 pages

8

9    Exhibit 6    MultiPlan's Objections and         66

10                Responses to Plaintiffs' Third

11                Set of Requests to Produce to

12                Defendant MultiPlan, Inc.;

13                11 pages

14

15   Exhibit 7    Viant Facility Outpatient U&C      68

16                Review Service Explanation of

17                Methodology; MPI-0000488-498

18

19   Exhibit 8    Email chain dated 9/13/17 through  84

20                5/8/18; UHC000073268-296

21

22   Exhibit 9    Email chain dated 12/22/17 and     97

23                1/3/18; MPI-0005467-5468

24

25

Page 8

1    INDEX (Continued):

2                     EXHIBITS

3    NUMBER               DESCRIPTION               PAGE

4    Exhibit 10   Letter dated 1/28/19;            98

5                 MPI-0012110-111

6

7    Exhibit 11   Fax cover sheet dated 6/17/19   123

8                 with attachment; MPI-0012108-109

9

10   Exhibit 12   Letter dated 6/18/19;           129

11                MPI-0012112-113

12

13   Exhibit 13   Email chain dated 3/3/20 through  134

14                5/27/20; MPI-0002152-154

15

16   Exhibit 14   Email chain dated 10/16/20;     137

17                MPI-0006891

18

19   Exhibit 15   Email chain dated 3/15/19 through 138

20                4/26/19 with attachment;

21                MPI-0007749-752 and

22                MPI-0007754-781

23

24   Exhibit 16   Email chain dated 10/11/19      144

25                through 10/17/19; MPI-0001680-685

CONF 30(b)(6) Kathy Praxmarer            July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

                                                        Page 9

1    INDEX (Continued):

2                        EXHIBITS

3    NUMBER                 DESCRIPTION                 PAGE

4    Exhibit 17    Excel spreadsheet               161

5

6    Exhibit 18    Email dated 6/24/22;            164

7                  MPI-0012799-800

8

9    Exhibit 19    WAV file                        186

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 10

1                    Tuesday, July 26, 2022

2                         9:02 a.m.

3

4         THE VIDEOGRAPHER:  Good morning, everyone.

5   We are going on the record at 9:02 a.m. Central

6   Daylight Time on Tuesday, July 26th, 2022.  Please

7   note that this deposition is being conducted

8   virtually.  Quality of recording depends on the

9   quality of camera and Internet connection of

10  participants.  What is seen from the witness and

11  heard on screen is what will be recorded.  Audio-

12  and video-recording will continue to take place

13  unless all parties agree to go off the record.

14         This is media unit 1 of the video-recorded

15  deposition of Kathy Praxmarer, taken by counsel for

16  plaintiff in the matter of LD, et al. versus United

17  HealthCare Insurance filed in the United States

18  District Court, Northern District of California.

19  The case number is 4:20-cv-02254-YGR.  This

20  deposition is being conducted remotely using

21  virtual technology.

22         My name is Anthony Gulino, representing

23  Veritext Legal Solutions, and I am the videographer.

24  The court reporter is Nadia Newhart from the firm

25  Veritext Legal Solutions.  I am not related to any

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 11

1   party in this action, nor am I financially

2   interested in the outcome.  If there are any

3   objections to proceeding, please state them at the

4   time of your appearance.

5        Counsel and all present will now state their

6   appearances and affiliations for the record

7   beginning with the noticing attorney.

8        MR. LAVIN:  Hi.  This is Matt Lavin from

9   Arnall Golden & Gregory for the plaintiffs.  And I

10  am joined by my colleagues Aaron Modiano and Nicole

11  Wemhoff.

12       MR. KING:  Errol King with Phelps Dunbar

13  representing MultiPlan and the witness, Kathy

14  Praxmarer, and I am joined by no one.

15       THE REPORTER:  Is that everyone?

16       MR. AIKEN:  We have Matthew Aiken here from

17  Gibson Dunn on behalf of (technical difficulty)

18  Behavioral Health and Managed Healthcare.  I'm also

19  joined by Geoff Sigler, also of Gibson, Dunn &

20  Crutcher.

21       THE REPORTER:  I will swear you in.  Please

22  raise your right hand, Ms. Praxmarer.

23  ///

24  ///

25  ///

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 12

1                    KATHY PRAXMARER,

2     having been administered an oath, was examined and

3     testified as follows:

4

5                       EXAMINATION

6     BY MR. LAVIN:

7        Q    Good morning, ma'am.  Could you state your

8     name for the record, please.

9        A    Good morning.  Kathy Praxmarer.

10        Q    Hi, Ms. Praxmarer.  My name is Matt Lavin,

11     and I represent the plaintiffs in this case.

12             And have you ever had your deposition taken

13     before?

14        A    I have.

15        Q    All right.  About how many times?

16        A    Two or three.

17        Q    All right.  Do you remember the last time you

18     had your deposition taken?

19        A    In '21, 2021.

20        Q    And do you remember what that was -- what

21     that case was?

22        A    I don't -- I don't know the exact name of the

23     case, no.

24        Q    Do you know the name of the attorney who took

25     your deposition?

Page 13

1          MR. KING:  If I can -- if I can, Matt, his

2     name was Rich Collins.

3     BY MR. LAVIN:

4          Q   Okay.  And did that case involve Viant

5     pricing?

6          A   It did not.

7          Q   Okay.  What was the nature of that case?

8          A   It related to -- gosh, I'm completely drawing

9     a blank.  I'm sorry.  I think it was DataiSight.

10         Q   Okay.  And do you know if in that case, if

11    you know, were you in a corporate 30(b)(6) capacity,

12    or were you deposed in an individual capacity, if

13    you know?

14         A   I was in a corporate capacity.

15         Q   Okay.  On behalf of DataiSight or MultiPlan;

16    is that right?

17         A   MultiPlan.

18         Q   Okay.  And what was the time you were deposed

19    prior to that?

20         A   Matt, I -- I quite honestly couldn't even

21    tell you.  It was quite a few years before then.

22         Q   Okay.  Was it in a personal matter, or was it

23    a professional matter?

24         A   It was a professional matter.

25         Q   Okay.  And what about the time before that?

Page 14

1    A    As I indicated, it was two to three times.  I

2   really don't recall the precise details or timing of

3   that.

4    Q    Okay.  Were they all professional matters?

5    A    They were.

6    Q    Did any of them relate to Viant?

7    A    They did not.

8    Q    So you know the rules.  You've been deposed

9   before, so I'll just go over them super quick.

10        We -- you know, there's a court reporter

11  here.  She can only take down one person at a time,

12  so we need to be careful not to speak over each

13  other.  Let me finish asking a question, and I'll

14  let you finish answering a question.  If for some

15  reason I cut you off, let me know and I'll -- you

16  know, you can continue answering.

17        If I ask anything and you can't understand

18  it, let me know.  Your answers have to be, like,

19  yes, you know, or something out loud.  They can't --

20  the court reporter can't take down gestures.

21        And, you know, your attorney, Mr. King, may

22  object to some questions.  And unless he

23  specifically -- so first of all, give him time to do

24  that, if he's -- you know, attorneys try to get

25  objections on the record.  Allow him to do that.

Page 15

1    But then unless he specifically instructs you not to
2    answer, please answer the question.
3          And, you know, we can take breaks.  Whenever
4    you feel like you need to take a break, just let us
5    know.  And I just ask that you don't do it while a
6    question is pending, all right?
7       A    Okay.
8       Q    All right.  So what did you do to prepare for
9    today's deposition?
10      A    I met with Errol King yesterday.
11      Q    Okay.  And did you meet -- was anybody else
12   in that meeting, or was it just you and Mr. King?
13      A    Just Mr. King and I.
14      Q    All right.  And where are you physically
15   today?
16      A    I'm in Naperville, Illinois in the MultiPlan
17   office.
18      Q    All right.  Is there anybody in that room
19   with you?
20      A    Mr. King.
21      Q    And about for how long did you meet?
22      A    Probably about six hours.
23      Q    Did you look at any documents?
24      A    I did.
25      Q    Do you remember what documents you looked at?

Page 16

1    A    There were various emails, presentation
2  copies and other documents.
3    Q    Do you remember any of those emails
4  specifically?
5    A    I remember there were some that related to a
6  BFRD review.  That's what comes to mind.
7    Q    Okay.  Do you remember what the presentations
8  related to?
9    A    They were generally presentations made by
10 sales to UnitedHealthcare.
11   Q    Did you speak with anybody else at MultiPlan
12 about your deposition today?
13   A    I did not.
14   Q    Okay.  All right.  So where are you currently
15 employed?
16   A    MultiPlan.
17   Q    And what is your current role at MultiPlan?
18   A    I oversee our out-of-network services
19 division.
20   Q    What is your title?
21   A    Vice president out-of-network solutions.
22   Q    So does that include all out-of-network
23 solutions at MultiPlan?
24   A    It does.
25   Q    Okay.  Does that include DataiSight and Viant

Page 17

1    and everything?

2        A    It includes DataiSight, Viant and negotiation

3    services.

4        Q    Got it.  And for how long have you been a

5    vice president?

6        A    I was in that title prior to being acquired

7    by MultiPlan.  So I'm going to guess 13 years, but I

8    don't know that precisely.

9        Q    And where did you work prior to MultiPlan?

10       A    I was employed at Viant and then MultiPlan

11   acquired us in 2010.

12       Q    And how long did you work with Viant before

13   they were acquired by MultiPlan in 2010?

14       A    I'm going back.  Since 1998.

15       Q    And did you work anywhere before Viant in

16   1998?

17       A    I did.  I worked for Trustmark Insurance

18   Company.

19       Q    And about how many years did you work for

20   Trustmark?

21       A    I think it was five, five years.

22       Q    And what was your -- what did you do at

23   Trustmark?

24       A    I held a variety of different roles.  I was a

25   claim adjuster, a disability adjuster.  I was a

CONF 30(b)(6) Kathy Praxmarer       July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 18

1    financial analyst.

2       Q    And did you have a job before working at

3    Trustmark?

4       A    Throughout college.

5       Q    Where did you go to college?

6       A    Illinois State.

7       Q    Did you graduate with a degree?

8       A    I did.

9       Q    What was your degree in?

10      A    I had a double major in finance and business

11   administration.

12      Q    And do you have any other postgraduate

13   education?

14      A    I do not.

15      Q    All right.  In your current role at

16   MultiPlan, who do you report to?

17      A    Derek Reis-Larson.

18      Q    And what is Mr. Reis-Larson's title?

19      A    I believe it is a senior vice president of

20   repricing services.

21      Q    And do you have people that report to you in

22   your current position?

23      A    I do.

24      Q    How many direct reports do you have?

25      A    I have eight direct reports.

CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 19

1    Q    Okay.  And who are those people, if you

2    remember?

3    A    Allison Russell, Melissa Dotson, Dan Serrano,

4    Lisa Miller, Natasha Sinegar, Mike Bandomer, JR Moss

5    and Chris Vinton.

6    Q    Okay.  Do you have an understanding of the

7    case that you're being deposed in today?

8    A    I do.

9    Q    And what is your understanding?

10   A    I understand that there are five members that

11   are being balance billed, and they were on claims

12   that Viant provided a recommendation to

13   UnitedHealthcare.

14   Q    Okay.  And so in your day-to-day

15   responsibilities, do you supervise the entire Viant

16   operation?

17   A    I supervise the operational side of Viant,

18   yes.

19   Q    Okay.  And when you say "the operational

20   side," what functions does that refer to?

21   A    That would refer to any service-related

22   function, so customer service type of activity, as

23   well as claim resolution specialist or you may hear

24   to them referred to as negotiators.  Those are the

25   individuals that would speak with providers when a

Page 20

1    inquiry or appeal is initiated.

2        Q   Okay.  Is there a difference between an

3    inquiry or an appeal?

4        A   There is.

5        Q   And what is that difference?

6        A   An inquiry is really just that, inquiring

7    about the -- the services that took place on a

8    claim, asking questions, understanding the repricing

9    that occurred.  An appeal is truly when a balance

10   bill has been initiated with a member.

11       Q   And do those calls go to different teams

12   within Viant?

13       A   They would generally start with a customer

14   service team first before being referred to another

15   area that may handle that call.

16       Q   So, you know, I think you mentioned before

17   there was a couple pricing services or out-of-

18   network services that MultiPlan offers.  There was

19   negotiations, right?  DataiSight, Viant.

20           Do -- for example, does Viant have dedicated,

21   you know, call reps or negotiators who work only on

22   Viant claims?

23       A   We have designated individuals for Viant on

24   the patient advocacy side, so that would be like our

25   customer service team.  And we do have dedicated

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 22 of 244
CONF 30(b)(6) Kathy Praxmarer      July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 21

1    individuals that negotiate on behalf of Viant.

2        Q    Okay.  So those are two different teams,

3    right?  The negotiators and the customer service,

4    correct?

5        A    Correct.

6        Q    And do the negotiators handle the appeals?

7        A    They do.

8        Q    And customer service handles inquiries?

9        A    Customer service, for example, would -- would

10   handle a call that came in from a member based on

11   receipt of a patient advocacy letter.

12       Q    Okay.  What about if a provider called in?

13       A    If a provider called to initiate a question

14   or indeed indicating that they were balance billing

15   a member, then that would come through that patient

16   advocacy department, as well.

17       Q    Okay.  Where are those call centers

18   physically located?

19            MR. KING:  Note -- note my objection.

20            You can answer.

21            THE WITNESS:  I'm going to give two answers.

22   Pre-COVID, they were historically within the Salt

23   Lake City, Utah location.  Since the pandemic, while

24   that is the location with which -- under which many

25   of them originated, our operation has expanded where

Page 22

1   we're offering more of a national presence to fill

2   any open positions.

3   BY MR. LAVIN:

4       Q    So people are working remotely from home?

5       A    They are.

6       Q    It's the -- the new world.

7            When calls come in, does Viant record those

8   phone calls?

9       A    They do.

10      Q    How are those stored?

11           MR. KING:  Matt -- Matt, to be -- to be

12   clear, you said, "Does Viant record those phone

13   calls?"  So we're -- you're talking just about Viant

14   and -- and the team she's identified, right?

15           MR. LAVIN:  Exactly, yeah.

16           MR. KING:  Okay.

17   BY MR. LAVIN:

18      Q    We're talking about the Viant -- the two

19   teams that you mentioned.

20           So are those calls stored somewhere?

21      A    They are stored for a limited period of time,

22   yes.

23      Q    And how long are they kept for?

24      A    They're kept for six months.

25      Q    Do you use a vendor to store them, or does

Page 23

1    Viant, you know, handle that on its own?

2        A    That would not be under my purview.  That's

3    much more a technical question.

4        Q    So you don't know if you use Zoom or

5    RingCentral or something like that to record and

6    store phone calls?

7        A    I know the applications that are used.  I

8    don't know how they're stored.  I -- I don't know

9    any of the technical detail behind the scenes.

10       Q    Sure.  What are those applications called?

11       A    OnviCord.

12       Q    Can you spell that.

13       A    I believe it's O-n-v-i-C-o-r-d.

14       Q    Okay.  Anything else?

15       A    No.

16       Q    Do you have any role in the programming or

17   coding of the Viant tool?

18            MR. KING:  Note my objection.

19            You can answer.

20            THE WITNESS:  Can you clarify that question?

21   BY MR. LAVIN:

22       Q    Sure.  And, you know, maybe I should back up.

23            Can you describe to me what Viant is.

24       A    As a product, is that -- is that --

25       Q    Yeah.

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 25 of 244
CONF 30(b)(6) Kathy Praxmarer       July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 24

1    A    -- what you're asking?  Sure.

2         It's a usual and customary methodology that

3    is applied to facility claims.

4    Q    And how does it work?

5    A    I -- I really can't give the detail on the

6    repricing.  That -- that would really be another

7    area within MultiPlan that's not my expertise.

8    Q    Okay.  Who would have that kind of detail?

9    A    That would be our healthcare economics team

10   under Sean Crandell.

11   Q    Anybody else you can think of?

12   A    In Sean's organization?  That would be his

13   area.

14   Q    Who is Karen Beckstead?

15   A    She's a member of the healthcare economics

16   team.

17   Q    Okay.  Does she have any role within Viant or

18   any responsibilities?

19   A    She has various responsibilities.  Again,

20   that would be more Sean's area to respond to than

21   mine.  I -- I don't know the particulars of all

22   of his -- his employees.

23   Q    Does Karen Beckstead report to Sean Crandell?

24   A    She reports in to healthcare economics.  I

25   don't know who she reports to.

Page 25

1      Q    Who is the director, who's the head of or

2   vice president, or who's the top person in

3   healthcare economics?

4      A    That would be Sean Crandell.

5      Q    So you said usual and customary.  What does

6   that mean?  What does usual mean in the healthcare

7   pricing context?

8           MR. KING:  Objection.

9           You can answer.

10          THE WITNESS:  Matt, again, I really am not

11  the expert on methodology, so -- and I'm really not

12  sure the questions you're asking and -- and how -- I

13  would really refer those to Sean again.

14  BY MR. LAVIN:

15     Q    So I just want to be sure.  You have no idea

16  at all what usual and customary means, right?

17          MR. KING:  Objection.

18          You can answer.

19          Argumentative.

20          THE WITNESS:  Sure.  I mean, usual and

21  customary is a terminology that is standard in the

22  industry.

23  BY MR. LAVIN:

24     Q    Okay.  Can you define it for me.

25          MR. KING:  Objection; outside the scope.

Page 26

1          You can answer.

2          THE WITNESS:  I'm not sure how to define

3    that, to be quite honest.

4    BY MR. LAVIN:

5      Q   Okay.  What does it mean for something to be

6    usual?

7          MR. KING:  Again, objection; outside the

8    scope of the deposition.

9          You can answer.

10         THE WITNESS:  Usual.  Common?

11   BY MR. LAVIN:

12     Q   Okay.  What about customary?  What does that

13   mean?

14         MR. KING:  Same objection.

15         THE WITNESS:  I don't even know how to define

16   that.

17   BY MR. LAVIN:

18     Q   Okay.  I'm just asking because, you know,

19   you've worked with Viant for a really long time,

20   right?

21     A   I have worked for Viant for a long time.  I

22   have not overseen this department throughout that

23   tenure.

24     Q   Okay.  Well, what were some of your other

25   roles at Viant over your tenure?

Page 27

1          MR. KING:  Objection; asked and answered.

2          THE WITNESS:  Primarily within the

3     negotiation services area.

4     BY MR. LAVIN:

5        Q   Okay.  Is usual and customary a sales tool,

6     is it -- or rather a sales term, or does it have an

7     actual meaning?

8          MR. KING:  Again, objection; asked and

9     answered, outside the scope of the witness's

10    deposition, Matt.

11          But you can answer.

12          THE WITNESS:  Is it a -- did you say is it a

13    sales term?  I'm sorry.

14    BY MR. LAVIN:

15        Q   Yes.  Is it a sales term, or does it have an

16    actual -- I'm unclear on its meaning, so I'm asking

17    you, is it a sales term, or does it have a really

18    specific meaning in healthcare pricing?

19          MR. KING:  Same objection.

20          THE WITNESS:  No, I wouldn't -- I wouldn't

21    suggest it's a sales term.

22    BY MR. LAVIN:

23        Q   Okay.  So when you say it generates a usual

24    and customary price -- right?  Isn't that what Viant

25    does?

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 28

1     A    Uh-huh.

2          MR. KING:  You have to answer --

3    BY MR. LAVIN:

4     Q    Right.  I'm --

5     A    Yes, yes.  I'm sorry.

6     Q    Okay.  I mean, I -- I've heard, you know,

7    different types of terms.  I'm just trying to

8    understand.  Does that mean -- and when you say

9    "usual," "common," does that, you know, mean common

10   to what?

11         MR. KING:  Same objection.

12   BY MR. LAVIN:

13    Q    Can you give me an example.

14    A    Common to reimbursement in that geographical

15   area.

16    Q    For similar providers?

17    A    Yes.

18    Q    So is it -- when you say "usual and

19   customary," do you mean like similar services from

20   similar providers in a similar area?  Is that a fair

21   thing to say?

22    A    Yes, that would be fair.

23    Q    Do you have an idea of how many claims a year

24   are priced for United through Viant?

25    A    I -- I don't have that number.

Page 29

1    Q    Okay.  Do you know what types of claims are

2   priced by Viant for United?  Are there any

3   categories --

4         MR. KING:  Objection -- objection; scope.

5   Outside the scope.

6         You can answer.

7         THE WITNESS:  Facility claims.

8   BY MR. LAVIN:

9    Q    Okay.  And what's a facility claim?

10    A    Rendered in a facility or ambulatory surgical

11   center, hospital setting.

12    Q    Okay.  Have you ever heard of a professional

13   claim?

14    A    I have.

15    Q    Is there a difference between a professional

16   claim and a facility claim?

17    A    A professional claim I would define as a

18   physician or physician-like services such as

19   anesthesiologist or CRNA.

20    Q    Okay.  And what's different about a facility

21   claim versus a physician claim?

22         MR. KING:  Objection; scope.

23         THE WITNESS:  You could state that there's

24   billing on a UB, a standard UB format on the

25   facility side.  On the professional side, you have

Page 30

1    billing on a HCFA standard format.

2    BY MR. LAVIN:

3       Q   And is Viant capable of pricing professional

4    plans?

5           MR. KING:  Same objection -- standing

6    objection.

7           You can answer.

8           THE WITNESS:  Viant would primarily reprice

9    facility claims.

10   BY MR. LAVIN:

11      Q   Okay.  Does Viant ever price professional or

12   physician claims?

13          MR. KING:  Asked and answered.

14          You can -- you can answer again.

15          THE WITNESS:  Not that I'm aware of.

16   BY MR. LAVIN:

17      Q   Okay.  So it -- does -- do you know anything

18   about the data underlying Viant pricing?

19          MR. KING:  Objection; outside the scope of

20   her deposition.

21          THE WITNESS:  A very high level.

22   BY MR. LAVIN:

23      Q   Okay.  What is that very high-level

24   understanding?

25          MR. KING:  Same objection.

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 32 of 244
CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 31

1        THE WITNESS:  That there are a variety of

2   tools or resources that are used to establish the

3   facility U and C repricing.

4   BY MR. LAVIN:

5        Q   Okay.  U and C means usual and customary,

6   right?

7        A   Correct.

8        Q   All right.  Do you know what those tools are?

9   I mean, is there a data set that underlies Viant?

10  And I don't -- I understand you don't know all the

11  details about the data set, but --

12       MR. KING:  Same objection.  Outside the

13  scope.  This was -- this was the topics designated

14  to Sean Crandell of MultiPlan.

15       But you can answer.

16       THE WITNESS:  Again, I can -- I know that

17  there are a multitude of datasets.  I don't know all

18  of them, no.

19  BY MR. LAVIN:

20       Q   Okay.  Have you ever heard of the standard

21  analytical file?

22       A   I have.

23       Q   What -- do you know what the standard

24  analytical file is?

25       A   I just know that it is part of the toolset.

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 33 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 32

1    Q    Okay.  And when Viant prices claims, does it

2    price them based on other similar, you know, data

3    for similar providers and similar geographic areas,

4    if you know?

5            MR. KING:  Same objection.

6            You can answer.

7            THE WITNESS:  Yes, that would be my

8    understanding.

9    BY MR. LAVIN:

10   Q    All right.  So when it prices a facility

11   claim, does it do so based on, you know, similar

12   data of other facility claims?

13           MR. KING:  Same objection.

14           THE WITNESS:  Yes, but, again, I'm really not

15   an expert on this methodology.

16   BY MR. LAVIN:

17   Q    I understand.  I just -- you know, you had

18   mentioned it's a tool for pricing facility claims.

19   I was wondering if the -- if the underlying data,

20   right, if it is comparing incoming facility claims

21   to facility claims in underlying datasets.

22           Do you understand that?

23           MR. KING:  Matt, I'm trying to be patient

24   here, but how is any of this line of questioning

25   within the topics she's been designated for?

Page 33

1    BY MR. LAVIN:

2        Q    Okay.  Can you answer the question.

3            MR. KING:  You're entitled to background

4    questions, and you've asked those.  But now

5    you're -- you're digging into the methodology.

6    That's what Sean Crandell sat for, and Aaron deposed

7    him for a few hours on it.

8            MR. LAVIN:  All right.  So your objection is

9    noted.  Thank you.

10           MR. KING:  She has not been prepared for the

11   topics dealing with the Viant methodology.

12           MR. LAVIN:  I'm just asking her -- she has

13   worked with Viant a long time -- her high-level

14   understanding of it.

15           MR. KING:  You can answer.

16           THE WITNESS:  So can you re- -- can you ask

17   the question again?  I don't know what the question

18   was.

19   BY MR. LAVIN:

20       Q    Sure.  When Viant prices a facility claim, is

21   it doing so based on an underlying data set of other

22   facility claims based on your high-level

23   understanding?

24           MR. KING:  Same objection.

25           You can answer.

Page 34

1          THE WITNESS:  Yes, I believe so.

2   BY MR. LAVIN:

3      Q   Let us -- we're going to go to the first

4   exhibit.

5          Do you have the Exhibit Share set up,

6   Ms. Praxmarer?

7      A   I do.

8      Q   So I'll tell you, something about this is you

9   have to keep refreshing it.  It won't just, like,

10  autopopulate.

11     A   Okay.

12         (Exhibit 1 was marked for identification

13          and is attached hereto.)

14         MR. LAVIN:  So Exhibit 1 is entitled "Notice

15  of Taking Deposition Pursuant to Federal Rules of

16  Civil Procedure 30(b)(6) of -- for MultiPlan:  Kathy

17  Praxmarer."

18         THE WITNESS:  Matt, I'm sorry.  Nothing is

19  appearing on mine.  So if you can just give me a

20  minute here.

21         MR. LAVIN:  You may have to hit the refresh

22  button.

23         THE WITNESS:  Yeah, I've done that.

24         MR. KING:  You need to file -- you need to

25  hit files, "see files."

Page 35

1          THE WITNESS:  Yeah.

2          MR. KING:  And just scroll down and hit

3      "share."

4          THE WITNESS:  That's what I did.  It says I

5      don't have permission to access any folder.

6          MR. KING:  Matt, let's go off the record if

7      we can so we can try and sort this out on her end.

8      She's not been given access to Exhibit Share for

9      some reason.  It just -- this just happened.

10         THE VIDEOGRAPHER:  Okay.  Let's go off the

11     record.  The time is 9:33 a.m., and this is the end

12     of media number 1.

13         (Mr. Kelly joined the proceedings.)

14         THE VIDEOGRAPHER:  Okay.  We're going back on

15     the record.  The time is 9:37 a.m., and this is the

16     start of media unit number 2.

17         MR. SIGLER:  This is Geoff Sigler, counsel

18     for the United defendants.  I just wanted to confirm

19     that as we've been doing it throughout the case,

20     when one party objects, the other parties don't need

21     to make the same objection.  The objections will

22     count for everyone.

23         Do you agree, Matt?

24         MR. LAVIN:  Sure.

25         MR. SIGLER:  Thank you.

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 37 of 244
CONF 30(b)(6) Kathy Praxmarer      July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 36

1    BY MR. LAVIN:

2        Q    Okay.  Ms. Praxmarer, have you got the

3    exhibits up and running?

4        A    I do.

5        Q    Okay.  Do you see that first one?

6        A    I do.

7        Q    Do you want to scroll through it real quick?

8        A    Okay.

9        Q    Have you ever seen this document before?

10       A    Yes.  Mr. King showed me this this morning.

11       Q    Okay.  Looking at this document, it says --

12   it has a number of topics.

13            Do you know which topics you've been

14   designated to speak on today, or would you like me

15   to go through them?

16       A    I do.

17       Q    Okay.  Which topics are those?

18       A    7, 8, 19, 20, 2- --

19       Q    What about 23?

20       A    Yeah, 23, 24 and 25.

21       Q    And what about --

22       A    And 2- -- sorry.  27.

23       Q    Sure.  Okay.  Let us -- all right.

24            What did you do to prepare for those topics

25   today?

Page 37

1          MR. KING:  Objection; asked and answered.

2          You can answer.

3          THE WITNESS:  Right.  So as I -- as I

4     indicated, I met with Mr. King yesterday and

5     reviewed a variety of -- of documents.

6     BY MR. LAVIN:

7        Q    Okay.  Did you do anything on your own,

8     though and look at anything?  Read anything --

9        A    Just --

10       Q    -- to prepare --

11       A    Just the same documents that we reviewed

12    together yesterday.

13         MR. LAVIN:  Well, let -- let's put up the

14    next exhibit.

15         (Exhibit 2 was marked for identification

16         and is attached hereto.)

17    BY MR. LAVIN:

18       Q    Exhibit 2 is a letter from Mr. King to

19    myself.

20         And have you ever seen this letter before?

21       A    No, I hadn't.

22         MR. LAVIN:  Let's go to the next exhibit.

23         (Exhibit 3 was marked for identification

24         and is attached hereto.)

25         THE WITNESS:  And what exhibit number?

Page 38

1    BY MR. LAVIN:

2        Q    It's Exhibit 3.

3        A    Okay.

4        Q    And Exhibit 3 is entitled "Plaintiffs' Third

5    Amended Class Action Complaint."  And you can scroll

6    through it if you'd like.  We're not going to go

7    into a lot of detail on it.

8             Have you ever seen this document before?

9        A    I have.

10       Q    Do you remember when the first time you saw

11   it was?

12       A    Over the weekend.

13       Q    And, you know, did you look it up on your own

14   over the weekend?

15       A    No.  Again, it was documents that Mr. King

16   had prepared for my review.

17       Q    So he sent you a zip file or some documents

18   to look at?

19       A    Correct.

20       Q    Had you ever seen this document before this

21   weekend?

22       A    No, I had not.

23       Q    When did you first become aware of this case

24   that you're being deposed on today?

25       A    I don't know when that would have been, to be

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 40 of 244
CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 39

1   honest.  Generally, if there is a request for

2   information, I would be aware that it -- it was

3   being researched.  But outside of that, I wouldn't

4   have any -- any input.

5       Q    What do you mean by request for information?

6   Can you elaborate.

7       A    Sure.  So if there was a request for details

8   that were part of the case, that would require

9   myself or my team.

10      Q    Do you know if you were requested to provide

11  any details related to this case?

12      A    I was not personally, but my team may have

13  been.

14      Q    Do you know if you searched for any documents

15  on behalf of MultiPlan or Viant to produce in this

16  case?

17      A    No.  That would have been done outside of me.

18      Q    Let me ask you one question.  This is about

19  kind of corporate structure of Viant.  Is Viant a

20  separate company?  Is it wholly owned?  Is it just a

21  division of MultiPlan?  How is it structured, if you

22  know?

23          MR. KING:  Note my objection.

24          You can answer.

25          THE WITNESS:  Sure.  It is owned by

Page 40

```
 1   MultiPlan.
 2   BY MR. LAVIN:
 3       Q   Do Viant employees -- are they actually
 4   MultiPlan employees?
 5       A   They are part of MultiPlan.
 6       Q   Internally at MultiPlan, is Viant considered,
 7   you know, a separate division?  Is it part of the
 8   whole?  Do you know what I mean?
 9       A   Can you clarify your question?
10       Q   Sure.
11           Do individuals who answer the phone -- we
12   talked about the Viant, the two different -- you
13   know, there's the negotiators and there's the
14   customer service, right, for the call center?
15       A   Yes.
16       Q   When they answer the phone, are they
17   answering the phone on behalf of MultiPlan or just
18   on behalf of Viant?
19       A   On behalf of Viant.
20       Q   But Viant has no separate corporate entity,
21   does it?
22       A   Viant does have a separate -- a separate
23   entity.  They're owned by MultiPlan.
24       Q   So there is a corporate entity called --
25   named Viant --
```

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 41

1      A    Yeah.

2      Q    -- a separate company?

3      A    Yes.

4      Q    And do those employees receive, you know,

5   checks?  Do they say "MultiPlan" on them or "Viant,"

6   for example?

