LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

GEOFFREY SIGLER (*pro hac vice*)
  gsigler@gibsondunn.com
DEREK K. KRAFT (*pro hac vice*)
  dkraft@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  202.887.3752
Facsimile:  202.530.9635

Attorneys for Defendants UNITED BEHAVIORAL HEALTH and UNITEDHEALTHCARE INSURANCE COMPANY

ERROL J. KING, JR. (*pro hac vice*)
  errol.king@phelps.com
CRAIG L. CAESAR (*pro hac vice*)
  craig.caesar@phelps.com
KATHERINE C. MANNINO (*pro hac vice*)
  katie.mannino@phelps.com
TAYLOR J. CROUSILLAC (*pro hac vice*)
  taylor.crousillac@phelps.com
BRITTANY H. ALEXANDER (*pro hac vice*)
  brittany.alexander@phelps.com
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone:  225.376.0207

Attorneys for Defendant MULTIPLAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LD, DB, BW, RH and CJ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, and MULTIPLAN, INC., a New York corporation,<br><br>Defendants. | CASE NO. 4:20-cv-02254-YGR-JCS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINIONS OF PROFESSOR DANIEL KESSLER AND MS. JESSICA SCHMOR**<br><br>Hearing: June 4, 2024 or TBD<br><br>Time: 2pm<br><br>Location:  Oakland Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, CA 94612<br><br>Complaint filed: April 2, 2020<br>Third Amended Complaint filed: Sept. 10, 2021 |

Plaintiffs' motion to exclude portions of the expert reports of Jessica Schmor and Professor Daniel P. Kessler (Dkt. 428) ("Mot."), purportedly because they reflect legal opinions, is a frivolous, unnecessary motion intended to distract from these experts' opinions and the class certification issues before the Court. Ms. Schmor's report (Dkt. 412) draws on her expertise in the coding, billing, and reimbursement of healthcare claims to rebut the opinions of Plaintiffs' experts who testified on these same topics (Dkt. 397-5, 397-2). Professor Kessler's report (Dkt. 411) draws on his expertise in economics and healthcare policy to critique testimony regarding monetary harm contained in the reports of three of Plaintiffs' experts on these topics (Dkt. 397-2, 397-3, and 397-4). Both Ms. Schmor and Professor Kessler are well-qualified in these areas, and they explained in detail why each of their opinions is rooted in their expertise. Plaintiffs repeatedly attempted to draw these experts into discussions of legal issues at their depositions, but both experts refused to take the bait and instead pushed back by clarifying the scope and basis for their opinions.

Plaintiffs' attempt to compare Defendants' experts to Plaintiffs' previously-excluded legal expert, Professor Alexandra Lahav, is frivolous. Professor Lahav conceded (in her report and at her deposition) that her opinions were based entirely on her analysis of *the law*. This Court therefore properly excluded Professor Lahav's declaration as invading the province of the Court, and as a "thinly disguised … amicus brief." Dkt. 301 at 5. Plaintiffs' current motion appears to be merely tit-for-tat retaliation, because there is no legitimate comparison to be made between Defendants' experts (in medical coding, data analysis, and economics) and Professor Lahav (whose claimed expertise was in the law). Moreover, if Plaintiffs' arguments against Defendants' experts were valid, then their own remaining experts (Mark Hall, Robert Ohsfeldt, Lamon Willis, and RPC) would also need to be excluded, because Defendants' experts are rebutting Plaintiffs' experts on the same issues and topics. Plaintiffs' motion should be denied.

**ARGUMENT**

**I.     Plaintiffs Misrepresent The Legal Standard For Excluding Legal Opinions**

Plaintiffs misrepresent the standard for excluding an expert opinion as impermissible legal argument, by suggesting that opinions that "cover issues related to 'class certification'" should be excluded. Mot. at 3. That is not the law; indeed, "[r]elevan[ce]" to class certification, the question before

the Court, is a prerequisite for the admissibility of expert testimony. Fed. R. Evid. 402; *see* Dkt. 301, at 3 (stating that "opinion testimony by an expert" must be "relevant and reliable"); *Parrish v. Gordon Lane Healthcare, LLC*, 2023 WL 7107267, at *4 (C.D. Cal. Sept. 26, 2023) (Courts "use *Daubert* guidelines to determine whether expert testimony is reliable and relevant such that it can aid in forming a reasoned opinion on the class certification requirements."). Plaintiffs' own expert Dr. Ron Luke (from RPC) agreed at his deposition that his expert report was "related to class certification." Dkt. 408-19 at 12:8-11, 14:22-15:2. And the very first paragraph of RPC's expert reports says that RPC was asked to "address questions relevant to class certification." Dkt. 397-2 at 1; Dkt. 427-3 at 1.

