Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Arnall Golden Gregory LLP
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone:	202.677.4030
Facsimile:	202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
DL Law Group
345 Franklin St.
San Francisco, CA 94102
Telephone:	415.678.5050
Facsimile:	415.358.8484

Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| LD, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>United Behavioral Health, Inc., et al.,<br><br>      Defendants. | Case No. 4:20-cv-02254-YGR-JCS<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**Plaintiffs' Reply to Defendants' Sur-Reply (ECF 434) re: Plaintiffs' Renewed Motion for Class Certification** |

On June 26, 2024, the Court granted Defendants' motion for leave to file a sur-reply, *see* ECF 434 (Defendants' motion); 434-3 ("Sur-Reply") and authorized Plaintiffs to file this response. ECF 439. Defendants' Sur-Reply fails to identify any new or persuasive arguments against class certification or Plaintiffs' new proposed subclasses. Plaintiffs' proposed subclasses are Defendants' own—derived from the categories Defendants introduced. Now that Plaintiffs have adopted Defendants' own categories—and Congress and the Department of Justice have begun investigating Defendants' conduct[1]—Defendants are desperately backpedaling.

### A. Plaintiffs' ERISA subclasses eliminate plan language variability.

Defendants' central argument against Plaintiffs' class certification motion, ECF 396 ("Class Motion"), is that variations in plan language preclude Plaintiffs from establishing commonality. *See* ECF 404 ("Opposition" or "Opp.") at 11–17. In response, Plaintiffs proposed subclasses in their Reply. ECF 426 ("Reply").[2] These subclasses are defined based on the Class Representatives' plan language broken into categories identified *by Defendants*. They consist of plans requiring payment based on: (1) "competitive fees" or (2) "usual, customary, and reasonable" ("UCR") amounts. Reply at 18–20; *see also* ECF 411 ("Kessler Report") ¶¶ 29–36; Opp. at 13. Importantly, these subclasses are indeed *sub*-classes (i.e., subsets of the original proposed class) and they resolve any issues with perceived plan language variation because the reimbursement provisions within each subclass are identical. These subclasses account for more than half the sample plans produced by United, and, presumably, more than half of the original class proposed by Plaintiffs. Defendants had no difficulty sifting through the sample plans and placing them in these buckets. Now they complain it's too hard. They can't have it both ways.

### 1. *There is no "subclass definition issue."*

Defendants argue that allocating members to the subclasses requires plan-by-plan

---

[1] *See* DOJ Press Release, Assistant Attorney General Jonathan Kanter Announces Task Force on Health Care Monopolies and Collusion (May 9, 2024), https://perma.cc/D8Z7-GD6B; Press Release, U.S. Senate Comm. on Fin., Wyden and Sanders Demand Answers from MultiPlan on Sky-High Medical Bills (May 29, 2024), https://perma.cc/9VRR-X545.

[2] The fact that Plaintiffs proposed these subclasses in reply does not prejudice Defendants, especially now that Defendants have now had the opportunity to fully brief the issue. *See Collins v. Anthem, Inc.*, 2024 WL 1172697, at *1 (E.D.N.Y. Mar. 19, 2024) (adopting plaintiffs' alternative class definitions proposed in reply).

1

analysis defeating class certification. Sur-Reply at 2. This is a red herring. It is always required in class certification to identify whether something falls into the class or not.[3] It is unavoidable.[4] Here, Defendants' own experts have already identified the language terms that define Plaintiffs' subclasses and sorted sample plans into those categories. Plaintiffs seek only to extend that methodology to all United's R&C Program plans, not just the sample plans produced. There are many mechanical and or automated ways to do so. A simple keyword search could determine whether a plan has the requisite "competitive fee" or "UCR" language.

Defendants' argument is a last-minute attempt to move the goalpost. First, they argued that even though they used the same Viant methodology for every plan, the plans used different words and so might mean different things. *See* Opp. at 13. Now that Plaintiffs (and, really, Defendants) have identified subclasses that address that problem and use the same words— again, as identified by *Defendants'* expert—Defendants argue that even the same words mean different things. Sur-Reply at 2. Defendants have stretched their argument to the breaking point and articulated a rule that would make it impossible to bring any class action relating to a health plan—thus defeating the protection of ERISA in the many instances where the misadministration of ERISA plans results in low-dollar claims that are uneconomical for individual lawsuits. Of course, that is precisely what Defendants are attempting to do—make it impossible to sue them.

