LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

GEOFFREY SIGLER (*pro hac vice*)
  gsigler@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: 202.995.8500
Facsimile:  202.467.0539

Attorneys for Defendants
UNITEDHEALTHCARE INSURANCE COMPANY
and UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, UNITED BEHAVIORAL HEALTH, a California Corporation, and MULTIPLAN, INC., a New York Corporation,<br><br>Defendants. | Case No.: 4:20-cv-02254-YGR<br><br>**DECLARATION OF REBECCA PARADISE IN SUPPORT OF OMNIBUS MOTION TO SEAL** |

I, Rebecca Paradise, declare as follows:

1. I make this declaration in connection with the above-captioned litigation and the omnibus sealing motion requesting that this Court seal portions of Plaintiffs' Renewed Motion for Class Certification (Dkt. 397-1, "Renewed Motion"), Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 414-1, "Opposition"), Defendants' Sur-Reply (Dkt. 435, "Sur-Reply"), and certain exhibits attached thereto and documents filed therewith. I have personal knowledge of the facts set forth in this Declaration, and, if called as a witness, could and would testify competently to such facts under oath.

2. I am Vice President, Out-of-Network Payment Strategy for UnitedHealthcare Insurance Company ("UHC"). In this role, I am familiar with the matters and documents discussed in this Declaration.

3. Defendants UHC and United Behavioral Health ("UBH") (together, the "United Defendants" or "United") request to maintain under seal certain portions of deposition testimony and documents filed as exhibits to filings listed in Paragraph 1 above. The documents or portions of documents that the United Defendants seek to maintain under seal contain highly confidential and proprietary business records, pricing information, and contractual terms, including detailed descriptions of rates, fees, services, and systems that, if disclosed, would cause competitive harm to the United Defendants, undermine their role in the highly competitive market for administration of health benefits plans, and harm their business relationships with MultiPlan and their customers.

4. The exhibits that the United Defendants seek to seal fit into three general categories of sensitive information, as detailed below.

5. **Category 1: Negotiations & Fee Arrangements with Vendors and Customers.** This category consists of portions of the Renewed Motion, and Opposition. It also includes portions of Exhibits 1, 12, 14, 19, and 61 to Plaintiffs' Renewed Motion (Dkt. 397-1); the entirety of Exhibit 26 to Plaintiffs' Renewed Motion (Dkt. 397-1); portions of Exhibit 70 to my Declaration in Support of Defendants' Opposition (Dkt. 414-1); portions of Exhibits 101, 104, 111, 119, 122, 126, 195, 228, and 237 to the Declaration of Geoffrey Sigler in Support of Defendants' Opposition (Dkt. 408) ("Sigler Declaration"); portions of Professor Daniel P. Kessler's Third Expert Report (Dkt. 415-25) ("Kessler

III Report"); portions of Exhibits 65 and 69 to Plaintiffs' Reply (Dkt. 427-2); and portions of Exhibits 241 and 242 to the Declaration of Lauren Blas in Support of Defendants' Sur-Reply(Dkt. 435-2). It is my understanding that this Court granted Defendants' motion to seal similar testimony and documents in its March 31, 2023 Order (Dkt. 301) and September 21, 2023 Order (Dkt. 352).

   a. These exhibits include discussions of fee arrangements and negotiations between UHC and its customers, or UHC and its vendors. Specifically, these exhibits include (a) the calculation or amount of fees paid by United to certain vendors (e.g., Exhibit 101); (b) the calculation or amount of fees paid to United by its customers (e.g., Exhibit 122); and (c) non-public financial reporting relating to certain United programs or product offerings (e.g., Exhibit 70).

   b. In my role as Vice President, Out-of-Network Payment Strategy for UHC, I am actively involved in United's negotiations with vendors relating to fees and contracts for our different out-of-network product offerings. These vendors include, but are not limited to, MultiPlan, the co-defendant in this case. United negotiates fees with its vendors on an individualized basis and disclosure of fee arrangements or fee information between UHC and other entities, like in portions of Exhibit 101, would pose a risk of competitive harm to UHC because such information could be used to undermine UHC's competitive position in negotiations with other customers or vendors relating to rates, services, and contractual terms.

   c. In addition, United and its customers often negotiate the fees that will be paid to United for a particular package of programs or services relating to a particular healthcare plan. Like our negotiations with vendors, these negotiations are individualized and disclosure of the fee arrangements or fee information with one customer, like in Exhibit 122, could be used to undermine United's competitive position in negotiations with other customers relating to rates, services, and contractual terms.

