DENNIS B. KASS (State Bar No. 137263)
   dennis.kass@manninkass.com
ADAM D. AFSHAR (state Bar No. 330630)
   adam.ashfar@manninkass.com
**MANNIN & KASS**
**ELROD, RAMIREZ, TRESTER LLP**
One California Street, Suite 900
Telephone:   415.217.6900
Facsimile:   415.217.6999

ERROL J. KING, JR. (*admitted pro hac vice*)
   Errol.King@phelps.com
CRAIG L. CAESAR (*admitted pro hac vice*)
   Craig.Caesar@phelps.com
KATHERINE CICARDO MANNINO (*admitted pro hac vice*)
   Katie.Mannino@phelps.com
TAYLOR J. CROUSILLAC (*admitted pro hac vice*)
   Taylor.Crousillac@phelps.com
**PHELPS DUNBAR LLP**
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone:   225.376.0207
Facsimile:   225.381.9197

*Attorneys for Defendant MultiPlan, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LD, DB, BW, RH, and CJ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, INC., a California Corporation, UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, and MULTIPLAN, INC., a New York Corporation,<br><br>Defendants. | Case No. 4:20-cv-02254-YGR-JCS<br><br>(Hon. Yvonne Gonzalez Rogers)<br><br>**DECLARATION OF MARJORIE G. WILDE IN SUPPORT OF DEFENDANTS' JOINT STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br>**[DKT. 324]** |

I, MARJORIE G. WILDE, hereby declare and state as follows:

1. I am Senior Counsel for MultiPlan, Inc. and have been with MultiPlan since 2010.

2. In my capacity as Senior Counsel, I am generally familiar with the business records and general business practices of MultiPlan and its subsidiaries, including Viant, Inc. ("Viant" or, collectively with MultiPlan, "MultiPlan").

3. I make the statements in this Declaration based upon my personal knowledge and information acquired during the ordinary course of my official duties at MultiPlan, and I would testify truthfully to them if called on to do so.

4. I submit this Declaration pursuant to Local Rule 79-5 in support of Plaintiffs' Administrative Motion to File Under Seal [Dkt. 324]. The items identified below that have been submitted to the Court should be sealed in their entirety.

5. More specifically, and using the designations set forth in the table set forth on pages 2 to 10 of the Declaration of Aaron Modiano in Support of Plaintiffs' Administrative Motion to File Materials Designated as Confidential Under Seal ("Modiano Declaration") [Dkt. 324-1], the materials relating to MultiPlan that require sealing are:

    a. Exhibits "15" (Crandell Declaration); "26" (Viant Savings Composite);

    b. "28" through "35" (MultiPlan-produced documents MPI-0016819-26, MPI-0014879-81, MPI-0016580-83, MPI-014844-54, MPI-0015735-54, MPI-0015933-34, MPI-0016593-601, and MPI-0016794-97);

    c. "37" (Viant Standard Missing Value Approach – MPI-0008890);

    d. "43" through "45" (Viant Methodology Whitepapers – MPI-0008643-51, MPI-0000488-98, and MPI-0007803-12);

    e. "46" through "48" (MultiPlan e-mails – MPI0012792-800, MPI-0002008-09, and MPI-0014299-500); "50" (Shared Savings Fee – MPI-0009603"); and

    f. "53" (MultiPlan e-mail – MPI-0009434-40).

6. In addition, portions of transcripts of MultiPlan personnel taken in this case that have been filed in their totality, namely Exhibits "5" (Praxmarer Deposition); "6" (Kienzle Deposition); and "7" (Crandell Deposition") designated "CONFIDENTIAL – ATTORNEY'S ONLY" pursuant to the Stipulated Protective Order that was agreed to by

the parties to this litigation, need to be redacted to reflect those designations. The need for confidentiality with respect to Exhibits "6" and "7" was addressed in prior declarations submitted to the Court. [Dkt. 176-1; Dkt. 176-2; Dkt. 215-5; Dkt. 265-3].

7. I would note that, as to two of these items, namely Exhibits "46," and "53," the Court has previously ruled that they should be sealed. [Dkt. 301].

8. Further, portions of Exhibits "1" and "3," which are the reports of Plaintiffs' experts Research and Planning Consultants, LP ("the RPC Report"); and Robert Ohsfeldt, respectively, also require redaction. The redactions needed to the Ohsfeldt report, which was previously filed by Plaintiffs as Exhibit "W" to their original Motion for Class Certification [Dkt. 168], which the Court denied on March 31, 2023 [Dkt. 301], was addressed in a prior declaration. [Dkt. 176-2].

