```
 1  LAUREN M. BLAS, SBN 296823
       lblas@gibsondunn.com
 2  GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
 3  Los Angeles, CA  90071-3197
    Telephone: 213.229.7000
 4  Facsimile:  213.229.7520

 5  GEOFFREY SIGLER (pro hac vice)
       gsigler@gibsondunn.com
 6  GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.
 7  Washington, DC 20036-5306
    Telephone:    202.995.8500
 8  Facsimile:  202.467.0539

 9
    Attorneys for Defendants
10  UNITED HEALTHCARE INSURANCE COMPANY and
    UNITED BEHAVIORAL HEALTH
11
```

**IN THE UNITED STATE DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LD, DB, BW, RH and CJ, on behalf of themselves and all others similarly situated,,<br><br>Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, and MULTIPLAN, INC., a New York corporation,,<br><br>Defendant. | Case No. 4:20-cv-02254-YGR<br><br>**DECLARATION OF SCOTT FLOYD OF NON-PARTY CISCO SYSTEMS, INC. IN SUPPORT OF JOINT OMNIBUS SEALING STIPULATION** |

I, Scott Floyd, declare as follows:

1. I am currently employed as a Senior Director, People & Communities, Global Benefits, at Cisco Systems, Inc. ("Cisco"). I have worked at Cisco in this role since 2021. I have personal knowledge of the information set forth herein and if called upon to testify thereto, I could and would competently do so.

2. My job responsibilities at Cisco include, among other things, overseeing the team that designs and configures the employee health benefit plans that Cisco makes available to employees based in the United States, including in northern California, and assisting with certain resulting contracts and relationships on behalf of Cisco. I am either personally involved in, or kept informed by team members who report up to me of, the many negotiations with the insurers that provide administrative services in connection with Cisco's self-insurance program, including United HealthCare Insurance Company ("UHC").

3. I understand that excerpts of the Administrative Services Agreement between Cisco and UHC, and amendments thereto (collectively, the "Cisco/UHC ASA"), were submitted under seal to the Court in the above-captioned case as **Exhibit 25** to the Declaration of Matt Lavin in support of Plaintiffs' Renewed Motion for Class Certification (Dkt 397-24) and as **Exhibit 49** to the Declaration of Jeff Schneewind in Support of Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 415-16).

4. Because of my role at Cisco, I have personal knowledge with respect to the Cisco/UHC ASA and whether it contains commercially sensitive, confidential and/or proprietary information. I have reviewed Exhibits 25 and 49 and I am submitting this declaration to support the renewed sealing of those Exhibits.

5. Previously, on April 31, 2023, I signed a declaration in support of UHC's sealing motion and I recently reviewed that declaration. Also, on October 2, 2023, I signed a declaration in support of UHC's sealing motion and I recently reviewed that declaration. My statements in the April and October declarations remain true. I submit this declaration to provide additional details about the Cisco/UHC ASA, and how public disclosure of the Cisco/UHC ASA and amendments would harm Cisco.

**Background on Cisco's Self-Insured Employee Health Insurance Plans**

6. As background, the vast majority of Cisco's United States employees (approximately 85%) are covered by one of Cisco's self-insured employee health insurance plans. Cisco engages in substantial, confidential negotiations with health insurers, including UHC, in order to ensure that the terms of these policies are favorable to Cisco and its employees, that the polices reflect Cisco's standards for employee coverage, and that the policies are provided at a reasonable cost.

7. Cisco is a global information technology and networking company, that must compete to attract and retain top talent in the industry. In this very competitive environment, one of the ways that Cisco attracts and retains employees is by offering well-designed health insurance plan options tailored to its employee profile. Cisco re-configures its UHC plan offerings (and plan offerings from other insurers) each year to be maximally useful for the talented employees that Cisco needs to attract and retain.

8. Cisco has contracted with UHC to provide heath insurance offerings to Cisco employes since January 2000. Cisco has a longstanding business relationship with UHC, among others, to provide health insurance plans for Cisco employees to choose from and to administer those health insurance plans. Many of Cisco's United States employees and their families who are covered by a self-insured health insurance plan are covered under the UHC health plan. This amounts to hundreds of thousands of Cisco employees and their families who are covered by the plan Cisco negotiates with UHC.

9. The ultimate design of the UHC health insurance plan is unique to Cisco. It has been painstakingly developed over many years and is reassessed each year. I estimate that Cisco devotes at least 500 employee hours each year to ongoing assessment, design, and negotiation of the custom-tailored benefits plans, administered by UHC and others, that Cisco provides to its U.S. employees. The Cisco/UHC ASA is a result of significant, confidential back-and-forth negotiations with UHC regarding coverage and other issues.

