**SEALED DOCKET No. 397-1**
**PUBLIC VERSION OF DOCKET No. 396**

# PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

***PUBLIC***
***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Arnall Golden Gregory LLP
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone: 202.677.4030
Facsimile: 202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
DL Law Group
345 Franklin St.
San Francisco, CA 94102
Telephone: 415.678.5050
Facsimile: 415.358.8484

Attorneys for Plaintiffs and the Putative Class

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

LD, et al.,

Plaintiffs,

v.

United Behavioral Health, Inc., et al.,

Defendants.

Case No. 4:20-cv-02254-YGR-JCS

Hon. Yvonne Gonzalez Rogers

**Plaintiffs' Notice of Renewed Motion, Renewed Motion, and Memorandum of Points and Authority in Support of Renewed Motion for Class Certification**

Date: May 22, 2024

Time: 2pm

Location: Oakland Courthouse Courtroom 1 – 4th Floor 1301 Clay Street Oakland, CA 94612

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

# Table of Contents

I. Proposed Class Definition....2

II. Factual Background....2

A. Defendants were required to price OON claims at UCR, but applied Viant in a manner that was incapable of producing UCR for IOP claims....2

1. United administers plans that provide OON coverage for IOP services....3

2. United's health plans are grouped into standardized programs....4

3. United confirmed on verification of benefits calls that claims would be reimbursed based on UCR....5

4. Defendants failed to adequately notify patients or providers of their application of Viant....7

B. Defendants' Viant methodology used inappropriate and irrelevant data sources that were incapable of producing UCR pricing....8

C. Both Viant methods produced invalid UCR amounts....12

D. Defendants profited off their scheme through disguised "savings" fees....13

III. Legal Standard....14

IV. Analysis....15

A. Plaintiffs satisfy the requirements of Rule 23(a)....15

1. Plaintiffs have established commonality....15

2. Plaintiffs are sufficiently numerous....20

3. Plaintiffs are typical and adequate....20

B. Plaintiffs satisfy the requirements of Rule 23(b)....21

1. Plaintiffs satisfy Rule 23(b)(1) (incompatible standards class)....22

2. Plaintiffs satisfy Rule 23(b)(2) (injunctive class)....23

3. Plaintiffs satisfy Rule 23(b)(3) (money damages class)....23

C. Plaintiffs have provided an adequate damages model for determining putative class members' damages for the underpayment of benefits....25

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

**Exhibit List**

| Ex. No. | Description |
|---|---|
| 1 | RPC Expert Report |
| 2 | Hall Expert Report |
| 3 | Ohsfeldt Expert Report |
| 4 | AAPC Expert Report |
| 5 | Praxmarer Deposition |
| 6 | Kienzle Deposition |
| 7 | Crandell Deposition |
| 8 | Borsten Deposition |
| 9 | Bradley Deposition |
| 10 | Lopez Deposition |
| 11 | Franco Deposition |
| 12 | Strait Deposition (UBH 30(b)(6)) |
| 13 | BW Deposition |
| 14 | Paradise Deposition (United 30(b)(6)) |
| 15 | Crandell Declaration |
| 16 | Franco Declaration |
| 17 | SPD Composite |
| 18 | VOB Composite |
| 19 | IBAAG Composite |
| 20 | VOB Recording Composite |
| 21 | EOB Composite |
| 22 | PRA Composite |
| 23 | PAD Composite |
| 24 | EOM Composite |
| 25 | Composite ASAs |
| 26 | Viant Savings Composite |
| 27 | Non-IOP EOB/PRA Composite |
| 28 | [redacted] (MPI0016819) |
| 29 | Viant OPR Pricing Logic (MPI0014879) |
| 30 | MultiPlan 2018 H0015 Emails (MPI0016580) |
| 31 | [redacted] (MPI0014844) |
| 32 | MultiPlan R&C Reduction Emails (MPI0015753) |
| 33 | [redacted] (MPI0015933) |
| 34 | Beckstead Declaration Draft (MPI0016593) |
| 35 | MultiPlan Talking Points (MPI0016794) |
| 36 | Lopez Email 3/31/20 (UHC000015587) |
| 37 | Viant Standard Missing Value Approach (MPI0008890) |
| 38 | OON Program Overview (UHC000038587) |
| 39 | Summit Appeal Letter (UBH000003011) |
| 40 | Summit Financial Consent (PLD0003006) |
| 41 | United’s OON Procedures (UHC000197899) |
| 42 | United Remark Code Policies (UHC000071826) |
| 43 | Viant 2016 White Paper (MPI0008643) |
| 44 | Viant 2016 Methodology (MPI0000488) |

| | |
|---|---|
| 45 | Viant 2009 Methodology (MPI0007803) |
| 46 | [redacted] (MPI0012799) |
| 47 | Crandell Schill Emails (MPI0002008) |
| 48 | Beckstead Crandell Email (MPI0014299) |
| 49 | United Fee Percentage Data (UHC000296122) |
| 50 | Shared Savings Fee Revenue (MPI0009603) |
| 51 | Optum Behav. Health Reimbursement Policy |
| 52 | 2020 Olson Email (UHC000091861) |
| 53 | 2019 Edwards Email (MPI-0009434) |
| 54 | 2018 Lopez Emails (UHC000131783) |
| 55 | 2018 IBAAG Emails (UHC000030972) |
| 56 | 2020 Tunnel Emails (UHC000091543) |
| 57 | Schmor Expert Report |
| 58 | Schmor Expert Report Addendum |
| 59 | Schmor Expert Report Fair Health Research |
| 60 | Schmor Deposition |
| 61 | Kessler Deposition |
| 62 | Siskin Expert Report |
| 63 | Siskin Deposition |
| 64 | About Arnall Golden Gregory |


ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828 (9th Cir. 2022) ....................20

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013) ....................20, 24

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ....................14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ....................14

*Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. 2022) ....................21

*Ballas v. Anthem Blue Cross Life & Health Ins.*, 2013 WL 12119569 (C.D. Cal. Apr. 29, 2013) ....................22

*Bauer v. Kraft Foods Glob.*, 277 F.R.D. 558 (W.D. Wis. 2012) ....................23

*Brooks v. Educators Mut. Life Ins.*, 206 F.R.D. 96 (E.D. Pa. 2002) ....................16, 23

*Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) ....................15

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010) ....................19

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ....................25

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) ....................14

*Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486 (N.D. Cal. 2017) ....................22, 23

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722 (C.D. Cal. May 16, 2016) ....................19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ....................23

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

*Elkies v. Johnson & Johnson Servs.*,
2018 WL 11223465 (C.D. Cal. Oct. 18, 2018)....25

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006)....19, 20

*Franco v. Connecticut Gen. Life Ins.*,
289 F.R.D. 121 (D.N.J. 2013)....17, 18

*Fuller v. Fruehauf Trailer Corp.*,
168 F.R.D. 588 (E.D. Mich. 1996)....17

*Geddes v. United Staffing All. Emp. Med. Plan*,
469 F.3d 919 (10th Cir. 2006)....17

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)....20

*Head v. Citibank*,
340 F.R.D. 145 (D. Ariz. 2022)....25

*Hilario v. Allstate Ins.*,
2022 WL 17170148 (N.D. Cal. Nov. 22, 2022)....24

*Hodges v. Akeena Solar, Inc.*,
274 F.R.D. 259 (N.D. Cal. 2011)....24

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*,
102 F.R.D. 457 (N.D. Cal 1983)....15

*Jimenez v. Allstate Ins.*,
765 F.3d 1161 (9th Cir. 2014)....20, 24

*Johnson v. City of Grants Pass*,
50 F.4th 787 (9th Cir. 2022)....20

*Joint Equity Comm. of Invs. v. Coldwell Banker Real Est.*,
281 F.R.D. 422 (C.D. Cal. 2012)....19

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008)....22

*Kazda v. Aetna Life Ins.*,
2022 WL 1225032 (N.D. Cal. Apr. 26, 2022)....20

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013)....24

*In re Lithium Ion Batteries Antitrust Litig.*,
853 Fed. Appx. 56 (9th Cir. 2021)....21

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

*Med. Soc'y of New York v. UnitedHealth Grp. Inc.*,
2019 WL 6888613 (S.D.N.Y. Dec. 18, 2019) ....................18

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ....................21

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
2010 WL 11507255 (C.D. Cal. Aug. 27, 2010)....................24

