Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Arnall Golden Gregory LLP
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone:   202.677.4030
Facsimile:   202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
DL Law Group
345 Franklin St.
San Francisco, CA 94102
Telephone:   415.678.5050
Facsimile:   415.358.8484

Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| LD, et al., | Case No. 4:20-cv-02254-YGR-JCS |
| Plaintiffs, | Hon. Joseph C. Spero |
| v. | **Plaintiffs' Opposition to Defendants' Administrative Motion for an Extension of Fact Discovery, ECF 477.** |
| United Behavioral Health, Inc., et al., | |
| Defendants. | |

1  Defendants' administrative motion to extend discovery (ECF 477) ("Motion") fails to meet the good cause standard required to modify the Court's Scheduling Order (ECF 472). Despite having three months to conduct discovery—and initially opposing *any* discovery at all—Defendants now seek an extension. The Court established this limited discovery period to enable Plaintiffs to obtain evidence regarding balance billing, specifically as it relates to numerosity—the deficiency the Court identified in its February 6, 2025 Class Certification Order (ECF 469) ("Cert Order"). Plaintiffs pursued and obtained that evidence. Defendants' claim of surprise at receiving the information this discovery period was designed to elicit is not a credible basis for an extension.

Far from being diligent, Defendants have possessed an asymmetrical advantage throughout this process. It is Defendants who hold the information on the patients, providers, and claims at issue in this litigation. They had everything necessary to conduct their own fulsome discovery on balance billing from the beginning of the discovery period—without needing anything from Plaintiffs. Nevertheless, they chose to wait until the final hours of discovery to act, and now seek an extension based on a predicament of their own making. At the same time, Defendants actively obstructed Plaintiffs' own discovery efforts. Plaintiffs repeatedly requested information necessary to efficiently match patients to providers and conduct discovery on balance billing. Defendants, however, repeatedly stymied these routine requests and refused to produce this critical information in a timely or complete manner. Lavin Decl., ¶ 8, 13, 14, 15, 17, 19; *see* ECF 477-4 at 2-3.

Granting Defendants' motion would cause significant and undue prejudice to Plaintiffs. The proposed extension would leave Plaintiffs with only three days between the end of discovery—including depositions noticed by Defendants for that final day—and the deadline for their renewed class motion. After five years, Plaintiffs have a stronger interest than ever in proceeding without further delay. The Court should deny Defendants' Motion.

## I. <u>Analysis</u>

Rule 16(b)(4) provides that a scheduling order may be "modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In evaluating good cause, the Court "primarily considers the diligence of the party seeking the amendment." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023). If the party seeking the extension "was not diligent, the inquiry

1

1  should end[,]" *id.*, even if the discovery sought is "highly probative." *Cornwell v. Electra Cent.*
2  *Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006).

### A. Defendants cannot establish good cause because the need for an extension stems from their own lack of diligence, not surprise.

#### 1. *Plaintiffs have not conducted "secret" discovery.*

Defendants first argue they are entitled to additional discovery because "Plaintiffs consciously excluded Defendants from Plaintiffs' secretive, 'informal' communications." Motion at 2. Defendants' argument is both factually wrong and legally irrelevant.

This argument is factually wrong because Plaintiffs have been appropriately transparent with Defendants during discovery. Shortly after the Court ordered discovery, Plaintiffs informed Defendants of Plaintiffs' intended course of action: Plaintiffs intended to (1) rely primarily on documents and evidence already produced in this case; (2) contact third-party providers who had previously produced declarations to seek additional discovery; and (3) potentially seek discovery from additional providers, if necessary, with a focus on providers with the highest claims volume based on data MultiPlan had previously produced years ago. Lavin Decl., ¶ 14. Plaintiffs' counsel has also repeatedly explained to Defendants that Plaintiffs' counsel routinely represents healthcare providers—their *clients*, including, RECO Intensive Care, Indiana Center for Recovery, and the Recovery Team—on billing and payment matters. *Id.* ¶ 21. Consequently, communications with providers who may possess relevant information are a normal part of their business and cannot be mischaracterized as a secretive discovery tactic. Nor can Plaintiffs' counsel be expected to invite opposing counsel to eavesdrop on what may be privileged or sensitive client communications.

