Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Arnall Golden Gregory LLP
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone:    202.677.4030
Facsimile:    202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
DL Law Group
345 Franklin St.
San Francisco, CA 94102
Telephone:    415.678.5050
Facsimile:    415.358.8484

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

<table>
<tr><td>LD, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>United Behavioral Health, Inc., et al.,<br><br>       Defendants.</td><td>Case No. 4:20-cv-02254-YGR-JCS<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**Plaintiffs' Renewed Motion for Class Certification Pursuant to ECF 469**<br><br>Date: September 9, 2025<br><br>Time: 2pm<br><br>Location: Oakland Courthouse Courtroom 1 – 4th Floor 1301 Clay Street, Oakland, California 94612</td></tr>
</table>

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

i

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

**Table of Contents**

I.   Proposed Class ...................................................................................................................2

II.  Legal Standard ...................................................................................................................3

   A.  Numerosity...................................................................................................................4

      1.  No fixed number of class members is required. .................................................4
      2.  Courts consider the totality of circumstances to determine whether numerosity is satisfied...........................................................................................................5

   B.  Predominance...............................................................................................................7
   C.  Standard of Review for ERISA Denial of Benefits Claims.........................................8

III. Analysis...............................................................................................................................9

   A.  Plaintiffs have established numerosity..........................................................................9

      1.  Plaintiffs have identified hundreds of putative class members who received balance bills. .......................................................................................................9
      2.  The Court may reasonably infer that more class members were affected. ..................11
      3.  Plaintiffs have identified at least 37 individuals who paid balance bills. ....................12
      4.  Joinder is impracticable based on totality of circumstances...........................13
      5.  Defendants' "bill negotiation services" theory is misleading and irrelevant to the disputed claims...........................................................................................14

   B.  Plaintiffs have established predominance. ..................................................................17

      1.  The common question predominates regardless of variations in standard of review language. ..............................................................................................17
      2.  A binary sorting for standard of review does not defeat predominance. .....................19
      3.  Regardless of discretionary clauses, only the de novo standard applies because MultiPlan, not the named plan fiduciaries, exercised discretion. ..............................21
      4.  The standard of review question has no relevance to non-(a)(1)(B) claims. ...............23
      5.  Plaintiffs are willing to stipulate to abuse of discretion standard if needed. ..............23

   C.  Reprocessing eliminates the need to resolve predominance or the standard of review inquiry. ............................................................................................................23

IV.  Conclusion .......................................................................................................................25

**Exhibit List**

**Original Class Motion Exhibits (ECF 396/397-1)**

| No. | Description | |
|-----|-------------|---|
| 1 | RPC Expert Report | ECF 397-2 |
| 2 | Hall Expert Report | ECF 397-3 |
| 3 | Ohsfeldt Expert Report | ECF 397-4 |
| 4 | AAPC Expert Report | ECF 397-5 |
| 5 | Praxmarer Deposition | ECF 397-6 |
| 6 | Kienzle Deposition | ECF 397-7 |
| 7 | Crandell Deposition | ECF 397-8 |
| 8 | Borsten Deposition | ECF 397-9 |
| 9 | Bradley Deposition | ECF 397-10 |
| 10 | Lopez Deposition | ECF 397-11 |
| 11 | Franco Deposition | ECF 397-12 |
| 12 | Strait Deposition (UBH 30(b)(6)) | ECF 397-13 |
| 13 | BW Deposition | ECF 396-15 |
| 14 | Paradise Deposition (United 30(b)(6)) | ECF 397-14 |
| 15 | Crandell Declaration | ECF 397-15 |
| 16 | Franco Declaration | ECF 396-18 |
| 17 | SPD Composite | ECF 397-16 |
| 18 | VOB Composite | ECF 397-17 |
| 19 | IBAAG Composite | ECF 397-18 |
| 20 | VOB Recording Composite | ECF 397-19 |
| 21 | EOB Composite | ECF 397-20 |
| 22 | PRA Composite | ECF 397-21 |
| 23 | PAD Composite | ECF 397-22 |
| 24 | EOM Composite | ECF 397-23 |
| 25 | Composite ASAs | ECF 397-24 |
| 26 | Viant Savings Composite | ECF 397-25 |
| 27 | Non-IOP EOB/PRA Composite | ECF 397-26 |
| 28 | MultiPlan 2021 DOL Emails (MPI0016819) | ECF 397-27 |
| 29 | Viant OPR Pricing Logic (MPI0014879) | ECF 397-28 |
| 30 | MultiPlan 2018 H0015 Emails (MPI0016580) | ECF 397-29 |
| 31 | MultiPlan 2021 DOL Grim Memo (MPI0014844) | ECF 397-30 |
| 32 | MultiPlan R&C Reduction Emails (MPI0015753) | ECF 397-31 |
| 33 | MultiPlan 2011 Proposed DOL Responses (MPI0015933) | ECF 397-32 |
| 34 | Beckstead Declaration Draft (MPI0016593) | ECF 397-33 |
| 35 | MultiPlan Talking Points (MPI0016794) | ECF 397-34 |
| 36 | Lopez Email 3/31/20 (UHC000015587) | ECF 397-35 |
| 37 | Viant Standard Missing Value Approach (MPI0008890) | ECF 397-36 |
| 38 | OON Program Overview (UHC000038587) | ECF 397-37 |
| 39 | Summit Appeal Letter (UBH000003011) | ECF 397-38 |
| 40 | Summit Financial Consent (PLD0003006) | ECF 397-39 |
| 41 | United's OON Procedures (UHC000197899) | ECF 397-40 |
| 42 | United Remark Code Policies (UHC000071826) | ECF 397-41 |

i

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

| 43 | Viant 2016 White Paper (MPI0008643) | ECF 397-42 |
|----|-------------------------------------|------------|
| 44 | Viant 2016 Methodology (MPI0000488) | ECF 397-43 |
| 45 | Viant 2009 Methodology (MPI0007803) | ECF 397-44 |
| 46 | Beckstead 2018 Mapping Email (MPI0012799) | ECF 397-45 |
| 47 | Crandell Schill Emails (MPI0002008) | ECF 397-46 |
| 48 | Beckstead Crandell Email (MPI0014299) | ECF 397-47 |
| 49 | United Fee Percentage Data (UHC000296122) | ECF 397-48 |
| 50 | Shared Savings Fee Revenue (MPI0009603) | ECF 397-49 |
| 51 | Optum Behav. Health Reimbursement Policy | ECF 396-52 |
| 52 | 2020 Olson Email (UHC000091861) | ECF 397-50 |
| 53 | 2019 Edwards Email (MPI-0009434) | ECF 397-51 |
| 54 | 2018 Lopez Emails (UHC000131783) | ECF 397-52 |
| 55 | 2018 IBAAG Emails (UHC000030972) | ECF 397-53 |
| 56 | 2020 Tunnel Emails (UHC000091543) | ECF 397-54 |
| 57 | Schmor Expert Report | ECF 397-55 |
| 58 | Schmor Expert Report Addendum | ECF 397-56 |
| 59 | Schmor Expert Report Fair Health Research | ECF 397-57 |
| 60 | Schmor Deposition | ECF 397-58 |
| 61 | Kessler Deposition (April 17, 2024) | ECF 397-59 |
| 62 | Siskin Expert Report (April 9, 2024) | ECF 397-60 |
| 63 | Siskin Deposition | ECF 397-61 |
| 64 | About Arnall Golden Gregory | ECF 396-65 |

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Case No. 4:20-cv-02254-YGR-JCS                    Plaintiffs' Renewed Motion to Certify

**Reply Brief Exhibits (ECF 426/426)**

| No. | Description | |
|-----|-------------|---|
| 65 | RPC Rebuttal Report | ECF 427-3 |
| 66 | AAPC Rebuttal Report | ECF 427-4 |
| 67 | Competitive Fee and UCR Plan Chart | ECF 426-4 |
| 68 | NYT Report | ECF 426-5 |
| 69 | Kessler Deposition 2 (April 9, 2024) | ECF 427-5 |
| 70 | Schmor Deposition 2 (April 17, 2024) | ECF 427-6 |
| 71 | American Hospital Association Letter (Apr. 9, 2024) | ECF 426-8 |

**Renewed Motion for Class Certification Pursuant to ECF 469 Exhibits**

| No. | Description |
|-----|-------------|
| 72 | Putative Class Member Balance Bill Spreadsheet |
| 73 | Compendium Exhibits of Exemplar Balance Bills |
| 74 | Compendium Exhibit of Complete Balance Bill Discovery from First Discovery Period |
| 75 | Compendium Exhibit of Complete Balance Bill Discovery from Second Discovery Period |
| 76 | Compendium Exhibit of Named Plaintiffs' Balance Bill Payments |

