Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Arnall Golden Gregory LLP
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone:    202.677.4030
Facsimile:    202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
DL Law Group
345 Franklin St.
San Francisco, CA 94102
Telephone:    415.678.5050
Facsimile:    415.358.8484

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

LD, et al.,

              Plaintiffs,

    v.

United Behavioral Health, Inc., et al.,

              Defendants.

Case No. 4:20-cv-02254-YGR-JCS

Hon. Yvonne Gonzalez Rogers

**Plaintiffs' Reply Brief in Support of Renewed Motion for Class Certification (ECF 489–90)**

Date: September 9, 2025

Time: 2pm

Location: Oakland Courthouse Courtroom 1 – 4th Floor 1301 Clay Street, Oakland, California 94612

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave, NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1

## **Table of Contents**

I.   Balance billing evidence supports certification. ...................................................................1

   A.  Plaintiffs' balance billing evidence satisfies Rule 23. ...........................................1
   B.  The record demonstrates widespread balance billing. .......................................2
   C.  Plaintiffs have a workable classwide method to identify receipt and payment. .................4
   D.  Potential subclasses also satisfy numerosity. .....................................................10

II.  Standard of Review .........................................................................................................11

   A.  Plaintiffs did not conflate predominance with commonality. .............................11
   B.  Defendants overstate the complexity of sorting plans by standard of review. .............11
   C.  MultiPlan's improper discretion does not require plan-specific analysis. ........................11
   D.  The standard of review issue does not impact all causes of action. ...............................12
   E.  Plaintiffs can agree to apply abuse of discretion. .............................................13

III. Reprocessing avoids predominance. ..............................................................................14

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

<u>**Exhibit List**</u>

**Original Class Motion Exhibits (ECF 396/397-1)**

| No. | Description | |
|-----|-------------|---|
| 1 | RPC Expert Report | ECF 397-2 |
| 2 | Hall Expert Report | ECF 397-3 |
| 3 | Obstfeld Expert Report | ECF 397-4 |
| 4 | AAPC Expert Report | ECF 397-5 |
| 5 | Praxmarer Deposition | ECF 397-6 |
| 6 | Kienzle Deposition | ECF 397-7 |
| 7 | Crandell Deposition | ECF 397-8 |
| 8 | Borsten Deposition | ECF 397-9 |
| 9 | Bradley Deposition | ECF 397-10 |
| 10 | Lopez Deposition | ECF 397-11 |
| 11 | Franco Deposition | ECF 397-12 |
| 12 | Strait Deposition (UBH 30(b)(6)) | ECF 397-13 |
| 13 | BW Deposition | ECF 396-15 |
| 14 | Paradise Deposition (United 30(b)(6)) | ECF 397-14 |
| 15 | Crandell Declaration | ECF 397-15 |
| 16 | Franco Declaration | ECF 396-18 |
| 17 | SPD Composite | ECF 397-16 |
| 18 | VOB Composite | ECF 397-17 |
| 19 | IBAAG Composite | ECF 397-18 |
| 20 | VOB Recording Composite | ECF 397-19 |
| 21 | EOB Composite | ECF 397-20 |
| 22 | PRA Composite | ECF 397-21 |
| 23 | PAD Composite | ECF 397-22 |
| 24 | EOM Composite | ECF 397-23 |
| 25 | Composite ASAs | ECF 397-24 |
| 26 | Viant Savings Composite | ECF 397-25 |
| 27 | Non-IOP EOB/PRA Composite | ECF 397-26 |
| 28 | MultiPlan 2021 DOL Emails (MPI0016819) | ECF 397-27 |
| 29 | Viant OPR Pricing Logic (MPI0014879) | ECF 397-28 |
| 30 | MultiPlan 2018 H0015 Emails (MPI0016580) | ECF 397-29 |
| 31 | MultiPlan 2021 DOL Grim Memo (MPI0014844) | ECF 397-30 |
| 32 | MultiPlan R&C Reduction Emails (MPI0015753) | ECF 397-31 |
| 33 | MultiPlan 2011 Proposed DOL Responses (MPI0015933) | ECF 397-32 |
| 34 | Beckstead Declaration Draft (MPI0016593) | ECF 397-33 |
| 35 | MultiPlan Talking Points (MPI0016794) | ECF 397-34 |
| 36 | Lopez Email 3/31/20 (UHC000015587) | ECF 397-35 |
| 37 | Viant Standard Missing Value Approach (MPI0008890) | ECF 397-36 |
| 38 | OON Program Overview (UHC000038587) | ECF 397-37 |
| 39 | Summit Appeal Letter (UBH000003011) | ECF 397-38 |
| 40 | Summit Financial Consent (PLD0003006) | ECF 397-39 |
| 41 | United's OON Procedures (UHC000197899) | ECF 397-40 |
| 42 | United Remark Code Policies (UHC000071826) | ECF 397-41 |

i

| 43 | Viant 2016 White Paper (MPI0008643) | ECF 397-42 |
| 44 | Viant 2016 Methodology (MPI0000488) | ECF 397-43 |
| 45 | Viant 2009 Methodology (MPI0007803) | ECF 397-44 |
| 46 | Beckstead 2018 Mapping Email (MPI0012799) | ECF 397-45 |
| 47 | Crandell Schill Emails (MPI0002008) | ECF 397-46 |
| 48 | Beckstead Crandell Email (MPI0014299) | ECF 397-47 |
| 49 | United Fee Percentage Data (UHC000296122) | ECF 397-48 |
| 50 | Shared Savings Fee Revenue (MPI0009603) | ECF 397-49 |
| 51 | Optum Behav. Health Reimbursement Policy | ECF 396-52 |
| 52 | 2020 Olson Email (UHC000091861) | ECF 397-50 |
| 53 | 2019 Edwards Email (MPI-0009434) | ECF 397-51 |
| 54 | 2018 Lopez Emails (UHC000131783) | ECF 397-52 |
| 55 | 2018 IBAAG Emails (UHC000030972) | ECF 397-53 |
| 56 | 2020 Tunnel Emails (UHC000091543) | ECF 397-54 |
| 57 | Schmor Expert Report | ECF 397-55 |
| 58 | Schmor Expert Report Addendum | ECF 397-56 |
| 59 | Schmor Expert Report Fair Health Research | ECF 397-57 |
| 60 | Schmor Deposition | ECF 397-58 |
| 61 | Kessler Deposition (April 17, 2024) | ECF 397-59 |
| 62 | Siskin Expert Report (April 9, 2024) | ECF 397-60 |
| 63 | Siskin Deposition | ECF 397-61 |
| 64 | About Arnall Golden Gregory | ECF 396-65 |

