LAUREN M. BLAS, SBN 296823
lblas@gibsondunn.com
NICOLE R. MATTHEWS, SBN 328977
nmatthews@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

GEOFFREY SIGLER (*pro hac vice*)
gsigler@gibsondunn.com
DEREK K. KRAFT (*pro hac vice*)
dkraft@gibsondunn.com
MATTHEW G. AIKEN (*pro hac vice*)
maiken@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-5306
Telephone: 202.887.3752
Facsimile: 202.530.9635

*Attorneys for Defendants*
UNITED BEHAVIORAL HEALTH and UNITEDHEALTHCARE INSURANCE COMPANY

ERROL J. KING, JR. (*pro hac vice*)
errol.king@phelps.com
CRAIG L. CAESAR (*pro hac vice*)
craig.caesar@phelps.com
KATHERINE C. MANNINO (*pro hac vice*)
katie.mannino@phelps.com
TAYLOR J. CROUSILLAC (*pro hac vice*)
taylor.crousillac@phelps.com
BRITTANY H. ALEXANDER (*pro hac vice*)
brittany.alexander@phelps.com
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802-5618
Telephone: 225.376.0207

*Attorneys for Defendant* MULTIPLAN, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

LD, DB, BW, RH, and CJ, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH, a California Corporation, UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut Corporation, and MULTIPLAN, INC., a New York Corporation,

Defendants.

CASE NO. 4:20-cv-02254-YGR

**DEFENDANTS' MOTION FOR SANCTIONS FOR PLAINTIFFS' COUNSEL'S VIOLATION OF THE PROTECTIVE ORDER**

*[Proposed] Order Granting Defendants' Motion Lodged Concurrently Herewith; Declarations of Derek K. Kraft and Errol J. King Filed Concurrently Herewith*

Hon. Yvonne Gonzalez Rogers

Date: October 14, 2025
Time: 2:00 pm

Complaint Filed: April 2, 2020
Third Amended Complaint filed: Sept. 10, 2021

## TABLE OF CONTENTS

**Page**

INTRODUCTION & BACKGROUND ........ 1

STATEMENT OF ISSUE TO BE DECIDED (L.R. 7-4) ........ 2

ARGUMENT ........ 2

I. Plaintiffs' Counsel's Log Revealed That They Willfully Violated The Protective Order Hundreds Of Times ........ 2

II. Plaintiffs' Counsel's Violations Are Sanctionable ........ 3

III. The Court Should Admonish Plaintiffs' Counsel And Order Them To Pay Defendants' Attorneys' Fees ........ 5

CONCLUSION ........ 7

**TO THIS COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 14, 2025, or another date set by this Court, Defendants United Healthcare Insurance Company, United Behavioral Health, and MutiPlan, Inc. (together, "Defendants") will move and hereby do move this Court for an order imposing sanctions on Plaintiffs' counsel for violation of the Court's protective order (Dkt. 25) pursuant to Federal Rules of Civil Procedure 16 and 37, and Local Rules 7-8 and 37-4.

On July 17, 2025, this Court ordered Plaintiffs to submit a log of their unauthorized disclosures to third parties of material covered by the protective order. Dkt. 491 at 1. On August 14, 2025, Plaintiffs produced a log of disclosures to Defendants. The log revealed that Plaintiffs' counsel willfully disclosed more than one thousand confidential documents to a third party—the U.S. Department of Labor ("DOL")—over multiple years and hundreds of transmissions, in willful violation of the protective order. The log also did not comply with the Court's July 17, 2025 order, as Plaintiffs failed to include "oral conversation[s]" and emails with DOL about the Protected Material. Dkt. 491 at 1.

Defendants were forced to spend considerable time and resources investigating and addressing Plaintiffs' counsel's violations of the protective order and noncompliant log. Plaintiffs' counsel should be formally admonished by this Court and ordered to pay Defendants their attorneys' fees caused by Plaintiffs' counsel's protective order violations.

Defendants base this Motion on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Derek K. Kraft, the Declaration of Errol J. King, all pleadings and records on file in this matter, and on such matters as may be brought before the Court at the hearing on this Motion.

## INTRODUCTION & BACKGROUND

The extent and gravity of Plaintiffs' counsel's violations of the protective order in this case cannot be overstated. Only after a fortuitous discovery by Defendants in a completely unrelated matter was this Court able to intervene, ordering Plaintiffs' counsel to produce a comprehensive log of protective order breaches (Dkt. 491, "Order"). The log Plaintiffs' counsel recently produced (attached as Exhibit 1) lays bare a staggering pattern of disregard: ***hundreds*** of individual violations, encompassing ***well over a thousand*** confidential documents produced by Defendants in this matter.[1] These are not minor or technical lapses; they include unauthorized disclosures of not only Defendants' confidential information, but also that of third parties and, most disturbingly, the confidential health records of thousands of patients whom Plaintiffs' counsel does not represent. The volume and breadth of these violations reflect a systemic and willful flouting of the Court's authority and the parties' rights.

