Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Arnall Golden Gregory LLP
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone:   202.677.4030
Facsimile:   202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
DL Law Group
345 Franklin St.
San Francisco, CA 94102
Telephone:   415.678.5050
Facsimile:   415.358.8484

Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| LD, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>United Behavioral Health, Inc., et al.,<br><br>            Defendants. | Case No. 4:20-cv-02254-YGR-JCS<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**Plaintiffs' Opposition to Defendants' Motion for Sanctions (ECF 506)** |

**Table of Contents**

I. Acknowledgement of Responsibility and Summary of Response ............................................ 1
II. Legal Standard .................................................................................................................... 3
III. Analysis ............................................................................................................................... 4
   A. Plaintiffs' Counsel Acted in Good Faith. ........................................................................ 4
      1. Plaintiffs' counsel did not willfully violate the Protective Order ................................. 4
      2. The Disclosure Log is complete. ................................................................................ 6
      3. Defendants mischaracterize Plaintiffs' counsel as "repeat offenders." ....................... 7
      4. The DOL has a pre-existing investigation of the conduct at issue in this litigation. ................................................................................................................... 8
   B. Plaintiffs' disclosures caused no prejudice. ..................................................................... 8
      1. The DOL had, and exercised, its authority to obtain these documents. ...................... 9
      2. The disclosures were not the kind of disclosures the Protective Order was designed to forbid. .................................................................................................... 9
   C. Defendants seek relief that is neither just nor proportional. ......................................... 10
      1. Formal admonishment serves no constructive purpose ............................................ 12
   D. Defendants' fee request fails for lack of an adequate declaration under Civil L.R. 37-4. ......................................................................................................................... 13
IV. Conclusion ........................................................................................................................ 13

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

# Table of Authorities

**Page(s)**

**Cases**

*Chandler Gas & Store Inc. v. Treasure Franchise Co. LLC*,
  2025 U.S. Dist. Lexis 86897 (D. Ariz. May 7, 2025) ...................................................... 3, 4, 11

*Cruz v. Nike Retail Servs., Inc.*,
  346 F.R.D. 107 (S.D. Cal. 2024) ........................................................................................ 3, 10, 11

*DS Advanced Enters., Ltd. v. Lowe's Co.*,
  2025 U.S. Dist. Lexis 13142 (S.D. Cal. Jan. 24, 2025) ............................................... 2, 3, 8, 12

*Finjan, Inc. v. ESET, LLC*,
  2019 U.S. Dist. Lexis 54593 (S.D. Cal. Mar. 29, 2019) ...................................................... 6, 12

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1992) .................................................................................................... 3

*Glass Egg Dig. Media v. Gameloft, Inc.*,
  2019 U.S. Dist. Lexis 193082 (N.D. Cal. Nov. 5, 2019) ........................................................ 13

*Harmon v. City of Santa Clara*,
  323 F.R.D. 617 (N.D. Cal. 2018) .............................................................................................. 11

*Hyde & Drath v. Baker*,
  24 F.3d 1162 (9th Cir. 1994) ...................................................................................................... 6

*Irwin v. Davison*,
  2019 U.S. Dist. Lexis 223630 (D. Ariz. Dec. 31, 2019) .......................................................... 10

*Liew v. Breen*,
  640 F.2d 1046 (9th Cir. 1981) .................................................................................................. 12

*Marani v. Cramer*,
  2023 U.S. Dist. Lexis 105373 (N.D. Cal. June 16, 2023) ....................................................... 13

*Mehr v. Cty. of Orange*,
  2011 U.S. Dist. Lexis 165508 (C.D. Cal. Feb. 15, 2011), aff'd, 484 F.App'x
  162 (9th Cir. 2012) ...................................................................................................................... 11

*Pac. Radiation Oncology, LLC v. Queen's Med.Ctr.*,
  47 F. Supp. 3d 1069 (D. Haw. 2014) ....................................................................................... 12

*Pinterest, Inc. v. Pintrips, Inc.*,
  2015 U.S. Dist. Lexis 4232 (N.D. Cal. Jan. 12, 2015) ............................................................ 13

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

*Silver State Broad., LLC v. Beasley FM Acquisition*,
    2014 U.S. Dist. Lexis 36710 (D. Nev. Mar. 20, 2014) ............................................................. 11

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
    158 F.3d 1051 (9th Cir. 1998) ..................................................................................................... 4

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

## I. Acknowledgement of Responsibility and Summary of Response

On September 8, 2025, Defendants filed a motion for sanctions, ECF 506 ("Motion"), alleging that Plaintiffs' counsel violated the parties' Protective Order, ECF 25. The Motion arises out of Plaintiffs' disclosure of protected material to the U.S. Department of Labor ("DOL"). Based on those disclosures, Defendants ask the Court to compel a new disclosure log, award monetary sanctions, and issue a formal admonishment.

