# EXHIBIT 2

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE**

| | |
|---|---|
| TML RECOVERY, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | **Certified Transcript** |
| ) | |
| vs. ) | Case No. |
| ) | 8:20-cv-00269-DOC-JDE |
| CIGNA CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

FINAL PRETRIAL CONFERENCE

MONDAY, SEPTEMBER 23, 2024

11:08 A.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

1  they're waiting for the next administration.  I have no idea

2  what they're doing.  But they're not in any hurry.

3          Now, probably the "New York Times" article

4  galvanized this.  It came out, you know, rather recently, and

03:36PM 5  so it probably galvanized this entire, let's say, newly found

6  sensitivity by Congress because it's obvious in each of the

7  letters that they cite back to the "New York Times" article.

8  So there's a driving force for all of us.

9          So you're entitled to present a number of

03:37PM 10 investigators in this matter.  How am I going to resolve that

11  when Cigna objects and says, "Judge, they're investigators.

12  They're with the Department of Labor."  Eventually there's no

13  way to hide that, and it's going to be obvious that there's an

14  investigation, just through their testimony.

03:37PM 15         Now, we can dress that up.  We can pretend like --

16  first of all, we might hypothetically exclude the ultimate

17  conclusion by -- in the corrective letter.  We might just go

18  through the investigative portion.  But everybody's going to

19  know it's an investigation.  And, in fact, it could be argued

03:38PM 20 by Cigna that there's more prejudice because that investigation

21  left unsaid isn't even a corrective letter.

22          In a way, it's almost better for Cigna if it was a

23  corrective letter so they could argue back in their letter that

24  it's subject to a lot of disagreement.  I don't know what to do

03:38PM 25 with that yet.  So it would almost be better if these letters

```
 1    never went back and forth because we'd have a much purer
 2    lawsuit.
 3              But apparently, a large part of your evidence is
 4    going to come, you know, from two or three of these
 5    investigators, isn't it?  And don't you really want the jury to
 6    know that --
 7              MR. EISENBREY:  No, I would say a very limited
 8    amount.
 9              THE COURT:  Sure.
10              Don't you really want them to know, though, that
11    they're with the Department of Labor?
12              MR. EISENBREY:  Oh, absolutely.
13              THE COURT:  Oh, absolutely.  Of course you do.
14              And what's the inference from that?  Cigna's in
15    big-time trouble.
16              MR. EISENBREY:  Yeah.
17              THE COURT:  Cigna's in big-time trouble.  Of course
18    it is.  And Cigna should be objecting to it.  It's prejudicial
19    from your perspective because as soon as they say "the
20    Department of Labor," something's up.  And over the period of
21    time, somebody's going to slip up.  You can't put two or three
22    people on the stand without something, you know, getting leaked
23    out that, "Well, we're undertaking investigation."  And if you
24    don't say it to begin with, it's going to be self-evident
25    anyway, isn't it?  How do we resolve that?  You're entitled to
```

**UNITED STATES DISTRICT COURT**

73

1    it.

2         MR. EISENBREY:  I wonder if Mr. Rich Collins -- he's

3    on the phone, Your Honor.  He may have some comments to that if

4    you're interested.

03:39PM 5         THE COURT:  Well, certainly.

6         **(Mr. Collins appearing via**

7         **Zoom/telephonic conference.)**

8         MR. COLLINS:  Thank you, Mr. Eisenbrey, and thank

9    you, Your Honor.  This is Rich Collins calling in from my hotel

03:40PM 10   room.

11        First of all, may I say thank you, Your Honor, for

12   making the accommodation for me to at least call in.  I have to

13   say I am feeling really jealous missing out on being in your

14   courtroom today with all this going on.  But I'd be happy to

03:40PM 15   address any of the Court's comments or questions, and

16   particularly the one just posed, what do we do if the Court --

17   if that was not a rhetorical question, simply what are our

18   thoughts.  I'd be happy to respond.

19        THE COURT:  Well, I think you take a very aggressive

03:40PM 20   position, and you should.  I mean, from your perspective, this

21   is information that's relevant --

22        MR. COLLINS:  Yes.

23        THE COURT:  -- and the Court shouldn't preclude it.

24   I've been wrestling with that, about how wide open I want this

03:41PM 25   trial to be, and finally, after going back and forth with all

**UNITED STATES DISTRICT COURT**

```
 1    the different motions, I've decided it's going to be a

 2    wide-open trial.  And from your perspective, what you have to

 3    worry about is I'm going to let Cigna get into the opiate

 4    crisis, the billings, et cetera, the markups, et cetera, and

 5    they're going to be able to show that this passed costs onto

 6    patients.

 7            From Cigna's perspective, they should be concerned

 8    because I'm going to let them show the same thing, that this

 9    passed cost onto patients.  And as far as some of these motions

10    going back to 2015 but 2018 rise, I'm probably going to let

11    that in.  I'm probably also going to let in, tentatively, your

12    request to go back -- clear back to Cigna having a problem --

13    and I forget the plan right now, but I'll go back to it in my

14    notes -- clear back before 2010.

15            But those are only tentative thoughts, and I wanted

16    to pay the courtesy to counsel listening to them before I

17    handed down dispositive rulings.  But I almost just handed down

18    dispositive rulings in all these matters.

19            So I'm not quite certain how to dissipate that

20    prejudice, and I don't think I can, quite frankly.  I think

21    you're entitled to it.  But I'm going to hear from Cigna in

22    just a moment.

23            So, Cigna, how do I dissipate this?

24            MR. CAPLAN:  So in addressing just the DOL

25    investigation, that is a very limited issue, and what the DOL
```

