United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LD, ET AL.,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**UNITED BEHAVIORAL HEALTH, ET AL.,**<br><br>    Defendants | Case No.: 4:20-CV-02254-YGR<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 489, 490, 498, 505, and 507. |

Before the Court is plaintiffs' third, and more narrowed, motion for class certification, seeking to represent a class of individuals whose claims for out-of-network ("OON") intensive outpatient program ("IOP") services they allege were inappropriately priced by defendants in violation of both the Employee Retirement Income Security Act ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the motion.[1]

---

[1] The Court has reviewed the parties' omnibus sealing requests related to the portions of the record the parties seek to seal in connection with briefing on the class certification motion. The Court **GRANTS** all requests other than the requests to seal the following portions of defendants' opposition: the second redaction in footnote 4, the redactions in footnote 5, the redaction at the top of page 14, and the redaction in footnote 7. The information sought-to-be sealed in these requests pertains to individual information about various patients' care and subsequent billing, though the identity of those patients is already protected from public disclosure based on the language of the motion and the other documents the Court agrees to seal. The Court therefore finds those requests unnecessary.

## I. BACKGROUND

The Court presumes familiarity with the factual dispute animating this case.

As relevant here, the Court's Prior Order[2] denying class certification without prejudice held that plaintiffs satisfied their commonality and adequacy burdens under Federal Rule of Civil Procedure 23(a). The Court also held that plaintiffs failed to demonstrate eligibility for prospective injunctive relief, and therefore declined to certify a class under Rule 23(b)(1) or 23(b)(2).

Regarding a damages class, the Court was unable to determine, on the record before it at the time, whether plaintiffs satisfied their numerosity or predominance burdens. In so holding, the Court found that "receipt of a balance bill is required for class members to demonstrate an Article III injury," thereby rejecting "plaintiffs' argument that injury stems from the underpayment of the disputed claims itself, regardless of balance billing." (Prior Order at 16.) "In sum," the Court held, "the record before the Court indicates that some, though not most, class members received balance bills. Certification would therefore be inappropriate based thereon, without any way to identify whether plaintiffs have proven numerosity." (*Id*. at 18.)

The Court also held this finding implicated the record as it relates to predominance. Specifically, the parties disagreed as to whether differences in the standard of review across the relevant plans overwhelmed the identified common questions. The Court held as follows:

> In light of the Court's ruling above on the issue of injury, there is no way to determine which of these arguments better applies to the unidentified number of class members who received balance bills. If the group – or the number of plans under which the group was insured – is small enough, plaintiffs may be correct that assigning one of two standards to each plan is a simple task. On the other hand, defendants may be correct that the requisite plan-by-plan analysis would render the case unfit for classwide resolution.

(*Id*. at 19.)

Following the denial of plaintiffs' prior motion on these grounds, the Court authorized a limited follow-up period in which the parties could conduct further discovery on the balance billing and standard of review issues. Following the close of the supplemental discovery window, plaintiffs move again for class certification.

---

[2] Dkt. No. 469, Order Denying Motion for Class Certification ("Prior Order").

2

## II. LEGAL FRAMEWORK

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Because of this, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 348-49 (quoting *East Tex. Motor Freight Syst., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

"Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The rigorous analysis that a court must conduct requires "judging the persuasiveness of the evidence presented" for and against certification and "resolv[ing] any factual disputes necessary to determine whether" the requirements of Rule 23 have been satisfied. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982–83 (9th Cir. 2011). A "district court must consider the merits if they overlap with the Rule 23(a) requirements." *Id.* at 981. Importantly, "Rule 23 does not set forth a mere pleading standard." *Dukes,* 564 U.S. at 350. "A party seeking class certification must affirmatively demonstrate his compliance with the rule" and "be prepared to prove" as much. *Id.*

Rule 23 is satisfied when a party demonstrates meeting all four prerequisites of Rule 23(a) plus one of three factors in Rule 23(b). In short, Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Rule 23(b) offers three avenues to certification, two of which were addressed in the Prior Order. The Court there denied the motion for class certification under Rule 23(b)(1) and 23(b)(2) with prejudice.

Additionally, the Ninth Circuit has clarified recently "that plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 665 (9th Cir. 2022).

