**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **L.D., ET AL.**,<br><br>  Plaintiffs,<br><br>v.<br><br>**UNITED BEHAVIORAL HEALTH, ET AL.**,<br><br>  Defendants. | **Case No.: 4:20-CV-02254-YGR**<br><br>**TENTATIVE ORDER GRANTING MOTION FOR SANCTIONS FOR PLAINTIFFS' COUNSEL'S VIOLATION OF THE PROTECTIVE ORDER**<br><br>Re: Dkt. No. 506 |

Defendants move for sanctions for plaintiffs' counsel's alleged violations of the parties' stipulated protective order governing this case. The motion is based on certain document disclosures plaintiffs' counsel made to Department of Labor ("DOL") personnel. Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **TENTATIVELY GRANTS** the motion and orders plaintiffs' counsel to reimburse defendants in an amount of $50,000, as explained further below.

Because the Court has ordered sanctions, it will allow argument if requested. The parties shall meet and confer to determine whether oral argument is requested and shall file a joint notice on the issue within five business days. If oral argument is requested, the parties shall propose at least two available Tuesdays at 2:00 p.m. by no later than December 2, 2025. If oral argument is not requested, this shall become the Order of the Court.

**I.   BACKGROUND**

Plaintiffs filed their first complaint in April 2020, and the parties entered a stipulated protective order the next month. (Dkt. Nos. 1, 25.) The protective order states at the outset that "[t]his action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than

prosecuting this litigation may be warranted." (Dkt. No. 25 § 1.) Confidential information is defined as:

> information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), including information, documents, or things that have not been made public by the Designating Party and that the Designating Party reasonably and in good faith believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy, including personal health information or information otherwise protected under Privacy Rules.

(*Id*. § 2.2.) Confidential information designated as "ATTORNEYS EYES ONLY" is then defined as:

> CONFIDENTIAL, non-public information that the Designating Party reasonably and in good faith believes is so highly sensitive that it should not be disclosed to any person other than outside counsel for the Parties could violate privacy or confidentiality interests described above and/or result in significant competitive or commercial disadvantage to the Designating Party [sic].

(*Id*. § 2.3.) The protective order then identifies certain categories of people to whom discovery marked "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY" may be disclosed, none of which includes the relevant government officials in this case. (*See id.* §§ 7.2-7.3.)

According to plaintiffs, the DOL is currently investigating defendants in this action for the same business practices forming the basis of this suit. (Dkt. No. 513-1, Declaration of Matthew M. Lavin in support of Plaintiffs' Opposition to Defendants' Sanctions Motion ("Lavin Decl.") ¶ 4.) DOL personnel therefore reached out to plaintiffs' counsel and "requested that Plaintiffs enter into a Common Interest Agreement ("CIA") with the DOL to facilitate the DOL's pre-existing investigation." (*Id*.) Plaintiffs' counsel states that the DOL intimated it was against department policy to sign protective orders in private cases "and that the DOL instead conducts information-sharing with counsel under its own confidentiality and common-interest framework." (*Id*. ¶ 5.) Ostensibly, the CIA was meant to offer similar protections to the protective order. Plaintiffs and the DOL officials entered into the proposed CIA, which states in relevant part:

2

> (1) "All Shared Information shall be shared or exchanged between the Parties solely pursuant to this agreement and the common legal interest it protects"; (2) "To the extent permitted by applicable procedural and ethical rules and any other applicable law, the Party receiving Privileged Shared Information will maintain the confidentiality of such Privileged Shared Information provided by another Party"; and (3) "Any Shared Information received by a Party shall not be disclosed, either voluntarily or in response to a request, subpoena, or other court order that would, fairly construed, seek production of Shared Information to anyone not a Party to this Agreement, without the permission of the Party that provided that Shared Information."

(*Id.* ¶ 6.)

Plaintiffs' counsel acknowledges that pursuant to the CIA, they transmitted information which was designated confidential or for Attorneys' Eyes Only pursuant to the protective order. Indeed, counsel transmitted hundreds of documents to DOL officials between August 2022 and April 2023.[1] Per defendants, the transmissions were only discovered by coincidence.

> On December 3, 2024, in connection with a separate matter, DOL sent the United Defendants a document marked "Confidential – Attorneys' Eyes Only" with a Bates stamp from this action. This did not make any sense, because Defendants had never sent that document to DOL, it had never been disclosed publicly, and Plaintiffs' counsel had never notified Defendants of any third-party disclosure nor challenged that document's confidentiality designation. After further investigation and back and forth with DOL, on December 4, 2024, DOL confirmed they received the document from Plaintiffs' counsel in this action.

