# EXHIBIT A

May 8, 2026

Judge Yvonne Gonzalez Rogers
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, CA 94612

      Re:     Joint Letter Brief Seeking to Resolve Disputes Regarding Class Notice in *LD et al. v. United Behavioral Health Company et al.*: Case No. 4:20-cv-02254-YGR

Dear Judge Gonzalez Rogers:

The parties seek the Court's assistance in resolving a dispute regarding the distribution of class notice as set forth below. Lead counsel for the parties met and conferred via videoconference in an effort to resolve these matters and have been unable to do so. The parties disagree whether Notice should be provided to plan subscribers, in addition to potential class members. The parties' respective positions are below.

### *Defendants' Statement*

Notice should only go to potential class members—individuals who received IOP treatment and may have paid a balance bill related to that treatment—consistent with the Court's order and Rule 23. Pointing to no evidence, Plaintiffs speculate that some class members' family members may have paid their balance bills and therefore argue that all plan subscribers (persons who paid plan premiums) should receive notices as well. This is the first time Plaintiffs have raised this issue in the lengthy history of this case, and there is no evidence to support their speculative assertions. Plaintiffs' proposal to send non-class members notices also contradicts governing legal authority and implicates serious privacy concerns because it would involve sending thousands of notices to non-class members about substance abuse treatment received by class members. Plaintiffs' proposal to require notices to plan subscribers should be rejected.

***The Class Definition Is Limited to Members Who Received IOP Treatment and Paid Balance Bills***. After extensive briefing and argument, including a supplemental ruling to specifically address the class definition, the certified class was defined as "member[s] . . . whose claim(s) for intensive outpatient services" were priced by Viant "and who paid balance bills from their provider." Dkt. 529 at 3 (emphasis removed). The parties are poised to send class notices to 11,714 individuals who could potentially meet this class definition, based on voluminous data produced by Defendants. Indeed, the notice mailings will already be overinclusive, because they will include all members who received IOP treatment, regardless of whether they paid balance bills, because there is no way to determine from United's records whether someone paid a balance bill to his or her provider.

Plaintiffs' cited authority does not support their request to provide notice to individuals that are plainly excluded from the class. In *Victorino v. FCA US LLC*, 2020 WL 5064295, at *2

(S.D. Cal. Aug. 27, 2020), the court certified a class of individuals who purchased cars for particular reasons and authorized notice to individuals based on VIN numbers, even though notice-by-VIN would be overbroad because notice would go to all car purchasers, regardless of the reason for the purchase.  Here, the parties agreed to provide notice to all individuals who received IOP treatment, regardless of whether they paid balance bills.  That is akin to the overinclusive notice in *Victorino*.  Plaintiffs seek to go further and send notices to thousands of additional people (estimated at over seven thousand) who did not receive IOP services and therefore ***cannot be class members***.  Plaintiffs' citation to *Bowerman v. Field Asset Services, Inc.*, 2015 WL 5569061, at *4 (N.D. Cal. Sept. 21, 2015) for the proposition that notice must be "the best notice that is practicable under the circumstances" does not help, either.  The parties have already agreed to provide notice to a group that "include[s] the complete universe of class members"; Plaintiffs seek to add individuals who they speculate might have *discovery* relevant to the putative class, even though they are definitionally excluded from the class.  *Id.*  Plaintiffs' backdoor attempt to expand the class definition should be rejected.   Class definitions can only be modified with Court approval, *see* Fed. R. Civ. P. 23(c)(1)(C), and Plaintiffs haven't identified any evidentiary basis to do so. *Allan v. Realcomp II, Ltd.*, 2013 WL 12333444, at *4 (E.D. Mich. Mar. 30, 2013) ("[A] class definition may only be changed with permission of the Court.").

***No Factual Basis For Plaintiffs' Assertions***.  There is no evidence or other basis for Plaintiffs' speculative assertion that some non-class members (*e.g*., parents or family members who were subscribers for the IOP patient's health plan) "likely" paid a balance bill on behalf of the class member.  If Plaintiffs wanted to establish these facts, they needed to provide evidence and make these arguments during the multiple rounds of class certification briefing and argument. Plaintiffs' argument is based entirely on produced claim data (which they have had for many years) showing many members were under the age of 26 at the time they received IOP treatment.  But today these patients are adults: more than 99.5% of putative class members are 21 or older, and more than 95% are 26 or older.  Only three out of more than eleven thousand are under 18, and United will agree to send notices to the parents of these putative class members.

The notices will be sent to putative class members' most recent known address (which will be updated using the National Change of Address Database), and there is no basis to question the ability of these adults to (1) make informed decisions about their participation in the class, or (2) gather and submit information about balance bills or other relevant issues.  Nothing in Rule 23 requires broadening the scope of notice to non-class members in these circumstances.  *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 2019 WL 1512265, at *3–4 (N.D. Cal. Apr. 8, 2019) (rejecting proposal to send "direct notice" to broad group of individuals as "improper under Rule 23" where plaintiffs did not show that notice "would reach . . . a group that is included in the certified class[], as opposed to . . . a group that, by definition, is excluded from the certified class"); *see also Jermyn v. Best Buy Stores*, 2010 WL 5187746, at *7 (S.D.N.Y. Dec. 6, 2010) (rejecting request to send notices that would "provide *individual* notice to an overinclusive group of individuals" because such notice "is not required by Rule 23").