7           MR. KING:  Note my objection.

8           You can answer.

9           THE WITNESS:  I wouldn't know that, Matt.

10  BY MR. LAVIN:

11     Q    You know, are you aware that, you know, some

12  providers have, you know, network contracts with

13  MultiPlan, right?

14     A    Correct.

15          MR. KING:  Note my objection; outside the

16  scope.

17          You can answer.

18          THE WITNESS:  Correct, I'm aware.

19  BY MR. LAVIN:

20     Q    And that would be considered a separate

21  contract from a contract with Viant, correct?

22     A    Yes, that's correct.

23     Q    And does Viant ever contract with providers?

24     A    Not usually, no.

25     Q    You say "not usually."  Do they ever?

Page 42

1      A    Not to my knowledge.

2      Q    Are the people who answer the phones at Viant

3   taught to refer to MultiPlan as a separate company?

4           MR. KING:   Note my objection.

5           You can answer.

6           THE WITNESS:   They -- they know that they

7   work for Viant and the Viant brand.   They understand

8   that they are part of MultiPlan.

9   BY MR. LAVIN:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONF 30(b)(6) Kathy Praxmarer                     July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 43



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 44



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 45

17    Q   Can you describe for me how it works if --

18   let's -- so let's say a provider, for example, has

19   called up, and they first go to patient advocacy,

20   correct?

21    A   If the provider contacts Multi- -- Viant?

22    Q   Yes.

23    A   Yes.  They would first go to our patient

24   advocacy team.

25    Q   And let's say they -- they tell patient

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 46

1    advocacy, you know, I don't like the pricing on

2    this.  I would like to -- I'm going to balance bill

3    the member.  What happens next?

4        A    So the patient advocacy member would document

5    the contact from the provider, and then they would

6    open that and send it to our negotiation team, so

7    the claim resolution specialists.  It would assign

8    to a claim resolution specialist, and then they

9    would contact the applicable individual at the

10   facility for next steps.

11       Q    So the claim resolution specialist would call

12   the provider back; is that right?

13       A    Yes, they would.

14       Q    After a ticket or something is opened in the

15   system; is that right?

16       A    Sure, yeah.  Generally, that's how it works.

17

18

19

20

21

22

23

24

25

CONF 30(b)(6) Kathy Praxmarer               July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 47

12     Q    Do they go and look that document up?  Maybe

13  they -- they know it off the top of their head

14  probably.

15     A    Sure.  Based on their tenure, they may --

16  they may already know that.

17     Q    But if they did not -- let's say they were

18  new -- would they go pull up that information first

19  for that particular MultiPlan customer?

20     A    They could, yes.

CONF 30(b)(6) Kathy Praxmarer                                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page  48



CONF 30(b)(6) Kathy Praxmarer                          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 49



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 50

1    BY MR. LAVIN:

2       Q   Okay.  So a claims resolution specialist

3    could maybe look up a provider and look up a code

4    and see if they've agreed to a certain rate for that

5    service previously with Viant?

6       A   It would not be specific to a code.  It would

7    be specific to the claims that they may have

8    previously attempted negotiation.

9       Q   But would those claims be associated with

10   like a HCPC or some kind of procedure code?

11      A   There would be codes within the claim, yes.

12   But your question was related to, is it by code, and

13   that is not the case.

14      Q   Okay.  So there's nothing that indicates

15   like, you know -- are you familiar with HCPC H0015?

16      A   I know that that code exists, yes.

17      Q   Are you aware that that's the code at issue

18   in this case?

19      A   I am.

20      Q   So could a, you know, provider call up.

21   Let's say they get to claim resolution specialist.

22   Would the claim resolution specialist be able to

23   look up their TIN and say, you know, two weeks ago,

24   this is what they took for H0015?

25      A   No.  As I mentioned, they cannot do that by

Page 51

1   code.  So they can see prior claims in which they

2   negotiated with that -- that facility or that

3   contact.  But they would have to open the claim to

4   see what was billed on that claim.

5

6

7

8

9

10

11

12

13   Q   Okay.  And then what do you do when you do --

14   when that happens?  Is that information sent over to

15   United?

16   A   Correct.  We'd close it as a unsuccessful --

17   or an appeal that we were not able to resolve.

18   Q   Is there any kind of report generated of

19   those?

20   A   I don't know definitively the -- the back-end

21   closure process for United.

22   Q   Do you know about how many appeals -- I'm

23   just talking about appeals -- a day that Viant

24   handles on behalf -- well, for United claims?

25   A   I don't know that.

Page 52

1    Q   Do you know if it's hundreds, thousands?

2        MR. KING:  Objection.

3        You can answer.

4        THE WITNESS:  I don't know specific to

5   United.  I just don't know that number.

6   BY MR. LAVIN:

7    Q   So I think you also said that they will

8   explain the methodology to a provider, correct?

9    A   Correct.

10    Q   How much detail do they go into on the

11   methodology?

12    A   They would generally give a -- a general

13   description on the methodology.

14    Q   Do the people who work in appeals, the claims

15   resolution specialists, do they understand the

16   methodology that Viant uses to price claims?

17        MR. KING:  Note my objection.

18        You can answer.

19        THE WITNESS:  They are given a training of --

20   a high-level methodology training.

21   BY MR. LAVIN:

22    Q   Is the standard analytical file ever

23   mentioned to providers on those calls?

24    A   I don't believe so, but I don't know that

25   definitively.

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 54 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 53

1    Q   Do you know if the appeals team knows what
2   the standard analytical file is?

3    A   I don't.

4    Q   Who's responsible for training them?

5    A   It would be our corporate education
6   department.

7    Q   And who's in charge of that department?

8    A   Arlene DeFao.  We have not had a new employee
9   within Viant for a very long time, so I don't -- I
10   don't even know if Arlene has ever trained Viant.

11    Q   You said you haven't had a new employee in a
12   long time; is that right?

13    A   Correct.

14    Q   So you're not sure if anybody is training
15   Viant?

16    A   No.  I'm saying --

17        MR. KING:  Note my objection.

18        You can answer.

19   BY MR. LAVIN:

20    Q   I didn't understand your answer, so...

21    A   I'm sorry?

22    Q   I just didn't understand your answer.

23    A   Yes.  You were asking about our corporate
24   education department.  And I mentioned Arlene.
25   However, we have not had a new employee under Viant

Page 54

1   in a very long time, so I don't know that Arlene

2   would even have documentation that trained Viant,

3   because that would have been years that we've had a

4   new employee.

5       Q   So there hasn't been any new call center

6   employees in years, right?

7       A   You were referencing the negotiators?

8       Q   Right.

9       A   The call center is our patient advocacy

10  department.

11      Q   Okay.  So there's no claims resolution

12  specialists in years; is that right?

13          MR. KING:  For Viant?

14          THE WITNESS:  For Viant, correct.

15  BY MR. LAVIN:

16      Q   Yep.  How many claims resolution specialists

17  are they -- are there?

18          MR. KING:  Company-wide?

19          MR. LAVIN:  For Viant.

20          THE WITNESS:  Are you asking specific to

21  Viant?

22  BY MR. LAVIN:

23      Q   Yeah.  We're talking about Viant today unless

24  I indicate otherwise.

25      A   Sure.  I would say approximately eight.

Page 55

1     Q    And are they located in one area, or are they

2   working from home all around the country?

3     A    They also are working from home, generally

4   all in the Salt Lake City area, unless they've moved

5   recently.

6     Q    And you're unsure what level of detail they

7   are able to give providers on the under -- on the

8   data or the methodology underlying Viant, correct?

9     A    I -- I just don't know that, no.  I know

10   they -- they have a high-level understanding of --

11   of the methodology.

12     Q    Are you familiar with the Viant white papers?

13     A    I am.

14     Q    Do you know if those are ever shared with the

15   appeals folks?

16     A    They are not.

17     Q    Are the people on the appeals team given any

18   special training about, you know, hospital or

19   Medicare reimbursement or procedure codes?

20          MR. KING:  Note my objection.

21          You can answer.

22          THE WITNESS:  Matt, I honestly did not review

23   anything related to their training in preparation

24   for this, so I -- I don't -- I just don't have a lot

25   of detail on that.

Page 56

1   BY MR. LAVIN:

2       Q    Okay.  But you've overseen those people for

3   25 years, right?

4       A    I have not.  I've overseen those individuals

5   for approximately five.

6       Q    And in that time, you did not become familiar

7   with their training?

8       A    No, I haven't.

9       Q    Did they all predate you?

10      A    They did.

11      Q    What are the names of those eight claims

12  resolution specialists?

13      A    Oh, I couldn't tell you that, Matt.

14      Q    You don't know the names of the claims

15  resolution specialists for Viant?

16      A    No.

17      Q    These are just mysteries to you?  They -- you

18  wouldn't recognize any of their names?

19          MR. KING:  Note my objection; argumentative.

20          THE WITNESS:  If they -- if they were

21  presented on a -- on a document, I probably could

22  tell you the names, but I have a large department.

23  I don't know the names of every individual across my

24  team, no.

25  BY MR. LAVIN:

Page 57

1      Q    Do you ever speak with them?

2      A    Rarely.

3      Q    Okay.  What is MultiPlan's position on the

4   level of detail that a provider can be given to

5   understand the Viant methodology?

6           MR. KING:  Note my objection.

7           You may answer.

8           THE WITNESS:  So we would provide the

9   overview of the methodology and explaining to the

10  provider how the repricing had occurred.

11  BY MR. LAVIN:

12     Q    But -- so can you give me an example of

13  what's that overview.  What would they -- would they

14  give to a provider?  What would they say?

15     A    Again, sorry, Matt, I just didn't review that

16  documentation in preparation for this.

17          MR. LAVIN:  Okay.  Let's take a look at the

18  next exhibit.

19          (Exhibit 4 was marked for identification

20       and is attached hereto.)

21          THE WITNESS:  It's still refreshing.

22          Exhibit 4?

23  BY MR. LAVIN:

24     Q    Yeah.  Exhibit 4 is "MultiPlan's Answer to

25  Plaintiffs' Second Amended Class Action Complaint."

Page 58

1          Do you see that?

2     A    I do.

3     Q    Have you ever seen this document before?

4     A    I'm just reviewing here.

5     Q    Sure.

6     A    Yes, I have.

7     Q    All right.  And when was the first time you

8  saw this document?

9     A    It would have been, again, over the weekend

10  and yesterday.

11    Q    Do you know what an affirmative defense is?

12    A    I would have to read it in context to -- to

13  validate that.

14    Q    Is that a term you've ever heard before?

15    A    It is.

16    Q    Okay.  Please scroll to the back of this

17  document.  What page?  So they start on page 41 of

18  the PDF.

19    A    Okay.

20    Q    All right.  If we go ahead to the tenth

21  affirmative defense, it's on page 44 of the PDF.

22    A    Okay.

23    Q    And you see it says (as read):

24          "Fraud/Improper Conduct by Third

25          Parties"?

CONF 30(b)(6) Kathy Praxmarer       July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 59

1      A    I do.

2      Q    Are you aware of any evidence of fraud or

3   improper conduct by third parties related to the

4   claims of the plaintiffs in this case?

5      A    I do know that there are kind of suspect

6   codes or -- or billing, but not -- I can't

7   specifically say if that was fraud.

8      Q    What do you mean by suspect codes or billing?

9   By who?

10     A    By the provider based on the -- the charges

11  and the -- the codes that were billed on the claim.

12     Q    Okay.  Can you be more specific?

13     A    I can't.  That's -- that's all I have.

14     Q    Can you point to any specific claims or any

15  specific charges?

16          MR. KING:  Note my objection.

17          You can answer.

18          THE WITNESS:  No, sir.

19  BY MR. LAVIN:

20     Q    Have you investigated any specific claims or

21  any specific charges with relation to the third

22  parties and the plaintiffs in this case?

23     A    I have not.

24     Q    And when you say "they're suspect," in -- in

25  what way are they suspect?

Page 60

1      A    Just in -- in -- if they are billed

2   appropriately or coded appropriately or charged

3   appropriately.

4      Q    Have you noticed any impropriety or anything

5   unusual about the billing or charges or codes

6   related to the plaintiffs in this case?

7      A    I have -- again, I have not reviewed the

8   claims, as I mentioned in the prior question.

9           MR. LAVIN:  Okay.  Let's go to the next

10  exhibit.

11          (Exhibit 5 was marked for identification

12       and is attached hereto.)

13          THE WITNESS:  Exhibit 5?

14  BY MR. LAVIN:

15     Q    Exhibit 5.  It says (as read):

16           "MultiPlan's Objections and

17           Answers to Plaintiffs' Special

18           Interrogatories to Defendant

19           MultiPlan, Incorporated."

20          If you can take a second to flip through

21  that.

22          Have you ever seen this document before?

23     A    Yes.  I believe I saw this yesterday, as

24  well.

25     Q    Did you ever see it before yesterday?

Page 61

1      A    No, I hadn't.

2      Q    All right.  Let's go to interrogatory

3    number 2, which is on --

4      A    Oh, same exhibit.  Sorry.  I just clicked

5    out.

6      Q    Yeah.  It's page 5 of the PDF.

7      A    Okay.

8      Q    Do you see it says (as read):

9           "Interrogatory No. 2:  Describe in

10          detail the results of any and all

11          efforts by MultiPlan to obtain,

12          analyze, or undertake any review of

13          the language contained in member's

14          healthcare plans and whether

15          members actions and the PAD letters

16          directing patients and their

17          providers to contact you were

18          consistent and/or permitted under

19          said plans from January 20" -- "1st,

20          2015 to the present."

21          Do you see that?

22     A    I do see that.

23     Q    And then if you scroll down the next page --

24    so on interrogatory responses, usually the first

25    paragraph is objections, right, and the second

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 63 of 244
CONF 30(b)(6) Kathy Praxmarer        July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 62

1    paragraph is kind of the substantive answer.

2        A    Okay.

3        Q    And it says (as read):

4              "...MultiPlan states... it does

5              not have access to or knowledge of

6              any of its clients', including,

7              United's, plan documents."

8              Do you see that?

9        A    I do see that.

10       Q    What is a PAD letter?

11       A    A PAD letter is a -- it's a patient advocacy

12   letter.  So it's a letter that is sent to a member

13   to explain the repricing that occurred and who Viant

14   is.

15       Q    Okay.  Has MultiPlan ever undertaken any

16   analysis of UnitedHealthcare plans to make sure that

17   the language in those plans supports directing

18   members to call Viant for Viant price claims?

19       A    We don't receive or review any plan

20   documents.

21       Q    Would United give you that information if you

22   requested it?

23             MR. KING:  Note my objection.

24             You can --

25             It calls for speculation.

Page 63

1              You can answer.

2              THE WITNESS:  I would doubt that.  They're

3    generally considered confidential.

4    BY MR. LAVIN:

5        Q    The plans are considered confidential?

6        A    Plan documents.

7              MR. KING:  Objection; form, foundation.

8    BY MR. LAVIN:

9        Q    Okay.  Is any information at all kept on

10   MultiPlan systems about what the actual plan

11   documents say relative to a certain claim from a

12   United member?

13             MR. KING:  Note my objection; outside the

14   scope, foundation.

15             You can answer.

16             THE WITNESS:  Again, we don't receive any

17   information from plan documents to display.

18   BY MR. LAVIN:

19       Q    Okay.  So if a claim specialist -- claims

20   resolution specialist -- strike that.

21             So a claims resolution specialist would --

22   should never be able to reference plan language at

23   MultiPlan, correct?

24             MR. KING:  Note my objection.

25             You can answer.

Page 64

1          THE WITNESS:  Correct.

2     BY MR. LAVIN:

3        Q    So if a claim specialist at MultiPlan did

4     reference plan language, that would be an incorrect

5     or improper representation?

6          MR. KING:  Note my objection.

7          You can answer.

8          THE WITNESS:  Correct, they should not

9     reference any plan document.

10    BY MR. LAVIN:

11       Q    What about referencing plan language?

12       A    We don't receive --

13         MR. KING:  Same objection.

14         You can answer.

15         THE WITNESS:  We don't receive plan language

16    to reference.

17         MR. KING:  And, Matt, to be clear, you're

18    talking about the specific plan language, right?

19         MR. LAVIN:  Yep.  I'm talking about

20    referencing or talking about what plan documents or

21    plan language allows, you know.

22         MR. KING:  Okay.  Thanks.

23         Do you need a break?

24         THE WITNESS:  I'm good.

25    BY MR. LAVIN:

Page 65

```
 1      Q   So let's go to interrogatory number 8, which
 2   is -- so that is -- it's page 10 of the PDF, is the
 3   question.
 4          Do you see it?
 5      A   I do.
 6      Q   It says (as read):
 7             "Describe in detail what steps,
 8          actions, policies, and/or procedures
 9          are taken by MultiPlan or its agents
10          with regard to inquiries received by
11          you from or regarding United's
12          members who receive balance bills
13          for out-of-network claims priced
14          through Viant OPR from January 1st,
15          2015 to present."
16          Do you see that?
17      A   Yeah.
18      Q   And if we go down -- and refers back to
19   interrogatory number 5.  So let's scroll back just a
20   little bit, which is -- interrogatory number 5's
21   over there on -- the answer is on page 8.
22      A   I see that.
23      Q   But looking at that response, is there
24   anything that MultiPlan feels it needs to supplement
25   in that response to this interrogatory?
```

Page 66

1          MR. KING:  Note my objection.

2          You can answer.

3          THE WITNESS:  Let me just read through that,

4     if you don't mind.

5          MR. LAVIN:  Absolutely.

6          THE WITNESS:  No, I wouldn't suggest anything

7     else needs to be added.

8     BY MR. LAVIN:

9     Q    Did you have any role in the drafting of that

10    response?

11    A    I don't believe I did, no.

12         MR. LAVIN:  Let's go to the next exhibit.

13         (Exhibit 6 was marked for identification

14         and is attached hereto.)

15         THE WITNESS:  Exhibit 6?

16    BY MR. LAVIN:

17    Q    That's right.

18    A    Okay.

19    Q    Exhibit 6 is "MultiPlan's Objections and

20    Responses to Plaintiffs' Third Set of Requests to

21    Produce to Defendant MultiPlan, Incorporated."

22         Have you ever seen this document before?

23    A    This is not looking familiar to me.

24    Q    Okay.  Did you have any role at all in

25    gathering documents responsive to this -- to the

Page 67

1    document requests referred to in this exhibit?

2           MR. KING:  Note my objection.

3           You can answer.

4           THE WITNESS:  I would have to review.  I

5    don't know what this refers to.

6    BY MR. LAVIN:

7       Q   Okay.  So if you scroll ahead to -- so if you

8    look like on page 6 of the PDF, for example, it says

9    (as read):

10              "Request for Production No. 5:

11              Any and all documents relied upon

12              you in responding to Interrogatory 5

13              in Plaintiffs' first set of

14              interrogatories served on you."

15      A   I -- I don't know, Matt, to be honest.  I

16   wouldn't -- I don't -- I don't recall if -- if

17   anything came to me on this request.

18          MR. KING:  And I'm going to object on the

19   basis it's outside the scope of the topics she's

20   been designated for.

21          THE WITNESS:  I do see something referred to

22   "whitepapers."  That would not be me.

23   BY MR. LAVIN:

24      Q   Do you know if you searched for any of the

25   documents referenced in this response?

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 68

1          MR. KING:  Note my objection on a number of

2    bases.

3          You can answer.

4          THE WITNESS:  No.

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 69



CONF 30(b)(6) Kathy Praxmarer       July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 70

1

2

3

4

5

6      Q    Okay.  Do you know what an APC is?

7      A    I'm familiar with an APC.

8      Q    What is an APC?

9      A    It is an ambulatory payment classification.

10     Q    Okay.  Was that something you knew before

11  meeting with Sean Crandell on this document?

12     A    I was aware of it, yes.

13     Q    Okay.  Are you aware that Viant utilizes APCs

14  in some instances to determine pricing?

15          MR. KING:  Note my objection.

16          You can answer.

17          THE WITNESS:  I'm aware of that.

18  BY MR. LAVIN:

19     Q    Do you know if, when providers call up about

20  appeals and the methodology is explained to them, is

21  it explained to them that Viant sometimes uses APCs

22  to price claims?

23          MR. KING:  Note my objection.

24          You can answer.

25          THE WITNESS:  Sorry.  I don't know.

Page 71

1    BY MR. LAVIN:

2       Q   Do you know what an APC is besides, you know,

3    just what the words are?

4           MR. KING:  Objection; asked and answered.

5           You can answer.

6           THE WITNESS:  I just know generally that

7    they're groupings of codes, CPT and HCPCS codes.

8    BY MR. LAVIN:

9       Q   Okay.  And how does Viant use them, if you

10   know, those groupings?

11          MR. KING:  Objection; scope.

12          THE WITNESS:  Outside of my -- my expertise.

13   BY MR. LAVIN:

14      Q   You ever heard of mapping of codes?  Is that

15   something you're familiar with?

16          MR. KING:  Same objection.  Not in the topics

17   she's been designated for.  It's -- it's -- if we're

18   going to get through this day at some point today,

19   Matt, you need to stay with the topics she's been

20   designated for.  That's fair.

21   BY MR. LAVIN:

22      Q   Are you familiar with mapping of codes?  Is

23   that a term you've ever heard?

24          MR. KING:  Standing objection.

25          THE WITNESS:  I've heard the term.

Page 72

1    BY MR. LAVIN:

2        Q    Do you know what it means?

3            MR. KING:  Same objection.

4            THE WITNESS:  Yes.

5    BY MR. LAVIN:

6        Q    What does it mean?

7        A    To blank --

8            MR. KING:  Continuing -- continuing

9    objection.

10           Go ahead.

11           THE WITNESS:  Blank or crosswalk similar code

12   groups.

13   BY MR. LAVIN:

14       Q    Okay.  So is mapping the same as crosswalk,

15   if you know?

16           MR. KING:  Same objection.

17           THE WITNESS:  My definition, I would assume

18   so.

19   BY MR. LAVIN:

20       Q    Okay.  So if a code is going to be mapped or

21   crosswalked to an APC, should it be a similar code

22   or similar services to that APC?

23           MR. KING:  Objection; foundation, outside the

24   scope.  You should have been at Sean Crandell's

25   deposition, Matt.

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 73

1          MR. LAVIN:  I think I was taking another

2     one that day.

3          THE WITNESS:  So can you -- can you restate

4     the question?

5     BY MR. LAVIN:

6       Q    Sure.

7            Does crosswalking -- you know, what does it

8     mean?  Does it mean walking codes to similar APCs?

9            MR. KING:  Same objection.

10           THE WITNESS:  Yes.  It would be -- yes,

11    that -- that's correct.

12    BY MR. LAVIN:

13      Q    Walking facility codes to facility APCs?

14           MR. KING:  Same objection.

15           THE WITNESS:  Again, so out of my area of

16    expertise.

17    BY MR. LAVIN:

18      Q    I got it.  I'm just trying to understand

19    what --

20           MR. KING:  But, Matt, to be fair --

21           (Simultaneous speaking - unreportable.)

22           MR. KING:  She has not been designated for

23    methodology and coding and all this sort of stuff.

24    She's being designated for the topics that we began

25    the deposition with.  You need to stay within those

Page 74

```
 1    topics, because she has not been prepared.  You're
 2    making -- you're making it uncomfortable.
 3    BY MR. LAVIN:
 4       Q   Are you uncomfortable, Ms. Praxmarer?
 5          MR. KING:  She's uncomfortable asking --
 6    answering questions that she has no expertise in.
 7          MR. LAVIN:  I mean, I got all day.  We -- we
 8    can -- you can talk all you want, Errol.  Keep
 9    going.
10          MR. KING:  Well, the way you're going, it's
11    going to take all day.
12          MR. LAVIN:  That's okay with me.  That's
13    fine.
14          MR. KING:  It's okay with me.  I'm not going
15    anywhere.
16          MR. LAVIN:  Same here.
17       Q   So here's my question.  Are -- appeals or
18    representatives, do they inform providers or are
19    they able to inform providers about crosswalking,
20    mapping and APCs?
21          MR. KING:  Objection; asked and answered.
22          You can answer.
23          THE WITNESS:  I do not know.
24    BY MR. LAVIN:
25       Q   And how would I -- I find out if they are
```

Page 75

1    able to do that?  By talking to them?

2            MR. KING:  Same objections.

3            THE WITNESS:  I would need to pull the

4    information to prepare that -- that level of detail.

5    I, again, had not done that prior to this

6    discussion.

7    BY MR. LAVIN:

8        Q    Okay.  But it's relevant to the appeals

9    process, correct, what -- the information that's

10   given to providers, wouldn't you agree?

11           MR. KING:  Objection.

12           THE WITNESS:  They do give a high-level

13   overview of the methodology, yes.  I do not know

14   the -- the level of detail.

15   BY MR. LAVIN:

16       Q    Could you find out the level of detail today?

17           MR. KING:  Note my objection.

18           THE WITNESS:  Probably, yes.

19   BY MR. LAVIN:

20       Q    Okay.  Could you find out the level of detail

21   whenever we take a lunch break?

22       A    I would have to look and see that.  I

23   don't -- I don't know definitively how quickly I

24   could pull that.

25   █████████████████████████████████████████████████

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 76

1

2

3      Q   So I'm going to ask that -- at the lunch

4   break, that if you're able to educate yourself on

5   the level of detail given to providers, that's

6   incredibly relevant to the topics that you've

7   been --

8           MR. KING:  She's already testified to that,

9   Matt; you know that.  She said a high overview.

10          MR. LAVIN:  Right.  And I don't -- but that's

11  a vague term, and I don't know what that means

12  exactly.

13          MR. KING:  Again --

14  BY MR. LAVIN:

15     Q   I mean, just give me an example of what

16  they're told.  I'd be good with that.

17          Do you understand?

18          MR. KING:  We understand.

19          MR. LAVIN:  Yeah.

20          MR. KING:  We're waiting for the next

21  question.

22          MR. LAVIN:  All right.  So I'm going to

23  request when we do take a lunch break, that you

24  educate yourself on that.

25          MR. KING:  You can request anything you want

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 78 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 77

1    to, Matt.

2          MR. LAVIN:  All right.  I mean, I think -- I

3    would hope that you would be able to tell me what

4    providers are told.

5          MR. KING:  I would hope you would quit

6    arguing with the witness and ask your next question.

7          MR. LAVIN:  The only person I'm arguing with

8    you, is -- is Errol, and, really, you're just

9    arguing with yourself.

10          MR. KING:  No, Matt, no.  Quit arguing with

11    the witness and --

12          (Simultaneous speaking - unreportable.)

13    BY MR. LAVIN:

14      Q    All right.  So you have no idea what level of

15    detail they're told other than it's a high level,

16    correct?

17          MR. KING:  Same objection.

18          You can answer.

19          THE WITNESS:  I have mentioned I did not

20    review that level of detail.

21    BY MR. LAVIN:

22      Q    You don't know who's on the claims resolution

23    team, correct?

24          MR. KING:  It's not true.  That's not what

25    she testified to.

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 78

1          THE WITNESS:  I do -- I -- you asked me for

2    the names of those individuals.  I -- I just can't

3    reference the names of those individuals, no.

4    BY MR. LAVIN:

5      Q    You're not aware of what training they have,

6    correct, or when the last time they were trained is,

7    correct?

8          MR. KING:  Note my objection; asked and

9    answered.

10          THE WITNESS:  I referenced that there had not

11    been a new employee for a claim resolution

12    specialist for Viant for a number of years.

13    BY MR. LAVIN:

14      Q    When is the last time that the claims

15    resolution specialist receiving any training at all,

16    if you know?

17          MR. KING:  Objection; asked and answered.

18

19

20

21

22

23

24

25    BY MR. LAVIN:

Page 79

1    Q   But when was the last time they received

2   training on the Viant methodology?

3          MR. KING:  Note my objection.

4          THE WITNESS:  I don't know that.

5   BY MR. LAVIN:

6    Q   Okay.  Would you say that every provider who

7   appeals a Viant price claim is given an explanation

8   on the methodology?

9          MR. KING:  Note my objection.

10          THE WITNESS:  I think "every" is a strong

11   word, but if a provider is willing to listen, I

12   do -- I do believe that methodology is explained,

13   yes.

14   BY MR. LAVIN:

15    Q   Okay.  So it happens -- I mean, it's a common

16   topic, a daily topic for those people, correct?

17    A   Yes.

18          MR. KING:  Objection.

19   BY MR. LAVIN:

20    Q   Okay.  And I'm just wondering when the last

21   time was they were trained on it.

22          MR. KING:  Objection.  She already answered

23   the question.

24   BY MR. LAVIN:

25    Q   And the answer is you don't know on the

Page 80

1   methodology, right?

2      A    They are a tenure -- a long-tenured staff,

3   Matt.

4      Q    I got it.

5          Has anything changed to the methodology in --

6   in ten years?

7          MR. KING:  To the Viant methodology?

8          MR. LAVIN:  That's right.

9          MR. KING:  Again, Matt --

10         THE WITNESS:  That would be --

11         MR. KING:  -- outside of her scope of her

12  deposition that she's sitting for today.  That was a

13  Sean Crandell question.

14         But she can answer.

15         THE WITNESS:  That was going to be what I

16  would ask -- I would say that would be a question

17  for Sean.

18  BY MR. LAVIN:

19     Q    Okay.  But if there was a change, would the

20  claims specialist be trained on that change?

21         MR. KING:  Objection; speculation,

22  foundation, outside the scope.

23         THE WITNESS:  Yes.  If there was a change

24  that we were introduced to, then, yes, we would

25  train the individuals on that.

Page 81

1   BY MR. LAVIN:
2      Q   Okay.  So can I take it, then, that because
3   they've not received any training in five years,
4   that there have not been any changes at all to the
5   methodology in five years?
6      A   I did not say they have not --
7          MR. KING:  Note my objection to the form of
8   the question.
9          You can answer.
10         THE WITNESS:  I did not say they have not
11  received training in five years, Matt.
12         MR. LAVIN:  Training --
13         THE WITNESS:  I just gave you examples on
14  various trainings that they receive as an example.
15  BY MR. LAVIN:
16     Q   Okay.  But I'm only talking about the Viant
17  methodology training.
18         MR. KING:  That's not your question, Matt.
19  You said "any training."
20         MR. LAVIN:  All right.  You can argue with
21  me.  Just -- it's fine.  It doesn't hurt my
22  feelings.
23     Q   If -- have they -- in the last five years,
24  because they have had no training on the Viant
25  methodology that you know of, correct?

Page 82

1     A   I would -- I cannot remember every training

2   that my team would go through in a five-year period.

3   As I mentioned, I have a lot of staff that is -- and

4   I don't oversee all of the training.  There's no way

5   that I would know that for my entire staff, let

6   alone a -- you know, a segment of that staff.

7     Q   Got it.  And -- but I think you had mentioned

8   that because there was no new employees -- and who

9   was it -- what was the name of the person you

10  mentioned in charge of training?

11    A   Arlene DeFao.

Page 83

1    ████████████████████████████████████████

2         THE REPORTER:  Counsel, can we take a break

3    when it's convenient?

4         MR. LAVIN:  Sure.  Is that the court

5    reporter?

6         THE REPORTER:  Sorry, yes.  Thank you.

7         MR. LAVIN:  Do you want to take a break right

8    now?