Instead, as this Court has explained, expert testimony is inadmissible when it consists entirely of "legal opinions" that "invade on the province of the Court." Dkt. 301 at 4-5. "[A]n expert may offer [an] opinion as to facts that, if found, would support a conclusion that the legal standard at issue was [or was not] satisfied so long as the expert does not testify whether that legal standard has been satisfied." *Lauderdale v. NFP Ret., Inc.*, 2022 WL 17324416, at *3 (C.D. Cal. Nov. 17, 2022) (quotation marks omitted). As explained below, neither Ms. Schmor (a medical coding and billing expert) nor Professor Kessler (a PhD economist who has written extensively on healthcare economics and policy) come near this line.

**II.   Ms. Schmor's Opinions On The Variation In Putative Class Members' Healthcare Claims Are Not Legal Conclusions**

Plaintiffs cherrypick words like "claims" and "adjudication" to misleadingly suggest that Ms. Schmor (a certified medical coder and non-lawyer) offers legal opinions, without ever engaging the actual substance of her report. As her analysis makes clear, Ms. Schmor draws on her expertise in coding, billing, and reimbursements to explain the "variations" in the putative class members' "*healthcare* claims," and how those claims are processed (or "adjudicated") in the insurance context. Dkt. 412 ¶¶ 7, 36-37 (emphasis added).[1] In the paragraphs that Plaintiffs seek to strike, she explains the pricing of intensive outpatient ("IOP") services—the services that Plaintiffs claim Defendants improperly priced—and identifies variability in plan documents, IOP provider coding and billing practices, and claim adjudication processes underlying putative class members' insurance claims. *See id.*

---

[1]   Plaintiffs' experts use "claims" and "adjudicate" in the same sense. *E.g.*, Dkt. 427-3 ¶ 44.

¶¶ 1a, 7, 35-37, 44, 46, 48, 57. These core factual issues bear directly on whether Plaintiffs' allegations can be addressed on a classwide basis. The report also explains why evaluating one of Plaintiffs' main arguments—that Viant did not account for additional compensation to the professionals who rendered the IOP services—requires individualized review of class members' medical records. *Id.* ¶¶ 51-52; *see also* Dkt. 414-1 at 7. Ms. Schmor offers no opinion as to whether Rule 23 has or has not been satisfied—only "opinion[s] as to facts."[2] *Lauderdale*, 2022 WL 17324416, at *3. By contrast, Plaintiffs' experts have repeatedly and expressly given legal opinions on class certification. *See, e.g.*, Dkt. 397-3 at 5-6 (opining that "class actions are especially appropriate regarding ERISA-governed health plans"); Dkt. 427-3 ¶ 112 (concluding that "sub-classes are readily identifiable if they are necessary"); *id.* ¶ 137 (arguing that there is "no practical problem with certifying the disputed claims as a class or as sub-classes").[3]

That Ms. Schmor's opinions necessarily employ terminology relevant to the Rule 23 inquiry does not transform them into impermissible legal argument. It is well established that an expert "may properly be called upon to aid the jury [and *a fortiori*, the Court] in understanding the facts in evidence even though reference to those facts is couched in legal terms." *United States v. Andujo*, 2021 WL 5860900, at *1 (9th Cir. Dec. 10, 2021) (quoting *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)). Indeed, the Ninth Circuit has recognized that "it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017); *see also, e.g.*, *Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, 2022 WL 13682599, at *4 (D.