Defendants' argument that it is "foreseeable" that the Court would have to resolve disputes regarding the definition of the subclass is without merit. *See* Sur-Reply at 2. Again, identifying whether plans fit with Plaintiffs' subclasses will be no harder than the identifying

---

[3] To the extent Defendants' arguing is really a disguised "ascertainability" argument, the Ninth Circuit "has made clear there is no ascertainability prerequisite to class certification." *Wakefield v. ViSalus, Inc.*, 2019 WL 3945243, at *9 (D. Or. Aug. 21, 2019) (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017)), *aff'd*, 51 F.4th 1109 (9th Cir. 2022)

[4] For example, a class of "all employees at a particular company" requires a review of records, like payroll records, to determine who was an employee and therefore who falls into the class. *Palmisano v. CrowderGulf, LLC*, 2023 WL 4087610, at *2 (D.N.J. June 20, 2023) (noting "payroll" records may be "suitable method" to determine and identify class members); *Nance v. May Trucking Co.*, 2012 WL 1598070, at *3 (S.D. Cal. May 7, 2012) (similar); *Quevedo v. Dole Food Co.*, 2005 WL 3783455, at *10 (E.D. Cal. Apr. 18, 2005) (similar). Similarly, a class of "all customers who purchased a particular product" requires a review of purchase records or receipts to determine which customers quality. *See, e.g.*, *Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *5 (C.D. Cal. Nov. 5, 2014).

what falls into many other types of classes. There *might* be some edge cases—instances where plan language has some tiny variation in plan wording—but those edge cases will be easy to resolve and will not impact the broader class. *See Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *5 (C.D. Cal. Nov. 5, 2014) (court "retains broad flexibility to deal with such manageability problems if and when they come to fruition"). Courts routinely resolve minor disputes regarding class membership without denying certification. Commonality requires only that "there are questions of law or fact common to the class." *White v. Symetra Assigned Benefits Serv.*, 104 F.4th 1182, 1191 (9th Cir. 2024). It does not require that the identification of class members be self-effectuating. *See In Re: College Athlete Nil Litigation*, 2023 WL 8372787, at *27 (N.D. Cal. Nov. 3, 2023) (plaintiffs need only propose "common method for identifying" class members).

2. ***There is no substantive variation in the reimbursement terms within the newly proposed subclasses.***

Defendants argue that the plans in Plaintiffs' proposed subclasses contain meaningful variations in language relating to the reimbursement terms. Sur-Reply at 3. This argument makes a mountain of a molehill. The subclasses are defined by the words used to describe the reimbursement methodology as identified by Defendants. Other details are simply not relevant to the disputed claims or the issues in this case. The two variations Defendants identify—(1) plans that mention gap methodologies when data are unavailable or limited; and (2) plans that mention allowing "another amount permitted by law"—relate only to additional plan details that did not apply to proposed class members disputed claims, all of which were priced by Viant.[5] These variations do not change the reimbursement methodology itself or the language describing the methodology applicable to the disputed claims. Defendants always used Viant, plain and simple—no "gap methodology," and no "another amount permitted by law."

---

[5] Defendants also identify, Sur-Reply at 3, one plan that refers to both "competitive fees" and "UCR." This plan, of course, supports Plaintiffs' overall argument since the beginning of this case: Every plan, including "competitive fee" plans, invoked a UCR methodology, which is why Defendants applied Viant to all the disputed claims. To the extent the Court somehow determines the competitive fee plans require something different from the UCR plans, the Court "retains broad flexibility" to deal with edge-case plans like this one that might fall into either subclass. *Lewert*, 2014 WL 12626335 at *5.

3

### 3. *There is no standard of review issue precluding commonality.*

Defendants' standard of review argument is another red herring. The possibility of two standards of review for certain ERISA claims does not defeat certification. First, the standard of review question is a merits question that does not defeat the preliminary determination of class certification. *See Hill v. UnitedHealthcare Ins.*, 2016 WL 11520269, at *4 (C.D. Cal. Oct. 26, 2016); *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 502 (N.D. Cal. 2017).