   d. I understand this Court previously indicated that as a "rule of thumb," testimony and documents older than three years in cases such as this may no longer be confidential. Class Cert. Hearing Tr. 85:11-15. Even though some of these exhibits are more than three years

old or information referenced in these exhibits refers to processes and/or discussions that were in place or occurred at least three years ago, the information sought to be redacted continues to be proprietary and confidential. For example, even if fee arrangements are re-negotiated every year, the disclosure of previous, non-public fee arrangements would publicize the confidential financial arrangements that United has agreed to with certain parties. This would harm United's business advantage by diminishing United's bargaining power against vendors, plan sponsors, or customers with respect to rates, services, and contractual terms. For example, a plan sponsor might use information about the non-public fee arrangements between United and another plan sponsor from three years ago in future negotiations with United. This includes, for example, Plaintiffs' Exhibits 12 and 14, and Defendants' Exhibit and 122.

6. **Category 2: Business Strategy, Proprietary Processes, and Out-of-Network Program Offerings.** This category generally consists of sensitive United business documents that encompass substantive discussions about internal processes, client relationships, and product offerings. This category is split further into two subcategories—category 2(a) relates to internal business discussions regarding business strategy and proprietary processes and category 2(b) relates to out-of-network program offerings. These subcategories are similar and, in some instances, involve overlapping documents.

7. **Category 2(a): Internal Discussions Regarding Business Strategy and Proprietary Processes.** This subcategory consists of portions of Exhibits 9, 10, 12, 14, 19, 52, 54, 56, 62, and 63 to Plaintiffs' Renewed Motion (397-1); the entirety of Exhibits 36, 38, 42, 49, and 55 to Plaintiffs' Renewed Motion (397-1); portions of Exhibit 70 to my Declaration in Support of Defendants' Opposition (Dkt. 414-1); portions of Exhibits 101, 103, 105, 107, 109, 110, 111, 112, and 122 to the Sigler Declaration (Dkt. 408); and the entirety of Exhibits 106 and 128 to the Sigler Declaration (Dkt. 408). It is my understanding that this Court granted Defendants' motion to seal similar testimony and documents in its March 31, 2023 Order (Dkt. 301) and September 21, 2023 Order (Dkt. 352).

   a. These exhibits include sensitive, substantive discussions about internal processes, business strategy, and client relationships, including (a) internal discussions relating to how United

responds to inquiries from members, plan sponsors, and/or providers regarding pricing out-of-network claims (e.g., Exhibits 112 and 128); (b) discussions, testimony, and analyses about particular claims or program features and communications with United customers about those programs (e.g., Exhibit 70); and (c) internal communications regarding UHC proprietary internal processes and standard operating procedures (e.g., Exhibit 110).  These internal discussions and processes are not shared publicly and, if disclosed, could harm UHC's relationships with its customers and put it at a significant disadvantage in the competitive marketplace.  Further, disclosure could also provide competitors with insights into United's strategic decision-making processes relating to its proprietary products and programs that they would not otherwise have access to.

b. As part of my role, members of my team engage in discussions and correspondence relating to the pricing of particular claims and/or responding to inquiries from members or plan sponsors relating to the pricing of claims.  Documents reflecting these discussions, including Plaintiffs' Exhibit 36, often mention internal United processes and contain sensitive analyses, including how a particular claim or issue may relate to broader issues within United's business or for a particular out-of-network program.  Because claims and appeals are handled on an individualized basis, public disclosure of the internal decision-making and processes relating to the pricing of or response to a particular claim or appeal could be used to undermine United's negotiations with providers and members.  It could also provide competitors with insights into United's strategic decision-making relating to its proprietary products and programs that they would not otherwise have access to, thereby putting United at a competitive disadvantage.

c. Additionally, in my role I am familiar with documents, including Plaintiffs' Exhibit 19, which contain United's internal operating procedure for handling calls relating to the reimbursement of out-of-network claims pursuant to one of United's several out-of-network programs, including, but not limited to, Facility R&C, the program at issue in this case.  Such documents reflect proprietary internal United processes and reimbursement logic and implicate many programs and processes having no bearing on the issues in this case.