9. Exhibit "1" (the RPC Report) contains extensive quotations and paraphrasing of information from Exhibit "15" (Mr. Crandell's Declaration) so, to the extent that such information in Exhibit "15" needs protection for the reasons I have previously noted [Dkt.215-5], the passages in Exhibit "1" that reflect that information needs similar protection. In addition to the portions that Plaintiffs have redacted, the following portions of the RPC Report need to be redacted to protect MultiPlan's highly confidential and proprietary information are:

   a. Paragraph 17 (and the documents cited in footnote 5 thereto);
   b. Paragraph 18;
   c. Paragraphs 22-24 (and the Crandell Declaration cited in footnotes 13-15);
   d. Paragraph 29;
   e. Paragraph 31 (and the documents cited in footnote 21);
   f. Paragraph 39-40; 41 (and the document cited in footnote 23);
   g. The heading on Page 19 above Paragraph 45;
   h. Paragraphs 45-48 (and the documents cited in footnotes 26-28);
   i. Paragraphs 50-57 (and the documents cited in footnotes 32-34);
   j. Paragraphs 59-60 (and the documents cited in footnotes 35-36);

    k.  Paragraphs 68-69 (and the document cited in footnote 37);

    l.  The document cited in footnote 40;

    m.  Paragraphs 77-78;

    n.  Page 33 (Damages Model 1)

    o.  Page 34 (Damages Model 2);

    p.  Attachment 3 ("MultiPlan Local Areas"); and

    q.  Attachment 4 ("MSA UCR80 Values for H0015).

10. Exhibit "1" also cites, quotes from, or relies upon other MultiPlan-produced documents that are not listed in the Modiano Declaration, but which also require protection from disclosure. These are: MPI-0006010-16; MPI-0014700-04; MPI0014844-54; MPI-0016819-26; and MPI-0016887-95. Exhibit "1" also cites another MultiPlan document, MPI-C0020814-15, which MultiPlan produced in discovery in other litigation, <u>but not in this case</u>. Instead, MultiPlan produced that document and designated it as "CONFIDENTIAL – ATTORNEY'S EYES ONLY" pursuant to the Stipulated Protective Order in *RJ et al. v. Cigna Health & Life Ins. Co, et al.*, No 5:20-cv-02255-EJD (N.D. Cal.).

11. Exhibit "1" also references highly confidential, commercially and competitively sensitive information pertaining to the United-MultiPlan business relationship, the public disclosure of which would be detrimental not only to MultiPlan, but to United, as well, in that it would give other healthcare marketplace participants insight into such dealings that they could use to the competitive disadvantage of MultiPlan and United. Such information includes figures reflecting the rates and/or fees paid by United to MultiPlan in connection with its cost-containment services, which fee information is not shared publicly, is the subject of confidential, arms-length negotiation between MultiPlan and United, and is closely guarded by MultiPlan. Such information includes the percentile, difference, and damages figures set forth in the following portions of Exhibit "1," which should be redacted for the reasons set forth herein.

    a. Paragraph 2(f);

    b. Paragraph 73, second bullet.

    c. Paragraph 77;

    d. Paragraph 78.

12. Further, Exhibit "14" (Ralston Declaration) also requires redaction. It was the subject of a previous request to file redacted portions under seal [Dkt. 251: Dkt. 265] which was supported by a prior declaration that I provided [Dkt. 265-3]. The previously redacted portions should remain protected from public disclosure for the reasons set forth in my prior Declaration.

13. Finally, there are various passages in Plaintiffs' Notice of Renewed Motion, Proposed Renewed Motion, and Memorandum of Points and Authority in Support of Renewed Motion for Class Certification ("Plaintiffs' Renewed Motion/Memo") [Dkts. 323-5, and 324-3] that reflect confidential and proprietary information drawn from the various exhibits discussed herein. The Court has not yet granted leave for Plaintiffs to file those pleadings; however, those pleadings remain accessible on the electronic court docket. The continued public disclosure of these passages similar will adversely affect MultiPlan's business. While Plaintiffs have redacted some discrete figures or phrases, even as to those, it would appear that Plaintiffs' intended use of the redacted materials does not justify their remaining unavailable to the public. MultiPlan disagrees. Those references and passages in Plaintiffs' Renewed Motion/Memo cited in the immediately preceding paragraph include the following:

    a. Page 5, lines 2-5;

    b. Page 8, lines 23-24;

    c. Page 9, lines 9-15;

    d. Page 10, lines 19-26;

    e. Page 11, lines 8-10, 15-24;

    f. Page 12, lines 3-7, 9-15, 23-27;

    g. Page 13, lines 2, 7-16, 17-28;

    h. Page 14, lines 1-4, 22-25, 28;

    i. Page 15, lines 1-4, 8-13;

    j. Page 16, lines 3-10;

    k. Page 30, n. 15.