**The Cisco/UHC ASA First Executed in 2000, Including Subsequent Amendments, Remains in Effect and Commercially Sensitive Today**

10. The Cisco/UHC ASA was executed in 2000 and is still in effect today. Every year Cisco engages in significant, confidential negotiations with UHC (and other insurers), regarding pricing, coverage, and other issues. Among other things, Cisco very actively negotiates what it pays for the

administrative services provided by UHC. Those payment terms include fee schedules and terms, which are contained throughout Exhibits 25 and 49. For example, at UHC000209098-100, UHC000209109-10, UHC000209120, UHC000209122, UHC000209128, UHC000209130, UHC000209138, UHC000209140, UHC000209148, UHC000209150, UHC000209160, UHC000209162-63, UHC000209171, UHC000209191-92, UHC000209210-11, UHC000209235-36, UHC000209260-62, UHC000209280-82, UHC000209299-301, UHC000209321-22.

11. Commercially sensitive payment terms are also contained in other portions of Exhibits 25 and 49, including terms covering: performance measures, standards, and guarantees, for example, at UHC000209111-116, UHC000209174, UHC000209323-24; rebate and discount programs with pharmacies and drug manufacturers, for example, at UHC000209106; and claim recovery services, for example, at UHC000209104. Cisco also carefully configures the employees' financial responsibilities within its plans. The results of those negotiations are amendments to the Cisco/UHC ASA.

12. The Cisco/UHC ASA that was executed in 2000, and all of the amendments since then, continue to be commercially sensitive information because the collective Cisco/UHC ASA, which includes the initial ASA and subsequent 20 years of amendments, is still an active agreement between the parties. Even specific terms that have been amended at some point in the past reflect the ongoing, heavily-negotiated relationship between Cisco and UHC. If the results and trends from multiple years of amendments are viewed together, it would disclose and reveal Cisco's strategies, changes to Cisco's strategies over time, and the progress Cisco has made to achieve its strategies. Disclosure of confidential and proprietary health insurance plan information even from many years ago could still harm Cisco by negatively impacting its bargaining position with insurers, potentially disrupting some of those relationships, and revealing its strategies to competitors. Because Cisco re-negotiates all of its health plan administrative services agreements at least annually, Cisco maintains the confidentiality of its negotiation postures, contract terms specific to Cisco, and unique health insurance plan designs for many years, going back to 2000 and even before.

**Draft & Unexecuted ASAs Records Contain Commercially Sensitive Contract Terms and Reveal Commercially Sensitive Negotiations**

13. Exhibit 49 contains copies of portions of the Cisco/UHC ASA and amendments that do not have signatures from representatives of both Cisco and UHC. However, signature from the parties are not required for the some of the amendments to take effect, for example, at UHC000209190, UHC000209209, UHC000209234, UHC000209259, UHC000209279, UHC000209298, and UHC000209320. Those letters and enclosed amendments contain commercially sensitive and final terms of the Cisco/UHC ASA.

14. Exhibit 49 also include non-final, unexecuted, and redlines versions of the Cisco/UHC amendments, which contain unique provisions, terms, and arrangements that reflect the negotiations between Cisco and UHC, for example at UHC000209128, UHC000209138, UHC000209140, UHC000209148, UHC000209150). In addition, those versions may reflect the final terms agreed to by the parties. Were these documents publicly disclosed it would reveal specific information about Cisco negotiations that could be used unfairly by Cisco's competitors or other insurance providers as described below.

**Cisco Would Be Harmed by Public Disclosure of the Cisco/UHC ASA Including Amendments**

15. If made public, the portions of the Cisco/UHC ASA and amendments in Exhibits 25 and 49 could be used by competitors to understand Cisco's negotiation strategy, tactics, practices, plans, and posture. On its face, the Cisco/UHC ASA discloses pricing and other highly sensitive contract terms that are specific to Cisco—and are never shared with competitors or other insurers.

16. Specifically, if the Cisco/UHC ASA and amendments were disclosed publicly, Cisco's competitors could use the information to demand concessions from UHC, eliminating or reducing any market advantage that Cisco has achieved. Additionally, other insurers could use this information in contract negotiations to increase their bargaining power and calibrate the concessions they demand from Cisco. Those disadvantages would negatively impact Cisco's ability to negotiate favorable terms with insurers, to offer competitive, high-quality, affordable employee health plans, and to recruit and retain top talent.

17. It is crucial that Cisco be able to participate in confidential discussions and analyses like those that were involved in negotiating, forming, and finalizing the Cisco/UHC ASA without fear of the public, or other parties to related or future negotiations, accessing Cisco's proprietary and sensitive strategic information. Publicly disclosing the unique program design features of Cisco's health insurance plans, in particular the Cisco/UHC ASA, would harm Cisco's business and financial interests and competitive abilities by revealing Cisco's strategies and plans to Cisco's competitors and to other insurers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 16th day of May 2024.

_____
SCOTT FLOYD

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

DATED: June 24, 2024

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Geoffrey Sigler_
Geoffrey Sigler

Gibson, Dunn & Crutcher LLP

DECLARATION OF SCOTT FLOYD OF NON-PARTY CISCO SYSTEMS, INC. ISO JOINT OMNIBUS SEALING STIPULATION - CASE NO. 4:20-CV-2254-YGR