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
823 F.3d 948 (9th Cir. 2016), *as amended* (Aug. 18, 2016)....................22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ....................14, 15, 17, 24

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) ....................20

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ....................17

*Peters v. Aetna*,
2 F.4th 199 (4th Cir. 2021) ....................18

*Postawko v. Missouri Dep't of Corr.*,
2017 WL 3185155 (W.D. Mo. July 26, 2017)....................18

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ....................25

*Raffin v. Medicredit, Inc.*,
2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ....................21

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ....................14, 15

*Santillan v. Gonzales*,
388 F. Supp. 2d 1065 (N.D. Cal. 2005)....................16

*Shuman v. SquareTrade, Inc.*,
2022 WL 10177658 (N.D. Cal. Oct. 17, 2022)....................24

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................15, 20

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................20

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)....................17

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

*Wachtel v. Guardian Life Ins.*,
223 F.R.D. 196 (D.N.J. Aug. 5, 2004) ..... 17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..... 15, 23

*Waters Corp. v. Millipore Corp.*,
2 F. Supp. 2d 66 (D. Mass. 1997) ..... 16

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2009) ..... 18

*Williams v. Oberon Media, Inc.*,
468 F. App'x 768 (9th Cir. 2012) ..... 20

*Wit v. United Behav. Health*,
79 F.4th 1084–86 (9th Cir. 2023) ..... 22

*Yokoyama v. Midland Nat. Life Ins.*,
594 F.3d 1087 (9th Cir. 2010) ..... 20, 24

**Other Authorities**

Newberg and Rubenstein on Class Actions (6th ed. 2023) ..... 21, 22

CMS, Transmittal 12423, Pub. 100-04 Medicare Claims Processing, at 1 (Dec. 20, 2023) ..... 12

Office of Inspector General; Medicare Program; Prospective Payment System for Hospital Outpatient Services, 65 Fed. Reg. 18,434, 18,452 (Apr. 7, 2000) ..... 12

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

**Notice of Motion & Motion**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 22, 2024 at 2 pm in Courtroom 1 – 4th Floor before the Honorable Yvonne Gonzalez Rogers, Plaintiffs in the above-captioned action hereby move for class certification pursuant to Federal Rule of Civil Procedure 23.

The relief Plaintiffs request in this motion is an order: (1) certifying the proposed class defined below; (2) appointing Plaintiffs as representatives of the Class; and (3) appointing Plaintiffs' counsel, Arnall Golden Gregory LLP, as class counsel for the Class, as well as any other relief that this Court deems appropriate and proper. This motion is brought pursuant to Fed. R. Civ. P. 23 and is supported by this Notice of Motion, Motion, and accompanying Memorandum of Points and Authorities, the Declaration of Matthew M. Lavin, and all exhibits thereto, all pleadings on file in this lawsuit, and such other support as Plaintiffs may present to this Court.

**Statement of Issues to Be Decided**

The issues for this Court to decide are: (1) whether the Court should certify the proposed Class under Fed. R. Civ. P. 23; (2) whether the Court should appoint the Plaintiffs as Class representatives for the Class; and (3) whether the Court should appoint Arnall Golden Gregory LLP as class counsel for the Class.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

**Memorandum of Points & Authorities**

This case is about Defendants' scheme to reap inflated profits by underpaying over 88,000 medical claims. Plaintiffs and the putative class members consist of at least 11,280 patients with employer-sponsored health plans administered by Defendants UnitedHealthcare Insurance Company and United Behavioral Health (together, "United"). These patients received valid, medically necessary out-of-network ("OON") intensive outpatient program services ("IOP") for mental health or substance use disorders ("MH/SUD"). Their IOP claims were submitted to United for payment under Healthcare Common Procedure Coding System ("HCPCS") code H0015 or revenue code 0906.

Every putative class member's health plan adopted United's Reasonable and Customary ("R&C") program. That program required usual, customary, and reasonable ("UCR") payment of all OON claims. UCR is a charge-based payment methodology in which claims are priced based on a percentile—usually 80th percentile—of providers' charges in the geographic area. Here, United routed the IOP claims to Defendant MultiPlan, Inc. to calculate a UCR amount using MultiPlan's "cost-containment" tool, the Viant Facility Usual and Customary Review Outpatient Review Module ("Viant").

Although Viant calls itself a UCR payment methodology, it was incapable of determining a UCR amount for the IOP claims here. There are two primary reasons for this. First, the IOP claims here are all-inclusive per diem H0015 claims that include both facility and professional charges. Viant, however, is a *facility* UCR methodology that relies on *facility* charge data from the Medicare Outpatient Standard Analytical File ("OPSAF"). Second, the OPSAF does not contain appropriate H0015 charge data because Medicare does not cover H0015 (or, until 2024, IOP in general) and does not follow United's H0015 billing guidelines. As a result, Viant priced, at best, only part of the services on each H0015 claim—the smaller facility part—using data that had little or nothing to do with H0015. That is not what UCR payment requires.

This underpricing scheme left Plaintiffs and the putative class financially responsible for the at least $300 million shortfall between the UCR payment required by their plans and Viant-priced payments. The motive was simple: Defendants profited enormously from this

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

underpayment because plans paid United a "savings fee" measured by the difference between the amount providers billed and Defendants' Viant-priced payment—which United shared with MultiPlan. These fees were then buried in non-itemized cumulative invoices to health plans. Defendants' illegal savings fees arising from their underpayment of the Plaintiffs' and the putative class members' plans total $100 million or more.

Rule 23 is the only appropriate and practical method for adjudicating the claims in this case. Common facts and questions predominate. For example, the Court will be asked to determine whether the Viant methodology produced an adequate UCR for H0015 claims. If the answer is "no," the entire putative class will be entitled to benefits. The members of the putative class, a vulnerable population of people grappling with MH/SUD disorders, suffered a common wrong from a common scheme and have borne the responsibility for the cost of treatment they paid to insure. Although Defendants underpaid putative class members' claims by hundreds of millions of dollars, absent class certification, separate suits would be inefficient and cost-prohibitive. This case is the putative class members' last.

## I. <u>Proposed Class Definition</u>

> Any member of a health benefit plan administered or issued by United and governed by ERISA, where the member's plan utilized United's "Reasonable and Customary" program for out-of-network benefits, and whose claim(s) for intensive outpatient services were billed with HCPCS H0015 and/or revenue code 0906 as an all-inclusive per diem, priced by MultiPlan's Viant methodology, and never adjusted, during the class period from January 1, 2015, to the present.

## II. <u>Factual Background</u>

Plaintiffs bring claims under ERISA and RICO: (1) ERISA § 502(a)(1)(B) (Denial of Benefits); (2) ERISA § 502(a)(3) (Breach of Fiduciary Duty); and (3) 18 U.S.C. §§ 1341 & 1343 for violations under 18 U.S.C. § 1962(c)–(d) (RICO). *See* Dkt. No. 290.

### A. Defendants were required to price OON claims at UCR, but applied Viant in a manner that was incapable of producing UCR for IOP claims.

United administers ERISA health plans and works with employers to draft plans that set forth coverage details—including the handling of OON claims. *See* Paradise (United 30(b)(6)) Depo., Ex. 14, 22:23–23:6, 45:24–46:18, 229:20–25.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1. ***United administers plans that provide OON coverage for IOP services.***

Health insurers like United contract with health providers to participate "in-network." In-network providers agree to accept payment amounts set by United for covered services. Conversely, OON providers have no contracts. They have not agreed to accept contractual rates and instead bill at their usual charges. United determines how much of the charge is covered by the patient's plan. Patients are accountable for the rest, including through balance billing (i.e., the uncovered portion of their health claim). *See* Lopez Email 3/31/20, Ex. 36 (UHC000015588); 2016 Viant Whitepaper, Ex. 43 (MPI-0008651); Kienzle Depo., Ex. 6, 116:3–17.

Although insurers generally favor in-network services, Ohsfeldt Exp. Rep., Ex. 3 ¶¶ 4.1–4.4, patients may need OON services due to emergencies or a lack of in-network options. *See id.* ¶¶ 4.2–4.10; *see* Schmor Depo., Ex. 60, 101:9–20. For this and other reasons, patients and employers are often willing to pay more for plans with better OON coverage options. *See* Paradise 125:10–126:7. In the case of IOP services, it is more common for patients to use OON providers due to the limited network of behavioral health outpatient providers—even though patients often face substantial additional out-of-pocket financial liability for going OON.