Critically, on March 25, 2025, Plaintiffs requested that Defendants provide Plaintiffs with a list of names and claims data for putative class members—information only Defendants possess—so that Plaintiffs could collect relevant balancing billing evidence. At first, Defendants agreed. But Defendants later claimed that Plaintiffs' request would take months to fulfill and failed to provide a timetable or explanation. In an effort to expedite receipt of this data, Plaintiffs limited their request to just 50 providers, a fraction of the thousands of providers involved in treating putative class members. Even after this offer of compromise, Defendants still refused to provide

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1   the claims data unless Plaintiffs signed a stipulation providing Defendants with essentially
2   unlimited access to Plaintiffs' discovery activities. Plaintiffs refused, citing the inappropriate
3   nature of Defendants' coercive attempt to force a quid pro quo. On April 24, 2025, over a month
4   after Plaintiffs' initial request, Defendants provided Plaintiffs with claims data for only 17 of the
5   50 providers. To date, over Plaintiffs' objection, Defendants have refused to produce the full
6   claims data forcing Plaintiffs to rely on seemingly incomplete data produced by MultiPlan years
7   ago.[1] *Id.* ¶ 23. Defendants cannot now complain about the limited scope of Plaintiffs' productions
8   when it is a result of their own obstruction.

9   Defendants' argument is legally unsound because there is no rule that requires Plaintiffs to
10  include Defendants in the day-to-day collection of discovery or to include opposing counsel in
11  every communication with a potential third-party witness.[2] Defendants fail to identify a single
12  federal rule, local rule, or Court directive that says otherwise. Defendants seek to invent a new
13  requirement of constant supervision that would render discovery unworkable and chill a party's
14  ability to efficiently investigate its case—particularly in a case like this where Plaintiffs' counsel
15  routinely works with providers as part of its law practice. In any case, Plaintiffs did not require
16  subpoenas to gather the information the Court requested, and when Plaintiffs received relevant
17  documentation and corresponding declarations authenticating the documents, Plaintiffs promptly
18  provided the discovery to Defendants, and did so *within the requisite discovery period*.

19  Defendants also overstate the volume and significance of Plaintiffs' production.[3] Plaintiffs
20  provided declarations from four providers. Each of these providers, with the exception of the
21  Recovery Team,[4] were included on a list of 50 providers that Plaintiffs sent to Defendants on March

---

[1] Defendants' improper hoarding of critical class data answers Defendants' question as to why the providers "only produce[d] records related to a limited subset of putative class members whom they treated[.]" *See* Motion at 4.

[2] For their part, Defendants included Plaintiffs on only a *subset* of their communications with these providers and their counsel. *See* Aiken Decl., ECF 477-1, ¶ 13 (noting that Defendants failed to include Plaintiffs on communications with third-party providers on at least two occasions).

[3] The fact that Defendants now complain about receiving over 600 pages of documents on June 9 and 13 is particularly disingenuous, given that they themselves produced a similar volume—over 600 pages of documents and emails—in the final 48 hours of discovery. Lavin Decl., ¶ 26.

[4] While the Recovery Team was not on the list of 50 providers, it is managed by the same professional corporation as Indiana Center for Recovery.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

25, 2025, as providers from which Plaintiffs might seek discovery on balance billing.[5] Lavin Decl., ¶ 7. These providers were selected—for the convenience of all parties—based on the volume of claims they submitted based on the MultiPlan data, which Plaintiffs repeatedly explained to Defendants. *Id.* ¶ 14. Defendants omit these facts from their Motion. In any case, Defendants have long been on notice that these providers might possess relevant information. *See id.* ¶ 7.