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Haw. State Dep't of Educ.*,
  30 F.4th 828 (9th Cir. 2022) ...............................................................................................5

*A.F. v. Providence Health Plan*,
  300 F.R.D. 474 (D. Or. 2013) ..............................................................................................4

*Allen v. Isaac*,
  99 F.R.D. 45 (N.D. Ill. 1983) ...............................................................................................4

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..........................................................................................................3, 8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) .............................................................................................................3

*Ark. Educ. Ass'n v. Bd. of Educ.*,
  446 F.2d 763 (8th Cir. 1971) ...............................................................................................4

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994) ......................................................................................4, 5

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ........................................................................................12, 20

*Bruce v. Christian*,
  113 F.R.D. 554 (S.D.N.Y. 1986) ..........................................................................................5

*Bublitz v. E.I. du Pont de Nemours & Co.*,
  202 F.R.D. 251 (S.D. Iowa 2001) .........................................................................................4

*C. P. v. Blue Cross Blue Shield of Ill.*,
  705 F. Supp. 3d 1273 (W.D. Wash. 2023).............................................................................24

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) ................................................................................................7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  308 F.R.D. 606 (N.D. Cal. 2015).........................................................................................23

*Cervantez v. Celestica Corp.*,
  253 F.R.D. 562 (C.D. Cal. 2008).........................................................................................5

*Chun-Hoon v. McKee Foods Corp.*,
  05-620, 2006 U.S. Dist. LEXIS 82029 (N.D. Cal. Oct. 31, 2006) ..........................................3

iv

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
15-cv-0224, 2016 U.S. Dist. LEXIS 10277 (N.D. Cal. Jan. 25, 2016)......................5, 6, 11, 14

*In re Coll. Athlete Nil Litig.*,
20-cv-03919, 2023 U.S. Dist. LEXIS 216539 (N.D. Cal. Nov. 3, 2023) ...............................12

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) .................................................................................5, 11, 12

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978).............................................................................................................3

*Cross v. National Trust Life Ins.*,
553 F.2d 1026 (6th Cir. 1977) .............................................................................................4

*Dale Electronics, Inc. v. R.C.L. Elecs., Inc.*,
53 F.R.D. 531 (D.N.H. 1971) ..............................................................................................5

*Davy v. Sullivan*,
354 F. Supp. 1320 (M.D. Ala. 1973) ...................................................................................5

*Des Roches v. Cal. Physicians' Serv.*,
16-cv-02848, 2018 U.S. Dist. LEXIS 250754 (N.D. Cal. July 5, 2018) ..........................13, 18

*Des Roches v. Cal. Physicians' Serv.*,
320 F.R.D. 486 (N.D. Cal. 2017).....................................................................................18, 19

*DZ Rsrv. v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) .............................................................................................7

*Escalante v. Cal. Physicians' Serv.*,
309 F.R.D. 612 (C.D. Cal. 2015).....................................................................................4, 11, 12

*Esparza v. Smartpay Leasing, Inc.*,
17-03421, 2019 U.S. Dist. LEXIS 94545 (N.D. Cal. June 6, 2019)......................................16

*Estate of Felts v. Genworth Life Ins.*,
250 F.R.D. 512 (W.D. Wash. 2008) ....................................................................................6

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)...........................................................................................................8, 23

*G.O. v. United Healthcare Ins.*,
24-cv-04446, 2025 U.S. Dist. LEXIS 121692 (N.D. Cal. June 23, 2025)..............................9

*Gaspar v. Linvatec Corp.*,
167 F.R.D. 51 (N.D. Ill. 1996)..............................................................................................4

*Gen. Tel. Co. v. EEOC*,
446 U.S. 318 (1980)..............................................................................................................4

v

*Gene & Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ................................................................................8

*Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*,
    1 F. Supp. 3d 72 (W.D.N.Y. 2014) .......................................................................9

*Grant v. Sullivan*,
    131 F.R.D. 436 (M.D. Pa. 1990) ..........................................................................4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................18

*Harlick v. Blue Shield of Cal.*,
    686 F.3d 699 (9th Cir. 2012) ...........................................................................8, 23

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ................................................................................4

*Hendricks v. Aetna Life Ins.*,
    344 F.R.D. 237 (C.D. Cal. 2023) ........................................................................24

*Hill v. UnitedHealthcare Ins.*,
    15-cv-0526, 2016 U.S. Dist. LEXIS 201246 (C.D. Cal. Oct. 26, 2016) ..........18, 19

*Hoffman v. Blattner Energy, Inc.*,
    315 F.R.D. 324 (C.D. Cal. 2016) .......................................................................4, 5

*J.N. v. Or. Dep't of Educ.*,
    338 F.R.D. 256 (D. Or. 2021) ...............................................................................6

*Jabbari v. Farmer*,
    965 F.3d 1001 (9th Cir. 2020) ......................................................................7, 8, 17

*Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*,
    349 F.3d 1098 (9th Cir. 2003) .........................................................................9, 21

*Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker
    Real Estate Corp.*,
    281 F.R.D. 422 (C.D. Cal. 2012) ..........................................................................7

*Kazda v. Aetna Life Ins.*,
    19-cv-02512, 2022 U.S. Dist. LEXIS 77880 (N.D. Cal. Apr. 26, 2022)........6, 12, 25

*Kearney v. Standard Ins.*,
    175 F.3d 1084 (9th Cir. 1999) (en banc) ...............................................................8

*Lacko v. United of Omaha Life Ins.*,
    926 F.3d 432 (7th Cir. 2019) ..............................................................................18

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

vi

*Lara v. First Nat'l Ins. Co. of Am.*,
25 F.4th 1134 (9th Cir. 2022) ..................................................................................................7

*Lewert v. Boiron, Inc.*,
11-cv-10803, 2014 U.S. LEXIS..............................................................................................21

*McCluskey v. Trs. of Red DOT Corp. ESOP & Tr.*,
268 F.R.D. 670 (W.D. Wash. 2010) ............................................................................... *passim*

*Moore v. Apple Inc.*,
309 F.R.D. 532 (N.D. Cal. 2015)..............................................................................7, 8, 18, 19

*Nance v. May Trucking Co.*,
11-cv-0537, 2012 U.S. Dist. LEXIS 63861 (S.D. Cal. May 7, 2012) ...................................20

*Nevarez v. Forty Niners Football Co.*,
326 F.R.D. 562 (N.D. Cal. 2018)...........................................................................................20

*Nixon v. Anthem, Inc.*,
15-cv-0526, 2021 U.S. Dist. LEXIS 168382 (E.D. Ky. Sept. 1, 2021)...................................18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ...............................................................................................3, 7

*Palmisano v. CrowderGulf, LLC*,
17-cv-9371, 2023 U.S. Dist. LEXIS 106052 (D.N.J. June 20, 2023)......................................20

*Park v. Ralph's Grocery Co.*,
254 F.R.D. 112 (C.D. Cal. 2008)..............................................................................................7

*Price v. Stevedoring Servs. of Am.*,
697 F.3d 820 (9th Cir. 2012) .................................................................................................19

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ......................................................................................4, 11

*Rodriguez Alcantara v. Archambeault*,
613 F. Supp. 3d 1337 (S.D. Cal. 2020)...............................................................................4, 12

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ......................................................................................8, 18, 22

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ...................................................................................................3

*Shane v. Albertson's Inc.*,
504 F.3d 1166 (9th Cir. 2007) .................................................................................................9

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...................................................................................................3

vii

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

*Sueoka v. United States*,
101 Fed. App'x 649 (9th Cir. 2004) ...........................................................................................6, 14

*Tokoshima v. Pep Boys - Manny Moe & Jack*,
12-cv-4810, 2014 U.S. Dist. LEXIS 58769 (N.D. Cal. Apr. 28, 2014)......................................4

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)......................................................................................................................7

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ..................................................................................................8, 19

*Waddill v. AT&T Umbrella Benefit Plan No. 1*,
08-cv-614, 2009 U.S. Dist. LEXIS 51779 (E.D. Cal. June 18, 2009) ......................................22

*West v. Cal. Servs. Bureau*,
323 F.R.D. 295 (N.D. Cal. 2017) (Gonzalez Rogers, J.) ................................................5, 11, 12