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Reply Brief Exhibits (ECF 426/426)**

| No. | Description | |
|---|---|---|
| 65 | RPC Rebuttal Report | ECF 427-3 |
| 66 | AAPC Rebuttal Report | ECF 427-4 |
| 67 | Competitive Fee and UCR Plan Chart | ECF 426-4 |
| 68 | NYT Report | ECF 426-5 |
| 69 | Kessler Deposition 2 (April 9, 2024) | ECF 427-5 |
| 70 | Schmor Deposition 2 (April 17, 2024) | ECF 427-6 |
| 71 | American Hospital Association Letter (Apr. 9, 2024) | ECF 426-8 |

**Renewed Motion for Class Certification Pursuant to ECF 469 Exhibits**

| No. | Description | |
|---|---|---|
| 72 | Putative Class Member Balance Bill Spreadsheet | ECF 490-4 |
| 73 | Compendium Exhibits of Exemplar Balance Bills | ECF 490-5 |
| 74 | Compendium Exhibit of Complete Balance Bill Discovery from First Discovery Period | ECF 490-6 |
| 75 | Compendium Exhibit of Complete Balance Bill Discovery from Second Discovery Period | ECF 490-7 |
| 76 | Compendium Exhibit of Named Plaintiffs' Balance Bill Payments | ECF 490-8 |

**Reply Brief in Support of Renewed Motion for Class Certification Pursuant to ECF 469 Exhibits**

| No. | Description | |
|---|---|---|
| 77 | Supplement To RPC's May 2, 2024, "Analysis Of Underpayment Of HCPCS Code H0015 By United Healthcare: Rebuttal of Defendants' Expert Reports" | |
| 78 | Plaintiffs' Counsel August 11, 2025 Email re: Kessler IV | |

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Title Ins. v. Lacelaw Corp.*,
 861 F.2d 224 (9th Cir. 1988) ...................................................................................14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013).............................................................................................4, 9

*Anderson Living Tr. v. ConocoPhillips Co.*,
 349 F.R.D. 365 (D.N.M. 2025).................................................................................14

*In re Apple Inc. Device Performance Litig.*,
 50 F.4th 769 (9th Cir. 2022) .................................................................................5, 6

*Belgau v. Inslee*,
 975 F.3d 940 (9th Cir. 2020) ...................................................................................10

*Berry v. Baca*,
 226 F.R.D. 398 (C.D. Cal. 2005)................................................................................4

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
 524 F. Supp. 2d 1166 (N.D. Cal. 2007) .....................................................................4

*Bond v. Liberty Ins. Corp.*,
 2017 U.S. Dist. Lexis 65701 (W.D. Mo. May 1, 2017)..............................................14

*Brainbuilders, LLC v. Aetna Life Ins.*,
 2024 U.S. Dist. Lexis 17362 (D.N.J. Jan. 31, 2024)....................................................7

*C.P. v. Blue Cross Blue Shield of Ill.*,
 705 F. Supp. 3d 1273 (W.D. Wash. 2023)...........................................................14, 15

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*,
 797 F.3d 426 (7th Cir. 2015) ...................................................................................14

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013)....................................................................................................6

*Cumalander v. BlueCross BlueShield of Tenn., Inc.*,
 2024 U.S. Dist. Lexis 227017 (E.D. Tenn. Dec. 16, 2024) .................................14, 15

*Dan C. v. Anthem Blue Cross Life & Health Ins.*,
 2023 U.S. Dist. Lexis 194590 (C.D. Cal. Oct. 27, 2023) ..........................................13

*DeFazio v. Hollister, Inc.*,
 854 F. Supp. 2d 770 (E.D. Cal. 2012)........................................................................8

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave, NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

iv

*Des Roches v. Cal. Physicians' Serv.*,
   320 F.R.D. 486 (N.D. Cal. 2017).................................................................................7, 14

*Elizarri v. Sheriff of Cook Cty.*,
   2022 U.S. Dist. Lexis 44470 (N.D. Ill. Mar. 14, 2022) ...............................................3

*Elkies v. Johnson & Johnson Servs.*,
   2018 U.S. Dist. Lexis 241197 (C.D. Cal. Oct. 18, 2018) .............................................6

*Esparza v. Smartpay Leasing, Inc.*,
   2019 U.S. Dist. Lexis 94545 (N.D. Cal. June 6, 2019)................................................4

*Franco v. Conn. Gen. Life Ins.*,
   2008 U.S. Dist. Lexis 110566 (D.N.J. Aug. 6, 2008)................................................7, 9

*Fraser v. Team Health Holdings, Inc.*,
   2022 U.S. Dist. Lexis 60544 (N.D. Cal. Mar. 31, 2022) ..........................................7, 8

*G.O. v. UHIC*,
   2025 U.S. Dist. Lexis 121692 (N.D. Cal. June 23, 2025).............................................12

*Goidel v. Aetna Life Ins.*,
   2024 U.S. Dist. Lexis 184767 (S.D.N.Y. Oct. 8, 2024)..............................................2, 5

*Grosso v. AT&T Pension Ben. Plan*,
   2024 U.S. App. Lexis 11734 (2d Cir. May 15, 2024)..................................................15

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .......................................................................................10

*Hendricks v. Aetna Life Ins.*,
   344 F.R.D. 237 (C.D. Cal. 2023) .................................................................................14

*Javery v. Lucent Techs., Inc. Long Term Disability Plan*,
   741 F.3d 686 (6th Cir. 2014) .......................................................................................15

*Jones v. United Behavioral Health*,
   2021 U.S. Dist. Lexis 70897 (N.D. Cal. Mar. 11, 2021) .......................................11, 15

*K.G. v. Univ. of S.F. Welfare Ben. Plan*,
   2024 U.S. Dist. Lexis 66760 (N.D. Cal. Apr. 11, 2024)..............................................12

*Kartman v. State Farm Mut. Auto. Ins.*,
   634 F.3d 883 (7th Cir. 2011) .......................................................................................14

*Kearney v. Standard Ins.*,
   175 F.3d 1084 (9th Cir. 1999) .....................................................................................11

*Leff v. Belfor USA Grp., Inc.*,
   2015 U.S. Dist. Lexis 71003 (D.N.J. June 1, 2015)....................................................13

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

v

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

*Lui Ciro, Inc. v. Ciro, Inc.*,
   895 F. Supp. 1365 (D. Haw. 1995) ........................................................................8

*McCluskey v. Trs. of Red DOT Corp. ESOP & Tr.*,
   268 F.R.D. 670 (W.D. Wash. 2010) ....................................................................11

*Meidl v. Aetna, Inc.*,
   2017 U.S. Dist. Lexis 70223 (D. Conn. May 4, 2017) .........................................14

*Midland Funding, LLC v. Johnson*,
   581 U.S. 224 (2017) ...............................................................................................9

*Mullins v. Premier Nutrition Corp.*,
   2019 U.S. Dist. Lexis 229365 (N.D. Cal. Dec. 17, 2019) .....................................9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ...............................................................................2, 4

*Owino v. Corecivic, Inc.*,
   60 F.4th 437 (9th Cir. 2022) ................................................................................10