Plaintiffs' counsel did not simply act carelessly—they committed these breaches repeatedly and intentionally, as part of a calculated strategy to attract the attention of both the Department of Labor ("DOL") and this Court. They concealed their improper disclosures from Defendants at every turn, denying Defendants any timely opportunity to challenge or mitigate the harm. When Defendants endeavored to uncover the full extent of the breaches, Plaintiffs' counsel actively obstructed those efforts, refusing even basic transparency. Even now, Plaintiffs' counsel is withholding answers to straightforward questions about their own log, making it almost certain that the log is incomplete and that even more undisclosed violations remain hidden.

Given the sheer number and willful nature of the violations detailed—despite the likelihood that the log is only partial—the imposition of sanctions is both appropriate and necessary. This Court has already emphasized the imperative for swift and decisive action: "the Court must act swiftly in ensuring that protective orders are complied with and that violations are dealt with appropriately." Order at 1 (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 5693759, at *7 (N.D. Cal. Oct. 15, 2013)). Accordingly, Defendants respectfully request that the Court (1) formally admonish Plaintiffs' counsel—who are repeat players in various cases against Defendants—and (2) order Plaintiffs' counsel

[1] "Ex. " refers to exhibits to the Declaration of Derek K. Kraft filed with this motion.

to pay the attorneys' fees already incurred by Defendants in uncovering and addressing these violations (currently exceeding $235,000).

Such sanctions are not only consistent with the Federal Rules and governing case law; they are essential to deter future misconduct by Plaintiffs' counsel, whose repeated and egregious violations of protective orders undermine the integrity of these proceedings and the administration of justice.

**STATEMENT OF ISSUE TO BE DECIDED (L.R. 7-4)**

1. Whether Plaintiffs' counsel's violations of the protective order should be sanctioned pursuant to Federal Rules of Civil Procedure 16 and 37 and Local Rules 7-8 and 37-4.

**ARGUMENT**

Federal Rule of Civil Procedure 37(b)(2)(A) "grants courts the authority to impose sanctions where a party has violated . . . a protective order." *O'Connor v. Uber Techs., Inc.*, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017); *see also Holley v. Gilead Scis., Inc.*, 2021 WL 940594, at *2 (N.D. Cal. Mar. 12, 2021) ("The Court imposes sanctions for [counsel's] violation of the protective order under Rule 37(b)."). Courts may also sanction violations of protective orders under Rule 16(f). *O'Connor*, 2017 WL 3782101, at *4. Although moving parties need not show that protective order violations are willful to recover sanctions, that threshold is easily cleared here, as Plaintiffs' counsel has willfully violated the protective order in this case. *See Cahill v. Nike, Inc.*, 2024 WL 3963809, at *5 (D. Or. Aug. 26, 2024); *O'Connor*, 2017 WL 3782101, at *4; *Karr v. Ford Motor Co.*, 2025 WL 1019138, at *1 (S.D. Cal. Apr. 4, 2025).

## I. Plaintiffs' Counsel's Log Revealed That They Willfully Violated The Protective Order Hundreds Of Times

The protective order in this case is clear and unambiguous: the parties may only disclose Protected Material to specific categories of people—*i.e.*, counsel, experts, professional vendors, deposition witnesses, or persons who otherwise already knew or possessed information within the Protected Material. Dkt. 25 at 10-11 (Sections 7.2, 7.3). And disclosures to these persons are permitted only when "reasonably necessary for this litigation," and only if the receiving party has executed an "Acknowledgement and Agreement to Be Bound" attached to the protective order. *See, e.g.*, *id.* at 10-11 (Section 7.2(a)-(c), (e)-(g)). Here, Plaintiffs' counsel deliberately flouted these requirements in

making numerous disclosures of confidential information to the DOL.

This Court already rejected Plaintiffs' argument that their violations should be excused based on their purported common interest agreement with DOL. As this Court held, the "common interest agreement with [DOL] does not give plaintiffs the right to violate the protective order governing this case." Order at 1.

Plaintiffs' counsel's log exposes the rampant nature of their violations. In more than two hundred separate transmissions spanning multiple years, Plaintiffs' counsel disclosed more than a thousand documents that were clearly designated as confidential (and in many cases "Attorneys' Eyes Only"). *See* Ex. 1.

Notwithstanding the extensive violations shown in the log, Defendants have reason to believe it does not tell the whole story. Even though this Court specifically ordered Plaintiffs to include any "oral conversation[s]" and emails containing Protected Materials (Order at 1), the log lists no such communications—and is instead limited primarily to data transfers by an of counsel attorney who no longer works at Plaintiffs' counsel's law firm. It is inconceivable that there were no discussions about this complex information involving more senior lawyers, including the Plaintiffs' counsel who remain involved in this case. When confronted about these omissions and asked to explain what searches were run, Plaintiffs' counsel responded dismissively and—yet again—refused to provide any information or an updated log. *See* Exs. 2-3.