Initially, and most importantly, Plaintiffs' counsel respectfully acknowledges, and apologizes to the Court, for the violation of the Protective Order. Counsel takes very seriously its obligation to comply with the Court's orders and to uphold the high standards set for lawyers in our judicial system. Counsel further recognizes, with the benefit of hindsight, that the disclosures to the DOL should have been handled differently and sincerely regrets its missteps in this regard. Counsel and his law firm are deeply chagrined by this breach and are committed to ensuring that nothing like this occurs again.

With that being said, Defendants now appear to seek to use counsel's good-faith mistake as a springboard for a strategic attack rather than a remedy for the violation at issue. Understanding the significance of this matter to the Court, *see* ECF 491 ("July 17 Order"), counsel has made every effort to comply with the Court's July 17 Order as meticulously as possible. Defendants' current request goes well beyond what is necessary or fair to address Plaintiffs' counsel's one-time lapse in judgment, especially in the absence of any actual prejudice. Accordingly, Plaintiffs oppose the Motion on several grounds.

First, Plaintiffs' counsel has not acted in bad faith. Defendants insist the violations of the Protective Order were willful, but counsel has explained its good-faith—albeit, in hindsight, misguided—basis for the disclosures. Defendants speculate on the completeness of Plaintiffs' disclosure log, prepared in response to the July 17 Order, ECF 506-2 ("Disclosure Log"), but Plaintiffs' counsel has already certified that it is complete to the best of its knowledge. Defendants further attempt to portray counsel as repeat offenders based on an unrelated case, *TML Recovery*, but that matter involved different attorneys and different conduct, included findings of no bad faith, and resulted in no sanctions. Defendants moreover claim they

1  discovered the alleged violation of the Protective Order "fortuitously" in connection with a
2  "separate matter" with the DOL, but that is misleading: The DOL is investigating Defendants for
3  the very conduct at issue in this case and that investigation predated Plaintiffs' contacts with the
4  DOL. *See* Decl. ¶ 4.

5  Second, Defendants have suffered no prejudice as a result of any disclosures. The DOL
6  could always have obtained the materials at issue through its independent regulatory authority,
7  and in fact already independently sought and obtained the materials directly from Defendants
8  and others. Decl. ¶ 12; Ex. 1. In addition, the Protective Order exists to prevent proprietary
9  business information from reaching competitors and to shield protected health information, but
10 the DOL is not a competitor, has no commercial stake in these materials, and is itself the federal
11 agency charged with overseeing compliance in the handling of protected health information
12 under ERISA and related statutes. The DOL is also bound by its own confidentiality obligations
13 and statutory restrictions, including FOIA exemptions, which guard against disclosure, and the
14 DOL has submitted itself to the jurisdiction of this court.

15 Third, the relief Defendants seek is neither just nor proportional to the circumstances.
16 Sanctions under Rules 16 and 37 must be tailored to the harm actually caused, yet Defendants
17 ask for remedies—an additional disclosure log, monetary fees, and a formal admonishment—that
18 are not proportional to the context and do not relate to any proven prejudice. Defendants' motive
19 for seeking a formal reprimand is not to remedy the violation in this case, but rather to attempt to
20 harm counsel's reputation in other matters. Plaintiffs have provided a detailed log consistent with
21 the requirements of the Court's July 17 Order. Nor can Defendants point to any concrete harm
22 from Plaintiffs' disclosures beyond the cost of pursuing this motion.

23 Fourth, Defendants' fee request is procedurally deficient and unsupported. Civil Local
24 Rule 37-4(b)(3) requires a sanctions motion seeking fees to be accompanied by a competent
25 declaration that itemizes with particularity the expenses directly caused by the alleged violation
26 and justifies the hourly rates claimed. Defendants provided no such declaration, instead relying
27 on conclusory assertions and a promise to supplement later. That is not compliant and deprives
28 Plaintiffs of a fair opportunity to examine or challenge the claimed expenses.

1  Beyond these substantive deficiencies, Defendants' Motion is a strategic filing—
2  submitted the day before the hearing on Plaintiffs' motion for class certification, ECF 489—
3  aimed less at addressing any real harm to Defendants and more at burdening Plaintiffs' counsel,
4  who has long litigated against these Defendants in ERISA matters. The Court should deny the
5  Motion or, at most, award more just and proportional monetary sanctions.