03:41PM (lines 5, 10, 15)
03:42PM (lines 20, 25)

```
      1   is looking into in this investigation and these two letters has

      2   no bearing whatsoever on the claims for the one patient who the

      3   jury will decide.  The one patient whose claims are going to

      4   the jury does not have any claims, one, that went through the

03:42PM 5   cost containment program --

      6                THE COURT:  Is this on the 00015 [sic]?

      7                MR. CAPLAN:  So, yeah, I was going to get to that.

      8   That's the second piece.

      9                The first piece is just there's no claims for the

03:43PM 10   one patient who is subject to the jury that went through the

     11   cost containment program at all.

     12                Two, that patient does have a few H0015 claims, but

     13   the DOL's investigation does not apply to every Cigna plan and

     14   every Cigna methodology used to determine how those claims are

03:43PM 15   paid.  The most basic distinction is there are two types of

     16   plans; MRC I and MRC II plans --

     17                THE COURT:  Let's slow down for a moment.

     18                MRC -- we're going to go very slowly.  You're going

     19   to bear with me now.

03:43PM 20                MR. CAPLAN:  Of course.

     21                THE COURT:  So your first argument and response was

     22   that crosswalking for pricing out-of-network benefits for the

     23   0015 for MRC I changed to partial hospitalization pursuant to

     24   APC 5863 on February 29th, 2024.

03:45PM 25                And your second was -- in your response July 19th,
```

1   2024, was that Cigna -- I can't read my own writing.  Cigna was

2   also evaluating the potential crosswalk for H0015 to intensive

3   outpatient APC.

4            One of the reasons I started all these questions

03:46PM 5   today was, how is that going with the Department of Labor?

6            MR. CAPLAN:  So I was making a little bit of a

7   different point right now, and the argument I'm making

8   addresses how this evidence might come in at trial if your

9   belief is that the plaintiffs are entitled to put it on.

03:46PM 10           THE COURT:  Uh-huh.

11           MR. CAPLAN:  There is no basis to put on evidence of

12   the DOL's investigation in front of the jury because the one

13   patient for whom the jury will decide their claims is not at

14   all implicated by the issues in the DOL investigation, and

03:46PM 15   that's because that patient has an MRC II plan, and the claims

16   that were submitted using the H0015 code for that patient were

17   not subject to the methodology that is being investigated by

18   the DOL.

19           THE COURT:  Okay.  Let me hear a response for just a

03:47PM 20   moment.

21           MR. COLLINS:  Yes, Your Honor.  Thank you.  This is

22   Rich Collins on the line for plaintiffs.

23           Cigna's counsel is, you know, dancing around on the

24   issue.  But this one claim being subject to the jury, that's

03:47PM 25   Cigna's misunderstanding that only the one non-ERISA plan is

03:48PM 5

03:48PM 10

03:48PM 15

03:49PM 20

03:49PM 25

 1  going to be heard by the jury.  As I understood this Court's

 2  order, all of the claims are going to be presented in one trial

 3  at the same time in front of the jury and the Court.  So I

 4  didn't think we were parsing out the evidence.  That's the one

 5  fact about that presentation, because the other claims that are

 6  involved, the ERISA claims, do involve these issues that the

 7  Department of Labor is concerned --

 8            THE COURT:  You broke up.

 9            MR. COLLINS:  The second --

10            THE COURT:  You broke up.

11            MR. COLLINS:  Yes.  My point is the ERISA claims

12  that will be tried, Your Honor, the 19 other patients, there's

13  one non-ERISA plan that we selected to present those state law

14  claims, and Cigna's view is that only those are going to the

15  jury.

16            But those ERISA claims for the other 19 patients are

17  going to be presented to the jury as well.  And those patients,

18  their claims were impacted by the issues outlined by the

19  Department of Labor, specifically the H0015 level of care for

20  intensive outpatient treatment.

21            The other distinction that Cigna is trying to make

22  here is that the MRC I versus MRC II plans is an issue.  Now, I

23  will grant that the Department of Labor only focused on the

24  MRC I language, but at the heart of the Department of Labor's

25  findings in their letter, which is Docket Number 513-20, that I

```
        1    understand is still under seal, but in that letter, it talks
        2    about the real issue is this crosswalk to the Medicare rate,
        3    and the fact that there are no Medicare rates that this Court
        4    has established that it's undisputed for the services our
03:50PM 5    clients provided.
        6            Putting aside Mr. Antia's argument for a moment
        7    about the drug testing services only, the laboratory claims,
        8    but for the treatment, the facility services, that are at issue
        9    in the Department of Labor's letter, that -- the issue, the
03:50PM 10   parity violation that the Department of Labor found relate to
        11   that crosswalk.
        12           That crosswalk is employed by Cigna under both the
        13   MRC I and the MRC II plans. So even if the Department of Labor
        14   only focused on the MRC I and only as to one level of care,
03:50PM 15   picking out the easiest and most obvious violation of the
        16   federal parity law, that doesn't negate the fact that the
        17   essential finding is this crosswalk which we've been arguing
        18   about for five years in this litigation, that Cigna has
        19   denied was an issue, and that we had to fight through discovery
03:51PM 20   motions to get this evidence.
        21           And finally now, because this Court unsealed those
        22   documents and the "New York Times" decided to write articles
        23   about it, are we finding that the Department of Labor is
        24   issuing findings that are consistent with these allegations.
03:51PM 25           How do we ameliorate that effect, Your Honor?
```

```
          1              THE COURT:  You haven't offered me a --

          2              MR. COLLINS:  The way it sounds --

          3              THE COURT:  You haven't offered me a solution --

          4              MR. COLLINS:  The solution --

03:51PM   5              THE COURT:  Karlen, cut him off.

          6              MR. COLLINS:  I'm sorry, Your Honor.  I apologize --

          7              THE COURT:  Let me do this again.  I'm about to cut

          8    you off.

          9              What's your solution?

03:51PM  10              MR. COLLINS:  Yes.  My --

         11              THE COURT:  Quit arguing.  What's your solution?

         12              MR. COLLINS:  My solution is that we let the

         13    evidence come in and we allow Cigna's counsel to do what he

         14    just did in his argument and try to cross-examine and impeach

03:52PM  15    those findings by suggesting that those findings have no

         16    application to these claims --

         17              THE COURT:  All right.  Thank you.  Thank you.

         18              All right.  Now, that's why I've asked each of you

         19    about this crosswalk again, because I'm assuming that MCR I

03:52PM  20    [sic] is obviously the crosswalk between H0015 and -- let me

         21    make sure I get my codes correct -- 5823, APC.

         22              MR. COLLINS:  Yes, APC --

         23              THE COURT:  Thank you.  I don't need your help right

         24    now.

03:52PM  25              MR. COLLINS:  Sorry.
```