///

///

3

### III. ANALYSIS

#### A. Standing

The Court resolves at the outset the parties' differing interpretations of the Court's prior order. The Court at times used the phrase "receipt of a balance bill," to which plaintiffs ascribe an understanding that *payment* on a balance bill is not required to establish Article III injury. Defendants disagree, pointing to other language referencing payment on balance bills as being relevant to the injury inquiry.[3] The Court agrees with defendants.

In the RICO context, the statutory language easily settles the debate. *See* 18 U.S.C. § 1964(c) ("Any person injured *in his business or property* by reason of a violation of section 1962 of this chapter may sue . . . .") (emphasis supplied). Plaintiffs' reading of the phrase "receipt of a balance bill" to mean that injury stems purely from receiving the bill is inconsistent with the statutory requirement of injury to one's property.

With regard to ERISA, plaintiffs' arguments similarly fail to persuade for several reasons. First, the Prior Order squarely held that "the Court is not persuaded by plaintiffs' argument that injury stems from the underpayment of the disputed claims is itself." (Prior Order at 16.) Plaintiffs offer no explanation for what the concrete injury could possibly be as conferred by *receipt* of balance bill, if not accompanied by payment, and not counting the already excluded underpayment of disputed claims. Second, though the Court has been unable to identify a Ninth Circuit case directly on point, the circuit identified certain standing principles in *Spinedex Physical Therapy v. United Healthcare of Az., Inc.,* 770 F.3d 1282 (9th Cir. 2014). There, the trial court held that a medical provider, as assignee of patients' rights and benefits under the governing ERISA plans, did not have standing to sue United when opting not to seek payment for allegedly underpaid claims directly from the patients. The trial court had accepted United's argument that as assignee,

---

[3] The general requirements for establishing Article III injury are well-known and not in dispute. They are: i) injury in fact, ii) which is traceable to the defendant's conduct, and iii) likely to be redressed by a favorable decision. *See Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992).

Spinedex stood in the shoes of and could incur no more injury than the patients. As no payment was sought from the patients, Spinedex could not claim injury. The Ninth Circuit reversed:

> We agree with Defendants that Spinedex has not sought to recover from its patients any shortfall in Spinedex's recovery from the Plans, and ***that the patients have not suffered injury in fact after assigning their claims.*** But the patients' injury in fact *after* the assignment is irrelevant. As assignee, Spinedex took from its assignors what they had *at the time of* the assignment. At the time of the assignment, Plan beneficiaries had the legal right to seek payment directly from the Plans ***for charges*** by non-network health care providers. ***If the beneficiaries had sought payment directly from their Plans for treatment provided by Spinedex, and if payment had been refused, they would have had an unquestioned right to bring suit for benefits.*** No one, including Defendants in this suit, would contend that the beneficiaries would have lacked Article III standing in that circumstance. However, instead of bringing suit on their own behalf, plaintiffs assigned their claims to Spinedex.

*Id*. at 1291 (emphases supplied).

Thus, particularities of the case notwithstanding, the injury in *Spinedex* was still tied to the obligation to pay. The court expressly stated that after assignment—and thus after any obligation to pay was alleviated—the patients suffered no injury. At the time of assignment, standing came from the patients' ability to "seek payment . . . for charges."

Finally, plaintiffs proffered cases do not compel a different conclusion. Plaintiffs primarily rely on *Des Roches v. Cal. Physicians' Serv.* 320 F.R.D. 486 (N.D. Cal. 2017). In granting certification there, the court found a named plaintiff had standing upon receipt of balance bill despite receiving oral promises from his employer that he would not have to pay. First, the court noted that the promises were unenforceable. Second, the court held that:

> [e]ven if Des Roches does not pay the debt, an unpaid debt could have other effects, such as harming Des Roches's credit. This outstanding debt because of Defendants' denial of coverage is a "change in a legal status" that is sufficient to confer standing for Des Roches to pursue his claims related to the denial of coverage.