(Dkt. No. 506, Defendants' Motion for Sanctions for Plaintiffs' Counsel's Violation of the Protective Order ("Mtn.") at 6 (internal citations omitted).)

Following this discovery, defendants sought a court order mandating that plaintiffs provide a log of all disclosures, which the Court granted. Following delivery of the log, defendants moved for sanctions.

---

[1] The Lavin Declarations states that "there were four transmissions in total: three secure uploads . . . and one email [which] occurred between August 17, 2022 and October 19, 2022." (Lavin Decl. ¶ 7.) The log produced identifies one more upload which occurred on April 12, 2023. (*See* Dkt. No. 506-2.) The Court credits the log as accurate and assumes the misrepresentation in the declaration was inadvertent.

3

## II. LEGAL STANDARD

Federal Rules of Civil Procedure 37(b) and 16(f) both authorize the imposition of sanctions for failure to adhere to a protective order. "Instead of or in addition to" various specific remedies listed in Rule 37(b)(2)(A),

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). Additionally, under Local Civil Rule 37-4, where a party moves for sanctions it must:

> (1) Set forth the facts and circumstances that support the motion;
> (2) Describe in detail the efforts made by the moving party to secure compliance without intervention by the Court; and
> (3) If attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed.

The discretion of the Court is broad when it comes to the decision to award sanctions and determine those most appropriate and just. *See United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980).

## III. ANALYSIS

It is beyond dispute that plaintiffs' counsel violated the protective order. (*See* Lavin Decl. ¶ 3 ("I recognize that I made an error in judgment in this case, and I intend never to repeat it.").)

While the Court recognizes plaintiffs' counsel's apology and acknowledgement of the poor judgment, the concession does not firmly admit the gravity of the violation. Counsel states they were acting in good faith and their wrongdoing is characterized by mistaken but reasonable, albeit incorrect, assumptions. The Court disagrees. Even if not willful or malicious, counsel's assumptions were not reasonable, and the suggestion to the contrary undercuts counsel's apology.

Per plaintiffs' counsel, the actions were undertaken with the belief that: i) signing the CIA was "tantamount to signing onto the Protective Order" because it "mirrors the protections of the Protective Order" and ii) "cooperation with the DOL under the protections of the CIA was not only

4

permissible but appropriate to facilitate an ongoing federal investigation and executive priority." (Dkt. No. 513, Plaintiffs' Opposition to Motion for Sanctions ("Oppo.") at 4-6.) The Court first notes that defendants offer in Reply certain key distinctions between the CIA and the protective order which call into question the extent to which the two really do mirror one another. (*See* Dkt. No. 517, Reply in support of Defendants' Motion for Sanctions for Plaintiffs' Counsel's Violation of the Protective Order ("Reply") at 3-4.) More fundamentally, however, the rationales asserted above would allow any counsel bound by a protective order a staggering amount of discretion to decide unilaterally that competing rationales and even competing confidentiality agreements permit the blatant breach of preexisting protective orders. Put simply, it was not for plaintiffs' counsel to decide whether the wholly separate CIA was "tantamount" to this case's protective order, nor whether the DOL's investigative requests were "appropriate."

Plaintiffs' counsel further argues defendants suffered no prejudice in this case, both because the DOL has independent lawful means of obtaining the transmitted documents and because the "disclosures were not the kind of disclosures the Protective Order was designed to forbid." (Oppo. at 9.) On this, the Court partially agrees. Yes, the DOL likely could have obtained the requested documents from United directly via other avenues such as its subpoena power.[2] As a factor relevant to the prejudice analysis specifically, the Court understands the point. As a justification for plaintiffs' counsel's behavior, however, the argument does not persuade. Again, counsel does not possess the prerogative to offer the DOL an investigative shortcut. Further, as to the purpose of the protective order, as defendants note in Reply:

> Nothing in the protective order limits its prohibitions to sharing information with competitors. In a section called "Purposes and Limitations," the protective order forbids using Protected Material "for any purpose other than prosecuting *this* litigation." The protective order is meant to prevent the unauthorized disclosure of Protected Materials to anyone outside this litigation, without limitation. There is no exception for government regulators. DOL is not a party to this case

---

[2] Plaintiffs' counsel also submits a letter from a DOL solicitor stating that over the course of DOL's investigation, DOL "received numerous documents from United Health Group and other individuals and entities, including the same documents provided" by plaintiffs' counsel. (Dkt. No. 513-2.)

5

> and was never authorized to receive information from this litigation. Nor are its investigative activities part of "this litigation."

(Reply at 4 (internal citations omitted).)