***Privacy   Concerns***.    Sending   notice   to   thousands   of   non-class   members   would unnecessarily  and  improperly  disclose  members'  protected  health  information  ("PHI")  and

personal identifying information ("PII"), contrary to multiple state and federal privacy laws.[1] Privacy is particularly important here because substance use disorder treatment (like IOP services) receives heightened protections under state and federal laws.[2]  Doing so would also be contrary to established practice: the record shows that United sends explanation-of-benefits to the member who received the treatment, not the plan subscriber.  *See, e.g.*, Dkt. 397-20 at 2–6 (sample EOB).[3] Third-party healthcare providers also send communications to their patients.  *See, e.g.*, PPR_LD_UBH00000094–96;    PPR_LD_UBH00000009–15;    PPR_LD_UBH00000100–102; PPR_LD_UBH00000019–24.[4]  Plaintiffs' proposal to send notices to subscribers—whose location and relationship to the member may have changed in the intervening years—risks "outing" class members' "patient status" without their knowledge or consent and in conflict with federal and state law.  *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (HIPAA protects "information which connects an individual with a healthcare provider" because it "is indicative that the individual has received . . . health care services.") (cleaned up).  Because notice to subscribers, by its nature, requires revealing IOP treatment patient status, Plaintiffs' attempt to downplay the privacy concerns of the very class they seek to represent falls flat.  The class notices in the *Epipen* case cited by plaintiffs were sent to potential class members only; that case did not involve unnecessarily disclosing sensitive health information to individuals who are clearly not class members, as plaintiffs propose here.  *In re Epipen Epinephrine Injection*, 2020 U.S. Dist. LEXIS 189038, at *39 n.1 (D. Kan. Oct. 13, 2020) (stating that short form notice complied with HIPAA); *In re Epipen Epinephrine Injection*, Case No. 17-2785, Dkt. 2209-8 at 23 (notice plan stating that short form notice would be sent to "potential" and "likely" class members).

*    *    *

Plaintiffs' proposal would effectively end-run the Court's certification order, conflicts with the class definition, would needlessly disclose sensitive health information, and would produce avoidable inefficiencies.  Defendants therefore respectfully submit that class notice should be sent only to the members who received the intensive outpatient treatment at issue in this case.[5]

---

[1] *See generally* 45 C.F.R. §§ 164.502(a), 164.506(a), 164.512(a)–(b); *see also id.* § 160.103; Cal. Ins. Code § 791.29(a)(4); Wash. Rev. Code Ann. § 48.43.505(4).

[2] *See, e.g.*, 42 U.S.C. § 290dd-2(a) (limiting the disclosure of "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with . . . substance use disorder . . . treatment"); *Cnty. of L.A. v. Superior Ct.*, 65 Cal. App. 5th 621, 642–43 (2021) ("Medical records pertaining to *substance abuse* treatment . . . are entitled to even *greater* privacy protections under both state and federal law.") (cleaned up); 71 Pa. Stat. Ann. § 1690.108 (prohibiting disclosure of "patient records . . . relating to drug or alcohol abuse or drug or alcohol dependence" without patient consent, except in narrow circumstances); *see also Holloway v. Blue Cross of N. Dakota*, 294 N.W.2d 902, 908 (N.D. 1980) ("Because of the very sensitive nature of the alcoholism treatment . . . [patient] identity and confidentiality are of paramount importance.").

[3] This document was filed with redactions to protect PHI/PII under HIPAA.  If the Court so orders, Defendants can provide an unredacted version for *in camera* review.

[4] These documents were produced to Plaintiffs with redactions to protect PHI/PII under HIPAA, but have not been filed with the Court.  If the Court so orders, Defendants can provide the Court an unredacted version for *in camera* review.

[5] If the Court believes that subscriber notice is appropriate, Defendants respectfully request the opportunity to submit a revised subscriber notice for consistency with the Court's order and the class member notice as approved by the Court.

*Plaintiffs' Statement*

Plaintiffs are not asking the Court to expand its class definition. Plaintiffs simply believe that outreach to plan subscribers should be included in the scope of the Notice process. First, this is a unique Notice process insofar as it is being conducted preliminarily, before additional discovery and dispositive motions on the merits, to assess the size of the class and the evidence of balance bills. Rule 23(c)(2)(B) requires that "the court … direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Plaintiffs believe that should include notice to the subscribers. To the extent a patient received IOP services when they were under the age of 26, it is not unfathomable that the patient was covered under a plan of their parent or guardian, and it is possible, and even likely, that parent or guardian made payments to a provider in response to a balance bill for a class member. Notice to subscribers would thus increase the likelihood of identifying class members and gathering evidence of payments.