9         THE REPORTER:  Just when it's convenient.

10        MR. LAVIN:  Okay.  I mean, we can keep going.

11   If you need a break, I'm -- I'm fine taking a break

12   if the witness wants to.

13        THE REPORTER:  Well, we've been going for

14   almost two hours; it's been an hour and 40 minutes.

15   So just at the next good breaking point for you, I

16   would like a break.

17        MR. LAVIN:  All right.  I'm okay with taking

18   a break right now.  Are you okay, Ms. Praxmarer?

19        THE WITNESS:  Sounds good.

20        THE VIDEOGRAPHER:  Okay.  Let's go off the

21   record.  The time is 10:39 a.m., and this is then

22   end of media unit number 2.

23        (Recess.)

24        (Ms. Cascario joined the proceedings.)

25        THE VIDEOGRAPHER:  Okay.  We're going back on

Page 84

1    the record.  The time is 10:53 a.m., and this is the

2    start of media unit number 3.

3    BY MR. LAVIN:

4       Q    Okay.  Ms. Praxmarer, before we start, I'm

5    going to go back to Exhibit 5, which is the

6    interrogatories.

7           And I'm going to ask your counsel.

8           Errol, do you know -- did you guys ever do a

9    verification for these?

10          MR. KING:  I don't know.  Was there a

11   verification form?

12          MR. LAVIN:  We don't have a verification form

13   for them, so...

14          MR. KING:  Well, we'll look into that.

15          MR. LAVIN:  All right.  Let's bring up the

16   next document, which is going to be under tab 13,

17   Nicole.

18          THE WITNESS:  I'm sorry.  I didn't hear you.

19          MR. LAVIN:  I was speaking to Nicole.  So

20   Nicole is my associate who works with me.  And some

21   of these are tabbed in a binder.  So I'm going to

22   mention the tabs.  The tabs do not equate to exhibit

23   numbers, all right?

24          (Exhibit 8 was marked for identification

25           and is attached hereto.)

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 85



CONF 30(b)(6) Kathy Praxmarer                                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 86



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 87



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 88



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 89



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 90



CONF 30(b)(6) Kathy Praxmarer             July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 91



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 92

1

2

3

4

5

6

7

8

9

10

11

12

13    BY MR. LAVIN:

14      Q   I'm not -- you've got to stay with me.  I am

15    very slow, actually.  I don't understand a lot of

16    this stuff.  It's very complicated to me.  So please

17    be patient with me.  I just -- I ask.  I beg your

18    patience with me.

19          MR. KING:  Well, I'm going to object because

20    that's not true.  We both know that, Matt.  You're

21    very astute, and you know exactly what you're doing.

22          MR. LAVIN:  It's not true.

23          MR. KING:  I think you're smart.

24          MR. LAVIN:  You're the only one who says

25    that, but I appreciate it.  I'll tell my wife you

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 93

1    said that.



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 94



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 95



CONF 30(b)(6) Kathy Praxmarer                                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 96



Page 97

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

3          MR. LAVIN:  Let's go to the next exhibit.

4      I want to go under tab 9, Nicole.

5          THE WITNESS:  I don't have another exhibit

6   yet.

7          MR. LAVIN:  It takes a minute sometimes.

8          THE WITNESS:  Okay.

9          MR. KING:  It depends on the size of the

10  exhibit.

11          (Exhibit 9 was marked for identification

12      and is attached hereto.)

13  BY MR. LAVIN:

14      Q    Exhibit 9 is Bates numbers MPI 5467 through

15  MPI 5468.

16      A    Okay.

17      Q    Just take a second to take a look at that.

18      A    Okay.

19      Q    So the top email is from Jacqueline Kienzle

20  to Emma Johnson, and you're cc'd.

21          Do you see that?

22      A    I see that.

23      Q    Do you remember this email?  Do you recognize

24  this email?

25      A    I -- I didn't, no.

CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 98

1      Q    A long time ago, right?

2      A    It was.

21         MR. LAVIN:  Okay.  That was my question.

22         I'd like to jump ahead to under tab 17,

23    Nicole.

24         (Exhibit 10 was marked for identification

25          and is attached hereto.)

Page 99

1          MR. LAVIN:  So Exhibit 10 is Bates numbers

2      MPI 12110 through MPI 12111.

3          THE WITNESS:  Okay.

4      BY MR. LAVIN:

5      Q   And do you recognize this document?

6      A   I do.

7      Q   And what is this document?

8      A   This is a patient advocacy letter.

9      Q   All right.  Do you know, are there two levels

10     of patient advocacy letters that -- that go out?

11     A   There are a few patient advocacy letters

12     which would be sent.

13     Q   Okay.  Can you tell me what they are;

14     describe them for me.

15     A   Sure.  One would be at the introduction of

16     initial recommendation to United.  The second would

17     be based on if the member was being balance billed,

18     we would send a subsequent letter to advise of the

19     outcome of that attempted negotiation with the

20     provider, whether it was resolved or we were unable

21     to successfully resolve that.

22     Q   Okay.  And which one is this letter?

23     A   This is the initial letter at the time the

24     recommendation was -- was sent.

25     Q   Okay.

Page 100

1    A    So this is advising the member to contact us

2    if they've been balance billed.

3    Q    All right.  And it says -- I just have a

4    question with that first paragraph there.  It says

5    (as read):

6              "We are writing to let you know

7              that an out-of-network provider has

8              charged more than the allowable

9              out-of-network reimbursement amount,

10             which UnitedHealthcare determined

11             based upon your health benefit plan

12             for services you recently received," correct?

13   A    Yes.

14   Q    And why does it say "UnitedHealthcare

15   determined based upon your health benefit plan"?

16   Doesn't this reference a claim that was priced

17   through Viant OPR?

18   A    Because we're not a payer, nor do we have the

19   plan for the member, so we're referencing them to

20   the insurance company that they are most familiar

21   with in reviewing their claims.

22   Q    Okay.  But who determined the allowable

23   out-of-network reimbursement amount on this

24   particular claim that we're looking at?

25   A    This would have been based on the Viant

Page 101

1   repricing, so the Viant recommendation.

2       Q    Okay.  And then it says (as read):

3            "This means you might need to pay

4            the difference between the charged

5            and allowed amounts."

6            Do you see that?

7       A    I do.

8       Q    All right.  If we look down, it says (as

9   read):

10           "UnitedHealthcare contracts with

11           Viant to provide you with valuable

12           patient advocacy support in

13           situations like this.  If you get a

14           bill from your provider that's more

15           than the allowed amount," and there's a phone

16   number there, right?

17      A    Yes.

18      Q    What would happen if, you know, this member

19   who's referenced on this exhibit called

20   UnitedHealthcare instead of Viant?

21           MR. KING:  Note my objection; speculation,

22   lack of foundation.

23           You may answer.

24           THE WITNESS:  I would actually ask United

25   that question.

Page 102

1  BY MR. LAVIN:

2      Q   Okay.  Is there ever a situation where if the

3  member -- say this member who's referenced here --

4  called the toll-free number and said, I want to

5  speak to United, could Viant patch them through to

6  United?

7          MR. KING:  Note my objection.

8          You can answer.

9          THE WITNESS:  No.  We don't forward phone

10  calls.

11  BY MR. LAVIN:

12     Q   Okay.  Will you give out a phone number for

13  United if the member wishes to call United?

14     A   We would -- we would ask them to refer to the

15  phone number that's listed on their insurance card.

16     Q   Based on your experience, does this -- if

17  this particular member is balance billed and wishes

18  to appeal, is there any alternative but for them to

19  call Viant?

20          MR. KING:  Note my objection.

21          You can answer.

22          THE WITNESS:  Well, they would receive this

23  letter that advises them to call Viant, but they

24  would also have their -- their insurance card with a

25  phone number for their insurance carrier, as well.

Page 103

1    BY MR. LAVIN:

2        Q    Okay.  In your experience, would -- if they

3    called United, would United negotiate this claim?

4            MR. KING:  Note my objection; speculation.

5            THE WITNESS:  No, not that I'm aware of.

6    BY MR. LAVIN:

7        Q    So this member's only option is to call

8    Viant, correct, and see if they can appeal it?

9            MR. KING:  Objection; asked and answered.

10           THE WITNESS:  As I mentioned, they can

11   contact Viant through this phone number or they have

12   their insurance carrier's phone number that they

13   would be familiar with, with any claim payment.

14   BY MR. LAVIN:

15       Q    Right.  But I think you said that you're not

16   aware of United negotiating Viant-priced claims,

17   right?

18       A    Correct, but you asked if the member can

19   contact anybody and --

20       Q    Well, sure.  They can call their mother, too,

21   right?

22       A    Sure.

23       Q    But as a practical matter, if they're

24   actually seeking to have the claim adjusted or

25   appealed, they got to talk to Viant, right?

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 104

1          MR. KING:  Asked and answered.

2          You can answer again.

3          THE WITNESS:  If they're -- if they have

4    received a balance bill, then they would call Viant.

5    We do not make adjustments on claims.  We refer our

6    recommendations back to United, and they would then

7    adjust any claim payments.

8    BY MR. LAVIN:

9      Q    Okay.  So if this member were to call up and

10   they were successful in getting a claim adjusted and

11   more paid on the claim, what would be the process,

12   the next step on that?

13     A    I'm not sure I understand that question.

14

15

16

17

18

19

20

21

22

23

24

25



Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 107 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 106



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 107



Page 108

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   BY MR. LAVIN:



Page 109

1      Q   Got it.  And that's what the claims

2   resolution specialists do, right?  They -- they're

3   good at dealing with people, providers; that's what

4   they do all day, right?

5      A   I'm sorry.  You -- you cut out.  They -- they

6   do what with the providers?

7      Q   I mean, they use their experience to try and

8   negotiate.  And the negotiation can take a lot of

9   different turns, right?

10     A   Absolutely.

11

12

13

14

15

16

17

18

19

20

21

22

23     Q   So do -- are -- providers usually have one

24   claim specialist who's their -- their contact,

25   claims resolution specialist?

Page 110

1       A    No, they don't.

2       Q    It could be any of those eight?

3       A    It could.

4       Q    So like here, there's a provider, Summit

5   Estate Recovery Center.  Have you heard of Summit

6   Estate Recovery Center before?

7       A    I have.

8       Q    Okay.  And why have you heard of them before?

9       A    As part of this complaint.

10      Q    All right.  Outside of this case, have you

11  heard about Summit Estate Recovery Center?

12      A    No, I have not.

13      Q    Do you know where Summit Estate Recovery

14  Center is located?

15      A    I believe it's on the East Coast -- I'm

16  sorry, West Coast.

17      Q    Okay.  Do you know where on the West Coast?

18      A    I don't recall.

19      Q    Okay.  So Summit Estate Recovery Center, they

20  don't have one claims resolution person assigned to

21  them, for example, right?

22      A    Correct.

23

24

25

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 111



Page 112



CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 113



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 114



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 115



Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 117 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 116



Page 117



Page 118

6        Q    Okay.  So let's suppose that a negotiator has

7   reached, through the portal, a -- an agreement with

8   a provider to accept a negotiated rate on a claim, a

9   readjustment of that claim -- a readjudication,

10  rather, of that claim.  What happens next?

11            MR. KING:  Object to the form.

12            You can answer.

13            THE WITNESS:  So whether it was via the

14  portal or a fax, we would receive a signed agreement

15  or a digitally signed agreement from the provider

16  contact that indicated they were authorized to sign

17  at that acceptable level.  We would then close the

18  claim, and then the outcome of that would be

19  returned back to United.

20  BY MR. LAVIN:

21       Q    Okay.  And does United, then, pay that

22  amount?

23       A    United receives that --

24            MR. KING:  Note my objection.

25            You can answer.

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 119

1          THE WITNESS:  United receives that as a

2     recommendation so that the payment would be in

3     United's side.

4     BY MR. LAVIN:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19     BY MR. LAVIN:

20        Q    Okay.  So in that scenario, you would contact

21     United, or somebody on your team, and they'd say, we

22     have a provider calling, they negotiated something,

23     they signed something, why haven't you paid it?

24          MR. KING:  Note my objection; foundation,

25     outside the scope.

Case 4:20-cv-02254-YGR  Document 323-9  Filed 07/16/23  Page 121 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 120

1          You can answer.

2          THE WITNESS:  We -- we would send that to

3    them to advise that they hadn't been paid according

4    to the negotiated agreement.

5    BY MR. LAVIN:

6      Q    Okay.  And does -- in that scenario, does

7    United send something back to you about what to tell

8    the provider?

9          MR. KING:  Note my objection.

10         You can answer.

11         THE WITNESS:  They would either advise it was

12   being paid, it was paid or we could refer that --

13   that provider back to United.  The agreement clearly

14   states that we are not a payer, so that is also, you

15   know, something the provider's familiar with.

16         So if they are asking information on payment,

17   they're not -- it's not uncommon that they would go

18   to United for that information.

19   BY MR. LAVIN:

20     Q    But other than that scenario where United is

21   not paid a negotiated Viant rate on a claim, really,

22   the provider is only -- you've kind of gone dark

23   there.  Are you -- maybe -- yeah.

24         So other than that scenario, you know, the

25   provider's really only route for negotiation or

Page 121

1   further payment on a claim is -- is through Viant,

2   correct?

3       A    Their route for negotiation if they're

4   balance billing the member is through the phone call

5   that we would make either based on the call they

6   made to us or the member made to us.  No different

7   than I mentioned with the member, the provider also

8   has the capability to go to United.  They would have

9   that same information from a member's insurance card

10  that they presented at the time of treatment.

11      Q    But in your experience, is United able to do

12  a negotiation or an appeal on a Viant-priced claim

13  from a provider?

14          MR. KING:  Note my objection; asked and

15  answered.

16          You can answer.

17          THE WITNESS:  Negotiation would generally be

18  within Viant.  But when you men- -- I believe your

19  question talked about an adjustment.  That would be

20  with United.

21  BY MR. LAVIN:

22      Q    Yeah, so let's, you know, put aside the --

23  the negotiated adjustment.  I'm talking about that

24  initial call, right?  If a provider, without having

25  spoken to Viant first, was to call United and say, I

Page 122

1  have received this payment related to this member,

2  I'd like to appeal that --

3          MR. KING:  Objection --

4  BY MR. LAVIN:

5     Q   -- for a Viant-priced claim, do you know what

6  would happen?

7          MR. KING:  Objection; outside the scope,

8  speculation, the question directed to United,

9  foundation.

10         You can answer.

11         THE WITNESS:  United also has the capability

12  to submit that appeal to us.  They have a portal

13  that they can -- they can submit that.

14  BY MR. LAVIN:

15    Q   So if United received a call about a

16  Viant-priced claim from a provider, it could -- it

17  would send a note to Viant through the portal?

18    A   They could.  I don't know what their specific

19  procedures are, but that is -- that is capability

20  that they have, yes.

21    Q   Okay.  What is that portal called?

22    A   A client portal.

23    Q   Just the client portal?

24    A   Yes.

25    Q   And --

Page 123

1      A    All of our clients have access to that.  It's

2  not just specific to United.

3      Q    And if a -- if United makes -- you know,

4  enters something into the client portal about we got

5  a call from this provider about this claim, who

6  receives that information?  Is it the client [sic]

7  resolution specialists?

8      A    No.  It would first start with the patient

9  advocacy department, so it would go to a queue that

10  is managed within the patient advocacy team.

11         MR. LAVIN:  All right.  So let's go to the

12  next exhibit, which, Nicole, is under tab 20.

13         (Exhibit 11 was marked for identification

14         and is attached hereto.)

15         MR. LAVIN:  Exhibit 11 has Bates numbers

16  MPI 12108 through MPI 12109.

17      Q    And do you recognize what this document is?

18      A    It is a cover sheet and a agreement that is

19  sent to the provider.

20      Q    And this -- we talked about this a few

21  minutes ago.  Is -- who is Elizabeth Vogele, if you

22  know?

23      A    That is one of the claim resolution

24  specialists.

25      Q    So it says "senior claims resolution

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 124

1    specialist II."

2           Are there various titles within the claims

3    resolution specialists?

4       A    There are.

5       Q    Do you know what the highest title would be?

6       A    This would be the highest title, senior claim

7    resolution specialist II.

8       Q    And this appears to be a fax.

9           Are you able to tell looking at this whether

10   this is an initial offer?

11      A    I'm not able to tell.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 125



CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 126



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 127



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23    BY MR. LAVIN:
24        Q    I mean, do you know the circumstances of
25    every single client whose claims are paid by Viant

Page 128

1    OPR?

2          MR. KING:  Note by objection; argumentative.

3          THE WITNESS:  Certainly never would say yes

4    to an every question, no.

5    BY MR. LAVIN:

6      Q   Right.  But you say, "They all made that

7    choice."  I mean, you don't know that for a fact or

8    what the circumstances were behind a particular

9    patient, right?

10         MR. KING:  Objection.

11         You can answer.

12         THE WITNESS:  Correct.

13   BY MR. LAVIN:

14     Q   Okay.  So let's go to -- well, actually, just

15   stay on that one document.  If we could just go back

16   to page 2109.  It says (as read):

17             "Provider agrees not to balance

18             bill patient or patient's family

19             (except for deductible, coinsurance,

20             and non-covered items...)."

21         Why does it say "patient's family" on there?

22     A   It may be for a minor, as an example.

23     Q   Okay.  And is that, you know, a standard

24   protocol?  So any provider that accepts a negotiated

25   rate from MultiPlan agrees in exchange for that new,

Page 129

1  you know, rate, not to balance bill the member?

2     A   Correct.  That would be standard language on

3  the offer term.

4     Q   What if United does not pay the negotiated

5  amount?

6        MR. KING:  Note my objection; calls for

7  speculation.

8        You can answer.

9        THE WITNESS:  Then they didn't pay the

10 negotiated amount.

11 BY MR. LAVIN:

12    Q   So the provider would be free to balance

13 bill, correct?

14    A   That would be, again, a United question based

15 on the payment.

16    Q   Okay.

17    A   This agreement is specifically if the

18 provider signs and United has accepted the

19 recommendation.

20       MR. LAVIN:  All right.  Let's take a look at

21 the exhibit under tab 21.

22       (Exhibit 12 was marked for identification

23       and is attached hereto.)

24       MR. LAVIN:  Exhibit 12 is Bates numbers

25 MPI 12112 through MPI 12113.

Page 130

```
 1          THE WITNESS:  Okay.
 2    BY MR. LAVIN:
 3      Q    All right.  And do you recognize this
 4    document?
 5      A    Yes.
 6      Q    And what is this document?
 7      A    This is another patient advocacy letter that
 8    is sent when we are unable to successfully
 9    negotiate.
10      Q    And do you know if this is the format of the
11    letter currently in use at Viant?
12      A    Based on the 2019 date, I would suggest that
13    it is not.  I believe there have been subsequent
14    changes to this letter since that time.
15      Q    Do you have any role in the drafting of the
16    language used in PAD letters?
17      A    No, not generally.
18      Q    Does Viant keep copies of all PAD letters?
19      A    We would retain those, yes.
20      Q    Does Viant maintain -- strike that.
21           How does Viant keep those records?  Are they
22    associated with a particular claim electronically?
23      A    They're maintained electronically, and, yes,
24    they're associated to a claim.
25      Q    So are they associated -- is that claim,
```

Page 131

1    then, associated to a member?  Do you understand my

2    question?

3        A    The claim would be based on how that claim

4    was received.  So, yes, it would be specific to a

5    member and a provider and a client.

6        Q    Does Viant keep records of particular members

7    and then I could go into that member and look up all

8    the claims and all the PAD letters?

9        A    No.

10       Q    So it's done on a per-claim or claim-line

11   basis; is that right?

12       A    It's on a claim basis.

13       Q    And earlier, we discussed Viant keeping phone

14   records for about six months.

15            Do you remember that?

16       A    Yes.

17       Q    Does that apply to the claims resolution

18   specialists, also?

19       A    It does.

20       Q    And is there any way -- if I was to go look

21   up a -- you know, a specific claim, would it have a

22   link to the recording related to that --

23       A    No.

24       Q    -- any recordings that related to that claim?

25       A    It does not.  It's -- it's a -- not that

CONF 30(b)(6) Kathy Praxmarer            July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 132

1   easy.

2       Q    How would you look it up?

3            MR. KING:  Note my objection to form.

4            You can answer.

5            THE WITNESS:  There's an index file that

6   requires a pretty detailed search.

7   BY MR. LAVIN:

8       Q    What information would you need to conduct

9   that search?

10      A    I don't know that definitively.  I believe it

11  would be like the date and time of original phone

12  call.  But beyond that, I would have to ask our --

13  our technology team that maintains that.

14      Q    Do you ever listen to those recordings as

15  part of your job at Viant?

16           MR. KING:  Note my objection.

17           You can answer.

18           THE WITNESS:  Very rarely.

19  BY MR. LAVIN:

20      Q    When -- now, you know, I see the top of this

21  letter that we're looking at, Exhibit 12, it says

22  "UnitedHealthcare" and "Viant" on the top, right?

23      A    Yes.

24      Q    And it has an address, Salt Lake City, Utah.

25           Do you see that?

Page 133

1      A    I do.

2      Q    Do you know if that's a Viant address or a

3  UnitedHealthcare address?

4      A    That's a Viant address.

5      Q    Is that a physical address?

6      A    It is.

7      Q    Do you know if, when a negotiation has

8  failed, whether there is anything that's issued from

9  UnitedHealthcare to the member?

10          MR. KING:  Note my objection.

11          You can answer.

12          THE WITNESS:  I don't know that.

13  BY MR. LAVIN:

14     Q    Do -- when the negotiation has failed, is

15  there anything further that is issued by Viant to

16  the provider?

17     A    No.  They would be aware of that by declining

18  our negotiation efforts.

19     Q    Who at Viant is responsible, has ultimate

20  authority for PAD letters?

21          MR. KING:  Object to form.

22          You can answer.

23          THE WITNESS:  PAD letters within Viant would

24  be, really, a collaborative approach.  So it would

25  involve our marketing team, our legal team and

Page 134

1    partnership between both MultiPlan, Viant or -- and

2    the client.

3          MR. LAVIN:  So I'm going to -- let's bring up

4    the next exhibit.

5          So it's under tab 29, Nicole.

6          (Exhibit 13 was marked for identification

7       and is attached hereto.)

8          MR. LAVIN:  Exhibit 13 is Bates numbers

9    MPI 2152 through 2154.

10   Q    Can you take a minute to look at that.

11   A    Sure.

12        Okay.

13   Q    And this is an email.  The top email is from

14   Mark Edwards to Susan Mohler.  It's dated 5/27/2020.

15   Cc'd is Pam Walker.

16        Do you know who Pam Walker is?

17   A    Pam works in our marketing department.

18   Q    And then there's Mark Edwards to Susan Mohler

19   saying (as read):

20          "JR Moss has the oversight of PADs

21          for Viant, so send everything to him

22          and I'd cc Susan Dominy."

23        And who is Susan Dominy?

24   A    Susan Dominy was a former AVP of operations

25   for Viant.

Page 135

1    Q   And do you know if JR Moss has oversight of

2    PADs for Viant?

3    A   JR had historically ran the mailroom

4    operation for patient advocacy, so he would

5    generally be the recipient for coordination of just

6    review of the template.  Did it fit the envelope

7    appropriately?  And then just coordinating, you

8    know, his signoff with our IT team from a technical

9    perspective.

10   Q   Okay.  So he would keep the most -- whatever

11   the most recent version is of the PAD letter to make

12   sure that's the one that's getting sent out, right?

13   A   No, not -- the most recent version of the PAD

14   letters would all be maintained in our -- our IT

15   organization and through our system.

16        Through this, where it says "JR has oversight

17   of PADs," we have a full mailroom operation that

18   mails the patient advocacy letters that JR had

19   oversight of.

20        So whenever a change is made to a letter, we

21   want to make sure the barcode is accurate, that the

22   address fits in the -- in the envelope, either the

23   return address or the address of the member fits in

24   the envelope appropriately.  So JR would have had

25   oversight for that at this time.

Page 136

1    Q    Okay.  And if we look down, it says -- the

2    bottom of it says -- from Mark Edwards to Susan

3    Mohler, it says (as read):

4            "Hi Susan, United is requesting we

5            update the Viant PADs to mirror the

6            language in the DiS letters as much

7            as possible."

8            Is DiS referring to DataiSight?

9    A    Yes.

10   Q    And DataiSight uses a different PAD letter,

11   correct?

12   A    It -- yes.  Based on this timing, that's what

13   it says.

14   Q    Do you know if they use different ti- --

15   different PAD letters now, or is it the same PAD

16   letter?

17           MR. KING:  Object to form.

18           You can answer.

19           THE WITNESS:  I don't know the exact verbiage

20   in each letter.

21   BY MR. LAVIN:

22   Q    And do you know what changed their reference

23   in here?

24   A    Outside of what I'm reading, adding a

25   disclaimer that DataiSight is not a payer, so it

Page 137

1   looks like they're looking to replicate that.

2          MR. LAVIN:  Let's bring up Exhibit -- the

3   next exhibit under tab 31.

4          (Exhibit 14 was marked for identification

5           and is attached hereto.)

6          MR. LAVIN:  Exhibit 31 -- I mean -- excuse

7   me.

8          Exhibit 14, MPI 6891.

9          THE WITNESS:  Okay.

10  BY MR. LAVIN:

11     Q    All right.  Do you recognize this email?

12     A    I do.

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 139 of 244
CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 138



Page 139



Page 140



CONF 30(b)(6) Kathy Praxmarer                 July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 141



Page 142



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 143



Page 144

16          MR. LAVIN:  All right.  Let's go to -- the

17  next document I want to show you is under tab 24.

18  So it will be Exhibit 16.

19          (Exhibit 16 was marked for identification

20       and is attached hereto.)

21          MR. LAVIN:  Exhibit 16 is Bates numbers

22  MPI 1680 through MPI 1685.

23     Q   You can take a second to flip through it.

24     A   Sure.

25          Okay.

Page 145

1    Q   All right.  I want to go to page 1684, which

2  is like the second from the back.

3    A   Okay.

4    Q   You know, this is talking about a provider.

5  That provider is Summit Estate, right?  Would you

6  agree with me?

7    A   Yes.

8    Q   Some appeals and some attempts at

9  negotiation, correct?

10    A   Well, this page is asking -- is stating that

11  the provider indicated they had a negotiation

12  agreement, and it looks like United is requesting

13  that information.

14    Q   And it says they have a negotiation contract

15  with MultiPlan.  What does that mean?  Do you have

16  any understanding what that means when you look at

17  that?

18         MR. KING:  Note my objection.

19         You can answer.

20         THE WITNESS:  It could mean many different

21  things.  It could mean they have a network contract.

22  It could mean that they have a global agreement,

23  which would be an -- an agreement that was managed

24  within our negotiation team.  I -- you know, I would

25  be assuming based on that statement.

Page 146

1    BY MR. LAVIN:

2        Q    What is a global agreement, global contract?

3        A    So when we are -- when a provider is willing

4    to accept an agreement or a specific discount rate

5    on eligible submitted claims, then we may ask them

6    to sign a global agreement that would apply to

7    future eligible submitted claims.

8        Q    So that would just apply to all claims in the

9    future for a given period of time for that

10   particular code, right, from that provider?

11       A    No.  There's -- there wouldn't be a code

12   referenced, and it wouldn't be applied to all.

13   There's -- it's applied to any eligible submitted

14   claim in the future --

15       Q    So --

16       A    -- so there's no specified detail such as you

17   referenced.

18       Q    Okay.  So -- well, if they don't specify a

19   service code, how does that work?  How do they --

20       A    Again, I'm mak- --

21           MR. KING:  Objection as to form.

22           You can answer.

23           THE WITNESS:  I'm making an assumption.  If

24   this is a global agreement, then it would be a

25   standard discount, X percent off of billed charges.

Page 147

1    BY MR. LAVIN:

2       Q    Okay.  If a provider has a contract with

3    MultiPlan, right, does that impact whether or not a

4    claim gets priced by Viant OPR?

5            MR. KING:  Note my objection; outside the

6    scope.  That's a networks question not relevant to

7    this litigation at all.

8            But you can answer it.

9            THE WITNESS:  It would depend on what you're

10   referring to, but, generally, if it's a network or a

11   global agreement, it does not mean that that is the

12   only service.  They -- they can still be repriced

13   within Viant.

14   BY MR. LAVIN:

15      Q    Okay.  Do you know if providers ever call up

16   Viant and other patient advocacy or claims

17   resolution and, you know, they say, we've -- listen,

18   I've got a contract with MultiPlan; how come my

19   claims aren't being priced under that MultiPlan

20   contract?  Is that something that happens?

21           MR. KING:  Object to the hypothetical, calls

22   for speculation, foundation.

23           You can answer.

24           THE WITNESS:  That could certainly happen.

25   BY MR. LAVIN:

Page 148

1    Q   Are Viant representatives trained to respond

2   to that situation?

3    A   They do not have access to that -- any of

4   that information.  So if the provider is asking for

5   research based on that, we would refer that to

6   another team within -- within MultiPlan.

7    Q   Okay.  Does -- are the Viant representatives

8   trained to say we're a separate company from

9   MultiPlan?

10       MR. KING:  Note my objection to form.

11       You can answer.

12       THE WITNESS:  They would state that because,

13  again, they don't have access to any of that

14  information on the MultiPlan contract that you're

15  referring to.

16  BY MR. LAVIN:

17   Q   Okay.  But -- so they are trained to say we

18  are Viant, we are a separate company from MultiPlan,

19  correct?

20   A   No.  They may say that they are Viant.  They

21  do not have access to MultiPlan contract details.

22  So that could be part of their response if they're

23  asked by -- that information by a provider.

24   Q   Do providers occasionally call up and demand

25  to have their MultiPlan contract rates enforced?

Page 149

1          MR. KING:  Note my objection; outside the

2     scope of the witness's deposition.

3          THE WITNESS:  I wouldn't know that.  I -- I

4     assume that could happen.

5     BY MR. LAVIN:

6        Q   Do you ever see MultiPlan contracts in your

7     duties?

8        A   Network -- network contracts?  No, I don't.

9          MR. KING:  That's not what she does.

10    BY MR. LAVIN:

11       Q   Do you know what a benchmark price is?

12         MR. KING:  Objection; relevancy.

13         THE WITNESS:  Yes, I do.

14    BY MR. LAVIN:

15

16

17

18

19

20

21

22

23

24

25

Page 150



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 151



Page 152



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 153



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 154

13    Q    And the provider, of course --

14         MR. KING:  Matt, when you get to a stopping

15    point, can we take a break?  I just lost connection

16    to the network.  This could take a while to get

17    booted back up here.

18         MR. LAVIN:  All right.  Let's take a break.

19    Can we go off -- off the --

20         THE VIDEOGRAPHER:  Okay.  Let's go off the

21    record.  The time is 12:41 p.m., and this is the end

22    of media unit number 3.

23         (Recess.)

24         THE VIDEOGRAPHER:  Okay.  We are going back

25    on the record.  The time is 1:11 p.m., and this is

Page 155

1    the start of media unit number 4.

2    BY MR. LAVIN:



CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 156



Page 157



CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 158



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 159

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    BY MR. LAVIN:

22        Q    Got it.  All right.

23            Do you have any -- do you ever review in your

24    role revenue from MultiPlan's pricing solutions?

25        A    I don't review revenue.

Page 160

1    Q    Okay.  Is any part of your compensation based

2    on revenue from the Viant pricing solution?

3    A    It is not.

4    Q    So if I showed you some revenue reports,

5    that's not something you could identify?