---

[2]  At her deposition, Ms. Schmor repeatedly declined to offer legal opinions in response to questions from Plaintiffs. *See* Dkt. 427-6 at 38:10-15 ("[M]y area of expertise is coding, billing and reimbursement … I'm not a lawyer so I don't have any expertise in legal issues related to class certification."); *id.* at 46:20-22 ("I'm not going to be able to give you an opinion on whether something is legally acceptable."); *id.* at 50:20-23 ("I'm not offering any legal opinions on whether or not the variability meets the criteria for class certification. That's for the court to determine."); *id.* at 65:21-66:1 ("I don't have any opinions—legal opinions with respect to what is and is not appropriate for a definition of a class. I'm simply providing context for the variability as the … class definition is currently defined.").

[3]  Defendants have not filed motions to strike these parts of Plaintiffs' expert reports because this Court can simply refuse to rely on them in deciding class certification, and thus it would unnecessarily burden the Court and potentially run afoul of the spirit of Paragraph 11 of this Court's standing order limiting *Daubert* motions. Defendants reserve all rights to attack Plaintiffs' experts as appropriate in class certification briefs and, if necessary, at any later phase of the case.

Colo. Oct. 21, 2022) (admitting expert opinion that "use[d] the terms 'common' and 'typical' in their ordinary sense rather than as terms of art in the context of Rule 23 jurisprudence"). It is entirely appropriate for Ms. Schmor to reference the class definition, because it defines the scope of the healthcare claims at issue. To the extent Ms. Schmor's report discusses other concepts relevant to the Rule 23 inquiry, such as "variability," the Court "can readily distinguish between words used as legal terms of art and words used for their ordinary meaning." *Box Elder Kids*, 2022 WL 13682599, at *4.

### III. Professor Kessler's Opinions On Injury And Variation In Plan Language Are Not Legal Conclusions

Professor Kessler's opinion draws on his expertise in economics, health policy, the design of health insurance benefits and reimbursement systems, and the analysis of medical claims data to explain (1) the inconsistencies in Plaintiffs' allegations of economic injury, and (2) the variation in the language describing reimbursement obligations in the relevant health plans.

**1.** Plaintiffs object to portions of Professor Kessler's report that explain the economic inconsistencies embedded in Plaintiffs' damages model (¶¶ 11, 35, 42, 46, 53); analyze the evidence of balance bill payments requested or received by subpoenaed providers (¶ 50); and conclude that "to determine whether and how much monetary loss Class members incurred requires establishing Class members' responsibility for, and actual payments of, balance bills" (¶ 55). Plaintiffs do not and cannot explain their assertion that these paragraphs "indulg[e] in legal analysis." Mot. at 4. Professor Kessler's opinions regarding the viability of establishing *economic* harm to putative class members are well within his expertise in healthcare economics.[4] Plaintiffs' bare allegation to the contrary appears designed to obscure a lack of any substantive response to Professor Kessler's straightforward conclusion that patients who did not pay balance bills have suffered no economic harm.

As Plaintiffs are doubtless aware, expert opinion on economic injury is extraordinarily common. *See, e.g.*, *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 676 (9th Cir. 2022) (affirming district court's "rigorous analysis of the expert evidence presented" to

---

[4] Plaintiffs' citation to *Gable v. National Broadcasting Co.*, which excluded portions of an expert opinion that "instruct[ed] the Court as to Ninth Circuit law" and "read much like a third legal brief," is wholly inapposite. 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010), *aff'd*, 438 F. App'x 587 (9th Cir. 2011). Professor Kessler does not discuss legal authorities or opine on them in his report, and also refused to do so when invited by Plaintiffs at his deposition. *See infra* n.6.

establish or contest economic injury); *Silva v. B&G Foods, Inc.*, 2022 WL 4596615, at *3 (N.D. Cal. Aug. 26, 2022) (concluding that plaintiffs had not "presented any evidence to rebut Defendants' expert report showing that the vast majority of class members more likely than not suffered no economic harm"). Indeed, Plaintiffs have no qualms about introducing their own expert opinions on the topic. Although RPC strategically ducked certain simple questions about economic injury, Dkt. 416-14 at 198:3-24 (Dr. Piper refusing to answer whether he had "any evidence" whether "plaintiffs lost money as a result of" fees paid by plan sponsors), RPC reversed course when they believed it advanced Plaintiffs' case. For example, RPC made conclusory statements about the alleged "harm done to class members," Dkt. 427-3 at 61, and have testified that balance billing is a "vector of economic harm." Dkt. 416-14 at 182:21-22; *see also* Dkt. 416-54 at 50:22-51:5.[5] Plaintiffs should not be heard to complain about an expert economist's responses to these very arguments.