Second, de novo review should apply to all the plans here based on the lack of an unambiguous discretionary clause. In the context of ERISA denial-of-benefits claims, the default standard of review is de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority," in which case abuse of discretion applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The plan must unambiguously provide discretion to the fiduciary to shift the standard of review. *Kearney v. Standard Ins.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc). The parties previously briefed the question of the appropriate standard of review to apply to the individual named Plaintiffs' denial-of-benefits claims, but the court did not make a final determination. *See* ECF 116 ("SoR Order"). Instead, the Court determined that: (1) it was "not clear from the record" whether "UnitedHealthcare" named in at least the named Plaintiffs' plans is the same as Defendant UnitedHealthcare Insurance Company; and (2) it was a factual issue whether MultiPlan was the true but unauthorized benefits decisionmaker. SoR Order at 7. As to the Court's first determination, there is no evidence establishing that the "United Healthcare" named in class member's plans is the same as the Defendant United. Accordingly, those plans do not unambiguously confer discretion on United. *See Kearney*, 175 F.3d at 1090. At best, the plans are ambiguous in conferring discretion on *some* United entity, but not the one who Defendants acknowledge exercised it here. Such ambiguity must be construed in favor of the Plaintiffs. *Kearney*, 175 F.3d at 1090. In any case, the record is abundantly clear that *MultiPlan*—not United—actually exercised discretion here by determining the allowed amount without any meaningful oversight or discretion from United.[6] *See* Class.

---

[6] In any case, the proposed class excludes claims for which United did pay more or other than Viant amounts. *See* Class Mot. at 2.

4

Mot. at 5 (collecting cites); Opp. at 5 (noting United's "reliance on Viant . . . to calculate reimbursement rates"). Accordingly, even if some plans include discretionary clauses, those plans will still be subject to the same de novo review.

Third, even if the abuse of discretion standard applied, Defendants' conduct was arbitrary and capricious and therefore commonly establishes liability regardless of the standard of review.[7]

Fourth, the standard of review issue is applicable only to Plaintiffs' denial-of-benefits claims. It does not defeat certification with respect to Plaintiffs' other claims, like their fiduciary duty or RICO claims. *See* Reply at 7 (expanding these arguments and providing citations).

### 4. *There are no other individualized issues precluding commonality.*

Defendants raise several other individualized issues, which Plaintiffs have previously addressed and do not preclude commonality. First, Plaintiffs are not required to establish balance billing to recover for the underpayment of benefits, as numerous courts have held. *See* Reply at 8–9 (collecting cases). Second, exhaustion is an affirmative defense, subject to applicable exceptions, not required for several of Plaintiffs' causes of actions, and, in any case, Plaintiffs have already demonstrated that some members attempted to exhaust their remedies without success. Reply at 14–15 (expanding argument). Courts have repeatedly determined that assignment does not preclude class certification. Reply at 15 (collecting cases). In short, these and other purported individualized issues do not defeat commonality.

### 5. *Plaintiffs can calculate damages in a routinized and automated way.*

Defendants claim that Plaintiffs' damages model cannot account for plan-specific

---

[7] Where an abuse of discretion standard applies, that review is "'tempered by skepticism' when the plan administrator has a conflict of interest in deciding . . . benefits." *Harlick*, 686 F.3d at 707. The weight of this skepticism "depends on the severity of the conflict," which itself depends on several factors. *Id.* (identifying factors). Notably, the Court already determined that it would consider the existence of Defendants' conflicts of interest in underpaying Plaintiffs' claims. SoR at 9. Those conflicts should warrant heavy skepticism: (1) Defendants did not have any review process to protect against bias; (2) Defendants did not segregate employees who make coverage decisions from those who deal with the company's finances—indeed, the savings fee and repricing schemes were designed solely to increase the Defendants' revenues; (3) United has a history of biased claims administration relating to almost identical practices, which resulting in the Ingenix settlement; and (4) United did not provide a "full review" of the claims and did not follow "proper procedures in denying the claim[s]" because it unilaterally underpaid Plaintiffs claims, without any meaningful review, despite clear plan language and Plaintiffs' appeals, using Viant. *See Harlick*, 686 F.3d at 707; *see* Reply at 15.

negotiated fee caps and requires individualized review. *See* Sur-Reply at 4. This argument ignores the clear testimony of Plaintiffs' experts, who have repeatedly stated that they can calculate damages in a routinized and automated way using "computer automation." *See*, *e.g.*, RPC Rebuttal Report ¶¶ 95, 99, 101, 105, 113, 133. Plaintiffs' experts have the experience and expertise necessary to perform these calculations efficiently, and they are prepared to incorporate the necessary data from Defendants. *See*, *e.g.*, RPC Rebuttal Report ¶¶ 95, 104–08, 113, 133. Furthermore, any "edge cases" involving plan-specific fee caps can be addressed through appropriate adjustments to the damages model, which is a standard and common in class action litigation. *See*, *e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *7 (C.D. Cal. Apr. 9, 2014) ("Generally, potential manageability problems during the damages phase of a class action do not defeat certification."); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (even "highly individualized" damages calculations "cannot defeat certification").