1  Whether and to what extent claims are eligible for certain out-of-network programs is individualized and is communicated to plan sponsors, members, and providers on an individualized basis depending on the claim at issue.  Although discrete portions of information in United's internal operating procedure for handling calls might be communicated to individual callers, the entire internal operating procedure document would not be disseminated publicly in its entirety and there are many internal notes and comments that would not be publicly communicated at all.  Public disclosure of this and other similar documents and these proprietary processes would provide competitors with strategic insights into United's proprietary processes relating to out-of-network reimbursement that they would not otherwise have access to, thereby putting United at a competitive disadvantage.

d. Similarly, these exhibits contain information from administrative service agreements ("ASAs") that include (among other things) details about their out-of-network program elections.  Information from those agreements is included in United's internal operating procedure for purposes of responding to inquiries relating to a particular plan.  I understand many of our customers consider this information to be competitively sensitive and accordingly, information about the terms in an ASA for one customer/plan sponsor would not be shared with other customers/plan sponsors.  Public disclosure of these terms would cause competitive harm to United and the relevant plan sponsors (e.g., Apple, Tesla, JPMorgan Chase, Oracle, Union Pacific, and Raytheon) and their respective business relationships.

e. Even though some of these exhibits are more than three years old or information referenced in these exhibits refers to processes that were in place at least three years ago, the information sought to be redacted continues to be proprietary and confidential.  Certain processes like those related to United's individualized handling of calls relating to reimbursement of out-of-network claims and United's individualized handling of appeals continue to remain in place and proprietary even though they were also in place at least three years ago.  United therefore presently employs these strategies and uses this

proprietary information to guide present and future strategic decisions. Thus, disclosure may implicate United's current finances and strategic decision-making and can be used against United by a competitor in the highly competitive and open health administration marketplace. This includes, for example, Plaintiffs' Exhibit 9, 10, 12, 14, 36, 38, 42, 49, 52, 54, 55, and 56, and Defendants' Exhibits 103, 106, 107, 109, 110, 112, 122, and 128.

8. ***Category 2(b): Information Regarding Out-of-Network Program Offerings and Features.*** This subcategory consists of portions of Exhibits 1, 10, 12, 14, and 63 to Plaintiffs' Renewed Motion (397-1); the entirety of Exhibits 41 and 53 to Plaintiffs' Renewed Motion (397-1); portions of Exhibit 73 to my Declaration in Support of Defendants' Opposition (Dkt. 414-1); portions of Exhibits 101, 109, 110, and 126 to the Sigler Declaration (Dkt. 408); portions of the Kessler III Report (Dkt. 415-25); and portions of Exhibit 65 to Plaintiffs' Reply (Dkt. 427-2). It is my understanding that this Court granted Defendants' motion to seal similar testimony and documents in its March 31, 2023 Order (Dkt. 301) and September 21, 2023 Order (Dkt. 352).

   a. These exhibits include discussions of highly competitive or commercially sensitive, proprietary, and non-public information relating to out-of-network program offerings that would harm United's business advantage if disclosed publicly. These include: (a) specific features of out-of-network programs, including details of how claim reimbursement is calculated and comparisons of various out-of-network programs and features (e.g., Plaintiffs' Exhibit 41); (b) United's internal discussions regarding strategy and changes to out-of-network programs (e.g., Plaintiffs' Exhibit 12); and (c) United's rationales underpinning strategy decisions and changes to out-of-network programs (e.g., Plaintiffs' Exhibit 10).

   b. Even though some of these exhibits are more than three years old or information referenced in these exhibits refers to programs or offerings that were in place at least three years ago, the information sought to be redacted continues to be operative and/or proprietary. For example, information related to specific features of various out-of-network programs, how claim reimbursement is calculated, and United's rationales for certain strategic decisions relating to out-of-network programs are often several years old, but remain operative.

United presently employs these strategies or uses proprietary information contained in these exhibits to guide present and future strategic decisions. United Defendants consider these documents and testimony to be commercially sensitive because they concern highly detailed, proprietary information regarding United's out-of-network program design and methodology that, if disclosed, could allow others to copy United's approach and could undermine United's competitive advantage in the marketplace. This includes, for example, Plaintiffs' Exhibits 10, 12, and 14, and Defendants' Exhibits 109 and 110.

9. Each of the documents or portions of documents that United Defendants seek to maintain under seal contain highly confidential and proprietary business records, pricing information, and contractual terms, including detailed descriptions of rates, fees, services, and systems. These materials have been designated "Confidential" and/or "Confidential – Attorney's Eyes Only" pursuant to the terms of the Stipulated Protective Order in place in this action. Dkt. 25. These materials are not disseminated publicly. If not filed under seal, disclosure of this information would cause competitive harm to UHC, undermine its role in the highly competitive market for administration of health benefits plans and harm its business relationship with MultiPlan and its customers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 9, 2024.

*Rebecca Paradise*
Rebecca Paradise