All of the foregoing should be redacted as they discuss and rely on confidential information contained in the various exhibits that I discuss herein.

14. Contrary to the statements in the Modiano Declaration, which I have reviewed, along with the documents addressed herein, each of the above-identified items contains or refers to highly confidential, proprietary information involving MultiPlan. Public disclosure of such information would cause immediate and irreparable harm to MultiPlan's business, as well as its relationship with United, one of its clients. In particular, this information, if disclosed, would place MultiPlan at a commercial disadvantage by undermining its role in the highly competitive market for the provision of cost-containment services.

15. In the ordinary course of business, MultiPlan uses several methods to protect its highly competitive and commercially sensitive proprietary and non-public information. Along with published internal company confidentiality policies (available in hard copy form and through internal postings accessible by MultiPlan employees), employee training, written employee confidentiality commitments entered into upon initial employment and periodically reaffirmed while employed, restricted access, and the placement of "confidential and proprietary" logos on the documents in question, MultiPlan strives to ensure that these materials, as well as the information they contain, remain protected from disclosure.

16. For the reasons set forth below, all of the items identified in Paragraphs 5 through 12 above should be sealed in their entirety.

17. I would further note that of that group, Exhibits "15," "37," and "43" through "45," have been the subject of previous requests to file under seal [Dkt. 170; Dkt. 176; Dkt. 251; Dkt. 265], which were supported by a prior declaration from Mr. Crandell [Dkt.176-2], and ones that I provided [Dkt. 215-5; Dkt. 265-3]. The Court has, in fact, ruled that Exhibits "46"

and "53" should be sealed. [Dkt. 301]. There is no compelling reason to change this determination.

18. MPI-0006010-12 is a September 2018 MultiPlan whitepaper setting forth in detail the Viant OPR methodology. It is therefore substantially the same as other whitepapers that have been discussed in prior declarations. The information set forth therein is highly confidential and proprietary remains, in large part, consistent with the methodology as it exists and operates today. Public disclosure would adversely affect MultiPlan's business; the document should remain sealed.

19. Exhibits "6" and "7" have also been the subject of previous requests to file under seal [Dkt. 170; Dkt. 176; Dkt. 251; Dkt. 265], which prior requests MultiPlan supported with declarations from MultiPlan's outside counsel, Mr. Crandell, and me. [Dkt. 176-1; Dkt. 176-2; Dkt. 215-5]. Again, those particular deposition transcripts have been the subject of confidentiality designations by MultiPlan pursuant to the Stipulated Protective Order. Nothing has changed in the interim that would mitigate the financial and competitive harm public disclosure of the designated passages will cause MultiPlan. Thus, those documents should remain under seal.

   a. Additionally, while Exhibit "5" has not been the subject of a previous request to file under seal, Exhibit "5," like Exhibits "6" and "7," has been the subject of a confidentiality designation by MultiPlan pursuant to the Stipulated Protective Order entered in this matter.

   b. In light of this confidentiality designation and knowing what testimony Mr. Praxmarer provided in her deposition based on my review of the confidential transcript, I believe that public disclosure of the information set forth therein will cause MultiPlan financial and competitive harm, justifying its placement under seal.

20. Exhibit "26" is a compendium of presentations given by MultiPlan to United from 2016 to 2020 that contains highly detailed discussions of the MultiPlan-United business relationship and includes confidential revenue and financial performance information, as

well as proposed initiatives with deployment dates in 2022, and the implementation of previously United-approved programs, the public disclosure of which would adversely affect both MultiPlan and United by providing other marketplace participants insight into the dealings between United and MultiPlan which would aid them in competitive and negotiating strategies. These materials have been held confidential and have not been shared with anyone other than United as part of the contractual dealings with MultiPlan.

21. Exhibits "28," "29," "31," "33," "35," "47," "48," and MPI-0014700-04; MPI-0016819-26; and MPI-0016887-95 (these last three are not listed on the Modiano Declaration but appear only in Exhibit "1" (the RPC Report), are documents prepared for and relating to a confidential DOL investigation, as well as other pending litigation. The Modiano Declaration mischaracterizes these materials as having been "sent to a government agency that is not FOIA exempt and . . . in the public interest." This is incorrect. Exhibits "28," "31," "33," "35, "47" and "48," as well as MPI-0014700-04; MPI-0016819-26; and MPI-0016887-95, show on their face that they are internal communications among MultiPlan personnel, including in-house and outside counsel, who were engaged in responding to the DOL requests for information. Exhibit 31 is a memorandum prepared for MultiPlan's legal department by MultiPlan's outside counsel regarding the status of that matter. None of those documents were sent by MultiPlan to a government agency. Regardless of whether portions of what is discussed in those communications was subsequently communicated to the DOL in some other way, the confidentiality of the proceeding itself is designed to ensure the information is not publicly disclosed. Maintaining the confidentiality of these documents in this proceeding ensures that the information contained therein, which relates to methodology and other proprietary matters, is not available to marketplace participants who could utilize the information to the detriment of MultiPlan.

22. Contrary to statements in the Modiano Declaration, Exhibits "30," "32," and "34" have nothing whatsoever to do with the DOL investigation and were not shared with the DOL. Instead, Exhibit "30" is an internal MultiPlan e-mail chain from 2018 that originates with a dispute that United was having with a provider concerning H0015 reimbursement and in

which various MultiPlan personnel, including attorneys, were considering the issues that had been raised. The e-mails also contain discussions of the Viant OPR methodology, as well as analysis by an outside consultant, which would not have been, and in fact, were not, shared outside the company. The information contained therein is still of relevance to MultiPlan's operations today.

23. Similarly, Exhibit "32" is an end of 2019/beginning of 2020 e-mail chain that involves internal MultiPlan consideration of proposed language to be shared by United with its customers concerning a change in reimbursement for claims priced using the Viant I/OPR methodology. Again, the discussions were confidential, relate to MultiPlan-United business dealings, and are of relevance to present-day activities.

24. Exhibit "34" is a draft declaration, with annotations, of a MultiPlan employee in a confidential arbitration proceeding involving United. The document bears an original designation of "CONFIDENTIAL – ATTORNEY EYES ONLY – Subject to Protective Order," which establishes that was prepared in connection with a private arbitration and not a public proceeding, such as a court case. It also contains the PHI of one of United's members. The information set forth in the document reflect proprietary and confidential information about the Viant Facility Outpatient U&C Review Service. Contrary to statements in Modiano Declaration, the information is highly detailed and constitutes a trade secret entitled to continued protection from disclosure.

25. Exhibit "46" is a 2018 e-mail, internal to MultiPlan, that reflects a detailed discussion of the then-proposed cross-walking of H0015 to an appropriate APC. It contains confidential information that should not be publicly disclosed as the process involved is proprietary and remains confidential to this day. The Court has previously determined that this document should be sealed. [Dkt. 301].

26. Exhibit "50" is Excel spreadsheet that displays financial information regarding not only the Viant OPR product, but also products provided by MultiPlan to United. It contains highly confidential information regarding the United-MultiPlan business relationship, the disclosure of which would be detrimental not only to MultiPlan, but to United, as well, in

     that it would give other healthcare marketplace participants insight into such dealings that they could use to the competitive disadvantage of MultiPlan and United.

27. Exhibit "53" is a 2019 e-mail chain that contains detailed information about United use of Viant OPR in various configurations, as well as the impact of planned and potential changes to the same. Public disclosure will provide insight to other healthcare marketplace participants about MultiPlan's confidential business dealings with United that would be detrimental both to MultiPlan and United. I note that the Court has previously found that this document should be sealed. [Dkt. 301].

28. MPI-C0020814-15 is an October 2018 e-mail chain, internal to MultiPlan, relating to the implementation of the crosswalk from H0015 to an appropriate APC. It contains confidential information that should not be publicly disclosed as the process involved is proprietary and remains confidential to this day. Again, this MPI-C0020814-15 is a document MultiPlan produced in another case (the *RJ* case), subject to that case's Stipulated Protective Order.

//
//
//
//
//
//
//
//
//
//
//
//
//

29. Finally, the redaction of the reports of two of Plaintiffs' experts (Exhibits "1" and "3"), such are essential to ensuring that the highly confidential information contained therein are not publicly disclosed. Exposure of the details set forth in the passages sought to be redacted (*see* paragraphs 8 to 11 above), would harm MultiPlan's business, as other healthcare marketplace participants would benefit from knowledge of previously undisclosed details of the Viant methodology, the confidentiality of which MultiPlan has consistently striven to maintain. This relates not only to the passages from, and references to Mr. Crandell's Declaration (discussed in paragraph 13 above), but also the MultiPlan documents cited therein, which have all been addressed in this Declaration.

30. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury and the laws of the United States and the State of California that the foregoing statements are true and correct to the best of my knowledge, information and belief, and that this Declaration was executed on the 31st day of July 2023, in Naperville, Illinois.



_____
Marjorie G. Wilde

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

DATED: July 31, 2023					GIBSON, DUNN & CRUTCHER LLP

							By:	*/s/ Lauren M. Blas*
								Lauren M. Blas