This case involves only OON IOP claims. IOP services are billed under HCPCS code H0015: "Alcohol and/or drug services; intensive outpatient (treatment program that operates at least 3 hours/day and at least 3 days/week . . . based on an individualized treatment plan) . . . ." Viant Standard Missing Value Approach ("VSMVA"), Ex. 37 (MPI-0008890); AAPC Exp. Rep., Ex. 4 ¶ 24. H0015 is a daily (or per diem) code and one unit of H0015 corresponds to at least 3 hours of treatment over a single day. RPC Exp. Rep., Ex. 1 ¶ 13. Some providers bill IOP services using revenue code 0906—but Viant automatically redesignated those codes to H0015.[1] *See* VSMVA; Crandell Depo., Ex. 7,74:16–75:12.

Medical services often involve both a professional and a facility component. The professional component relates to services rendered by the healthcare provider. The facility component relates to the costs associated with the facility where the services are performed. 2016 Viant Whitepaper, Ex. 43, MPI-0008644 n.1; Schmor 132:11–17; Siskin Exp. Rep., Ex. 62

[1] For this reason, references here to H0015 claims include claims billed to 0906.

¶¶ 26–28. In general, facility services are billed using a CMS-1450 (referred to as "UB-04") claim form, while professional services are billed on a CMS-1500 claim form.[2] *See* AAPC ¶¶ 29–64.

Most services are easily categorized into professional or facility components. Not so for IOP. IOP is a package of multidisciplinary therapies and a single "unit" of IOP includes both facility and professional components. Payment for IOP services must include both components. How that is accomplished, however, depends on payor guidelines. Schmor Exp. Rep., Ex. 57 ¶ 16; Schmor 109:2–19. Payors determine which codes are used to bill IOP services, how those codes should be submitted, and whether the charges associated with the codes include professional charges, facility charges, or a combination of both. Here, United required providers to bill IOP treatment on a single claim form using one H0015 code as an all-inclusive per diem charge—including both the professional and facility components. RPC ¶¶ 35–36; Optum Behav. Health Reimbursement Policy, Ex. 51 (https://perma.cc/R28H-PCNJ); AAPC ¶¶ 26–28.[3] In contrast, CMS has never covered H0015 and did not cover IOP as a category of service until 2024. *See* Schmor 114:17–24, 150:19–151:1; AAPC ¶¶ 71–73, 93–100; RPC ¶¶ 37–42.

2. ***United's health plans are grouped into standardized programs.***

United organizes and administers its health plans through standardized "programs." Paradise 30:24–31:4, 54:2–20, 142:14–144:25; OON Program Overview, Ex. 38 (UHC000038587); Bradley Depo., Ex. 9, 46:4–47:3. This case involves only one program—the R&C program. *See* Dkt. No. 391, 18:16–19 ("FCMC Tr."); Paradise 163:6–10; 2020 Olson Email (UHC000091861), Ex. 52. The R&C program provides coverage rules for reimbursing OON claims. Although the wording of plans within the program may differ, their substance is identical: They reimburse OON services based on the "usual, customary, and reasonable"[4] amount. *See* SPD Composite, Ex. 17. "Usual and customary" is a term of art, regularly used and

[2] These are Medicare forms but have been adopted by private payors. AAPC ¶¶ 29–31, 38–39.

[3] The United policy excepts certain physician codes, but that exception does not apply to IOP claims provided in freestanding clinics like those here. In any case, the proposed class includes only claims billed as all-inclusive per diem H0015 claims.

[4] "Reasonable and customary," "usual and customary," and like phrases denote the same meaning and are used interchangeably in the industry, including by United. Hall ¶ 5; Franco Depo, Ex. 11, 33:11–13.



ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

commonly understood within the industry. Hall Exp. Rep., Ex. 2 ¶ 5 & Appx. A; Praxmarer, Ex. 5, 25:20–22. It means what it sounds like: A UCR amount represents a percentile value—usually the 80th percentile—calculated from the billed charges of providers in the same geographic area. *See* RPC ¶ 69; Ohsfeldt ¶¶ 1.3.8, 5.4–5.5; Lopez Depo., Ex. 10, 23:16–20, 92:4–94:13; Praxmarer 28:6–22; Kienzle 112:12–19. A percentile value indicates a specific point within a dataset expressed as a percentage. For example, a median is the 50th percentile—50 percent of the values in the data fall below it, 50 percent above it. 2016 Viant Whitepaper (MPI0008649).

The R&C Program has two subparts: the Facility R&C Program and the Professional R&C Program. Under the Facility R&C Program, UCR amounts are determined for each claim based on facility charge data—like that found in OPSAF. Under the Professional R&C Program, UCR amounts are determined using professional charge data—like that found in the FAIR Health database.[5] Paradise 22:6–19; *see also* 2020 Tunnel Emails, Ex. 56 (UHC000091544). This reflects the fact that the data necessary to calculate UCR depends on the claim type: To price a facility claim, use facility charges; to price a professional claim, use professional charges.

Here, the IOP claims were all-inclusive per diem charges. They were not just facility or just professional charges. Accordingly, each claim should have been paid based on a UCR amount that reflected charges for a per diem H0015 claim—including the facility and professional components. That didn't happen—Defendants indiscriminately and invariably priced each claim through the *Facility* R&C Program, using Viant's facility-only methodology. *See* Lopez 32:2–6; Bradley 43:24–44:9, 59:12–60:14; Siskin ¶ 16; Siskin Depo., Ex. 63, 153:22–24; 2019 Edwards Email, Ex. 53 (MPI0009438); Kessler Depo., Ex. 61, 77:5–8.

3. ***United confirmed on verification of benefits calls that claims would be reimbursed based on UCR.***

When a patient seeks treatment from an OON provider, those providers contact the patient's insurer—in "verification of benefits" or "VOB calls"—to determine whether and to what extent the patient's treatment will be covered. *See, e.g.*, Franco Depo., Ex. 11, 30:10–31:5.

[5] FAIR Health is an independent nonprofit that manages the nation's largest database of privately billed health claims. Its database includes more than 38 billion private claims organized by both procedure code and geographic area. *See* Ohsfeldt ¶¶ 9.2, 10.6; Schmor 174:23–175:3.

Otherwise, providers risk providing costly treatment to a patient who may not otherwise be able to pay for treatment, and patients risk receiving unexpected bills. Here, putative class members' providers, on behalf of their patients, made recorded VOB calls to United's agents and verified the patients' active insurance, their eligibility for benefits, and the payment method for authorized service. *See* Strait (United Behavioral Health 30(b)(6)) Depo, Ex. 12, 68:1–69:9, 170:11–21, 177:11–18, 180:1–9; Franco 30:14–31:5, *see also* VOB Composite, Ex. 18.

Providers rely on the information from VOB calls to determine whether to proceed with a patient's treatment. *See* Summit Appeal Ltr., Ex. 39 (UBH000003011); Summit Fin. Consent, Ex. 40 (PLD0003006); Strait 203:10–204:6. United expects this. Strait 91:10–13, 202:21–204:6. Providers do not have access to plan documents, and so, VOB calls are their primary and generally only source of information for how claims are paid. United also knows that *patients* rely on United's VOB representations: Providers share VOB representations with patients to inform them of their expected payment obligations, which patients rely on to determine whether to proceed with treatment. *See, e.g.*, Strait 186:11–21, 203:10–204:6; Franco 36:12–22.

Health insurance companies like United employ dedicated staff and develop standard protocols (i.e., scripts) to handle the high volume of VOB calls they receive. *See* Strait 64:1–3, 126:3–14; Paradise 246:23–247:1; United's OON Procedures, Ex. 41 (UHC000197899); Hall ¶ 2. Here, United employed the same protocol to handle all R&C Program OON claims: United's Internal Benefits at a Glance ("IBAAG") system. *See* Paradise 244:3–12; Strait 36:1–6, 124:1–125:10, 126:3–9; *see also* IBAAG Composite, Ex. 19. IBAAG is a software program that determines how United agents handle VOB calls. It tells agents how to respond—through scripts—based on the information they obtain from providers. *See* Strait 64:1–3, 124:16–125:10, 125:25–126:9; Bradley 129:14–22, 131:2–25. Here, IBAAG provided R&C program requirements to United's agents to deliver to providers, including information that the patient's plan reimbursed IOP claims according to a specified UCR percentile—usually 80th percentile. *See* Strait 87:22–88:5, 182:7–183:8, 199:5–12, 202:21–204:6; IBAAG Composite; *see* 2018 Lopez Emails, Ex. 54 (UHC000131783); 2018 IBAAG Emails, Ex. 55 (UHC000030972). UCR pricing is standard in the industry and well-understood by the providers contacting United.



ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Praxmarer 25:20–22, 28:6–22; Franco 33:11–13; Hall ¶ 5. IBAAG did not quote any plan language, nor any information on the possibility that the UCR repricing methodology they used would price only the facility component. *See* IBAAG Composite; Strait 81:17–82:4, 125:5–19, 180:1–9; Paradise 226:17–19, 249:23–250:4; *see also* VOB Recording Composite, Ex. 20.

4. ***Defendants failed to adequately notify patients or providers of their application of Viant.***

Once providers submitted H0015 claims subject to the R&C program to United, United routed those claims to Viant, Viant priced those claims, and United paid the Viant amount to providers. *See, e.g.*, Bradley 60:8–14; Kessler 76:19–24. Providers and patients did not learn about the Viant prices until *after* services were delivered, through various documents. Franco Decl., Ex. 16 ¶¶ 6–9; Bradley 175:22–178:16; Strait 157:15–158:2; Kienzle 328:11–22. First, United provided patients with statements known as Explanations of Benefits ("EOBs"). *See* EOB Composite, Ex. 21 These documents informed patients that claims were priced by Viant and directed them to contact Viant for any inquiries. EOBs did not include the information necessary for a member to understand that a claim had been underpriced. *See* Strait 147:1–151:19. All EOBs included "remark codes" that categorize the claims. All R&C program claims priced by Viant—without any modification or additional payments—included a "CY" remark code.[6] *See* Kienzle 327:1–5; Paradise 275:9–276:10, Franco Decl. ¶ 8. Second, United sent providers Provider Remittance Advices ("PRAs") containing the same information, directions, and "CY" remark code. *See* PRA Composite, Ex. 22; Paradise 68:21–72:24. Third, both patients and providers received Patient Advocacy Department ("PAD") letters. *See* Paradise 72:8–24; Praxmarer 62:10–14; Kienzle 136:2–7; *see also* PAD Composite, Ex. 23. This letter instructed patients and providers to contact Viant directly regarding any questions about the payment amount. If patients or providers contacted United upon learning that their claim was priced by Viant, they were redirected to Viant. *See* Franco Decl. ¶ 13; Franco 159:21–160:8; Praxmarer

[6] Other types of claims had different remark codes. Claims that involved additional payments beyond the Viant amount (i.e., negotiated or adjusted claims) received an "IX" code. *See* United Remark Code Policies, Ex. 42 (UHC000071826); Paradise 280:15–23. The proposed class definition excludes IX claims and includes only "CY" claims.



ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

102:2–10, 103:2–22; Paradise 313:5–14.[7] Finally, if a provider contacted Viant, Viant would send providers an Explanation of Methodology ("EOM"). EOMs represented, incorrectly, that payment amounts reflected UCR amounts. *See* Praxmarer 1156:14–22; EOM Composite, Ex. 24.

**B. Defendants' Viant methodology used inappropriate and irrelevant data sources that were incapable of producing UCR pricing.**

UCR pricing requires appropriate data to determine a specified percentile. *See* RPC ¶¶ 25–34, 48, 49–51, 55–58. Defendants use the OPSAF to price facility claims. The OPSAF contains *facility* charge data associated with outpatient healthcare services provided to Medicare beneficiaries. *See* Siskin 108:9–109:6; Kessler 89:6–12; RPC ¶¶ 26, 55. Whenever a provider submits a claim for payment under Medicare Part B—using a UB-04 or CMS-1500 form as appropriate—they are required to report their usual charge for each service. *See* Crandell 36:17-22, Siskin, 94:5–6; Schmor 274:10–23; AAPC ¶ 65. These charges are then included in Medicare databases—the OPSAF includes the facility charges from UB-04 forms; the Medicare Carrier Standard Analytical File includes the professional charges from CMS-1500 forms. Schmor 134:20–135:10; AAPC ¶ 13, 75. Although the OPSAF might be appropriate to produce UCR amounts in some circumstances for facility charges, it is not appropriate to use to price codes for professional services, all-inclusive codes for facility and professional services, or services for which OPSAF lacks relevant charge data.[8] RPC ¶¶ 26, 55–56; AAPC ¶¶ 70–76. Defendants did all three here. During the putative class period, Viant applied two methods, each relying on the OPSAF, to calculate payment amounts for per diem IOP claims—one method before October 2018 ("First Method") and one after ("Second Method").

<u>First Method (before October 2018)</u>: Viant's First Method used charge data from H0015 claims reported in the OPSAF. *See* Viant 2009 Methodology, Ex. 45 (MPI0007803); Crandell 34:14–17. Not only is there not enough H0015 claims data in the OPSAF to determine a UCR amount, much of the data available is erroneous. First, Medicare has never covered H0015 and

[7] [redacted]

[8] It is also not appropriate to price claims for one facility type using claims from a different facility type because the same service may be treated differently depending on the context in which it is provided. Kessler 96:8–12; Siskin ¶¶ 28–30; AAPC ¶ 111.



ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

until 2024, never covered IOP treatment. *See* RPC ¶ 27; Crandell 36:5–7, 94:20–95:24; [redacted]; Paradise 238:4–8. That means, of course, there is very little H0015 charge data in the OPSAF. Much that is there appears to arise out of erroneous claim submissions. RPC ¶¶ 27–32; *see* Schmor 159:9–20. Many of the providers who submitted these claims do not provide IOP services at all—they are, for example, dental clinics and pharmacies. In fact, Plaintiffs' experts, RPC, contacted 42 of the 45 providers with H0015 claim lines in the OPSAF in 2016 and 35% indicated that their facility had not and did not provide IOP services. RPC ¶ 27. In addition, in any given year, out of OPSAF's more than 500 million total claims, fewer than 300 are H0015 claims, and those claims are split across several years and multiple geographic areas. *See* [redacted], Ex. 46 (MPI0012799); RPC ¶¶ 32–33. That is not a large enough sample to provide a UCR amount, period—and certainly not enough to produce geographically localized UCR amounts as required under the R&C program. *See* RPC ¶¶ 25–33; AAPC ¶¶ 70–73; *see also* MultiPlan 2018 H0015 Emails, Ex. 30 (MPI0016580); Crandell 114:14–116:1, 122:12–20; [redacted], Ex. 31 (MPI0014844); MultiPlan R&C Reduction Emails, Ex. 32 (MPI0015753).

Second, [redacted]—CMS does not cover H0015 and has no guidance on how to bill H0015. RPC ¶¶ 34–48; *see* Siskin ¶¶ 28–31 (UCR should reflect "similarly situated services"). Nevertheless, OPSAF is a database of *facility* claims reported on form UB-04, the *facility* claims form. Accordingly, the H0015 charge data included in the OPSAF should and does reflect only the facility portion of H0015 charges. RPC ¶¶ 26, 55; AAPC ¶¶ 74–76; Siskin 47:6–48:12, 108:9–18. For example, in 2017 the 80th percentile UCR based on all 494 H0015 charges (from 21 providers) in the OPSAF in 2017 was $350. In contrast, the 80th percentile UCR based on all 22,202 H0015 charges (from 648 providers) United received—following its *own* per diem billing guidelines—was $1,995. RPC ¶ 86. [redacted]

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1   price. *See* ████████████████████; MultiPlan 2018 H0015 Emails.

2        <u>Second Method (after October 2018)</u>: In October 2018, as complaints poured in from IOP

3   patients and providers, Viant abandoned its First Method and introduced its Second Method.

4   That method prices H0015 claims by ████████████████████████████

5   ████████████████. *See* Crandell 123:1–125:16; Viant OPR Pricing Logic; █████████████

6   ███████████████, Ex. 33 ¶¶ 3–5 (MPI0015933). CMS introduced APCs to facilitate

7   government payment for outpatient *facility* services in the Medicare program. AAPC ¶ 5. Under

8   the APC system, providers submit their facility claims and corresponding charges on a UB-04

9   form and those claims are categorized into APCs. Each APC is a group of services Medicare

10  classifies as similar in clinical intensity, resource utilization, and cost. Medicare pays for the

11  services categorized into an APC based on a fixed daily composite rate to cover the *facility*

12  component of services grouped within the APC. *See* Paradise 165:23–166:4; Praxmarer 70:6–

13  71:7; Schmor ¶¶ 32–34; RPC ¶¶ 49–51. The *professional* component of those services is

14  separately billed on CMS-1500 and separately paid. *See* RPC ¶¶ 54–58.

15        Under the Second Method, MultiPlan determined a UCR for H0015 based on OPSAF

16  charge data associated with facility services mapped to APC 5823, "Level 3 Health and Behavior

17  Services." Schmor ¶ 32. There are several problems with this method. First, the services in APC

18  5823 have nothing to do with H0015 or IOP services. H0015 is not categorized into APC 5823 or

19  any other APC—not even the new IOP APCs introduced in 2024 when CMS first began

20  covering IOP services. *See* Crandell 43:18–44:3, 63:23–64:2; Paradise 238:6–8; Schmor 193:15–

21  21, 208:11–20. Second, APC charge data is *facility* charge data, which cannot account for the

22  professional component of H0015. RPC 54–58; AAPC ¶¶ 66–68. Third, the codes grouped into

23  APC 5823 are for services that generally involve less than an hour of counseling services. RPC

24  ¶¶ 59–61; *see also* 2021 Crandell Schill Emails, Ex. 47 (MPI0002008); ████████████████

25  ████. H0015 claims require at least *3 hours*. RPC ¶¶ 59–61; Schmor 223:2–10.

26        By design, Viant's change in method did not result in significantly higher payments for

27  H0015 claims. Karen Beckstead, a MultiPlan healthcare economist, determined that the

28  transition to the Second Method would raise the Viant H0015 payment amount from ████

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

10

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1  ████████████████████████████ ██████████████

2  ████████████████████████████████████████

3  ██████████████████████████████████████████

4  ███████████████████████████████████████████

5  ██████████████████████████████████████████

6  ███████████████████████████████████

7  ████████████████████████████████████

8  ███████████████████████████████████████████

9  ██████████████████████████████████████████

10 ███████████████████████████████████████████

11 ███████████████████████████████████████████

12          Nevertheless, Defendants have recently concocted a *post hoc* rationalization for the

13 Second Methodology in response to this litigation. They argue that CMS requires providers to

14 submit their professional charges along with their facility charges on UB-04 forms when seeking

15 payment for the APCs associated with partial hospitalization program ("PHP") services, and

16 effective 2024, IOP. Schmor ¶ 53; Siskin 76:5–16–77:12, 139:6–140:5. This rationalization is

17 baseless. Most obviously, Defendants did not use the PHP or IOP APCs to price the disputed

18 claims— █████████████████████████████████

19 █████████████████████████████████

20 ███████████████████████████████████████

21 █████████████████████████████████████

22 ███████████████████████████████████

23 ███████████████████████████████

24 ███████████████████████████████     Finally, the CMS guidance requiring

25 providers to submit professional charges when seeking payment for certain APCs is not as

26 expansive as Defendants describe. Instead, CMS provides that for certain PHP and IOP services,

27 *some* providers' professional charges are bundled into the facility payment—but not all.

28 Professional charges from doctors, nurse practitioners, physician assistants, or clinical

11

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

psychologists are excluded and these providers "bill[] separately to the carrier" their professional services.[9] This is why the charge data associated with the PHP and IOP APCs—as well as APC 5823—lead to a "UCR" calculation closer to $300, rather than the $1,800 to $2,500 suggested by Defendants' own claims data or FAIR Health. RPC ¶¶ 64–70, 86–88. As common sense dictates, no one receives three hours of hospital care for only $300.[10] [REDACTED].

**C. Both Viant methods produced invalid UCR amounts.**

A UCR amount should be consistent across appropriate data sources. This is because of the inherent consistency of UCR, which—as the name implies—should reflect the usual charges of providers. In this respect, a UCR amount is no different than the median house price in a particular neighborhood. With the right data, it is determinable—it's just math. Although there may be slight variation based on the data used, such variation should be limited. Siskin ¶ 21; Siskin 110:20–24; Kessler 92:19–93:15, 167:10–22; 183:3–9. The "UCR" amounts Viant determined for the disputed claims, however, are outliers. *See* Ohsfeldt ¶¶ 6.5–6.12; RPC ¶¶ 64–70, 86–88. As RPC demonstrates, a UCR amount calculated using Defendants' own H0015 claims data or available FAIR Health H0015 claims data is [REDACTED] times higher than the Viant-determined amounts. RPC ¶ 86. This disparity cannot be explained by minor variations in data sampling—it is explained only by Viant's use of the wrong data period. [REDACTED]

In addition, because a UCR amount represents a percentile of billed charges, the

---

[9] *See, e.g.*, Office of Inspector General; Medicare Program; Prospective Payment System for Hospital Outpatient Services, 65 Fed. Reg. 18,434, 18,452 (Apr. 7, 2000); CMS, Transmittal 12423, Pub. 100-04 Medicare Claims Processing, at 1 (Dec. 20, 2023) (effective Jan. 1, 2024), https://perma.cc/8B4A-DZR2 (noting "services furnished by [advanced practitioners] to [IOP] patients are billed separately from the [IOP] services" and their "professional[] mental health services . . . are paid under the physician fee schedule")

[10] That is also why the PHP charge data is even lower than APC 5823—none of these APCs reflect the entire cost of the treatment.

distribution of billed charges should reflect that percentile. That is, one would expect that approximately [redacted] of all the billed charges Defendants received for H0015 claims would be below Viant's [redacted] percentile UCR. Two of Plaintiffs' experts performed an analysis to test just this hypothesis. [redacted] RPC similarly found that over 99.9% of all charges in United's H0015 claims data exceeded the Viant UCR amount. RPC ¶¶ 65. For these and other reasons, Defendants knew or should have known that Viant did not calculate a legitimate UCR amount for H0015 per diem claims.

**D. Defendants profited off their scheme through disguised "savings" fees.**

Defendants' use of Viant was designed to generate additional administrative fees for their benefit under the guise of "saving" its clients money. Paradise 191:3–192:6; Ex. 49 (United Fee Percentage Data) (UHC000296122). [redacted]

This raises several problems. First, Defendants know that patients are financially liable for the unpaid portion of billed OON charges. *See* Lopez Email 3/31/20; Praxmarer 177:4–9, 183:22–183:1, 185:6–21; Kienzle 41:13–43:20, 116:3–17. This means that any "savings" to the plan are offset by saddling the members with more financial liability. As a result, the "savings" program does not represent actual savings, only the reallocation of costs from the plan to the plan members—the opposite of what plan members bargained for when they paid for insurance with OON coverage. *See* Praxmarer 177:4–9. In fact, the savings fee creates a net loss for both the

[11] For example, if a provider billed United $1,000 for IOP treatment and Viant priced the claim at $100, the "savings" would be $900. United would then charge a "savings fee" [redacted] of the $900 [redacted] to the plan. In the case of IOP treatment, the savings fees Defendants paid to themselves far exceeded their payments to providers. *See* RPC ¶¶ 100–02.



ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1   plan and its members to the extent members pay the unpaid balance of billed charges while the

2   plan pays a fee representing a percentage of the unpaid balance. Second, Defendants stand as

3   fiduciaries for the plan and its members. Accordingly, Defendants must act in the best interest of

4   the plan and its members. The Viant-scheme, however, is for the benefit of only Defendants.

5   Third, the savings fees reflect payment for a service Defendants did not actually provide. In the

6   absence of the Viant scheme, Defendants would have paid, at most, a UCR amount (a percentile)

7   for H0015—not necessarily provider's billed charges—as required by plan language.

8   Accordingly, "savings" calculated as the difference between billed charges and bogus Viant

9   amounts are not real savings at all. ████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

### III.   <u>Legal Standard</u>

14      To qualify for class certification, a class must meet the requirements of Rule 23(a) and

15  one of three alternatives of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591,

16  614 (1997).[12] A party seeking class certification must affirmatively demonstrate compliance with

17  Rule 23 based on a preponderance of evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble*

18  *Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). "Accordingly, before certifying a class, the

19  trial court must conduct a rigorous analysis to determine whether the party seeking certification

20  has met the prerequisites of Rule 23." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th

21  Cir. 2018). Nevertheless, at this stage of the litigation, a full merits review is unwarranted. *See,*

22  *e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). A district

23  court's "rigorous analysis" should not be a "mini-trial" because a district court's class

24  certification order is "preliminary." *Id.*; *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469

25  (1978) (describing certification as "inherently tentative"). Indeed, "[n]either the possibility that a

26  plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit

27

28  ───────────────
[12] Citations, quotations, footnotes, brackets, ellipses, and other ancillary elements to citations have been removed for clarity unless otherwise indicated.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class." *Sali*, 909 F.3d at 1004–05. Plaintiffs must enable the Court to make only a "reasonable judgment" that the class satisfies Rule 23, *id*. at 1005, and the Court need not weigh competing evidence. *See Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764, at *4 (N.D. Cal. Oct. 31, 2006) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

## IV. Analysis

### A. Plaintiffs satisfy the requirements of Rule 23(a).

#### 1. *Plaintiffs have established commonality.*

Commonality requires a plaintiff to demonstrate a "common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Olean*, 31 F.4th at 663. Only one basis for commonality is required. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D. Cal. 1983).

The core common thread in this case is that all disputed claims were priced by United using Viant and Viant did not produce legitimate UCR amounts for each putative class member's H0015 claims. Instead, Viant paid an amount that reflected, at best, the facility component of the services, and at worst, an entirely arbitrary amount that had no real connection to H0015. Underlying this thread are several common *facts*, including: (1) every proposed class member's plan participated in United's R&C program; (2) that program required localized UCR pricing for all OON claims; (3) every claim in this litigation was for IOP services billed as an all-inclusive per diem under H0015 and/or 0906 and processed as an H0015 claim; (4) every claim was a valid claim for a covered patient and medically necessary, evidenced by United's payment; (5) every claim was priced by Viant and no additional payments, adjustments, or negotiations occurred; (6) every claim was categorized by Defendants with the same Viant "CY" remark code; and (7) Viant calculated its payment amounts based on OPSAF data that could not produce UCR amounts. These common threads also cover several common *legal* issues, including, for

example: (1) whether the data used in Viant's First and Second Method were capable of producing an appropriate UCR amount for all-inclusive per diem H0015 claims, compensating for the facility and professional services, as required by the R&C program; (2) whether class members are entitled to monetary and/or equitable damages; (3) whether there was collusion between Defendants or a breach of fiduciary duties in using Viant to increase the "savings" fee; and (4) whether Defendants' conduct created a RICO enterprise or otherwise met the requirements of RICO; and (5) whether Defendants conspired to commit racketeering. These common issues are the same for each class member and central to the validity of their claims. Resolving whether Viant produced a legitimate UCR price for H0015 would establish a primary aspect of liability in "one stroke" for all class members.[13] Answering this common question will determine whether all putative class members are entitled to additional benefits or not.

a. *The key issue is Viant's inability to produce a UCR amount, which does not require individualized plan analysis.*

Nobody disputes that the putative class members were entitled to payment for their claims. Nobody disputes that United applied Viant to all these claims whatever the variations in plan language. FCMC Tr. 19:25–20:1 (Q: "[Did you use Viant for all of them?"; A: "We did[.]"). The core common issue in this case is the uniform, indiscriminate use of Viant and in particular, its use of improper and unreliable data. *See, e.g.*, RPC ¶ 3; MultiPlan 2018 H0015 Emails; [redacted] That issue does not turn on plan language. *See Waters Corp. v. Millipore Corp.*, 2 F. Supp. 2d 66, 79 (D. Mass. 1997) (where both parties agreed on plan application, court addressed only "method of calcula[tion]"), *aff'd*, 140 F.3d 324 (1st Cir. 1998); *Brooks v. Educators Mut. Life Ins.*, 206 F.R.D. 96, 101 (E.D. Pa. 2002) (improper methodology for calculating UCR supported certification over other individual issues).

It is arbitrary and capricious to price all-inclusive H0015 claims using only facility data. Period. It is even worse to use only facility data that is: (1) under the First Method, practically nonexistent, substantially erroneous, and without any IOP billing guidelines to determine what it

[13] In addition, this Court could divide the proposed class into appropriate subclasses. *See, e.g.*, *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1072 (N.D. Cal. 2005); Fed. R. Civ. P. 23(c)(5).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

represents; and (2) under the Second Method, unrelated to H0015 or IOP. The specific language of each plan is simply not relevant to the common question of whether Viant's application to H0015 made any sense, which this Court can resolve without a case-by-case analysis of plan language. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013) (arbitrary and capricious pricing scheme warrants certification despite different contracts). It is no different than if Defendants chose to price claims based on lottery numbers or astrological readings. The parties, plans, and common sense all agree that UCR payment must relate in some meaningful way to the kinds of services provided. *See*, *e.g.*, Siskin 55:11–56:25; Crandell 65:6–18; Paradise 223:20–224:8; AAPC ¶¶ 112–13. Plaintiffs say Defendants failed to do that. Defendants disagree. The Court can resolve that dispute for tens of thousands of class members in "one stroke"—without parsing plan language.[14] *See Olean*, 31 F.4th at 663; *see also Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 930 (10th Cir. 2006) ("meaningless" application of UCR that "depart[ed] from industry" and harmed beneficiaries was "arbitrary and capricious").

Courts often find commonality in similar situations. *See*, *e.g.*, *Wachtel v. Guardian Life Ins.*, 223 F.R.D. 196, 213 (D.N.J. Aug. 5, 2004) (finding "existence of different plans does not outweigh the predominance of the common questions"), *vacated and remanded on other grounds*, 453 F.3d 179 (3d Cir. 2006); *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 596 (E.D. Mich. 1996). This is not a line drawing case: It is a "yes-no" question of whether, under *any* plan, Viant can price H0015 per diem claims based on bad data. *See Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014). It is not simply that Viant used artificially depressed but otherwise relevant data to price claims—like in the Ingenix cases—or applying an unfavorable, but theoretically permissible methodology that Plaintiffs don't like and think strays too far from plan requirements. *Compare Franco v. Connecticut Gen. Life Ins.*, 289 F.R.D. 121, 136–37 (D.N.J. 2013). Plaintiffs have no issue with the Viant method *in theory* (i.e., for other services not at issue)—their issue is with Viant as applied to H0015 claims, particularly its use of OPSAF data that is not relevant data for pricing H0015 claims billed under United's billing guidelines. *See*

[14] Plan language is also not necessarily required to adjudicate Plaintiffs' common RICO claims, which turn primarily on misrepresentations made during VOB calls.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Siskin 206:16–207:8. In fact, Plaintiffs damages model recreates the Viant methodology with appropriate data sources—Defendants' own H0015 claims data. RPC ¶¶ 71–99; *infra* IV.C.

Plaintiffs simply ask the Court to do as Defendants do and treat their H0015 claims uniformly. Here, Defendants reimbursed the claims using the exact same process, regardless of plan language. Defendants treated every H0015 claim under the R&C program the same—they sent those claims to MultiPlan for repricing using Viant. *See* Paradise 227:7–228:2; *see also* Strait 81:24–82:4. MultiPlan repriced each claim using Viant without regard to plan language—which MultiPlan did not even have access to. Praxmarer 64:11–21; Paradise 226:17–19; Strait 87:15–88:5; [REDACTED]. The Court here can similarly treat the claims uniformly: Defendants' unvarying application of Viant to all putative members' claims warrants class treatment here. *See Postawko v. Missouri Dep't of Corr.*, 2017 WL 3185155, at *10 (W.D. Mo. July 26, 2017), *aff'd*, 910 F.3d 1030 (8th Cir. 2018); *Med. Soc'y of New York v. UnitedHealth Grp. Inc.*, 2019 WL 6888613, at *2 (S.D.N.Y. Dec. 18, 2019) ("uniform policy of denying . . . facility fee claims without interpreting plan language" creates common question); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (uniform treatment "bear[s] heavily" on predominance and superiority).

b. *Even if plan language were relevant, all plans have substantially similar language regarding OON payment.*

Although the Court does not need to assess plan language to resolve common issues, the plans here are nevertheless "substantial[ly] similar[]" to warrant class treatment. *See Franco*, 289 F.R.D. at 135. As Defendants acknowledge, each plan was part of United's R&C Program. *See* FCMC Tr. 18:16–19; Paradise 55:7–2; Hall ¶ 6; *see Peters v. Aetna*, 2 F.4th 199, 243 (4th Cir. 2021) (varying plans "do not reflexively defeat class certification when the underlying harm derives from the same common contention"). Under that program, OON claims are reimbursed based on a UCR methodology. That's why the program is called the "Reasonable & Customary" program—it's in the name. Similarly, United applied the R&C program by sending claims to MultiPlan for repricing with Viant, its "usual and customary" (i.e., UCR) payment methodology, regardless of any meaningless difference in plan language. *See* FCMC Tr. 19:25–20:1.

To be sure, there are some superficial differences in plan language regarding their

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

articulation of the OON payment. But those differences are immaterial. *See* Kessler 146:18–147:7. Sometimes different words mean the same thing. United uses "reasonable and customary." Viant uses "usual and customary." There is no difference. *See* Hall ¶¶ 4–5; SPD composite; Siskin 221:21–22; *see also, e.g., Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722, at *1 (C.D. Cal. May 16, 2016) (concept of UCR same despite "slight or minor variations" in how described). So too with the minor variations in plan language here. All plans require UCR payment and Defendants treated them as such. Defendants cannot shield themselves from liability by tinkering with a few words that change nothing about what the plans mean or how they are applied. *See* Kessler 159:3–10.

c. *VOB calls independently establish commonality.*

Defendants' misrepresentations during VOB calls also establish commonality, particularly with respect to Plaintiffs' RICO claims. A "common course of conduct," including through oral representations, may satisfy Rule 23. *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006). Courts have held that the existence of a "script" governing a defendant's representations may justify class certification even where phone calls underlying the claims may involve individualized variation. *Id.*; *see also Cole v. Asurion Corp.*, 267 F.R.D. 322, 327 (C.D. Cal. 2010); *Joint Equity Comm. of Invs. v. Coldwell Banker Real Est.*, 281 F.R.D. 422, 431 (C.D. Cal. 2012); *see also* Fed. R. Civ. P. 23, Advis. Comm. Notes to 1966 Amendments, subd. (b)(3).

Here, Plaintiffs have provided record evidence establishing a "common course of conduct" through United's VOB calls, including a script that provides a unifying thread to every phone call at issue. *See*, *supra*, II.A.3. United's agents relied on a common software system—IBAAG—that directed agents to inform providers that the putative class members' claims would be priced at UCR. This representation was common across all the phone calls and ultimately misleading: Defendants actually priced the claims through a Viant methodology that was incapable of producing a UCR. *See*, *supra*, II.B; *see also First Alliance*, 471 F.3d at 990–91. The fact that some phone calls may have varied in form does not defeat commonality. *Id.* (rejecting "talismanic rule that a class action" requires "all but identical" representations). Indeed, courts in the Ninth Circuit have routinely certified classes where the claims involved varied oral

interactions, where, as here, there was some common thread—like a script, policy, or other "centrally orchestrated strategy." *See, e.g.*, *id.*; *Yokoyama v. Midland Nat. Life Ins.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 979 (9th Cir. 2008). Even under the more demanding predominance requirement, individualized issues should not prevent class certification if common issues predominate—particularly where a common legal theory predominates over individual factual differences. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 963 (9th Cir. 2013); *Jimenez v. Allstate Ins.*, 765 F.3d 1161, 1168 (9th Cir. 2014). Here, the potential individualized differences among the phone calls are the same kinds of differences that exist in any case involving oral representations, and do not overcome the common factual and legal issues. *See, e.g.*, *Yokoyama*, 594 F.3d at 1094; *see also supra*, II.A.3.

2. ***Plaintiffs are sufficiently numerous.***

The proposed class meets the numerosity requirements of Rule 23(a)(1). Numerosity may be satisfied in classes with fewer than 100 members and as few as 39. *See, e.g.*, *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 836 (9th Cir. 2022). Here, the putative class consists of 11,280 patients and almost 90,000 claims (through 2021). *See* RPC ¶ 15. The class is objectively determinable, easily ascertained, and administratively feasible. *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012).

3. ***Plaintiffs are typical and adequate.***

The named Plaintiffs satisfy the typicality and adequacy requirements. "Typicality asks whether the claims or defenses of the representative parties are typical of the class." *Johnson v. City of Grants Pass*, 50 F.4th 787, 805 (9th Cir. 2022). It is a "permissive standard." *Id.* (quoting *Staton*, 327 F.3d at 957). "It refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. Here, Plaintiffs are typical because they suffered the same injury (their OON H0015 claims were underpriced), which arose from the same conduct (Defendants' application of Viant). *See Kazda v. Aetna Life Ins.*, 2022 WL 1225032, at *4 (N.D. Cal. Apr. 26, 2022); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); 1 Newberg and Rubenstein on Class

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Actions § 3:39 (6th ed. 2023) ("Newberg").

The adequacy inquiry has been interpreted to include two prongs: the adequacy of the class representatives and the adequacy of class counsel. *In re Mersho*, 6 F.4th 891, 899–900 (9th Cir. 2021). Courts consider whether there exist conflicts of interest and whether the movants and counsel will "vigorously" pursue the action on behalf of the class. *Id.* No conflicts exist in this case and Plaintiffs and counsel have already amply demonstrated their willingness and ability to pursue this case vigorously. *See* About Arnall Golden Gregory, Ex. 64. All class members seek the same relief. There is no benefit that one claimant can seek at the expense of another, even if they receive different damages. *See In re Lithium Ion Batteries Antitrust Litig.*, 853 Fed. Appx. 56, 57 (9th Cir. 2021). Class representatives have been deposed and participated in discovery, and there have been no concerns about class representatives' willingness to participate. *See, e.g.*, *Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 52 (C.D. Cal. 2022).

**B. Plaintiffs satisfy the requirements of Rule 23(b).**

Plaintiffs seek class certification under three categories of Rule 23(b). They seek: (1) equitable and injunctive relief, primarily under Rule 23(b)(1)(A) and (b)(2); and (2) money damages under Rule 23(b)(3).[15] As for equitable and injunctive relief, Plaintiffs seek: (1) declaratory relief that Defendants violated the terms of the class members' plans, arbitrarily underpaid OON benefits, and/or breached their fiduciary duties; (2) injunctive relief prohibiting Defendants from violating RICO and/or from pricing OON per diem H0015 claims based on the First and Second Methods of the Viant methodology or any other unsuitable sample of claims; (3) removal of the Defendants as breaching fiduciaries; (4) disgorgement of the savings fees Defendants collected in breach of their fiduciary duties or an accounting of their profits and the underpayment of benefits; (5) as an alternative to money damages in a Rule 23(b)(3) class, an injunction requiring Defendants to retroactively apply an appropriate methodology and dataset

[15] Courts routinely granted classes under multiple Rule 23(b) categories simultaneously, including in ERISA cases. *See, e.g.*, *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) (certifying under (b)(2) and (b)(3)); 2 Newberg § 4:12, 4:38.



ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

for determining a UCR for the disputed H0015 claims (i.e., reprocessing[16]); and (6) any other remedies the Court deems appropriate.

As for money damages, the primary relief sought, Plaintiffs seek damages compensating class members for the difference between how their H0015 claims should have been paid under a legitimate UCR methodology and how their H0015 claims were actually paid. Plaintiffs also seek money damages with respect to their equitable claims—like disgorgement, accounting, and surcharge—to the extent they are not certified under (b)(1) or (b)(2), and any other relief the Court deems appropriate.

1. ***Plaintiffs satisfy Rule 23(b)(1) (incompatible standards class).***

Plaintiffs seek certification under Rule 23(b)(1)(A) solely with respect to their claims under ERISA seeking primarily injunctive relief. Rule 23(b)(1)(A) requires a showing that "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class[.]" Although it is appropriate primarily for injunctive and declaratory relief, it can permit monetary damages in some instances. *See, e.g.*, *Ballas v. Anthem Blue Cross Life & Health Ins.*, 2013 WL 12119569, at *13 (C.D. Cal. Apr. 29, 2013); 2 Newberg § 4:14. Courts regularly certify ERISA class actions as (b)(1)(A) "incompatible standards class[es]." *See, e.g.*, *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008); 2 Newberg § 4:12. The reason for this is the nature of ERISA itself. ERISA plans have a duty to treat all beneficiaries alike and it would be impossible for a plan to comply with conflicting awards. *See Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 506 (N.D. Cal. 2017). Here, if two putative class members sued individually, different courts could order injunctive relief or damages based on different claims processing methodologies. This would expose Defendants to incompatible standards as to how to determine appropriate payments for other plan participants. *See Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016), *as amended* (Aug. 18, 2016).

---

[16] *See Wit v. United Behav. Health*, 79 F.4th 1084–86 (9th Cir. 2023) (*"Wit 3*") (reprocessing available if member may be entitled to benefits and the issue is whether the plan failed to adjudicate a benefit as required by the terms of a plan); Dkt. No. 354. Plaintiffs seek this reprocessing remedy primarily only if the Court does not grant money damages under Rule 23(b) using Plaintiffs' damages model.

2. ***Plaintiffs satisfy Rule 23(b)(2) (injunctive class).***

A Rule 23(b)(2) class for injunctive relief is appropriate for both the ERISA and RICO claims. Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" The key common threads of this case involve Defendants' uniform actions, for example: (1) their inappropriate application of Viant to all class members' claims; (2) their representations to providers in VOB calls; and (3) their collection of phantom "savings fees" at the expense of class members and their plans. *See, supra*, IV.A.1. Injunctive remedies can right these wrongs. For example, an injunction requiring Defendants to disgorge their savings fees, to account for their underpayment of benefits, and to adopt a proper methodology of calculating UCR under the R&C program would be appropriate for the putative class as a whole. As under Rule 23(b)(1), incidental monetary damages may be appropriate under Rule 23(b)(2). Courts routinely permit at least incidental monetary relief, particularly where such relief is available under traditional equitable remedies—like disgorgement, accounting, and surcharge—and does not require individualized determinations because the same standard, a proper UCR methodology, would apply to the entire class. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *41 (N.D. Cal. Jan. 8, 2013), *adopted* 2014 WL 12879520 (N.D. Cal. June 27, 2014); *Des Roches*, 320 F.R.D. at 507–10. This is particularly true where there is no "individualized award of monetary damages" turning on individual facts— which applies to, for example, disgorgement. *See Dukes*, 564 U.S. at 360–01.

3. ***Plaintiffs satisfy Rule 23(b)(3) (money damages class).***

Finally, a Rule 23(b)(3) class is appropriate for both the ERISA and RICO claims. Rule 23(b)(3) requires that the plaintiffs demonstrate both that their common claims "predominate" over individual claims and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." *See, e.g.*, *Fremont Gen. Corp. Litig.*, 2010 WL 3168088, at *7 (C.D. Cal. Apr. 15, 2010); *Brooks*, 206 F.R.D. at 108 (same); *Bauer v. Kraft Foods Glob.*, 277 F.R.D. 558, 563 (W.D. Wis. 2012).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

"In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Olean*, 31 F.4th at 665. Here, common issues predominate over individual issues, primarily for the reasons outlined above with respect to commonality. *See*, *supra*, IV.A.1; *see, e.g.*, *Jimenez*, 765 F.3d at 1165 n.4. The Court's decision on each class member's common issues will be the same and will require no individualized determinations. *See Abdullah*, 731 F.3d at 964. Indeed, the only conceivable difference among class members will be the amount of damages they are entitled to, but this is true in most class actions and does not defeat certification. *Yokoyama*, 594 F.3d at 1089; *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). What matters is that the process of calculating class members' damages will be the same in every instance. *Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *7 (C.D. Cal. Aug. 27, 2010). In addition, determining how much plaintiffs were undercompensated is a matter of calculation, not fact-finding. *See* Section II.C.

The class action is the superior method to resolve this dispute compared to individual lawsuits. *See Shuman v. SquareTrade, Inc.*, 2022 WL 10177658, at *2 (N.D. Cal. Oct. 17, 2022). First, individuals are unlikely to bring suit. Indeed, there are no suits pending that would compete with this class action. This is because the recovery for each individual is too small to merit a lawsuit, yet substantial enough that putative class members ought to be compensated. *See id.* In addition, both parties benefit from concentrating the litigation in a single forum. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 271 (N.D. Cal. 2011). This is because United has an obligation to treat all class members the same, and the best way to do that is to decide United's obligations under ERISA in a single class action by a single judge.

This is also a manageable case. *See* Fed. R. Civ. P. 23(b)(3)(D). The many common questions can be resolved in one stroke, which saves the judicial system from potentially thousands of individual, largely identical lawsuits, all of which would involve the same evidence and issues. *See, e.g.*, *Hilario v. Allstate Ins.*, 2022 WL 17170148, at *9 n.5 & *10 (N.D. Cal. Nov. 22, 2022). It will be efficient and fair to try these issues in a single forum, which will avoid duplicating judicial effort, prevent inconsistent outcomes, and facilitate a speedy and just

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

resolution for the class. *See, e.g.*, *Head v. Citibank*, 340 F.R.D. 145, 154 (D. Ariz. 2022).

**C. Plaintiffs have provided an adequate damages model for determining putative class members' damages for the underpayment of benefits.**

At this stage, Plaintiffs need show only that "damages are capable of measurement on a classwide basis." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015). Plaintiffs attach a proposed damages model that calculates two forms of money damages. *See* RPC ¶¶ 91–100. The damages model starts with the parties' underlying assumption—Viant may be applied to the claims at issue—but addresses Plaintiffs' common concern: the use of data incapable of producing a UCR amount for H0015 claims. *See* Kessler 107:18–108:6 (acknowledging similarities in RPC and Viant methodology). Plaintiffs' model uses United's *own* H0015 claims data to appropriately price the services. This model has two components: The first component calculates damages based on what Plaintiffs should have been paid,[17] and the second calculates the value of the improper savings fees collected by Defendants. This model is tied to Plaintiffs' theories of liability and the common classwide issues, which is all that is required at this stage. *Elkies v. Johnson & Johnson Servs.*, 2018 WL 11223465, at *9 (C.D. Cal. Oct. 18, 2018); *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). As discussed above, the appropriate UCR amount for Plaintiffs' IOP claims is determinable. It is math, not art. *See* Crandell 48:2–49:4, 81:19–5 (noting FAIR Health and Viant "do[] the same thing"); Siskin 224:4–25; Schmor 138:13–19. Plaintiffs' damages model does the math using the right data. Though other appropriate data sources may potentially exist, it is difficult to envision a more appropriate data set than United's own claims, billed following its own per diem guidelines, with charges from thousands of providers. Defendants do not propose any reasonable alternative.

[17] RPC uses the standard 80th percentile UCR as quoted on VOB calls and in many plans. RPC ¶ 88; *see* Ohsfeldt ¶¶ 1.3.8, 5.4–5.5. Viant improperly applied a lower percentile—[REDACTED] Paradise 62:1–5, 73:12–74:23, 91:3–7; RPC ¶ 69. These lower percentiles were improper—a [REDACTED] percentile amount is not, by definition, "usual and customary." RPC ¶ 88; [REDACTED] Even if, however, the [REDACTED] percentile UCR was used for damages, Viant's underpayments still amount to hundreds of millions. In any case, it is a simple exercise for RPC to calculate class member damages based on appropriate percentiles to the extent United believes another percentile is appropriate for any particular plan. RPC ¶¶ 90, 99 n.47.

Finally, although the damages model Plaintiffs propose does not require any "reprocessing" remedy, in the alternative, Plaintiffs seek reprocessing if there are protections that Defendants would use an appropriate underlying data set for reference.[18]

Dated: January 25, 2024

Arnall Golden Gregory LLP

By: _/s/ Matthew M. Lavin_
Matthew M. Lavin

DL Law Group

By: _/s/ David M. Lilienstein_
David M. Lilienstein
Katie J. Spielman

Attorneys for Plaintiffs and the Putative Class

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

[18] Reprocessing, however, may be available under Rules 23(b)(1) or (b)(2) without the need to satisfy the additional requirements of (b)(3). In any case, Plaintiffs, of course, believe this class meets the requirements of Rule 23(b)(3), as discussed above.