### 2. *Defendants knew the purpose of this discovery period.*

Defendants suggest that good cause exists due to "new and pertinent information" produced by Plaintiffs. Motion at 3. But the purpose of this discovery period was for Plaintiffs to gather and produce evidence of balance billing. It was entirely foreseeable that Plaintiffs would obtain documents responsive to the Court's directive. That Plaintiffs succeeded in this task cannot serve as a basis for good cause to extend the deadline. In fact, Defendants' stated purpose for an extension—to investigate whether Plaintiffs "cherry-picked documents from the providers"—cannot establish good cause in light of the Cert. Order. Defendants proposed discovery would not bear on the remaining numerosity analysis, which merely asks whether Plaintiffs proposed class "includes more than the *de minimis* number allowed under *Olean*." Cert. Order at 18. When the issue on numerosity is merely the number of class members, there can be no "cherry-picking"—Plaintiffs have either identified enough putative members to meet numerosity or they have not. Plaintiffs are not required to present evidence from every possible source, and discovery aimed at what Plaintiffs did *not* produce is irrelevant to the numerosity analysis at this stage and cannot justify delaying the proceedings. Defendants treat the numerosity question like a judgment question in a trial on the merits, demanding depositions to weigh evidence. Class certification is not a mini-trial. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Depositions are simply not required to answer the Court's remaining question on numerosity: Whether enough putative class members were balance-billed.

---

[5] Defendants were aware these providers fell within the categories Plaintiffs identified as discovery targets—United Recovery Project and RECO Intensive previously submitted declarations in this case, and Defendants have previously subpoenaed most of them, including subpoenaing United Recovery Project for the third time on June 13, 2025. Lavin Decl., ¶ 30.

### *3. Defendants possessed superior access to information and chose not to act.*

Defendants possess the universe of claims data, allowing them to identify every putative class member and their providers. They did not need to wait for Plaintiffs to serve discovery to begin their own investigation. Despite this significant informational advantage, Defendants' actions demonstrate a lack of diligence. They elected to serve subpoenas on only 30 providers, and then did nothing. Defendants took no depositions and filed no motions to compel, even when a subpoenaed provider refused to respond and even though more than two months remained in discovery. As Defendants themselves stated, "failure to gather the necessary proof to show that the[] proposed class is [not] certifiable is not good cause to [extend] discovery." ECF 471 at 5.

### B. An extension would unfairly prejudice Plaintiffs, but Defendants would suffer no cognizable harm.

Defendants seek to extend discovery to July 11, 2025, a Friday, and have noticed three depositions for that very day—two at 9:00 am and one at 1:00 pm—only three days before Plaintiffs' class motion is due.[6] Lavin Decl., ¶ 28. This schedule would force Plaintiffs to focus on depositions and divert resources from preparing their class motion. Following the depositions, Plaintiffs would have to obtain rush transcripts over the weekend, analyze them, and incorporate new testimony and evidence into the motion. This compressed schedule would compromise Plaintiffs' ability to adequately present their motion to the Court. For their part, Defendants will not suffer any cognizable prejudice if their motion is denied.[7] Defendants have long had the information and the opportunity to obtain whatever discovery they wanted, and in any case, their own opposition brief is not due until August 4, 2025, giving them nearly two months to analyze the very documents at issue that Plaintiffs recently produced. Finally, Defendants' request seeks to impose a significant and unnecessary burden on *non*-party healthcare providers. Forcing these third-party providers to prepare for and sit for depositions on short notice, solely because of Defendants' failure to act diligently during the allotted discovery period, is unreasonable.

---

[6] More recently, on June 16, after the close of discovery, Defendants noticed a fourth deposition for July 10, 2025, to depose RECO Intensive Care. Lavin Decl., ¶ 29.

[7] The Court need look no further for lack of prejudice to Defendants than Defendants' portion of the joint report in which Defendants argued *against* any further discovery. ECF 471 at 4-9.

Dated: June 18, 2024

Arnall Golden Gregory LLP

By: */s/ Matthew M. Lavin*
Matthew M. Lavin

DL Law Group

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman

Attorneys for Plaintiffs and the Putative Class