*Williams v. Pillpack LLC*,
343 F.R.D. 201 (W.D. Wash. 2022) .............................................................................................7

*Wit v. United Behavioral Health*,
79 F.4th 1068, 1084 (9th Cir. Aug. 22, 2023) ("*Wit 3*").............................................................24

*Wit v. United Behavioral Health*,
79 F.4th 1068 (9th Cir. Aug. 22, 2023) ......................................................................................24

*Wright v. Linkus Enters.*,
259 F.R.D. 468 (E.D. Cal. 2009) .........................................................................................6, 13

*Young v. Nationwide Mut. Ins.*,
693 F.3d 532 (6th Cir. 2012) ......................................................................................................19

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

On February 6, 2025, this Court denied Plaintiffs' class certification motion (ECF 396/397-1 ("Mot.")) without prejudice but authorized Plaintiffs to file a renewed motion addressing the limited issues identified by the Court in its ruling.[1] *See* ECF 469 ("Certification Order" or "Cert. Or."). The Court's Certification Order identified two issues. First, the Court determined that Plaintiffs failed to establish numerosity under Rule 23(a)(1) due to the absence of sufficient evidence that putative class members received balance bills. Cert. Or. at 18. Second, the Court left open the question of whether Plaintiffs established predominance under Rule 23(b)(3) for their ERISA denial-of-benefits claims because of variation in putative class members' plan language relating to the applicable standard of review—that is, whether the potential need to assign plans to one of two standards would overwhelm common questions. Cert Or. at 19.

Following the Certification Order, the Court authorized a limited period of discovery for Plaintiffs to obtain evidence on balance billing to address the issues the Court identified. *See* ECF 47 During this period, Plaintiffs collected balance billing evidence from a limited sample of four providers with a relatively high volume of claims. These providers were selected—under the constraint of Defendants' partial data production—from a total of 1,548 providers who treated putative class members. The four providers—together with providers who had already produced balance billing information and evidence *Defendants* produced—reveal that over 200 putative class members received balance bills just from this small sample. Of that small sample, at least 37 individuals are known to have made payments in response to those bills. *See* Ex. 72 (complete balance bill spreadsheet); 74–75 (balance billing compendiums). This sample raises the reasonable inference that thousands of other putative class members received balance bills. As a result, Plaintiffs have now developed a record sufficient to remedy the numerosity deficiency identified in the Certification Order.

As to predominance, variation in the applicable ERISA standard of review relating to

---

[1] In accordance with the Court's Certification Order, this motion is limited to the numerosity (balance billing) and predominance (standard of review) issues. It does not reargue issues already addressed in Plaintiffs' prior briefing, expert reports, or evidence, which Plaintiffs respectfully incorporate by reference. *See*, *e.g.*, Mot. (certification motion), 426/427-2 (reply in support of certification), 436 (opposition to sur-reply); 442 (reply to sur-reply).

1

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Plaintiffs' ERISA § 502(a)(1)(B) claims does not defeat certification for at least five reasons. First, common questions predominate regardless of the applicable standard. The core question—whether the Viant methodology produced a usual, customary, and reasonable ("UCR") amount for H0015 claims—predominates over the secondary issue of what level of deference applies. The applicable standard is an ancillary legal question that can be resolved categorically and will not cause the class to splinter into individual trials. In fact, to the extent the Court determines Defendants' use of Viant is an abuse of discretion, the applicable standard of review is irrelevant. Second, any necessary sorting between plans that confer discretionary authority and those that do not is a binary classification issue that can be resolved easily without overwhelming common issues. Third, United delegated pricing discretion to MultiPlan, an unauthorized entity not granted discretion under any plan. As a result, de novo review applies to all plans—regardless of the existence of discretionary clauses—and no sorting is necessary. Fourth, the standard of review issue is limited to just one of Plaintiffs' three operative causes of action—their ERISA § 502(a)(1)(B) claim (29 U.S.C. § 1132(a)(1)(B))—and does not relate to Plaintiffs' two other causes of action, their ERISA § 502(a)(3) claim (involving a single prudent person standard) or RICO claim (which does not involve a fiduciary standard at all). And fifth, Plaintiffs are willing to stipulate to the application of the abuse of discretion standard to resolve any predominance concerns relating to their ERISA § 502(a)(1)(B) claim, if necessary.

## I.    **Proposed Class**

For the purposes of this renewed motion for class certification, Plaintiffs have modified their original proposed class definition consistent with the Court's guidance:

> Any member of a health benefit plan administered or issued by United and governed by ERISA, where the member's plan utilized United's "Reasonable and Customary" program for out-of-network benefits, and whose claim(s) for intensive outpatient services were billed with HCPCS H0015 and/or revenue code 0906 as an all-inclusive per diem, priced by MultiPlan's Viant methodology, and never adjusted, *and who received balance bills from their provider,* during the class period from January 1, 2015, to the present.

(Modifications in italics). Plaintiffs remain open to modification as the Court deems appropriate

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

under Rule 23(c)(5).[2] Plaintiffs also preserve their request for certification of any previously proposed class or subclass. *See* Mot. at 2 (original class); ECF 426/427-2 ("Reply") at 19–20 (Reply subclasses).

## II.    <u>Legal Standard</u>

To qualify for class certification, a class must meet the requirements of Rule 23(a) and one of three alternatives of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). A party seeking class certification must affirmatively demonstrate compliance with Rule 23 based on a preponderance of evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). "Accordingly, before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018).[3] Nevertheless, at this stage of the litigation, a full merits review is unwarranted. *See, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). A district court's "rigorous analysis" should not be a "mini-trial" because a district court's class certification order is "preliminary." *Id.*; *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (describing certification as "inherently tentative"). Indeed, "[n]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class." *Sali*, 909 F.3d at 1004–05. Plaintiffs must enable the Court to make only a "reasonable judgment" that the class satisfies Rule 23, *id.* at 1005, and the Court need not weigh competing evidence. *See Chun-Hoon v. McKee Foods Corp.*, 05-620, 2006 U.S. Dist. LEXIS 82029, at *11 (N.D. Cal. Oct. 31, 2006) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

---

[2] For example, if the Court determines that payment—in addition to receipt—of balance bills is necessary for Plaintiffs' RICO claims, the Court may create a RICO subclass to include those "who paid balance bills from their provider" as opposed to those who "received balance bills from their provider" for the ERISA classes.

[3] Citations, quotations, footnotes, brackets, ellipses, and other ancillary elements to citations have been removed for clarity unless otherwise indicated.

Case No. 4:20-cv-02254-YGR-JCS                    Plaintiffs' Renewed Motion to Certify

### A. Numerosity

A party seeking class certification must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The "numerosity requirement does not mean that the class must be so numerous that joinder is impossible but rather simply that joinder of the class is impracticable." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *see also Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964).

#### 1. *No fixed number of class members is required.*

There is no fixed numerical threshold to establish numerosity. *See Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). In general, a class of 40 or more members is enough, while classes of fewer than 20 are presumptively too small. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *see also Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 337 (C.D. Cal. 2016) (class of 23 satisfied numerosity); *McCluskey v. Trs. of Red DOT Corp. ESOP & Tr.*, 268 F.R.D. 670, 676 (W.D. Wash. 2010) (class of 27 satisfied numerosity).

Nevertheless, smaller classes can be and have been certified. *A.F. v. Providence Health Plan*, 300 F.R.D. 474, 480 (D. Or. 2013) (noting "classes of 16 to 39 members may . . . be sufficiently numerous, depending on the facts of the case"); *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (class of 19 satisfies numerosity); *Rodriguez Alcantara v. Archambeault*, 613 F. Supp. 3d 1337, 1346 (S.D. Cal. 2020) (class of 15 satisfied numerosity); *Tokoshima v. Pep Boys - Manny Moe & Jack*, 12-cv-4810, 2014 U.S. Dist. LEXIS 58769, at *16 (N.D. Cal. Apr. 28, 2014) (class of 19 satisfied numerosity); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (class of 18 satisfied numerosity and collecting cases).[4]

---

[4] Although the Supreme Court in *General Telephone* found a class of 15 did not satisfy the numerosity requirement, the Ninth Circuit has determined that the Supreme Court "did not undermine a district court's discretion" to certify smaller classes in appropriate circumstances. *See Rannis*, 380 F. App'x at 651. Several courts have authorized smaller classes since *General Telephone. See*, e.g., *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (class of 17 satisfied numerosity); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (noting court may certify class with "as few as 14 members"); *Allen v. Isaac*, 99 F.R.D. 45 (N.D. Ill. 1983) (class of 17 satisfied numerosity); *see also Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving 20-member class); *Cross v. National Trust Life Ins.*, 553

4

A plaintiff does not need to identify an exact number of potential class members or otherwise identify a sufficient number of class members to establish numerosity. *Arnold*, 158 F.R.D. at 448. Where the exact size of the class is unknown but reasonable inference and common sense indicate that it is sufficiently large, the numerosity requirement is satisfied. *Hoffman*, 315 F.R.D. at 337 (identification of 23 putative class members satisfies numerosity); *West v. Cal. Servs. Bureau*, 323 F.R.D. 295, 305 (N.D. Cal. 2017) (Gonzalez Rogers, J.) (finding numerosity based on "common sense" and "reasonable inferences"). That is, numerosity may be established where plaintiffs' allegations provide a reasonable estimate or inference that indicates putative class members are sufficiently numerous. *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

### 2. *Courts consider the totality of circumstances to determine whether numerosity is satisfied.*

In the "grey area" between presumptively too small and presumptively sufficient class sizes, courts look to the totality of the circumstances to determine whether numerosity is satisfied, including: (1) judicial economy, (2) geographic dispersion, (3) the ability and incentive of class members to bring individual suits, (4) the type of relief sought, and (5) the difficulty in identifying class members. *See A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022); *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, 15-cv-0224, 2016 U.S. Dist. LEXIS 10277, at *15 (N.D. Cal. Jan. 25, 2016) (Gonzalez Rogers, J.) ("Several factors are relevant to [numerosity], including the size of the class, location of class members, difficulty in identifying those class members, and size of each class member's claim.").

Judicial Economy: One "primary" purpose of Rule 23 is to promote judicial economy by "avoiding multiple suits." *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 567 (C.D. Cal. 2008). Judicial economy is furthered where the use of one action will "avoid the risk of duplicative effort by multiple judges, as well as potentially inconsistent rulings." *See McCluskey*,

---

F.2d 1026, 1030 (6th Cir. 1977) (approving 7-member class); *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (approving 16-member class, where other individuals would be affected in the future); *Dale Electronics, Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531 (D.N.H. 1971) (approving 13-member class); *Davy v. Sullivan*, 354 F. Supp. 1320, 1325 (M.D. Ala. 1973) (approving 10-member class).

Case No. 4:20-cv-02254-YGR-JCS                    Plaintiffs' Renewed Motion to Certify

268 F.R.D. at 674. Accordingly, "numerosity is satisfied where joining all [c]lass members would serve only to impose financial burdens and clog the court's docket." *Id.* (collecting cases); *see Kazda v. Aetna Life Ins.*, 19-cv-02512, 2022 U.S. Dist. LEXIS 77880, at *25 (N.D. Cal. Apr. 26, 2022) (approving class between 23–25 members in part due to judicial economy).

Geographic Dispersion: Joinder is impracticable where class members are geographically dispersed. *RLJ*, 2016 U.S. Dist. LEXIS 10277 at *15. Courts have found this factor supports certification where plaintiffs are spread across counties or located in more than one district. *See McCluskey*, 268 F.R.D. at 675 (residency of class members in three states supported numerosity); *Wright v. Linkus Enters.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) ("The geographical disbursement of class members outside of one district" supports numerosity); *RLJ*, 2016 U.S. Dist. LEXIS 10277 at *16 (geographic dispersion across 22 states supports numerosity).

Ability to Sue Individually: Joinder is also impracticable where class members lack the financial resources or practical ability to bring individual suits. Courts recognize that even substantial claims may go unpursued absent class relief. *McCluskey*, 268 F.R.D. at 675 (ability to sue factor supported numerosity even where average claim equaled $75,000). The "meaningful aspect" of the financial equation is not the size of individual claims alone, but "the relation between the size of the individual claims and the resulting incentive for attorneys to litigate those individual claims." *Id.*; *see also Estate of Felts v. Genworth Life Ins.*, 250 F.R.D. 512, 521 (W.D. Wash. 2008). One factor indicating that individual suits are impractical is whether "other potential class member[s] ha[ve] filed suit." *McCluskey*, 268 F.R.D. at 675.

Presence of Injunctive Relief: When a putative class seeks prospective or injunctive relief, courts recognize that the impracticability of joinder may be heightened. *See J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 264 (D. Or. 2021) (noting "where 'only injunctive or declaratory relief is sought . . . even speculative or conclusory allegations regarding numerosity are sufficient to permit class certification'" (quoting 5 Moore's Federal Practice, Civil § 23.22[3] (3d ed. 2020))); *Sueoka v. United States*, 101 Fed. App'x 649, 653 (9th Cir. 2004).

Difficulty of Identifying Members: Courts have also found that numerosity may be satisfied where identifying or locating class members poses a barrier to joinder. *See RLJ*, 2016

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Case No. 4:20-cv-02254-YGR-JCS                                      Plaintiffs' Renewed Motion to Certify

U.S. Dist. LEXIS 10277 at *16 (numerosity supported where "members of the proposed class are difficult to identify individually"); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120 (C.D. Cal. 2008) (finding numerosity in part because members "cannot be readily identified").

### B. Predominance

To certify a Rule 23(b)(3) class, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022).

The predominance requirement is not a demand for total uniformity. *See*, *e.g.*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (noting "predominance does not require that all questions be common"); *see also Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020); *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 431 (C.D. Cal. 2012). Class certification does not require that every element of a claim be susceptible to classwide proof; it is enough that the common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Although a court may compare uncommon questions with common ones, the predominance inquiry is "not bean counting." *Moore v. Apple Inc.*, 309 F.R.D. 532, 544 (N.D. Cal. 2015). Courts must "pragmatically compare[] the quality and import of common questions to that of individual questions" and then determine which predominate. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020); *see also Williams v. Pillpack LLC*, 343 F.R.D. 201, 207 (W.D. Wash. 2022). "[Q]uestions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). That is, "[i]f a common question will drive the resolution, even if there are important questions affecting only individual members, then the class is 'sufficiently cohesive to warrant adjudication by representation.'" *Jabbari*, 965 F.3d at 1005 (quoting *Amchem*, 521 U.S. at 623–24).

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The purpose is to prevent the class from "degenerating into a series of individual trials." *Moore*, 309 F.R.D. at 544 (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008)).

### C.  Standard of Review for ERISA Denial of Benefits Claims

In actions brought under ERISA § 502(a)(1)(B) to recover benefits or enforce rights under the terms of a plan, courts apply one of two possible standards of review: de novo or abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The default standard is de novo. *Id.* However, if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the abuse of discretion standard applies. *Id.*

The plan must unambiguously provide discretion to the fiduciary to shift the standard of review to abuse of discretion. *Kearney v. Standard Ins.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc). Where an abuse of discretion standard applies, however, that review is "'tempered by skepticism' when the plan administrator has a conflict of interest in deciding . . . benefits." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012). The weight of this skepticism "depends on the severity of the conflict," which itself depends on several factors, including: (1) whether the administrator takes "active steps to reduce potential bias and to promote accuracy," like employing a "neutral, independent review process," or "segregating employees who make coverage decisions from those who deal with the company's finances;" (2) whether "there is a history of biased claims administration," or (3) whether the administrator "provide[s] full review of a claim" or "fail[s] to follow proper procedures in denying the claim." *Id.*

8

Additionally, for abuse of discretion to apply, courts have found that the entity actually exercising discretion must be the one to whom discretion was granted. *See*, *e.g.*, *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1170 (9th Cir. 2007); *Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003). A plan may purport to grant discretion to a particular fiduciary, but if another entity makes the benefit determinations in practice, de novo review applies. *See*, *e.g.*, *G.O. v. United Healthcare Ins.*, 24-cv-04446, 2025 U.S. Dist. LEXIS 121692, at *5 (N.D. Cal. June 23, 2025) ("While the [certificate of coverage] unambiguously gives UHIC discretionary authority to interpret terms of the plan, UHIC fails to show that it has conferred that authority to UBH. And because UBH is the entity that denied [plaintiff's] benefits, not UHIC, UBH's decision should be reviewed de novo."); *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 1 F. Supp. 3d 72, 81 (W.D.N.Y. 2014) (collecting cases).

## III.    <u>Analysis</u>

This motion addresses the two issues highlighted by the Court in denying certification without prejudice: numerosity and predominance. Plaintiffs have obtained additional evidence and now satisfy both requirements.

### A.  Plaintiffs have established numerosity.

#### 1.  *Plaintiffs have identified hundreds of putative class members who received balance bills.*

The Court's Certification Order identified a deficiency in Plaintiffs' prior showing on numerosity, specifically that Plaintiffs had not provided sufficient evidence that Plaintiffs received balance bills. *See*, *e.g.*, Cert. Or. at 2 ("[P]laintiffs fail to provide evidence that demonstrates putative class members . . . were actually balanced billed."), 12 (noting "the Court finds that receipt of a balance bill is required for class members to demonstrate an Article III injury"), 18 (noting provider declarations failed to specify that balance billing occurred "*in this case*" (emphasis original)), 2 (noting subclasses failed to identify "class members who received balance bills").

Following the Court's Certification Order, Plaintiffs undertook limited and restrained discovery to obtain balance billing records from a sample of four high-volume providers (United

9

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Recovery Project, Indiana Center for Recovery, RECO Intensive, and the Recovery Team). That process, however, was hindered by Defendants' refusal to produce a complete class list and associated claims data—information essential for correctly and efficiently identifying affected class members. *See* ECF 484 at 3–9 (Judge Spero's summary of Defendants' obstruction of Plaintiffs' discovery); ECF 481-1 (Plaintiffs' counsel declaration regarding the discovery period). Constrained by these limitations, Plaintiffs focused their efforts on a few of the top 50 high-volume providers—many of whom had previously submitted declarations in this case. *See* ECF 484 at 4. While Plaintiffs could not offer those providers a complete list of potential class members without the complete class list, they did supply partial lists produced earlier in the litigation from which a limited subset of putative class members could be identified. ECF 481-1 ¶ 23.

Even within this very limited sample, Plaintiffs easily obtained documentary and testimonial evidence demonstrating that hundreds of putative class members—over 200—received balance bills for H0015 claims priced by Viant. For example:



10



These individuals, and hundreds more (*see* Ex. 72), satisfy every element of the proposed class definition and confirm that Defendants' conduct impacted a sufficiently large group to render joinder impracticable for the purposes of Rule 23(a)(1). Their number, even as limited in the sample, exceeds the presumptive 40-person threshold, which is enough on its own to establish numerosity.[5] *See Rannis*, 380 F. App'x at 651; *RLJ*, 2016 U.S. Dist. LEXIS 10277 at *15.

### 2.    *The Court may reasonably infer that more class members were affected.*

Plaintiffs' balance billing evidence is drawn from only a limited subset of providers—a handful of the total 1,548 providers who treated putative class members. *See* Ex. 65, RPC Rebuttal Report, ¶¶ 29, 89. Given the scope of Defendants' pricing methodology and the uniformity of the challenged conduct, it is reasonable to infer that thousands more patients received balance bills and hundreds more paid them. Courts have repeatedly emphasized that numerosity may be satisfied where the available record supports a reasonable estimate. *See West*, 323 F.R.D. at 305 ("In analyzing numerosity a court may make common-sense assumptions and reasonable inferences."); *Escalante*, 309 F.R.D. at 618. That is particularly appropriate here, where balance billing is a predictable result of the Viant methodology and the potential class includes at least 11,280 individuals from 1,548 providers. *See Cooper Cos.*, 254 F.R.D. at 634

---

[5] Even United's own discovery efforts, which involved inquiring about a single patient for each subpoenaed provider, resulted in evidence of balance billing putative class members. *See* Ex. 75 at 46–54, 65–83, 87–96.

11

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

(court "may infer that, when a corporation has millions of shares trading . . . more than 40 individuals purchased stock over the course of more than a year" for numerosity purposes); *see also* Ex. 65 ¶¶ 15 29, 89 (Defendants' claims data includes 88,484 disputed claims for 11,280 patients from 1,548 providers through 2021).

### 3.  *Plaintiffs have identified at least 37 individuals who paid balance bills.*

Although the Court's Certification Order identifies receipt of balance bills as the evidentiary showing required to establish numerosity, *see* Cert. Or. at 2, 12, 18, Plaintiffs have also adduced evidence that class members made payments on those bills. To the extent the Court requires evidence that class members not only received but also paid balance bills (for damages for the RICO claims), Plaintiffs have separately identified 37 individuals—the five named Plaintiffs plus 32 absent putative class members—who made payments.[6] *See* Ex. 74 at 74–88; Ex. 75 at 45, 99, 730; Ex. 76. This number is a *minimum*, based again on only a limited sample, and it creates the "reasonable inference" that "more than a *de minimis* number" of class members suffered a concrete financial injury arising from actual payments. *See* Cert. Or. at 18; *see also West*, 323 F.R.D. at 305; *see also Cooper Cos.*, 254 F.R.D. at 634; *cf. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–25 (9th Cir. 2017) ("[Defendant] claims that Plaintiffs did not propose any way to identify class members and cannot prove that an administratively feasible method exists because consumers do not generally save grocery receipts and are unlikely to remember details about individual purchases . . . . We have not previously interpreted Rule 23 to require such a demonstration, and . . . we do not do so now."); *In re Coll. Athlete Nil Litig.*, 20-cv-03919, 2023 U.S. Dist. LEXIS 216539, at *94 (N.D. Cal. Nov. 3, 2023) (plaintiffs need propose only "common method for identifying" class members). Courts have certified classes based on similar or smaller showings. *See Archambeault*, 613 F. Supp. 3d at 1346 (class of 15 satisfied numerosity); *Escalante*, 309 F.R.D. at 618 (class of 19 sufficient); *Kazda*, 2022 U.S. Dist. LEXIS 77880 at *25 (class between 23–25 members sufficient).

---

[6] More evidence of payment is already in the record. In prior discovery, United produced declarations in which the declarants attached balance bills that "accurately represent the amounts billed *and collected* by [Provider]." *See e.g.,* Ex. 74 at 53, 90, 102, 127. Those providers evidence payments by potentially more putative class members who paid balance bills.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

**4. *Joinder is impracticable based on the totality of circumstances.***

Even if Plaintiffs' numerosity showing were closer to the line—for example, if for the RICO claims putative class members are measured solely by those who *paid* balance bills—the totality of the circumstances favors joinder.

First, judicial economy strongly favors certification. The putative class members all challenge a centralized course of conduct—Defendants' pricing of H0015 claims through MultiPlan's Viant methodology—and certification would promote the resolution of these common issues in a single proceeding. Requiring separate lawsuits would "serve only to impose financial burdens and clog the court's docket." *See McCluskey*, 268 F.R.D. at 674; *see* Mot. at 15–16 (identifying common threads).

Second, the putative class members are geographically dispersed across the United States. Even within the narrow provider sample, Plaintiffs identified class members from multiple states, and the underlying conduct at issue was national in scope. *See*, *e.g.*, Ex. 74 (including patients in several states, including California, Florida, Illinois, Massachusetts, Oklahoma, Texas, and Utah); Ex. 65 ¶¶ 29 (noting United "administers health benefits in all 50 States and the District of Columbia"), 91 (geographic distribution of putative class members' providers includes at least 48 states and the District of Columbia). Joinder is thus impracticable. *See Wright*, 259 F.R.D. at 472.

Third, the ability of class members to bring individual lawsuits is limited. The class consists of former or current substance use disorder patients—a population that faces structural barriers to pursuing individual claims, including stigma, limited financial resources, and lack of legal sophistication. *See Des Roches v. Cal. Physicians' Serv.*, 16-cv-02848, 2018 U.S. Dist. LEXIS 250754, at *18 (N.D. Cal. July 5, 2018) (noting "emotional burden" and "potential stigma" substance use disorder plaintiffs face in bringing suit).

Fourth, the dollar value of any individual class member's claims is often low enough that it would be difficult to secure legal counsel willing to litigate a case involving issues with the demonstrated complexity of those here. *See McCluskey*, 268 F.R.D. at 675. This case alone has been pending for more than five years, with hundreds of docket entries, dozens of depositions,

13

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

multiple rounds of expert reports, and extensive motion practice—underscoring the substantial investment of time and resources required to pursue these claims. Indeed, no other putative class member has brought suit individually, "thus demonstrating that there may be insufficient incentive for others to file suit individually." *Id.*

Fifth, Plaintiffs seek not only monetary damages but also equitable relief, specifically the reprocessing of claims, discussed below, which further favors joinder. *See*, *infra*, section III.C; *see also Sueoka*, 101 F. App'x at 653.

Sixth, joinder is impracticable in part because identifying and contacting all potential class members is difficult. *See RLJ*, 2016 U.S. Dist. LEXIS 10277 at *16. Plaintiffs have already faced substantial resistance from Defendants in their efforts to obtain patient-level data, and even within the small provider sample, identifying affected individuals requires cross-referencing Defendant data with provider- or patient-level data on balance billing. *See* ECF 484 at 3–9. In addition, putative class members may have no idea that the staggering balance bills they face are a result of Defendants' conduct—particularly given the complexity of out-of-network healthcare and Defendants' inadequate disclosures. *See* Ex. 21 (explanations of benefits ("EOBs")); *see also* Mot. at 7 (noting Defendants failed to adequately notify patients or providers of their application of Viant).

### 5. *Defendants' "bill negotiation services" theory is misleading and irrelevant to the disputed claims.*

Although Plaintiffs have identified a presumptively large enough class, Defendants have tried to muddy the issue by asserting—misleadingly—that 99% of individuals are "held harmless" from balance bills and therefore suffered no injury from Defendants' conduct. *See* ECF 414-1("Defs' Opp.") at 8; *see also* Cert. Or. at 16. They rely on a declaration from Rebecca Paradise, a United executive, who stated that over 99% of claims processed through Viant's "bill negotiation services" ("BNS") resulted in "successful negotiations" that protected members from financial liability. *See* Cert. Or. at 16; ECF 407 (Paradise Decl.) ¶¶ 25–26; ECF 415-14 (Defs' Ex. 73). This argument fails for several independent reasons.

Most fundamentally, the disputed claims of putative class members were adjudicated as plan benefits—not as part of bill negotiation services. *See* Ex. 65, ¶ 18 (noting 88,484 disputed

14

claims are those where "allowed amount is the original allowed amount set by United" as opposed to 36,242 non-disputed "negotiated" claims). Specifically, they were adjudicated and priced as plan benefits under United's "Reasonable & Customary" or "R&C" program. *See* Mot. at 7 (explaining remark codes). That program purports to determine the allowed amount based on a percentile of billed charges in the geographic region—an approach United has claimed aligns with the Viant methodology. *See* Mot. at 4–5, 8–11; *see* Ex. 24 (EOM Composite) (describing Viant as "align[ing] with Payer's benefit plan language" in context of H0015 claim). Accordingly, where United prices a claim arising under an R&C plan using Viant, the Viant price is not an "offer" for "bill negotiations"—it is simply the plan benefit.[7] Indeed, the 99% number Defendants rely on and the Court cited in its order (Cert. Or. at 16), applies to only the small number of claims in which providers affirmatively complained about the Viant price—not the 88,484 disputed claims *in this case*.[8] *See* Ex. 65 ¶ 15; Defs' Opp. at 8 (noting Plaintiffs' class excludes the narrow set of claims purportedly "resolved" through BNS, to which the 99% figure applies, but includes claims where BNS failed or no complaint was made, the latter constituting the vast majority of claims); ███████████████████. In short, the putative class members' claims in this case are not those adjusted through the BNS program.

The fact that the disputed claims were *not* negotiated is reflected in the documentation Defendants transmitted to patients and providers, including explanation of benefits (EOBs), provider remittance advices (PRAs), patient advocacy department letters (PAD), and explanations of methodology (EOMs). *See* Ex. 21–24. For example, the EOBs expressly state that the patient is responsible for the difference between the provider's billed charge and the allowed amount. *See, e.g.,* Ex. 21 (EOB composite). That is, the EOBs do not include any language indicating that the claim is being negotiated or that the provider is prohibited from

---

[7] True bill negotiation services may occur if the MultiPlan price is *not* considered a plan benefit. In those situations, there is no plan basis for offering a MultiPlan price, and so payors can justify MultiPlan-determined amounts only as "offers"—if at all.

[8] To avoid any confusion, as far as Plaintiffs are aware, Defendants have never asserted that 99% of the 88,464 disputed claims at issue in this litigation were resolved without balance billing because of the BNS program. Their 99% figure refers to a separate category of claims—those that providers affirmatively disputed through MultiPlan's BNS program—that are not within Plaintiffs' proposed class.

15

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

balance billing and the patient "held harmless" as a result. This language is wholly inconsistent with the supposed protections offered by the BNS program. *See also* Ex. 23 (PAD letters informing patients "you might need to pay the difference between charged and allowed amounts," including for disputed H0015 claims). Similarly, the PRAs describe the amounts paid to providers as the "payment of benefits"—not "offers"—and list the remaining patient balance. They also include the "CY" remark code, which states that the benefit was reduced by the amount exceeding the "eligible expense"—United's term for the allowed amount (i.e., plan benefit)—again making clear that these payments are not offers and patients are exposed to balance billing. *See* Ex. 22.

The existence of these remark codes also means that the Court need not resolve any factual disputes about whether the disputed claims are negotiated—at this stage or ever. All disputed claims were assigned the "CY" remark code, which denotes a pricing determination made under United's R&C program based on the Viant methodology without any subsequent negotiation. *See* Ex. 21 ("CY- This payment has been reduced by the amount that is above the eligible expense amount for out-of-network services under your plan. If you are billed . . . please call Viant"). In contrast, claims that were actually negotiated are assigned a distinct "IX" remark code. ██████████████████████. This coding distinction confirms that the class members' claims were not resolved through negotiation and are not subject to the "held harmless" theory Defendants assert.[9]

In any case, Defendants cannot speculate about the proportion of non-class members to negate Plaintiffs' numerosity showing. Plaintiffs have presented evidence that hundreds of class members were balance billed. Defendants' "negotiation" theory statistics are unproven assertions that should not at this stage defeat numerosity. *See Esparza v. Smartpay Leasing, Inc.*, 17-03421,

[9] To the extent Defendants' negotiation theory is that providers accept an "offer" and agree not to balance bill simply because they received a Viant-determined payment and failed to affirmatively complain, it is unfounded. *See* ECF 414-1 (Defendants' opposition to Plaintiffs class motion) at 8. That is not a negotiation, not an offer, and certainly not acceptance. There is nothing to bridge the gap between simply making a payment and the provider actually agreeing to United's unilaterally imposed terms. At worst, the question of whether Defendants' uniform conduct constitutes a negotiation that bars balance billing is a common question—albeit one with an obvious answer.

16

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

2019 U.S. Dist. LEXIS 94545, at *14–15 (N.D. Cal. June 6, 2019) (defendants' speculation that additional information would "reduce" the number of class members to less than 40 "cannot defeat class certification" or numerosity).

### B.  Plaintiffs have established predominance.

To satisfy Rule 23(b)(3), common issues must predominate. The Court asked whether variations in plan language regarding the standard of review might create individualized issues as to Plaintiffs' ERISA § 502(a)(1)(B) claims. *See* Cert Or. at 19. They do not.

#### 1.  *The common question predominates regardless of variations in standard of review language as to Plaintiffs' ERISA § 502(a)(1)(B).*

Plaintiffs' claims arise from a uniform practice: Defendants' use of MultiPlan's Viant methodology to price out-of-network H0015 claims. That central issue—whether the Viant methodology produced a UCR for H0015 claims—applies across the class and will be resolved through common evidence. *See* Mot. at 15–16 (outlining common facts and questions); Cert Or. at 12 (noting "plaintiffs have demonstrated the existence of a common issue" and "provide common evidence to determine whether United's reimbursement rate is based on a "meaningful connection between (1) the charges used to calculate percentile values and (2) the charges for the specific services rendered (here, IOP).""). There is no indication—let alone evidence—that Defendants varied their common course of conduct based on any variation in the discretion afforded by any particular plan. They applied Viant. The discretionary clauses simply played no role in moderating how Defendants selected or implemented Viant pricing. That uniformity of conduct underscores the predominance of the core question.

The potential application of different judicial standards—de novo or abuse of discretion—does not negate this. The question of whether one of two standards applies is not of the same "quality" or "import" as the common question. *See Jabbari*, 965 F.3d at 1005. Indeed, the Court can first determine—on common evidence—whether the Viant-derived rate was appropriate in one stroke because that threshold merits question does not depend on the standard of review. Under either standard, the first question is about the validity of Viant—which does not turn on any individualized decision-making or discretion. At most, the standard of review issue affects the level of deference—it does not change the underlying question.

17

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

The answer to the common Viant question not only drives the litigation but may be dispositive: (1) if the Court finds that Viant did calculate an appropriate UCR amount, the claims fail regardless of the standard; (2) if the Court finds that Viant did *not* calculate an appropriate UCR amount, and is sufficiently untethered as to be an abuse of discretion, then the claims succeed regardless of the standard. The standard of review matters in only one iteration—where the Court concludes that Viant's pricing was flawed but not so much as to constitute an abuse of discretion. In that situation, however, the analysis of common conduct under two possible standards does not render the common question any less predominant. The question of whether "Viant as a methodology is . . . connected to" an appropriate UCR methodology is one "apt to drive the resolution of the litigation," whereas the standard of review question is of "considerably less significance to the claims of the class." *See Ruiz Torres*, 835 F.3d at 1134. Put another way, there is no risk that the standard of review question will cause the class to "degenerate[e] into a series of individual trials." *See Moore*, 309 F.R.D. at 544.

Courts do certify ERISA classes despite variations in the existence or scope of discretionary clauses, particularly where, like here, the claims arise from a common course of conduct or systemic practice that can be evaluated on a classwide basis. *See*, *e.g.*, *Hill v. UnitedHealthcare Ins.*, 15-cv-0526, 2016 U.S. Dist. LEXIS 201246, at *13 (C.D. Cal. Oct. 26, 2016); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 502 (N.D. Cal. 2017); *Nixon v. Anthem, Inc.*, 15-cv-0526, 2021 U.S. Dist. LEXIS 168382, at *19–21 (E.D. Ky. Sept. 1, 2021).[10] In *Hill*, for example, the Court found that the fact that some ERISA plans may be subject to different standards of review does not defeat class certification "as long as the claims share a

---

[10] Although these cases addressed commonality, the analyses for commonality and predominance are similar in substance and vary merely in degree. *See*, *e.g.*, Cert. Or. at 7 (noting "commonality and predominance inquiries are similar" and vary only in degree of rigor (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). In addition, ERISA class actions, including *Hill* and *Des Roches*, are typically certified under Rule 23(b)(1) or (b)(2), and so predominance is not reached. This is partly because the most common remedy sought in ERISA class actions is reprocessing—an injunctive remedy not requiring certification under Rule 23(b)(3). *See, e.g.*, *Lacko v. United of Omaha Life Ins.*, 926 F.3d 432, 447 (7th Cir. 2019) (describing reprocessing as the "most common remedy when an ERISA plan administrator's benefits decision is deemed arbitrary"). Plaintiffs here also seek reprocessing as discussed below, which would eliminate any need to address predominance. *See*, *infra*, section III.C.

18

common factual core." 2016 U.S. Dist. LEXIS 201246, at *13; *see also Des Roches*, 320 F.R.D. at 502 (commonality not defeated by "need to apply at most two different standards to the plans at issue"). Thus, there is no categorical rule barring certification or predominance due to potential variation in standards of review. To the contrary, predominance is a "holistic" inquiry, balancing common questions against individual ones. *See Moore*, 309 F.R.D. at 544. This approach serves the purpose of Rule 23 and furthers ERISA's remedial framework: If class treatment were foreclosed by the mere presence of minor variations in plan language, ERISA beneficiaries would be left without an effective remedy—an outcome fundamentally at odds with Rule 23 and ERISA's remedial purpose. *Price v. Stevedoring Servs. of Am.*, 697 F.3d 820, 836 (9th Cir. 2012) (noting remedial purpose of ERISA).

### 2. *A binary sorting for standard of review does not defeat predominance.*

To the extent that some sorting of class members based on standard of review may be necessary, the task is straightforward and easily managed. It requires examining a narrow slice of plan documents (the administrative service agreements or "ASAs" to the plans) to determine whether there is a discretionary clause. *See* Defs' Opp. at 17 (categorizing sample plans); ███. That is a basic exercise of legal interpretation—not a fact-intensive inquiry—and one that can be performed without individualized litigation or evidentiary hearings. *See Young v. Nationwide Mut. Ins.*, 693 F.3d 532, 540 (6th Cir. 2012) ("The need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained."); *see also Moore*, 309 F.R.D. at 544.

Nor is the inquiry unique to each class member. Many class members share identical or materially similar plan language, meaning that any sorting can be done by category, not by individual. That sort of categorical analysis promotes judicial economy—the central aim of the predominance inquiry—and weighs in favor of class certification. *See Valentino*, 97 F.3d at 1234. United does not use bespoke language in each of its plans—to do so would be both impractical and unnecessary. *See* Mot. at 4–5 (explaining United's use of standard programs in

19

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

administration of health plans); ███████████████ ████████████████████████████ ████████████████████████. It does not use hundreds of unique discretionary clauses across its many health plans—it relies on template language that is used across large swaths of plans. Any necessary review of plan language, therefore, is likely to involve a small number of common formulations—reinforcing that these issues can be resolved efficiently on a classwide basis.

In fact, the simplicity of this sorting exercise has already been demonstrated. █████ ████████████████████ ██████████████████████████ ██████████████████████████ ████████████. If the Court were to conclude that such categorization is necessary, the parties can sort the plans into two buckets—de novo and abuse of discretion—without the Court's involvement.

In any case, if the standard of review issue is as important as Defendants opine, the Court may divide the class into a de novo subclass and an abuse of discretion subclass under Rule 23(c)(5). However, when framed as a matter of subclasses, the standard of review issue reveals itself as a matter of ascertainability—not predominance—to the extent the question is whether a plan (and thus putative class member) falls into one subclass or another. But as the Ninth Circuit has made clear, difficulties "ascertaining" whether an individual falls within a class is not a basis for denying class certification. *See Nevarez v. Forty Niners Football Co.*, 326 F.R.D. 562, 576 (N.D. Cal. 2018); *see also Briseno*, 844 F.3d at 1125, 1133. The mere fact that determining class membership may involve some minimal effort to determine which plans include discretionary clauses is neither a barrier to certification nor a meaningful distraction from the common issues. A class is not improper simply because some effort is required to identify its members.[11]

[11] For example, a class of "all employees at a particular company" requires a review of records to determine who was an employee and therefore who falls into the class. *See*, *e.g.*, *Palmisano v. CrowderGulf, LLC*, 17-cv-9371, 2023 U.S. Dist. LEXIS 106052, at *6 (D.N.J. June 20, 2023); *Nance v. May Trucking Co.*, 11-cv-0537, 2012 U.S. Dist. LEXIS 63861, at *10–11 (S.D. Cal.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

### 3. *Regardless of discretionary clauses, only the de novo standard applies because the wrong entity exercised discretion.*

There is no standard of review issue—and thus no predominance issue—if the discretion granted by any plans was exercised by the wrong entity.[12] "When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision[,] deferential review is not warranted." *See Jebian*, 349 F.3d at 1105. Put another way, if the wrong entity exercises discretion, there is only *one* standard of review—de novo—and there is no individualized question defeating predominance.

That is precisely what Plaintiffs have asserted here and supported with record evidence. United did not exercise discretionary authority pursuant to plan language. Instead, United delegated all of its pricing decisions to MultiPlan—a third party not identified in any plan documents and not granted fiduciary discretion. United then adopted MultiPlan's pricing determinations without deviation or any independent review. *See* ECF 108 at 7–13 (detailing evidence that MultiPlan exercised unauthorized discretion); ███████████. Accordingly, whatever discretion was theoretically conferred in the plan text, it was not exercised by a properly authorized fiduciary. Instead, the key discretionary act—the pricing of H0015 claims—was performed by MultiPlan.

This is apparent from several sources. For example, the EOBs, PRAs, and PADs all indicate that Viant made the relevant pricing determinations and any inquiries (like appeals) should be directed to Viant—not United. *See* Exs. 21–24; *see also* Franco Decl., Ex. 16, ¶ 17 (United represented to provider that "claim was priced correctly by Viant, and that the decision was final, and no additional payment would be issued"); ECF 116 at 8. These facts support the inference that MultiPlan, not United, exercised discretion—and that United abducated any

_____

May 7, 2012). Similarly, a class of "all customers who purchased a particular product" requires a review of purchase records or receipts. *See, e.g.*, *Lewert v. Boiron, Inc.*, 11-cv-10803, 2014 U.S. LEXIS Dist. 199486, at *15 (C.D. Cal. Nov. 5, 2014).

[12] This issue was briefed in the parties' prior cross-motions and addressed in the Court's January 12, 2022 Order. *See* ECF 116 at 7–8. Plaintiffs incorporate their previous arguments here to avoid repetition per the Court's directive for focused briefing but respectfully request full summary judgment briefing if the issue is deemed material to certification. *See id.* at 8 (noting the delegation question is a "factual issue that cannot be resolved based on the current record").

21

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

discretionary role it may have held.

This issue has already been presented to the Court, which declined to resolve it at the pleadings stage, recognizing it is a factual question to be addressed on a fuller record. *See* ECF 116 at 7–8. The Court also acknowledged and identified a separate ambiguity as to whether the plans even identify the correct "United" entity, noting that it "declines to assume" that plan references to "UnitedHealthcare" refer to the named defendant, UnitedHealthcare Insurance Company, without more evidence. *Id.* at 7. In fact, many of the plans refer to *various* entities to whom discretion has been delegated. ███████████████████. That ambiguity also eliminates any argument that United had the authority to delegate to "any other person or third party." *Waddill v. AT&T Umbrella Benefit Plan No. 1*, 08-cv-614, 2009 U.S. Dist. LEXIS 51779, at *15 (E.D. Cal. June 18, 2009). Even if some "United" entity had the power to delegate, the law requires that any further sub-delegation be authorized by the plan itself. *See id.* (E.D. Cal. June 18, 2009) (delegation improper where named fiduciary delegated to one entity, but benefits denial was issued by a different entity without evidence of direct delegation from the fiduciary).

Accordingly, the Court should apply de novo review to all putative class members' ERISA § 502(a)(1)(B) claims. At a minimum, the Court should not deny certification at this stage on predominance grounds simply because there *might* be two standards of review. If anything, the level of deference afforded the Defendants raises a common and *predominant* question: What entity actually exercised discretion in the pricing of putative class members' claims? That question is one with a common answer—MultiPlan—that is "apt to drive the resolution of the litigation." *Ruiz Torres*, 835 F.3d at 1134.

If the discretion was exercised by MultiPlan, an entity not identified in the governing plan documents and never granted fiduciary authority, then de novo review applies across the class. That outcome is dispositive for predominance.[13]

---

[13] If nothing else, Defendants' conflicts of interest in administering claims should warrant heavy skepticism under even the abuse of discretion standard. *See* ECF 116 at 9; ECF 98 at 16–17; ECF 108 at 12–13. In short: (1) Defendants did not have any review process to protect against the bias created from its collection of savings fees based on the extent of their underpayments; (2) Defendants did not segregate employees who make coverage decisions from those who deal with

Case No. 4:20-cv-02254-YGR-JCS                    Plaintiffs' Renewed Motion to Certify

### 4.    *The standard of review question has no relevance to non-(a)(1)(B) claims.*

Plaintiffs' claims are not limited to ERISA § 502(a)(1)(B). Plaintiffs also assert claims under § 502(a)(3) and RICO—claims that do not depend on the applicable standard of review and are governed by uniform legal standards. *See* ECF 108 at 14–15. Because the standard of review question bears no relevance to these non-(a)(1)(B) claims, it would be premature to deny class certification on that basis. Predominance does not require that every element of every claim be susceptible to classwide proof. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015). Accordingly, it would be inappropriate and premature to deny class certification for *every claim* on the basis of predominance for *one claim*. At the very least, the Court should defer ruling on the standard of review until after certification and after the record is more fully developed.

### 5.    *Plaintiffs are willing to stipulate to abuse of discretion standard if needed.*

Finally, if the Court rejects the arguments above and determines that the potential for different standards of review creates an insurmountable predominance issue, Plaintiffs are willing to stipulate to the application of the abuse of discretion standard for all claims brought under ERISA § 502(a)(1)(B). This stipulation would enable the court to apply abuse of discretion review even where the default standard under *Firestone* review would be de novo. This would foreclose any argument that individualized questions about plan language or the standard of review could predominate over common issues.

### C.    Reprocessing eliminates the need to resolve predominance or the standard of review issue.

Plaintiffs have consistently sought reprocessing in this case for their ERISA denial-of-benefits claims. Although the Court denied Plaintiffs' original motion for class certification (ECF 168) in part because the Ninth Circuit's decision in *Wit 2* created uncertainty about the

---

the company's finances—indeed, the savings fee and repricing schemes were designed solely to increase the Defendants' revenues; (3) United has a history of biased claims administration relating to almost identical practices, which resulted in the Ingenix settlement; and (4) United did not provide a "full review" of the claims and did not follow "proper procedures in denying the claim[s]" because it unilaterally underpaid Plaintiffs' claims, without any meaningful review, despite clear plan language and Plaintiff appeals, using the Viant methodology. *See Harlick*, 686 F.3d at 707.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

Case No. 4:20-cv-02254-YGR-JCS                          Plaintiffs' Renewed Motion to Certify

viability of reprocessing as a remedy under ERISA, that Ninth Circuit resolved that uncertainty in *Wit 3*—clarifying that reprocessing remains an appropriate form of equitable relief in certain ERISA cases. *See Wit v. United Behavioral Health*, 79 F.4th 1068, 1084 (9th Cir. Aug. 22, 2023) ("*Wit 3*"); *id.*, 58 F.4th 1080, 1087 (9th Cir. Jan. 26, 2023) ("*Wit 2*"); *see also* ECF 301 (order denying original certification motion).[14]

While Plaintiffs de-emphasized reprocessing in their interim class briefing due to the unsettled legal landscape following this Court's decision based on *Wit 2*, they never abandoned that theory. *See*, *e.g.*, ECF 310 (motion to stay pending *Wit*), 311 (joint scheduling statement), 323–329 (administrative motion for leave to file renewed certification motion), 354 (explaining *Wit* history in this litigation); *see also* 23-80032 (9th. Cir.), ECF 1 (Plaintiffs' interlocutory appeal). To the contrary, Plaintiffs expressly reasserted reprocessing as a basis for relief in their Renewed Motion for Class Certification. *See* Mot. at 21–22 & n16 (seeking reprocessing); Reply at 17–18 (arguing for reprocessing).

Because Plaintiffs seek reprocessing as an equitable—rather than monetary remedy— class certification under Rule 23(b)(1) or 23(b)(2) is appropriate. *See C. P. v. Blue Cross Blue Shield of Ill.*, 705 F. Supp. 3d 1273, 1288 (W.D. Wash. 2023) (post-*Wit 3* decision holding that "reprocessing . . . is appropriate . . . for certification under Rule 23(b)(1) and (b)(2)"); *Hendricks v. Aetna Life Ins.*, 344 F.R.D. 237, 245, 247 (C.D. Cal. 2023). Neither provision requires a showing of predominance. Accordingly, if the Court grants certification under Rule 23(b)(1) or (b)(2), it need not resolve whether predominance is satisfied under Rule 23(b)(3) or specifically whether variation in the existence of discretionary clauses creates a predominance issue.

Plaintiffs acknowledge that the Court previously denied certification under Rule 23(b)(1) and 23(b)(2) with prejudice as to Plaintiffs' claims for "prospective injunctive relief." *See* Cert. Or. at 6 ("[P]laintiffs fail to demonstrate named plaintiffs' standing to pursue injunctive relief. The motion for certification of a *prospective* injunctive relief class under . . . 23(b)(1) and 23(b)(2) is DENIED . . . with prejudice." (emphasis added)). However, the Court also

---

[14] The parties have briefed the changing *Wit* landscape. *See*, *e.g.*, ECF 354. Plaintiffs incorporate prior arguments by reference and include only an abbreviated argument here.

24

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

contemplated further clarification of the retroactive reprocessing remedy, and Plaintiffs' counsel—out of an abundance of caution and in an effort to preserve their clients' rights—restate Plaintiffs' request for a reprocessing remedy and Rule 23(b)(1) and (b)(2) certification, which the Court's ruling on prospective injunctive relief does not appear to specifically address. *See* Cert. Or. at 2 n.3 ("[T]he Court takes no position on plaintiffs' claim for reprocessing"); 4 n.4 (noting "the Court takes no position *at this juncture* on plaintiffs' claim that they have standing to seek retrospective injunctive relief" (emphasis added)); *see also Kazda*, 2022 U.S. Dist. LEXIS 77880 at *24 (certifying class and categorizing reprocessing as "retrospective relief").

## IV.    Conclusion

For all the reasons stated above, Plaintiffs respectfully request that the Court certify the proposed class and grant any other relief that the Court deems just and proper.


Dated: July 14, 2025

Arnall Golden Gregory LLP

By:    */s/ Matthew M. Lavin*
Matthew M. Lavin

DL Law Group

By:    */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman

Attorneys for Plaintiffs and the Putative Class

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

25