*PacMar Techs. LLC v. Kao*,
   2023 U.S. Dist. Lexis 231131 (D. Haw. Dec. 29, 2023) .......................................8

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) .....................................................................3, 10

*Rivers v. Southway Carriers, Inc.*,
   2024 U.S. Dist. Lexis 24875 (N.D. Ill. Feb. 13, 2024) ........................................14

*RJ v. Cigna*,
   2024 U.S. Dist. Lexis 46485 (N.D. Cal. Feb. 12, 2024) ......................................13

*Ross-Randolph v. Allstate Ins.*,
   2001 U.S. Dist. Lexis 25645 (D. Md. May 11, 2001) ...................................2, 7, 9

*Saffle v. Sierra Pac. Power Co.*,
   85 F.3d 455 (9th Cir. 1996) .................................................................................15

*Sarah Patellos & Eric Fishon v. Hello Prods., LLC*,
   2022 U.S. Dist. Lexis 108941 (S.D.N.Y. June 15, 2022) ......................................5

*Sidlo v. Kaiser Permanente Ins.*,
   221 F. Supp. 3d 1183 (D. Haw. 2016) ..................................................................7

*Standard Fire Ins. v. Knowles*,
   568 U.S. 588 (2013).........................................................................................13, 14

*Stephen B. v. Aetna Life Ins.*,
   2016 U.S. Dist. Lexis 206261 (C.D. Cal. June 10, 2016) ....................................12

vi

*Steven M. v. UBH*,
  2021 U.S. Dist. Lexis 65095 (N.D. Cal. Apr. 2, 2021) .......................................................11, 12

*Stimpson v. Midland Credit Mgmt., Inc.*,
  944 F.3d 1199 (9th Cir. 2019) ..............................................................................................9

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
  2025 U.S. Dist. Lexis 160077 (N.D. Cal. Aug. 18, 2025) ...............................................9, 10

*Thornley v. Clearview AI, Inc.*,
  984 F.3d 1241 (7th Cir. 2021) ..............................................................................................14

*United States v. Bentson*,
  947 F.2d 1353 (9th Cir. 1991) ..............................................................................................14

*In re Wellpoint, Inc.*,
  2016 U.S. Dist. Lexis 194584 (C.D. Cal. July 19, 2016) ...............................................7, 9

*West v. Cal. Servs. Bureau*,
  323 F.R.D. 295 (N.D. Cal. 2017) ....................................................................................3, 10

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ................................................................................................5

*Williams v. Int'l Paper Co.*,
  227 F.3d 706 (6th Cir. 2000) ................................................................................................15

*Wit v. United Behavioral Health*,
  79 F.4th 1068 (9th Cir. 2023) ................................................................................................5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 ........................................................................................................................5

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

vii

Defendants' opposition seeks to minimize the number of injured class members by asserting evidentiary quibbles that neither negate Plaintiffs' showing nor meaningfully undercut class certification. They cannot dispute that the sample evidence includes examples of hundreds of putative class members who received balance bills and dozens who paid them. Their brief focuses almost entirely on purported deficiencies in Plaintiffs' evidence of balance bill *payment*, but the Court required evidence of only *receipt*. Defendants' criticisms of how those payments are traced to disputed claims are not barriers to certification, but routine damages questions. Their new limitations defense is likewise flawed: Even time-barred debts constitute injury, and affirmative defenses do not bar certification.

On predominance, Defendants' core contention is that sorting plans is so complex that individual issues will overwhelm common ones. Defendants' claimed complexity only underscores the absence of any unambiguous delegation sufficient to trigger abuse-of-discretion review. If the delegation issue is genuinely open to interpretation, then by definition it is not 'unambiguous,' and de novo review applies across the class in one stroke. Otherwise, to the extent any sorting is required, it is a categorical exercise that is easily accomplished without overwhelming the common question regarding United's uniform use of Viant.

On reprocessing, Defendants persist in misreading *Wit 3* and later cases. Reprocessing is available under ERISA and certified under Rule 23(b)(1) or (b)(2)—avoiding the predominance inquiry altogether.

## I.    Balance billing evidence supports certification.

### A.  Plaintiffs' balance billing evidence satisfies Rule 23.

Defendants characterize the Certification Order as identifying two separate balance-billing issues—one about numerosity and another about "classwide injury." *See* ECF 496 ("Opp.") at 7. The cited passages, however, focus on a single evidentiary gap: the absence of proof that enough putative members received balance bills. *See* Cert. Or. at 15–18. In short, the "classwide injury" discussion is tethered to the same problem—insufficient evidence of receipt of balance bills. That gap is now closed. The record shows that hundreds of putative class members received balance bills, and 37 paid them. *See* ECF 490-2 ("Mot.") at 10–11 & Ex. 72.

1

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave, NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1    Defendants do not meaningfully contest the showing on receipt, and their quarrels with portions

2    of some payments do not meaningfully undercut numerosity.

3              In any case, there is a workable, classwide method to identify injured class members. The

4    parties do not dispute the group of at least 11,280 potential class members (based on data

5    produced to date). *See* Opp. at 1. All that remains is confirming whether a member received a

6    balance bill—a task that can be accomplished (and for hundreds of class members, *has* been

7    accomplished) by consulting the provider's billing records or member attestations.[1] This is a

8    mechanical process akin to identifying injured claimants in other class actions. *See, e.g., Goidel*

9    *v. Aetna Life Ins.*, 2024 U.S. Dist. Lexis 184767, at *13–14 (S.D.N.Y. Oct. 8, 2024).

10             Defendants also argue that the classwide injury issue defeats predominance. Opp. at 8.

11   But *Olean* instructs that when injury varies, the court asks whether individualized inquiries into

12   injury would predominate. It does not require that *no* individualized issues exist or that every

13   member's injury must be proven at the certification stage. *Olean Wholesale Grocery Coop., Inc.*

14   *v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 & n.12 (9th Cir. 2022). Here, liability turns on a

15   common and predominant issue: Defendants' uniform and improper pricing of H0015 claims

16   with Viant. That process—by design—results in underpayment. And that underpayment is the

17   basis on which members are balance billed. Accordingly, the predominant and classwide issue

18   leads to the Article III injury the Court has recognized—the receipt of balance bills.[2]

19       **B.  The record demonstrates widespread balance billing.**

20             Defendants' assertion that only "a de minimis number" of members were balance billed

21   cannot be squared with the record. *See* Opp. at 8. Their principal point—that in a random sample

22   of 30 members, 17% received balance bills—*supports* certification. Applied to the 11,280

---

[1] Because the Court's Order emphasized receipt of a balance bill, Plaintiffs proceed on that basis.
Plaintiffs note, however, that patients incur outstanding obligations regardless of whether a
provider formally mails the bill or actively seeks collection. *See Ross-Randolph v. Allstate Ins.*,
2001 U.S. Dist. Lexis 25645, *11 (D. Md. May 11, 2001).

[2] Defendants' opposition cites *Castillo* for the proposition that "balance billing requires 'highly
individualized inquiries.'" *See* 980 F.3d at 730–31. *Castillo* is a wage-and-hour case where
predominance failed because many putative class members were never exposed to the challenged
formulas and others were not underpaid at all. *Id.* at 731–33. It is easily distinguished.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

2

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1    putative class members, that rate implies over 1,900 members received balance bills, easily

2    satisfying numerosity and addressing the Court's concern about identifying sufficient class

3    members. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (class of 40

4    presumptively satisfies numerosity); Cert. Or. at 18. This is not a "hazy attempt to extrapolate."

5    *See* Opp. at 9. It is the commonsense and "reasonable inference[]" to draw from Defendants'

6    own data. *See West v. Cal. Servs. Bureau*, 323 F.R.D. 295, 305 (N.D. Cal. 2017).

7        But Defendants' 17% figure is also misleading. By Defendants' own numbers, only 3 of

8    their 30-member sample (10%) are tied to providers who said they did not send balance bills.

9    Mathematically, that means that 90% of the providers *may* or *may have* balance billed, including

10   the 17% Defendants acknowledge do balance bill (10,152 of the 11,280 potential class

11   members). *See* Cert. Or. at 16 (engaging in similar inference). In fact, among the subset of

12   members for whom a determination can actually be made, the majority were balance billed—5

13   members are tied to billing providers, 3 are tied to non-billing providers. Thus, at minimum, the

14   17% is a lower bound, not a ceiling.

15       Defendants' sample is also not the full story. Plaintiffs also produced their own additional

16   evidence of hundreds of balance-billed members based on a sample of only four providers out of

17   the at least 1,548 providers who treated putative class members. *See* Mot. at 9–11 & Exs. 72–76;

18   Ex. 65, RPC Rebuttal Report, ¶¶ 29, 89. Defendants implausibly characterize the more than 200

19   balance-billed members as "de minimis," Opp. at 9, but that characterization cannot be squared

20   with the many decisions finding numerosity on far smaller showings. *See* Mot. at 4 & n.4

21   (collecting authority).

22       Defendants also criticize Plaintiffs' four-provider sample—no less than nine times—as

23   "hand-picked." *See*, *e.g.*, Opp. at 1. This critique misses the point legally and factually.

24   Numerosity does not require statistical representativeness. It requires an evidentiary showing

25   sufficient to support a reasonable inference that joinder is impracticable; the method of collection

26   is immaterial. *See Elizarri v. Sheriff of Cook Cty.*, 2022 U.S. Dist. Lexis 44470, at *31 (N.D. Ill.

27   Mar. 14, 2022) (noting "cherry picking would not matter if [plaintiffs] had identified at least 40

28   prospective class members"). In any case, Plaintiffs did not "hand-pick" anything: Plaintiffs

simply focused on the providers with the highest volume of disputed claims to meet their burden at this preliminary certification stage. *See, e.g., Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Plaintiffs were not required to canvas all 1,500+ providers or engage in statistical analysis to ensure some representative sample. And to the extent statistical sampling were required, Defendants sample supports the inference that *at least* 1,900 members were balance billed.[3] *See* Opp. at 8; *see also Esparza v. Smartpay Leasing, Inc.*, 2019 U.S. Dist. Lexis 94545, at *14–15 (N.D. Cal. June 6, 2019) (speculation of "reduc[tions]" in number of class members "cannot defeat class certification").[4]

### C.  Plaintiffs have a workable classwide method to identify receipt and payment.

Defendants attempt to manufacture an additional Rule 23 requirement by asserting that, "apart from the de minimis balance-billing samples" Plaintiffs produced, there is no classwide methodology to establish injury "in one stroke." *See* Opp. at 9. That argument misapprehends both the record and Rule 23. The "one stroke" common injury here is Defendants' uniform use of Viant to reprice H0015 claims, which necessarily produced underpayments and exposed members to balance billing. *See* Cert. Or. at 12; *id. at* 13 (noting "ascertaining whether Viant is per se arbitrary and capricious can be done 'in one stroke'"). Rule 23 does not require that proof of each individual's damages also be classwide. *Olean*, 31 F.4th at 669 ("The presence of individualized damages issues does not preclude a court from certifying a class because class-wide proof is not required for all issues."). Plaintiffs have shown that members who were balance billed can be identified using ordinary means. Although both Plaintiffs and Defendants

[3] Defendants err in relying on the two cases they cite for the proposition that a putative class member sample must be statistically representative. The first case involved a *Daubert* ruling in a pharmaceutical MDL. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007). It says nothing about Rule 23 or numerosity. *See id.* 1180–84. The second did not impose any requirement of statistically representative sampling. *See Berry v. Baca*, 226 F.R.D. 398, 403–04 (C.D. Cal. 2005). Instead, the court denied certification without prejudice and indicated plaintiffs could later satisfy numerosity with class member declarations. *See id.* at 402–06.

[4] Defendants' continued reliance on MultiPlan's "bill negotiation services" is a distraction. *See* Opp. at 8–9; Mot. at 14–17 (explaining irrelevance of bill negotiation services). Whether or not members contacted MultiPlan after receiving bills is immaterial to the question presented here— receipt of balance bills. *See* Cert. Or. at 15–18.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4000
WWW.AGG.COM

4

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1    focused their efforts on obtaining balance billing evidence from providers, the parties could also

2    obtain that evidence from members themselves—as in many other class actions. *See In re Apple*

3    *Inc. Device Performance Litig.*, 50 F.4th 769, 781 (9th Cir. 2022) (settlement in which putative

4    class members required to attest to experiencing defect); *Goidel*, 2024 U.S. Dist. Lexis 184767 at

5    *13–14; *Sarah Patellos & Eric Fishon v. Hello Prods., LLC*, 2022 U.S. Dist. Lexis 108941, at *4

6    (S.D.N.Y. June 15, 2022). This case is no different than in mass tort product liability cases,

7    where a defective product injures all members in the same way, but individualized inquiries into

8    the manifestation or extent of harm do not defeat certification. *See, e.g.*, *Wolin v. Jaguar Land*

9    *Rover N. Am., LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010 (finding "district court erred when it

10   required [named plaintiffs] to show that a majority of proposed class members' vehicles

11   manifested the results of the defect"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab.*

12   *Litig.,* 722 F.3d 838, 857 (6th Cir. 2013).

13        **Plaintiffs offer method of classwide proof:** Defendants' assertion that Plaintiffs offer no

14   classwide method of proof relies again on their theory that Plaintiffs' "hand-picked" providers

15   from which to draw the Court's requested evidence of balance billing, addressed above. *See* Opp.

16   at 10. There is nothing problematic about relying on provider billing records or declarations to

17   show balance billing—which Defendants themselves did in their 30-member sample.

18        Defendants also seek to discredit Plaintiffs' experts' report because it applied its damages

19   methodology to all putative class members as opposed to only those who were balance billed.

20   *See* Opp. at 10; *see* Ex. 65, RPC Rebuttal Report. However, Plaintiffs' experts analyzed claims

21   under the theory Plaintiffs advanced at the time—that underpayment itself constituted injury.[5]

22

23   ---

     [5] Mindful of the Court's directive not to rebrief issues already addressed, Plaintiffs preserve their
24   original position that the underpayment of benefits is itself an injury establishing Article III
     standing. *See, e.g.*, ECF 396 at 17, 20; 426 at 8, 18; *see also Wit v. United Behavioral Health*, 79
25   F.4th 1068, 1083 (9th Cir. 2023) (finding "Plaintiffs alleged a concrete injury as to the denial of
     benefits claim [because] ERISA protects contractually defined benefits. Plaintiffs alleged a
26   harm—the arbitrary and capricious adjudication of benefits claims—that presents a material risk
     to their interest in fair adjudication of their entitlement to their contractual benefits. Plaintiffs
27   need not have demonstrated that they were, or will be, entitled to benefits to allege a concrete
     injury."); *see also id.* at 1082–83 ("[Plaintiffs'] alleged harm further includes the . . . present
28   harm of not knowing the scope of the coverage their Plans provide. The latter implicates

                                    5

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1   While the Court has since held that balance billing is the relevant Article III injury, the experts'

2   methodology remains viable. *See* Ex. 65 ¶¶ 97–99. That model simply applies to the subset of

3   members who received balance bills, and damages may be capped by the amount (or, if

4   necessary, payment) of a balance bill in those rare instances where the balance is less than the

5   underpayment calculated under the model. *See* Ex. 77, RPC Supplement.[6] These are

6   straightforward, mechanized calculation, and the model is tied to Plaintiffs' theories of liability

7   and the common classwide issues—all that is required at this stage. *See Elkies v. Johnson &*

8   *Johnson Servs.,* 2018 U.S. Dist. Lexis 241197, at *23 (C.D. Cal. Oct. 18, 2018); *Comcast Corp.*

9   *v. Behrend*, 569 U.S. 27, 34 (2013).

10          **Determining who received balance bills is straightforward:** Defendants' claim that

11  identifying balance-billed members requires "extensive individualized review" is overstated.

12  Opp. at 10. Both parties relied on the same method: requesting billing records from providers.

13  That process yielded concrete evidence of balance billing in Defendants' own sample as well as

14  Plaintiffs' additional productions. Nothing about it was speculative or unmanageable. And to the

15  extent providers' records leave gaps, those can be readily filled with member attestations—an

16  approach courts regularly approve as sufficient to establish class membership. *See, e.g.*, *In re*

17  *Apple Inc. Device Performance Litig.*, 50 F.4th at 781.

18          Defendants' reliance on the Fourth Report of their expert Daniel Kessler is improper. *See*

19  ECF 499. Although the Court denied Plaintiffs' motion to strike, *see* ECF 503, Plaintiffs

20  preserve their objection. *See* Ex. 78. Even setting aside its untimeliness, the Kessler report is

21  unhelpful. *See* ECF 498-46 (Kessler IV). ████████████████████████████████

22  ██████████████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████

25  _____

26  Plaintiffs' ability to make informed decisions about the need to purchase alternative coverage
    and the ability to know whether they are paying for unnecessary coverage.").

27  [6] RPC prepared its supplement report promptly after the Court denied Plaintiffs' motion to strike.
    *See* ECF 503. Due to time constraints, it did not substantively address Kessler's new report but

28  could do so ██████████████████████████████████ if helpful to the Court.



6   **Determining who paid balance bills is not required, but easily managed**: As noted,

7   Defendants attempt to impose a higher requirement than the Court set by insisting that proof of

8   payment, rather than receipt, of balance bills is necessary to establish injury. *See* Opp. at 10–11.

9   That is not the law, nor is it what the Court held. The Court stated that "receipt of a balance bill

10  is required for class members to demonstrate an Article III injury." Cert. Or. at 16; *see also* Cert.

11  Or. at 2, 18. Of course, evidence of *payment* is also "relevant" to injury, *see* Opp. at 11 (quoting

12  Cert. Or. 18 n.13), because it is also evidence of *receipt* of balance bills.

13      Economic injury occurs when a person is subjected to a financial obligation—like

14  balance billing—even if that obligation is not satisfied. *See, e.g.*, *Des Roches v. Cal. Physicians'*

15  *Serv.*, 320 F.R.D. 486, 505 (N.D. Cal. 2017) (collecting cases and noting "outstanding debt. . . is

16  a change in a legal status that is sufficient to confer standing"); *In re Wellpoint, Inc.*, 2016 U.S.

17  Dist. Lexis 194584, at *11–12 (C.D. Cal. July 19, 2016) ("The Court agrees . . . that the

18  existence (or likely future existence) of balance billing is needed to confer injury in fact.");

19  *Franco v. Conn. Gen. Life Ins.*, 2008 U.S. Dist. Lexis 110566, at *26 (D.N.J. Aug. 6, 2008)

20  (plaintiff suffered an "'injury' sufficient to confer Article III standing" when plaintiff was

21  "balanced billed by her surgeons"); *Brainbuilders, LLC v. Aetna Life Ins.*, 2024 U.S. Dist. Lexis

22  17362 at *14 (D.N.J. Jan. 31, 2024); *Ross-Randolph v. Allstate Ins.*, 2001 U.S. Dist. Lexis

23  25645, *11 (D. Md. May 11, 2001) (finding standing and noting "fact that creditors or the

24  medical providers have not yet compelled Plaintiffs to pay their outstanding bills does not

25  necessarily defeat standing."); *Sidlo v. Kaiser Permanente Ins.*, 221 F. Supp. 3d 1183, 1200 (D.

26  Haw. 2016). A balance bill imposes a present liability to pay. That's the injury.

27      Defendants' cited cases are not to the contrary. Each involved contingent or speculative

28  injuries that never materialized into an obligation. *Fraser* dismissed claims where plaintiffs

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

7

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

alleged they received bills from defendants based on inflated rates when there was evidence that the defendants had not and "d[id] not intend to pursue payment" and some obligations had been "relieved." *Fraser v. Team Health Holdings, Inc.*, 2022 U.S. Dist. Lexis 60544, *21 (N.D. Cal. Mar. 31, 2022). *PacMar* involved a company suing former executives for fraud based on expenditures the company made after receiving government loans. The court found no RICO standing—as opposed to Article III standing—because the company had *more* money because of the loans than it alleged it lost, and many of the claimed harms were untethered to the alleged fraud. *PacMar Techs. LLC v. Kao*, 2023 U.S. Dist. Lexis 231131, *19–20 (D. Haw. Dec. 29, 2023). *Ciro* arose out of a failed jewelry store franchise investment, where plaintiffs personally guaranteed loans. The court found no RICO injury—again, not addressing Article III standing— when the loans had *not* been foreclosed and no creditor had ever demanded repayment from the guarantors, leaving only a speculative "risk of future loss." *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1378–79 (D. Haw. 1995). In *DeFazio*, plaintiffs alleged that a retirement plan lost money because trustees sold company stock below fair market value. After trial, the court found no injury because the plan did not suffer a material long-term loss—the supposed undervaluation was offset over time, leaving participants no worse off. *DeFazio v. Hollister, Inc.*, 854 F. Supp. 2d 770, 816–17 (E.D. Cal. 2012). In short, these cases, to the extent they involve Article III standing at all, support only the proposition that non-existent or hypothetical injuries are insufficient. They do not address the situation here where there are actual, outstanding obligations for payment. Nor do they disturb this Court's ruling that receipt of balance bills constitutes sufficient injury for both Plaintiffs' ERISA and RICO claims. *See* Cert. Or. at 16.

Nevertheless, Plaintiffs have gone beyond what Article III requires by introducing evidence that at least 37 members made payments on balance bills. *See* Exs. 72–76. Defendants' argument that some of those payments may reflect coinsurance or deductibles does not show a lack of classwide proof. It merely raises factual disputes about how particular payments should be characterized for only a *subset* of the 37 patients Plaintiffs identified with balance billing payments. *See* Opp. at 12. Many of Defendants' criticisms are based on ignoring Plaintiffs' evidence and making merits determinations in Defendants' favor. *See* Opp. at 12 (calling for

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1    Court to "disregard" Plaintiffs' balance billing declarations); *see also* Opp. at 9, 14. For example,

2    Defendants presume—without authority—that any patient payments must be allocated first to

3    patient cost-sharing or non-disputed claims rather than to balance bills for disputed claims. *See*

4    Opp. at 11. They likewise assume that advance payments cannot qualify as balance bill

5    payments, even though nothing prevents a provider from applying an upfront payment toward

6    later-billed balances. *See* Opp. at 11–12. These are factual disputes about how to characterize

7    payments for damages purposes, not barriers to certification. *See Amgen*, 568 U.S. at 466.

8        **Defendants' statute of limitations argument is without merit:** Defendants' contention

9    that class certification fails because some balance bills may be time-barred is simply wrong.

10   Courts have recognized that even where a debt later becomes unenforceable in court, the

11   obligation remains a "right to payment," imposing a present liability and financial pressure on

12   the patient. *See Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1199, 1202–04 (9th Cir. 2019)

13   (debt remains owed even after limitations expired, and collectors may still seek voluntary

14   payment); *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 228–32 (2017). That reality

15   underscores why the harm occurs upon receipt of the bill, regardless of whether the provider

16   ultimately sues. *See Ross-Randolph*, 2001 U.S. Dist. Lexis 25645 *11; *Franco*, 2008 U.S. Dist.

17   Lexis 110566 at *26. "In most states, a statute of limitations does not extinguish a party's rights,

18   but merely precludes a judicial remedy."[7] *Stimpson*, 944 F.3d at 1199–1200.

19       In addition, the possibility that some providers' claims might be time-barred does not

20   defeat certification. Courts have routinely made clear that the statute of limitations is an

21   affirmative defense, not a certification issue. *See In re Tesla Advanced Driver Assistance Sys.*

22   *Litig.*, 2025 U.S. Dist. Lexis 160077, at *31 (N.D. Cal. Aug. 18, 2025) (noting courts are "nearly

23   unanimous" in finding "possible differences in the application of a statute of limitations" does

24   not preclude certification); *Mullins v. Premier Nutrition Corp.*, 2019 U.S. Dist. Lexis 229365, at

25   *3 (N.D. Cal. Dec. 17, 2019). The Ninth Circuit has long held that the existence of limitations

26   _____

27   [7] Defendants' reliance on *Wellpoint* is misplaced. *See* Opp. at 13. The language they cite—that the limitations periods for providers to sue had expired—was not part of the *court's* analysis, but rather a recap of *defendants'* arguments. *See* Opp. at 13; *In re Wellpoint, Inc.*, 2016 U.S. Dist.

28   Lexis 194584 at *12.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1 defenses does not preclude certification—even "in the context of the predominance inquiry."

2 *Owino v. Corecivic, Inc.*, 60 F.4th 437, 445–46 (9th Cir. 2022) (collecting cases). Nor is there

3 any indication that statute of limitations issues will "threaten to become the focus of the

4 litigation," or otherwise overwhelm the common question with individualized inquiries. *See*

5 *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). █████████████████

6 ████████████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████ This is a matter of basic

8 arithmetic, not individualized factual inquiry. *See In re Tesla*, 2025 U.S. Dist. Lexis 160077 at

9 *33. This is not a case where limitations questions turn on complex, member-specific issues like

10 when a cause of action was discovered.[8]

      **D.  Potential subclasses also satisfy numerosity.**

12      Defendants next argue that any subclass for RICO based on balance bill payments would

13 not satisfy numerosity because only 37 members are identified as having paid balance bills. Opp.

14 at 13–14. This argument fails. First, it rests on the false premise, considered above, that

15 payment—not receipt—is required for RICO injury. *See* Cert. Or. at 16. Second, numerosity

16 does not require Plaintiffs to prove with mathematical certainty that more than forty members

17 paid balance bills. Rule 23(a)(1) requires only a "reasonable inference" to infer that joinder

18 would be impracticable. *See West*, 323 F.R.D. at 305. And even Defendants acknowledge that

19 there are at least 10 putative class members based on Plaintiffs' limited sample. *See* Opp. at 15.

20 Those 10, drawn from four out of 1,548 providers, are more than enough to infer putative class

21 members exceed the presumptive 40-member threshold—especially given that courts often

22 certify even smaller classes. *See Rannis*, 380 F. App'x at 651; *see* Mot. at 4 & n.4 (collecting

23 cases). Third, Defendants improperly apply the numerosity factors. For example, Defendants'

24 claim that numerosity is undermined because "no other putative class member has brought suit"

---

[8] Policy considerations also weigh against Defendants. To the extent some bills have become
stale during this litigation, Defendants should not profit from delays of their own making. *See*
*Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (allowing exception to mooted class claims
when the "pace of litigation and inherently transitory nature of the claims at issue conspire to
make [mootness] requirement difficult to fill" (quotations omitted)).

1  gets it backwards. *See* Opp. at 15. Courts treat the absence of individual filings as evidence that

2  joinder is impracticable, not the opposite. *See McCluskey v. Trs. of Red DOT Corp. ESOP & Tr.*,

3  268 F.R.D. 670, 675 (W.D. Wash. 2010). Defendants also misinterpret the "ability to sue" factor.

4  The test is not whether some claims are "large" in the abstract, but whether their size provides

5  enough incentive for attorneys to take them on individually given the complexity and cost of

6  litigation. *See McCluskey*, 268 F.R.D. at 675. Here, the complexity and expense of litigating a

7  case like this should be apparent—particularly for substance use disorder patients, who face

8  stigma and resource constraints. *See* Mot. at 13–14.

9  **II.     Standard of Review**

10      **A.  Plaintiffs did not conflate predominance with commonality.**

11      As the Court acknowledged, the "commonality and predominance inquiries are similar"

12  and vary merely in degree of rigor. *See* Cert. Or. at 7. Thus, while Plaintiffs' cases expressly

13  addressed commonality, their reasoning applies equally to predominance: Variations in ERISA

14  standards do not defeat class certification when the central injury flows from a uniform practice.

15  *See also Jones v. United Behavioral Health*, 2021 U.S. Dist. Lexis 70897, at *17 (N.D. Cal. Mar.

16  11, 2021) (certifying Rule 23(b)(3) class despite differing plan standards of review).

17      **B.  Defendants overstate the complexity of sorting plans by standard of review.**

18      Defendants' suggestion that plan sorting requires "plan-by-plan" analysis is overstated.

19  Abuse-of-discretion review applies only where plan language *unambiguously* grants

20  discretionary authority. *See Kearney v. Standard Ins.*, 175 F.3d 1084, 1090 (9th Cir. 1999). By

21  definition, the inquiry is binary: Either a plan unmistakably confers discretion, or it does not. If

22  there is any doubt as to delegation, it is no longer "unambiguous." *See Steven M. v. UBH*, 2021

23  U.S. Dist. Lexis 65095, at *6 (N.D. Cal. Apr. 2, 2021). Nevertheless, sorting delegation language

24  does not demand individualized mini-trials. As the Court already observed, United plans use a

25  limited set of templates. *See* Cert. Or. at 19. Sorting plans into "discretionary" or "de novo"

26  categories is therefore a mechanical exercise that can be resolved once.

27      **C.  MultiPlan's improper discretion does not require plan-specific analysis.**

28      The undisputed evidence shows that MultiPlan priced the claims, issued the benefit

11

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4000
WWW.AGG.COM

determinations, and even handled appeals—while United simply rubber-stamped those results. *See* Cert. Mot. at 21. Defendants' suggestion that "many plans *arguably* allow" delegation only reveals their own doubt. *See* Opp. at 21 (emphasis added). As noted above, abuse of discretion review requires "unambiguous" delegation, not "arguable" inferences from ambiguous plan language. *See Steven M.*, 2021 U.S. Dist. Lexis 65095 at *6; *Stephen B. v. Aetna Life Ins.*, 2016 U.S. Dist. Lexis 206261, at *9 n.5 (C.D. Cal. June 10, 2016). Moreover, if Defendants' position is that the standard of review turns on reviewing undisclosed administrative services agreements ("ASAs"), *see* Opp. 18–19, that is not enough to establish a clear and unambiguous delegation.

In *Steven M*, the Court found there was no unambiguous discretion because:

> First, not one of the three documents referenced by defendant (Plan, ASA, and BHSA) includes a clear and unambiguous delegation of authority from United Healthcare Services to UBH. The ASA's allowance for one of the United Healthcare entities to utilize its affiliates to perform services on its behalf does not amount to a clear and unambiguous delegation of discretionary authority to this defendant. Second, even if there was a delegation of discretionary authority from . . . such delegation is *not clear and unambiguous where the delegation can only be discerned through careful assessment of at least two confidential documents* withheld from plan participants.

*Id.* (Emphasis added); *see also K.G. v. Univ. of S.F. Welfare Ben. Plan*, 2024 U.S. Dist. Lexis 66760, at *12–17 (N.D. Cal. Apr. 11, 2024); *G.O. v. UHIC*, 2025 U.S. Dist. Lexis 121692, at *8 (N.D. Cal. June 23, 2025).

**D.  The standard of review issue does not impact all causes of action.**

Defendants' assertion that the "standard of review" issue pervades every claim misstates both the law and Plaintiffs' pleadings. First, Defendants are wrong to say that this Court has already decided the standard applies across the board to all Plaintiffs' claims. *See* Opp. at 22 (citing ECF 116 at 2 n.4). The Court's order merely observed that if Plaintiffs' fiduciary-breach claims were "duplicative" of their denial-of-benefits claims, then the standard of review question would follow. ECF 116 at 2 n.4. The Court did not hold that all fiduciary claims, much less Plaintiffs' RICO claims, rise and fall with the ERISA benefits standard of review. *Id.*

Plaintiffs' fiduciary claims are not duplicative of their denial-of-benefits claims. The TAC pleads distinct fiduciary misconduct: that United and MultiPlan violated duties of loyalty

12

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1   and care by systematically prioritizing their own financial interests over plan members,

2   misrepresenting benefits, concealing flaws in the Viant pricing methodology, and using

3   undisclosed repricing tools. *See* TAC, ECF 91 ¶¶ 511–531. These allegations target systemic

4   breaches of fiduciary obligations—not simply whether a particular benefits denial was correct

5   under plan terms. Such claims are not duplicative. *See*, *e.g.*, *Dan C. v. Anthem Blue Cross Life &*

6   *Health Ins.*, 2023 U.S. Dist. Lexis 194590, at *20 (C.D. Cal. Oct. 27, 2023); *Kazda*, 2019 U.S.

7   Dist. Lexis 212866 at *16.

8        Nor is there any basis for Defendants' suggestion that the ERISA standard of review

9   issue applies to Plaintiffs' RICO claims. RICO has its own standing and injury requirements, and

10   it makes no sense to ask whether Defendants "abused their discretion" in committing a criminal

11   act. Unlike ERISA, RICO is not a quasi-administrative appeal but requires Plaintiffs to prove the

12   alleged acts by a preponderance of the evidence. The Court already held that Plaintiffs' RICO

13   claims rest on separate misrepresentations in verification calls, a theory that does not depend on

14   ERISA plan discretion at all. *See* Cert. Or. at 10–11, 13–14. Defendants have not cited any

15   case—class or otherwise—where a court has grafted an ERISA standard of review onto RICO.[9]

16        **E.  Plaintiffs can agree to apply abuse of discretion.**

17        Defendants' reliance on *Standard Fire Ins. v. Knowles*, 568 U.S. 588 (2013) is misplaced.

18   *Knowles* addressed the validity of a class plaintiff's pre-removal stipulation that the putative

19   class would not seek damages that exceed the amount in controversy under the Class Action

20   Fairness Act. It does not prohibit plaintiffs from narrowing claims or remedies as a matter of

21   litigation strategy to facilitate class certification. *See Leff v. Belfor USA Grp., Inc.*, 2015 U.S.

22   Dist. Lexis 71003, at *9 (D.N.J. June 1, 2015) (rejecting *Knowles* argument and noting absence

23   of "authority which would require a class action plaintiff to file a complaint which pursues all

24   remedies available under a cause of action."). Courts in the Ninth Circuit and elsewhere routinely

25

26   ⁹ Defendants cite *RJ v. Cigna*, 2024 U.S. Dist. Lexis 46485, at *1 (N.D. Cal. Feb. 12, 2024), and
     *Franco*, 289 F.R.D. 121, 144 (D.N.J. 2013), which found plaintiffs' RICO claims required plan-
27   by-plan analysis to assess the misrepresentations. Here, by contrast, United promised to pay a
     UCR amount on verification calls and failed to do so, an issue resolvable without reference to
28   individual plan terms. *See* Cert. Or. at 13–14.

13

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040
WWW.AGG.COM

1    accept such case-shaping commitments and hold plaintiffs to them. *See*, *e.g.*, *American Title Ins.*

2    *v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *United States v. Bentson*, 947 F.2d 1353,

3    1356 (9th Cir. 1991); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021). The

4    issue here is not jurisdictional, and the stipulation is not "binding" as in *Knowles* because absent

5    class members can simply opt out to the extent they seek to pursue de novo review. *See*

6    *Anderson Living Tr. v. ConocoPhillips Co.*, 349 F.R.D. 365 (D.N.M. 2025).

7    **III.    <u>Reprocessing avoids predominance.</u>**

8        Defendants argue that Plaintiffs' request for reprocessing "is properly analyzed under

9    Rule 23(b)(3)" because it is an interim step toward monetary relief. *See* Opp. at 23. But they cite

10   no case that has ever required ERISA reprocessing to proceed under Rule 23(b)(3). To the

11   contrary, post-*Wit* decisions have certified reprocessing claims under Rule 23(b)(1) and (b)(2).

12   *See C.P. v. Blue Cross Blue Shield of Ill.*, 705 F. Supp. 3d 1273, 1287–88 (W.D. Wash. 2023);

13   *Hendricks v. Aetna Life Ins.*, 344 F.R.D. 237, 245, 247 (C.D. Cal. 2023). Those courts—squarely

14   confronting *Wit III*—rejected the argument Defendants press here. The only authority

15   Defendants invoke is *Kartman v. State Farm Mut. Auto. Ins.*, 634 F.3d 883 (7th Cir. 2011), but

16   *Kartman* is inapposite. That case involved hail-damage claims where plaintiffs sought roof re-

17   inspections, which the court found would merely set the stage for thousands of individualized

18   damages actions without independently establishing liability. *Id.* at 890–91. But multiple courts,

19   including later Seventh Circuit decisions, have limited *Kartman* to its unique circumstances and

20   refused to apply it to ERISA reprocessing cases. *See Meidl v. Aetna, Inc.*, 2017 U.S. Dist. Lexis

21   70223, at *67–68 (D. Conn. May 4, 2017) (refusing to apply *Kartman* to ERISA reprocessing

22   and noting "in *Kartman*, there was no relevant duty . . . to use a particular standard for assessing

23   hail damage"); *Rivers v. Southway Carriers, Inc.*, 2024 U.S. Dist. Lexis 24875, at *23 (N.D. Ill.

24   Feb. 13, 2024) (similar); *Des Roches*, 320 F.R.D. at 509 (similar); *Chi. Teachers Union, Local*

25   *No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 443 (7th Cir. 2015); *Bond v. Liberty Ins. Corp.*, 2017

26   U.S. Dist. Lexis 65701, at *44–45 (W.D. Mo. May 1, 2017). ERISA reprocessing is

27   fundamentally different: It is the substantive equitable remedy for an unlawful denial of benefits,

28   not an evidentiary shortcut to damages. *See Cumalander v. BlueCross BlueShield of Tenn., Inc.*,

14

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1   2024 U.S. Dist. Lexis 227017, at *19 & n.7 (E.D. Tenn. Dec. 16, 2024).

2          Defendants also overstate their claim that reprocessing is not "final injunctive relief"

3   because it may be followed by further proceedings. Opp. at 24. Reprocessing *is* the final

4   equitable relief Plaintiffs seek: It compels Defendants to evaluate claims using a lawful

5   methodology consistent with plan terms. Nothing further is required from the litigation. *See*

6   *Cumalander*, 2024 U.S. Dist. Lexis 227017 at *17–18 (reprocessing is "final injunctive relief"

7   within the meaning of Rule 23(b)(2) and collecting cases); *Kazda*, 2023 U.S. Dist. Lexis 199175

8   at *34; *Jones*, 2021 U.S. Dist. Lexis 70897 at *21.

9          Defendants further claim reprocessing cannot avoid individualized inquiries into balance

10  billing, class-wide injury, or standard of review. Opp. at 25. Their argument stretches too far.

11  First, because reprocessing is appropriate under Rule 23(b)(1) and (b)(2), Plaintiffs need not

12  satisfy predominance, eliminating the need to resolve Defendants' "individualized inquiries"

13  issue. *See C. P.*, 705 F. Supp. 3d at 1288; Cert. Or. at 7. Under Rule 23(b)(1) or (b)(2), Plaintiffs

14  need only commonality, and the Court already determined that Plaintiffs met their commonality

15  burden. Cert. Or. at 12. Moreover, reprocessing moots the individualized issues Defendants

16  suppose. If Defendants reprocess claims with an appropriate methodology, that eliminates

17  underpayments, resolves balance billing, and eliminates disputes turning on standard of review.

18         Finally, Defendants argue that reprocessing is incompatible with de novo review. Opp. at

19  26. The cases they rely on, however, hold only that where a plan has discretionary authority and

20  abuses it, the remedy is remand for reprocessing so the administrator can exercise its discretion

21  lawfully. *See, e.g.*, *Saffle v. Sierra Pac. Power Co.*, 85 F.3d 455, 458–60 (9th Cir. 1996).

22  Nothing in those cases forecloses reprocessing under de novo review. To the contrary, one court

23  has specifically rejected this same argument by United. *See Jones*, 2021 U.S. Dist. Lexis 70897

24  at *17. In any case, courts have allowed reprocessing for de novo plans. *Kazda*, 2023 U.S. Dist.

25  Lexis 199175 at *34 (certifying reprocessing class including plans with de novo standard); *see*

26  *also Javery v. Lucent Techs., Inc. Long Term Disability Plan*, 741 F.3d 686, 699 (6th Cir. 2014);

27  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000) (similar); *Grosso v. AT&T*

28  *Pension Ben. Plan*, 2024 U.S. App. Lexis 11734, at *4 (2d Cir. May 15, 2024).

15

Dated: August 25, 2025

Arnall Golden Gregory LLP

By:    */s/ Matthew M. Lavin*
Matthew M. Lavin

DL Law Group

By:    */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman

Attorneys for Plaintiffs and the Putative Class