## II. Plaintiffs' Counsel's Violations Are Sanctionable

"[I]t is essential that protective orders be respected" because of the "important interests" they safeguard. *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081, at *2 (C.D. Cal. Feb. 6, 1997).

***Plaintiffs' counsel's conduct was willful.*** Even inadvertent violations may justify sanctions. *See Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (sanctioning plaintiff's counsel under Rule 37 for greenlighting the release of a video on YouTube even though counsel may have believed the video was not covered by the protective order); *Cahill*, 2024 WL 3963809, at *5 (sanctioning plaintiffs' counsel under Rule 37 for inadvertent disclosure of confidential materials to a reporter).

But here, the violations by Plaintiffs' counsel clearly were willful. They intentionally sent more than a thousand documents designated as confidential and "Attorneys' Eyes Only" to DOL, including third-party Administrative Services Agreements (a category of documents that the Court has sealed, Dkt. 470 at 5) and confidential health information of thousands of patients whom Plaintiffs' counsel do not represent. *See, e.g.*, Ex. 1 at 4 (August 29, 2022 transmission of TESLA_UHC_003891, TESLA_UHC_000001, and ORCL_LDVUBH00000003); *id.* at 5-6 (September 7, 2022 transmissions of Administrative Service Agreements at UHC000007610 and UHC000007968); *id.* at 39 (October 19, 2022 transmission of United Defendants' supplemental claims data produced at UHC000300262).

Plaintiffs' counsel has not identified any interpretation of the protective order that would allow or excuse these disclosures, and this Court already rejected their purported "common interest" argument. In any event, "if Counsel had any doubt," they should have sought clarification before disclosure "rather than taking unilateral action." *See O'Connor*, 2017 WL 3782101, at *6. Even if Plaintiffs' counsel believed they had a good reason for the disclosure (and here they did not), they had an obligation to raise that issue with the Court prior to the disclosure—not simply to decide on their own that they would disregard the protective order. *See Fuentes v. Maxim Healthcare Servs., Inc.*, 2019 WL 1751822, at *3-4 (C.D. Cal. Feb. 8, 2019) (disobeying a protective order because counsel thought it was permitted by the First Amendment is still a "wanton violation" of that order).

***Plaintiffs' counsel repeatedly violated the protective order.*** Sanctions are especially appropriate because Plaintiffs' counsel are repeat offenders in this case and in other cases. Dkt. 463 at 3-5 (recounting various previous violations in this case and in another case, *TML Recovery, LLC v. Cigna Corp.*, 8:20-cv-00269-DOC-JDE (C.D. Cal. closed Nov. 12, 2024)); *see Leftenant v. Blackmon*, 2022 WL 363841, at *3 (D. Nev. Feb. 7, 2022) (repeat protective-order violations warranted additional monetary sanction on top of attorneys' fees).

In a YouTube video in which Plaintiffs' counsel is recorded speaking to the press in October 2023, he explained that disclosing information about Defendants—including information they seek to designate or seal—is "good for plaintiffs" to generate "interest" in his case from the press and "governmental agencies." *See* Capitol Forum, "Vertical Power Issues In Medical Care," at 18:17-

20:02, YouTube (posted on Nov. 13, 2023), https://www.youtube.com/watch?v=cBcejJL-9iY (last accessed Sept. 8, 2025). And it can ultimately be helpful, he went on, to generate interest by the Court: "[w]hen [Judge Gonzalez Rogers] gets a letter from The New York Times or another media outlet indicating national interest in it she wants to stop and take a look at these thousands of pages of documents and ask herself does this really need to be sealed . . . the press, all of that goes a long way towards getting a judge interested in your case and as a litigator I want a judge interested in my case and as a guy who bring—is often on the plaintiffs' side that's good for plaintiffs." *Id.* Although Defendants are not seeking fees for these previous violations through this motion, it bears noting that they were also costly: Defendants' counsel and Court staff had to scramble to get numerous confidential materials pulled from the public docket.[2]

## III. The Court Should Admonish Plaintiffs' Counsel And Order Them To Pay Defendants' Attorneys' Fees

Defendants respectfully seek two sanctions for these violations. First, Plaintiffs' counsel should be formally admonished. Hopefully, a public rebuke will cause Plaintiffs' counsel to think twice before casually disregarding a protective order again. Additionally, the admonishment will help ensure that protective orders are entered and complied with by Plaintiffs' counsel in other cases, in other courts.

Second, Plaintiffs' counsel should pay the attorneys' fees that Defendants incurred to investigate and litigate Plaintiffs' counsel's protective order violations. Under Rule 16(f)(2) and Rule 37(b)(2)(C), the Court "*must*" impose "reasonable expenses" "including attorney's fees" on protective-order violators, unless the noncompliance "was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); Fed R. Civ. P. 16(f)(2). Here, there are no substantial justifications, as outlined above. Additionally, it is proper to require Plaintiffs' counsel to pay these fees, based on the nature of the violations. Fed. R. Civ. P. 37(b)(2)(C) (courts may order "the attorney advising that [sanctioned] party" to pay expenses); Fed. R. Civ. P. 16(f)(2) (similar); *see also, e.g.*, *Harmon*, 323 F.R.D. at 628; *Lawson v. Grubhub, Inc.*, 2017 WL 3670720, at *3 (N.D. Cal. Aug.

---

[2] On February 18, 2023, and again on July 16, 2023, Plaintiffs filed various Protected Materials on the public docket without sealing them or applying the appropriate redactions—requiring similar remediation by Defendants and Court staff. *See* Dkt. 294-2; *see also* Dkts. 323-327; 463-2 ¶ 12.

25, 2017).

As outlined below, Defendants incurred significant attorneys' fees bringing Plaintiffs' misconduct to light—and these fees have multiplied due to repeated runarounds by Plaintiffs' counsel in response.

***Initial fortuitous discovery by Defendants' counsel.*** On December 3, 2024, in connection with a separate matter, DOL sent the United Defendants a document marked "Confidential – Attorneys' Eyes Only" with a Bates stamp from this action. This did not make any sense, because Defendants had never sent that document to DOL, it had never been disclosed publicly, and Plaintiffs' counsel had never notified Defendants of any third-party disclosure nor challenged that document's confidentiality designation. Dkt. 463-2 ¶¶ 3-4. After further investigation and back and forth with DOL, on December 4, 2024, DOL confirmed they received the document from Plaintiffs' counsel in this action. *Id.* ¶ 5.

***Plaintiffs' counsel gives Defendants the runaround.*** Defendants then spent weeks trying to find out what happened from Plaintiffs' counsel. Dkt. 463-2 ¶¶ 6-11. Other than confirming that they shared Protected Material with DOL pursuant to a common interest agreement, Plaintiffs' counsel refused to provide any information about the nature and scope of their violations. On January 2, 2025, Defendants asked Plaintiffs' counsel to produce a log of their unauthorized disclosures. *Id.* ¶ 10. Plaintiffs' counsel refused (*id.* ¶ 11), so Defendants were forced to seek relief from the Court (Dkt. 463).

***Plaintiffs continue to hide the ball in response to this Court's order.*** This Court ordered Plaintiffs to produce a log including all of their violations, including any "oral conversation[s]" with third parties about the substance of Protected Material. Order at 1. As detailed above, Plaintiffs' log revealed more than two hundred data and document transfers to DOL, but omitted any emails or oral conversations with DOL about those documents—even though the Court ordered Plaintiffs to include those conversations on the log. Order at 1. As a result, Defendants had to send yet another letter to Plaintiffs, this time to request a compliant log. Ex. 2. Plaintiffs refused to provide one. *See* Ex. 3.

Defendants are continuing to incur costs to litigate this sanctions motion and to obtain Plaintiffs' full accounting of the extent of their protective order violations. To date, Plaintiffs' counsel's

violations have caused Defendants to incur more than $235,000 in unnecessary attorneys' fees. Kraft Decl. ¶ 14; King Decl. ¶ 12. If the Court agrees with Defendants' request and grants this motion for sanctions, Defendants will thereafter submit the total of the fees incurred, along with a declaration and a more detailed accounting to substantiate the request as required by Local Rule 37-4. *See Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 12596470, at *10 (N.D. Cal. Jan. 29, 2014) (granting sanctions motion and attorneys' fees, and allowing substantiation to come later); *Fuentes*, 2019 WL 1751822, at *4 (awarding "reasonable attorneys' fees and costs" and ordering the movant to "submit a declaration and proposed order . . . detailing its total amount of attorneys' fees and costs").

**CONCLUSION**

In light of Plaintiffs' counsel's repeated, willful violations of the protective order, and to deter further violations, Defendants respectfully seek sanctions. This Court should formally admonish Plaintiffs' counsel and order that they pay Defendants' attorneys' fees caused by the violations.

DATED: September 8, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Geoffrey Sigler*
Geoffrey Sigler

*Attorneys for* UNITED BEHAVIORAL HEALTH and UNITEDHEALTHCARE INSURANCE COMPANY

-AND-

PHELPS DUNBAR, LLP

By: */s/ Errol J. King*
Errol J. King, Jr.

*Attorney for* MULTIPLAN, INC.

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

DATED: September 8, 2025

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Geoffrey Sigler*
Geoffrey Sigler