6  **II.    Legal Standard**

7  Defendants seek sanctions pursuant to Federal Rules of Civil Procedure 16 and 37 and
8  Local Rules 7-8 and 37-4. *See* Motion at 2.

9  Rule 37(b) authorizes sanctions when a party "fails to obey an order to provide or permit
10 discovery," which includes a protective order. *See* Fed. R. Civ. P. 37(b)(2)(A); *DS Advanced*
11 *Enters., Ltd. v. Lowe's Co.*, 2025 U.S. Dist. Lexis 13142, at *7 (S.D. Cal. Jan. 24, 2025). "The
12 Court has broad discretion as to whether and what type of sanctions should be awarded under
13 Rule 37." *Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 111 (S.D. Cal. 2024).

14 The rule permits the recovery of "reasonable expenses . . . including attorney's fees,"
15 unless the resisting party shows the "failure was substantially justified" or "other circumstances
16 make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see Cruz*, 346 F.R.D. at 111. A
17 position is "substantially justified" if "reasonable people could differ" over the appropriateness
18 of the conduct. *See Cruz*, 346 F.R.D. at 112 (quotations omitted). If a court decides to award
19 attorneys' fees, any such award is limited to reasonable expenses "caused by" the noncompliance
20 and remains subject to the Court's equitable discretion. *Chandler Gas & Store Inc. v. Treasure*
21 *Franchise Co. LLC*, 2025 U.S. Dist. Lexis 86897, at *8–9 (D. Ariz. May 7, 2025). Courts use the
22 lodestar method as a starting point, requiring reasonable hours and reasonable rates. The Court
23 must exclude time that is "excessive, redundant, or otherwise unnecessary," and may reduce
24 hours that a reasonable attorney would not have expended. *See DS Advanced*, 2025 U.S. Dist.
25 Lexis 13142, at *20. The movant bears the burden to justify its rates with evidence beyond
26 counsel's say-so and to tie those rates to the relevant market, with adequate support. *See id.* at
27 *19. Even where the lodestar is supported, however, the Court may cap or reduce the award to
28 what is "just" under Rule 37—considering factors such as the absence of willfulness, prompt

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

1 remediation, limited harm, and the parties' relative resources. *See id.* (capping fees at $25,000

2 after weighing lack of intentionality, remediation, limited harm, and equities). In the Northern

3 District of California, any sanctions request must also satisfy Civil Local Rule 37-4 and include

4 competent declarations that "itemize with particularity" the "unnecessary expenses, including

5 attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate

6 justification for any attorney-fee hourly rate claimed." *See* L.R. 37-4.

7     Rule 16(f) similarly permits the court to "issue any just orders," including those

8 authorized by Rule 37(b)(2), if a party or attorney fails to obey a scheduling or other pretrial

9 order. Fed. R. Civ. P. 16(f)(1).

10     Sanctions under either Rule 16 or 37 must be just, proportional, and tailored to the actual

11 harm. *See Chandler Gas*, 2025 U.S. Dist. Lexis 86897, at *8–9. The "central factor" is justice,

12 which requires proportionality and a causal nexus. *Id.*; *see also Valley Eng'rs Inc. v. Elec. Eng'g*

13 *Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998).

14 **III.**   **Analysis**

15     **A.**   **Plaintiffs' Counsel Acted in Good Faith.**

16 While Plaintiffs' counsels' actions were misguided, contrary to the allegations in

17 Defendants' Motion, those actions were not undertaken in bad faith.

18     1.   *Plaintiffs' counsel did not willfully violate the Protective Order*

19 Defendants' claim that Plaintiffs' counsel acted willfully is without basis. Plaintiffs'

20 counsel acted on a good-faith belief that its coordination with the DOL was appropriate. In 2022,

21 the DOL requested that Plaintiffs enter into a Common Interest Agreement ("CIA") to facilitate

22 the DOL's pre-existing investigation into Defendants relating to the exact same conduct at issue

23 in this litigation. Decl. ¶¶ 4–5, 11. The DOL drafted and transmitted the CIA to Plaintiffs'

24 counsel, and the DOL explained that signing protective orders in private litigation was against

25 agency policy. Decl. ¶ 5. Based on this conversation, Plaintiffs' counsel believed that this was

26 the agency's routine practice and that tantamount to signing onto the Protective Order. Decl.

27 ¶ 13. Counsel assumed—reasonably—that the federal agency responsible for enforcing ERISA

28 would not request disclosures in a manner inconsistent with law and that providing information

requested by the government for an ongoing investigation would be a legitimate and permissible

4

1  exception to the restrictions of the Protective Order, grounded in public policy.

2      This assumption was also grounded in the CIA itself, which mirrors the protections of the
3  Protective Order. Decl. ¶ 6. The CIA required both sides to maintain confidentiality and barred
4  disclosure outside the agreement. It provided, for example: (1) "All Shared Information shall be
5  shared or exchanged between the Parties solely pursuant to this agreement and the common legal
6  interest it protects"; (2) "To the extent permitted by applicable procedural and ethical rules and
7  any other applicable law, the Party receiving Privileged Shared Information will maintain the
8  confidentiality of such Privileged Shared Information provided by another Party"; and (3) "Any
9  Shared Information received by a Party shall not be disclosed, either voluntarily or in response to
10 a request, subpoena, or other court order that would, fairly construed, seek production of Shared
11 Information to anyone not a Party to this Agreement, without the permission of the Party that
12 provided that Shared Information." Decl. ¶ 6. Because the CIA imposed confidentiality
13 protections that overlapped with those in the Protective Order, Plaintiffs' counsel reasonably
14 believed that compliance with the CIA satisfied their obligations to maintain the confidentiality
15 of the materials. Decl. ¶ 13.

16     Plaintiffs' disclosures to the DOL are also not the kind of disclosures the Protective Order
17 was designed to forbid, nor the sort that would put counsel on notice of wrongdoing. Providing
18 information to the federal regulator responsible for investigating ERISA violations is
19 categorically different from leaking competitively sensitive documents to a rival or the public.
20 Plaintiffs' cooperation was also undertaken amid heightened regulatory scrutiny of ERISA
21 violations generally and United specifically: The DOL had recently pursued enforcement against
22 United, and the Biden Administration had directed the agency to prioritize ERISA violations in
23 behavioral health.[1] Against that backdrop, Plaintiffs' counsel understood that cooperation with

---

[1] *See*, *e.g.*, U.S. Dep't of Labor, United Behavioral Health, United Healthcare Insurance Co. Plans to Pay $15.6M, Take Corrective Actions After Federal, State Investigations (Aug. 12, 2021), https://perma.cc/54L8-R9DM; DOL, Emp. Benefits Sec. Admin., Mental Health and Substance Use Disorder Parity: Investigations and Enforcements (visited Sept. 18, 2025), https://perma.cc/N3JA-7XM8; DOL, Dep't Health & Hum. Servs., Dep't of Treasury, 2022 MHPAEA Report to Congress, Realizing Parity, Reducing Stigma, and Raising Awareness:

ARNALL GOLDEN GREGORY LLP

the DOL under the protections of the CIA was not only permissible but appropriate to facilitate an ongoing federal investigation and executive priority. Decl. ¶ 13.

To be clear, Plaintiffs' counsel is not challenging the Court's July 17 Order or disputing that counsel's assumptions were incorrect. *See* ECF 491. Counsel sincerely acknowledges and apologizes for violating the Protective Order. Decl. ¶¶ 14–15. Plaintiffs submit only that Defendants go too far in casting the violation as willful, which overstates the record and mischaracterizes counsel's intent. Plaintiffs' counsel acted under a reasonable, if mistaken, understanding that cooperating with a federal government investigation would not be violative. *See Finjan, Inc. v. ESET, LLC*, 2019 U.S. Dist. Lexis 54593, at *22–23 (S.D. Cal. Mar. 29, 2019) (counsel's mistaken but "not unreasonable interpretation" of a protective order did not warrant sanctions). Counsel certainly did not act in willful disregard of the Protective Order. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) ("While a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust."). After all, when the DOL requested documents, Plaintiffs' counsel discussed the Protective Order with the agency, which explained it does not sign private civil protective orders and instead proposed the CIA, as both were pursuing claims arising from the same conduct by Defendants. Decl. ¶¶ 4–5

2. ***The Disclosure Log is complete.***

Defendants attempt to show further willfulness by claiming that Plaintiffs' Disclosure Log, prepared in response to the July 17 Order, is incomplete. *See* Motion at 3, 6–7. This contention is incorrect. To comply with the Court's July 17 Order, Plaintiffs undertook an extensive search and prepared a full log. Decl. ¶ 10. As Defendants themselves emphasize, Plaintiffs' Disclosure Log meticulously records the disclosure of hundreds of documents.[2] And

---

Increasing Access to Mental Health & Substance Use Disorder Coverage (2022), https://perma.cc/A7BH-CZ5B.

[2] While Plaintiffs acknowledge that the log included numerous documents, Defendants' assertion that Plaintiffs made "hundreds" of improper "transmissions" over "multiple years" is overstated and refuted by the Disclosure Log. *See* Motion at 3; *see also* ECF 506-2. That log reflects only four discrete "transmissions"—three uploads to the DOL's secure KiteShare portal plus one email from counsel—all occurring within a short window between August 17, 2022 and October

1  importantly, the July 17 Order—which Defendants drafted and proposed—required Plaintiffs to
2  identify disclosures of *protected material*. *See* ECF 491 (ordering "[a] log of all disclosures, by
3  Plaintiffs or their counsel/agents, of any Protected Material"). It did not require Plaintiffs to
4  memorialize every conversation that they had with the DOL, and Defendants cannot now
5  complain that Plaintiffs followed the very contours of an order they proposed. In any case,
6  Plaintiffs' counsel is not aware of any verbal conversation in which protected material would
7  have been disclosed. Preliminary conversations were about the nature of the DOL's investigation
8  and the DOL's proposal of the CIA in lieu of signing onto the Protective Order. Conversations
9  about protected material, if any, would have been about the materials logged in the Disclosure
10 Log, and counsel worked with the DOL directly to ensure that all protected material was logged.
11 Decl. ¶ 10.

12     Plaintiffs' counsel has also certified that the log is complete and accurate to the best of
13 counsel's knowledge and confirmed there were no additional disclosures of protected material
14 beyond those listed. *See* ECF 506-2. Counsel has explained what was shared, why it was shared,
15 and under what safeguards. The log reflects every disclosure of protected material of which
16 counsel is aware, satisfying their obligations in full.

17         3.    ***Defendants mischaracterize Plaintiffs' counsel as "repeat offenders."***

18     Defendants mischaracterize Plaintiffs' counsel as repeat offenders, relying on protective
19 order issues in a separate matter with different lead counsel, *TML Recovery, LLC v. Cigna Corp.*,
20 8:20-cv-00269- (C.D. Cal. closed Nov. 12, 2024). *See* Motion at 4; Decl. ¶ 17. Significantly, no
21 sanction was imposed in *TML Recovery*. While Special Master Larson found a technical
22 violation, he found it was not malicious, in bad faith, or for obtaining a competitive
23 advantage. *TML Recovery*, ECF 317 at 10 (Special Master's R&R 13). He recommended a
24 sanction of less than $39,000 in attorney's fees, but the district court never adopted that
25 recommendation and later ruled that the defendants' documents designated under the protective
26 order did not warrant sealing. *See id.* ECF 463, 512. *TML Recovery* hardly constitutes evidence

---

28 19, 2022. Treating each document or bates range within a single upload as its own "transmission" inflates the number and misstates what occurred.

7

4:20-cv-02254-YGR-JCS         Plaintiffs' Opposition to Motion for Sanctions

of a repeat offense.

          4. ***The DOL has a pre-existing investigation of the conduct at issue in this litigation.***

Defendants attempt to cast their discovery of Plaintiffs' disclosures to the DOL as "fortuitous"—arising out of some "separate matter" involving the DOL. *See* Motion at 2. That is misleading. The DOL has been investigating Defendants for the same conduct at issue in this litigation, and that investigation predates Plaintiffs' involvement. *See* Decl. ¶¶ 4, 11–12. In fact, earlier developments in this case confirm that by *at least* 2021—well before Plaintiffs' counsel entered into a CIA with the DOL or provided any documents—the DOL was already seeking information from at least MultiPlan concerning its repricing practices. *See*, *e.g.*, ECF 266 (Judge's Spero order requiring MultiPlan to produce documents previously withheld on privilege grounds relating to DOL inquiries); ECF 240-1 (Revised Privilege Log reflecting DOL-related entries dating back to 2021).[3] In addition, the September 22, 2025 letter from Wayne R. Berry, Associate Solicitor, DOL, further confirms that the agency received "numerous documents" from United and other entities in the course of its investigation, including the "same documents" provided by Plaintiffs. *See* Ex. 1. Far from being a coincidence, the DOL's involvement was the foreseeable consequence of a federal regulator scrutinizing healthcare practices that raise serious ERISA concerns. Tellingly, Defendants have never suggested that Plaintiffs' conduct caused or influenced the DOL's investigation in any way. Defendants' "fortuity" narrative serves only to obscure the unflattering fact that a federal regulatory agency is investigating Defendants for the same conduct. Framing the DOL's involvement as accidental or unrelated unfairly magnifies the significance of Plaintiffs' disclosures.

**B.**    **Plaintiffs' disclosures caused no prejudice.**

Defendants also fail to show any prejudice to Defendants from Plaintiffs' disclosures, which were made to a federal regulator with independent authority to obtain the same

---

[3] Publicly available documents from *TML* indicate that the DOL was also investigating Cigna's identical utilization of MultiPlan for the exact same H0015 code. *See TML Recovery*, ECF 588 (referring to document requests as early as June 2021); *see also* Ex. 2 (excerpts from *TML Recovery* Final Pre-Trial Conference Hr'g Tr.)

information and fall outside the types of risks the Protective Order was meant to prevent. *See*, *e.g.*, *DS Advanced Enters.*, 2025 U.S. Dist. Lexis 13142, at *23 (limiting fee order based on "lack of persuasive evidence of harm" to moving party).

### 1. *The DOL had, and exercised, its authority to obtain these documents.*

Defendants first cannot show prejudice because disclosure was limited to a federal regulator that possesses independent authority to obtain the same materials and that operates under its own confidentiality obligations. *See* 29 U.S.C. § 1134(a); 5 U.S.C. § 552(b)(4); 18 U.S.C. § 1905. The DOL independently received the same documents from United and others—including the same documents disclosed by Plaintiffs. *See* Ex. 1. That fact further underscores why Plaintiffs' counsel believed disclosures to the DOL under the CIA were appropriate: The agency had plenary power to obtain the same materials, and indeed has exercised that authority. Plaintiffs' cooperation simply did not create access that the DOL otherwise lacked. Nor is there any evidence of any dissemination beyond the agency—none occurred—let alone any competitive use. Decl. ¶¶ 16, 19.

### 2. *The disclosures were not the kind of disclosures the Protective Order was designed to forbid.*

The Protective Order was designed to prevent sensitive business or protected health information from being misused in ways that would cause competitive harm or violate patient privacy laws. *See* Protective Order §§ 1, 2.2, 2.3. The Protective Order defines confidentiality in relation to trade secrets, proprietary business information, and protected health information under certain privacy laws (e.g., HIPAA).[4] It is not intended to limit the parties from using the information to "prosecute[] [the] litigation." *See* Protective Order § 1. Coordinating with the DOL—the federal agency charged with ERISA oversight—under a common interest agreement

---

[4] *See* Protective Order, ECF 25 § 1 (Protective Order designed to protect "confidential, proprietary, or private information" from any purpose "other than prosecuting this litigation."); *id.* § 2.2 (defining "confidential" information as information including "(a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy, including personal health information or information otherwise protected under Privacy Rules."); *id.* § 2.3 (defining "confidential-attorneys' eyes only" information as information including confidentiality interests in section 2.2 the disclosure of which would "result in significant competitive or commercial disadvantage" to designating party).

1  does not present those risks. To the contrary, federal law recognizes the legitimacy of such
2  disclosures in many contexts. For example, HIPAA expressly permits disclosures of protected
3  health information to "health oversight agencies," which includes the DOL in its ERISA
4  enforcement role. *See* 45 C.F.R. § 164.512(d); 45 C.F.R. § 164.501; 29 U.S.C. § 1134(a).
5  Plaintiffs' coordination with the DOL was simply not the type of conduct the Protective Order
6  was intended to prohibit.

7  Moreover, as noted above, the DOL's investigation of Defendants predated Plaintiffs'
8  involvement, underscoring that the DOL's access to these documents was not contingent on
9  Plaintiffs' cooperation. Decl. ¶ 4. In this context, Defendants cannot identify any concrete
10 harm—no competitive injury, no public dissemination, and no litigation disadvantage. At most,
11 they object to an agency receiving documents it was already empowered to (and did in fact)
12 obtain. *See* Ex. 1. That does not amount to prejudice and cannot justify sanctions.[5]

13 **C.    Defendants seek relief that is neither just nor proportional.**

14 Defendants ask for three forms of relief: (1) a new disclosure log, (2) attorneys' fees, and
15 (3) a formal admonishment. This relief is not "just." It does not correspond to any proven harm
16 and it exceeds what is necessary to address the conduct at issue. *See Irwin v. Davison*, 2019 U.S.
17 Dist. Lexis 223630, at *11 (D. Ariz. Dec. 31, 2019) (noting court is required to consider
18 "whether lesser sanctions would be more appropriate" than "more sever[e] sanctions such as
19 attorney's fees").

20 As for the request for a new log, as explained above, Plaintiffs produced a detailed
21 Disclosure Log, and Plaintiffs' counsel has certified its completeness. *See* ECF 506-2. There is
22 simply nothing new to log. If ordered, Plaintiffs could not log anything else.

23 As for the fee request, a violation of a protective order does not automatically trigger fee-
24 shifting. Rule 37 permits recovery of reasonable expenses, including attorney's fees, only where

---

25 [5] Plaintiffs also note their ongoing concerns about the breadth of Defendants' confidentiality
26 designations. To be clear, the disclosures at issue here were not an attempt to sidestep those
designations. But as this Court knows all too well Plaintiffs have repeatedly had to challenge
27 Defendants' practice of designating large volumes of material whole cloth through the proper
channels. *See, e.g.*, ECF 246, 274, 275, 324, 362. But much of what Defendants seek to keep
28 under seal is now well-known, not competitively sensitive, and of public importance.

10

1  those expenses were caused by the noncompliance and unless the resisting party shows the
2  failure was "substantially justified" or "other circumstances make an award of expenses unjust."
3  Fed. R. Civ. P. 37(b)(2)(C); *see Cruz*, 346 F.R.D. at 111–12 (S.D. Cal. 2024) (a position is
4  "'substantially justified' if reasonable people could differ"). Applied here, substantial
5  justification is evident for the reasons above: Primarily, Plaintiffs acted on a good-faith belief—
6  albeit ultimately mistaken—that disclosures to the DOL under a CIA with confidentiality
7  protections comparable to the Protective Order would be permissible as a matter of public policy.
8  Even if the Court ultimately disagreed with counsel's interpretation of the Protective Order,
9  "reasonable people could differ" over the appropriateness of the conduct. *See Cruz*, 346 F.R.D.
10 at 112. That is the essence of substantial justification, and it defeats fee-shifting. At the very
11 least, the unique circumstances here—disclosures to a regulator with authority to obtain the same
12 documents—qualify as "other circumstances [that] make an award of expenses unjust." *See* Fed.
13 R. Civ. P. 37(b)(2)(C).
14        Nor have Defendants shown prejudice or identified costs tied to the alleged violation. The
15 only "harm" they articulate is the cost of pursuing sanctions—an expense of their own making
16 unrelated to any competitive injury, public dissemination, or litigation disadvantage. Fee awards
17 untethered to causation and proportionality are not "just" within the meaning of the Rule 37. *See*
18 *Chandler Gas*, 2025 U.S. Dist. Lexis 86897, at *8 (sanctions require "some proportionality
19 between the misconduct alleged and the sanction"); *Silver State Broad., LLC v. Beasley FM*
20 *Acquisition*, 2014 U.S. Dist. Lexis 36710, at *5 (D. Nev. Mar. 20, 2014) (noting Rule 37
21 authorizes "any remedy the court determines is just and proportionate to the situation"). On this
22 record—good faith, substantial justification, and no prejudice—the request for fees should be
23 denied.
24        At most, any sanction should be confined to modest fees—well below the $235,000 in
25 estimated fees that Defendants now seek. *See* Motion at 7. In most instances, protective order
26 violations warrant only modest monetary or fee sanctions—even in cases involving far more
27 serious breaches, such as public dissemination. *See, e.g.*, *Mehr v. Cty. of Orange*, 2011 U.S. Dist.
28 Lexis 165508, at *3 (C.D. Cal. Feb. 15, 2011), aff'd, 484 F.App'x 162 (9th Cir. 2012) (imposing

11

1  $900 sanctions award payable to pro bono legal group for not filing documents under seal in
2  violation of protective order); *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626–28 (N.D.
3  Cal. 2018) (imposing reduced fee award where counsel uploaded confidential video to
4  YouTube); *Pac. Radiation Oncology, LLC v. Queen's Med.Ctr.*, 47 F. Supp. 3d 1069, 1079–80
5  (D. Haw. 2014) (imposing fee award where counsel filed confidential health information of non-
6  party patients in public record). And even where fees are awarded, courts may cap or reduce
7  them to what is "just" under Rule 37, taking into account factors such as the absence of
8  intentionality, remediation, limited harm, and the parties' relative resources. *See*, *e.g.*, *DS*
9  *Advanced*, 2025 U.S. Dist. Lexis 13142, at *19. Here, each of those factors favors limiting fees:
10 the disclosures were not willful, counsel remediated by providing a detailed log and certification,
11 Defendants have shown no concrete harm, and Defendants are massive public companies with
12 resources far exceeding those of Plaintiffs' counsel.

        1.    ***Formal admonishment serves no constructive purpose.***

14       As for the request for admonishment, a formal admonishment is a reputational sanction,
15 and it would serve no constructive purpose here. Plaintiffs' counsel was not attempting to gain a
16 tactical advantage, embarrass Defendants, or leak materials to the public. Rather, counsel
17 disclosed information to a federal agency that is specifically charged with investigating the same
18 conduct that is the subject of Plaintiffs' claims. That judgment call may have been wrong, but it
19 was not nefarious. Defendants' request for an admonishment functions less as a remedy and
20 more as a war trophy, an effort to punish counsel with whom they have repeated dealings in
21 ERISA litigation.

22       This context matters. Sanctions are meant to remedy misconduct that undermines fairness
23 or the integrity of judicial proceedings, not to punish parties for navigating genuine ambiguities
24 in good faith. *See Finjan*, 2019 U.S. Dist. Lexis 54593, at *22–23 ("Although willfulness need
25 not be present in order to impose sanctions under Rule 37(b), a good faith dispute . . . might, in
26 the proper case, constitute substantial justification." (quoting *Liew v. Breen*, 640 F.2d 1046, 1050
27 (9th Cir. 1981))). Imposing a reputational sanction in these circumstances would go too far. The
28 Court has already found a violation and required Plaintiffs to provide a detailed disclosure log

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040
WWW.AGG.COM

and certify its completeness—which Plaintiffs did. *See* ECF 491. That order itself, coupled with the burden and scrutiny of this sanctions motion, has served as ample admonishment. Layering on an added, ill-defined "formal admonishment" would be redundant and purely punitive.

### D. Defendants' fee request fails for lack of an adequate declaration under Civil L.R. 37-4.

Civil L.R. 37-4 requires that a sanctions motion seeking fees be supported by competent declarations that: (1) "itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach," (2) "set forth an appropriate justification for any attorney-fee hourly rate claimed," and (iii) describe efforts to "secure compliance" without court intervention. Defendants submitted no such declaration. They provide neither contemporaneous time records nor a causal tie between specific billing entries and the alleged violation, and they offer no evidence justifying the rates they seek.[6] A promise to supplement later is not compliant, *see* ECF 506-1 ¶ 14 (offering to provide "further detail" and L.R. 37-4 declaration "[i]f the Court grants" the Motion), and it deprives Plaintiffs of any meaningful opportunity to probe causation, necessity, duplication, or rate reasonableness, and it defeats the purpose of Local Rule 37-4 to enable the Court to evaluate a fee claim with the motion. On this procedural defect alone, the Court should deny the fee request. *See Glass Egg Dig. Media v. Gameloft, Inc.*, 2019 U.S. Dist. Lexis 193082, at *12 (N.D. Cal. Nov. 5, 2019) (denying sanctions motion for failure to comply with L.R. 37-4); *Marani v. Cramer*, 2023 U.S. Dist. Lexis 105373, at *4 (N.D. Cal. June 16, 2023) (similar); *see also Pinterest, Inc. v. Pintrips, Inc.*, 2015 U.S. Dist. Lexis 4232, at *22 (N.D. Cal. Jan. 12, 2015) (excluding requested fees based estimates, as opposed to "actual billing reports" under L.R. 37-4).

## IV. Conclusion

Plaintiffs' counsel respectfully acknowledges, and again apologizes, for its violation of the Protective Order. Counsel better understands, with hindsight, how it should have handled its work with the DOL, regrets the misstep, and affirms a continued commitment to strict

---

[6] The defect is compounded by MultiPlan's vague assertion that it engaged an outside expert, Melissa Grim, to provide "legal advice and work" related to the issues raised by Defendants' Motion. *See* ECF 506-6 ¶ 12 n.1.

compliance with the Court's orders going forward.

With that acknowledgment in mind, Defendants' Motion for Sanctions nevertheless goes too far, and for the reasons set forth above, Plaintiffs respectfully request that the Court deny the Motion or at least limit the sanctions to a proportional monetary amount.

Dated: September 22, 2025

                Arnall Golden Gregory LLP

              By: */s/ Matthew M. Lavin*
                 Matthew M. Lavin

                DL Law Group

              By: */s/ David M. Lilienstein*
                 David M. Lilienstein
                 Katie J. Spielman

              Attorneys for Plaintiffs and the Putative Class