**UNITED STATES DISTRICT COURT**

|  | THE COURT:  I want you to be quiet for a moment. |
| 1 | |
| 2 | MR. COLLINS:  I will. |
| 3 | THE COURT:  And now I'm assuming under MCR II -- or |
| 4 | am I incorrect?  Is it MCR I or MCR II that we have another |
| 03:53PM 5 | crosswalk between H0015 and APC 5863?  Is that under MCR II? |

1          THE COURT:  I want you to be quiet for a moment.

2          MR. COLLINS:  I will.

3          THE COURT:  And now I'm assuming under MCR II -- or

4   am I incorrect?  Is it MCR I or MCR II that we have another

03:53PM 5   crosswalk between H0015 and APC 5863?  Is that under MCR II?

6          MR. CAPLAN:  That's incorrect.

7          THE COURT:  Incorrect?  It's under I?

8          MR. CAPLAN:  It is a different methodology for

9   MRC II.  So the --

03:53PM 10          THE COURT:  Is it under MCR II or I?

11          MR. CAPLAN:  MRC I.

12          THE COURT:  Still under I?

13          MR. CAPLAN:  Yes.

14          THE COURT:  Okay.  Thank you.

03:53PM 15          Do you disagree with that, agree with that, it's

16   under I?

17          MR. COLLINS:  I disagree -- I disagree that it's

18   limited to just their MRC I plans.

19          MR. CAPLAN:  So the MRC II crosswalk for H0015 --

03:53PM 20          THE COURT:  Should be to 5863.

21          MR. CAPLAN:  Yes, that's correct.  Sorry, I thought

22   you were --

23          THE COURT:  I just said that.  Let me say it again.

24   The MCR II should be our crosswalk with H0015 to 5863.

03:54PM 25          MR. CAPLAN:  For MRC II plans, that's correct, yes.

**UNITED STATES DISTRICT COURT**

```
            1            THE COURT:  Okay.  And I just asked at the beginning
            2   of this about whether -- because Cigna said that they are
            3   evaluating, quote/unquote, "the potential crosswalk of H0015 to
            4   intensive outpatient APC."  I don't know what that is.  In
   03:54PM   5   other words, I don't know if that's a separate code.
            6            Help me.  Look at your July 19th letter.  Look at
            7   page 2.  Look at the first paragraph, and it says:
            8            "Cigna -- the Department's primary concern
            9        should be moot because the crosswalk for pricing
   03:55PM  10        out-of-network benefits for H0015 changed to a
           11        partial hospitalization, APC 5863, on February 29,
           12        2024."
           13            It's the next sentence that's of interest to me:
           14            "Cigna is also evaluating the potential
   03:55PM  15        crosswalk of H0015 to intensive outpatient APC that
           16        CMS implemented this year."
           17            Does that have a code?  And if so, what's that code?
           18            MR. ANTIA:  That code is forthcoming from CMS.
           19            THE COURT:  That's what I thought.  We don't have a
   03:55PM  20   code.
           21            MR. ANTIA:  There's a proposed code that has not
           22   yet -- I think it might be implemented just recently, Your
           23   Honor.
           24            THE COURT:  We don't have a code.
   03:56PM  25            MR. ANTIA:  Correct.
```

1          THE COURT:  That's what I'm reading.

2          MR. ANTIA:  Correct.

3          THE COURT:  Okay.  And that's why I started this

4     conversation with this *in limine* motion asking what the status

03:56PM 5     of this is.  And we just don't know at the present time.

6          MR. ANTIA:  Correct, Your Honor.

7          THE COURT:  Why do we believe it might be

8     forthcoming?  Because it would be helpful.  Because then the

9     Department of Labor would be back saying, "You know what?  This

03:56PM 10    is a good crosswalk" or "it's not."

11         MR. ANTIA:  I didn't pick up the start of your

12    question.  Why do we think --

13         THE COURT:  Why do we think it might be forthcoming?

14         MR. ANTIA:  The code?

03:56PM 15         THE COURT:  Yeah.

16         MR. ANTIA:  Oh, because CMS published for the first

17    time and pronounced under the "Federal Register"; right?  Just

18    like they did with 5863 --

19         THE COURT:  No --

03:56PM 20         MR. ANTIA:  -- but they published that they are

21    going to reimburse these facilities, like plaintiffs --

22         THE COURT:  Let's say that this code came out

23    halfway through the trial, hypothetically, and let's say that

24    the Department of Labor was favorable to MRC II and your

03:57PM 25    crosswalk from H0015 to this new code, and it matched, you

```
         1    know, three hours per day, five days a week, or something close

         2    to it.

         3              As I was concerned about prejudice for Cigna, now I

         4    would be concerned about the prejudice, after opening

03:57PM  5    statements and getting halfway through this trial, to you, the

         6    plaintiff, because in a sense, it would take the sting out

         7    of -- and the Department of Labor comes back halfway through

         8    the trial, and they might have a disagreement with H0015 being

         9    crosswalked to -- let me get this down -- 5823, but they don't

03:58PM 10    have a disagreement now to H0015 being crosswalked to this new

        11    code.  That takes a lot of sting out of your case.

        12              Now, hold on.  You don't have an answer for that, so

        13    you don't have to comment.  That's my concern.  You know, it's

        14    how to stop that kind of prejudice for each side when the

03:58PM 15    Department of Labor just came out of their sleepy hollow and

        16    might be doing something about that only because some senators

        17    wrote -- only because the "New York Times," you know, got

        18    enough notoriety to get somebody to do something.  Not that I'm

        19    critical of Congress.  I would never be, but...

03:58PM 20              And so I share your fear, on the plaintiff side,

        21    that this could go on forever.  Unless this case gets started,

        22    this could go on forever.  And what I'm afraid of is that if I

        23    continue this case for six months or a year, we're going to be

        24    right back in the same position.

03:58PM 25              I'm also fearful of an election with a different
```

**UNITED STATES DISTRICT COURT**

```
      1   administration or the same type of administration coming in.  I
      2   have no idea what position they're going to take with a new
      3   member of Department of Labor, for both of you.
      4            MR. COLLINS:  Yes.
03:59PM 5        THE COURT:  And so I wish it was two years ago that
      6   we were getting the case off the ground or two years in the
      7   future, but right now, we're in this transition period where
      8   you could have a complete change in the Department of Labor.
      9            So how do we push this case forward fairly for both
03:59PM 10  of you?  I've really been trying to weigh that for the last
     11   literally week, trying to sort out in your in limine motions,
     12   how I felt about a wide-open trial or starting to make rulings
     13   that I used to hate when I was litigating when the judge just
     14   chopped up my case.  And if he or she guessed wrong, you know,
03:59PM 15  it's unbalanced.  That's why I'm telling you, you're going to
     16   have a pretty wide-open trial here.
     17            MR. CAPLAN:  So for this particular issue, my
     18   suggestion is, if this evidence comes in, it should be heard
     19   outside of the presence of the jury because it does not relate
04:00PM 20  to the claims, only one patient.
     21            THE COURT:  No.  You haven't heard me.  It's going
     22   to be a wide-open trial.  This is coming in front of the jury.
     23            MR. EISENBREY:  If I've heard Your Honor correctly,
     24   what it seems to be you're asking for is how long is it going
04:00PM 25  to take the Department of Labor to issue their final ruling --
```

1          THE COURT:  Exactly --

2          MR. EISENBREY: -- and who do I need to contact?  And

3   we're all baffled because it's Cigna who's dealing with the

4   Department of Labor, and Cigna's not here.  Their counsel is.

04:00PM 5          THE COURT:  Hold on.

6          The problem is that Cigna may be acting very

7   ethically, though.  They've got the Groom -- or whoever they

8   are -- Law Group negotiating with the Department of Labor

9   because there may be a conflict, you know, with you negotiating

04:00PM 10  with them.  I don't know.

11         The one thing I know, though, is I can't treat Cigna

12  like a segmented worm, in other words, different portions of

13  Cigna dealing with, through different counsel, the Department

14  of Labor.  But I do understand your predicament as counsel.

04:00PM 15  You have no control over Groom.  You're not part of that

16  discussion.

17         MR. EISENBREY:  Their general counsel that Cooley

18  deals with is James Carroll.  His name is right on the letter.

19  We should call James Carroll at Cigna and say, "What's the

04:01PM 20  status of this DOL?"

21         MR. CAPLAN:  We did and we reported to you earlier

22  today, Mr. Eisenbrey.

23         THE COURT:  Well, he hasn't reported to me.  Time

24  out.

04:01PM 25         MR. CAPLAN:  And we did to you as well.

**UNITED STATES DISTRICT COURT**

```
                 1              THE COURT:  Time out.  I'm asking now.

                 2              What is the status of this?  What did you report to

                 3    other counsel?

                 4              MR. CAPLAN:  What we reported to you and Counsel

04:01PM          5    this morning is that there's no time frame for the resolution

                 6    of the issue with the DOL.  You asked us to get the contact

                 7    information for the individual at the DOL that Cigna is

                 8    currently dealing with, and we have that for you.

                 9              That's what you asked us to do this morning.

04:01PM         10              THE COURT:  And who is that person, then?  Because

                11    this is new information to me.  Thank you.

                12              MR. CAPLAN:  Correct.  This is what you asked us to

                13    do during lunch, which we did.

                14              THE COURT:  I didn't know that.  Thank you.  I'm

04:01PM         15    thanking you.

                16              Who is it?

                17              MR. CAPLAN:  She's in the Office of the Solicitor of

                18    Plan Benefits Security Division.  Her name is Sarah with an H,

                19    so S-a-r-a-h, D. Holz, and that's H-o-l-z.

04:02PM         20              THE COURT:  I'm sorry.  It's Sarah --

                21              MR. CAPLAN:  Yes.  Sarah Holz, H-o-l-z.

                22              THE COURT:  H-o-l-z.

                23              And is she the person who will make this decision --

                24    I know the director will.

04:02PM         25              MR. CAPLAN:  Yes, she is the person who is on the
```

87

```
        1   DOL side in charge --

        2           THE COURT:  So the investigators are reporting to

        3   her --

        4           MR. CAPLAN:  Correct.

04:02PM  5           THE COURT:  -- to make the recommendation -- she

        6   doesn't make the decision, but to make the recommendation to

        7   the director?

        8           MR. ANTIA:  Again, we're not counsel in that case.

        9   So with that caveat, Your Honor, that is our understanding.

04:02PM 10           THE COURT:  Well, first of all, let me thank you for

       11   making progress here.

       12           MR. ANTIA:  That's what we are trying to do, by the

       13   way.  We are trying to make progress and trying to get to trial

       14   to get this resolved.

04:02PM 15           THE COURT:  Well, I know, but from their position,

       16   you're dragging your feet.  From your position, you're trying

       17   to move ahead.

       18           MR. ANTIA:  Correct.

       19           THE COURT:  I just am very, very concerned as we get

04:02PM 20   down this line that in this changing landscape, potentially one

       21   of you is damaged in the middle of trial and harmed by

       22   decisions being made that then, you know, become relevant to

       23   our case.  But unless I push the case forward, I don't think

       24   anything's going to happen for a long time.

04:03PM 25           So we're going to push it forward, and that's going
```

**UNITED STATES DISTRICT COURT**

```
 1    to make it very inconvenient, because when you ask for this
 2    division of time between the two of you -- first of all,
 3    whatever time I give to the plaintiffs, you're going to have
 4    equal time.  Let's just resolve that right now.
04:03PM  5          MR. ANTIA:  Thank you, Your Honor.
 6          THE COURT:  So the end result is that I don't know
 7    that time frame yet.  And what you don't know yet is
 8    eventually, sometime this week, you'll start in with every
 9    witness that you're going to present and match up the evidence
04:03PM 10    that you're going to put on.
11          So we just finished a month-long trial involving
12    neuro psycho modulation therapy implants, and I had three
13    objections that caught me off guard.  That was it.  And by the
14    time we're done, I will know each objection the night before.
04:04PM 15          Now, here are the rules.  You're Plaintiff.  You're
16    first out of the box.  You'll take witness number 1 eventually,
17    this week or next week, because you're with me now until we get
18    it done.  And I'm just forewarning you, you've got a lot of
19    attorneys.  So unless you want to be here the rest of your
04:04PM 20    natural life, you're going to take witness number 1, and you're
21    going to put down all of the items of evidence that you believe
22    that you're going to present.
23          On cross-examination, you don't need to disclose
24    that to me.  You have the right to surprise the other side.  So
04:04PM 25    I don't need to know what those evidentiary items are that you
```

```
 1              THE COURT:  Thank you.  The --

 2              MR. COLLINS:  I'm sorry, Your Honor, if I could

 3      respond to the parity violation point that Mr. Caplan raised.

 4              THE COURT:  Please.

04:11PM  5      MR. COLLINS:  Yes.  I raised that because the

 6      Department of Labor raised that, and that's a big issue because

 7      reimbursement rates create this unquantitative limitation, and

 8      that's an issue that Cigna needs to confront because their

 9      plans require them to comply with the parity law.  If they're

04:12PM 10      not, they're violating their plans.  They're in breach of their

11      plans, and that's what we've sued them for.

12              And in addition to that, the Department of Labor

13      draws a correlation between that violation and the issues in

14      this case when it concludes its letter by asking Cigna to

04:12PM 15      provide the Department with a list of all of its members, its

16      participants and the beneficiaries, who have been adversely

17      affected by these practices.  And it asks Cigna to please

18      describe whether and how Cigna will make payments to those

19      participants and beneficiaries who are adversely affected.

04:12PM 20              And that's what we've been asking for five years in

21      this case, "When are you finally going to pay what you owe

22      under your plans?"

23              And now that we've presented the evidence and now

24      that the Department of Labor has concluded that you're

04:13PM 25      violating the federal parity laws with this crosswalk, it's
```

1    time for Cigna to face that and to pay what they owe.

2            THE COURT:  In Limine Motion Number 9, "Requiring a

3    federal agency or official to attend trial."

4            I'm denying this motion at the present time because

04:13PM  5    the Court doesn't have jurisdiction and is uncomfortable

6    ordering DOJ to appear in this court.  They could be made aware

7    of this through either of you, if you decide, but I think

8    that's an independent decision by the Department of Justice.

9            Also, I think that there's a prejudicial effect if

04:13PM 10    it's called to the jury's attention that DOJ is present.  It

11    implies that there's a criminal investigation going on, and

12    this is a civil matter.

13            As far as the Labor Department, I'm trying to get

14    the Labor Department to respond as gently as possible.  I'm

04:14PM 15    afraid that if I cause -- well, if I have them -- if I bring

16    them in through intervention, the difficulty will be it will

17    cause delay.  I'll get flooded with attorneys, as I have in the

18    past, and there will be a claim of -- all the way up to

19    executive privilege, believe it or not.

04:14PM 20            And also, it will set this case over for at least

21    another year, in my opinion.  Just for due process grounds,

22    they have a right to be heard.  And this case needs to get

23    pushed forward in some form for the benefit of both parties.

24            So, hopefully, we'll do it through request.  And

04:14PM 25    certainly, on October 1st, we have three people who are

**UNITED STATES DISTRICT COURT**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION AT SANTA ANA

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

CERTIFIED TRANSCRIPT

| | |
|---|---|
| TML RECOVERY, LLC, et al., | ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) |
| vs. | ) SACV NO. 20-00269-DOC |
| | ) |
| CIGNA CORPORATION, et al., | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

TUESDAY, SEPTEMBER 24, 2024

8:08 A.M.

DEBORAH D. PARKER, CSR 10342
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
411 WEST FOURTH STREET
SUITE 1-053
SANTA ANA, CALIFORNIA 92701
(657) 229-4305
transcripts@ddparker.com

08:48:34 1    determination was arbitrary and capricious.

2                    Anything else would be prejudicial and not

3    probative and any subsequent remedial measure is also not

4    probative under the law, including the cases we cited.

08:48:51 5                    THE COURT:  Just one moment.

6                    MR. ANTIA:  Thank you.

7         (Pause.)

8                    THE COURT:  So as a practical matter, I want you

9    to push back in just a moment.  But one of the things that

08:49:55 10   practically you'd be concerned about would be in the

11   July 19th, 2024 letter when you stated to the Department of

12   Labor that the crosswalk for pricing out-of-network benefits

13   for H0015 changed to partial hospitalization with APC5863 on

14   February 29th, 2024.  And as a practical matter, what would

08:50:30 15   be damaging is that if the Court allowed in those changes,

16   it would make it appear to the trier of fact that Cigna only

17   made those changes because there was something, let's see,

18   inappropriate from that 2016 to 2020 matter.

19                    Now, as a practical matter, that's just one of the

08:50:56 20   many areas that I would think Cigna would be concerned

21   about.

22                    MR. ANTIA:  That's an example.  Exact on point, an

23   example.

24                    THE COURT:  Okay.  I understand.  Thank you.

08:51:03 25                    Counsel.

*Deborah D. Parker, U.S. Court Reporter*

08:51:05   1          MR. KELLY:  Thank you, Your Honor.

           2          This is Tom Kelly, again, on behalf of plaintiffs.

           3          I believe we discussed the administrative record

           4    issue at length yesterday, and it is our understanding -- or

08:51:14   5    plaintiffs' understanding that the Court would entertain

           6    evidence outside of the administrative record in this

           7    matter.  So that's just in response to Cigna's comments on

           8    that.

           9          But as an initial matter, plaintiffs believe that

08:51:25  10    this motion should be denied because of Cigna's failure to

          11    specify any evidence in its papers that it wishes to have

          12    excluded, and --

          13          THE COURT:  Let's just assume that they had.

          14    Let's assume that I was not too concerned about their lack

08:51:42  15    of specificity but the harm that might be caused.

          16    Obviously, this is a developing case.  We're all going to be

          17    caught flatfooted, apparently, without depositions that we

          18    would normally give to some of these witnesses, because

          19    we're going forward now.  And I don't see any other way to

08:51:57  20    get this case off the ground, including Healthcare and

          21    Anthem and some of the other issues, unless apparently we

          22    just have depositions as we go and have a trial; otherwise,

          23    we'll be sitting here for years.

          24          So let's say I'm just very generous towards Cigna.

08:52:12  25    And whether they specify it or not, I'm pointing out one of

*Deborah D. Parker, U.S. Court Reporter*

08:52:13  1   the many areas that they would be concerned about that would

2   be prejudicial.  So you're not going to prevail on the

3   specificity.

4           Now, what's your next argument?

08:52:22  5           MR. KELLY:  Our next argument, Your Honor, would

6   be that plaintiffs would not intend to offer this evidence

7   as a subsequent remedial measure on behalf of Cigna.

8   Rather, it underscores the fact that there were not

9   applicable Medicare rates during the relevant time period.

08:52:37  10  And as we discussed yesterday, and as Your Honor knows, in

11  January -- as of January 1, 2024, CMS changed its

12  reimbursement methodologies for 80015 among other codes and

13  is now reimbursing SUD treatment through the Medicare

14  program.

08:52:54  15          THE COURT:  Okay.  Thank you.

16          Why isn't this resolved from your standpoint,

17  although I understand you don't want this in?

18          Would either appropriate instructions by the Court

19  with a limitation of the standard to this time period,

08:53:05  20  recognizing that there's a pullover effect that could affect

21  a jury -- I understand that -- but they're supposed to

22  follow my instructions.

23          Second, why is there a concern when we don't have

24  a code?  In other words, if we don't have a code at that

08:53:20  25  time, you have a very good reason, you know, for the

| 08:53:25 | 1 | limitation to the 2016-2020 period, because we're still |
| | 2 | struggling with what this code is going to be.  So I don't |
| | 3 | understand the harm with appropriate instructions by the |
| | 4 | Court.  I do understand the potential prejudice.  I |
| 08:53:39 | 5 | understand your concern. |
| | 6 | MR. ANTIA:  That's the main concern, Your Honor. |
| | 7 | And what Mr. Kelly just alluded to is they're going to use |
| | 8 | it as both a sword and a shield, right?  That's the problem, |
| | 9 | right?  And if -- |
| 08:53:51 | 10 | And, again, it's not Cigna that made that change. |
| | 11 | I want to be clear on that July 19th letter.  It's MultiPlan |
| | 12 | that's in charge of its own database that's making the |
| | 13 | change in how they code.  Cigna does not have any role in |
| | 14 | that. |
| 08:54:05 | 15 | THE COURT:  Well, I know that, but that's not |
| | 16 | going to be an argument that prevails, because you contract |
| | 17 | with MultiPlan. |
| | 18 | MR. ANTIA:  I understand.  I want to make sure the |
| | 19 | record is clear.  Separately, on the MRC II, which is the |
| 08:54:16 | 20 | majority of the plans, Cigna had been crosswalking to 5863 |
| | 21 | since -- |
| | 22 | *(Court Reporter requests clarification for the* |
| | 23 | *record.)* |
| | 24 | MR. ANTIA:  Sorry.  Cigna had been crosswalking |
| 08:54:25 | 25 | to -- |

| | |
|---|---|
| 08:54:26 | 1 |

THE COURT:  -- 5863 --

2          MR. ANTIA:  -- since 2015 -- late 2015, on the

3    MRC II plans which are the majority of the plans in this

4    entire case and the majority of the plans in the trial.

08:54:39  5          THE COURT:  Let me repeat back.  You said you'd

6    been crosswalking to 5863 since 2015?

7          MR. ANTIA:  Late 2015.

8          THE COURT:  Because the letter indicates that this

9    change took place on February 29th of 2024.

08:54:55 10          MR. ANTIA:  That's where I want to try to clarify

11   for Your Honor.

12          There's two different health plan offerings that

13   Cigna offers to its employers -- the employers that want to

14   contract with Cigna to do --

08:55:05 15          THE COURT:  I understand.  MACR I and MACR II.

16          MR. ANTIA:  MRC I.  Sorry.  You're getting them

17   flipped.  But, yes, MRC I and MRC II.

18          MRC I -- out-of-network rates -- are based on a

19   charge-based database selected by Cigna.  The charge-based

08:55:23 20   database that Cigna selected for all out-of-network

21   claims -- not just said claims -- was the MultiPlan Viant

22   database, V-I-A-N-T, out-of-network facility database.  They

23   selected that in late 2015 for MRC I.

24          For MRC II, the plan language states:

08:55:49 25          "Out-of-network facility claims can be

*Deborah D. Parker, U.S. Court Reporter*

08:55:52  1              reimbursed based on a methodology

2              similar to Medicare."

3          So when this issue arose, Cigna identified

4      Medicare reimbursement rates for the drug; the

08:56:03  5      urine-testing, the breathalyzers that they are charging

6      close to $2,000 for.  Medicare has set prices for those and

7      Cigna reimbursed on MRC II based on a methodology similar to

8      Medicare for those drug tests.

9          For the intensive outpatient, which is H0015,

08:56:22  10     which these plaintiffs were billing Cigna plans for, for

11     MRC II, starting in late '15, Cigna created a crosswalk.  It

12     looked at what was Medicare reimbursing that was most

13     similar to the care that these plaintiff providers were

14     providing Cigna Health Plan members.  They identified the

08:56:44  15     partial hospitalization services.  Again, if you go to Hoag,

16     and you go into their community health clinic or mental

17     health clinic and you go in there five days a week for

18     20 hours, that's the 5863 code.

19          So starting in late 2015, Cigna crosswalked to

08:57:02  20     that code, which would pay more, because it's 20 hours a

21     week versus the nine hours a week that these plaintiffs were

22     charging for.  So late in 2015 for MRC II plans, Cigna

23     started that crosswalk and has maintained that crosswalk

24     until today, until this new potential code that Mr. Kelly

08:57:23  25     just referenced becomes available.

*Deborah D. Parker, U.S. Court Reporter*

08:57:26  1            But since 2015, that crosswalk -- and this is

         2   really critical. I just want to say one thing on

         3   Dr. Barthwell's motion *in limine*. The *United Healthcare*

         4   case did not include an MRC II crosswalk like Cigna's. It's

08:57:41  5   specific to Cigna. Her report is flawed and not credible,

         6   because it didn't take that into consideration. ==All she==

         7   ==focused on was the MRC I MultiPlan because that was what was==

         8   ==at issue in *United* and *Anthem* and who he knows what else.==

         9            But MRC II, specifically to Cigna, Dr. Barthwell

08:58:01 10   did not look at that in her initial report which was a

       11   cut-and-paste.

       12            THE COURT: But your MRC -- correct me. I'm going

       13   to reverse that.

       14            MR. ANTIA: It's hard. Yeah, MRC, I know. It's

08:58:09 15   easier to say "Maximum Reimbursable Charge." It's probably

       16   much easier just to say that.

       17            THE COURT: There's a lot of acronyms that I'm

       18   going to have to get used to.

       19            MR. ANTIA: Yes.

08:58:20 20            THE COURT: Just bear with me for a while.

       21            Regardless, even if you employed the APC5863 in

       22   2015, how would you respond that it's a differentiation

       23   without a difference in this regard? And that is, you can

       24   change it to MCR? MRC?

08:58:57 25            MR. ANTIA: MRC.

| | | |
|---|---|---|
| 08:58:59 | 1 | THE COURT:  MRC.  I'll slow down to make sure I |
| | 2 | get that right.  And thank you. |
| | 3 | What does it matter?  Because still you're writing |
| | 4 | back to the Department of Labor in February of 2024, *Look,* |
| 08:59:10 | 5 | *this is a change we're making.* |
| | 6 | So it seems to be, as a gatekeeper, that that's an |
| | 7 | issue for the jury to decide; that I shouldn't be precluding |
| | 8 | either one of you or limiting you.  And why would I limit |
| | 9 | the plaintiffs in this regard, just because Cigna chooses to |
| 08:59:30 | 10 | change it to -- hold on.  Don't help me, because I'm going |
| | 11 | to constantly reverse it -- MCR I to a designation of |
| | 12 | MCR II?  You still use that with the -- not you, personally. |
| | 13 | I mean, Cigna still uses that with the Department of Labor |
| | 14 | to point out this differentiation.  I don't see how I limit |
| 08:59:57 | 15 | that, because that's one of the defenses that Cigna throws |
| | 16 | up in good faith to the Department of Labor. |
| | 17 | MR. ANTIA:  I think there's multiple different |
| | 18 | issues going on there. |
| | 19 | THE COURT:  Yeah, there are. |
| 09:00:10 | 20 | MR. ANTIA:  So, again, the Department of Labor |
| | 21 | only has overview of ERISA plans -- fully insured ERISA |
| | 22 | plans under that MRC I, which is the MultiPlan charge base |
| | 23 | database.  It has nothing to do with MRC II.  The fact that |
| | 24 | MultiPlan -- we put in the letter -- MultiPlan changed its |
| 09:00:33 | 25 | crosswalk as of February 29, 2024 to going to 5863, right? |

|  |  |  |
|---|---|---|
| 09:00:39 | 1 | How is that relevant to the claims determinations that Cigna |
|  | 2 | made in the 2015 -- late 2015 to 2019 time period? |
|  | 3 | The fact that a subsequent change occurred has no |
|  | 4 | relevance under the ERISA standard for whether the Cigna, as |
| 09:01:01 | 5 | a fiduciary -- right? -- promptly administered the claim |
|  | 6 | benefit determinations under the abuse of discretion |
|  | 7 | standard. |
|  | 8 | THE COURT:  Okay.  I'll come back to you in just a |
|  | 9 | moment. |
| 09:01:13 | 10 | MR. ANTIA:  Thank you, Your Honor. |
|  | 11 | MR. KELLY:  Thank you, Your Honor. |
|  | 12 | I think that this argument in some ways dovetails |
|  | 13 | into the motion *in limine* that Cigna filed regarding the |
|  | 14 | Ingenix evidence, because Mr. Antia raised the issue as to |
| 09:01:27 | 15 | changes made by Cigna in 2015.  And plaintiffs would contend |
|  | 16 | that those changes were made because of the expiration of |
|  | 17 | the consent decree.  And I know that we'll get into that in |
|  | 18 | a little bit, Your Honor.  But we do believe that this |
|  | 19 | evidence would not be used as evidence of a subsequent |
| 09:01:42 | 20 | remedial measure on behalf of Cigna to clean up its acts, so |
|  | 21 | on to speak, but rather that -- it just underscores the fact |
|  | 22 | that there was no Medicare rate during the relevant time |
|  | 23 | period and so Cigna came -- used MultiPlan to concoct |
|  | 24 | crosswalks to inapplicable APCs such 5823 -- |
| 09:02:08 | 25 | *(Court Reporter requests clarification for the* |

*Deborah D. Parker, U.S. Court Reporter*

```
09:02:08    1          record.)

            2                  MR. KELLY:  APCs --

            3                  THE COURT:  No, you're going to have to repeat the

            4    whole phrase.  We didn't understand it.

09:02:10    5                  MR. KELLY:  I apologize.

            6                  That Cigna used MultiPlan to concoct inapplicable

            7    rates using -- or inapplicable crosswalks to APC5823 from

            8    80015.  And so the fact remains that they did that only

            9    because there was no applicable Medicare rate and Cigna had

09:02:36   10    been previously reimbursing these services at the providers'

           11    billed charges, and this was quite disturbing to Cigna's

           12    bottom line as we've seen in some of the e-mails that were

           13    compelled to be produced by this Court.

           14                  And so we would contend that this evidence should

09:02:53   15    be admissible because it would be offered for a proper

           16    purpose, not as a subsequent remedial measure by Cigna.

           17                  THE COURT:  And what is that purpose?

           18                  MR. KELLY:  That purpose would be to demonstrate

           19    that there was no Medicare rate during the relevant time

09:03:07   20    period.

           21                  THE COURT:  I think that's going to be easily

           22    demonstrated through other testimony.

           23                  MR. KELLY:  When it also could potentially be used

           24    as impeachment against Cigna's experts -- "expert," I should

09:03:21   25    say -- Dr. Clark.
```

| | |
|---|---|
| 09:05:44 | 1 |

for certain codes, including 80015 in January 1, 2024, Cigna

2  could no longer perform these crosswalks and so it was a

3  change in the regulatory scheme that Cigna had to adopt or

4  abide by.  And so we would also contend that that change in

09:06:02  5  the law would also be appropriate.

6           THE COURT:  All right.  Before I move on to the

7  next --

8       *(Overtalking:  Unable to report.)*

9           THE COURT:  No.  I'm sorry.

09:06:07  10          MR. ANTIA:  Sorry.

11          THE COURT:  No.  Go ahead.

12          MR. ANTIA:  That's the definition of a subsequent

13  remedial measure -- what Mr. Kelly just articulated -- a

14  change in the law that Cigna now has to abide by.  That's a

09:06:21  15  definition under "subsequent remedial measures" and that has

16  no bearing on what Cigna did and whether their

17  determinations in 2015 to 2019 were arbitrary and capricious

18  under the abuse of discretion standard.

19          THE COURT:  Counsel, you have the last word.

09:06:37  20          MR. KELLY:  Your Honor, we would contend both

21  points are still valid as defenses against Cigna's or

22  opposition to Cigna's motion *in limine*.  We believe that the

23  adoption of the inapplicable Medicare rates just underscores

24  the fact that there was no relevant Medicare rate.  We

09:06:57  25  understand that this issue is highly complicated now because

*Deborah D. Parker, U.S. Court Reporter*

```
09:07:00   1    of the Department of Labor letters.  But, again, this
           2    evidence would simply be limited not as a subsequent
           3    remedial measure but to underscore that earlier fact that
           4    I've mentioned several times now.
09:07:14   5            Thank you.
           6            THE COURT:  Before we go on to the next
           7    motion in limine, let me ask each of you how a jury is going
           8    to absorb the different acronyms in this case.  When you
           9    read the letter for the first time, at least for the Court,
09:07:44  10    I admit with transparency, it's a very difficult read.
          11            I've spent a long time as a Judge trying to absorb
          12    the facts.  But when you get involved in a new terminology,
          13    whether it's patent law or something in your field, it's a
          14    whole new world for lay jurors.  And, for instance, when I
09:08:07  15    see the "MHP" --
          16            MR. COLLINS:  Mental Health Parity --
          17            THE COURT:  Counsel, thank you.  I don't need your
          18    help.  I appreciate it.
          19            MR. COLLINS:  I'm sorry.
09:08:23  20            THE COURT:  You speak when you're spoken to.
          21            MR. COLLINS:  I do apologize.
          22            THE COURT:  When I see the "MHPAEA", the "Mental
          23    Health Parity and Addiction Equity Act," trust me, when you
          24    read through the letter, I have to keep going back to that
09:08:45  25    and absorb what that is -- or try to.
```

09:08:53   1          With "HCPCS" codes, the jury will certainly

           2   understand eventually what "80015" is and the concept.  But

           3   when you throw in "MCPCS," they have no idea what that is.

           4          "Gap filling" will be easily explained to a jury

09:09:14   5   conceptually.  It needs no definition.

           6          "CMS," counsel, I had to think very quickly what

           7   "CMS" meant.  I understand it, but I have to go back and

           8   slow down and absorb that.  The jury is not going to

           9   understand that terminology.  They will after maybe the

09:09:36  10   first or second week, but your evidence is going to be lost

          11   very quickly in this cloud of acronyms.

          12          "APC," Ambulatory Payment Classification, they'll

          13   understand the concept.  But when they first hear that,

          14   they're not going to have any idea what that acronym stands

09:10:02  15   for: "OPSAF."

          16          "So before 2018, Viant OPR priced H0015,

          17          using national level charged data in the

          18          CMS OPSAF, because CMS did not have an

          19          APC crosswalk for H0015 and the OPSAF,"

09:10:40  20          say what to a jury?

          21          In other words, what I'm driving home is, we need

          22   a chart of some kind agreed to by all -- by all the parties.

          23          The "OPR white paper."  I don't need a definition

          24   of the "white paper," if it comes out, but "OPR"?  What is

09:11:06  25   that?

09:11:11 1      MR. COLLINS:  Outpatient Repricer, Your Honor.

2               THE COURT:  Well, that's nice.

3               MR. COLLINS:  Because they're both "Outpatient

4      Repricer" and we have an IPR, "Inpatient Repricer."

09:11:21 5      THE COURT:  It doesn't matter if you understand

6      it, or I don't.  The jury doesn't understand it.

7               MR. COLLINS:  You're right.

8               THE COURT:  All right.  Let me see some more of my

9      notes.  It's magical mystery tour.

09:11:36 10     "NQTL."  Quiz:  What does that mean?  Counsel, I'm

11     not speaking to you by phone.  I'm talking to the lady.

12              MR. ANTIA:  Non --

13              THE COURT:  No, no, Counsel.  Counsel, not --

14              MR. ANTIA:  My apologies.  I didn't know you

09:11:53 15     were -- my apologies.

16              THE COURT:  What does that mean?

17              MS. OLIN:  I don't know that acronym offhand.

18              THE COURT:  What does that mean?

19              MS. SHELFER:  I do not know, Your Honor.

09:12:00 20     THE COURT:  Of course.  It means "Nonquantitative

21     Treatment Limitation."

22              Now, I understand that after multiple reading of

23     the documents, but a jury has no idea what either one of you

24     are talking about.

09:12:13 25     "MS":  Medical Surgery.  That's pretty.

*Deborah D. Parker, U.S. Court Reporter*