*Id*. at 505 (quoting *Renee v. Duncan*, 623 F.3d 787, 797 (9th Cir. 2010).) Thus, *Des Roches* is distinguishable. It is plaintiffs' burden here to prove non-speculative injury. As the Court already rejected the argument that receipt alone is sufficient in its Prior Order, plaintiffs have the burden to

5

demonstrate some other concrete injury and have not done so. *See also, Fraser v. Team Health Holdings, Inc.,* 2022 WL 971579, at *8 (N.D. Cal. 2022) (White, J., collecting cases and rejecting the same argument plaintiffs make here).

Thus, the Court undertakes a review of plaintiffs' proffered evidence with regard to those putative class members who have actually paid on balance bills or who plaintiffs show are required to do so.[4]

### B. Numerosity

The Court found last time it was unable to determine if plaintiffs had met their burden as to numerosity because the record was sparse as to how many class members were charged out of pocket for services at issue.

The law requires no fixed minimum size for a class to be sufficiently numerous, though many courts have held that a class of forty members is presumptively appropriate. *See In re Banc of Cal. Secs. Litig.,* 326 F.R.D. 640, 646 (C.D. Cal. 2018) ("It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone."). The Ninth Circuit has recently reaffirmed longstanding precedent as follows:

> . . . where the size of the class is more modest, the number of class members does not weigh as heavily in the analysis, and other factors bearing upon the feasibility and convenience of joinder may assume more significance. These potentially countervailing factors include the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought," as well as the ability to identify and locate class members.

*A.B. v. Haw. State Dep't. of Educ.,* 30 F.4th 828, 835-36 (9th Cir. 2022) (internal citations omitted).

---

[4] The Court is aware that other courts have reached a different conclusion and a general split on the issue exists. *Compare In re Wellpoint, Inc. Out of Network "UCR" Rates Litig.*, 2016 WL 6645789, at *3 (collecting cases and finding injury only where a balance bill "means that an insured will owe more money" and that "until an insured is actually or will likely be billed this amount by the OON provider, he or she experiences no risk of out-of-pocket loss from the improperly low reimbursement"), *with Sidlo v. Kaiser Permanente Ins. Co.,* 221 F. Supp. 3d 1183, 1199-1200 (D. Haw. 2016) (finding injury based on a legal and contractual expectation that reimbursement be made directly to providers at a certain rate).

6

The parties each conducted follow-up discovery on the issue of balance billing and present competing evidence:

Plaintiffs "collected balance billing evidence from a limited sample of four providers with a relatively high volume of claims," out of "a total of 1,548 providers who treated putative class members" and found evidence that "at least 37 individuals are known to have made payments in response to those bills." (Dkt. No. 490-2, Plaintiffs' Renewed Motion to Certify ("Mtn.") at 1.) As support, plaintiffs submit documentation from providers showing proof of payment from thirty-two putative class members. (Dkt. Nos. 490-6 at 75-89; 490-7 at 46, 100, 731; 490-8.) For twenty-seven of these patients, the evidence comes in the form of a summary table from the provider simply listing the amount paid rather than a picture of the bill. Together with the five named plaintiffs, this brings the total number of class members who have demonstrated payment history to thirty-seven, which plaintiffs argue allows for a reasonable inference that the forty-member threshold can easily be crossed when the total size of the putative class is taken into account. (*See* Mtn. at 12.)

Defendants attack these submissions in several ways. First, defendants argue that because plaintiffs "hand-picked" the providers from whom they sought information, the sample is not random in a statistically meaningful sense, and therefore the Court cannot "extrapolate" from it how many other class members paid on balance bills. (Dkt. No. 498-1, Defendants' Opposition to Plaintiffs' Second Renewed Motion for Class Certification ("Oppo.") at 9.) In reply, plaintiffs note that statistical sampling is not required; rather, their burden is merely to present "an evidentiary showing sufficient to support a reasonable inference that joinder is impracticable." (Dkt. No. 505-2, Plaintiffs' Reply in support of Class Certification ("Reply") at 3.)

Second, defendants attack the summary table from one provider showing proof of payment from twenty-seven class members. Defendants note that a 2022 declaration from the same provider stated that "as a general practice, [the provider] does not issue balance bills to patients," whereas a replacement declaration offered in this latest round of discovery states the exact opposite, that the provider, upon review of the 2022 declaration and in attempt to "provide clarification regarding [its] billing practices," "uses a third-party billing company to manage its billing matters, including

7

sending balance bills to patients." (*Compare* Dkt. No. 498-39, *with* Dkt. 490-7 at 43.)[5] Because this represents a complete reversal of this provider's stated practices, defendants argue the Court should not rely on the later declaration "absent cross-examination." (Oppo. at 12.) Additionally, defendants' expert attempted to match these twenty-seven class members to at-issue claims, and found as follows:

> I was able to match 22 of the 27 Members to at-issue claims. Of the 22 Members I could match to at-issue claims, seven had alleged dates of service that were entirely before or after the actual dates of at-issue services . . ., 16 had alleged balance bills that exceeded the maximum possible balance bill . . ., and 17 had either one or the other . . . .
>
> In my opinion, there is no evidence in Plaintiffs' production that any of the seven Members with alleged dates of service that were entirely before or after the actual dates of at-issue services made a balance bill payment for at-issue services. According to Plaintiffs' production, these Members completed the treatment referenced in the produced table before their first at-issue service, or started the treatment referenced in the produced table after their last at-issue service.
>
> For example, Plaintiffs allege Member 40 in Exhibit 1 received services from December 7 to December 8, 2017. However, according to the claims data, this member did not receive at-issue services until December 11. Thus, any alleged balance bills this Member received or alleged payments that this Member made relating to the treatment referenced in the produced table must have been for services that were not at-issue.
>
> For the other 10 of 16 Members who had alleged balance bills that exceeded their maximum possible balance bill according to the claims data, their alleged balance bill must have included some services that were not at issue. . . .
>
> More generally, since Plaintiffs provided no itemized balance bills for any of these 27 Members, I was not able to verify that a balance bill was sent, much less paid. In particular, I was not able to verify that any of the payments were for balance bills. Members' payments may have been for deductible or coinsurance responsibility . . . . Deductible and coinsurance payments are distinct from balance bill payments.

(Dkt. No. 498-46 ¶¶ 14-18.) Per defendants, there is no way to verify from just a spreadsheet listing only names and amounts allegedly paid that the payment reflects at-issue services.

---

[5] Defendants filed the 2022 declaration on the docket in connection with this motion, but plaintiffs do not appear to contest its authenticity.

8

Upon careful review of the parties' evidence and arguments, the Court finds plaintiffs have met their numerosity burden. Defendants raise factual questions as to the actual number of class members who paid on balance bills for relevant charges. In considering this evidence, however, the Court is mindful of its obligations at this procedural stage. On the one hand, the Court "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis*, 657 F.3d at 981 (emphasis in original), On the other, the Supreme Court has held as follows:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. See *id.,* at 352, n.6, (a district court has no "authority to conduct a preliminary inquiry into the merits of a suit" at class certification unless it is *necessary* "to determine the propriety of certification.").

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 465-66 (2013) (cleaned up, emphasis supplied).

In this context, the Court finds it unnecessary to resolve the factual questions raised by defendants in order to ascertain that a sufficient number of putative class members paid on balance bills. In just a short discovery window, plaintiffs were able to find evidence that thirty-seven putative class members paid on balance bills. Even assuming that defendants are correct some of these reflect charges not relevant to the class definition, plaintiffs' argument is compelling that it is highly likely when all providers—over 1,500 in total—are considered, at least forty individuals will have paid on relevant charges. Having so found, going bill by bill with an eye towards identifying whether defendants' raised objections demand each one be removed from the pool of evidence plaintiffs offer would be precisely the sort of "free-ranging merits inquiry" disallowed at this juncture. *See id.*

With that in mind, the Court addresses some of defendants' primary arguments. First, plaintiffs have offered a satisfactory explanation as to the charge that one provider submitted conflicting declarations. Whereas defendants are correct there appears to be a discrepancy as to

9

whether the provider routinely balance bills, plaintiffs characterize the second declaration as a "corrected" declaration and state that this provider relies on a third-party service to issue balance bills. Per plaintiffs, "as part of this most recent discovery period, that provider reached out to the third-party billing company to get this data, and they received this report" indicating twenty-seven putative class members paid on balance bills. United will receive its opportunity to question the provider about any discrepancy, but the Court cannot simply credit United's facial attack on the newly submitted declaration without impermissibly ignoring plaintiffs' response.

Second, United is correct that because plaintiffs purposely selected high-volume providers, they cannot statistically infer that rates of balance billing for those providers can be extrapolated to the broader class. However, plaintiffs have proffered evidence of thirty-seven balance bills paid. To reach a threshold of forty, therefore, they need not extrapolate across the whole class at the same rate.[6] They merely need to present sufficient evidence to allow the Court to infer that at least three class members exist who paid on balance bills from other providers. In a putative class numbering in the thousands, this inference is more than reasonable.[7]

Therefore, the Court finds plaintiffs have satisfied their burden as to numerosity and thus as to all four of 23(a)'s prerequisites.[8]

**C. Predominance**

As plaintiffs seek to certify a damages class, the Court must ensure itself that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Defendants present two arguments as to why this case presents individualized questions which defeat predominance.

---

[6] As recounted above, courts have certified classes smaller than forty members. The Court need not opine on the minimum number required, though, where plaintiffs have demonstrated a class exists of at least that size.

[7] Again, even if a certain number of the identified thirty-seven are removed as per defendants' objections, the preponderance of the evidence still suggests that forty is a number plaintiffs will be able to reach.

[8] Defendants raise no typicality concerns.

10

1 First, defendants assert that "plaintiffs identify no class-wide methodology to prove receipt
2 or payment of balance bills." (Oppo. at 9.) The arguments as to why this is so lack substance.
3 Though defendants raise some valid questions as to the details of each payment in plaintiffs'
4 sample of thirty-seven, this is not the same as demonstrating plaintiffs' offered solution of
5 requesting records from the relevant providers cannot work. Indeed, as plaintiffs note, the process
6 of obtaining the relevant records from the providers is relatively straightforward. This sets this case
7 apart from *Olean*, as well, to which defendants point, where the question centered around the
8 sufficiency of plaintiffs' statistical model to identify the *fact and amount* of injury attributable to
9 the alleged wrongdoing. *See Olean,* 31 F.4th at 673. That is categorically different from this case,
10 where the task is merely to identify class members who paid *any* amount on a balance bill for a
11 relevant service.[9]

12 Second, defendants claim the standard of review issue predominates. The Court finds the
13 existence of only two standards of review does not predominate over the relevant common
14 questions. Though plaintiffs have produced enough class members to satisfy numerosity, discovery
15 revealed that the number of putative class members, and therefore the number of relevant plans, is
16 far lower than earlier thought. The number of plans through which the parties would have to sort is
17 therefore significantly lower than defendants' motion suggests. Indeed, this was precisely the
18 concern raised by the Court in its last order. (*See* Prior Order at 19 ("If the group —or the number
19 of plans under which the group was insured —is small enough, plaintiffs may be correct that
20 assigning one of two standards to each plan is a simple task.").) Plaintiffs perhaps exaggerate how
21 binary and rote the sorting task will be. However, the relevant question is not whether the task is
22 completely rote; rather, it is whether this task will *predominate* over the common questions
23 identified. Because ascertaining the appropriate standard as to each plan is not an overly

---

[9] Even if some bills contain charges for co-payments or deductibles plaintiffs cannot count as injury, defendants fail to identify why plaintiffs could not simply tweak the requests to providers to exclude records containing only payments towards these irrelevant charges.

11

complicated task, and because ultimately a fact-finder will be tasked with answering at most two questions, the issue does not defeat predominance.

The Court therefore finds plaintiffs have satisfied the requirements to certify a class under Rule 23(b)(3).[10]

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** plaintiffs' renewed motion for class certification. The Court sets a case management conference for **November 10, 2025 at 1:30 p.m.** on the Zoom platform. Parties shall meet and confer on a schedule for the balance of the action and file a statement with respect to scheduling no later than seven days prior to the conference.

This terminates Docket Nos. 489, 490, 498, 505, and 507.

**IT IS SO ORDERED**.

Date: October 3, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[10] The Court construes plaintiffs' motion as seeking reprocessing in the alternative. Since the Court finds the case appropriate for damages class certification, it does not reach the parties' arguments on the issue, including the open question the parties present as to whether, post-*Wit III*, a reprocessing class is most appropriate for certification under Rule 23(b)(1), 23(b)(2), or 23(b)(3).

12