Finally, the Court notes the parties' disagreement about a prior case involving a motion for sanctions against the same plaintiffs' firm, Arnall Golden Gregory LLP. In that case, a Special Master found the firm violated that case's protective order when it allowed certain corporate executives of the plaintiff to review documents designated as "attorneys' eyes only." *See TML Recovery, LLC v. Cigna Corp.,* 8:20-cv-00269-DOC-JDE (C.D. Cal. closed Nov. 12, 2024), Dkt. No. 317 at 9.[3] Plaintiffs argue against the persuasive value of this finding:

> While Special Master Larson found a technical violation, he found it was not malicious, in bad faith, or for obtaining a competitive advantage. He recommended a sanction of less than $39,000 in attorney's fees, but the district court never adopted that recommendation and later ruled that the defendants' documents designated under the protective order did not warrant sealing.

(Oppo. at 7 (internal citations omitted).) Plaintiffs also note that the named attorneys involved were different than those defendants here allege violated the protective order.

Ultimately, the Court agrees with defendants that *TML Recovery* presents a troubling pattern in plaintiffs' firm's behavior. Despite the district court not adopting the sanctions recommendation, this Court would have expected attorneys from the firm to have learned the importance of adhering to protective orders and with a resolve to avoid any future breaches. The throughline from the Special Master's findings to this case involves Arnall Golden Gregory's willingness to treat the

---

[3] "Pursuant to the [protective order], Plaintiffs' Counsel were entitled to use Defendants' 'attorneys' eyes only' information in opposing Defendants' motions for summary judgment. However, instead of Plaintiffs' Counsel reviewing Defendants' 'attorneys' eyes only' information for the purpose of developing arguments to oppose Cigna's Motion for Summary Judgment, Plaintiffs' Counsel permitted Plaintiffs, specifically [the relevant executives], to review 'attorneys' eyes only' documents/information for the purpose of presenting arguments in opposition to Cigna's Motion for Summary judgment. This was improper. Thus, Plaintiffs'/Plaintiffs' Counsel's chosen vehicle (the form) of presenting the information to the Court was objectionable. Plaintiffs' Counsel were certainly careless in their interpretation of the SPO. Indeed, by construing too literally certain terms of the SPO, Plaintiffs' Counsel failed to take all steps reasonably necessary to honor the very purpose of the SPO—to prevent the unauthorized disclosure of information to certain personnel." (internal citations omitted).

6

terms of protective orders to which they themselves have stipulated as optional, and assume the role of arbiter over whether or not competing concerns justify the sharing of information outside the bounds of those agreements. This they may not do.[4]

As such, the Court finds a knowing and intentional breach of the protective order in this case. An award of sanctions is appropriate to deter further violations in this, and other cases. As shown in another case, failure to assess a penalty did not have a deterrent effect.

### IV.  CONCLUSION

For the reasons stated above, the Court **RULES** as follows:

Plaintiffs' Counsel Matthew Lavin and the law firm Arnall Golden Gregory LLP are **HEREBY SANCTIONED** for violating the protective order governing this litigation. The choice to share information in an unauthorized capacity was knowing and intentional, even in not malicious.

As to the request to supplement the log, the Court finds plaintiffs' counsel has satisfactorily explained why the log does not include transmissions via email or oral conversation. Plaintiffs' counsel attests, under penalty of perjury, to having reviewed their email and any other place where such transmissions would have been recorded. Further review would be unlikely to yield undisclosed transmissions.

Furthermore, the Court **ORDERS** the firm of Arnall Golden Gregory LLP to reimburse defense counsel $50,000 for the cost of investigating and prosecuting this breach. The Court finds this award sufficient to deter future conduct but not punitive. As defense counsel moved jointly for sanctions but did not itemize time billed to this matter, the Court is unable, on the record before it, to apportion the sanctions award between defendants.

---

[4] Where a relevant court order already binds parties, the Ninth Circuit has unequivocally rejected the argument asserted here, that counsel may unilaterally decide to violate it because in its personal estimation the course of conduct is appropriate. *See Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 965 (9th Cir. 2004) ("Aloe Vera argues that its proposed protective order did not violate the district court's September 28, 2001, order because it contained sufficient safeguards to protect BNA's confidential information. Even if this were true, it would be beside the point. Aloe Vera was bound to follow the district court's directions, not some other course it considered to be just as good.").

7

Finally, the Court **ORDERS** that every lawyer at the firm of Arnall Golden Gregory LLP shall read this order. Counsel of record shall distribute the order and confirm in writing within seven days of this order that each lawyer has complied.

This terminates Docket No. 506

**IT IS SO ORDERED**.

Date: October 7, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**