"Notice to a broader group than the class definition is acceptable as long as there is some link or connection between the method of class notice and the class definition." *Victorino v. FCA US LLC*, 2020 U.S. Dist. LEXIS 155991, at *5-6 (S.D. Cal. Aug. 27, 2020) (collecting cases). There is a clear link between providing notice to plan subscribers whose plans covered the class members and under which the claims at issue were improperly repriced. In *Bowerman v. Field Asset Services*, this Court found no issue with class notice that was "broader than the class definition" because it was "the best notice that is practicable under the circumstances[.]" 2015 U.S. Dist. LEXIS 126058, at *10-11 (N.D. Cal. Sept. 21, 2015). The Court rejected defendant's position that such notice method "implicitly rewr[o]te the class definition" or "transform[ed] individuals who would not otherwise qualify as class members into such[.]" *Id.* at *11.

In a similar vein, and contrary to Defendants' assertions, Plaintiffs are not attempting to expand or rewrite the class definition but simply want to maximize chances of receiving information relevant to the class, including damages. Sending notice to subscribers and collecting payment documentation from subscribers now is the most efficient use of the Notice Administrator's services and will not prevent Defendants from arguing later that this information is somehow insufficient or irrelevant. As this Court put it in *Bowerman*: "If an individual does not fall within this definition, then she or he is not in the class, irrespective of whether she or he received a class notice[.]" *Id.* at *10.

Defendants provided Plaintiffs with a class list on January 30, 2026. This list contains approximately 11,491 potential class members, and approximately 5,369 of those potential class members (i.e. 47%) received relevant IOP services at 26 years of age or younger. Given this age breakdown, outreach to subscribers for notice administration purposes, is critical to collect payment information related to as many potential class members as possible. Plaintiffs also maintain that outreach to subscribers is especially appropriate in this case because recordkeeping and contact information for mental health and substance abuse disorder patients may be sparse or outdated.

In the Parties' December 15, 2025, Joint Statement Regarding Scheduling Pursuant to Order Granting Motion for Class Certification, Plaintiffs proposed that the Notice Administrator "also collect information and records regarding balance bill payments, which would include

collecting information from class members, ***subscribers*** (if different from the class member), and class members' providers for the claims at issue in this case." ECF 530, at 1 (emphasis added). In that filing, Defendants noted that they would be willing to consider Plaintiffs' proposal, "provided that Defendants maintain the ability to conduct reasonable discovery in accordance with the Federal Rules[.]" *Id.* The Parties have now agreed to a Phase II discovery following the Notice process where Defendants will be able to test the evidence collected during the Notice process. There is no reason to exclude Subscribers from the Notice process if they possess relevant documentation regarding payment on balance bills for class members.

Defendants' privacy concerns are overblown. The proposed Subscriber Notice would not contain any protected health information; it would refer only generally to "intensive outpatient services." *See* Plaintiffs' Proposed Subscriber Notice, attached to the Joint Submission on Notice Administrator Protocol as **Exhibit D**. The Notice would simply direct subscribers to submit any relevant information regarding payments made on balance bills stemming from outpatient services. Even so, this outreach would comply with  HIPAA "because it is issued in response to a court order[.]" *In re Epipen Epinephrine Injection*, MDL No. 2785, No. 17-md-2785, 2020 U.S. Dist. LEXIS 189038, at *39 n.1 (D. Kansas Oct. 13, 2020) (quoting 45 C.F.R. § 164.512(e)(1)(i) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a corut or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order[.]")); *see also* Cal. Ins. Code § 791.13(h) (allowing disclosure of personal or privileged information "[i]n response to a facially valid administrative or judicial order, including a search warrant or subpoena.").

Critically, this Notice would only go to subscribers who were the subscriber for a health plan at the time that a member of that same plan received intensive outpatient services. To the extent a Subscriber receives the Notice and provides documentation, that documentation was already in their possession and there are no privacy concerns. To the extent a Subscriber receives the Notice and wishes to learn more and contacts the Notice Administrator, the Notice Administrator would first require the Subscriber to obtain a HIPAA waiver from the patient before disclosing any details of the treatment the patient received. To the extent a Subscriber does not submit documentation or seek to inquire further, that Subscriber will not receive any details of treatment.

Plaintiffs believe it is worth including Subscribers for the foregoing reasons. This Notice process is about attempting to obtain as much information as possible regarding potential class members. Plaintiffs submit that including Subscribers increases the chances of obtaining relevant information.

*    *    *

ARNALL GOLDEN GREGORY LLP

*/s/ Richard T. Collins*
Richard T. Collins

Counsel for Plaintiffs


Gibson, Dunn & Crutcher LLP

*/s/ Derek Kraft*
Derek Kraft

Counsel for Defendants United Behavioral Health and UnitedHealthcare Insurance Company


Phelps Dunbar LLP

*/s/ Errol J. King, Jr.*
Errol J. King, Jr.

Counsel for Defendant MultiPlan, Inc.