6    A    I wouldn't, no.

7    Q    Do you ever look at -- do you know what a

8    savings report is?

9    A    I do know a savings report, yes.

10   Q    What is a savings report?

11   A    I would term that as a report that summarizes

12   the savings that we were able to achieve.

13   Q    Do you review savings reports in your role at

14   MultiPlan?

15   A    I do.

16   Q    Do you know what a savings trend is?

17   A    I can speak to what I would reference that,

18   but I'm not sure what you might be referencing.

19        MR. LAVIN:  Okay.  Let's bring up the

20   document, Nicole.  It's Bates -- I think it's -- oh,

21   it's tab 16.

22   Q    And while we're doing that, is there

23   something also called an appeals report?

24   A    Sure.

25   Q    What is an appeals report?

Page 161

1      A    It, again, could reference many things.  It

2   could reference open and/or closed appeals and their

3   corresponding outcomes.

4      Q    Is that -- is that a daily report or a

5   monthly report, weekly report?

6      A    It depends on the context in which you're

7   asking.

8      Q    Is it just a -- is it a report you could pull

9   up at any time and make it up-to-date, the appeals

10  report?

11     A    I can pull appeal information ad hoc, yes.

12     Q    And you could, like, pull all United appeal

13  report information for the past, like, month or two,

14  right?

15     A    Yes.

16     Q    Do you know how many appeals United had for

17  Viant price claims last month, approximately?

18     A    I don't know volume.  I can tell you across

19  the product what our general appeal rates are, but I

20  don't know by -- by United.

21         (Exhibit 17 was marked for identification

22      and is attached hereto.)

23  BY MR. LAVIN:

24     Q    Okay.  Let's go -- so Exhibit 17 is MPI 9603.

25     A    So this opened in Excel?

Page 162

1      Q     Uh-huh.

2      A     Okay.

3            MR. KING:  Matt, could you be so kind as to

4      tell me where a savings report and testimony about a

5      saving reports falls within any of the topics she's

6      been designated for?

7            MR. LAVIN:  Well, I will mention this.

8            United produced -- I mean -- excuse me.

9      MultiPlan produced a lot of documents to us late in

10     the night on the last night of discovery and after

11     all other MultiPlan witnesses had been deposed.  And

12     this is the last remaining MultiPlan witness.  So if

13     she does not recognize the document, she doesn't

14     recognize the document.

15           MR. KING:  All right.  Well, then, let me

16     respond.  Plaintiffs produced documents after all

17     the plaintiffs had been -- had been deposed and --

18     and so it's been the same thing and we've all been

19     under the same schedule.  We all knew that this was

20     going to be the case.

21           But still, nonetheless, Matt, what -- the

22     issue really is fairness, okay?  She's been

23     designated for certain topics.  I've spent time

24     preparing her for those topics.  She has not been

25     designated for savings report.  It's not even

Page 163

1   mentioned in -- in her -- in the deposition notice.

2          So it's just not -- it's just not fair to

3   subject her to questions about topics that she's not

4   been designated for regardless of discovery, what's

5   happened in discovery.  I mean...

6          Do you understand that?

7          MR. LAVIN:  Yeah.  So I'm going to ask her if

8   she recognizes the document, and if she does, she

9   does; if she doesn't, she doesn't.

10         MR. KING:  I -- I get it, but, you know, this

11  is not a fact deposition.  And so the door is not

12  open for anything you might come across in your --

13         (Simultaneous speaking - unreportable.)

14         MR. LAVIN:  Savings -- savings are related to

15  appeals.

16         MR. KING:  That's not a topic, and you know

17  it.  It's 8 what?  Point it out to me.  I -- I must

18  be stupid.  Point it out to me where it is on the

19  topics.

20         MR. LAVIN:  Appeals reference savings.

21  Appeals and rates of appeals and successful appeals

22  reference total savings.

23         MR. KING:  Where -- the only topic is

24  topic 19, policies and procedures for inquiries and

25  appeals, okay?  It doesn't fall within there.

Page 164

1    You -- you can -- you can relate everything to

2    everything under --

3          MR. LAVIN:  That's why --

4          MR. KING:  -- under your view of the world --

5          MR. LAVIN:  Right.

6          MR. KING:  -- but that's just not how a

7    corporate deposition works.

8    BY MR. LAVIN:

9      Q    Do you recognize this document?

10     A    No.

11     Q    There you go.  All right.  We can take this

12   document down.

13         And this is not a document you would ever

14   look at in the course of your duties at MultiPlan,

15   right?

16     A    No.

17         MR. LAVIN:  Well, then, I have another

18   document you're going to love under tab 14.

19         (Exhibit 18 was marked for identification

20       and is attached hereto.)

21         MR. LAVIN:  So Exhibit 18 is MPI 12799

22   through 12800.

23     Q    If you look down, it says -- the second email

24   down is from Karen Beckstead to Tom Ralston.

25         Who is Tom Ralston?

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 165

1      A    Tom was previously in our healthcare

2   economics team.

3      Q    Okay.  So he is someone that had involvement

4   with the underlying methodology used to price Viant

5   claims?

6      A    Correct.

7      Q    All right.  Do you know what APC 5823 is?

8      A    I don't.

Page 166



Page 167

MR. LAVIN:  All right.  Let's go -- we can
take that exhibit down.

Q    Have you ever heard of the -- are you aware
of any special appeals processes or policies or
guidelines to apply specifically to behavioral
health claims at Viant?

A    No, I'm not.

Q    Have you ever heard of the Parity Act?

A    I have.

Q    What is the Parity Act, if you know?  You're
not a lawyer, I understand.

A    To treat mental health as you would any other
claim.

Q    Do you know if MultiPlan has ever conducted
an analysis to determine whether behavioral health
claims are priced in the same manner as medical

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 168

1    claims?

2            MR. KING:  Same objections as before, outside

3    the scope, lack of foundation.

4            THE WITNESS:  I don't know.

5    BY MR. LAVIN:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 169



Page 170

19          Let me check my notes.  I don't think I have

20     any more questions, really.  Can we take three

21     minutes?

22          MR. KING:  We'll take three minutes.

23          THE VIDEOGRAPHER:  Let's go off the record.

24     The time is 1:30 p.m., and this is the end of media

25     unit number 4.

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 171

1          (Recess.)

2          THE VIDEOGRAPHER:  Okay.  We're going back on

3    the record.  The time is 1:37 p.m.  This is the

4    start of media unit number 5.

5          MR. KING:  You're nothing but a big tease,

6    Matt.

7          MR. LAVIN:  Well, that's why we took the

8    break, just to make sure.

9      Q    So I have a question.  You know, I -- about

10   the -- I know that Viant prices ASC claims, right?

11     A    Yes.

12     Q    And it also prices dialysis claims, right?

13   Is that correct?

14     A    I -- I don't recall.

15

16

17

18

19

20

21

22

23

24

25

Page 172

BY MR. LAVIN:

    Q    And in that situation -- I just want to make
sure I'm clear -- the next step in the process is
for the claim specialist, resolution specialist to
reach out to the provider, correct?

    A    Correct.

    Q    And that would usually happen within two or
three days, correct?

    A    Generally, a few days, yes.

    Q    Is there any way for a member or a provider
to contact MultiPlan or Viant before a claim has
been priced to determine what the pricing will be on

Page 173

1  a future claim?

2          MR. KING:  Note my objection.

3          But you can answer.

4          THE WITNESS:  No.  They -- they wouldn't --

5  no.

6  BY MR. LAVIN:

7      Q   And -- and do you understand why I'm saying,

8  well, could a provider say, hey, I've -- you know,

9  I'm concerned this might be priced by Viant or I

10  feel this might be priced by Viant?  I'm contacting

11  you.  Here's the code.  Here's the date of service.

12  Here's the group member for the United member.  Are

13  you able to give me an estimate what the pricing

14  will be?

15          MR. KING:  Same objection.  Outside the

16  scope.

17          You can answer if you can.

18          THE WITNESS:  No, we don't have that.

19  BY MR. LAVIN:

20      Q   Can't have that capability?

21      A   We don't have that, right.

22      Q   You can only price actual claims that are

23  sent through Viant, right?

24          MR. KING:  Object -- object to form.

25          You can answer.

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 174

1          THE WITNESS:  We do not offer that service

2     for a provider or a member to call us to give that

3     information.

4     BY MR. LAVIN:

5        Q   Okay.  Do you think that would be helpful

6     information for a member or provider to know before

7     receiving services?

8          MR. KING:  Note my objection.

9          You can answer.

10          THE WITNESS:  Could be.

11     BY MR. LAVIN:

12        Q   Okay.  But you don't offer it, correct?

13        A   Correct.

14          MR. KING:  Asked and answered.

15          MR. LAVIN:  All right.  We're going to play

16     one more exhibit.  And Nicole is going to -- she's

17     handling it.

18

19

20

21

22

23

24

25

Page 175



Page 176



Page 177



CONF 30(b)(6) Kathy Praxmarer                July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 178



Page 179



Page 180



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 181

18    BY MR. LAVIN:

19        Q    Sure.  Follow me on this.

20            So a lot of -- you only price out-of-network

21    claims, correct?

22        A    That's all we're referencing here, yes.

23        Q    In your experience, do out-of-network

24    providers tend to be smaller providers than, say,

25    big in-network hospital systems?

Page 182

1          MR. KING:  Objection; lack of foundation.

2          THE WITNESS:  No.  I would disagree with

3    that.

4    BY MR. LAVIN:

5       Q   Do you know some large out-of-network

6    facilities?

7          MR. KING:  Same -- same objection.

8          You can answer.

9          THE WITNESS:  We do have large facilities

10   that are out of network, as well, yes.

11   BY MR. LAVIN:

12      Q   Okay.  And I -- I suppose there -- there

13   could be a couple, but in general, out-of-network

14   pro- -- isn't it possible there's out-of-network

15   providers that don't have the resources because of

16   their size to appeal and negotiate every single

17   Viant-priced claim?

18         MR. KING:  Objection; outside the scope of

19   her deposition she's been designated for, calls for

20   speculation, lack of foundation.

21         You can answer.

22         THE WITNESS:  They would -- I would -- a

23   provider would generally still invoice or balance a

24   member in that scenario by which we would then hear

25   from the member if the provider didn't have

Page 183

1    resources.

2          MR. LAVIN:  Okay.

3          THE WITNESS:  They're generally processing

4    the EOB or the EOP that they're receiving and seeing

5    the payment that was made.

6    BY MR. LAVIN:

7      Q   Okay.  But you'll agree with me that probably

8    not every provider has the resources to make

9    multiple phone calls to Viant on each and every

10   Viant-priced claim?

11         MR. KING:  Objection; lack of foundation,

12   beyond the scope of the deposition.

13         THE WITNESS:  So they would only have to make

14   one call on a claim to initiate that.  So they

15   wouldn't have to make subsequent calls on each

16   claim.

17   BY MR. LAVIN:

18

19

20

21

22

23

24

25

Page 184



CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 185



22        MR. LAVIN:  I don't have any further

23    questions.

24        MR. KING:  Does United have any questions?

25        THE REPORTER:  Could I get copy and rough

Page 186

1   orders on the record, please.

2        MR. SIGLER:  Give me a -- hey, Errol, give

3   me --

4        MR. KING:  Hold on.

5        MR. SIGLER:  -- give me one minute --

6        MR. KING:  Okay.

7        MR. SIGLER:  -- okay?

8        MR. KING:  Sure.

9        Hey, Matt, while -- while the other Matt --

10       MR. LAVIN:  Do we want to go off?  Because --

11       THE VIDEOGRAPHER:  Do you want to go off the

12  record?

13       MR. KING:  No, no, no, no, no.  I want to

14  leave it on.

15       This last recording, it's going to be

16  attached as an exhibit?

17       MR. LAVIN:  Nicole, can you upload it?

18       MS. WEMHOFF:  Sure thing.

19       (Exhibit 19 was marked for identification

20       and is attached hereto.)

21       MR. KING:  And my second question is, where

22  did the recording come from?  Did you issue a

23  subpoena to -- I think it's PCI Westlake Center?

24       MR. LAVIN:  United did.

25       MR. KING:  Okay.  United did?  Okay.  So it

Page 187

1   was produced in response to that subpoena, correct?

2         MR. LAVIN:  Yes, I mean, that's my

3   understanding.  We got it from United.

4         MR. KING:  And you don't represent PCI

5   Westlake Center, do you?

6         MR. LAVIN:  I do not.

7         MR. KING:  Okay.  All right.  Thanks.

8         And while we wait on Matt, I will state that

9   I have no questions for the witness.

10        MR. LAVIN:  Is it hot in Naperville right

11  now?

12        MR. KING:  It's hot in this office because

13  over the weekend, there was a storm and, apparently,

14  the AC unit got struck and so --

15        MR. LAVIN:  Got struck by lightning?

16        MR. KING:  I believe so.  I think that's --

17  that's what we were told, anyway.  So --

18        THE WITNESS:  It was actually a small tornado

19  that hit nearby.

20        MR. KING:  Yeah.

21        MR. LAVIN:  Oh, wow.

22        MR. KING:  So it's -- it's cooling off,

23  though.  Yesterday was a bit balmy, right?

24        THE WITNESS:  It was.

25        THE REPORTER:  Shall we go off the record,

Page 188

1    folks, or do you want to stay on?

2           MR. SIGLER:  Let's stay on.  I just need 30

3    seconds.  Thanks.

4           Okay.  I've just got a few quick questions.

5           Everyone ready?

6           THE WITNESS:  Yes.

7

8                      EXAMINATION

9    BY MR. SIGLER:

10      Q    Okay.  Good afternoon, Ms. Praxmarer.  My

11   name is Geoff Sigler.  I'm counsel for the United

12   defendants.  Thanks for all of your time today.

13          Just have a few quick questions relating to

14   that last line of questioning by Mr. Lavin.  He said

15   something to the effect of the greater the balance

16   bill, the greater the savings, and I just wanted to

17   ask you about that.

18          That only holds true if a balance bill is

19   actually sent; is that correct?

20          MR. LAVIN:  Objection; calls for speculation.

21   Objection to form.

22          THE WITNESS:  Yes, correct.

23   BY MR. SIGLER:

24      Q    And in your experience in your years of

25   service at Viant, do you see in a majority of

Page 189

1   situations balance bills actually being sent?

2      A   No, I do not.

3         MR. LAVIN:  Objection to that question.  Lack

4   of foundation.

5   BY MR. SIGLER:

6      Q   And what's the -- what's the basis for that

7   observation, Ms. Praxmarer?

8      A   Based on the percentage of appeals that we

9   receive from either a member through patient

10  advocacy or a provider directly.

11     Q   And Mr. Lavin also asked you about the

12  negotiators' interest in retaining savings.

13        Do you recall that line of questioning?

14     A   Yes.

15     Q   And do the negotiators also have an interest

16  in trying to negotiate successful resolutions?

17     A   They do, definitively.

18     Q   And that's -- is that one of the services

19  that -- that Viant provides to UnitedHealth- --

20  UnitedHealthcare?

21     A   Yes, it is.

22     Q   And -- and does MultiPlan and Viant want to

23  do the best job it can do negotiating resolutions

24  whenever it can with these members?

25        MR. LAVIN:  Objection to form.

Page 190

1          THE WITNESS:  Yes, correct.

2     BY MR. SIGLER:

3       Q    And the negotiators, do they also get

4     evaluated based on the quality of work that they do

5     in negotiating resolutions?

6       A    Yes.

7          MR. SIGLER:  Thank you.  I don't have any

8     further questions.

9          MR. LAVIN:  I just have a couple follow-up

10    questions.

11

12                 FURTHER EXAMINATION

13    BY MR. LAVIN:

14      Q    Ms. Praxmarer, do you know what a financial

15    responsibility form is?

16      A    I'm not sure what that -- are you -- can you

17    clarify what you're asking for the form?

18      Q    Sure.

19          I believe you testified in response to one of

20    Mr. Sigler's questions whether patients have

21    financial responsibility for balances if they are

22    not balance billed.

23          Do you remember that?

24      A    Uh-huh.

25      Q    Okay.  And what was your answer?

Page 191

1              MR. SIGLER:  I don't think that was my

2      question, Matt, but go ahead.

3              MR. KING:  Agreed.  I don't think you have it

4      stated correctly, Matt.

5              MR. SIGLER:  So I'm just going to -- let

6      me -- let me state an objection rather than a

7      statement.  I'm -- object as beyond the scope of the

8      examination.

9      BY MR. LAVIN:

10        Q   Okay.  Are you aware -- or does MultiPlan

11     conduct any analysis to determine if patients whose

12     claims have been priced by Viant OPR have signed

13     financial responsibility agreements with their

14     providers?

15             MR. KING:  Note my objection.

16             MR. SIGLER:  Same objection.

17             THE WITNESS:  No.

18     BY MR. LAVIN:

19        Q   Do you know if patients sign agreements with

20     the providers who call up to appeal claims where the

21     patient is responsible for all amounts not covered

22     by insurance?

23             MR. SIGLER:  Same objection.

24             MR. KING:  Same objection.

25             THE WITNESS:  That would be a question for

Page 192

1    each individual patient as they're -- they're seeing

2    an out-of-network provider.

3    BY MR. LAVIN:

4        Q    Wouldn't you agree with me that if a patient

5    has signed an agreement with a provider, they've

6    responsible for all amounts not paid by insurance,

7    that they are responsible for those amounts whether

8    or not they are balance billed?

9            MR. KING:   Objection; outside --

10           MR. SIGLER:   Same objection.   Form,

11   foundation.

12           MR. KING:   Outside the scope, calls for

13   speculation, hypothetical.

14           THE WITNESS:   Yes, that would generally be

15   what a document would be.   But if they're not being

16   balance billed, I don't understand how they would be

17   liable.

18   BY MR. LAVIN:

19       Q    Okay.   But we talked about they may have

20   signed a form, correct?

21       A    Sure.

22

23

24

25

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 193

1

2

3

4

5

6

7

8      Q    Is it your assumption that if a member

9    doesn't call in, that they have not been balance

10   billed?

11          MR. KING:  Note my objection.

12          MR. SIGLER:  Objection to form.

13          THE WITNESS:  Yes.  They are receiving that

14   letter to advise to contact us if they are being

15   balance billed.

16   BY MR. LAVIN:

17      Q    But would you agree with me that members also

18   receive balance bills and then don't call in?

19          MR. KING:  Note my objection.

20          THE WITNESS:  They could.  I wouldn't know

21   that.

22   BY MR. LAVIN:

23      Q    You really don't know, right?

24          MR. KING:  Same objection.

25          THE WITNESS:  I -- I wouldn't know what each

Page 194

```
 1   individual member or patient is doing with their

 2   healthcare, no.

 3   BY MR. LAVIN:

 4      Q   I guess, you know -- but you'll agree with

 5   me, there's no way to know whether a member was

 6   balance billed or not if they didn't call in,

 7   correct?

 8          MR. KING:  No way -- no way for Viant to

 9   know?

10          MR. LAVIN:  That's right.

11      Q   No way for Viant to know whether a member was

12   balance billed or not unless they call in, correct?

13          MR. KING:  Same objection.

14          You can answer.

15          THE WITNESS:  Correct.  They would call us or

16   they would call United, and United would refer them.

17   I would generally think that if a patient had a

18   balance bill, that they received a letter to

19   indicate call, that they would do that.

20   BY MR. LAVIN:

21      Q   But it's also very possible that they

22   wouldn't call anybody, right?

23      A   If that's the decision they made.

24      Q   They might pay that balance bill, right?

25          MR. KING:  Same objection.  Calling for
```

Page 195

1    speculation as to what the members will do.

2            THE WITNESS:  Could be.

3    BY MR. LAVIN:

4       Q   I guess, you know, the point I'm trying to

5    make is you don't know whether members are balance

6    billed or not --

7            MR. KING:  Same objection.

8    BY MR. LAVIN:

9       Q   -- unless they call in and tell you, right?

10           MR. SIGLER:  Objection to form; asked and

11   answered over and over again.

12   BY MR. LAVIN:

13      Q   Right?

14      A   Correct.

15           MR. LAVIN:  All right.  No further questions.

16           MR. KING:  The witness will read and sign.

17           MR. SIGLER:  Did we designate the transcript

18   attorneys' eyes only?  I just wasn't on for that

19   portion.

20           MR. KING:  We did -- we did not yet.  That's

21   usually something I do at the end, so thanks --

22   thanks for that, Geoff.

23           This transcript will be designated attorney

24   eyes only under the protective order, to be

25   undesignated at a future point in time as is

Page 196

1    appropriate.

2            MR. LAVIN:  And we will take a rough.

3            THE REPORTER:  Thank you.  Anyone else?

4            MR. SIGLER:  I believe we have a standing

5    order for the United defendants that includes a

6    rough.  And I can't recall what a regular delivery

7    is, but we'll take that, too.

8            MR. KING:  This is Mr. King.  I'll take a

9    rough and a regular.

10           THE REPORTER:  Thank you.

11           MR. SIGLER:  Thanks, everyone.

12           THE VIDEOGRAPHER:  If there's nothing

13   further, we are off the record at 2:17 p.m., and

14   this concludes today's testimony given by Kathy

15   Praxmarer.  The total number of media units used was

16   five and will be retained by Veritext Legal

17   Solutions.

18                (TIME NOTED:  2:17 p.m.)

19

20

21

22

23

24

25

Page 197

1

2

3

4          I, KATHY PRAXMARER, do hereby declare under

5     penalty of perjury that I have read the foregoing

6     transcript; that I have made any corrections as

7     appear noted, in ink, initialed by me, or attached

8     hereto; that my testimony as contained herein, as

9     corrected, is true and correct.

10          EXECUTED this _____ day of _____,

11     20_____, at _____, _____.
                        (City)                      (State)

12

13

14

                      _____

15                         KATHY PRAXMARER

                              VOLUME I

16

17

18

19

20

21

22

23

24

25

Page 198

1          I, the undersigned, a Certified Shorthand
2    Reporter of the State of California, do hereby
3    certify:
4          That the foregoing proceedings were taken
5    before me at the time and place herein set forth;
6    that any witnesses in the foregoing proceedings,
7    prior to testifying, were placed under oath; that a
8    record of the proceedings was made by me using
9    machine shorthand which was thereafter transcribed
10   under my direction; further, that the foregoing is
11   an accurate transcription thereof.
12         I further certify that I am neither
13   financially interested in the action nor a relative
14   or employee of any attorney of any of the parties.
15         IN WITNESS WHEREOF, I have this date
16   subscribed my name.
17
18   Dated:  August 9, 2022
19
20
21
                    _____
22                       NADIA NEWHART
                         CSR No. 8714
23
24
25

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

Page 199

1    Reason for Change _____

2    Page _____ Line _____ Change _____

3    _____

4    Reason for Change _____

5    Page _____ Line _____ Change _____

6    _____

7    Reason for Change _____

8    Page _____ Line _____ Change _____

9    _____

10   Reason for Change _____

11   Page _____ Line _____ Change _____

12   _____

13   Reason for Change _____

14   Page _____ Line _____ Change _____

15   _____

16   Reason for Change _____

17   Page _____ Line _____ Change _____

18   _____

19   Reason for Change _____

20   Reason for Change _____

21   Page _____ Line _____ Change _____

22   _____

23   Reason for Change _____

24   Page _____ Line _____ Change _____

25   _____

CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

**[& - 2:17]**                                                    Page 1

---

**&**

**&**   4:13 5:4 11:9
  11:19

**0**

**0000488-498**
  7:17
**0001680-685**
  8:25
**0002152-154**
  8:14
**0005467-5468**
  7:23
**0006891**   8:17
**0007749-752**
  8:21
**0007754-781**
  8:22
**001**   174:19
**0012108-109**   8:8
**0012110-111**   8:5
**0012112-113**
  8:11
**0012799-800**   9:7
**02254**   1:7 2:7
  10:19

**1**

**1**   1:25 6:12
  10:14 34:12,14
  35:12
**1/28/19**   8:4
**1/3/18**   7:23
**1/8/2019**   126:1
**10**   8:4 65:2
  98:24 99:1
  125:18,20 127:2
**10/11/19**   8:24

**10/16/20**   8:16
**10/17/19**   8:25
**1000**   3:8
**1050**   4:16
**10:39**   83:21
**10:53**   84:1
**11**   7:13 8:7
  123:13,15 127:3
**1100**   4:6
**12**   6:5 8:10
  129:22,24
  132:21
**12/22/17**   7:22
**12108**   123:16
**12109**   123:16
**12110**   99:2
**12111**   99:2
**12112**   129:25
**12113**   129:25
**123**   8:7
**12799**   164:21
**12800**   164:22
**129**   8:10
**12:41**   154:21
**13**   8:13 17:7
  84:16 134:6,8
**134**   8:13
**137**   8:16
**138**   8:19
**14**   8:16 137:4,8
  164:18
**144**   8:24
**15**   7:7 8:19
  138:23,25 139:3
**16**   8:24 144:18
  144:19,21 155:5
  160:21

**160315**   174:19
**161**   9:4
**164**   9:6
**1680**   144:22
**1684**   145:1
**1685**   144:22
**17**   9:4 98:22
  161:21,24
**171**   3:19
**1775**   3:8
**17th**   3:19
**18**   9:6 164:19,21
**186**   9:9
**188**   6:6
**19**   9:9 36:18
  163:24 186:19
**190**   6:7
**198**   1:25
**1998**   17:14,16
**1:11**   154:25
**1:30**   170:24
**1:37**   171:3
**1st**   61:19 65:14

**2**

**2**   6:18,18 35:16
  36:18,22 37:15
  37:18 61:3,9
  83:22
**2,156.25.**   125:24
**20**   36:18 61:19
  123:12 127:4,5
  197:11
**20006**   3:9
**20036-5306**   4:17
**2010**   17:11,13
**2014**   141:25

**2015**   61:20 65:15
  112:23 113:7
**2016**   69:4
**2019**   69:6,8,11
  106:14,20 113:1
  113:2 130:12
  139:24 140:11
  167:1
**202-677-4030**
  3:10
**202-955-8500**
  4:18
**2020**   137:14
**2021**   12:19
**2022**   1:21 2:20
  10:1,6 198:18
**21**   12:19 129:21
**2100**   3:19
**2109**   128:16
**213-229-7000**
  5:8
**2152**   134:9
**2154**   134:9
**225-346-0285**
  4:8
**23**   36:19,20
**24**   36:20 144:17
**25**   36:20 56:3
**26**   1:21 2:20
  10:1
**266.47**   126:11
  127:1
**26th**   10:6
**27**   36:22 138:25
**287**   124:15 127:3
**29**   134:5
**2:17**   2:20 196:13
  196:18

---

800.808.4958                                              770.343.9696

[3 - accepting]                                                          Page 2

**3**

**3**  6:20 37:23
   38:2,4 84:2
   154:22
**3/15/19**  8:19
**3/3/20**  8:13
**30**  1:18 6:14
   13:11 34:16
   86:4 188:2
**30363**  3:20
**31**  137:3,6
**333**  5:6
**335**  165:11
**34**  6:12
**37**  6:18,20

**4**

**4**  6:23 57:19,22
   57:24 155:1
   170:25
**4/26/19**  8:20
**40**  83:14 183:20
**400**  4:6
**404-873-8500**
   3:21
**40th**  113:21
**41**  58:17
**44**  58:21
**488**  68:12
**498**  68:13
**4:20**  1:7 2:7
   10:19

**5**

**5**  7:4 60:11,13,15
   61:6 65:19
   67:10,12 84:5
   171:4

**5's**  65:20
**5/27/20**  8:14
**5/27/2020**
   134:14
**5/8/18**  7:20
**50**  48:6,9,19 49:7
   51:8 111:1,2
   113:5,7 176:21
   178:21 179:1,6
   184:2
**50th**  111:1
   176:20
**51**  6:25
**5339556**  1:24
**5467**  97:14
**5468**  97:15
**550**  156:6
**57**  6:23
**582**  166:17
**5823**  165:7
   166:17

**6**

**6**  1:18 6:14 7:9
   13:11 34:16
   66:13,15,19 67:8
**6/17/19**  8:7
**6/18/19**  8:10
**6/24/22**  9:6
**6/28/22**  6:18
**60**  7:4
**60th**  113:21
**66**  7:9
**68**  7:15
**6891**  137:8

**7**

**7**  6:16 7:15
   36:18 68:7,9,10
   180:23
**70802-5618**  4:7
**7136**  198:21
**73268**  85:3
**73296**  85:3
**7749**  138:22
   139:4
**7752**  139:4
**7754**  139:17
**7768**  140:25
   141:20
**7772**  143:11
**7773**  142:16
**7781**  139:5

**8**

**8**  7:19 36:18
   65:1,21 84:24
   85:2,2 163:17
**800**  104:15
**84**  7:19
**85**  6:21 193:1
**8714**  1:24 2:22
   198:22

**9**

**9**  7:22 97:4,11,14
   180:24 198:18
**9/13/17**  7:19
**90071-3197**  5:7
**90s**  142:4
**92**  166:7
**9603**  161:24
**97**  7:22
**98**  8:4 142:6

**9:02**  2:19 10:2,5
**9:33**  35:11
**9:37**  35:15

**a**

**a.m.**  2:19 10:2,5
   35:11,15 83:21
   84:1
**aaron**  3:7 11:10
   33:6
**aaron.modiano**
   3:13
**abe**  175:11
   183:19
**able**  49:14,20
   50:22 51:17
   55:7 63:22
   74:19 75:1 76:4
   77:3 98:3
   105:16 121:11
   124:9,11 125:14
   144:5 149:23
   152:6,11 160:12
   173:13
**absolutely**  66:5
   109:10
**ac**  187:14
**accept**  51:5,9
   108:19 118:8
   146:4
**acceptable**
   118:17 180:25
   181:2
**accepted**  49:2
   129:18 184:10
   192:23
**accepting**  181:11

**[accepts - answer]**                                                    Page 3

**accepts**  128:24
**access**  35:5,8
    46:24 62:5 76:1
    78:22 90:12
    91:2,6,12 92:2
    96:24 97:2
    106:24 114:14
    115:12,20
    117:12,19 123:1
    144:5 148:3,13
    148:21 150:1
**account**  112:5
**accurate**  116:5
    135:21 198:11
**achieve**  160:12
**achieved**  185:7
**acquired**  17:6,11
    17:13
**act**  167:17,19
**action**  6:21 11:1
    38:5 57:25
    198:13
**actions**  61:15
    65:8
**activity**  19:22
**acton**  6:24
**actual**  27:7,16
    63:10 171:21
    173:22
**ad**  161:11
**added**  66:7
**adding**  136:24
**additional**  144:4
    177:15
**additionally**
    51:8
**address**  132:24
    133:2,3,4,5

135:22,23,23
**adjust**  104:7
**adjusted**  103:24
    104:10 124:15
    124:20
**adjuster**  17:25
    17:25
**adjustment**
    121:19,23
    144:13
**adjustments**
    104:5
**administered**
    12:2
**administration**
    18:11
**advise**  99:18
    120:3,11 193:14
**advises**  102:23
**advising**  100:1
**advocacy**  20:24
    21:11,16 44:11
    45:19,24 46:1,4
    46:23 54:9
    62:11 88:20,25
    90:6 99:8,10,11
    101:12 105:5
    106:2,9 123:9,10
    130:7 135:4,18
    147:16 172:8
    189:10
**affiliations**  11:6
**affirmative**
    58:11,21
**afternoon**
    188:10
**agents**  65:9

**agg.com**  3:11,12
    3:13,22,23
**ago**  50:23 70:5
    82:21 98:1
    123:21
**agree**  10:13
    35:23 49:20
    75:10 94:18
    145:6 176:5
    179:1,5 183:7
    192:4 193:17
    194:4
**agreed**  50:4
    181:5,6 191:3
**agreement**
    106:25 111:11
    118:7,14,15
    120:4,13 123:18
    129:17 145:12
    145:22,23 146:2
    146:4,6,24
    147:11 151:24
    154:6 192:5
**agreements**
    78:22 191:13,19
**agrees**  128:17,25
**ahead**  58:20
    67:7 72:10
    98:22 125:13
    191:2
**aiken**  4:15 11:16
    11:16
**al**  10:16
**algorithm**
    124:22
**allergy**  114:22
**allison**  19:3

**allow**  14:25
    94:13
**allowable**  89:20
    100:8,22 116:23
**allowed**  95:21
    101:5,15 179:23
**allows**  64:21
**alternative**
    102:18
**ambulatory**
    29:10 70:9
**amenable**  138:4
**amended**  6:20
    6:24 38:5 57:25
**amount**  48:8,19
    49:5 100:9,23
    101:15 111:3,19
    112:1,12 118:22
    119:6,10 129:5
    129:10 176:6
    177:5,15,18,25
    177:25
**amounts**  101:5
    191:21 192:6,7
**analysis**  62:16
    167:24 191:11
**analyst**  18:1
**analytical**  31:21
    31:24 52:22
    53:2 87:6
**analyze**  61:12
**anesthesiologist**
    29:19
**angeles**  5:7
**answer**  6:23
    15:2,2 21:20
    23:19 25:9,18
    26:1,9 27:11

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 204 of 244
CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[answer - areas]                                                    Page 4

28:2 29:6 30:7
30:14 31:15
32:6 33:2,15,25
37:2 39:24
40:11,16 41:8,17
42:2,5 44:22
48:11,22 49:22
52:3,18 53:18,20
53:22 55:21
57:7,24 59:17
62:1 63:1,15,25
64:7,14 65:21
66:2 67:3 68:3
70:16,24 71:5
74:22 77:18
79:25 80:14
81:9 85:16
86:25 88:5
93:13 94:14
96:8 101:23
102:8,21 104:2
105:12,19 107:8
107:17 108:11
111:5,8 116:2
117:23 118:12
118:25 119:14
120:1,10 121:16
122:10 125:1,13
125:15 127:8
128:11 129:8
132:4,17 133:11
133:22 136:18
145:19 146:22
147:8,23 148:11
150:4 152:6,8,19
153:17,24
159:16 166:9
169:15 172:12

173:3,17,25
174:9 176:9
180:3,17 181:14
182:8,21 190:25
194:14
answered   27:1,9
30:13 37:1 71:4
74:21 78:9,17
79:22 85:15
91:5 92:8 103:9
104:1 107:7
117:16 121:15
153:16,23
174:14 176:2
178:2 184:17
195:11
answering   14:14
14:16 40:17
74:6
answers   7:5
14:18 21:21
60:17
anthony   5:14
10:22
antitrust   151:11
anybody   15:11
15:18 16:11
24:11 53:14
82:15 103:19
117:7 194:22
anymore   141:16
anyway   187:17
anyways   159:14
apc   70:6,7,8 71:2
72:21,22 142:9
142:20 165:7
166:17

apcs   70:13,21
73:8,13 74:20
87:8
apologize   143:6
apparently
187:13
appeal   20:1,3,9
44:14 48:4
51:17 85:17
93:4 98:9
102:18 103:8
104:17,24 116:6
121:12 122:2,12
161:11,12,19
180:23 182:16
191:20
appealed   103:25
180:24
appeals   21:6
44:18 51:22,23
52:14 53:1
55:15,17 70:20
74:17 75:8 79:7
86:7 93:7,9
94:16,16,19 95:7
98:19 145:8
160:23,25 161:2
161:9,16 163:15
163:20,21,21,21
163:25 167:13
168:7,10 189:8
appear   125:24
138:11 197:7
appearance   3:14
3:24 4:10,21
5:10,15 11:4
appearances   3:1
4:1 5:1 11:6

appearing   2:17
34:19
appears   124:8
applicable   46:9
application
46:22 49:24
78:19,20 156:25
157:5 168:12,14
169:19
applications
23:7,10
applied   24:3
146:12,13
apply   98:11
131:17 146:6,8
167:14
appreciate   92:25
approach   133:24
approaches   43:3
44:3
appropriate
196:1
appropriately
60:2,2,3 135:7
135:24
approved   144:7
approximately
54:25 56:5
161:17
april   139:24
140:11
archaic   108:2
area   20:15 24:7
24:13,20 27:3
28:15,20 55:1,4
73:15 116:14
areas   32:3 69:21

[argue - balance]                                                    Page 5

**argue**  81:20
   152:5
**arguing**  77:6,7,9
   77:10
**argumentative**
   25:19 56:19
   91:15 128:2
**arlene**  53:8,10
   53:24 54:1
   82:11,14,23
**arnall**  3:4,16
   11:9
**asc**  114:1 171:10
   171:25
**aside**  121:22
**asked**  27:1,8
   30:13 33:4 37:1
   71:4 74:21 78:1
   78:8,17 85:14
   91:4 92:8 103:9
   103:18 104:1
   107:6 121:14
   140:5 148:23
   150:6 151:16
   153:16,22 167:6
   174:14 176:2
   178:2 184:17
   189:11 195:10
**asking**  14:13
   20:8 24:1 25:12
   26:18 27:16
   33:12 44:19
   53:23 54:20
   74:5 87:2 95:11
   115:19 120:16
   126:15 144:4
   145:10 148:4
   161:7 178:16

   190:17
**assign**  46:7
**assigned**  110:20
**associate**  84:20
**associated**  50:9
   130:22,24,25
   131:1
**assume**  72:17
   126:9 127:20
   140:22 149:4
   166:10 177:1
**assumed**  69:12
   82:24
**assumes**  170:3
**assuming**  145:25
**assumption**
   98:20 126:16,24
   146:23 193:8
**assumptions**
   98:6
**astute**  92:21
**atlanta**  3:20
**attached**  34:13
   37:16,24 57:20
   60:12 66:14
   68:8 84:25
   97:12 98:25
   123:14 129:23
   134:7 137:5
   138:24 144:20
   161:22 164:20
   186:16,20 197:7
**attachment**  8:8
   8:20 140:17,18
   141:7
**attachments**
   139:12,15
   140:21

**attempt**  48:7
   105:22 106:10
   107:25,25 108:8
**attempted**  50:8
   99:19 107:10,18
   108:12
**attempting**
   93:23 106:25
**attempts**  145:8
   158:20
**attorney**  11:7
   12:24 14:21
   195:23 198:14
**attorneys**  1:15
   14:24 195:18
**audible**  114:4
**audio**  10:11
   174:22
**audurial**  155:23
   155:25
**august**  198:18
**authority**  133:20
   178:21
**authorized**
   118:16
**automatically**
   115:18
**autopopulate**
   34:10
**available**  106:13
**avenue**  3:8 4:16
   5:6
**avp**  134:24
**aware**  30:15
   38:23 39:2
   41:11,18 50:17
   59:2 70:12,13,17
   78:5 96:1,17

   103:5,16 113:9
   113:19,23 114:6
   114:10,11
   133:17 167:12
   168:8 169:25
   172:7 191:10

|       **b**       |

**b**  1:18 6:14
   13:11 34:16
   158:16
**back**  17:14
   23:22 35:14
   46:12 47:2
   51:20 58:16
   65:18,19 69:6,8
   83:25 84:5
   104:6,20 105:24
   106:20 111:16
   118:19 120:7,13
   125:17 128:15
   137:24 141:25
   142:3 145:2
   154:17,24 155:4
   171:2
**background**
   33:3
**balance**  19:11
   20:9 21:14 44:6
   44:10,15 46:2
   48:12 51:7
   65:12 99:17
   100:2 102:17
   104:4,16,21
   107:3 108:14
   121:4 128:17
   129:1,12 172:9
   176:13,15 177:8

**[balance - bring]**                                                      Page 6

177:11,14,24,25
182:23 184:21
184:22 185:8,10
185:17,19
188:15,18 189:1
190:22 192:8,16
193:9,15,18
194:6,12,18,24
195:5
**balances** 190:21
**balmy** 187:23
**bandomer** 19:4
**barcode** 135:21
**based** 21:10 32:2
32:11 33:21,22
47:15 49:14
59:10 78:19
93:21 98:6,11
99:17 100:11,15
100:25 102:16
108:22 109:22
116:23 121:5
125:2 129:14
130:12 131:3
136:12 145:25
148:5 154:5,7
160:1 184:13
189:8 190:4
**bases** 68:2
**basis** 67:19 94:3
131:11,12 175:2
175:7 189:6
**bates** 68:12 85:2
97:14 99:1
123:15 129:24
134:8 139:3,17
142:13 143:10
144:21 160:20

174:18
**baton** 4:7
**beat** 152:24
153:4,7
**beckstead** 24:14
24:23 88:3,10
164:24
**beg** 92:17
**began** 73:24
**beginning** 2:19
11:7
**begins** 139:17
**behalf** 1:5,18 2:5
2:16 11:17
13:15 21:1
39:15 40:17,18
40:19 51:24
**behavioral** 1:9
2:9 11:18
167:14,24 168:9
168:19 169:10
169:22
**believe** 18:19
23:13 34:1 45:5
46:19 52:24
60:23 66:11
79:12 82:12
89:1 95:23 98:7
110:15 113:5
114:14 115:2,7
121:18 130:13
132:10 140:9
156:1 175:2,9,13
187:16 190:19
196:4
**benchmark**
118:3 149:11,15
150:6,11,15

151:21,23 152:9
152:13
**benchmarks**
150:1
**benefit** 90:24
100:11,15
**benefits** 89:23
90:9,20 91:3,12
91:13 92:11
**best** 189:23
**bet** 156:8
**beyond** 132:12
183:12 191:7
**bfrd** 16:6
**big** 171:5 181:25
**bill** 20:10 44:6
44:10 46:2 51:7
101:14 104:4,16
107:4 128:18
129:1,13 177:25
184:21,22 185:8
185:18,19
188:16,18
194:18,24
**billed** 19:11
48:12 51:4
59:11 60:1
99:17 100:2
102:17 104:22
116:8 126:5,21
146:25 172:9
176:13 185:11
190:22 192:8,16
193:10,15 194:6
194:12 195:6
**billing** 21:14
29:24 30:1
44:15 59:6,8

60:5 98:12,14
108:14 116:13
121:4 176:15
177:9,11,14,24
**bills** 65:12 189:1
193:18
**binder** 84:21
**bit** 65:20 87:5
187:23
**black** 108:16
109:16
**blacklisted**
157:25 158:9
**blank** 13:9 72:7
72:11
**block** 158:12,16
158:21,22 168:9
168:11,20
169:10
**bob** 141:24
142:1,2
**booted** 154:17
**bottom** 136:2
139:22 155:6
**bradley** 89:6,8
**bramwell** 85:25
**brand** 42:7
**break** 15:4 43:7
64:23 75:21
76:4,23 83:2,7
83:11,11,16,18
154:15,18 171:8
**breaking** 83:15
**breakout** 43:4,5
**breaks** 15:3
**bring** 84:15
134:3 137:2
160:19

**[bucks - checks]** Page 7

**bucks** 127:4
**bunch** 155:20
**business** 18:10
185:12
**butler** 155:7
**button** 34:22
**buying** 184:6
**bw** 1:4 2:4

**c**

**c** 23:13 31:3,5
158:16
**calculate** 114:12
115:1
**california** 1:2,10
2:2,10 5:7 10:18
198:2
**call** 20:15,21
21:10,17 40:14
42:10 43:12,12
43:16 46:11
47:2 48:9 49:6
50:20 54:5,9
62:18 70:19
102:13,19,23
103:7,20 104:4,9
104:20 105:21
106:10 107:10
107:12 108:8,13
108:24 111:15
121:4,5,24,25
122:15 123:5
132:12 147:15
148:24 170:15
174:2 175:11
176:17 179:18
179:24 180:2
183:14,19,20,22

191:20 193:9,18
194:6,12,15,16
194:19,22 195:9
**called** 21:12,13
23:10 40:24
43:17 45:19
46:17 101:19
102:4 103:3
104:15 106:9
107:3 122:21
142:8 160:23
170:9
**calling** 105:7
106:2 119:22
194:25
**calls** 20:11 22:7
22:8,13,20 23:6
44:6,10 52:23
62:25 90:6 93:4
102:10 105:16
106:8 107:20,21
126:12 129:6
147:21 172:8
176:24 177:6,19
180:1 182:19
183:9,15,25
188:20 192:12
**camera** 10:9
**candidly** 116:6
**capability** 121:8
122:11,19
173:20
**capable** 30:3
**capacity** 13:11
13:12,14
**car** 184:6
**card** 102:15,24
121:9

**care** 108:17
**careful** 14:12
**carlson** 88:15,16
89:5 90:4
**carrier** 102:25
**carrier's** 103:12
**cascario** 3:18
83:24
**case** 1:7 2:7
10:19 12:11,21
12:23 13:4,7,10
19:7 35:19
38:23 39:8,11,16
50:13,18 59:4,22
60:6 95:15
110:10 152:4
155:24 156:15
157:12 162:20
174:21 179:14
**categories** 29:3
**cc** 134:22
**cc'd** 97:20
134:15
**ceiling** 112:15
**center** 29:11
40:14 42:11
43:12,12,16 54:5
54:9 110:5,6,11
110:14,19
125:21 186:23
187:5
**centers** 21:17
**central** 10:5
**cep** 156:18,19
**certain** 48:8 49:5
50:4 63:11
87:22 95:6
112:12 113:19

162:23
**certainly** 109:13
128:3 147:24
167:5
**certified** 2:21
198:1
**certify** 198:3,12
**chain** 7:19,22
8:13,16,19,24
**challenge** 115:23
116:3,4
**change** 80:19,20
80:23 114:5,7,9
114:10 115:5
135:20 137:20
138:13 199:1,2,4
199:5,7,8,10,11
199:13,14,16,17
199:19,20,21,23
199:24
**changed** 80:5
112:19 113:3,6
136:22
**changes** 81:4
113:10 130:14
**characterization**
180:10
**charge** 53:7
82:10 116:23
**charged** 60:2
100:8 101:4
**charges** 59:10,15
59:21 60:5
89:25 125:24
126:2,5 146:25
**check** 170:19
**checks** 41:5

**[choice - come]**                                                    Page 8

choice   127:19
  128:7
chris   19:5
cindy   88:14,16
  88:18 89:5 90:4
circumstances
  96:11 127:24
  128:8
city   21:23 55:4
  132:24 197:11
civ   6:13
civil   34:16
cj   1:4 2:4
claim   17:25
  19:23 20:8 29:9
  29:13,16,16,17
  29:21,21 32:11
  33:20 46:7,8,11
  46:23,25 47:1,3
  47:5 48:4,14,20
  48:25 50:11,21
  50:22 51:3,4,9
  51:10 59:11
  63:11,19 64:3
  78:11 79:7
  85:20 89:16,21
  91:10,17 93:21
  96:2,5,21 100:16
  100:24 103:3,13
  103:24 104:7,10
  104:11,22,25
  105:8,15 109:24
  114:13 115:1,20
  116:18 118:8,9
  118:10,18
  120:21 121:1,12
  122:5,16 123:5
  123:23 124:6,17

125:5,9 126:10
126:19,20 127:6
130:22,24,25
131:3,3,10,10,12
131:21,24
139:18 140:7,18
146:14 147:4
149:23 150:9,16
151:19 152:11
152:14 153:10
167:22 172:17
172:24 173:1
175:21,21,24
176:6 178:20
179:9,20 180:14
182:17 183:10
183:14,16 185:7
claims   19:11
  20:22 24:3
  28:23 29:1,7
  30:9,12 32:1,12
  32:18,20,21
  33:22 44:18
  47:9 48:17
  49:10,13 50:2,7
  50:9 51:1,24
  52:14,16 54:11
  54:16 56:11,14
  59:4,14,20 60:8
  62:18 63:19,21
  65:13 70:22
  77:22 78:14
  80:20 86:10
  87:22,22 95:19
  98:15,19 100:21
  103:16 104:5,18
  105:3 106:3,13
  109:1,25 110:20

111:25 113:19
113:20 114:1,1,3
114:6,24 117:1,7
117:11,18 118:1
118:3 119:8
123:25 124:2
125:7 127:16,25
131:8,17 146:5,7
146:8 147:16,19
149:16,25
155:21 156:17
156:25 161:17
165:5 166:7
167:15,25 168:1
171:10,12,21
173:22 178:24
179:22 180:24
181:21 184:12
191:12,20 193:6
clarified   90:16
clarify   23:20
  40:9 111:7
  178:15 190:17
class   6:20,24
  38:5 57:25 83:1
classification
  70:9
clear   22:12
  64:17 90:17
  172:16 185:6
clearly   120:13
clicked   61:4
client   122:22,23
  123:4,6 127:25
  131:5 134:2
  152:21 156:20
  156:21,21,23,24
  157:13,19

clients   62:6
  91:20 123:1
clip   174:22
close   51:10,16
  118:17
closed   161:2
closely   88:2
closing   184:25
closure   51:12,21
coast   110:15,16
  110:17
code   50:3,6,10
  50:12,16,17 51:1
  72:11,20,21
  146:10,11,19
  173:11
coded   60:2
codes   49:18
  50:11 55:19
  59:6,8,11 60:5
  71:7,7,14,22
  73:8,13 166:17
  166:21,21,22
  171:15,25 172:1
coding   23:17
  73:23 165:16
  172:4
coinsurance
  128:19
collaborative
  133:24
colleagues   11:10
college   18:4,5
collins   13:2
come   21:15 22:7
  49:2 124:23
  137:23 147:18
  163:12 171:21

**[come - correct]**                                                                      Page 9

186:22
**comes**   16:6
   108:21
**comfortable**
   109:15
**coming**   154:6
**common**   26:10
   28:9,9,14 79:15
**communicate**
   106:11
**communication**
   96:16 106:22
**communications**
   183:25
**companies**   47:23
**company**   1:8 2:8
   4:12 5:3 17:18
   39:20 41:2 42:3
   54:18 86:3
   88:11 100:20
   116:22 148:8,18
**comparing**
   32:20 116:12
**compensated**
   184:12
**compensation**
   160:1
**complaint**   6:21
   6:25 38:5 57:25
   110:9 119:17
**completely**   13:8
**complexities**
   138:17
**compliant**   108:4
**complicated**
   92:16
**concerned**   173:9

**concierge**   5:13
**concludes**
   196:14
**conclusion**   177:7
   177:20
**conduct**   58:24
   59:3 132:8
   191:11
**conducted**   10:7
   10:20 167:23
**confidential**   1:15
   63:3,5
**confirm**   35:18
   138:3
**connect**   111:11
**connecticut**   1:9
   2:9 4:16
**connection**   10:9
   154:15
**consent**   175:4,6
   175:9,10
**considered**   40:6
   41:20 63:3,5
   178:8
**consistent**   61:18
**contact**   46:5,9
   51:3 61:17
   89:10 100:1
   103:11,19
   104:23 107:19
   109:24 118:16
   119:20 172:24
   193:14
**contacting**
   173:10
**contacts**   45:21
   112:12

**contain**   45:3
   106:23
**contained**   42:15
   61:13 118:4
   197:8
**content**   138:10
**context**   25:7
   58:12 161:6
**continually**
   78:19
**continue**   10:12
   14:16 153:6
**continued**   4:1
   5:1 7:1 8:1 9:1
**continuing**   72:8
   72:8
**contract**   41:21
   41:21,23 145:14
   145:21 146:2
   147:2,18,20
   148:14,21,25
   152:14,15
**contracts**   41:12
   101:10 149:6,8
**convenient**   83:3
   83:9
**convention**   4:6
**conversation**
   108:21,22
   109:17,22
   111:10 112:7
   116:10 138:3
   144:3 177:2
**conversations**
   108:15
**cooling**   187:22
**coordinating**
   135:7

**coordination**
   135:5
**copies**   16:2
   130:18
**copy**   142:14
   143:10 185:25
**corporate**   6:14
   13:11,14 39:19
   40:20,24 42:17
   53:5,23 94:15
   164:7
**corporation**   1:9
   1:10,11 2:9,10
   2:11
**correct**   21:4,5
   31:7 38:19
   41:14,18,21,22
   44:8 45:20 48:2
   51:16 52:8,9
   53:13 54:14
   55:8 63:23 64:1
   64:8 69:17
   73:11 75:9
   77:16,23 78:6,7
   79:16 81:25
   90:14 93:6,7,9
   93:10 96:23
   100:12 103:8,18
   104:17 105:4,9
   105:13,17 108:9
   110:22 115:15
   121:2 128:12
   129:2,13 136:11
   140:10 144:3
   145:9 148:19
   149:24 151:22
   154:11 165:6
   171:13 172:10

**[correct - define]**                                        Page 10

172:13,18,19,21
174:12,13
176:18,19
177:18 178:1,5
179:2,9 180:9,11
180:15,21
181:12,21
184:16,22 185:9
185:13,19 187:1
188:19,22 190:1
192:20 194:7,12
194:15 195:14
197:9
**corrected** 197:9
**corrections**
197:6
**correctly** 191:4
**correlate** 170:13
**corresponding**
161:3
**counsel** 10:15
11:5 35:17 83:2
84:7 188:11
**count** 35:22
**counteroffer**
111:17
**counteroffers**
49:2
**country** 55:2
**couple** 20:17
176:24 180:14
182:13 190:9
**course** 154:13
164:14 175:11
**court** 1:1 2:1
10:18,24 14:10
14:20 83:4

**cover** 8:7 123:18
**covered** 128:20
191:21
**covid** 21:22
**cpt** 71:7 126:22
**crandell** 24:10
24:23 25:4
31:14 33:6 70:1
70:11 80:13
165:17,19 167:6
**crandell's** 72:24
**create** 140:5
**created** 140:8
**crna** 29:19
**crosswalk** 72:11
72:14
**crosswalked**
72:21
**crosswalking**
73:7 74:19 87:8
**crutcher** 4:13
5:4 11:20
**csr** 1:24 198:22
**current** 16:17
18:15,22 48:3,5
112:17 141:8
**currently** 16:14
130:11 165:11
168:19 175:17
**customary** 24:2
25:5,16,21 26:12
27:5,24 28:19
31:5 89:18,20
90:1 91:21,25
92:3 115:25
127:13 154:5,10
**customer** 19:22
20:13,25 21:3,8

21:9 40:14 44:2
47:19 88:21
156:1
**customers** 47:21
47:22,24
**cut** 14:15 109:5
142:25
**cv** 1:7 2:7 10:19

**d**

**d** 23:13 86:2
**d.c.** 3:9 4:17
114:23
**daily** 79:16
161:4
**dan** 19:3
**dark** 120:22
**data** 30:18 31:9
31:11 32:2,12,19
33:21 55:8
86:23 87:21
95:5,8,14 165:12
167:2,3,3
**database** 116:23
116:24
**databases**
116:23
**dataisight** 13:9
13:15 16:25
17:2 20:19
136:8,10,25
**datasets** 31:17
32:21
**date** 69:4 125:25
126:1,5,22
130:12 132:11
137:25 161:9
173:11 198:15

**dated** 6:18 7:19
7:22 8:4,7,10,13
8:16,19,24 9:6
134:14 198:18
**dates** 126:22
**day** 19:14,14
51:23 71:18
73:2 74:7,11
109:4 197:10
**daylight** 10:6
**days** 106:4
172:21,22
**db** 1:4 2:4
**deal** 184:9
**dealing** 33:11
109:3 151:7
**decided** 124:21
**decision** 93:20
159:20 194:23
**declare** 197:4
**declined** 176:19
**declining** 133:17
**dedicated** 20:20
20:25
**deductible**
128:19
**defao** 53:8 82:11
**defendant** 4:3,12
5:3 7:6,12 60:18
66:21
**defendants** 1:12
2:12 35:18
188:12 196:5
**defense** 58:11,21
**defer** 138:2
**define** 25:24
26:2,15 29:17

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 211 of 244
CONF 30(b)(6) Kathy Praxmarer
LD, DB, BW, RH v. United Healthcare Insurance Comp
July 26, 2022

[definition - document]                                                Page 11

definition   72:17
definitively
   51:20 52:25
   75:23 95:17,25
   113:4 114:8
   118:5 132:10
   141:10 179:11
   189:17
degree   18:7,9
delivery   196:6
demand   148:24
department
   21:16 26:22
   42:17 44:11
   53:6,7,24 54:10
   56:22 82:21,24
   88:20 90:6 94:7
   94:22 104:18
   105:5 123:9
   134:17 155:14
depend   147:9
depending   106:5
   108:21
depends   10:8
   97:9 161:6
   193:3
deployment
   137:18 138:2
deposed   13:12
   13:18 14:8 19:7
   33:6 38:24
   162:11,17
   165:19
deposition   1:17
   2:15 6:12 10:7
   10:15,20 12:12
   12:18,25 15:9
   16:12 26:8

27:10 30:20
34:15 68:23
72:25 73:25
80:12 87:15
113:15 139:1,3
149:2 152:17
163:1,11 164:7
182:19 183:12
185:3
derek   18:17
describe   23:23
   45:17 61:9 65:7
   99:14 137:15
description   6:11
   7:3 8:3 9:3
   52:13
designate   195:17
designated   20:23
   31:13 32:25
   36:14 67:20
   71:17,20 73:22
   73:24 87:16
   89:2 94:9
   113:15 152:17
   162:6,23,25
   163:4 165:15
   182:19 195:23
designee   94:15
detail   23:9 24:5
   24:8 38:7 52:10
   55:6,25 57:4
   61:10 65:7 75:4
   75:14,16,20 76:5
   77:15,20 115:22
   144:5 146:16
   177:2
detailed   132:6

details   14:2
   31:11 39:7,11
   90:25 91:7
   148:21
determine   70:14
   152:10 167:24
   169:9 172:25
   191:11
determined
   89:21 91:10
   100:10,15,22
   154:11
dialysis   114:1
   171:12 172:1
difference   20:2,5
   29:15 90:19
   101:4 125:23
different   17:24
   20:11 21:2 28:7
   29:20 40:12
   47:21,24,24
   109:9 113:7
   121:6 125:25
   126:5 136:10,14
   136:15 145:20
   168:12,12
difficulty   11:17
digging   33:5
digitally   118:15
direct   18:24,25
   138:20
directed   122:8
directing   61:16
   62:17
direction   198:10
directly   89:11
   189:10

director   25:1
dis   136:6,8
disability   17:25
disagree   182:2
disclaimer
   136:25
disclose   179:24
discount   146:4
   146:25
discounted
   48:19
discovery
   162:10 163:4,5
discretion   112:2
   112:3
discuss   94:9
discussed   87:8
   131:13
discussing   98:4
   137:16
discussion   75:6
   94:21 184:11
discussions
   87:20
display   63:17
distinction   42:11
distributed
   96:17
district   1:1,2 2:1
   2:2 10:18,18
division   16:19
   39:21 40:7
doc   139:25
document   36:9
   36:11 38:8,20
   44:23 45:1,3,6,8
   45:9,12,14 46:4
   47:7,11,12 56:21

[document - esq]                                                    Page 12

58:3,8,17 60:22
64:9 66:22 67:1
68:16,21 69:3,5
70:11 84:16
85:9 94:6,11,20
99:5,7 123:17
128:15 130:4,6
139:17 140:1,4
140:13,17 142:8
144:6,10,17
155:4 160:20
162:13,14 163:8
164:9,12,13,18
165:18 192:15
**documentation**
44:4 54:2 57:16
**documents**
15:23,25 16:2
37:5,11 38:15,17
39:14 43:19
62:7,20 63:6,11
63:17 64:20
66:25 67:11,25
140:6 141:9
162:9,16
**doing** 33:21
35:19 92:21
160:22 184:24
194:1
**dominy** 134:22
134:23,24
**door** 163:11
**dotson** 19:3
**double** 18:10
**doubt** 63:2
**draft** 93:3
**drafted** 144:9

**drafting** 66:9
130:15 141:21
**drawing** 13:8
**drives** 109:21
**due** 93:20
158:20 159:9
**dunbar** 4:4
11:12
**dunn** 4:13 5:4
11:17,19
**duties** 149:7
164:14

**e**

**e** 3:6,17 86:2,2,2
156:22,23
**earlier** 82:13
90:12 115:8
131:13
**east** 110:15
**easy** 132:1
**economics** 24:9
24:15,24 25:3
88:7 165:2
**editing** 98:15,19
**edits** 98:11
**educate** 76:4,24
114:9
**education** 18:13
42:17 53:5,24
**edwards** 134:14
134:18 136:2
137:13
**effect** 141:5
188:15
**efforts** 61:11
133:18

**eight** 18:25
54:25 56:11
85:20 110:2
**either** 107:22
120:11 121:5
135:22 153:9
189:9
**elaborate** 39:6
**elected** 89:23
91:17
**electronically**
130:22,23
**eligible** 146:5,7
146:13 171:22
**eliminate** 108:1
**elizabeth** 123:21
124:21
**email** 7:19,22
8:13,16,19,24
9:6 88:14 93:14
94:4 95:10,12
96:11 97:19,23
97:24 98:4,18
106:22,22
134:13,13
137:11,15,16
139:9,10,11,13
141:24 164:23
**emails** 16:1,3
**emma** 89:6
97:20
**employed** 16:15
17:10 175:17
**employee** 53:8
53:11,25 54:4
78:11 89:9
198:14

**employees** 24:22
40:3,4 41:4 54:6
82:8,13 89:3
156:6
**enforced** 148:25
**engage** 119:18
**engaged** 86:19
**engagement**
48:13 156:21
**enrollee** 89:23
**ensure** 137:21
**entail** 43:1
**enter** 156:24
**enters** 123:4
**entire** 19:15 82:5
86:5,8 140:16,18
**entitled** 33:3
34:14 38:4
**entity** 40:20,23
40:24
**entry** 156:23,23
**envelope** 135:6
135:22,24
138:12
**eob** 183:4
**eom** 115:14
143:23
**eop** 183:4
**episodes** 165:11
**equals** 185:18
**equate** 84:22
**equation** 124:22
**errol** 4:5 11:12
15:10 74:8 77:8
84:8 186:2
**errol.king** 4:9
**esq** 3:5,6,7,17,18
4:5,14,15 5:5

[establish - familiar]                                                              Page 13

establish  31:2
estate  110:5,6,11
   110:13,19
   125:20 145:5
estimate  173:13
et  10:16
evaluated  49:13
   190:4
event  175:14
eventually
   176:21
everyone's  156:7
evidence  59:2
exact  12:22
   126:21 136:19
   141:13 143:19
exactly  22:15
   76:12 92:21
   125:10
examination  6:2
   12:5 188:8
   190:12 191:8
examined  12:2
example  20:20
   21:9 28:13 41:6
   45:18 57:12
   67:8 76:15
   78:21,23 81:14
   95:9 110:21
   111:10 128:22
   141:21
examples  81:13
exceed  149:19
excel  9:4 161:25
exception  179:12
exceptions
   180:14

exchange  49:1
   128:25 154:7
exclude  158:19
excluded  157:2
   157:17 159:2
   169:23
exclusion  157:16
   157:19,20,22
   170:17,18
exclusions
   157:18 179:12
excuse  93:2
   111:2 137:6
   139:4 162:8
executed  197:10
exhibit  6:12,18
   6:20,23 7:4,9,15
   7:19,22 8:4,7,10
   8:13,16,19,24
   9:4,6,9 34:4,5,12
   34:14 35:8
   37:14,15,18,22
   37:23,25 38:2,4
   57:18,19,22,24
   60:10,11,13,15
   61:4 66:12,13,15
   66:19 67:1 68:6
   68:7,9,10 84:5
   84:22,24 85:2,2
   94:3 97:3,5,10
   97:11,14 98:24
   99:1 101:19
   123:12,13,15
   125:18,20 127:2
   127:3 129:21,22
   129:24 132:21
   134:4,6,8 137:2
   137:3,4,6,8,19

138:21,22,23,25
   138:25 139:3
   142:10 144:18
   144:19,21 155:5
   161:21,24
   164:19,21
   165:14 167:11
   174:16,19
   186:16,19
exhibits  6:10 7:2
   8:2 9:2 36:3
exist  106:20
existed  86:18
exists  50:16
expanded  21:25
expect  141:13
expecting  108:18
experience  93:21
   102:16 103:2
   109:7,15 119:8
   121:11 125:7
   127:5 181:23
   188:24
experienced
   185:8
expert  25:11
   32:15 172:4
expertise  24:7
   71:12 73:16
   74:6
explain  52:8
   62:13 108:9
explained  70:20
   70:21 79:12
explaining  57:9
explains  42:14
explanation  7:16
   44:1 48:24 79:7

115:10 116:17
   143:17
extra  184:2
eyes  1:15 195:18
   195:24

f

facilities  182:6,9
facility  7:15 24:3
   29:7,9,10,16,20
   29:25 30:9 31:3
   32:10,12,18,20
   32:21 33:20,22
   46:10 51:2
   73:13,13 89:17
   111:24 113:20
   114:3 115:1
   119:8 149:16
   166:21 172:1
   179:8 180:13
   193:6
fact  108:14
   128:7 163:11
factors  98:12
   112:4 181:11
failed  133:8,14
fair  28:20,22
   71:20 73:20
   116:19,21,25
   117:8,9,12,19
   118:3 163:2
   181:6 185:15
fairness  162:22
fall  163:25
falls  162:5
familiar  50:15
   55:12 56:6
   66:23 69:4,5

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

**[familiar - generally]** Page 14

70:7 71:15,22
96:10 100:20
103:13 113:17
116:19,20
120:15 139:11
140:2 152:24
**family** 109:20
128:18,21
176:16
**far** 82:14 108:18
**father** 138:19
**fax** 8:7 106:11
106:16 107:22
108:1,3,4,6
118:14 124:8
**fed** 6:13
**federal** 34:15
**fee** 156:17
169:12
**feel** 15:4 156:9
156:12 173:10
**feelings** 81:22
**feels** 65:24
**fellow** 175:3
**felt** 137:24
**file** 9:9 31:21,24
34:24 38:17
52:22 53:2 87:6
132:5 151:4
**filed** 10:17
**files** 34:25,25
**fill** 22:1
**final** 192:23
**finance** 18:10
**financial** 18:1
190:14,21
191:13

**financially** 11:1
198:13
**find** 74:25 75:16
75:20
**fine** 74:13 81:21
83:11 142:15
**finish** 14:13,14
**firm** 10:24
**first** 14:23 20:14
34:3 36:5 38:10
38:23 44:10
45:19,23 47:2,18
58:7 61:24
67:13 68:21,22
69:1,6 85:8
88:14 100:4
106:10 107:2,10
109:14 111:12
111:19 121:25
123:8 127:5
139:16 140:24
155:5
**fit** 135:6
**fits** 135:22,23
**five** 17:21,21
19:10 56:5 81:3
81:5,11,23 82:2
82:13,15,19,21
112:24 196:16
**fix** 109:11
**flag** 95:20
**flip** 60:20 144:23
**flow** 139:18
140:7,18
**fnx** 157:3,4,7,17
168:13,14,18,20
169:11

**folded** 138:11
**folder** 35:5
**folks** 55:15
188:1
**follow** 89:15
138:3 181:19
190:9
**follows** 12:3
**foregoing** 197:5
198:4,6,10
**form** 63:7 81:7
84:11,12 92:1
105:11 113:11
118:11 132:3
133:21 136:17
146:21 148:10
173:24 176:8
178:23 188:21
189:25 190:15
190:17 192:10
192:20 193:12
195:10
**format** 29:24
30:1 130:10
**former** 134:24
**forth** 111:16
198:5
**forward** 102:9
**foundation** 63:7
63:14 72:23
80:22 87:24
90:21 91:5,15
101:22 117:3
119:13,24 122:9
126:13 127:7
147:22 168:3
182:1,20 183:11
189:4 192:11

**four** 89:1
**frame** 193:4
**franks** 5:13
**fraud** 58:24 59:2
59:7
**free** 102:4
129:12
**frequently** 144:2
**front** 169:12
**full** 135:17
**fully** 89:25
141:18
**function** 19:22
**functionality**
78:21 95:24
**functions** 19:20
**further** 94:2
121:1 133:15
176:15 185:22
190:8,12 195:15
196:13 198:10
198:12
**future** 146:7,9
146:14 173:1
195:25

**g**

**gathering** 66:25
**general** 52:12
159:11 161:19
182:13
**generally** 16:9
20:13 39:1
46:16 48:23
49:12 52:12
55:3 63:3 71:6
90:23 98:4,13
106:4 114:8,11

[generally - handle]                                                    Page 15

115:2 116:7,9
119:17 121:17
127:11 130:17
135:5 141:7
147:10 157:9
158:18 172:22
176:7 179:14,16
180:4,23,25
182:23 183:3
192:14,25
194:17
**generate**  169:17
**generated**  51:18
  170:2
**generates**  27:23
**geoff**  11:19
  35:17 188:11
  195:22
**geoffrey**  4:14
**geographic**  32:3
  116:14
**geographical**
  28:14
**georgia**  3:20
**gestures**  14:20
**getting**  104:10
  135:12 151:4
**gibson**  4:13 5:4
  11:17,19
**gibsondunn.com**
  4:19,20 5:9
**give**  14:23 21:21
  24:5 28:13
  34:19 48:18
  52:12 55:7
  57:12,14 62:21
  69:20,22 75:12
  76:15 102:12

116:24 141:18
143:21 173:13
174:2 177:3
180:5 186:2,2,5
**given**  35:8 52:19
  55:17 57:4
  75:10 76:5 79:7
  114:13 146:9
  196:14
**global**  145:22
  146:2,2,6,24
  147:11
**go**  10:13 14:9
  18:5 20:11 34:3
  35:6,10 36:15
  37:22 38:6
  45:19,23 47:12
  47:18 52:10
  58:20 60:9 61:2
  65:1,18 66:12
  72:10 82:2
  83:20 84:5
  88:13 97:3,4
  99:10 106:24
  109:12 112:15
  115:17 116:12
  120:17 121:8
  123:9,11 125:13
  125:17 126:23
  127:2 128:14,15
  131:7,20 138:15
  139:6,15,16
  140:24 142:8
  143:5 144:16
  145:1 154:19,20
  155:3,3,6,20
  156:14 161:24
  164:11 167:10

170:23 178:8,11
178:12 186:10
186:11 187:25
191:2
**goes**  46:21 96:14
  96:20 115:16
  179:8
**going**  10:5 17:7
  17:14 21:21
  34:3 35:14 38:6
  46:2 47:2 51:7
  67:18 71:18
  72:20 74:9,10,11
  74:14 76:3,22
  80:15 83:10,13
  83:25 84:5,7,16
  84:21 92:19
  93:15 94:2
  95:18 98:6
  111:9 126:3
  134:3 143:22
  152:5 154:24
  155:6 156:11
  159:13 162:20
  163:7 164:18
  171:2 174:15,16
  175:1,6 186:15
  191:5
**golden**  3:4,16
  11:9
**good**  10:4 12:7,9
  64:24 76:16
  83:15,19 109:3
  188:10
**gosh**  13:8 115:9
**grabbed**  114:16
**graduate**  18:7

**grand**  5:6
**granted**  140:16
**gray**  108:20
**greater**  185:6,8
  185:17,18,19
  188:15,16
**gregory**  3:4,16
  11:9
**group**  43:6,9,10
  173:12
**groupings**  71:7
  71:10
**groups**  72:12
**gsigler**  4:19
**guess**  17:7
  157:15 166:11
  166:15 194:4
  195:4
**guice**  4:15
**guideline**  43:19
**guidelines**  43:13
  43:15 140:6
  167:14
**gulino**  5:14
  10:22
**guy**  138:20
  151:12
**guys**  84:8

**h**

**h00015**  165:12
**h0015**  50:15,24
  87:22 166:6
  167:2,4 172:9
**hand**  11:22
**handle**  20:15
  21:6,10 23:1

[handles - incredibly]                                                      Page 16

handles   21:8
   51:24
handling   174:17
hap   69:14
happen   96:3
   101:18 122:6
   147:24 149:4
   152:22 168:6
   172:20 185:13
   185:16
happened   35:9
   119:16 155:21
   163:5
happens   46:3
   51:9,14 79:15
   96:9 118:10
   138:14 147:20
hard   143:10
   177:2
hcfa   30:1
hcpc   50:10,15
   166:16
hcpcs   71:7 172:2
head   25:1 45:11
   47:13 178:4
health   1:9 2:9
   11:18 100:11,15
   116:19,21,25
   117:8,9,12,19
   118:3 167:15,21
   167:24 168:9,19
   169:10,22
healthcare   1:8
   2:8 4:12 5:3
   10:17 11:18
   24:9,15,24 25:3
   25:6 27:18
   61:14 88:7

165:1 194:2
hear   19:23 84:18
   112:8 175:20
   182:24 183:22
heard   10:11 28:6
   29:12 31:20
   58:14 71:14,23
   71:25 110:5,8,11
   157:25 167:12
   167:17 175:3
   177:1 178:11
   183:23
heavy   106:6
held   17:24
helpful   153:20
   174:5
hereto   34:13
   37:16,24 57:20
   60:12 66:14
   68:8 84:25
   97:12 98:25
   123:14 129:23
   134:7 137:5
   138:24 144:20
   161:22 164:20
   186:20 197:8
hey   116:12 173:8
   186:2,9
hi   11:8 12:10
   136:4
high   30:21,23
   33:13,22 52:20
   55:10 75:12
   76:9 77:15
highest   124:5,6
highly   1:15
hipaa   108:4

historically
   21:22 135:3
hit   34:21,25 35:2
   44:10 187:19
hoc   161:11
hold   114:17
   143:4 186:4
holds   188:18
home   22:4 55:2
   55:3
honest   26:3 39:1
   67:15 177:22
honestly   13:20
   55:22 115:21
   156:4
honored   151:24
hope   77:3,5
hospital   29:11
   55:18 181:25
hospitals   108:7
hot   187:10,12
hour   83:14
hours   15:22 33:7
   83:14
housed   44:4
huh   28:1 43:22
   69:9 87:7 162:1
   176:23 190:24
hundreds   52:1
   151:6,8
hurt   81:21
hypothetical
   147:21 179:25
   192:13

i

idea   25:15 28:23
   77:14 168:18,22

172:5
identification
   34:12 37:15,23
   57:19 60:11
   66:13 68:7
   84:24 97:11
   98:24 123:13
   129:22 134:6
   137:4 138:23
   144:19 161:21
   164:19 186:19
identified   22:14
   98:11
identify   125:5
   160:5
ii   124:1,7
illinois   2:19
   15:16 18:6
imagine   115:23
impact   147:3
impacts   151:23
implementation
   91:19
improper   58:24
   59:3 64:5
impropriety
   60:4
include   16:22,25
includes   17:2
   196:5
including   62:6
incoming   32:20
incorporated
   60:19 66:21
incorrect   64:4
   98:12,14
incredibly   76:6

CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[index - june]                                                    Page 17

**index** 6:1 7:1 8:1
  9:1 132:5
**indicate** 54:24
  104:21 116:7
  194:19
**indicated** 14:1
  37:4 118:16
  145:11
**indicates** 50:14
  95:21 96:16
  139:1
**indicating** 21:14
  156:16
**indirectly** 85:22
**individual** 13:12
  46:9 56:23
  192:1 194:1
**individuals**
  19:25 20:23
  21:1 40:11 43:7
  43:8 45:13 56:4
  78:2,3 80:25
**industry** 25:22
**inform** 74:18,19
  115:4 119:5
**information**
  39:2,5 46:18,24
  47:18 49:23
  51:14 62:21
  63:9,17 75:4,9
  78:20 90:13
  95:19 104:19,21
  115:9,19 116:16
  120:16,18 121:9
  123:6 132:8
  144:5 145:13
  148:4,14,23
  150:12 153:21

**161:11,13 167:7**
  174:3,6
**informed** 96:13
  153:13
**initial** 99:16,23
  107:21 111:1
  121:24 124:10
  124:17 125:10
  153:12 178:7,7
  179:24 180:20
  181:4
**initialed** 197:7
**initiate** 21:13
  48:13 183:14
**initiated** 20:1,10
  96:18
**ink** 197:7
**input** 39:4
**inquiries** 21:8
  65:10 163:24
**inquiring** 20:6
**inquiry** 20:1,3,6
**insert** 93:17
**instance** 108:7
**instances** 70:14
  159:11
**instructed** 95:7
**instructs** 15:1
**insurance** 10:17
  17:17 47:22
  100:20 102:15
  102:24,25
  103:12 121:9
  191:22 192:6
**intake** 89:2
  106:5
**integrity** 98:7,8
  98:10

**interaction** 94:7
**interest** 189:12
  189:15
**interested** 11:2
  198:13
**internal** 43:18
**internally** 40:6
  43:18
**internet** 10:9
**interrogatories**
  7:6 60:18 67:14
  84:6
**interrogatory**
  61:2,9,24 65:1
  65:19,20,25
  67:12
**introduced**
  78:21 80:24
**introducing**
  138:16
**introduction**
  99:15
**introductory**
  69:20
**investigated**
  59:20
**investor** 151:11
**invoice** 182:23
**involve** 13:4
  133:25
**involved** 86:22
  87:12,19
**involvement**
  165:3
**involving** 87:20
**ipr** 139:18
**issue** 50:17
  93:22 162:22

  186:22
**issued** 133:8,15
**issues** 96:14
**items** 128:20
**iterations** 141:8
**iverson** 155:7,18

**j**

**j** 4:5
**jacqueline** 94:10
  97:19 137:14
  155:16
**jake** 5:13
**jamal** 175:3
**james** 155:23,25
**january** 61:19
  65:14 138:2
**job** 1:24 18:2
  132:15 175:24
  180:8 189:23
**johnson** 89:6
  97:20
**joined** 11:10,14
  11:19 35:13
  83:24
**jolene** 89:6,8
**jr** 4:5 19:4 85:9
  85:10,21,23 86:3
  86:10,22 87:11
  87:16,19 88:2
  134:20 135:1,3
  135:16,18,24
  141:25
**july** 1:21 2:20
  10:1,6
**jump** 98:22
**june** 69:4

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 218 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[jury - know]                                                    Page 18

**jury** 184:25

**k**

**k** 158:16
**karen** 24:14,23
  88:2,10 164:24
**kathy** 1:20 2:16
  6:3,16 10:15
  11:13 12:1,9
  34:16 196:14
  197:4,15
**keep** 34:9 49:18
  74:8 83:10
  130:18,21 131:6
  135:10
**keeping** 131:13
**kelly** 3:17 35:13
**kept** 22:23,24
  43:15 63:9
**key** 106:23
**kienzle** 94:10,12
  97:19 137:14
  139:2
**kienzle's** 155:16
**kind** 24:8 39:19
  50:10 51:18
  59:5 62:1
  108:20 120:22
  126:19 138:17
  140:5 159:18
  162:3 171:25
  185:1
**king** 4:5 11:12
  11:12 13:1
  14:21 15:10,12
  15:13,20 21:19
  22:11,16 23:18
  25:8,17,25 26:7

26:14 27:1,8,19
28:2,11 29:4,22
30:5,13,19,25
31:12 32:5,13,23
33:3,10,15,24
34:24 35:2,6
36:10 37:1,4,18
38:15 39:23
41:7,15 42:4
44:19,22 48:10
48:21 49:21
52:2,17 53:17
54:13,18 55:20
56:19 57:6
59:16 62:23
63:7,13,24 64:6
64:13,17,22 66:1
67:2,18 68:1,22
70:15,23 71:4,11
71:16,24 72:3,8
72:16,23 73:9,14
73:20,22 74:5,10
74:14,21 75:2,11
75:17 76:8,13,18
76:20,25 77:5,10
77:17,24 78:8,17
79:3,9,18,22
80:7,9,11,21
81:7,18 82:17
84:10,14 85:14
86:15,24 87:14
87:23 88:4
90:15,21 91:4,14
92:1,8,10,19,23
94:2,18 96:7
97:9 101:21
102:7,20 103:4,9
104:1 105:10,18

107:6,16 108:10
111:4,21 112:20
113:11,14,22
115:6 116:1
117:2,15,22
118:11,24
119:11,24 120:9
121:14 122:3,7
124:24 125:11
126:12 127:7,21
128:2,10 129:6
132:3,16 133:10
133:21 136:17
142:11 143:7
145:18 146:21
147:5,21 148:10
149:1,9,12,17
150:2,17,22
151:3,8,15 152:1
152:4,7,16 153:1
153:5,16,22
154:3,14 156:10
158:1,6,10,23
159:4,15 162:3
162:15 163:10
163:16,23 164:4
164:6 165:13,20
166:8,11,23
167:5 168:2,21
168:25 169:5,12
169:16 170:3,11
170:22 171:5
172:3,11 173:2
173:15,24 174:8
174:14 175:1
176:2,8 177:6,13
177:19 178:2,13
178:23 179:3,15

179:25 180:10
180:16 181:13
182:1,7,18
183:11 184:3,17
184:24 185:3,20
185:24 186:4,6,8
186:13,21,25
187:4,7,12,16,20
187:22 191:3,15
191:24 192:9,12
192:24 193:11
193:19,24 194:8
194:13,25 195:7
195:16,20 196:8
196:8
**knew** 70:10
  82:14 162:19
**know** 12:22,24
  13:10,11,13 14:8
  14:10,15,16,18
  14:19,21,24 15:3
  15:5 17:8 20:16
  20:21 23:1,4,7,8
  23:8,22 24:21,25
  26:15,18 28:6,9
  29:1 30:17 31:8
  31:10,16,17,23
  31:25 32:2,4,11
  32:17 33:17
  36:13 38:13,25
  39:10,14,22 40:7
  40:8,13 41:4,9
  41:11,11,12 42:6
  42:22,24 43:4
  44:5 45:10,14
  46:1,20 47:6,13
  47:16 49:19
  50:15,16,20,23

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 219 of 244
CONF 30(b)(6) Kathy Praxmarer       July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[know - lavin]                                           Page 19

51:20,22,25 52:1
52:4,5,24 53:1
53:10 54:1 55:9
55:9,14,18 56:14
56:23 58:11
59:5 64:21 67:5
67:15,24 68:24
69:3,14 70:6,19
70:25 71:2,2,6
71:10 72:2,15
73:7 74:23
75:13,23 76:9,11
77:22 78:16
79:4,25 81:25
82:5,6 84:8,10
85:10 86:17
87:19,20 88:11
88:12,16,24 89:4
89:8 90:11
92:20,21 93:13
95:2,6,11,15,17
95:24 96:2,4,5
98:12,18 99:9
100:6 101:18
106:1,5,12
109:18,21
110:13,17 111:1
112:4,8,9,18,23
113:2,4,6,8
114:8 115:4,24
116:4,13 117:4
118:5 119:15
120:15,24
121:22 122:5,18
123:3,22 124:5
125:8 126:15,16
126:17,18,20,23
127:4,9,24 128:7

128:23 129:1
130:10 131:21
132:10,20 133:2
133:7,12 134:16
135:1,8 136:14
136:19,22 138:9
138:10,15
140:12 141:4,10
141:12,17
143:15,18 144:6
144:8,9,10,11,12
144:15 145:4,24
147:15,17 149:3
149:11 150:15
151:6,23 153:6
155:25 156:4,19
157:4,15,16
159:18 160:7,9
160:16 161:16
161:18,20
163:10,16 165:7
165:9,20,24
166:5,12,20,24
167:1,19,23
168:4,6 171:9,10
171:15,24 173:8
174:6,24 175:8
175:14,19 178:9
178:19 179:10
179:21 180:23
181:15 182:5
190:14 191:19
193:20,23,25
194:4,5,9,11
195:4,5
**knowledge** 42:1
62:5 87:25

**knows** 53:1
94:23

**l**

**l** 3:18 158:16
**lack** 101:22
168:3 182:1,20
183:11 189:3
**lake** 21:23 55:4
132:24
**lands** 108:22
**language** 61:13
62:17 63:22
64:4,11,15,18,21
91:20,24 92:4,7
129:2 130:16
136:6
**large** 43:10
56:22 116:5
182:5,9
**larson** 18:17
**larson's** 18:18
**lasted** 183:20
**late** 162:9
**lavin** 3:5 6:5,7
11:8,8 12:6,10
13:3 22:3,15,17
23:21 25:14,23
26:4,11,17 27:4
27:14,22 28:3,12
29:8 30:2,10,16
30:22 31:4,19
32:9,16 33:1,8
33:12,19 34:2,14
34:21 35:24
36:1 37:6,13,17
37:22 38:1 40:2
41:10,19 42:9

44:21 45:2
48:16 49:4 50:1
52:6,21 53:19
54:15,19,22 56:1
56:25 57:11,17
57:23 59:19
60:9,14 63:4,8
63:18 64:2,10,19
64:25 66:5,8,12
66:16 67:6,23
68:5,10,12,15,24
70:18 71:1,8,13
71:21 72:1,5,13
72:19 73:1,5,12
73:17 74:3,7,12
74:16,24 75:7,15
75:19 76:10,14
76:19,22 77:2,7
77:13,21 78:4,13
78:25 79:5,14,19
79:24 80:8,18
81:1,12,15,20
82:22 83:4,7,10
83:17 84:3,12,15
84:19 85:1,19
86:21 87:3,18
88:1,9 90:18
91:1,8,22 92:5
92:13,22,24
94:15,23 95:1
96:12 97:3,7,13
98:21 99:1,4
102:1,11 103:1,6
103:14 104:8
105:14,25
107:11,23
108:25 111:13
111:18,22

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 220 of 244
CONF 30(b)(6) Kathy Praxmarer   July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[lavin - located]                                                        Page 20

112:22 113:12
113:18,24
114:21,23
115:13 116:11
117:6,17,25
118:20 119:4,19
120:5,19 121:21
122:4,14 123:11
123:15 125:6,16
126:14 127:14
127:23 128:5,13
129:11,20,24
130:2 132:7,19
133:13 134:3,8
136:21 137:2,6
137:10 138:19
138:25 142:12
143:9,13 144:16
144:21 146:1
147:1,14,25
148:16 149:5,10
149:14,21 150:7
150:10,20,25
151:5,10,20
152:3,5,12,23
153:3,11,19
154:1,9,18 155:2
156:13 158:3,8
158:14 159:1,8
159:12,21
160:19 161:23
162:7 163:7,14
163:20 164:3,5,8
164:17,21
165:18 166:1,4
166:14,25
167:10 168:5,23
169:2,7,20 170:6

170:14,18 171:7
172:6,14 173:6
173:19 174:4,11
174:15,20,23
175:8 176:4,11
177:10,16,23
178:6,17,25
179:7,17 180:6
180:12,19 181:9
181:18 182:4,11
183:2,6,17 184:8
184:20 185:1,5
185:22 186:10
186:17,24 187:2
187:6,10,15,21
188:14,20 189:3
189:11,25 190:9
190:13 191:9,18
192:3,18 193:2,5
193:16,22 194:3
194:10,20 195:3
195:8,12,15
196:2
lawsuit   112:21
151:4 169:13
lawsuits   151:6
lawyer   151:11
167:20
ld   1:4 2:4 10:16
learned   178:19
leave   186:14
left   112:2,3
legacy   86:17
141:23 144:10
legal   10:23,25
133:25 177:7,19
196:16

letter   6:18 8:4,10
21:11 37:18,20
62:10,11,12,12
96:4,13,14,16,17
96:20 99:8,18,22
99:23 102:23
105:6 115:16
126:1,4,10 130:7
130:11,14
132:21 135:11
135:20 136:10
136:16,20
138:13,16 142:9
142:18,20
143:14,15,17,23
144:13 193:14
194:18
letters   61:15
96:25 99:10,11
130:16,18 131:8
133:20,23
135:14,18 136:6
136:15 137:19
138:7,8,18 143:8
level   30:21,23
33:13,22 52:20
55:6,10 57:4
75:4,12,14,16,20
76:5 77:14,15,20
115:22 118:17
150:9 166:6
levels   99:9
liable   89:25
176:6,10 177:5
177:12,17
192:17
lightning   187:15

limited   22:21
line   32:24
131:10 141:18
141:18 151:3
158:10 175:12
175:13 188:14
189:13 199:2,5,8
199:11,14,17,21
199:24
link   106:23
131:22
lisa   19:4
list   124:13
137:18 140:21
157:16 166:16
168:24 169:3,22
179:13
listed   102:15
158:13,15 168:9
168:11,20
169:10
listen   79:11
132:14 147:17
listened   176:17
183:18,20
litigation   147:7
152:2
little   65:20 87:5
159:18 179:13
live   42:18 43:4
44:3 111:11
liz   174:24 175:14
llp   3:4,16 4:4,13
5:4
load   138:6
local   167:3
located   21:18
55:1 110:14

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 221 of 244
CONF 30(b)(6) Kathy Praxmarer       July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[location - mean]                                      Page 21

**location** 21:23
21:24
**log** 106:18
**logged** 46:18,19
**long** 15:21 17:4
17:12 22:23
26:19,21 33:13
46:20 53:9,12
54:1 80:2 86:3
88:10 89:3 98:1
139:17 157:12
**longer** 86:14
156:3
**look** 15:23 37:8
38:13,18 47:2,12
50:3,3,23 57:17
67:8 68:5 75:22
75:25 84:14
85:4 88:13 89:5
93:11,14,15
97:17 98:3
101:8 117:8,12
117:19 124:12
129:20 131:7,20
132:2 134:10
136:1 138:11,21
141:20 145:16
155:5 157:11
160:7 164:14,23
**looked** 15:25
181:5
**looking** 36:11
65:23 66:23
85:8 91:20,24
92:3 98:5
100:24 108:3
124:9,12 132:21
137:1 138:1

140:15 141:7
155:4 157:16
166:16 184:9
**looks** 69:5 137:1
145:12 156:15
**los** 5:7
**lost** 154:15
**lot** 38:7 55:24
82:3 92:15
109:8 126:23
138:12,17
140:16 162:9
181:10,20
**loud** 14:19
**louisiana** 4:7
**love** 164:18
**low** 180:23
**lower** 111:3
152:13
**lowly** 151:12
**lunch** 75:21 76:3
76:23

**m**

**m** 3:5
**ma'am** 12:7
**machine** 198:9
**maiken** 4:20
**mail** 138:17,20
**mailroom** 135:3
135:17
**mails** 135:18
**maintain** 130:20
**maintained**
130:23 135:14
168:24
**maintains**
132:13

**major** 18:10
**majority** 159:11
185:12 188:25
**mak** 146:20
**making** 74:2,2
93:20 137:25
146:23 184:24
**manage** 185:12
**managed** 11:18
123:10 145:23
**manager** 85:22
85:24 88:19
**managing** 98:9
**manner** 167:25
**manual** 42:15
43:14,25 44:17
44:20
**manuals** 43:11
**mapped** 72:20
**mapping** 71:14
71:22 72:14
74:20
**margie** 155:7,17
**mark** 134:14,18
136:2 137:13
**marked** 34:12
37:15,23 57:19
60:11 66:13
68:7 84:24
97:11 98:24
123:13 129:22
134:6 137:4
138:23 144:19
161:21 164:19
186:19
**marketing**
133:25 134:17

**materials** 43:21
**matt** 11:8 12:10
13:1,20 22:11,11
25:10 27:10
32:23 34:18
35:6,23 41:9
55:22 56:13
57:15 64:17
67:15 68:22
71:19 72:25
73:20 76:9 77:1
77:10 80:3,9
81:11,18 92:9,20
114:16 152:2
154:14 156:5
162:3,21 171:6
175:2 177:22
186:9,9 187:8
191:2,4
**matt.lavin** 3:11
**matter** 10:16
13:22,23,24
103:23
**matters** 14:4
**matthew** 3:5
4:15 11:16
155:7
**matthews** 5:5
**mattson** 174:24
175:14
**maximum**
179:20
**mean** 25:6,6,20
26:5,13 28:6,8,9
28:19 31:9 39:5
40:8 47:8,22
59:8 68:22 72:6
73:8,8 74:7

**[mean - multiplan]**                                    Page 22

76:15 77:2
79:15 83:10
93:2 109:7
127:24 128:7
137:6 139:5
145:15,20,21,22
147:11 151:1,13
154:10 157:15
162:8 163:5
178:9,10 181:3
185:18 187:2
**meaning**   27:7,16
27:18 149:22
**means**   25:16
31:5 72:2 76:11
101:3 145:16
166:5 177:22
**measured**   49:17
**mechanism**
169:18
**media**   10:14
35:12,16 83:22
84:2 154:22
155:1 170:24
171:4 196:15
**medical**   167:25
**medicare**   55:19
**meet**   15:11,21
152:24 153:4,7
**meeting**   15:12
70:11
**melissa**   19:3
**member**   20:10
21:10,15 24:15
44:6,9 46:3,4
62:12 63:12
88:6 99:17
100:1,19 101:18

102:3,3,13,17
103:18 104:9,14
104:20,24 105:2
105:7 106:2,9
107:3 121:4,6,7
122:1 125:23
129:1 131:1,5,7
133:9 135:23
156:2 172:23
173:12,12 174:2
174:6 182:24,25
189:9 193:8
194:1,5,11
**member's**   61:13
90:8 103:7
121:9
**members**   19:10
61:15 62:18
65:12 89:22
90:13 91:2,3,11
109:20 131:6
172:8,9 176:5
177:4 184:21
189:24 193:17
195:1,5
**men**   121:18
**mental**   167:21
**mention**   84:22
162:7
**mentioned**   20:16
22:19 32:18
50:25 52:23
53:24 60:8
77:19 82:3,7,10
86:18 103:10
107:9 111:14
121:7 138:8
163:1 183:19

**mentions**   85:9
**met**   15:10 37:4
**methodology**
7:17 24:2 25:11
32:15 33:5,11
48:24 52:8,11,13
52:16,20 55:8,11
57:5,9 69:19
70:20 73:23
75:13 79:2,8,12
80:1,5,7 81:5,17
81:25 82:16
91:21,25 108:9
112:9 115:10
116:17 143:18
165:4,15 167:8
171:18,20
**metrics**   49:17
**mike**   19:4
**miller**   19:4
**mind**   16:6 66:4
114:16 115:9
**mine**   24:21
34:19
**minor**   128:22
**minute**   34:20
85:4 97:7
134:10 139:6
186:5
**minutes**   83:14
123:21 170:21
170:22 183:20
**mirror**   136:5
**missed**   165:17
**modiano**   3:7
11:10
**modifier**   126:22

**mohler**   134:14
134:18 136:3
**month**   161:13,17
**monthly**   161:5
**months**   22:24
131:14
**morning**   10:4
12:7,9 36:10
**moss**   19:4 85:9
85:10,21 86:3,10
86:22 87:11,19
88:2 134:20
135:1
**mother**   103:20
**moved**   55:4
**moving**   69:15
**mpi**   7:17,23 8:5
8:8,11,14,17,21
8:22,25 9:7
68:12,13 97:14
97:15 99:2,2
123:16,16
129:25,25 134:9
137:8 138:22
139:4 140:24
144:22,22
161:24 164:21
**multi**   45:21
**multipage**   47:7
**multiplan**   1:10
1:19 2:10 4:3
6:15 7:7,12
11:13 13:15,17
15:16 16:11,16
16:17,23 17:7,9
17:10,13 18:16
20:18 24:7
31:14 34:16

**[multiplan - never]** Page 23

39:15,21 40:1,4
40:5,6,17,23
41:5,13 42:3,8
42:12,14 44:24
47:19,21,24 48:1
49:7 60:19
61:11 62:4,15
63:10,23 64:3
65:9,24 66:21
90:12 91:2,9,12
93:3 94:8 95:7
116:25 119:5
128:25 134:1
145:15 147:3,18
147:19 148:6,9
148:14,18,21,25
149:6 151:24
152:14,15
160:14 162:9,11
162:12 164:14
167:23 172:24
180:7 184:12,15
185:7 189:22
191:10
**multiplan's** 6:23
7:4,9 57:3,24
60:16 66:19
94:6 151:6
159:24 181:3
**multiple** 142:23
143:3 183:9,24
**multitude** 31:17
**multiverse** 43:17
44:4 76:1,1
**mumbled** 175:4
**mutual** 49:1
**mutually** 49:2
154:6 184:10

**mysteries** 56:17

**n**

**n** 23:13
**n.w.** 4:16
**nadia** 1:23 2:21
10:24 198:22
**name** 10:22 12:8
12:10,22,24 13:2
82:9 125:22,23
156:5,7 175:19
188:11 198:16
**named** 40:25
**names** 56:11,14
56:18,22,23 78:2
78:3 156:8
**naperville** 2:19
15:16 187:10
**natalie** 3:18
**natalie.cascario**
3:23
**natasha** 19:4
**national** 22:1
166:6 167:2,3
**nature** 13:7
**nearby** 187:19
**necessarily**
43:14 157:24
171:16
**need** 14:12 15:4
34:24,24 35:20
64:23 71:19
73:25 75:3
83:11 101:3
112:13 132:8
153:6 157:11
188:2

**needs** 65:24 66:7
178:22
**negotiate** 21:1
51:11 95:8,13
96:5 103:3
104:24 105:17
109:8 130:9
151:13 159:10
176:14 179:6
180:9 182:16
189:16
**negotiated** 51:2
118:8 119:6,10
119:22 120:4,21
121:23 128:24
129:4,10
**negotiating**
103:16 105:1
150:24 151:1
153:10 154:4
184:10 189:23
190:5
**negotiation** 17:2
27:3 44:16 45:3
46:6 47:8,25
48:4,7 49:1 50:8
99:19 105:22
107:1,3,14 109:8
111:15 112:7,10
112:18 117:21
120:25 121:3,12
121:17 125:4
133:7,14,18
145:9,11,14,24
153:12,13
156:18 157:5,7,8
157:9 158:19
159:6 176:18

177:4 179:4,21
179:22 180:15
192:23
**negotiations**
20:19 43:23,24
44:7,13 95:21
159:3,3 168:7,10
169:12,22,24
192:22
**negotiator** 118:6
154:7
**negotiator's**
112:3
**negotiators**
19:24 20:21
21:3,6 40:13
54:7 149:25
189:12,15 190:3
**neither** 198:12
**network** 16:18
16:21,22 20:18
41:12 65:13
89:22,24 90:9,24
91:3,11,17 100:7
100:9,23 127:11
127:12,16
145:21 147:10
149:8,8 151:24
152:18 154:16
181:20,23,25
182:5,10,13,14
192:2
**networks** 147:6
**never** 63:22
92:12 105:8
128:3 150:17
175:5

**[new - objection]**                                                      Page 24

**new**   1:10 2:10
  22:6 47:18 53:8
  53:11,25 54:4,5
  69:12,15 78:11
  78:19,20 82:8
  127:3 128:25
  138:6 156:24
**newhart**   1:23
  2:21 10:24
  198:22
**nicole**   3:6 5:5
  11:10 84:17,19
  84:20 97:4
  98:23 123:12
  134:5 138:22
  160:20 174:16
  186:17
**nicole.wemhoff**
  3:12
**night**   162:10,10
**nmatthews**   5:9
**non**   128:20
**normal**   184:5
**north**   192:25
**northern**   1:2 2:2
  10:18
**note**   10:7 21:19
  21:19 23:18
  39:23 41:7,15
  42:4 48:10
  49:21 52:17
  53:17 55:20
  56:19 57:6
  59:16 62:23
  63:13,24 64:6
  66:1 67:2 68:1
  70:15,23 75:17
  78:8 79:3,9 81:7

85:14 86:15,24
87:14,14 88:4
90:21 91:4,14
92:1 96:7
101:21 102:7,20
103:4 105:10,18
107:6,16 108:10
111:4 113:11
115:6 116:1
117:2 118:24
119:11,24 120:9
121:14 122:17
124:24,24
125:11 126:12
127:7,21 128:2
129:6 132:3,16
133:10 145:18
147:5 148:10
149:1 150:2,17
155:24 158:1
159:15 170:3,11
172:11 173:2
174:8 176:8
177:6 178:13,23
179:15 184:3
191:15 193:11
193:19
**noted**   33:9
  196:18 197:7
**notes**   156:15
  170:19
**notice**   6:12
  34:14 163:1
**noticed**   60:4
**noticing**   11:7
**notify**   157:23
**number**   6:11 7:3
  8:3 9:3 10:19

28:25 35:12,16
36:12 37:25
49:8,9 52:5 61:3
65:1,19,20 68:1
70:5 78:12
82:19 83:22
84:2 101:16
102:4,12,15,25
103:11,12
104:15 112:16
127:1 137:19
139:17 154:22
155:1 170:25
171:4 174:18
196:15
**numbers**   68:12
  84:23 85:2
  97:14 99:1
  123:15 129:24
  134:8 139:4
  142:13 143:10
  144:21
**nw**   3:8,19

**o**

**o**   23:13,13
  158:16
**oath**   12:2 198:7
**object**   14:22
  67:18 92:19
  94:2 118:11
  133:21 136:17
  147:21 152:7
  173:24,24 175:1
  175:6 180:10
  191:7
**objection**   21:19
  23:18 25:8,17,25

26:7,14 27:1,8
27:19 28:11
29:4,4,22 30:5,6
30:19,25 31:12
32:5,13 33:8,24
35:21 37:1
39:23 41:7,15
42:4 48:10,21
49:21 52:2,17
53:17 55:20
56:19 57:6
59:16 62:23
63:7,13,24 64:6
64:13 66:1 67:2
68:1 70:15,23
71:4,11,16,24
72:3,9,16,23
73:9,14 74:21
75:11,17 77:17
78:8,17 79:3,9
79:18,22 80:21
81:7 82:17
85:14 86:15,24
87:14,23 88:4
90:21 91:4,14
92:1,8 96:7
101:21 102:7,20
103:4,9 105:10
105:10,18 107:6
107:16 108:10
111:4 113:11,22
115:6 116:1
117:2,16,22
118:24 119:11
119:24 120:9
121:14 122:3,7
124:24,25
125:11 126:12

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 225 of 244
CONF 30(b)(6) Kathy Praxmarer   July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[objection - okay]                                                    Page 25

127:7,21 128:2
128:10 129:6
132:3,16 133:10
145:18 146:21
147:5 148:10
149:1,12,17
150:2,3,17
152:16 153:1,16
153:22 158:1,6
158:10,23
159:15 170:3,11
172:3,11 173:2
173:15 174:8
176:2,8 177:6,13
177:19 178:13
178:23 179:3,15
179:25 180:16
181:13 182:1,7
182:18 183:11
184:3,17 185:20
188:20,21 189:3
189:25 191:6,15
191:16,23,24
192:9,10,24
193:11,12,19,24
194:13,25 195:7
195:10
**objections**   7:4,9
11:3 14:25
35:21 60:16
61:25 66:19
75:2 150:22
151:15 153:1,5
154:3 159:4
165:13 166:8,23
167:5 168:2,21
168:25 169:5,14

**objects**   35:20
**observation**
189:7
**obtain**   61:11
**obtained**   175:4,5
**occasionally**
148:24 172:8
**occur**   138:13
**occurred**   20:9
48:25 57:10
62:13 86:20
**occurs**   112:10
176:15
**october**   137:14
**offer**   49:1
107:14,21
110:24 111:1,17
111:19 124:10
124:19 125:23
126:3,10 127:3,5
129:3 174:1,12
176:19,20
180:21 184:1
**offered**   51:7
**offering**   22:1
96:19
**offers**   20:18 49:6
**office**   15:17
187:12
**oftentimes**
158:24 159:9
**oh**   56:13 61:4
88:14 142:10
143:1 151:10
155:17 160:20
187:21
**okay**   13:4,7,10
13:15,18,22,25

14:4 15:7,11
16:7,14,25 19:1
19:6,14,19 20:2
21:2,12,17 22:16
23:14 24:8,17
25:24 26:5,12,18
26:24 27:5,23
28:6 29:1,9,12
29:20 30:11,17
30:23 31:5,20
32:1 33:2 34:11
35:10,14 36:2,5
36:8,11,17,23
37:7 38:3 42:10
43:2,11,15,20
44:12,22 45:3
47:1,3 48:17,18
49:5 50:2,14
51:13 54:11
56:2 57:3,17
58:16,19,22
59:12 60:9 61:7
62:2,15 63:9,19
64:22 66:18,24
67:7 68:11,14
69:14,18 70:6,10
70:13 71:9
72:14,20 74:12
74:14 75:8,20
79:6,15,20 80:19
81:2,16 82:22
83:10,17,18,20
83:25 84:4 85:7
85:20 91:9 92:6
93:2 95:11,18
96:1,13,20 97:8
97:16,18 98:15
98:21 99:3,13,22

99:25 100:22
101:2 102:2,12
103:2 104:9,14
104:24 105:7
106:7 107:2,24
110:8,17,19
111:13 112:2
113:2,9 114:17
114:24 116:19
118:6,21 119:5
119:20 120:6
122:21 124:20
125:7,19 126:25
127:18,20,22
128:14,23
129:16 130:1
134:12 135:10
136:1 137:9
138:5 139:8
140:3,8,20
142:17 143:4,5
143:12,20 144:1
144:25 145:3
146:18 147:2,15
148:7,17 152:13
153:20 154:20
154:24 155:3,15
155:17,20 157:7
157:15,22
158:17,21 159:8
160:1,19 161:24
162:2,22 163:25
165:3,9 166:1
167:1 168:15
169:3,8,21 170:9
170:18 171:2,15
174:5,12,24
175:8 176:5,12

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 226 of 244
CONF 30(b)(6) Kathy Praxmarer                    July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[okay - part]                                                      Page 26

177:4,11 178:7
180:7 182:12
183:2,7 186:6,7
186:25,25 187:7
188:4,10 190:25
191:10 192:19
193:2
**old** 141:16
**ones** 156:8
**ongoing** 93:22
**onvicord** 23:11
**open** 22:2 46:6
48:18,23 51:3
93:22 157:12
161:2 163:12
180:14
**opened** 46:14
161:25
**operation** 19:16
21:25 135:4,17
**operational**
19:17,19 87:17
**operations**
134:24
**opportunity**
165:17
**opr** 65:14 96:21
100:17 111:23
112:18 113:13
114:12 128:1
139:18 147:4
149:16 179:8
180:13 191:12
**option** 103:7
**order** 1:16 92:2
149:19 151:17
195:24 196:5

**orders** 186:1
**organization**
24:12 135:15
**original** 48:6
132:11 175:25
176:21 179:2
**originally**
127:13 138:1
**originated** 21:25
94:6
**outcome** 11:2
49:3 99:19
118:18
**outcomes** 161:3
**outlined** 105:5
125:3
**outlines** 44:24
**outlining** 140:5
**outpatient** 7:15
89:17
**outside** 25:25
26:7 27:9 29:5
30:19 31:12
39:3,17 41:15
45:1 63:13
67:19 71:12
72:23 80:11,22
87:15,23 90:22
91:5,14 95:12
96:11 110:10
113:14 117:2
119:13,25 122:7
136:24 147:5
149:1 152:16
165:14 168:2
172:3 173:15
182:18 192:9,12

**overall** 140:6
**oversaw** 82:20
**oversee** 16:18
82:4
**overseen** 26:22
56:2,4 88:20
**oversees** 85:17
**oversight** 134:20
135:1,16,19,25
**overview** 57:9
57:13 69:7,10,21
75:13 76:9
**overviews** 69:15
69:18
**owned** 39:20,25
40:23

**p**

**p** 6:13
**p.m.** 2:20 154:21
154:25 170:24
171:3 196:13,18
**pad** 61:15 62:10
62:11 96:4,13,14
96:16,17,20,24
126:1 130:16,18
131:8 133:20,23
135:11,13
136:10,15,15
138:6,18
**pads** 134:20
135:2,17 136:5
**page** 6:11 7:3
8:3 9:3 45:6
58:17,17,21 61:6
61:23 65:2,21
67:8 85:8
124:13 128:16

138:15,16 142:9
145:1,10 155:5
199:2,5,8,11,14
199:17,21,24
**pages** 1:25 6:16
6:18,21,25 7:7
7:13 45:7
140:16
**paid** 104:11
116:15 119:6,23
120:3,12,12,21
127:2,25 192:6
**pam** 134:15,16
134:17
**pandemic** 21:23
**paper** 68:19
69:23
**papers** 55:12
**paragraph** 61:25
62:1 93:15
100:4
**parameter** 48:5
**parameters** 45:4
47:8,25 48:4
112:15,18 113:3
125:3 153:14
179:22
**parity** 167:17,19
**part** 31:25 39:8
40:5,7 42:8
45:15 48:25
69:15 95:16
96:19 109:17
110:9 111:15
112:6 132:15
140:17,18
148:22 160:1
166:3 169:13

**[part - plaintiffs]**                                       Page 27

171:18
**participants**
2:17 10:10
**participated**
86:12
**particular** 47:5
47:19 96:2
100:24 102:17
128:8 130:22
131:6 139:25
144:9 146:10
150:15
**particularly**
87:22 113:20
**particulars**
24:21 42:25
44:25
**parties** 10:13
35:20 58:25
59:3,22 184:11
198:14
**partnership**
134:1
**party** 11:1 35:20
**passed** 175:18
**patch** 102:5
**patience** 92:18
**patient** 20:24
21:11,15 32:23
44:11 45:19,23
45:25 46:4,23
48:13 54:9
62:11 88:20,25
90:6 91:17
92:17 99:8,10,11
101:12 105:5
106:2,9 123:8,10
127:11,15 128:9

128:18 130:7
135:4,18 141:1
147:16 172:7
176:15 185:9
189:9 191:21
192:1,4 194:1,17
**patient's** 128:18
128:21 176:16
**patients** 61:16
190:20 191:11
191:19
**patterson** 141:24
**patterson's**
142:1
**paul** 104:14
**pause** 114:19
**pay** 101:3
118:21 129:4,9
178:21,24 184:6
194:24
**payer** 47:3
100:18 120:14
136:25
**paying** 177:15
**payment** 70:9
98:7,8,10 103:13
116:7 119:2
120:16 121:1
122:1 129:15
157:7 159:3
169:21,23
179:19 183:5
**payments** 104:7
**pci** 186:23 187:4
**pdf** 58:18,21
61:6 65:2 67:8
**penalty** 197:5

**pending** 15:6
**pennsylvania**
3:8
**people** 18:21
19:1 22:4 42:2
52:14 55:17
56:2 79:16
108:5,6 109:3
**percent** 48:6,9
48:19 49:7 51:8
111:2 113:5,7
146:25 166:7
176:21 178:21
179:1,6 180:24
184:2 193:1
**percentage**
111:20 189:8
192:22
**percentile** 113:9
113:21,21 114:5
114:7,12 115:1,5
167:3
**perform** 169:8
**period** 22:21
82:2 112:21
125:9 146:9
**perjury** 197:5
**permanent**
158:21
**permission** 35:5
**permitted** 61:18
**person** 14:11
25:2 77:7 82:9
94:9 110:20
165:16,16,21,22
**personal** 13:22
**personally** 39:12

**personnel** 43:16
**perspective**
135:9
**pertinent** 152:3
**phelps** 4:4 11:12
**phelps.com** 4:9
**phi** 106:23
**phone** 22:8,12
23:6 40:11,16,17
90:6 101:15
102:9,12,15,25
103:11,12 106:7
106:10 107:9,12
107:13,20,21
108:8,13,24
110:24 111:9
121:4 131:13
132:11 175:11
183:9,24
**phones** 42:2
**physical** 133:5
**physically** 15:14
21:18
**physician** 29:18
29:18,21 30:12
166:22
**pi** 98:7
**piece** 138:18
**pitch** 184:25
**place** 10:12 20:7
46:21 93:19
125:4 152:7
198:5
**placed** 198:7
**plaintiff** 10:16
**plaintiffs** 1:6 2:6
2:17 3:3 6:20,23
7:5,10 11:9

**[plaintiffs - pricing]**                                    Page 28

12:11 38:4
57:25 59:4,22
60:6,17 66:20
67:13 162:16,17
**plan**  62:7,19
63:6,10,17,22
64:4,9,11,15,18
64:20,21 89:22
90:9,13,17,20,20
90:24,25 91:3,6
91:11,13,20,24
92:3,6,11 100:11
100:15,19
**plans**  30:4 61:14
61:19 62:16,17
63:5
**play**  174:15
181:11,16
**played**  174:22
**please**  10:6 11:3
11:21 12:8 15:2
58:16 92:16
186:1
**point**  44:12 51:6
59:14 71:18
83:15 94:22
113:20 114:14
154:15 163:17
163:18 195:4,25
**points**  115:12
**policies**  65:8
163:24 167:13
**pop**  47:9,11
141:12,15
**pops**  95:19
**portal**  78:21
106:12,12,17,19
106:24 107:13

107:15,22,25
110:25 118:7,14
122:12,17,21,22
122:23 123:4
156:20,23,23
**portion**  49:16
195:19
**position**  18:22
57:3 69:16
112:17,24 181:4
**positions**  22:2
**possible**  108:1
136:7 176:1
179:18 180:9
182:14 194:21
**possibly**  156:6
**post**  155:23
157:7 159:3
169:21,23
**postgraduate**
18:12
**potentially**
185:8,10
**practical**  103:23
**practices**  98:13
98:14
**praxmarer**  1:20
2:16 6:3,16
10:15 11:14,22
12:1,9,10 34:6
34:17 36:2 74:4
83:18 84:4 94:4
139:3 155:3
188:10 189:7
190:14 196:15
197:4,15
**praxmarer's**
94:22

**pre**  21:22
**precise**  14:2
**precisely**  17:8
**predate**  56:9
**preparation**
55:23 57:16
68:23
**prepare**  15:8
36:24 37:10
75:4
**prepared**  33:10
38:16 44:24
45:12 74:1
**preparing**
162:24
**prepayment**
157:8,9 159:2,7
**presence**  22:1
**present**  5:12
11:5 47:4 61:20
65:15
**presentation**
16:1 69:23
**presentations**
16:7,9
**presented**  56:21
70:3 121:10
**president**  16:21
17:5 18:19 25:2
142:2
**pretty**  132:6
**previous**  165:14
183:19
**previously**  50:5
50:8 125:3
151:16 165:1
175:12

**price**  27:24
30:11 32:2
52:16 62:18
70:22 79:7
116:25 124:13
124:15,20,21
125:9 126:19
149:11,23
152:14 161:17
165:4 167:4
173:22 178:12
179:20 180:14
180:20 181:20
184:7
**priced**  28:24
29:2 65:13
96:21 100:16
103:16 121:12
122:5,16 126:10
147:4,19 167:25
171:23 172:2,25
173:9,10 178:20
179:9 182:17
183:10 184:13
191:12
**prices**  32:1,10
33:20 127:16
171:10,12,16
**pricing**  13:5
20:17 25:7
27:18 30:3,18
32:18 46:1
70:14 87:21
115:24 124:17
125:10 150:6
152:25 153:4
159:24 160:2
167:2 171:22

[pricing - question]                                    Page 29

172:25 173:13
178:8 179:1,4
181:4
**primarily**  27:2
30:8 159:6
**prior**  13:19 17:6
17:9 51:1 60:8
75:5 137:18
167:1 183:20
198:7
**privy**  166:3
**pro**  182:14
**probably**  15:22
47:14 56:21
75:18 183:7
**procedure**  34:16
50:10 55:19
142:23 143:4
**procedures**  65:8
122:19 163:24
**proceeding**  11:3
**proceedings**
35:13 83:24
114:19 198:4,6,8
**process**  51:21
75:9 86:19
87:11 98:9
104:11 110:23
137:22 139:18
140:7,18 172:16
**processes**  138:13
167:13
**processing**  183:3
**produce**  7:11
39:15 66:21
**produced**  42:19
162:8,9,16
174:21 187:1

**product**  23:24
92:3 161:19
168:12
**production**
67:10
**products**  69:7
**professional**
13:23,24 14:4
29:12,15,17,25
30:3,11 166:22
**programming**
23:16
**protective**  1:16
195:24
**protocol**  128:24
**provide**  39:10
42:18 57:8 92:6
101:11 149:19
150:11
**provided**  19:12
44:1
**provider**  21:12
21:13 44:5,9,15
45:18,21 46:5,12
47:2 48:8,15
49:6,18,19 50:3
50:20 51:5 52:8
57:4,10,14 59:10
78:22 79:6,11
89:24 91:18
93:19 95:14,22
96:6 99:20
100:7 101:14
104:23 105:16
105:17 106:3,21
107:15,19,19
108:9,13,17
109:22 110:4

111:7 112:14
115:12,19,21
116:6 117:10
118:8,15 119:17
119:22 120:8,13
120:22 121:7,13
121:24 122:16
123:5,19 125:8
126:21 128:17
128:24 129:12
129:18 131:5
133:16 144:4
145:4,5,11 146:3
146:10 147:2
148:4,23 150:14
153:12,13,21
154:7,13 156:16
157:2 158:9,19
172:18,23 173:8
174:2,6 176:14
177:8,24 179:18
180:1 181:4,11
182:23,25 183:8
184:1 189:10
192:2,5
**provider's**
108:23 120:15
120:25 124:13
151:24
**providers**  19:25
28:16,20 32:3
41:12,23 52:23
55:7 61:17
70:19 74:18,19
75:10 76:5 77:4
95:6,12 106:8,18
108:2 109:3,6,19
109:23 112:8

114:25 115:5,16
115:17,23
116:13 118:2
147:15 148:24
150:12 157:17
159:10 168:9,19
169:9,10,23
181:24,24
182:15 191:14
191:20
**provides**  116:22
189:19
**pull**  47:18 75:3
75:24 161:8,11
161:12
**purposes**  42:20
**pursuant**  1:16
6:13 34:15
**purview**  23:2
**push**  137:25
**put**  37:13 121:22
138:12 157:20
157:22
**putting**  178:3

---

**q**

**quality**  10:8,9
190:4
**question**  14:13
14:14 15:2,6
21:13 23:3,20
33:2,17,17 39:18
40:9 50:12 60:8
65:3 73:4 74:17
76:21 77:6
79:23 80:13,16
81:8,18 95:18
98:21 100:4

**[question - recommendation]**                                        Page 30

101:25 104:13
115:8 117:16
121:19 122:8
125:12 127:1
128:4 129:14
131:2 143:22
147:6 152:6
167:6 169:15
171:9 186:21
189:3 191:2,25
**questioning**
32:24 151:3
158:11 188:14
189:13
**questions**   14:22
20:8 25:12 33:4
70:2 74:6 94:3
94:11 152:18
163:3 170:20
185:23,24 187:9
188:4,13 190:8
190:10,20
195:15
**queue**   123:9
**quick**   14:9 36:7
188:4,13
**quickly**   75:23
140:19
**quit**   77:5,10
**quite**   13:20,21
26:3 70:4 86:18

**r**

**r**   3:7 5:5 6:13
23:13 86:2,2
**raise**   11:22
**ralston**   164:24
164:25

**ran**   135:3
**range**   126:22
**rare**   96:10
115:21
**rarely**   57:2
89:12 132:18
**rate**   50:4 116:6
118:8 120:21
128:25 129:1
146:4 178:7,9,11
180:23 181:1,12
**rates**   49:19
148:25 161:19
163:21
**reach**   172:18
**reached**   118:7
**reaches**   96:2
106:8
**reaching**   106:3
**reaction**   107:2
108:23
**read**   37:8 58:12
58:23 60:15
61:8 62:3 65:6
66:3 67:9 89:13
93:16 100:5
101:2,9 124:14
128:16 134:19
136:3 139:23
142:19,22
155:22 156:14
157:1,10 165:10
195:16 197:5
**reading**   85:5
95:9 136:24
141:24
**readjudicated**
105:9,15

**readjudication**
118:9
**readjustment**
118:9
**ready**   151:4
188:5
**real**   36:7
**really**   14:2 20:6
24:5,6 25:10,11
25:13 26:19
27:17 32:14
77:8 96:10
109:21 120:21
120:25 133:24
137:20 141:17
162:22 165:23
166:2 170:20
177:21 193:3,23
**reason**   14:15
35:9 142:14
199:1,4,7,10,13
199:16,19,20,23
**reasonable**
126:9 181:6
**reasonably**
75:25
**reasons**   157:21
158:20
**recall**   14:2 67:16
69:6 82:19
110:18 171:14
189:13 196:6
**receipt**   21:11
**receive**   41:4
62:19 63:16
64:12,15 65:12
78:18,24 81:14
96:15 102:22

105:23 106:21
108:3 118:14
119:17 150:9
189:9 193:18
**received**   65:10
79:1 81:3,11
100:12 104:4,16
108:18 116:8
122:1,15 131:4
157:13 194:18
**receives**   118:23
119:1 123:6
**receiving**   69:7
69:10,15 78:15
153:8 174:7
179:19 183:4
193:13
**recess**   83:23
154:23 171:1
**recipient**   135:5
**recognize**   56:18
97:23 99:5
123:17 130:3
137:11 139:9,12
139:22,25 156:5
162:13,14 164:9
**recognizes**   68:25
163:8
**recollect**   144:15
**recollection**   83:1
**recommend**
151:18
**recommendation**
19:12 99:16,24
101:1 105:24
119:2 129:19
149:20,22 154:5

recommendati...
104:6
recommended
109:13
record 10:5,13
11:6 12:8 14:25
22:7,12 23:5
35:6,11,15 46:22
83:21 84:1
154:21,25
170:23 171:3
175:4 186:1,12
187:25 196:13
198:8
recorded 10:11
10:14 42:16
43:4,8 44:3
175:12,12
recording 10:8
10:12 131:22
174:20 175:2,5,6
183:18 186:15
186:22
recordings
131:24 132:14
175:9
records 130:21
131:6,14
recovery 110:5,6
110:11,13,19
125:20
reduction
142:23 143:4
reeder 85:25
86:1,2
refer 19:20,21
25:13 42:3
102:14 104:5

120:12 148:5
153:7 175:11
194:16
reference 63:22
64:4,9,16 78:3
91:19 94:16
100:16 136:22
149:15 160:17
161:1,2 163:20
163:22 177:1
referenced 49:25
67:25 78:10
101:19 102:3
104:15 117:10
117:10 126:10
143:18 146:12
146:17 152:10
168:11
references 94:18
94:19 95:5
124:16,17
158:18 165:24
referencing 44:6
54:7 64:11,20
90:5,8,23,25
100:19 150:5
159:5 160:18
181:22
referred 19:24
20:14 44:13
67:1,21 68:19
94:12 115:14
referring 136:8
147:10 148:15
165:9
refers 65:18 67:5
refresh 34:21

refreshing 34:9
57:21
refuse 51:9
refuses 51:5
regard 65:10
regarding 44:10
65:11
regardless 163:4
regression
137:22
regular 196:6,9
reimbursement
28:14 55:19
100:9,23 151:12
reis 18:17,18
reject 49:6 119:9
relate 14:6 164:1
related 10:25
13:8 16:5,8
19:21 39:11
50:12 55:23
59:3 60:6 98:8
122:1 131:22,24
137:17 163:14
relates 113:5
relating 188:13
relation 59:21
relationship
94:10 109:18
relationships
109:19
relative 63:11
198:13
relevancy
149:12
relevant 75:8
76:6 112:21
147:6 150:14

152:1,4
relied 67:11
remaining
162:12
remember 12:17
12:20 15:25
16:3,5,7 19:2
38:10 68:20
69:1,25 82:1
97:23 131:15
156:7,9 190:23
remote 1:17 2:15
3:14,24 4:10,21
5:10,15
remotely 2:17
10:20 22:4
rendered 29:10
rephrase 87:1
replicate 137:1
report 18:16,21
24:23 51:18
85:22 160:8,9,10
160:11,23,25
161:4,5,5,8,10
161:13 162:4,25
170:1,4,10,15,17
170:18
reported 1:23
reporter 2:22
10:24 11:15,21
14:10,20 83:2,5
83:6,9,13 185:25
187:25 196:3,10
198:2
reporting 169:17
reports 18:24,25
24:24,25 85:23
160:4,13 162:5

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 232 of 244
CONF 30(b)(6) Kathy Praxmarer        July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[represent - right]                                                Page 32

**represent** 12:11
180:25 187:4
**representation**
64:5
**representative**
6:15 46:23
**representatives**
42:11 74:18
148:1,7
**representing**
10:22 11:13
185:11
**reprice** 30:8
151:19 152:11
**repriced** 127:13
147:12
**repricing** 18:20
20:8 24:6 31:3
57:10 62:13
101:1 116:24
151:18 153:9
166:6
**reps** 20:21 88:21
88:24
**request** 39:1,5,7
67:10,17 76:23
76:25 97:1
180:5
**requested** 39:10
62:22 137:20
159:19
**requesting** 136:4
145:12
**requests** 7:11
66:20 67:1
**require** 39:8
**requires** 132:6

**research** 148:5
**researched** 39:3
**resolution** 19:23
46:7,8,11,24
47:1,10 48:14,18
49:10,13 50:2,21
50:22 52:15
54:11,16 56:12
56:15 63:20,21
77:22 78:11,15
86:11,23 93:23
95:20 104:18,22
105:3 106:3
109:2,25 110:20
112:13,14 114:6
114:24 115:20
116:18 117:7,11
117:18 118:1
123:7,23,25
124:3,7 131:17
147:17 149:25
172:17 179:23
**resolutions**
189:16,23 190:5
**resolve** 51:17
99:21 179:23
**resolved** 99:20
**resource** 115:11
115:18
**resources** 31:2
182:15 183:1,8
**respond** 24:20
118:2 148:1
162:16
**responding**
67:12 111:16
**response** 65:23
65:25 66:10

67:25 108:23
114:4 148:22
157:14 187:1
190:19
**responses** 7:10
61:24 66:20
**responsibili**
69:12
**responsibilities**
19:15 24:18,19
**responsibility**
69:12 82:25
190:15,21
191:13
**responsible** 53:4
133:19 141:21
191:21 192:6,7
**responsive** 66:25
107:20
**restate** 73:3
**result** 105:8
**results** 61:10
192:22
**retain** 48:6
49:15 130:19
175:24 180:8
184:15,18
**retained** 196:16
**retaining** 189:12
**retainment**
49:16
**retroactive**
117:15
**return** 105:23
135:23
**returned** 118:19
**returning**
107:20

**revenue** 159:24
159:25 160:2,4
**review** 7:16 16:6
38:16 55:22
57:15 61:12
62:19 67:4
77:20 86:19
89:18 93:11
135:6 141:18
159:23,25
160:13
**reviewed** 37:5
37:11 60:7
89:16
**reviewing** 58:4
100:21 140:19
165:24
**rh** 1:4 2:4
**rich** 13:2
**right** 11:22
12:15,17 13:16
15:6,8,14,18
16:14 18:15
20:19 21:3
22:14 25:16
26:20 27:24
28:4 31:6,8
32:10,20 33:8
36:23 37:3
40:14 41:13
44:17 46:12,15
47:6 53:12 54:6
54:8,12 56:3
58:7,20 61:2,25
64:18 66:17
68:5,20 69:22
76:10,22 77:2,14
80:1,8 81:20

**[right - sean's]**                                              Page 33

82:12,16 83:7,17
83:18 84:15,23
85:8 87:6,8,9
90:13,18 96:22
98:1,16 99:9
100:3 101:8,16
103:15,17,21,25
104:18,25 105:2
109:2,4,9 110:10
110:21,23
112:25 114:2,3
115:25 121:24
123:11 125:17
125:24 126:25
127:15,16,20
128:6,9 129:20
130:3 131:11
132:22 135:12
137:11 138:7
139:15 142:6,18
143:14,14 144:6
144:12,16 145:1
145:5 146:10
147:3 152:15
154:18 155:13
159:14,17,22
161:14 162:15
164:5,11,15
165:7 166:15
167:10 168:8
171:10,12
173:21,23
174:15 176:17
176:20,22,25
178:22 179:14
184:9 185:15,17
187:7,10,23
193:23 194:10

194:22,24 195:9
195:13,15
**ringcentral**  23:5
**risk**  137:24
**role**  16:17 18:15
23:16 24:17
66:9,24 86:7
88:22 130:15
142:1 159:24
160:13
**roles**  17:24
26:25
**room**  15:18 43:5
**rooms**  43:4
**rouge**  4:7
**rough**  185:25
196:2,6,9
**route**  120:25
121:3
**rules**  14:8 34:15
**run**  170:16
**running**  36:3
107:14 138:17
**russell**  19:3

**s**

**sake**  126:25
**sales**  16:10 27:5
27:6,13,15,17,21
94:7,20,21
155:14
**salt**  21:22 55:4
132:24
**sample**  140:25
**sat**  33:6
**saving**  162:5
**savings**  48:6
49:14,16 51:8

111:2 160:8,9,10
160:12,13,16
162:4,25 163:14
163:14,20,22
175:25,25 176:6
176:21 177:5
178:1,22 179:2
180:8 184:2,13
184:15,18 185:7
185:18 188:16
189:12
**saw**  38:10 58:8
60:23 69:2 96:4
137:18
**saying**  53:16
82:19 105:2
134:19 173:7
**says**  35:4 36:11
58:23 60:15
61:8 62:3 65:6
67:8 88:14
89:13 90:4
92:24 93:15,16
95:13 100:3,4
101:2,8 104:15
106:14 123:25
124:14 128:16
132:21 135:16
136:1,2,3,13
139:23 140:11
140:24,25
141:24 142:19
143:3,3 145:14
155:7,22 156:14
157:1 164:23
**scenario**  111:8
119:20 120:6,20
120:24 182:24

**scenes**  23:9
**schedule**  162:19
**scope**  25:25 26:8
27:9 29:4,5,22
30:19 31:13
41:16 63:14
67:19 71:11
72:24 80:11,22
87:15,23 90:22
91:5,15 113:14
117:3 119:13,25
122:7 147:6
149:2 152:16
165:14 168:3
172:3 173:16
182:18 183:12
191:7 192:12
**screen**  10:11
95:20 117:20
**script**  89:14 90:5
109:11,12,13,16
140:25 141:1,4
141:20,22
**scripts**  86:10
93:3,5,12
**scroll**  35:2 36:7
38:5 58:16
61:23 65:19
67:7
**se**  43:14
**sean**  24:10,23
25:4,13 31:14
33:6 70:1,11
72:24 80:13,17
165:17,19 167:6
167:9
**sean's**  24:12,20

**[search - single]**                                    Page 34

search   132:6,9
169:9,18
searched   39:14
67:24
season   114:22
second   6:24
57:25 60:20
61:25 93:15
97:17 99:16
114:18 124:13
125:18 144:23
145:2 164:23
186:21
seconds   188:3
see   34:25 36:5
50:4 51:1,4 58:1
58:23 60:25
61:8,21,22 62:8
62:9 65:4,16,22
67:21 75:22
90:2,3,8,10
91:17 93:24,25
94:19 97:21,22
101:6 103:8
124:16,18,18
125:22 127:3
132:20,25
139:20 141:2
142:18 143:3,14
149:6 155:8
166:18 185:11
188:25
seeing   69:4
95:16 96:11
183:4 192:1
seeking   103:24
seen   10:10 36:9
37:20 38:8,20

58:3 60:22
66:22 68:16
92:12 94:5
segment   82:6
selection   86:22
send   46:6 78:22
99:18 106:22
107:2,21 111:11
115:21 120:2,7
122:17 134:21
sending   106:25
senior   18:19
123:25 124:6
sense   126:7
sent   38:17 51:14
62:12 96:4
99:12,24 107:14
110:25 115:18
123:19 130:8
135:12 140:23
144:1 156:17
173:23 188:19
189:1
separate   39:20
40:7,20,22,22
41:2,20 42:3
148:8,18
separately
140:23
serrano   19:3
served   67:14
service   7:16
19:21,22 20:14
20:25 21:3,8,9
40:14 44:2
46:19 50:5
88:21 89:18
96:19 98:9,10

125:25 126:1,4,6
146:19 147:12
156:1 173:11
174:1 188:25
services   16:18
17:3 18:20 20:7
20:17,18 27:3
28:19 29:18
47:25 72:22
100:12 105:20
116:14 126:20
157:6 159:6
171:16 172:10
174:7 189:18
session   43:8
sessions   42:16
42:18
set   7:11 31:9,11
33:21 34:5
47:21,24 66:20
67:13 111:19,20
112:1 152:21
198:5
setting   29:11
share   34:5 35:3
35:8
shared   55:14
sheet   8:7 123:18
shorthand   2:21
198:1,9
show   95:24
144:17
showed   36:10
160:4
shown   68:21,23
sic   123:6
side   19:17,20
20:24 29:25,25

87:17 119:3
sigler   4:14 6:6
11:19 35:17,17
35:25 186:2,5,7
188:2,9,11,23
189:5 190:2,7
191:1,5,16,23
192:10 193:12
195:10,17 196:4
196:11
sigler's   190:20
sign   118:16
146:6 191:19
195:16
signature   198:21
signed   96:18
118:14,15
119:23 191:12
192:5,20
signoff   135:8
signs   129:18
similar   28:16,19
28:20,20 32:2,3
32:3,11 72:11,21
72:22 73:8
116:13,14,14
125:7,8 126:19
126:20 153:8
similarly   1:5 2:5
44:4
simply   165:22
simultaneous
73:21 77:12
94:25 163:13
181:8 185:4
sinegar   19:4
single   127:15,25
178:20 182:16

**sir** 59:18
**sit** 171:24
**site** 43:17
**sitting** 80:12
**situated** 1:5 2:5
**situation** 93:18
  102:2 148:2
  172:15
**situations**
  101:13 181:16
  189:1
**six** 15:22 22:24
  131:14
**size** 97:9 182:16
**skills** 109:18
  112:6
**slow** 92:15
**small** 187:18
**smaller** 43:9
  181:24
**smart** 92:23
**smith** 155:10,12
**sod** 93:17,19
  94:1 95:2,4
  170:9
**soft** 109:18
  112:6
**solution** 160:2
**solutions** 10:23
  10:25 16:21,23
  159:24 196:17
**somebody** 69:22
  89:10 119:21
**sorry** 13:9 27:13
  28:5 34:18
  36:22 53:21
  57:15 61:4
  70:25 83:6

84:18 93:8 95:2
  109:5 110:16
  115:10 117:14
  139:9 142:24
  143:1,9 175:20
**sort** 35:7 73:23
**sounds** 83:19
  176:24
**source** 142:9,20
  143:7,17
**south** 5:6
**speak** 14:12
  16:11 19:25
  36:14 44:7 57:1
  102:5 105:4
  108:13 112:9
  160:17
**speaking** 73:21
  77:12 84:19
  94:25 105:21
  163:13 181:8
  185:4
**speci** 108:15
**special** 7:5 55:18
  60:17 156:9
  167:13
**specialist** 19:23
  46:8,11,24 47:1
  47:10 48:14,18
  49:11 50:2,21,22
  63:19,20,21 64:3
  78:12,15 80:20
  104:22 109:24
  109:25 112:14
  112:15 115:20
  116:18 124:1,7
  172:17,17
  175:22 179:23

**specialist's**
  95:20 175:24
**specialists** 46:7
  49:13 52:15
  54:12,16 56:12
  56:15 85:20
  86:11 105:3
  109:2 114:6,25
  117:11,18 118:1
  123:7,24 124:3
  131:18 150:1
**specific** 27:18
  43:24 44:20
  49:9 50:6,7 52:4
  54:20 59:12,14
  59:15,20,21
  64:18 90:16
  111:24 112:16
  115:19 122:18
  123:2 131:4,21
  146:4
**specifically**
  14:23 15:1 16:4
  59:7 108:16
  129:17 167:14
**specified** 45:1
  146:16
**specify** 146:18
**speculation**
  62:25 80:21
  101:21 103:4
  122:8 126:13
  129:7 147:22
  153:22 180:1
  181:13,16
  182:20 188:20
  192:13 195:1

**spell** 23:12
**spent** 162:23
**spoke** 125:4
**spoken** 121:25
**spreadsheet** 9:4
**staff** 80:2 82:3,5
  82:6 89:4 106:6
  114:9,11
**stand** 95:5,8,14
  156:22
**standard** 25:21
  29:24 30:1
  31:20,23 42:13
  52:22 53:2 87:5
  91:19 128:23
  129:2 146:25
**standing** 30:5
  71:24 196:4
**stands** 89:19
**start** 20:13 35:16
  58:17 84:2,4
  111:15 123:8
  155:1 171:4
**started** 142:3
**state** 11:3,5 12:7
  18:6 29:23
  91:23 93:8
  115:2 148:12
  187:8 191:6
  197:11 198:2
**stated** 91:18
  191:4
**statement** 91:9
  116:5 145:25
  185:15 191:7
**states** 1:1 2:1
  10:17 62:4 90:7
  120:14

**[stating - talking]**                                    Page 36

stating  108:17
  145:10
stay  71:19 73:25
  92:14 128:15
  188:1,2
step  104:12
  172:16
steps  46:10 65:7
sticker  184:7
stopping  154:14
store  22:25 23:6
  43:18
stored  22:10,20
  22:21 23:8
  49:24
storm  187:13
street  3:19 4:6
strike  63:20
  130:20
string  94:4
strong  79:10
struck  187:14,15
structure  39:19
structured  39:21
stuff  73:23 92:16
stupid  163:18
subject  163:3
submit  122:12
  122:13
submitted  146:5
  146:7,13
subpoena  186:23
  187:1
subscribed
  198:16
subsequent
  99:18 130:13
  183:15

substantive  62:1
successful
  104:10 149:20
  149:22 163:21
  176:18 189:16
successfully
  51:11 99:21
  130:8 171:23
suggest  27:21
  66:6 130:12
suggested  93:5
  116:24 138:1
suite  3:8,19 4:6
summarizes
  160:11
summit  110:4,5
  110:11,13,19
  125:20 145:5
super  14:9
supervise  19:15
  19:17
supplement
  65:24
support  5:13
  87:21 91:21,24
  92:4,7 101:12
  156:1
supports  62:17
suppose  118:6
  182:12
supposed  111:20
sure  23:10,22
  24:1 25:12,15,20
  26:2 33:20
  35:24 36:23
  39:7,25 40:10
  46:16 47:15
  48:5 53:14

54:25 58:5
  62:16 69:20
  70:4 73:6 83:4
  85:6 87:2,4
  99:15 103:20,22
  104:13 114:21
  115:23 125:12
  134:11 135:12
  135:21 138:5
  139:2,7 144:24
  160:18,24 171:8
  172:16 177:21
  178:10,18
  181:19 184:23
  185:14 186:8,18
  190:16,18
  192:21
surgical  29:10
surmise  126:3
surprise  127:10
susan  134:14,18
  134:22,23,24
  136:2,4
suspect  59:5,8
  59:24,25
swear  11:21
system  46:15,17
  98:15 114:15
  135:15 169:1,3,9
systems  63:10
  181:25

**t**

tab  84:16 97:4
  98:22 123:12
  129:21 134:5
  137:3 144:17
  160:21 164:18

tabbed  84:21
table  114:17
tabs  84:22,22
take  10:12 14:11
  14:20 15:3,4
  44:16 57:17
  60:20 68:5
  74:11 75:21
  76:23 81:2 83:2
  83:7 85:4 97:17
  97:17 104:19,20
  108:24 109:8
  112:4 129:20
  134:10 139:6
  144:23 154:15
  154:16,18
  159:13 164:11
  167:11 170:20
  170:22 196:2,7,8
taken  2:16 10:15
  12:12,18 65:9
  198:4
takes  97:7
talk  74:8 103:25
  105:3 165:10
  168:17
talked  40:12
  47:6 87:5
  121:19 123:20
  143:23 192:19
talking  22:13,18
  51:23 54:23
  64:18,19,20 75:1
  81:16 90:16
  98:18 107:14
  110:23 111:21
  111:23 112:20
  114:1,2 115:12

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 237 of 244
CONF 30(b)(6) Kathy Praxmarer          July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[talking - tissue]                                            Page 37

121:23 145:4
155:21 166:5
168:6 171:19,20
175:11 185:1
**talks**  44:18 47:8
124:13
**target**  153:4
**taught**  42:3
**team**  20:14,25
22:14 24:9,16
39:9,12 43:24
44:2,7,13,16
45:24 46:6 53:1
55:17 56:24
69:13 77:23
82:2,25 85:17
88:7,21,25 117:7
119:21 123:10
132:13 133:25
133:25 135:8
137:23 145:24
148:6 155:16,19
156:6 165:2
**teams**  20:11 21:2
22:19
**tease**  171:5
**technical**  5:13
11:17 23:3,9
135:8
**technology**
10:21 108:2
132:13
**tell**  13:21 34:8
45:25 56:13,22
77:3 92:25 98:3
99:13 114:25
120:7 124:9,11
161:18 162:4

165:20 195:9
**template**  135:6
**temporary**
158:22,25
**ten**  80:6
**tend**  181:24
**tenth**  58:20
**tenure**  26:23,25
47:15 80:2 89:4
**tenured**  80:2
**term**  27:6,13,15
27:17,21 58:14
71:23,25 76:11
89:3 129:3
152:24 158:4,12
160:11 178:11
181:12
**terminology**
25:21
**terms**  28:7 90:17
90:20,25
**testified**  12:3
76:8 77:25
82:12 172:4
178:14 190:19
**testify**  152:17
**testifying**  2:18
198:7
**testimony**  90:12
162:4 196:14
197:8
**testing**  137:21
137:22 138:8,12
**thank**  33:9 35:25
83:6 114:20
190:7 196:3,10
**thanks**  64:22
187:7 188:3,12

195:21,22
196:11
**thereof**  198:11
**thing**  28:21
162:18 184:5
186:18
**things**  145:21
161:1 179:13
**think**  13:9 17:21
20:16 24:11
52:7 73:1 77:2
79:10 82:7
90:11 92:23
103:15 126:9
139:16 150:14
153:20 160:20
170:19 174:5
186:23 187:16
191:1,3 194:17
**thinking**  115:8
159:13
**third**  6:20 7:10
38:4 58:24 59:3
59:21 66:20
**thomas**  3:17
**thorough**  137:21
**thought**  181:5
**thousands**  52:1
**three**  12:16 14:1
92:10 144:13
170:20,22
172:21
**threshold**  149:18
151:17 153:8
179:21
**thresholds**
153:14

**ti**  136:14
**ticket**  46:14
**time**  10:6 11:4
12:17 13:18,25
14:11,23 22:21
26:19,21 33:13
35:11,15 38:10
43:7 45:16 53:9
53:12 54:1 56:6
58:7 69:1 78:6
78:14 79:1,21
83:21 84:1 86:5
86:8,18 90:15
95:13,13 98:1
99:23 106:2,6,13
112:21 113:25
114:5 115:25
116:4 117:9
121:10 125:8
130:14 132:11
135:25 137:23
138:6 146:9
154:21,25
157:13 161:9
162:23 170:24
171:3 188:12
193:3 195:25
196:18 198:5
**times**  12:15 14:1
48:8 49:5 88:8
92:10 111:9
**timing**  14:2
136:12
**tin**  50:23
**tina**  155:10,12
**tins**  49:18
**tissue**  114:17

**[title - understand]**                                          Page 38

**title** 16:20 17:6
    18:18 45:9,10
    98:7 124:5,6
    139:18
**titles** 124:2
**today** 15:15
    16:12 19:7
    36:14,25 38:24
    46:19 54:23
    71:18 75:16
    80:12 106:21
    107:15 171:25
    188:12
**today's** 15:9
    196:14
**told** 76:16 77:4
    77:15 187:17
**toll** 102:4
**tom** 164:24,25
    165:1
**tom.kelly** 3:22
**tool** 23:17 27:5
    32:18
**toolbox** 46:21,22
    47:9,11 49:24
    78:20 95:23
    114:15 115:11
    117:12,19
**tools** 31:2,8
**toolset** 31:25
**top** 25:2 45:10
    47:13 85:9
    88:14 97:19
    132:20,22
    134:13 137:13
    143:15 172:1
**topic** 79:16,16
    163:16,23,24

**topics** 31:13
    32:25 33:11
    36:12,13,17,24
    67:19 71:16,19
    73:24 74:1 76:6
    113:15 162:5,23
    162:24 163:3,19
**tornado** 187:18
**total** 126:2,5
    163:22 196:15
**track** 49:18
**tracking** 46:20
**train** 80:25
**trained** 53:10
    54:2 78:6 79:21
    80:20 82:15
    109:14 115:4
    118:2 148:1,8,17
**training** 42:10
    42:13,15,20 43:3
    43:6,10,11,14,21
    43:25 44:17,20
    45:1 52:19,20
    53:4,14 55:18,23
    56:7 78:5,15,18
    78:23 79:2 81:3
    81:11,12,17,19
    81:24 82:1,4,10
    82:18,23,25 83:1
    118:4
**trainings** 81:14
**transcribed**
    198:9
**transcript**
    195:17,23 197:6
**transcription**
    198:11

**transferred**
    104:17
**treat** 167:21
**treatment**
    121:10
**trend** 160:16
**true** 77:24 92:20
    92:22 188:18
    197:9
**truly** 20:9
**trustmark** 17:17
    17:20,23 18:3
**try** 14:24 35:7
    49:2 109:7
    137:20
**trying** 28:7
    32:23 73:18
    137:25 189:16
    195:4
**tuesday** 1:21
    2:20 10:1,6
**turn** 159:18
**turnaround**
    106:1
**turns** 109:9
**two** 12:16 14:1
    21:2,21 22:18
    40:12 50:23
    83:14 99:9
    143:7 144:13
    161:13 170:13
    172:20 184:11
**type** 19:22
**types** 28:7 29:1
**typical** 127:5,10
    183:24
**typically** 89:14
    93:17,19 125:9

**u**

**u** 31:3,5
**u&c** 7:15
**ub** 29:24,24
    111:24 113:20
    114:3 115:1
    119:8 149:16
    172:1 179:8
    180:13 193:6
**uh** 28:1 43:22
    69:9 87:7 162:1
    176:23 190:24
**uhc** 85:3,3
**uhc000073268...**
    7:20
**ultimate** 133:19
**unable** 51:10
    99:20 130:8
**unclear** 27:16
**uncomfortable**
    74:2,4,5
**uncommon**
    120:17
**underlies** 31:9
**underlying**
    30:18 32:19,21
    33:21 55:8
    69:19 86:23
    87:21 165:4
    171:20
**underneath**
    155:22
**undersigned**
    198:1
**understand**
    14:17 19:10
    28:8 31:10
    32:17,22 42:7

Case 4:20-cv-02254-YGR    Document 323-9    Filed 07/16/23    Page 239 of 244
CONF 30(b)(6) Kathy Praxmarer        July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[understand - versus]                                   Page 39

52:15 53:20,22
57:5 73:18
76:17,18 92:15
104:13 114:2
127:12 131:1
138:19 140:4
163:6 167:20
173:7 192:16
**understanding**
19:6,9 20:8
30:24 32:8
33:14,23 55:10
145:16 187:3
**undertake** 61:12
**undertaken**
62:15
**undesignated**
195:25
**unfortunately**
175:18
**unit** 10:14 35:16
83:22 84:2
154:22 155:1
170:25 171:4
187:14
**united** 1:1,8,9
2:1,8,9 4:12 5:3
10:16,17 28:24
29:2 35:18
44:18,20,24,25
47:7 48:3 51:15
51:21,24 52:5
62:21 63:12
91:3 93:2,11,20
94:8,21 95:13
96:2,3,13,24
98:8 99:16
101:24 102:5,6

102:13,13 103:3
103:3,16 104:6
105:24 111:21
111:22 112:19
113:20 118:19
118:21,23 119:1
119:5,9,18,21
120:7,13,18,20
121:8,11,20,25
122:8,11,15
123:2,3 129:4,14
129:18 136:4
140:4 144:7
145:12 149:20
157:23 161:12
161:16,20 162:8
171:21 172:2,9
173:12 185:24
186:24,25 187:3
188:11 194:16
194:16 196:5
**united's** 62:7
65:11 119:3
**unitedhealth**
189:19
**unitedhealthcare**
16:10 19:13
62:16 89:9,19
100:10,14
101:10,20
132:22 133:3,9
139:19 140:9
153:15 171:17
189:20
**units** 126:22
196:15
**unlock** 48:9

**unreportable**
73:21 77:12
94:25 163:13
181:8 185:4
**unsuccessful**
51:16
**unsure** 55:6
**unusual** 60:5
106:6
**unwilling** 159:10
**upcoming**
137:17
**update** 136:5
**updated** 139:24
140:12
**upload** 186:17
**use** 22:25 23:4
71:9 108:5,6
109:7 116:25
117:4 118:3
130:11 136:14
140:6 141:16
143:16 152:15
**uses** 52:16 70:21
136:10
**usual** 24:2 25:5
25:6,16,20 26:6
26:10 27:5,23
28:9,18 31:5
89:17,19 90:1
91:21,24 92:2
106:1 115:24
154:5,10
**usually** 41:24,25
42:16 61:24
109:23 111:3
127:13 172:20
195:21

**utah** 21:23
132:24
**utilize** 48:1
**utilizes** 70:13

**v**

**v** 23:13
**vague** 76:11
**validate** 58:13
**valuable** 101:11
**value** 150:24
151:2,14,19
**variables** 126:23
**variance** 143:21
**variances**
141:11
**variation** 126:18
**variety** 17:24
31:1 37:5 43:3
44:3 158:20
**various** 16:1
24:19 69:21
81:14 116:22
124:2 157:18,21
**vary** 106:5
**vendor** 22:25
**verbiage** 136:19
**verification** 84:9
84:11,12
**veritext** 10:23,25
196:16
**version** 135:11
135:13 140:12
141:16
**versions** 138:6
**versus** 10:16
29:21 43:9

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 240 of 244
CONF 30(b)(6) Kathy Praxmarer            July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[viant - wemhoff]                                          Page 40

**viant** 7:15 13:4
  14:6 16:25 17:2
  17:10,12,15
  19:12,15,17
  20:12,19,20,22
  20:23 21:1 22:7
  22:12,13,18 23:1
  23:17,23 24:17
  26:19,21,25
  27:24 28:24
  29:2 30:3,8,11
  30:18 31:9 32:1
  33:11,13,20
  39:15,19,19 40:3
  40:6,12,18,19,20
  40:22,25 41:5,21
  41:23 42:2,7,7
  42:12 43:12,16
  45:21 48:3
  49:18,19 50:5
  51:23 52:16
  53:9,10,15,25
  54:2,13,14,19,21
  54:23 55:8,12
  56:15 57:5
  62:13,18,18
  65:14 69:13,21
  70:13,21 71:9
  78:12 79:2,7
  80:7 81:16,24
  82:16 85:12,18
  86:5,17,23 87:17
  87:20 88:19
  89:2 91:21 93:7
  93:9 95:15
  96:21 100:17,25
  101:1,11,20
  102:5,19,23
103:8,11,16,25
  104:4 105:16
  106:2,8 108:17
  111:23 112:18
  113:13 114:12
  119:9 120:21
  121:1,12,18,25
  122:5,16,17
  125:9 126:19
  127:2,15,25
  130:11,18,20,21
  131:6,13 132:15
  132:22 133:2,4
  133:15,19,23
  134:1,21,25
  135:2 136:5
  140:7 141:5,23
  142:2,3,4 143:16
  147:4,13,16
  148:1,7,18,20
  149:16,23
  151:17 154:11
  158:5 160:2
  161:17 165:4
  167:2,15 171:10
  171:16,22,23
  172:2,7,24 173:9
  173:10,23
  175:17 178:8,20
  178:20,24 179:1
  179:8,19 180:13
  182:17 183:9,10
  183:25 184:1,13
  188:25 189:19
  189:22 191:12
  193:7 194:8,11
**viant's** 89:17
  180:8
**vice** 16:21 17:5
  18:19 25:2
  142:2
**video** 10:12,14
**videoconference**
  2:18
**videographer**
  5:14 10:4,23
  35:10,14 83:20
  83:25 154:20,24
  170:23 171:2
  186:11 196:12
**videos** 42:19,24
  42:25
**videotaped** 1:17
  2:15
**view** 164:4
**vinton** 19:5
**virtual** 10:21
**virtually** 10:8
**visually** 138:10
**vogele** 123:21
  124:21
**volume** 1:22
  2:16 6:4 161:18
  197:15
**vs** 1:7 2:7

**w**

**wait** 187:8
**waiting** 76:20
**walk** 184:6
**walker** 134:15
  134:16
**walking** 73:8,13
**want** 25:15 36:7
  74:8 76:25 83:7
  96:5 97:4 102:4
111:6 118:2
  135:21 144:17
  145:1 172:15
  184:18,22 185:6
  186:10,11,13
  188:1 189:22
**wanted** 35:18
  104:16 138:5
  188:16
**wants** 83:12
  184:15
**warrants** 144:4
**washington** 3:9
  4:17
**wav** 9:9
**way** 59:25 74:10
  82:4 105:15
  126:21 131:20
  156:24 169:8
  172:23 194:5,8,8
  194:11
**ways** 106:7
  180:20
**we've** 35:19 47:6
  54:3 83:13
  147:17 162:18
  178:19,19
**weather** 109:21
**web** 106:23
**weekend** 38:12
  38:14,21 58:9
  175:18 187:13
**weekly** 161:5
**weeks** 50:23
**wemhoff** 3:6
  11:11 174:18
  186:18

Case 4:20-cv-02254-YGR   Document 323-9   Filed 07/16/23   Page 241 of 244
CONF 30(b)(6) Kathy Praxmarer            July 26, 2022
LD, DB, BW, RH v. United Healthcare Insurance Comp

[went - yeah]                                                Page 41

**went** 113:20
  127:11,16
**west** 110:16,17
**westlake** 186:23
  187:5
**whereof** 198:15
**white** 55:12
  68:19 69:23
  108:16 109:16
**whitepapers**
  67:22
**who've** 172:9
**wholly** 39:20
**wide** 54:18
**wife** 92:25
**willing** 79:11
  106:21 108:19
  112:8 146:3
  184:1
**willingness**
  108:23
**wish** 151:8
**wishes** 102:13,17
**witness** 1:18
  2:18 4:3 6:2
  10:10 11:13
  21:21 23:20
  25:10,20 26:2,10
  26:15 27:2,12,20
  29:7,23 30:8,15
  30:21 31:1,16
  32:7,14 33:16
  34:1,18,23 35:1
  35:4 37:3,25
  39:25 41:9,18
  42:6 44:23
  48:12,23 49:23
  52:4,19 54:14,20

55:22 56:20
57:8,21 59:18
60:13 63:2,16
64:1,8,15,24
66:3,6,15 67:4
67:21 68:4,9,11
68:14 70:17,25
71:6,12,25 72:4
72:11,17 73:3,10
73:15 74:23
75:3,12,18 77:6
77:11,19 78:1,10
78:18 79:4,10
80:10,15,23
81:10,13 82:18
82:23 83:12,19
84:18 85:17
86:16 87:1,16,25
88:6 90:23 91:6
91:16 92:2,9,11
94:13 96:9 97:5
97:8 99:3
101:24 102:9,22
103:5,10 104:3
105:13,20 107:9
107:18 108:12
111:6,14 113:17
113:23 114:20
114:22 115:7
116:3 117:4,24
118:13 119:1,15
120:2,11 121:17
122:11 125:2,14
127:9,22 128:3
128:12 129:9
130:1 132:5,18
133:12,23
136:19 137:9

143:12 145:20
146:23 147:9,24
148:12 149:3,13
149:18 150:5,8
150:19,23
151:16 152:9,20
153:2,7,18,25
154:4 156:12
158:2,7,12,24
159:5,9,17
162:12 165:23
166:2,10,12,24
167:8 168:4,22
169:1,6,15,17
170:5,12 172:5
172:13 173:4,18
174:1,10 176:3
176:10 177:8,14
177:21 178:3,15
179:5,16 180:4
180:11,18
181:15 182:2,9
182:22 183:3,13
184:4,18 185:21
187:9,18,24
188:6,22 190:1
191:17,25
192:14,25 193:3
193:13,20,25
194:15 195:2,16
198:15
**witness's** 27:9
  149:2
**witnesses** 162:11
  198:6
**wondering**
  32:19 79:20
  156:10,11

171:24
**word** 79:11
**words** 71:3
**work** 17:9,12,15
  17:19 20:21
  24:4 42:7 43:25
  52:14 85:21
  88:2,8 106:19,19
  146:19 190:4
**worked** 17:17
  26:19,21 33:13
  45:14,15 141:25
**working** 18:2
  22:4 43:9 55:2,3
**works** 45:17
  46:16 84:20
  134:17 155:12
  164:7
**world** 22:6 164:4
**worry** 151:10
**wow** 187:21
**write** 86:10
**writing** 100:6
**written** 43:11,13
  43:21,24
**wrong** 155:15

|          **x**          |
**x** 116:8 146:25
|          **y**          |
**y** 116:8
**yeah** 22:15 23:25
  34:23 35:1
  36:20 41:1
  46:16 51:5
  54:23 57:24
  61:6 65:17
  76:19 87:4

[yeah - zoom]                                          Page 42

        98:13 111:22
        112:22 120:23
        121:22 142:11
        142:13 143:7,9,9
        143:9 157:10
        163:7 165:23
        166:15 187:20
**year**   28:23 82:2
**years**   13:21 17:7
        17:19,21 54:3,6
        54:12 56:3 70:5
        78:12 80:6 81:3
        81:5,11,23 82:14
        82:15,19,20,21
        86:4 109:20
        112:24 144:14
        188:24
**yep**   54:16 64:19
**yesterday**   15:10
        37:4,12 58:10
        60:23,25 187:23
**ygr**   1:7 2:7 10:19
**york**   1:11 2:11

**z**

**zip**   38:17
**zoom**   23:4

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.