2. Plaintiffs also object to Paragraph 40 of Professor Kessler's report, in which he identifies economically relevant variations in plan language related to payment obligations. Expert opinion regarding the interpretation of specialized contract terms is likewise common. Courts in this circuit have long recognized that "in cases where the contractual language contains terms with specialized or technical meaning in a given industry," as the plan terms at issue here do, "a qualified expert may assist the trier of fact by offering insight on the meaning of the language in the context of that industry." *Pac. Fuel Co., LLC v. Shell Oil Co.*, 2008 WL 11336467, at *5 (C.D. Cal. Jan. 24, 2008). In a putative class action, "expert testimony on whether interpretation of [the] types of contract provisions [at issue] could vary" is particularly "useful in deciding whether [a] proposed class meets Rule 23 requirements." *Ulibarri v. Southland Royalty Co., LLC*, 2019 WL 1226962, at *6 n.4 (D.N.M. Mar. 15, 2019); *see, e.g.*, *Santomenno v. Transamerica Life Ins. Co.*, 2016 WL 6469858, at *8 (C.D. Cal. May 13, 2016) (crediting expert's evidence of "huge variations in annual plan/participant-level fees across plans" such that reasonability analysis "would require individualized inquiries"); *Moore v. Apple Inc.*, 309 F.R.D. 532, 545 (N.D. Cal. 2015) (concluding based on "conce[ssions]" in plaintiffs' expert's declaration that "variations in the wireless service agreements" at issue would require "evaluat[ion of] each individual's

---

[5] RPC's Dr. Luke also opined on the economic implications of balance billing in the *RJ v. Cigna* litigation. *See RJ v. Cigna Behavioral Health, Inc.*, No. 5:20-cv-02255 (N.D. Cal. Jan. 2, 2024), ECF No. 226-11 at 200.

wireless service agreement."). Professor Kessler's plan language analysis does precisely this, by identifying plan language that may impose varying reimbursement requirements. Plaintiffs' bald assertion (at 5) that Professor Kessler "draws legal conclusions from that analysis" is wholly unsupported.

Equally meritless is Plaintiffs' attempt to fault Professor Kessler for acknowledging during his deposition that it was "hard for [him] to separate out" his "legal training in preparing [his] report." Mot. at 5; Dkt. 427-5 at 34:8-10. The context of that statement speaks for itself:

> **Q:** [D]oes this report contain any legal opinions?
> **A:** No.
> **Q:** Did you apply your legal training in preparing this report?
> **A:** Well, it's hard for me to separate out, you know, school I went to 25 years ago. I'm only offering economic opinions in this matter. … I'm not here to offer any opinions on whether Plaintiffs have satisfied the legal requirements for class certification.

Dkt. 427-5 at 34:5-13, 36:24-37:1. Plaintiffs' own expert Dr. Luke gave a near-identical answer when asked about his own legal training in a similar case. *See RJ v. Cigna Behavioral Health, Inc.*, No. 5:20-cv-02255 (N.D. Cal. Jan. 2, 2024), Dkt. 215-10 at 20:4-6 ("I'm familiar with legal concepts, but I'm not here to offer you legal opinions."). Moreover, the substance of Professor Kessler's report and testimony show that he was relying on his expertise in healthcare economics and policy—rooted in his PhD and years of training and study of these topics—not any legal analysis. When Plaintiffs tried to drag Professor Kessler into a legal debate at his deposition, he repeatedly declined.[6]

Plaintiffs' critique (in their reply in support of class certification) that Professor Kessler's plan language analysis required no more than "basic reading comprehension" also contradicts their allegation that it constitutes impermissible legal opinion. Dkt. 426 at 19 n.19; Mot. at 5. And Plaintiffs' own expert submissions belie the notion that plan language needs no explanation. Their expert Mark Hall devotes large portions of his report to explaining the meaning of "UCR," complete with citations to legal authority. *See* Dkt. 397-3 at 5-6 (citing Ninth Circuit caselaw and a law review article to interpret

---

[6] *See, e.g.*, Dkt. 427-5 at 36:11-13 ("[The requirements for class certification] sounds like a legal question to me, which I would not be able to provide an expert opinion on here."); *id.* at 36:24-37:1 ("I'm not here to offer any opinions on whether Plaintiffs have satisfied the legal requirements for class certification."); *id.* at 38:12-13 ("I'm not here to offer any legal opinions about the reach … of ERISA."); *id.* at 56:2-4 ("I wouldn't purport to advise the court on [the propriety of class certification]. That's a legal question."); *id.* at 77:18-20 ("[I]f this is a legal question, I don't have an opinion about that."); *id.* at 79:21-23 ("I certainly wouldn't presume to provide, you know, a legal opinion about this."); *id.* at 185:21-186:5 (explaining that "assessing whether something is consistent with the terms of a class member's plans" is "a matter of logic, not a law").

"variation in the wording of the plan documents"). At the hearing on Plaintiffs' original class certification motion, Plaintiffs' counsel argued that Professor Hall had established that the relevant plan language on payment obligations "is all substantially similar." Jan. 27, 2023 Hr'g Tr. at 51:17-23. Likewise, Plaintiffs' expert Dr. Piper testified as to his "interpretation" of the term "competitive fees" as a plan term. Dkt. 416-14 at 142:4-146:12. Plaintiffs therefore have no basis to exclude Professor Kessler's application of his "expert[ise] in understanding how health plans work" to assist the Court in determining, as a factual matter, the existence of variation in "how [the] plans [at issue here] are specifying their payment obligation." Dkt. 427-5 at 120:7-122:8.

### IV. Defendants' Expert Reports Are Wholly Unlike Professor Lahav's "Amicus Brief"

Finally, there is no basis whatsoever for Plaintiffs' comparisons to the previously excluded expert declaration of Professor Alexandra D. Lahav (Dkt. 170-26). Lahav, a law professor, stated during her deposition that her declaration sought to answer the question, "Does the law support certifying a class under these circumstances, with this class definition?" Dkt. 214-2 at 130:3-5. Her declaration consisted entirely of legal argument, concluding based on Professor Lahav's interpretation of the applicable law that Plaintiffs' proposed classes "should be certified … because [certification] is consistent with [Rule] 23 and governing precedent." Dkt. 170-26 ¶¶ 2, 24. The Court recognized that such statements "are unambiguously legal opinions [that] are outside of the province of expert testimony" and rightly "reject[ed] plaintiffs' thinly disguised attempt to submit what is essentially an amicus brief as an expert report." Dkt. 301 at 5.

By contrast, each of Defendants' expert reports discusses "technical facts" relevant to class certification and "does not focus exclusively [or even substantially] on [R]ule 23's legal standards." *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1205-06 (D.N.M. 2016). Ms. Schmor and Professor Kessler have expressly disclaimed any attempt to make legal conclusions, and have instead offered opinions based on "specialized knowledge" of non-legal fields that will "help the [Court] to understand the evidence" weighing against class certification. Fed. R. Evid. 702. Unlike Professor Lahav's report, those opinions do not "attempt to instruct the [Court] on the law, or how to apply the law to the facts of the case," and thus are not "impermissible legal conclusion[s]." *Diaz*, 876 F.3d at 1199.

7
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERTS
CASE NO. 4:20-cv-02254

# CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion to Exclude the Expert Opinions of Professor Daniel Kessler and Ms. Jessica Schmor.

DATED: May 16, 2024                GIBSON, DUNN & CRUTCHER LLP

By:  /s/ *Geoffrey Sigler*
          Geoffrey Sigler

Attorney for Defendants UNITED BEHAVIORAL HEALTH and UNITEDHEALTHCARE INSURANCE COMPANY

-AND-

PHELPS DUNBAR, LLP

By:  /s/ *Errol J. King, Jr.*
          Errol J. King, Jr.

Attorney for Defendant MULTIPLAN, INC.

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

DATED: May 16, 2024                    GIBSON, DUNN & CRUTCHER LLP

                                       By: /s/ Geoffrey Sigler
                                           Geoffrey Sigler