### B. Plaintiffs' RICO subclasses establish commonality.

#### 1. *Any purported variations in phone calls do not defeat commonality.*

Defendants' argument that the phone calls are too varied to allow for class certification is overstated. First, the fact that it may be necessary to identify class members—based on whether their providers "received representations from Defendants during [VOB] calls that their claims would be reimbursed based on a UCR amount"—does not defeat certification. That is yet again part of the routine work in class actions. What matters is that a common method may be used to identify class members. *See*, *e.g.*, *Wakefield v. ViSalus, Inc.*, 2019 WL 3945243, at *9 (D. Or. Aug. 21, 2019), *aff'd*, 51 F.4th 1109 (9th Cir. 2022) (individual issues regarding calls did not defeat class certification where "feasible methods exist to determine" class members); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *8 (W.D. Wash. May 25, 2016). Here, VOB calls or provider documentation may be reviewed in a routinized manner to determine whether Defendants misrepresented their reimbursement methodology.[8] In addition, even if there are minor variations in what Defendants represented to providers, those variations do not defeat class

---

[8] Self-identification is another means to identify class members. *Booth*, 2016 WL 3030256 at *8; *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *7.

certification, as courts in this circuit have repeatedly emphasized. *See* Class Mot. at 19–20.

### 2. *To the extent balance billing is a requirement for class members to recover, evidence of balance billing can be established through class notice.*

Defendants continue to focus on the purported need for individualized inquiries regarding balance billing to defeat class certification as to Plaintiffs' RICO claims. Sur-Reply at 5–6. To the extent evidence of balance billing is required for class members' RICO's claims: (1) Plaintiffs do not need to establish commonality as to *every* element of liability at the class certification stage, *see*, *e.g.*, *In re Apple, AT & T iPad Unlimited Data Plan Litig.*, 2012 WL 2428248, at *4 (N.D. Cal. June 26, 2012) (collecting cases); and (2) Plaintiffs can readily establish which class members paid balance bills using the tools and mechanisms available during the class notice period. *See*, *e.g.*, *Steigerwald v. BHH, LLC*, 2016 WL 695424, at *4 (N.D. Ohio Feb. 22, 2016) (class definition need only "describe objective criteria that allows a prospective class member to identify himself or herself as having a right to recover"); *Lewert*, 2014 WL 12626335 at *5 (class may be certified "[e]ven without receipts" based on self-identification); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014) (class ascertainable when "relevant purchase was a memorable big ticket item" or alternative access to customer information); *Krueger v. Wyeth, Inc.*, 2011 WL 8984448, at *1 (S.D. Cal. July 13, 2011) (class requires "set of common characteristics sufficient to allow" class members to identify themselves based on a "description").

### 3. *Plaintiffs' RICO subclasses easily satisfy the numerosity requirement.*

Defendants attempt to undermine Plaintiffs' RICO subclasses by speculating that few, if any, class members would meet the subclass criteria. Sur-Reply at 6–7. As detailed in Plaintiffs' prior briefing and the provider declarations submitted with it, Defendants' own evidence shows widespread balance billing practices among the thousands of class members' providers. Reply at 8. For example, only four of the 29 providers Defendants subpoenaed indicated that they *do not* "balance bill as a matter of general practice." In any case, numerosity is a low bar, and "courts have certified classes with as few as 16 members." *See Lil' Man in Boat, Inc. v. City & Cnty. of San Francisco*, 2019 WL 125905, at *3 (N.D. Cal. Jan. 8, 2019) (collecting cases).

Dated: July 12, 2024

Arnall Golden Gregory LLP

By: */s/ Matthew M. Lavin*
Matthew M. Lavin

DL Law Group

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman

Attorneys for Plaintiffs and the Putative Class

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM